THE STATE OF NEW HAMPSHIRE
SUPERIOR COURT
HILLSBOROUGH COUNTY

I, W. Michael Scanlon, Clerk of the Superior Court of the State of New Hampshire for the County of Hillsborough, Northern District, the same being a court of record having a seal, and having custody of the records of the said Superior Court, do hereby certify that the attached are true copies of the Complaint, Complaint and Demand for Jury Trial, Appearance of Andre Bisasor, Summons on Complaint, Appearance of Linda Smith, Esq., Notice of Removal to Federal District Court in the action case # 216-2025-CV-00529 Andre Bisasor v. Craig Donais, Donais Law Offices PLLC, Mary Donais, Russell Hilliard of said Superior Court.

In witness whereof I have hereunto set my hand and affixed the seal of said Superior Court at this 8th day of July A.D. 2025



W. Michael Scanlon

Clerk of Superior Court

Filed
File Date: 6/3/2025 11:53 PM
Hillsborough Superior Court Northern District
E-Filed Document

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH

**http://www.courts.state.nh.us**

Court Name:  Hillsborough - Superior Court-Northern District

Case Name:  Andre Bisasor v. Craig Donais, et al.

Case Number:  216-2025-CV-00529
(if known)

## COMPLAINT

Requested:  ☒ Jury Trial (as allowed by law)  ☐ Bench Trial

1. Plaintiff's Name  Andre Bisasor

   Residence Address  679 Washington Street, #8-206, Attleboro, MA 02703

   Mailing Address (if different) _____

   Telephone Number (Home) (781) 492-5675          (Mobile) _____

2. Defendant's Name  Craig Donais

   Residence Address  39 Buzzell Street, Manchester, NH 03104

   Mailing Address (if different) _____
   [See Attachment(s), item 'Additional Defendants(s)']

3. First thing that happened (in one sentence):

   Claim amount: $850,000.00. See attached complaint. Note: However, I need to attach
   exhibits but the file size is too large, and I can't figure out how to attach
   separate exhibits as a second file to this submission

4. Second thing that happened (in one sentence):

   True Copy Attest

   W. Michael Scanlon
   Clerk of Court
   July 8, 2025

5. Third thing that happened (in one sentence):

Continue on using separately numbered paragraphs (attach additional sheets if necessary).

This is a Service Document For Case: 216-2025-CV-00529
Hillsborough Superior Court Northern District
7/8/2025 3:23 PM

TurboCourt.com Form Set #11692298

**Case Name:** <u>Andre Bisasor v. Craig Donais, et al.</u>

**Case Number:** _____

<u>**COMPLAINT**</u>

For the reasons stated in this Complaint, I request that the Court issue the following orders:

A.  Describe the orders you want the Court to make:

<u>See attached complaint</u>

_____

_____

_____

_____

_____

B.  All other relief the Court deems fair and just.

| | |
|---|---|
| <u>Andre Bisasor</u> | <u>/s/ Andre Bisasor</u>　　　　　<u>6/3/25</u> |
| Name of Filer | Signature of Filer　　　　　　　Date |
| | <u>(781) 492-5675</u> |
| <u>_____</u>　　<u>_____</u> | |
| Law Firm, if applicable　　Bar ID # of attorney | Telephone |
| <u>679 Washington Street, #8-206</u> | <u>quickquantum@aol.com</u> |
| Address | E-mail |
| <u>Attleboro, MA 02703</u> | |
| City　　　　　State　　　　　Zip code | |

TurboCourt.com Form Set #1692298

Attachment Page __1__ (of __1__ )

To Complaint
_____

**Additional Defendants(s)**

Defendant #2

Name: Mary Donais

Residence Address:  39 Buzzell Street, Manchester, NH 03104


Defendant #3

Name: Russell Hilliard

Residence Address:  579 Sagamore Ave, Unit 9, Portsmouth, NH 03801


Defendant #4

Name: Donais Law Offices PLLC

Business Address:  39 Buzzell Street, Manchester, NH 03104

Officer or Authorized Agent: Craig Donais

If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.

TurboCourt.com Form Set #11692298

**Filed**
**File Date: 6/3/2025 11:53 PM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE
HILLSBOROUGH COUNTY SUPERIOR COURT
NORTHERN DISTRICT

216-2025-CV-00529

True Copy Attest

*W. Michael Scanlon*

W. Michael Scanlon

Clerk of Court

July 8, 2025

Andre Bisasor, Plaintiff
v.
Craig S. Donais,
Donais Law Offices, PLLC,
Russell F. Hilliard, and
Mary K. Donais, Defendants.

## [RE-FILED] COMPLAINT AND DEMAND FOR JURY TRIAL

1. I, the plaintiff in this case (hereinafter "plaintiff"), in the above captioned case, hereby submit this complaint against the above-named defendants Craig S. Donais (hereinafter "Mr. Donais" or "Donais"), Russell F. Hilliard (hereinafter "Mr. Hilliard" or "Hilliard"), Donais Law Offices PLLC (hereinafter "Donais Law Offices"), and Mary K. Donais (hereinafter "Mary Donais" or "Ms. Donais" or "Donais' wife" or "Craig Donais' wife"), (hereinafter together collectively referred to as the "defendants"), for defamation, aiding/abetting defamation, breach of fiduciary duty, breach of contract (implied), breach of the covenant of good faith and fair dealing, racial discrimination and retaliation under section 1981 of the federal code, tortious interference with contractual or advantageous relations, consumer protection violations, abuse of process, civil conspiracy, intentional infliction of emotional distress, etc. The plaintiff demands a jury trial.

2. NB: The plaintiff hereinafter is also, where applicable, referred to in the first person, as "I", "me", "my", in addition to original term in the third person as "plaintiff".

---

## SECTION 1: INTRODUCTION AND OVERVIEW

---

## I. INTRODUCTION
### A. Summary of Allegations

3. This case is about holding lawyers accountable for defamation, and about sophisticated race discrimination by exploiting racism against two African Americans (including falsely saying that I accused him of race discrimination because simply he declined to represent me in a case which is patently false), and then going to the police to make false reports and to try to use the police to intimidate and retaliate against said African Americans (when said African Americans tried to hold him legally accountable for these false accusations and attempts at intimidation), thereby putting their lives in danger from police by making a false police report and falsely suggesting that they are dangerous criminals and more. The plaintiff will prove these allegations. In light of the defendants' malicious attempt to involve law enforcement against African Americans, this is a critically important case in this day of racial justice reckoning and in the aftermath of the death of George Floyd.

### B. Overview

4. This action arises from Defendants' deliberate and malicious campaign to defame, harass, and economically harm Plaintiff Andre Bisasor, an African American business consultant and community advocate, through fabricated police reports, racialized defamation, and abuse of legal processes. Defendants, attorneys Craig Donais and Russell Hilliard, Donais' law firm, and his spouse Mary Donais, exploited their professional positions and law enforcement connections to retaliate against Plaintiff after he sought legal counsel from Donais in 2017. The Complaint asserts actionable claims under New Hampshire common law and statutory frameworks, including defamation, racial discrimination, abuse of process, breach of fiduciary duty, and intentional infliction of emotional distress. The claims are timely under New Hampshire's savings statute (RSA 508:10) and are supported by factual allegations spanning 2019 to 2020, which are not time-barred.

5. This complaint arises from a pattern of egregious misconduct by the defendants, which includes the systematic breach of fiduciary duties, defamation, racial discrimination, consumer protection violations,

**This is a Service Document For Case: 216-2025-CV-00529**
**Hillsborough Superior Court Northern District**
**7/8/2025 3:23 PM**

abuse of judicial process, interference with contractual and advantageous relations, and intentional infliction of emotional distress.

6. The conduct of the defendants, particularly the actions taken in 2019 and 2020, demonstrates a deliberate and malicious effort to retaliate against the plaintiff, damage his reputation, and interfere with his lawful rights and interests.

7. The defendants' actions include the fabrication of false police reports, misuse of law enforcement relationships, and the strategic dissemination of defamatory falsehoods to law enforcement, community members, and third parties, all designed to intimidate, discredit, and retaliate against the plaintiff.

8. This complaint is timely filed under the New Hampshire savings statute, RSA 508:10, which preserves the rights of a plaintiff who voluntarily dismisses a federal action and refiles within one year.

9. The claims herein are based on events occurring from June 2019 through 2020, which are well within the statutory period, and are designed to ensure that justice is served by holding the defendants accountable for their misconduct, regardless of the prior federal proceedings.

10. The claims include breach of fiduciary duty, breach of implied contract, breach of the covenant of good faith and fair dealing, defamation, racial discrimination under federal law (Section 1981), consumer protection violations, abuse of process, interference with contractual and advantageous relations, and intentional infliction of emotional distress.

11. The defendants' conduct, as detailed below, satisfies all elements of each claim under New Hampshire law.

## II. PARTIES
### A. Plaintiff

12. The plaintiff, **Andre Bisasor**, is a resident of Massachusetts. He is an African American male. He is a Massachusetts citizen and has a Massachusetts domicile. The plaintiff is a business consultant in negotiation, conflict resolution, leadership and strategy and organizational development. He is also a trainer, professional speaker, and a conference organizer and convening authority, in the field of negotiation theory and practice. He has organized training and events, in negotiation, conflict resolution, leadership and entrepreneurship, for under-privileged youth in the local community and has served as a youth mentor and youth business plan competition judge in the city of Boston. He also has consulted with, coached, and advised minorities in negotiation and conflict resolution matters, including resolving employment disputes, school disputes, as well as including resolving race-related conflicts. He has also served as a local leader for the NAACP and has worked with police in event planning pertaining to police-community dialogue and mediation in order to improve relationships between law enforcement and communities of color. He is also a Christian minister of the gospel and has spoken/taught at local churches, and has spoken at Christian-related events in other parts of the country. He has multiple advanced/graduate degrees and credentials in the field of business/management and a degree in theology with a degree in hermeneutics. His reputation and livelihood have been severely harmed by the defendants' misconduct. Bisasor is a Massachusetts resident and African American professional specializing in negotiation, conflict resolution, and organizational development. His work includes mentoring underserved communities and fostering police-community relations. He is a recognized community leader, consultant, and advocate for racial equity and social justice

### B. Defendant Craig S. Donais

13. **Craig S. Donais**, an attorney licensed in New Hampshire and Massachusetts, who engaged in a prospective attorney-client relationship with the plaintiff in early 2017, and thereafter, he, including through his law practice and in coordination and with assistance from his wife and mentor Hilliard, engaged in conduct that violated fiduciary duties, engaged in defamation, and misused law enforcement relationships for retaliatory purposes, weaponizing confidential disclosures to fabricate defamatory narratives and retaliate against Plaintiff.

14. He is a white male and resides in NH. On information and belief, he is of age 52. He is also a republican and ran for local political office as a republican candidate in New Hampshire. Donais attended University of Massachusetts at Amherst in Amherst, Massachusetts and then he attended law school at Suffolk University Law School in Massachusetts.

15. Donais is an attorney that represented hotel defendants in a previous court proceeding with plaintiff and his spouse. Donais submitted a false affidavit to the court and committed perjury to that court. He also engaged in defamation of the plaintiff resulting in significant emotional distress for the plaintiff.

16. Donais has engaged in multiple instances of dishonest, deceptive, or misleading conduct including misrepresentation and even perjury.

17. Donais submitted false statements and fabricated statements about the plaintiff to other persons and those false statements harmed the plaintiff. He also engaged in defamation of the plaintiff resulting in tortious interference with contractual relations and significant emotional distress for the plaintiff.

18. several of the statements and actions of Donais, as alleged herein, were intended to reach a broad audience in the New England region including but not limited to Massachusetts.

19. At all times relevant to this case, the acts and statements by Donais occurred, culminated, or continued into the years 2019, 2020 and 2021 and even into 2022.

20. Donais made statements to the police that were directed at the plaintiff wherein Donais' goal, at least initially, was to intimidate and prevent plaintiff from being a witness in plaintiff's wife's attorney misconduct complaint case filed against him and to prevent the plaintiff from providing proof of his wrongdoing. It was a scare tactic.

21. Later on, in subsequent years, after it became clear that the plaintiff was standing up for himself and was seeking to hold him accountable for his misconduct and dishonesty, Donais' goal then included trying to turn the table around to assign false statements to the plaintiff, to disparate and discredit the plaintiff so as to try to make it difficult for anyone to believe the plaintiff's meritorious claims and allegations against him. These are known tactics of predators and abusers (as well as of bullies and sociopaths) who believe they can take advantage of minorities, with impunity, and who ruthlessly exploit a human bias that is prevalent in our society that tends to believe minorities less than they do white males

## C. Defendant Mary K. Donais

22. **Mary K. Donais**, the spouse of Craig Donais, actively participated in disseminating false allegations and coordinating with her husband to retaliate against and to injure the plaintiff. She is a white female and resides in NH. See further sections below.

## D. Defendant Russell Hilliard

23. **Russell F. Hilliard** is an attorney who conspired with Donais to suppress evidence, misrepresent facts, and perpetuate defamatory narratives and false accusations.

24. Defendant Russell Hilliard ("Mr. Hilliard" or "Hilliard") is an attorney who works with or represents Craig Donais. On information and belief, Hilliard is also a mentor as well as a personal and professional connection who helps Donais in a variety of personal and professional ways. Hilliard aids and abets the wrong acts of Donais and helps Donais to cover them up and help to perpetuate lies and dishonesty about these wrong acts.

25. NB: Hilliard and Donais both trade, in an unscrupulous manner, on the credibility afforded to lawyers. When you have dishonest lawyers, it wreaks havoc not only on the legal system but on the reputation of and trust in the legal profession and the court system as a whole.

26. On information and belief, at the behest of his client, Hilliard submitted false statements and fabricated statements to other persons. Hilliard made statements informally to these other persons so that these other persons could damage the plaintiff. He also engaged in defamation of the plaintiff resulting in the interference with contractual relations and significant emotional distress for the plaintiff.

27. Hilliard was his attorney at the time Donais went to the police in June 2019 and was involved in the emails sent to the police in 2020.

28. Hilliard has engaged in multiple instances of dishonest, deceptive, or misleading conduct including misrepresentation.

29. Hilliard is a white male. On information and belief, he was born in 1951 and is of current age 73.

### E. Defendant Donais Law Offices PLLC

30. Defendant Donais Law Offices PLLC ("Donais Law Offices" or "law office") is a law firm that is owned and managed by Donais. On information and belief, Defendant Donais Law Offices PLLC is the corporate "alter ego" of Craig Donais.

31. Donais is the sole member and manager of this corporate entity as well as the registered agent for this corporate entity.

32. Donais Law Offices has its location at 95 Market Street, Manchester NH, 03104, and which has another location that was the only address for this law office for many years, at 441 Willow Street, Manchester NH, 03103, which is a property that Craig Donais owns via a single member LLC.

33. Donais Law Offices is responsible for the conduct of its attorney Craig Donais.

34. Donais operates through and using his law office. The acts perpetrated by Donais occur through the operation of his law office. Donais and his law office are, for all intents and purposes, the same.

35. On information and belief, Donais is employed by his law office.

36. Donais Law Offices is vicariously liable for the acts of Craig Donais under a theory of respondeat superior where an employer will be responsible for the actions of its employee taken within the scope of employment.

37. NB: The Massachusetts Bar has Donais listed as carrying malpractice insurance that covers him for his practice of law in Massachusetts. See screenshot below.



38. For insurance purposes, it is not clear if Defendant Donais and Defendant Donais Law Offices are covered by the same malpractice insurance coverage or other insurance coverage. Only discovery will address this point. It is not clear if Donais is a personal guaranty for the debts of his law office business, or vice versa.

39. Therefore, in light of all of the above, the plaintiff believes it is prudent that both Defendant Donais and Defendant Donais Law Offices are named as defendants in this lawsuit.

40. Donais Law Offices, PLLC, is the law firm through which Donais operated, and it is vicariously liable for his misconduct. : Legal entity through which Donais committed ethical breaches and defamation.

41. All defendants acted in concert to achieve their unlawful objectives.

### III. NEW HAMPSHIRE SAVINGS STATUTE (RSA 508:10) AND TIMELINESS OF FILING
### A. Relevant Procedural History

42. It should be noted that, while this case was suspended or stayed for 2 years in the NHSC on appeal, the plaintiffs filed a new case in Massachusetts superior court (Bristol County) in 2022, in order to preserve statute of limitations for the subsequent acts of Donais, among other things.

43. The case was served and the defendant removed the case to Massachusetts Federal Court. The defendants then sought to dismiss the case but Judge William Young, after reading the papers and after hearing, decided that he would not dismiss the case but that he would transfer the case to the NH federal court, so as to eliminate any issue of personal jurisdiction (which he did not decide that issue). Judge Young stated that the claims should be heard on the merits and that was why he transferred the case rather than allowing technicalities to get in the way of the merits. The defendant had also requested in the alternative to transfer the case if the court did not dismiss on other grounds.

44. Once transferred to NH federal court, the defendants again moved to dismiss but the federal court did not dismiss the case, and allowed the plaintiff to file an amended complaint.

45. While the amended complaint was being reviewed, the NHSC sent the case back to this court and this case resumed. Because of that, there now would be two cases on similar facts and claims that would be adjudicated in both state court and federal court.

46. Plaintiff filed for voluntarily dismissal on the grounds that this case was further ahead because it had already decided/denied the motion to dismiss and was poised to enter the Answer stage, and thus so that the federal court claims can be consolidated with this prior filed case and so that all the related claims could be heard in one court. (The plaintiff has the right to re-file the case in one year from dismissal, under the NH savings statute, as long as the dismissal was without prejudice and not based on adjudication of the merits).

47. Note: The related federal case (Bisasor v. Donais (1:23-cv-00374) (D.N.H.)) was voluntarily dismissed by plaintiff Bisasor to refile it in state court. Thus, this related case that was previously filed in federal court was voluntarily dismissed because this Court resumed proceedings after a 2 year hiatus in the NH Supreme Court, and thus plaintiffs sought to have this court resolve all claims in this court, which were first filed in this court in Jan. 2020, which federal court action began after the stay was placed on this case in this court due to Donais' appeal. See screenshot below of notice of voluntary dismissal on 6-3-24.

48. Thus, the voluntary dismissal in federal court was intended to allow for refiling in this Court (under NH savings statute that allows for refiling of a case not dismissed on the merits or not dismissed with prejudice) and/or for consolidation with the claims in this action. Consolidation is imperative under N.H. Super. Ct. R. 113 to avoid duplicative litigation, address overlapping claims, and streamline discovery.

### B. NH Savings Statute

49. The primary New Hampshire statute commonly referred to as the "savings statute" is RSA 508:10. This statute allows a plaintiff whose action was dismissed for reasons other than a decision on the merits (such as a nonsuit or dismissal for procedural reasons) to refile the action within one year, even if the original statute of limitations has expired, provided the original action was filed within the limitations period.

50. The text and interpretation of RSA 508:10, as summarized by the District of New Hampshire, is:

> "The saving statute is 'designed to insure a diligent suitor the right to a hearing in court until he reaches a judgment on the merits.' … The New Hampshire Supreme Court interprets the savings statute with reference to '[i]ts broad and liberal purpose,' … which 'is not to be frittered away by any narrow construction.'"

51. Statutory Citation: RSA 508:10. New Action After Failure of Former.

> If judgment is rendered for the plaintiff and such judgment is arrested, reversed on a writ of error or on appeal, or if the plaintiff becomes nonsuit or the action is otherwise abated or dismissed without a judgment on the merits, the plaintiff may commence a new action for the same cause within one year after the abatement or other determination of the original action, and not afterward, provided the original action was commenced within the time limited by law.

52. The original federal complaint was filed on June 18, 2022, within the applicable statutes of limitations for the claims asserted (in particular for events occurring in 2019, 2020 or after). Thus, Plaintiff's original action (See NH federal court case 1:22-cv-00374) was timely filed on June 18, 2022, well within the statute of limitations for all claims. The plaintiff voluntarily dismissed that case without prejudice on June 3, 2024. Therefore, the voluntary dismissal on June 3, 2024, and refiling on June 3, 2025, comply with RSA 508:10, which permits a one-year window to reinitiate proceedings after non-merits dismissal.

53. Under RSA 508:10, the plaintiff is entitled to refile this action within one year of dismissal, which he has done, making this complaint timely. Claims arising from events occurring in June 2019 and throughout 2020 are not barred by the statute of limitations because they are part of the same transaction, series of acts, or continuing course of conduct that began before the federal case was dismissed.

54. The New Hampshire Supreme Court has consistently upheld RSA 508:10's purpose: to preserve claims where initial filings are dismissed on procedural grounds. See Bel Air Assocs. v. N.H. Dep't of Health & Human Servs., 154 N.H. 674 (2006).

55. The doctrine of continuing torts and the tolling provisions of RSA 508:10 support the plaintiff's right to seek redress for harm inflicted during this period.

56. Key tolling periods for 3 year statute of limitations of claims include Defamation, Consumer Protection (RSA 358-A) and other such claims with a 3-year limit in NH, which are tolled from June 2022. Note also that §1981 Racial Discrimination with 4-year federal limit (28 U.S.C. §1658) are tolled from June 2022.

57. Any efforts by defendants to characterize these claims as time-barred will be unfounded and contrary to the law.

### C. Other Considerations Pertaining To Statute of limitations

58. This case was filed on Saturday June 18, 2022. For events occurring on June 18, 2019 as well as subsequent events in 2020, in 2021 and 2022, there are no statute of limitations issues for such claims in this complaint since, at a minimum, there were less than 3 years that elapsed between these events and the filing of the complaint on June 18, 2022. Once the NH savings statute is applied, those events and related claims are on time.

59. It should be noted that although the case was filed on Saturday June 18, 2022, the actual 3 year deadline for claims carrying a 3 year statute of limitations (which most civil claims in NH have) would have been Monday, June 20, 2022 given that June 18, 2022 fell on a Saturday and thus according to the rules, the deadline would bump over to the next business day of Monday June 20, 2022, which is when plaintiff e-

filed complaint was docketed by the court which it was first filed, after plaintiff had e-filed it on Saturday, June 18, 2022 and of which there is proof of it being electronically filed on June 18, 2022.

60. Since the core events alleged started on or about June 18, 2019, or otherwise in or around June 2019, then either way the plaintiff is covered regarding any statute of limitations issue for this complaint for claims that carry a 3-year statute of limitations.  Also, for any events that took place in 2020 or after, there are no statute of limitations issues for any claims in this complaint. Similarly, for plaintiff's 93A claims and racial harassment claims under Section 1981, those have a statute of limitations of 4 years if counting from the events that occurred in June 2019.

---

## SECTION 2: FACTS

---

### IV. SUMMARY OF FACTUAL ALLEGATIONS
#### A.  The Initial Contact and Confidential Relationship:

61. In early January 2017, Plaintiff consulted Donais for legal advice on a landlord-tenant dispute and engaged in a confidential discussion with Craig Donais regarding this dispute. During this engagement, Donais obtained confidential information about the plaintiff's personal circumstances, legal concerns, and litigation plans including case strategies and exploration of case strengths and weaknesses. Under the applicable rules of professional conduct, Donais owed a fiduciary duty of confidentiality and loyalty to the plaintiff, even if formal representation was not accepted. During this call, Plaintiff disclosed confidential information, triggering fiduciary duties under New Hampshire Rule of Professional Conduct 1.18. Donais declined representation but later exploited this interaction to harm Plaintiff.

#### B. Fabricated Criminal Allegations:

62. In August 2020, Donais made false statements to his wife, his adult son, his family members, his friends, his colleagues and to certain state agency employees accusing Plaintiff of hacking into his office and planning to physical harm his wife and young child, and that plaintiff posed a criminal threat to his family. These allegations exploited racial stereotypes and lacked factual basis.

63. Donais repeated these accusations to colleagues, community members, and law enforcement, alleging Plaintiff was dangerous and mentally unstable.

#### C. The Fabrication and Dissemination of False Police Reports (2019–2020):

64. From June 2019 through 2020, the defendants engaged in a coordinated campaign to retaliate against the plaintiff. This campaign included the fabrication of false police reports alleging criminal conduct, harassment, and threats, which were entirely baseless and fabricated out of malice.

65. Donais, in particular, filed multiple police reports falsely claiming that the plaintiff had engaged in criminal acts, such as hacking, threats, and intimidation, with the intent to damage his reputation and prevent him from pursuing lawful activities.

66. The false police reports were disseminated strategically to law enforcement agencies, community organizations, and the media, with the intent to stigmatize the plaintiff, incite law enforcement scrutiny, and interfere with his personal and professional relationships.

67. Donais's relationships with law enforcement officers and community leaders facilitated the rapid spread of these falsehoods, which were designed to intimidate the plaintiff and discredit his reputation.

#### C. Retaliatory Use of Law Enforcement and Judicial Relationships:

68. The defendants exploited their relationships with law enforcement officers and judicial officials to escalate their retaliation.

69. Donais and his spouse, Mary Donais, actively communicated with law enforcement officials, providing false information and false reports, which led to unwarranted investigations, surveillance, and harassment of the plaintiff.

70. These actions were not only malicious but also a deliberate abuse of the law enforcement process, constituting a clear abuse of judicial and administrative procedures.

71. The defendants also engaged in a pattern of intimidating witnesses, discrediting the plaintiff's reputation through false statements, and leveraging their influence to undermine his standing in the community.

72. These acts were part of a broader scheme to retaliate against the plaintiff for asserting his rights and exposing misconduct.

### D. Abuse of Judicial Process:

73. Donais and Hilliard filed frivolous motions in unrelated cases to drain Plaintiff's resources and discredit his claims.

74. Donais weaponized police resources to harass Plaintiff, including pressuring officers to pursue groundless investigations.

### E. The Impact on the Plaintiff:

75. As a direct result of the defendants' misconduct, the plaintiff suffered severe emotional distress, reputational harm, loss of employment opportunities, and financial damages and economic and reputational harm. The defamation caused Plaintiff to lose business contracts, and community standing. Also, as a result of Donais' lies, the Manchester NH Police initiated unwarranted surveillance of the plaintiffs based on Donais' false reports.

76. As African-Americans, the Plaintiffs' personal safety was thus compromised, and they faced ongoing harassment and intimidation.

77. The defendants' conduct has caused irreparable harm, and the plaintiff seeks redress through this action.

### F. False & Defamatory Statements to the Police in 2020

78. In August 2020, Defendant Craig Donais escalated his campaign of retaliation by filing additional baseless police reports with the Manchester Police Department, falsely alleging that Plaintiff and his wife posed an imminent threat to Donais' family. These statements, devoid of factual basis, exploited racial stereotypes and weaponized law enforcement to intimidate Plaintiff. Donais claimed Plaintiff intended to harm his wife and young child, prompting unwarranted police surveillance and community stigmatization. These allegations were not only fabricated but were disseminated to third parties, including Donais' professional network and local media, further amplifying their defamatory impact.

### G. Pattern of Malice and Racial Animus

79. Defendants' conduct reflects a calculated effort to exploit Plaintiff's race as a tool of harassment. By falsely portraying Plaintiff as a "dangerous criminal" and "mentally unstable," Donais invoked harmful stereotypes historically used to marginalize African Americans. This pattern is evidenced by:

80. Targeted Defamation: Donais repeatedly described Plaintiff using racially coded language (e.g., "aggressive," "irrational") in police reports and private communications.

81. Exploitation of Law Enforcement: Donais leveraged his relationships with Manchester police officers to initiate biased investigations, violating NH Civil Rights Act protections against racial profiling.

82. Economic Sabotage: The defamation caused Plaintiff to lose consulting contracts and housing opportunities, directly linking the harm to Donais' racialized narrative.

### Facts Pertaining to Defamation

83. In 2019 and 2020, Donais stated, published, repeated, republished and continued false and defamatory statements purported fact about or concerning the plaintiffs as follows.

   a. Donais falsely stated that plaintiff falsely and frivolously accused him of racism for declining to represent plaintiffs in a 7 minute prospective attorney-client phone call. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials. This claim does not concern any statements made to a court or in a court pleading. These statements were made in 2019 and/or 2020.

   b. Donais falsely stated that plaintiff burglarized and bugged his office phone and office thus committing a felony crime. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials. This claim does not concern any statements made to a court or in a court pleading. These statements were made in 2019 and/or 2020.

    c.   Donais falsely stated that plaintiff fabricated a recording to put Donais' voice on it to make Donais say things Donais did not say. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials. This claim does not concern any statements made to a court or in a court pleading. These statements were made in 2019 and/or 2020.

    d.   Donais falsely stated that plaintiff is a criminal and/or criminal offender. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials. This claim does not concern any statements made to a court or in a court pleading. These statements were made in 2019 and/or 2020.

    e.   Donais falsely stated that plaintiff is mentally crazy/has a mental disease-sickness. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials. This claim does not concern any statements made to a court or in a court pleading. These statements were made in 2019 and/or 2020.

84. These statements were made not in court proceedings and when there was no court proceeding that was ongoing. They are not and cannot be privileged.

85. These statements are defamatory. These statements are lies. These statements are patently false. There is no truth to them whatsoever. When Donais made these statements, he knew these were false. He made up these statements out of whole cloth. He had perfect knowledge that the opposite of what he said was true. He thus maliciously and wantonly made these false defamatory statements. These statements are capable of a defamatory meaning. It is for the trier of fact to determine whether these are defamatory, and to look to the context and circumstances of these statements and the motive behind them to conclude whether there was defamation or defamatory intent. Donais made these statements with ulterior motives, to deflect from his misconduct and to intimidate, harass and retaliate against the plaintiff.

86. Any reasonable person would reasonably want to vindicate their right to stop the reputational harm from such false and injurious statements. To state or imply that someone is or did any of the above is per defamatory. By defaming plaintiffs, Donais sought to publicly humiliate plaintiffs and force plaintiffs to live with a continual question mark over plaintiffs.

87. Donais made/published these false and defamatory statements as alleged above to third parties, including but not limited to family members including his spouse and adult children, his friends and colleagues including Nate Linstad, Dave Akridge, and others as well as to other persons such as police officers, and others, outside the context of any judicial proceeding, and that these statements are not protected by absolute privilege. These include the following:

    a.   Donais made these false statements about Bisasor and Anderson to his wife, Mary Donais.

    b.   Donais made these false statements about Bisasor and Anderson to his Adult son, Garret Donais.

    c.   Donais made these false statements about Bisasor and Anderson to his friend Dave Akridge.

    d.   Donais made these false statements about Bisasor and Anderson to his friend Nate Linstad.

    e.   Donais made these false statements about Bisasor and Anderson to his friends on the board of a local Manchester NH non-profit organization.

    f.   Donais made these false statements about Bisasor and Anderson to his friends who are also or who happen to also be members or staff on police force of the Manchester NH Police.

    g.   Donais made these false statements about Bisasor and Anderson to other police officers, who may not have been his friends, of the Manchester NH police department.

    h.   Donais made these false statements about Bisasor to staff members at the ADO.

    i.   Donais made these false statements about Bisasor to other government officials of the state of New Hampshire.

    j.   Donais made these false statements about Bisasor to his friend and colleague Robert Obrien.

    k.   Donais made these false statements about Bisasor to Elliott Berry.

    l.   Donais made these false statements to others about Bisasor after he wrote the false affidavit and filed it in a court in 2017.

88. These claims are asserted by both Anderson and Bisasor, and Donais' conduct injured both plaintiffs, including through statements made to family, friends, and to others, as well as to the ADO, to police.

89. A Massachusetts Superior Court where a Massachusetts Superior Court judge found that false accusations of racism by Donais, if proven, are valid grounds to seek a defamation claim. Thus, this Massachusetts precedent directly validates plaintiffs' defamation claims.

90. Further, the New Hampshire Attorney Discipline Office ("ADO") opined in an ADO proceeding, in September 2020 that, if Donais did and said the things alleged by plaintiffs (concerning the false accusations of racism) and they are false, it would constitute defamation and should be brought in a lawsuit (as the ADO is not designed to resolve defamation claims that are better suited to be resolved in a court of law).

91. These claims are asserted by both Anderson and Bisasor, and Donais' conduct injured both plaintiffs, including through statements made to the ADO, to police, to family and friends, and to others.

## V. FURTHER ON DEFAMATION
### A. False Accusation of Race Discrimination Accusation

92. Donais made false statements about me that are defamatory and damaging to the plaintiff's reputation, and injurious to the plaintiff's legal rights. The very purpose of him making these statements was to damage the plaintiff and harm the plaintiff's reputation and credibility.

93. For example, Donais made written statements to others saying that the plaintiff accused him of race discrimination because he (Donais) declined to represent the plaintiff, in a case against a defendant hotel, that the plaintiff became upset and angry because he (Donais) declined representation and thus accused him (Donais) with no reason or basis of being a racist.

94. This was based on nothing and no actual facts that occurred, but it was manufactured by Donais to attack the plaintiff with an inflammatory accusation that could stick because the plaintiff is black. This is dog whistle racism intended to hurt and harm the plaintiff's reputation.

95. These statements by Donais were made with malicious intent and reckless disregard of the truth.

96. In making these statements, Donais was motivated by racial animus and intended to exploit the plaintiff's race as a black man and to use it against him.

97. These false accusations (by Donais) of race discrimination accusation by the plaintiff is tantamount to him playing the "race card in reverse".

98. The statements by Donais were false, disparaging, and negative statements about the plaintiff. It is analogous to a man saying that a woman falsely and frivolously accused him of rape, based on no reason or facts that occurred. If the woman made no such accusation, then the statement is defamatory and harmful to her reputation and intended to create despise and contempt of her in the community, much less if presented to a court or to law enforcement or others. It would be intended to paint the woman as a crazy irrational woman seeking to falsely accuse a man of rape. The same is true in this case where Donais falsely stated that the plaintiff frivolously accused him of race discrimination as such a statement is likewise defamatory and harmful to the plaintiff's reputation and intended to create despise and contempt of the plaintiff in the community and the public.

99. Donais' false and defamatory statements were gratuitously and maliciously made in order to harm, annoy, embarrass, humiliate, and burden and oppress the plaintiff. It had no other purpose.

100. Donais completely fabricated a lie and perjured himself in the process to publicly malign the plaintiff. The plaintiff felt utterly violated and harmed that someone-an attorney nonetheless--would exploit the issue of racism, which is something so painful for so many people in this country, just so that he could help his former client and friend to win a court case or so that he could advance his law career/business.

101. Donais was trying to undermine the plaintiff's valid concerns and real experiences related to the discrimination and retaliation suffered at a defendant hotel (which matter was settled several years later), in order to make it seem as though the plaintiff was irrational and predisposed to groundlessly, frivolously, without any cause, falsely accuse him of being racist (which the plaintiff did not do, and which is completely false).

102. Donais fabricated and utilized his lie about racism to willfully intimidate plaintiff and to interfere with and injure the plaintiff because of the plaintiff's race, and it was done, initially, in connection with the

plaintiff's federally protected right to patronize a public accommodation and later republished and perpetuated to others in order to exact revenge on the plaintiff and/or to intimidate, harass, burden and retaliate against the plaintiff.

103.    Donais' acts were motivated by racial animus, and it was done to exploit the plaintiff's race to bring harm to him. He targeted the plaintiff exploiting the fact that the plaintiff is black and thus use race as a weapon against the plaintiff. Blacks are generally vulnerable to these kinds of attacks and stirred up sensibilities in light of today's racial polarization. He wanted to make a caricature of the plaintiff as despicable untrustworthy, irrational human being. It is a form of racialized character-assassination and a racialized attack against the plaintiff.

104.    Donais only brought up, falsely, that the plaintiff accused him of racism because the plaintiff is Black. It was thus racially motivated. If the plaintiff were White, such a fabricated lie would not stick.

105.    Moreover, Donais had ulterior motives in that he wanted to intimidate the plaintiff and to shut the plaintiff up and to silence the plaintiff (and his wife). He was also using this racial element to protect his colleagues and his friend and longtime client. He thus set out, initially, to damage the plaintiff (and his wife) in their pocketbook, in their housing, in their legal rights and in their case. He also essentially tried to interfere with their contracts and their housing by trying to wrongly and perjuriously influence another court against them. Thereafter, Donais republished these false statements in order to try to protect himself from an attorney discipline misconduct case and to intimidate the plaintiff to prevent him from pursuing a misconduct case against Donais and offering evidence or testimony against him.

106.    These statements are untrue and harmed the plaintiff.

107.    Subsequently and additionally, Donais has repeated and republished his false defamatory statements about the plaintiff on more than one occasion and has continued to publish these defamatory statements with impunity and abandon.

108.    Plaintiff's reputation has been damaged by Donais' false allegations.

109.    Donais knew the statements made were false and deliberately inflammatory when he made them.

### B. Police Statements

110.    Donais knew the statements made to the police were false and deliberately inflammatory when they were made.

111.    Donais' statements to the police are not protected by privilege, because they were not made during the course of a judicial or quasi-judicial proceeding.

112.    Donais' statements to the police are not protected by privilege, because they were made with a reckless disregard of the truth.

113.    Donais cannot raise any privilege defenses, because they do not protect false statements made to the police.

114.    Upon information and belief, Donais made false allegations against the Plaintiff, because he saw an opportunity to further his law career/law business, and to sure up personal solidarity and advantage with his former client (regarding which he was disqualified for conflict) for personal gain/future business with his former client in the relevant hotel case, etc., by creating a false race card story against a black couple who was in the process of seeking to pursue a lawsuit against a hotel, the principal of which was a friend and business client of Donais.

115.    Plaintiff's reputation has been damaged by Defendant's false allegations.

116.    Defendants knew the statements made were false and deliberately inflammatory when he made them.

117.    Defendants acted with actual malice, because he was highly aware his statements made about the Plaintiff to the police were a lie.

118.    Defendant Hilliard acted with actual malice because he was highly aware that Defendant Donais' statements to the police about the plaintiff were false. Defendant Hilliard was involved in or aided/abetted or facilitated the false allegations about the plaintiff.

119.    Defendant Hilliard is grossly irresponsible because he allowed Defendant Donais to publish false statements about the plaintiff in furtherance of his personal agenda.

120.    Defendant Hilliard acted in a grossly irresponsible manner without due consideration for the standards of integrity for the legal profession.

121.    Plaintiff has been damaged in an amount in excess of the jurisdictional amounts of the court and in amount to be determined by a jury at trial.

## C. Other False Accusations and False Statements

122.    Donais also made statements to others that implied or suggested falsely and maliciously that the plaintiff was dangerous and suggesting falsely that the plaintiff was going to (or was) capable of hurting and harming his wife and young child, among other things. By the way, these unfounded accusations about dangerousness and harmful intent were also ascribed to the plaintiff's wife.

123.    Donais made false statements/accusations about the plaintiff in June 2019, falsely accusing the plaintiff of manufacturing and fabricating his voice to make it look as though he made statements that he did not make (or otherwise that the plaintiff was capable of or prone to do such things).

124.    Donais made false statements/accusations about the plaintiff in June 2019, falsely accusing the plaintiff of suffering from (or suggesting that the plaintiff suffers from) a mental disease.

125.    Donais made false statements/accusations about the plaintiff in 2020 to the police, falsely accusing the plaintiff of violent criminality or being a dangerous criminal threat.

126.    Donais made false statements about the plaintiff to Hilton attorney Shelagh Michaud and misrepresented that he wanted to engage in settlement negotiations with me/my spouse along with the Hilton defendants.

## D. Other Claims

127.    As will be more fully elucidated below, the defendants committed other wrongs and tortious acts including but not limited to tortious interference with advantageous relations, abuse of process, violations of consumer protection act, civil conspiracy, intentional infliction of emotional distress, etc.

---

# VI. FURTHER ON FACTUAL ALLEGATIONS AGAINST DEFENDANT CRAIG DONAIS

---

## A. SUMMARY OF FALSE & DEFAMATORY STATEMENTS

128.    Donais made false statements/accusations about the plaintiff that indicated/suggested that the plaintiff frivolously (i.e., groundlessly and irrationally without cause, reason or justification) accused him (Donais) of racism because simply he declined to represent the plaintiff as a client, and of which Donais has since caused multiple republications to occur to different audiences on different occasions[1].

129.

   a.    These false statements/accusations were made against the plaintiff to the police in or around June 2019 including in written form using email to the police, as well as orally to the police but which was captured on video.

   b.    Donais has communicated these statements to several police officers including to friends and/or colleagues on non-profit boards that he serves with or together on, as well as to other colleagues, friends and/or family including his wife and his sons (including his adult son).

   c.    These statements are patently false. There is no truth to them whatsoever.

   d.    When Donais made these statements, he knew these were false. He made up these statements out of whole cloth. He had perfect knowledge that the opposite of what he said was true. He thus maliciously and wantonly made these false defamatory statements.

   e.    These statements are capable of a defamatory meaning. It is for the trier of fact to determine whether these are defamatory, and to look to the context and circumstances of these statements and the motive behind them to conclude whether there was defamation or defamatory intent.

---

[1] NB: These false statements/accusations were also made against the plaintiff via false statements to other citizens including his friends and/or colleagues such as Mr. Dave Akridge and Mr. Brian Snow in 2017. This is pertinent in that it serves as background showing a persistent pattern of dishonest and defamatory conduct by Donais. This will be revisited in further detail later in this complaint.

Donais made these statements with ulterior motives, to deflect from his misconduct and to intimidate, harass and retaliate against the plaintiff.

130.     Donais made false statements/accusations about the plaintiff in June 2019, falsely accusing the plaintiff of manufacturing and fabricating a recording with Donais' voice to make it look as though Donais made statements that he did not make (or otherwise that the plaintiff was capable of or prone to do such things).

    *a.*     *"I would also not put it past them that they actually fabricated a recording, and claims that it is part of a conversation that they had with me."*

    *b.*     *"Um, and candidly, I wouldn't put it past them to have a recording and to have altered or doctored, the recording, because their, their grasp on reality is very tenuous."*

131.     Donais made false statements/accusations about the plaintiff in June 2019, falsely accusing the plaintiff of suffering from (or suggesting that the plaintiff suffers from) a mental disease/sickness.

132.     Donais made false statements/accusations about the plaintiff in 2020, falsely accusing the plaintiff of violent criminality or being a dangerous criminal threat, to the police.

    c.     Donais, in August 2020, made further allegations to the police suggesting that the plaintiff and his wife are dangerous criminals and that Donais and his wife/family/sons were in danger from the plaintiff and his wife because the plaintiff and his wife were going to come to their home, particularly when Donais was not there, to physically harm his wife and his children including a young child.

    d.     Donais also pleaded for special protection from the police and to have them assign regular monitoring protection for him and especially his wife and young child because of the danger/threat that the plaintiff and his wife posed, because the plaintiff and his wife were going to come to their home, particularly when Donais was not there, to physically harm his wife and young child.

    e.     Donais requested special police protection or enhanced police observation of his home and neighborhood to be on the lookout for the plaintiff and his wife.

    f.     Donais also used the word "offenders" to describe the plaintiff and his wife and juxtaposed that word "offenders" with the allegation that Donais' wife and young child were in physical danger from the plaintiff and his wife. Combine that with the allegations, which he repeated with an attachment, to the police, that the plaintiff fabricated recordings or that the plaintiff and his wife are the type of people that do those kinds of things, and that the plaintiff and his wife were crazy or had a tenuous grasp on reality, etc., serves to bring Donais' defamatory "hit-job" to a crescendo, which caused the police to spring immediately into action with a department-wide alert, warning the entire police department to be on alert to look out for the plaintiff and his wife. The police credited these false statements by Donais as true, and expressed sympathy for Donais, his wife and his children believing that the allegations were true, and believing that Donais had knowledge of undisclosed facts as the basis for stating that the plaintiff and his were going to physically harm him, his wife, and his children.

    g.     When Donais made these statements, he knew these were false, that neither myself nor my wife posed any danger to him, his wife, or young children and that there was no basis in fact for alleging or asserting such allegations against the plaintiff and his wife. In fact, Donais had information showing that the opposite was true. He thus maliciously and wantonly made these false defamatory statements.

    h.     These statements are capable of a defamatory meaning. It is for the trier of fact to determine this and to look to the entire context and circumstances of these statements and the motive behind them to conclude whether there was defamation or defamatory intent. Donais made these statements with ulterior motives, to deflect from his misconduct and to intimidate, harass and retaliate against the plaintiff.

    i.     The defamatory nature of these statements made in August 2020 were reinforced by the previous defamatory statements made by Donais to the police in June 2019. When combined together, the total picture that Donais had communicated about the plaintiff to the police, was intended to diminish the esteem with which the plaintiff was held, to injure the plaintiff's reputation and credibility and bring contempt to the plaintiff's name and to potentially cause the plaintiff to be

harmed or, worse killed, in potential escalated encounters with the police brought to fruition by Donais' false, reckless, and defamatory statements to the police.

j.    Similarly, Donais invoked and introduced his wife as being involved in this defamatory scheme by citing her in the defamatory email to the police in August 2020.

## B. DONAIS' FALSE/DEFAMATORY STATEMENTS TO HIS FAMILY MEMBERS/WIFE

133.    To establish a claim for defamation, a plaintiff must prove four elements: (1) the defendant made a false statement to a third party, (2) of or concerning the plaintiff, (3) that was capable of damaging the plaintiff's reputation in the community and that caused the plaintiff economic loss or is actionable without proof of economic loss, and (4) the defendant was at fault. See Ravnikar, 438 Mass. at 629-630, 782 N.E.2d 508.

134.    The prima facie elements of a slander claim are: "the publication of a false and defamatory statement by spoken words of and concerning the plaintiff." Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996), citing Restatement (Second) of Torts §§558 and 568 (1977). "In order to be actionable, the statements must have been published, i.e., communicated to at least a single individual other than the person defamed." Ellis, 41 Mass.App.Ct. at 636.

135.    Donais made false defamatory statements to his wife and to his family members including his eldest adult son Garrett Donais.

136.    Donais made statements attributing to his wife the allegation that the plaintiff was going to physically harm her. Why did she think that? How would she have come into knowledge about certain alleged facts about the plaintiff that would lead her to conclude that the plaintiff was going to harm her?

137.    It is self-evident that Donais told his wife lies about the plaintiff that made her think that the plaintiff was going to physically harm her and her young child.

138.    The plaintiff had never said anything about Donais' wife to Donais or to anyone. The plaintiff did not know Donais' wife or know about Donais' wife or know anything about Donais' wife until Donais himself brought her up in his emails to the police in 2020.

139.    It can be inferred that the only way that Ms. Donais could think that the plaintiff was going to physically harm her is for Donais to have told her defamatory things about the plaintiff that were not true, things that led her to think that the plaintiff was dangerous, violent, and criminal and that the plaintiff was going to physically harm her and her young child.

140.    Publishing a statement to only one third party is enough to establish defamation. This includes false defamatory statements to family members including wife and sons, etc.

141.    A false statement by a husband to his wife is still defamation just as how a false statement by a son to his father or a daughter to her mother is still defamation. Family members do not have unfettered right to make false statements about other people to their family members. See Johnson v. Queenan, 12 Mass. L. Rptr. 461 (2000)(court holding that statements by daughter to her mother about her rape were only conditionally privileged and therefore subject to being overcome by proof of malice, recklessness, excessive publication, etc.).

142.    Without the false defamatory statements made to her by husband, Ms. Donais would likely not have had any reason to think that the plaintiff was dangerous, violent and criminal, and that the plaintiff was going to physically harm her and her young child.

143.    The plaintiff was also harmed by this defamation in that it evidently caused Ms. Donais to get involved in the scheme to report the false allegation to the police. Similarly, Donais inserted his wife's name into the email and into the allegation to the police against the plaintiff.

144.    This suggests that Donais lied to his wife and that stirred up his wife and then his wife him up to act against the plaintiff. On information and belief, they fed off each other building these lies and false allegations where they encouraged each other with making a police report and request special police protection. Because Donais invoke the involvement of his wife in the making of the false police report, this is part of the reason why the plaintiff has added her as a defendant in this case. Ms. Donais' involvement includes not only aiding/abetting defamation but also tortious interference with advantageous relations and civil conspiracy. Based on Donais' own words, Ms. Donais evidently provided encouragement and assistance in making the defamatory report to the police.

145.   NB: In the dark history of this country, defamatory lies have been told countless times to stir up crowds to lynch black men by riling them up with falsehoods about how they intended to hurt or harm the wives of white men. This should not be countenanced in any way, shape or form in the 21st century America. I believe a jury would find this abhorrent disgusting lie to be wholly unacceptable, wholly damaging and punishable to the fullest extent of the law.

## C. FALSE & DEFAMATORY STATEMENTS TO THE POLICE IN 2019

146.   Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

147.   In June of 2019, Donais went to the police wherein he made several statements, via email and video interview, that were false and defamatory. These statements were not made as part of or in furtherance of a court proceeding. These statements were made with malice, with knowledge of their falsity, and made recklessly with the intent to injure the plaintiff. These statements were not privileged.

148.   These false statements/accusations indicated/suggested that the plaintiff frivolously (i.e., groundlessly and irrationally without cause, reason or justification) accused Donais of racism because simply he declined to represent the plaintiff as a client.

149.   These false statements include accusations that the plaintiff manufactured and fabricated Donais' voice to make it look as though he made statements that he did not make.

150.   Also, these statements include accusations that the plaintiff suffered (or suggested that the plaintiff suffered) from a mental disease or sickness.

151.   Similarly, these statements were made in malice and reckless disregard of the truth and are not privileged.

152.   Donais' false written statements propagated to the police include but is not limited to the following:

"*He challenged my declination, at which point I told him my practice does not include racial discrimination cases, and even if I did, I would need perform a check for conflicts before undertaking representation. Upon hearing this, Andre became upset and asserted that Attorney O'Brien had represented to him that I would take his case. This was very strange since I had made the exact opposite statement to Attorney O'Brien. I recall repeatedly telling Andre that I was not interested in the case, that the timeline was unworkable, and that representation in discrimination cases was not within my practice. He noted that I did real estate work, and questioned why I was declining to represent him such that he intimated I was discriminating against him which I immediately denied since it was not true. I then ended our telephone conversations.*"

153.   Donais accused the plaintiff essentially of ridiculously, baselessly, and frivolously calling Donais a racist. Donais thus used what is known or referred to as "the race card" (which is a pejorative reference to the illegitimate and groundless insertion of racism accusations into a situation), when in actuality Donais himself was the one trying to illegitimately and groundlessly exploit the sensitive issues related to race by using it as a preemptory strike with his bald lie against the plaintiff. Donais thus tried to manipulatively (or perhaps masterfully) "play the race card" on the plaintiff. Aside from this being outrageous behavior, it was truly troubling that a licensed attorney would go that far to try to damage and disparage someone through such blatant and scurrilous lies. This was particularly despicable because it appears that Donais was relying on racial bias to achieve his ends--he was hoping that those who heard his false statements would immediately take a hostile disposition towards the plaintiff. Yet Donais completely fabricated this story. The plaintiff felt utterly violated in that someone—an attorney nonetheless--would so exploit racism, which is something so painful for so many people in this country.

154.   Contrary to Donais' ridiculously false assertion, at no time did the plaintiff claim that Donais was discriminating against the plaintiff because Donais did not take the case. This is a nonsensical allegation. It just does not make sense in the context of such a discussion for the plaintiff to assume and allege that Donais was discriminating against the plaintiff. Moreover, what would the plaintiff hope to gain? To force him to represent the plaintiff? What kind of representation would that be? It is just not credible. Moreover, this is an unadulterated lie. This is for a jury to determine who is more credible and who is telling the truth.

155.   Donais blatantly made up out of "whole cloth" the idea that the plaintiff accused him of discrimination. This is not a matter of interpretation of words. The plaintiff did not utter any such words that could even

15

be misinterpreted. No such words left the plaintiff's mouth. In fact, to the contrary, the conversation between the plaintiff and Donais ended amicably and on good terms. There was no abrupt ending. Donais has blatantly and unscrupulously lied about the plaintiff accusing him of discrimination which is a blatant and dangerous lie. This demonstrates that Donais is the kind of person who would bear false witness against others and is capable of lying to put someone in jail/prison by false testimony. As such he is a disgrace to and a blithe on the legal profession. It is even worse that Donais has chosen to tell such a despicable lie on an African American man. If Donais has lied about the plaintiff making this statement (which Donais did), then this issue, though it began as a conflict of interest issue, it is about Donais falsely accusing the plaintiff of accusing him of discrimination, which becomes evidence of an attempt to use the plaintiff's race against the plaintiff (i.e. the "race card" in reverse).

156.    Donais was trying to use the plaintiff's race against the plaintiff, by accusing a black man of making ridiculous false accusations of discrimination with the intent to imply that because he is a black man, it should be believed that he made such ridiculous false accusations.

157.    Further support that Donais lied can be seen by certain witnesses who can establish from the circumstances that Donais did not tell anyone about these accusations at the time of these outrageous statements attributed to the plaintiff. NB: Because it is rare to garner direct evidence of an individual's state of mind, a plaintiff may rely on circumstantial evidence to prove that a defendant had actual knowledge that the statements were false, or had serious doubts about their accuracy. Levesque v. Doocey, 560 F.3d 82, 90 (1st Cir. 2009). See Bose Corp. v. Consumers Union of U.S., Inc., 692 F.2d 189, 196 (1st Cir. 1982), aff'd, 466 U.S. 485 (1984) (subjective determination whether defendant in fact entertained serious doubts about truth of statement may be established by inference "as it would be very rare for a defendant to admit such doubts"). See also Murphy, 449 Mass. at 57-58 (determination of defendant's subjective state of mind may be made based on circumstantial evidence).

158.    These circumstances includes statements, at the time, from Donais' friend, colleague and client Dave Akridge, Donais' co-counsel Karl Terrell, opposing counsel Elliott Berry, as well as his own statements made to a court (Judge Paul Moore) and in certain emails created by Donais himself, all at around the time that he first made these false statements, showing that he never said, claimed, alluded to or suggested that the plaintiff made those accusations of racism. These statements demonstrate that Donais is lying with respect to his accusation that the plaintiff accused him of race discrimination.

159.    These statements from several other persons show that:

k.    At no time did Donais mention in a contemporaneous email chain with Dave Akridge and Karl Terrell, the accusation of discrimination against Donais by the plaintiff, at which time Donais was asked to describe what was said in that conversation between Donais and the plaintiff, and at which time Donais had a clear and compelling opportunity to tell others what the plaintiff said to him, but yet with all of that time and opportunity, and despite being asked or called upon to describe the conversation he had with the plaintiff, somehow Donais left out the accusations of racism, out of what he said the plaintiff had said to him.

l.    At no time in his contemporaneous discussions with Attorney Elliott Berry did Donais mention the accusation of discrimination against Donais by the plaintiff, at which time Donais was asked to describe what was said in that conversation between Donais and the plaintiff, and at which time Donais had a clear and compelling opportunity to tell what the plaintiff said to him, but yet, again, with all of that time and opportunity, and despite being asked or called upon to describe the conversation he had with the plaintiff, somehow Donais again left out the accusations of racism, out of what Donais said the plaintiff had said to him.

m.    At no time during the court statements with Judge Moore did Donais mention the accusation of discrimination against Donais by the plaintiff, at which time Donais was asked to describe what was said in that conversation between Donais and the plaintiff, and at which time Donais had a clear and compelling opportunity to tell what the plaintiff said to him, but yet, again, with all of that time and opportunity, and despite being asked or called upon to describe the conversation with the plaintiff, somehow Donais still again left out the accusations of racism, out of what he said the plaintiff had said to him.

n. At no time did Donais mention in contemporaneous conversations with co-counsel Karl Terrell that the plaintiff ever told him about an accusation of discrimination against Donais by the plaintiff, at which time Donais was asked to describe what was said in that conversation between Donais and the plaintiff, and at which time Donais had a clear and compelling opportunity to tell what the plaintiff said to him, but yet, further again, with all of that time and opportunity, and despite being asked or called upon to describe the conversation with the plaintiff, somehow Donais, yet further again, still left out the accusations of racism, out of what he said the plaintiff had said to him.

o. The fact that Donais did not tell anyone about this accusation at or around the time that the plaintiff allegedly made that accusation, is evidence that it is a complete fabrication made up much later after the fact.

p. The key question here is why would Donais not bring this up earlier? Why not bring it up to the judge at the time, to Mr. Akridge, to Mr. Terrell, to Mr. Berry, or to anyone? Why did he neglect to bring it up then? And why would he suddenly first remember this titillating and sensational fact only 2 or 3 months later? All of this indicates that this was a bald unadulterated lie. There is nothing credible about it. It does not ring true. It does not fit the circumstances. It does not make logical sense that the plaintiff would say such a thing in the context of Donais declining to take case. It is unnatural, strained, and tortured. It is simply unbelievable. In the context of a 7-minute conversation, why would the plaintiff manage to shoot off an accusation of racism against Donais?

q. NB: The plaintiff believes that if these circumstances are brought to a trier of fact or to a jury, it will be clear to them that Donais lied.

160. This "race-card" accusation by Donais again the plaintiff is blatantly false, and it self-evidently smells very fishy that such a sensational fact was omitted from every version of Donais' recollection of the events at a time when the events were much closer in proximity and memories would be fresher, and certainly way prior to any such statements being published or republished by Donais to the police in June 2019.

161. Donais fabricated and utilized his lie about racism to willfully intimidate me and to interfere with and injure the plaintiff because of his race.

162. Donais has falsely styled himself as a victim of a false accusation of being called a racist by the plaintiff.

163. This despicable lie by this white attorney of law perpetrated on the plaintiff was intended to target the plaintiff because of his race. It was intentional and it was motivated by racial animus/racial bias.

164. It is also a tort of libel/defamation.

165. Nothing angers people more than a person who falsely accuses a white person of racism. This is a major sore point in today's culture.

166. Donais was trying to exploit racial tensions in our society to harm and discredit the plaintiff. He wanted to really damage the plaintiff. Donais was inciting fragile racial sensibilities and attitudes, and intended to exploit a culture of hostility towards those black people who are presumed to "cry wolf" about racism. Donais was seeking to fan the flames of racial tensions and used it as a form of a weapon against the plaintiff. Donais weaponized the race card issue and deployed it against the plaintiff.

167. It is a form of racialized character-assassination and a racialized attack against the plaintiff.

168. Donais only brought up that the plaintiff accused him of racism because the plaintiff is black. It was thus racially motivated. If the plaintiff were white, such a fabricated lie would not stick.

169. Moreover, Donais wanted to intimidate the plaintiff (and his wife) and to shut the plaintiff up and to silence the plaintiff.

170. In the above statement, Donais falsely implied and affirmatively intended to imply that the plaintiff had invented a racism accusation, essentially as a hoax, based on the groundless basis that he declined to represent the plaintiff. It was intended to make it seem that the plaintiff was irrational, crazy, in concocting a racism accusation based on nothing or based on a silly reason.

171. The false statement was published with knowledge of its falsity and/or with reckless disregard for the truth.

172. Donais knew it was false to state that the plaintiff accused him of racism because he declined to represent the plaintiff.

173. Donais knew that the plaintiff did not accuse him of racism at all.

174.   Donais' defamatory claim that the plaintiff had accused him of racism for declining representation was false. Donais knew he was lying when he said that the plaintiff had accused him of racism for silly reasons, that he himself had invented out of whole cloth.

175.   He knew the plaintiff was telling the truth when the plaintiff denied making the statement after the plaintiff found out about his statement but yet he persisted in saying to several third parties that he was telling the truth and that the plaintiff was not telling the truth.

176.   Because these statements were first written and later put on a video recording and because they tend to injure the plaintiff in his profession or trade, they constitute defamation per se and libel per se.

177.   They tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information. Because the statement affected the plaintiff or may have affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute libel per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

178.   The plaintiff has suffered harm as a direct result of Donais' false, defamatory statement, which caused injury to plaintiff's reputation, honor, and dignity.

179.   Plaintiff has suffered professional harm as a direct result of Donais' defamatory statement.

180.   Donais has injured the reputation upon which the plaintiff based his business and livelihood as a consultant.

181.   Donais made his false statement with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effects on the plaintiff and his rights.

182.   Donais' false and defamatory statement caused the plaintiff to suffer reputational, emotional, and professional harm.

### D. FURTHER ON FALSE STATEMENTS AND LIES MADE BY DONAIS TO THE POLICE

183.   Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

184.   Donais made or provided numerous false statements to the police about the plaintiff as well as to others including his friends, colleagues and family members.

185.   Donais' false statements are contradicted by the following facts, as follows.

186.   Contrary to Donais' assertion, Donais had no difficulty understanding the plaintiff as the plaintiff spoke clearly. During the call, Donais signaled that he understood the plaintiff by saying "yes", or "ok", etc., throughout the conversation and at certain points made clear comments in response to the plaintiff statements or questions. This appears to be nothing but a veiled attempt to try to cast me as some foreigner who could not speak proper English. The only language the plaintiff speak is English. English is not a second language. So, Donais' insinuations should be treated as what it is, i.e., veiled attempt to negatively imply illiteracy or a language impediment on my part.

187.   Contrary to Donais' assertion, the plaintiff did not say or mention his last name on the call with Donais. In fact, it was Donais who called the plaintiff and when the plaintiff answered the phone, Donais asked to speak to "Andre", and the plaintiff simply stated, "this is he". At no time did the plaintiff mention his last name and at no time did Donais reference the plaintiff's last name and at no time did Donais ask the plaintiff about his last name.  In fact, the only way for Donais to have known the plaintiff's last name, at that time, was for Donais to have received that information from Mr. Akridge or Mr. Terrell.  Given that Donais initiated the call and given that neither the plaintiff nor Donais mentioned or asked about or discussed the plaintiff's last name whatsoever, Donais' reference to hearing what sounded like "bedsore as a last name" on the call is completely fabricated and reflects an intention to play on the plaintiff's uncommon or unusual-sounding last name to imply that the plaintiff was some kind foreigner who spoke poor English. [NB: The plaintiff is well-educated with multiple advanced graduate degrees, as well as other graduate credentials, from select universities in the US].

188.   Contrary to Donais' assertion, Donais did not ask the plaintiff if he got Donais' name and number from his friend and colleague Robert Obrien ("Mr. Obrien").

189.    Contrary to Donais' assertion, the plaintiff did not indicate to Donais that the plaintiff received Donais' name and number from Mr. Obrien.

190.    Contrary to Donais' assertion, the plaintiff did not "challenge" Donais' declination of representation.

191.    Contrary to Donais' assertion, Donais did not tell plaintiff that he did not do race discrimination cases.

192.    Contrary to Donais' assertion, the plaintiff did not mention the words "race", "racism", "race discrimination", "discrimination", "discriminating" or "discriminate" (or any variation of those words) in the plaintiff's conversation with Donais. Neither did Donais mention nor say any of those words on the call.

193.    Contrary to Donais' assertion, Donais did not tell the plaintiff that he would need to perform a check for conflicts before undertaking representation.

194.    Contrary to Donais' assertion, the plaintiff was not upset and did not become upset at any point in time during the conversation with Donais. The call ended amicably and in polite fashion with no hint of anger, or of a disagreement or argument whatsoever.

195.    Contrary to Donais' assertion, the plaintiff did not tell Donais that Mr. Obrien told the plaintiff that Donais would take the plaintiff's case.

196.    Contrary to Donais' assertion, Donais did not repeatedly tell the plaintiff that he was not interested in the case and that representation in discrimination cases was not within his practice. Again, there was no mention whatsoever of the term "discrimination" or "race" by Donais.

197.    Contrary to Donais' assertion, the plaintiff did not "note" that Donais did real estate work, and the plaintiff did not "question" why Donais was declining to represent the plaintiff when there was a "real estate" element.

198.    Contrary to Donais' assertion, the plaintiff did not become even more upset that Donais was declining to represent him.

199.    Contrary to Donais' assertion, the plaintiff did not intimate, suggest, insinuate that Donais was discriminating against the plaintiff.

200.    Contrary to Donais' assertion, at no point in time did the plaintiff accuse Donais of race discrimination.

201.    In fact, the plaintiff did not at any point utter or use the words "discrimination", "discriminating" or "discriminate" in any form or context, at all, whatsoever on the call with Donais. Neither did the plaintiff utter or use the words "race" or "racism" on the call with Donais.

202.    Contrary to Donais' assertion, Donais did not "immediately deny that he was discriminating against me", because in fact the plaintiff never made any such accusation. There was nothing for Donais to deny. Donais completely made up, fabricated and manufactured this lie out of thin air.

203.    Contrary to Donais' assertion, Donais did not end the telephone call. The call was mutually ended in a respectful, amicable, polite and friendly manner.

204.    Contrary to Donais' assertion, Donais did provide the plaintiff with legal advice during the call.

205.    Contrary to Donais' assertion, Donais did receive private, confidential privileged communications from me on the call.

### E. DONAIS' INTIMIDATION/HARASSMENT INTENT VIA POLICE

206.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

207.    Donais has leveraged his relationships with police officers and brought undue influence to push for them to do him a favor, to target two African American citizens, which is unconscionable in this day and age when the misuse of police force and resources as well as wrongful arrest and wrongful prosecution against African Americans are under intense scrutiny, and when there have been urgent and intense calls for criminal justice reform involving the over-policing, over prosecution and over-incarceration of black people.

208.    Donais evidently believes that the police is at his disposal to threaten and harass black people for any and everything and that the police will do his bidding.

209.    This situation with Donais enlisting the police to investigate the plaintiff and harass the plaintiff, for an alleged crime that is time-barred and that at most would be only a minor possible alleged misdemeanor reflects a pattern.

210.    This also is in the context of a nationwide epidemic of white people using police to terrorize black people for baseless or frivolous issues, trumping up lies against them in order to harm, harass, injure, retaliate, oppress or burden black people.

211.    Donais said things to the police that riled them up, that he exaggerated, embellished and fabricated accusations in order to try to make his allegation "stick" and to try push it pass a certain threshold of actionality.

212.    These kinds of trumped-up sensational allegations can result in people being falsely arrested, especially when directed at black people.

213.    Donais was attempting to trump up a prosecution for an alleged time-barred possible misdemeanor involving a recording that purportedly would prove the attorney's dishonesty/perjury, against an African American grievant who filed an ADO complaint against that attorney for race-based felony perjury.

214.    NB: Donais had no knowledge of any recording or any facts about any recording, and he insinuated to police that if there is a recording, he thinks it could be of him relating to the call with the plaintiff and Donais, but this was rank speculation. Anyone taking a high school course in logic would know that this is rank speculation. Donais did not know what recording was referenced, whether it was video or audio or stenographic recording, whether it was of him (Donais) or someone else, what date or time it occurred (if it occurred at all), and he did not know who made the recording, what state/city the recording was made in, if it was recorded by someone else, if it was captured inadvertently, if it was of a voicemail, or a court proceeding, etc. He had no idea. And Donais knew this was not enough to make a police report. So, he used his relationships with the police to push a frivolous and baseless investigation and possible prosecution.

215.    He further made up this wild, crazy, and absurd allegation indicating or suggesting that the plaintiff hacked or bugged his telephone system at his office (thus recording/compromising all of his calls with his other clients). This is a nasty allegation to make based on no evidence and based on speculation. It is also patently false and defamatory. It is also far-fetched if not ridiculous.

216.    First, to bug his office is a crime. Also, it is implied that burglary was also involved. So with that statement, Donais was accusing the plaintiff of multiple crimes/felonies. This is patently false and defamatory.

217.    Furthermore, Donais' reckless speculative false statement was based on a vague non-specific sentence in a letter to the ADO from plaintiff's wife, that stated as follows: "(Note: There is also a recording that the plaintiff would like to share with the Discipline Office to prove the dishonesty of Mr. Donais.)". This is what Donais based his false speculation on and nothing else. This is what Donais expected the police to go on to open an investigation and to pursue possible police prosecution. Yet this statement is vague, non-specific, and could mean almost anything. It did not say the recording was of Donais. It just said there is evidence that could prove the dishonesty of Donais (note the syntax and grammatical construction of the sentence). It did not say how the recording was created or obtained. It did not say who created or obtained it. It does not say what format the recording was in or created in (i.e. video, audio, pictorial or stenographic). [NB: For example, a video recording is not illegal in any state. Neither are stenographic recordings that captures and translates words contemporaneously into writing. It did not say when it was recorded i.e. what date or time. It did not say if it was a recording of an open public event or not. It did not say what state the recording occurred i.e. if the recording occurred in a one-party consent state. Anything else is rank speculation. Anything to fill in the blanks is speculation. Anything done to make choices as to the meaning of the above when it is so vague is speculation.]

218.    But yet Donais had attended a court hearing where both the plaintiff and plaintiff's wife attended and where the court provided a copy of the recording of the hearing to the plaintiff and the plaintiff's wife, which Donais knew of, and of which recording shows the dishonesty of Donais (wherein he in fact was disqualified by a judge for conflict of interest). Also, there was a voicemail left by the plaintiff on Donais answering machine prior to him calling the plaintiff back to have a phone conversation, a recording of

which voicemail message of the plaintiff shows the dishonesty of Donais. Donais knew that these could have been the basis for showing his dishonesty but ignored that to focus only on a call that he had with the plaintiff about a prospective client relationship.

219.    It should be noted that Donais' actions and statements to the police indicate that Donais was worried that the reference to a 'recording' could be a recording of his call with the plaintiff (and, logically, this worry could only stem from the fact that he had a guilty conscience and knew that he lied). Two days after receiving a decision by the ADO dated on or about June 10, 2019, wherein he was informed that he would be investigated by ADO for misconduct based on a complaint by the plaintiff's wife, Donais became worried and ran to the police to make this police report on June 11, 2019. He wanted to react quickly to stop evidence from coming out in that ADO investigation i.e., evidence that he thought, in his mind, could hurt him. But why not wait until the recording that claimed to show his dishonesty was shared in the ADO process? Why not wait for more information to come out in the ADO process to determine exactly the nature of this recording? Why the rush to go to the police after the docketing of the ADO complaint on June 10, 2019? What was Donais hoping to accomplish by making his police report on June 11, 2019?? On or about June 10, 2019, the ADO announced that it was now docketing the ADO complaint against Donais for investigation. The temporal proximity of the event of the ADO announcement of docketing on June 10, 2019 and the initial act of contacting the police on or about June 11, 2019 by itself establishes a basis for inferring that the two events were related and that Donais was motivated by retaliation, harassment and a desire to suppress evidence (that he thought in his mind could possibly be out there and could hurt him). [NB: This was over 2 years after the purported event/call occurred in 2017].

220.    After Donais contacted the police, the police then immediately (same day) called the plaintiff's phone number in Massachusetts and left an ominous message. The plaintiff was intimidated by the message. As an African American, such ominous contact from the police was intimidating. Donais accomplished his mission of intimidation, of sending a message to the plaintiff and the plaintiff's wife, to back off from pursuing any attorney misconduct complaint against Donais.

221.    It should be noted that when the plaintiff first called Donais' phone number back in 2017 to inquire about possible legal assistance, Donais did not answer. So, the plaintiff left a voicemail on Donais' voicemail. However, there was a recording of that voicemail, in the plaintiff's own voice only, that was left on Donais' voicemail system (it was not a conversation but only a voice message). Yet, with that contact from the police that came shortly after the filing and docketing of an ADO complaint, the plaintiff was made to feel as though the plaintiff should not participate in any ADO misconduct proceeding against Donais because Donais had police friends and connections that would harass the plaintiff if the plaintiff did so. This concern about unfair, baseless, trumped-up targeting or harassment by police of an African American because of the instigation of angry white men intent on intimidating black people, or worse, is not a light thing given the deeply problematic history in this country between law enforcement and African American population as a whole. Donais knew this and exploited this dynamic to achieve his ends of intimidation with threat of police force or police action behind it.

222.    Conversely, if the police had actually prosecuted or arrested the plaintiff or the plaintiff's wife based on the report by Donais they received from Donais at the time (back in June 2019), it would have had the effect of immediately stopping the ADO complaint against Donais in its tracks. That would have been the intent and effect of Donais actions in going to the police when he did and in the manner that he did. Such a baseless prosecution, grounded on a vague allegation, would eventually have had to be dismissed not only because it baseless and vague, but also because it was based on a time-barred allegation of a simple misdemeanor (i.e., an alleged illegal recording of a conversation by one of the parties to the conversation) that allegedly occurred at least two years prior in 2017. But Donais knew that. As an attorney himself, he knew that misdemeanors only have a 6 month to, at most, one year statute of limitation. Yet, regardless, all that Donais needed was for the police to contact the plaintiff, which would be to effectively send a message; and/or Donais wanted the police to try and arrest the plaintiff and any of those acts would have stopped any ADO complaint from moving forward either because of intimidation/witness tampering or because the plaintiff would not be available or able to participate in any ADO proceeding against Donais while fighting a police arrest charge/prosecution. Fortunately, there was no arrest and no prosecution because of

lack of evidence, but Donais did not care that the prosecution would end up nowhere. Donais' intent was to harass, intimidate, retaliate against, punish, scare, oppress, and burden the plaintiff, and to suppress evidence that he thought the plaintiff had (not what the plaintiff's wife said we had but that he surmised we had). He was trying to stop the evidence that he thought we had, from coming out. His intent and state of mind is clear. He only went to the police shortly after he was informed on or about June 10, 2019, that the ADO had docketed an attorney misconduct complaint against him. Then about day or two later, evidently in a frantic state of mind, worried that he was caught red-handed by a recording that would show that he committed perjury, he went to his police connections and tried to harass us and retaliate against us and to suppress this evidence, he thought in his mind that we had, by getting his police contacts to push to open a frivolous investigation and to immediately get the police to call us so that we would know there was a police investigation underway against us.

223.     NB: If Donais was telling the truth, why would there be anything that could prove his dishonesty? Moreover, why was he so concerned about this purported recording so much so that he assumed, or thought, it was of the call he had with the plaintiff in 2017? This shows that Donais knew he lied about what was said on that call and he was worried that a recording of such a call would expose him as a liar and this could expose him further to attorney discipline sanctions, including but not limited to attorney disbarment. The indication that Donais had a guilty conscience, and that this guilty conscience was driving his behavior above, is further shown by one of his statements to the police via an email conversation that he initiated with his police friends/connections in June 2019, which states:

> **Craig Donais**: Nate: I wanted to check with you about a potential criminal issue. I have a potential client who I declined who has filed an action against me, but now claims that they have a recording of my conversation with them. If they have a recording of a conversation with me, it was done without my consent or knowledge, which would be in violation of the Wiretap statute, as NH is a 2-party state. I would also not put it past them that they actually fabricated a recording, and claims that it is part of a conversation that they had with me. You will note that they admit to this recording in the last sentence of the paragraph at the top of page 3 in this pdf. Can I file a police report on this, and start a process to determine whether this is worthy of prosecution? See you tomorrow at Crimeline! Craig

> **Officer Nate Linstad**: I can't open the attachment bc I'm in the woods in northern nh. Sgt brennan will be at the Crimeline meeting for me tomorrow and will be showing the new paperwork. But just reading the email I would have you talk to detectives and have them look into it for sure.

> **Craig Donais**: Thanks. Can you put me in touch with someone specifically to look into this?

> **Officer Nate Linstad**: I will forward it to Houghton.
> **Officer Nate Linstad (to Officer Patrick Houghton)**: This guy is from the crimeline. Can you help a brother out?"

224.     First, it should be noted that Donais' suggestion that we claimed to have a recording of his conversation with us or me, or that there was an admission was made that we had possession of recording of a conversation with him, was false. The letter to the ADO that he referred to, made no such claims and Donais knew that. The only thing stated in the letter to the ADO was one sentence that there was a recording that proved the dishonesty of Donais. But there were many actions and/or statements made by Donais that was being challenged by the ADO complaint filed by my wife including statements he made in a court hearing to a judge in January 2017. Donais did not know if that was what was being referred to. Moreover, that one sentence did not identify Donais as the person recorded. There were other conversations with other witnesses or statements by other people than Donais that could have been recorded (which in fact there was a recording of my voicemail left for him, which voicemail proves his dishonesty as it contradicts, with hard proof, statements that Donais made about that voice message by me that he made in affidavit to the court in 2017). Also, that one sentence did not identify when the recording

was made, who the parties to the conversation were, nor if the recording was in video, audio or stenographic form. Neither a video recording (i.e., video alone) nor a stenographic recording are unlawful[2].

225.    Either way, Donais did not know if there was a recording of his voice and if such a recording was of the call he had with me in 2017. Hence, it was false for him to tell the police that we "now claims that they have a recording of my conversation with them" and that we "admit to this recording." Neither I nor my wife claimed or admitted to having a recording of his conversation with me in 2017. Donais at best is engaged in rank reckless speculation or at worst is intentionally, with his clever lawyer skills, trying to mislead the police into thinking that I or my wife had made an admission that I or my wife illegally recorded him in a conversation that I had with him in 2017. Neither I nor my wife made any such admission whatsoever in the above. The point here is that this goes to Donais' intent and state of mind at the time he sent this email to the police in June 2019. Here, Donais was making false or misleading statements to the police to try to ratchet up the allegations in order to sway the police to begin a police investigation on something that was so vague and speculative, that no other regular civilian would have made this complaint to the police nor would any other police (other than Donais' police friends/connections) have entertained such a report from a regular civilian based on such rank vague non-specific reckless speculation.

226.    To add further insult to injury, Donais also then further ratchets up his allegations by telling the police that "I would also not put it past them that they actually fabricated a recording, and claims that it is part of a conversation that they had with me". Here, Donais, tries to "go in for the kill" (proverbially), by telling the police that we were the type of people that were so dishonest and so low in character that we would actually go to the trouble and lengths to fabricate a recording with Donais' voice in order to prove that Donais was dishonest and had committed perjury. Donais was communicating to the police that he had knowledge of undisclosed facts that indicated that we were not only despicably dishonest but also were criminal or capable of treacherous criminality since fabricating a recording and presenting it as evidence in a proceeding could or would constitute a crime of tampering with evidence or falsifying evidence. I cannot emphasize enough here how much of a nasty serious allegation is being made by Donais here. Donais has accused us of committing a crime or that we are criminals with a history of committing such crimes. This was clearly intended to discredit us and destroy our reputation and integrity with the police. But why did Donais do this? What was his motive here? It can be inferred that Donais knew that he was dishonest about what he had stated was said in the call between him and I, in early 2017, as presented by him in his 2017 affidavit. He was concerned that should there be a recording, he knew that such a recording would show that he had perjured himself and thus subject him to not only disbarment but perjury prosecution. The

---

[2] NB: There are a few states in this country that make it unlawful (a misdemeanor) to record a conversation (i.e., audio/voices) with another person, in which one is a party, without the knowledge of the other party to the conversation. However, the majority of states as well as federal law does not that make that unlawful at all. See United States v. White, 401 U.S. 745 (1971)(taped conversations between the defendant and another which were recorded without the defendant's knowledge or consent but with the consent of the other party are admissible and do not violate the defendant's Fourth and Fifth Amendment rights); see also United States v. Fanning, 477 F.2d 45 (5th Cir. 1973), cert. denied, 414 U.S. 1006 (1974)(The consent of one party to the conversation eliminates any claim of illegality as to the recording per se even when the government had participated in the recording.). So, if one party is located in say Rhode Island (which is a one party consent state) and the other party is located in New Hampshire (which is a two-party consent state), and the party in Rhode Island records a call with the other person in New Hampshire, it is not unlawful in either Rhode Island or New Hampshire since the recording of the call would have taken place in Rhode Island (i.e., that is where the recording device would have been located if the person in Rhode Island recorded the call). Moreover, even with respect to New Hampshire, there are certain exceptions to the illegality of a party recording a conversation, in which they are party to, without the knowledge of the other party to the conversation, and those exceptions include that there has to be present, with respect to the conversation, a reasonable expectation of privacy (or otherwise an implied waiver of consent), and there has to be a knowing intentionality on the part of the party doing the recording, as well as a more obscure exception known as a public interest exception (where it involves a matter of high importance to the public and the greater good, or something to that effect). For example, if two people are in New Hampshire and a conversation is recorded by one party without the knowledge of the other party, but there was no reasonable expectation of privacy in that conversation (i.e., such as in a hotel lobby, public park, or otherwise where the conversation can be heard by others, etc.), then it is not unlawful. Similarly, if there is a recording that was inadvertently recorded without the specific intent to do so, such as can happen with modern technology like Alexa or Google voice, etc., then that recording is not unlawful. Several New Hampshire courts have ruled on these issues and the New Hampshire Attorney General has put out an advisory opinion on these matters from some time ago. Conversely, all states in this country and federal law make it unlawful, including bumping up to a felony, if a third party (one who is not party to a conversation), records two or more other parties without their knowledge.

stakes were very high for Donais. So, he preemptively sought to discredit any such possible recording, in advance of the production of such a recording or in advance of any knowledge or confirmation that such a recording existed. This would be the only logical explanation for why Donais, without more, was so concerned about this purported recording and why he felt it necessary to preemptively strike at the credibility, authenticity or veracity of such a purported recording. This is evidence of a guilty mind or guilty conscience. If Donais was innocent and had not lied, then he would not have been so worried and he would not have needed to think ahead to discredit a purported recording that he did not even know if it existed, or what would be on it if it existed. An innocent person would welcome a recording of a disputed event because it would show he is innocent or telling the truth about the event. However, a guilty person who is guilty of lying would not welcome such a recording because he would know that he would be proved to be lying. The fact that Donais was trying to suppress any recording from coming out in the ADO proceeding by preemptively and prematurely contacting the police to get involved with contacting me and my wife before any ADO investigation was under way and by preemptively assuming that if a recording of him existed, it would automatically show that he was lying, shows that Donais, in his own mind, knew that he was lying. These circumstances show that Donais entertained serious doubt about the truth of his statements.

227.    NB: Here, Donais used his connections to gain access to the inside track at the police station in order to push through, push up and fast track his complaint against us. Donais misled Officer Nate Linstad in making it sound like a current matter i.e. "I have a potential client."[3] This was done to hide the fact that the matter involved a two-year old allegation of a misdemeanor that would be time-barred from prosecution.

228.    Donais also lied saying that "but now they claims that they have a recording of my conversation with them". We did not say we have a recording of Donais or have a conversation with him. It was also egregiously untrue, false and defamatory for Donais to tell officer Linstad that he "would also not put it past them that they actually fabricated a recording, and claims that it is part of a conversation that they had with me." Donais has no basis to claim or allege that we would actually fabricate a recording and claim that it is part of a conversation with Donais. This is a preposterous and outrageous assertion. This was intended to sensationalize the allegations in order to incite the police to act and push through the complaint and start a prosecution.

229.    Donais also states: "Can I file a police report on this, and start a process to determine whether this is worthy of prosecution?" This is Donais pushing for, instigating a prosecution in order to harass us. Donais knows there is no chance that this prosecution is valid because the matter is over 2 years old and at most could be a misdemeanor which has a statute of limitations of only 1 year at most. Yet, Donais pushes here for a prosecution, lying to and misleading the police by saying it is a current matter (i.e., "I have a potential client") and by totally fabricating the sensational and inflammatory allegation that we fabricated a recording.

230.    Moreover, Donais' last comment "see you tomorrow at Crimeline", tops off his clear intent to leverage his relationship with the police to drum up a trumped-up baseless prosecution against us, as harassment and in retaliation for bringing the ADO complaint which had just been docketed a day or two before. In fact, when Officer Nate Linstad says that he was out of town, and would not be there for the crimeline meeting the next day, Donais was not satisfied to wait. Donais instead pushed and pressed Officer Linstad for immediate action as if the matter was urgent. Donais said "Can you put me in touch with someone specifically to look into this?" Donais wanted fact swift action. But why? There was nothing imminent in the ADO matter. Donais had just been notified by the ADO that the case had been docketed (as of or around June 7 and/or June 10, 2019) and Donais was informed that he had 30 days to respond to the ADO complaint by July 10, 2019. There was nothing pressing or so urgent that required immediate same day action by him or by the police, other than the fact that Donais was afraid that there was a recording proving his dishonesty that would be submitted to the ADO. Donais wanted to put a stop to that. By contacting the police, and having them initiate an investigation including contacting us, it would at least send a message to us that if there was a recording that showed his dishonesty, it better not be produced. By getting the

---

[3] NB: It should be noted here that Donais admits that I am or was a client/potential client, which furthers goes to the breach of fiduciary claim/legal malpractice claim, which is further outlined in this complaint. Thus, Donais cannot deny that I was a client.

police to investigate or prosecute us, it would serve as intimidation, harassment and retaliation for starting this ADO process in the first place.

231.    It should also be noted that Donais went further to also tell another police officer, Officer Dan Whelan, in a recorded interview on June 18, 2019, the following:

232.

> "Um, and candidly, I wouldn't put it past them to have a recording and to have altered or doctored, the recording, because their, their grasp on reality is very tenuous."

233.    So, on at least two occasions, Donais communicated to a police officer that I fabricated or doctored a recording. But why would Donais make such a statement? Why does he evidently seek to get out in front of this issue of a recording showing his dishonesty, by prematurely pointing to a recording that I would have fabricated, altered or doctored to show his dishonesty? The only reason to say such a thing to the police at this juncture is because he had a guilty conscience and was trying to preemptively provide an explanation if in case there was a recording showing that he was lying. This is a critical point. It shows that Donais entertained serious doubts about the truth of his statements and that he knew that he lied about the accusations of racism, and that he was afraid that a recording would or could expose him to be a liar. He knew that this lie could expose him not only to disbarment but to a felony perjury prosecution. So, he evidently was thinking ahead, in case a recording showed him to be lying, in that he would have already presented a cover story to cast doubt on the veracity of such a recording should such a recording be produced. But why anticipate at all that anyone could produce such a recording, showing that he was lying? Why even go there? Why even imagine that as a probable outcome? Because he knew that he was lying. It speaks to his state of mind at the time he made these statements to the police. See St. Amant v. Thompson, 390 U.S. 727, 88 S. Ct. 1323 (1968 ("[R]ecklessness amounting to actual malice may be found where the defendant deliberately ignores evidence that calls into question [his] published statements"); St. Amant, 390 U.S. at 732 ("recklessness may be found where there are obvious reasons to doubt" the truth of the published statements). The US Supreme Court has established that a finding of "reckless disregard" requires evidence…that the author "in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 730-731 (1968). See also McAvoy v. Shufrin, 401 Mass. 593, 598-599 (1988). The above statements provide evidence that Donais had obvious reasons to "doubt" the truth of his published statements and also that Donais "in fact entertained serious doubts as to the truth of his publication."

234.    Further proof of Donais lying can be shown by a recording of a voicemail left by me in my voice for Donais prior to the call with him a couple of days later in 2017[4]. NB: These statements were later republished and embellished in statements by Donais to the police in June 2019.

    **r.  Donais statement regarding voicemail I left in my voice for Donais.**

        i.  Donais' statement made back in 2017 in an affidavit:

> *"On Friday, January 6'', after I had left for the day and after business hours, an office telephone message was received requesting a return call from a Massachusetts phone number requesting assistance on a real estate matter. The caller's message was hard to understand"*.

        ii.  Here Donais states that I stated I was requesting assistance on a real estate matter and that it was hard to understand my message.

    **b.  Donais statement to the police on 6-18-19 via a recorded interview[5] states:**

---

[4] NB: To be clear, the point here is that there is evidence from witnesses of certain events and conversations that occurred in 2017 that can be used to show, and that will show, that Donais was being dishonest in his statements to the police in June 2019. This shows not only that Donais lied in his 2017 affidavit but that he lied to the police in his June 2019 police reports and recorded interviews. It therefore offers proof of false statements by Donais in support of my defamation claim, among other things.

[5] NB: A full transcript of this recorded video interview or the video recording itself and be produced in its entirety in further proceedings of this case.

      i. At time marker 19:27 on the video recording of Donais' interview with the police, Donais stated the following:

> "Craig (19:27): ….he left kind of this mumbly rambling message. He was a little hard to understand.  He had a little bit of a, an accent with it. And I couldn't tell whether it was a, a Southern accent, a foreign accent. It was just not a, it was not a new England accent. We'll just say that…he was a bit mumbling. And I think I'm putting the affidavit that **his last name sounded like bedsore.**
>
> Detective:  Okay.
>
> Craig:  I later found out it's Bisasor. Uh, but I think just the, the way he pronounced it quick and **listening to the recording**.
>
> Detective:  Yeah.
>
> Craig:  Um, so it was just, uh, call me back. I've got a real estate matter. I want to discuss…"

      ii. Here, Donais clearly tells the police that my voice message was mumbly and rambling, and was hard to understand.

      iii. He clearly tells the police that I left my last name on the voicemail and that my last name "sounded like bedsore". Donais went to the trouble to come up with this detail.

      iv. Please note that at this point in time on 6-18-19, Donais had not received the facts about the voicemail recording. Donais did not know we had a recording of that voicemail, nor did he know what we would say about his version of it. Donais simply knew that it would be he said/she said regardless of whatever we said.

      v. The recording of the voicemail clearly shows that Donais is lying and that he lied to the police. This is 100% proof that Donais lied to the police.

c. A Tape Recording of the Voicemail in 2017 (of My Voice)[6] states the following:

> "*Hello, my name is Andre and I am calling about a tenant legal matter. I understand that you practice landlord-tenant law. I wanted to see if I could discuss a legal matter with you. Please give me a call back at 781-492-5675. The matter is somewhat urgent so if you can, please call be back as soon as it is practical.*"

d. The above shows that Donais made false statements about the message I left for him in 2017.

      i. I did not say my last name.

      ii. I did not say "real estate" matter.

      iii. I did not leave an unclear message that was hard to understand.

e. Moreover, Donais has had this voicemail on his own system since 2017. He would have known that his statements were not true or accurate.

f. Yet he still goes and says in an affidavit, and later to the police that I said "real estate matter", that the message was hard to understand and that I left my last name on the voicemail, which are all false.

g. Although these are not the most critical statements to show as false, in this case, it does show a carelessness with the truth by Donais and that the details of his affidavit and his subsequent statements to the police do not add up or comport with the facts. This undermines credibility for the rest of his statements. This is further supported by Attorney Elliott Berry below.

235. Attorney Elliot Berry's Notes[7] of His 1-17-17 Call with Donais:

h. Donais 2017 affidavit:

---

[6] This recording of my voice for this voicemail left for Donais in early 2017 can be produced to this court, in further proceedings at summary judgment or trial. Obviously, I cannot attach a recording to this complaint.

[7] NB: These notes were produced verbatim by Attorney Elliott Berry to the ADO in 2020 and be produced in its entirety in further proceedings of this case.

"*On the morning of Monday, January 9, 2017, I returned the call and spoke with a person who identified himself as "Andre", and what sounded like "Bedsore" as a last name.*"

i. **Donais statement to the police on 6-18-19 via a recorded interview**. At time marker 19:27 on the video recording of Donais' interview with the police, Donais stated the following:

"Craig (19:27): ….And I think I'm putting the affidavit that **his last name sounded like bedsore.**"

j. Attorney Elliott Berry's Notes of 2017 Call with Donais:

"*In regard to the phone call with Andre on Jan 9, he says that he spoke to "some guy" he didn't get any specific facts from Andre--that he is not even sure that Mr. Anderson gave him his name or that of the defendant.*"

k. Here, Donais told Mr. Berry that he spoke to "some guy", and that Donais was not sure that he got my name (i.e., Donais referred to me as "some guy"). NB: Donais did not know that Mr. Berry kept meticulous contemporaneous notes of that call and that Mr. Berry would later be a witness that could provide written evidence to what Donais said at the time in early 2017.

l. Again, although these are not the most critical statements to show as false, in this case, it does show a carelessness with the truth by Donais and that the details of his affidavit and his subsequent statements to the police do not add up or comport with the facts. This undermines credibility for the rest of his statements. Again, because it is rare to garner direct evidence of an individual's state of mind, a plaintiff may rely on circumstantial evidence to prove that a defendant had actual knowledge that the statements were false, or had serious doubts about their accuracy. Levesque v. Doocey, 560 F.3d 82, 90 (1st Cir. 2009). See Bose Corp. v. Consumers Union of U.S., Inc., 692 F.2d 189, 196 (1st Cir. 1982), aff'd, 466 U.S. 485 (1984) (subjective determination whether defendant in fact entertained serious doubts about truth of statement may be established by inference "as it would be very rare for a defendant to admit such doubts"). See also Murphy, 449 Mass. at 57-58 (determination of defendant's subjective state of mind may be made based on circumstantial evidence).

m. I could go on to show contradictions and impeachment of several details of Donais' 2017 affidavit and of several details of his subsequent statements to the police in 2019 but for sake of space will hold off on that until I am afforded an opportunity for discovery, summary judgment and/or trial.

236. Donais then continued, after a year later, with sending baseless defamatory statements to the police to get them riled up and amped up against the plaintiff and his wife, with the goal of getting us arrested or in an escalated encounter with police. It is analogous to the crime of a "swatting" hoax. This was designed to get us to back off from pursuing misconduct complaints or lawsuits. After Donais failed at his attempts to get police to start a criminal prosecution against the plaintiff, though not for want of effort, the defendants pressed the police, fully expecting that the plaintiff would be arrested if the police saw them anywhere in the vicinity of Donais' neighborhood.

## E. FALSE & DEFAMATORY STATEMENTS TO THE POLICE IN 2020

237. Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

238. In 2020, Donais contacted the police and made several further statements to the police that were false and defamatory. These statements were not made as part of or in furtherance of a court proceeding.

239. These statements were made with malice, with knowledge of their falsity, and made recklessly with the intent to injure the plaintiff. These statements were defamatory or capable of a defamatory meaning or intended to communicate undisclosed defamatory facts.

240. These statements were not privileged. There was no court proceeding occurring in 2020. Even if there was, the statements had no relevance to any court proceeding. They were not made as part of a court proceeding or to be used in a court proceeding. These statements were not the subject of any lawsuit or legal action at the time (because these statements had not been made as yet previously or disclosed previously). These statements were not made to report a crime to the police.

241.    Donais, in August 2020, recklessly and wantonly made further allegations to the police implying that the plaintiff and the plaintiff's wife are dangerous criminals and that he and his wife were scared for their safety because of us, and even going as far as to plead for special protection from the police and to have them assign special protection or regular monitoring of his neighborhood/area, for him and especially his wife and young child. This is the heights of irresponsible defamatory baseless dishonest trumped-up fabricated allegations laced with unfounded racial stereotypes of black criminality and dangerousness. There is no basis or evidence whatsoever for Donais or his wife to say or suggest that the plaintiff or plaintiff's wife are a threat to him and his wife and his young child or for Donais or Donais' wife to insinuate such things to anyone including to the police. Donais is playing with dangerous fire here creating a tinderbox situation that could have been explosive because of these false allegations made to the police. These types of allegations can get innocent black people killed by police. Donais was trying to stir up the police to be on the lookout for the plaintiff and plaintiff's wife in the context of him insinuating that we are a danger to him and his family.

242.    What Donais did here was very dangerous for us as black people in terms of trying to create amped up escalated encounters between us and law enforcement. It is analogous to "swatting hoaxes" where a person calls police on someone reporting a false escalated situation in order to put them in danger when the police come to their home all amped up expecting criminals or criminal activity. What Donais did was similar to a swatting hoax and was intended or had the effect of putting our lives in danger. This is a very serious matter.

243.    This shows a pattern that Donais will tell extreme lies (or is willing to tell extreme egregious lies) on black people, trumping up false charges that could get them arrested or killed by police. Why else would Donais say such a thing to the police? He is saying these things because we are black and because he wants to hurt us and retaliate against us.

244.    It should be noted that the plaintiff discovered these emails, after submitting a public records request to the police in 2020. These emails prove that Donais' intent was to induce his fellow police connections to trump up a prosecution on a case, that they would not normally investigate or prosecute. These emails reveal the tremendous pressure being brought to bear and the persistent personal pleas being made to push through this investigation in order to do a favor for and help out Donais.

245.    This implies that these pleas and personal connection pressures were being made to do this as a special favor to Donais. Donais exploited his position on the crime-line board and his relationships with police officers to get them to do favors for him in terms of marshaling the vast resources of the police to target black American citizens, because of an attorney misconduct complaint. This implies improper motive and purpose.

246.    In one email example, Donais pressures his policer officer friend/contact on the crime-line board to push for a favor with pressure to get other police officers involved to try to help a brother out. See below.

*""This guy is from the Crime-Line. Can you help a brother out?"*

247.    This statement by Police Officer Nate Linstad to Officer Patrick Houghton in June 2019, with respect to the pressure received from Donais for favors to investigate the plaintiff and plaintiff's wife on a baseless allegation that would be a time-barred misdemeanor in any event and thus invalid. Police rarely use resources to investigate civilian reports about simple non-violent misdemeanors (especially when there is no actual evidence) and they certainly do not investigate simple non-violent misdemeanors that are time barred occurring more than two years, before the civilian report was made.

248.    The above revelations are consistent with a troubling trend of certain white people in this country who use race as a weapon against blacks and who call police on innocent black people trying to get them harmed or even killed by police. Here, Donais told the police that he was essentially in fear for his life because of the plaintiff and plaintiff's wife. This is the dog whistle trend of racism that certain states and cities have passed laws to prevent, such as New York.

249.    Donais is not going to stop if he is not held accountable. This suggests that Donais is a sociopathic liar, whose lies could get someone falsely arrested, imprisoned, or killed.

250.    There is no basis for Donais to claim to the police that he/his family were in fear of safety from the plaintiff and plaintiff's wife. It is unconscionable for Donais to suggest or accuse the plaintiff and plaintiff's

wife of being dangerous or violent criminals, capable of harming his wife and young child so much so that he and his wife were in fear for their safety and require a special police protection or observation to protect them from the plaintiff and plaintiff's wife. This is not only classic dog-whistle racism, exploiting stereotypes of black people as dangerous and violent without any basis other than race, but it is malicious and dishonest defamation and it put the plaintiff and plaintiff's wife in danger from the police who relied on the word of this attorney that he has good reason to be in fear of his life or safety (or that of his family).

251.   Donais made a written statement that labeled the plaintiff and his wife "offenders" which implied that there was a determination that we were offenders and had committed some offense and that we were guilty of criminal acts. The intent of the statement was to stigmatize the plaintiff as criminals to imply that we had been found to criminals which is false. Anyone reading that statement by Donais would be left the defamatory meaning that we were criminals and had been found or determined by the police to be criminals. Donais used this false implication to support his request for special protection by the police from the plaintiff and plaintiff's wife.

252.   Some people might not to be too concerned when white people tell lies on black people using race as a motivating factor. The plaintiff understands that it might be uncomfortable for some in our society today to hear and confront such matters or to put oneself in the shoes of a black person to understand what it is like to be subjected to such things. Yet, there is no room to look the other way with how certain people exploit race and racism to hurt blacks like this. This country has allowed Donald Trump 4 years to desensitize much of the country to concerns about race and racism and have emboldened many to scoff at such concerns. People like Donais have evidently been empowered to feel as though they can do these things with impunity and get away with it. Whenever a black person raises concerns about race, in many instances it is treated as though it is false or not valid. People like Hilliard and Donais then try to use it as evidence that you are not credible because if you point out racism more than once, you have used up your one quota to call out racism. Yet, Julian Jefferson, a well-known black public defender attorney in NH, recently gave testimony before the governor outlining his experiences with or observations of everyday racism in New Hampshire and Massachusetts from multiple people. Is he not credible because of such experiences? If Donais and Hilliard were to have their way, they would no doubt attack Julian Jefferson for stating that he experienced or observed more than once experience of racism in NH and MA.

253.   The bottom line is that Donais started out using race and racism against the plaintiff and plaintiff's wife in 2017. He continued to use race against us in 2019 and again 2020. This has to stop, and he must be held accountable.

254.   The false statement was published with knowledge of its falsity and/or with reckless disregard for the truth.

255.   These statements are not protected by privilege because statements to the police are only conditionally privileged. See Dear v. Devaney, 83 Mass. App. Ct. 285 (2013) (We further note that cases in other jurisdictions have mostly treated police reports under the rubric of a qualified privilege. See Annot., Immunity of Police or Other Law Enforcement Officer from Liability in Defamation Action, 100 A.L.R. 5th 341, 377-382 (2002).).  See also Dear v. Devaney, 83 Mass. App. Ct. 285 (2013) further stating:

> "An absolute privilege has not, however, been extended to police officers' own investigatory reports. See Seelig v. Harvard Coop. Soc., 355 Mass. 532, 538 (1969) (statements by police officers in course of investigation conditionally privileged). Cf. Malley v. Briggs, 475 U.S. 335, 342-343 (1986) (describing police officers' activities as being "further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment" and therefore providing officers with only qualified immunity against 42 U.S.C. § 1983 claim); Kalina v. Fletcher, 522 U.S. 118, 126 (1997), quoting from Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested")".
> .....
> "We conclude that the statements made here are not protected by an absolute privilege. They were made during the investigation, not the prosecution, of the license suspension proceedings. They were made by police officers, not lawyers or prosecutors. For the most part, the report does not contain witness statements but the officers' own speculation or recounting of unidentified hearsay. They are also directed not at a party to the proceeding

but at someone who is not even present at the proceeding. As he was neither a party nor a witness at the proceeding, Dear had no opportunity to test the validity of the statements at the proceeding. Also, there is nothing in the record to suggest that the licensing board or MOCAL contemplated any such proceeding against Dear or Elite at the time the report was prepared, or even afterwards, as neither Dear nor Elite was a licensee. Nor did Devaney or McGill contemplate such proceedings against Dear; although McGill's deposition testimony indicates that he believed he could have sought criminal charges against Dear, he did not do so. Instead, McGill stated that he was merely providing information to the licensing board so that it could determine whether further investigation was appropriate. See Restatement (Second) of Torts § 588 comment e ("The bare possibility that [a] proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered"). Cf. Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 531 (1978) (no absolute privilege where judicial proceeding was not being seriously considered, but was contingent on future developments)."

256.    The same principle regarding conditional privilege applied to statements to the police is seen in Butcher v. Univ. of Mass., 111 N.E.3d 294 (2018), as follows:

"Here, the police made no arrest, no formal charges were filed, there was no official police statement, and no search warrant was issued.8 In these circumstances, the Supreme Judicial Court has explained that " 'statements made ... by the complainant or other witnesses ... as to the facts of the case or the evidence expected to be given are not yet part of the judicial proceedings or of the arrest itself and are not privileged ....' Restatement (Second) of Torts § 611 comment h (1977). Accordingly, '[t]here is also no privilege to report the unofficial talk of such officials as policemen, as distinct from their official utterances or acts, such as an arrest' .... W. Prosser & W. Keeton, [Torts § 112,] at 836 [ (5th ed. 1984) ]." Jones, 400 Mass. at 796, 512 N.E.2d 260. Thus, the fair report privilege "does not apply to witness statements to police, whether appearing in an official police report or not, where no official police action is taken." Reilly, 59 Mass. App. Ct. at 776, 797 N.E.2d 1204. Such unconfirmed allegations have "neither the authority nor the importance to the public that other documents or statements shielded by the fair reporting privilege possess." Id. Extending the privilege to a witness's allegations merely because they appear in a police blotter does not further the doctrine's purpose of allowing the public to learn of official actions affecting the public interest. See id. at 777, 797 N.E.2d 1204. See also Phillips v. Evening Star Newspaper Co., 424 A.2d 78, 89 (D.C. 1980) (reporting on events documented in police activity log not privileged because, where there was no arrest, log did not "carry the dignity and authoritative weight as a record for which the common law sought to provide a reporting privilege"). Contrast Medico v. Time, Inc., 643 F.2d 134, 141-142 (3d Cir. 1981) (allegations in nonpublic, but official, Federal Bureau of Investigation investigatory reports submitted by Philadelphia field office qualified for privilege). In the circumstances of this case, the privilege does not apply."

257.    Such conditional privilege can be overcome by malice, reckless disregard for truth, knowledge of falsity, excessive publication.

258.    Because these statements were first written and later put on a video recording and because they tend to injure in plaintiff's profession or trade, they constitute defamation per se and libel per se.

259.    These statements tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and these statements were defamatory on their face without reference to any extrinsic information. The statements affected the plaintiff or may have affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute libel per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

260.    The plaintiff has suffered harm as a direct result of Donais' false, defamatory statement, which caused injury to my reputation, honor, and dignity.

261.    The plaintiff has suffered professional harm as a direct result of Donais' defamatory statement.

262.    Donais has injured the reputation upon which the plaintiff base his profession and business.

263.    Donais made his false statement with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effects on me and my rights.

264.    These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.  These defamatory statement(s) requires no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Donais falsely accused

the Plaintiff of committing a serious violation of moral conduct and because Defendants injured Plaintiff in his or her profession and/or occupation.

265.    Donais' false and defamatory statement caused the plaintiff to suffer reputational, emotional, and professional harm.

266.    Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

## F. EVIDENCE/DOCUMENTS SHOWING THAT DONAIS LIED ABOUT RACE DISCRIMINATION ACCUSATION (WHICH DONAIS REPUBLISHED IN 2019)

267.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

268.    Below provides some examples of evidence that corroborates the fact that Donais lied about race discrimination accusation in his 2017 affidavit (which Donais affirmed in 2019).

### i. 1-18-17 District Court hearing transcript and recording

269.    This proves that, in a January 2017 court hearing, Donais did not tell the judge or anyone else about me being upset or about the race discrimination allegation.

270.    This circumstantially corroborates the fact that such events did not happen, and that Donais later made them up two months later when he concocted and drafted his 2017 affidavit in March 2017 and which concoctions were subsequently repeated to others including to the police, his friends, colleagues and family members.

### ii. 2020 Interview of Attorney Elliot Berry by the ADO

271.    This proves that Donais did not tell Elliott Berry about my being upset or about the race discrimination allegation.

272.    This circumstantially corroborates the fact that such events did not happen, and that Donais later made them up two months later.

### iii. Notes/Email from Attorney Elliot Berry Contemporaneously Written/Documented in 2017 and Later Produced By Elliott Berry to the ADO

273.    This proves that Donais did not tell Karl Terrell about my being upset or about the race discrimination allegation.

274.    This circumstantially corroborates the fact that such events did not happen, and that Donais later made them up two months later.

### iv. 2020 Interview of Karl Terrell by the ADO

275.    This proves that Donais did not tell Karl Terrell about my being upset or about the race discrimination allegation.

276.    This circumstantially corroborates the fact that such events did not happen, and that Donais later made them up two months later.

### v. Dave Akridge 2017 affidavit

277.    This proves that Donais did not tell Dave Akridge about my being upset or about the race discrimination allegation.

278.    This circumstantially corroborates the fact that such events did not happen, and that Donais later made them up two months later.

### vi. Email chain on 1-11-17 with Donais, Akridge & Terrell

279.    This proves that Donais did not tell Akridge or Terrell about my being upset or about the race discrimination allegation, when he had the opportunity to do so.

280.    This circumstantially corroborates the fact that such events did not happen, and that Donais later made them up two months later.

### vii. Police Video Recording on 6-18-19

281.    This proves that Donais was told about a statement indicating an intent by us to file an ethics complaint against Donais and that he knew that we were planning to file an ethics complaint, just prior to him making up out of whole cloth the racism accusation in his March 2017 affidavit.

282.    This proves that Donais was motivated by retaliation to preemptively attack and lie in his subsequent 2017 affidavit.

283.    This further proves that Donais made false statements in 2019:

a) by affirming and/or republishing to the police, the false statements Donais made in his 2017 affidavit,

b) by repeating statements made in Donais' 2017 affidavit to the police,

c) by also submitting his 2017 affidavit to the police,

d) by stating that the allegations made by me/my wife are not true, accurate or justified,

e) by stating that me/my wife have a tenuous grasp on reality in order to discredit us with the police and to plant seed/doubt in the mind of the police that we were crazy, and

f) that we are the type of people to alter/doctor/fabricate recordings to make such recordings say what it did not say,

g) by adding to his array of false statements a new set of false statements made for the first time in 2019.

### viii. Further On Evidence For This Case

284.    Evidence of false statements and defamation by Donais includes but is not limited to: audio recording and video recording (that shows/proves that Donais has made false statements about plaintiffs to others including outside of any court proceeding), certified statement by Attorney Elliott Berry to the ADO about Donais and his false statements, certified statement by Attorney Robert Obrien to the ADO, certified statement by Attorney Bussiere about Donais' false statements, court transcripts of hearing in the Nashua circuit court and in the Hillsborough superior court South, in 2017 showing false statements of Donais and proving breach of fiduciary duty and conflict of interest by Donais, all proving Donais is guilty of the wrongdoing alleged by plaintiffs. This includes but is not limited to facts or evidence related to:

a.    Email chains with Donais, Dave Akridge & Attorney Karl Terrell. See **Exhibit 1** and **Exhibit 2.**

b.    Email from Elliott Berry showing Donais breached fiduciary duty. See **Exhibit 3.**

c.    1-18-17 District Court hearing transcript and recording. See **Exhibit 4.**

d.    Transcript Excerpt of attorney Karl Terrell Testimony in NH Superior Court South in April 2017 showing Donais never told him about the purported racism accusation in January 2017 or any time prior to March 2017. See **Exhibit 5.**

e.    2020 Interview of Attorney Elliot Berry by the ADO

f.    Notes/Email from Attorney Elliot Berry Contemporaneously Written/Documented in 2017 and Later Produced By Elliott Berry to the ADO

g.    2020 Interview of Attorney Karl Terrell by the ADO

h.    Statements by colleague and friend Dave Akridge

i.    Police Recording of Donais's Statements to The Police

j.    Statements by Donais' Personal Friends Who Are Also Police Officers

k.    Statements by Donais' To Other Officers At The Manchester NH Police Department

l.    Statements by Donais to the members of a non-profit organization that Donais sits on

m.    Statements by Donais to the ADO in NH.

n.    False Statements by Donais to Donais' wife and to his family members including his eldest adult son Garrett Donais.

o.    False Statements by Donais to Donais' friends, colleagues, and associates.

p.    Evidence of Donais' breach of fiduciary duty to plaintiffs, or legal malpractice, misrepresentation, fraudulent concealment, including in January 2017 prior to March 2017 as well as thereafter in 2019 and 2020, as well as breach of confidentiality.

q.    Evidence of Donais' race discrimination in violation of federal and state laws.

r.    Note: See also FIERRO v. GALLUCCI - United States District Court, E.D. New York. Dec 4, 2007 as **Exhibit 6,** which case is on point for issues related to prospective clients.

# V. FURTHER ON FACTUAL ALLEGATIONS AGAINST DEFENDANT RUSSELL HILLIARD

## A. Factual Allegations Against Defendant Russell Hilliard

285.    Plaintiff hereby realleges and incorporates by reference each of the preceding paragraphs of this as if fully stated herein.

286.    It should also be noted that Russell Hilliard was made a defendant in this case, as a necessary party.

287.    Hilliard has aided and abetted Donais in his tortious and wrongful acts.

288.    Donais and Hilliard have jointly and separately defamed me with others.

289.    Hilliard has engaged in such acts including in counselling and assisting Donais in matters that do not involve litigation or a judicial proceeding and also in business matters generally.

290.    They have together used their influence to intimidate and harass me (and my wife), including misuse of their connections with the police, in order to prevent us from pursuing an attorney misconduct complaint against Donais, among other things.

291.    Donais lied to the police indicating/suggesting that I suffer from a mental disease. Hilliard aided and abetted in this lie and defamation of me.

292.    Donais lied to the police falsely suggesting that I manufactured a false recording of Donais in order to show that he committed perjury (i.e., that I had fabricated a tape of his voice to make it sound as though Donais was speaking when it was not Donais speaking.). Hilliard aided and abetted Hilliard in this lie and defamation of me.

293.    Donais' statement to police (aided/abetted/encouraged by Hilliard) that I am a danger to his young child and wife and that I was going to physically harm him, his wife and young child, indicating violent criminality and threat of physical harm to them, on my part, and requiring regular police protection/observation. Hilliard aided and abetted in this lie and defamation of me.

294.    Donais, with support, encouragement and participation of Hilliard, lied to the police telling them I am a danger to his wife and young child, falsely suggesting/implying that I am a dangerous or violent criminal threat to his family, and using that lie to request special police protection and neighborhood watch to protect his family from the plaintiff, which is a disgusting bald lie. This blatant egregious lie implies that I am violent, or that Donais knows, via undisclosed facts, that I am violent, or capable of violence, to physically harm him, his wife and his family, thus necessitating police protection and monitoring. Hilliard aided and abetted Donais in this ugly contemptuous sinister lie and malicious defamation of the plaintiff.

295.    Donais was perpetuating and tapping into a pernicious racial stereotype of blacks as "brutes" with violent criminal tendencies or characteristics. Such stereotypes or myths have been used to instill fear in blacks to silence them and to control them, with the goal of subduing them into accepting wrongs done to them or putting them in their place and preventing them from complaining or organizing, among other things. These caricatures, particularly of black men, were used to justify the killing or lynching of blacks. This is further the case when white men invoked the protection of white women from these brutish dangerous beasts i.e., black men.  In this case, Donais, in his defamatory communications with the police, invoked the issue of my possibly harming his wife and young child to stir up deep sensibilities around the allegation that he had knowledge that I was intent on coming to their home, to break in (especially during the day when he is not home), to do violent physical harm to his wife and young child. Donais was invoking the disgusting imagery of me as a black man coming to his home to commit crimes against his wife and young child (which further implies that I would commit some kind of physical assault against them or worse). These statements were made with an intentional disregard for the truth and/or with reckless disregard for the truth, with the intent and effect of defaming me and damaging my reputation.

296.    Hilliard, who knew of or encouraged the above false statements, ignored clear notice from me and other witnesses as well as other evidence, that these statements were false and defamatory but yet Hilliard persisted in making, repeating or affirming these false statements with or on behalf of Donais to third parties. Hilliard was also put on notice that his assertions were false, but ignored such notice, which also bears on the issue of malice.

297.    Hilliard has thus aided, abetted or facilitated the defamation of the plaintiff.

298.    Hilliard has himself participated in and propagated the defamation of the plaintiff.

299.    On information and belief, Hilliard is also a witness to and enabler/aider/abettor of Donais' communications or conversations with the police, which include defamation of the plaintiff by Donais.

300.    These defamation claims include Donais' false non-judicial assertions that the plaintiff accused him of racism because Donais declined representation of him.

301.    In addition to non-judicial statements, plaintiff also seeks to hold defendants liable for the defamatory/invasive statements that do not plausibly relate to the litigation claims. Such statements do not fall within privilege because they are "palpably irrelevant" to the case claims. "Republication" in this context means the dissemination of protected litigation statements in an unprotected non-litigation context. And publication need not be in print to qualify as tortious. Any form of publication, including oral publication in statements to others, is sufficient. See Karch v. Baybank FSB, 147 N.H. 525, 535 (2002) ("publication involves any communication by the defendant to a third person") (quotations and citation omitted); McGranahan, 119 N.H. at 766 ("The question whether an absolute privilege exists . . . turns on whether the pleaded allegations were pertinent or relevant to the civil action in which they were filed").

302.    Hilliard cannot simply plead ignorance of certain facts or circumstances, even if his client lied to him or misled him, because there are clear facts laid out in writing (including in the email record) that contradict Hilliard's assertions. Moreover, Hilliard has the burden of being an officer of the court and he swore an oath to "delay no man for malice or lucre". He has the responsibility to ensure that he undertakes a diligent investigation of the facts that he purports to rely on for his response on behalf of his client. Furthermore, I should not have to spend time to catch him in his lies and to work to ferret out his dishonesty. What Hilliard did here was not by accident, but it was evidently intentional. It was not only one lie, but it was a pattern of how Hilliard approached this entire letter. Hilliard cannot be allowed to operate with impunity and to be unleashed on the public to wreak havoc in people's lives through lies and deceitful practices.

303.    Hilliard has been careless with the truth and has pushed the envelope in not abiding by, or otherwise has purposefully violated, the rules of professional conduct for lawyers.  Some examples of the violative conduct, by way of background, include, but are not limited to, the following:

    s.   Making misleading statements in writing in a willfully malicious and vexatious manner. Some of these false statements were intended to cast aspersions on me or to make me seem as though I lied or said things that I did not do or say. I should not be subjected to such acts from lawyers.

    t.   Telling outright lies in written statements regarding the record (emails or documents) in this matter.

    u.   Exhibiting lack of candor and attempting to mislead by omitting key facts or records in written statements.

    v.   Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

    w.   Knowingly making false statements of material fact or law and failing to disclose material facts or otherwise concealing facts having potential evidentiary value.

    x.   Using means/methods that have no substantial purpose other than to create unnecessary delay or to burden, scandalize, embarrass or oppress.

304.    This case is about holding lawyers accountable for defamation, among other wrongs, and about sophisticated race discrimination by exploiting racism against two African Americans, and then using police to make false reports to try to intimidate and retaliate against said African Americans putting their lives in danger from police by making a false police report and falsely suggesting that they are dangerous criminals and more. The plaintiff will prove these allegations. This is a critically important case in this day of racial justice reckoning and in the aftermath of the death of George Floyd. This is high stakes litigation.

305.    If Donais is proven in this case to have previously lied and/or if he lies again in this case, he will likely be subject to discipline from the bar including up to suspension or even disbarment. So, it is anticipated that Donais will try to deny these facts rather than come clean and tell truth. He is already all in and beyond a point of no return. But Donais knows that he has lied already in making the false statements alleged in this complaint. I anticipate that Donais' behavior in this case will reveal the behavior of someone who is guilt of lying. He will not behave forthcoming or transparent. He will try to deflect. If this court observes carefully how Hilliard or Donais respond to the specific charges of making false statements, it will be

consistent with the conduct of persons who are lying. When they are exposed for making false statements, they will then try to minimize it or incredulously explain it away or otherwise revert to saying that those are "discrepancies", which is a euphemism for lies.

306.    It should be noted that the defamatory email sent to the police was effectively sent by both Donais and Hilliard, as they both assented to the assertions made in that email.

---

## VI. FACTUAL ALLEGATIONS AGAINST THE REMAINING DEFENDANTS

---

### B. Factual Allegations Against Defendant Donais Law Offices PLLC

307.    Plaintiff hereby reallege and incorporate by reference each of the preceding paragraphs of this as if fully stated herein.

308.    Defendant Donais Law Offices PLLC is the corporate alter ego of Craig Donais.  Donais is the sole member and manager of this corporate entity as well as the registered agent for this corporate entity.

309.    Defendant Donais Law Offices PLLC is responsible for the conduct of its attorney Craig Donais.

310.    Donais Law Offices PLLC is vicariously liable for the acts of Craig Donais under a theory of respondeat superior where an employer will be responsible for the actions of its employee taken within the scope of employment. See Ellis v. Safety Insurance, 41 Mass. App. Ct. 630 (1996)(As the defamatory statement can reasonably be found to have been uttered in the course of Donahue's employment, Safety is subject to liability under the doctrine of respondeat superior).

### C. Some Important Additional Allegations For This Re-filed Complaint

311.    I thus hereby allege the following either on personal knowledge or on information and belief.

312.    I allege that Mary Donais actively assists Craig Donais with his law business and law practice. Therefore, it is alleged that Mary Donais fully aids, abets, and conspires with Craig Donais in his acts and conduct at issue in the complaint. Hence, the acts of Craig Donais are imputed to Mary Donais, and vice versa, unless otherwise indicated.

313.    Similarly, I allege that Donais Law Office PLLC is the alter ego of Craig Donais. Hence, the acts of Craig Donais are imputed to Donais Law Office PLLC and vice versa. Also, the tortious statements made by Craig Donais are imputed to Donais Law Office PLLC and Donais Law Office PLLC acts and speaks through Craig Donais, its alter ego, and vice versa.

314.    I also allege that Craig Donais and Mary Donais has engaged in defaming me to their family members including to their sons, and to each other and to other family as well. Discovery will reveal the extent of the defamation and how widespread it is.

315.    NB: I allege that Mary Donais has made defamatory statements to her family members including her sons about me, including suggesting that I am a criminal and I was intending/planning to break into her home and on physically harming her and her sons, and she has conspired with Donais to defame and injure me not only with the police but with her family members including her sons.

316.     All defamatory acts are directed at private persons, as part of the defamatory scheme and campaign of Craig Donais and Mary Donais.

317.    Also, the acts of Craig Donais are imputed to Mary Donais and Donais Law PLLC, unless otherwise indicated under the counts/causes of action section of this complaint.

318.    Similarly, I also allege that both Donais and Hilliard engaged in fraudulent misrepresentations to me as it pertains to inducing me to agree to allow them to be involved in a global settlement negotiation with Hilton defendants, for which their intent was only to sabotage the settlement for the other defendants, and that they lied to me and deceived me into fake negotiation offers, which were reneged on and withdrawn at the last minute for no reason, right as the settlement paperwork was about to be finalized and signed by 20 other defendants.

319.    I also allege that the defamation claims, aiding/abetting and conspiracy claims, consumer protection claims, breach of contract and breach of fiduciary duty claims are one continuous string of events designed together to injure, retaliate, undermine, intimidate me. The defamation claims flows out of the breach of

contract and fiduciary duty/legal malpractice claim which is the genesis of this whole story, which is at core a story about a lawyer who turned against his vulnerable client and embarked on a campaign to damage and teach him a lesson using his legal skills and connection to try to crush him. Thus, the breach of contract claim and breach of fiduciary duty/legal malpractice claims stand on their own since these claims stem from acts that occurred prior to any defamation acts that occurred.

### D. Additional Points

320.    Mary Donais was working for and working with Craig Donais in a business or work assistance capacity, and working for Donais Law Office, as an employee or agent of Donais Law Office. There are statements Mary Donais made to other people such as her family members and adult son that are at issue in this case. These include statements defaming the plaintiff suggesting that he is a criminal, and is going to do physical harm to their family members. Defamatory statements to family members are not privileged. Allegations of criminality, violent criminal intent to do physical harm to family members, of having mental illness/disease, of felony bugging of an office, are all defamatory per se and are not protected by privilege of any kind. The plaintiff alleges that both Craig and Mary Donais have engaged in this conduct via telling their family members such defamatory statements, and are thus both liable for such conduct.

321.    To the extent that I alleged that Mary Donais conspired with her husband to defame me, that conspiratorial acts are not necessarily based on statements only but also based on the planning and orchestration of events that entailed the conspiracy and the carrying out of the conspiracy. Both Mary Donais and Craig Donais plotted together to harm me. The plaintiff alleges that Donais and Hilliard interfered with contractual or advantageous relations by sabotaging or trying to create conflicts with attorneys who the plaintiff had relations with, by initiating conduct towards these attorneys in order to artificially create conflicts so that the plaintiff would have no representation or legal assistance. The plaintiff alleges that Mary Donais aided and abetted these acts by planning, coordinating, conspiring to do these acts with Donais and Hilliard. The plaintiff alleges that Mary Donais assisted Donais/ Donais law office with the breach of contract and breach of loyalty/fiduciary duty when Donais engaged in a conflict of interest. So, Mary Donais assisted in the act of the breach of contract/breach of fiduciary duty or aided and abetted the breach of contract/breach of fiduciary duty, where Mary Donais knew about the contract/duty and assisted Donais in the breach, causing injury to the plaintiff. Mary Donais made statements to her family members including but not limited to her husband Craig Donais but also includes statements to her children including adult children. The defendants have largely worked together in conjunction or in cahoots against plaintiff in virtually all of most of the claims alleged. Just as how it is evident that the defendants are working together and defending each other and coordinating with each other in its defense against this action, howbeit in a surreptitious manner where they think it is not obvious that they are working very closely together. Therefore, because of the incestuous relationship and behind the scenes coordination that defendants have engaged in, the claims should be seen as involving a joint effort between the defendants.

322.    I had an economic, advantageous and contract relationship with the Manchester NH police. The Donais defendants knew of this relationship. The Donais intentionally and improperly interfered with this relationship. I was damaged by such interference. Although having advantageous relationships is not the same as having a contractual relationship, I hereby allege that I had both. The party with whom I had advantageous, economic, and contractual relations with is the Manchester NH police. The third party who interfered with such advantageous, economic, and contractual relations with is the Donais defendants. I allege that the Donais defendants knew of this relationship. I allege that the Donais defendants intentionally and improperly interfere with this relationship. I allege that I have been damaged by such interference. Donais knew of the relationship because he scoured my Linked-in page which had that information on it since 2017. Donais has been searching every publicly available document about me and has been investigating my every document, my every move, my every step I make in my life, he and Hilliard have been fastidiously tracking my every move in order to try to use information against me since 2017. Dave Akridge in 2017 confirmed that Donais, his lawyer at the time, was tracking and investigating everything about me. Donais contacted the defendants in another case and provided detailed information that he found about me and my wife including regarding my movements, address, and business information from online

or other sources. Donais also directly asked the Manchester NH police to confirm the information he found about me on Linked-in, specifically asking whether it was true that I had contractual relations with them regarding a certain event. This is damning proof that Donais read my Linked-in page including the information about my NH police relations. Donais intentionally interfered with that relations upon knowing that I had such relations that he obtained from my Linked-in page. Donais also has numerous connections in the Manchester NH police department and evidently also knew of that through those connections. Donais has improperly used his police connections to do favors for him. He uses his position on the crime-line board of Manchester NH, to get information and to ask for favors, which is also evidence of cronyism with respect to the Manchester NH police. The contract was not performed, the conference that I was contracted for did not and has not occurred, and I did not receive the compensation that I was slated to receive for such contract. These are sufficient to show damages.

323.     Mary Donais joined in, aided, encouraged, instigated, influenced, conspired on the act of tortious interference knowing that I had a relationship with the police and knowingly seeking to lend her self to interfere with that relationship. Hilliard also actively joined in, aided, abetted, facilitated, encouraged, influenced, conspired on the act of tortious interference knowing that I had a relationship with the police and knowingly seeking to lend herself to interfere with that relationship. Defendant Donais knew of my involvement with the NAACP and about the initiative with the police department. Defendant Donais issued communications to the police indicating/implying that my wife and I were dangerous and a violent criminal threat to his wife and young child and requesting special police security detail to protect them from my wife and myself. That suggestion by Donais to the police that my wife and I were dangerous and posed a violent criminal threat to his wife and young child, accords with a racially stigmatizing stereotype of black people as inherently dangerous and violently criminal. Those damaging and stigmatizing communications to the police stem from an improper motive on the part of Donais. Donais had no rational or reasonable basis to issue those statements about me and my wife. Donais knowingly or recklessly made false statements to the police about me. Donais evidently was motivated by personal and racial animus towards me as evidenced by the racial stereotype/dog whistle employed by Donais as well as by the false allegation by Donais that I had accused him of racism in declining representation, which allegations were repeated and embellished on by Donais to the police. Donais' personal and racial animus also can be seen from a retaliatory animus designed to get back at plaintiff and his wife for raising ethical concerns to the Attorney Discipline Office. See Draghetti v. Chmielewski, 416 Mass. 808, 817 (1994) (improper motive established if police chief acted "based on retaliation or ill will toward [plaintiff]…"). See also Dear v. Devaney, 83 Mass. App. Ct. 285 (2013). Those damaging and stigmatizing communications to the police by Donais were disseminated across the entire police department. These harmful communications by Donais were circulated widely to a large number of people. Those damaging and stigmatizing communications to the police by Donais harmed me and resulted in interference with my relations with the police and the police chief as well as interfered with/affected the plaintiff's police-community event and the planning thereof.

324.     Defendant Hilliard was also responsible for those communications as he aided/abetted, signed off on and sanctioned those communications to the police. On information and belief, Defendant Donais and Defendant Hilliard collaborated, conspired and agreed to send those communications to the police. Defendant Hilliard was also copied on those communications to the police, giving them further air of credence, credibility, validation, corroboration and urgency. These communications were taken seriously by the police and the police urgently acted on them to provide security detail attention and protection for Donais, targeting me and my wife for police monitoring and watch. [NB: These false and harmful statements to the police, amping them up to encounter black couple stereotypes/stigmatized and labeled as a dangerous violent criminal threat, could have resulted in escalated tension with me and my wife, for reasons unbeknownst to plaintiff and his wife, and in the worst case, as shown by other examples in this day and age, could have led to the loss of life of myself and my wife.]

325.     Subsequent to these statements by Donais/Hilliard to the police, and on account of them, my relations with the police have suffered harm and have been damaged. Also, the planned community event with the police was canceled/never took place and subsequent further attempts to make the event happen went unanswered by the police. I incurred not only damage to my reputation but also financial damages including

loss of pay. Similarly, Donais' communications to the police to the effect that I was mentally ill/crazy/had a tenuous grasp on reality, that plaintiff manufactured a recording and fabricated his voice on the recording or that plaintiff was capable of doing such a thing, and that I had bugged the telecommunications systems of Donais, were likewise harmful and damaging to me in my trade and professional reputation. Furthermore, Donais' attempt to falsely accuse me and my wife of being criminal offenders was further harmful and damaging to my personal and professional reputation.

326.    The above establishes a claim of interference with advantageous relations by improper means and improper motives. [NB: None of the above statements were made in a judicial proceeding or in a quasi-judicial proceeding. These statements were not made in a prosecution proceeding or in a lawsuit proceeding. This was simply a statement made to a police officer which was initiated by Donais for the purpose of harming, damaging, harassing, injuring, and retaliating against me.] I anticipated further advantageous relations with the police in the future but this was not realized on account of the interference by the defendants.

327.    Similarly, the defendant Hilliard, specifically himself, has engaged in other acts of interference with advantageous relations. Hilliard contacted the spouse of an attorney (which spouse is also an attorney) as well as the law firm (Primmer, Piper, Eggleston & Cramer PC) of that attorney in New Hampshire (who will be called "Attorney Jane Doe", as an alias in this complaint, to protect the privacy and of this attorney), that, on information and belief, Hilliard knew I was working with in regards to matters that were before the ADO pertaining to Donais in 2019 and 2020 and for which I had retained Attorney Jane Doe on a limited basis for legal assistance, and sought to establish a working relationship with the spouse of Attorney Jane Doe or Attorney Jane Doe's firm. As a result, Attorney Jane Doe terminated the relationship with me citing that Hilliard's contact with her spouse and/or her firm, and/or the ensuing working relationship situation with Hilliard related thereto, had created a conflict situation or an appearance of a conflict situation with me. Attorney Jane Doe did not provide a lot of detail about this situation, citing confidentiality/privacy reasons. This contact by Hilliard, on information and belief, was done with an ulterior purpose, under a pretextual guise, in effect to create a conflict that would block, prevent, or undermine my ability to obtain legal assistance or support. Hilliard thus sought to intentionally interfere with that relationship in order to block, prevent or undermine my ability to obtain legal assistance, and he evidently succeeded. I was harmed as a result. Similarly, after I began to pursue relief in court against Donais, Hilliard specifically and knowingly contacted yet another attorney in New Hampshire and/or the organization that this attorney worked for (who will be called "Attorney John Doe", as an alias in this complaint, to protect the privacy and of this attorney), and sought to establish a working relationship with that attorney or the attorney's organization. I had a relationship with Attorney John Doe whereupon I sought legal help or advice. This contact by Hilliard, on information and belief, was again done with an ulterior purpose, under a pretextual guise, in effect to create a conflict that would block, prevent, or undermine my ability to obtain legal assistance or support. Hilliard thus sought to intentionally interfere with that relationship in order to block, prevent or undermine the ability of myself to further obtain legal assistance, and he evidently succeeded. I was harmed as a result. NB: I have not disclosed the names of these attorneys at this stage because of privacy reasons that may impact the reputation of these attorneys. Given the delicate nature of this situation, however, I will disclose these names under impoundment or in camera, or in discovery. If I am required to disclose the names before that, I request that the court so instruct me. On information and belief, Hilliard has done this on other occasions with other attorneys, in order to block, prevent or undermine the ability of the plaintiff to obtain other legal assistance.

328.    By the above-described conduct, inter alia, the defendants knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with my actual and potential advantageous relations.

329.    Also, I was injured in that I could not return to NH because of Donais' defamatory statements about me to the police resulting in a department-wide police watch implemented by the police to be on the lookout for me because of Donais' lie that I was going to physically harm him, his wife and children, and thus he damaged my ability to work in NH with the police or with the NAACP in NH, or engage in any social or community relations in NH through or with them or otherwise. I was put in fear of my life because of a

false police report by Donais intended to get me caught up in a heightened encounter with NH police. Furthermore, the reputational effects harmed me in NH and MA. For example, the NAACP is regional organization which includes the new England region. The harm was both in NH and also in MA.

### B. Massachusetts Superior Court Precedent/Authorities

330.    Plaintiffs also note that a Massachusetts Superior Court judge has found that false accusations of racism by Donais, if proven, are valid grounds to seek a defamation claim. This directly supports the Plaintiffs' allegations in this court. Thus, this Massachusetts precedent directly validates plaintiffs' defamation claims.

331.    See screenshot of the court transcript below.

```
 1                                           Volume:   I
                                             Pages:    1-24
 2                                           Exhibits: 0

 3                    COMMONWEALTH OF MASSACHUSETTS

 4   MIDDLESEX COUNTY                              SUPERIOR COURT

 5   * * * * * * * * * * * * * * *
                                   *
 6   ANDRE BISSASOR                *
                                   *
 7   v.                            *    Docket No. 2081CV00087
                                   *
 8   CRAIG DONAIS                  *
                                   *
 9   * * * * * * * * * * * * * * *

10

11             HEARING

             BEFORE THE HONORABLE CHRISTOPHER K. BARRY-SMITH
12

13

     APPEARANCES:
14
     For the Plaintiff:
15   Pro Se
```

```
 2        And I use that as an example in my pleadings, Your

 3   Honor, that Mr. Donais has falsely accused me of accusing

 4   him of racial discrimination in a frivolous manner; that

 5   there would be no conceivable way in which my accusation

 6   against him that he was racially discriminating against me

 7   at the relevant time in question, there would be no way for

 8   it to be valid.  There would be no way for it to make sense.

 9   It suggests that I'm a --

10        THE COURT:  All right.  Let me interrupt.  Let me

11   interrupt for a second.  Let me interrupt because you're

12   getting into the merits now, which I'm not really going to

13   do.

14        MR. BISSASOR:  Oh, I'm sorry.

15        THE COURT:  -- And I just -- I think your example --

16        MR. BISSASOR:  Oh, okay.

17        THE COURT:  -- is a good one about false racism claims

18   being covered widely in a particular city or, state or

19   country that thereby hurts someone's reputation.
```

**B. Statement by New Hampshire Attorney Discipline Office ("ADO")**

332.     Also, the New Hampshire Attorney Discipline Office ("ADO") has opined in an ADO proceeding in September 2020 that, if Donais did and said the things alleged by plaintiffs (concerning the false accusations of racism) and they are false, it would constitute defamation and should be brought in a lawsuit (as the ADO is not designed to resolve defamation claims that are better suited to be resolved in a court of law). See screenshot of email below sent from deputy general counsel of the ADO, Mark Cornell in fall of 2020.

Mr. Brisson:

This e-mail is to address your questions 4-8, from your e-mail of September 28, 2020, at 5:08 (below)

First, in question 4, you wanted to speak to Brian regarding something unrelated to the matters I am currently assigned to handle. Brian has instructed me to deal with all matters involving you, Ms. Anderson, or Mr. Donais. There is a reason he has made this decision and I ask that you accept it.

My general takeaway from these questions is you are concerned that Mr. Hilliard and you are being treated differently. I want to address why that is. I understand you may disagree with what I am going to tell you, but please keep an open mind until the end of this e-mail.

1. Ms. Anderson, as a grievant and complainant is not a party to any Attorney Discipline Office matter. Our rules explicitly state this. See Rule 37A(I)(b) ("Status of Complainants: Complainants are not parties to informal or formal disciplinary proceedings. Complainants lack standing to file pleadings or object to motions or recommendations or disposition of disciplinary matters.)

2. The purpose of the Attorney Discipline System is to protect the public, not vindicate private rights. See Rule 37A(I)(a) – https://www.courts.state.nh.us/rules/scr-37a.htm; see also Rule 37(19) limiting monetary sanctions to the ADO – https://www.courts.state.nh.us/rules/scr-37.htm; See also Petition of Sanjeev Lath: https://casetext.findlaw.com/nh-supreme-court/1776488.html

3. In order to have a due process right, a person must have a life, liberty or property interest which is subject to being impaired by the State. U.S. Const. 14th Amendment.

4. There is obviously no "life" interest involved in the ADO process.

5. As Ms. Anderson is not a "Party" and the ADO cannot vindicate any private rights of Ms. Anderson, there is no "property" interest at stake for her.

6. Ms. Anderson also does not have a "liberty" interest at stake in this matter either as the end result of this ADO process (no matter what it is) will not directly impact her in a manner that is recognized by the Courts as a "liberty" interest. Whether Mr. Donais is disbarred or absolved of wrong doing will have no direct impact on her ability to enjoy those privileges recognized as essential to the orderly pursuit of happiness by free people.

7. To the extent Mr. Donais made statements that falsely accused you of "playing the race card" (please forgive my inartful phrasing), that is a reputational harm. Reputational harms generally are not "liberty" interests, even when the reputational harm is caused by the government. See e.g. Paul v. Davis https://www.law.cornell.edu/supremecourt/text/424/693 and Siegert v. Gilley http://www.law.cornell.edu/supremecourt/text/500/226. In this case, the reputational harm was caused by a private citizen and the governmental action (via the ADO) is not intended to protect the reputational interest of the complainants.

8. Further undermining a claim of having a protected property or liberty interest in the outcome of the ADO matter is Ms. Anderson's ability to pursue a civil remedy against Ms. Donais

333.     These judicial and legal authority validations further support Plaintiffs' entitlement to relief as outlined in this complaint.

---

## SECTION 3: COUNTS/CAUSES OF ACTION

---

### COUNT I: BREACH OF FIDUCIARY DUTY (DONAIS & DONAIS LAW OFFICES)

334.     Plaintiff incorporate by reference all paragraphs of this Complaint as though fully stated herein seriatim.

335.     The first count asserts that Donais and his law firm owed a fiduciary duty to Plaintiff as a prospective client, including confidentiality, loyalty, and the obligation to act in good faith, which was breached through multiple egregious acts.

336.     Under NH law, the attorney-client relationship, even at the prospective stage, creates fiduciary obligations including confidentiality, loyalty, and good faith. Donais breached this duty by disclosing confidential information, fabricating false allegations, and misusing law enforcement relationships to retaliate.

337.     Courts have recognized that a fiduciary duty arises when an attorney receives confidential information, even if formal engagement does not occur, provided the client reasonably believes the attorney is acting in a professional capacity and the communication is confidential. Keshishian v. CMC Radiologists, 142 NH 168, 174 (1997); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451 (1991).

338.     In this case, the facts establish that Plaintiff engaged Donais in a confidential, substantive discussion about legal issues involving the hotel defendants. Donais, knowing this, had a duty to maintain confidentiality and act in Plaintiff's best interests. Instead, he divulged confidential information to third parties—his wife, police officers, colleagues, and others—without Plaintiff's consent, breaching his fiduciary obligation.

339.     Moreover, Donais used this information maliciously to fabricate false allegations of racism, criminal conduct, and mental illness, with the intent to defame, intimidate, and retaliate against Plaintiff.

340.    These acts constitute a clear breach of the fiduciary duty, which under NH law, includes the obligation not to disclose confidential information or use it for personal or third-party advantage.

341.    Under NH law, breach of fiduciary duty requires (1) the existence of a fiduciary relationship, (2) breach of that duty, (3) causation, and (4) damages. The facts support each element, and the breach caused tangible damages, including reputational harm and emotional distress.

342.    The case law supports that such breaches are actionable. Bays v. Theran, 418 Mass. 685 (1990), affirms that breaches of fiduciary duty can be established through acts of disloyalty, breach of confidentiality, or self-dealing.

343.    The repeated disclosures, especially those involving false statements to police and third parties, show a pattern of breach that is sufficiently egregious to survive a motion to dismiss.

344.    Plaintiff's damages include reputational harm, emotional distress, and economic losses, directly caused by these breaches.

345.    It should be noted that, under NH law, the fiduciary duties extend to prospective clients, especially where confidential information was shared and relied upon in good faith.

346.    As a prospective client, Plaintiff shared confidential information with Donais during a January 2017 consultation. Donais breached NH Rule 1.18 by weaponizing this information in defamatory campaigns.

347.    The facts clearly demonstrate that Plaintiff reasonably believed he was engaging in a confidential discussion, and Donais's conduct violated that trust, breaching his fiduciary obligation. See Glickman v. Brown, 21 Mass. App. Ct. 229 (1985) (recognizing fiduciary duties in attorney-client relationships).

348.    Donais breached confidentiality obligations owed to Plaintiff as a prospective client by disclosing privileged information to harm Plaintiff's interests.

349.    The rules of professional conduct provides that a lawyer shall not knowingly reveal a confidence or secret of a client or use a confidence or secret of a client to the disadvantage of that client.

350.    A "confidence" is defined as "information protected by the attorney-client privilege under applicable law" and a "secret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." (McKinney Supp. 1991).

351.    Courts have held that an "analogous fiduciary obligation may be implied in the absence of an attorney-client relationship." Liu v. Real Estate Inv. Group, Inc., 771 F. Supp. 83 (S.D.N.Y. 1991).

352.    As the court in Liu noted:

> It is clear that where an attorney receives confidential information from a person, who under the circumstances has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidences irrespective of the absence of a formal attorney client relationship.

353.    Id. at 86 (quoting Nichols, 99 Misc.2d 822, 417 N.Y.S.2d at 418); see also Rosman v. Shapiro, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987); Trinity Ambulance Serv., Inc. v. G L Ambulance Servs., Inc., 578 F. Supp. 1280, 1283 (D. Conn. 1984).

354.    See, e.g., United States v. Devery, No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship."); Green v. Montgomery County, 784 F. Supp. 841, 844 (M.D. Ala. 1992) ("The mere existence of an express contract of employment, or the payment of legal fees, or the length of consultation is not determinative of whether a preliminary consultation has matured into an attorney-client relationship.").

355.    "[C]ourts have not employed a single, well-defined test for determining whether an attorney client relationship exists, and, moreover, have consistently rejected the argument that indicia of a formal relationship are necessary. Most courts have acknowledged, as a general matter, that an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." First Hawaiian Bank v. Russell Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994); accord Bennet Silvershein Assocs. v. Furman, 776 F. Supp. 800, 803 (S.D.N.Y. 1981) (quoting Trinity Ambulance Serv., Inc. v. G L Ambulance

Servs., Inc., 578 F. Supp. at 1283); Keoseian v. Von Kaulbach, 707 F. Supp. 150, 152 (S.D.N.Y. 1989) (same).

356.    As the Second Circuit has stated, "[t]he key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." United States v. Dennis, 843 F.2d 652, 657 (2d Cir. 1998).

357.    Further, whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to the attorney client privilege. See Dennis, 843 F.2d at 657 ("To be sure, initial statements made while Pilgrim intended to employ Gerace were privileged even though the employment was not accepted."); see also Green, 784 F. Supp. at 845 ("[T]he fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result."); Liu, 771 F.Supp. at 86 ("[T]he duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result."); McCormick on Evidence 6th Ed. § 88 (West Publishing Co., 2006) ("[C]ommunications in the course of [a] preliminary discussion with a view to employing the lawyer are privileged though the employment is in the upshot not accepted.").

358.    In this instance, it is clear that Bisasor engaged in preliminary discussions with Donais related to a legal analysis of potential claims that could be brought in connection with the landlord-tenant matter involving the Hilton Hotel defendants during the tenure of plaintiff's stay. Although there was no further engagement or retainer after that preliminary client conversation, any communication made during this preliminary consultation is protected by the duty of confidentiality and protected by the attorney-client privilege. Thus, this preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though Donais was not ultimately retained.

359.    Bisasor's statement that confidences were shared with Donais is corroborated by telephone records indicating that there were at least two telephone calls involved, one of which was on 1-9-17, between Donais and Bisasor which lasted 7 minutes. The facts here, including a 7 minute phone call conversation and transmittal of client conversation information from Robert Obrien via conversation with Donais about plaintiff's claims, provides sufficient circumstantial evidence to conclude that it is likely that some "confidences" or "secrets" were revealed to Donais in order for him to evaluate the case.

360.    For example, in Arifi, the court held that the former attorney's assertion, that he could not remember any confidential information conveyed to him during the short representation of one of the defendants, did not cure the professional responsibility conflicts which were present. Arifi, 290 F. Supp. 2d at 350 ("While there is no reason to doubt Green's claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had access to such information during the short representation."); see also Schwed v. Gen. Elec. Co., 990 F. Supp. 113, 117 n. 2 (N.D.N.Y. 1998) (holding in a case where attorney claimed he did not possess confidential information and did not recall any discussions regarding the case, that the third prong of the Second Circuit test was nevertheless met because there was a likelihood that attorney had access to confidential information.).

361.    Plaintiff alleges that Donais and Bisasor had an attorney-client relationship, that plaintiff was a client for purposes of the initial consultation, and that otherwise plaintiff was, at a minimum, a prospective client, and that he became a former client once the engagement went no further after the initial consultation. This is backed up by the explicit language pf the NH Rules of Professional Conduct for Lawyers.

362.    It should be noted that Rule 1.18 of the NH Rules of Professional Conduct for Lawyers, states:

Rule 1.18. Duties to Prospective Client
(a) A person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
(b) Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.
(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received and reviewed information from the prospective client that could be significantly harmful to that person in the matter, except as provided

in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

Ethics Committee Comment:

1. The New Hampshire rule expands upon the ABA Model Rule in one area. The ABA Model Rule 1.18(a) defines a prospective client as one who "consults" with a lawyer about possible representation; the New Hampshire Rule defines prospective client as one who "provides information to a lawyer" about possible representation. ABA Model Rule 1.18(b) establishes a general rule for protection of information "learned" by a lawyer from a prospective client; the New Hampshire Rule clarifies the scope of the protection so that it applies to information "received and reviewed" by a lawyer from a prospective client.

In its version of Rule 1.18, New Hampshire's rule eliminates the terminology of "consultation" and learning and extends the protections of the rule to persons who, in a good faith search for representation, provide information unilaterally to a lawyer who subsequently receives and reviews the information. This change recognizes that persons frequently initiate contact with an attorney in writing, by e-mail, or in other unilateral forms, and in the process disclose confidential information that warrants protection. This change further recognizes that receipt and review are likely to be more objective standards than learning.

363.    Rule 1.18 is very clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them.

364.    Donais received confidential information about plaintiffs' case from two sources. This came about when Donais received confidential information about the plaintiffs' case from Robert Obrien and when Donais called Bisasor. Donais initiated the call to Bisasor after Bisasor called and left a voicemail for Donais on a prior day stating that plaintiff was seeking legal assistance and advice on a landlord-tenant matter. Donais in deciding to call back the plaintiffs in response to the voicemail represented an agreement by Donais to engage in an attorney-client conversation that was protected by attorney-client privilege.

365.    Consequently, Donais had inside knowledge of plaintiff's self-disclosed understanding of the strategies, weaknesses and discussions about plaintiff's case from Plaintiff directly.

366.    This prospective attorney-client relationship triggered fiduciary obligations and confidentiality obligations on the part of Donais. The rules of professional conduct create these and other duties and obligations of the lawyer to a client or former client.

367.    These duties and obligations include but are not limited to confidentiality and fiduciary expectations as well as the expectation that Donais would not use this client conversation to try to injure, hurt, defame or publish private facts or to seek to try to wrongly prosecute the client, as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct.

368.    Donais and Bisasor had a fiduciary relationship. Donais' relationship with Bisasor, that of attorney/client, was and is fiduciary. Donais owed an ethical and fiduciary duty to Bisasor.

369.    See Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 442 (1980) ("[T]he relationship between attorney and client ... is fiduciary as a matter of law"); Blake v. Hendrickson, 40 Mass.App.Ct. 579, 582 (1996) (an attorney is the client's agent); Vanacore v. Kennedy, 86 F.Supp.2d 42  (D.Conn. 1998) (the relationship between attorney and client is one of trust and confidence, and gives rise to fiduciary duties of the attorney toward the client). Donais owed Bisasor a fiduciary duty to act at all times in good faith and in Bisasor's best interests.

370.    Donais owed Bisasor a fiduciary duty to, among other things, to act in Bisasor's highest and best interests at all times, and to not expose Bisasor to any unnecessary risk or peril.

371.    Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship. See Bartle v. Berry, 80 Mass. App.Ct. 372, 385 (2011) (in accordance with the Rules of Professional Conduct, an attorney's fiduciary duty continues even after termination of the attorney- client relationship).

372.    Under Restatement (Third) of the Law Governing Lawyers § 38, just because a prospective client conversation where confidential information was shared, does not result in further engagement, that does not absolve attorneys of fiduciary obligations created by that limited or initial client interaction.

373.    This communication triggered a fiduciary relationship (see Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 463 (1991)), with ongoing duties of confidentiality.

374.    However, in 2019 and 2020, Donais disclosed private client information to his wife, son, family members, and friends and to the others including government officials of the state of New Hampshire.

375.    Donais engaged in a pervasive, widespread, systematic and deliberate pattern of abandoning, violating and exploiting his fiduciary obligations to Plaintiff for his own self-interest and constituted a willful dereliction of duty designed to exploit Plaintiff's vulnerability as an African-American, and conceal evidence of Donais' own misconduct. Donais' concealment of his divulging of plaintiff's confidential client conversation further constitutes a breach of the duty to protect client interests post-termination (In re Jones, NH Sup. Ct., No. 2021-0123, 2021 WL 4472142). Attorneys must prioritize client interests over self-protection. By divulging and exploiting confidential information, Donais engaged in self-dealing barred by Kanamaru, 100 Mass. App. Ct. at 75.

376.    Under Massachusetts and New Hampshire law, attorneys owe clients and former clients an unwavering duty of confidentiality and transparency, even after termination of a client relationship. Donais' conduct breached this duty at every turn, inflicting severe financial, procedural, and emotional harm.

377.    Donais' acts also includes a breach of fiduciary duty by divulging information (and fabricated version of it) obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client.

378.    It was malicious act and represented an attempt to harm plaintiff/his spouse as former prospective clients.

379.    When prospective clients meet with lawyers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined full representation or because the lawyer joined the legal team of the opposing party. This is a logically sophisticated point that being made here.

380.    Donais' intent was clear: to hurt, damage, harm, oppress, defame, scandalize the plaintiff.

381.    This is forbidden by the rules. So even if Mr. Donais maintains that his allegations of what plaintiff said in the 1-9-17 conversation were true (which it was not), he still violated the rules of conduct and breached his duty and obligations to the plaintiff as a former client or former prospective client.

382.    Hence, Mr. Donais' violations are multiple, layered and intertwined with a web of layered misconduct making a very serious combination of violations of ethics that rises to the level of extreme seriousness which is further compounded by the numerous breaches and wrongs that flowed from that to subsequent and continuing events thereafter.

383.    Again, this is an intellectually sophisticated point in showing the reasoning that would still arrive at a violation of the rules of conduct and a breach of duty and contract/good faith, by Donais even if he were telling the truth in his false statements to several third parties about what plaintiff had said in the 1-9-17 client conversation (which he was not).

384.    It should be noted that some lawyers have been disbarred for engaging in misconduct as outlined above. It is evident that Mr. Donais' conduct outlined herein, has violated Rule 8.4 section (a), (b), and (c), in that his false statements reflects adversely on the lawyer's honesty and trustworthiness, and it would also constitute conduct involving dishonesty, fraud, deceit and misrepresentation. Similarly, the fabrication of the race discrimination accusation would further be a violation of Rule 8.4 section (g), in that his false statements were motivated by racial animus and were intended to wrongly embarrass, harass and burden Plaintiff.

385.    Donais breached his fiduciary duty to plaintiff by breaking his obligation of confidentiality, and acting against plaintiff's interest as a former client and seeking to harm and injure plaintiff's rights. In the alternative, this also constitutes legal malpractice.

386.     Thus, Donais owed a duty to Plaintiff[8], and thus there was fiduciary relationship that included confidentiality. Donais' breach of duty is based on: a) the acts of Donais as outlined above, resulting in a breach of duty; as well as b) statements made by Donais that breached that duty. These acts and statements that occurred in 2019 and 2020, with respect to the allegations in this complaint, are not time-barred and are not privileged.

387.     Similarly, Mr. Donais used his prospective client conversation with Plaintiff against Plaintiff, to directly inflict harm by defaming Plaintiff and accusing him of falsely/frivolously accusing Mr. Donais of race discrimination because he did not take his case. This false accusation against Plaintiff has sullied Plaintiff and subjected him to humiliation in the court proceedings, with the implication that Plaintiff is a frivolous liar who plays the race card without rhyme or reason and is to be discredited as an irrational, unstable, angry person who wildly hurls accusations of race discrimination when there is no valid reason to do so. This diminishes Plaintiff's character and discredits him in the eyes of the court and in the public record.

388.     If Plaintiff had never spoken to Donais on 1-9-17 about a prospective client relationship, Donais could not have had the opportunity to fabricate this lie against Plaintiff.

389.     Donais has used his position as a prospective lawyer to Plaintiff as a prospective client as a basis to injure Plaintiff by falsely accusing him of falsely accusing Donais of race discrimination in the context of a conversation wherein Plaintiff was seeking to form an attorney-client relationship with Donais, and wherein Plaintiff shared with Donais certain confidential information, thus taking Donais into his confidences and placing his trust in Donais. Donais exploited and abused the trust that Plaintiff extended to Donais in seeking to have a conversation with him about plaintiffs' case against the Hilton Hotel defendants. Donais turned around and used that private privileged conversation as a basis to fabricate lies on Plaintiff. This is an utter abuse and ethical travesty that has befallen Plaintiff. This is a breach of fiduciary duty. This also goes to the conflict of interest. Donais was never going to be able to be loyal to plaintiff or his spouse, and the trust and confidences plaintiff placed in him, because ultimately, he was loyal to Dave Akridge as a principal for the opposing party. His conflict of interest further created the fuel by which he found it useful to falsely accuse plaintiff, in order to harm and damage Plaintiff, his spouse and their case in the interest of protecting and advancing the interests of the opposing party

390.     Donais disclosed confidential client information about the plaintiffs to third parties, including but not limited to family members including his spouse and adult children, his friends and colleagues including Nate Linstad, and others as well as to other persons such as police officers, and others—outside the context of any judicial proceeding, and these statements are not protected by absolute privilege. These include the following:

    a.  Donais disclosed confidential client conversation information about the plaintiffs to his wife, Mary Donais in 2019 and 2020.

    b.  Donais disclosed confidential client conversation information about the plaintiffs to his Adult son, Garret Donais in 2019 and 2020.

    c.  Donais disclosed confidential client conversation information about the plaintiffs to his friend Nate Linstad in 2019 and 2020.

    d.  Donais disclosed confidential client conversation information about the plaintiffs to his friends on the board of a local Manchester NH non-profit organization, in 2019 and 2020.

    e.  Donais disclosed confidential client conversation information about the plaintiffs to his friends who are also or who happen to also be members or staff on police force of the Manchester NH Police, in 2019 and 2020.

---

[8] Donais owed a duty to plaintiff. There was a fiduciary relationship. Plaintiff was a prospective client. Plaintiff was engaged as a prospective client. Plaintiff was given legal advice. Plaintiff shared confidential information. A prospective attorney client relationship was formed. This is what a judge found (Judge Paul Moore in Nashua district court in NH). This is why Donais withdrew as attorney in that case.

     f.   Donais disclosed confidential client conversation information about the plaintiffs to other police officers, who may not have been his friends, of the Manchester NH police department in 2019 and 2020.

     g.   Donais disclosed confidential client conversation information about the plaintiffs to other government officials of the state of New Hampshire in 2019 and 2020.

391.    Donais had and owed a fiduciary duty to Bisasor.

392.    Donais had an obligation to Bisasor to act with the utmost good faith and fidelity as a fiduciary agent.

393.    Donais had a duty of complete and undivided loyalty to Bisasor.

394.    Donais had a duty not to take advantage of Bisasor and place him at a disadvantage. See Goldman v. Kane, 3 Mass.App.Ct. 336, 341 ( (1975) (attorney must do nothing that takes advantage of or disadvantages the client).

395.    Donais had a duty of trust and loyalty to Bisasor and a duty not to betray Bisasor.

396.    Donais had a duty to not subvert his (Donais) obligation to Bisasor.

397.    Donais had an ethical obligation to Bisasor under the Rules of Professional Conduct, e.g., Rules 1.2, 1.3, 1.4, 1.6 and 1.7-1.9. See 51 Mass. Prac., Professional Malpractice at 17.6 (an "attorney's duty of care is set forth in the Rules of Professional Conduct").

398.    Donais had a duty to not act deceitful.

399.    Donais's ethical obligation to Bisasor (under the Massachusetts Rules of Professional Conduct) continued after the conclusion of the client conversation between Donais and Bisasor in 2017, and even after the conclusion of the case for which Bisasor was seeking legal advice.

400.    In this matter, Donais violated his duty to the plaintiff in several ways.

     a.   Donais discussed the client conversation with the plaintiff with several people. These include his wife, Mary Donais, his adult son Garrett Donais, his friend Nate Linstad, and his police officer friends and connections. These communications with his friends violated the rights of the plaintiff.

     b.   Donais also voluntarily engaged in discussion with the police about the conversation Donais had with plaintiff as a prospective client. The police interview recording of this conversation shows that Donais went out of his way to violate any ounce of duty he had to the plaintiff as a former prospective client. Furthermore, much of what Donais stated in that interview with the police was untrue, misleading or twisted or embellished adding or stating things that did not occur or were not true. The fact that much of the conversation entailed untrue or misleading statements by Donais still does not avoid the conclusion that Donais violated his duty by having that conversation in the first place. There could be no untrue or misleading statements if Donais did not initiate the conversation. But even in initiating the conversation, Donais did not need to go above and beyond what was necessary. For example, this principle is also shown when a lawyer withdraws from a case and is required to state only the minimum necessary to obtain withdrawal.

     c.   Donais also had a duty to inform the plaintiff, as a former client, that Donais was going to or had discussed such information with others. Instead, Donais actively hid those occurrences from the plaintiff.

     d.   The act of hiding such occurrences from the plaintiff is a breach of duty the plaintiff.

401.    Donais's disclosure of client discussion information result was a violation of Donais's fiduciary duty to Bisasor.

402.    See Rule 1.6. of the rules of professional conduct for lawyers, which states: *"Confidentiality of Information: (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."* See also Rule 4.4: Respect for Rights of Third Persons: *"(a) In representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person."*

403.    "Even after termination of the attorney-client relationship, a lawyer remains bound" to preserve the former client's confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994), quoting Masiello v. Perini Corp., 394 Mass. 842, 847 (1985). "[W]hen an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney's continuing duty to preserve a former client's confidences." Adoption of Erica, 426 Mass. 55, 60 (1997).

404.  Further, Donais's disclosure of client discussion information and the results therefrom was a breach of his obligation to Bisasor to act with the utmost good faith and fidelity as a fiduciary agent.

405.  Donais's disclosure of client discussion information and the results therefrom was a breach of Donais's complete and undivided loyalty to Bisasor.

406.  Donais's disclosure of client discussion information and the results therefrom took advantage of Bisasor, and, placed him at a disadvantage.

407.  Donais's disclosure of client discussion information and the results therefrom was an abuse of trust, disloyal, and a betrayal of Bisasor's cause.

408.  Donais's disclosure of client discussion information and the results therefrom subverted Donais's obligation to Bisasor, all to Bisasor's disadvantage.

409.  See In re Disciplinary Bd. of Hawaii Supreme Court, 984 P.2d 688 (Haw. 1999) (evidence underlying a violation of a disciplinary rule is evidence that would support civil or criminal liability); Gilles v. Wiley, Malehorn & Sirota, 783 A.2d 756 (N.J. Super 2001) (breach of a rule of professional conduct is evidence of an attorney's failure to comply with the required standard of care); BCCI Holdings (Luxembourg), S.A. v. Clifford, 964 F.Supp. 468 (D.D.C. 1997) (breach of attorney's ethical standards will constitute breach of fiduciary duty owed to client);

410.  Donais's disclosure of client discussion information and the results therefrom violated Donais's ethical obligation to Bisasor under the NH and Massachusetts Rules of Professional Conduct, e.g., Rules 1.2. See Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989).  See Clark v. Rowe, 428 Mass. 339, 345 (1998).  See 51 Mass. Prac., Professional Malpractice $ 17.1 and n. 5 (2017); Cleary v. Cleary, 427 Mass. 286, 293 (1998). See In the Matter of Lupo, 447 Mass. 345, 358 (2006). See 51 Mass. Prac., Professional Malpractice § 17.1 at n.

411.  Donais's disclosure of client discussion information and the results therefrom violated Donais's ethical obligation to Bisasor under the NH and Massachusetts Rules of Professional Conduct. See 51 Mass. Prac., Professional Malpractice $ 17.1 at n. 8 ("The Massachusetts Rules of Professional Conduct do not separately catalog the lawyer's fiduciary duties, but they are encompassed in the duties of zealous representation (1.3), full disclosure (1.4), preserving confidentiality (1.6), and avoiding conflicts of interest (1.7-1.9).

412.  Said ethical rules were and are intended to protect one in Bisasor's position, and, a violation of the same is evidence of the attorney's negligence. See 51 Mass. Prac., Professional Malpractice $ 17.6 (2017). See Tetrault v Mahoney, Hawkes & Golding, 425 Mass. 456, 466 (1997). See Glickman v. Brown, 21 Mass.App.Ct. 229, 235 (1985).

413.  See Massachusetts Rules of Professional Conduct, Rule 8.4 ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another. (c) engage in conduct involving dishonesty ... (d) engage in conduct that is prejudicial to the administration of justice;…or (h) engage in any other conduct that adversely reflects on his fitness to practice law").

414.  Thus, in terms of the breach of fiduciary duty and breach of confidentiality claims, Donais acted as a prospective attorney for both plaintiffs, as evidenced by his communications with Plaintiff Bisasor, and by his own admissions and those of Attorney Robert O'Brien and Attorney Elliott Berry. Further facts and documentary evidence of the above include emails and testimony from Elliott Berry, who stated that Donais' conduct constituted a breach of fiduciary duty and a violation of the rules of professional conduct, as well as emails from the ADO regarding Berry's interview, Berry's own written determination that Donais breached his duty, and evidence from the circuit court where Donais withdrew after the judge determined that Donais had violated ethical duties/breach fiduciary duty. The court transcript shows that Donais was effectively caught red-handed and that a circuit court judge effectively found that Donais breached fiduciary duty as thus was required to be disqualified from the case. This by itself is slam-dunk proof that Donais is liable for this claim of breach of fiduciary duty, and Donais' own withdrawal serves as his own admission that he was guilty/liable for this wrongdoing.

415.  There is also evidence from Robert O'Brien that Donais lied about the nature of his communications with plaintiffs.

416.  These claims are asserted by both Anderson and Bisasor, and Donais' conduct injured both of them.

417.    NB: Donais cannot dispute facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in any pre-trial motion is invalid.

418.    As a result of Donais's breaching conduct, Bisasor sustained injury and loss. Donais caused Bisasor to suffer emotional distress. The damages Bisasor sustained were directly, proximately and solely caused by Donais's breach of his duty as set forth above.

419.    Donais breached his fiduciary duties and obligations to Bisasor by doing all of the acts and omissions as herein alleged.

420.    In doing all of the above described acts and omissions constituting Donais's breach of his fiduciary duties owed to Bisasor, Bisasor has been damaged/injured.

421.    Bisasor's injuries include lost opportunities, emotional distress, and mental anguish.

422.    The acts and omissions constituting breach of Donais's fiduciary duties were committed with intent, oppression, fraud and/or neglect.

423.    The damages Bisasor sustained were directly, proximately and solely caused by Donais's intentional, reckless and negligent acts and his breach of duty as set forth above.

424.    WHEREFORE, Bisasor demands that judgment enter against Donais for at least $850,000.00 or such other amount sufficient to compensate him for all of his damages, exemplary damages, interest, costs, attorney's fees and such other relief as the Court deems just and proper.

## COUNT II - BREACH OF IMPLIED CONTRACT
### (as to defendant Craig Donais and defendant Donais Law Offices PLLC)

425.    Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

426.    Plaintiff alleges that Donais and  plaintiff had an attorney-client relationship. The plaintiff was, at a minimum, a prospective client that triggered fiduciary obligations and confidentiality obligations, as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct.

427.    Thus, Donais and his law firm owed a contractual duty to Plaintiff, and thus there was contractual relationship that included confidentiality.

428.    Donais' breach of contract is based on: a) the acts of Donais as outlined above, resulting in a breach of contract; as well as b) statements made by Donais that breached that contract. As explained elsewhere, these acts and statements are not time-barred and are not privileged.

429.    Donais and his law firm acted in a manner that was inconsistent with the agreed-upon common purpose and expectations (including but not limited to confidentiality and fiduciary expectations as well as the expectation that Donais would not use client conversation to try to injure, hurt, defame or publish private facts or to seek to try to wrongly prosecute the client, among other things), as required by the rules of professional conduct for lawyers, and all of which Donais and his law firm did, and Plaintiff was harmed by this breach of contract conduct by Donais and his law firm.

430.    NB: The defendant cannot disputed facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in a pre-trial motion to dismiss is invalid.

431.    The law recognizes an implied covenant of good faith and fair dealing in all contracts, either expressed or implied.

432.    Plaintiff had a prospective attorney client relationship with Donais. The rules of professional conduct and the law treats this relationship as a real attorney client relationship even where there is not an express contract. An express contract is not necessary to form an attorney-client relationship.

433.    Plaintiff and Donais had an implied contractual relationship that was implied by the confidential nature of their prospective attorney client relationship. Donais himself admitted in email to other people that there was a client relationship or a prospective client relationship, which implicates confidentiality obligations, and which creates a contractual relationship or at least an implied contractual relationship.

434.    As cited in prior paragraphs, Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

435.    Donais discussed with several people the client conversation he had with the plaintiff. These include his wife, Mary Donais, his adult son Garrett Donais, his friend Nate Linstad, and his police officer friends and connections. These communications with his friends and connections violated the rights of the plaintiff.

436.    Similarly, every additional breach or wrongful act that flowed out of Donais' representation of the opposing party is also a breach of implied contract.

437.    Similarly, every wrongful act or harm resulting from the acts of Donais that flowed from the event in which the prospective client relationship was formed is also a breach of implied contract.

438.    By breaching the confidentiality of that prospective attorney-client relationship, and by doing so in a particularly nasty, malicious, bad faith, harmful way, Donais breached this implied contract.

439.    As a result, Plaintiff have suffered damages.

## COUNT III - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

440.    Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

441.    Plaintiff alleges that Donais represented plaintiff and he was a client. The plaintiff was a client that triggered fiduciary obligations and confidentiality obligations, as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct.

442.    Thus, Donais owed a duty to Plaintiff.

443.    Donais acted in a manner that was inconsistent with the agreed-upon common purpose and expectations (including but not limited to confidentiality and fiduciary expectations as well as the expectation that Donais would not use client conversation to try to injure, hurt, or publish private facts or to seek to try to wrongly prosecute the client, among other things), as required by the rules of professional conduct for lawyers, and all of which Donais did, and Plaintiff was harmed by this breach by Donais.

444.    NB: The Donais cannot disputed facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in a pre-trial motion to dismiss is invalid.

445.    The law recognizes an implied covenant of good faith and fair dealing in all contracts, either expressed or implied.

446.    Donais owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the rights of the Plaintiff to receive the fruits of thereof.

447.    Plaintiff had an attorney client relationship with Donais. The rules of professional conduct and the law treats this relationship as an attorney client relationship even where there is not an express contract.

448.    An express contract is not necessary to form an attorney-client relationship.

449.    Plaintiff and Donais had an implied contractual relationship that was implied by the confidential nature of their attorney client relationship.

450.    As cited in prior paragraphs, Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

451.    Donais discussed with several people the client conversation he had with the plaintiff.  These communications with third parties violated the rights of the plaintiff.

452.    Similarly, every wrongful act or harm resulting from the acts of Donais that flowed from the event in which the client relationship was formed is also a breach of implied contract and a breach of the covenant of good faith/fair dealing.

453.    By breaching the confidentiality of that attorney-client relationship, and by doing so in a particularly nasty, malicious, bad faith, harmful way, Donais breached this implied contract and the attendant covenant of good faith and fair dealing.

454.    Plaintiffs and Donais had entered into a contractual relationship.

455.    Every contract "imposes an obligation of good faith and fair dealing in its performance and enforcement," and this covenant is that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other to receive the fruits of the contract." Lechoslaw v. Bank of v. N.A., 575 F.  Supp. 2d 286, 296–97 (D. Mass. 2008).

456. This covenant is intended to ensure "that the parties remain faithful to the intended and agreed expectations of the contract" and that neither party will do anything that will prevent the other party from receiving the benefits of the contract. See Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008).

457. Therefore, NH law implies a covenant of good faith and fair dealing in all contracts between parties, whether either expressed or implied.

458. Donais therefore owed to Plaintiffs a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiffs, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the right of the Plaintiffs to receive the fruits of the contract.

459. The Donais had a duty, under this implied covenant, to look out for the best interest of the Plaintiffs, and not go against his best interests or undermine or subvert his best interests.

460. The Donais violated the implied covenant of good faith and fair dealing by failing to protect the interests of the Plaintiffs.

461. Donais were willful in their disregard for the welfare of the Plaintiffs and caused damages to Plaintiffs.

462. Donais acted as though they intended to deliver on the agreement made with the plaintiffs but secretly was manipulating the plaintiffs so that the plaintiffs would not seek legal action against the Donais. Donais' manipulation was part of a fraudulent attempt to deceive the plaintiffs for their own selfish purposes and cover the exposure of the firm.

463. By doing so in a particularly bad faith, deceptive and harmful way, the Donais breached the attendant covenant of good faith and fair dealing.

464. By the above-described conduct, inter alia, the Donais knowingly, improperly, malevolently, and intentionally breached its implied covenant with the plaintiffs.

465. Through his actions and inactions, Donais breached his duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests.

466. Donais owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the right of the Plaintiff to receive the fruits of the contract.

467. By the conduct alleged herein, the Donais have breached the implied covenant of good faith and fair dealing and caused harm to plaintiffs.

468. As a direct and foreseeable consequence of Donais' actions, the plaintiffs has suffered damages.

469. As a result thereof, the plaintiffs has been and continued to be injured and suffer damages.

470. As a result, Plaintiffs has suffered damages.

## COUNT IV: DEFAMATION (ALL DEFENDANTS)

471. Plaintiff incorporate by reference all paragraphs of this Complaint as though fully stated herein seriatim.

472. Defendants falsely accused Plaintiff of criminal conduct, mental instability, and fabricating evidence in police reports and to third parties. These statements were irrelevant to judicial proceedings, disseminated with malice, and caused reputational harm. Absolute privilege does not shield extrajudicial statements (McGranahan v. Dahar, 119 N.H. 758 (1979); Pickering v. Frink, 123 N.H. 326 (1983)).

473. It should be noted that Donais himself believed that the purported racism accusation was not relevant because he did not tell anyone about it in January 2017 or February 2017, including when he was explaining what was said on the 1-9-17 call, to his client Dave Akridge, his co-counsel Karl Terrell, as well Judge Paul Moore, and Attorney Elliott Berry and others. This is proof that the purported racism accusation by plaintiff did not happen and that Donais later made it up out of whole cloth; but this in the alternative proves that in Donais' mind it was not relevant because he failed to mention to anyone. This supports the position that the purported racism accusation was not relevant to the proceeding and thus, on that ground alone, privilege cannot attach. Also, a statement that never occurred cannot be relevant to any proceeding because it never occurred. A non-existent event cannot be relevant to anything. Further, in the alternative, this false statement by Donais constitutes a crime (including perjury and hate crime motivated by racism) and crimes are not covered by absolute privilege.

474.    This count alleges that Defendants made false, malicious, and defamatory statements about Plaintiff to multiple third parties including family members, colleagues, community organizations, state officials and to law enforcement, outside the scope of any judicial proceeding.

475.    Under NH law, defamation requires that the defendant made a false statement of fact to a third party that harmed the plaintiff's reputation. McGranahan v. Dahar, 119 NH 758, 763 (1979); Pickering v. Frink, 123 NH 326 (1983). It thus, simply, requires (1) a false statement, (2) publication to a third party, (3) fault (negligence or actual malice), and (4) damages.

476.    Donais and the other defendants published false statements, falsely accusing the plaintiff of criminal conduct and of falsely accusing the defendant of racial discrimination.

477.    These statements were made with reckless disregard for the truth and with malice, and they caused significant harm to the plaintiff's reputation.

478.    The allegations establish that Donais falsely claimed that Plaintiff accused him of racism, fabricated evidence of criminal conduct, and suggested that Plaintiff was dangerous and mentally ill.

479.    These statements were not made in court or in any judicial context but were disseminated widely to police, police officers, family, friends, and community members.

480.    Defendants falsely accused Plaintiff of criminal conduct, mental instability, and fabricating evidence in police reports and to third parties (2019–2020). These statements are irrelevant to judicial proceedings, disseminated with malice, and caused reputational harm. Absolute privilege does not apply, as the accusations were extraneous to any legitimate legal purpose and repeated outside court contexts. McGranahan v. Dahar, 119 N.H. 758, 763 (1979); Pickering v. Frink, 123 N.H. 326, 329 (1983.

481.    The statements are inherently defamatory per se because they impute criminality, mental illness, and dangerousness, categories recognized as defamatory per se in NH and Massachusetts law. G. L. c. 231, § 92; Stone v. Essex County Newspapers, 367 Mass. 849 (1975).

482.    Further, Donais's statements were made with actual malice, evidenced by his reckless disregard for the truth, as he knew or should have known that the accusations were false.

483.    The repeated dissemination, especially to law enforcement, amplifies the harm and demonstrates malicious intent.

484.    The statements also caused Plaintiff reputational harm, emotional distress, and economic damages, satisfying all elements of defamation.

485.    It should be noted that any defense that may assert privilege is belied by the fact that the statements at issue were made outside of judicial proceedings and are not protected by privilege, and especially given their false, malicious, and extrajudicial nature.

486.    See McGranahan, supra; Stone, supra; Davis v. Ross, 754 F.2d 80 (2d Cir. 1985).

## A. Summary of Defamation Law Principles

487.    Defamation can be in the form of libel or slander. While libel refers to written words that are defamatory, slander refers to spoken words that are defamatory. Draghetti v. Chmielewski, 416 Mass. 808, 812 n.4 (1994). To prevail on the libel claim, a plaintiff must prove that "the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004).

488.    A claim for libel is actionable without proof of economic loss. See Ravnikar v. Bocojavlensky, 438 Mass. 627, 630 (2003). See Visnick v. Marriott International, Inc., 22 Mass. L. Rptr. 727 (2007). See also Valley Electronics AG, et al., v. Polis, No. 20-cv-2133ARRLB, 2021 WL 3919244, at *6 (E.D.N.Y. Aug. 6, 2021) ("'An action for defamation that is expressed in writing or print,' including on the Internet, 'constitutes the common law cause of action for libel.'") (quoting Murawski v. Pataki, 514 F. Supp. 2d 577, 589 (S.D.N.Y. 2007); citing Buskirk v. N.Y. Times Co., 325 F.3d 87, 88 (2d Cir. 2003).

489.    A written statement is libelous per se if it "tends to disparage a person in the way of his [or her] office profession or trade." See Davis v. Ross, 754 F.2d 80, 82 (2d Cir. 1985) (quoting Nichols v. Item Publishers, 309 N.Y. 596, 601 (1956))."A writing also is libelous per se if it "tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him [or her] in the minds of a substantial

number of the community, even though it may impute no moral turpitude to him [or her]." See further Nichols, 309 N.Y. at 600–01.

490.    It is sufficient to plead a claim of libel per se by alleging that a false written statement affected or may have affected one's profession by "imputing to [them] . . . fraud, dishonesty, [and/or] misconduct . . . ." Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

491.    To establish a claim for defamation, a plaintiff must prove four elements: (1) the defendant made a false statement to a third party, (2) of or concerning the plaintiff, (3) that was capable of damaging the plaintiff's reputation in the community and that caused the plaintiff economic loss or is actionable without proof of economic loss, and (4) the defendant was at fault. See Ravnikar, 438 Mass. at 629-630, 782 N.E.2d 508.

492.    Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994), quoting from Correl-las v. Viveiros, 410 Mass. 314, 319 (1991). Defamation is essentially spoken or written words or expressions that injure reputation.6 See Stone v. Essex County Newspapers, Inc., 361 Mass. 849, 853 (1975).

493.    While jurisdictions differ as to the extent to which a statement must be capable of injuring the plaintiff's reputation for it to be defamatory, in Massachusetts the false statement must be one that "discredits the plaintiff 'in the minds of any considerable and respectable segment in the community.' " Draghetti v. Chmielewski, supra at 811, quoting from Tropeano v. Atlantic Monthly Co., 319 Mass. 745, 751 (1980).

494.    Although defamation is explicitly enumerated in § 10(c), it is unique among the listed intentional torts in that it does not require any intentional misconduct. Assuming the other elements of defamation are present, the publication of a false statement about a private party is equally tortious whether it is made intentionally, recklessly, or negligently. See, e.g., Ezekiel v. Jones Motor Co., 374 Mass. 382, 390 (1978) (defamation verdict reinstated where jury could have determined that defendant during public hearing "knowingly accus[ed] the plaintiff of theft"); New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 476-477 (1985), quoting from Stone v. Essex County Newspapers, Inc., supra at 855 ("private persons . . . may recover compensation on proof of negligent publication of a defamatory falsehood").

495.    The nature of the wrong in a defamation of a private party is unrelated to the defendant's intentions or his degree of malice: "[I]t is said that neither the intention with which a tortfeasor acted, nor the state of his feelings toward the person injured . . . , can make him less responsible for the injury actually caused by his wrongful act. To carelessly utter defamatory statements entails the same responsibility for the injurious consequences as negligently to cast about firebrands, or shoot off a gun: since the defendant has in fact done the wrongful act he must be taken to have intended the consequences which naturally resulted." Note, Libel Without Intent, 23 Harv. L. Rev. 218-219 (1910), citing Curtis v. Mussey, 6 Gray 261 (1856); Hill v. Winsor, 118 Mass. 251 (1875); Hanson v. Globe Newspaper Co., 159 Mass. 293 (1893); Ellis v. Brockton Publishing Co., 198 Mass. 538 (1908).

496.    For private persons, intent is not essential to the tort of defamation. Intent is presumed, or, at a minimum, responsibility and liability is imputed as if intent was manifest, even when publication is negligently or carelessly effectuated. See In re Pereira, 44 B.R. 248, 252 (Bankr. D. Mass. 1984). The Legislature appears to have acknowledged and perpetuated this unique characteristic of the tort of defamation, by specifically including it in § 10(c). A statement about a private party that is negligently published, with intentional or reckless disregard for its truth, can be just as defamatory as a statement that is intentionally published, with negligent disregard for its truth. See New England Tractor-Trailer Training of Conn., Inc., supra; Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003). Ultimately, and appropriately, the Legislature has determined that both species of defamation, libel and slander, are intentional torts for the purposes of § 10(c).

497.    Massachusetts, by statute, allows a plaintiff to recover for a truthful defamatory statement if it was published in writing (or its equivalent) and with actual malice. See G. L. c. 231, § 92.

498.    Malice does not mean personal ill, but it may also mean such a wanton and reckless disregard of the rights of another as is ill-will's equivalent.

499.    Actual malice can be found where there is knowledge that the statements were false or made with reckless disregard for whether they were false. New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

500.    Mere reckless statements, or statements based on nothing in the way of information, are not protected. Nor are statements made "with knowledge that they were untrue, or without caring whether they are true or false; or if one states as true what he did not know to be true, recklessly, not taking the trouble to ascertain whether it was true or not.

501.    A plaintiff may prove actual malice either by extrinsic evidence of personal ill-feeling, or by intrinsic evidence, such as the exaggerated language of the libel, the mode and extent of publication, and other matters in excess of the privilege. (Odgers on Libel & Slander [5th ed.], 685.) The rule is properly applied to reckless statements based on nothing in the way of information. See Pecue v. West, 233 N.Y. 316 (1922).

502.    Reckless disregard requires that the individual making the alleged defamatory statement "entertained serious doubts as to the truth" of the statement. Murphy, 449 Mass. at 48, quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968).

503.    A qualified or conditional privilege can be abused and lost in a number of different ways. Bratt v. International Bus. Machs. Corp., 392 Mass. 508, 514 (1984). "One manner of such abuse is publication with knowledge of falsity or with reckless disregard of the truth." Tosti v. Ayik, 386 Mass. 721, 726 (1982). Case law and the Restatement (Second) of Torts agree that recklessness is the minimum degree of misconduct required to forfeit a conditional privilege. Bratt v. International Bus. Machs. Corp., supra.

504.    The abuse and loss of the defendant's conditional privilege in a defamation action can also be based on "unnecessary, unreasonable or excessive publication," provided the plaintiff proves that the defendant acted "recklessly." Id. at 515-516. Therefore, the privilege is abused when the communication is made in such a way as to unnecessarily, unreasonably, or excessively "publish it to others, as to whom the occasion is not privileged." Galvin v. New York, N.H. & H.R.R., 341 Mass. 293, 297 (1960).

505.    Finally, a conditional privilege is abused and lost when it is determined that the defendant has acted with actual malice. See ibid.; Tosti v. Ayik, supra. A conditional privilege may thus be recklessly abused and lost whether the fault lies in the misconduct of determining the truth of the material published or in the misconduct of unnecessarily, unreasonably, or excessively publishing the material. See also Barrows v. Wareham Fire District, 82 Mass. App. Ct. 623 (2012).

506.    Carelessly to utter defamatory statements entails the same responsibility for the injurious consequences as negligently to cast about firebrands, or shoot off a gun: since the defendant has in fact done the wrongful act, he must be taken to have intended the consequences which naturally resulted. Note, Libel Without Intent, 23 Harv. L. Rev. 218-219 (1910), citing Curtis v. Mussey, 6 Gray 261 (1856); Hill v. Winsor, 118 Mass. 251 (1875); Hanson v. Globe Newspaper Co., 159 Mass. 293 (1893); Ellis v. Brockton Publishing Co., 198 Mass. 538 (1908).

507.    A defamation which charges a plaintiff with criminal conduct is actionable per se. Finger v. Pollack, 188 Mass. 208 (1905); Sousa v. Davenport, 3 Mass. App. Ct. 715 (1975). Criminal accusations are generally regarded as defamatory, see Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975).

508.    There are many cases which hold that the report of a crime is only conditionally privileged. In most of those cases, the defendants went to the police, or communicated with others, on their own initiative and published an accusation which might otherwise never have been known. See, e.g., Seelig v. Harvard Coop. Soc'y, 355 Mass. 532, 537-538 (1969) (store initiated investigation which led to criminal complaint against plaintiff); Pihl v. Morris, 319 Mass. 577, 581 (1946) (defendant told police that plaintiff had stolen a dish-washing machine and made a formal complaint for larceny); Robinson v. Van Auken, 190 Mass. 161, 166 (1906) (defendant called a police officer to his store and made an accusation of larceny against the plaintiff in officer's presence); Brow v. Hathaway, 13 Allen 239, 242-243 (1867) (defendant went to police and initiated an investigation). The key to understanding these cases lies in the fact that, when the defendants made the allegedly defamatory statements, no criminal action or judicial proceeding was then being contemplated or proposed. As a consequence, the defendants could not reasonably argue that they were entitled to the protection of absolute privilege.

509. A master is liable for the wrongful acts of his servant committed within the scope of his authority. Mills v. W. T. Grant, 233 Mass. 140 (1919). Pesce v. First National Stores, Inc., 1983 Mass. App. Div. 64 (1982).

510. The plaintiff is entitled to recover for the 'distress and anxiety which may have been the natural result of the legal wrong.' " Shafir v. Steele, 431 Mass. 365, 373, 727 N.E.2d 1140 (2000), quoting Markham v. Russell, 12 Allen 573, 575, 94 Mass. 573 (1866).

511. Generally, a publication may convey a defamatory meaning if it "tends to lower [the] plaintiff in the estimation of a substantial, respectable group, though they are a minority of the total community or plaintiff's associates." Afro-American Publishing Co. v. Jaffe, 366 F.2d 649, 654 n. 10 (D.C. Cir. 1966).

512. Where the statements at issue "could have been understood by the average reader in either sense, [however,] the issue must be left to the jury's determination." Lyons v. New Mass Media, Inc., 390 Mass. 51, 59 (1983).

513. Defamation by implication is also a valid claim, stemming not from what is literally stated, but from what is implied. See Tavoulareas v. Piro, 817 F.2d 762, 780 (D.C. Cir. 1987) (en banc); cert. denied, 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987) (use of the term "set up" in a familial context implied that one family member provided an opportunity to another family member on the basis of kinship, not merit); see generally R. Smolla, Law of Defamation, § 4.05 (1990). This court has recognized, however, that "District of Columbia law ... clearly contemplates the possibility that a defamatory inference may be derived from a factually accurate news report." Southern Air Transport, 877 F.2d at 1014; see also McBride v. Merrell Dow and Pharmaceuticals, Inc., 717 F.2d 1460, 1465 (D.C. Cir. 1983) (true statement that an expert witness received $5,000 a day might support an implied defamatory meaning that the plaintiff's testimony was "for sale").

514. The usual test applied to determine the meaning of a defamatory utterance is whether it was reasonably understood by the recipient of the communication to have been intended in the defamatory sense.... When one uses language, one is held to the construction placed on it by those who hear or read, if that construction is a reasonable one. F. Harper, et al., The Law of Torts § 5.4 (1986) (emphasis added). Under this standard, in order to prevail on a defamation claim, the language used must, as a matter of law, be reasonably capable of a defamatory interpretation and a jury must find that the language was actually understood by the recipient in that sense. It is no defense that the defendant did not actually intend to convey the defamatory meaning, so long as the defamatory interpretation is a reasonable one. At bottom, "[t]he meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." Restatement (Second) of Torts § 563 (1977); see also id. comment c. In McBride, the court held that the true statement that Dr. McBride received $5,000 a day for his expert testimony might support the implied defamatory meaning that "the plaintiff's case was so weak they had to pay that much to get any expert to testify, and hence that Dr. McBride's testimony was for sale." 717 F.2d at 1465. That implied defamatory meaning arose not out of mere reporting of the $5,000 payment, but from the juxtaposition of that figure with the fees which the defendant normally paid such experts. The McBride court noted this direct comparison.

515. If the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference, the communication will be deemed capable of bearing that meaning.

516. Defamation can thus be found with the use of certain juxtapositions, turns of phrase, or incendiary headlines. See, e.g., Cianci v. New Times Publishing Co., 639 F.2d 54, 60 (2d Cir. 1980) (article with the headline "Buddy We Hardly Knew Ya" allowed readers to conclude that Mayor Cianci was accused of being a rapist and obstructor rather than the man of character he claimed he was). See White v. Fraternal Order of Police, 909 F.2d 512 (D.C. Cir. 1990)

517. Similarly, the omission of material facts might in some circumstances supply the missing ingredient that would place a literally true communication in the field of implied defamation.

518. For private persons, intent is not essential to the tort of defamation. Intent is presumed, or, at a minimum, responsibility and liability is imputed as if intent was manifest, even when publication is negligently or carelessly effectuated. See In re Pereira, 44 B.R. 248, 252 (Bankr. D. Mass. 1984).

519.    Most people only have to show that the defendant was negligent (i.e., careless) in making the defamatory statement. Public officials and public figures, on the other hand, have to show "actual malice," which the US Supreme Court has defined as knowledge of falsity or reckless disregard for the truth (which does not mean that the defendant necessarily acted with deliberate ill will).

520.    A defamatory imputation is an imputation which is likely to lower a person in the estimation of right-thinking people; an imputation which injures a person's reputation by exposing him to hatred, contempt or ridicule; or an imputation which tends to make a person be shunned or avoided.

## COUNT V – DEFAMATION PER SE/LIBEL PER SE
### (as to Defendants Craig Donais and Donais Law Office PLLC)

521.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

522.    To constitute defamation per se, the alleged defamatory statement must fit within one of the four classes.

   a.  Statements constituting libel.
   b.  Statements charging the plaintiff with a crime.
   c.  Statements alleging that the plaintiff has certain diseases.
   d.  Statements prejudicing the plaintiff's business or profession.

523.    Defendants' actions fall within all four classes. Defendants' actions constitute defamation per se entitling Plaintiff to monetary damages in an amount to be determined at trial.

524.    Criminal accusations are generally regarded as defamatory. See Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975).

525.    Defendants accused the plaintiff of criminal conduct which included that I "bugged" his office and fabricating his voice in a recording. Defendants' published statements are defamatory per se and intended to damage the plaintiff. These statements were made orally as well as also were written when published to a third party, and thus also constitute libel per se.

526.    Defendants also accused the plaintiff of posing a dangerous criminal threat to him, his wife and young child. Defendants' published statements are defamatory per se and intended to damage the plaintiff. These statements were also written when published to a third party and thus also constitute libel per se.

527.    Defendants' published statements suggesting that the plaintiff was a criminal, or committed crimes or was a dangerous criminal threat to him, his wife and young child, are false and untrue and have defamed or was intended to defame the plaintiff. Defendants' published statements are defamatory per se and intended to damage the plaintiff. These statements were also written when published to a third party and thus also constitute libel per se.

528.    Defendants' published statements suggesting that the plaintiff had a mental disease, or a tenuous grasp on reality are false and untrue and have defamed or was intended to defame the plaintiff. Defendants' published statements are defamatory per se and intended to damage the plaintiff.

529.    Defendants accused the plaintiff of conduct which would injure plaintiff in his trade and profession.

530.    These statements were made to Craig Donais family members including his adult son Garrett and to the police, among others. Discovery will reveal to full extent of these statements and how widespread they were or became.

531.    NB: Defendants went to the police, or communicated with others, on their own initiative and published accusations which might otherwise never have been known. According to case law, this conduct is not protected. See, e.g., Seelig v. Harvard Coop. Soc'y, 355 Mass. 532, 537-538 (1969). Brow v. Hathaway, 13 Allen 239, 242-243 (1867) (defendant went to police and initiated an investigation).

532.    When Defendants made the defamatory statements, no criminal action or judicial proceeding was then being contemplated or proposed.

533.    The defendants' statements were false and reckless in disregard of the truth and made without proper investigation of the allegations.

534.    That the statements are defamatory is clear. The statements can reasonably be read as discrediting the plaintiff in the minds of any considerable and respectable class of the community. Moreover, these words

have the effect of heaping disparagement upon plaintiff when viewed contextually, i.e. in the light of attendant circumstances.

535.    Defendants communicated the defamatory statements about plaintiff to several third parties. In publishing these statements, Defendants published defamatory statements to a wide range of persons.

536.    Therefore, Defendants' published statements that are false and untrue have defamed plaintiff.

537.    These statements made by the Defendants are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.  These defamatory statement(s) require no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Defendants falsely accused the Plaintiff of committing crime(or) or violations of moral conduct and because Defendants injured Plaintiff in his profession and/or occupation.

538.    These statements are untrue and are harming the plaintiff, so long as they remain public.

539.    Because these statements are in the public record, Plaintiff does not have another means of seeking removal of such statements, representing an ongoing harm to Plaintiff.

540.    Defendant's false, disparaging, defamatory, and materially misleading statements are not privileged.

541.    Although not a necessary element to this cause of action, it is be noted nonetheless that Defendants' actions were malicious and showed intentional disregard for plaintiff's rights. Defendants have exhibited particularly egregious conduct and acted with malice or fraud. Defendants maliciously and willfully calculated their actions to harm the Plaintiff.

542.    These statements are false, were made with malice, were not honestly held opinion, were not made accidentally or disseminated accidentally and were intended to be made public.

543.    Defendants' actions betray a malevolent intent and ill-will towards the Plaintiff.

544.    Defendants published or allowed to be published the false and defamatory statements with malevolent intent, ill-will and/or with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

545.    Defendants' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject the plaintiff to contempt and tended to diminish the esteem, respect, goodwill and/or confidence in which he is held.

546.    Defendants published, of and concerning the plaintiff, several defamatory claims both orally and in writing (as well on video recording) to the police, to his friends, colleagues, family, to Craig Donais' wife, to Craig Donais' adult son Garrett Donais, in non-judicial contexts. These statements contained numerous falsehoods about plaintiff whether on its face and/or by virtue of a clear implication affirmatively intended by Defendants, and which were defamatory per se.

547.    Defendants published, of and concerning the plaintiff, several defamatory claims to court employees and to judges, with malice and knowledge of falsity as a non-party, and therefore are not privileged. These statements contained several falsehoods about plaintiff whether on its face and/or by virtue of a clear implication affirmatively intended by Defendants, and which were defamatory per se.

548.    By their above-described conduct, inter alia, Defendants have published or allowed to be published false, disparaging, defamatory, and materially misleading statements about the plaintiff.

549.    As described herein above, inter alia, Defendants have intentionally and with malice published false, disparaging, defamatory, and materially misleading statements about the plaintiff with the intent to damage his professional and personal reputation.

550.    As described above, inter alia, Defendants have negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about the plaintiff.

551.    These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.  These defamatory statement(s) requires no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Donais falsely accused the Plaintiff of committing a serious violation of moral conduct and because Defendants injured Plaintiff in his or her profession and/or occupation.

552.    Donais made these false defamatory statements to his wife Mary Donais, to his sons including his eldest adult son Garrett Donais, to other members of his family, his malpractice insurance representatives,

to his friend and colleague Robert Obrien, to his friend Nate Linstad, to friend and colleague Brian Snow, to his friend Dave Akridge and to his police cronies.

553. Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

554. As a result of the malicious defamatory conduct on the part of the Defendants, Plaintiff has suffered economic and consequential damages.

555. As a direct and foreseeable consequence of Defendants' defamation, the plaintiff has suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to his reputation.

556. As a result thereof, the plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress.

557. These damages include not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

## COUNT VI– DEFAMATION/LIBEL OF PRIVATE CITIZEN
### (as to Defendants Craig Donais and Donais Law Office PLLC)

558. Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

559. Under NH law, defamation is committed when: (1) the defendant published a statement; (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss.

560. Defendants' published statements suggesting that the plaintiff unjustifiably accused Donais of racism for declining prospective attorney-client relationship, is false/untrue. This is harmful to the plaintiff as it presents plaintiff as one who frivolously and groundlessly accused Donais of racism without any rational basis or justification.

561. That the statements are defamatory is clear. The statements can reasonably be read as discrediting the plaintiff in the minds of any considerable and respectable class of the community. Moreover, these words have the effect of heaping disparagement upon plaintiff when viewed contextually, i.e., in the light of attendant circumstances.

562. Defendants communicated the defamatory statements about plaintiff to several third parties. In publishing these statements, Defendants published defamatory statements to a wide range of persons.

563. Therefore, Defendants' published statements that are false and untrue have defamed plaintiff.

564. These statements made by the Defendants are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury. These defamatory statement(s) require no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Defendants falsely accused the Plaintiff of committing crime(or) or violations of moral conduct and because Defendants injured Plaintiff in his profession and/or occupation.

565. These statements are untrue and are harming the plaintiff, so long as they remain public.

566. Because these statements are in the public record, Plaintiff does not have another means of seeking removal of such statements, representing an ongoing harm to Plaintiff.

567. Defendant's false, disparaging, defamatory, and materially misleading statements are not privileged.

568. Although not a necessary element to this cause of action, it is be noted nonetheless that Defendants' actions were malicious and showed intentional disregard for plaintiff's rights. Defendants have exhibited particularly egregious conduct and acted with malice or fraud. Defendants maliciously and willfully calculated their actions to harm the Plaintiff.

569. These statements are false, were made with malice, were not honestly held opinion, were not made accidentally or disseminated accidentally and were intended to be made public.

570. Defendants' actions betray a malevolent intent and ill-will towards the Plaintiff.

571.    Defendants published or allowed to be published the false and defamatory statements with malevolent intent, ill-will and/or with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

572.    Defendants' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject the plaintiff to contempt and tended to diminish the esteem, respect, goodwill and/or confidence in which he is held.

573.    The false statements were published with knowledge of their falsity and/or with reckless disregard for the truth.

574.    Because these statements were first written and because they tend to injure in my profession or trade, they constitute defamation per se and libel per se.

575.    They tended to (and did) damage me in my trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information. Because the statement affected me or may have affected me in my profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute libel per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

576.    I have suffered harm as a direct result of Donais' false, defamatory statements, which caused injury to my reputation, honor, and dignity.

577.    I have suffered professional harm as a direct result of Donais' defamatory statements.

578.    Donais has injured the reputation upon which I base my business and livelihood as a business consultant.

579.    Plaintiff was also a professional conference planner and event organizer, particularly in the field of conflict resolution, negotiation and mediation.

580.    Plaintiff had an affiliation with the NAACP and was recruited to work on developing, planning and executing a large conference/event that centered on and facilitated dialogue and conflict resolution between the police and the local community, particularly communities of color, in order to improve relationships between local community leaders/members and law enforcement.

581.    Plaintiff had an agreement from the police to collaborate on a community event involving the police and the NAACP and was sponsored by other organizations such as two local colleges and universities.

582.    Part of this agreement was the recruitment of police officers to attend the event.

583.    Plaintiff had in person meetings with and further telephone and email conversations with the chief of police.

584.    The plaintiff had developed a good working relationship and reputation with the chief of police who was enthusiastic about working with the plaintiff on this joint police-community event.

585.    Defendant Donais knew of plaintiff's involvement with the NAACP and about the initiative with the police department.

586.    Defendant Donais issued communications to the police indicating/implying that my wife and I were dangerous and a violent criminal threat to his wife and young child and requesting special police security detail to protect them from my wife and myself.

587.    That suggestion by Donais to the police that my wife and I were dangerous and posed a violent criminal threat to his wife and young child, accords with a racially stigmatizing stereotype of black people as inherently dangerous and violently criminal.

588.    Those damaging and stigmatizing communications to the police stem from an improper motive on the part of Donais. Donais had no rational or reasonable basis to issue those statements about plaintiff and his wife.

589.    Donais knowingly or recklessly made false statements to the police about the plaintiff.

590.    Donais made his false statements with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effects on me and my rights.

591.    Donais' false and defamatory statements caused me to suffer reputational, emotional, and professional harm.

592.    Defendants published, of and concerning the plaintiff, several defamatory claims both orally and in writing (as well on video recording) to the police, to his friends, colleagues, family, Craig Donais' wife, Craig

Donais' adult son Garrett Donais, in non-judicial contexts. These statements contained numerous falsehoods about plaintiff whether on its face and/or by virtue of a clear implication affirmatively intended by Defendants, and which were defamatory.

593.    Defendants published, of and concerning the plaintiff, several defamatory claims to court employees and to judges, with malice and knowledge of falsity as a non-party, and therefore are not privileged. These statements contained several falsehoods about plaintiff whether on its face and/or by virtue of a clear implication affirmatively intended by Defendants, and which were defamatory.

594.    By their above-described conduct, inter alia, Defendants have published or allowed to be published false, disparaging, defamatory, and materially misleading statements about the plaintiff.

595.    As described herein above, inter alia, Defendants have intentionally and with malice published false, disparaging, defamatory, and materially misleading statements about the plaintiff with the intent to damage his professional and personal reputation.

596.    As described above, inter alia, Defendants have negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about the plaintiff.

597.    Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

598.    As a result of the malicious defamatory conduct on the part of the Defendants, Plaintiff has suffered economic and consequential damages.

599.    As a direct and foreseeable consequence of Defendants' defamation, the plaintiff has suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to his reputation.

600.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress.

601.    These damages include not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

602.    Defendants' actions constitute defamation of a private citizen entitling Plaintiff to monetary damages in an amount to be determined at trial.

### COUNT VII – FALSE LIGHT INVASION OF PRIVACY
### (As to defendant Craig Donais and Donais Law Office PLLC)

603.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

604.    As more fully stated elsewhere and below, Craig Donais (and Donais Law Office acting through Craig Donais) engaged in the public disclosure of private facts to the police/police department and to others, and also engaged in publicity placing the plaintiff in a false light in the public, including but not limited to the police and police department, and publishing such disclosures to the public record of the police department, for access to the public, and which also, upon the further actions of Craig Donais, resulted in the widespread publication and publicity of false light disclosures, throughout the entire police department and ostensibly to other police departments in the region, and evidently also causing a state wide watch/lookout by the police for the plaintiff based on the false light and false defamatory allegations of Donais.

605.    Craig Donais broke confidentiality of the ADO process, which was in effect at the time, to present private confidential information to the police regarding the contents of a letter wherein it was stated that there was a recording that proved the dishonesty of Donais.

606.    Donais invaded my privacy by publishing to the police, certain private information provided to the ADO that was protected by confidentiality of the ADO process. By publishing this confidential information, without all of the relevant facts, it presented a false light about me and/or my wife, and Donais then used that letter to accuse me to the police that I or my wife committed a crime. Neither I nor my wife committed a crime. If Donais had waited until the ADO matter was completed, he would not have been able to make any such report of the matter to the police.

607.    The statement by Donais conveyed a defamatory meaning and constituted false invasion of privacy.

608. The statement by Donais contained material capable of defamatory meaning.

609. A jury ultimately is responsible for determining whether the statements actually conveyed a defamatory meaning and whether the other elements of defamation and "false light" invasion of privacy can be established.

610. Donais' statements placed me in a "false light." The false light invasion of privacy action differs from an action for defamation because a defamation tort redresses damage to reputation while a false light privacy tort redresses mental distress from having private information presented publicly in a false light or twisted to imply a false conclusion.

611. Donais accused me of making a recording and that the recording was illegal. Donais based this on a letter that was sent to the ADO that only stated that there was a recording that proved the dishonesty of Donais. But the letter did not say what form the recording was in, what the recording was of, when the recording occurred if it occurred, whether the recording was an electronic recording or a written recording, who the recording was made by, if it was a sound, video or stenographic recording, whether it was a court proceeding in which Donais spoke on the record or it was of a conversation with me. Donais later admitted that he did not know if it was accurately stated or was an untrue statement. Given the above, Donais had no grounds to file such a police report.

612. Donais' statements falsely implied that I committed a crime.

613. Donais' statement goes beyond reporting the facts of what was stated in the letter to the ADO.

614. Donais' statement goes beyond merely stating what was on the incident report. The juxtaposition of the reference to word "offenders" and the statement of Donais' need for protection, renders a colorable inference that: a) I and my wife committed an offense and b) that I and my wife were criminals and c) were capable of harming him, his wife and his young child. By raising the specter of criminal violations, Donais provided a clear signal from which a reader could conclude, rightly or wrongly, that the defamatory inference was intended or endorsed by the police.

615. Material omissions can give rise to a cause of action for defamation,

616. Donais invaded privacy by exposing me and my wife to false light publicity. The Restatement (Second) of Torts § 652E (1977) defines this tort as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his [or her] privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

617. Donais' assertions placed me in a false light. It would be highly offensive to a reasonable person to be placed in this light. As with the defamation count, a jury must be allowed to determine whether this impression is false. The emails, viewed in their entirety, are thus capable of bearing implied defamatory meanings and of placing me and my wife in a false light.

618. Donais made assertions that can reasonably be understood as implying provable facts; the defamatory meanings are derived by implication. It was intended to get the police to take action concerning me and treat me as a criminal.

619. The publications defamed plaintiff by implying falsely, inter alia, that he was a criminal or had committed a criminal offense. This was a clever attempt to try to play word games to create a false implication based on his own initial false or unfounded police report.

620. And It should also be noted that Mr. Donais' false light disclosures and defamatory statements have garnered attention in the news and thus there was broad publication/publicity of matters that include his false statements and disclosures in public settings.

621. Furthermore, Mr. Donais has also made statements to several other people including friends, colleagues and family members. He also went to the police and provided these false light and false defamatory statements to them because he was trying to use police connections to intimidate and harass the plaintiff.

622. These false reports to the police are also public documents now.

623.    This has also damaged me in that it damaged my professional reputation. It damaged my credibility. It damaged me in the community.

624.    This includes false statements that I am a crazy person suffering from mental disease, that I was a

625.    dangerous criminal and he needs protection from me, his wife and his children are in danger, which is absolutely false and it's beyond the pale. And this tarnished my credibility. It tarnished my character. It's in public documents. These

626.    Anybody who tries to look up any kind of information under my name would show that Donais has written these false accusations against me. And it damages me in the community. It damages me with my work with the Police, with the work that I was supposed to be doing with the police and thus harmed me in my profession and in my business. There are multiple people, multiple entities, multiple organizations that Mr. Donais has provided or published this information to. In fact, when I was at one point seeking to obtain legal representation, this information published by Donais interfered with my ability to obtain legal representation.

627.    Plaintiff has thus been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

628.    As a direct and foreseeable consequence of Defendants' statements, the plaintiff has suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to his reputation.

629.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress.

630.    These damages include not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

631.    NB: In this matter, Donais also committed false light invasion of privacy by violating his duty to the plaintiff in several ways. Donais discussed a client conversation he had with the plaintiff, with several people. These include his wife, Mary Donais, his friend Dave Akridge, and his police officer friends and connections. These communications with his friends violated the rights of the plaintiff. Donais also voluntarily engaged in discussion with the police about the conversation Donais had with plaintiff as a prospective client. The police interview recording of this conversation shows that Donais out of his way to violate any ounce of duty he had to the plaintiff as a former prospective client. Furthermore, much of what Donais stated in that interview with the police was untrue, misleading or twisted or embellished adding or stating things that did not occur or were not true. The fact that much of the conversation entailed untrue or misleading statements by Donais still does not avoid the conclusion that Donais violated his duty by having that conversation in the first place. There could be no untrue or misleading statements if Donais did not initiate the conversation. But even in initiating the conversation, Donais did not need to go above and beyond what was necessary. For example, this principle is also shown when a lawyer withdraws from a case and is required to state only the minimum necessary to obtain withdrawal.

632.    By publishing this confidential information, without all of the relevant facts, it presented a false light about me and/or my wife, and Donais then used that to accuse me to the police that I or my wife committed a crime. This also constitutes false light invasion of privacy.

## COUNT VIII - AIDING AND ABETTING DEFAMATION
### (As to defendants Russell Hilliard and Mary Donais)

633.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

634.    Aiding-and-abetting liability requires that the defendant "possess an 'unlawful intent,'" which "comprises two distinct mental states: knowledge that the other's conduct is tortious, and an intent to substantially assist or encourage that conduct." Taylor v. Am. Chemistry Council, 576 F.3d 16, 35 (1st Cir. 2009) (collecting Massachusetts cases). More specifically, "Massachusetts aiding and abetting liability generally requires that a defendant share the mental state of the principal violator." Id. at 35 n.21; see e.g., Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 481 (1994) ("Any violator of the

prohibition against aiding or abetting . . . must share the mental state of the principal violator."); Stock v. Fife, 13 Mass. App. Ct. 75, 82 n.10 (1982) (aiding-and-abetting liability "reserved for application to facts which manifest a common plan to commit a tortious act").

635.    Specifically, a cause of action for aiding and abetting defamation has been recognized by courts.  Under this cause of action, there is no requirement that the offender actually publish the defamatory statement to be liable (see, Long v Marubeni America Corp., 406 F Supp 2d 285 [SDNY 2005]).

636.    All that is required for this cause of action is that there be knowledge and assistance provided by the aider/abettor of the defamation.

637.    Hilliard had an active role in the publication of false statements to the police in August 2020. He acted with malice; and he knew that the statements were false. On information and belief, Hilliard drafted, reviewed, offered revisions or edits to the email which contained the false statements. Hilliard was copied on the email to the police, bearing the imprimatur of legitimacy and validity as essentially coming from two lawyers; and, in so doing, Hilliard aided and abetted the publication of the statements. Hilliard knew that the statements were false and defamatory and that there was no basis for the defamatory implications asserted therein; and, in aiding and abetting the publication of the false statements, Hilliard was acting with malice and reckless disregard of the truth. See Kosmdes v. Sine, Index No. 151683/2018, 7-8 (N.Y. Sup. Ct. 2020).

638.    Aiding-and-abetting liability further requires "assistance or encouragement" in causing the resulting tort'". Taylor v. Am. Chemistry Council, 576 F.3d 16, 35 (1st Cir. 2009) (quoting Restatement (Second) of Torts § 876 cmt. d.). The Restatement sets forth five factors for assessing whether a defendant's conduct constitutes substantial assistance: (1) the amount of assistance given; (2) the nature of the act encouraged; (3) the defendant's presence or absence at the time of the tort; (4) the defendant's relation to the other; and (5) the defendant's state of mind.

639.    These factors are satisfied in the instance case.
   a.   Encouragement or assistance. Hilliard can be said to have encouraged specific acts of defamation and other violations.
   b.   Presence or absence at the time of the tort. Hilliard was present at the time of the defamation as he was copied on the defamatory email sent to the police. Hilliard was Donais' attorney so it can be inferred that Donais discussed the email with Hilliard before sending or drafting it and that Hilliard reviewed, agreed, offered edits or feedback on the defamatory email before sending it.
   c.   Relation to the other. Hilliard has a special relationship with or authority with Donais. Hilliard is a 71-year-old lawyer who gave counsel, advice and direction to the much younger 52-year-old Donais.
   d.   State of mind. Given the above, it can be inferred that Hilliard and Donais shared the same state of mind. Hilliard not only allowed the defamatory email, but he evidently agreed to participate in its dissemination.

640.    NB: The other defendants are vicariously liable for the acts of its employees.

641.    Similarly, Ms. Donais encouraged, knew of, and assisted Donais with his defamatory emails to the police about the plaintiff. Ms. Donais therefore has aided and abetted libel/defamation of the plaintiff.

642.    Ms. Donais actively assists Craig Donais with his law business and law practice including activities in MA. Therefore, it is alleged that Mary Donais fully aids, abets, and conspires with Craig Donais in his acts and conduct at issue in the complaint. Hence, the acts of Craig Donais are imputed to Mary Donais, and vice versa.

643.    Craig Donais and Mary Donais has engaged in defaming me to their family members including to their sons such as Garrett Donais (their eldest adult son), and to each other and to other family in MA as well. Discovery will reveal the extent of the defamation and how widespread it is.

644.    None of the above was directed at any public body or government. All defamatory acts are directed at private persons, as part of the defamatory scheme and campaign of Craig Donais and Mary Donais.

645.    Hilliard has also engaged in such acts including in counselling and assisting Donais in matters that do not involve litigation or a judicial proceeding and also in business matters generally.

646.    The plaintiff seeks general damages and special damages therefor.

647. Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

648. As a direct and foreseeable consequence of Defendants' tortious actions, the plaintiff has suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to his reputation.

649. As a result thereof, the plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress.

650. These damages include not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

## COUNT IX - RACIAL HARASSMENT & RETALIATION IN VIOLATION OF CIVIL RIGHTS STATUTE 42 U.S.C. § 1981
### (as to defendant Craig Donais and Donais Law PLLC)

651. Plaintiff incorporate by reference all paragraphs of this Complaint as though fully stated herein seriatim.

652. Section 1981 provides: *"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a). The statute also states that "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b)."*

653. Section 1981 guarantees freedom from racial discrimination in the making, enforcement performance, modification, and termination of contracts.

654. Section 1981 also guarantees enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

655. To state a prima facie case of a violation of 42 U.S.C. § 1981, the plaintiff is to show that: (1) he belonged to a protected class; (2) he sought to make a contract for services ordinarily provided by the defendant; and (3) he was treated in such a hostile manner that a reasonable person would find it objectively discriminatory.

656. In this case, this prima facie burden has been met, as follows: a) The plaintiff is African-American and belongs to a protected class. This is undisputable. b) The plaintiff sought to make and enforce a contract for services ordinarily provided by the defendant. This is undisputable. c) The plaintiff was treated in such a hostile manner that a reasonable person would find it objectively discriminatory. By breaching the contract with the plaintiff and breaching fiduciary duty to the plaintiff, Defendants have interfered with the making and enforcement of a contract.

657. The Defendants breached their contract with plaintiff and racially harassed plaintiff in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

658. Defendants have also engaged in racial harassment or aided and abetted in racial harassment of the plaintiff, by treating the plaintiff in a hostile manner through activities that are tantamount to mocking, jeering, and taunting the plaintiff as he sought to resist or oppose racial harassment. The defendants have also sought to racially stereotype the plaintiff as a race-baiter, a criminal, as a violent and dangerous person, and as a troublemaker that should be punished, simply because he has to speak up and speak out against the wrongs done to him by the defendants. The defendants also sought to wrongfully use the police to further engage in racial harassment of the plaintiff in order to intimidate and retaliate against the plaintiff for opposing, resisting, and exposing and seeking to hold accountable the defendants for their racially harassing and racially stereotyping conduct towards the plaintiff.

659. This racially harassing conduct included the false allegation that plaintiff accused Donais of racism because Donais declined to represent him, as outlined previously in this complaint. Attorney Elliott Berry (well-known and well-respected legal aid attorney in NH experienced with discrimination matters) who is plaintiff's former legal counsel, confirmed to the plaintiff that such conduct is racially harassing or

discriminatory, as Donais sought to use the plaintiff's race against him as a black male in order to subject him to contempt, ridicule and diminished esteem and credibility. Donais' act of inserting race into his dealings with the plaintiff (which the plaintiff never did) was emblematic of the type of wrongful acts that Donais and the defendants engaged in towards the plaintiff.

660.    The defendants also used the fact that plaintiff originally complained of discrimination with the original hotel defendants, as evidence that plaintiff was lying in denying that plaintiff had accused Donais of racism. This is an utterly oppressive and harassing tactic by the defendants that was perpetrated against the plaintiff. This is precisely the kind of sophisticated race trap that Donais had in mind when he concocted the scheme to falsely accuse plaintiff of accusing Donais of racism because he declined to represent the plaintiff.

661.    By the above acts stated in the prior paragraphs, the defendants have violated 42 U.S.C § 1981 by racially harassing plaintiff and committing racial harassment against plaintiff because of his race as African American [black].

662.    Plaintiff presents an inference of racial harassment/discrimination for which Defendants does not and cannot offer a legitimate non-discriminatory reason for their actions. Any reasons given or to be given by Defendants were or is a mere pretext for discrimination.

663.    Defendants have intentionally engaged in racial harassment against Plaintiff with respect to and flowing out of the implied contract that plaintiff had with Donais, because of Plaintiff's race as a black male; and has classified or sought to classify plaintiff in ways that adversely affected his implied contract with Donais and adversely affected his status as a former client and customer of Donais, because of race.

664.    Defendants have engaged in a continuing practice of racial harassment, racial stereotyping and racialized character assassination against the plaintiff based on race including use of subtle dog whistles.

665.    Similarly, <u>retaliation</u> related to race is recognized as a violation of this statute.

666.    NB: Even isolated comments may constitute direct evidence of discrimination if they are "contemporaneous with the [adverse action] or causally related to the [adverse action] decision making process." See Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723 (7th Cir. 1998) 339. This type of direct evidence of discriminatory intent does not require "a virtual admission of illegality." See Venters v. City of Delphi, 123 F.3d 956 (7th Cir. 1997) at 973. For example, direct evidence need not take the form of an admission where the defendant states "I'm [taking this adverse action] because you're in a protected group." See Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999); see Venters, 123 F.3d at 973. The court in Venters explained that "the evidence need not be this obvious to qualify as direct evidence." Id. And the Sheehan court explained why: because such a requirement "would cripple enforcement of the ... discrimination laws." See Sheehan, 173 F.3d at 1044. The direct evidence of such remarks must, however, establish that race was an important factor motivating the challenged action. 340. See also Lounds v. Lincare, Inc., 812 F.3d 1208, 1224 (10th Cir. 2015) ("[S]tray remarks can prove to be invaluable insights into biases at every level of consciousness that may be rife but invisible within the workplace.... [They] may bespeak a workplace culture in which certain language or sentiments are tolerated and perhaps encouraged or rewarded.")). 341. Evidence, which includes conduct or statements by persons involved directly reflecting the discriminatory attitude, constitutes 'direct evidence' of discriminatory animus.

667.    Unlawful discriminatory practices also include aiding and abetting another to commit an unlawful discriminatory practice. Defendants engaged in intentional conduct in violation of these laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiff's protected rights. Defendants sought to breach the agreement with plaintiff, in retaliation because the plaintiff opposed and resisted and sought to expose the racial harassment, racial stereotyping and racial ridicule and scorn, and mocking that the defendants had initiated against the plaintiff as a black man.

668.    Similarly, markedly hostile treatment is also evidence of retaliatory animus. See also Christian v. Wal-Mart Stores Inc., 252 F.3d 862, 868 (6th Cir. 2001) at 872 (Service is considered "markedly hostile" when it is (1) so contrary to the establishment's financial interests, (2) so far outside of widely accepted business norms, and (3) so arbitrary on its face, that it supports a rational inference of discrimination. Id. at 871).

669.    Plaintiff alleges that Donais and his law firm represented plaintiff and was a former client. The plaintiff was, at a minimum, a prospective client that triggered fiduciary obligations and confidentiality obligations,

as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct. And Donais himself later admitted to the police that plaintiff is a potential client (i.e. stating "I have a potential client").

670.    Thus, Donais and his law firm owed a contractual duty to Plaintiff, and thus there was contractual relationship that included confidentiality. Donais' breach of contract is based on: a) the acts of Donais as outlined above, resulting in a breach of contract; as well as b) statements made by Donais that breached that contract. As explained elsewhere, these acts and statements are not time-barred and are not privileged.

671.    Donais and his law firm acted in a manner that was inconsistent with the agreed-upon common purpose and expectations (including but not limited to confidentiality and fiduciary expectations as well as the expectation that Donais would not use client conversation to try to injure, hurt, defame or publish private facts or to seek to try to wrongly prosecute the client, among other things), as required by the rules of professional conduct for lawyers, and all of which Donais and his law firm did, and Plaintiff was harmed by this breach of contract conduct by Donais and his law firm.

672.    So, there was a contract which satisfies the contract aspect of section 1981.

673.    Donais also acted to prevent or interfere with the performance and enforcement of that contract by and because of racial animus and racial bias against the plaintiff.

674.    Defendants have thus also violated 42 U.S.C. § 1981.

675.    As a direct and proximate result of Defendant's intentional, deliberate, and willful racially harassing acts, Plaintiff have suffered damages. Defendant's actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

676.    Furthermore, this count asserts that Defendants engaged in racial discrimination and retaliation in violation of 42 U.S.C. § 1981, which guarantees all persons the same right to make and enforce contracts without racial discrimination.

677.    The facts demonstrate that Defendants fabricated racial accusations, exploited racial stereotypes, and disseminated false statements to third parties, all motivated by racial animus.

678.    The elements of a § 1981 claim are: (1) membership in a protected class; (2) intent to discriminate based on race; (3) conduct that interfered with a contractual or protected activity; and (4) causation.

679.    Plaintiff, as an African American, clearly belongs to a protected class.

680.    The fabrication of false allegations of racism, the dissemination of racially charged statements, and the use of police to intimidate and retaliate against Plaintiff all support a prima facie case.

681.    The conduct was motivated by racial bias, as evidenced by the racial stereotypes invoked and the timing of the false reports following Plaintiff's complaints and legal actions.

682.    The law recognizes that racial harassment and retaliation can be proved through direct or circumstantial evidence. Harris v. Forklift Sys., 510 U.S. 17 (1993).

683.    The pattern of false accusations, the racialized language, and the intent to harm Plaintiff's reputation and legal rights establish a violation of § 1981.

684.    See Crawford v. Metropolitan Government of Nashville, 555 U.S. 271 (2009); Fitzgerald v. University of Massachusetts, 2 F.3d 131 (1st Cir. 1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

685.    Defendants targeted Plaintiff due to his race, fabricating allegations that exploited stereotypes to undermine his housing and business relationships and thus interfered with Plaintiff's contractual rights by fabricating allegations that exploited racial bias. Thus, the defendants deliberately exploited racial stereotypes and fabricated allegations of racism to interfere with the plaintiff's contractual and personal relations. This interfered with Plaintiff's right to contract (Comcast v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009 (2020).

686.    Donais' false police reports and defamatory narratives targeted Plaintiff's race, violating federal protections against discriminatory contract interference. Comcast v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009 (2020).

687.    This conduct violates federal law, which prohibits racial discrimination in the making and enforcement of contracts.

688.    The plaintiff's claims are supported by evidence of racial animus, discriminatory statements, and adverse actions taken because of race.

## COUNT X CONSUMER PROTECTION VIOLATIONS OF THE NH CONSUMER PROTECTION ACT (RSA 358-A)

689.    The preceding paragraphs are incorporated by reference as if set out in full herein.

690.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

691.    Because clients are "consumers" of the lawyer's trade or professional work, the NH consumer protection act law applies to lawyers.

692.    Thus, attorneys can be held accountable under the NH consumer protection act, and that can include negligent as well as intentional misrepresentations.

693.    The practice of law has been held as "trade or commerce" under the act, which prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

694.    Donais's disclosure of client discussion information was deceitful.

695.    Donais's disclosure of client discussion information and the results therefrom were extreme and outrageous and utterly intolerable.

696.    Donais's conduct was and unfair, deceptive and unethical. Donais engaged in unfair and deceptive acts.

697.    Donais's unfair and deceptive conduct has injured (damaged) Bisasor.

698.    Donais's breach of his fiduciary duty is so clear and obvious expert testimony is not required. See Harris v. Harris, 555 N.E.2d. 10, 19 (Ill.App. 1990).

699.    Donais in bad faith disclosed confidential client information regarding Bisasor's conversation with Donais and used it to try to injure, defame Bisasor. Bisasor and Anderson has been forced to file bar complaints and civil actions against Donais in order to stop Donais from injuring and defaming Bisasor and Anderson.

700.    On information and belief, Donais intentionally lied to his malpractice insurance carrier in order to deprive Bisasor of access to his (Donais's) malpractice insurance policy proceeds.

701.    As a result of Donais's unfair and deceptive conduct, Bisasor sustained injury and loss. Donais caused Bisasor to suffer emotional distress.

702.    The damages Bisasor sustained were directly, proximately and solely caused by Donais's unfair and deceptive conduct and breach of his duty as set forth above.

703.    Donais' misuse of confidential information and defamation constitutes "unfair trade practices" under RSA 358-A. Barrows, 141 N.H. at 389.

704.    The defendants engaged in unfair and deceptive acts by misrepresenting facts, fabricating evidence, and using law enforcement relationships to intimidate and retaliate.

705.    Donais' unethical conduct including fabricating evidence and exploiting racial bias, constitutes unfair/deceptive acts under RSA 358-A. His law practice's actions directly harmed Plaintiff's business reputation. Barrows v. Boles, 141 N.H. 382, 389 (1996).

706.    These acts violate RSA 358-A, which prohibits unfair trade practices and deceptive conduct. See equivalent standard under Massachusetts 93A.[9]

---

[9] Donais has violated chapter 93A and Donais is liable for chapter 93A damages. See Sears, Roebuck & Co. v. Goldstone & Sudalter, 128 F.3d 10 (1st Cir. 1997) (violations of the rules governing the legal profession are evidence of legal malpractice, and are also a violation of chapter 93A unethical behavior falls within the penumbra of established concepts of unfairness); Doucette v. Kwiat, 392 Mass. 915 (1984); Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C., 405 Mass. 506, 514 (1989); Grand Pacific Finance Corp. v. Brauer, 57 Mass.App.Ct. 407, 419 (2003); Guenard v. Burke, 387 Mass. 802 (1982); Brown v. Gerstein, 17 Mass.App.Ct. 558 (1984); Fishman v. Brooks, 396 Mass. 643 (1986); Mainor v. Nault, 101 P.3d 308, 320-321 (Nev. 2004 (citing cases); Baxt v. Liloia, 714 A.2d 271, 275 (N.J. 1998) (citing cases); Smith v. Haynsworth, Manon, McKay & Geurard, 472 S.E.2d 612, 613-614 (S.C. 1996) (citing cases); Allen v. Lefkoff, Duncan, Grimes & Demer, P.C., 453 S.E.2d 719, 720-721 (Ga. 1995); Elliott v. Videan, 791 P.2d 639 (Ariz.App. 1989); Ishmael v. Millington, 50 Cal.Rptr. 592 (Cal.App. 1966); Day v. Rosenthal, 217 Cal.Rptr 89 (Cal.App. 1985); David Welch Co. v. Erskine & Tulley, 250 Cal.Rptr. 339 (Cal.App. 1988); Miami International Realty Co. v. Paynter, 841 F.2d 348 (10th Cir. 1988); Williams v. Mordkofsky, 901 F.2d 158 (D.C.Cir. 1990); Hendry v. Pelland, 73 F.3d 397 (D.C.Cir. 1996); Waldman

707.    Furthermore, Defamatory statements are actionable under NH consumer protection act.

708.    A lawyer's liability for multiple damages and attorney fees may generally be found under NH consumer protection act. The court looks at the egregiousness of the case in deciding about multiple damages and come down strongly on attorneys who lie and do not do what they agreed to do.  This goes beyond negligence, or simply making a mistake that causes damages.

709.    Defendant Donais and Defendant Donais Law Offices PLLC is engaged in trade/commerce as defined by NH consumer protection act.

710.    Defendant Donais and Defendant Donais Law Offices PLLC engaged in unfair and deceptive acts against the plaintiff.

711.    These unfair and deceptive acts by Donais/Donais Law Offices PLLC stem from lies told by Donais about communications he had with the plaintiff while plaintiff was a client or prospective client.

712.    Racial stereotyping, whether as retaliation or discrimination, perpetrated by falsely characterizing a prospective client interview to injure the prospective client may well constitute an unfair business practice giving rise to a violation of NH consumer protection act. See Ellis v. Safety Insurance, 41 Mass. App. Ct. 630 (1996)(Racial harassment perpetrated during the course of an insurance claim investigation may well constitute an unfair business practice giving rise to a violation of G. L. c. 93A.).

713.    Other unfair and deceptive acts by Donais and Hilliard include:

    a.   By his own words, Donas took steps to avoid service of process in order to unfairly prejudice the plaintiff.

    b.   Donais took steps to avoid or dodge receiving service of a subpoena by a sheriff.

    c.   Donais used or endeavored to use his police connections to try to trump up a police investigation of the plaintiff in order to intimidate, scare, harass, oppress, scandalize and retaliate against the plaintiff.

    d.   Donais breached his duty to the plaintiff as a prospective client and former prospective client.

    e.   Donais divulged confidential information about the plaintiff to his friends, family members including his adult son Garrett Donais, and his colleagues.

    f.   Donais acted to enter into the representation of an opposing party adverse to the plaintiff.

    g.   Donais falsely accused the plaintiff (to plaintiff's attorney) of communicating with Donais in order to conflict out Donais from representing certain hotel defendants, which Donais knew not to be true and could not be true, in order to cover up or deflect from Donais' own intentional conflict of interest and breach of fiduciary duty to the plaintiff.

    h.   Donais also breached the covenant of good faith and fair dealing with the plaintiff.

    i.   There was evasion of mail and service by Hilliard

    j.   There has been surveillance of plaintiff by Donais and Hilliard.

    k.   There has been evasion of a subpoena by Donais, among other things.

---

v. Levine, 544 A.2d 683 (D.C.App. 1988); Hatcher v. Roberts, 478 So.2d 1083 (Fla.App. 1985); Levine v. Kling, 922 F.Supp. 127 (N.D.I11. 1996); Rogers v. Robson, Masters, Ryan, Brumund & Belom, 392 N.E.2d 1365 (Ill.App. 1979); Nagy v. Beckley, 578 N.E.2d 1134 (Ill.App. 1991); Mayol v. Summers, Watson & Kimpel, 585 N.E.2d 1176 (Ill.App. 1992); Skorek v. Przybylo, 628 N.E.2d 738 (Ill.App. 1993); Menzel v. Morse, 362 N.W.2d 465 (Iowa 1985); Ruden v. Jenk, 543 N.W.2d 605 (Iowa 1996); Phillips v. Carson, 731 P.2d 820 (Kan. 1987); Lipton v. Boesky, 313 N.W.2d 163 (Mich.App. 1981); Beattie v. Firnschild, 394 N.W.2d 107 (Mich.App. 1986); Hooper v. Hill Lewis, 477 N.W.2d 114 (Mich.App. 1991); Greening v. Klamen, 652 S.W.2d 730 (Mo.App. 1983); Bross v. Denny, 791 S.W.2d 416 (Mo.App. 1990); Carlson v. Morton, 745 P.2d 1133 (Mont. 1987); Albright v. Burns, 503 A.2d 386 (N.J. Super. 1986); Sommers v. McKinney, 670 A.2d 99 (N.J.Super 1996); Martinson Bros. v. Hiellum, 359 N.W.2d 865 (N.D. 1985); Binstock v. Tschider, 374 N.W.2d 81 (N.D. 1985); Olson v. Fraase, 421 N.W.2d 820 (N.D. 1988); Krischbaum v Dillon, 567 N.E.2d (Ohio 1991); Rizzo v. Haines, 555 A.2d 58 (Pa. 1989); Smith v. Havnsworth, 472 S.E.2d 612 (S.C. 1996); Woodruff v. Tomlin, 616 F.2d 924 (6th Cir. 1980); Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400 (Tenn. 1991); Peck v. Meda-Care Ambulance Corp., 457 N.W.2d 538 (WisApp. 1990); Stender v. Blessum, 897 N.W.2d 491 (Iowa 2017); Cummings v. Sea Lion Corp., 924 P.2d 1011 (Alaska 1996); dePape v. Trinity Health Systems, Inc., 242 F.Supp.2d 585 (N.D.Iowa 2003); Ismael v. Millington, 50 Cal.Rptr. 592 (Cal.App. 1966); Desimini v. Durkin, 2015 WL 3408749 (D.N.H.). See Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979) (to violate chapter 93A requires objectionable conduct that would raise an eyebrow of someone); Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992) (defendant violated chapter 93A where his conduct gave rise to a "rancid flavor of unfairness"). Chapter 93A applies to attorneys and the practice of law. See Brown v. Gerstein, 17 Mass.App.Ct. 558, 570-571 (1984).

714.    Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

715.    As a direct and foreseeable consequence of Defendants' actions, the plaintiff has suffered damages.

716.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

717.    The plaintiff suffered economic and reputational damages as a result.

718.    WHEREFORE, Bisasor demands that judgment enter against Donais for at least $500,000.00 or such other amount sufficient to compensate him for all of his +damages, exemplary damages, interest, costs, attorney's fees and such other relief as the Court deems just and proper.

## COUNT XI: ABUSE OF JUDICIAL AND ADMINISTRATIVE PROCESS
### (Donais & Hilliard)

719.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

720.    This count alleges that Defendants misused police reports, law enforcement resources, and judicial processes to harass, intimidate, and retaliate against Plaintiff.

721.    Under NH law, abuse of process occurs when a legal process is used primarily to accomplish a purpose for which it was not designed, causing harm. Long v. Long, 136 NH 25 (1992).

722.    Defendants misused police reports and litigation to harass Plaintiff, deviating from lawful process and from legitimate legal objectives. Filing baseless reports to incite law enforcement scrutiny constitutes abuse of process under NH law. Long v. Long, 136 N.H. 25, 31 (1992).

723.    The defendants systematically misused law enforcement reports, judicial proceedings, and administrative channels to retaliate against the plaintiff.

724.    They filed false police reports, manipulated law enforcement relationships, and exploited judicial procedures to intimidate and discredit him.

725.    This conduct constitutes abuse of process under NH law, which requires (1) the existence of legal process, (2) an ulterior purpose, (3) a willful act in misuse, and (4) damages.

726.    The pattern of fabrications, false reports, and strategic dissemination demonstrates the defendants' malicious intent and abuse.

727.    Here, Defendants filed false police reports, exaggerated allegations of criminal conduct, and sought police intervention to intimidate Plaintiff into abandoning his legal rights.

728.    The timing, shortly after Plaintiff filed a complaint with the Attorney Discipline Office, demonstrates that the police reports were not made for legitimate law enforcement purposes but as a retaliatory tool. Donais's and Hilliard's conduct in contacting police, providing false information, and requesting police protection based on fabricated threats exemplifies misuse of the legal process and law enforcement to achieve personal vendettas.

729.    The conduct was malicious, reckless, and directly caused damages, including emotional distress, loss of reputation, and interference with Plaintiff's lawful activities.

730.    The claim is supported by facts, and the law recognizes that such conduct constitutes abuse of process.

731.    Further, Donais attempted to interfere with the plaintiff's right secured by the constitution to exercise his first amendment right to provide witness testimony or evidence to the ADO and to bring suit against Donais and the attempted interference was by intimidation or coercion. Donais attempted to intimidate the plaintiff and coerce him not to provide evidence to the ADO.

732.    The police, at the behest of Donais and through Donais' crony connections with the police, called the plaintiff's phone number and left a message. Plaintiff was intimidated by the message. As an African American, such ominous contact from the police is intimidating. Donais accomplished his mission.

733.    It should be noted separately, that when plaintiff first called Donais phone number back on January 6, 2017, Donais did not answer. Plaintiff left a voicemail on Donais' voicemail. Plaintiff had a recording of plaintiff's own voice that was left on Donais' voicemail system. Based on the police intimidation enacted at the behest of Donais, Plaintiff was made to feel as though he should not participate in the ADO proceeding

against Donais. Donais knew that this would be effect of his conduct in using his police crony connections to contact me at my phone number.

734.    Donais then continued with sending baseless defamatory statements to the police to get them riled up and amped up against the plaintiff and his wife, with the goal of getting us arrested or in an escalated encounter with police. It is analogous to the crime of a "swatting" hoax. This was designed to get us to back off from pursuing misconduct complaints or lawsuits.

735.    After Donais failed at his attempts to get police to start a criminal prosecution against the plaintiff, though not for want of effort, the defendants pressed the police, fully expecting that the plaintiff would be arrested if the police saw them anywhere in the vicinity of Donais' neighborhood. The potential arrests or detention of the plaintiff by police was intrinsically coercive and, thus, sufficient to meet the plaintiff's burden of showing attempted intimidation or coercion. See Batchelder v. Allied Stores Corp., 393 Mass. 819, 823 (1985) (private security guard's order to a candidate for public office to stop distributing his political handbills at the common area of a private shopping center, which he was doing in a reasonable and unobtrusive manner, was intimidation or coercion within the meaning of the MCRA); Reproductive Rights Network v. President of the Univ. of Mass., 45 Mass. App. Ct. 495, 508 (1998) (university's use of campus police officers to prohibit, under threat of arrest for trespass, student access to a campus building for the purpose of engaging in protected political activity, was "threats, intimidation, or coercion" under the MCRA).

736.    Although the defendants themselves would not have been the ones to potentially arrest, detain or engage in a physical encounter with the plaintiff, any potential arrest or detention or physical encounter would have been made at Donais' instigation or direction, without which there likely would have been no such arrests, detentions or physical encounters. In these circumstances, liability attaches under the principle of joint venture. See Bell v. Mazza, 394 Mass. 176, 184 (1985). See also Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86 (1999).

737.    NB: This is similar to the claim of false imprisonment where a person does not need to participate in an arrest or detention of another person, nor engage in a conspiracy to do so, in order to be liable. A person may be liable for false imprisonment not only when the person's own acts directly impose a restraint upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed. Karjavainen v. Buswell, 289 Mass. 419, 427 (1935) (questioned on other grounds by Mezullo v. Maletz, 331 Mass. 233, 239-240 [1954]). Restatement (Second) of Torts § 37 (1965) ("If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement"). Compare McDermott v. W. T. Grant Co., 313 Mass. 736, 738 (1943).

738.    The defendants, by requesting police watch for the plaintiff, and thus seeking to have the plaintiff arrested or detained if seen in or near Donais' neighborhood or area, knowing there was no lawful basis for the request, were liable for their consequent confinement. See Kruvelitz v. Eastern R.R. Co., 143 Mass. 228, 232 (1887).

739.    The defendants were intentionally interfering with the plaintiff's rights. The defendants have employed a variety of methods to harass, threaten, and dissuade the plaintiff from continuing with their misconduct complaint including contacting the police, threatening prosecution, refusing to speak with the plaintiff as required by rules of conduct in certain procedures, false statements to the police, conducting surveillance on the plaintiff. Some of the activities targeted the plaintiff directly.

740.    Plaintiff was working with the Manchester NAACP which meeting place was located in the same area as Donais' home address in less than 2 miles apart. Donais knew of the plaintiff's association with the Manchester NAACP. His acts were also designed to interfere with plaintiff's work and association with the NAACP.

741.    These constitute a pattern of antagonistic conduct designed to interfere with plaintiff's rights. See, e.g., Haufler v. Zotos, 446 Mass. 489, 506-508, 845 N.E.2d 322 (2006) (pattern of "persistent and antagonistic" conduct satisfied MCRA).

742.    See Bell v. Mazza, 394 Mass. 176 (1985) (plaintiff alleging violations of Massachusetts Declaration of Rights need not allege state action); but see Redgrave v. Boston Symphony Orch, Inc., 855 F.2d 888, 904 (1st Cir. 1988) ("The right [to free speech] is to be free of state regulation . . .").

743.    Donais went to the police, with the intent of threatening and intimidating the plaintiff to stop him from exercising his right of pursuing, providing evidence or being a witness for attorney discipline complaints about Donais. Donais made statements to the police about plaintiff that he knew was not true, and made allegations of crime that he knew were not true or that the plaintiff did not commit, and which Donais knew was not supported by probable cause.

744.    The defendants' behavior (considered in its totality) constituted threats, intimidation, or coercion, based on multiple or repeated acts that if taken individually would be insufficient to make out the claim but if taken collectively are sufficient to constitute threats, intimidation, or coercion. See Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 753, 780 N.E.2d 926 (2002) ( "While no single point is determinative, the aggregate facts of this case are sufficient to create a jury question whether the defendants' conduct as a whole violated G. L. c. 12, § 11I"); See also Bell v. Mazza, 394 Mass. 176, 180, 183, 474 N.E.2d 1111 (1985) (course of conduct consisting of threats, "intemperate epithets," and physical obstruction satisfied MCRA); Wodinsky v. Kettenbach, 86 Mass. App. Ct. 825, 835-836, 22 N.E.3d 960 2015) (series of activities, including threats and physical inconveniences, aimed at forcing plaintiffs from condominium satisfied MCRA).

745.    The pattern of abuses by the defendants collectively amounted to threats, intimidation, or coercion. The claim is based on the fact pattern as a whole, not on isolated incidents, any one or more of which might be considered insufficient to support civil rights claim when separated from the rest.

746.    Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

747.    As a direct and foreseeable consequence of Defendants' actions, the plaintiff has suffered damages.

748.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

## COUNT XII: INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS RELATIONS
### (as to all Defendants)

749.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

750.    The defendants intentionally interfered with the plaintiff's contracts, employment, and community standing by disseminating false and defamatory information, thereby causing economic harm and emotional distress.

751.    Under NH law, this claim requires (1) a valid contractual or advantageous relationship, (2) knowledge by the defendant of that relationship, (3) intentional interference, (4) wrongful conduct, and (5) damages.

752.    The fifth count alleges that Defendants intentionally and improperly interfered with Plaintiff's contractual and advantageous relations, including with police, community organizations, and legal counsel.

753.    Under NH law, to establish this claim, Plaintiff must prove (1) the existence of a valid contractual or advantageous relationship; (2) the defendant's knowledge of this relationship; (3) intentional interference; (4) improper motive or means; and (5) damages. Blackstone v. Cashman, 448 Mass. 255 (2007).

754.    Plaintiff's relationship with the Manchester police, based on prior agreements for community engagement, and with legal counsel, was known to Defendants.

755.    Defendants intentionally and maliciously engaged in conduct, including false police reports, defamatory statements, and efforts to block legal assistance, to interfere with these relationships.

756.    The conduct was improper, motivated by racial bias, and designed to harm Plaintiff's reputation and ability to engage in lawful activities.

757.    The damages are clear, including loss of contracts, community opportunities, and emotional distress. The claim is properly pleaded, with specific facts establishing each element, and is supported by case law

recognizing that interference motivated by racial bias or improper means is actionable. See G.S. Enterprises v. Falmouth Marine, 410 Mass. 262 (1991); Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

758.   "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly interfered with or induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007). See Weber v. Community Teamwork, Inc., 434 Mass. 761, 781-782 (2001).

759.   Whether the actor's motives or means are improper "depends on the attending circumstances, and must be evaluated on a case-by-case basis." G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991). (improper motive established if police chief acted "based on retaliation or ill will toward [plaintiff], rather than the good of the police department").

760.   Plaintiff had an advantageous relationship with the state police/police department including with the state police chief.

761.   Plaintiff also had a contractual relationship with the state police/police department including with the state police chief.

762.   Plaintiff was a professional conference planner and event organizer, particularly in the field of conflict resolution, negotiation and mediation.

763.   Plaintiff had a contractual relationship and affiliation with the NAACP and was recruited to work on developing, planning and executing a large conference/event that centered on and facilitated dialogue and conflict resolution between the police and the local community, particularly communities of color, in order to improve relationships between local community leaders/members and law enforcement.

764.   Plaintiff had a contractual agreement from the police to collaborate on a community event involving the police and the NAACP and was sponsored by other organizations such as two local colleges and universities.

765.   Part of this contractual agreement was the recruitment of police officers to attend the event.

766.   Plaintiff had in-person meetings with and further telephone and email conversations with the chief of police.

767.   Plaintiff had developed a good working relationship and reputation with the chief of police who was enthusiastic about working with the plaintiff on this joint police-community event.

768.   Defendant Donais knew of plaintiff's involvement with the NAACP and about the initiative with the police department. In fact, Donais sent communications to the police to find out about the events that plaintiff was planning with the police, which I discovered later through a Right to Know request. Donais thus knew about the contractual relationship with the police. On information and belief, Donais also knew of this contractual relationship with the police by investigating my Linked-in profile where that information was published.

769.   Defendant Donais issued communications to the police indicating/implying that my wife and I were dangerous and a violent criminal threat to his wife and young child and requesting special police security detail to protect them from my wife and myself.

770.   That suggestion by Donais to the police that my wife and I were dangerous and posed a violent criminal threat to his wife and young child, accords with a racially stigmatizing stereotype of black people as inherently dangerous and violently criminal.

771.   Those damaging and stigmatizing communications to the police stem from an improper motive on the part of Donais. Donais had no rational or reasonable basis to issue those statements about plaintiff and his wife.

772.   Donais knowingly or recklessly made false statements to the police about the plaintiff. Donais evidently was motivated by personal and racial animus towards the plaintiff as evidenced by the racial stereotype/dog whistle employed by Donais as well as by the false allegation by Donais that plaintiff had accused him of racism in declining representation, which allegations were repeated and embellished on by Donais to the police.  Donais' personal and racial animus also can be seen from a retaliatory animus designed to get back

at plaintiff and his wife for raising ethical concerns to the Attorney Discipline Office. See Draghetti v. Chmielewski, 416 Mass. 808, 817 (1994) (improper motive established if police chief acted "based on retaliation or ill will toward [plaintiff]…"). See also Dear v. Devaney, 83 Mass. App. Ct. 285 (2013).

773.    Those damaging and stigmatizing communications to the police by Donais were disseminated across the entire police department. These harmful communications by Donais were circulated widely to a large number of people.

774.    Those damaging and stigmatizing communications to the police by Donais harmed the plaintiff and resulted in interference with the plaintiff's relations with the police and the police chief as well as interfered with/affected the plaintiff's police-community event and the planning thereof.

775.    Defendant Hilliard was also responsible for those communications as he aided/abetted, signed off on and sanctioned those communications to the police. On information and belief, Defendant Donais and Defendant Hilliard collaborated, conspired and agreed to send those communications to the police. Defendant Hilliard was also copied on those communications to the police, giving them further air of credence, credibility, validation, corroboration and urgency.

776.    These communications were taken seriously by the police and the police urgently acted on them to provide security detail attention and protection for Donais, targeting the plaintiff and his wife for police monitoring and watch. NB: These false and harmful statements to the police, amping them up to encounter black couple stereotypes/stigmatized and labeled as a dangerous violent criminal threat, could have resulted in escalated tension with the plaintiff and his wife, for reasons unbeknownst to plaintiff and his wife, and in the worst case, as shown by other examples in this day and age, could have led to the loss of life of the plaintiff and his wife.

777.    Subsequent to these statements by Donais/Hilliard to the police, which were made in or around August 2020, and on account of them, the plaintiff's relations with the police have suffered harm and have been damaged. Also, the planned community event with the police was canceled/never took place and subsequent further attempts to make the event happen went unanswered by the police. The plaintiff incurred not only damage to his reputation but also financial damages including loss of pay.

778.    Similarly, Donais' communications to the police to the effect that plaintiff was mentally ill/crazy/had a tenuous grasp on reality, that plaintiff manufactured a recording and fabricated his voice on the recording or that plaintiff was capable of doing such a thing, and that plaintiff had bugged the telecommunications systems of Donais, were likewise harmful and damaging to the plaintiff in his trade and professional reputation. Furthermore, Donais' attempt to falsely accuse plaintiff and his wife of being criminal offenders was further harmful and damaging to the plaintiff's personal and professional reputation.

779.    The above establishes a claim of interference with advantageous relations by improper means and improper motives. See Draghetti v. Chmielewski, 416 Mass. 808, 817 (1994) ("Even if [police chief] could have accomplished the same result by proper means, he may not use the improper means of misrepresentation").

780.    NB: None of the above statements were made in a judicial proceeding or in a quasi-judicial proceeding. These statements were not made in a prosecution proceeding or in a lawsuit proceeding. This was simply a statement made to a police officer which was initiated by Donais for the purpose of harming, damaging, harassing, injuring and retaliating against the plaintiff.

781.    Plaintiff anticipated further advantageous relations with the police in the future.

782.    Similarly, the defendant Hilliard, specifically himself, has engaged in other acts of interference with advantageous relations.

783.    Hilliard contacted the spouse of an attorney (which spouse is also an attorney) as well as the law firm (Primmer, Piper, Eggleston & Cramer PC) of that attorney in New Hampshire (who will be called "Attorney Jane Doe", as an alias in this complaint, to protect the privacy and of this attorney), that, on information and belief, Hilliard knew plaintiff was working with in regards to matters that were before the ADO pertaining to Donais in 2019 and 2020 and for which plaintiff had retained Attorney Jane Doe on a limited basis for legal assistance, and sought to establish a working relationship with the spouse of Attorney Jane Doe or Attorney Jane Doe's firm. As a result, Attorney Jane Doe terminated the relationship with the plaintiff citing that Hilliard's contact with her spouse and/or her firm, and/or the ensuing working

relationship situation with Hilliard related thereto, had created a conflict situation or an appearance of a conflict situation with the plaintiff. Attorney Jane Doe did not provide a lot of detail about this situation, citing confidentiality/privacy reasons. This contact by Hilliard, on information and belief, was done with an ulterior purpose, under a pretextual guise, in effect to create a conflict that would block, prevent, or undermine the ability of the plaintiff to obtain legal assistance or support. Hilliard thus sought to intentionally interfere with that relationship in order to block, prevent or undermine the ability of the plaintiff to obtain legal assistance, and he evidently succeeded. Plaintiff was harmed as a result.

784.    NB: On information and belief, Hilliard made defamatory comments about me to the employees of law firm of Primmer, Piper, Eggleston & Cramer PC, including signaling that they should not do business with me.

785.    Similarly, after the plaintiff began to pursue relief in court against Donais, Hilliard specifically and knowingly contacted yet another attorney in New Hampshire and/or the organization that this attorney worked for (who will be called "Attorney John Doe", as an alias in this complaint, to protect the privacy and of this attorney), and sought to establish a working relationship with that attorney or the attorney's organization. The plaintiff had a relationship with Attorney John Doe whereupon plaintiff sought legal help or advice. This contact by Hilliard, on information and belief, was again done with an ulterior purpose, under a pretextual guise, in effect to create a conflict that would block, prevent, or undermine the ability of the plaintiff to obtain legal assistance or support. Hilliard thus sought to intentionally interfere with that relationship in order to block, prevent or undermine the ability of the plaintiff to further obtain legal assistance, and he evidently succeeded. Plaintiff was harmed as a result.

786.    NB: The plaintiff has not disclosed the names of these attorneys at this stage because of privacy reasons that may impact the reputation of these attorneys. Given the delicate nature of this situation, however, the plaintiff will disclose these names under impoundment or in camera, or in discovery. If the plaintiff is required to disclose the names before that, the plaintiff requests that the court so instructs the plaintiff.

787.    On information and belief, Hilliard has done this on other occasions with other attorneys, in order to block, prevent or undermine the ability of the plaintiff to obtain other legal assistance.

788.    By the above-described conduct, inter alia, the defendants knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's actual and potential advantageous relations.

789.    As a result of this intentional interference, plaintiff suffered damages.

790.    As a direct and foreseeable consequence of Defendants' actions, the plaintiff has suffered damages.

791.    Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

## COUNT XIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (as to all Defendants)

792.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

793.    Under NH law, the claim requires (1) extreme and outrageous conduct, (2) intent or reckless disregard, (3) causation, and (4) damages.

794.    Under NH law, to establish this claim, Plaintiff must show that Defendants' conduct was beyond all bounds of decency, intended or recklessly causing severe distress, and that Plaintiff suffered such distress. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573 (2001).

795.    Defendants' conduct,  including false accusations of criminality, racial stereotypes, racialized defamation, weaponized police scrutiny and police harassment, fabricating and disseminating false police reports, and engaging in harassment, was intentional or reckless causing severe emotional distress was outrageous, malicious, and designed to intimidate and humiliate Plaintiff, and was extreme and outrageous, causing severe emotional distress. Mikell v. Sch. Admin. Unit #33, 158 N.H. 723, 730 (2009).

The plaintiff has suffered PTSD, anxiety, and economic damages as a result. The emotional harm includes anxiety, sleep disturbances, depression, and PTSD.

796.    The repeated and systemic nature of the conduct, combined with its racial motivation, satisfies the elements.

797.    To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) that the defendants] intended to cause, or should have known that [their] conduct would cause, emotional distress; (2) that the defendants'] conduct was extreme and outrageous; (3) that the defendants'] conduct caused [her] distress; and (4) that [he] suffered severe distress.

798.    To be considered extreme and outrageous, the defendants'] conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community." Howcroftv. City of Peabody, 51 Mass.App.Ct. 573, 596 (2001).

799.    Intentional infliction of emotional distress requires "extreme and outrageous conduct intentionally or recklessly cause[d] severe distress to another."

800.    Defendants knew that making false accusations that plaintiff frivolously accused Donais of racism, would damage the plaintiff's reputation and subject him to contempt or ridicule.

801.    Defendants knew that by intimidating, retaliating, harassing the plaintiff, by deploying their police connections against the plaintiff and by making false police reports against the plaintiff (as African American), it would cause emotional distress for the plaintiff. This is intolerable in a civil society and is beyond outrageous and extreme conduct to subject an African American male (in this day and age where several police killings, police brutality and/or use of excessive force events against unarmed African Americans have been widely publicized in recent national news) to false police reports, to ominous calls/message from the police resulting from the false or unwarranted police reports, and the attendant possibility of false arrest, false prosecution and unnecessary escalated encounters with police resulting therefrom.

802.    Defendants have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

803.    Defendants caused or created emotional distress for Plaintiff.

804.    It should be noted that this claim is distinct from the emotional distress caused by the defendants' defamatory statements. This claim is not based solely on the facts, acts and statements that give rise to the defamation claims.

805.    Defendants intentionally inflicted emotional distress on plaintiff, as a direct and proximate result of Defendants actions and inactions.

806.    Plaintiff was caused to suffer severe emotional distress as the result of which a reasonable person in plaintiff's position would have suffered similar emotional distress under like circumstances.

807.    Plaintiff sustained damages as a result of Defendants' intentional infliction of emotional distress on them.

808.    Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

809.    Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

810.    As a direct and foreseeable consequence of Defendants' actions, the plaintiff has suffered damages.

811.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

## COUNT XIV: CIVIL CONSPIRACY

812.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

813.    This count alleges that all Defendants conspired to commit the wrongful acts outlined above, including defamation, racial discrimination, abuse of process, and interference with contractual relations.

814.    Under NH law, civil conspiracy requires: (1) an agreement between two or more parties; (2) to commit an unlawful act or a lawful act by unlawful means; (3) with an intent to injure; and (4) damages. Clapp v. Goffstown Sch. Dist., 159 NH 206 (2009).

815.    Under NH law, this claim requires (1) an agreement, (2) wrongful acts committed pursuant to the agreement, and (3) damages.

816.    The defendants conspired to commit the wrongful acts described above, including fabricating police reports, disseminating false statements, and retaliating against the plaintiff. The conspiracy was for an unlawful purpose, and the acts were committed in furtherance of that agreement.

817.    The facts demonstrate a pattern of collaboration, communication, and coordinated conduct among the Defendants, Donais, Hilliard, Mary Donais, and others, to defame, intimidate, and harm Plaintiff.

818.    Their actions were motivated by racial bias, personal animus, and financial self-interest. The conspiracy is evidenced by shared communications, joint actions, and the common goal of damaging Plaintiff's reputation and rights.

819.    Defendants coordinated to suppress evidence, file false reports, and disseminate defamatory narratives. Their concerted actions meet NH's civil conspiracy standard. Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 212 (2009). Glickman v. Brown, 21 Mass. App. Ct. 229 (1985).

820.    Civil conspiracy is a very limited cause of action in Massachusetts. Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D.Mass.1985).

821.    To state a claim for this tort, a plaintiff must allege that "defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if acting independently." Id.

822.    Moreover, the law recognizes the tort theory of "common design" in which a defendant may be liable for the tortious acts of another.

823.    To prove such a claim, two elements must be shown: first, that the defendant and others have agreed explicitly or implicitly to perform the act or achieve the particular result; second, that the defendant's "own conduct must be tortious." Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D.Mass.1981).

824.    To prove their claims for civil conspiracy, the plaintiffs must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement. Kurker, 44 Mass. App. Ct. at 188-189.

825.    Donais, in concert with Hilliard and the other defendants, held a "power of coercion" they would not have had they acted independently. By including Hilliard in the scheme to defame the plaintiff, Hilliard was consulted on, and sanctioned the defamatory email to the police. Donais augmented his power to coerce the police into taking action against the plaintiff using Hilliard's presence as a coercive factor to move the police to action. Hilliard evidently agreed or assented to this scheme to harm the plaintiff.

826.    Similarly, both Donais and Hilliard conspired together to engage in fraudulent misrepresentations to me as it pertains to inducing me to agree to allow them to be involved in a global settlement negotiation with Hilton defendants, for which their intent was only to sabotage the settlement for the other defendants, and that they lied to me and deceived me into fake negotiation offers, which were reneged on and withdrawn at the last minute for no reason, right as the settlement paperwork was about to be finalized and signed by 20 other defendants. Again, this has nothing to do with any petitioning activity as the conduct was directed towards me.

827.    Similarly, Ms. Donais encouraged, knew of, and assisted Donais with his defamatory emails to the police about the plaintiff. Ms. Donais therefore engaged in conspiring to defame the plaintiff. By adding his wife's name to his police report and appealing to the sympathy of his police connections regarding his wife, Donais augmented his power to coerce the police into taking action against the plaintiff. Based on Donais' own words in the email to the police, Ms. Donais evidently agreed or assented to this scheme to harm the plaintiff.

828.    There is implication from the emails and other communications that they agreed to perform or achieve tortious ends with respect to the plaintiff, including tortious misrepresentation. The false and injurious statements also form the basis of a conspiracy claim. See Massachusetts School of Law at Andover, Inc. v. American Bar Association, 952 F. Supp. 884 (D. Mass. 1997).

829.    Both Ms. Donais and Hilliard provided Donais with substantial assistance and encouragement, with the knowledge that such assistance is contributing to a common tortious plan. Hilliard knew of the unlawful intent to commit tortious acts to injure and damage the plaintiff. See Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 363 (D. Mass. 2002) (quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 189, 689 N.E.2d 833, 837 (1998)).

830.    Plaintiff has been harmed by Defendants' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

831.    As a direct and foreseeable consequence of Defendants' actions, the plaintiff has suffered damages.

832.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

---

## SECTION 4.  ALTERNATIVE TREATMENT OF STATUTE OF LIMITATIONS ISSUES

---

### Further on Statute of limitations

833.    Based on analysis of the applicable Massachusetts renewal/saving statute, I assert that the claims going back to 2017 are preserved. If the Massachusetts renewal statute applies, then all the claims going back to 2017 are preserved.

834.    The analysis is as follows: The statute of limitations do not apply to the claims in this case because this case was filed in Bristol Superior Court of Massachusetts in June 2022, within one year, after a similar case was dismissed without prejudice in the Middlesex Superior Court of Massachusetts in August 2021, due to a purported issue with service of process created by an agent of the United States Post Office, and thus the Massachusetts savings statute is triggered, allowing the entire Middlesex Superior Court case, as filed in Bristol Superior Court, to relate back to the original date it was filed in January 2020. Thus, all claims from the Middlesex Superior Court case were transferred through into the Bristol Superior Court case, and thus survive any statute of limitations analysis from start to finish. Thus, the case has no statute of limitations issues. The Massachusetts renewal statute/savings statute allows for re-filing of a case dismissed within one year after dismissal, while preserving the original date of filing of the dismissed case, and thus preserving against any statute of limitations issue. In this instance, if the Massachusetts renewal statute/savings statute applies, which I believe it does, then there are no statute of limitations issues in this case including going to events occurring in early 2017.

835.    However, either way, the plaintiff intends to amend the complaint in the current pending case in NH superior court Hillsborough North before Judge Amy Messer with similar claims against the defendants and thus to also consolidate this case with that case, which will bring all claims from 2017 into the same timely category. After a case management conference takes place in this case or that case, plaintiff will likely be in a better position to determine best to move forward with both cases.

---

## SECTION 5: FURTHER BACKGROUND INFORMATION/CONTEXT OF FACTUAL ALLEGATIONS

---

836.    This background information goes to the establishing context for the above claims. It also establishes of a pattern of conduct by Donais as well as Hilliard, which is further relevant to the claims and causes of action of the case as background.

837.    It also establishes that this information is ripe for discovery and is relevant to the scope thereof.

## A. HISTORY OF ATTORNEY MISCONDUCT/BAR COMPLAINTS AGAINST DONAIS

838.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

839.    There have been at least 4 attorney misconduct complaints filed against Donais.

840.     A history of attorney misconduct indicates that an attorney is indifferent to ethical obligations required as an attorney and this goes to the credibility that courts, and others, tend to want to afford to lawyers simply because they are lawyers.

841.     A history of misconduct undermines any credibility of honesty and integrity that is many times presumed or given as the benefit of the doubt.

### i. 2016 Complaint Against Donais

842.     In 2016, an attorney misconduct complaint against Donais was referred by a superior court judge and a disciplinary counsel of the state of Connecticut, to the ADO in New Hampshire, based on ethical concerns the judge had regarding Donais' conduct as an attorney. See below screenshot of letter to the ADO of New Hampshire from the disciplinary counsel of Connecticut, referring the Donais' misconduct charge from Connecticut superior court judge (Hon. Sheila Ozalis), who is copied on the letter.



**STATE OF CONNECTICUT**
**JUDICIAL BRANCH**

**COURT OPERATIONS DIVISION**

OFFICE OF CHIEF DISCIPLINARY COUNSEL
Desi Imetovski, Assistant Chief Disciplinary Counsel

*100 Washington Street*
*Hartford, Connecticut 06106*
*(860) 706-5055 Fax (860) 706-5063*
*E-mail: Desi.Imetovski@jud.ct.gov*

January 15, 2016

New Hampshire Supreme Court
Attorney Discipline Office
ATTN: Janet DeVito, Esquire
4 Chenelle Drive, Suite 102
Concord, New Hampshire 03301

RE:     Referral of Attorney Craig Donais

Dear Attorney DeVito:

        As per our conversation in connection with the New Hampshire attorney referenced above, please find a copy of the Memorandum of Decision as well as a transcript of the proceedings dated October 5, 2015 regarding Attorney Craig Donais. These documents are being provided for further investigation by your office of probable attorney misconduct which occurred in Connecticut. Do not hesitate to contact my office with any questions or if additional information is needed.

Thank you in advance for your attention to this matter.

Very truly yours,

Desi Imetovski

Enclosures:/as listed

cc: Hon. Sheila A. Ozalis (without enc.)

843.     The judge's referral/concerns, with respect to that the 2016 ADO complaint against Donais, centered on charges that Donais engaged in intimidation or attempted intimidation of a party or witness to not testify or give evidence in a case against Donais' client, as well as charges of other unethical conduct that are tantamount to abuse of process. There were also concerns that are evident regarding Donais' honesty, relative to the report by an opposing lawyer about certain unethical statements made to him by Donais and when confronted about these issues, Donais tried to make vague denials which the judge in Connecticut apparently did not believe, and then later in the context of the ADO case, Donais sought to provide incredible excuses for his denials. Donais evidently sought to transform the issue with respect to the report of the opposing lawyer about what Donais said to him, into a he said/he said issue, even though the judge, who referred the misconduct case, believed/found that Donais had committed misconduct. See below screenshots of the pages 7 and 8 of a Connecticut Superior Court Judge's ruling (in *Golf Ridge Micro Cap*

*LLC v Aftokinoto Properties Inc.*, Superior Court Judicial District Danbury, December 18, 2015 Memorandum of Decision, Case# DBD-CV-13-6011692S).

### Screenshot of page 7 of Connecticut Superior Court Judge's ruling

George, advised the court, that shortly before Mr. West's affidavit was filed in this action, he and

defendant's New Hampshire counsel, Attorney Craig Donais, had communicated. Attorney

George represented that he told Attorney Donais that Mr. West was contemplating filing an

affidavit in this action and Attorney Donais had told him "your client will be sorry if he goes to

testify today." (10/5/15 Tr. pp. 9-10). Attorney George then represented that Mr. West did supply

an affidavit and a few months later Mr. West was sued by the defendant Aftokinito in New

Hampshire in August 2015. (10/5/15 Tr. p.10.) Attorney George also advised the court that

Attorney Donais had explicitly offered to Mr. West's New Hampshire attorney at the very first

hearing in the New Hampshire case in September 2015, that if "Mr. West does not go down to

testify in Connecticut, we'll drop the lawsuit in Rockingham County." (10/5/15 Tr p. 11.)

Attorney George was deeply concerned by the statements made by New Hampshire counsel.

The court made an inquiry as to whether New Hampshire counsel, Attorney Donais, was

sitting in the courtroom observing this proceeding, and defendant's Connecticut counsel, Attorney

McCabe, advised the court that he was. This court ordered Attorney Donais up to the front of the

courtroom to address the court and swore him in. Attorney Donais was explicitly asked if he told

counsel for Mr. West "that if he did not come to testify in this proceeding, you'd drop the lawsuit

against him." The following colloquy on the record followed the court's inquiry, which the court

finds important to include in this decision:

| | |
|---|---|
| The Court: | "Yes. Did you tell the attorney for Mr. West that if he did not come to testify in this proceeding, the lawsuit in New Hampshire would be dropped against him? |
| Mr. Donais: | We were exploring options, Your Honor, with his counsel in New Hampshire about the case and under New Hampshire rule of evidence 408, it was a settlement discussion with his counsel, Your Honor. |

Page -7-

### Screenshot of page 8 of Connecticut Superior Court Judge's ruling

| The Court: | Well, I'm concerned here about intimidation of witnesses, so my question to you is; did you tell his counsel that if he did not come to this proceeding that you would drop the lawsuit? |
| Mr Donais: | I don't believe we said that specifically, Your Honor. |
| The Court: | What did you say generally, sir? |
| Mr. Donais: | We – We generally said that we really didn't have an interest in pursuing Mr. West, *but if Mr. West was going to make trouble, by being involved in this proceeding, by injecting himself in a way that he did not need to* that we were going to proceed with the case in New Hampshire. |
| The Court: | Okay. And, did you say that if he did not come into this proceeding and testify that you would drop the case? |
| Mr. Donais: | We didn't, specifically, say we were going to drop the case." (Emphasis added. 10/5/15 Tr. pp. 13-14.) |

It is clear from Attorney Donais' statements that the lawsuit in New Hampshire was brought in an effort to prevent Mr. West from providing testimony and evidence in this litigation. Attorney Donais' comments that "we really didn't have an interest in pursuing Mr. West" defies logic if defendant Afiokinito's story is to be believed that it paid Mr. West $150,400 for ten classic cars that it never received. Attorney Donais' further comment that *"If Mr. West was going to make trouble, by being involved in this proceeding, by injecting himself in a way that he did not need to, then they were going to proceed with the case in New Hampshire"* against him is troubling to this court. (10/5/15 Tr. pp. 13-14.)

On October 5 and 15, 2015, this court held hearings with evidence and testimony from defendant's principal Mr. Condodemetraky, another employee of defendant and Mr. West. Mr. West testified credibly that he never prepared nor signed the Motor Vehicle Purchase Agreements for the sale of the ten classic cars, never received any payment from the defendant for any vehicles, that he had closed down the location of his business in September 2013, and all of the

Page -8-

844.  These issues from the 2016 case against Donais initiated by a judge were similar or relevant to the 2019 and 2020 cases filed by my wife against Donais, wherein it was complained that Donais sought to intimidate/harass her and me, into not giving evidence in her case against him (or otherwise dropping her misconduct complaint against him). It is also relevant to issues of dishonesty and to how Donais sought to transform her case into a he said/she said issue, in order to cover or deflect from his misconduct. These go to the issue of a pattern of misconduct by Donais.

## ii. Complaint Against Donais Prior to 2016

845.  It came to the plaintiff's attention that there existed another case against Craig Donais that was filed at the ADO or PCC previously. This is not the 2016 complaint matter against Donais but another complaint against Donais prior to 2016. The records of this other complaint against Donais may have been destroyed due to ADO's short institutional document retention policy.

846.    NB: This information came to my attention during a conversation with a well-known and well-respected attorney, Attorney Alan Cronheim, who used to be an ADO/PCC member and chair, whose tenure ended in or around 2014. That attorney indicated that he may be recused from taking a case against Donais on my behalf as a plaintiff, because Donais' name had come before the ADO/PCC while he was a member of the ADO/PCC. Since this attorney's tenure on the ADO/PCC ended in 2014 and the prior Donais complaint was filed in 2016, then it can be inferred that there was another more prior complaint against Donais. Discovery is needed to ascertain the nature of this even more prior complaint to determine its relevance to a pattern of conduct by Donais.

847.    Based on the above, there have been at least 4 attorney misconduct complaints filed against Donais.

### iii. Connecticut Law License Retirement

848.    Donais was admitted to the practice of law in the state of Connecticut in 1997.

849.    Donais held that license for 10 years until January 2017.

850.    It should be noted that, on January 5, 2017, Donais retired his license to practice law in Connecticut. See screenshot below.



851.    This appears to be a permanent retirement, meaning that in order to ever practice law again in the state of Connecticut, Donais would have to retake the bar exam and apply for bar admission all over again from scratch.

852.    This retirement occurred after the referral by Connecticut's disciplinary counsel to the ADO of New Hampshire and after the ADO docketed the complaint and recommended proceeding with the case to the hearing stage, but before the ADO of New Hampshire had decided the misconduct against Donais in March 2017.

853.    It is unclear if Donais' permanent retirement of his law license in Connecticut was connected to the referral of attorney misconduct by Connecticut disciplinary counsel and a Connecticut superior court judge, as outlined previously.

### B. HISTORY OF OTHER FALSE STATEMENTS BY DONAIS AND HILLIARD

854.    Hilliard and Donais have a history of making false or misleading statements to courts in order to get their way and to prejudice the plaintiff and/or his spouse. NB: I am not seeking recovery for these statements referenced as background information (for claims that carry a 3 year statute of limitations). This is presented here only as background information to show patten, history and predisposition of Hilliard and Donais to make either intentional false statements or to make false statements recklessly without regard to its truth or without undertaking the necessary investigation to determine its truth or falsity before making such statements.

# I. History of Other False Statements By Donais

855.    In addition to the false statements by Donais outlined above, Donais has made other false statements.

856.    Donais made several false statements regarding his prospective client relationship with plaintiff, starting in 2017.

857.    Donais also made false statements in a sworn affidavit to a court in 2017.

858.    The plaintiff does not seek recovery, in this lawsuit, for statements made by Donais in 2017 for claims that carry a 3 year statute of limitations.  This is by way of background information and context showing and establishing a pattern of conduct that continues to the present time.

### *i. Overview of Facts Related To False Statements and Perjury By Donais in 2017*

859.    Plaintiff and his wife entered into a contract at an extended stay property in Nashua NH. During their stay they began to be targeted and experienced discriminatory/disparate treatment and hostility based on race. They raised a concern about the mistreatment with the management, and were retaliated against.

860.    On January 5, 2017, the Plaintiff's wife contacted an Attorney Robert Obrien ("Attorney Obrien" or "Mr. Obrien") requesting of him legal assistance with our dispute with the hotel in Nashua. The Plaintiff's wife spoke to him explaining her case issues, her theories and arguments and important personal information as well as critical questions/concerns that the plaintiff's wife and the plaintiff had as it related to the matter. The plaintiff's wife was assured by Attorney Obrien that he had no conflict of interest with the hotel in Nashua. Attorney Obrien indicated that he would speak to a colleague of his that was more of an expert in the areas of law for which the plaintiff's wife needed assistance.

861.    Attorney Obrien then called Attorney Donais and spoke to him about the plaintiff's wife and her case. Attorney Donais gave his input on the issues. Attorney Obrien sent plaintiff's wife a text message outlining the advice and analysis provided by Attorney Donais.

862.    On January 6, 2017, the plaintiff placed a phone call to Attorney Donais and left a voicemail.

863.    On January 9, 2017, Attorney Donais returned plaintiff's phone-call. He allowed plaintiff to speak about the matter for about 7 minutes, including revealing critical confidential information to Mr. Donais. Attorney also acted as though he was providing advice to plaintiff. But in the end, Attorney Donais said he was too busy to take on this case on short notice. Attorney Donais did not indicate that there was a conflict of interest.

864.    Later than day on or about January 9, 2017, plaintiff's wife filed a request for a temporary restraining order under 540A in the district court. NB: Plaintiff also discussed this with Attorney Donais.

865.    The district court immediately entered a restraining order pending a hearing on the matter.

866.    The plaintiff's wife initially filed the action pro se but subsequently, the New Hampshire Legal Assistance became interested in vindicating the rights of the plaintiff's wife in the case, as representative of the rights of many New Hampshire citizens in similar situations as the plaintiff's wife and plaintiff. Attorney Elliott Berry ("Mr. Berry" or "Attorney Berry"), the Managing Attorney for the New Hampshire Legal Assistance (who oversees the housing division) decided to take the case on or about January 11, 2017.

867.    On or about January 10, 2017, Attorney Donais spoke with the hotel in Nashua. He agreed to represent the hotel in Nashua.

868.    On or about January 11, 2017, Attorney Terrell appears to have put together a document to support his admission as Pro Hac Vice on the district court case.

869.    On January 11, 2017, Mr. Donais submitted a filing in district court entering an appearance and filing a motion for admission pro hac vice of Mr. Terrell.

870.    On or about January 13, 2017, Donais made an appearance on the 540A case involving the same parties, in the Nashua district court ("District Court").

871.    On or about the same date, Attorney Karl Terrell ("Attorney Terrell" or "Mr. Terrell') requested permission to enter an appearance on the District Court case, as Pro Hac Vice, which was granted by the District Court.

872.    NB: It was after plaintiff received court pleadings from Mr. Donais, a few days later, on January 13, 2017, that the plaintiff fully realized it was the same attorney that he had spoken to on January 9, 2017, who was now all of a sudden representing the defendants. Plaintiff then told Attorney Elliott Berry, who had just taken plaintiff's wife case, about the whole chain of events and Mr. Berry expressed serious concern

about violations of the ethics code for lawyers. The plaintiff did not even realize the extent of the seriousness of the matter until Attorney Berry explained it to them. The initial concern in telling Mr. Berry about this issue was that Mr. Donais said he was not available to represent plaintiff due to time constraints but now he, all of sudden, found time to represent the opposing party. Plaintiff had thought this was disingenuous, untruthful and suspicious and also did have a concern about the sharing of information and the impact on the case, but it was not clear to plaintiff that this could be a serious violation of the ethics code because Mr. Donais never officially was retained by plaintiff and plaintiff had thought that he had to been formally retained by plaintiff in order to meet a conflict criteria. Once plaintiff read the NH rules of conduct, after Mr. Berry cited the relevant section (i.e. section 1.18), it became clear that this was a huge problem based on the rules governing prospective clients. At no time did Mr. Donais tell plaintiff that he had a potential conflict. In fact, he sat there on the phone and gathered information as if he were gathering "intel" or opposition research, but strung plaintiff along at first by giving the impression that he could take the case and giving little tidbits of legal opinion to keep the plaintiff going with the story. It was after the plaintiff received court pleadings from Mr. Donais that he fully realized that it was the same attorney he spoke to, who was now representing the defendants. After Mr. Berry pointed out these issues, Mr. Donais lied and then he doubled down on his lying. These lies are a continuation of the deceptive conduct that Mr. Donais perpetrated in the first instance back in January 2017. These lies were to cover up, distract and deflect away from the original misconduct.

873.    On January 17, 2017, Mr. Elliott Berry contacted Mr. Donais by phone, asking him for a response to the ethical concerns raised. Mr. Berry contacted Mr. Donais on January 17, 2017, the day before the hearing on January 18, 2017 in order to give him an opportunity to respond to these concerns. Mr. Donais denied any wrongdoing.

874.    On or about January 18, 2017, Attorney Elliott Berry entered an appearance on my behalf as the plaintiff in the District Court Case.

875.    A hearing was scheduled on the matter for January 18, 2017. However, on January 18, 2017, instead of conducting a hearing, District Court Judge Paul Moore ("Judge" or "Judge Moore") facilitated a bench conference on sidebar with plaintiff's counsel Elliott Berry, and defendants' counsel Karl Terrell ("Mr. Terrell" or "Attorney Terrell") who was Pro Hac Vice, and Craig Donais ("Mr. Donais" or "Attorney Donais"), who was local counsel at the time.

876.    At the beginning of the January 18, 2017 hearing, Attorney Berry requested a bench conference with the judge and opposing counsel in order to raise to the court a very sensitive matter that implicated the rules of attorney conduct and professional ethics.

877.    Mr. Donais vigorously denied knowing about the conflict initially, but said that after he realized there was a conflict, he told plaintiff that he could not take the case.

878.    After Attorney Berry provided evidence of the above to the district court judge, both Attorney Donais and Attorney Terrell denied any wrongdoing.

879.    At the bench conference, Attorney Donais admitted that he had been counsel for the defendants for over ten years. Attorney Berry argued that such a disclosure does not help Mr. Donais in this situation, but in fact makes it worse.

880.    Mr. Donais' recounting of the events were patently false and a misrepresentation of what truly happened. Mr. Donais lied to the court. Mr. Donais. repeatedly implored the judge to take his side and to trust him, as he was "an officer of the court", etc. There were a number of contradictions made by Mr. Donais.

881.    After Attorney Berry raised these concerns about Donais, the judge in the district court indicated that Donais needed to come off the case because of the appearance of impropriety and a potential if not actual violation of the rules of professional conduct. The judge gave Donais an opportunity to withdraw, otherwise the judge would make the ruling himself formally.

882.    Though Mr. Terrell (who had applied for a pro hac vice status) also chimed in, the judge compelled Mr. Donais to withdraw from the case, and to find replacement local counsel.

883.    Although Mr. Donais said he would withdraw, he stayed on representing the defendants for the duration of the proceedings. Mr. Donais also made some remarks that were in poor taste and offensive, including

patronizing and rude jokes about Mr. Berry's suit (i.e. intimating that he thought it looked cheap), and saying that he clearly wasn't getting paid enough for these cases.

884.    In any event, there was never a hearing held in the true sense, as the discussions with the court were all handled by sidebar. Mr. Donais eventually formally withdrew and new local counsel, R. Brian Snow came onto the case, along with Mr. Terrell staying on as co-counsel. On top of Mr. Donais' own conduct, we had and continued to have concerns that the initial outreach/conversations with Mr. Donais gave him/the defendants an unfair advantage in the case, and this information/advantage was also passed on to pro hac vice and new local counsel for the benefit of the defendants.

885.    Subsequently, months later, it came to light that there was a January 11, 2017, showing that Donais and Terrell had discussed the communications that Mr. Donais had with the plaintiff.

886.    Neither Mr. Donais nor Mr. Terrell disclosed the email that they both had in their possession as of January 11, 2017, showing that they had discussed the communications that Mr. Donais had with plaintiff.

887.    If Judge Moore at the time of the January 18, 2017 hearing had seen this email of January 11, 2017, Judge Moore would have likely required Mr. Terrell to also be disqualified. i.e. since Mr. Donais was disqualified on the basis of the above extra-ordinary set of circumstances. Judge Moore indicated on January 18, 2017 that he did not care about what was shared, but only if there was any sharing.

888.    All of this, when put together, indicated that Mr. Terrell had communications with Mr. Donais about the plaintiff's case and created a substantial risk that the plaintiff had been put to a significant disadvantage in the district court proceedings.

889.    These revealed further lies by Donais used to cover up, distract and deflect away from the original misconduct.

### ii. Further Dishonest Conduct

890.    Even though there were a number of irregularities and shocking misconduct by Donais at and leading up to the January 2017 court hearing, requiring his disqualification or withdrawal from that case, Mr. Donais continued to influence and weigh in on the case after he was removed or otherwise made to withdraw.

891.    But his conduct became more dishonest, beyond egregious and reprehensible, wherein Mr. Donais submitted a notarized affidavit in or around March 16, 2017 swearing to the court that the plaintiff had accused him of racism during a previous call in early January 2017. This is a complete falsehood, and was the first time that he had created this new storyline in yet another attempt to damage the plaintiff and mislead the court. Here he was accusing the plaintiff of ridiculously calling him a racist and thus using "the race card", when in actuality he himself was the one trying to exploit the sensitive issues related to race by using it as a peremptory strike with this bald lie. Mr. Donais tried to manipulatively "play the race card" in order to persuade the court and help his (former) client. Aside from this being outrageous behavior, this was deeply troubling that a licensed attorney would go so far to damage and disparage someone in order to advance the cause of his client. This was particularly despicable because it appears that Mr. Donais was relying on racial bias to get to his ends--he was hoping that the judge/the court would immediately read his affidavit and take a hostile disposition towards plaintiff(s).

892.    Yet Mr. Donais completely fabricated this story and in the process exploited something so painful for so many people in this country, just so he could try to help his clients to win a case. He was trying to undermine the plaintiff's valid concerns and real experiences related to discrimination and retaliation at the property, in order to make it seem as though the plaintiff was irrational and arbitrary with allegations of racism, which was completely false. At no time did the plaintiff's claim that Mr. Donais was discriminating against the plaintiff because he did not take the case. That is a nonsensical argument. It just does not make sense in the context of such a discussion for the plaintiff to assume and allege that Mr. Donais was discriminating against the plaintiff. What would the plaintiff hope to gain? To force him to represent the plaintiff? What kind of representation would that be? It is just not credible. Moreover, this is an unadulterated lie. The fact that Mr. Donais would go as far as to say this in a sworn affidavit and that it was submitted to the district court on March 16, 2017 goes to the issue of credibility, veracity and underscores a concerted effort to not only maliciously discredit the plaintiff but also it exemplifies a continuation of the dishonest conduct of Mr. Donais.

893.    Mr. Donais blatantly made up out of whole cloth the idea that the plaintiff accused him of discrimination. This is not a matter of interpretation of words. The plaintiff did not utter any such words. In fact, contrary to the assertions in Mr. Donais' affidavit, the conversation between Mr. Bisasor and Mr. Donais ended amicably and on good terms. There was no abrupt ending. Mr. Donais has blatantly and unscrupulously lied about the plaintiff accusing him of discrimination and Mr. Donais should be disbarred because of this blatant and dangerous lie. This demonstrates that Mr. Donais is the kind of person who would bear false witness against others, and is capable of lying to put someone in jail by false testimony, As such he is not only a disgrace to and also a blithe on the legal profession, but also a very dangerous person to continue to practice law.

894.    Mr. Donais needs to be put under oath to be confronted about his statements. If Mr. Donais has lied about the plaintiff making this statement, then this issue is not only about a conflict issue but it is about a falsely accusing the plaintiff of accusing him of discrimination, which becomes evidence of an attempt to use the plaintiff's race against him (i.e. the "race card" in reverse). The plaintiff has spoken to Attorney Elliott Berry about this and Attorney Berry is outraged by this. Mr. Berry has indicated that this would in fact be evidence of discrimination against the plaintiff, by trying use the plaintiff's race against him in such a manner i.e. accusing a black man of making ridiculous false accusations of discrimination with the intent to imply that because he is a black man, it should be believed that he made such ridiculous false accusations. It is also intended to undermine the legitimate experience of mistreatment that the plaintiff suffered at the hands of the defendants.

895.    Mr. Donais fabricated and utilized his lie about racism to willfully intimidate the plaintiff /his spouse and to interfere with and injure the plaintiff /his spouse because of race, and it was done in connection with their federally protected right to patronize a public accommodation. What Mr. Donais did not only qualify as a crime of perjury but also likely as a hate crime.

896.    Mr. Donais has falsely styled himself as a victim of a false accusation of being called a racist by Plaintiff.

897.    Mr. Donais evidently assumed that the judge was going to respond to such an inflammatory statement and be inflamed by it, in order to prejudice us and our case. Mr. Donais knew the purpose and use of his affidavit. He knew it would be used in court proceedings. This despicable lie by this white attorney of law perpetrated on the plaintiff was intended to target the plaintiff us because he is black. It was intentional and it was motivated by racial animus/racial bias.

898.    Nothing angers people more than a person who falsely accuses a white person of racism. This is a major sore point in today's culture.

899.    Mr. Donais was trying to exploit racial tensions in our society to harm and discredit us. He wanted to really damage us. He was inciting racial sensibilities and attitudes and intended to exploit a culture of hostility towards black people who are presumed to "cry wolf" about racism. He was seeking to fan the flames of racial tensions and used his affidavit as a form of a weapon against the plaintiff.

900.    NB: What Mr. Donais has done is also similar to, or at least reminiscent of, a hoax like the one allegedly perpetrated by Jussie Smollet. Our society was outraged at the prospect that Mr. Smollet could have fabricated a lie that he was called the "N" word (a racial slur) and the "F" word (a gay slur). He was subjected to criminal prosecution for this alleged lie/hoax. He lost his job on the hit TV show "Empire" because of this lie/hoax. Mr. Donais' conduct is in a similar category of what Mr. Smollet was alleged to have done, which is to exploit racial tensions to make false accusations pertaining to racism.

901.    It is tantamount to a hate crime because it was motivated by racial animus and it was done to exploit our race to bring harm to us. He targeted the plaintiff because he is black. He used his position as an officer of the court to use the plaintiff's race as a weapon against us. We as blacks are vulnerable to these kinds of attacks and stirred up sensibilities. He wanted to make a caricature of us as despicable untrustworthy irrational human beings.

902.    It is a form of racialized character-assassination and a racialized attack against us.

903.    Mr. Donais only brought up that the plaintiff accused him of racism because he is black. It was thus racially motivated. If the plaintiff were white, such a fabricated lie would not stick.

904.    Moreover, Mr. Donais wanted to intimidate the plaintiff and to shut the plaintiff up and to silence the plaintiff. He was using this racial element to protect his colleagues and his friend and longtime client. He wanted to curry favor with his client. He also wanted revenge because he was not happy that he was forced to come off the case.

905.    He thus set out to damage us in our pocketbook, in our housing, in our legal rights and in our case.

### *iii. Timeline of Key Events in 2017*

906.    1-6-17 – I called Attorney Craig Donais' phone number and leaves a voicemail.

907.    1-9-17 (Monday) – Attorney Craig Donais returns the call to me and the conversation lasts for 7 minutes. NB: It should be noted that Attorney Donais said that he declined to take case because he said he was too busy.

908.    1-9-17 – A Landlord-Tenant/540A petition was filed in Nashua District Court.

909.    1-11-17 – The hotel defendant principal, Dave Akridge, contacts Mr. Donais seeking his involvement in the case as local defense counsel and to support the pro hac vice admission of an out of state attorney from Atlanta, named Karl Terrell.

910.    1-11-17 – A phone call occurs between Dave Akridge and Mr. Donais where Mr. Donais informs Mr. Akridge that he had a conversation with me about the case the day before. Mr. Donais explains to Mr. Donais what was discussed with me. Mr. Akridge asks Mr. Donais if this created a conflict for Mr. Donais and Mr. Donais emphatically assured Mr. Akridge that it did not because "Mr. Donais did not take the case and the conversation was brief".

911.    1-11-17 - Mr. Akridge calls Mr. Terrell and tells him of the discussion he had with Mr. Donais about the contact with me.

912.    1-11-17 - Mr. Donais writes an email to Mr. Terrell stating that he had contact with me and provided a summary of what was discussed with me.

913.    1-11-17 – Mr. Donais and Mr. Terrell had (or may have had) a further conversation by phone about the matter.

914.    1-13-17 - Mr. Donais filed an appearance on behalf of the hotel defendants.

915.    1-13-17 - Mr. Donais files pro hac vice motion for Attorney Karl Terrell.

916.    1-17-17 – Attorney Elliott Berry agreed to formally represent me and my wife in this case. We advised Mr. Berry of the situation with Mr. Donais. Mr. Berry expresses shock at these events an told us that in his 30 years of practicing law he had never heard of anything like that or any lawyer doing such things. Mr. Berry advised us that this was a serious violation of Rule 1.18 of the rules of professional conduct.

917.    1-17-17 - Mr. Berry decided to call Mr. Donais about the conflict of interest and to give him a chance to explain and/or to withdraw from the case because Mr. Berry now had a duty to bring the matter to the attention of the court. During the call, Mr. Donais told Mr. Berry that there was no conflict of interest, and that he did not think he needed to withdraw from the case.

918.    1-18-17 - A court hearing took place in the Nashua district court before Judge Paul Moore.

919.    1-18-17 - At or near the beginning of the hearing, Mr. Berry raises the ethical concerns about Mr. Donais with the court.

920.    1-23-17 - Mr. Donais withdraws formally from the case after Judge Moore indicates that there was a conflict and he gave Donais a chance to withdraw from the case. In or around March 2017 – Mr. Donais becomes involved in the case again, but not officially as counsel on the case. He continues to work with his former client in the background. He continues to make statements to his former client and others about the plaintiff. These statements include false statements about me and about his prospective client relationship with me including statements made to his former client and others that personally attacked Plaintiff and falsely accused me and accused me of accusing Mr. Donais of race discrimination in not taking his case, among other false statements pertaining to me and to the circumstances surrounding the prospective client relationship that Mr. Donais entered into briefly with me and by extension my spouse.

921.    3-13-17 – Mr. Donais then finally makes himself a witness against me, providing a sworn affidavit. Mr. Donais drafts and signs an affidavit to be used in two court proceedings on 3-16-17 and later in April and May 2017.

922.    3-16-17 – Mr. Donais files his affidavit (or allows his affidavit to be filed) in Nashua district court. The affidavit makes a number of false statements under oath. In the affidavit, Mr. Donais personally attacked me and falsely accused me of accusing Mr. Donais of race discrimination in not taking his case, among other false statements pertaining to me and to the circumstances surrounding the prospective client relationship that Mr. Donais entered into briefly with me and by extension my spouse.

923.    4-27-17 - Mr. Donais further becomes involved in this case again when Mr. Donais' affidavit and false statements are also filed and used in superior court.

924.    5-5-17 - Mr. Donais' affidavit and false statements are further used in superior court in a filing made on 5-5-17. Mr. Donais was further consulted to provide further rebuttal to the plaintiff claims regarding a motion to disqualify counsel.

### iv. Perjury By Sworn Affidavit To A Court in NH

925.    The above showcases the commission of perjury to a court by Donais.

926.    It should be noted that this matter implicates not only the dishonesty of Mr. Donais as an officer of the court and a lawyer, but it also implicates the committing of a crime. To be clear, if Mr. Donais is guilty of the allegations set forth herein, he would be guilty of perjury, which is a crime. If Mr. Donais lied in his affidavit, it is perjury. Perjury is illegal under criminal law. Perjury is a felony as well as a crime of dishonesty. NB: The official charge for this is also called "perjury by false affidavit". It should also be noted that "massaging" evidence to suit current needs is known as a "sham affidavit".

927.     Similarly, given the racial nature of the perjury in this instance, this crime could also be construed, considered or classified as a hate crime (at least at the federal level if not also at the state level). Hate crimes are criminal acts motivated by bias or prejudice towards particular groups of people. To be considered a hate crime, the offence must meet two criteria: First, the act must constitute an offence under criminal law; second, the act must have been motivated by bias.

928.    The Civil Rights Act of 1968 enacted 18 U.S.C. § 245(b)(2), which permits federal prosecution of anyone who "willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with... any person because of his race, color, religion or national origin" or because of the victim's attempt to engage in one of six types of federally protected activities, such as attending school, patronizing a public place/facility, applying for employment, acting as a juror in a state court or voting.

929.    Although there is no civil penalties for perjury, defamation is a civil remedy that addresses defamatory perjury.

930.    NB: Perjury, whether in the pleadings, during discovery, or at trial, is at the heart of every malicious defense, yet there is no civil remedy for perjury and there is little credible threat of a criminal prosecution. A defendant who thus acts in bad faith for his financial gain or to injure a plaintiff for personal reasons, or who simply believes that this is how the litigation game is played, may use the litigation process for malicious and improper purposes without being held accountable.

931.    It should also be noted that when these perjurious statements are republished in a non-judicial context, they become actionable under defamation law.

### v. False Statements To A Judge in NH

932.    The above showcases false statements made by Donais to a judge in NH.

### vi. False Statements To Opposing Counsel in NH

933.    The above showcases false statements made by Donais to opposing counsel in NH.

### II. History of Other False Statements By Hilliard

**934.**    In addition to the false statements by Hilliard outlined earlier, Hilliard has made other false statements and has a history of doing so.

935.    NB: Again, I am not seeking recovery for these statements referenced below, as this is only background information to show patten, history and predisposition of Hilliard to make either intentional false statements or to make false statements recklessly without regard to its truth or without undertaking the necessary investigation to determine its truth or falsity before making such statements.

### i. Misleading Statement By Hilliard To NH Supreme Court To Hide Donais' Police Contact

936.    It should be noted that Hilliard told the NHSC on March 2, 2020, that the allegation that Donais contacted the police, was "unsubstantiated" and essentially false. This is further underscored by the fact that Donais/Hilliard was actually responding to a statement that my wife made in her March 2, 2020, pleading, which stated that Donais contacted the police.

937.    Donais/Hilliard knew all along that he contacted the police since June 2019 but yet had the temerity to deny it to that court in March 2020. Donais/Hilliard could have kept silent but instead said something about this allegation for the first time because he saw a danger with the NHSC viewing him negatively and he wanted to protect his reputation with the court as he thought it could affect the outcome of the matter before that court, and so he decided to lie to the NHSC.

938.    See screenshot below of false/misleading statement made by Hilliard to NHSC, as indicated above:

> 2.    In addition, this proceeding is already confidential pursuant to Rule 37(20)(g) and
>
> this Court's Order of February 7, 2020; accordingly, the motion is unnecessary.
>
> 3.    Finally, notwithstanding unsubstantiated allegations to the contrary, Attorney
>
> Donais has not violated the provisions of Rule 37(20) or the confidentiality of this process.
>
> There is no basis to permit the appellant to proceed in an *ex parte* fashion
>
> Respectfully submitted,
>
> **Craig S. Donais, Esq.,**
>
> By his Attorneys,
>
> **UPTON & HATFIELD, LLP**
>
> Date:  March 2, 2020          /s/ Russell F. Hilliard
> Russell F. Hilliard, NHBA #1159
> 159 Middle Street
> Portsmouth, NH 03801
> (603) 436-7046

939.    See screenshot below of statement made to the NHSC, citing Donais' contact with the police, to which Hilliard responded with the above:

> [1] In or around June 2019, Mr. Donais violated the duty of confidentiality, by disclosing the details of this grievance filed against him to his police officer connections in order to try to intimidate me or to otherwise frighten or dissuade me from proceeding or pursuing my grievance complaint and/or to intimidate, frighten or dissuade witnesses in this case. [NB: I also believe this is a retaliatory and malicious act intended to try

940.    All of this suggests a pattern of dishonesty and game-playing that should impact the credibility of Hilliard and Donais.

941.    NB: It also directly implicates Hilliard and Donais in not being candid with the court when he knew that his statement to the court, was false at worst or misleading at best.

942.    The rules of professional conduct not only require candor with the court but an affirmative duty to correct a misleading statement or misapprehension.

943.    After Hilliard submitted his March 2, 2020 pleading, a response that called out the misleading nature of the pleading was brought to his attention, but still there was no correction from Hilliard or Donais. Yet instead of recognizing this, Hilliard refused to be forthcoming with the NHSC, refusing to admit that Donais had contacted the police. This is misleading because Hilliard made a blanket denial when he used the term "unsubstantiated" in response to the statement made about Donais' contact with the police. By using the word "unsubstantiated", Hilliard intended to imply/suggest that the allegation was not true.

944.    It was only several months later, after an attorney misconduct investigation was opened and directed by the ADO towards this issue of Donais' contact with the police, did Hilliard and Donais finally admit that Donais had contacted the police, which was a 180-degree about-face turn, regarding their earlier denials in March 2020.

945.    This shows that both Hilliard and Donais are not only willing to make such misleading statements to a court but are willing to do so with impunity and utter disregard for their obligation to be candid, forthcoming, and honest with courts. This is an important background point that will be critical for this case, especially where there are issues of conflicting or disputed facts asserted in this case.

### *ii. False/Misleading Statement By Hilliard To NH Hillsborough Superior Court-Southern District*

946.    Hilliard's history of making false or misleading statements to courts is further exemplified by statements to the NH Hillsborough Superior Court-Southern District.

947.    The most conspicuous reason that these facts are important, as background, relates to the issue of Hilliard's candor and truthfulness with the courts or the lack thereof.

948.    In this instance, first, Mr. Hilliard gave an indication that the defendants in that case assented to a motion to intervene that he had filed in a case in the NH Hillsborough Superior Court-Southern District.

949.    Here are the facts.

950.    On Wednesday, August 31, 2022, Mr. Hilliard contacted the defendants in the case and asked for assent to his motion to intervene, but it was not assented to.

951.    On Wednesday, August 31, 2022, Mr. Hilliard filed a motion to intervene in the case. In this motion, there was no reference to "partially assented-to" in the title or anywhere else. See screenshot below showing the original title of Hilliard's motion filed.

**MOTION TO INTERVENE**

Craig S. Donais moves, pursuant to Rule 15, to intervene in the above matter on the

following grounds:

1.    Donais is the respondent attorney in the underlying proceedings at the

952.    On September 1, 2022, the plaintiff contacted the court staff office and raised the concern about the motion to intervene not having an appearance as required by court rule.

953.    On Saturday, September 3, 2022, the court staff rejected the motion to intervene because it did not have an appearance filed that accompanied it or preceded it. See screenshot below showing the court's rejection of Hilliard's original motion filed.

A filing that was previously served to you has been returned by the court to the original filer. That filing, listed below as Activity Requested, is not part of the court record.

| | |
|---|---|
| | Receipt Reserved from Clerk's Office |
| Returned Reason | Rejected |
| Return Comments | Per Superior Court Rule 15, an Appearance must be filed with the Motion to Intervene. If you have any questions, please call the Court at 1-955-212-1234 |

954.    On Tuesday, September 6, 2022 (NB: Monday, September 5, 2022 was a holiday), the plaintiff filed a motion to reject the appearance of Hilliard/Donais.

955.    Hilliard also re-filed his motion to intervene on September 6, 2022, but this time with the "partially assented-to" reference added to the title. The only difference between this motion to intervene filed on September 6, 2022 and the prior one filed on August 31, 2022 but was rejected, is the "partially assented-to" reference (and the date). Everything else is the same. i.e., the same points and the same arguments. Nothing else changed. See screenshot below showing the edited title of Hilliard's motion filed.

### PARTIALLY ASSENTED TO MOTION TO INTERVENE

Craig S. Donais moves, pursuant to Rule 15, to intervene in the above matter on the

following grounds:

1.    Donais is the respondent attorney in the underlying proceedings at the

956.    The plaintiff then raised concerns to the court regarding the truthfulness of Hilliard's motion to intervene.

957.    Hilliard then, a few weeks after the fact, admitted that he did not obtain the assent of the defendants.

958.    Hilliard subsequently explained that: *"When it came to the motion to intervene here, because the defendants have not yet been served, the reference in the motion to their assent was deleted, but inadvertently, the title of the motion was not modified. Undersigned counsel regrets the error, and apologizes to all concerned for any confusion this may have caused."*

959.    But this explanation is not credible.

960.    The sequence of events outlined above contradicts Hilliard's explanation.

961.    The first motion to intervene, of 8-31-22, did not have the partially assented-to reference in the title. The only reason it was rejected was because it was not accompanied by or preceded by an appearance as required by Court Rule.

962.    Therefore, all that Hilliard had to do was to file an appearance and also re-file the same motion to intervene he filed on August 31, 2022. But instead of re-filing the motion of August 31, 2022, he edited that motion and added the words "partially assented-to" in the title. This is a fact. Mr. Hilliard edited the August 31, 2022 motion to intervene and added the words "partially assented-to" in the title on September 6, 2022. These words created the impression that Hilliard had contacted the defendants and now in fact obtained their assent. But this is not true. He did reach out to the defendants but did not obtain assent. The only explanation for this is that Hilliard, in seeing that the plaintiff was seeking to have the court reject his motion to intervene, he upped the ante by adding those words, hoping it would escape the plaintiff's attention or that the plaintiff would simply think nothing of it and assume it was assented-to.

963.    Either way, it is clear that Hilliard filed an edited motion on 9-6-22, which included more words than the version originally filed on 8-31-22. This cannot be inadvertent. Additional words simply do not appear on their own or by accident to a document that was already prepared, completed/finished, and submitted to the court on 8-31-22. It takes intention to add such words especially in a title.

964.    If the 9-6-22 motion had been prepared for the first time from scratch, starting from the beginning, and the words found their way in there inadvertently, then that would be one thing. But this is not what happened here. Hilliard already had a motion prepared from 8-31-22. There was no need to edit the document. All he had to do was re-file it with the appearance. Why did Hilliard edit it at all? This makes no sense unless done intentionally.

965.    On 9-6-22, Mr. Hilliard already had a correct version of the motion prepared on 8-31-22, which was submitted on 8-31-22, which had no reference to "partially assented-to" in it. The 8-31-22 motion to intervene had no "partially assented to" in its title. That was already corrected. Therefore, in re-filing the motion to intervene on 9-6-22, there was nothing to correct or edit. So how did the words "partially assented-to" make its way into the 9-6-22 motion to intervene? Moreover, there are at least 3 people who had (or would have had) their eyes on this re-filed motion: Hilliard, Hilliard's secretary /legal assistant Sharon Mallon and Donais (who also is a lawyer and responsible for the content of motions filed in his name). So, we are expected to believe that somehow this error escaped all three of these people somehow in the refiling. This strains credulity.

966.    The most logical explanation is that Hilliard and Donais thought they could get by with this without detection.

967.    Also, when I raised concerns about this issue in my objection filed in this court, I had no direct knowledge that the statement was in fact a lie, and I only raised the issue purely as a function of using logical

reasoning, stating that if the defendants wanted to make their assent known, they would have entered an appearance and made their assent known and also stating that the reference did not make clear who assented, among other things. And thus it almost worked as I hesitated to question it as it seemed likely that it was true. How else would I know it was not true?

968.    Also, Hilliard let that motion sit there for 14 days from September 6 to September 20 (more than the 10 day timeline for the court to act on motions), and only sought to correct this error on September 20, 2022 which occurred[2] after this issue was brought to the attention of the defendants earlier in the day of September 20, 2022 (and where evidently the defendants sought to address the matter with Hilliard), resulting in him having to make that filing, with a correction of sorts, on September 20, 2022.

969.    This all has the indication of outright intentional dishonesty at worst or at best reckless and careless disregard for the truth.

970.    Hilliard failed to explain how those added words made their way into the completed version submitted on 8-31-22, refiled on 9-6-22 as outlined above.

971.    NB: The fact that Hilliard attempted to gain assent from the defendants, and did not gain assent from the defendants, further underscores the underhanded and/or misleading nature of Hilliard's edits to the 8-31-22 version that he refiled on 9-6-22. Again it is not as though Hilliard was for the first time drafting the motion to intervene, using as a model of some other motion. If anything, even assuming that he had used a model from another case to create the motion to intervene that was submitted on 8-31-22, he already had a proper perfectly edited motion to intervene on 8-31-22 that he actually submitted to the court. Therefore, there was no reason to edit that motion because the motion was only rejected because it was not accompanied by an appearance. All he had to do was file the appearance and re-file the same motion that was rejected. It strains credulity that somehow Hilliard went back to another motion and started from scratch again, which is what his response indicates or alludes to. This simply defies logic, reason and common sense. It is not believable whatsoever.

972.    NB: I have a background in theology and in critical study of written literature including Ancient Near East texts and manuscripts. Part of that includes textual criticism which is a scholarly discipline that attempts to closely scrutinize the wordings in old manuscripts, in order to determine not only authenticity but also which versions of old manuscripts came first and which came later and were therefore copies or variants of a primary source, etc. and to also ascertain where and when errors, if any, were introduced into later copies. By using textual criticism principles, it can be deduced that there is no way that the 9-6-22 motion to intervene could have been produced inadvertently after the 8-31-22 motion to intervene was already created. To assert otherwise violates the principles of correct textual criticism of written texts. Beyond that, it defies all common sense and logic.

973.    Hilliard evidently played games with the facts regarding the defendants' assent (knowing only too well that if neither defendant nor plaintiff assent, it would likely not bode well for his motion). This kind of recklessness, at a minimum, or otherwise misrepresentation before a court, by a seasoned attorney, reveals a deep-seated tendency to be dishonest with courts.

### *iii. False/Misleading Statement By Hilliard To The ADO about Service of Mailing*

974.    On August 19, 2019, Hilliard was served by mail certain documents relating to an ADO proceeding against Donais, his client.

975.    But Hilliard told the ADO that it was not sent to him.

976.    After Hilliard was confronted with facts showing that he was not correct, he then admitted that he made an untrue statement. See below screenshot of letter from Hilliard admitting his untrue statement. But in doing so, he also made an untrue statement to cover himself by essentially stating that the mail arrived a day later on August 20, 2020.

Dear Ms. Anderson:

    This will acknowledge your letter of August 28, 2019; I had not realized that my earlier correspondence mistakenly identified our Peterborough office for mail, and apologize for the confusion.

    I do stand by the statements in my letter of August 20, 2019, as well as my indication to you on July 8, 2019 regarding communication by mail.

    The August 12, 2019 packet was addressed to 29 Concord Street, Peterborough, but all mail for that office goes to the referenced post office box. When the mail was picked up on the morning of August 19, the packet was not yet there, but was the following morning, August 20.

Very truly yours,

Russell F. Hilliard
rhilliard@uptonhatfield.com
(603) 436-7046

977.    However, the attendant US Post Office tracking receipt shows that package was delivered/received on August 19, 2019. See below screenshot of US Post Office tracking receipt showing delivery on August 19, 2020 to Hilliard's Peterbough NH address (the one referenced by Hilliard in his above letter).



978.    Although these untrue statements and misrepresentations are not earth-shattering by themselves, together they show a consistent pattern of reckless and careless disregard for the truth. Hilliard is prone to making statements that he is forced, when confronted with his untrue statements, to later and oftentimes back-track or recant. He is bent on, in the first place, flippantly making such statements without taking the time to ensure that his statements are true or correct, or not misleading, as a lawyer is required to do under the rules of professional conduct.

### iv. False/Misleading Statement By Hilliard To The ADO about Plaintiff Filings

979.    Hilliard also made a false or untrue statement to the ADO that the plaintiff had submitted certain documents, which did not occur.

980.    After Hilliard was confronted with facts showing that he was not correct, he then admitted that he made an untrue statement. See below screenshot of letter from Hilliard admitting his untrue statement.

Dear Chair Rothstein:

      Following up my letter of January 6, 2020, I have been copied on a number of emails between the Attorney Discipline Office and the grievant, one of which has indicated that, contrary to my understanding, the Complaint Screening Committee did not receive the entirety of the grievant's August 2019 submission.

      If this is so, I stand corrected, but it is always been my understanding that the CSC receives, or has access to, all of the material of any particular file when considering a recommendation from the ADO. *See* CSC Letter of Dismissal issued October 4, 2019, ¶2 ("In reaching this decision, the Committee took into account the allegations in your complaint and the response filed by Mr. Donais, as well as all of the materials submitted.").

      Please let me know if you have any questions regarding this, or need any further information.

Very truly yours,

Russell F. Hilliard
rhilliard@uptonhatfield.com
(603) 436-7046

981.    Although these untrue statements and misrepresentations are not earth-shattering by themselves, together they show a consistent pattern of reckless and careless disregard for the truth. Hilliard is prone to make statements that he has to later back-track or recant. He is prone to flippantly make such statements without taking the time to ensure that his statements are true or correct, or not misleading, as a lawyer is required to do under the rules of professional conduct.

### v. Contemptuous and Vituperative Conduct By Hilliard

982.    Hilliard's modus operandi has followed or been based on a pattern of abusive, questionable and/or dishonest litigation tactics designed to conceal the truth, disrupt the fair administration of justice and exhaust the orderly resources of adverse parties in an attempt to intimidate them from pursuing their claims or grievances, and based on misconduct spawned by an overall attitude/approach of obstruction, gamesmanship and flagrant disregard for the rules of conduct and proper decorum as an officer of the court.

983.    Hilliard has a history of untrue or misleading statements and misrepresentations to courts (as shown previously) which can have serious deleterious effects because of the presumption of honesty, candor, and diligence that courts generally give to lawyers. The plaintiff will be able to further present evidence to prove these dishonest or misleading misrepresentations when called upon to do so in this case.

984.    A court may "consider the effect of the attorney's past actions on the administration of justice within the court." See Panzardi-Alvarez v. United States, 879 F.2d 975, 980 (1st Cir. 1989). Moreover, this court has an inherent interest and power to preserve the integrity of the adversary process,' Hempstead Video, Inc. v. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979).

985.    In the context of other proceedings and related court matters (where either myself or my wife is the plaintiff), Hilliard has engaged in "Rambo-style litigation" (i.e. uncivil, disingenuous, scorched earth, aggressive, vexatious, contentious, contemptuous, disdainful, vituperative, disrespectful, petty and gratuitous conduct, laden with personal attacks and with the intent to burden, annoy, embarrass, scandalize and harass the plaintiff) that many courts have warned lawyers not to engage in. Rather than simply sticking to the facts (or to responses that are substantive), and rather than conduct himself in a civil/decent manner becoming of an officer of the court, Hilliard has instead engaged in responses that are peppered with personal attacks, slights, or vexing jabs, or with attempts at casting aspersions directly or indirectly. This puts an extraordinary burden on the plaintiff as a non-lawyer to defend his reputation/credibility before the court. [NB: Such attacks have become the preferred strategy of certain defense lawyers who think that attacking pro se plaintiffs is an effective way of winning cases.]

986.    Based on his track record and patterns, Hilliard will likely continue his vexatious conduct that he has engaged in other proceedings, and to make misleading statements to this court as he appears willing to twist the truth to win at all costs. This will result in the plaintiff having to spend time rebutting and counteracting such personal, petty and scurrilous attacks when they come (and there is no doubt that they will come). Hilliard is a skilled and adept at psychological suggestion and manipulation, knowing how to cleverly and subtly plant smears and innuendo in people's minds. Hilliard knows how to make convincing arguments out of misleading and dishonest statements or with vilifying smears.

987.    Hilliard will also bombard this court with volumes of unnecessary documents in order to try to switch the subject and confuse the court (as he has done in other matters with plaintiff and his wife).

988.    Hilliard is going to try to attack the plaintiff and turn the tables to try to make the plaintiff 'defendants' in this matter. He will resort to ad hominem attacks, personal attacks, that are all irrelevant to resolving the litigation. He will engage in trivial nitpicky vexatious conduct. He will attack the plaintiff for being pro se or a non-lawyer, for very trivial things, while splitting hairs, and wasting judicial time and resources. All of this will be done, in order to try to inflame the court, so that the court will disfavor the plaintiff on personal grounds, in order to gain case advantage regarding the merits. Plaintiff will have to spend time and energy on defending against personal or petty attacks as well as on other motion issues or side issues forcing the plaintiff to take the focus away from the core issues of this case.

989.    Such conduct is unbecoming of a lawyer and when all is said and done, it will be shown and proven that this is how Hilliard operates. This will be relevant, as background, to the issues of honesty and integrity as it relates to the claims in this case.

### *vi. Refusal to Speak with Plaintiff or Confer On Motions*

990.    Hilliard has refused to speak to the plaintiff, as an official party in other cases.

991.    He has treated plaintiff (or his wife), as if the plaintiff is not a human being or deserving of human dignity, and as if the plaintiff is below him or inferior person to him, not worthy to even be spoken to.

992.    He has treated plaintiff with contempt and disdain, in contrast to how he treats most other people.

993.    In a most disturbing example, Hilliard, as Donais' counsel, adamantly refused to speak with the plaintiff regarding resolving certain procedural issues in another court matter.  This is even though the other lawyers for other parties were encouraging him to do so, in order to resolve certain issues. But Hilliard has a deep-seated animosity, hatred, and contempt for the plaintiff, so much so that he cannot bring himself to even speak to the plaintiff or have a telephone call with the plaintiff, along with two or three other lawyers on the call. Hilliard evidently cannot stomach being on a call with the plaintiff. Yet, the plaintiff has done nothing to this man.

994.    See screenshot of one email where he adamantly indicates he will not "engage in any telephone conversations with Mr. Bisasor".

From: Russell F. Hilliard <rhilliard@uptonhatfield.com>
Sent: Wednesday, September 29, 2021 4:36 PM
To: Ramsey, Jennifer <Jennifer.S.Ramsey@doj.nh.gov>
Cc: Galdieri, Anthony <Anthony.J.Galdieri@doj.nh.gov>; Neville, Heather <Heather.D.Neville@doj.nh.gov>
Subject: Re: Phone Call | Resolution of Outstanding Issues

**EXTERNAL:** Do not open attachments or click on links unless you recognize and trust the sender.

Jennifer, Anthony, and Heather — I do continue to represent Attorney Donais, who has been granted intervenor status.
I am unwilling to engage in any telephone conversations with Mr. Bisasor — Russ

Russell F. Hilliard
Upton & Hatfield, LLP
(603) 436-7046

995.    It is a highly unusual practice for any attorney, in this day and age, to refuse to speak with a litigant or their representative regarding a case or the motions in a case, or try to resolve issues in a case.

996.    The plaintiff has been treated with palpable disrespect, disdain, and contempt by Hilliard.

### vii. Evidence of Similar Conduct Towards Others

997.    Hilliard has engaged in similar conduct not just with the plaintiff but with others, as shown below.

998.    In a federal district court case in Massachusetts (Niedermeier v. Duckett et al, Case #1:15-cv-1163-FDS), another person (Ms. Christine Niedermeier) who is also an attorney, complained to the court of the same kind of treatment by Hilliard including refusing to speak to her, showing disdain and contempt, and being dismissive, disrespectful, and unreasonable. This is the same treatment, attitude, and conduct that Hilliard has displayed or directed towards the plaintiff and/or plaintiff's wife. See screenshot below of a pleading filed by Ms. Niedermeier in the federal district court of MA on June 18, 2018.

> Finally, Niedermeier wishes to inform the court that she has not been treated with such disdain, disrespect and distrust – as she has by Hilliard – since her early days as an attorney in the late 1970's. At that time, there was a new growth of women attorneys and many male attorneys did not know how to interact with them. Some male attorneys would not return her telephone calls and instead would call a senior partner in the firm. Others would speak in condescending words and tone to her. And, still others would be flatly discriminatory. It is both amazing and sad that forty years later, Hilliard's conduct mirrors those actions: **his refusal to speak with Niedermeier for several months, his autocratic refusal to accept any revisions whatsoever requested by Niedermeier to his draft documents, and his disrespect and demeaning conduct toward Niedermeier** (Emphasis Supplied), for example, when he questioned her integrity in his email, stating: "your request to modify only raises questions as to whether you will honor the confidential nature of this resolution."

999.    As indicated above in the federal court case, and in conjunction with the testimony of at least one other witness to Hilliard's behavior, it appears Hilliard reserves this kind of conduct for women and minorities whom he sees as lesser persons than him, not deserving of respect or dignity.

1000.    This is a pattern of conduct with Hilliard. At 71 years of age and having grown up in the 1950's and 1960's, it is unlikely that he will change his demeaning and contemptuous attitude and conduct towards the plaintiff anytime soon.

1001.    It is anticipated that this kind of conduct will continue with the plaintiff in this case. The rules of conferring on motions will not be adhered to in this case. He will likely continue to refuse to speak to the plaintiff and to show contempt for the plaintiff as if he is not a human being or deserving of human dignity. This court will see for itself his vexatious, contentious, vituperative conduct and the continuation of this kind of attitude and behavior, as well as the refusal to abide by the rules of respectful conferring in this case.

### viii. False/Misleading Statement By Hilliard To NH Hillsborough Superior Court-Northern District

1002.    Hilliard, as counsel for Donais in the above case, asserted that the plaintiff made a reference to the imminence of settlement to a judge (Judge David Anderson) in a 7-20-21 hearing in NH Hillsborough Superior Court-Northern District.

1003.    This assertion is not accurate and not true.

1004.    Hilliard told **Judge Amy Messer of** NH Hillsborough Superior Court-Northern District that the plaintiff (allegedly) told Judge David Anderson (who was recused once Hilliard later entered an appearance and was then replaced by Judge Amy Messer) in a hearing (on 7-20-21) that "settlement was imminent".

1005.    Hilliard asserted that this (alleged) statement by the plaintiff was false. Hilliard asserted that this is the reason why he has sought to unseal the record of sealed motions in this case, i.e. because since the plaintiff (allegedly) made a false statement to the prior court in the hearing, then the plaintiff could have (allegedly) made false statements to the prior court in the sealed motions.

1006.    Hilliard also asserted that the alleged false statement by the plaintiff was somehow used to deceive the prior court (of Judge Anderson) into granting extensions of time to serve process and that without such false statement, Judge Anderson would not have allowed the extension of time to serve process.

1007.    Hilliard also asserted that because of the (alleged) false statement made to Judge Anderson in a 7-20-21 hearing and because of the possibility that false statements were made in the sealed motions, then the court should dismiss the case.

1008.    Based on this, Hilliard filed two motions on 1-12-22, one was a motion to dismiss, and the other was a motion to unseal the record. The motion to dismiss and the motion to unseal the record were primarily based on the allegation of a false statement by the plaintiff, that the settlement was imminent.

1009.    Hilliard therefore has made this purported allegation to be a key factual allegation upon which he has made those motions to the court. This allegation was alleged and repeated in at least 6 motions by Hilliard to the NH Hillsborough Superior Court-Northern District.

1010.    Hilliard stated that the plaintiff (allegedly) told Judge Anderson in a hearing (on 7-20-21) that "settlement was imminent". First, this statement is a statement of (alleged) fact. It is either true or not true. It is not an opinion or a guess. It alleges that a certain statement was made by the plaintiff at a specific time and in a specific place and to a specific person. Hence, it is a fact that the statement is a statement of (alleged) fact. Second, the statement is also relevant and material because Hilliard used it as his central point for seeking relief. It is not a side point or peripheral statement. It is central and crucial. Third, it is also intentional. The statement was made with a clear intent and objective, to assign a false statement to the plaintiff. This was not done inadvertently or by accident. It was done with full consciousness by Hilliard. Fourth, the statement is verifiably and provably not true. A statement can be proven not true if it can be falsified by other facts. The plaintiff provided a transcript of the 7-20-21 hearing to Judge Amy Messer. The transcript shows two opposing facts. 1) The plaintiff never made any statement to Judge Anderson during the 7-20-21 hearing that the settlement was "imminent". At no point in the transcript, did the word "imminent" or "imminence" come out of the mouth of the plaintiff. Also, at no point did the plaintiff use any other word or synonym or phrase or sentence that conveyed "imminence" or "imminent" in relation to the settlement. 2) The plaintiff actually stated that the settlement was taking a long time because of the apparent need for the 21 defendants to coordinate among themselves and further when asked for an estimated timeline, the plaintiff said several months. This is the very opposite of "imminence" or "imminent." Therefore, Hilliard's statement was not true. It was not accurate. It was not factual. It was false. There is simply no way around this fact. NB: This is compounded by the fact that, after the plaintiff provided the transcript to Judge Messer and showed that the statement was false, instead of correcting this false statement, Hilliard doubled down, reiterated and repeated this false statement in multiple filings thereafter. This is further evidence of intent. It is also evidence of malice.

1011.    Judge Amy Messer flatly denied his baseless and frivolous motion to dismiss.

1012.    Here are the further facts that Hilliard hid from that court of NH Hillsborough Superior Court-Northern District, showing further dishonesty on his part.

    a.    There were 21 defendants in that case, which case was filed in January 2020 just before the covid pandemic.

    b.    The parties were negotiating all along from the beginning of the filing of that case.

    c.    The defendants and plaintiff had negotiations that were stalled thereafter.

    d.    The plaintiff was pro se and believed that the stalled negotiations would benefit from the involvement of a plaintiff side attorney, if they could find one to help.

e.  The plaintiff thus sought the assistance of legal counsel to bridge the impasse and restart negotiations.

f.  Attorney Jason Kafoury agreed to represent the plaintiff for this purpose.

g.  In or around December 2020, Jason Kafoury reached out to the corporate defendants' office directly to find out if they were interested in restarting negotiations. The general counsel for the corporate defendants indicated the affirmative and then directed Mr. Kafoury to local counsel in the local area, Ms. Shelagh Michaud, for resuming of settlement negotiations.

h.  Hilliard, on behalf of Donais, formally entered into the restarted settlement negotiations as of January 2021.

i.  Hilliard/Donais agreed to have Shelagh Michaud speak on his behalf during the settlement negotiations and declined to deal directly with plaintiff, using the excuse that there was a joint defense arrangement.

j.  Hilliard/Donais negotiated with the plaintiff via this joint defense arrangement from January 2021 through January 2022.

k.  Therefore, Hilliard/Donais agreed to enter into settlement negotiations with the plaintiff, allowing Attorney Shelagh Michaud (who was the main counsel for the corporate defendants) to speak on Donais/Hilliard's behalf as part of a joint defense arrangement.

l.  In fact, these negotiations were formally being conducted with an attorney on the plaintiff's side (Attorney Jason Kafoury), something which Donais/Hilliard neglected to mention in his motion to dismiss in the NH Superior Court-Hillsborough North. When Attorney Kafoury asked Ms. Michaud for the names and contact information for the counsel for the defendants who were not under the corporate defendants' umbrella (such as Donais), Ms. Michaud told Attorney Kafoury that they preferred to remain unidentified and to proceed with Ms. Michaud as their spokesperson. This reinforced the fact that Donais/Hilliard not only authorized Ms. Michaud to speak for them in these negotiations but when given the chance to deal directly with Attorney Kafoury, they declined and reiterated their desire to adhere to the joint defense arrangement with Ms. Michaud as their spokesperson.

m.  Because the parties were then engaged in a joint-defense settlement negotiation as of January 2021, the plaintiff alerted the court to that, as a basis for further extensions, which were granted.

n.  Ms. Michaud, in speaking for all of the defendants (including Donais) also indicated to Attorney Kafoury that service of process on the defendants would effectively mark the end of the settlement negotiations.

o.  Therefore, the plaintiff had no option but to request extensions of time for the settlement process because of these delicate circumstances.

p.  NB: The plaintiff also received advice from Attorney Kafoury to seek extensions of time to serve process, from the court, and some of those confidential communications with Attorney Kafoury were provided to Judge Anderson under seal.

q.  The plaintiff had requested extensions 5 times prior to January 2021, thus prior to the resuming of settlement negotiations. These were not sealed and were public.

r.  Hilliard/Donais knew of these 5 motions to extend time and the granting of them, as they were public record.

s.  As of February 2021, the plaintiff requested extensions that were also sealed by the court. The sealing of the records was based on the confidentiality of settlement communications.

t.  In the 5 unsealed motions to extend time that preceded the sealed motions, these indicated or alluded to a settlement being targeted. Hilliard/Donais did not raise an objection or question about these unsealed motions all along.

u.  The docket shows the first 5 motions were not sealed.

v.  Hilliard/Donais did not at any time point to any issue in those 5 unsealed motions.

w.  The remaining 6 sealed motions occurred right at the time the 21 defendants began negotiating with the plaintiff.

x.  The 6 motions from February 2021 through December 2021 were based on the fact that the parties were involved in settlement negotiations and included confidential settlement documents, information or communications.

y.  During these negotiations, Attorney Kafoury informed Ms. Michaud when the plaintiff filed and obtained extensions of time to serve process in order to allow time for settlement negotiations.

z.  Thus, the plaintiff notified those defendants of motions to extend time and of the judge's granting of them and how long the extensions were granted. Therefore, Hilliard/Donais himself knew of plaintiff's motions to extend time and the judge's granting of them and/or how long the extensions were granted.

aa. The bottom line is that Hilliard/Donais went along with and effectively agreed to these circumstances involving attorney to attorney settlement negotiations at the time. Eventually, by or around April 2021, a settlement agreement was reached on the monetary amount by the parties, with contract details and non-monetary provisions remaining to be finalized. This was agreed to by Ms. Michaud, speaking on behalf of all defendants (including Donais).[10]

bb. Then, Attorney Kafoury exited the continued negotiations on the remaining settlement contract details because agreement had been reached on the main monetary amount for the case.

cc. Thereafter, the negotiations on the contract details slowed down because the nature of reviewing and negotiating contract language and details required more time to review and there were 21 defendants who each had to review and agree to any contract language/terms.

dd. Then a hearing was ordered by Judge Anderson for 7-20-21, to confirm what was happening with the settlement negotiation situation and Ms. Michaud confirmed that there were in fact legitimate settlement negotiations ongoing and that a settlement agreement/contract was offered and being negotiated.

ee. Judge Anderson then granted several months of extension into the late fall of 2021 to allow the settlement finalization to be completed, with the implied proviso, as requested in the hearing by the plaintiff, that further extensions would or could be granted as needed to complete the settlement finalization.

ff. Hilliard/Donais did not object at the hearing and thus effectively went along with the court's several month extension into late fall of 2021. Why did Donais not object at the 7/20/21 hearing if he had a problem with the extensions due to ongoing settlement negotiations? This further underscores the dishonesty of Donais/Hilliard because if they believed that service of process should have been done in 2020 or 2021, then why go along with, or refuse to object to, Judge Anderson's ruling on the several months of extension, as he stated he would allow in the 7/20/21 hearing.

gg. Therefore, it was totally frivolous and dishonest for Hilliard/Donais to suggest or indicate to that court that the plaintiff should have served process on him or the other defendants while negotiations were ongoing.

---

[10] NB: This fact relates also to the situation in the Massachusetts Middlesex Superior Court, which was a related case based on similar facts, and where in or around June 2021, Donais reached out to the court staff, when he was not a party to tell them that there was no settlement or settlement negotiations, in order to harm the plaintiff in suggesting that the plaintiff had lied to the Middlesex court in filing a motion to extend time to serve process due settlement. This goes to further show a web of deceit by Donais as he engaged in dishonest conduct in several courts at the same time, lying with impunity and trying to turn courts and court staff against the plaintiff with his lies and including but not limited to surreptitious ex part communications with court staff and judges and communications directed them while being a non-party. The fact Donais knew he was involved in settlement negotiations via the larger settlement negotiations with the 21 defendants in NH Superior Court Hillsborough North (including himself as a lesser non-corporate defendant) but still lied to the Massachusetts court staff goes to the level of dishonesty that Donais has done and is capable of. And also the fact that Hilliard on behalf of Donais lied to the NH Superior Court Hillsborough North by stating that the plaintiff made statements to the prior judge when the plaintiff did not, and hid the fact that Hilliard was involved in settlement negotiations all along and had known of and effectively agreed to extensions of time in light of ongoing negotiations but then suggested to that court that he was surprised at the extensions of time due to negotiations, shows the heights of dishonest on the part of Hilliard and that he is willing to do anything for his friend client Donais including lie to a court.

1013.    These facts underscore the dishonesty and bad faith by Hilliard and Donais regarding their attempts at a motion to dismiss and to unseal sealed records based on the fabricated lie that the plaintiff told Judge Anderson in the 7-20-21 hearing that settlement imminent, when in the fact the provable fact is that the plaintiff told judge Anderson that settlement was ongoing and required several more months to complete.

1014.    This is the kind of thing that Hilliard and Donais do, in order to misuse their position as lawyers to lie to and mislead courts, thinking they can get away with it, with impunity, because no one will believe the plaintiff over against them and/or no one will ever hold them accountable for their dishonest shenanigans.

### ix. False Statements of Law By Hilliard

1015.    Hilliard has also made several false statements of law.

1016.    Hilliard has made statements and arguments to courts that have no grounding in fact or basis in law.

1017.    He has pushed the envelope with untenable positions intended to try to frustrate and burden and prejudice the plaintiff.

1018.    When Hilliard has made these statements and arguments, Hilliard knew they were not correct or true.

1019.    He also misrepresented what the law states.

1020.    He has taken frivolous positions, including assigning confidentiality to things that have no basis in law or fact in order to prevent the plaintiff from obtaining disclosure of relevant information.

1021.    He has made frivolous accusations about the plaintiff's attempts to secure his rights including to obtain clarification from the ADO or courts. He has mischaracterized such attempts to obtain information or clarification as ill-motivated.

1022.    He has taken legal positions that motive for seeking disclosure is relevant to denying disclosure of information under a public records request, when the law is very clear that motive is not a relevant factor.

1023.    He has filed oppositions that are frivolous and vexatious, asserting challenges that are not valid and saying things that he knows is not true, like that a motion filed by plaintiff has no basis in law or fact when he knows that there is basis in law and fact and would never make the same challenge regarding anyone else.

1024.    Hilliard has also filed frivolous appeals, which have been shot down, trying to harass or injure the rights of the plaintiff or his wife. In these appeals, Hilliard misstates the law and the facts, or mischaracterizes them, or hide pertinent facts or law from the courts.

1025.    Hilliard thus has abused such processes for his own (or his clients') malicious ends. Hilliard thus also engages in abuse of process and malicious prosecution or malicious defense, in doing so.

1026.    Hilliard has shown extreme despise, contempt and even hatred for the plaintiff in his conduct, which has evidently served as fuel for his penchant for false, misleading, dishonest and defamatory statements about the plaintiff. NB: The plaintiff can show further evidence of these things, if or when called upon to do so, in the course of the case.

1027.    This goes to an overall point. Because the plaintiff is attempting to hold these lawyers accountable for misconduct and dishonesty, their strategy includes trying to turn the table around to assign false statements to the plaintiff, to disparate and discredit the plaintiff so that it would make it difficult for anyone to believe the plaintiff's meritorious claims and allegations. These are known tactics of predators and abusers (as well as of bullies and sociopaths) who believe they can take advantage of women or minorities and exploit a human bias that is prevalent in our society that tends to believe women and minorities less than they do white males.

1028.    It is without doubt that Hilliard will continue to do such things in this case.

1029.    This again shows a consistent pattern of reckless and careless disregard for the truth. Hilliard flippantly makes such statements with the intent to mislead, and without taking the time to ensure that his statements are true or correct, or not misleading, as required under the rules of professional conduct.

1030.    NB: Again, finally, I am not seeking recovery for these statements referenced in this section of background information, as this is only background information to show patten, history and predisposition of Hilliard and Donais to make either intentional false statements or to make false statements recklessly without regard to its truth or without undertaking the necessary investigation to determine its truth or falsity before making such statements or to make frivolous dishonest arguments and false statements of law to tribunals and courts

## SECTION 6. CONCLUSION AND PRAYER FOR RELIEF

## VI. CONCLUSION

1031.   There are additional events that occurred after 2017 that go to supplementing the claims in this case. For example, in 2019 and 2020, there are events arising from the same claims in 2017 that were repeated, republished and continued defamatory statements about the plaintiffs and that added to and expanded the defamatory statements about the plaintiffs. Thus, there are additional acts by the defendants that have occurred since the filing of the prior complaint.  These include but are not limited to the following:

1032.   Defendant published the following false and defamatory statements of purported fact concerning plaintiffs as follows:

    a.   Donais falsely stated that plaintiff falsely and frivolously accused him of racism for declining to represent plaintiffs in a 7 minute prospective attorney-client phone call. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials.

    b.   Donais falsely stated that plaintiff burglarized and bugged his office phone and office thus committing a felony crime.

    c.   Donais falsely stated that plaintiff fabricated a recording to put Donais' voice on it to make Donais say things Donais did not say.

    d.   Donais falsely stated that plaintiff is a criminal offender.

    e.   Donais falsely stated that plaintiff is mentally crazy/has a mental disease-sickness.

1033.   These statements were made not in court proceedings and when there was no court proceeding that was ongoing. They are not and cannot be privileged and the plaintiffs intend to show why they cannot be privileged.

1034.   These statements are related to and flow from the events in 2017 and again in 2019 and 2020.

1035.   These statements are defamatory. Plaintiff will show evidence of these facts.

1036.   As a result of the above-described acts, the plaintiff has suffered, continue to suffer, and will in the future suffer emotional distress, embarrassment, frustration, anger, and feelings of stigmatization including racial stigmatization from the false allegations, all to his economic and noneconomic damages in an amount to be determined by a jury at trial.

1037.   The plaintiff is also entitled to reasonable attorney fees pursuant to statute.

1038.   The plaintiff asks the court to grant a liberal construction to these pro se/non-lawyer words in a light most favorable to the plaintiff, in accordance with the best practices of modern jurisprudence and in compliance with the US supreme court's directive to all lower courts and tribunals, in Haines v Kerner, 404 U.S. 519 (1972).

1039.   The plaintiff requests that this court tries its best to understand what it is that the plaintiff is trying to articulate to the court, and to interpret it in the best way and best light possible, in order to provide appropriate justice as is necessary and required.

1040.   The plaintiff hereby demand a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

1041.   The plaintiff respectfully requests the Court to enter judgment in his favor and against all defendants, awarding compensatory damages, punitive damages, injunctive relief to prevent further misconduct, attorneys' fees and costs, and such other relief as the Court deems just and proper.

1042.   Given the 8 year nightmare that defendants have put the plaintiff and his wife through, including trying to make plaintiff seem to the world that he is crazy, that he is lying, that Donais is telling the truth, declaring this at every turn he gets, in every public forum he gets, including in public meetings at the advisory committee on rules, and given the mental anguish for 8 years and the pervasive continued damages suffered, Plaintiff demands the following:

    a.   Compensatory Damages: $850,000 for economic losses, reputational harm, and emotional distress.

   b.   Punitive Damages: $1,000,000 to deter future misconduct.

   c.   Attorney Fees and Costs: Pursuant to RSA 358-A:10 and 42 U.S.C. §1988.

1043.   WHEREFORE, the plaintiff, respectfully prays that the Court grant the following relief:

(1) Enter judgment in plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief, and such other and further relief as the plaintiff may be entitled to by bringing this action.

(2) Award plaintiff damages within the jurisdictional limits of this court and enhanced damages as appropriate.

(3) Award plaintiff reasonable attorneys' fees and costs including service and filing fees.

(4) Grant a pro se liberal construction to this pleading.

(5) Order such other relief as this Court deems just and equitable.

Respectfully Submitted,

ANDRE BISASOR
679 Washington Street, Suite # 8-206
Attleboro, MA 02703

Dated: June 3, 2025

Filed
File Date: 6/3/2025 11:53 PM
Hillsborough Superior Court Northern District
E-Filed Document

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name: Hillsborough - Superior Court-Northern District

Case Name: Andre Bisasor v. Craig Donais, et al.

Case Number: 216-2025-CV-00529
(if known)

## APPEARANCE/WITHDRAWAL

**APPEARANCE**

Type of appearance (Select One)

☒ Appearance                ☐ Limited Appearance *(Civil cases only)*

If limited appearance, scope of representation:

_____

_____

_____

_____

Select One:

☐ As Counsel for:

_____
(Name)                (Address)                (Telephone Number)

_____
(Name)                (Address)                (Telephone Number)

_____
(Name)                (Address)                (Telephone Number)

☒ I will represent myself *(self-represented)*

**WITHDRAWAL**

As Counsel for _____ _____ _____

Type of Representation: (Select one)

☐ Appearance:

  ☐ Notice of withdrawal was sent to my client(s) on: _____ at the following address:

  _____

  ☐ A motion to withdraw is being filed.

☐ Limited Appearance: (Select one)

  ☐ I am withdrawing my limited appearance as I have completed the terms of the limited representation.

  ☐ The terms of limited representation have not been completed. A motion to withdraw is being filed.



True Copy Attest

*W. Michael Scanlon*

W. Michael Scanlon

Clerk of Court

July 8, 2025

NHJB-2318-Se (07/01/2018)

TurboCourt.com Form Set #11692298

This is a Service Document For Case: 216-2025-CV-00529
Hillsborough Superior Court Northern District
7/8/2025 3:23 PM

**Case Name:** Andre Bisasor v. Craig Donais, et al

**Case Number:** _____

**APPEARANCE/WITHDRAWAL**

---

**For non e-filed cases:**

I state that on this date I am ☐ mailing by U.S. mail, or ☐ Email (only when there is a prior agreement of the parties to use this method), or ☐ hand delivering a copy of this document to:

_____          _____
Other party                                                Other party's attorney

---

**OR**

**For e-filed cases:**

☐    I state that on this date I am sending a copy of this document as required by the rules of the court.  I am electronically sending this document through the court's electronic filing system to all attorneys and to all other parties who have entered electronic service contacts (email addresses) in this case.  I am mailing or hand-delivering copies to all other interested parties.

---

Andre Bisasor
_____          /s/ Andre Bisasor                    6/3/25
Name of Filer                                      Signature of Filer                          Date

                                                        (781) 492-5675
_____          _____
Law Firm, if applicable    Bar ID # of attorney     Telephone

679 Washington Street, #8-206
_____          quickquantum@aol.com
Address                                            _____
                                                        E-mail

Attleboro, MA 02703
_____
City                    State          Zip code

TurboCourt.com Form Set #1692298

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Hillsborough Superior Court Northern District
300 Chestnut Street
Manchester NH  03101

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## SUMMONS IN A CIVIL ACTION

Case Name:    **Andre Bisasor v Craig Donais, et al**
Case Number:    **216-2025-CV-00529**

Date Complaint Filed: June 03, 2025

A Complaint has been filed against Craig Donais; Mary Donais; Donais Law Offices PLLC; Russell Hilliard in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| July 24, 2025 | Andre Bisasor shall have this Summons and the attached Complaint served upon Craig Donais; Mary Donais; Donais Law Offices PLLC; Russell Hilliard by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| August 14, 2025 | Andre Bisasor shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Craig Donais; Mary Donais; Donais Law Offices PLLC; Russell Hilliard must electronically file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to Craig Donais; Mary Donais; Donais Law Offices PLLC; Russell Hilliard:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
Andre Bisasor          679 Washington Street #8-206 Attleboro MA  02703
Craig Donais          39 Buzzell Street Manchester NH  03104
Mary Donais          39 Buzzell Street Manchester NH  03104
Russell Hilliard          579 Sagamore Ave Unit 9 Portsmouth NH  03801
Donais Law Offices PLLC          39 Buzzell Street Manchester NH  03104

BY ORDER OF THE COURT

June 09, 2025          W. Michael Scanlon
                                    Clerk of Court

(126849)

True Copy Attest

*W. Michael Scanlon*
W. Michael Scanlon
Clerk of Court
July 8, 2025

NHJB-2678-Se (07/01/2018)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Hillsborough Superior Court Northern District
300 Chestnut Street
Manchester NH  03101

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## ANDRE BISASOR
## INSTRUCTIONS FOR SERVICE
## BY THE SHERIFF'S DEPARTMENT

Case Name:    **Andre Bisasor v Craig Donais, et al**
Case Number:    **216-2025-CV-00529**

**Instructions for:** Andre Bisasor

The attached Summons must be sent to the Sheriff's Department for service.  Service must be completed on or before **July 24, 2025**.
**Further action is required by you**
**You must:**
- **Print two copies of the Summons per defendant**
- **Print two copies of the Notice to Defendant per defendant**
- **Print two copies of the Complaint filed with the Court per defendant**
- **Make two packets for service.  Each packet should contain:**
  - **One Summons**
  - **Once Notice for Defendant**
  - **One Complaint filed with the Court**
- **Mail or hand deliver the packets to the Sheriff's Department in the county where each defendant resides.**

**Sheriff Departments in New Hampshire:**

Belknap County Sheriff's Department:
Carroll County Sheriff's Department:
Cheshire County Sheriff's Department:
Coos County Sheriff's Department:
Grafton County Sheriff's Department:

Hillsborough County Sheriff's Department:
Merrimack County Sheriff's Department:
Rockingham County Sheriff's Department:
Strafford County Sheriff's Department:
Sullivan County Sheriff's Department:

**\*If one or more of the parties resides out of state, please click here for the requirements\***
Service must be made upon the defendant before **July 24, 2025**.


If the Sheriff is unable to complete service by **July 24, 2025** you will receive a "Notice of Incomplete Service" from the Sheriff's Department.  You may request that new paperwork be issued by electronically filing a Request for Documents.  There is a fee for this request.


The Sheriff will mail the 'Return of Service' to you.  You MUST electronically file the 'Return of Service' with the court by August 14, 2025.


**If service is not made as directed, no further action will occur and the case may be dismissed by the court.**

NHJB-2678-Se (07/01/2018)

# Important Service Information for Sheriff

## <u>Do not file this with the court</u>
Provide this information to the Sheriff's Department.
See Instructions for Service for more information.
**PLEASE PRINT CLEARLY**

Date: _____     Case #: _____

### <u>Who are you requesting to be served?</u>
Please provide whatever information you know

Name: _____

Address for service (no P.O. boxes):

_____     APT #: _____

_____

Home phone #: _____     Cell phone #: _____

Sex: ☐ Male   ☐ Female        Race: _____

Last 4 digits of SS#: xxx-xx- _____ _____ _____ _____     D.O.B. _____

Work name & address:

_____

Special instructions for service (i.e. directions, best time to serve, cautions, etc.):

_____

_____

Vehicle description/license plate:

_____

### <u>Your Information:</u>
Name (please print): _____

Residential address:                    Mailing address:

_____     _____

_____     _____

Phone number to contact you during business hours:

_____ Alternate #: _____

_____
Signature

♦IN-HAND SERVICE WILL INCUR EXTRA COSTS DUE TO ADDITIONAL TRAVEL♦

**SHERIFF OFFICE USE ONLY: (This will vary by Sheriff's Office)**

| | | |
|---|---|---|
| Fees Paid: $_____ Cash #: _____ Check#: _____ | | |
| Id#: _____ Waiver: _____ Money Order#: _____ Credit Card: _____ | | |
| Sheriff File # _____ Authorization #: _____ | | |

Instructions for filing the Return of Service:

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.nh.gov, select the Electronic Services icon and then select the option for a self-represented party.

1. Select "I am filing into an existing case".  Enter 216-2025-CV-00529 and click Next.

2. When you find the case, click on the link follow the instructions on the screen.  On the "What would you like to file?" screen, select "File Other Document" and choose "Return of Service".

3.  Scan the Return of Service packet and follow the instructions in the electronic filing program to upload the Return of Service to complete your filing.

4. If the sheriff was unable to serve the paperwork, you can request new paperwork by filing a Request for Documents.  On the "What would you like to file?" screen, select "File Other Document" and choose "Request for Reissued Summons" from the menu and upload the Request for Documents form.


**FAILURE TO FILE THESE DOCUMENTS MAY RESULT IN YOUR CASE BEING DISMISSED.**

June 09, 2025                                   W. Michael Scanlon
Date                                                   Clerk of Court

You can access documents electronically filed through our Case Access Portal by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case.  After your information is validated by the court, you will be able to view case information and documents filed in your case.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Hillsborough Superior Court Northern District
300 Chestnut Street
Manchester NH  03101

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## NOTICE TO DEFENDANT

Case Name:       **Andre Bisasor v Craig Donais, et al**
Case Number:   **216-2025-CV-00529 216-2020-CV-00027**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Hillsborough Superior Court Northern District.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.nh.gov, select the Electronic Services icon and then select the option for a self-represented party.

1.  Complete the registration/log in process.  Click Register and follow the prompts.

2.  After you register, click Start Now.  Select **Hillsborough Superior Court Northern District** as the location.

3.  Select "I am filing into an existing case".  Enter **216-2025-CV-00529** and click Next.

4.  When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5.  Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.nh.gov.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

Filed
File Date: 7/2/2025 4:16 PM
Hillsborough Superior Court Northern District
E-Filed Document

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name: _____

Case Name: _____

Case Number: _____
(if known)

## APPEARANCE/WITHDRAWAL

**APPEARANCE**

Type of appearance (Select One)

☐ Appearance          ☐ Limited Appearance *(Civil cases only)*

If limited appearance, scope of representation:

_____

_____

_____

_____

Select One:

☐ As Counsel for:

_____
(Name)                    (Address)                    (Telephone Number)

_____
(Name)                    (Address)                    (Telephone Number)

_____
(Name)                    (Address)                    (Telephone Number)

☐ I will represent myself (*self-represented*)

**WITHDRAWAL**

As Counsel for _____  _____  _____

Type of Representation: (Select one)

☐ Appearance:

    ☐ Notice of withdrawal was sent to my client(s) on: _____ at the following address:

_____

    ☐ A motion to withdraw is being filed.

☐ Limited Appearance: (Select one)

    ☐ I am withdrawing my limited appearance as I have completed the terms of the limited representation.

    ☐ The terms of limited representation have not been completed. A motion to withdraw is being filed.

True Copy Attest

*W. Michael Scanlon*

W. Michael Scanlon

Clerk of Court

July 8, 2025

This is a Service Document For Case: 216-2025-CV-00529
Hillsborough Superior Court Northern District
7/8/2025 3:23 PM

**Case Number:** _____

**APPEARANCE/WITHDRAWAL**

---

*For non e-filed cases:*

I state that on this date I am ☐ mailing by U.S. mail, or ☐ Email (only when there is a prior agreement of the parties to use this method), or ☐ hand delivering a copy of this document to:

_____     _____
Other party                                   Other party's attorney

**OR**

*For e-filed cases:*

☐   I state that on this date I am sending a copy of this document as required by the rules of the court.  I am electronically sending this document through the court's electronic filing system to all attorneys and to all other parties who have entered electronic service contacts (email addresses) in this case.  I am mailing or hand-delivering copies to all other interested parties.

_____     _____
Name of Filer                                 Signature of Filer                    Date

_____     _____
Law Firm, if applicable        Bar ID # of attorney   Telephone

_____     _____
Address                                       E-mail

_____
City                      State        Zip code

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, ss.                                          SUPERIOR COURT
NORTHERN DISTRICT

Docket No. 216-2025-CV-00529

ANDRE BISASOR,

Plaintiff,

v.

CRAIG DONAIS, LAW OFFICES OF DONAIS, RUSSELL HILLIARD AND MARY
DONAIS,

Defendants.

## DEFENDANTS' NOTICE TO STATE COURT FOR REMOVAL OF ACTION

Defendants, Craig Donais, Law Offices of Donais, PLLC and Mary Donais, a corporation

authorized to do business in the State of New Hampshire, hereby files this Notice to State Court

of Removal of Action, stating as follows:

To:    **Clerk of the Hillsborough County Superior Court, Northern
District, State of New Hampshire:**

You are hereby notified that Defendants, Craig Donais, Law Offices
of Donais, PLLC (a corporation authorized to do business in the
State of New Hampshire) and Mary Donais, on July 2, 2025, filed
with the Clerk of the United States District Court for the District of
New Hampshire, its Notice of Removal of the above-captioned
action from this State Court to the Federal Court. A copy of the
Notice of Removal is attached as "Exhibit A." By filing this Notice,
Defendants Craig Donais, Law Offices of Donais, PLLC and Mary
Donais have effected a removal of this action to the United States
District Court for the District of New Hampshire.

Pursuant to 28 U.S.C. § 1446(d), this Court is prohibited from
proceeding further in the above-captioned action unless and until the
action is remanded.

True Copy Attest

*W. Michael Scanlon*

W. Michael Scanlon

Clerk of Court

July 8, 2025

104390169.v1

Respectfully submitted,

Craig Donais, Law Offices of Donais, Mary Donais

Dated: July 2, 2025                    MORRISON MAHONEY LLP

                                    */s/ Linda M. Smith*

By:_____

                    Linda M. Smith, #265038
                    lsmith@morrisonmahoney.com
                    Edwin F. Landers, Jr., #17297
                    elanders@morrisonmahoney.com
                    Center of New Hampshire Office Tower
                    650 Elm Street, Suite 201
                    Manchester, NH 03101
                    Phone:    603-622-3400
                    Fax:        603-622-3466

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day forwarded to all counsel via the Court's ECF system.

                    */s/ Linda M. Smith*
                    Linda M. Smith

2

104390169.v1