UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 | ANDRE BISASOR v. CRAIG DONAIS, et. al

Andre Bisasor,
Natalie Anderson,
Plaintiffs
v.
Craig S. Donais,
Mary K. Donais,
Donais Law Offices, PLLC,
Russell F. Hilliard,
Upton Hatfield,
Amy Messer,
Defendants.

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.  The plaintiffs in this case (hereinafter "plaintiff"), in the above captioned case, hereby submit this complaint against the above-named defendants Craig S. Donais (hereinafter "Mr. Donais" or "Donais"), Donais Law Offices PLLC (hereinafter "Donais PLLC"), and Mary K. Donais (hereinafter "Mary Donais" or "Ms. Donais" or "Donais' wife" or "Craig Donais' wife"), (hereinafter together referred to as the "Donais defendants"), and against Russell F. Hilliard (hereinafter "Mr. Hilliard" or "Hilliard") and Upton & Hatfield LLP (hereinafter "Upton & Hatfield"), (hereinafter together referred to as the "Hilliard defendants"), and Amy Messer ("Messer" or "Ms. Messer"), (hereinafter together collectively referred to as "the new defendant" or "state defendant"), and which hereinafter together fully and altogether collectively are referred to as "the Defendants", for defamation, breach of fiduciary duty, breach of contract (implied), breach of the covenant of good faith and fair dealing, racial discrimination and retaliation under NH state law of discrimination, tortious interference with contractual relations and advantageous relations, violations of NH consumer protection statute, abuse of process, civil conspiracy, intentional infliction of emotional distress, violation of the NH constitution, etc. The plaintiffs demands a jury trial.

2.  NB: The term "plaintiff" will generally refer to Bisasor in particular with respect to assertions of facts, but in most cases, will also by implication apply to Anderson in terms of factual assertions, who is added as a second plaintiff. However, only claims that do not need the NH savings statute to be applied to make it timely will apply to both Bisasor and Anderson. In all other claims where the NH savings statute is applied, then those claims only apply to Bisasor.

---

## SECTION 1: INTRODUCTION, OVERVIEW AND PRELIMINARY ISSUES

---

## I. INTRODUCTION
### A. Overview

3.  This action arises from Defendants' deliberate and malicious campaign to defame, harass, and economically harm Plaintiff Andre Bisasor, an African American business consultant and community advocate. Defendants, attorneys Craig Donais and Russell Hilliard, Donais' law firm, and his spouse Mary Donais, exploited their professional positions and connections to retaliate against Plaintiff after he sought legal counsel from Donais in 2017. The Complaint asserts actionable claims under New Hampshire common law and statutory frameworks, including defamation, racial discrimination, abuse of process, breach of fiduciary duty, and intentional infliction of emotional distress. The claims are timely under New Hampshire's savings statute (RSA 508:10) and are supported by relevant factual allegations spanning 2019 to 2023, which are not time-barred.

4.  This complaint arises from a pattern of egregious misconduct by the defendants, which includes the systematic breach of fiduciary duties, defamation, racial discrimination, consumer protection violations, abuse of judicial process, interference with contractual and advantageous relations, and intentional infliction of emotional distress.

5. The conduct of the defendants, particularly the actions taken in 2019 through 2023, demonstrate a deliberate and malicious effort to retaliate against the plaintiff, damage his reputation, and interfere with his lawful rights and interests.

6. This complaint is timely filed under the New Hampshire savings statute, RSA 508:10, which preserves the rights of a plaintiff who voluntarily dismisses a federal action and refiles within one year.

7. The claims herein are based on events occurring from June 2019 through 2023, which are well within the statutory period, and are designed to ensure that justice is served by holding the defendants accountable for their misconduct, regardless of the prior federal proceedings.

8. The claims include breach of fiduciary duty, breach of implied contract, breach of the covenant of good faith and fair dealing, defamation, racial discrimination under state law, NH consumer protection violations, abuse of process, interference with contractual and advantageous relations, and intentional infliction of emotional distress.

9. The defendants' conduct, as detailed below, satisfies all elements of each claim under New Hampshire law.

## B. Preliminary Statement

10. This action seeks to hold attorneys accountable for the misconduct pleaded herein. The allegations reveal a legal profession in crisis: a troubling proliferation of lawyers who have abandoned the integrity and honor once synonymous with their calling. It used to be that lawyers were symbols of justice, good nature, and integrity and that carried a high calling to ensure the good of society and the peaceful administration of all that is right, true, fair and just. It used to be that a lawyer was a gentleman/gentlewoman scholar of the community who conducted himself/herself with honor in their interactions with others and that would serve as a role model of such virtue to be emulated by others so much so that many parents would be proud to see their child grow up to be a lawyer. Today, this is fast no longer remaining true especially due to the conduct and actions of lawyers whose conduct bring disrepute onto the legal profession. Thus, where the profession formerly embodied justice, virtue, and a solemn duty to promote what is right, true, fair, and just, it is now tarnished by practitioners, including those identified in this complaint, whose bad-faith, dishonest, or deceptive acts have brought the bar into disrepute. Plaintiffs therefore commenced this suit to obtain the relief and remedies detailed below.

11. The challenge in holding accountable well-established/influential/connected lawyers like the defendants in this case is that it is formidable for the plaintiff to do so, as he is like a David going up against Goliath. However, the plaintiff has the truth on his side. The plaintiff would not dare go up against these formidable and powerful lawyers, if he was not telling the truth. The plaintiff is a regular citizen with relatively little or no power or privilege compared to Hilliard and Donais. The one thing that the plaintiff has is the truth. The plaintiff is hopeful that the truth will be enough. And it will be clear in this lawsuit as it unfolds that the truth is on the plaintiff's side as both Hilliard and Donais will run away from, dodge and deflect from being forthright and from answering straightforward questions about whether they told the truth or knew that what they said was not true, and they will deploy every underhanded dirty tactic in the book to deflect and try to turn things around on the plaintiff. But there are several stories throughout history where the wealthy, powerful, connected thought they were untouchable, but it took one person who had the courage to take a stand, resulting in truth, justice and the exposure of wrongful conduct that otherwise would not be discovered.

12. The plaintiff in this case sees it as his duty to do what is right, to stand up for what is right and to be courageous and willing to advance truth and justice even in the face of overwhelming odds against him, not only for himself but for those who are to come after him, for those similarly situated, and for those who find themselves harmed by the likes of men like Donais and Hilliard.

13. This case is about holding lawyers accountable for defamation, breach of duty, and about sophisticated race discrimination by exploiting racism against two African Americans, among other wrongs.

14. The plaintiff is prepared to prove his allegations in this matter. He only asks for a fair chance to do so and an open mind when such proofs are presented.

## C. Note on The Length of The Amended Complaint

15. This is not a typical simple lawsuit with one defendant and one plaintiff.

16. This is a complex lawsuit with multiple defendants. There are multiple parties, and time and space is needed to lay out the claims against these multiple parties. Also, there are multiple claims alleged and some are alternate theories of claims.

17. Courts have favored resolution of all disputes between the parties in a single litigation.  This is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Carteret, supra, at 38, citing Southern Construction Co. v. Pickard, 371 U.S. 57, 60, 83 S.Ct. 108, 110,9 L.Ed.2d 31 (1962).

18. The principles of judicial economy/efficiency embodied in the Rules of Procedure (whether state or federal), also support resolution of all issues in one proceeding rather than via multiple, protracted litigation.

19. This case involves multiple parties and multiple claims with many issues having been consolidated into one complaint. Plaintiffs could have done separate complaints for the defendants. However, one amended complaint will allow for a consolidated and more streamlined complaint, and a more efficient process for resolving the issues articulated herein. Also, Plaintiffs have incorporated exhibits into the complaint which has added to the length.  Further, the amended complaint is sufficiently organized and clear so as to give the defendants adequate notice of the claims against them.

20. It should also be noted that the page length of this amended complaint has actually been reduced down from the page length of the complaint filed in state court on June 3, 2025 prior to removal.

21. This statement is provided to ward off any unwarranted superficial knee-jerk attacks on the length of the complaint. Moreover, as pro se complaints are afforded more leniency and flexibility than those drafted by lawyers under US Supreme Court Precedent and First Circuit precedent.

### D. Note on Amendment Under Rule 15 of the Federal Rules of Civil Procedure

22. The Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend their complaint once as a matter of right within 21 days after filing of a motion to dismiss. See Fed.R.Civ.P. 15(a).

23. An amended complaint supersedes the original complaint and renders it of no legal effect or further force and effect. It effectively moots any pending motion to dismiss. Because the amended complaint replaces the original complaint, the original complaint is treated as if it were withdrawn. Consequently, any motions or actions directed at the original complaint (e.g., a motion to dismiss specifically addressing a defect in the original complaint) generally become moot once the amended complaint is filed.

24. The prior original complaint is thus a nullity for purposes of a motion to dismiss or at the motion to dismiss stage. See also comparable federal rules (L.R. 15.1) which states: "*Effect of an Amended Complaint. When a plaintiff files an amended complaint as of right or with leave of court after the filing of a motion to dismiss for failure to state a claim, the motion to dismiss shall be automatically denied without prejudice and the defendant(s) shall respond to the amended complaint as may be appropriate under Fed. R. Civ. P. 12, within the time allowed under Fed. R. Civ. P. 15(a).*"  See also Negron v. Turco, 253 F. Supp. 3d 361, 364 (D. Mass. 2017) ("In light of the Court's allowance…of the motions to amend and supplement the complaint, the motion to dismiss is denied as moot.").

## II. JURISDICTION

25. Plaintiffs reaver, reallege and incorporate by reference the allegations contained in the above paragraphs as if each had been separately set forth herein.

26. This case was filed in NH Superior Court Hillsborough North on June 3, 2025.

27. The defendants removed the case to this federal court on July 2, 2025 under federal claim grounds.

28. The defendants removed the case to this federal court before being served process in state court and before the state court deadline for service of process expired.

29. The sole federal claim in the case was Section 1981 race discrimination federal claim.

30. This amended complaint is filed within 21 days of the 7-8-25 filing of a motion to dismiss by the Donais defendants, after removal from state court.

31. This amended complaint is the first amended complaint filed in this case, including NH Superior Court or this NH federal court.

32. This amended complaint is filed as a matter of right without permission of the court or assent by the defendants, which the plaintiff is allowed to do under Federal Court Rule 15.

33. This amended complaint has removed/eliminated the sole federal claim in this case, upon which the defendants grounded their removal. Therefore, this federal court does not have jurisdiction over this case. This federal court has lost subject matter jurisdiction over this case.

34. There are no grounds for this court to have jurisdiction over this case including under diversity of citizenship because the case was filed in the defendants' forum state of New Hampshire and all of the defendants in this case are citizens of New Hampshire.

35. Therefore, this case must be remanded to the NH Superior Court under the precedent set by the US Supreme Court under the Royal Cahn case, earlier this year.

36. Jurisdiction is proper in the NH Superior Court as the defendants are all citizens of New Hampshire and the defendants waived any personal jurisdiction challenge in New Hampshire when they requested and received a transfer of the case from Massachusetts federal court to New Hampshire, in the previous iteration of this case (i.e. before it was voluntarily dismissed NH Federal Court on June 3, 2024, and timely re-filed in NH Superior Court on June 3, 2025, under the NH savings statute).

## III. PARTIES
### A. Plaintiff

37. **Plaintiff Andre Bisasor** ("Bisasor" or "plaintiff Bisasor" or simply "plaintiff" where that word appears by itself as he is the original and primary plaintiff in this case) is an individual located in and a resident of the state of Massachusetts. He is an African American male. He is a Massachusetts citizen and has a Massachusetts domicile. Bisasor is a business consultant in negotiation, conflict resolution, leadership and strategy and organizational development. He is also a trainer, professional speaker, and a conference organizer and convening authority, in the field of negotiation theory and practice. He has organized training and events, in negotiation, conflict resolution, leadership and entrepreneurship, for under-privileged youth in the local community and has served as a youth mentor and youth business plan competition judge in the city of Boston. He also has consulted with, coached, and advised minorities in negotiation and conflict resolution matters, including resolving employment disputes, school disputes, as well as including resolving race-related conflicts. He has also served as a local leader for the NAACP and has worked with police in event planning pertaining to police-community dialogue and mediation in order to improve relationships between law enforcement and communities of color. He is also a Christian minister of the gospel and has spoken/taught at local churches, and has spoken at Christian-related events in other parts of the country. He has multiple advanced/graduate degrees and credentials in the field of business/management and a degree in theology with expertise in hermeneutics. His reputation and livelihood have been severely harmed by the defendants' misconduct. As an African American professional specializing in negotiation, conflict resolution, and organizational development, and civil rights advocacy, his work includes mentoring underserved communities and fostering police-community relations. He is a recognized community leader, consultant, and advocate for racial equity and social justice.

38. Bisasor seeks recovery for claims only going back to 2019 (standing on the statute of limitations tolling provided under the NH savings statute). He also seeks recovery for claims going back to 2022 (where he is able to stand on the statute of limitations of those claims without the aid of the NH savings statute.

39. **Plaintiff Natalie Anderson** ("Anderson" or "plaintiff Anderson") is an individual located in the state of Massachusetts. She is an African American female. She is a Massachusetts citizen and has a Massachusetts domicile. She is being added as a second plaintiff in this case via amendment of the complaint. She seeks recovery for claims only going back to 2022 (standing on the statute of limitations of those claims) and not further back beyond that under the NH savings statute, as is the case with Bisasor.

40. NB: At all times relevant, Bisasor and Anderson were spouses of each other.

### B. Defendant Craig S. Donais

41. **Craig S. Donais**, an attorney licensed in New Hampshire and Massachusetts. He is a white male and resides in NH. On information and belief, he is of age 53. He is also a republican and ran for local political office as a republican candidate in New Hampshire in or around 2014. He is heavily involved in the republican party and republican party politics in NH.

42. Craig Donais is an attorney who engaged in a prospective attorney-client relationship with the plaintiff in early 2017 but then subsequently represented the opposing party, after he engaged in an attorney-client relationship with plaintiff for legal consultation on the same matter.

43. At all times relevant to this case, the acts and statements by Craig Donais for which recovery is sought, occurred or continued into the years 2019, 2020, 2021, 2022 and 2023. Therefore, all claims are timely either through the NH savings statute or by their own statute of limitations, as will further delineated herein.

44. After plaintiff began seeking to hold Craig Donais accountable for his misconduct and dishonesty, Craig Donais' tried to wrongly turn the table around on plaintiff, to disparage and discredit the plaintiff so as to try to make it difficult for anyone to believe the plaintiff's meritorious claims and allegations against him. [Note: These are known tactics of predators and abusers (as well as of bullies and sociopaths) who believe they can take advantage of minorities, with impunity, and who ruthlessly exploit a human bias that is prevalent in our society that tends to believe minorities less than they do white males.].

45. Craig Donais thereafter, including through his law practice and in coordination and with assistance from his wife and mentor Hilliard, engaged in conduct that violated fiduciary duties, engaged in defamation, and weaponized confidential disclosures to fabricate defamatory narratives and retaliate against Plaintiff.

### C. Defendant Mary K. Donais

46. **Mary K. Donais**, the spouse of Craig Donais. She is a white female and resides in NH. See sections below.

### D. Defendant Russell Hilliard

47. **Russell F. Hilliard** is an attorney who conspired with Donais to suppress evidence, misrepresent facts, and perpetuate defamatory narratives and false accusations.

48. Defendant Russell Hilliard is an attorney who works with or represents Craig Donais. On information and belief, Hilliard is also a mentor as well as a personal and professional connection who helps Donais in a variety of personal and professional ways. Hilliard is a white male. On information and belief, he was born in 1951 and is of current age 74.

### E. Defendant Donais Law Offices PLLC

49. **Donais Law Offices PLLC** ("Donais PLLC") is a law firm that is owned and managed by Donais.

50. Donais is the sole member and manager of this corporate entity as well as the registered agent for this corporate entity. Donais is employed by his law office. Donais PLLC is the corporate "alter ego" of Donais.

51. Donais PLLC has its location at 95 Market Street, Manchester NH, 03104, and which had another location that was the only address for this law office for many years, at 441 Willow Street, Manchester NH, 03103, which is a property that Craig Donais owns via a single member LLC.

52. Donais PLLC is responsible for the conduct of its attorney Craig Donais.

53. Donais operates through and using his law office. The acts perpetrated by Donais occur through the operation of his law office. Donais and his law office are, for all intents and purposes, the same.

54. Donais PLLC is vicariously liable for the acts of Craig Donais under a theory of respondeat superior where an employer will be responsible for the actions of its employee taken within the scope of employment.

55. NB: The Massachusetts Bar has Donais listed as carrying malpractice insurance that covers him for his practice of law in Massachusetts but cites a Manchester NH location. See screenshot below.



56. For insurance purposes, it is not clear if Defendant Donais and Defendant Donais Law Offices are covered by the same malpractice insurance coverage or other insurance coverage. Only discovery will address this point. It is not clear if Donais is a personal guaranty for the debts of his law office business, or vice versa.

57. Therefore, in light of all of the above, the plaintiff believes it is prudent that both Defendant Donais and Defendant Donais Law Offices are named as defendants in this lawsuit.

58. Donais PLLC, is the law firm through which Donais operated, and it is vicariously liable for his misconduct. It is the legal entity through which Donais committed ethical breaches and other wrongful acts.

59. All private defendants acted in concert when required to achieve their unlawful objectives.

### F. Defendant Upton & Hatfield

60. **Upton & Hatfield** ("Upton Hatfied") is a law firm that Russell Hilliard works for and is the law firm that Hilliard notes as the law firm that ultimately represents Craig Donais in the activities outlined in this complaint. This law firm has several offices including 159 Middle St, Portsmouth, NH, 03801, which is the location that Russell Hilliard primarily works at/from.

61. Upton & Hatfield, including using its lawyers like Russell Hilliard, represents clients in New Hampshire.

62. Upton & Hatfield is responsible for the conduct of its attorney Russell Hilliard.

63. Upton & Hatfield oversees and supervises the work of its attorney Russell Hilliard.

64. Upton & Hatfield is vicariously liable for the acts of Russell Hilliard under a theory of respondeat superior where an employer will be responsible for the actions of its employee taken within the scope of employment.

### G. Defendant Amy Messer

65. **Amy Messer** is a Justice of the NH Superior Court and, at all relevant times, worked in Manchester NH. She is a white female. She is a NH citizen who resides in NH.

## III. NEW HAMPSHIRE SAVINGS STATUTE (RSA 508:10) AND TIMELINESS OF THE FILING OF THIS ACTION

### A. Relevant Procedural History

66. The plaintiff filed a case in Massachusetts superior court (Bristol County) on June 18, 2022, in order to preserve statute of limitations for the acts of Defendants, among other things.

67. The case was served and the defendants removed the case to Massachusetts Federal Court. The defendants then sought to dismiss the case, but the esteemed Judge William Young, after reading the papers and after hearing, decided that he would not dismiss the case but that he would transfer the case to the NH federal court, so as to eliminate any issue of personal jurisdiction (which he did not decide that issue). Judge Young stated that the claims should be heard on the merits and that was why he transferred the case rather than allowing technicalities to get in the way of the merits. The defendants had also requested in the alternative to transfer the case if Judge Young did not dismiss on other grounds.

68. Once transferred to NH federal court, the defendants again moved to dismiss but the NH federal court did not dismiss the case. The plaintiff had timely filed a motion to amend the complaint before the defendants filed their motion to dismiss. The NH federal court denied the initial motion to amend the complaint without prejudice, and allowed the plaintiff time to file an amended complaint pursuant to the motion to amend the complaint and ordered that when the motion to amend the complaint re-filed, the proposed amended complaint must be attached. The NH federal court then entered a stay on the motion to dismiss including the filing of response by the plaintiff to the motion to dismiss, while the matter of the motion to amend complaint, with attached amended complaint was adjudicated.

69. While the amended complaint was being reviewed by the NH federal court, and while there was still a stay on the motion to dismiss including the filing of any response thereto, the plaintiff voluntarily dismissed the case in NH federal court. There was no danger of immediate dismissal because the stay on the motion to dismiss had not been lifted prior to resolution of the motion to amend.

70. It should also be noted that while the amended complaint was being reviewed by the NH federal court, the NH Supreme Court sent the first filed NH state court case back to the NH state court and that NH state court case then resumed in May 2024. Because of that, there now would be two cases on similar or related facts and claims that would be adjudicated in both NH state court and NH federal court at the same time.

71. Plaintiff filed for voluntarily dismissal on several grounds, including that there were now two pending parallel cases in NH federal court and NH state court, and that the NH state court case was further ahead of the NH

federal court case, because the NH state court had already decided/denied a motion to dismiss and was poised to enter the Answer stage, and thus so that the NH federal court claims can be consolidated with this prior first filed NH state court case, and so that all the related claims could be heard in one court. (The plaintiff has the right to re-file the NH state court case, within one year from dismissal of the prior removed NH federal court action, under the NH savings statute, as long as the dismissal was without prejudice and not based on adjudication of the merits).

72. This prior related federal case (Bisasor v. Donais (1:23-cv-00374) (D.N.H.)) was voluntarily dismissed by plaintiff Bisasor to refile it in NH state court. Thus, this prior federal case, that was previously removed to federal court was voluntarily dismissed because the NH state court resumed proceedings after a 2 year hiatus in the NH Supreme Court, and thus plaintiff sought to have the state court resolve all claims pending in the first filed NH state court case, which was first filed in NH state court in Jan. 2020, and where the NH federal court action began after the stay was placed on the NH state court case due to Defendants' appeal. See screenshot below of notice of voluntary dismissal on 6-3-24.

UNITED STATES DISTRICT COURT - DISTRICT OF NEW HAMPSHIRE
ANDRE BISASOR, Plaintiff,
v.
CRAIG S. DONAIS; RUSSELL F. HILLIARD; DONAIS LAW OFFICES, PLLC;
UPTON & HATHFIELD, LLP, and MARY K. DONAIS, Defendants.
Case No.1:23-cv-00374-JL

**ADDENDUM/STATEMENT OF CLARIFICATION REGARDING NOTICE OF VOLUNTARY**
**DISMISSAL WITHOUT PREJUDICE PURSUANT TO F.R.C.P. 41(a)(1)(A)(i)**

1. Although not required under the rules, I would like to make the following additional statement about the notice of voluntary dismissal which is being concurrently filed with this statement, as follows.

2. In filing this notice of voluntary dismissal without prejudice, the plaintiff preserves all rights afforded by law including but not limited to pursuing first-filed cases in state courts (that were previously filed before this case was filed and removed the federal court) and which, especially the NH state court case, is at a further stage than this case but which largely have been obstructed and delayed by the bad faith maneuvers of the defendants in state court. Rather than pursue a stay of this case in this court in favor of first filed parallel state court litigation, which motion is still pending, it simply makes better sense to voluntarily dismiss this case, at this point in time.

3. Moreover, the ruling of this court on my pending motion to stay, may be appealed by either party, since a motion for stay of this nature would be treated as an injunction under Section 1291 pertaining to the federal appellate process, and would be immediately appealable both ways on an interlocutory basis whether granted or denied. This will likely spawn further satellite litigation that will tie up resources and this case. This would create hardship for me in having to expend time and resources on an appeal on this matter even if I win. Hence, it simply makes better sense to voluntarily dismiss this case, at this point in time.

4. Given that the state court proceedings have resumed and are underway, and further ahead of this case, and given the hardships of having two or more cases with the same or similar claims proceed at the same time, imposed on me as a pro se plaintiff, with ADA issues and limited resources, it simply makes better sense to voluntarily dismiss this case, at this point in time.

5. Also, instead of pursuing a motion to remand to state court via reconsideration or appeal, which motion is still pending, it simply makes better sense to voluntarily dismiss this case, at this point in time.

73. Thus, the voluntary dismissal in NH federal court was intended to allow for refiling in state court (under NH savings statute that allows for refiling of a case not dismissed on the merits or not dismissed with prejudice) and/or for consolidation with the claims in the other first filed state court action, under N.H. Super. Ct. R. 113 to avoid duplicative litigation, address overlapping claims, and streamline discovery.

74. NB: It should be noted that the defendants in their pleadings have falsely stated that plaintiff gave no reason for the voluntary dismissal, which is a bald false statement, as evidenced by the above screenshot.

## B. NH Savings Statute

75. The primary New Hampshire statute commonly referred to as the "savings statute" is RSA 508:10. This statute allows a plaintiff whose action was dismissed for reasons other than a decision on the merits (such as a nonsuit or dismissal for procedural reasons) to refile the action within one year, even if the original statute of limitations has expired, provided the original action was filed within the limitations period.

76. The text and interpretation of RSA 508:10, as summarized by the District of New Hampshire, is:

> "The saving statute is 'designed to insure a diligent suitor the right to a hearing in court until he reaches a judgment on the merits.' … The New Hampshire Supreme Court interprets the savings statute with reference to '[i]ts broad and liberal purpose,' … which 'is not to be frittered away by any narrow construction.'"

77. Statutory Citation: RSA 508:10. New Action After Failure of Former.

> If judgment is rendered for the plaintiff and such judgment is arrested, reversed on a writ of error or on appeal, or if the plaintiff becomes nonsuit or the action is otherwise abated or dismissed without a judgment on the merits, the plaintiff may commence a new action for the same cause within one year after the abatement or other determination of the original action, and not afterward, provided the original action was commenced within the time limited by law.

78. The original complaint was filed on June 18, 2022 in Massachusetts Superior Court, within the applicable statutes of limitations for the claims asserted (in particular for events occurring in 2019, 2020 or after). Thus, Plaintiff's original action was timely filed on June 18, 2022, well within the statute of limitations for all claims. The plaintiff voluntarily dismissed that case without prejudice on June 3, 2024. Therefore, the voluntary dismissal on June 3, 2024, and refiling on June 3, 2025, complied with RSA 508:10, which permits a one-year window to reinitiate proceedings after non-merits dismissal.

79. Under RSA 508:10, the plaintiff is entitled to refile this action within one year of dismissal, which he has done, making this complaint timely. Claims arising from events occurring in June 2019 and throughout 2020, are not barred by the statute of limitations because they are part of the same transaction, series of acts, or continuing course of conduct that began before the prior removed NH federal court case was voluntarily dismissed.

80. The New Hampshire Supreme Court has consistently upheld RSA 508:10's purpose: to preserve claims where initial filings are dismissed on non-merits basis including on procedural grounds and including for voluntary non-suit. See Bel Air Assocs. v. N.H. Dep't of Health & Human Servs., 154 N.H. 674 (2006).

81. Furthermore, the doctrine of continuing torts and the tolling provisions of RSA 508:10 support the plaintiff's right to seek redress for harm inflicted during this period.

82. Key tolling periods for 3 year statute of limitations of claims include Defamation, Consumer Protection (RSA 358-A) and other such claims with a 3-year limit in NH, which are tolled from June 2022.

83. Any efforts by defendants to characterize these claims as time-barred will be unfounded / contrary to law.

## C. Other Considerations Pertaining To Statute of limitations

84. This case was originally filed on Saturday, June 18, 2022 in the Bristol Superior Court of Massachusetts.

85. For events occurring on June 18, 2019 as well as subsequent events in 2020, in 2021, in the first half of 2022, there are no statute of limitations issues for such claims in this complaint since, at a minimum, there were less than 3 years that elapsed between these events and the filing of the complaint on June 18, 2022. Once the NH savings statute is applied, those events and related claims are on time.

86. It should be noted that although the case was filed on Saturday, June 18, 2022, the actual 3 year deadline for claims carrying a 3 year statute of limitations (which most civil claims in NH have) would have been Monday, June 20, 2022 given that June 18, 2022 fell on a Saturday and thus according to the rules, the deadline would bump to the next business day of Monday, June 20, 2022, which is when plaintiff e-filed complaint was docketed by the court which it was first filed, after plaintiff had e-filed it on Saturday, June 18, 2022 and of which there is proof of it being electronically filed on June 18, 2022. See screenshot below of the e-filing receipt. This shows the actual submission filing date was Saturday, June 18, 2022 at 11.58pm.



87. Also, at the time of the original filing, the plaintiff contacted the Bristol superior clerk to address this question. See screenshot of email below.



88. The Bristol superior clerk confirmed that Saturday filings are docketed as filed on the next business day (which in this case was Monday June 20, 2022). See screenshot of email below.



89. Therefore, the 3 year deadline actually landed on Monday June 20, 2022. So, any pedantic quibbling over June 18, 2022 versus June 20, 2022 is moot and irrelevant in light of the above.

90. Since the core events for which the plaintiff seeks recovery in this case, are alleged to have started on or about June 18, 2019, or otherwise in or around June 2019, then either way the plaintiff is covered regarding any statute of limitations issue for this complaint for claims that carry a 3-year statute of limitations.  Also, for any

events that took place in 2020 or after, there are no statute of limitations issues for any such claims based on those events in this complaint.

91. Similarly, COVID Tolling further applies when the case was originally filed in June 2019 in Massachusetts, as NH savings statute applies Massachusetts rules for determining timeliness of the first-filed action (not the re-filed action). The Supreme Judicial Court issued an order tolling all civil statutes of limitations for 106 days, due to the COVID-19 pandemic. This tolling applies to all civil cases, not just those where the statute of limitations would have expired during the tolling period. Thus, the actual statute of limitations deadline for the first-filed action in Massachusetts, is automatically tolled for additional 106 days based on this tolling created by the SJC in 2020. See Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338 (2021) (holding that its 2020 COVID-19 statute of limitations tolling order tolled the statute of limitations for all civil actions).

92. But there is even a more important point here. **All acts and statements of Craig Donais or the other defendants that occurred in 2019, were hidden from the plaintiff, and was not discovered by the plaintiff until around July 21, 2020, when Craig Donais and Russell Hilliard were forced to disclose certain information as part of an ADO investigation, and further until November 2020, via right-to-know requests later submitted by the plaintiff.** Plaintiff could not have known of the acts, statements and events complained of in this complaint that occurred in 2019 at the time they occurred in 2019. Thus, the discovery rule tolls all statute of limitations for events in 2019 until discovery of these events, by the plaintiff in 2020. [NB: The defendants cannot challenge this fact because it is undeniably true.]. Therefore, all events alleged in this complaint that occurred in 2019, and beyond, are timely when the original complaint was filed on June 18, 2022, and saved thereafter for this re-filed complaint, in accordance with the NH savings statute[1].

93. See screenshot of email from Russell Hilliard to the plaintiff that contained the first such disclosure to the plaintiff in the ADO investigation process of Craig Donais on 7-21-20.



94. It should be noted that this complaint allege events that took place after June 2022 and in 2023. Those events obviously are timely on their own, without the aid of the NH savings statute, as these all occurred less than 3 years of the date that this complaint was filed in NH superior court on June 3, 2025.

95. For the state court defendant, the alleged events occurred in 2024 and 2025, making claims based on such events self-evidently timely.

96. In sum, all of the events that began in 2019 and 2020, and continued into 2021, have no statute of limitations issue under the NH savings statute. All newer events in 2022 and 2023 by the original defendants have no statute of limitations issue on their own, without aid of the NH savings statute. All newer events in 2024 and 2024 by the amended defendants have no statute of limitations issue on their own, without aid of the NH

---

[1] The defendants appear inclined to make frivolous and misleading assertions regarding the NH savings statute when they know that the NH savings statute clearly is applicable in this case. Such frivolous and misleading assertions, if continued, are grounds for sanctions and/or attorney discipline for lack of candor with the court.

savings statute. Claims made by the new plaintiff Anderson for events in 2022 and 2023 have no statute of limitations issue on their own, without aid of the NH savings statute.

97. Note: The plaintiffs do not here invoke or rely on the Massachusetts savings statute in this amended complaint, but instead relies on the NH savings statute only.

---

## SECTION 2: CLAIMS PERTAINING TO DEFAMATION BY CRAIG DONAIS MADE TO PRIVATE PARTIES

---

## I. FACTS PERTAINING TO DEFAMATION BY CRAIG DONAIS MADE TO PRIVATE PARTIES

### A. Craig Donais' False Statements About Plaintiffs To The Manchester Crime-Line Board/Non-Profit Organization in June 2019

98. Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

99. Manchester CrimeLine is a 501(c)(3) that pays cash rewards for anonymous tips leading to arrests. The 17-member private civilian board meets monthly to review solved cases and approve reward (note: it does not conduct investigations or help to solve crimes). The organization serves as a vital community resource that facilitates crime prevention Manchester CrimeLine is a private, volunteer-run 501(c)(3) nonprofit corporation, not a state agency or municipal department. Consequently, it does not enjoy sovereign immunities or statutory privileges that attach to governmental entities. No enabling statute or city ordinance designates Manchester CrimeLine as a governmental unit; its directors are private volunteers. Directors are not sworn officers, hold no arrest powers, do not draw municipal salaries, and are not included in city budgets. Police typically assign one liaison officer who sits ex-officio on the board, but that officer acts only as a nonprofit advisor when attending board meetings.

100. Craig Donais has been extensively involved in Manchester, New Hampshire crime-line nonprofit organization for many years. Public nonprofit filings and board rosters show he has served as Principal Officer and long-time Director of Manchester CrimeLine, Inc. He has been its Principal Officer with signing authority on annual returns; and has guided its reward and fundraising programs. In every available filing, Craig Donais is the only officer listed by name, reflecting his role as statutory signatory for the small volunteer nonprofit. He has also been a director and board member for many years, including in 2019 through 2023.

101. Under New Hampshire defamation law, absolute privilege shields statements made to law-enforcement officers and prosecutors about suspected crimes, but it has not been extended to statements made to a private CrimeLine board.

102. In or around the third week of June 2019, Craig Donais made false statements about the plaintiff to members of the crime-line board/a non-profit organization.

103. Craig Donais told members of this non-profit organization the following:
   a. Craig Donais falsely stated that plaintiff is a criminal.
   b. Craig Donais falsely stated that plaintiff is mentally crazy/has a mental disease-sickness.
   c. Craig Donais falsely stated that plaintiff burglarized and bugged his office phone and office thus committing a felony crime.
   d. Craig Donais falsely stated that plaintiff fabricated a recording to put Donais' voice on it to make Donais say things Donais did not say.
   e. Craig Donais falsely stated that plaintiff falsely and frivolously accused him of racism for declining to represent plaintiff in a 7 minute prospective attorney-client phone call.

104. It should also be noted that Plaintiff obtained copies of email communications, via a right to know request, that revealed these false statements made by Craig Donais, about the plaintiff, and were directed to/received/heard by members of this crime-line board. [NB: Discovery will further reveal the extent of the defamation and how widespread it is.].

105. These statements are capable of a defamatory meaning. It is for the trier of fact to determine this and to look to the entire context and circumstances of these statements and the motive behind them to conclude whether there was defamation or defamatory intent.

106.    Craig Donais made these statements with ulterior motives, to deflect from his misconduct and to intimidate, harass and retaliate against the plaintiff.

107.    This defamation framed the plaintiff as a mentally unstable criminal.

108.    Craig Donais published false statements, falsely accusing plaintiff of criminal conduct. Craig Donais falsely accused plaintiff of criminal conduct, and suggested that Plaintiff was dangerous and mentally ill. Absolute privilege does not apply, as the accusations were extraneous to any legitimate legal purpose and stated/repeated outside of any court contexts.

109.    These statements were made to third parties. These statements were not made in court or in any judicial context but were disseminated to board members of a community non-profit. Under NH law, defamation requires that the defendant made a false statement of fact to at least one third party that harmed the plaintiff's reputation.

110.    These statements were made without care as to whether they were false and would cause injure/harm the plaintiffs. These statements were made with reckless disregard for the truth.

111.    Craig Donais failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, where no valid privilege applied to the communication.

112.    These defamatory statements by Craig Donais were directed at private persons.

113.    Further, Craig Donais's statements were made with actual malice, evidenced by his reckless disregard for the truth, as he knew that the accusations were false.

114.    The plaintiff suffered harm as a direct result of Craig Donais' false, defamatory statements, which caused injury to plaintiff's reputation, honor, and dignity.

115.    The plaintiff has suffered professional harm as a direct result of Craig Donais' defamatory statements.

116.    Craig Donais has injured the reputation upon which the plaintiff base his profession and business.

117.    Craig Donais made his false statements with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effects on plaintiff and his rights.

118.    These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.

119.    These defamatory statement(s) requires no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Donais falsely accused the Plaintiff of committing serious violation of moral conduct and because Donais injured Plaintiff in his or her profession and/or occupation.

120.    These statements were false and defamatory and intended to injure the reputation of the plaintiff.

121.    Plaintiff has been harmed by Craig Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

122.    Craig Donais' false and defamatory statements caused the plaintiff to suffer reputational, emotional, and professional harm.

123.    The statements caused Plaintiff reputational harm, emotional distress, and economic damages, satisfying all elements of defamation.

### B. Craig Donais' False Statements About Plaintiffs To Family Members in 2019 and 2020

124.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

125.    In 2020, Craig Donais made false statements to his family members indicating that the plaintiffs were seeking to come to their house and physically harm his wife and their sons, that the plaintiffs were physically dangerous and were criminal people who were bent on hurting his wife and sons, and that both his wife and sons were afraid of the plaintiff for those reasons. Craig Donais perpetuated these false statements to friends, and to other members of his family, including his sons. In August 2020, Craig Donais told his wife and his sons Garrett Donais and Aiden Donais of these false statements about the plaintiff, intending to induce fear and hysteria concerning the plaintiff. This is inferred from communications obtained via a right to know request that revealed the involvement of Craig Donais' children.

126.    Craig Donais made false statements that his wife and children were in fear of their lives because the plaintiff was a criminal who was mentally unstable and bent on physically harming his wife and sons. Craig Donais told

others that his wife was afraid to be at home during the day when he was at work because of what the crazy criminal dangerous plaintiff was bent on doing.

127.    Each of these statements are false. Plaintiff has never threatened Craig Donais, his wife or his sons, and plaintiff has no history of violence, and has never been involved in any criminal conduct. Plaintiff only spoke orally to Craig Donais once on the phone in January 2017 and has never orally spoken to him again since then. Further, Plaintiff has never had any direct communication with Mary Donais. Craig Donais made these statements without conducting any independent verification of their truthfulness and without any reasonable basis for believing them to be true.

128.    Craig Donais' statements were used by Craig Donais in August 2020, to support a defamatory scheme concocted by Craig Donais, which plaintiff later became aware of later in the fall of 2020 via right to know requests by the plaintiff. Craig Donais and Mary Donais manufactured and perpetuated this false and unfounded fear and hysteria pertaining to the plaintiffs. In order to perpetuate the lie that plaintiffs were seeking to physically harm them, Craig Donais and Mary Donais concocted the lie that Mary Donais and her sons, Garret and Aiden Donais, were afraid for their lives because of the plaintiff and because the plaintiff was mentally unstable, was criminal, dangerous and who was planning/bent on criminally harming them. Craig and Mary Donais specifically told these false defamatory statements to their sons, Garrett and Aiden, in order to enlist them as purveyors of the false unfounded fear and hysteria pertaining to the plaintiff.

129.    That suggestion by Craig Donais and Mary Donais that plaintiffs were dangerous and posed a violent criminal threat to them and her sons, accords with a racially stigmatizing stereotype of black people as inherently dangerous and violently criminal. Those damaging and stigmatizing communications stem from an improper motive on the part of Craig and Mary Donais. Craig and Mary Donais had no rational or reasonable basis to issue those statements about plaintiffs. Craig and Mary Donais evidently was motivated by personal and racial animus towards plaintiff as evidenced by the racial stereotype/dog whistle employed by Craig and Mary Donais.

130.    Craig Donais thus perpetuated these false statements and added to the fear and hysteria pertaining to the false defamatory statements about the plaintiffs. Craig Donais conspired with Mary Donais to defame and injure the plaintiff and to enlist their sons in this defamatory scheme, as evidenced by communications obtained via right to know requests, and the coordinated actions between them to present the defamatory statements to others and to cause the widespread broadcasting of this defamation in August 2020, (as evidenced by information obtained via right to know requests in October 2020, where the coordination of Craig Donais and Mary Donais, as well as the involvement of their sons, were revealed via email communications in August 2020).

131.    Craig Donais is the one who first involved his family in this dishonest scheme to injure the plaintiffs. Craig Donais was the one who brought his wife and sons into this scheme, referencing the involvement of his wife and sons. Craig Donais should not have involved his wife and sons in his defamatory scheme.

132.    Note: This is the conduct of a sociopath. To disrupt the sanctity of his home with creating false, unfounded fear of harm of his wife and children by the plaintiffs, is the conduct of a sociopath.

133.    This defamation campaign was intended to ostracize plaintiffs from Manchester NH community (where the plaintiff had ties to the local NAACP, which Craig and Mary Donais knew about from scouring the internet, searching[2] for information on the plaintiffs and which information was located on plaintiffs' linked-in), and ultimately to drum up sympathy and support for causing this lie and false hysteria to be publicly broadcasted and disseminated widely, which broad public dissemination was eventually fully effectuated by August 2020. This dissemination by Craig Donais, framed the plaintiffs as crazy dangerous criminal black people bent on physically coming to their house when his wife was alone with their children, to physically harm her and perpetuate criminal acts upon her and her children. This included a call for a watch-out in their neighborhood to look out for the plaintiff in the Manchester NH area as the plaintiff was criminally dangerous and bent on harming his wife and her children. The plaintiffs could not feel safe to return to the Manchester NH area

---

[2] Craig Donais and Mary Donais were and have been obsessed with the plaintiffs. They sought to dig into every aspect of plaintiffs' lives, even seeking to track the plaintiffs, and seeking to identify and follow up on every place plaintiffs lived to try to discover their location, and have essentially engaged in conduct bordering on stalking the plaintiffs, with Craig Donais even going as far as to enlist his friends/contacts to try to track down plaintiff's address and to call plaintiff's phone to find out their location.

because of this widespread defamation broadcasted across the community. The plaintiffs ability to work on Manchester NH, including with the NAACP in Manchester NH, or engage in any social or community relations in Manchester NH, was significantly damaged. Plaintiffs suffered tremendous harm as a result of the defamation campaign of Craig Donais and Mary Donias.

134.    Craig Donais made statements attributing to his wife the allegation that the plaintiff was going to physically harm her. Why did she think that? How would she have come into knowledge about certain alleged facts about the plaintiff that would lead her to conclude that the plaintiff was going to harm her?

135.    It is self-evident that Craig Donais told his wife lies about the plaintiff that made her think that the plaintiff was going to physically harm her and her children.

136.    The plaintiff had never said anything about Mary Donais to Craig Donais or to anyone. The plaintiff did not know Mary Donais or know about Mary Donais or know anything about Mary Donais until he first heard of her when Craig Donais himself first brought her up in emails discovered via a request to know request submitted in October 2020.

137.    It can be inferred that the only way that Mary Donais could think that the plaintiff was going to physically harm her is for Craig Donais to have told her defamatory things about the plaintiff that were not true, things that led her to think that the plaintiff was dangerous, violent, and criminal and that the plaintiff was going to physically harm her and her children.

138.    Publishing a statement to only one third party is enough to establish defamation. This includes false defamatory statements to family members including wife and sons, etc.

139.    A false statement by a husband to his wife is still defamation just as how a false statement by a son to his father or a daughter to her mother is still defamation. Family members do not have unfettered right to make false statements about other people to their family members. See Johnson v. Queenan, 12 Mass. L. Rptr. 461 (2000)(court holding that statements by daughter to her mother about her rape were only conditionally privileged and therefore subject to being overcome by proof of malice, recklessness, excessive publication, etc.).

140.    Without the false defamatory statements made to her by husband Craig, Mary Donais would likely not have had any reason to think that the plaintiff was dangerous, violent and criminal, and/or that the plaintiff was going to physically harm her and her children. This suggests that Craig Donais lied to his wife and stirred up his wife to act against the plaintiff, as they fed off each other, building on these lies and false allegations and where they encouraged each other to spread these lies to others. Thereafter, Mary Donais joined her husband in spreading and disseminating these lies about the plaintiff.

141.    Craig Donais, by falsely fabricating that plaintiff posed a criminal threat to his family, was laying the groundwork to inflict violence or to have violence inflicted upon plaintiff and his wife, and to justify in advance, the basis for such violence against the plaintiff and his wife. Craig Donais sought to stir up hysteria in the Manchester NH community, about the criminal threat of harm by the plaintiffs, by disseminating this to the Manchester Crime-Line board, by enlisting the help of neighbors to be on the watch for the plaintiffs, by telling family and friends, in order to create justification for violence on the plaintiffs, who were frequently in the Manchester NH area, at the NAACP location, which was within a few miles of Craig Donais' home (and Craig Donais knew of the plaintiff's affiliation with the NAACP). By creating this atmosphere of false accusation concerning the plaintiffs and danger for the plaintiffs, when the plaintiffs discovered this, the plaintiffs could not continue to work with the NAACP in Manchester NH. This was extreme and outrageous conduct by Craig Donais.

142.    NB: In the dark history of this country, defamatory lies have been told countless times to stir up crowds to lynch black men by riling them up with falsehoods about how they intended to hurt or harm the wives of white men. This should not be countenanced in any way, shape or form in the 21st century America. Plaintiff believes a jury would find this abhorrent disgusting lie to be wholly unacceptable, wholly damaging and punishable to the fullest extent of the law.

143.    Craig Donais published these statements to third parties in the Manchester community where plaintiff was active with the NAACP and maintained professional relationships.

144.    Craig Donais disclosed these false statements and accusations to the following persons:

    a.    Mary Donais (his wife)

    b.    Garrett Donais (his son)

c. Aiden Donais (his son)

d. Craig Donais' other family members

e. Craig Donais' friends

145. It should be noted that Garrett Donais is 24 years old and is trained as an "order of the arrow" section chief and an Eagle Scout, with survival skills. He would have been about 19 years old in 2020, which is an adult age. Also, Aiden Donais is around 18 years old, and would have been 13 or 14 years old in 2020. This is noteworthy because Craig Donais tried to further elicit sympathy for him and wife concerning the fear of harm for their sons, by trying to infantilize them as "young children", which was misleading at best. Craig Donais intentionally infantilized his sons, calling them "young child" or "young children", in order to amp up the level of criminal threat posed to his wife and "young children". The plaintiff and his wife did not know Craig Donais had children. But even if the plaintiff knew of his children, why would the plaintiff (and his wife) want to harm or hurt Craig Donais' children, much less his so-called "young children"? Where did this fear or belief come from? It is simply irrational to have this fear based on nothing. The rational explanation of where this so-called fear came grom is that it came from Craig Donais' concoction and fabrication of this fear based on lies about the plaintiffs. By painting the picture that plaintiff wanted to harm his young children, Craig Donais tried to falsely defame plaintiff as being the kind of people who would hurt young kids. This is a disgusting despicable lie told on the plaintiffs. The plaintiffs have dedicated much of their lives to helping children, in particular from under-served backgrounds, and plaintiff started a non-profit to improving the lives of the youth through education and training in negotiation, conflict resolution and leadership. Further, the plaintiffs has worked with the well-known youth non-profit in Boston, called BUILD inc., as a youth mentor and business plan competition judge. Also, Bisasor has prior experience as an educator in the public school system in lower-income communities. Bisasor has a life of service to empowering and helping the youth. To defame the plaintiff as someone who was planning to hurt young children, or even capable of doing such harm, is particularly hurtful and damaging. Moreover, as a Christian minister, this is further hurtful and damaging to the plaintiff.

146. Thus, in publishing these statements, Craig Donais published defamatory statements to a wide range of persons and severely damaged the reputations of the plaintiffs. This primarily occurred in August 2020.

147. Note: NH law on defamation only requires false defamatory statements to be published to at least one other person to sustain an action for defamation.

## C. Further Facts Regarding Craig Donais' False Statement of [Absurd/Frivolous] Racism Accusation

148. Craig Donais published false statements, that plaintiff falsely accused Craig Donais of racial discrimination.

149. Craig Donais made false statements about plaintiff that are defamatory and damaging to the plaintiff's reputation, and injurious to the plaintiff's legal rights. The very purpose of him making these statements was to damage the plaintiff and harm the plaintiff's reputation and credibility.

150. For example, Craig Donais made written statements to others saying that the plaintiff accused him of race discrimination because he (Craig Donais) declined to represent the plaintiff, in a case against a defendant hotel, that the plaintiff became upset and angry because he (Craig Donais) declined representation and thus accused him (Craig Donais) with no reason or basis of being a racist.

151. This was based on nothing and no actual facts that occurred, but it was manufactured by Craig Donais to attack the plaintiff with an inflammatory accusation that could stick because the plaintiff is black. This is dog whistle racism intended to hurt and harm the plaintiff's reputation.

152. These statements by Craig Donais were made with malicious intent and reckless disregard of the truth.

153. In making these statements, Craig Donais was motivated by racial animus and intended to exploit the plaintiff's race as a black man and to use it against him.

154. These false accusations (by Craig Donais) of race discrimination accusation by the plaintiff is tantamount to him playing the "race card in reverse".

155. The statements by Craig Donais were false, disparaging, and negative statements about the plaintiff. It is analogous to a man saying that a woman falsely and frivolously accused him of rape, based on no reason or facts that occurred. If the woman made no such accusation, then the statement is defamatory and harmful to her reputation and intended to create despise and contempt of her in the community, much less if presented to a court or to law enforcement or others. It would be intended to paint the woman as a crazy irrational woman seeking to falsely accuse a man of rape. The same is true in this case where Craig Donais falsely stated

that the plaintiff frivolously accused him of race discrimination as such a statement is likewise defamatory and harmful to the plaintiff's reputation and intended to create despise and contempt of the plaintiff in the community and the public.

156.    Craig Donais' false and defamatory statements were gratuitously and maliciously made in order to harm, annoy, embarrass, humiliate, and burden and oppress the plaintiff. It had no other purpose.

157.    Craig Donais completely fabricated a lie to publicly malign the plaintiff. The plaintiff felt utterly violated and harmed that someone--an attorney nonetheless--would exploit the issue of racism, which is something so painful for so many people in this country.

158.    Craig Donais fabricated and utilized his lie about racism to willfully intimidate plaintiff and to interfere with and injure the plaintiff because of the plaintiff's race, and it was done and perpetuated to others in order to exact revenge on the plaintiff and/or to intimidate, harass, burden and retaliate against the plaintiff.

159.    Craig Donais' acts were motivated by racial animus, and it was done to exploit the plaintiff's race to bring harm to him. He targeted the plaintiff exploiting the fact that the plaintiff is black and thus use race as a weapon against the plaintiff. Blacks are generally vulnerable to these kinds of attacks and stirred up sensibilities in light of today's racial polarization. He wanted to make a caricature of the plaintiff as despicable, untrustworthy, irrational person. It is a form of racialized character-assassination and a racialized attack against the plaintiff.

160.    Craig Donais only brought up, falsely, that the plaintiff accused him of racism because the plaintiff is Black. It was thus racially motivated. If the plaintiff were White, such a fabricated lie would not stick.

161.    Moreover, Craig Donais had ulterior motives in that he wanted to intimidate the plaintiff and to shut the plaintiff up and to silence the plaintiff (and his wife).

162.    Craig Donais thus accused the plaintiff essentially of ridiculously, baselessly, and frivolously calling Craig Donais a racist. Craig Donais thus used what is known or referred to as "the race card" (which is a pejorative reference to the illegitimate and groundless insertion of racism accusations into a situation), when in actuality Craig Donais himself was the one trying to illegitimately and groundlessly exploit the sensitive issues related to race by using it as a preemptory strike with his bald lie against the plaintiff. Craig Donais thus tried to manipulatively (or perhaps masterfully) "play the race card" on the plaintiff. Aside from this being outrageous behavior, it was truly troubling that a licensed attorney would go that far to try to damage and disparage someone through such blatant and scurrilous lies. This was particularly despicable because it is evident that Craig Donais was relying on racial bias to achieve his ends--he was hoping that those who heard his false statements would immediately take a hostile disposition towards the plaintiff. Yet Craig Donais completely fabricated this story. The plaintiff felt utterly violated in that someone—an attorney nonetheless--would so exploit racism, which is something so painful for so many people in this country.

163.    Contrary to Craig Donais' ridiculously false assertion, at no time did the plaintiff claim that Craig Donais was discriminating against the plaintiff because Craig Donais did not take the case. This is a nonsensical allegation. It just does not make sense in the context of such a discussion for the plaintiff to assume and allege that Craig Donais was discriminating against the plaintiff. Moreover, what would the plaintiff hope to gain? To force him to represent the plaintiff? What kind of representation would that be? It is just not credible. Moreover, this is an unadulterated lie. This is for a jury to determine who is more credible and who is telling the truth.

164.    Craig Donais blatantly made up out of "whole cloth" the idea that the plaintiff accused him of discrimination. This is not a matter of interpretation of words. The plaintiff did not utter any such words that could even be misinterpreted. No such words left the plaintiff's mouth. In fact, to the contrary, the conversation between the plaintiff and Craig Donais ended amicably and on good terms. There was no abrupt ending. Craig Donais has blatantly and unscrupulously lied about the plaintiff accusing him of discrimination which is a blatant and dangerous lie. This demonstrates that Craig Donais is the kind of person who would bear false witness against others and is capable of lying to put someone in jail/prison by false testimony. As such he is a disgrace to and a blithe on the legal profession. It is even worse that Craig Donais has chosen to tell such a despicable lie on an African American man. If Craig Donais has lied about the plaintiff making this statement (which Craig Donais did), then this issue, though it began as a conflict of interest issue, it is about Craig Donais falsely accusing the plaintiff of accusing him of discrimination, which becomes evidence of an attempt to use the plaintiff's race against the plaintiff (i.e. the "race card" in reverse).

165.  Craig Donais was trying to use the plaintiff's race against the plaintiff, by accusing a black man of making ridiculous false accusations of discrimination with the intent to imply that because he is a black man, it should be believed that he made such ridiculous false accusations.

166.  Craig Donais fabricated and utilized his lie about racism to willfully intimidate plaintiff and to interfere with and injure the plaintiff because of his race.

167.  Craig Donais has falsely styled himself as a victim of a false accusation of being called a racist by the plaintiff.

168.  This despicable lie by this white attorney of law perpetrated on the plaintiff was intended to target the plaintiff because of his race. It was intentional and it was motivated by racial animus/racial bias.

169.  Nothing angers people more than a person who falsely accuses a white person of racism. This is a major sore point in today's culture.

170.  Craig Donais was trying to exploit racial tensions in our society to harm and discredit the plaintiff. He wanted to really damage the plaintiff. Craig Donais was inciting fragile racial sensibilities and attitudes, and intended to exploit a culture of hostility towards those black people who are presumed to "cry wolf" about racism. Craig Donais was seeking to fan the flames of racial tensions and used it as a form of a weapon against the plaintiff. Craig Donais weaponized the race card issue and deployed it against the plaintiff.

171.  It is a form of racialized character-assassination and a racialized attack against the plaintiff.

172.  Craig Donais only brought up that the plaintiff accused him of racism because the plaintiff is black. It was thus racially motivated. If the plaintiff were white, such a fabricated lie would not stick.

173.  Moreover, Craig Donais wanted to intimidate the plaintiff (and his wife) and to shut the plaintiff up and to silence the plaintiff.

174.  Craig Donais falsely implied and affirmatively intended to imply that the plaintiff had invented a racism accusation, essentially as a hoax, based on the groundless basis that he declined to represent the plaintiff. It was intended to make it seem that the plaintiff was irrational, crazy, in concocting a racism accusation based on nothing or based on a silly reason.

175.  Mr. Donais blatantly made up out of whole cloth the idea that the plaintiff accused him of discrimination. This is not a matter of interpretation of words. The plaintiff did not utter any such words. In fact, contrary to the assertions of Donais, the conversation between Mr. Bisasor and Mr. Donais ended amicably and on good terms. There was no abrupt ending. Mr. Donais has blatantly and unscrupulously lied about the plaintiff accusing him of discrimination and Mr. Donais should be disbarred because of this blatant and dangerous lie. This demonstrates that Mr. Donais is the kind of person who would bear false witness against others, and is capable of lying to put someone in jail by false testimony, As such he is not only a disgrace to and also a blithe on the legal profession, but also a very dangerous person to continue to practice law.

176.  Mr. Donais needs to be put under oath to be confronted/examined about his statements. If Mr. Donais has lied about the plaintiff making this statement, then this issue is not only about a conflict issue but it is about a falsely accusing the plaintiff of accusing him of discrimination, which becomes evidence of an attempt to use the plaintiff's race against him (i.e. the "race card" in reverse). The plaintiff had spoken to Attorney Elliott Berry about this and Attorney Berry was outraged by this. Mr. Berry has indicated that this would in fact be evidence of discrimination against the plaintiff, by trying use the plaintiff's race against him in such a manner i.e. accusing a black man of making ridiculous false accusations of discrimination with the intent to imply that because he is a black man, it should be believed that he made such ridiculous false accusations. It is also intended to undermine the legitimate experience of mistreatment that the plaintiff suffered.

177.  Mr. Donais has falsely styled himself as a victim of a false accusation of being called a racist by Plaintiff.

178.  This despicable lie by this white attorney of law perpetrated on the plaintiff was intended to target the plaintiff us because he is black. It was intentional and it was motivated by racial animus/racial bias.

179.  NB: What Mr. Donais has done is also similar to, or at least reminiscent of, a hoax like the one allegedly perpetrated by Jussie Smollet. Our society was outraged at the prospect that Mr. Smollet could have fabricated a lie that he was called the "N" word (a racial slur) and the "F" word (a gay slur). He was subjected to criminal prosecution for this alleged lie/hoax. He lost his job on the hit TV show "Empire" because of this lie/hoax. Mr. Donais' conduct is in a similar category of what Mr. Smollet was alleged to have done, which is to exploit racial tensions to make false accusations pertaining to racism.

180.  It is a form of racialized character-assassination and a racialized attack against plaintiff.

181.  Mr. Donais only brought up that the plaintiff accused him of racism because he is black. It was thus racially motivated. If the plaintiff were white, such a fabricated lie would not stick.

182.  Moreover, Mr. Donais wanted to intimidate the plaintiff and to shut the plaintiff up and to silence the plaintiff.

183.  The false statement was published with knowledge of its falsity and/or with reckless disregard for the truth.

184.  Craig Donais knew it was false to state that the plaintiff accused him of racism because he declined to represent the plaintiff.  Craig Donais knew that the plaintiff did not accuse him of racism at all.

185.  Craig Donais' defamatory claim that the plaintiff had accused him of racism for declining representation was false. Craig Donais knew he was lying when he said that the plaintiff had accused him of racism for silly reasons, that he himself had invented out of whole cloth.

186.  Donais knew the plaintiff was telling the truth when the plaintiff denied making the statement after the plaintiff found out about his statement but yet Donais persisted in saying to several third parties that he was telling the truth and that the plaintiff was not telling the truth.

187.  Because these statements tend to injure the plaintiff in his profession or trade, they constitute defamation per se. They tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information. Because the statement affected the plaintiff or may have affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute libel per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

188.  The plaintiff has suffered harm as a direct result of Craig Donais' false, defamatory statement, which caused injury to plaintiff's reputation, honor, and dignity.

189.  Plaintiff has suffered professional harm as a direct result of Craig Donais' defamatory statement.

190.  Craig Donais injured the reputation upon which the plaintiff based his business and livelihood as a consultant.

191.  Craig Donais made his false statement with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effects on the plaintiff and his rights.

192.  These statements are untrue and harmed the plaintiff.

193.  Subsequently and additionally, Craig Donais has repeated and republished his false defamatory statements about the plaintiff on more than one occasion and has continued to publish these defamatory statements with impunity and abandon.

194.  Craig Donais knew the statements made were false and deliberately inflammatory when he made them.

195.  Plaintiff's reputation has been damaged by Craig Donais' false allegations.

196.  Craig Donais' false and defamatory statement caused the plaintiff to suffer reputational, emotional, and professional harm.

197.  The false statement was published with knowledge of its falsity and/or with reckless disregard for the truth.

### D. Plaintiff Absolutely Denies Accusing Craig Donais of Racism Because Craig Donais Declined To Represent Plaintiff in a Court Case in a 7-Minute Prospective Client Call

198.  In order to set the record straight, the plaintiff absolutely and categorically denies accusing Craig Donais of racism because Craig Donais declined to represent Plaintiff in a court case in the context of a 7-minute first-time prospective client call that Craig Donais initiated with the Plaintiff a while ago, back in 2017.

199.  The plaintiff repudiates a series of statements subsequently made by Craig Donais, to several people, including to the crime-line board, that essentially, in sum, goes along the lines of the following: that plaintiff challenged Craig Donais' declination while on the prospective client call, and that Craig Donais told plaintiff that his practice does not include racial discrimination cases, and even if it did, Craig Donais would need perform a check for conflicts before undertaking representation. And that upon hearing that, plaintiff became upset, and that Craig Donais repeatedly told plaintiff that Craig Donais was not interested in the case, and that representation in discrimination cases was not within Craig Donais' practice. And then that plaintiff pointed out to Craig Donais that he did real estate law, and then plaintiff began questioning why Craig Donais was declining to represent plaintiff, and then plaintiff accused Craig Donais of discriminating against him whereupon Craig Donais immediately denied that he was discriminating against the plaintiff. And that Craig Donais abruptly ended the call thereafter.

200.    Plaintiff now sets the record straight for purposes of ensuring the record is clear as follows:

201.    Contrary to Craig Donais' assertion, the plaintiff did not "challenge" Craig Donais' declination of representation.

202.    Contrary to Craig Donais' assertion, Craig Donais did not tell plaintiff that he did not do race discrimination cases.

203.    Contrary to Craig Donais' assertion, the plaintiff did not mention the words "race", "racism", "race discrimination", "discrimination", "discriminating" or "discriminate" (or any variation of those words) in the plaintiff's conversation with Craig Donais. Neither did Craig Donais mention nor say any of those words on the call.

204.    Contrary to Craig Donais' assertion, Craig Donais did not tell the plaintiff that he would need to perform a check for conflicts before undertaking representation.

205.    Contrary to Craig Donais' assertion, the plaintiff was not upset and did not become upset at any point in time during the conversation with Craig Donais. The call ended amicably and in polite fashion with no hint of anger, or of a disagreement or argument whatsoever.

206.    Contrary to Craig Donais' assertion, Craig Donais did not repeatedly tell the plaintiff that he was not interested in the case and that representation in discrimination cases was not within his practice. Again, there was no mention whatsoever of the term "discrimination" or "race" by Craig Donais.

207.    Contrary to Craig Donais' assertion, the plaintiff did not "note" that Craig Donais did real estate work, and the plaintiff did not "question" why Craig Donais was declining to represent the plaintiff when there was a "real estate" element.

208.    Contrary to Craig Donais' assertion, the plaintiff did not become even more upset that Craig Donais was declining to represent him.

209.    Contrary to Craig Donais' assertion, the plaintiff did not accuse Craig Donais of discrimination and at no time did plaintiff intimate, suggest, or insinuate that Craig Donais was discriminating against the plaintiff.

210.    Contrary to Craig Donais' assertion, at no point in time did the plaintiff accuse Craig Donais of race discrimination.

211.    In fact, the plaintiff did not at any point utter or use the words "discrimination", "discriminating" or "discriminate" in any form or context, at all, whatsoever on the call with Craig Donais. Neither did the plaintiff utter or use the words "race" or "racism" or any version of the word "race", on the call with Craig Donais. Plaintiff only discussed landlord-tenant issues on the call with Craig Donais and did not raise any about discrimination on the call.

212.    Contrary to Craig Donais' assertion, Craig Donais did not immediately deny that he was discriminating against plaintiff, because in fact the plaintiff never made any such accusation if discrimination against Craig Donais. There was nothing for Craig Donais to deny. Craig Donais completely made up, fabricated and manufactured this lie out of thin air.

213.    Contrary to Craig Donais' assertion, Craig Donais did not end the telephone call. The call was mutually ended in a respectful, amicable, polite and friendly manner. There was no friction, or strife or animosity of any kind on the call whatsoever. In fact, Craig Donais said that he would have loved to help the plaintiff but he was too swamped over the timeline plaintiff needed assistance. And the end of the call, Craig Donais amicably wished the plaintiff good luck with his case.

214.    Further as a point of note, Craig Donais did provide the plaintiff with legal advice during the call and Craig Donais did receive private, confidential privileged communications from plaintiff on the call.

**E. Some Examples of Evidence/Documents That Show Craig Donais Lied About Race Discrimination Accusation**

215.    Plaintiff, repeats and reiterates each and every allegation of the complaint, in the above paragraphs with the same force and effect as if herein set forth at length.

216.    Below provides some examples of evidence that corroborates the fact that Donais lied about race discrimination accusation in 2019.

217.    Further evidence of false statements and defamation by Donais that will be produced in this case includes but is not limited to: audio recording and video recording (that shows/proves that Donais has made false statements about plaintiffs to others including outside of any court proceeding), certified statement by Attorney

Elliott Berry about Donais and his false statements, certified statement by Attorney Robert Obrien, certified statement by Attorney Bussiere about Donais' false statements as well as:

    a.  Statements by Donais to the members of Manchester NH Crime-Line Board.

    b.  Statements by Donais to Donais' wife and to his family members including his sons Garrett and Aiden Donais.

    c.  Statements by Donais to Donais' friends, colleagues, and associates.

    d.  Contemporaneous Written Notes By Attorney Elliott Berry

    e.  2020 Interview of Attorney Elliot Berry

    f.  2020 Interview of Attorney Karl Terrell

    g.  2020 Interview of Attorney Robert Obrien

    h.  2020 Interview of Attorney Bussiere

    i.  Nashua District Court hearing transcript and recording.

    j.  Transcript Excerpt of Attorney Karl Terrell Testimony in NH Superior Court South

    k.  Email chains with Donais, Dave Akridge & Attorney Karl Terrell.

    l.  Email from Mark Cornell (of the ADO office) confirming that Craig Donais did not tell his (at the time) co-counsel Karl Terrell about the false racial accusation by plaintiff, until Craig Donais filed an affidavit in Circuit Court in March 2017, around 3 months after the January 9, 2017 call, where the plaintiff purportedly accused Craig Donais of racism for declining to represent the plaintiff. If plaintiff had made such an accusation, why did not Craig Donais tell his co-counsel at the time for 3 months? This corroborates the fact that Bisasor made no such accusation against Craig Donais.



218.    It should be noted also that there are court transcripts of hearing in the Nashua circuit court and in the Hillsborough superior court South, proving breach of fiduciary duty and conflict of interest by Donais, includes but is not limited to email from Elliott Berry showing Donais breached fiduciary duty. Note: See also FIERRO v. GALLUCCI - United States District Court, E.D. New York. Dec 4, 2007, which case is on point for issues related to prospective clients.

### F. Additional Points About Craig Donais' False Accusation About Fabricated Recording

219.    In his campaign to discredit the plaintiff in the Manchester NH community, including with the crime-line board, and others, Craig Donais went further to add insult to injury by further ratcheting up his allegations by telling others that the plaintiff had fabricated or would fabricate a recording to put his voice on a recording and claim it is his voice on it. This relates back to his false accusation that plaintiff accused him of racism for declining to represent plaintiff in a 7 minute phone call between Craig Donais and plaintiff. Craig Donais knew that plaintiff had publicly stated that Craig Donais had lied about that.

220.    So, Craig Donais thus accused plaintiff of being the type of person who was so low in character that he would actually go to the trouble and lengths to fabricate a recording with Craig Donais' voice in order to prove that Craig Donais was dishonest, and thus that plaintiff had done, or was capable of doing, such treacherous criminality of fabricating a recording, which ostensibly would constitute a crime of falsifying evidence. Plaintiff

cannot emphasize enough here how much of a nasty serious allegation was being made by Craig Donais here. This was clearly intended to discredit plaintiff and destroy plaintiff's reputation.

221.    This was preemptive attempt to discredit plaintiff should, on the chance, plaintiff actually have a recording of Craig Donais, that showed that Craig Donais was lying about the racism accusation. Craig Donais was doing this preemptively to protect himself, and to save face, because he knew he had lied, and was so concerned about this that he felt it necessary to preemptively strike at the credibility, authenticity or veracity of any such recording if it existed. This is evidence of a guilty mind or guilty conscience. If Craig Donais was innocent and had not lied, then he would not have been so worried and he would not have needed to think ahead to discredit a purported recording that he did not even know if it existed, or what would be on it if it existed. An innocent person would welcome a recording of a disputed event because it would show he is innocent or telling the truth about the event. However, a guilty person who is guilty of lying would not welcome such a recording because he would know that he would be proved to be lying. The fact that Craig Donais was trying to preemptively and prematurely attack a possible recording, by preemptively assuming that if a recording of him existed, it would automatically show that he was lying, shows that Craig Donais, in his own mind, knew that he was lying. These circumstances show that Craig Donais entertained serious doubt about the truth of his statements.

222.    So, why would Craig Donais make such a statement? Why does he evidently seek to get out in front of this issue of a recording showing his dishonesty, by prematurely pointing to a recording that plaintiff would have fabricated, altered or doctored to show his dishonesty? The only reason to say such a thing is because he had a guilty conscience and was trying to preemptively provide an explanation if in case there was a recording showing that he was lying. This is a critical point. It shows that Craig Donais entertained serious doubts about the truth of his statements and that he knew that he lied about the accusations of racism, and that he was afraid that a recording would or could expose him to be a liar. So, he evidently was thinking ahead, in case a recording showed him to be lying, in that he would have already presented a cover story to cast doubt on the veracity of such a recording should such a recording be produced. But why anticipate at all that anyone could produce such a recording, showing that he was lying? Why even go there? Why even imagine that as a probable outcome? Because he knew that he was lying. This speaks to his state of mind at the time he made these statements to the crime-line board, and others. See St. Amant v. Thompson, 390 U.S. 727, 88 S. Ct. 1323 (1968 ("[R]ecklessness amounting to actual malice may be found where the defendant deliberately ignores evidence that calls into question [his] published statements"); St. Amant, 390 U.S. at 732 ("recklessness may be found where there are obvious reasons to doubt" the truth of the published statements). The US Supreme Court has established that a finding of "reckless disregard" requires evidence…that the author "in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 730-731 (1968). See also McAvoy v. Shufrin, 401 Mass. 593, 598-599 (1988). The above statements provide evidence that Craig Donais had obvious reasons to "doubt" the truth of his published statements and also that Craig Donais "in fact entertained serious doubts as to the truth of his publication."

### G. Additional Points About Craig Donais' False Statements About Plaintiffs

223.    These statements were made not in court proceedings and when there was no court proceeding that was ongoing. They are not and cannot be privileged.

224.    These statements are defamatory. These statements are lies. These statements are patently false. There is no truth to them whatsoever. When Donais made these statements, he knew these were false. He made up these statements out of whole cloth. He had perfect knowledge that the opposite of what he said was true. He thus maliciously and wantonly made these false defamatory statements. Donais made these statements with ulterior motives, to deflect from his misconduct and to intimidate, harass and retaliate against the plaintiff.

225.    Any reasonable person would reasonably want to vindicate their right to stop the reputational harm from such false and injurious statements. To state or imply that someone is or did any of the above is per se defamatory. By defaming plaintiffs, Donais sought to publicly humiliate plaintiffs and force plaintiffs to live with a continual question mark over plaintiffs.

226.    It should be noted that a Massachusetts Superior Court judge found that false accusations of racism by Donais, if proven, are valid grounds to seek a defamation claim. Thus, this Massachusetts precedent directly validates plaintiffs' defamation claims.

227.     Further, the New Hampshire Attorney Discipline Office ("ADO") opined in an ADO proceeding, in September 2020 that, if Donais did and said the things alleged by plaintiffs (concerning the false accusations of racism) and they are false, it would constitute defamation and should be brought in a lawsuit (as the ADO is not designed to resolve defamation claims that are better suited to be resolved in a court of law).

228.     The crux of the matter here is that Craig Donais is not going to stop if he is not held accountable. This suggests that Craig Donais is a sociopathic liar, whose lies could get someone falsely arrested, imprisoned, or killed.

229.     There is no basis for Craig Donais to claim that he/his family were in fear of safety from the plaintiff. It is unconscionable for Craig Donais to suggest or accuse the plaintiff of being dangerous or violent criminals, capable of harming his wife and children so much so that he and his wife were in fear for their safety and require a watch-out in their neighborhood to protect them from the plaintiff. This is not only classic dog-whistle racism, exploiting stereotypes of black people as dangerous and violent without any basis other than race, but it is malicious and dishonest defamation.

230.     Some people might not to be too concerned when white people tell lies on black people using race as a motivating factor. The plaintiff understands that it might be uncomfortable for some in our society today to hear and confront such matters or to put oneself in the shoes of a black person to understand what it is like to be subjected to such things. Yet, there is no room to look the other way with how certain white people exploit race and racism to hurt blacks like this. This country, under the current presidential administration, has been desensitized to much of the concerns about race and racism and have emboldened many to scoff at such concerns. People like Craig Donais have evidently been empowered to feel as though they can do these things with impunity and get away with it. Whenever a black person raises concerns about race, in many instances it is treated as though it is false or not valid. People like Russell Hilliard and Craig Donais then try to use it as evidence that a black person is not credible because if that person points out racism more than once, then such person has used up their one quota to call out racism. Yet, Julian Jefferson, a well-known black public defender attorney in NH, recently gave testimony before the governor outlining his experiences with or observations of everyday racism in New Hampshire and Massachusetts from multiple people. Is he not credible because of such experiences? If Craig Donais and Russell Hilliard were to have their way, they would no doubt attack Julian Jefferson for stating that he experienced or observed more than once experience of racism in NH and MA.

231.     The bottom line is that Craig Donais started out using race and racism against the plaintiff and plaintiff's wife in 2017. He continued to use race against plaintiffs in 2019 and again 2020. This has to stop, and he must be held accountable.

## II. COUNT 1 – DEFAMATION & DEFAMATION PER SE BY CRAIG DONAIS MADE TO PRIVATE PARTIES
### (as to Craig Donais)

232.     Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

233.     This count alleges that Craig Donais committed defamation and defamation per se against the plaintiff.

234.     Under NH law, defamation requires that the defendant made a false statement of fact to a third party that harmed the plaintiff's reputation. McGranahan v. Dahar, 119 NH 758, 763 (1979); Pickering v. Frink, 123 NH 326 (1983). It thus, simply, requires (1) a false statement, (2) publication to a third party, (3) fault (negligence or actual malice), and (4) damages.

235.     To establish defamation, the plaintiffs must show that the defendant "failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, unless a valid privilege applies to the communication." Hynes v. N.H. Democratic Party, 175 N.H. 781, 788 (2023). "If defamation is established and no privilege applies, the plaintiff may seek damages for harm to his or her representation." Thomas v. Tel. Publ'g Co., 155 N.H. 314, 321 (2007).

236.     Further, to constitute defamation per se, the alleged defamatory statement must fit within one of the four classes.

    a.     Statements constituting libel.

    b.     Statements charging the plaintiff with a crime.

    c.  Statements alleging that the plaintiff has certain diseases.

    d.  Statements prejudicing the plaintiff's business or profession.

## A. Summary of Allegations

237.    Here, the allegations involve false defamatory statements made by Craig Donais outside of the courtroom or any judicial proceedings. Again, these false statements are:

    a.  That plaintiff was a violent dangerous criminal.

    b.  That plaintiff posed a physical threat to Craig Donais and his family.

    c.  That plaintiff was mentally unstable and dangerous.

    d.  By implication, that plaintiff was bent on stalking the Donais family at their home.

238.    These statements constitute defamation per se under New Hampshire law because they:

    a.  Falsely accuse plaintiff of being a criminal or of criminal conduct.

    b.  Injure plaintiff in his profession by attacking his character.

    c.  Suggest plaintiff suffers from mental illness by characterizing him as mentally unstable.

239.    Craig Donais' actions fall within all four classes. Craig Donais' actions constitute defamation per se entitling Plaintiff to monetary damages in an amount to be determined at trial.

## B. Criminal Accusations

240.    Craig Donais accused the plaintiff of criminal conduct which included that plaintiff bugged his office and fabricating his voice in a recording. Craig Donais also accused the plaintiff of posing a dangerous criminal threat to him, his wife and young child. Criminal accusations are generally regarded as defamatory. See Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975).

241.    Craig Donais' published statements suggesting that the plaintiff was a criminal, or committed crimes or was a dangerous criminal threat to him, his wife and young child, are false and untrue and have defamed or was intended to defame the plaintiff

242.    These statements by Craig Donais were published in August 2020 to his wife, to his sons, to his family members and friends, and to members of the Manchester crime-line board.

243.    Craig Donais failed to exercise reasonable care before publishing these false statements, making no effort to verify their accuracy despite having no personal knowledge of any threatening conduct by plaintiff.

244.    Because these statements injure plaintiff in his profession or trade, they constitute defamation per se.

245.    These statements tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and these statements were defamatory on their face without reference to any extrinsic information. The statements affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute defamation per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

246.    This defamation framed the plaintiff as a mentally unstable criminal. The plaintiff could not feel safe to return to the Manchester NH area and his ability to work in Manchester NH, including with the NAACP in Manchester NH, or engage in any social or community relations in Manchester NH, was significantly damaged. Plaintiffs suffered tremendous harm as a result of this defamation by Craig Donais.

## C. Mental Disease Accusations

247.    Craig Donais published statements suggesting that the plaintiff had a mental disease and was mentally unstable, including that plaintiff is mentally ill/crazy. These statements were published in August 2020 to his wife, his sons, to his family members and friends, and to members of the Manchester crime-line board.

248.    Craig Donais thus published statements that are defamatory per se, intended to damage the plaintiff.

249.    Craig Donais made false accusations which would and did injure plaintiff in his trade and profession.

250.    Craig Donais failed to exercise reasonable care before publishing these false statements, making no effort to verify their accuracy despite having no personal knowledge of any threatening conduct by plaintiff.

251.    Because these statements injure plaintiff in his profession or trade, they constitute defamation per se.

252.    These statements tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and these statements were defamatory on their face without reference to any extrinsic information. The statements affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute defamation per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

## D. False Statement of [Absurd/Frivolous] Racism Accusation

253. Craig Donais published false statements, that plaintiff falsely accused Craig Donais of racial discrimination. This defamation was grounded in an attempt by Craig Donais to racial stigmatize the plaintiff. This defamatory accusation was made to the Manchester NH Crime-Line board in or around June 2019 and subsequently made again and repeated to several third parties including Craig Donais' family members and friends. Both the NH Attorney Discipline Office and a Massachusetts Superior Court judge have stated that if this allegation is true, then it constitutes actionable defamation.

## E. No Privilege

254. This count alleges that Craig Donais made false, malicious, and defamatory statements about Plaintiff to multiple third parties including to his family members including his wife, sons, and to other family members and friends, and to members of the Manchester crime-line board, outside the scope of any judicial proceeding.

255. Absolute privilege does not apply, as the accusations were made to private persons in private contexts and were extraneous to any legitimate legal purpose and were made/repeated outside of any court contexts. These statements were not made in court or in any judicial context but were disseminated to family, friends, and community members. No privilege applies to these statements as they were made in private conversations.

256. These statements were irrelevant to judicial proceedings, disseminated with malice, and caused reputational harm. Absolute privilege does not shield extrajudicial statements (McGranahan v. Dahar, 119 N.H. 758 (1979); Pickering v. Frink, 123 N.H. 326 (1983)).

257. Craig Donais' false, disparaging, defamatory, and materially misleading statements are not privileged.

258. It should be noted that any defense that assert privilege is belied by the fact that the statements at issue were made outside of judicial proceedings and are not protected by privilege, and especially given their false, malicious, and extrajudicial nature. See McGranahan, supra; Stone, supra; Davis v. Ross, 754 F.2d 80 (2d Cir. 1985).

## F. Communication to Third Parties

259. Craig Donais published these statements to third parties in the Manchester community where plaintiff was active with the NAACP and maintained professional relationships.

260. Craig Donais disclosed these false statements and accusations to the following persons:
   a. Mary Donais (his wife)
   b. Garrett Donais (his son)
   c. Aiden Donais (his son)
   d. Craig Donais' other family members
   e. Craig Donais' friends

261. Thus, in publishing these statements, Craig Donais published defamatory statements to a wide range of persons. This primarily occurred in August 2020.

262. Note: Defamation only requires false defamatory statements to be published to at least one other person to sustain an action for defamation. See Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996), citing Restatement (Second) of Torts §§558 and 568 (1977) ("The publication of a false and defamatory statement by spoken words of and concerning the plaintiff"…"In order to be actionable, the statements must have been published, i.e., communicated to at least a single individual other than the person defamed.").

263. Craig Donais engaged in defaming plaintiffs to his family members including to his wife and sons Garrett Donais and Aiden Donais, and to other family members and friends, and to members of the Manchester Crime-Line board.

264. It should also be noted that Plaintiff obtained copies of email communications, via a right to know request, that revealed that these false statements, made by Craig Donais, about the plaintiff, were directed to/received/heard by members of the Manchester Crime-Line board, and that his wife and children were involved in this defamation campaign.

265. Discovery will reveal the extent of the defamation and how widespread it is.

## G. Damages Per Se

266. That the statements are defamatory is clear. The statements can reasonably be read as discrediting the plaintiff in the minds of any considerable and respectable class of the community. Moreover, these words have

the effect of heaping disparagement upon plaintiff when viewed contextually, i.e. in the light of attendant circumstances.

267.    The statements are inherently defamatory per se because they impute criminality, mental illness, and dangerousness, categories recognized as defamatory per se in NH.

268.    These statements made by Craig Donais are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.

269.    These defamatory statement(s) require no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Craig Donais falsely accused the Plaintiff of committing crime(or) or violations of moral conduct and because Craig Donais injured Plaintiff in his profession and/or occupation.

270.    These statements contained numerous falsehoods about plaintiff whether on its face and/or by virtue of a clear implication affirmatively intended, and which were defamatory per se.

## H. Falsity

271.    These statements are untrue and have harmed the plaintiff. The plaintiffs are not criminals nor are they criminally dangerous or violent people. Plaintiffs are upstanding law-abiding African-American citizens who are educated thought leaders in their fields, and are civic statesmen and leaders in their communities.

## I. Malice

272.    Although not a necessary element to this cause of action, it is be noted nonetheless that Craig Donais's statements were malicious and showed intentional disregard for plaintiff's rights. Craig Donais has exhibited particularly egregious conduct and acted with malice or fraud as he maliciously and willfully calculated his actions to harm the Plaintiff.

273.    These statements are false, were made with malice, were not honestly held opinion, were not made accidentally or disseminated accidentally and were intended to be made public, and betray a malevolent intent and ill-will towards the Plaintiff, with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

274.    Craig Donais' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject the plaintiff to contempt and tended to diminish the esteem, respect, goodwill and/or confidence in which he is held.

275.    Further, Craig Donais's statements were made with actual malice, evidenced by his reckless disregard for the truth, as he knew or should have known that the accusations were false. These statements were made with reckless disregard for the truth and with malice, and they caused significant harm to the plaintiff's reputation.

276.    The allegations in the complaint are reasonably susceptible to a construction that permits the plaintiff's recovery.

## J. Conclusion

277.    By the above-described conduct, inter alia, Craig Donais has intentionally published or allowed to be published false, disparaging, defamatory, and materially misleading statements about the plaintiff, with the intent to damage his professional and personal reputation.

278.    As described above, inter alia, Craig Donais has negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about the plaintiff.

279.    These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.  These defamatory statement(s) requires no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Craig Donais falsely accused the Plaintiff of serious violation of moral conduct and because he injured Plaintiff in his profession/occupation.

280.    As a direct and foreseeable consequence of Craig Donais's defamation, the plaintiff suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to his reputation.

281.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress as well as harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering, insult, being placed in fear and anxiety, loss of enjoyment of life, lack of energy, mood swings, and sleep disturbances, in addition to impairment to the Plaintiff's reputation and standing in the community.

282.    As a direct result of Craig Donais's defamatory statements, plaintiff suffered:
   a.   Specific reputational harm in the Manchester community.
   b.   Loss of standing with NAACP colleagues.
   c.   Emotional distress.
   d.   Economic damages totaling several thousands of dollars in lost professional opportunities.

283.    These damages flow directly from Craig Donais's false statements and the resulting harm to plaintiff's reputation in the community.

284.    As a result of the malicious defamatory conduct on the part of Craig Donais, Plaintiff has suffered economic and consequential damages including general damages and special damages. The statements caused Plaintiff reputational harm, emotional distress, and economic damages, satisfying all elements of defamation.

285.    In sum, Craig Donais published false statements of criminality, mental disease, and violent intent. Such accusations are defamatory per se because they impute serious crime and professional unfitness. Craig Donais acted with actual malice, knowing the statements were false (St. Amant v. Thompson, 390 U.S. 727). Damages are presumed; Plaintiff further pleads special damages (including lost contracts, etc).

286.    As these events occurred, within 3 years of the original filing of this action in 2022, this claim is timely. This claim is pled under the NH savings statute.

287.    Note: Craig Donais separately republished and supplemented his defamatory statements, on several occasions between June 2019 and November 2023, each of which constitutes a new actionable wrong. Pierson v. Hubbard, 147 N.H. 760, 763-64 (2002). Also, as will be shown later, Mary Donais republished, supplemented and perpetuated these defamation statements in 2020, which gives rise to a separate cause of action for defamation against her.

---

## SECTION 3: CLAIMS PERTAINING TO DEFAMATION BY CRAIG DONAIS MADE IN A PUBLIC MEETING

---

## I. COUNT 2 – DEFAMATION BY CRAIG DONAIS MADE IN A PUBLIC MEETING
### (as to Craig Donais and Donais Law Offices PLLC)

288.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

289.    The New Hampshire Supreme Court in Supry v. Bolduc held that statements made during a public hearing were not absolutely privileged because the hearing did not have all the hallmarks of a judicial proceeding. This precedent directly applies to advisory committee hearings, which similarly lack judicial characteristics.

290.    On or about November 9, 2023, Craig Craig Donais made defamatory statements about Plaintiff at the New Hampshire Supreme Court Advisory Committee on Rules public hearing. This hearing was a public comment forum established to receive input from members of the public, bench, and bar regarding proposed court rule changes. Critically, this forum does not constitute a judicial or quasi-judicial proceeding that would afford absolute privilege protection under New Hampshire law. Under McGranahan v. Dahar, 119 N.H. 758 (1979), absolute privilege is reserved for "statements made in the course of judicial proceedings" that are "pertinent to the subject of the proceeding."

291.    The Advisory Committee hearing fails to meet the McGranahan standard because it:
   a.   <u>Lacks judicial characteristics:</u> No power to determine facts, make binding orders, or impose penalties.
   b.   <u>Absence of procedural safeguards</u>: No sworn testimony, cross-examination, or formal evidentiary procedures.
   c.   <u>Non-adjudicatory function</u>: Merely collects public input on proposed rules rather than resolving disputes.
   d.   <u>Public comment forum</u>: Functions as a venue for citizen input, not judicial determination

292.    Craig Donais made false factual statements about Plaintiff stating that the plaintiff wrongly accused him of misconduct and that plaintiff had engaged in specious untrue allegations with no merit against him, and that plaintiff was fueled by personal animus and personal destruction of him, and had deceptively weaponized and misused the attorney discipline process against him. Craig Donais basically publicly called plaintiff a liar. These

statements were factual assertions rather than protected opinion that were false and defamatory in nature as they exposed Plaintiff to public contempt, ridicule, and harm to reputation.

293. The statements were made at a public hearing attended by multiple members of the public. This constitutes clear publication to third parties without any privilege protection, as the Advisory Committee hearing provides no absolute immunity from defamation claims.

294. Craig Donais acted with at least negligence, and likely actual malice, by:
   a. Deliberately disclosing confidential attorney-client information from his representation of Plaintiff
   b. Acting for improper motives, specifically to prevent public records about attorney complaints against him from being released to Plaintiff.
   c. Knowing the statements would harm Plaintiff's reputation in the community.

295. Craig Donais's statements also violated NH Rule 1.6, which prohibits lawyers from revealing "information relating to the representation of a client" without consent.

296. This claim is timely filed within three years of the defamatory statements at the Advisory Committee hearing, are timely filed on its own without aid of the NH savings statute.

---

## SECTION 3: CLAIMS PERTAINING TO INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS RELATIONS BY CRAIG DONAIS

---

## I. FACTS PERTAINING TO INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS RELATIONS BY CRAIG DONAIS

297. Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

298. Plaintiff had an economic, advantageous and contract relationship with the Manchester NH police. Craig Donais knew of this relationship. Craig Donais intentionally and improperly interfered with this relationship. Plaintiff was damaged by such interference.

299. Although having advantageous relationships is not the same as having a contractual relationship, plaintiff hereby alleges that he had both.

### A. Contractual and Advantageous Relations

300. In 2019 and 2020, Plaintiff had a contractual relationship with the Manchester NH police/the Manchester NH police department including with the Manchester NH police chief.

301. Plaintiff was a professional conference planner and event organizer, particularly in the field of conflict resolution, negotiation and mediation.

302. Plaintiff had a contractual relationship and affiliation with the NAACP and was recruited to work on developing, planning and executing a large conference/event that centered on and facilitated dialogue and conflict resolution between the Manchester NH police and the local community, particularly communities of color, in order to improve relationships between local community leaders/members and law enforcement.

303. Plaintiff had a contractual agreement from the Manchester NH police to collaborate on a community event involving the Manchester NH police and the NAACP and was sponsored by other organizations such as the University of New Hampshire. This was a multi-stakeholder agreement with several parties, with the Manchester NH police being a critical party to the agreement. Thus, the Manchester NH police was a critical party with whom plaintiff had advantageous, economic, and contractual relations. Part of this contractual agreement was the recruitment of the Manchester NH police officers to attend the event. Without the attendance of Manchester NH police officers to participate in the community-police dialogue event, there would be no event.

304. To ratify the agreement, Plaintiff had in-person meetings, and further telephone and email conversations, with the chief of the Manchester NH police. In fact, Plaintiff had developed a good working relationship and reputation with the chief of the Manchester NH police who was enthusiastic about working with the plaintiff on this joint the Manchester NH police-community event. See screenshot of an email from then Manchester NH police chief to the plaintiff:

Subject: RE: Follow-up | NH Blue & You Event

Good Afternoon,

Great to hear from you, we are definitely interested in moving forward with this event. The only hesitation that I'm having is the ability to commit to the number of officers. If you recall from our conversations, I'm not in a position with our budget to be pay overtime to supply 20 bodies but I will put this out for a training opportunity, hopefully we can get several officers that are interested. Can you send me a flyer so I can post this as soon as possible to get some interest?

Once I get this out, I'll have a much better head count and I can supply you with the numbers.

We can certainly set up a call for next week, let me know what works for you.

Thanks again,

Carlo

**Carlo Capano**
**Chief of Police**
Manchester Police Department
405 Valley St. Manchester , NH 03103
Phone: (603) 792-5400
Fax: (603) 792-5787
ccapano@manchesternh.gov
*STATEMENT OF CONFIDENTIALITY*

305.   This was an important opportunity for the plaintiff to establish his professional accomplishments in NH, as the event was slated to draw attendance, not only from the public, but from local leaders and dignitaries in NH.

306.   Plaintiff thus had an economic, advantageous and contract relationship with the Manchester NH police.

307.   Plaintiff had anticipated further advantageous relations with Manchester NH police into the future.

308.   Craig Donais, knowing of this relationship, intentionally and improperly interfered with this relationship. Thus, the third party who interfered with such advantageous, economic, and contractual relations is Craig Donais.

309.   Craig Donais knew of the relationship because he scoured the internet and found plaintiff's Linked-in page which had that information about this since 2017. Since 2017, Craig Donais has been searching every publicly available document about plaintiff and has been investigating every document, every move, every step that plaintiff makes in his life, and he has been fastidiously tracking plaintiff's every move in order to try to use information against plaintiff since 2017. Dave Akridge in 2017 confirmed that Craig Donais was tracking and investigating everything about plaintiff. Craig Donais contacted certain defendants in another case in NH, and provided detailed information that he found about plaintiff and/or his wife including regarding their movements, and business information from online or other sources.

310.   Furthermore, in 2019, Craig Donais contacted the Manchester NH police to seek information on plaintiff's contractual relations with the Manchester NH police in 2019. He directly asked the Manchester NH police to confirm the information about plaintiff's relations with Manchester NH police. He further has written subsequently written emails to the Manchester NH police, specifically seeking to obtain information related to "the "Manchester Blue & You" program from 2017 to present", and that "he understands that this program was in conjunction with the NAACP", with respect to the plaintiff and his wife and their "interactions with the Manchester Police Department." [NB: Plaintiff discovered this via right to know requests.]. This shows that Craig Donais (which he found about plaintiff on Linked-in), was specifically asking for confirmation that plaintiff had contractual relations with them regarding the Manchester Blue & You event or events. What is further notable about this is that the event's proper name was "NH Blue & You", which the Manchester NH police corrected Craig Donais on.

311.   See below screenshot of marketing materials for the "NH Blue & You" project that occurs state-wide in NH in various cities of NH including in Manchester (which plaintiff was the project leader and event chair for in Manchester NH at the time):



312.    The name "Manchester Blue & You" only appears on plaintiff's Linked-in page. Craig Donais repeated this only version of the event name that was on plaintiff's Linked-in page (where plaintiff has coined his own short-hand version of the event name). See screenshot of an excerpt of plaintiff's Linked-in page referencing the short-hand version of the event name as "Manchester Blue & You".

> Project Leader for Manchester Blue & You · Jan 2017 - Present
>
> Project focused on creating and facilitating dialogue with police departments and local partners/citizens through fostering a two-way street opportunity to discuss shared values of fairness, safety, and respect and with a goal towards improving community police relationships and to help bring police and residents together to build trust and respect, develop better policies, and make changes for safer communities.

313.    This is damning proof that Craig Donais read plaintiffs' Linked-in page and had previously obtained the information about plaintiff's Manchester NH police relations[3] from the plaintiff's Linked-in page.

314.    Therefore, Craig Donais, knowing about the plaintiff's relations with the Manchester NH police, intentionally interfered with those relations upon knowing that plaintiff had such relations, which information he obtained from plaintiff's Linked-in page.

315.    Craig Donais also told his Manchester NH police contacts that plaintiff was mentally ill/crazy/had a tenuous grasp on reality, that plaintiff manufactured a recording and fabricated his voice on the recording or that plaintiff was capable of doing such a thing, and that plaintiff had bugged the telecommunications systems of Craig Donais. Furthermore, Craig Donais' falsely accused plaintiff of being a criminal. These false and harmful statements to the Manchester NH police, stereotyped/stigmatized and labeled the plaintiff a dangerous violent criminal/threat, was harmful and damaging to plaintiff's personal reputation, and was further harmful and damaging to plaintiff in his trade and professional reputation.

316.    Subsequent to these statements made by Craig Donais to the Manchester NH police, and on account of them, the plaintiff's relations with the Manchester NH police suffered harm and was damaged. Also, the planned community event with the Manchester NH police was canceled/never took place and subsequent further attempts to make the event happen went unanswered by the Manchester NH police. The plaintiff incurred not only damage to his reputation but also financial damages including loss of pay.

317.    Thus, those damaging and stigmatizing communications to the Manchester NH police by Craig Donais harmed the plaintiff and resulted in interference with the plaintiff's relations with the Manchester NH police and the Manchester NH police chief as well as interfered with/affected the plaintiff's the Manchester NH police-community event and the planning thereof. Following Craig's interference, the plaintiffs' contract with

---

[3] Craig Donais also has numerous personal connections in the Manchester NH police department and evidently also obtains information through those connections as well. Craig Donais has improperly used his police connections to do favors for him. He uses his position on the crime-line board of Manchester NH, to get information and to ask for favors, which is also evidence of cronyism with respect to the Manchester NH police.

the Manchester NH police was not fulfilled, the community event that plaintiff was contracted for, did not occur, and plaintiff did not receive the compensation that he was slated to receive for such contract. These are sufficient to show damages.

318.    As a result of Craig Donais' acts, the plaintiffs no longer had an advantageous relationship with the Manchester NH police. [Note: This is the same or similar type of pattern of conduct that Hilliard directed at the Primmer law firm, in September 2020, and with Attorney John Doe of a NH legal organization, as will later be further delineated, which confirms the intentional targeting of plaintiffs' advantageous relationships.]. Thus, Craig Donais sought to intentionally interfere with that relationship.

319.    Craig Donais's conduct was improper because it employed false statements, subterfuge, deception, outside of any legitimate legal process, violating NH Rules of Professional Conduct Rule 8.4(c) and the standards of good faith. Craig Donais's interference was improper because it employed conduct contravening Restatement (Second) of Torts § 767 factors (a) and (d) and N.H. Rule 8.4(c).

320.    Craig Donais's conduct was done with the purpose of diminishing the esteem with which plaintiff had with the Manchester NH police, and to induce the Manchester NH police to break its relationship with the plaintiffs.

321.    Craig Donais contacted the Manchester NH police to get them to not associate with plaintiff professionally. He wanted them to stop associating with plaintiff professionally and instead to categorically label plaintiff as a criminal. Craig Donais was interested in lowering the credibility of the plaintiff so that he could convince others that the plaintiff's complaints about Craig Donais were not credible.

322.    Craig Donais contacted the Manchester NH police, to tell them these defamatory statements about the plaintiff, not as a formal complaint but on a personal basis as a personal favor. No police complaint was filed. No police report was generated. He did it to damage the reputation of the plaintiff in the Manchester NH community.

323.    Craig Donais did not contact the Manchester NH police to report a crime nor to file a police report.. He contacted the police to smear the plaintiff and to call him a criminal. His smear served no legitimate purpose, other than to smear the plaintiff and to cause the Manchester NH police to lower their esteem of the plaintiff.

324.    Craig Donais did this in order to harm the plaintiffs and to gain advantage over the plaintiffs in NH.

325.    Consequently, the plaintiffs suffered injury and loss as a result of Craig Donais' acts.

326.    The above facts establish a claim of interference with advantageous relations by improper means and improper motives.

327.    This claim is pled under the NH savings statute and is thus timely.

## II. COUNTS PERTAINING TO INTERFERENCE WITH CONTRACTUAL & ADVANTAGEOUS RELATIONS BY CRAIG DONAIS

328.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

## A. COUNT 3 -  INTERFERENCE WITH CONTRACTUAL RELATIONS BY CRAIG DONAIS
### (as to Craig Donais and Donais Law Offices PLLC)

### A. Cause of Action

329.    To state a claim for intentional interference with existing contractual relations under New Hampshire law, a plaintiff must show that: "(1) plaintiff had a contractual relationship with [a third party]; (2) [defendants] knew of the contractual relationship; (3) [defendants] wrongfully induced [the third party] to breach the contract; and (4) plaintiff's damages were proximately caused by [defendants'] interference." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 229 F. Supp. 2d 70, 73 (D.N.H. 2002) aff'd, 374 F.3d 23 (1st Cir. 2004) (citing Roberts v. Gen. Motors Corp., 138 N.H. 532, 539 (1994)).

330.    New Hampshire follows the Restatement (Second) of Torts § 766 for interference with existing contractual relations. Thus, to establish liability, a plaintiff must prove four elements:

    a.    The plaintiff had an economic relationship with a third party (i.e., a contract existed).
    b.    The defendant knew of this relationship.
    c.    The defendant intentionally and improperly interfered with this relationship (by inducing or causing the third party not to perform the contract).
    d.    The plaintiff was damaged by such interference.

331.    Here, there must be an existing contract between the plaintiff and a third party; there must be an actual breach of contract; the defendant must not be a party to the contract that they interfered with; and damages flow from the breach of the existing contract.

332.    This count alleges that Craig Donais intentionally and improperly interfered with Plaintiff's contractual relations, including with police/community organizations.

333.    Craig Donais intentionally interfered with the plaintiff's contracts, employment, and community standing by disseminating false and defamatory information, thereby causing economic harm and emotional distress.

### B. Economic Relations

334.    Plaintiff had advantageous relations with the Manchester NH police.

335.    Plaintiff's relationship with the Manchester NH police, based on prior agreements for community engagement, was known to Craig Donais.

336.    Plaintiff anticipated further advantageous relations with Manchester NH police in the future but this was not realized on account of the interference by Craig Donais.

### C. Improper Motive

337.    The conduct was improper, motivated by racial bias, and designed to harm Plaintiff's reputation and ability to engage in lawful activities.

338.    "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly interfered with or induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007). See Weber v. Community Teamwork, Inc., 434 Mass. 761, 781-782 (2001).

339.    Whether the actor's motives or means are improper "depends on the attending circumstances, and must be evaluated on a case-by-case basis." G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991). (improper motive established if police chief acted "based on retaliation or ill will toward [plaintiff], rather than the good of the police department").

340.    Plaintiff had an advantageous relationship with the Manchester NH police /police department including with Manchester NH police chief.

### D. Privilege

341.    None of the above statements were made in a judicial proceeding or in a quasi-judicial proceeding. These statements were not made in a prosecution proceeding or in a lawsuit proceeding. This was simply a statement made to a police officer which was initiated by Craig Donais for the purpose of harming, damaging, harassing, injuring and retaliating against the plaintiff.

### E. Damages

342.    The damages are clear, including loss of contracts, community opportunities, and emotional distress. The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by racial bias or improper means is actionable. See G.S. Enterprises v. Falmouth Marine, 410 Mass. 262 (1991); Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

343.    By the above-described conduct, inter alia, the Craig Donais knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's actual and potential advantageous relations.

344.    As a result of this intentional interference, plaintiff suffered damages.

345.    As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

346.    Plaintiff has been harmed by Craig Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

## F. Conclusion

347.     The above establishes a claim of interference with advantageous relations by improper means and improper motives. See Draghetti v. Chmielewski, 416 Mass. 808, 817 (1994) ("Even if [police chief] could have accomplished the same result by proper means, he may not use the improper means of misrepresentation").

348.     The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by improper means is actionable. See Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

349.     By the above-described conduct, inter alia, Craig Donais knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's contractual relations.

350.     As a result of this intentional interference, plaintiff suffered damages.

351.     As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

352.     As these events occurred in 2020, it is within 3 years of the original filing of this action on June 18, 2022 in Massachusetts superior court, and thus this claim is timely under the NH savings statute (Craig Donais' conduct in 2020 was pled in the June 18, 2022 Massachusetts filing, so RSA 508:10's one-year savings window preserves it).

353.     The plaintiffs request judgment against Craig Donais for compensatory and enhanced damages, costs, and any further relief the Court deems just.

354.     Plaintiffs reserve the right to amend damages once discovery is complete.

## B. COUNT 4 - INTERFERENCE WITH ADVANTAGEOUS RELATIONS BY CRAIG DONAIS
### (as to Craig Donais)
### A. Cause of Action

355.     Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

356.     New Hampshire follows the Restatement (Second) of Torts § 766B for interference with prospective contractual relations, which states:

> Intentional Interference with Prospective Contractual Relation One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of: (a) inducing or otherwise causing a third person not to enter or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

357.     A claim for intentional interference with prospective contractual relations exists under New Hampshire law when "[o]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another" and thereby causes harm to the other." Synopsys, 229 F. Supp. 2d at 73-74 (quoting Baker, 121 N.H. at 644).

358.     To prevail on such a claim, plaintiff must show that: "(1) he had an economic relationship with a third party; (2) the defendant[s] knew of this relationship; (3) the defendant[s] intentionally and improperly interfered with this relationship; and (4) plaintiff was damaged by such interference." M & D Cycles, Inc. v. Am. Honda Motor Co., Inc., 208 F. Supp. 2d 115, 119 (D.N.H. 2002) aff'd, 70 F. App'x 592 (1st Cir. 2003). The asserted economic relationship must "give rise to a reasonable expectation of economic advantage." Preyer v. Dartmouth Coll., 968 F. Supp. 20, 26 (D.N.H. 1997).

359.     To establish liability, a plaintiff must prove four elements:

   a.   The plaintiff had an economic relationship with a third party (that gave rise to a reasonable expectation of economic advantage).
   b.   The defendant knew of this relationship.
   c.   The defendant intentionally and improperly interfered with this relationship.
   d.   The plaintiff was damaged by such interference.

360.     Here, no formal contract is required. The relationship need not be reduced to a formal, written instrument; a promise or reasonable expectation of a promise creating a duty recognized by law is sufficient. This can be based on ongoing negotiations, business relationships, or reasonable expectations of economic advantage from the relationship.

361.    No breach of an actual contract is required for this claim because no actual contract is required for this claim; interference with formation or continuation of relationship is sufficient. Damages do not have to flow from a contract, but can be based on lost economic opportunity or lost advantage.

362.    Inducing a third person by fraudulent misrepresentations or defamatory statements not to do business with the plaintiff clearly constitutes wrongful conduct sufficient to support an interference with a prospective contractual relationship or advantageous relations claim. Restatement (Second) of Torts § 767 cmt. c & § 768 cmt. e; see Liberty Leather Corp. v. Callum, 653 F.2d 694, 699 (1st Cir. 1981) ("Undoubtedly a cause of action for tortious interference with business relations may rest upon defamatory remarks.").

363.    This count alleges that  Craig Donais intentionally and improperly interfered with Plaintiff's advantageous relations with the Manchester NH police.

364.    In this instance, the plaintiff had an advantageous economic relationship with a third party that gave rise to a reasonable expectation of economic advantage. Plaintiff's advantageous relationship was with the Manchester NH police, which relationship was expected to continue based on the agreement that had been established between them, and that had been ongoing since 2018. The Plaintiff's advantageous relationship with Manchester NH police was known to Craig Donais. Craig Donais knowingly interfered with and induced a breaking of this relationship including using fraudulent misrepresentations or defamatory statements to induce the Manchester NH police to not do business with the plaintiff. This conduct was private business interference, and not litigation-related and was not part of a police investigation.

365.    The conduct was improper, motivated by personal animus and personal selfish advantage, and designed to harm Plaintiff's ability to engage in lawful activities.

366.    The damages are clear, including loss of contract worth several thousand dollars, loss of good relations with the Manchester NH police, loss of opportunities, and emotional distress. Further, the Plaintiff has been harmed by Craig Donais' actions including insult, mental pain and suffering, mental anguish, emotional distress, loss of enjoyment, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

367.    The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by improper means is actionable. See Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

368.    WHEREFORE, plaintiffs demand judgment against Craig Donais for all resulting damages, double damages under RSA 358-A if proven, and further relief deemed equitable.

369.    This claim is pled under the NH savings statute and is thus timely.

---

## SECTION 4: CLAIMS PERTAINING TO BREACH OF FIDUCIARY DUTY BY CRAIG DONAIS

---

### I. FACTS PERTAINING TO BREACH OF FIDUCIARY DUTY CLAIM

370.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

### A.  The Initial Contact and Confidential Relationship:

371.    In early January 2017, Plaintiff consulted Craig Donais for legal advice on a landlord-tenant dispute and engaged in a confidential discussion with Craig Craig Donais regarding this dispute. During this engagement, Craig Donais obtained confidential information about the plaintiff's personal circumstances, legal concerns, and litigation plans including case strategies and exploration of case strengths and weaknesses. Under the applicable rules of professional conduct, Craig Donais owed a fiduciary duty of confidentiality and loyalty to the plaintiff, even if formal representation was not accepted. During this call, Plaintiff disclosed confidential information, triggering fiduciary duties under New Hampshire Rule of Professional Conduct 1.18. Craig Donais declined representation but later exploited this interaction to harm Plaintiff.

372.    Craig Donais received confidential information concerning the plaintiff when Craig Donais called Bisasor on 1-9-17. Craig Donais initiated the call to Bisasor after Bisasor called and left a voicemail for Craig Donais on a prior day stating that plaintiff was seeking legal assistance and advice on a landlord-tenant matter. Craig

Donais in deciding to call back the plaintiffs in response to the voicemail represented an agreement by Craig Donais to engage in an attorney-client conversation that was protected by attorney-client privilege.

373.    Consequently, Craig Donais had inside knowledge of plaintiff's self-disclosed understanding of the strategies, weaknesses and discussions about plaintiff's case from Plaintiff directly.

374.    Plaintiff alleges that Craig Donais and Bisasor had an attorney-client relationship, that plaintiff was a client for purposes of the initial consultation, and that otherwise plaintiff was, at a minimum, a prospective client, and that he became a former client once the engagement went no further after the initial consultation. This is backed up by the explicit language of the NH Rules of Professional Conduct for Lawyers.

375.    This prospective attorney-client relationship triggered fiduciary obligations and confidentiality obligations on the part of Craig Donais. The rules of professional conduct create these and other duties and obligations of the lawyer to a client or former client.

376.    These duties and obligations include but are not limited to confidentiality and fiduciary expectations as well as the expectation that Craig Donais would not use this client conversation to try to injure, hurt, defame or publish private facts or to seek to try to wrongly prosecute the client, as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct.

377.    Thus, an attorney-client relationship existed between Plaintiff and Craig Donais, whereby Craig Donais owed Plaintiff fiduciary duties of confidentiality, and honest dealing that continued beyond the conclusion of the attorney-client consultation that occurred on one day only.

378.    Craig Donais's status as a licensed attorney in New Hampshire created ongoing professional and ethical obligations under the Rules of Professional Conduct and thus retained continuing duties to his former client, including the duty not to use confidential information to the client's disadvantage, the duty not to engage in conduct detrimental to the former client's interests, and the duty to act with good faith and fair dealing in all subsequent interactions.

### B.  Overview of Breach of Fiduciary Duty:

379.    Craig Donais used his prospective client conversation with Plaintiff against Plaintiff, to directly inflict harm by defaming Plaintiff and accusing him of falsely/frivolously accusing Craig Donais of race discrimination because he did not take his case. This false accusation against Plaintiff has sullied Plaintiff, with the implication that Plaintiff is a frivolous liar who plays the race card without rhyme or reason and is to be discredited as an irrational, unstable, angry person who wildly hurls accusations of race discrimination when there is no valid reason to do so. This diminishes Plaintiff's character and discredits him in the eyes of the public and the community.

380.    If Plaintiff had never spoken to Craig Donais on 1-9-17 about a prospective client relationship, Donais could not have had the opportunity to fabricate this lie against Plaintiff.

381.    Craig Donais has used his position as a prospective lawyer to Plaintiff as a prospective client as a basis to injure Plaintiff by falsely accusing him of falsely accusing Craig Donais of race discrimination in the context of a conversation wherein Plaintiff was seeking to legal advice/assistance from Craig Donais, and wherein Plaintiff shared with Craig Donais certain confidential information, thus taking Craig Donais into his confidences and placing his trust in Craig Donais. Craig Donais exploited and abused the trust that Plaintiff extended to Craig Donais in seeking to have a conversation with him about plaintiffs' case against the Hilton Hotel defendants. Craig Donais turned around and used that private privileged conversation as a basis to fabricate lies on Plaintiff. This is an utter abuse and ethical travesty that has befallen Plaintiff. This is a breach of fiduciary duty. This also goes to the conflict of interest. Craig Donais was never going to be able to be loyal to plaintiff or his spouse, and uphold the trust and confidences that plaintiff placed in him, because ultimately, Craig Donais was loyal to Dave Akridge (who was as a principal for the opposing party). Craig Donais' conflict of interest further created the fuel by which he found it useful to falsely accuse plaintiff, in order to harm and damage plaintiff, and his spouse in the interest of protecting and advancing his own interests and/or the interests of the opposing party

382.    Craig Donais disclosed confidential client information about the plaintiffs to third parties, including but not limited to family members including his wife and his adult or teenage children, his friends and colleagues, and other private persons.

383.    Note: Absolute privilege does not protect an attorney from breach of fiduciary duty.

384.    Either way, the breach occurred outside the context of any judicial proceeding, and these statements are not protected by absolute privilege.

385.    These breach of fiduciary duty acts by Craig Donais include the following:

   a.    Craig Donais disclosed confidential client conversation information about the plaintiffs to his wife, Mary Donais in 2019 and 2020.

   b.    Craig Donais disclosed confidential client conversation information about the plaintiffs to his sons, Garret Donais and Aiden Donais, in 2019 and 2020.

   c.    Craig Donais disclosed confidential client conversation information about the plaintiffs to the Manchester NH Crime-Line board in 2019 and 2020.

   d.    Craig Donais disclosed confidential client conversation information about the plaintiffs to his friends on the board of a local Manchester NH non-profit organization, in 2019 and 2020.

386.    As a prospective client, Plaintiff shared confidential information with Craig Donais during a January 2017 consultation. Craig Donais breached NH Rule 1.18 by weaponizing this information in defamatory campaigns.

387.    The facts clearly demonstrate that Plaintiff reasonably believed he was engaging in a confidential discussion, and Craig Donais's conduct violated that trust, breaching his fiduciary obligation. See Glickman v. Brown, 21 Mass. App. Ct. 229 (1985) (recognizing fiduciary duties in attorney-client relationships).

388.    Craig Donais breached confidentiality obligations owed to Plaintiff as a prospective client by disclosing privileged information to harm Plaintiff's interests.

389.    Craig Donais breached confidentiality obligations owed to Plaintiff as a prospective client by disclosing privileged information to harm Plaintiff's interests.

390.    Craig Donais engaged in a pervasive, widespread, systematic and deliberate pattern of abandoning, violating and exploiting his fiduciary obligations to Plaintiff for his own self-interest and constituted a willful dereliction of duty designed to exploit Plaintiff's vulnerability as an African-American, and conceal evidence of Craig Donais' own misconduct. Craig Donais' concealment of his divulging of plaintiff's confidential client conversation further constitutes a breach of the duty to protect client interests post-termination (In re Jones, NH Sup. Ct., No. 2021-0123, 2021 WL 4472142). Attorneys must prioritize client interests over self-protection. By divulging and exploiting confidential information, Craig Donais engaged in self-dealing barred by Kanamaru, 100 Mass. App. Ct. at 75.

391.    Under New Hampshire law, attorneys owe clients and former clients an unwavering duty of confidentiality and transparency, even after termination of a client relationship. Craig Donais' conduct breached this duty at every turn, inflicting severe financial, procedural, and emotional harm.

392.    Craig Donais' acts also includes a breach of fiduciary duty by divulging information (and fabricated version of it) obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client.

## B. Breach of Continuing Fiduciary Duties

393.    <u>Duty of Good Faith and Fair Dealing</u>: Craig Donais breached his continuing duty of good faith and fair dealing by engaging in deceptive conduct designed to prevent Plaintiff from pursuing legitimate legal remedies.

394.    <u>Duty of Loyalty</u>: Craig Donais breached his continuing duty of loyalty by placing his own interests above those of his former client and by actively working to harm Plaintiff.

395.    <u>Duty Not to Use Position for Personal Advantage</u>: Craig Donais breached his duty by using his position as an attorney and his relationships to gain unfair advantage over his former client.

396.    <u>Duty of Honest Dealing</u>: Craig Donais breached his duty of honest dealing by engaging in a pattern of deception and defamation, designed to avoid accountability for his professional misconduct.

## II. COUNTS PERTAINING TO BREACH OF FIDUCIARY DUTY CLAIM

397.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

## A. COUNT 5: BREACH OF FIDUCIARY DUTY
### (as to Craig Donais and Donais Law Offices PLLC)

398.    Plaintiff incorporate by reference all paragraphs of this Complaint as though fully stated herein seriatim.

399.    This count asserts that Craig Donais and his law firm owed a fiduciary duty to Plaintiff as a prospective client, including confidentiality, loyalty, and the obligation to act in good faith, which was breached through multiple egregious acts.

400.    Plaintiff was a prospective client entitled to confidentiality and loyalty. By disclosing privileged information and exploiting it for self-protection, Craig Donais breached that duty, proximately causing reputational and economic loss.

401.    Under NH law, the attorney-client relationship, even at the prospective stage, creates fiduciary obligations including confidentiality, loyalty, and good faith. Craig Donais breached this duty by disclosing confidential information, fabricating false allegations, and misusing the relationship to retaliate.

402.    Courts have recognized that a fiduciary duty arises when an attorney receives confidential information, even if formal engagement does not occur, provided the client reasonably believes the attorney is acting in a professional capacity and the communication is confidential. Keshishian v. CMC Radiologists, 142 NH 168, 174 (1997); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451 (1991).

403.    In this case, the facts establish that Plaintiff engaged Craig Donais in a confidential, substantive discussion about legal issues involving the Hilton hotel defendants. Craig Donais, knowing this, had a duty to maintain confidentiality and act in Plaintiff's best interests. Instead, he divulged confidential information to third parties, his wife, son, family members and community members, colleagues, and others, without Plaintiff's consent, breaching his fiduciary obligation.

404.    Moreover, Craig Donais used his position of client trust to maliciously fabricate false allegations of racism, criminal conduct, and mental illness, with the intent to defame, intimidate, and retaliate against Plaintiff.

405.    These acts constitute a clear breach of the fiduciary duty, which under NH law, includes the obligation not to disclose confidential information or use it for personal or third-party advantage.

406.    Under NH law, breach of fiduciary duty requires (1) the existence of a fiduciary relationship, (2) breach of that duty, (3) causation, and (4) damages. The facts support each element, and the breach caused tangible damages, including reputational harm and emotional distress.

407.    The case law supports that such breaches are actionable. Bays v. Theran, 418 Mass. 685 (1990), affirms that breaches of fiduciary duty can be established through acts of disloyalty, breach of confidentiality, or self-dealing.

408.    The repeated disclosures, especially those involving false statements to third parties, show a pattern of breach that is sufficiently egregious to sustain a cause of action.

409.    Plaintiff's damages include reputational harm, emotional distress, and economic losses, directly caused by these breaches.

410.    It should be noted that, under NH law, the fiduciary duties extend to prospective clients, especially where confidential information was shared and relied upon in good faith.

411.    As a prospective client, Plaintiff shared confidential information with Craig Donais during a January 2017 consultation. Craig Donais breached NH Rule 1.18 by weaponizing this information in defamatory campaigns.

412.    The facts clearly demonstrate that Plaintiff reasonably believed he was engaging in a confidential discussion, and Craig Donais's conduct violated that trust, breaching his fiduciary obligation. See Glickman v. Brown, 21 Mass. App. Ct. 229 (1985) (recognizing fiduciary duties in attorney-client relationships).

413.    Craig Donais breached confidentiality obligations owed to Plaintiff as a prospective client by disclosing privileged information to harm Plaintiff's interests.

414.    The rules of professional conduct provides that a lawyer shall not knowingly reveal a confidence or secret of a client or use a confidence or secret of a client to the disadvantage of that client.

415.    A "confidence" is defined as "information protected by the attorney-client privilege under applicable law" and a "secret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." (McKinney Supp. 1991).

416.    Courts have held that an "analogous fiduciary obligation may be implied in the absence of an attorney-client relationship." Liu v. Real Estate Inv. Group, Inc., 771 F. Supp. 83 (S.D.N.Y. 1991).

417.    As the court in Liu noted:

It is clear that where an attorney receives confidential information from a person, who under the circumstances has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidences irrespective of the absence of a formal attorney client relationship.

418.    Id. at 86 (quoting Nichols, 99 Misc.2d 822, 417 N.Y.S.2d at 418); see also Rosman v. Shapiro, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987); Trinity Ambulance Serv., Inc. v. G L Ambulance Servs., Inc., 578 F. Supp. 1280, 1283 (D. Conn. 1984).

419.    See, e.g., United States v. Devery, No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship."); Green v. Montgomery County, 784 F. Supp. 841, 844 (M.D. Ala. 1992) ("The mere existence of an express contract of employment, or the payment of legal fees, or the length of consultation is not determinative of whether a preliminary consultation has matured into an attorney-client relationship.").

420.    "[C]ourts have not employed a single, well-defined test for determining whether an attorney client relationship exists, and, moreover, have consistently rejected the argument that indicia of a formal relationship are necessary. Most courts have acknowledged, as a general matter, that an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." First Hawaiian Bank v. Russell Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994); accord Bennet Silvershein Assocs. v. Furman, 776 F. Supp. 800, 803 (S.D.N.Y. 1981) (quoting Trinity Ambulance Serv., Inc. v. G L Ambulance Servs., Inc., 578 F. Supp. at 1283); Keosian v. Von Kaulbach, 707 F. Supp. 150, 152 (S.D.N.Y. 1989) (same).

421.    As the Second Circuit has stated, "[t]he key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." United States v. Dennis, 843 F.2d 652, 657 (2d Cir. 1998).

422.    Further, whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to the attorney client privilege. See Dennis, 843 F.2d at 657 ("To be sure, initial statements made while Pilgrim intended to employ Gerace were privileged even though the employment was not accepted."); see also Green, 784 F. Supp. at 845 ("[T]he fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result."); Liu, 771 F.Supp. at 86 ("[T]he duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result."); McCormick on Evidence 6th Ed. § 88 (West Publishing Co., 2006) ("[C]ommunications in the course of [a] preliminary discussion with a view to employing the lawyer are privileged though the employment is in the upshot not accepted.").

423.    In this instance, it is clear that Bisasor engaged in preliminary discussions with Craig Donais related to a legal analysis of potential claims that could be brought in connection with the landlord-tenant matter involving the Hilton Hotel defendants during the tenure of plaintiff's stay. Although there was no further engagement or retainer after that preliminary client conversation, any communication made during this preliminary consultation is protected by the duty of confidentiality and protected by the attorney-client privilege. Thus, this preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though Craig Donais was not ultimately retained.

424.    Bisasor's statement that confidences were shared with Craig Donais is corroborated by telephone records indicating that there were at least two telephone calls involved, one of which was on 1-9-17, between Craig Donais and Bisasor which lasted 7 minutes. The facts here, including a 7 minute phone call conversation and transmittal of client conversation information from Robert Obrien via conversation with Craig Donais about plaintiff's claims, provides sufficient circumstantial evidence to conclude that it is likely that some "confidences" or "secrets" were revealed to Craig Donais in order for him to evaluate the case.

425.    For example, in Arifi, the court held that the former attorney's assertion, that he could not remember any confidential information conveyed to him during the short representation of one of the defendants, did not cure the professional responsibility conflicts which were present. Arifi, 290 F. Supp. 2d at 350 ("While there is no reason to doubt Green's claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had access to such information during the short representation."); see also Schwed v. Gen. Elec. Co., 990 F. Supp. 113, 117 n. 2 (N.D.N.Y. 1998) (holding in a case where attorney claimed he did not possess confidential information and did not recall any discussions regarding the

case, that the third prong of the Second Circuit test was nevertheless met because there was a likelihood that attorney had access to confidential information.).

426. Plaintiff alleges that Craig Donais and Bisasor had an attorney-client relationship, that plaintiff was a client for purposes of the initial consultation, and that otherwise plaintiff was, at a minimum, a prospective client, and that he became a former client once the engagement went no further after the initial consultation. This is backed up by the explicit language of the NH Rules of Professional Conduct for Lawyers.

427. It should be noted that Rule 1.18 of the NH Rules of Professional Conduct for Lawyers, states:

Rule 1.18. Duties to Prospective Client

(a) A person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received and reviewed information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

Ethics Committee Comment:

1. The New Hampshire rule expands upon the ABA Model Rule in one area. The ABA Model Rule 1.18(a) defines a prospective client as one who "consults" with a lawyer about possible representation; the New Hampshire Rule defines prospective client as one who "provides information to a lawyer" about possible representation. ABA Model Rule 1.18(b) establishes a general rule for protection of information "learned" by a lawyer from a prospective client; the New Hampshire Rule clarifies the scope of the protection so that it applies to information "received and reviewed" by a lawyer from a prospective client.

In its version of Rule 1.18, New Hampshire's rule eliminates the terminology of "consultation" and learning and extends the protections of the rule to persons who, in a good faith search for representation, provide information unilaterally to a lawyer who subsequently receives and reviews the information. This change recognizes that persons frequently initiate contact with an attorney in writing, by e-mail, or in other unilateral forms, and in the process disclose confidential information that warrants protection. This change further recognizes that receipt and review are likely to be more objective standards than learning.

428. Rule 1.18 is very clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them.

429. Craig Donais and Bisasor had a fiduciary relationship. Craig Donais' relationship with Bisasor, that of attorney/client, was and is fiduciary. Craig Donais owed an ethical and fiduciary duty to Bisasor.

430. See Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 442 (1980) ("[T]he relationship between attorney and client ... is fiduciary as a matter of law"); Blake v. Hendrickson, 40 Mass.App.Ct. 579, 582 (1996) (an attorney is the client's agent); Vanacore v. Kennedy, 86 F.Supp.2d 42  (D.Conn. 1998) (the relationship between attorney and client is one of trust and confidence, and gives rise to fiduciary duties of the attorney toward the client). Craig Donais owed Bisasor a fiduciary duty to act at all times in good faith and in Bisasor's best interests.

431. Craig Donais owed Bisasor a fiduciary duty to, among other things, to act in Bisasor's highest and best interests at all times, and to not expose Bisasor to any unnecessary risk or peril.

432. Craig Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship. See Bartle v. Berry, 80 Mass. App.Ct. 372, 385 (2011) (in accordance with the Rules of Professional Conduct, an attorney's fiduciary duty continues even after termination of the attorney- client relationship).

433. Under Restatement (Third) of the Law Governing Lawyers § 38, just because a prospective client conversation where confidential information was shared, does not result in further engagement, that does not absolve attorneys of fiduciary obligations created by that limited or initial client interaction.

434. This communication/consultation with Bisasor triggered a fiduciary relationship (see Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 463 (1991)), with ongoing duties of confidentiality.

435.   However, in 2019 and 2020, Craig Donais disclosed private client information to his wife, son, family members, and friends and to the others including members of the Manchester NH Crime-Line board, etc.

436.   Craig Donais engaged in a pervasive, widespread, systematic and deliberate pattern of abandoning, violating and exploiting his fiduciary obligations to Plaintiff for his own self-interest and constituted a willful dereliction of duty designed to exploit Plaintiff's vulnerability as an African-American, and conceal evidence of Craig Donais' own misconduct. Craig Donais' concealment of his divulging of plaintiff's confidential client conversation further constitutes a breach of the duty to protect client interests post-termination (In re Jones, NH Sup. Ct., No. 2021-0123, 2021 WL 4472142). Attorneys must prioritize client interests over self-protection. By divulging and exploiting confidential information, Craig Donais engaged in self-dealing barred by Kanamaru, 100 Mass. App. Ct. at 75.

437.   Under New Hampshire law, attorneys owe clients and former clients an unwavering duty of confidentiality and transparency, even after termination of a client relationship. Craig Donais' conduct breached this duty at every turn, inflicting severe financial, procedural, and emotional harm.

438.   Craig Donais' acts also includes a breach of fiduciary duty by divulging information (and fabricated version of it) obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client.

439.   It was malicious act and represented an attempt to harm plaintiff/his spouse as former prospective clients.

440.   When prospective clients meet with lawyers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined full representation or because the lawyer joined the legal team of the opposing party. This is a logically nuanced point that is being made here.

441.   Craig Donais' intent was clear: to hurt, damage, harm, oppress, defame, scandalize the plaintiff.

442.   This is forbidden by the rules. So even if Craig Donais maintains that his allegations of what plaintiff said in the 1-9-17 conversation were true (which it was not), he still violated the rules of conduct and breached his duty and obligations to the plaintiff as a former client or former prospective client.

443.   Hence, Craig Donais' violations are multiple, layered and intertwined with a web of layered misconduct making a very serious combination of violations of ethics that rises to the level of extreme seriousness which is further compounded by the numerous breaches and wrongs that flowed from that to subsequent and continuing events thereafter.

444.   Again, this is an intellectually sophisticated point in showing the reasoning that would still arrive at a violation of the rules of conduct and a breach of duty and contract/good faith, by Craig Donais even if he were telling the truth in his false statements to several third parties about what plaintiff had said in the 1-9-17 client conversation (which he was not).

445.   It should be noted that some lawyers have been disbarred for engaging in misconduct as outlined above. It is evident that Craig Donais' conduct outlined herein, has violated Rule 8.4 section (a), (b), and (c), in that his false statements reflects adversely on the lawyer's honesty and trustworthiness, and it would also constitute conduct involving dishonesty, fraud, deceit and misrepresentation. Similarly, the fabrication of the race discrimination accusation would further be a violation of Rule 8.4 section (g), in that his false statements were motivated by racial animus and were intended to wrongly embarrass, harass and burden Plaintiff.

446.   Craig Donais breached his fiduciary duty to plaintiff by breaking his obligation of confidentiality, and acting against plaintiff's interest as a former client and seeking to harm and injure plaintiff's rights. In the alternative, this also constitutes legal malpractice.

447.   Thus, Craig Donais owed a duty to Plaintiff[4], and thus there was fiduciary relationship that included confidentiality. Craig Donais' breach of duty is based on: a) the acts of Craig Donais as outlined above, resulting in a breach of duty; as well as b) statements made by Craig Donais that breached that duty. These acts and statements that occurred in 2019 and 2020, with respect to the allegations in this complaint, are not time-barred and are not

---

[4] Donais owed a duty to plaintiff. There was a fiduciary relationship. Plaintiff was a prospective client. Plaintiff was engaged as a prospective client. Plaintiff was given legal advice. Plaintiff shared confidential information. A prospective attorney client relationship was formed. This is what a judge found (Judge Paul Moore in Nashua district court in NH). This is why Donais withdrew as attorney in that case.

privileged.

448. Craig Donais had and owed a fiduciary duty to Bisasor.

449. Craig Donais had an obligation to Bisasor to act with the utmost good faith and fidelity as a fiduciary agent.

450. Craig Donais had a duty not to take advantage of Bisasor and place him at a disadvantage. See Goldman v. Kane, 3 Mass.App.Ct. 336, 341 ( (1975) (attorney must do nothing that takes advantage of or disadvantages the client).

451. Craig Donais had a duty of trust and loyalty to Bisasor and a duty not to betray Bisasor.

452. Craig Donais had a duty to not subvert his (Craig Donais) obligation to Bisasor.

453. Craig Donais had an ethical obligation to Bisasor under the NH Rules of Professional Conduct, e.g., Rules 1.2, 1.3, 1.4, 1.6 and 1.7-1.9. See also 51 Mass. Prac., Professional Malpractice at 17.6 (an "attorney's duty of care is set forth in the Rules of Professional Conduct").

454. Craig Donais had a duty to not act deceitful.

455. Craig Donais's ethical obligation to Bisasor (under NH Rules of Professional Conduct) continued after the conclusion of the client conversation between Craig Donais and Bisasor in 2017.

456. In this matter, Craig Donais violated his duty to the plaintiff in several ways.

    a. Craig Donais discussed the client conversation with the plaintiff with several people. These include his wife, Mary Donais, his son Garrett Donais, and the Manchester NH crime-line board, as well as friends and connections. These communications with his friends violated the rights of the plaintiff.

    b. Craig Donais also voluntarily engaged in discussion with the police about the conversation Craig

    c. Craig Donais also had a duty to inform the plaintiff, as a former client, that Craig Donais was going to or had discussed such information with others. Instead, Craig Donais actively hid those occurrences from the plaintiff.

    d. The act of hiding such occurrences from the plaintiff is a breach of duty the plaintiff.

457. Craig Donais's disclosure of client discussion information result was a violation of Craig Donais's fiduciary duty to Bisasor.

*458.* See Rule 1.6. of the rules of professional conduct for lawyers, which states: *"Confidentiality of Information: (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."* See also Rule 4.4: Respect for Rights of Third Persons: *"(a) In representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person."*

459. "Even after termination of the attorney-client relationship, a lawyer remains bound" to preserve the former client's confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994), quoting Masiello v. Perini Corp., 394 Mass. 842, 847 (1985). "(W)hen an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney's continuing duty to preserve a former client's confidences." Adoption of Erica, 426 Mass. 55, 60 (1997).

460. Further, Craig Donais's disclosure of client discussion information and the results therefrom was a breach of his obligation to Bisasor to act with the utmost good faith and fidelity as a fiduciary agent.

461. Craig Donais's disclosure of client discussion information and the results therefrom was a breach of Craig Donais's loyalty to Bisasor.

462. Craig Donais's disclosure of client discussion information and the results therefrom took advantage of Bisasor, and, placed him at a disadvantage.

463. Craig Donais's disclosure of client discussion information and the results therefrom was an abuse of trust, disloyal, and a betrayal of Bisasor's cause.

464. Craig Donais's disclosure of client discussion information and the results therefrom subverted Craig Donais's obligation to Bisasor, all to Bisasor's disadvantage.

465. See In re Disciplinary Bd. of Hawaii Supreme Court, 984 P.2d 688 (Haw. 1999) (evidence underlying a violation of a disciplinary rule is evidence that would support civil or criminal liability); Gilles v. Wiley, Malehorn & Sirota, 783 A.2d 756 (N.J. Super 2001) (breach of a rule of professional conduct is evidence of an attorney's failure to comply with the required standard of care); BCCI Holdings (Luxembourg), S.A. v. Clifford, 964 F.Supp. 468 (D.D.C. 1997) (breach of attorney's ethical standards will constitute breach of fiduciary duty owed to client);

466.    Craig Donais's disclosure of client discussion information and the results therefrom violated Craig Donais's ethical obligation to Bisasor under the  NH Rules of Professional Conduct.

467.    Said ethical rules were and are intended to protect one in Bisasor's position, and, a violation of the same is evidence of the attorney's negligence.

468.    See NH Rules of Professional Conduct, Rule 8.4 ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another. (c) engage in conduct involving dishonesty ... (d) engage in conduct that is prejudicial to the administration of justice;…or (h) engage in any other conduct that adversely reflects on his fitness to practice law").

469.    Thus, in terms of the breach of fiduciary duty and breach of confidentiality claims, Craig Donais acted as a prospective attorney for both plaintiffs, as evidenced by his communications with Plaintiff Bisasor, and by his own admissions and those of Attorney Robert O'Brien and Attorney Elliott Berry. Further facts and documentary evidence of the above include emails and testimony from Elliott Berry, who stated that Craig Donais' conduct constituted a breach of fiduciary duty and a violation of the rules of professional conduct, as well as emails from the ADO regarding Berry's interview, Berry's own written determination that Craig Donais breached his duty, and evidence from the circuit court where Craig Donais withdrew after the judge determined that Craig Donais had violated ethical duties/breach fiduciary duty. The court transcript shows that Craig Donais was effectively caught red-handed and that a circuit court judge effectively found that Craig Donais breached fiduciary duty as thus was required to be disqualified from the case. This by itself is slam-dunk proof that Craig Donais is liable for this claim of breach of fiduciary duty, and Craig Donais' own withdrawal serves as his own admission that he was guilty/liable for this wrongdoing.

470.    There is also evidence from Robert O'Brien that Craig Donais lied about the nature of his communications with plaintiffs.

471.    NB: Craig Donais cannot dispute facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in any pre-trial motion is invalid.

472.    As a result of Craig Donais's breaching conduct, Bisasor sustained injury and loss. Craig Donais caused Bisasor to suffer emotional distress. The damages Bisasor sustained were directly, proximately and solely caused by Craig Donais's breach of his duty as set forth above.

473.    Craig Donais breached his fiduciary duties and obligations to Bisasor by doing all of the acts and omissions as herein alleged.

474.    In doing all of the above described acts and omissions constituting Craig Donais's breach of his fiduciary duties owed to Bisasor, Bisasor has been damaged/injured.

475.    Bisasor's injuries include lost opportunities, emotional distress, and mental anguish.

476.    The acts and omissions constituting breach of Craig Donais's fiduciary duties were committed with intent, oppression, fraud and/or neglect.

477.    The damages Bisasor sustained were directly, proximately and solely caused by Craig Donais's intentional, reckless and negligent acts and his breach of duty as set forth above.

478.    In sum, even after the termination of the formal attorney-client relationship, Craig Donais owed Plaintiff continuing fiduciary duties including the duty of loyalty, the duty of good faith and fair dealing, and the duty not to use his position or confidential information to harm his former client.

479.    Craig Donais breached these continuing fiduciary duties by:
    a.  Engaging in conspiracy designed to harm the Plaintiff;
    b.  Using his position as an attorney to gain unfair advantage over his former client;
    c.  Placing his own interests above those of his former client;
    d.  Engaging in deceptive conduct designed to harm the Plaintiff
    e.  Violating his duty of honest dealing through a pattern of misrepresentation and deception.

480.    As a direct and proximate result of Craig Donais's breach of fiduciary duty, Plaintiff has suffered damages as described above

481.    WHEREFORE, Bisasor demands that judgment enter against Craig Donais for at least $850,000.00 or such other amount sufficient to compensate him for all of his damages, exemplary damages, interest, costs, attorney's fees and such other relief as the Court deems just and proper.

482.    This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely. Events after June 2021 through 2023 are timely on their own, and are still thus timely.

---

## SECTION 4: CLAIMS PERTAINING TO BREACH OF CONTRACT BY CRAIG DONAIS

---

### I. FACTS PERTAINING TO BREACH OF CONTRACT CLAIM

483.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

484.    Plaintiff had a prospective attorney client relationship with Craig Donais. The rules of professional conduct and the law treats this relationship as a real attorney client relationship even where there is not an express contract. An express contract is not necessary to form an attorney-client relationship.

485.    Plaintiff and Craig Donais had an implied contractual relationship that was implied by the confidential nature of their prospective attorney client relationship. Craig Donais himself admitted in email to other people that there was a client relationship or a prospective client relationship, which implicates confidentiality obligations, and which creates a contractual relationship or at least an implied contractual relationship.

486.    As cited in prior paragraphs, Craig Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

487.    Craig Donais discussed with several people the client conversation he had with the plaintiff. These include his wife, Mary Craig Donais, his sons Garrett and Aiden Craig Donais, his family and friends and the Manchester N H crime-line board, and other connections. These communications violated the rights of the plaintiff.

488.    Similarly, every additional breach or wrongful act that flowed out of Craig Donais' representation of the opposing party is also a breach of implied contract.

489.    Similarly, every wrongful act or harm resulting from the acts of Craig Donais that flowed from the event in which the prospective client relationship was formed is also a breach of implied contract.

### II. COUNTS PERTAINING TO BREACH OF CONTRACT CLAIM
### COUNT 6 - BREACH OF IMPLIED CONTRACT
#### (as to Craig Donais and Donais Law Offices PLLC)

490.    Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

491.    Plaintiff alleges that Craig Donais and plaintiff had an attorney-client relationship. The plaintiff was, at a minimum, a prospective client that triggered fiduciary obligations and confidentiality obligations, as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct.

492.    Thus, Craig Donais and his law firm owed a contractual duty to Plaintiff, and thus there was contractual relationship that included confidentiality.

### A. Implied Attorney Client Relationship

493.    "The existence of an attorney-client relationship is ordinarily a question of fact." Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC, 736 F.Supp.2d 353, 359 (D. Mass. 2010) (concluding on summary judgment that there was an attorney-client relationship).

494.    "To imply an attorney-client relationship, . . . the law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing, who happens to be a lawyer, has become his lawyer." Sheinkopf v. Stone, 927 F.2d 1259, 1265 (1st Cir. 1991). There is a three-part test to determine whether an implied attorney-client relationship exists: (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.... In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it. DeVaux, 387 Mass. at 817-18.

495.    Here, plaintiffs meet the first prong of the DeVaux test. Courts have understood the first prong to "require concrete communication by the plaintiff requesting that the attorney represent him, or explicitly seeking individualized legal advisement." See Int'l Strategies Grp., Ltd., 482 F.3d at 8-9 (holding that plaintiff did not have an implied attorney-client relationship where there was no evidence that plaintiff explicitly requested legal advice).

496.    This is met by the plaintiff's call to Donais and the voicemail left, which stated the following:

> "Hello, my name is Andre and I am calling about a tenant legal matter. I understand that you practice landlord-tenant law. I wanted to see if I could discuss a legal matter with you. Please give me a call back at 781-492-5675. The matter is somewhat urgent so if you can, please call be back as soon as it is practical."

497.    Courts have interpreted the first prong to require "active communication from the plaintiff to the lawyer requesting legal representation or legal advice." Int'l Strategies Grp., Ltd. 482 F.3d at 8-9 (citing cases); DaRoza v. Arter, 416 Mass. 377, 381-82 (1993) (reasoning that establishing the first prong requires plaintiff to expressly seek the advice or assistance of the attorneys). The first prong of the DeVaux test does not require express legal assistance and can be established by implied requests. See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 167 F.Supp.2d 108, 110 (D. Mass. 2001).

498.    The plaintiff also meets the second prong. The plaintiff requested advice on landlord tenant matters, which is within Craig Donais' practice. See screenshot of his advertisement on Justia, that identifies landlord-tenant as within his practice area.



499.    The third prong is also met by the fact that the plaintiff alleges that Craig Donais gave the desired legal advice on the landlord-tenant matters, for which plaintiff sought assistance, during the one-time legal consultation call. A brief summary excerpt of part of what was discussed is as follows[5]:

> Plaintiff shared information about the landlord-tenant arguments plaintiff had, requested advice on potential weaknesses in those arguments and certain legal strategies being contemplated, and asked about the relevant statutes and the likelihood of obtaining a TRO. Craig Donais indicated that he thought it was likely that plaintiff will get a TRO based on what was described to him but he could not say for sure if it would become permanent because he would have to take a look at all the documents himself. Craig Donais also indicated a belief that the plaintiff's contract case was strong based on what was described, but it would

---

[5] NB: The defendant cannot dispute facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in a pre-trial motion to dismiss is invalid.

depend on what was actually written in an agreement or if we can actually show there was an agreement, etc.

500.     This establishes that there was an at least an implied attorney-client relationship based on the above facts, at least concerning the consultation that occurred on that one day when Craig Donais consulted with plaintiff.

501.     Thus, from the communications from plaintiff requesting individualized legal advice or request for legal representation via voicemail, and the return call from Craig Donais to plaintiff to discuss the legal issues that plaintiff identified on the voicemail, there is evidence of an implied attorney-client relationship.

502.     The Plaintiff and Craig Donais thus had an implied attorney client relationship.

503.     The Plaintiff and Craig Donais thus had an implied contractual relationship.

504.     The rules of professional conduct and the law treats this relationship as an attorney client relationship even where there is not an express contract.

505.     An express contract is not necessary to form an attorney-client relationship. Plaintiff and Craig Donais had an implied contractual relationship that was implied by the confidential nature of their attorney-client relationship, relied upon by the plaintiff, as well as by the conduct and words of the parties, including by the trust invested by the plaintiff in Craig Donais when he shared confidential information with Craig Donas on the call.

506.     Craig Donais himself admitted in email to other people that there was a client relationship or a prospective client relationship, both of which implicates confidentiality obligations under the rules of professional conduct, and which creates a contractual relationship or at least an implied contractual relationship.

**B. Breach of Implied Attorney Client Relationship**

507.     The above demonstrates that there was an attorney-client relationship.

508.     Craig Donais entered into an attorney-client relationship on January 9, 2017 when he called Bisasor and engaged him in an attorney-client legal consultation conversation. Although Craig Donais ultimately did not agree to represent the plaintiffs in court, he nonetheless formed an attorney client relationship for purpose of conducting a client call with plaintiff. The subsequent lack of undertaking formal representation in court does not negate the fact that an attorney-client relationship was formed for the exploration and giving of legal advice in that phone call meeting. Nothing can or will change that. So there was an implied contract from that and Craig Donais breached that implied contract by the wrongful acts alleged in this complaint.

509.     As cited in prior paragraphs, Craig Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

510.     Craig Donais discussed with several people the client conversation he had with the plaintiff. These include his wife, Mary Donais, his adult son Garrett Donais and teenage son Aiden Donais, the Manchester Crime-Line Board, and his family, friends and neighbors. These communications with third parties, in 2019 and 2020, violated the rights of the plaintiff.

511.     Thus, Craig Donais and his law firm breached the implied contract when in 2019 through 2023, Craig Donais acted in a manner that was inconsistent with the agreed-upon common purpose and expectations (including but not limited to confidentiality and fiduciary expectations as well as the expectation that Craig Donais would not use client conversation to try to injure, hurt, defame or publish private facts about the client, among other things), as required by the rules of professional conduct for lawyers, and all of which Craig Donais and his law firm did, and Plaintiff was harmed by this breach of implied contract conduct by Craig Donais and his law firm.

512.     Craig Donais explicitly agreed that the January 9, 2017 was protected by attorney-client privilege. This an explicit agreed-upon common purpose and set the expectations of the plaintiff that the plaintiff detrimentally relied on, in proceeding to place trust in Craig Donais during that call. Plaintiff was harmed by the subsequent breaching conduct of Craig Donais.

513.     Through his actions and inactions, Craig Donais breached the implied contract with the Plaintiff, and did knowingly injure or otherwise harm Plaintiffs' rights and interests.

514.     Note: By pleading that the preceding paragraphs are repeated herein as if fully stated, plaintiff does not need to repeat every act of Craig Donais in order to meet the requirements for this cause of action. The entire complaint read as a whole clearly identifies and establishes that breaching conduct of Craig Donais.

## C. Harm

515.    By the conduct alleged herein, Craig Donais breached the implied contract and caused harm to Plaintiffs.

516.    By breaching the confidentiality of that prospective attorney-client relationship, and by doing so in a particularly nasty, malicious, bad faith, harmful way, Craig Donais breached this implied contract.

517.    As a result, Plaintiff have suffered damages.

518.    The law recognizes an implied covenant of good faith and fair dealing in all contracts, either expressed or implied. Craig Donais was willful in his disregard for the welfare of the Plaintiffs and caused damages to Plaintiffs.

519.    By breaching the contract in a particularly deceptive and bad faith way, Craig Donais breached the implied contract and the attendant covenant of good faith and fair dealing.

520.    As explained elsewhere, these acts and statements alleged as part of this cause of action, occurred from 2019 through 2023, and thus are not time-barred and are not privileged. Note: Although the 2017 events that gave rise to the attorney-client relationship and implied contract identified in this count, the plaintiff does not seek recovery for any 2017 events but reference these events to explain why how the attorney-client relationship and implied contract was formed, which confidentiality and good faith obligations carried on into the years when Craig Donais breached the implied contract in 2019 through 2023.

521.    This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely. Events after June 2021 through 2023 are timely on their own, and are still thus timely.

## COUNT 7 - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (as to Craig Donais and Donais Law Offices PLLC)

522.    Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

523.    Every contract "imposes an obligation of good faith and fair dealing in its performance and enforcement," and this covenant is that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other to receive the fruits of the contract." Lechoslaw v. Bank of v. N.A., 575 F. Supp. 2d 286, 296–97 (D. Mass. 2008).

524.    This covenant is intended to ensure "that the parties remain faithful to the intended and agreed expectations of the contract" and that neither party will do anything that will prevent the other party from receiving the benefits of the contract. See Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008).

525.    Therefore, NH law implies a covenant of good faith and fair dealing in all contracts between parties, whether either expressed or implied.

526.    Plaintiff and Craig Donais had an implied contractual relationship that was implied by the confidential nature of their attorney client relationship. Plaintiff had an attorney client relationship with Craig Donais. The rules of professional conduct and the law treats this relationship as an attorney client relationship even where there is not an express contract. An express contract is not necessary to form an attorney-client relationship.

527.    Plaintiff thus reasonably understood the January 2017 consultation to entail professional legal advice; an implied agreement arose that Craig Donais would not misuse the information (Anthony's Pier Four, 411 Mass. 451).

528.    Craig Donais owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the rights of the Plaintiff to receive the fruits of thereof. Craig Donais had a duty, under this implied covenant, to look out for the best interest of the Plaintiffs, and not go against his best interests or undermine or subvert his best interests.

529.    Craig Donais's later conduct violated the covenant of good faith, foreseeably harming Plaintiff.

530.    As cited in prior paragraphs, Craig Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

531.    Craig Donais discussed with several people the client conversation he had with the plaintiff. These communications with third parties violated the rights of the plaintiff.

532.    Craig Donais violated the implied covenant of good faith and fair dealing by failing to protect the interests of the Plaintiffs.

533.    Craig Donais was willful in his disregard for the welfare of the Plaintiffs and caused damages to Plaintiffs.

534.    By breaching the confidentiality of that attorney-client relationship, and by doing so in a particularly nasty, malicious, bad faith, harmful way, Craig Donais breached this implied contract and the attendant covenant of good faith and fair dealing.

535.    Similarly, every wrongful act or harm resulting from the acts of Craig Donais that flowed from the 2017 event in which the client relationship was formed is also a breach of implied contract and a breach of the covenant of good faith/fair dealing.

536.    By the above-described conduct, inter alia, the Craig Donais knowingly, improperly, malevolently, and intentionally breached its implied covenant with the plaintiffs.

537.    Through his actions and inactions and by the conduct alleged herein, Craig Donais breached his duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests, and caused harm to plaintiffs.

538.    As a direct and foreseeable consequence of Craig Donais' actions, the plaintiffs suffered damages.

539.    As a result thereof, the plaintiffs has been and continued to be injured and suffer damages.

540.    This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely. Events after June 2021 through 2023 are timely on their own, and are still thus timely.

---

## SECTION 5: CLAIMS PERTAINING TO VIOLATIONS OF THE NH CONSUMER PROTECTION STATUTE (RSA 358-A)

---

## I. COUNTS PERTAINING TO VIOLATIONS OF THE NH CONSUMER PROTECTION STATUTE

### A. COUNT 8 - VIOLATIONS OF THE NH CONSUMER PROTECTION STATUTE
#### (as to Craig Donais, Donais Law Offices PLLC and Russell Hilliard)
##### 1. Overview

541.    The preceding paragraphs are incorporated by reference as if set out in full herein.

542.    The New Hampshire Consumer Protection Act ("NHCPA") prohibits the use of "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358–A:2.

543.    The Act provides a non-exhaustive list of prohibited practices, including "[d]isparaging the goods, services, or business of another by false or misleading representation of fact." Id. § 358–A:2, VIII.

544.    Because clients are "consumers" of the lawyer's trade or professional work, the NH consumer protection act law applies to lawyers.

545.    Thus, attorneys can be held accountable under the NH consumer protection act, and that can include negligent as well as intentional misrepresentations.

546.    The practice of law has been held as "trade or commerce" under the act, which prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

547.    Craig Donais/Donais PLLC is engaged in trade/commerce as defined by NH consumer protection act.

548.    At all times relevant to this action, Craig Donais was engaged in the practice of law in New Hampshire as a trade and commerce within the meaning of New Hampshire law.

549.    Craig Donais/Donais PLLC engaged in unfair and deceptive acts against the plaintiff.

550.    Donais's conduct falls within RSA 358-A because it was undertaken in part for commercial/entrepreneurial purposes including to undermine the plaintiffs, through defamation, interference, etc., in order to protect his career and professional reputation, to protect his trade, to protect his malpractice insurance coverage. This includes leveraging and misusing his position on the Manchester NH Crimeline board to gain favors to help him protect his career and professional reputation including using it as a springboard to weaponize and disseminate defamatory statements about the plaintiffs and create the appearance of legitimacy to those defamatory statements. Craig Donais's conduct was further "entrepreneurial" as he deployed defamatory statements about the plaintiff to shield himself from losing his law license on account of the complaints of misconduct alleged by the plaintiffs, an unfair trade practice under RSA 358-A:2. This constitutes an

'entrepreneurial' business interference actionable under RSA 358-A. Under Wong v. Ekberg, 175 N.H. 127 (2022), such business-motivated conduct by attorneys falls within CPA coverage.

## 2. Unfair Acts of Defamation

551.    These unfair and deceptive acts by Craig Donais/Donais PLLC stem from lies told by Craig Donais about communications he had with the plaintiff while plaintiff was a client or prospective client.

552.    A lawyer's liability for multiple damages and attorney fees may generally be found under NH consumer protection act. The court looks at the egregiousness of the case in deciding about multiple damages and come down strongly on attorneys who lie and do not do what they agreed to do.  This goes beyond negligence, or simply making a mistake that causes damages.

553.    Defamatory statements are actionable under NH consumer protection act.

554.    Craig Donais engaged in unfair and deceptive acts by misrepresenting facts, fabricating evidence, and making false accusations.

## 3. Unfair Acts of Tortious Interference

555.     Craig Donais engaged in intimidation to threaten and coerce the plaintiffs from making/pursuing a bar complaint against him.

## 4. Unfair Acts of Race Discrimination

556.     Craig Donais engaged in intimidation to threaten and coerce the plaintiffs from making/pursuing a bar complaint against him.

## 5. Unfair Acts of Race Discrimination

557.    Craig Donais' unethical conduct including exploiting racial bias, constitutes unfair/deceptive acts under RSA 358-A.

558.    Racial stereotyping, whether as retaliation or discrimination, perpetrated by falsely characterizing a prospective client interview to injure the prospective client may well constitute an unfair business practice giving rise to a violation of NH consumer protection act. See Ellis v. Safety Insurance, 41 Mass. App. Ct. 630 (1996)(Racial harassment perpetrated during the course of an insurance claim investigation may well constitute an unfair business practice giving rise to a violation of G. L. c. 93A.).

## 6. Unfair Acts of Breaching Client Confidentiality

559.    Craig Donais's disclosure of client discussion information was deceitful. Craig Donais's disclosure of client discussion information and the results therefrom were extreme and outrageous and utterly intolerable. Craig Donais' misuse of confidential information and defamation constitutes "unfair trade practices" under RSA 358-A. Barrows, 141 N.H. at 389.

560.    Craig Donais' breach of his fiduciary duty is so clear and obvious expert testimony is not required. See Harris v. Harris, 555 N.E.2d. 10, 19 (Ill.App. 1990).

561.    Craig Donais's conduct was and unfair, deceptive and unethical. Craig Donais engaged in unfair and deceptive acts.

562.    These acts violate RSA 358-A, which prohibits unfair trade practices and deceptive conduct.

## 7. Injury

563.    Craig Donais's unfair and deceptive conduct has injured (damaged) Bisasor.

564.    As a result of Craig Donais's unfair and deceptive conduct, Bisasor sustained injury and loss. Craig Donais caused Bisasor to suffer emotional distress.

565.    The damages Bisasor sustained were directly, proximately and solely caused by Craig Donais's unfair and deceptive conduct and breach of his duty as set forth above.

566.    Craig Donais and Donais PLLC's actions directly harmed Plaintiff's business reputation. Barrows v. Boles, 141 N.H. 382, 389 (1996).

567.    Plaintiff has been harmed by Craig Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

568.    As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

569.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

570.    The plaintiff suffered economic and reputational damages as a result.

## 8. Other Unfair and Deceptive Acts by Craig Donais

571. Other unfair and deceptive acts by Craig Donais include:

   a. Craig Donais' conduct in 2019 was also undertaken to protect his law firm from losing revenue due to the attempts by the plaintiff to hold Craig Donais accountable. This constitutes an 'entrepreneurial' business practice actionable under RSA 358-A. Wong v. Ekberg, 175 N.H. 127 (2022).

   b. Craig Donais' conduct in 2021 in misrepresenting the intent to settle claims but was intended as a trojan horse to sabotage the global settlement with Hilton hotels, was also undertaken to "save face" and to protect his law firm from losing revenue due to the attempts by the plaintiff to hold Craig Donais accountable. This also constitutes an 'entrepreneurial' business practice actionable under RSA 358-A. Wong v. Ekberg, 175 N.H. 127 (2022).

   c. Craig Donais breached his duty to the plaintiff as a prospective client and former prospective client.

   d. Craig Donais also breached the covenant of good faith and fair dealing with the plaintiff.

   e. Craig Donais divulged confidential information about the plaintiff to his friends, family members including his adult son Garrett Donais and teenage son Aiden Donais, to the Manchester NH Crime-Line board, and his other family members, his neighbors and his colleagues.

   f. Craig Donais in bad faith disclosed confidential client information regarding Bisasor's conversation with several people and used it to try to injure, defame Bisasor. Bisasor and Anderson has been forced to file bar complaints and civil actions against Craig Donais in order to stop Craig Donais from injuring and defaming Bisasor and Anderson.

   g. Craig Donais violated continuing fiduciary duties owed to a former client by engaging in deceptive conduct designed to harm the plaintiff.

   h. Craig Donais made false statements about the plaintiff with intent to deceive and gain unfair advantage and through fraudulent misrepresentations;

   i. Craig Donais abused his position as an attorney and his relationships to gain unfair advantage over his former client;

   j. Craig Donais engaged in conduct that violates established professional and ethical standards governing attorney conduct in a manner that harms Plaintiff.

   k. Craig Donais' conduct was willful and knowing, as evidenced by his deliberate deception, his awareness of his professional obligations, and his intentional efforts to avoid accountability for his misconduct.

   l. Craig Donais' conduct involved dishonesty, fraud, deceit, and misrepresentation, satisfying the requirements for liability against attorneys.

   m. Craig Donais' actions were done intentionally and with malice, constituting willful and knowing violations.

   n. On information and belief, Craig Donais intentionally lied to his malpractice insurance carrier in order to deprive Bisasor of access to his (Craig Donais's) malpractice insurance policy proceeds.

## 8. Other Unfair and Deceptive Acts by Hilliard

572. Unfair and deceptive acts by Hilliard include:

   a. Hilliard' conduct in interfering with plaintiff's contractual and advantageous relationships was undertaken to undermine the plaintiffs in order to protect his career and professional reputation. This constitutes an 'entrepreneurial' business interference actionable under RSA 358-A. Wong v. Ekberg, 175 N.H. 127 (2022).

## 9. Conclusion

573. WHEREFORE, Bisasor demands that judgment enter against Craig Donais for at least $500,000.00 or such other amount sufficient to compensate him for all of his damages, exemplary damages, interest, costs, attorney's fees and such other relief as the Court deems just and proper.

574. This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely. Events after June 2021 through 2023 are timely on their own, and are still thus timely.

---

**SECTION 6: CLAIMS PERTAINING TO RACE DISCRIMINATION & RETALIATION IN VIOLATION OF THE NEW HAMPSHIRE LAW PROHIBITING RACE DISCRIMINATION BY CRAIG DONAIS**

---

## I. FACTS PERTAINING TO RACE DISCRIMINATION CLAIM

575.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

576.    Craig Donais breached his contract with plaintiff and racially harassed plaintiff in violation of the NH law on discrimination.

577.    Craig Donais have also engaged in racial harassment or aided and abetted in racial harassment of the plaintiff, by treating the plaintiff in a hostile manner through activities that are tantamount to mocking, jeering, and taunting the plaintiff as he sought to resist or oppose racial harassment. Craig Donais has also sought to racially stereotype the plaintiff as a race-baiter, a criminal, as a violent and dangerous person, and as a troublemaker that should be punished, simply because he has to speak up and speak out against the wrongs done to him by the defendants. Craig Donais also sought to wrongfully use members of a non-profit board to further engage in racial harassment of the plaintiff in order to intimidate and retaliate against the plaintiff for opposing, resisting, and exposing and seeking to hold accountable the defendants for their racially harassing and racially stereotyping conduct towards the plaintiff.

578.    This racially harassing conduct included the false allegation that plaintiff accused Craig Donais of racism because Craig Donais declined to represent him, as outlined previously in this complaint. Attorney Elliott Berry (well-known and well-respected attorney in NH experienced with discrimination matters) who is plaintiff's former legal counsel, confirmed to the plaintiff that such conduct is racially harassing or discriminatory, as Craig Donais sought to use the plaintiff's race against him as a black male in order to subject him to contempt, ridicule and diminished esteem and credibility. Craig Donais' act of inserting race into his dealings with the plaintiff (which the plaintiff never did) was emblematic of the type of wrongful acts that Craig Donais and the defendants engaged in towards the plaintiff.

579.    Craig Donais also used the fact that plaintiff originally complained of discrimination with the original hotel defendants, as evidence that plaintiff was lying in denying that plaintiff had accused Craig Donais of racism. This is an utterly oppressive and harassing tactic by the defendants that was perpetrated against the plaintiff. This is precisely the kind of sophisticated race trap that Craig Donais had in mind when he concocted the scheme to falsely accuse plaintiff of accusing Craig Donais of racism because he declined to represent the plaintiff.

580.    Craig Donais have intentionally engaged in racial harassment against Plaintiff with respect to and flowing out of the implied contract that plaintiff had with Craig Donais, because of Plaintiff's race as a black male; and has classified or sought to classify plaintiff in ways that adversely affected his implied contract with Craig Donais and adversely affected his status as a former client and customer of Craig Donais, because of race.

581.    Craig Donais have engaged in a continuing practice of racial harassment, racial stereotyping and racialized character assassination against the plaintiff based on race including use of subtle dog whistles.

582.    Plaintiff, as an African American, clearly belongs to a protected class.

583.    The fabrication of false allegations of racism, the dissemination of racially charged statements, and the use of police to intimidate and retaliate against Plaintiff all support a prima facie case.

584.    The conduct was motivated by racial bias, as evidenced by the racial stereotypes invoked and the timing of the false reports following Plaintiff's complaints and legal actions.

585.    Craig Donais' targeted Plaintiff due to his race, fabricating allegations that exploited stereotypes to undermine his housing and business relationships and thus interfered with Plaintiff's contractual rights by fabricating allegations that exploited racial bias. Thus, the defendants deliberately exploited racial stereotypes and fabricated allegations of racism to interfere with the plaintiff's contractual and personal relations. This interfered with Plaintiff's right to contract (Comcast v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009 (2020)).

## II. COUNTS PERTAINING TO RACE DISCRIMINATION CLAIM

586.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

## II. COUNT 10 - COMMON-LAW CIVIL RIGHTS / INTENTIONAL RACIAL INTERFERENCE AND RACE DISCRIMINATION PURSUANT NH LAW AGAINST DISCRIMINATIO (RSA 354-B)
### (as to Craig Donais)

587.    Plaintiff incorporate by reference all paragraphs of this Complaint as though fully stated herein seriatim.

### A. Overview

588.    This count asserts that Craig Donais engaged in racial discrimination and retaliation in violation of state law, which guarantees protection from racial discrimination, as well as under common law.

589.    The plaintiff here asserts both a common law private cause of action and a statutory cause of action under RSA 354-B.

### B. Key Facts

590.    Plaintiff Andre Bisasor is an African-American citizen of Massachusetts.

591.    Craig Donais is a white attorney licensed in New Hampshire and, at all relevant times, acted individually and on behalf of Donais PLLC.

592.    Plaintiff and Craig Donais had an attorney-client relationship governed by an implied contract for legal services and by fiduciary duties imposed under New Hampshire law.

593.    Beginning in or about March 2019 and continuing through at least May 2020, Craig Donais, directly and through communications orchestrated with the other Maryg Donais, engaged in a campaign of racially-charged intimidation, aimed at preventing Plaintiff from (a) enforcing the existing attorney–client contract obligations, (b) entering future professional contracts, and (c) vindicating his legal rights.

594.    Craig Donais have thus also violated both common law state law prohibition of discrimination

595.    Each of the foregoing acts of intimidation was motivated, at least in part, by Plaintiff's race and national origin, as evidenced by Craig Donais's explicit use racially-charged stereotypes and dog-whistles designed to stigmatize the plaintiff and stemming from his false accusation that plaintiff accused him of racism, as well to explicit references by Craig Donais about Plaintiff's being a "foreigner", having "foreign-sounding speech" and "foreign-sounding" name, among other things.

596.    Craig Donais engaged in intentional conduct in violation of these laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiff's protected rights. Craig Donais engaged in racial harassment, racial stereotyping and racial ridicule and scorn, and mocking that the defendants had initiated against the plaintiff as a black man.

597.    Craig Donais also acted to interfere with contractual relations including because of racial animus and racial bias against the plaintiff.

598.    The facts demonstrate that Craig Donais fabricated racial accusations, exploited racial stereotypes, and disseminated false statements to third parties, all motivated by racial animus.

599.    The plaintiff's claims are supported by evidence of racial animus, discriminatory statements, and adverse actions taken because of race.

### C. RSA 354-B:1

600.    RSA 354-B:1 guarantees every person in New Hampshire the right to engage in lawful contracts and transactions free from actual or threatened physical force, violence, or coercion motivated by race.

601.    RSA 354-B:3 authorizes a civil action by any person aggrieved by such misconduct and permits recovery of compensatory damages, injunctive relief, and other appropriate remedies.

602.    By the conduct set forth below, Craig Donais intentionally interfered with Plaintiff's rights through intimidation motivated by Plaintiff's race, thereby violating RSA 354-B.

603.    NB: Plaintiff acknowledges that RSA 354-B currently lacks a private cause of action while the pending Senate Bill 139 waits to take effect on January 1, 2026. The New civil rights bill on RSA 354-B has been passed in the NH legislature. SB 139, passed in 2025, will take effect on January 1, 2026. SB 139 will apply retroactively to pending actions under State v. Ingham, 149 N.H. 256 (2003). Plaintiff hereby preserves the statutory claim for when SB 139 becomes effective. The state-law court can decide this issue post-remand.

## D. Common Law Claim

604.    Plaintiff asserts a common law claim for intentional interference with civil rights based on racial animus. New Hampshire recognizes that conduct violating public policy, including racial intimidation and harassment, gives rise to common law tort liability. The factual allegations of intimidation motivated by racial animus establish a viable common law claim distinct from defamation, supporting enhanced damages for violation of fundamental civil rights.

605.    The pattern of false accusations, the racialized language, and the intent to harm Plaintiff's reputation and legal rights establish a violation of both common law and state law. See Crawford v. Metropolitan Government of Nashville, 555 U.S. 271 (2009); Fitzgerald v. University of Massachusetts, 2 F.3d 131 (1st Cir. 1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

606.    Similarly, markedly hostile treatment is also evidence of retaliatory animus. See also Christian v. Wal-Mart Stores Inc., 252 F.3d 862, 868 (6th Cir. 2001) at 872 (Service is considered "markedly hostile" when it is (1) so contrary to the establishment's financial interests, (2) so far outside of widely accepted business norms, and (3) so arbitrary on its face, that it supports a rational inference of discrimination. Id. at 871).

607.    By the acts stated in the prior paragraphs, Craig Donais has violated both common law and state law by racially harassing plaintiff and committing racial harassment against plaintiff because of his race as African American [black].

608.    Craig Donais' racially-motivated campaign to interfere with Plaintiff's contractual relationships with the Manchester Police Department resulted in loss contract worth several thousands' of dollars.

609.    Plaintiff presents an inference of racial harassment/discrimination for which Craig Donais does not and cannot offer a legitimate non-discriminatory reason for his actions. Any reasons given or to be given by Craig Donais were or is a mere pretext for discrimination.

## E. Note Regarding Evidence of Discrimination Under Common Law And State Law

610.    The law recognizes that racial harassment and retaliation can be proved through direct or circumstantial evidence. Harris v. Forklift Sys., 510 U.S. 17 (1993).

   a.    Even isolated comments may constitute direct evidence of discrimination if they are "contemporaneous with the [adverse action] or causally related to the [adverse action] decision making process." See Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723 (7th Cir. 1998).

   b.    This type of direct evidence of discriminatory intent does not require "a virtual admission of illegality." See Venters v. City of Delphi, 123 F.3d 956 (7th Cir. 1997) at 973.

   c.    For example, direct evidence need not take the form of an admission where the defendant states "I'm [taking this adverse action] because you're in a protected group." See Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999); see Venters, 123 F.3d at 973.

   d.    The court in Venters explained that "the evidence need not be this obvious to qualify as direct evidence." Id. And the Sheehan court explained why: because such a requirement "would cripple enforcement of the ... discrimination laws." See Sheehan, 173 F.3d at 1044.

   e.    The direct evidence of such remarks must, however, establish that race was an important factor motivating the challenged action. See also Lounds v. Lincare, Inc., 812 F.3d 1208, 1224 (10th Cir. 2015) ("[S]tray remarks can prove to be invaluable insights into biases at every level of consciousness that may be rife but invisible within the workplace.... [They] may bespeak a workplace culture in which certain language or sentiments are tolerated and perhaps encouraged or rewarded.")).

611.    Evidence, which includes conduct or statements by persons involved directly reflecting the discriminatory attitude, constitutes 'direct evidence' of discriminatory animus.

## F. Harm

612.    As a direct and proximate result of Craig Donais' intentional, deliberate, and willful racially harassing acts, Plaintiff have suffered damages. Craig Donais' actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

613.    As a direct and proximate result, Plaintiff has suffered economic losses in amounts exceeding thousands of dollars in lost business opportunities, together with emotional distress, humiliation, and damage to reputation, all in amounts to be proven at trial.

614.     Because Craig Donais' actions were willful, wanton, and undertaken with actual malice, Plaintiff is entitled to enhanced damages under RSA 354-B:3-b, together with costs, reasonable attorney's fees, and such other relief as the Court deems just.

615.     WHEREFORE, Plaintiff demands judgment against Craig Donais for compensatory and enhanced damages, injunctive relief enjoining further discriminatory or retaliatory conduct, reasonable attorney's fees and costs pursuant to RSA 354-B:3-b, pre- and post-judgment interest, and any additional relief the Court deems equitable and just.

616.     Because RSA 354-B claims do not require exhaustion with the New Hampshire Commission for Human Rights, no administrative-remedy allegation is necessary.

617.     This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely. Events after June 2021 through 2023 are timely on their own, and are still thus timely.

---

## SECTION 7: CLAIMS PERTAINING TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) BY CRAIG DONAIS

---

## I. FACTS PERTAINING TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (as to Craig Donais and Donais Law Offices PLLC)

618.     Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

619.     Craig Donais' conduct, spanning from 2019 through 2023, constitutes intentional infliction of emotional distress through a systematic pattern of extreme and outrageous conduct designed to cause severe emotional harm to Plaintiff based on defamation, racial discrimination, tortious interference professional betrayal, and retaliation.

620.     Craig Donais' conduct was undertaken intentionally or recklessly, with knowledge or reckless disregard that such conduct would cause severe emotional distress to Plaintiff. This conduct demonstrates a conscious intent to inflict emotional harm.

621.     Craig Donais' actions directly caused Plaintiffs to suffer severe emotional distress, including anxiety, stress, sleeplessness, and mental anguish, as documented through Plaintiff's own testimony and evidence. The duration, persistence, and egregiousness of his wrongful conduct establishes that Plaintiff's emotional suffering was both severe and credible.

622.     As a practicing attorney and holding fiduciary duties to Plaintiffs, Craig Donais owed a duty to plaintiff. His intentional acts and reckless violations of these duties, especially when motivated by racial bias, constitute conduct that is so extreme and outrageous that it exceeds all bounds tolerated in a civilized society. This conduct demonstrates an utter disregard for Plaintiff's rights and personal well-being.

623.     The pattern of defamatory, discriminatory, abusive, harassing, and retaliatory conduct, reflects a deliberate effort to cause Plaintiffs severe emotional harm, constituting the requisite intent and outrageousness for IIED.

624.     The damages described herein, including stress, anxiety, sleeplessness, and emotional trauma, are the natural and foreseeable consequences of Craig Donais' intentionally outrageous conduct, and Plaintiffs sufficiently alleges severe emotional distress, with ongoing  impact.

625.     Courts have recognized that attorney misconduct involving racial discrimination and systematic deception satisfies the standard of "extreme and outrageous" conduct necessary for IIED claims, especially when, as here, the conduct involves breach of fiduciary duties, professional misconduct, and ongoing retaliation against a vulnerable client.

626.     Moreover, courts have recognized that attorneys' superior knowledge and professional position make their misconduct particularly egregious and create heightened awareness of the emotional harm their conduct will cause to clients.

627.     Craig Donais' intent to cause emotional distress is evidenced by his deliberate pattern of defamatory conduct, deception, and discriminatory and retaliatory acts, spanning multiple years. The duration and

persistence of Plaintiff's emotional distress, spanning events from 2019 through 2023, demonstrates its severe and lasting nature.

628.    Plaintiff's emotional distress manifested through multiple objective symptoms documented throughout the relevant time period. These symptoms include chronic stress and anxiety, difficulty sleeping and concentration problems caused by the breach of fiduciary duty, the mental anguish resulting from the multiple defamations from an attorney, who used the plaintiff's race against him based on his race, and the dignitary harm and injury from being racially stigmatized.

629.    The severity of Plaintiff's emotional distress is heightened by the discriminatory nature of the Craig Donais' conduct and the professional context from which it stemmed, that of being defamed and racially stigmatized by a former attorney, who is supposed to protect a former client's interests, and this is also due to the fiduciary nature of the relationship and the enhanced vulnerability of clients.

630.    The professional context strengthens Plaintiff's IIED claim in several ways. Heightened duty of care exists because attorneys owe clients enhanced obligations of loyalty, competence, and non-discrimination that create corresponding heightened liability when those duties are breached through discriminatory conduct. Client vulnerability is recognized because clients depend on attorneys' professional judgment and integrity, making them particularly susceptible to emotional harm when attorneys exploit their fiduciary position for discriminatory purposes. Professional advantage exploitation occurs when attorneys use their superior legal knowledge and understanding of procedural requirements to avoid accountability while continuing to harm clients, which courts view as particularly egregious conduct. Further, the consumer protection context reinforces the IIED claim because of the court's interest in protecting consumers of professional services from discriminatory treatment and attorney misconduct.

631.    As a direct and proximate result of Craig Donais' intentional infliction of emotional distress, Plaintiff suffered and continues to suffer significant damages. These damages include compensatory damages for the severe emotional distress, mental anguish, and psychological harm caused by Craig Donais' extreme and outrageous conduct, expenses and costs for treatment of emotional distress symptoms, loss of enjoyment of life and impairment of daily activities caused by the ongoing psychological harm, dignitary damages for the harm to Plaintiff's reputation and standing in the community resulting from defamation and racial stigmatization, and punitive damages warranted by the willful, malicious, and discriminatory nature of the Craig Donais' conduct.

632.    Plaintiff seeks judgment for compensatory damages in an amount to be determined at trial but not less than the mid-to-high six-figure range, punitive damages sufficient to deter similar misconduct by attorneys, reasonable attorney's fees and costs under applicable statutes, and such other relief as the Court deems just and proper.

## II. COUNT 11 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (as to Craig Donais and Donais Law Offices PLLC)

633.    Under NH law, the claim requires (1) extreme and outrageous conduct, (2) intent or reckless disregard, (3) causation, and (4) damages.

634.    To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) that the defendants intended to cause, or should have known that [their] conduct would cause, emotional distress; (2) that the defendants' conduct was extreme and outrageous; (3) that the defendants' conduct caused plaintiff distress; and (4) that plaintiff suffered severe distress."

635.    Intentional infliction of emotional distress requires "extreme and outrageous conduct intentionally or recklessly cause[d] severe distress to another."

636.    To be considered extreme and outrageous, the defendants'] conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community." Howcroftv. City of Peabody, 51 Mass.App.Ct. 573, 596 (2001).

637.    Under NH law, to establish this claim, Plaintiff must show that Defendants' conduct was beyond all bounds of decency, intended or recklessly causing severe distress, and that Plaintiff suffered such distress. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573 (2001).

638.    Craig Donais' conduct has been extreme and outrageous conduct as follows:

a. His fabricated lies that plaintiff bugged his office and manufactured recordings was extreme and outrageous conduct.

b. His falsely accusing the plaintiff of being a criminal and being mentally unstable was extreme and outrageous conduct.

c. His attempt to smear plaintiff with the Manchester NH police was extreme and outrageous conduct.

d. His tortious interference with plaintiff's relations with the Manchester NH police was extreme and outrageous conduct.

e. His complete making up out of thin air the false accusation that plaintiff accused him of racism is extreme and outrageous conduct.

f. His breaching of client confidentiality to defame, and injure the plaintiff is extreme and outrageous conduct.

639. Note: This is the conduct of a sociopath. Moreover, to disrupt the sanctity of his home with creating unfounded fear of harm of his wife and children, is the conduct of a sociopath.

640. Craig Donais' conduct, including false accusations of criminality, racial stereotypes, racialized defamation, weaponized harassment, fabricating and disseminating false statements, engaging in interference with established relationships, engaging in harassment, was intentional or reckless causing severe emotional distress was outrageous, malicious, and designed to intimidate and humiliate Plaintiff, and was extreme and outrageous, causing severe emotional distress. Mikell v. Sch. Admin. Unit #33, 158 N.H. 723, 730 (2009).

641. The plaintiff has suffered PTSD, anxiety, and economic damages as a result. The emotional harm includes anxiety, sleep disturbances, depression, and PTSD.

642. The repeated and systemic nature of the conduct, combined with its racial motivation, spanning several years of multiple occasions of conduct, satisfies the elements.

643. Craig Donais knew that making false accusations that plaintiff frivolously accused Craig Donais of racism, would cause emotional distress for the plaintiff.

644. Craig Donais knew that making false accusations that plaintiff was a criminal, was dangerous and violent, and was mentally unstable, would cause emotional distress for the plaintiff.

645. Craig Donais knew that making false accusations that plaintiff was planning to come to their home to physically harm his wife and children, would cause emotional distress for the plaintiff.

646. Craig Donais, by falsely fabricating that plaintiff posed a criminal threat to his family, was laying the groundwork to inflict violence or to have violence inflicted upon plaintiff and his wife, and justify in advance the basis for such violence against the plaintiff and his wife. This conduct was extreme and outrageous, causing severe emotional distress.

647. By accusing plaintiff of mental instability, Craig Donais was directly targeting and smearing plaintiff's mental health, and knew it would cause emotional distress for the plaintiff.

648. Craig Donais knew that by intimidating, retaliating, harassing the plaintiff, it would cause emotional distress for the plaintiff.

649. Craig Donais have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

650. Craig Donais caused or created emotional distress for Plaintiff.

651. It should be noted that this claim is distinct from the emotional distress caused by the Craig Donais' defamatory statements. This claim is not based solely on the facts, acts and statements that give rise to the defamation claims. It arises distinctly from the emotional distress caused by the Craig Donais' defamatory statements. This is shown by the fact that the plaintiff's emotional distress does not only stem from Craig Donais' defamatory acts but also from, for example, Craig Donais' tortious interference acts and race discrimination acts as well as breach of fiduciary duty acts. Therefore, logically, the plaintiff's emotional distress cannot only stem from Craig Donais' defamatory acts and must be distinct from it.

652. Craig Donais intentionally inflicted emotional distress on plaintiff, as a direct and proximate result of Craig Donais' actions and inactions.

653. Plaintiff was caused to suffer severe emotional distress as the result of which a reasonable person in plaintiff's position would have suffered similar emotional distress under like circumstances.

654. Plaintiff sustained damages as a result of Craig Donais' intentional infliction of emotional distress on them.

655. Plaintiff has been harmed by Craig Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of

life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

656.   Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

657.   As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

658.   As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

659.   Note: Plaintiff's IIED claim is distinct from defamation-based emotional distress. This harm is separate from reputational injury and supports independent IIED recovery under Moss v. Camp Pemigewassett, 312 F.3d 503 (1st Cir. 2002).

660.   This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely. Events after June 2021 through 2023 are timely on their own, and are still thus timely.

---

## SECTION 8: CLAIMS PERTAINING TO CIVIL CONSPIRACY

---

## I. COUNT 12 - CIVIL CONSPIRACY
### (as to Craig Donais and Mary Donais)

661.   Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

662.   This count alleges that Craig Donais, in concert with Mary Donais, conspired to commit the wrongful acts outlined above, including defamation, racial discrimination, abuse of process, and interference with contractual relations.

663.   Under NH law, civil conspiracy requires: (1) an agreement between two or more parties; (2) to commit an unlawful act or a lawful act by unlawful means; (3) with an intent to injure; and (4) damages. Clapp v. Goffstown Sch. Dist., 159 NH 206 (2009).

664.   Under NH law, this claim requires (1) an agreement, (2) wrongful acts committed pursuant to the agreement, and (3) damages.

665.   To state a claim for this tort, a plaintiff must allege that "defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if acting independently." Id.

666.   To prove claims for civil conspiracy, the plaintiff must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement. Kurker, 44 Mass. App. Ct. at 188-189. Thus, the law recognizes the tort theory of "common design" in which a defendant may be liable for the tortious acts of another.

667.   To prove such a claim, two elements must be shown: first, that the defendant and others have agreed explicitly or implicitly to perform the act or achieve the particular result; second, that the defendant's "own conduct must be tortious." Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D.Mass.1981).

668.   Craig Donais, in concert with Mary Donais, held a power of coercion they would not have had they acted independently. By including Mary Donais in the scheme to defame the plaintiff, Craig Donais augmented his power to coerce others. Mary Donais agreed or assented to this scheme to harm the plaintiff.

669.   Similarly, Mary Donais encouraged, knew of, and assisted Craig Donais in his defamation of the plaintiff. Mary Donais therefore engaged in conspiring to defame the plaintiff. By adding his wife's name and appealing to the sympathy from others regarding his wife's fears, Craig Donais augmented his power to coerce others into taking action against the plaintiff.

670.   As evident from their email communications discovered via right to know requests obtained by the plaintiff, Craig and Mary Donais agreed to a common design and common purpose to perform or achieve tortious ends with respect to the plaintiff, including defamation, tortious interference with economic relations and breaching fiduciary duty to the plaintiffs. The false and injurious statements by Craig Donais and Mary Donais, in August 2020, also form the basis of a conspiracy claim. See Massachusetts School of Law at Andover, Inc. v. American Bar Association, 952 F. Supp. 884 (D. Mass. 1997).

671.   Mary Donais provided Craig Donais with substantial assistance and encouragement, with the knowledge that such assistance is contributing to a common tortious plan. Mary Donais knew of the unlawful intent to commit tortious acts to injure and damage the plaintiff. See Grant v. John Hancock Mut. Life Ins. Co., 183 F.

Supp. 2d 344, 363 (D. Mass. 2002) (quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 189, 689 N.E.2d 833, 837 (1998)).

672.    Craig and Mary Donais conspired to commit the wrongful acts described above, including disseminating false statements against the plaintiff. The conspiracy was for an unlawful purpose, and the acts were committed in furtherance of that agreement.

673.    The facts demonstrate a pattern of collaboration, communication, and coordinated conduct among Craig and Mary Donais, to defame, intimidate, and harm Plaintiff.

674.    Their actions were motivated by racial bias, personal animus, and financial self-interest. The conspiracy is evidenced by shared communications, joint actions, and the common goal of damaging Plaintiff's reputation and rights.

675.    Craig and Mary Donais coordinated to disseminate defamatory narratives. Their concerted actions meet NH's civil conspiracy standard. Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 212 (2009). Glickman v. Brown, 21 Mass. App. Ct. 229 (1985).

676.    Plaintiff has been harmed by the Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

677.    As a direct and foreseeable consequence of Craig and Mary Donais' actions, the plaintiff has suffered damages.

678.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

679.    This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely.

---

## SECTION 9: CLAIMS PERTAINING TO RUSSELL HILLIARD

---

### I. FACTS PERTAINING TO RUSSELL HILLIARD

680.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

### A. Interference of Contract with the "Primmer" Law Firm Assisting Plaintiffs

681.    In or around the fall of 2019, the plaintiffs entered into an attorney-client relationship with an attorney ("Attorney Jane Doe") at the well-known law firm Primmer, Piper, Eggleston & Cramer PC ("Primmer"), in New Hampshire. This relationship was established pertaining to the plaintiffs seeking legal advice regarding certain matters with their former prospective attorney Craig Donais.

682.    On May 18, 2020, a formal retainer agreement was executed by the law firm and the plaintiffs. See screenshot of excerpt[6] of the retainer agreement.




PRIMMER PIPER EGGLESTON & CRAMER PC

900 Elm Street, 19th Fl.|P.O. Box 3600|Manchester, NH 03105-3600

May 18, 2020

RE:    Legal Consultation
       Terms of Fee Engagement

Dear Mr. and Mrs. Anderson:

Thank you for retaining Primmer Piper Eggleston & Cramer PC in the above-captioned

---

[6] Note: Details of the contract are confidential and protected under attorney-client privilege. The plaintiffs preserve all privilege with respect to attorney-client communications with Attorney Jane Doe and Primmer.

683.    Thus, on May 18, 2020, plaintiffs and Primmer executed a written retainer agreement under which Primmer agreed to provide continuing legal advice to plaintiffs concerning matters relating to Craig Donais.

684.    The agreement outlined ongoing legal advice for matters concerning Craig Donais but did not involve any court appearances or formal representation at that time.

685.    Between May 2020 and September 2020, Primmer billed and plaintiffs paid legal fees for legal advice, legal research and conferences/meetings regarding those matters. Plaintiffs relied on Primmer's expertise and intended to continue the relationship. Primmer further provided legal advice to the plaintiffs and assisted the plaintiffs with understanding their rights under New Hampshire law, but the attorney did not represent the plaintiffs in any proceeding, and as far as plaintiffs knew at the time, the attorney-client relationship with Primmer was not publicly announced.

686.    Hilliard is a senior partner at Upton & Hatfield, LLP in New Hampshire. He is a friend, mentor, fixer and/or legal malpractice attorney for Craig Donais. Hilliard has been involved in various activities within the NH legal community for some time. Hilliard has extensive contacts and networks in the New Hampshire legal community.

687.    In or around September 2020, Hilliard became aware that plaintiffs had a relationship with Primmer, pertaining to the plaintiff's attorney-client interactions with Craig Donais. Hilliard was thus aware of an attorney-client contractual relationship between plaintiffs and Primmer. At this time, Primmer was only privately providing legal advice to the plaintiffs and had not entered any appearance in any court or proceeding on behalf of plaintiffs. Attorney Jane Doe had not contacted anyone on behalf of the plaintiffs regarding the matters for which they sought legal assistance, and the plaintiffs did not authorize Attorney Jane Doe to contact anyone on their behalf. [7]

688.    On or about September 3, 2020, Hilliard, acting outside the scope of any pending litigation, privately contacted Primmer. Through this contact, Hilliard induced Primmer to cease representing plaintiffs or to sever its professional relationship. This contact was made without plaintiffs' knowledge or consent, outside any court proceedings, and was not protected by the litigation privilege because it was not made in the context of an active judicial process. Hilliard, through this private contact with Primmer firm, engaged in conduct that interfered with Primmer's relationship with the plaintiffs, and he did this to stop Primmer from doing business or giving legal advice to the plaintiffs. This was calculated by Hilliard to disadvantage the plaintiffs with respect to advancing their legal interests or vindicating their legal rights against Craig Donais. It was done by Hillard with an improper motive. Were it not for this improper motive and the tortious intent to interfere, Hilliard would not have contacted Primmer. This was a private act done by Hilliard. This was not counsel to counsel contact in litigation. This was a secret act of sabotage done by Hilliard without plaintiffs' knowledge.

689.    Following this contact, Primmer, citing Hilliard's communication and conduct, terminated its retainer agreement with plaintiffs, effectively ending the attorney-client relationship, on or about September 4, 2020. Primmer indicated that because of the situation initiated by/with Hilliard, they could no longer assist the plaintiffs with providing legal assistance or advice on matters adverse to Hilliard or his client Donais.

690.    Attorney Jane Doe at Primmer communicated to plaintiffs the fact that the new acts/situation created by Hilliard, forced a breach of relationship with the plaintiffs. [Note: it should be noted that plaintiffs informed Attorney Jane Doe that Hilliard was Craig Donais' attorney, from the first time that the plaintiffs contacted Primmer for legal assistance in the fall of 2019, and neither Hilliard nor Donais created any problem with respect to Primmer establishing a relationship with the plaintiffs, from the outset.]

691.    The Primmer firm then sought to arrange for a successor attorney or law firm to assist the plaintiffs but was unsuccessful. However, Primmer still ended the relationship with the plaintiffs, on account of Hilliard's actions, nonetheless.

692.    Plaintiffs had anticipated further contractual relations with Primmer ongoing into the future but this was not realized on account of the interference by Hilliard. Plaintiffs relied on Primmer's legal advice and intended to continue their relationship; but because of Hilliard's interference, they lost the benefit of ongoing legal

---

[7] Based on reasonable inference, it appears that Hilliard came to know of Primmer's relationship with the plaintiffs, informally, as a result of someone else working at the Primmer firm who shared the information outside the firm. Either way, the bottom line fact is that Hilliard knew of the relationship, when he sought to interfere with the relationship..

counsel, resulting in damages in lost legal opportunities, legal fees for alternative counsel, and emotional distress.

693.    Hilliard made defamatory comments about plaintiffs to Primmer and insisted that Primmer sever their contractual relationship with the plaintiffs, and insisted that Primmer should not do business with the plaintiffs. But for Hilliard's statements and conduct, Primmer was ready, willing, and able to continue representing plaintiffs, and had already scheduled internal tasks and conferences with the plaintiffs related to Donais matters, just prior to Hilliard's contact.

694.    Hilliard knew that Primmer was influenced by him to break the contractual relationship with the plaintiffs because Primmer told him that this is what they were doing or going to do. Hilliard was thus fully aware that Primmer was going to sever and did severe their relations with the plaintiffs because of him, and he thus was fully aware of what he did and the results therefrom as he watched the fruits of his plan come to fruition. This was a private act done by Hilliard. This was not counsel of one party in a case contacting counsel for another party in the case. This was a secret act of sabotage done by Hilliard without plaintiffs' knowledge or consent, outside of any judicial proceeding and irrelevant to any judicial proceeding. Hilliard, with clever subterfuge, specifically targeted the plaintiffs for interference with the relationship with Primmer through his conduct. [Note: Acts of private interference, such as contacts with attorneys or law firms outside of the legal process, are not protected by the litigation privilege.]

695.    Hilliard interfered with a contract of the plaintiffs that they had with a third party, (Primmer). This contract was between the plaintiffs and Primmer. The relationship was initially formed in 2019. A contract was executed in May 2020. The contract was ended in September 2020. The contract was ended because Hilliard, becoming aware of and knowing of Primmer's contractual relationship with the plaintiffs, through his extensive networks in the NH legal community, contacted the Primmer and engaged in sabotage of that contractual relationship. Hilliard's conduct was improper because he knowingly made false and threatening statements outside of any litigation context, aimed solely at disrupting plaintiffs' access to legal counsel, in violation of NH Rules of Professional Conduct Rule 4.4(a) and other standards.

696.    This contact by Hilliard was done with an ulterior purpose, under a pretextual guise, to induce Primmer to break its relationship with the plaintiffs, and to wrongly block, prevent, or undermine the ability of the plaintiff to obtain legal assistance or support. Hilliard thus sought to intentionally interfere with that relationship in order to block, prevent or undermine the ability of the plaintiffs to obtain legal assistance, and he succeeded by inducing Primmer to breach their contract with the plaintiffs. Plaintiffs was harmed as a result. As a direct result of Hilliard's interference, plaintiffs lost the benefit of their retainer contract with Primmer, incurred damages relating to searching for replacement-counsel, and suffered harm in pursuing legal matters relating to Donais, resulting in additional damages.

697.    This is an unconscionable practice. It is unfair, deceptive and egregious. African-American plaintiffs are under-represented in NH and already have a challenge in finding competent plaintiff-side attorneys in NH (where the plaintiffs-side bar is already very small to begin with). To further seek to block the plaintiffs from obtaining legal assistance is beyond the pale and extreme and egregious conduct.

698.    Note: As will be further shown below[8], Hilliard had a pattern of doing this systematically to the plaintiffs, abusing and misusing his influence in NH to effectuate this tortious activity to impede, hamstring, frustrate, block and harm the plaintiffs.

699.    The above establishes a claim of interference with contractual relations by improper means and improper motives.

---

[8] On information and belief, Hilliard has done this on other occasions with other attorneys, in order to block, prevent or undermine the ability of the plaintiff to obtain other legal assistance. It should be noted that the plaintiff's bar for individual plaintiffs in NH is very small compared to the defense bar. Given Hilliard's extensive contacts and networking in NH, he evidently knows who most of the plaintiff-side attorneys for individuals are in NH, especially for the areas of law in which plaintiffs may have claims pertaining to Donais or himself. It would not be difficult for him to know this or to figure this out. It is thus to be inferred from the above facts that Hilliard proactively contacted several of these attorneys in an attempt to block plaintiffs from securing prospective contractual relationship and Hilliard has engaged in widespread conduct designed to prevent the plaintiffs from securing legal assistance or representation in NH, which conduct was designed to freeze the plaintiffs out of the plaintiff-side legal services market in NH.

## B. Interference With Advantageous Relations with Attorney John Doe

700.    Since 2017, the plaintiffs have consulted informally with an attorney ("Attorney John Doe") at a legal organization in New Hampshire, on an as-needed basis. Between 2017 and February 2022, Attorney John Doe consulted with plaintiffs on numerous occasions without charge, creating a longstanding pattern of professional assistance. It should be noted that the attorney previously represented the plaintiffs in a certain case in NH but the formal representation was concluded after the case ended. However, the plaintiffs and attorney John Doe had an informal agreement or arrangement that allowed the plaintiffs to ask legal questions or seek informal legal advice from time to time as needed for future matters thereafter.

701.    Thus, the plaintiffs had an advantageous relationship with an attorney at Attorney John Doe. The attorney was providing legal advice to the plaintiffs and assisting the plaintiffs with understanding their rights under New Hampshire law including but not limited to matters involving Craig Donais and on matters related to attorney-client breach of duty violations of the rules of conduct by Craig Donais.

702.    Hilliard is a senior partner at Upton & Hatfield, LLP in New Hampshire. He has been involved in various activities within the NH legal community for some time. Hilliard has extensive contacts and networks in New Hampshire. Hilliard knew of plaintiffs' relationship with Attorney John Doe.

703.    In or around March/April 2022, Hilliard, aware of this ongoing relationship, sought to interfere with plaintiffs' arrangement with Attorney John Doe. Hilliard was aware of an ongoing advantageous relationship between plaintiffs and Attorney John Doe.

704.    Hilliard contacted Attorney John Doe and engaged in conduct that had the purpose of interfering with the advantageous relationship with the plaintiffs, and he did this to stop this Attorney John Doe from doing with assisting or giving legal advice to the plaintiffs.

705.    As a direct result, Attorney John Doe ceased advising plaintiffs, causing damages of several thousands of dollars in legal fees, and lost assistance, as well as emotional distress.

706.    Hilliard's conduct was improper because it employed false statements, subterfuge, deception, coercion and intimidation tactics, outside of any legitimate legal process, violating NH Rules of Professional Conduct Rule 8.4(c) and the standards of good faith.

707.    This contact by Hilliard was done with an ulterior purpose, under a pretextual guise, to induce Attorney John Doe to break his relationship with the plaintiffs, and to wrongly block, prevent, or undermine the ability of the plaintiff to obtain legal assistance or support. This contact was not made pursuant to litigation or as part of any litigation. This was a private business interference unrelated to any pending proceeding. Hilliard's statements and actions were not pertinent to any judicial proceeding. This was a private act done by Hilliard. This was not counsel of one party in a case contacting counsel for another party in the case. This was a secret act of sabotage done by Hilliard without plaintiffs' knowledge or consent, outside of any judicial proceeding and irrelevant to any judicial proceeding. Hilliard targeted the plaintiffs for interference with the relationship with Attorney John Doe.

708.    Following Hilliard's contact, Attorney John Doe told the plaintiffs, that because of the acts/situation initiated by Hilliard, he could no longer assist the plaintiffs with providing legal assistance or advice on matters adverse to Hilliard or his client Donais.

709.    Attorney John Doe communicated to the plaintiffs that the acts/situation initiated by Hilliard, was the reason for no longer continuing the advantageous relationship.

710.    Thus, as of April 2022, the plaintiffs no longer had an advantageous relationship with Attorney John Doe. Note: This is the same pattern of conduct that Hilliard directed at Primmer, previously in September 2020, which confirmed this pattern was not some big coincidence but intentional targeting of plaintiffs' advantageous relationships.  It should be noted that Hilliard is unlikely to have any reason to initiate contact or interference with Attorney John Doe, given Hilliard's legal practice and history, outside the intent to tortiously target plaintiffs' relationship with Attorney John Doe.

711.    Hilliard thus sought to intentionally interfere with that relationship in order to block, prevent or undermine the ability of the plaintiffs to obtain legal assistance, and he succeeded. Plaintiffs was harmed as a result.

712.    Hilliard improperly and intentionally interfered with advantageous relations of the plaintiffs that they had with a third party, Attorney John Doe. The advantageous relations involved an arrangement where plaintiffs were able to seek and received legal assistance, advice or guidance from Attorney John Doe. This advantageous relations was between the plaintiffs and Attorney John Doe. This was an advantageous relationship that the

plaintiffs had with Attorney John Doe. The advantageous relations was ongoing, since 2017 and ended in 2022 because Hilliard, who was aware of this advantageous relationship with the plaintiffs, directly sought out this NH legal organization attorney in order to induce a break in this relationship. Hilliard intentionally engineered a situation designed to create interference with the advantageous relationship with Attorney John Doe. Hilliard thus engaged in intentional improper interference and sabotage of the advantageous relationship. Hilliard's conduct was intended solely to disrupt plaintiffs' expectancy of continued legal assistance. Hilliard's interference was improper because it employed conduct contravening Restatement (Second) of Torts § 767 factors (a) and (d) and N.H. Rule 8.4(c).

713.    Plaintiffs had anticipated further advantageous relations with Attorney John Doe in the future but this was not realized on account of the interference by Hilliard.

714.    The above establishes a claim of interference with advantageous relations by improper means and improper motives.

## C. Conclusion

715.    In sum, Hilliard directly contacted Primmer in 2020 and Attorney John Doe in 2022, precisely to interfere, sabotage and end the contractual or advantageous relations that the plaintiffs had with them.

716.     Hilliard did this in order to harm the plaintiffs and to gain advantage over the plaintiffs in NH.

717.    Consequently, the plaintiffs suffered injury and loss as a result of the Hilliard's acts.

718.    NB: The plaintiff has not disclosed the names of these specific attorneys at this stage because of privacy reasons that may impact the reputation of these attorneys. Given the delicate nature of this situation, however, the plaintiff will disclose these names under impoundment or in camera, or in discovery. If the plaintiff is required to disclose the names before that, the plaintiff requests that the court so instructs the plaintiff.

## II. COUNTS PERTAINING TO RUSSELL HILLIARD

719.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

720.    Under New Hampshire law, there are two distinct causes of action for interference with business relationships: tortious interference with contractual relations and tortious interference with prospective economic advantage (also called interference with advantageous relations). Both torts serve to protect economic relationships from wrongful third-party interference, based on whether a formal contract exists, or whether the relationship is prospective or based on informal arrangement. See Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc., 145 N.H. 158, 162 (2000); Baker v. Dennis Brown Realty, Inc., 121 N.H. 640, 644 (1981).

## A. COUNT 13: INTERFERENCE WITH [PRIMMER] CONTRACTUAL RELATIONS [IN 2020]
### (as to Russell Hilliard and Upton Hatfield)

721.    To state a claim for intentional interference with existing contractual relations under New Hampshire law, a plaintiff must show that: "(1) plaintiff had a contractual relationship with [a third party]; (2) [defendants] knew of the contractual relationship; (3) [defendants] wrongfully induced [the third party] to breach the contract; and (4) plaintiff's damages were proximately caused by [defendants'] interference." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 229 F. Supp. 2d 70, 73 (D.N.H. 2002) aff'd, 374 F.3d 23 (1st Cir. 2004) (citing Roberts v. Gen. Motors Corp., 138 N.H. 532, 539 (1994)).

722.    New Hampshire follows the Restatement (Second) of Torts § 766 for interference with existing contractual relations. Thus, to establish liability, a plaintiff must prove four elements:

    a.  The plaintiff had an economic relationship with a third party (i.e., a contract existed).

    b.  The defendant knew of this relationship.

    c.  The defendant intentionally and improperly interfered with this relationship (by inducing or causing the third party not to perform the contract).

    d.  The plaintiff was damaged by such interference.

723.    Here, there must be an existing contract between the plaintiff and a third party; there must be an actual breach of contract; the defendant must not be a party to the contract that they interfered with; and damages flow from the breach of the existing contract.

724.    This count alleges that Hilliard intentionally and improperly interfered with Plaintiff's contractual relations with Primmer.

725.    Plaintiff had a contract with Primmer. Plaintiff's contractual relationship with Primmer was known to Hilliard. Plaintiffs relationship with Primmer began in the fall of 2019. A formal retainer agreement was entered into and executed on May 18, 2020 by Primmer and the plaintiffs. Plaintiff's relationship with Primmer was known to Hilliard. The contract was ended on or about September 4, 2020 due to the contacts and inducement by Hilliard made to Primmer. Hilliard used fraudulent misrepresentations and defamatory statements to induce Primmer not to do business with the plaintiff. Hilliard knew that Primmer was influenced by him to break the contractual relationship with the plaintiffs because Primmer told him that this is what they were doing. Hilliard then watched as Primmer severed their relations with the plaintiffs because of him, and he thus was fully aware of what he did and the results therefrom as he watched the fruits of his plan come to fruition. Hilliard made defamatory comments about plaintiffs to Primmer and insisted that Primmer sever their contractual relationship with the plaintiffs, and that Primmer should not do business with the plaintiffs. The statements and actions of Hilliard were intended solely to disrupt plaintiffs' expectancy of continued legal assistance.

726.    Hilliard intentionally and maliciously engaged in conduct to interfere with these relationships in order to block legal assistance. The conduct was improper, motivated by personal animus and personal selfish advantage, and designed to harm Plaintiff's ability to engage in legal relationships, lawful activities, and to access the legal market for legal assistance and/or representation. Plaintiff was disadvantaged and damaged by Hilliard's conduct. Hilliard benefitted significantly from this conduct and secured an unfair advantage over the plaintiffs through his tortious conduct.

727.    Hilliard's conduct was improper because it involved knowingly false statements, violated N.H. Rule of Professional Conduct 4.4(a) (using means that have no substantial purpose other than to burden a third person), and subverted the relationship with Primmer for strategic gain.

728.    The damages are clear, including loss of contract, loss of relations, loss of legal assistance, loss of the benefit of ongoing legal counsel valued in the five-figure range, incurrence of additional legal fees, loss of opportunities, and emotional distress. Further, the Plaintiff has been harmed by Hilliard' actions including insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

729.    The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by improper means is actionable. See Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

730.    By the above-described conduct, inter alia, Hilliard knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's contractual relations.

731.    As a result of this intentional interference, plaintiff suffered damages.

732.    As a direct and foreseeable consequence of Hilliard's actions, the plaintiff has suffered damages.

733.    As these events occurred a few months before the original filing of this action on June 18, 2022 in Massachusetts superior court, this claim is timely under the NH savings statute (Hilliard's conduct in 2020 was pled in the June 18, 2022 Massachusetts filing, so RSA 508:10's one-year savings window preserves it). This claim is also timely because this re-filed action was filed on June 3, 2025 in NH superior court, within 3 years of the above-noted events in March/April 2022.

734.    The plaintiffs request judgment against Hilliard for compensatory and enhanced damages, costs, and any further relief the Court deems just.

735.    Plaintiffs reserve the right to amend damages once discovery is complete.

## B. COUNT 14: INTERFERENCE WITH ADVANTAGEOUS RELATIONS WITH ATTORNEY JOHN DOE [IN 2022]
### (as to Russell Hilliard and Upton Hatfield brought – brought by both plaintiffs)

736.    This count alleges that Hilliard intentionally and improperly interfered with Plaintiff's advantageous relations.

737.    New Hampshire follows the Restatement (Second) of Torts § 766B for interference with prospective contractual relations, which states:

Intentional Interference with Prospective Contractual Relation One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the

pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of: (a) inducing or otherwise causing a third person not to enter or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

738.  A claim for intentional interference with prospective contractual relations exists under New Hampshire law when "[o]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another" and thereby causes harm to the other." Synopsys, 229 F. Supp. 2d at 73-74 (quoting Baker, 121 N.H. at 644).

739.  To prevail on such a claim, plaintiff must show that: "(1) he had an economic relationship with a third party; (2) the defendant[s] knew of this relationship; (3) the defendant[s] intentionally and improperly interfered with this relationship; and (4) plaintiff was damaged by such interference." M & D Cycles, Inc. v. Am. Honda Motor Co., Inc., 208 F. Supp. 2d 115, 119 (D.N.H. 2002) aff'd, 70 F. App'x 592 (1st Cir. 2003). The asserted economic relationship must "give rise to a reasonable expectation of economic advantage." Preyer v. Dartmouth Coll., 968 F. Supp. 20, 26 (D.N.H. 1997).

740.  To establish liability, a plaintiff must prove four elements:

   a.  The plaintiff had an economic relationship with a third party (that gave rise to a reasonable expectation of economic advantage).
   b.  The defendant knew of this relationship.
   c.  The defendant intentionally and improperly interfered with this relationship.
   d.  The plaintiff was damaged by such interference.

741.  Here, no formal contract is required. The relationship need not be reduced to a formal, written instrument; a promise or reasonable expectation of a promise creating a duty recognized by law is sufficient. This can be based on ongoing negotiations, business relationships, or reasonable expectations of economic advantage from the relationship.

742.  No breach of an actual contract is required for this claim because no actual contract is required for this claim; interference with formation or continuation of relationship is sufficient. Damages do not have to flow from a contract, but can be based on lost economic opportunity or lost advantage.

743.  Inducing a third person by fraudulent misrepresentations or defamatory statements not to do business with the plaintiff clearly constitutes wrongful conduct sufficient to support an interference with a prospective contractual relationship or advantageous relations claim. Restatement (Second) of Torts § 767 cmt. c & § 768 cmt. e; see Liberty Leather Corp. v. Callum, 653 F.2d 694, 699 (1st Cir. 1981) ("Undoubtedly a cause of action for tortious interference with business relations may rest upon defamatory remarks.").

744.  This count alleges that Hilliard intentionally and improperly interfered with Plaintiff's advantageous relations with Attorney John Doe.

745.  In this instance, the plaintiff had an advantageous economic relationship with a third party that gave rise to a reasonable expectation of economic advantage. Plaintiff's advantageous relationship was with Attorney John Doe, which relationship was expected to continue based on the informal arrangement that had been established and that had been ongoing for some time, since 2017. The Plaintiff's advantageous relationship with Attorney John Doe was known to Hilliard.  Hilliard knowingly interfered with and induced a breaking of this relationship including using  fraudulent misrepresentations or defamatory statements not to do business with the plaintiffs. Hilliard used his interference to disadvantage the plaintiffs in other matters and to gain a collateral advantage over the plaintiffs. Hilliard's conduct was private business interference, not litigation-related.

746.  Hilliard's interference violated the NH Rules of Professional Conduct, common law duties of fair dealing and professional standards for attorney conduct.

747.  Hilliard intentionally and maliciously engaged in conduct to interfere with this relationship in order to block legal assistance. The conduct was improper, motivated by personal animus and personal selfish advantage, and designed to harm Plaintiff's ability to engage in lawful activities.

748.  The damages are clear, including loss of contract, loss of relations, loss of legal assistance, loss of the benefit of ongoing legal counsel worth more than/over $20,000, the incurrence of additional legal fees, loss of opportunities, and emotional distress. Further, the Plaintiff has been harmed by Hilliard' actions including insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of

enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

749.    The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by improper means is actionable. See Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

750.    By the above-described conduct, inter alia, Hilliard knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's advantageous relations.

751.    As a result of this intentional interference, plaintiff suffered damages.

752.    As a direct and foreseeable consequence of Hilliard's actions, the plaintiff has suffered damages.

753.    As these events occurred, within 3 years of the original filing of this action in 2022, this claim is timely. NB: The Primmer interference occurred less than 3 years before the first filing on June 18, 2022. Under RSA 508:10, this re-filed action (filed on June 3, 2025) is within one year of the June 3, 2024 voluntary dismissal, so the claim is preserved.

754.    WHEREFORE, plaintiffs demand judgment against Hilliard for all resulting damages, double damages under RSA 358-A if proven, and further relief deemed equitable.

## C. COUNT 15: INTERFERENCE WITH SETTLEMENT CONTRACT [IN 2021 AND 2022]
### (as to Russell Hilliard and Craig Donais – brought by both plaintiffs)

755.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

756.    In April 2021, plaintiff reached a settlement agreement on monetary amount with Hilton Hotel defendants, with Russell Hilliard representing Craig Donais in the private settlement negotiations as part of a joint defense arrangement.

757.    As detailed in plaintiff's affidavit filed October 28, 2024, throughout 2021, Attorney Shelagh Michaud represented to plaintiff that she spoke on behalf of all defendants, including Donais, in the settlement negotiations.

758.    On April 16, 2021, plaintiff accepted the defendants' final monetary offer with conditions regarding finalizing remaining contract details, including non-monetary terms. Michaud acknowledged receipt and indicated she would work with joint defense counsel to prepare a global settlement agreement.

759.    Between May 2021 and January 2022, extensive negotiations continued regarding contract finalization, with Donais actively participating through joint defense counsel and his attorney Russell Hilliard.

760.    In October 2021, plaintiff discovered that Donais and Hilliard were trying to sabotage the global settlement with Hilton. Plaintiff has since confirmed that this was in fact the case based on conversations with other attorneys who were part of the global settlement.

761.    On January 6, 2022, for the first time, Attorney Michaud informed plaintiff that "Craig Donais is no longer willing to settle claims" and would be excluded from the settlement agreement.

762.    Donais and Hilliard's interference with plaintiff's settlement contract was improper and intentional, designed to:
   a.  Undermine the finalized monetary agreement reached in April 2021.
   b.  Prevent plaintiff's access to global settlement terms.
   c.  Force plaintiff to litigate against Donais individually while other defendants settled.
   d.  Gain strategic advantage by remaining outside the settlement while benefiting from delays caused by the settlement process.

763.    Donais and Hilliard's conduct constituted tortious interference with plaintiff's contractual relations with the Hilton Hotel defendants because:
   a.  Plaintiff had a valid settlement contract with Hilton defendants and other parties as of April 2021.
   b.  Donais and Hilliard knew of this contractual relationship through his representation of Donais in the negotiations.
   c.  Donais and Hilliard intentionally and improperly interfered by withdrawing Donais at the last minute after extensive negotiations.
   d.  This interference damaged plaintiff by preventing full global resolution and forcing continued litigation.

764.   Under New Hampshire law, Donais and Hilliard's interference was "improper" under Restatement (Second) of Torts § 767 because it:
   a.   Involved deceptive conduct and bad faith withdrawal after extensive negotiations.
   b.   Was motivated by personal animus and strategic advantage rather than legitimate purpose.
   c.   Violated professional duties owed to plaintiff as former client.
   d.   Undermined judicial economy and settlement finalization efforts.
765.   Donais and Hilliard's status as a non-party to the final settlement agreement establishes the third-party interference element required under New Hampshire law for tortious interference claims.
766.   No privilege protects Donais and Hilliard's conduct because:
   a.   The interference occurred in private settlement negotiations, not judicial proceedings.
   b.   New Hampshire's absolute privilege is limited to communications made in judicial or quasi-judicial proceedings with full procedural safeguards.
   c.   Settlement sabotage falls outside any recognized privilege protection.
   d.   The conduct was designed to undermine rather than advance legitimate litigation interests.
767.   As a direct and proximate result of Hilliard's interference with the settlement contract, plaintiff suffered damages including:
   a.   Reduced settlement amount due to Donais and Hilliard's sabotage attempts in an amount valued at in the six figure range.
   b.   Additional litigation costs and attorney's fees.
   c.   Delay in resolution.
   d.   Emotional distress from prolonged litigation.
768.   Donais and Hilliard's conduct was willful and malicious, warranting enhanced damages and attorney's fees under applicable law.
769.   Under New Hampshire law, to establish tortious interference with contractual relations, plaintiff must prove four essential elements:
   a.   Economic relationship with a third party i.e., a settlement agreement with Hilton Hotel defendants.
   b.   Defendant's knowledge of the relationship - Donais knew about the April 2021 monetary settlement agreement.
   c.   Intentional and improper interference - Donais engaged in subterfuge and deception to sabotage the settlement.
   d.   Damages from the interference - His actions harmed plaintiff's ability to finalize the settlement.
770.   New Hampshire law clearly establishes that "tortious interference with a contractual relationship requires interference by one who is not a party to the contract". Since Donais withdrew from the April 2021 settlement "at the last minute" and was not a party to the agreement, he meets this essential requirement for liability. Because Donais was not bound by the settlement agreement, he cannot claim any contractual immunity or argue that his conduct was authorized by the settlement terms.
771.   The conduct, engaging in subterfuge and deception to sabotage a settlement agreement, clearly meets the "improper" standard under NH law.
772.   Hilliard and Donais' interference with the April 2021 agreement on monetary amount and attempted to get other defendants to unwind or renege on the settlement demonstrate the type of bad faith conduct that New Hampshire courts consider tortious interference.
773.   Hilliard and Donais's covert campaign to sabotage a settlement, delay service, and later weaponize that delay squarely constitutes intentional and improper interference outside any privileged sphere. Accordingly, he remains civilly liable for tortious interference, defamation, and fiduciary breaches, and faces serious professional-conduct exposure. Rule 408 may limit how specific emails are used to prove Hilton's liability, but it does not bar you from introducing them to show Donais's bad faith or to establish your damages.
774.   WHEREFORE, plaintiff demands judgment against Donais and Russell Hilliard for compensatory damages, consequential damages, attorney's fees, costs, and such other relief as the Court deems just and proper.
775.   As these events occurred, within 3 years of the original filing of this action in 2022, this claim is timely.
776.   This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely. Events after June 2021 through 2023 are timely on their own, and are still thus timely.

## SECTION 12: CLAIMS PERTAINING TO UPTON & HATFIELD

### I. FACTS PERTAINING TO UPTON & HATFIELD

777.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

778.    Defendant Upton & Hatfield LLP is a New Hampshire law firm and limited liability partnership organized under New Hampshire law and engaged in the practice of law within New Hampshire.

779.    Upton & Hatfield LLP maintains its principal office at 159 Middle Street, Portsmouth, New Hampshire 03801, and conducts substantial business within New Hampshire.

780.    Russell F. Hilliard is a senior partner and equity member of Upton & Hatfield LLP, exercising significant authority and control over the firm's operations and client matters, and maintaining substantial influence within the New Hampshire legal community.

781.    Russell F. Hilliard generally conducted his legal practice through Upton & Hatfield LLP, holding himself out to clients and the public as acting on behalf of the firm.

782.    However, on the other hand, Russell Hilliard is Craig Donais' confidante, mentor, fixer, and is a personal and professional connection, ostensibly as part of a tight 'good ole boy' network in NH. Hilliard has also helped Donais with getting opportunities as a lawyer. Donais leans on and relies heavily on the help and assistance of Hilliard. Hilliard, at 74 years old, is about 20 years old older than Donais at 53 years old. Donais and Hilliard have become even closer through various recent litigations involving the plaintiff and his wife.

783.    Hilliard has staked his reputation (and thus law license) on vouching for Donais. It is important to note that at the heart of this matter is the fact that almost every wrongful act, dishonest statement, and misconduct of Donais outlined in this complaint stems from an attempt at a cover-up of other misconduct, lies and violations of law or ethics. This has resulted in a repeating, expansion and compounding of more and lies on top of lies. It has also resulted in Hilliard getting involved to help, assist, vouch for, and protect Donais. Thus by continually publicly vouching for Donais, Donais and Hilliard have been and are "tied at the hip" proverbially-speaking. If Donais is exposed, Hilliard will be exposed. Their fates in  this matter largely are inextricably intertwined. Hilliard has become emotional and unhinged in his vouching for Donais. Hilliard has done and will do anything to protect Donais because in doing so, Hilliard is protecting himself.

784.    [NB: On information and belief, Hilliard is not charging Donais for legal work on his behalf, as Hilliard has become so invested in matters related to the plaintiff, that he is not only doing it for Donais, he is also doing it for himself. Further, in order to further better understand the role and involvement of Hilliard with Donais, it is important to understand that Hilliard and Donais are essentially acting as one, they are complicit in each other's acts, and are conspiring in a common design to lie to others and to engage in a cover-up, in order to deny the allegations of dishonesty and to try to deflect and turn things around on the plaintiff. This situation is effectively analogous to a mortal combat situation. Neither Donais nor Hilliard will admit to their dishonesty, and wrong acts. They have gone so far down the road of committing to their dishonest acts, that they have passed a point of no return, so that for them to admit their wrongs at this point would likely result in disbarment for both or either of them, but especially for Donais. Even if Hilliard himself is not disbarred or receives some lighter sanction or reprimand, he will likely still be severely tarnished from Donais' disbarment or other discipline because he has gone on the record many times to forcefully vouch for Donais, and to promulgate and encourage Donais' dishonesty.].

785.    In light of the above and preceding paragraphs, the plaintiff alleges that Russell F. Hilliard's interference with plaintiff's attorney-client relationships was personal misconduct undertaken for his own professional benefit, not conduct within the legitimate scope of representing Craig S. Donais. Interference occurred through Hilliard's acts/communications were made informally, without any court order or judicial activity, and were intended as private business acts. Hilliard's interference was personal business interference unrelated to his representation in any court proceeding. This conduct was undertaken for personal reasons to benefit himself professionally and the interference was private sabotage unconnected to any pending litigation, and consisted of private business sabotage designed to eliminate plaintiff's access to legal counsel for Hilliard's personal advantage. This conduct was not pertinent to any litigation between Donais and plaintiff, but rather was strategic interference with the legal services market to prevent plaintiff from obtaining representation.

786.    Alternatively, if the Court determines that Hilliard's interference was somehow connected to his representation of Donais, then such conduct exceeded any reasonable scope of employment and constituted misconduct for which Upton & Hatfield LLP bears vicarious liability. If the Court finds that the tortious interference with plaintiff's attorney-client relationships (with Primmer in September 2020 and with Attorney John Doe in March/April 2022), and other wrongful conduct by Russell F. Hilliard described in this complaint, occurred within the scope of his partnership duties and employment with Upton & Hatfield LLP, then Upton & Hatfield is vicariously liable under respondeat superior.

787.    If the Court finds that Hilliard's interference with plaintiff's relationships was undertaken in his capacity as a partner of Upton & Hatfield LLP and in connection with his representation of Craig S. Donais, and these actions were performed using the authority, resources, and professional credibility of Upton & Hatfield LLP, and/or were reasonably incidental to the firm's client representation activities or performed in connection with Hilliard's representation of Craig S. Donais through Upton & Hatfield LLP, then the firm is liable to plaintiffs for failing to supervise and prevent Hilliard's misconduct, and further ratified Hilliard's conduct by continuing to represent Donais.

788.    Upton & Hatfield LLP maintained professional liability insurance coverage during the relevant time periods, which coverage extended to claims arising from the professional services provided by its partners, including Russell F. Hilliard.

789.    The consumer protection violations and professional misconduct alleged against Russell F. Hilliard were conducted in the course of providing legal services through Upton & Hatfield LLP, constituting "trade or commerce" under RSA 358-A.

## II. COUNTS PERTAINING TO UPTON & HATFIELD LLP

790.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

791.    In the below, the plaintiff pleads alternative theories of liability that are to be tested sequentially, not simultaneously.

## A. COUNT 17 - INDIVIDUAL MISCONDUCT  LIABILITY (PRIMARY THEORY)

792.    Hilliard's interference was personal misconduct undertaken for his own professional benefit, not conduct within the legitimate scope of representing  Donais. This was private business sabotage unrelated to any pending judicial proceeding, designed to eliminate plaintiff's access to legal counsel for Hilliard's personal advantage. Thus, Hilliard acted outside scope of employment in personal capacity. This was private business interference unrelated to any pending judicial proceeding, not pertinent to any litigation between Donais and plaintiff, constituted personal misconduct for personal professional advantage and entailed strategic interference with the legal services market.

## B. COUNT 18 - FIRM VICARIOUS LIABILITY UNDER RESPONDEAT SUPERIOR (IF DEEMED WITHIN EMPLOYMENT) (ALTERNATIVE THEORY)

793.    Alternatively, if the Court determines that Hilliard's interference was connected to his representation of Donais, then such conduct exceeded any reasonable scope of employment and constituted misconduct for which Upton &  Hatfield bears vicarious liability under respondeat superior. A. Count I -

794.    Under New Hampshire law, a partnership is vicariously liable for the tortious acts of its partners committed within the scope of their partnership duties under the doctrine of respondeat superior.

795.    If Russell F. Hilliard was acting as a partner, agent, and/or representative of Upton & Hatfield LLP when he engaged in wrongful conduct alleged in this complaint, and if the tortious interference with plaintiff's attorney-client relationships by Russell F. Hilliard was committed within the scope of his partnership duties and in furtherance of Upton & Hatfield LLP's business interests, then under the doctrine of respondeat superior, Upton & Hatfield LLP is vicariously liable for all tortious acts committed by Russell F. Hilliard within the scope of his partnership, including but not limited to tortious interference with contractual relations, interference with advantageous relations, and consumer protection violations.

## C. COUNT 19 - DIRECT FIRM NEGLIGENCE & PARTNERSHIP LIABILITY (BACKUP ALTERNATIVE THEORY)

796.  Upton & Hatfield LLP is directly liable for the wrongful acts committed through its operations and under its partnership authority.

797.  Upton & Hatfield LLP failed to maintain adequate policies, procedures, and oversight to prevent the wrongful conduct by its partners.

798.  Regardless of employment scope, Upton & Hatfield failed to adequately supervise Hilliard and prevent his tortious interference with plaintiff's attorney-client relationships.

799.  The wrongful acts were committed using the resources, authority, and credibility of Upton & Hatfield LLP, making the partnership directly liable for the resulting harm to plaintiff.

800.  The law firm, through its partner Russell F. Hilliard, adopted, authorized, and ratified the tortious interference and other wrongful conduct complained of herein.

## D. COUNT 20 - PARTNERSHIP LIABILITY UNDER RSA 358-A (OTHER ALTERNATIVE THEORY)

801.  Upton & Hatfield LLP engaged in unfair and deceptive acts or practices in the conduct of trade or commerce within New Hampshire in violation of RSA 358-A:2.

802.  The provision of legal services by Upton & Hatfield LLP constitutes "trade or commerce" under RSA 358-A:1(II), as amended to include professional services.

803.  The tortious interference and wrongful conduct alleged herein, including the unfair and deceptive interference with plaintiff's attorney-client relationships, constitutes unfair and deceptive practices that violated RSA 358-A:2.

804.  As a direct result of these violations, plaintiff suffered ascertainable losses including damage to reputation, lost legal representation opportunities, and emotional distress.

805.  If the Court finds that the tortious interference with plaintiff's attorney-client relationships and other wrongful conduct by Russell F. Hilliard described in this complaint, occurred within the scope of his partnership duties and employment with Upton & Hatfield LLP, then the tortious interference and wrongful conduct alleged herein, including the unfair and deceptive interference with plaintiff's attorney-client relationships, constitutes unfair and deceptive practices that violated RSA 358-A:2, as committed by the Upton & Hatfield LLP firm, and thus Upton & Hatfield LLP is liable to plaintiff for actual damages or $1,000, whichever is greater, plus attorney's fees and costs under RSA 358-A:10.

## E. COUNT 21 - PROFESSIONAL NEGLIGENCE

806.  Upton & Hatfield LLP owed plaintiff duties of professional conduct and ethical behavior through its partner Russell F. Hilliard's interactions with plaintiff's legal counsel.

807.  If the Court finds that the tortious interference with plaintiff's attorney-client relationships and other wrongful conduct by Russell F. Hilliard described in this complaint, occurred within the scope of his partnership duties and employment with Upton & Hatfield LLP, then Upton & Hatfield LLP, through Russell F. Hilliard, breached these professional duties by interfering with plaintiff's attorney-client relationships and engaging in conduct prejudicial to the administration of justice, and these breaches of professional duty directly and proximately caused harm to plaintiff, including loss of legal representation and emotional distress; and Upton & Hatfield LLP is liable for all damages flowing from this professional negligence, including consequential damages and emotional distress.

## III. DAMAGES AGAINST UPTON & HATFIELD LLP

808.  If the Court finds that the tortious interference with plaintiff's attorney-client relationships and other wrongful conduct by Russell F. Hilliard described in this complaint, occurred within the scope of his partnership duties and employment with Upton & Hatfield LLP, then the conduct of Upton & Hatfield LLP was willful, wanton, and in reckless disregard of plaintiff's rights, warranting an award of punitive damages where permitted by law, and as a direct and proximate result of the wrongful conduct by Upton & Hatfield LLP, plaintiff has suffered and continues to suffer significant damages, including:

    a.  Loss of legal representation and counsel;

    b.  Injury to reputation and standing in the community;

    c.  Emotional distress, anxiety, and mental anguish;

    d.   Loss of legal and business opportunities;

    e.   Costs of securing replacement legal counsel;

    f.   Other consequential damages to be proven at trial.

809.    Plaintiff is then entitled to compensatory damages, enhanced damages under applicable statutes, attorney's fees and costs, and such other relief as the Court deems just and proper.

---

## SECTION 10: CLAIMS PERTAINING TO MARY DONAIS

### I. FACTS PERTAINING TO MARY DONAIS

810.    Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

811.    Plaintiff hereby alleges the following either on personal knowledge or on information and belief.

812.    Mary Donais made false statements to her family members indicating that the plaintiffs were seeking to come to her house and physically harm her and her son, that the plaintiffs were physically dangerous and were criminal people who were bent on hurting her and her son, and that she was afraid of the plaintiffs for those reasons. Mary Donais perpetuated these false statements to friends, and to other members of her family, including her sons. In August 2020, Mary Donais told her sons Garrett Donais and Aiden Donais of these false statements about the plaintiff, intending to induce fear and hysteria concerning the plaintiff. This is inferred from communications obtained via a right to know request that revealed the involvement of their children in the defamation campaign by Mary Donais and Craig Donais.

813.    Mary Donais made false statements that she was in fear of her life and the life of her children because the plaintiff was a criminal who was mentally unstable and bent on physically harming her and her sons. Mary Donais told others that she was afraid to be at home during the day when her husband was at work because of what the crazy criminal dangerous plaintiffs were bent on doing.

814.    Each of these statements was false. Plaintiff has never threatened Mary Donais or her family, has no history of violence, and has never been involved in any criminal conduct. Plaintiff has never had any direct communication with Mary Donais. Mary Donais made these statements without conducting any independent verification of their truthfulness and without any reasonable basis for believing them to be true.

815.    Mary Donais' statements and fears was also referenced by Craig Donais in August 2020, to support a defamatory scheme concocted by Craig Donais, which plaintiff later became aware of later in the fall of 2020. Craig Donais and Mary Donais manufactured this false and unfounded fear and hysteria pertaining to the plaintiffs. In order to perpetuate the lie that plaintiffs were seeking to physically harm them, Craig Donais and Mary Donais concocted the lie that Mary Donais and her sons, Garret and Aiden Donais, were afraid for their lives because of the plaintiffs and because they asserted that the plaintiff was mentally unstable, was criminal, dangerous and bent on criminally harming them. Mary Donais specifically told these false defamatory statements to their sons, Garret and Aiden, in order to enlist them as purveyors of the false unfounded fear and hysteria pertaining to the plaintiffs.

816.    That suggestion by Mary Donais that plaintiffs were dangerous and posed a violent criminal threat to her and her sons, accords with a racially stigmatizing stereotype of black people as inherently dangerous and violently criminal. Those damaging and stigmatizing communications stem from an improper motive on the part of Mary Donais. Mary Donais had no rational or reasonable basis to issue those statements about plaintiffs. Mary Donais evidently was motivated by personal and racial animus towards plaintiff as evidenced by the racial stereotype/dog whistle employed by Mary Donais.

817.    Mary Donais thus perpetuated these false statements and added to the fear and hysteria pertaining to the false defamatory statements about the plaintiffs. Mary Donais conspired with Craig Donais to defame and injure the plaintiffs and to enlist their sons in this defamatory scheme, as evidenced by communications obtained via a right to know request, and the coordinated actions between them to present the defamatory statements to others and to cause the widespread broadcasting of this defamation in August 2020, (as evidenced by information obtained via right to know requests in October 2020, where the coordination of Craig Donais and Mary Donais, as well as the involvement of their sons, were revealed via email communications in August 2020).

818.    Craig Donais is the one who first involved his family in this dishonest scheme to injure the plaintiffs. Craig Donais was the one who brought his wife and sons into this scheme, referencing the involvement of his wife and son. Craig Donais should not have involved his wife and sons in his defamatory scheme.

819.    These statements were also made on social media by Mary Donais in or around August 2020. Note: Mary Donais frequently used social media at the time convey various things to family and friends including her travel and other activities, as well as her random thoughts about what was going on in her life. Her Facebook friends primarily consist of residents of Manchester New Hampshire. Mary Donais also sought to enlist others to watch out for plaintiff because on the false premise that he was bent on coming to her home to harm her.

820.    This defamation campaign was intended to ostracize plaintiffs from Manchester NH community (where the plaintiffs had ties to the local NAACP, which Craig and Mary Donais knew about from scouring the internet, searching[9] for information on the plaintiffs and which information was located on plaintiffs' linked-in), and ultimately to drum up sympathy and support for causing this lie and false hysteria to be publicly broadcasted and disseminated widely, which broad public dissemination was eventually fully effectuated by August 2020. This dissemination by Mary Donais, framed the plaintiffs as crazy dangerous criminal black people bent on physically coming to her house when she was alone with her children, to physically harm her and perpetuate criminal acts upon her and her children. This included calls for a watch-out in her neighborhood to look out for the plaintiffs in the Manchester NH area, as they were criminally dangerous and bent on harming her and her children. The plaintiffs could not feel safe to return to the Manchester NH area because of this widespread defamation broadcasted across the community. The plaintiffs ability to work on Manchester NH, including with the NAACP in Manchester NH, or engage in any social or community relations in Manchester NH, was significantly damaged. Plaintiffs suffered tremendous harm as a result of the defamation campaign of Mary Donias and her husband Craig Donais.

821.    These statements were false and defamatory and intended to injure the reputation of the plaintiffs.

822.    These statements were made to third parties. These harmful communications by Mary Donais were circulated widely to a large number of people. These statements were not made in court or in any judicial context but were disseminated or arranged to be disseminated widely to family, friends, and community members. Under NH law, defamation requires that the defendant made a false statement of fact to a third party that harmed the plaintiff's reputation.

823.    These statements were made without care as to whether they were false and would cause injure/harm the plaintiffs.

824.    These statements were made with reckless disregard for the truth.

825.    Mary Donais failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, where no valid privilege applied to the communication.

826.    Mary Donais published false statements, falsely accusing plaintiff of criminal conduct and racially stigmatizing pathology and evil intent. Mary Donais falsely accused plaintiff of criminal conduct, and suggested that Plaintiff was dangerous and mentally ill.  Absolute privilege does not apply, as the accusations were extraneous to any legitimate legal purpose and stated/repeated outside of any court contexts.

827.    These defamatory statements by Mary Donais were directed at private persons, as part of the defamatory scheme and campaign of Craig Donais and Mary Donais.

828.    Further, Mary Donais's statements were made with actual malice, evidenced by her reckless disregard for the truth, as she knew or should have known that the accusations were false.

829.    The repeated dissemination amplified the harm and demonstrates malicious intent.

830.    The statements also caused Plaintiff reputational harm, emotional distress, and economic damages, satisfying all elements of defamation.

831.    This damages Plaintiff with NH organizations including losing a contract for a community-based project sponsored by the NAACP and the University of New Hampshire and others.

832.    Plaintiff suffered significant emotional distress from this defamation.

---

[9] Craig Donais and Mary Donais were and have essentially been obsessed with the plaintiffs. They sought to dig into every aspect of their lives, even arranging private investigators to track the plaintiffs, seeking to identify and follow up on every place plaintiffs lived to try to discover their location, and have essentially engaged in conduct bordering on stalking the plaintiffs, with Craig Donais even going as far as to enlist his friends/contacts to try to track down his address and to call plaintiffs phones randomly to find out their location.

## II. COUNTS PERTAINING TO MARY DONAIS

833. Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

## A. COUNT 22 - DEFAMATION BY MARY DONAIS
### (as to Mary Donais)

834. To establish defamation, the plaintiffs must show that the defendant "failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, unless a valid privilege applies to the communication." Hynes v. N.H. Democratic Party, 175 N.H. 781, 788 (2023). "If defamation is established and no privilege applies, the plaintiff may seek damages for harm to his or her representation." Thomas v. Tel. Publ'g Co., 155 N.H. 314, 321 (2007).

835. To constitute defamation per se, the alleged defamatory statement must fit within one of the four classes.
   a. Statements constituting libel.
   b. Statements charging the plaintiff with a crime.
   c. Statements alleging that the plaintiff has certain diseases.
   d. Statements prejudicing the plaintiff's business or profession.

### A. Summary of Allegations

836. Here, the allegations involve false defamatory statements made by Mary Donais outside of the courtroom or any judicial proceedings. Again, these false statements are:
   a. That plaintiff was a violent dangerous criminal.
   b. That plaintiff posed a physical threat to Mary Donais and her family.
   c. That plaintiff was mentally unstable and dangerous.
   d. By implication, that plaintiff was bent on stalking the Donais family at their home.

837. These statements constitute defamation per se under New Hampshire law because they:
   a. Falsely accuse plaintiff of being a criminal or of criminal conduct.
   b. Injure plaintiff in his profession by attacking his character.
   c. Suggest plaintiff suffers from mental illness by characterizing him as mentally unstable.

838. Mary Donais' actions fall within all four classes. Mary Donais' actions constitute defamation per se entitling Plaintiff to monetary damages in an amount to be determined at trial.

### B. "Criminal" Accusations

839. Mary Donais accused the plaintiffs of criminal conduct and of posing a dangerous criminal threat to her, and her sons. Criminal accusations are generally regarded as defamatory. See Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975).

840. Mary Donais published statements suggesting that the plaintiff was a criminal, or committed crimes or was a dangerous criminal threat to her and her sons, are false and untrue and have defamed or was intended to defame the plaintiff.

841. Mary Donais failed to exercise reasonable care before publishing these false statements, making no effort to verify their accuracy despite having no personal knowledge of any threatening conduct by plaintiff.

842. These statements by Mary Donais were published in August 2020 to her sons, to her family members and friends including on social media.

### C. Mental Disease Accusations

843. Mary Donais published statements suggesting that the plaintiff had a mental disease and mentally unstable including that plaintiff is mentally ill/crazy. These statements were published in August 2020 to her sons, to her family members and friends including on social media.

844. Mary Donais thus published statements that are defamatory per se, intended to damage the plaintiff.

845. Mary Donais made false accusations which would and did injure plaintiff in his trade and profession.

846. Mary Donais failed to exercise reasonable care before publishing these false statements, making no effort to verify their accuracy despite having no personal knowledge of any threatening conduct by plaintiff.

### D. No Privilege

847. Mary Donais' false, disparaging, defamatory, and materially misleading statements are not privileged.

848.    No privilege applies to these statements as they were made in private conversations and social media posts unrelated to any judicial proceeding.

849.    Absolute privilege does not apply, as the accusations were made to private persons in private contexts and were extraneous to any legitimate legal purpose and were made/repeated outside of any court contexts.

850.    Craig Donais and Mary Donais engaged in defaming plaintiffs to their family members including to their sons, and to each other and to other family members including on social media, as well.

851.    Discovery will reveal the extent of the defamation and how widespread it is.

### E. Communication to Third Parties

852.    Mary Donais published these statements to third parties in the Manchester community where plaintiff was active with the NAACP and maintained professional relationships.

853.    Mary Donais disclosed these false statements and accusations to the following persons:
   a.    Garrett Donais
   b.    Aiden Donais
   c.    Other of her family members including on social media
   d.    Her friends including on social media

854.    Thus, in publishing these statements, Mary Donais published defamatory statements to a wide range of persons. This primarily occurred in August 2020.

855.    Note: NH law on defamation only requires false defamatory statements to be published to at least one other person to sustain an action for defamation.

856.    Craig Donais and Mary Donais engaged in defaming plaintiffs to their family members including to their sons Garrett Donais and Aiden Donais, and to each other and to other family and friends, as well.

857.    It should also be noted that Plaintiff obtained copies of email communications, via a right to know request, that revealed that these false statements, made by Mary Donais and Craig Donais, about the plaintiff, were directed to/received/heard by their sons and/or that their children were involved in this defamation campaign.

858.    Discovery will reveal the extent of the defamation and how widespread it is.

### F. Damages Per Se

859.    That the statements are defamatory is clear. The statements can reasonably be read as discrediting the plaintiff in the minds of any considerable and respectable class of the community. Moreover, these words have the effect of heaping disparagement upon plaintiff when viewed contextually, i.e. in the light of attendant circumstances.

860.    These statements made by Mary Donais are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.

861.    These defamatory statement(s) require no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Mary Donais falsely accused the Plaintiff of committing crime(or) or violations of moral conduct and because Mary Donais injured Plaintiff in his profession and/or occupation.

862.    These statements contained numerous falsehoods about plaintiff whether on its face and/or by virtue of a clear implication affirmatively intended, and which were defamatory per se.

### G. Falsity

863.    These statements are untrue and have harmed the plaintiff. The plaintiffs are not criminals nor are they criminally dangerous or violent people. Plaintiffs are upstanding law-abiding African-American citizens who are educated thought leaders in their fields, and are civic statesmen and leaders in their communities.

### H. Malice

864.    Although not a necessary element to this cause of action, it is be noted nonetheless that Mary Donais's statements were malicious and showed intentional disregard for plaintiff's rights. Mary Donais, and her husband Craig, have exhibited particularly egregious conduct and acted with malice or fraud as they maliciously and willfully calculated their actions to harm the Plaintiff.

865.    These statements are false, were made with malice, were not honestly held opinion, were not made accidentally or disseminated accidentally and were intended to be made public, and betray a malevolent intent and ill-will towards the Plaintiff, with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

866.    Mary Donais' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject the plaintiff to contempt and tended to diminish the esteem, respect, goodwill and/or confidence in which he is held.

867.    The allegations in the complaint are reasonably susceptible to a construction that permits the plaintiff's recovery.

## I. Conclusion

868.    By the above-described conduct, inter alia, Mary Donais has intentionally published or allowed to be published false, disparaging, defamatory, and materially misleading statements about the plaintiff, with the intent to damage his professional and personal reputation.

869.    As described above, inter alia, Mary Donais has negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about the plaintiff.

870.    These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.  These defamatory statement(s) requires no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Mary Donais falsely accused the Plaintiff of serious violation of moral conduct and because she injured Plaintiff in his profession/occupation.

871.    As a direct and foreseeable consequence of Mary Donais's defamation, the plaintiff suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to his reputation.

872.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress as well as harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering, insult, being placed in fear and anxiety, loss of enjoyment of life, lack of energy, mood swings, and sleep disturbances, in addition to impairment to the Plaintiff's reputation and standing in the community.

873.    As a direct result of Mary Donais's defamatory statements, plaintiff suffered:
   a.    Specific reputational harm in the Manchester community.
   b.    Loss of standing with NAACP colleagues.
   c.    Emotional distress.
   d.    Economic damages totaling several thousands of dollars in lost professional opportunities.

874.    These damages flow directly from Mary Donais's false statements and the resulting harm to plaintiff's reputation in the community

875.    As a result of the malicious defamatory conduct on the part of Mary Donais, Plaintiff has suffered economic and consequential damages including general damages and special damages.

876.    As these events occurred, within 3 years of the original filing of this action in 2022, this claim is timely. This claim is pled under the NH savings statute for events between 2019 and June 2021 and is thus timely.

---

## SECTION 11: CLAIMS PERTAINING TO DONAIS LAW OFFICES PLLC

---

## I. FACTS PERTAINING TO DONAIS LAW OFFICES PLLC

877.    Plaintiff incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

878.    Donais Law Offices PLLC ("Donais PLLC") is a professional limited liability company registered in New Hampshire, with Craig Donais as its sole member, managing member, and registered agent.

879.    Donais PLLC is organized under RSA Chapter 304-C and engaged in the practice of law within New Hampshire.

880.    Craig Donais is the founder, principal, and the person responsible for day-to-day operations of Donais PLLC, including the directives, policies, and communication practices of the entity, exercising complete control over the entity's operations, finances, and professional activities.

881.    Craig S. Donais conducted his law practice through Donais Law Offices PLLC, holding himself out to clients and the public as acting on behalf of the professional entity.

882.    At all relevant times, Donais PLLC acted through Craig Donais and engaged in conduct intentionally directed at the plaintiffs, engaging in conduct to violate plaintiffs' rights, discussed further below

883.    The majority of the tortious conduct committed by Craig S. Donais occurred in the course of conducting the firm's legal business or flowed from or out of work for his legal business.

884.    Donais PLLC is also the "alter ego" of Craig Donais, in that it was used as an instrumentality for his wrongful conduct, commingled assets, and was operated primarily for his personal benefit to conceal liabilities and carry out schemes harmful to plaintiffs. Because Donais PLLC is the alter ego of Craig Donais, the acts of Craig Donais are imputed to Donais PLLC and vice versa. Also, the tortious statements made by Craig Donais are imputed to Donais PLLC and Donais PLLC acts and speaks through Craig Donais, its alter ego, and vice versa.

885.    Donais PLLC is liable under the doctrine of respondeat superior for Craig Donais's conduct, when such conduct was within the scope of employment or agency.

886.    The conduct alleged herein was committed in the course and scope of the agency/alter ego relationship, and, as such, Donais PLLC is directly liable for all such acts and omissions. Donais PLLC is responsible for the conduct of its attorney Craig Donais, including activities that furthered Donais PLLC's business interests and were designed to harm the plaintiffs. See Ellis v. Safety Insurance, 41 Mass. App. Ct. 630 (1996)(As the defamatory statement can reasonably be found to have been uttered in the course of Donahue's employment, Safety is subject to liability under the doctrine of respondeat superior).

887.    Donais PLLC maintained professional liability insurance coverage during the relevant time period, which coverage extended to claims arising from the professional services provided by its attorneys, including Craig S. Donais.

888.    The consumer protection violations alleged against Craig S. Donais were conducted in the course of trade or commerce as defined under RSA 358-A, specifically in the provision of legal services through Donais Law Offices PLLC.

889.    Mary K. Donais assists Craig S. Donais with the law practice and business operations of Donais PLLC, acting within the scope of her agency relationship with the professional entity.

## II. COUNTS PERTAINING TO DONAIS LAW OFFICES PLLC

890.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

### A. COUNT 23 - VICARIOUS LIABILITY UNDER RESPONDEAT SUPERIOR

891.    Under New Hampshire law, an employer is vicariously liable for the tortious acts of its employees committed within the scope of their employment under the doctrine of respondeat superior.

892.    Craig S. Donais was acting as an employee, agent, and/or officer of Donais Law Offices PLLC when he engaged in the wrongful conduct alleged in this complaint.

893.    The defamatory statements, consumer protection violations, breach of fiduciary duties, and other tortious conduct by Craig S. Donais were committed within the scope of his employment and agency relationship with Donais Law Offices PLLC.

894.    The tortious acts were performed in furtherance of Donais Law Offices PLLC's business interests and occurred during the course of providing professional legal services through the entity.

895.    Under the doctrine of respondeat superior, Donais Law Offices PLLC is vicariously liable for all tortious acts committed by Craig S. Donais within the scope of his employment, including but not limited to defamation, consumer protection violations, intentional infliction of emotional distress, and civil conspiracy.

### B. COUNT 24 - DIRECT CORPORATE LIABILITY

896.    Donais PLLC is directly liable for the wrongful acts committed through its operations and under its corporate authority.

897.    The professional entity, through its sole member and manager Craig S. Donais, adopted, authorized, and ratified the defamatory statements and other tortious conduct complained of herein.

898.    Donais PLLC failed to maintain adequate policies, procedures, and oversight to prevent the tortious conduct of its personnel.

899.    The wrongful acts were committed using the resources, authority, and credibility of Donais PLLC, making the entity directly liable for the resulting harm to plaintiff.

## C. COUNT 25 - ALTER EGO LIABILITY

900.    Craig S. Donais and Donais PLLC operate as alter egos of one another, with such unity of interest and ownership that separate personalities no longer exist.

901.    Craig S. Donais exercises complete dominion and control over Donais PLLC, using the corporate form as a mere instrumentality for his personal and professional activities.

902.    There exists such unity of interest and ownership between Craig S. Donais and Donais PLLC that adherence to the fiction of separate corporate existence would sanction fraud and promote injustice.

903.    The corporate formalities, if any, are mere technicalities that do not reflect the true substance of the relationship between Craig S. Donais and the professional entity.

904.    Under these circumstances, Donais PLLC should be held liable for all acts and omissions of Craig S. Donais, as they are in substance the acts of the same legal person.

## D. COUNT 26 - PROFESSIONAL ENTITY LIABILITY UNDER RSA 358-A

905.    Donais PLLC engaged in unfair and deceptive acts or practices in the conduct of trade or commerce within New Hampshire in violation of RSA 358-A:2.

906.    The provision of legal services by Donais PLLC constitutes "trade or commerce" under RSA 358-A:1(II), as amended to include professional services.

907.    Certain of the wrongful conduct alleged herein constitutes unfair and deceptive practices that violated RSA 358-A:2.

908.    As a direct result of these violations, plaintiff suffered ascertainable losses including damage to reputation, lost business opportunities, and emotional distress.

909.    Donais PLLC is liable to plaintiff for actual damages or $1,000, whichever is greater, plus attorney's fees and costs under RSA 358-A:10.

## E. COUNT 27 - PROFESSIONAL NEGLIGENCE/MALPRACTICE

910.    Donais PLLC owed plaintiff professional duties of care, competence, and ethical conduct in connection with the attorney-client consultation and attendant professional duties.

911.    Donais PLLC, through Craig S. Donais, breached these professional duties by making false statements about plaintiff to third parties and engaging in conduct prejudicial to the administration of justice.

912.    These breaches of professional duty directly and proximately caused harm to plaintiff, including damage to reputation and emotional distress.

913.    Donais PLLC is liable for all damages flowing from this professional negligence, including consequential damages and emotional distress.

## H. COUNT 30: CIVIL CONSPIRACY TO INJURE PLAINTIFFS

914.    Craig Donais, acting in concert with Donais PLLC (and/or through its agent and alter ego), conspired to disseminate false and defamatory statements and to interfere with plaintiffs' legal and community relationships for malicious and improper purposes.

915.    The conspiracy was formed with actual malice, and in furtherance thereof, Craig Donais and Donais PLLC engaged in wrongful acts, including making false statements, defamation, and interfering with contracts and relationships, with the intent to harm plaintiffs.

916.    As a direct and proximate result, plaintiffs suffered damages including reputational harm, emotional distress, loss of community standing, and economic loss.

## III. DAMAGES

917.    As a direct and proximate result of the wrongful conduct by Donais PLLC, plaintiff has suffered and continues to suffer significant damages, including:

   a.  Injury to reputation and standing in the legal and business community;
   b.  Emotional distress, anxiety, and mental anguish;
   c.  Loss of business and professional opportunities;
   d.  Costs of litigation and attorney's fees;
   e.  Other consequential damages to be proven at trial.

918.    Plaintiff is entitled to compensatory damages, enhanced damages under applicable statutes, attorney's fees and costs, and such other relief as the Court deems just and proper.

919.    The conduct of Donais PLLC was willful, wanton, and in reckless disregard of plaintiff's rights, warranting an award of punitive damages where permitted by law.

## SECTION 13: CLAIMS PERTAINING TO AMY MESSER

920.    The plaintiff brings state constitutional/state civil rights-related claim against Amy Messer for violation of his state constitutional right to be free from discrimination based on disability because he has prejudiced by her handling of his requests for reasonable accommodations under disability law. Bisasor also seeks injunctive or equitable relief against Messer, as will be further elucidated below.

921.    This claim is brought only by Bisasor against Amy Messer as a state defendant. Any reference to "plaintiff" in this section refers to Bisasor only. Also, any reference to defendant refers to the state defendant Amy Messer only in this section. Also, in the section, "court", "trial court" or "superior court" refers to the NH Hillsborough North Superior Court, and "clerk" or "clerk office" refers to the superior court clerk staff or clerk office of NH Hillsborough North Superior Court.

922.    No federal claim is asserted against Messer. All claims asserted in this amended complaint, against any and all defendants, are all state law claims, even worded in-artfully as a pro se. Bisasor's intent is to assert only state law claim.

923.    Given that the original defendants removed the case to federal court, Bisasor is here adding this state law claim against a new defendant based on events that occurred in 2024 and 2025, via amendment.

### I. FACTS PERTAINING TO AMY MESSER
#### A. Overview

924.    Amy Messer is a judge in NH Superior Court Hillsborough North, a state court in NH.

925.    Amy Messer is also state court employee or state employee, employed by the state of NH and paid by the state of NH.

926.    Amy Messer, as a judge and employee of the state of NH, is subject to the NH Constitution.

927.    The NH Constitution guarantees rights, freedoms and protections including the right to free from discrimination, the right to equal protection, the right to due process, including with respect to race and disability.

928.    Bisasor is a plaintiff in a case in NH Superior Court Hillsborough North with Amy Messer as the judge presiding over the case.

929.    Bisasor alleges that Amy Messer has engaged in systematic deprivation of Bisasor's rights under the NH Constitution.

930.    Bisasor has filed multiple requests for reasonable accommodations to Messer in state court.

931.    These requests have been submitted to Messer in the NH superior court but have been administratively rejected, ignored, or left unaddressed for extended periods.

932.    As demonstrated by the record, Bisasor's disability accommodation requests (hereinafter "accommodation requests") have been treated, at best, inconsistently by Amy Messer in the NH Superior Court Hillsborough North, with some requests denied by implication or inaction, and others not addressed at all, or otherwise outright denied without due process, signifying disability discrimination, at worst.

933.    Several of these accommodation requests have been denied without a hearing and Amy Messer refuses to hold a hearing to address Bisasor's needs for disability accommodation.

934.    Amy Messer has erected exacting, demanding, stringent and unreasonable standards for Bisasor to obtain disability accommodation from her in state court.

935.    Bisasor has requested, on several occasions, from Amy Messer, reasonable accommodation based on his disability.

936.    Amy Messer has a duty and an obligation to provide reasonable accommodation based on his disability.

937.    Bisasor meets every criteria required for reasonable accommodation based on disability.

938.    Bisasor was therefore entitled to reasonable accommodation based on his disability.

939.    Yet, Amy Messer has not granted but has instead denied several of Bisasor's request for reasonable accommodation.

940.    Amy Messer has not asserted that she is exempt from the NH constitutional requirements or from any state or federal disability laws.

941.    Bisasor seeks to have these failures, inactions or violations by Amy Messer rectified in or by the NH Superior Court Hillsborough North.

942.    Amy Messer has left Bisasor completely in the dark. She has thus deprived Bisasor of his right to reasonable accommodation based on disability.

943.    Therefore, Amy Messer has engaged in disability discrimination.

944.    It is completely disappointing and disheartening that Amy Messer has chosen to engage in such conduct.

945.    Consequently, the conduct of Amy Messer is unsustainable and does not promote confidence in the court system when judges evidently behave in an unlawful, discriminatory and unaccountable manner.

946.    The NH constitution requires accountability of its government bodies and employees. Amy Messer is not above the law or accountability.

947.    Fundamental fairness, due process and transparency requires or at least suggests Amy Messer should provide a hearing before denial. This is particularly true when denying a request for disability accommodation.

948.    Amy Messer's conduct constitutes discrimination based on disability.

949.    Bisasor stands on the moral high ground on this issue. Bisasor stands on the right to not be discriminated against. The law is not on Amy Messer's side.

950.    The impact of these issues on plaintiff cannot be overstated. Bisasor is effectively being denied his constitutional right to access the courts and to have his case heard fairly. The rejections, delays in ruling on, or the denials of, his accommodation requests have impaired his ability to fully participate in the legal process in state court before Amy Messer.

951.    Despite Bisasor's diligent efforts to follow proper procedures and seek appropriate relief, Bisasor has been met with a pattern of what appears to be willful disregard for his rights as a litigant. The cumulative effect of these actions has created an environment where Bisasor is unable to truly receive a fair trial.

**B. Summary of Acts of Disability Discrimination by Amy Messer**

952.    Failure to accept Bisasor's confidential disability accommodation requests.

953.    Failure to docket Bisasor's confidential disability accommodation requests.

954.    Failure to rule on Bisasor's confidential disability accommodation requests.

955.    Failure to grant Bisasor's confidential disability accommodation requests.

956.    Failure to provide to hold any hearing on Bisasor's confidential disability accommodation requests.

957.    Failure to apply consistent standards to Bisasor's confidential disability accommodation requests but instead apply arbitrary and capricious standards resulting in the impossibility of him obtaining any relief.

958.    Amy Messer's dismissive treatment of Bisasor's accommodation requests creates an appearance of insensitivity to disability issues and a lack of commitment to ensuring equal access to justice.

959.    Further, Amy Messer's failures have hindered Bisasor's ability to effectively request and obtain necessary accommodations to participate fully in the state court proceedings.

960.    Amy Messer has offered no proper opportunity for a person with disabilities to clarify or explain why they need accommodations based on their disabilities, which typically is done through a hearing.

961.    Amy Messer's has thus created/erected barriers to Bisasor's full participation in the legal proceedings, effectively discriminating against Bisasor on the basis of his disabilities.

962.    The unreasonableness of Amy Messer in forcing Bisasor to go through arduous demanding process that involves multiple denials and multiple attempts to refile the same request, creates unreasonable obstacles for Bisasor, indicating bias, partiality or otherwise some form of animus by Amy Messer.

963.    These actions have deprived Bisasor of a fair and full opportunity to be heard. The cumulative effect is the creation of an unequal playing field that undermines confidence in Amy Messer's (and/or the NH Superior Court's) fairness, integrity and impartiality.

964.    The law states that pro se parties are bound by the same rules as represented parties. But in this instance, Bisasor has been held to stricter rules than what the law requires or shifting rules that are arbitrary and capricious or rules that are harsher than what represented parties face.

### C. Violation of NH Constitution and State Law Disability Rights

965.  Amy Messer's conduct violated state disability laws by systematically denying Bisasor reasonable accommodation. Despite Plaintiff's documented disabilities, Amy Messer made no effort to provide meaningful accommodations or to ensure that his requests were processed in a manner consistent with his disability-related needs. Instead, she subjected him to procedural requirements that were particularly burdensome for someone with his disabilities.

966.  Amy Messer denied or ignored Bisasor's accommodation requests as part of court administration or management functions, and thus she does not have absolute immunity. The NH Superior Court has established specific administrative procedures for processing accommodation requests.

967.  Following the landmark Supreme Court case Forrester v. White, judges have no absolute immunity for administrative functions. The Court held that "the nature of the function performed, not the identity of the actor, determines whether absolute immunity applies".

968.  Administrative acts that lack absolute immunity include:
      a.  Administrative denial of reasonable accommodations
      b.  Court management and operations decisions
      c.  Policy development for court accessibility
      d.  Facility management and accommodation implementation

969.  Amy Messer's acts were administrative rather than purely judicial in nature.

970.  Administrative denial of accommodations are subject to constitutional and/or civil rights challenges when:
      a.  The denial was based on discriminatory animus
      b.  The accommodation was clearly reasonable and denial violated disability law requirements
      c.  The denial occurred through administrative processes

### D. State Constitutional Claims

971.  The NH Constitution provides  protection against disability discrimination by state actors.

972.  These acts by Amy Messer were constitutional violations rather than mere disagreement with judicial decisions.

973.  Bisasor seeks primarily prospective equitable relief.

## II. COUNTS PERTAINING TO AMY MESSER

## A. COUNT 31 – VIOLATION OF THE NEW HAMPSHIRE CONSTITUTION
### (as to Amy Messer)
### A. Legal Grounds for Inclusion

974.  Bisasor asserts that Amy Messer, acting in an administrative function/capacity, has engaged in conduct that is not protected by judicial immunity, as her actions involve administrative functions such as processing accommodation requests, managing court access, and implementing policies affecting Plaintiffs' rights.

975.  Under Forrester v. White, such administrative acts are not entitled to absolute judicial immunity. Furthermore, Bisasor alleges that Amy Messer's actions were undertaken under color of state law and in violation of rights secured by state law and the NH Constitution, making her a proper defendant under state law claims.

976.  Under Forrester v. White, 484 U.S. 219 (1988), the Supreme Court drew a bright line between a judge's "judicial" acts (entitled to absolute immunity) and "administrative" acts (not absolutely immune). The Court held that administrative functions receive only qualified, not absolute, immunity.

977.

### B. Right to Access Courts Under NH Constitution

978.  The right of access to the courts is a fundamental constitutional right. This right is meaningless without the ability of disabled litigants to proceed without accommodation.

979.  Amy Messer's administrative conduct has violated these constitutional guarantees by denying Bisasor equal treatment, access to remedies, and due process in proceedings.

### C. Due Process Violations Under NH Constitution

980.  Amy Messer denied Plaintiff's requests for hearings on his accommodation requests, thereby depriving him of procedural due process, and violating fundamental fairness principles.

981.    Further, Amy Messer's administrative decisions demonstrate a pattern of bias and predetermined disposition against Bisasor's rights, creating an appearance of impropriety that violates due process requirements.

## D. Equal Protection Violation Under NH Constitution

982.    Amy Messer's treatment of Plaintiff differs markedly from the treatment afforded to other litigants, creating an inference of discriminatory conduct based on Bisasor's race, disability status, and pro se representation.

983.    Amy Messer's systematic denial of protections and accommodations to Bisasor, while such protections are routinely afforded to other litigants, violates the NH constitution.

984.    Amy Messer's conduct demonstrates deliberate indifference to Bisasor's constitutional rights and intentional discrimination in the administration of judicial services.

## E. Conclusion

985.    Plaintiff has included this claim via this amendment to ensure that Amy Messer's conduct, as a state court employee, is subject to judicial review, and to preserve Plaintiffs' rights to seek redress for violations of state law.

## SECTION 4. DAMAGES

986.    Plaintiffs reaver, reallege and incorporate by reference the allegations contained in the above paragraphs as if each had been separately set forth herein.

## A. Overview On Damages

987.    <u>Insidious Nature/Harm From Racial Discrimination</u>: Courts have authorized compensation to a plaintiff for the injury caused by the defendant's wrongful breach of rights, and also have suggested that an action to redress racial discrimination might be likened to an action for defamation or some other dignitary tort[10]. Dignitary torts as injuries to the personality have been defined as follows: Though economic or physical loss may be associated with the injury, the primary or usual concern is not economic at all, but vindication of an intangible right...in a great many of these cases, the only harm is the affront to the plaintiff's dignity, the damage to his self-image, and the resulting mental distress. There are three elements to the injury resulting from a dignitary tort: (1) economic loss; (2) emotional distress and other harm to the plaintiff's personality; and (3) loss of rights. Each of these three elements has been judicially recognized as an appropriate basis for an award of compensatory damages to a victim of discrimination. Loss of rights has also been recognized as an independent element of damages in discrimination cases[11]. Courts have compensated plaintiffs, in a discrimination case, "for the loss of her civil rights and any mental anguish suffered by her." The plaintiff was entitled to damages for loss of rights, because "the deprivation of a constitutional right carries with it damages distinct from those which are embodied in the concept of humiliation and which deserve compensation." Therefore, even when no mental anguish, emotional distress, or economic loss is shown, damages may be awarded simply for loss of rights. Plaintiff is entitled to protection from the feeling of inferiority, or the "stigmatic" injury, resulting from racial bias. This is the type of injury the Court had in mind in Curtis v. Loether, when it described the race discrimination action by a black plaintiff as a dignitary tort and likened it

---

[10] Over the years, a number of lower courts have treated discrimination cases as tort actions. See, e.g., Dillon v. AFBIC Development Corp., 597 E2d 556, 562 (5th Cir. 1979); See also Meyers v. Pennypack Woods Home Ownership Ass'n, 559 E2d 894, 901-02 (3d Cir. 1977).

[11] Examples of other early discrimination cases that have awarded compensatory damages for humiliation, embarrassment, or other forms of emotional distress are Bradley v. John M. Brabham Agency, Inc., 463 E Supp. 27,32 (D.S.C. 1978) (award for emotional distress); Young v. Parkland Village, Inc., 460 E Supp. 67,72 (D. Md. 1978) (award for emotional distress); Stevens v. Dobs, Inc., 373 E Supp. 618, 623 (E.D. N.C. 1974) (award for mental anguish, humiliation, and embarrassment). 40 478 E2d at 384. See also Seaton v. Sky Realty Co., 491 E2d 634 (7th Cir. 1974) (award for embarrassment and humiliation); Wright v. Owen, 468 E Supp. 1115, 1118 (E.D. Mo. 1979) (award for distress and humiliation); Harrison v. Otto G. Heinzeroth Mortgage Co., 430 E Supp. 893, 897-98 (N.D. Ohio 1977) (award for plaintiff "upset and troubled" by a "very painful experience").

to an action for defamation. Courts have recognized that an individual's rights are something that can be infringed upon and create damages for which a person should be afforded relief. Civil rights then are economic rights functioning as legally enforceable claims which are structured in legislation. The defendants subjected plaintiffs to disparate, hostile, inferior treatment motivated by racial bias and stereotyping based on race as African-American. This discriminatory treatment occurred flowing from an attorney-client relationship. The discriminatory treatment experienced caused plaintiffs emotional distress, anxiety, and a loss of confidence in lawyers/the legal profession and confidence in commercial settings.

988.    <u>Punitive Damages Under RSA 358:</u> NH has established that punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Racial discrimination inherently involves such conduct, as it demonstrates a deliberate disregard for the plaintiff's fundamental civil rights. The Haddad v. Wal-Mart Stores, Inc. case provides guidance on the substantial punitive damage awards that can be sustained in discrimination cases. In that case, the court reinstated a $1 million punitive damage award for gender discrimination, establishing that such awards serve important deterrent purposes. Race discrimination cases often warrant even higher punitive awards due to the particularly egregious nature of racial animus. Other recent cases have sustained punitive damage awards in the millions of dollars for discrimination claims. In Charles v. City of Boston, a jury awarded $10 million in punitive damages for racial discrimination and retaliation, demonstrating that New England juries are prepared to impose substantial punitive sanctions for discriminatory conduct. See also Monteiro V. City of Cambridge, Civ. Action No. 01 -3727 (trial court affirmed 2008 jury award of $ 1,042,400 in compensatory damages and $ 3.5 million in punitive damages in single count of retaliation).

989.    <u>NH Consumer Protection Act Damages:</u> The NH Consumer Protection Act provides for multiple damages when violations are found to be willful or knowing. Under this statute, actual damages may be doubled or trebled if the court finds that the violation was willful or knowing. This multiplier effect can transform even modest actual damages into substantial recovery.

990.    <u>Attorney Fees:</u> NH permits prevailing parties to recover reasonable attorney's fees as part of their damages award under RSA 358 and RSA 354. The attorney's fees component becomes particularly significant in cases involving complex discrimination claims that require extensive litigation. Civil rights cases often involve substantial discovery, expert testimony, and extended trials, all of which contribute to significant attorney's fees.

991.    <u>Emotional Distress Damages:</u> NH law recognizes that emotional distress damages are fully compensable under RSA 354 and 358 claims. The standard for such damages does not require physical manifestations or medical treatment. Rather, a plaintiff's own testimony regarding the emotional impact of discriminatory treatment, can support substantial awards. Courts have recognized that emotional distress damages in discrimination cases can range from $100,000 to $500,000 or more for severe cases involving ongoing psychological harm. The emotional distress component of this case involves the plaintiff's experience of being treated with hostility based on racial stereotypes. Such treatment creates lasting psychological harm that extends far beyond the immediate incident. Racial discrimination in commercial settings typically involves conduct designed to (or has the effect to) humiliate and degrade the plaintiff based on race. Courts have specifically recognized that the dignitary harm resulting from racial discrimination includes emotional distress, loss of self-esteem, and damage to one's sense of security in commercial relationships Courts have recognized that such conduct causes lasting psychological harm that can affect the plaintiff's ability to engage in commercial relationships and participate fully in society. [Note: The emotional impact of this discrimination extends beyond the immediate incident and continues to affect plaintiff's daily life and sense of security in commercial transactions.]. Emotional distress damages in NH can be substantial, particularly when the conduct involves racial discrimination.

992.    <u>Emotional Damages Awards Based Plaintiff's Own Testimony:</u> Plaintiff's damages include damages that are based on emotional distress, which will be based on testimony of the plaintiff and witnesses as well as the facts and circumstances of this case. Therefore, the plaintiff will likely be able to prove noteworthy emotional distress damages in this case. Emotional distress damages are available even where the plaintiff has not sought medical treatment. Medical testimony, although relevant, is not necessary. A plaintiff's own testimony may be sufficient to establish humiliation or mental distress. Hence, expert medical testimony is not required in order to award damages for emotional distress. The victim's testimony, or that of his family or friends has been

found sufficient (see Johnson v. Hale, 940 F.2d 1192 (9th Cir. 1991; Human Rights Commission v. LaBrie, Inc., 668 A. 2d 659 (1995)). See also Williams v. TWA, 660 F. 2d 1267 (8th Cir. 1981). See also Hammond v. Northland Counseling Center, 218 F.3d 866 (8th Cir. 2000); Ross v. Douglas County, Nebraska, 234 F. 3d 391 (8th Cir. 2000). Further, the U.S. Supreme Court has noted with respect to emotional distress damages that a genuine injury in this respect may be evidenced by one's conduct and observed by others. Carey v. Piphus, 435 U.S. 247, 264 n. 20 (1978). The Eighth Circuit has held that a plaintiff's own testimony may be adequate to support such an award and the testimony of family and friends is also probative. See Kucia v. Southeast Arkansas Community Action Corp., 284 F. 3d 944, 947 (8th Cir. 2002) (plaintiff's own testimony enough); Morse v. Southern Union Co., 174 F. 3d 917, 925 (8th Cir. 1999) (affirming $100,000 emotional distress award where family members corroborated plaintiff's testimony); Kim v. Nash Finch Co., 123 F. 3d 1046, 1065 (8th Cir. 1997) ( award of $100,000 affirmed where plaintiff, his wife and his son testified regarding anxiety, sleeplessness, stress, depression, high blood pressure, headaches and humiliation).

993.  <u>Economic Harm:</u> The defendants' wrongful conduct caused economic harm. This includes measurable harm in  terms of the diminished/lost settlement value and outcome in underlying litigation, unnecessary legal costs; other out of pockets; inconvenience; lost opportunities; lost time; other out of pocket costs; cost of litigation, etc.

994.  <u>Loss Differential</u>: Loss differential can render damages for economic loss significant. The loss in value of the partial settlement of the Hilton Hotels litigation represents a differential that constitutes economic loss and harm that is attributable to the defendants' breach of duty, deception, fraud, unfair practices and discrimination.

995.  <u>Lost Time, Inconvenience, and Other Impacts</u>: Due to the defendants' acts, the plaintiffs had to expend more effort, time and resources resulting in harmful and damaging impacts on business, economic livelihood, health and personal time of the plaintiffs including lost time with family and lost opportunities.

### B. Damages from the State Defendant

996.  With respect to the state defendant, there is harm from stress, additional work and burden, cost of additional work, emotional distress, time robbed from family and other things including medical needs, the harm from violations of NH constitution and harm from discrimination/retaliation.

## SECTION 5. CONCLUSION AND PRAYER FOR RELIEF

997.  Plaintiff repeats and reiterates each and every allegation of the complaint, in the preceding paragraphs with the same force and effect as if herein set forth at length.

### I. CONCLUSION

998.  There are additional events that occurred after 2017 that go to supplementing the claims in this case. For example, in 2019 and 2020, there are events arising from the same claims in 2017 that were repeated, republished and continued defamatory statements about the plaintiffs and that added to and expanded the defamatory statements about the plaintiffs. Thus, there are additional acts by the defendants that have occurred since the filing of the prior complaint.  These include but are not limited to the following:

999.  Defendant published the following false and defamatory statements of purported fact concerning plaintiffs as follows:

    a.  Donais falsely stated that plaintiff falsely and frivolously accused him of racism for declining to represent plaintiffs in a 7 minute prospective attorney-client phone call. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials.

    b.  Donais falsely stated that plaintiff burglarized and bugged his office phone and office thus committing a felony crime.

    c.  Donais falsely stated that plaintiff fabricated a recording to put Donais' voice on it to make Donais say things Donais did not say.

    d.  Donais falsely stated that plaintiff is a criminal offender.

    e.  Donais falsely stated that plaintiff is mentally crazy/has a mental disease-sickness.

1000.   These statements were made not in court proceedings and when there was no court proceeding that was ongoing. They are not and cannot be privileged and the plaintiffs intend to show why they cannot be privileged. These statements are defamatory. Plaintiff will show evidence of these facts.

1001.   These statements are from the events in 2019 and 2020.

1002.   There are further events in 2021, 2022 and 2023, as well as 2024 and 2025.

1003.   Note: Some statements related to and/or flow from certain events in 2017. But the plaintiff does not seek recovery for those events. The plaintiff will seek recovery for those events in the first-filed state court case in NH, first filed in Jan 2020 and thus timely in that case.

1004.   As a result of the above-described acts, the plaintiff has suffered, continue to suffer, and will in the future suffer emotional distress, embarrassment, frustration, anger, and feelings of stigmatization including racial stigmatization from the false allegations, all to his economic and noneconomic damages in an amount to be determined by a jury at trial.

1005.   The plaintiff is also entitled to reasonable attorney fees pursuant to statute.

1006.   The plaintiff asks the court to grant a liberal construction to these pro se/non-lawyer words in a light most favorable to the plaintiff, in accordance with the best practices of modern jurisprudence and in compliance with the US supreme court's directive to all lower courts and tribunals, in Haines v Kerner, 404 U.S. 519 (1972).

1007.   The plaintiff requests that this court tries its best to understand what it is that the plaintiff is trying to articulate to the court, and to interpret it in the best way and best light possible, in order to provide appropriate justice as is necessary and required.

1008.   The plaintiff hereby demand a trial by jury on all issues so triable.

## II. PRAYER FOR RELIEF

1009.   In conclusion, the plaintiff first ask that the court remand the case back to state court because this amended complaint no longer contains a federal claim. Note: A motion to remand will also be filed.

1010.   Further, the plaintiff respectfully requests the Court to enter judgment in his favor and against all defendants, awarding compensatory damages, punitive damages, injunctive relief to prevent further misconduct, attorneys' fees and costs, and such other relief as the Court deems just and proper.

1011.   Given the 8 year nightmare that defendants have put the plaintiff and his wife through, including trying to make plaintiff seem to the world that he is crazy, that he is lying, that Donais is telling the truth, declaring this at every turn he gets, in every public forum he gets, including in public meetings at the advisory committee on rules, and given the mental anguish for 8 years and the pervasive continued damages suffered, Plaintiff demands the following:

   a.   Compensatory Damages: $850,000 for economic losses, reputational harm, and emotional distress.

   b.   Punitive Damages: $1,000,000 to deter future misconduct.

   c.   Attorney Fees and Costs: Pursuant to RSA 358-A:10 and 42 U.S.C. §1988.

1012.   WHEREFORE, the plaintiff, respectfully prays that the Court grant the following relief:

   (1) Enter judgment in plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief, and such other and further relief as the plaintiff may be entitled to by bringing this action.

   (2) Award plaintiff damages within the jurisdictional limits of this court and enhanced damages as appropriate.

   (3) Award plaintiff reasonable attorneys' fees and costs including service and filing fees.

   (4) Grant a pro se liberal construction to this pleading.

   (5) Order such other relief as this Court deems just and equitable.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor, Pro Se
101 Middlesex Turnpike, #270
Burlington, MA 01803
Tel: 781-492-5675
Date: July 29, 2025                                 Email: quickquantum@aol.com

/s/ Natalie Anderson
Natalie Anderson, Pro Se
101 Middlesex Turnpike, #270
Burlington, MA 01803
Tel: 617-710-7093
Date: July 29, 2025                                 Email: liberty_6@msn.com

## CERTIFICATE OF SERVICE

This is to certify that copies of this amended complaint was/will be served on all parties and counsel of record.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor, Pro Se
101 Middlesex Turnpike, #270
Burlington, MA 01803
Tel: 781-492-5675
Date: July 29, 2025                                 Email: quickquantum@aol.com

/s/ Natalie Anderson
Natalie Anderson, Pro Se
101 Middlesex Turnpike, #270
Burlington, MA 01803
Tel: 617-710-7093
Date: July 29, 2025                                 Email: liberty_6@msn.com