STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT – NORTHERN DISTRICT

Case: #216-2020-CV-00027

Andre Bisasor, Natalie Anderson, Plaintiffs v. Craig S. Donais, Defendant.

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiffs Andre Bisasor ("Bisasor") and Natalie Anderson ("Anderson") submit this first amended complaint against Craig S. Donais (hereinafter "Donais"), for defamation, breach of fiduciary duty, breach of contract (implied), breach of the covenant of good faith and fair dealing, racial discrimination/retaliation under NH law, tortious interference with contractual relations/advantageous relations, abuse of process, misrepresentation, etc.

2. For the following sections, every paragraph that precedes another paragraph is incorporated into the next paragraph as if fully stated therein. This amended complaint has an affidavit attached as **Exhibit A** which is hereby incorporated into this complaint. NB: The term "plaintiff" will generally refer to Bisasor, in particular with respect to assertions of facts, but in most cases, will also by implication apply to Anderson in terms of factual assertions.

## I. FACTS PERTAINING TO BREACH OF FIDUCIARY DUTY, BREACH OF IMPLIED CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### A. Anderson Contact O'Brien Who Contacts Donais

3. On 1-5-17, Anderson contacted Attorney Robert O'Brien ("O'Brien") seeking legal assistance with the dispute with Homewood. During this eighteen-minute consultation, Anderson provided detailed information about the circumstances of her case, including sensitive information. O'Brien, recognizing the complexity of the legal issues presented and acknowledging that such matters fell outside his primary area of practice, informed Anderson that he would consult with a colleague who possessed greater expertise in the relevant areas of law.

4. Acting on his professional obligation to ensure Anderson received competent representation, O'Brien contacted Donais, specifically identifying him as an attorney with broader expertise in state law relevant to Anderson's situation. During their conversation, O'Brien conveyed to Donais the substance of Anderson's legal concerns, along with the urgent timeline requiring immediate action. Following this consultation, O'Brien communicated to Anderson via text message that he had spoken with Donais, thus facilitating consultation between Anderson and Donais.

5. Here, Obrien's text message stated clearly that Obrien spoke to Attorney Donais and that Donais said that we "have a great contract case for the overcharges", that "the innkeeper rules would likely apply to your situation" and "which allows for "no cause" evictions", and that Donais would "not opine on the discrimination claims outside his experience." Therefore, Anderson provided prospective client information to Obrien who passed that information on to Donais and Donais passed back legal opinion on the case to Anderson through Obrien .

6. Note: In a later interview with Mark Cornell of the ADO of NH, Cornell stated that Obrien told him that:

> "He seems to recall that Mr. Donais did not think the innkeeper/landlord issue was "cut and dry.""

7. Thus, Obrien contacted Donais by phone and explained his contact/conversation with Anderson and the issues in the case. Obrien then sent Anderson a text message summarizing the legal opinion rendered by Donais on facts of the case.

### B. Bisasor Contacts Akridge and Hilton Executives

8. On 1-5-17, Bisasor contacts Dave Akridge ("Akridge"), the owner of the management company who manages the Homewood Suites of Nashua. Akridge is the supervisor of general manager Adam Robitaille. Bisasor speaks to Akridge about the dispute/situation. Akridge tells Bisasor that he will call him back tomorrow. On 1-5-17, Plaintiffs also contacted the Hilton senior management team to seek relief. On 1-6-17, Hilton Executives wrote an email to plaintiffs stating that Homewood had assured them they retained counsel and were working to amicably resolve the matter (which was untrue).

### C. Bisasor Contacts Donais

9. Bisasor discovered several attorney ads online by Donais claiming to be an expert attorney in landlord-tenant law serving the Nashua area. Because of this, Bisasor understood Donais to be a competent lawyer in landlord-tenant law and thus identified Donais as a lawyer to contact for legal assistance.

10. On 1-6-17, Bisasor called Donais' phone number, explicitly with the intention of seeking and obtaining legal advice, assistance and/or representation but only reached a voice-message system, and thus left a voice-message.

11. Bisasor thus requested that Donais represent him and explicitly sought individualized legal advice from him. This is evidenced by the plaintiff's call to Donais and the voicemail left, which stated the following[2]:

> "Hello, my name is Andre and I am calling about a tenant legal matter. I understand that you practice landlord-tenant law. I wanted to see if I could discuss a legal matter with you. Please give me a call back at 781-492-5675. The matter is somewhat urgent so if you can, please call be back as soon as it is practical."

12. On Monday, 1-9-17, the very next business day, after retrieving the voicemail that clearly indicated the request for legal advice/assistance on a landlord-tenant matter, Donais intentionally called Bisasor at his Massachusetts phone number, knowing that Bisasor was seeking specific legal advice and assistance from on a specific land-lord tenant matter, and the conversation lasts for about 7 minutes. This was not a situation where a random person calls his office and Donais picks up the phone and was caught off guard. Here, Donais deliberately, and with forethought, listened to voice-message and

---

[1] Cornell interviewed Obrien in August 2020 and Obrien confirmed that he sent the above text to the Anderson on 1-5-17. Obrien also confirmed that Donais told him that "the innkeeper/landlord issue was not "cut and dry"". This means that Obrien had to have explained enough of the case for Donais to render such an opinion.

[2] Note: Bisasor has a recording of this voicemail message left for Donais on 1-6-17.

decided to return the call in order to engage Bisasor's request for legal advice/assistance, fully aware of what the call would be about and with the intention to listen to Bisasor share information about his legal predicament.

13. During that call, Bisasor requested that Donais represent him and explicitly sought individualized legal advice from him, specifically requested advice on landlord tenant matters, which is within Donais' practice[3], and Donais gave the desired legal advice on the landlord-tenant matters, for which plaintiff sought assistance, during the one-time legal consultation call. A brief summary excerpt of part of what was discussed is as follows[4]:

> Plaintiff asked whether the conversation was confidential and Donais confirmed that it was protected by privilege. Plaintiff shared confidential information about the landlord-tenant arguments plaintiff had, requested advice on potential weaknesses in those arguments and on certain legal strategies being contemplated, and asked about the relevant statutes and the likelihood of obtaining a TRO. Donais indicated that he thought it was likely that plaintiff will get a TRO based on what was described to him but he could not say for sure if it would become permanent because he would have to take a look at all the documents himself. Donais also indicated a belief that the plaintiff's contract case was strong based on what was described, but it would depend on what was actually written in an agreement or if we can actually show there was an agreement, etc.

14. Thus, during this consultation, Bisasor disclosed confidential information and received legal advice from Donais.

15. Bisasor thus engaged in preliminary discussions with Donais related to a legal analysis of potential claims that was to be brought in connection with the landlord-tenant matter involving the Hilton Hotel defendants. NB: Donais declined formal representation because he was "too busy" that week..

### D. Legal Action Initiated By Plaintiffs | Donais Goes To Represented Opposing Side

16. On 1-9-17, Plaintiffs filed an emergency 540A petition in Nashua District Court. A Temporary Restraining Order (TRO) is granted by the court to halt any threat of a removal action. On 1-10-17, the 540A petition and the TRO is served on general manager Adam Robitaille in the morning. On 1-11-17, Dave Akridge contacts Donais seeking his involvement in the case as local defense counsel and to support the pro hac vice admission of an out of state attorney from Atlanta, named Karl Terrell. On 1-11-17, a phone call occurs between Akridge and Donais where Donais informs Akridge that he had a conversation with Bisasor about the case the day before. Donais explains to Donais what was discussed with Bisasor. Akridge asks Donais if this created a conflict and Donais emphatically assured Akridge that it did not. Donais then goes to represent the opposing party [Homewood] after consulting with Bisasor and shared confidential information shared by Bisasor with the opposing party [Homewood] thus breaking client confidentiality. Donais also failed to inform Bisasor of this nor obtained consent from Bisasor before doing so. By sharing Bisasor's client call information with Homewood, including Dave Akridge, and by also sharing Bisasor's client call information with other people, including family members,

---

[3] See Exhibit B for Donais' advertisement on Justia, that identifies landlord-tenant as within his practice area.
[4] NB: The defendant cannot dispute facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in a pre-trial motion to dismiss is invalid.

friends, colleagues community members including the Manchester NH crime-line board, and with friends and the police, etc., Donais breached plaintiff's confidentiality. Donais thus intentionally misrepresented to Bisasor that the consultation call would be kept confidential, via privilege, which Donais never intended to honor. Yet, Donais' voluntary decision to call back Bisasor in response to his voicemail, represented an agreement by Donais to engage in an attorney-client conversation protected by attorney-client privilege.

**E. Donais' Contact With Akridge**

17. After the 1-9-17 call with Bisasor, Donais and Akridge had a phone call on 1-11-17 where the plaintiffs and their case against Homewood was discussed. Donais discussed the information shared with him from Bisasor. Donais shared this information without receiving consent from Bisasor and without informing Bisasor that he was going to share such information with Akridge. This conversation was centered on whether Donais could be hired to represent Akridge/Homewood in the same case that Bisasor discussed with Donais on 1-9-17. Subsequent to this phone call, Donais sent an email on 1-11-17 to Akridge stating:

> "What I know is that I received a call from "Andre" who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper..".

18. Here, Donais admitted that he received specific client consultation information from Bisasor on the 1-9-17 call.

19. On 1-11-17, Akridge calls Terrell and tells him of the discussion he had with Donais about the contact with Bisasor. Donais writes an email to Terrell stating that he had contact with Bisasor and provided a summary of what was discussed with Bisasor. Donais and Terrell had a further conversation by phone about the matter. On 1-13-17, Donais filed an appearance on behalf of Adam Robitaille and Homewood Suites of Nashua and filed pro hac vice motion for Attorney Karl Terrell. On 1-17-17, Donais and Terrell filed a 60-page motion to dismiss in the Nashua District Court. The motion to dismiss included/utilized confidential information that was shared with Donais both directly via call with Bisasor and indirectly via communications with Obrien from Anderson.

**F. Elliot Berry's 1-17-17 Call with Donais**

20. On 1-17-17, renown Attorney Elliott Berry (of the NH Legal Assistance) agreed to formally represent plaintiffs in this case. Plaintiffs advised Berry of the situation with Donais. Berry expressed shock at these events and told us that in his 30 years of practicing law he had never heard of anything like that or any lawyer doing such things. Berry advised plaintiffs that this was a serious violation of Rule 1.18 of the NH rules of professional conduct. On 1-17-17, Berry called Donais about the conflict of interest and to give him a chance to explain and/or to withdraw from the case because Berry now had a duty to

bring the matter to the attention of the court. But Donais told Berry that there was no conflict of interest, and that he did not think he needed to withdraw from the case.

### G. Court Hearing on 1-18-17

21. On 1-18-17, a court hearing took place in the Nashua district court before Judge Paul Moore. At or near the beginning of the hearing, Berry raised the ethical concerns about Donais with the court. A sidebar ensues with counsel for both parties invited to discuss the matter at the bench in front of Judge Moore. Berry explained the ethical concerns to the judge. Donais gave his explanation of the matter citing that he did nothing wrong. Mr. Donais fought vigorously to remain on the case, and even accused Elliott Berry of creating a contrived conflict. However, Judge Moore told Donais that he had been part of the PCC for the past 10 years and was vice chair of the hearing committee for the past 4 years. Judge Moore told Donais that if he had any discussion with Obrien or Bisasor about the facts of this particular case, he would be in conflict. Judge Moore indicated to Donais that this could become a very serious matter if the plaintiffs decide to pursue this as a complaint and that Donais needs to carefully consider what he is going to do because once "the bell is rung", it will be a problem especially if done while the litigation is proceeding. Judge Moore asked Berry if his clients were willing to waive any conflict and that if they were not, then Donais needs to make a decision on withdrawing. If Donais could not decide for himself, then Judge Moore would make the decision for him. Judge Moore clearly was signaling to Donais that it would be much better for him to withdraw on his own without being formally disqualified by the judge. Donais got the message loud and clear. After a short recess, wherein plaintiffs told Berry that they did not waive any conflict, then subsequently Donais reluctantly told Judge Moore that he was going to withdraw from the case.

### H. Dave Akridge Affidavit on 5-4-17

22. Akridge provided a statement on 5-4-17 in an affidavit that shows that, as of 1-11-17, prior to Donais being hired to represent Akridge and Homewood, that Donais and Akridge knew that Bisasor was the plaintiff suing Akridge and Homewood in the district court, i.e. that they concluded that "Andre" was quite likely "Mr. Bisasor" and that Akridge "heard enough to conclude… that the caller he described was likely Mr. Bisasor".

23. The above shows that Donais received legal advice information from Bisasor, that Donais was in contact with Akridge shortly after the consultation call with Bisasor, that before Akridge hired Donais, Donais shared with Akridge information that Bisasor shared with Donais. The above also shows Donais willfully and knowingly persisted in seeking to represent the opposing party when he knew there was a conflict and when his possible new client and their lawyer was specifically concerned that there was a conflict of interest. But Donais persuaded them that there was nothing to the matter, all the

while also hiding that Obrien had spoken to Donais about the same matter and shared more information about the matter, to which Donais even rendered a legal opinion. It is likely that if Akridge and perhaps Terrell had known about the Obrien call, they would not have hired Donais as local counsel. Akridge stated that: *"I specifically recall asking Mr. Donais if he would have a conflict serving as local counsel, given this conversation with "Andre." He responded with conviction that he did not, given the fact that he had turned down the request to take the case, and given also the brief nature of his discussion with the caller."* This persistence and willful misconduct by Donais not only was a detriment to plaintiffs as former prospective clients but posed a jeopardy to his new prospective clients in hiding the Obrien call of 1-5-17 and in minimizing the conflict based on the 1-9-17 call with Bisasor.

### I. Other Statements Made in Donais

24. Donais admits that he received confidential information from Bisasor. As one example, he admits that he received information regarding the "need to immediately file" which further goes to timing and strategy. Donais also stated that during the call he knew it was the same case that he consulted on with Obrien. Donais disclosed the contents of the plaintiffs' client-privileged protected information, as noted above, to Akridge, Terrell, and Terrel's assistant, prior to being hired by them to represent them as parties adverse to the plaintiffs. Donais further used and disclosed the contents of the plaintiffs' client-privileged protected information, as noted above, to Akridge, Terrell, and Terrell's assistant, after he was hired by them to represent them as parties adverse to plaintiffs. This was a breach of confidentiality.

### J. Additional Subsequent Events

25. In the time period spanning 2017, 2019, 2020 and after, Donais disclosed the contents of the plaintiffs' client-privileged protected information, as noted above, to his wife, Mary Donais, his sons Garrett and Aiden, and his other family members and friends, as well as to members of the Manchester NH crime-line board, and to the Manchester NH police, including details of the 1-9-17 conversation with Bisasor, and subsequently, to a public audience at a public meeting.

## II. FURTHER FACTS PERTAINING TO BREACH OF FIDUCIARY DUTY
### A. Formation of the Fiduciary Relationship

26. On 1-9-17, Plaintiff consulted Donais for legal advice on a landlord-tenant dispute and engaged in a confidential discussion with Donais, during which Donais obtained confidential information about plaintiff's personal circumstances, legal concerns, and litigation plans including case strategies and exploration of case strengths and weaknesses. During this call, Plaintiff disclosed confidential information, triggering fiduciary duties under NH Rule of Professional Conduct 1.18. Donais declined representation but later exploited this interaction to harm Plaintiff. A fiduciary relationship was formed from the above events and conduct of the parties.

27. Donais in deciding to call back the plaintiffs in response to the voicemail represented an agreement by Donais to engage in an attorney-client conversation that was protected by attorney-client privilege. Consequently, Donais had inside knowledge of plaintiff's self-disclosed understanding of the strategies, weaknesses and discussions about plaintiff's case from Plaintiff directly. This prospective attorney-client relationship triggered fiduciary obligations and confidentiality obligations on the part of Donais. The rules of professional conduct create these and other duties and obligations of the lawyer to a client or former client. These duties and obligations include but are not limited to confidentiality and fiduciary expectations as well as the expectation that Donais would not use this client conversation to try to injure, hurt, defame or publish private facts, as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct.

28. The communications on 1-5-17, 1-6-17 and 1-9-17 created the initial contacts necessary for the formation of a prospective client relationship under New Hampshire Rule of Professional Conduct 1.18. In particular, on 1-9-17, Donais returned Bisasor's call, initiating what became a 7-minute consultation during which Bisasor, speaking on behalf of both plaintiffs, provided Donais with confidential information relating to their legal dispute with Homewood Suites. During this consultation, Bisasor disclosed specific details about the nature of their claims, including allegations of racial discrimination, improper charges, and the urgent need for legal intervention to prevent their wrongful eviction. Bisasor reasonably believed, based on the prior communications with O'Brien and Donais's willingness to engage in substantive discussion about their legal situation, that Donais was consulting with them for the purpose of potentially providing legal representation.

29. Donais's status as a licensed attorney in NH created ongoing professional and ethical obligations under the Rules of Professional Conduct and thus retained continuing duties to his former client, including the duty not to use confidential information to the client's disadvantage, the duty not to engage in conduct detrimental to the former client's interests, and the duty to act with good faith and fair dealing in all subsequent interactions. In this matter, Donais violated his duty to the plaintiff in several ways: a) Donais discussed the client conversation with the plaintiff with several people. These include his wife, Mary Donais, his sons Garrett and Aiden, and the Manchester NH crime-line board, as well as friends and connections. These communications violated the rights of the plaintiff; b) Donais also had a duty to inform the plaintiff, as a former client, that Donais was going to or had discussed such information with others. Instead, Donais actively hid those occurrences from plaintiff. The act of hiding such occurrences from plaintiff is a breach of duty the plaintiff.

30. Donais's disclosure of client discussion information result was a violation of Donais's fiduciary duty to Bisasor.

31. Donais also published the following false and defamatory statements of purported fact concerning plaintiffs: a) Donais falsely stated that plaintiff falsely and frivolously accused him of racism for declining to represent plaintiffs in a 7 minute prospective attorney-client phone call. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to community member; b) Donais falsely stated that plaintiff burglarized and bugged his office phone and office thus committing a felony crime;  c) Donais falsely stated that plaintiff fabricated a recording to put Donais' voice on it to make Donais say things Donais did not say; d) Donais falsely stated that plaintiff is a criminal; e) Donais falsely stated that plaintiff is mentally crazy/has a mental disease-sickness. These false statements were not made in court proceedings and are not privileged.

## B. Abuse of Confidence and Betrayal of Trust

32. Donais's conduct represents a clear abuse of the influence he had acquired and a betrayal of the confidence that had been reposed in him. Rather than declining representation of the adverse party or maintaining the confidentiality of the information he had received, Donais chose to use the confidential information obtained from plaintiffs to benefit their opponents in the litigation. This conduct violated the most fundamental principles of the attorney-client relationship and constituted a breach of the fiduciary duties he owed to plaintiffs. The harm caused by Donais's breach was both immediate and substantial. Plaintiffs were deprived of the confidentiality protections they reasonably expected when consulting with an attorney, and the confidential information they provided was used against them in the subsequent litigation. This breach of trust undermined their legal position and caused them to suffer damages as a direct result of Donais's misconduct.

## III. COUNT 1 - BREACH OF FIDUCIARY DUTY

33. The plaintiffs and Donais had a fiduciary relationship. Donais breached that fiduciary relationship by disclosing confidential information shared by Bisasor with Donais on a legal consultation call, thus breaching confidentiality and attorney-client privacy. Under New Hampshire law, the existence of a fiduciary relationship does not require a formal attorney-client retainer or fee arrangement. Rather, fiduciary duties arise whenever confidence has been reposed and influence has been acquired in the context of a professional consultation. Thus, a fiduciary relationship existed between Donais and plaintiffs based on their consultation and the confidence reposed in him; Donais breached his fiduciary duties by disclosing confidential information to adverse parties and representing those adverse parties; Plaintiffs suffered damages as a result of this breach; and (4) Donais's breach was the proximate cause of their damages.  Donais's conduct in engaging in a substantive consultation with plaintiffs, acquiring confidential information, and then using that information to benefit their adversaries constitutes a textbook example of breach of fiduciary duty. Thus, Plaintiffs' assert that a fiduciary relationship

existed between the plaintiffs and Donais because Donais had acquired influence with respect to Bisasor which was abused by Donais, and Bisasor reposed confidence in Donais but was betrayed, and because plaintiffs relied on Donais for legal advice for their landlord-tenant matter. Donais withdrew from representing Homewood, after a judge had effectively determined that Donais had violated ethical duties/breached fiduciary duty. The 1-18-25 court hearing transcript shows that Donais was effectively caught red-handed and that a circuit court judge found that Donais breached fiduciary duty and thus was required to be disqualified/withdraw from the case. This by itself is slam-dunk proof that Donais is liable for breach of fiduciary duty, as Donais' own withdrawal serves as his own admission that he was liable for this wrongdoing.

34. As a result of Donais's breaching conduct, Donais caused Bisasor to suffer loss and emotional distress. The damages Bisasor sustained were directly, proximately and solely caused by Donais's breach of his duty. See affidavit attached as **Exhibit A**.

## IV. COUNT 2 - BREACH OF IMPLIED CONTRACT

35. The plaintiffs requested that Donais represent them and explicitly sought individualized legal advice from Donais. This is evidenced by plaintiff's call to Donais and the voicemail left. See previously-referenced verbatim quote of the voice-message.  The plaintiff requested advice on landlord tenant matters, which is within Donais' practice.

36. Donais gave the desired legal advice on the landlord-tenant matters, for which plaintiffs sought assistance, during the one-time legal consultation call.  See previously-referenced excerpt of what was discussed on the call.

37. This establishes that there was an at least an implied attorney-client relationship based on the above facts, at least concerning the consultation that occurred on that one day when Donais consulted with plaintiff on 1-9-17. Thus, from the communications from plaintiff requesting individualized legal advice or request for legal representation via voicemail, and the return call from Donais to Bisasor to discuss the legal issues that Bisasor identified on the voicemail, there is evidence of an implied attorney-client relationship. Plaintiffs and Donais thus had an implied attorney client relationship and thus an implied contractual relationship. The rules of professional conduct and the law treats this relationship as an attorney client relationship even where there is not an express contract as an express contract is not necessary to form an attorney-client relationship. Plaintiffs and Donais had an implied contractual relationship that was implied by the confidential nature of their attorney-client relationship, relied upon by the plaintiffs, as well as by the conduct and words of the parties, including by the trust invested by Bisasor in Donais when he shared confidential information with Donas on the call. Donais himself admitted in email to other people that there was a client relationship or a prospective client relationship,

both of which implicates confidentiality obligations under the rules of professional conduct, and which creates a contractual relationship or at least an implied contractual relationship. The above demonstrates there was attorney-client relationship.[5]

38. As cited before, Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the plaintiffs as prospective clients. Donais discussed with several people the client conversation he had with Bisasor. These include his wife, Mary Donais, his adult son Garrett Donais and teenage son Aiden Donais, the Manchester Crime-Line Board, and his other family, friends and neighbors, and as noted via social media. These communications with third parties, violated the rights of the plaintiffs.

39. Thus, Donais breached the implied contract when Donais acted in a manner that was inconsistent with the agreed-upon common purpose and expectations (including but not limited to confidentiality and fiduciary expectations as well as the expectation that Donais would not use client conversation to try to injure, hurt, defame or publish private facts about the client, among other things), as required by the rules of professional conduct for lawyers, and all of which Donais did, and Plaintiffs were harmed by this breach of implied contract conduct by Donais. Donais explicitly told Bisasor that the 1-9-17 was protected by attorney-client privacy. This explicit agreed-upon common purpose set the expectations of the plaintiffs that the plaintiffs detrimentally relied on, in proceeding to place trust in Donais during that call. Plaintiffs were harmed by the subsequent breaching conduct of Donais. Through his actions and inactions, Donais breached the implied contract with Plaintiffs, and did knowingly injure or otherwise harm Plaintiffs' rights and interests.  By breaching confidentiality of that prospective attorney-client relationship, and by doing so in a malicious, bad faith, harmful way, Donais breached this implied contract. As a result, Plaintiff s suffered damages.

## V. COUNT 3 - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40. Plaintiffs and Donais had an implied contractual relationship that was implied by the confidential nature of their attorney-client relationship. Plaintiffs reasonably understood the January 2017 consultation to entail professional legal advice; an implied agreement arose that Donais would not misuse the information. Donais owed to Plaintiffs a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiffs, to refrain from acting for purely selfish motives or private gain, and to desist from destroying/injuring the rights of Plaintiffs to receive the fruits of thereof. Donais had a duty, under this implied covenant, to look out for the best interest of Plaintiffs, and not to undermine their best interests. Donais's conduct violated the covenant of good faith, foreseeably harming Plaintiffs. As cited before, Donais

---

[5] Note: The existence of an attorney-client relationship is ordinarily a question of fact.

divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which are the plaintiffs in this case. Donais discussed with several people the client conversation he had with the plaintiffs. These communications with third parties violated the rights of the plaintiffs. Donais violated the implied covenant of good faith and fair dealing by failing to protect the interests of the Plaintiffs. Donais was willful in his disregard for the welfare of the Plaintiffs and caused damages to Plaintiffs. By breaching the confidentiality of that attorney-client relationship, and by doing so in a particularly nasty, malicious, bad faith, harmful way, Donais breached this implied contract and the attendant covenant of good faith and fair dealing. NB: Similarly, every wrongful act or harm resulting from the acts of Donais that flowed from the initial breach of that attorney-client relationship is also a breach of implied contract and a breach of the covenant of good faith/fair dealing.

41. By the above-described conduct, inter alia, the Donais knowingly, improperly, malevolently, and intentionally breached its implied covenant with the plaintiffs. Through his actions and inactions and by the conduct alleged herein, Donais breached his duty of good faith and fair dealing to plaintiffs, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests, and caused harm to plaintiffs. As a direct and foreseeable consequence of Donais' actions, the plaintiffs suffered damages. See affidavit attached as Exhibit A for further factual assertions.

## VI. FACTS PERTAINING TO DEFAMATION BY DONAIS MADE TO PRIVATE PARTIES
### A. Donais' False Statements About Plaintiffs To The Manchester NH Crime-Line Board

42. Manchester NH CrimeLine is a 501(c)(3) that pays cash rewards for anonymous tips leading to arrests. The 17-member private civilian board meets monthly to review solved cases and approve reward (note: it does not conduct investigations or help to solve crimes). It is a private, volunteer-run 501(c)(3) nonprofit corporation, not a state agency or municipal department. Consequently, it does not enjoy sovereign immunities or statutory privileges that attach to governmental entities. No enabling statute or city ordinance designates Manchester NH CrimeLine as a governmental unit; its directors are private volunteers. Directors are not sworn officers, hold no arrest powers, do not draw municipal salaries, and are not included in city budgets. Donais has been extensively involved in Manchester NH crime-line organization for many years. Note: Absolute privilege does not shield to statements made to a private non-profit board.

43. Donais made false statements about plaintiffs to members of the Manchester crime-line board including that plaintiff: a) is a criminal; b) is mentally crazy/has a mental disease-sickness; c) burglarized and bugged his office phone and office thus committing a felony crime; d) fabricated a recording to put Donais' voice on it to make Donais say things Donais did not say; e) falsely and frivolously accused him of racism for declining to represent plaintiff in a 7 minute prospective attorney-

client phone call. NB: Plaintiff obtained copies of email communications, via a right to know request, that revealed the false statements made by Donais, about plaintiff, and were directed to by members of this crime-line board.

44. Donais made these statements with ulterior motives, to deflect from his misconduct and to intimidate, harass and retaliate against the plaintiffs. Donais published false statements, falsely accusing plaintiff of criminal conduct, suggesting that Plaintiff was dangerous and mentally ill and framing the plaintiff as a mentally unstable criminal.

45. Absolute privilege does not apply, as the accusations were extraneous to any legitimate legal purpose and stated/repeated outside of any court contexts. These false statements were made to third parties/private persons, and were not made in court or in any judicial context but were disseminated to board members of a community non-profit. Under NH law, defamation requires that defendant made a false statement of fact to at least one third party that harmed plaintiff's reputation[6]. These statements were made without care as to whether they were false and would cause injure/harm the plaintiffs. These statements were made with reckless disregard for the truth.

46. Donais failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, where no valid privilege applied to the communication. Further, Donais's statements were made with ill-will and spite, and with wanton, reckless, or willful disregard for its injurious effects on plaintiff and his rights, and with deep actual malice, evidenced by his reckless disregard for the truth, as he knew that the accusations were false.

47. Plaintiff suffered harm as a direct result of Donais' false, defamatory statements, which caused injury to plaintiff's reputation, honor, and dignity, and to the reputation upon which plaintiff based his profession and business. Further harm includes lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

48. These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury. These defamatory statement(s) requires no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Donais falsely accused the Plaintiff of committing serious violation of moral conduct and because Donais injured Plaintiff in his or her profession and/or occupation. Donais' false and

---

[6] These statements are capable of a defamatory meaning. It is for the trier of fact to determine this and to look to the entire context and circumstances of these statements and the motive behind them to conclude whether there was defamation or defamatory intent.

defamatory statements caused the plaintiff to suffer reputational, emotional, and professional harm, emotional distress, and economic damages, satisfying all elements of defamation.

### B. Donais' False Statements About Plaintiffs To Family Members

49. Donais made false statements to his family members indicating that the plaintiffs were seeking to come to their house and physically harm his wife and their sons, that the plaintiffs were physically dangerous and were criminal people who were bent on hurting his wife and sons, and that both his wife and sons were afraid of the plaintiff for those reasons. Donais perpetuated these false statements to friends, and to other members of his family, including his sons. Donais told his wife and his sons Garrett and Aiden of these false statements about the plaintiff, intending to induce fear and hysteria concerning the plaintiff. This is inferred from communications obtained via a right to know request that revealed the involvement of Donais' children. Donais made false statements that his wife and children were in fear of their lives because the plaintiff was a criminal who was mentally unstable and bent on physically harming his wife and sons. Donais told others that his wife was afraid to be at home during the day when he was at work because of what the crazy criminal dangerous plaintiff was bent on doing. Each of these statements was false. Plaintiff has never threatened Donais, his wife or his sons, and plaintiff has no history of violence, and has never been involved in any criminal conduct. Plaintiff only spoke orally to Donais once on the phone in January 2017 and never orally spoken to him again since then. Further, Plaintiff has never had any direct communication with Donais' wife. Donais made these statements without conducting any independent verification of their truthfulness and without any reasonable basis for believing them to be true.

50. These statements were used by Donais to support a defamatory scheme concocted by Donais, which plaintiff later became aware of later via right to know requests by the plaintiff. Donais manufactured and perpetuated this false and unfounded fear and hysteria pertaining to the plaintiffs. In order to perpetuate the lie that plaintiffs were seeking to physically harm them, Donais concocted the lie that his wife and her sons, Garret and Aiden, were afraid for their lives because of the plaintiff and because the plaintiff was mentally unstable, was criminal, was dangerous and was planning/bent on criminally harming them. Craig and his wife specifically told these false defamatory statements to their sons, Garrett and Aiden, to enlist them as purveyors of the false unfounded fear and hysteria pertaining to the plaintiff.

51. That suggestion by Donais and his wife, Mary, that plaintiffs were dangerous and posed a violent criminal threat to them and her sons, accords with a racially stigmatizing stereotype of black people as inherently dangerous and violently criminal. Those damaging and stigmatizing communications stem from an improper motive on the part of Craig and Mary Donais. Craig and Mary Donais had no rational or reasonable basis to issue those statements about plaintiffs. Craig and Mary Donais

evidently was motivated by personal and racial animus towards plaintiff as evidenced by the racial stereotype/dog whistle employed by Craig and Mary Donais. Donais thus perpetuated these false statements and added to the fear and hysteria pertaining to the false defamatory statements about the plaintiffs. Donais conspired with his wife, Mary, to defame and injure the plaintiff and to enlist their sons in this defamatory scheme, as evidenced by communications obtained via right to know requests, and the coordinated actions between them to present the defamatory statements to others and to cause the widespread broadcasting of this defamation (as shown via right to know requests, where Donais' involvement of his wife, as well as their sons, were revealed via email communications).

52. Donais is the one who first involved his family in this dishonest scheme to injure the plaintiffs. Donais was the one who brought his wife and sons into this scheme. Donais should not have involved his wife and sons in his defamatory scheme. Note: This is the conduct of a sociopath. To disrupt the sanctity of his home with creating false, unfounded fear of harm of his wife and children by the plaintiffs, is the conduct of a sociopath.

53. This defamation campaign was intended to ostracize plaintiffs from Manchester NH community (where the plaintiff had ties to the local NAACP, which Donais and his wife knew about from scouring the internet, searching for information on plaintiffs and which information was located on plaintiff's linked-in), and ultimately to drum up sympathy and support for causing this lie and false hysteria to be publicly broadcasted and disseminated widely. This dissemination by Donais, framed plaintiffs as crazy dangerous criminal black people bent on physically coming to their house when his wife was alone with their children, to physically harm her and perpetuate criminal acts upon her and her children. This included a call for a watch-out in their neighborhood to look out for plaintiffs in the Manchester NH area citing plaintiffs as criminally dangerous and bent on harming his wife and her children. The plaintiffs could not feel safe to return to the Manchester NH area because of this widespread defamation broadcasted across the community. The plaintiffs ability to work on Manchester NH, including with the NAACP in Manchester NH, or engage in any social or community relations in Manchester NH, was significantly damaged. Plaintiffs suffered tremendous harm as a result of the defamation campaign of Donais and his wife. Further, Donais made statements attributing to his wife the allegation that the plaintiff was going to physically harm her. It is self-evident that Donais told his wife lies about the plaintiff that made her think that the plaintiffs were going to physically harm her and her children. Plaintiffs have never said anything about Mary Donais to Craig Donais or to anyone before. Plaintiffs did not know about Mary Donais or know anything about Mary Donais until they first heard of her when Donais himself first brought her up in emails discovered via a request to know request. It can be inferred that

the only way that Mary Donais could think that the plaintiffs were going to physically harm her is for Donais to have told her defamatory things about plaintiffs that were not true, things that led her to think that the plaintiffs were dangerous, violent, and criminal and that the plaintiffs was going to physically harm her and her children. Mary Donais, along with Craig, then spread these defamatory statements to their children, their family members, their friends, neighbors and members of the community including via social media.

54. Publishing a statement to only one third party is enough to establish defamation. This includes false defamatory statements to family members including wife and sons, etc. A false statement by a husband to his wife is still defamation just as how a false statement by a son to his father or a daughter to her mother is still defamation. Family members do not have unfettered right to make false statements about other people to their family members.

55. Without the false defamatory statements made to her by husband Craig, Mary Donais would likely not have had any reason to think that the plaintiffs were dangerous, violent and criminal, or that plaintiffs were going to physically harm her and her children. It can be inferred that Donais lied to his wife and stirred up his wife to act against plaintiffs, as they fed off each other, building on these lies and false allegations and where they encouraged each other to spread these lies to others. Thereafter, Mary Donais joined her husband in spreading and disseminating these lies about the plaintiffs.

56. By falsely fabricating the lie that plaintiffs posed a criminal threat to his family, Donais was laying the groundwork to inflict violence or to have violence inflicted upon plaintiffs, and to justify in advance, the basis for such violence against the plaintiffs. Donais sought to stir up hysteria in the Manchester NH community, about the criminal threat of harm by the plaintiffs, by disseminating this to the Manchester Crime-Line board, by enlisting the help of neighbors to be on the watch for the plaintiffs, by telling family and friends, in order to create justification for violence on the plaintiffs. [Note: Plaintiffs were frequently in the Manchester NH area, at the NAACP location, which was within a few miles of Donais' home and Donais knew of the plaintiff's affiliation with the NAACP including from the Linked-in page]. By creating this atmosphere of false accusation concerning the plaintiffs and danger for the plaintiffs, when the plaintiffs discovered this, the plaintiffs could not continue to work with the NAACP in Manchester NH. This was extreme and outrageous conduct by Donais. Donais published these statements to third parties in the Manchester community where plaintiffs were active with the NAACP and maintained professional relationships within the community including with the police. NB: In the dark history of this country, defamatory lies have been told countless times to stir up crowds to lynch black men by riling them up with falsehoods about how they intended to hurt or harm the wives of white men. This should not be countenanced in any way,

15

shape or form in 21st century America. Plaintiffs believe that a jury would find this abhorrent disgusting lie to be wholly unacceptable/damaging and punishable to the full extent of the law.

57. NB: It is noteworthy because Donais tried to further elicit sympathy for him and wife concerning the fear of harm for their sons, by trying to infantilize his adult sons as "young children", which was misleading at best. Donais intentionally infantilized his sons, calling them "young child" or "young children", in order to ramp up the level of criminal threat posed to his wife and "young children". The plaintiffs did not know Donais had children. But even if the plaintiffs knew of his children, why would the plaintiffs want to harm or hurt Donais' children, much less his so-called "young children"? Where did this fear or belief come from? It is simply irrational to have this fear based on nothing. The rational explanation of where this so-called fear came grom is that it came from Donais' concoction and fabrication of this fear based on lies about the plaintiffs. By painting the picture that plaintiffs wanted to harm his young children, Donais tried to falsely defame plaintiffs as being the kind of people who would hurt young kids. This is a disgusting despicable lie told on the plaintiffs. The plaintiffs have dedicated much of their lives to helping children, in particular from under-served backgrounds, and plaintiff started a non-profit to improving the lives of the youth through education and training in negotiation, conflict resolution and leadership. Further, the plaintiffs has worked with the well-known youth non-profit in Boston, called BUILD inc., as a youth mentor and business plan competition judge. Also, Bisasor has prior experience as an educator in the public school system in lower-income communities. Bisasor has a life of service to empowering and helping youth. To defame plaintiffs as persons planning to hurt young children, or even capable of doing such harm, is particularly hurtful/damaging. Moreover, as a Christian minister, this is further hurtful / damaging.

## VII. COUNT 4 – DEFAMATION & DEFAMATION PER SE BY DONAIS TO PRIVATE PARTIES

58. Donais published false statements of fact concerning Plaintiffs to private third parties, outside of any judicial proceedings. Again, these false statements are: That plaintiff was a violent dangerous criminal, That plaintiff posed a physical threat to Donais and his family, That plaintiff was mentally unstable and dangerous, that plaintiff was stalking or bent on stalking the Donais family at their home. These statements constitute defamation per se under New Hampshire law because they falsely accuse plaintiff of being a criminal or of criminal conduct, injure plaintiff in his profession by attacking his character, and by characterizing him as mentally unstable. Donais' actions fall within all four classes of per se defamation and thus constitute defamation per se causing substantial harm to Plaintiffs' reputation and business relationships and entitling Plaintiff to monetary damages in an amount to be determined at trial.

59. Donais accused plaintiff of criminal conduct which included that plaintiff bugged his office and fabricated his voice in a recording. Donais also accused plaintiff of posing a dangerous criminal threat to him, his wife and young children. Criminal accusations are generally regarded as defamatory. These statements by Donais were published to his wife, to his sons, to his family members and friends, and to members of the Manchester crime-line board. These statements damaged the plaintiff in his trade, occupation, and/or business, and were defamatory on their face without reference to any extrinsic information. The statements affected plaintiff in his profession by imputing to fraud, dishonesty, and/or misconduct. Because these statements injure plaintiff in his profession or trade, they constitute defamation per se.

60. The plaintiff could not feel safe to return to the Manchester NH area and his ability to work in Manchester NH, including with the NAACP in Manchester NH, or engage in any social or community relations in Manchester NH, was significantly damaged. Plaintiffs suffered tremendous harm as a result of this defamation by Donais. Donais published statements suggesting that the plaintiff had a mental disease and was mentally unstable, including that plaintiff is mentally ill/crazy. These statements were published to his wife, his sons, to his family members and friends, and to members of the Manchester crime-line board. Donais published false statements, that plaintiff falsely accused Donais of racial discrimination. This defamation was grounded in an attempt by Donais to racial stigmatize the plaintiff. This defamatory accusation was made to the Manchester NH Crime-Line board and also made to several third parties including Donais' family members and friends. Both the NH Attorney Discipline Office and a Massachusetts Superior Court judge have stated that if this allegation is true, then it constitutes actionable defamation.

61. These statements are untrue and have harmed the plaintiff. The plaintiffs are not criminals nor are they criminally dangerous or violent people. Plaintiffs are upstanding law-abiding African-American citizens who are educated thought leaders in their fields, and are civic statesmen and leaders in their communities.

62. Donais has negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about the plaintiff. These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury. These damages flow directly from Donais's false statements and the resulting harm to plaintiff's reputation in the community. As a result, plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress as well as harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering, insult, being placed in fear and anxiety, loss of

enjoyment of life, lack of energy, mood swings, and sleep disturbances, in addition to impairment to Plaintiff's reputation and standing in the community including specific reputational harm in the Manchester NH community. See affidavit attached as Exhibit A for further factual assertions/points incorporated herein.

## VIII. COUNT 5 – DEFAMATION BY DONAIS MADE IN A PUBLIC MEETING

63. On or about June 2, 2023, Donais made defamatory statements about Plaintiff at a public meeting in front of a public audience for an Advisory Committee on Rules public hearing. This hearing was a public comment forum established to receive input from members of the public, bench, and bar regarding proposed rule changes in the judicial system. Critically, this forum does not constitute a judicial or quasi-judicial proceeding because it: a) lacks judicial characteristics with no power to determine facts, make binding orders, or impose penalties; b) it lacks procedural safeguards with no sworn testimony, cross-examination, or formal evidentiary procedures; c) it has non-adjudicatory function in that it merely collects public input on proposed rules rather than resolving disputes; d) it served as a public comment forum, and functioned as a venue for citizen input, not judicial determination.

64. Donais made false factual statements about Plaintiff stating that the plaintiff wrongly accused him of misconduct and that plaintiff had engaged in specious untrue allegations with no merit against him (regarding the plaintiffs contention that Donais had lied that plaintiff accused him of racism for declining representation), and that plaintiff was fueled by personal animus and personal destruction of him (in asserting that Donais had lied about that), and plaintiff had deceptively weaponized and misused the attorney discipline process against him (in aid of advancing the untrue allegation that Donais had lied). Donais basically publicly called plaintiff a liar regarding the false racism accusation. These statements were factual assertions rather than protected opinion that were false and defamatory in nature as they exposed Plaintiff to public contempt, ridicule, and harm to reputation.

## V. FACTS PERTAINING TO INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS RELATIONS BY CRAIG DONAIS

65. Plaintiff had an economic, advantageous and contract relationship with the Manchester NH police. Donais knew of this relationship. Donais intentionally and improperly interfered with this relationship. Plaintiff was damaged by such interference. Although having advantageous relationships is not the same as having a contractual relationship, plaintiff hereby alleges that he had both. Plaintiff had a contractual relationship with the Manchester NH police/the Manchester NH police department including with the Manchester NH police chief. Plaintiff was a professional conference planner and event organizer, particularly in the field of conflict resolution, negotiation and mediation.

66. Plaintiff was recruited to work on developing, planning and executing a large conference/event that centered on and facilitated dialogue and conflict resolution between the Manchester NH police and the local community, particularly communities of color, in order to improve relationships between local community leaders/members and law enforcement. Plaintiff had a contractual agreement from the Manchester NH police to collaborate on a community event involving the Manchester NH police and the NAACP and was sponsored by other organizations such as the University of New Hampshire. This was a multi-stakeholder agreement with several parties, with the Manchester NH police being a critical party to the agreement. Thus, the Manchester NH police was a critical party with whom plaintiff had advantageous, economic, and contractual relations. Part of this contractual agreement was the recruitment of the Manchester NH police officers to attend the event. Without the attendance of Manchester NH police officers to participate in the community-police dialogue event, there would be no event.

67. To ratify the agreement, Plaintiff had in-person meetings, and further telephone & email conversations, with the Manchester NH police chief. In fact, Plaintiff developed a good working relationship and reputation with the Manchester NH police chief who was enthusiastic about working with the plaintiff on this joint the Manchester NH police-community event.  This was an important opportunity for the plaintiff to establish his professional accomplishments in NH, as the event was slated to draw attendance, not only from the public, but from local leaders and dignitaries in NH. Plaintiff thus had an economic, advantageous and contract relationship with the Manchester NH police.  Plaintiff had anticipated further advantageous relations with Manchester NH police into the future. Donais, knowing of this relationship, intentionally and improperly interfered with this relationship. Thus, the third party who interfered with such advantageous, economic, and contractual relations is Donais. Donais knew of the relationship because he scoured the internet and found plaintiff's Linked-in page which had that information about this since 2017.

## VIII. COUNT 6 - INTERFERENCE WITH ADVANTAGEOUS RELATIONS BY CRAIG DONAIS

68. Plaintiff had an advantageous relationship with the Manchester NH police /police department including with Manchester NH police chief, which relationship was expected to continue based on the agreement that had been established between them. The Plaintiff's advantageous relationship with Manchester NH police was known to Craig Donais. Craig Donais knowingly interfered with and induced a breaking of this relationship including using fraudulent misrepresentations or defamatory statements to induce the Manchester NH police to not do business with the plaintiff. This conduct was private business interference, and not litigation-related. The conduct was improper, motivated by personal animus and personal selfish advantage, and designed to harm Plaintiff's ability to engage in lawful activities.

69. Donais intentionally and improperly interfered with Plaintiff's contractual relations, including with police/community organizations. Donais intentionally interfered with the plaintiff's contracts, employment, and community standing by disseminating false and defamatory information, thereby causing economic harm and emotional distress. Plaintiff had contractual relations with the Manchester NH police. Plaintiff's relationship with the Manchester NH police, based on prior agreements for community engagement, was known to Craig Donais.

70. Plaintiff anticipated further relations with Manchester NH police in the future but this was not realized on account of the interference by Craig Donais. The conduct was improper, motivated by racial bias, and designed to harm Plaintiff. None of the above statements were made in a judicial proceeding or in a quasi-judicial proceeding. These statements were not made in a prosecution proceeding or in a lawsuit proceeding. This was simply a statement made to a police officer which was initiated by Craig Donais for the purpose of harming, damaging, harassing, injuring and retaliating against the plaintiff. The damages include loss of contracts, community opportunities, and emotional distress.

71. Donais knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's actual and potential advantageous relations and contractual relations. As a result of this intentional interference, and as a direct and foreseeable consequence of Craig Donais' actions, the plaintiffs suffered damages including lost professional opportunities, and emotional distress.

## IX. COUNT 8 - CIVIL RIGHTS /RACE DISCRIMINATION PURSUANT NH COMMON LAW

72. This count asserts that Donais engaged in racial discrimination and retaliation under NH common law and thus here asserts a common law private cause of action under NH law. Plaintiff asserts a common law claim for intentional civil rights violation based on racial animus. New Hampshire recognizes that conduct violating public policy, including racial intimidation and harassment, gives rise to common law tort liability. The factual allegations motivated by racial animus establish a viable common law claim distinct from defamation, supporting enhanced damages for violation of fundamental civil rights. The pattern of false accusations, the racialized language, and the intent to harm Plaintiff's reputation and legal rights establish a violation of both common law/state law. Bisasor is an African-American citizen of Massachusetts. Donais is a white attorney licensed in New Hampshire. Plaintiff and Donais had an attorney-client relationship governed by an implied contract for legal services and by fiduciary duties imposed under New Hampshire law. Donais engaged in a campaign of racially-charged intimidation, aimed at preventing Plaintiff from (a) enforcing the existing attorney–client

contract obligations, (b) entering future professional contracts, and (c) vindicating his legal rights. Donais have thus also violated common law/state law prohibition of discrimination.

73. Each of the foregoing acts was motivated, at least in part, by Plaintiff's race and national origin, as further evidenced by Donais's explicit use of racially-charged stereotypes and dog-whistles designed to stigmatize the plaintiff and stemming from his false accusation that plaintiff accused him of racism, as well to explicit references by Donais about Plaintiff's being a "foreigner", having "foreign-sounding speech" and "foreign-sounding" name, among other things. Donais engaged in intentional conduct in violation of these laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiff's protected rights. Donais engaged in racial harassment, racial stereotyping and racial ridicule and scorn, and mocking that the defendants had initiated against the plaintiff as a black man. Donais also acted to interfere with contractual relations including because of racial animus and racial bias against the plaintiff. The facts demonstrate that Donais fabricated racial accusations, exploited racial stereotypes, and disseminated false statements to third parties, motivated by racial animus. Donais' racially-motivated campaign to interfere with Plaintiff's contractual relationships with the Manchester Police Department resulted in loss contract worth several thousands of dollars. As a direct and proximate result of Donais' intentional, deliberate, and willful racially harassing acts, Plaintiff suffered damages, including economic losses in lost business opportunities, together with emotional distress, humiliation, and damage to reputation.

## X. COUNT 9 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. Donais' conduct constitutes intentional infliction of emotional distress through a systematic pattern of extreme and outrageous conduct designed to cause severe emotional harm to Plaintiff based on defamation, racial discrimination, tortious interference professional betrayal, and retaliation. Donais' conduct was undertaken intentionally or recklessly, with knowledge or reckless disregard that such conduct would cause severe emotional distress to Plaintiff. This conduct demonstrates a conscious intent to inflict emotional harm. As a practicing attorney and holding fiduciary duties to Plaintiffs, Donais owed a duty to plaintiff. His intentional acts and reckless violations of these duties, especially when motivated by racial bias, constitute conduct that is so extreme and outrageous that it exceeds all bounds tolerated in a civilized society.

75. Plaintiff's emotional distress manifested through multiple objective symptoms include chronic stress and anxiety, difficulty sleeping and concentration problems caused by the breach of fiduciary duty, the mental anguish resulting from the multiple defamations from an attorney, who used the plaintiff's race against him based on his race, and the dignitary harm and injury from being racially stigmatized.

76. As a direct and proximate result of Donais' intentional infliction of emotional distress, Plaintiff suffered and continues to suffer significant damages. These damages include compensatory damages for the severe emotional distress, mental anguish, and psychological harm caused by Donais' extreme and outrageous conduct, causing dignitary damages for the harm to Plaintiff's reputation and standing in the community resulting from defamation and racial stigmatization, and punitive damages warranted by the willful, malicious, and discriminatory nature of the Donais' conduct.

77. Donais' conduct was extreme and outrageous conduct when he fabricated lies that plaintiff bugged his office and manufactured recordings, when he falsely accused the plaintiff of being a criminal and being mentally unstable, when attempted to smear plaintiff with the Manchester NH police in order to tortiously interfere with plaintiff's relations with the Manchester NH police, when he complete manufactured out of thin air the false accusation that plaintiff accused him of racism, and when he breached client confidentiality to defame, and injure the plaintiff.

78. Donais knew that making false accusations that plaintiff frivolously accused Donais of racism (along with making false accusations that plaintiff was a criminal, was dangerous and violent, and was mentally unstable, and making false accusations that plaintiff was planning to come to their home to physically harm his wife and children, and by intimidating, retaliating, harassing the plaintiff), would all cause emotional distress for the plaintiff. Donais knew that by falsely fabricating that plaintiff posed a criminal threat to his family, he was laying the groundwork to inflict violence or to have violence inflicted upon plaintiff and his wife, and justify in advance the basis for such violence against the plaintiff and his wife. This conduct was extreme and outrageous, causing severe emotional distress. And by accusing plaintiff of mental instability, Donais was directly targeting and smearing plaintiff's mental health, and knew it would cause emotional distress for the plaintiff.

79. Donais intentionally inflicted emotional distress on plaintiffs, as a direct and proximate result of Donais' actions and inactions. Plaintiff was caused to suffer severe emotional distress as the result of which a reasonable person in plaintiff's position would have suffered similar emotional distress under like circumstances.

80. Plaintiffs have been harmed by Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

81. NB: This claim is distinct from the emotional distress caused by Donais' defamatory statements. This claim is not based solely on the facts, acts and statements that give rise to the defamation claims. It arises distinctly from the emotional distress caused by Donais' defamatory statements. This is shown by the fact that the plaintiff's emotional distress does not only

stem from Donais' defamatory acts but also from, for example, Donais' tortious interference acts and race discrimination acts as well as breach of fiduciary duty acts. Therefore, logically, plaintiffs' emotional distress cannot only stem from Donais' defamatory acts and must be distinct from it.

## XI. COUNT 10 - VIOLATIONS OF THE NH CONSUMER PROTECTION STATUTE

82. Donais is engaged in trade/commerce as defined by NH consumer protection act. At all times relevant to this action, Craig Donais was engaged in the practice of law in New Hampshire as a trade and commerce within the meaning of New Hampshire law. Donais engaged in unfair and deceptive acts against the plaintiff as follows.

a. These unfair and deceptive acts by Donais stem from lies told by Donais about communications he had with the plaintiff while plaintiff was a client or prospective client. Donais made defamatory statements about plaintiffs, which are actionable under NH consumer protection act. Donais misrepresented facts and fabricated evidence,

b. Donais' unethical conduct including exploiting racial bias, constitutes unfair acts under RSA 358-A. Racial stereotyping, whether as retaliation/discrimination, perpetrated by falsely characterizing a prospective client interview to injure a prospective client, constitute unfair practice giving rise to violation of NH consumer protection act.

c. Donais's disclosure of client discussion information was deceitful, deceptive, unethical; and was extreme, outrageous and utterly intolerable. Donais' misuse of confidential information and defamation constitutes unfair trade practices.

d. Donais engaged in intimidation to threaten/coerce plaintiffs  to prevent them from making/pursuing a bar complaint against him.  Donais breached his duty to the plaintiff as a prospective client and former prospective client. Donais also breached the covenant of good faith and fair dealing with the plaintiff.

e. Donais divulged confidential information about the plaintiff to his friends, family members including his adult son Garrett and teenage son Aiden, to the Manchester NH Crime-Line board, and his other family members, his neighbors and his colleagues. Donais in bad faith disclosed confidential client information regarding Bisasor's conversation with several people and used it to try to injure, defame Bisasor. Plaintiffs have been forced to file bar complaints and civil actions against Donais in order to stop Donais from injuring and defaming plaintiffs.

f. Donais violated continuing fiduciary duties owed to a former client by engaging in deceptive conduct designed to harm the plaintiff. Donais abused his position as an attorney and his relationships to gain unfair advantage over his former client; Donais engaged in conduct that violates established professional and ethical standards governing attorney conduct in a manner that harms Plaintiff.

g. Donais also purposefully evaded a subpoena where he would have been required to answer questions about his breach of fiduciary duty and defamatory statements about the plaintiffs.

h. On information and belief, Donais intentionally lied to his malpractice insurance carrier in order to deprive Bisasor of access to his (Donais's) malpractice insurance policy proceeds.

i. Donais' conduct in misrepresenting the intent to settle claims but was intended as a trojan horse to sabotage the global settlement with Hilton hotels, was also undertaken to "save face" and to protect his law firm from losing revenue due to the attempts by the plaintiff to hold Craig Donais accountable.

j. Donais' conduct in interfering with plaintiff's contractual and advantageous relationships was undertaken to undermine the plaintiffs in order to protect his career and professional reputation. Donais' conduct was also undertaken to protect his law firm from losing revenue due to the attempts by plaintiff to hold Donais accountable. This conduct falls within RSA 358-A because it was undertaken in part for commercial/entrepreneurial purposes including to undermine the plaintiffs, through defamation, interference, etc., in order to protect his career and professional reputation, to protect his trade, and to protect his malpractice insurance coverage. This includes leveraging and misusing his position on the Manchester CrimeLine board to gain favors to help him protect his career and professional reputation including using it as a springboard to weaponize/disseminate defamatory statements about plaintiffs and create the appearance of legitimacy to those defamatory statements. Donais's conduct was further "entrepreneurial" as he deployed defamatory statements about plaintiff to shield himself from losing his law license on account of misconduct complaints by plaintiffs.

83. These acts violate RSA 358-A, which prohibits unfair trade practices/deceptive conduct, and have harmed Plaintiffs.

## XII. COUNT 11 - INTENTIONAL MISREPRESENTATION

84. On the 1-9-17 call, Donais failed to disclose to Bisasor that he had a conflict of interest, when in fact Donais had previously represented Akridge. This failure constitutes misrepresentation as it was material and because the existence of such a conflict would have fundamentally altered Plaintiff's willingness to engage in discussions with Donais.

85. Donais further misrepresented that attorney-client privilege applied to their 1-9-17 telephone conversation, falsely assuring Bisasor that the confidential information shared during that call remained protected. This statement was knowingly false, as Donais intended to breach any such privilege by disclosing the contents of that conversation to opposing parties and disclosing confidential information obtained from Bisasor during their 1-9-17 consultation to Akridge and other representatives of Homewood, and use said information to help craft pleadings and strategy adverse to Plaintiffs' interests.

24

86. Additionally, Donais falsely stated that he had been too busy during the relevant time period in January 2017 to take on Plaintiffs' case, when the true reason for his declination was his existing relationship and subsequent representation of the opposing parties. This misrepresentation concealed the actual conflict of interest and Donais's predetermined alignment with Homewood's interests. Donais made these representations with full knowledge of their falsity or with conscious indifference to their truth. Having previously represented Akridge, Donais possessed actual knowledge that he had a conflict. and privilege were false. Bisasor justifiably relied upon these material misrepresentations in determining his course of action. Based on Donais's false assurances regarding the purported protection of confidential communications, Bisasor was induced to engage in a client consultation with Donais. This reliance was reasonable under the circumstances, as Donais held himself out as an attorney bound by professional ethical obligations, and Bisasor had no reason to suspect that Donais would make knowingly false statements about such fundamental matters as conflicts of interest and attorney-client privilege. The professional relationship created a reasonable expectation of truthfulness regarding these material representations.

87. In addition, during the settlement negotiations that took place in 2021, Donais made material false statements of fact to Plaintiff Bisasor with the intent to deceive and induce specific actions and forbearances. Further, in 2021, plaintiffs were induced to engage in settlement negotiations with Donais when he had no intention of settling but instead intended to use his involvement in settlement negotiations to obtain sensitive confidential information from plaintiffs, which he subsequently used against plaintiffs in litigation, and also intended to try to sabotage the settlement with the 20 other Hilton Hotel defendants.  The misrepresentations directly caused Plaintiff to be unable to secure more favorable settlement terms. As a direct and proximate result of his reliance on Donais's false statements, Plaintiff suffered pecuniary losses including but not limited to the compromise of his negotiating position, the acceptance of less favorable settlement terms, additional legal costs incurred due to the prolonged litigation necessitated by the deceptive conduct, and the loss of opportunity to pursue more advantageous resolution strategies that would have been available had the true facts been disclosed.

## XIII. CONCLUSION/ PRAYER FOR RELIEF

88. WHEREFORE, plaintiffs, respectfully pray that the Court grant the following relief: (1) Enter judgment in plaintiffs' favor and against Defendants for: any and all damages acceptable by law.

Respectfully submitted,

/s/ Andre Bisasor

Andre Bisasor

/s/ Natalie Anderson

August 6, 2025

Natalie Anderson

**CERTIFICATE OF SERVICE**

This is to certify that copies of this amended complaint was/will be served on all parties and counsel of record.

Respectfully submitted,

/s/ Andre Bisasor

Andre Bisasor