UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO: 1:25-cv-00251 |ANDRE BISASOR, Plaintiff, v. CRAIG DONAIS, et. al. Defendants.

## PLAINTIFF'S ANDRE BISASOR EMERGENCY MOTION FOR CASE MANAGEMENT CONFERENCE

1. Plaintiff Andre Bisasor respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 16, Local Rule 16.1, and the Court's inherent case management authority, for an order scheduling a case management conference to address critical procedural, jurisdictional, and administrative issues that have arisen in this case and that require urgent judicial intervention. In support, Plaintiff states as follows:

### I. INTRODUCTION

2. This case presents multiple complex procedural and administrative issues that require the Court's guidance and intervention to ensure the fair, efficient, and just resolution of this matter.

3. Plaintiffs request a case management conference to address:

   a. Inconsistent application of electronic filing rules and the denial of e-filing access to Plaintiff Anderson despite pending ADA accommodation requests;

   b. Unresolved ADA accommodation requests filed by both Plaintiffs that are pending;

   c. Service of process issues regarding newly added Defendant Amy Messer;

   d. Scheduling and coordination in light of the pending motion for reconsideration of the remand denial;

   e. Appearance of bias and recusal issues arising from Judge Elliott's prior service on the board of New Hampshire Legal Assistance, an organization that was involved in the underlying case;

   f. Retaliation concerns following Plaintiffs' complaints about court personnel;

   g. Unequal treatment of parties regarding procedural compliance;

   h. Case coordination with related state court proceedings.

4. These issues cannot be adequately addressed through piecemeal motion practice and require comprehensive judicial case management to ensure that Plaintiffs receive fair treatment and equal access to justice.

### II. PROCEDURAL BACKGROUND

5. This action was originally filed in New Hampshire Superior Court, Hillsborough County North on 6-3-25.

6. Defendants removed the case to this Court on 7-2-25, asserting federal question jurisdiction.

1

7. Plaintiffs filed their First Amended Complaint on 7-29-25, adding Plaintiff Natalie Anderson and Defendant Amy Messer, and eliminating all federal claims.

8. On 8-26-25, pursuant to a motion to stay filing and briefing of motion to dismiss amended complaint pending resolution of remand, the court entered an order stating that defendants were "not required" to respond pending resolution of plaintiffs' motion to remand. The purpose of this relief was clear: to avoid wasteful briefing on the merits while fundamental jurisdictional questions remained unresolved. If the case were remanded, any motion to dismiss filed in federal court would be moot. Plaintiffs sought to conserve judicial and party resources by resolving jurisdiction first.

9. Plaintiffs filed a Motion to Remand on 8-1-25, which was denied by order dated 10-9-25.

10. Plaintiffs filed a Motion for Reconsideration of the denial of remand on 10-23-25, which remains pending.

11. On 10-21-25, about 12 days after the remand denial, defendant Donais filed a motion to dismiss the First Amended Complaint. This filing was premature and contrary to the purpose and spirit of the stay that plaintiffs obtained. Defendant Hilliard has filed no responsive pleading of any kind. Nearly one month has passed since the court denied remand, yet Hilliard has taken no position regarding the amended complaint.

12. Multiple administrative/procedural issues have arisen that require comprehensive case management.

### III. ISSUES REQUIRING CASE MANAGEMENT CONFERENCE
### A. CLARIFICATION OF PROECURAL AMBIGUITY AND ASSYMETRY
#### i. Current Procedural Ambiguity

13. The court's prior order creates uncertainty about Hilliard's obligations. Co-defendant Donais interpreted the order as permissive and filed a motion to dismiss. Hilliard has remained silent. Plaintiffs face asymmetric procedural burdens: they are facing/have to deal with a motion to dismiss from Donais while uncertain whether Hilliard will later file his own motion, requiring a second round of briefing. Plaintiffs should not have to simultaneously respond to one defendant's motion while guessing about another defendant's intentions, particularly where the claims and defenses differ.

#### ii. Claims Against Hilliard Are Distinct From Claims Against Donais

14. The claims against Hilliard are separate and distinct from those against Donais. The factual predicates differ substantially for the claims against Hilliard versus the claims against Donais. Hence, Hilliard's potential

2

defenses will likely differ from Donais's defenses. Hilliard cannot simply rely on Donais's motion to dismiss to defend claims unique to Hilliard and arising from Hilliard's separate conduct.

### iii. Rule 12(a)(4) Tolling Should Not Automatically Protect Hilliard

15. Federal Procedure Rule 12(a)(4) tolls the time to file a responsive pleading when a defendant files a Rule 12 motion. However, courts have recognized that this tolling does not automatically benefit co-defendants where claims are severable, defenses differ substantially, and coordinated defense is not apparent. See Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 335-36 (4th Cir. 1992) (discussing separate treatment of co-defendants with distinct defenses); In re Checking Account Overdraft Litig., 275 F.R.D. 666, 668-69 (S.D. Fla. 2011) (recognizing that Rule 12 tolling may not apply to co-defendants with different claims).

16. Here, the claims against Hilliard are sufficiently distinct that Donais's motion to dismiss should not toll Hilliard's deadline. Moreover, permitting Hilliard to benefit from Donais's filing while remaining silent himself creates the very procedural problems and inefficiency the Federal Rules aim to prevent.

### iv. Procedural Asymmetry and Unfairness

17. This creates the asymmetry as follows:

    a. Donais chose to file motion to dismiss (aggressive posture).

    b. Hilliard chose not to file anything (passive posture).

    c. Plaintiff is caught having to respond to Donais while having to accept Hilliard's silence.

18. This is unfair because:

    a. Plaintiff obtained the stay in good faith to resolve jurisdictional issues first.

    b. Donais violated the spirit (if not the letter) of the stay by filing the motion to dismiss before remand is fully resolved.

    c. Hilliard benefits from waiting while plaintiff is forced to have deal with responding to Donais.

    d. This is procedurally asymmetric and creates an uneven playing field.

19. Plaintiffs do not know whether Hilliard's time is tolled, expired, or ongoing. If no tolling applies, entry of default is appropriate given:

    a. More than 14 days have passed since service of the amended complaint.

    b. The permissive stay did not prohibit responsive pleadings.

    c. Co-defendant Donais chose to file responsive pleading despite the stay.

    d. Hilliard has made no communication regarding the amended complaint.

    e. Hilliard cannot invoke tolling from a co-defendant's motion addressing different claims and different defendants.

20. Plaintiffs should not have to simultaneously:

    a. Respond to Donais's motion to dismiss.

    b. Guess whether or when Hilliard will file his own motion.

    c. Potentially face a second round of briefing if Hilliard later files.

    d. Navigate overlapping or conflicting deadlines.

21. Co-defendants have adopted opposite procedural postures:

    a. Donais filed aggressively despite the stay.

    b. Hilliard remains silent.

22. Plaintiffs face asymmetric burdens depending on which defendant they're addressing.

### v. Donais's Motion Is Premature

23. Donais's motion to dismiss forces briefing on the merits while the fundamental issue of subject matter jurisdiction remains unresolved. The motion for reconsideration challenges the court's authority to adjudicate this case at all. If that motion is granted, the case will be remanded to state court and Donais's motion to dismiss will be moot.

24. Requiring plaintiffs to brief Donais's motion now wastes resources. Plaintiffs will be forced to expend time and effort responding to merits-based arguments that may become irrelevant if reconsideration is granted. The court will similarly expend resources reviewing and ruling on a motion that may be mooted by a subsequent jurisdictional ruling. This is precisely the inefficiency that plaintiffs' stay motion was designed to avoid. Donais's filing defeats the purpose of the stay and undermines judicial economy.

25. Donais's motion to dismiss violates the spirit and purpose of the stay order this Court granted. The stay was entered specifically to permit resolution of threshold jurisdictional issues before requiring parties to brief the merits. Donais's premature filing wastes judicial resources and forces plaintiffs to respond to

merits-based arguments while fundamental jurisdictional questions remain unresolved in the pending motion for reconsideration.

26. Sound judicial administration requires resolution of threshold jurisdictional questions before reaching the merits. Subject matter jurisdiction is a prerequisite to adjudication. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"). Note: The pending motion for reconsideration creates ongoing jurisdictional uncertainty.

27. Plaintiffs' reconsideration motion contains substantial arguments warranting the court's attention before any merits briefing occurs.

### vi. The Better Approach: Resolve Jurisdiction First

28. The court should strike without prejudice to refiling after resolution of plaintiffs' motion for reconsideration of remand, or stay all briefing on defendant Donais's motion to dismiss pending the court's ruling on plaintiffs' motion for reconsideration. If the court denies reconsideration, then Donais can refile his motion in this court pursuant to any deadline set by the court. If the court grants reconsideration and remands, Donais can refile his motion in state court under state procedural rules and state substantive law. The current federal motion will have served no purpose except to burden the parties and the court. Conversely, if the court declines to strike Donais's motion, the court should stay all briefing on that motion until the court resolves the pending motion for reconsideration. This approach:

    a. Conserves judicial and party resources.

    b. Avoids potentially wasted briefing if remand is granted.

    c. Resolves threshold jurisdictional issues before reaching the merits.

    d. Respects the purpose of plaintiffs' earlier stay request.

    e. Allows the court to address the most fundamental question first.

29. A brief stay pending resolution of reconsideration imposes minimal burden on defendants while potentially avoiding substantial wasted effort.

### vii. Judicial Economy and Fairness Require Clarification

30. Fairness requires equal treatment. Co-defendants have adopted opposite procedural postures: Donais filed aggressively despite the stay, while Hilliard remains silent. Plaintiffs should not bear asymmetric burdens depending on which defendant they are addressing. The current situation allows Hilliard to observe Donais's motion, assess its success, and then decide his own course, an unfair tactical advantage.

31. These issues require clarification and resolution and a case management will allow comprehensive resolution that will save time and protracted motion practice, rather than piecemeal litigation.

## IV. ELECTRONIC FILING ACCESS AND ADA ACCOMMODATION ISSUES
### A. Electronic Filing Access and ADA Accommodation Issues

32. On 10-28-25, Plaintiffs filed an emergency motion requesting electronic filing access for Plaintiff Anderson.

33. On 10-5-25, Judge Elliott denied this motion without prejudice, directing Anderson to "complete and file in paper the court's form Pro Se Motion to Obtain Permission to File Electronically".

34. The 11-5-25 order also cautioned Plaintiff Bisasor that "continued failure to comply with the court's rules will result in the termination of his electronic filing privileges."

    a. <u>Critical Issue:</u> The order makes no mention of, and does not address, Plaintiff Anderson's pending ADA accommodation request filed, which explicitly sought accommodation.

    b. <u>Critical Issue:</u> Plaintiff Bisasor also filed ADA accommodation requests that have gone unanswered.[1]

    c. <u>Critical Issue:</u> The Court's 9-15-25 Notice of ECF Filing Error stated that "Absent a court order authorizing plaintiff Anderson electronic filing, going forward, all plaintiff Anderson's filings shall be conventionally filed and served." However, the First Amended Complaint filed on 7-29-25 contained both Plaintiffs' signatures and was accepted by the Court without objection, which thus created confusion about when documents with both signatures are permissible. Similarly, the Motion to Remand, the Motion to Clarify Service Requirements, and other filings contained both Plaintiffs' signatures and were filed electronically using Bisasor's credentials without objection. The inconsistent

---

[1] Note. Judge Elliott's failure to address ADA accommodation requests include previously filed ADA accommodation request seeking permission to email a time-sensitive response to a motion to dismiss because the court was taking several weeks to rule on a motion for efiling access. That ADA request went unanswered. Further, the 11-5-25 order makes no reference whatsoever to plaintiffs' ADA needs or pending accommodation requests. It treats the e-filing issue as purely procedural, without any consideration of whether conventional paper filing creates undue burden.

6

enforcement of e-filing signature requirements creates substantial confusion and unfairly places Plaintiff at risk of sanctions for conduct that was previously accepted by the Court.

35. The failure to address pending ADA accommodation requests before imposing strict procedural requirements may violate the ADA and deny Plaintiffs reasonable accommodations for their disabilities.

36. A case management conference is needed to:

    a. Clarify the e-filing signature requirements going forward;

    b. Address pending ADA accommodation requests;

    c. Determine appropriate accommodations for both Plaintiffs' disabilities;

    d. Establish clear procedures that do not discriminate against pro se litigants with disabilities.

## V. APPEARANCE OF BIAS AND RECUSAL ISSUES
### i. Judge Elliott's Prior Association with New Hampshire Legal Assistance

37. Judge Elliott served on the board of directors of New Hampshire Legal Assistance (NHLA), including as board president, before her appointment to the federal bench in 2021. She also served as co-chair of the founding board of 603 Legal Aid when NHLA merged with other legal aid organizations in June 2021.

38. The NH Legal Assistance is materially involved in this case through it director attorney Elliott Berry, whose statements go to the heart of the claims in this litigation. Given Judge Elliott's extensive leadership role with NHLA immediately before becoming a federal judge, and given that NHLA is directly involved in this case through Mr. Berry, there exists at minimum an appearance of bias that "might reasonably [cause a person's] impartiality [to be] questioned" under 28 U.S.C. § 455(a).

39. Also, Judge Elliott would have been on the board while NHLA was representing plaintiffs in the underlying case. Any appearance of bias, including overcompensation for having been associated with the NHLA during its representation in order to not appear to be biased by being harsher with us, could trigger recusal.

40. This potential conflict needs to be examined to determine whether recusal is appropriate.

41. Under 28 U.S.C. § 455(a), a judge must disqualify when their "impartiality might reasonably be questioned."

42. Given Judge Elliott's extensive leadership role with NHLA immediately before becoming a federal judge, and given that NHLA is directly involved in this case through Mr. Berry, there exists at minimum an appearance of bias that might reasonably cause a person's impartiality to be questioned.

7

**ii. The Tone and Proportionality of the November 5, 2025 Order**

43. The 11-5-25 order states: "Plaintiff Bisasor is cautioned that continued failure to comply with the court's rules will result in the termination of his electronic filing privileges." This warning is premature, harsh, and disproportionate because:

    a. Bisasor did not knowingly violate any rule. The First Amended Complaint with both signatures was accepted without objection, establishing what appeared to be an acceptable practice.

    b. The 9-15-25 notice was ambiguous. It stated that Anderson's filings must be filed conventionally, but did not clearly address whether Bisasor could file documents containing both signatures or whether Anderson could join or assent to Bisasor filings. The filing at issue (motion to permit efiling access for Anderson) contained both signatures, not Anderson's only as was the case with the filing that triggered the clerk's 9-15-25 notice.

    c. No prior warning was given. The November 5 order threatens termination of privileges without any prior individualized warning about specific conduct.

    d. The order is one-sided. It says nothing about defendants' failure to serve Anderson or comply with other procedural requirements.

    e. The harshness of this order, combined with the other factors outlined above, creates a reasonable perception that the court is predisposed against plaintiffs and is seeking reasons to be punitive rather than facilitate our access to justice.

44. Further, Judge Elliott asserts Bisasor's "continued failure to comply". But when was his first failure to comply? Bisasor was not the one who filed Anderson's reply to remand that triggered the clerk's notice of error on 9-15-25. It was Anderson who did so, using his login credentials. This inordinate desire to direct warnings to Bisasor is unfair.

45. Similarly, Judge Elliott in her 10-9-25 order on remand, at the end, sought to hold Bisasor accountable for something that another judge, more than a year ago in another case, said regarding double spacing/format requirements. Judge Elliott warned Bisasor that he will be punished if it happens again. This trigger readiness to be punitive signals bias. Note: Bisasor did not even remember what that other judge said over a year ago

8

about double spacing. Moreover, Judge Elliott said nothing about this double spacing/format issue in the several filings at the outset of the case after removal to this court. Then suddenly it came with this threat. This is unfair. Bisasor is not some ward of the state that needs to be chided or whipped like a prisoner.

### iii. Potential Retaliation for Complaints About Court Personnel

46. Additionally, Plaintiffs have filed formal complaints about Clerk Tracy Uhrin and Case Manager Vincent Negron for failure to respond to emails, inconsistent handling of filings, and other subpar treatment.

47. The timing and tone of the 11-5-25 order raise concerns about whether it constitutes retaliation for Plaintiffs' complaints about court personnel. The order:

    a. Issues a threat to terminate Bisasor's e-filing privileges;

    b. Is unusually stern in tone;

    c. Enforces rules that had not been consistently enforced previously;

    d. Comes shortly after Plaintiffs filed complaints about court personnel.

48. A case management conference is needed to:

    a. Address the appearance of bias arising from Judge Elliott's NHLA connection;

    b. Determine whether recusal is appropriate under 28 U.S.C. § 455;

    c. Ensure that Plaintiffs' complaints about court personnel do not result in retaliation;

    d. Establish that Plaintiffs can raise legitimate concerns without fear of punishment.

49. This is on top of prior raised concerns that plaintiff's lawsuit against Clerk Karen Gorham has triggered retaliatory impulse. NB: Clerk Negron still continues to ignore plaintiff's emails signaling continued animus.

50. Federal law prohibits retaliation against individuals who raise concerns about discrimination or who exercise their right to access the courts. If this order was motivated in any part by complaints about court staff, it would constitute improper retaliation.

### ii. Further Bias Concerns

51. Both Plaintiffs are African American pro se litigants from Massachusetts litigating in NH federal court against New Hampshire defendants.

52. As pro se litigants, Plaintiffs are entitled to liberally construed pleadings and reasonable assistance in navigating court procedures.

53. As individuals with disabilities, Plaintiffs are entitled to reasonable accommodations under the ADA.

54. As parties, Plaintiffs are entitled to equal treatment and consistent application of procedural rules.

55. The pattern of strict enforcement against Plaintiffs while overlooking Defendants' non-compliance, combined with a) the harsh tone of warnings directed at Plaintiffs, b) the failure to address ADA accommodation requests, c) Judge Elliott's prior association with an organization involved in the case, d) the timing of sanctions threats following complaints about court staff, e) Potential cumulative appearance of bias that undermines confidence in the fairness of these proceedings.

56. A case management conference is needed to:

    a. Ensure that Plaintiffs receive fair and equal treatment;

    b. Address systemic issues that may affect pro se litigants, people with disabilities, and out-of-state parties;

    c. Establish clear, consistently applied procedures going forward;

    d. Provide an opportunity for Plaintiffs to be heard on their concerns in a neutral forum.

### iii. Unequal Treatment of Parties Regarding Procedural Compliance

57. Plaintiff Anderson was added to this case via First Amended Complaint filed on 7-29-25.

58. Donais Defendants have not served Plaintiff Anderson in accordance with Federal Rules of Civil Procedure.

59. Despite this failure by Donais Defendants to comply with the Federal Rules, the Court has:

    a. Said nothing about Donais Defendants' failure to serve Anderson;

    b. Imposed no deadlines or consequences on Donais Defendants for this failure;

    c. Made no inquiry into whether Anderson has been properly served Donais' motion to dismiss.

60. Yet the Court has:

    a. Strictly enforced procedural rules against Plaintiffs regarding e-filing signatures;

    b. Chided Bisasor that "continued failure to comply with the court's rules" will terminate e-filing privileges

    c. Required Anderson to comply with procedural requirements while not served by Donais Defendants.

61. This disparate treatment (strict enforcement of rules against pro se Plaintiffs while overlooking Defendants' failures) creates a strong appearance of bias and unequal access to justice.

10

62. On 8-26-25, Plaintiff filed an Emergency Motion to Clarify Service Requirements for Defendant Amy Messer, seeking guidance on proper service procedures.

63. The Court denied this motion on 8-27-25, stating: "A court cannot give legal advice" and directing Bisasor to "consult the Federal Rules of Civil Procedure, including Rule 4." However, Plaintiffs were not seeking legal advice; they were seeking clarification on how the Court wanted service effectuated in the unique procedural posture of this case, particularly given the pending remand motion. This unfortunately reflects a condescending dismissive approach to the pro se plaintiffs, or at least it comes across that way.

64. The plaintiffs cannot serve Amy Messer without a summons certified by the court. If the court does not issue a summons to the plaintiffs, then Amy Messer cannot be served. Rather than recognize this issue, Judge Elliott took the most illiberal construction of plaintiff's good faith request for clarification.

65. Defendant Amy Messer remains unserved as of the date of this motion.

66. Further, Plaintiff reached out to the case manager (Vincent Negron) about getting the summons needed to serve Amy Messer but Mr. Negron has failed to provide any response. This is part of an ongoing pattern where Mr. Negron has not responded to any email or contact from plaintiff since the inception of the case in this case after removal. This cannot be allowed stand. If Mr. Negron refuses to respond to my emails, then another case manager should be assigned.

67. A case management conference is needed to:

    a. Establish service requirements for Messer;

    b. Address the disparity in enforcement of procedural rules;

    c. Ensure Defendants comply with service requirements before imposing other obligations on Plaintiffs;

    d. Clarify court procedures without treating legitimate procedural questions as requests for "legal advice."

68. The issues raised about the administration of justice, the appearance of bias, inconsistent application of procedural rules, failure to address ADA needs, and potential retaliation, need to be fairly and fully considered and addressed, and not treated flippantly. As pro se litigant, plaintiff is doing their best to comply with all applicable rules and procedures, which they may not be familiar with every rule as a non-lawyer. However, when rules are enforced inconsistently, when ADA requests go unanswered, when defendants'

non-compliance is ignored while plaintiffs are threatened with sanctions, and when the judge has prior associations with entities involved in the case, the appearance of impartial justice cannot be ignored.

69. A case management conference gives the best chance for adequately addressing these issues in a transparent and fair manner. See **Exhibit 1** for recent letter of concern to chief judge for further information. See also prior letter from the Chief Judge in response to first/prior letter of complaint, attached as **Exhibit 2.**

70. A case management conference is thus needed to:

   a. Address Judge Elliott's prior association with New Hampshire Legal Assistance and determine whether recusal is appropriate given NHLA's involvement in this case through attorney Elliott Berry.

   b. Address the pattern of inconsistent enforcement of procedural rules in this case and determine whether pro se plaintiffs are being held to a different standard than represented defendants.

   c. Address pending ADA accommodation requests and ensure that plaintiffs' disability-related needs are properly considered before imposing procedural requirements.

   d. Address whether the 11-5-25 order constitutes retaliation for complaints filed against court personnel.

   e. 5Ensure that defendants are required to properly serve Anderson in accordance with Federal Rule of Civil Procedure before imposing further obligations on her.

   f. Consider whether reassignment of this case to a different judge is appropriate given the appearance of bias and the cumulative concerns outlined above.

## VI. COORDINATION AND SCHEDULING
### i. Coordination/Scheduling Issues

71. No scheduling order has been entered in this case pursuant to Federal Rule of Civil Procedure 16(b).

72. The Court's 7-29-25 order stated: "*No pretrial conference will be scheduled until after resolution of the pending motions to dismiss. Given the issues raised in the motion, the court finds good cause to extend the deadline for issuing the scheduling order pursuant to Fed. R. Civ. P. 16(b) to after the rescheduled pretrial conference.*"

73. The initial motions to dismiss were denied without prejudice on 8-22-25 in light of the Amended Complaint.

74. Defendants filed a new Motion to Dismiss the First Amended Complaint on 10-21-25.

75. The Court's 8-26-25 order granted Plaintiffs' motion to stay briefing on the motion to dismiss pending resolution of the motion to remand.

76. Plaintiffs filed a Motion for Reconsideration of the remand denial on 10-23-25, which remains pending.

77. Discovery has not commenced, and no discovery plan has been established.

78. A case management conference is needed to:

    a. Establish coordination between this case and related state proceedings;

    b. Set realistic deadlines that account for Plaintiffs' pro se status and disabilities;

    c. Determine whether alternative dispute resolution is appropriate.

### ii. Coordination with Related State Court Proceedings

79. There is a related first-filed proceeding in NH Superior Court, Hillsborough North, Case # 216-2020-CV-00027. That case, filed on 1-3-20, involves the same or related matters closely tied to issues in this case.

80. The state court case has been litigated extensively, including four motions to dismiss, an interlocutory appeal to the NH Supreme Court that lasted two years, etc.

81. On 6-5-25, Plaintiffs filed a motion to consolidate the present case (refiled in state court on June 3, 2025) with the first-filed state court case.

82. Defendants removed the present case to federal court on 7-2-25, just days before the state court was anticipated to rule on consolidation. This removal was designed to disrupt, block, and interfere with consolidation of the two related state court cases. As the U.S. District Court for the Southern District of New York noted in Little Rest Twelve, Inc. v. Visan, 458 B.R. 44, 60 (S.D.N.Y. 2011), removal that "produces an unmistakable impression of forum-shopping" and is done "to avoid the state court forum shortly before the state court judge was about to issue a decision" warrants remand.

83. The duplicative litigation in federal and state court imposes significant hardship on Plaintiffs as pro se litigants with limited resources and ADA-related challenges.

84. A case management conference is needed to:

    a. Address coordination between this federal case and the related state proceedings;

    b. Consider whether abstention or stay is appropriate pending resolution of the first-filed state case;

    c. Prevent duplicative motion practice in both courts on the same issues;

    d. Ensure judicial economy and efficient use of resources.

13

### iii. Further Amendment of the Complaint and Other Motions To Be Filed

85. Plaintiffs intend to move to file a second amended complaint, should the case remain in this court, which will moot the motion to dismiss, if granted. Plaintiffs intend to request hearing on any motion to dismiss.

86. There are other important motions that the plaintiff will need to file as there are important issues that need to be resolved before the case can move forward in this court, after remand is fully resolved. Plaintiffs will need time and opportunity to present these important issues to the court, all of which must be resolved before any resolution of any motion to dismiss.

87. Plaintiffs fully expected this case to be remanded based on the Royal Canin precedent and other precedents in this circuit. They were shocked that the court denied remand thus far. Plaintiffs are hoping the court will reconsider remand carefully including holding a hearing on the motion to reconsider motion to remand, so that plaintiffs can be properly heard on the motion to reconsider motion to remand. However, depending on the outcome of the reconsideration of remand, plaintiffs will need to address several important issues with the court, should this case remain in this court. Until remand is fully resolved, however, it appears that trying to address these issues now may be premature given that remand, should it be ultimately granted, would make them all moot. A case management conference will get ahead of these issues and allow for a more coordinated streamlined efficient approach that will redound to judicial economy.

## VII. LEGAL STANDARD

88. Federal Rule of Civil Procedure 16 authorizes the Court to "order the attorneys and any unrepresented parties to appear for one or more pretrial conferences". Local Rule 16.1 establishes procedures for case management conferences. Given the multiple complex issues in this case, a case management conference is not only appropriate but necessary. The absence of a scheduling order creates further uncertainty.

89. The scheduling of a case management conference will allow the Court to address all these issues comprehensively rather than through piecemeal motion practice.

## VIII. GOOD CAUSE FOR EMERGENCY RELIEF

90. This motion is designated as an emergency motion because:

    a. Plaintiff Bisasor faces imminent termination of e-filing privileges based on the 11-5-25 warning;

    b. Pending ADA accommodation requests remain unaddressed;

    c. Service of process issues remain unresolved, affecting the Court's jurisdiction over key parties;

    d. The motion for reconsideration of remand denial is pending and may moot federal court proceedings;

### IX. REQUEST FOR TELEPHONIC/VIDEO CONFERENCE HEARING

91. Plaintiffs request that the case management conference be conducted by telephone/videoconference.

92. Plaintiffs request the opportunity to participate and be heard directly on the issues outlined in this motion.

93. Given Plaintiffs' pro se status, disabilities, and the complexity of the issues, direct participation in the conference is essential to ensure effective communication and fair resolution.

### VII. CONFERRAL WITH OPPOSING PARTIES

94. Pursuant to Local Rule 7.1(a), Plaintiff Bisasor conferred with counsel for Defendants via email regarding this motion. Defendants' position on this motion is that they do not concur.

### VIII. CONCLUSION

95. The multiple procedural, administrative, and substantive issues in this case cannot be adequately addressed through piecemeal motion practice.

96. A comprehensive case management conference is necessary to:

    a. Address pending ADA accommodation requests;

    b. Clarify e-filing procedures and ensure consistent application of rules;

    c. Resolve service of process issues;

    d. Address appearance of bias and recusal concerns;

    e. Ensure equal treatment of all parties;

    f. Establish a case schedule if the case remains in federal court;

    g. Coordinate with related state proceedings;

    h. Explore settlement prospects.

97. Plaintiffs seek only fair treatment, equal access to justice, clear and consistently applied procedures, and an opportunity to have their case heard on the merits. A case management conference will serve the interests of justice, judicial economy, and the fair and efficient resolution of this matter.

### X. PRAYER FOR RELIEF

98. WHEREFORE, Plaintiff Andre Bisasor respectfully request that this Court:

    a. Grant this Motion for Case Management Conference;

b. Allow Plaintiffs to participate in the conference by telephone/videoconference;

c. Address pending ADA accommodation requests in advance of or at the conference;

d. Clarify e-filing procedures and stay threat of termination of e-filing privileges pending the conference;

e. Address all case management issues outlined in this motion including the procedural asymmetry issues;

f. Issue a scheduling order or case management order following the conference;

g. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

November 7, 2025

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor