**THE STATE OF NEW HAMPSHIRE**

| | |
|---|---|
| **HILLSBOROUGH, SS** <br> **NORTHERN DISTRICT** | **SUPERIOR COURT** |

Natalie Anderson and Andre Bisasor

v.

Hilton Hotels Worldwide, et al.

Docket No. 216-2020-CV-00027

**ORDER**

The plaintiffs, Natalie Anderson and Andre Bisasor[1], originally brought this action against twenty-one parties, including Craig Donais (the "defendant"). (Pls.' Compl. (Doc. 3.)) All parties but the defendant have since settled with the plaintiffs. (See Doc. 88.) The claims against the defendant stem from his involvement in a legal matter involving the plaintiffs. The Court granted the defendant's first motion to dismiss but provided the plaintiffs leave to amend. (See Order on Mot. to Dismiss (Doc. 356); Am. Compl. (Doc. 403.)) The defendant now moves to dismiss the plaintiffs' amended complaint. (Mot. to Dismiss Am. Compl. (Doc. 405.)) The plaintiffs object. (Pls.' Obj. (Doc. 457.)) For the following reasons, the defendant's motion is GRANTED.

**Factual Background**

The following facts, which are presumed to be true for the purposes of this motion, are derived from the amended complaint. See Ojo v. Lorenzo, 164 N.H. 717, 721 (2013). At all relevant times, the plaintiffs were tenants at Homewood Suites of Nashua ("Homewood"), an extended-stay hotel. (See Doc. 403 ¶ 16.) They are both

---

[1] The plaintiffs spelled this name as "Bissasor" in their original complaint, a spelling which the Court used in its first dismissal order. The plaintiffs now spell it as "Bisasor," a spelling which the Court will use in this Order.

1

African-American. (Id. ¶ 61.) The defendant is an attorney admitted to practice law in New Hampshire. (Id. ¶ 4.) He is white. (Id. ¶ 72.)

On January 5, 2017, Anderson contacted Robert O'Brien, also a New Hampshire attorney. (See id. ¶ 3.) She explained the details of a dispute the plaintiffs had with Homewood related to their tenancy and racial discrimination. (See id.) She sought urgent legal assistance. (Id.) O'Brien told Anderson that he would consult with a colleague with more expertise in the areas of law pertinent to her claims. (Id.) O'Brien then contacted the defendant and explained Anderson's situation. (Id. ¶ 4.) O'Brien communicated to Anderson over text that the defendant had said the plaintiffs have a "great contract case," and that "innkeeper rules would likely apply" to their situation, but that he would not opine on any discrimination claims. (Id. ¶ 5.)

That same day, Bisasor contacted Dave Akridge, the owner of the managing company of Homewood, and spoke to him about the dispute. (Id. ¶ 8.) Bisasor also contacted executives from Hilton Hotels Worldwide ("Hilton"), the parent company of Homewood, to seek relief. (Id.) Hilton executives told Bisasor that Homewood had retained counsel in their dispute. (Id.) The next day, Bisasor called the defendant and left a voicemail after seeing advertisements listing him as an "expert" in landlord-tenant law. (Id. ¶¶ 9-10.) Bisasor left a voicemail indicating that he was urgently seeking legal advice. (Id. ¶ 11.)

On January 9, 2017, the defendant called Bisasor back, and they spoke on the phone for seven minutes. (Id. ¶ 12.) Bisasor asked if their conversation was confidential, and the defendant replied that it was privileged. (Id. ¶ 13.) Bisasor then shared confidential information about the plaintiffs' landlord-tenant issue, requested advice on

2

their arguments and legal strategies, and asked about their likelihood of obtaining a temporary restraining order ("TRO"). (Id.) The defendant "indicated that he thought it was likely" that they could obtain a TRO based on what Bisasor had told him, but that he was unsure whether it could become permanent without looking at the documents himself. (Id.) The defendant also "indicated a belief that the plaintiff's contract [claim] was strong based on what was described," but it would depend on what was actually written in the contract or whether they could show that there was a contract. (Id.) However, the defendant declined to represent the plaintiffs. (Id. ¶ 15.)

That same day, the plaintiffs filed for and obtained a TRO from the Nashua District Court to prevent their eviction from Homewood. (Id. ¶ 16.) On January 11, 2017, Akridge asked the defendant to represent Homewood in that matter against the plaintiffs and to support the pro hac vice admission of Georgia attorney Karl Terrell. (Id.) After Akridge explained the nature of the case, the defendant told Akridge that he had previously spoken with Bisasor. (Id.) The defendant explained what he and Bisasor discussed, but assured Akridge that this did not create a conflict of interest. (Id.) The defendant then agreed to represent Homewood in its matter against the plaintiffs. (Id.) On January 17, 2017, the defendant and Terrell filed a motion to dismiss the TRO that used Bisasor's confidential information. (Id. ¶ 19.) The next day, at a hearing in Nashua District Court on the TRO, the plaintiffs' attorney raised concerns over the defendant's representation of Homewood. (Id. ¶ 21.) The district court judge indicated to the defendant that if the defendant had discussed the facts of the eviction case with O'Brien or Bisasor, then there would be a conflict. (Id.) The defendant soon after withdrew from the case. (Id.)

3

Separate from his involvement in the eviction matter, the defendant has been involved with Manchester CrimeLine in an unspecified capacity for a number of years. (Id. ¶ 42.) CrimeLine is a private, nonprofit organization that pays cash rewards for anonymous tips leading to arrests. (Id.) The defendant made numerous false statements to CrimeLine, including accusing Bisasor of criminal acts and claiming that Bisasor accused the defendant of racism. (Id. ¶ 43.) The defendant also told his own family that the plaintiffs were dangerous criminals. (Id. ¶ 49.) The defendant additionally made false statements about Bisasor during a public hearing of the Judicial Branch Advisory Committee on Rules. (Id. ¶¶ 63-64.) Bisasor had also developed a relationship with the Manchester Police Department ("MPD"). (Id. ¶ 65.) He was tasked with planning an event focused on dialogue and conflict resolution between MPD and the local community. (Id. ¶ 66.) The defendant interfered in this relationship by making false statements about Bisasor to induce MPD not to continue its relationship with him. (Id. ¶¶ 67-68.)

On January 3, 2020, the plaintiffs filed their original complaint in this case, asserting various claims against the defendant. (See Doc. 3 ¶¶ 346-402.) On June 5, 2025, the Court granted the defendant's motion to dismiss. (Doc. 356 at 14.) The plaintiffs' claims of misrepresentation, abuse of process, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, contractual interference, and one defamation claim were all dismissed without prejudice. (Id. at 8-13.) Their claims based on perjury and violations of the New Hampshire Rules of Professional Conduct, as well as one other defamation claim, were dismissed with prejudice. (Id. at 8-9, 14.) The Court granted the plaintiffs leave to amend their complaint, while noting that "a substantive amendment that

4

introduces an entirely new cause of action, or calls for substantially different evidence, may be properly denied." (Id.)

On August 6, 2025, the plaintiffs filed their amended complaint. They bring claims against the defendant alleging breach of fiduciary duty, breach of implied contract, breach of the covenant of good faith and fair dealing, defamation, interference with advantageous and contractual relations, racial discrimination, intentional inflection of emotional distress, violations of the state consumer protection law, and intentional misrepresentation. (Doc. 403.) The defendant moves to dismiss all claims. (Doc. 405.)

**Standard of Review**

When evaluating a motion to dismiss, the Court "is to determine whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." Ojo, 164 N.H. at 721. The Court assumes "the well-pleaded allegations of fact in the writ to be true, and construe[s] all reasonable inferences from them in the plaintiff's favor." Id. The Court will not assume the truth or accuracy of statements that amount to conclusions of fact and principles of law. ERG, Inc. v. Barnes, 137 N.H. 186, 190 (1993). The Court then "engage[s] in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, [the Court] must [conclude] that it [is] improper to grant the motion to dismiss." Plaisted v. LaBrie, 165 N.H. 194, 195 (2013). Such inquiry must be conducted by rigorously scrutinizing the complaint. Jay Edwards, Inc. v. Baker, 130 N.H. 41, 44-45 (1987). "Dismissal is appropriate if the facts pled do not constitute a basis for legal relief." Grand Summit Hotel Condo. Unit Owners' Ass'n v. L.B.O. Holding Inc., 171 N.H. 343, 345 (2018) (quotation and brackets omitted). Finally, in New Hampshire, "[p]ro se litigants

. . . are bound by the same procedural rules that govern parties represented by counsel." In the Matter of Birmingham, 154 N.H. 51, 56 (2006) (quotation omitted).[2]

## Analysis

The defendant moves to dismiss all claims against him, arguing that the plaintiffs have insufficiently pleaded their claims related to breach of fiduciary duty and breach of contract, and that the rest of the claims are entirely new and improperly brought in the amended complaint. The Court addresses each claim in turn.

### I. Breach of Fiduciary Duty

The plaintiffs allege that a fiduciary relationship existed between Bisasor and the defendant because of "their consultation and the confidence reposed in [the defendant]." (Doc. 403 ¶ 33.) The defendant counters that an attorney-client relationship is the only relationship between the parties that could have given rise to fiduciary duties, and, because such a relationship did not exist, the defendant did not owe Bisasor any fiduciary duties. (See Doc. 405 ¶ 9.)

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 283 (5th Cir. 2007) (quotation omitted). Although the defendant avers that any possible fiduciary

---

[2] The plaintiffs point to various authorities supporting the proposition that pro se litigants are subject to less stringent pleading standards and that courts are to construe their pleadings liberally. (See Doc. 457 ¶¶ 17-25.) The Court notes that this approach is already substantially in line with the standard of review when evaluating a motion to dismiss. See Ojo, 164 N.H. at 721 ("[The Court assumes] the well-pleaded allegations of fact in the writ to be true, and construe[s] all reasonable inferences from them in the plaintiff's favor."). Nonetheless, any possible oversights in the technicalities of pleading on the plaintiffs' part do not impact the Court's analysis of the substance of their allegations.

relationship between Bisasor and the defendant should neatly fit into the category of "attorney-client," the nature of fiduciary relationships is not so rigid.

> A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

Schneider v. Plymouth State Coll., 144 N.H. 458, 462 (1999) (quotation omitted) (finding fiduciary relationship between college and its students); see also Berry v. Watchtower Bible and Tract Soc. of N.Y., Inc., 152 N.H. 407, 415 (2005) ("A fiduciary relationship exists *wherever* influence has been acquired and abused or confidence has been reposed and betrayed." (emphasis added) (quotation and ellipses omitted).). Thus, even if an attorney-client relationship did not exist[3] between Bisasor and the defendant, the January 9, 2017 phone call between them may still have given rise to a fiduciary relationship.

"The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1319 (7th Cir. 1978) (footnote omitted) (disqualifying plaintiff's law firm after it received confidential information from defendant company); see also Fornaro v. Gannon, 124 F.App'x 8, 13 (1st Cir. 2004) (unpublished) (citing Westinghouse, 580 F.2d at 1319) ("To be sure, an attorney's fiduciary duties may be triggered by an initial consultation even if employment does not result."); Liu v. Real Estate Inv. Grp., Inc., 771

---

[3] "An attorney-client relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." Bruzga's Case, 162 N.H. 52, 58 (2011) (quotation omitted). It is unclear whether the plaintiffs have adequately pleaded that the defendant gave legal advice to the defendant so as to create an attorney-client relationship. Regardless, for the reasons that follow, a fiduciary relationship existed between Bisasor and the defendant. Therefore, the Court need not address whether an attorney-client relationship existed.

7

F.Supp. 83, 86 (S.D.N.Y. 1991) (citing Westinghouse, 580 F.2d at 1319) (holding that a "fiduciary obligation" analogous to the duty to preserve client confidences under attorney disciplinary rules "may be implied in the absence of a formal attorney-client relationship").

The Court agrees with the plaintiff and these authorities that a prospective client's recounting of confidential information to an attorney imposes fiduciary obligations on the attorney. The provision of such information to an attorney reflects a prospective client's "special confidence" that they have "repose[d] in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." Schneider, 144 N.H. at 462. Indeed, in being required to safeguard the confidences of prospective clients, attorneys are "bound to act in good faith and with due regard to the interests" of prospective clients. N.H. R. Prof. Conduct R. 1.18(b) ("Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.").[4] Although the Rules of Professional Conduct do not provide a cause of action against an attorney, see N.H. R. Prof. Conduct, Statement of Purpose, their mandate that information gained from a prospective client remain confidential, id. R. 1.18(b), provides further evidence of the confidence that a prospective client reposes in an attorney by consulting and sharing confidential with them.

---

[4] Notably, the New Hampshire rule expands upon the ABA Model Rule by defining "prospective client" as one who merely "provides information to a lawyer" about possible representation, while the ABA Rule defines it as one who "consults" with a lawyer. N.H. R. Prof. Conduct R. 1.18 cmt. 1. This lowered threshold for the attachment of this duty further supports the view that providing confidential information to a lawyer is sufficient to create a fiduciary relationship.


Case 1:25-cv-00251-SE-AJ     Document 56-1     Filed 11/12/25     Page 9 of 18

Here, the plaintiffs allege that Bisasor shared confidential information about his case with the defendant and that the defendant subsequentially shared this information. (Doc. 403 ¶¶ 14, 33.) The plaintiffs further allege that Bisasor reposed confidence in the defendant due to their "professional consultation," where Bisasor even confirmed that their conversation was confidential. (Id. ¶¶ 13, 33.) In view of these allegations, the Court finds that the plaintiffs have adequately pleaded the existence of a fiduciary relationship due to the "special confidence reposed" in the defendant by Bisasor.

However, the plaintiffs' failure to adequately plead damages is fatal to their claim. They allege that, "[a]s a result of Donais's breaching conduct, Donais caused Bisasor to suffer loss and emotional distress." (Id. ¶ 34.) Although New Hampshire is a notice-pleading jurisdiction, a plaintiff whose damages "are not readily apparent from the facts alleged," must nonetheless "specifically state" those damages. Porter v. City of Manchester, 151 N.H. 30, 43 (2004) (quoting 4 R. Wiebusch, N.H. Practice, Civil Practice and Procedure § 7.21 at 178 (1997)); see also Midway Motor Lodge of Brookfield v. Hartford Ins. Grp., 593 N.W.2d 852, 857 (Wis. Ct. App. 1999) (holding that allegation of suffering "damages" is insufficient in notice-pleading jurisdiction: "[i]f 'notice pleading' is to have any efficacy at all . . sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery" (quotation omitted)). Therefore, the plaintiffs' vague allegation of having suffered "loss" is insufficient to support a claim for breach of fiduciary duty.[5] See Porter, 151 N.H. at 43.

---

[5] Moreover, emotional harm is insufficient to support a breach of fiduciary duty claim as well. See, e.g., Doe v. Howe, 626 S.E.2d 25, 33 n.27 (S.C. Ct. App. 2005) ("[D]amages from emotional distress are not recoverable under a breach of fiduciary duty claim."); Suppressed v. Suppressed, 565 N.E.2d 101, 106 (Ill. App. Ct. 1990) ("If we were to recognize that emotional harm . . . was sufficient to support an action

Accordingly, the Court GRANTS the defendant's motion to dismiss the plaintiffs' breach of fiduciary claim.

## II. Breach of Implied Contract and Breach of the Covenant of Good Faith and Fair Dealing

The plaintiffs next allege that Bisasor and the defendant had an implied contractual relationship due to their implied attorney-client relationship and that the defendant breached this contract by disclosing Bisasor's confidential information. (Doc. 403 ¶¶ 37-39.) They also allege that the defendant breached the implied covenant of good faith and fair dealing by disclosing confidential client information. (Id. ¶¶ 40-41.) The defendant argues that no contract existed between the parties and, therefore, both claims fail. (Doc. 405 ¶¶ 10-11.)

"An implied in fact contract is a true contract that is not expressed in words; the terms of the parties' agreement must be inferred from their conduct." Chase Home for Children v. N.H. Div. for Children, Youth & Families, 162 N.H. 720, 728 (2011). "Like all contracts, implied-in-fact contracts cannot be formed absent an offer, acceptance, consideration and a meeting of the minds." Id. The burden is on the plaintiff to produce evidence establishing the intention of the parties. PC Prod. Temps, Inc. v. Abatement Int'l, No. 2006-0602, 2007 WL 9619485, at *1 (N.H. May 31, 2007).

The Court notes that the plaintiffs did not bring a breach of contract claim against the defendant in their original complaint. Regardless, this claim is based on an alleged

---

for breach of a lawyer's fiduciary duty, we would be opening the door to any number of malpractice actions brought by clients who may have been less than satisfied with their legal representation but can point to no specific harm other than their own emotional distress."); accord Rees v. Smith, 301 S.W.3d 467, 471 (Ark. 2009); see also Aller v. Law Office of Carole C. Schriefer, P.C., 140 P.3d 23, 28 (Colo. App. 2005) ("[T]he purposes of limiting damages in attorney negligence cases should apply to cases involving breach of fiduciary duty. Litigation inherently causes a client to suffer emotional distress, and to allow damages for such distress would escalate the cost of practicing law.").

attorney-client relationship between Bisasor and the defendant for the "one-time legal consultation call" and the defendant's subsequent alleged violation of confidentiality. (Doc. 403 ¶¶ 36- 37.). This claim fails, however, as even if the plaintiff were able to show an offer, acceptance, and meeting of the minds, there is no consideration for this consultation. See Tremblay v. Bald, 176 N.H. 439, 444 (2024) ("Consideration is present if there is either a benefit to the promisor or a detriment to the promisee."). As the plaintiffs allege, the defendant promised not to divulge their confidential information. Because the defendant, the promisor, received no benefit, nor did Bisasor receive a detriment by consulting with the defendant, there was no consideration in this consultation. See id.

Moreover, a claim for breach of the implied covenant of good faith and fair dealing lies only in contract. See J & M Lumber and Constr. Co. v. Smyjunas, 161 N.H. 714, 724 (2011). Without a contract, such a claim cannot lie. See id. Thus, the Court GRANTS the defendant's motion to dismiss the breach of implied contract claim and the breach of the implied covenant of good faith and fair dealing claim.

III. Civil Rights Violation

In their complaint, the plaintiffs assert a "common law claim for intentional civil rights violation[s] based on racial animus." (Doc. 403 ¶ 72.) The defendant argues that this is a new claim not properly brought in the amended complaint,[6] adding that the plaintiffs cite no authority for such a claim. In response, the plaintiffs point to RSA 354-B, the state Civil Rights Act, to support their claim and cite numerous federal cases

---

[6] The plaintiffs did not expressly bring such a claim in their original complaint. However, they accused the defendant, in passing, of having committed a hate crime based on racial bias by accusing the plaintiff of accusing the defendant of racial bias (accusation of "playing the race card"). (See Doc. 3 ¶¶ 353, 365-68.) Therefore, the Court will address this claim.

11

purporting to establish common law tort liability for racial discrimination. (See Doc. 457 ¶ 165.)

The Court first addresses the plaintiffs' contention that there exists common law tort liability for racial discrimination. The Court notes, however, that the cases cited by the plaintiffs to support their common law racial discrimination claim are not applicable here. The discrimination claims in those cases were based on alleged violations of federal and state statutory law such as Title VII of the Civil Rights Act of 1964, see, e.g., Crawford v. Metro. Gov't of Nashville, 555 U.S. 271 (2009); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Venters v. City of Delphi, 123 F.3d 956 (7th Cir. 1997), or the federal Pregnancy Discrimination Act, see, e.g., Sheehan v. Donlen Corp., 173 F.3d 1039 (7th Cir. 1999); Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716 (7th Cir. 1998). Therefore, the plaintiffs have failed to point to authority supporting a civil rights claim arising under common law, nor has the Court found any authority supporting such a claim.

The plaintiffs also contend that they may bring their discrimination pursuant to RSA 354-B. A plaintiff may bring a suit under the relevant statute where a private right of action exists. See Marquay v. Eno, 139 N.H. 708, 714 (1995). A statute creates a private right of action where the legislature expressly or impliedly intends to create civil liability for a violation of that statute. Id. at 715 (holding that the child abuse reporting statute does not create a private right of action "because [the court] find[s] no express or implied legislative intent to create such civil liability"). "[W]here the legislature has intended that civil liability flow from the violation of a statute, it has often so provided." Id. (citing, as an example, RSA 358-A:10 (Consumer Protection Act)).

12

Contrary to the plaintiffs' assertion, RSA 354-B does not provide a private right of action for those whose rights under the statute have been violated. The legislature did not expressly allow for a private right of action under RSA 354-B, but instead only authorized the Attorney General to bring a civil action for violations of that chapter. RSA 354-B:2, I. Moreover, there is nothing to suggest that the legislature impliedly intended to create a private right of action. The entire Civil Rights Act has only been amended once, in 2019, when the legislature added gender identity as a protected characteristic. 2019 N.H. Laws Ch. 332. Even though the legislature chose to amend the Civil Rights Act, it chose not to add a private right of action; if anything, this implies that it intended not to add a private right of action. See Marquay, 139 N.H. at 715 ("Despite specific amendment of the penalty section [which did not add a private right of action], nothing in the legislative history suggests that civil liability was contemplated, let alone intended."). As the legislature did not intend to create a private right of action under RSA 354-B, no claim lies for the defendant's alleged violation of this statute.[7]

Therefore, because the plaintiffs have not pointed to authority supporting a common law racial discrimination claim, nor does RSA 354-B provide a private right of action, the Court GRANTS the defendant's motion to dismiss the civil rights claim.

IV.   Intentional Misrepresentation

The plaintiffs bring an intentional misrepresentation claim based on (1) the defendant's failure to disclose that he previously represented Akridge when he consulted with Bisasor on the phone, (2) the defendant's falsely stating that he would not share

---

[7] The plaintiffs also assert that RSA 354-B has been amended to add a private right of action, and that this change will take effect on January 1, 2026. (Doc. 457 ¶ 165 (citing SB 139).) However, SB 139 has only been introduced in the legislature but has not been passed nor signed into law. SB 139-FN, 25-0974.

13

Bisasor's confidential information, and (3) the defendant's false statements to induce the plaintiffs to engage in settlement negotiations with him when he did not actually intend to settle. (See Doc. 403 ¶¶ 84-87.) The defendant asserts that this claim is an entirely new cause of action and calls for substantially different evidence. The Court agrees with the defendant.

The plaintiffs brought a misrepresentation claim in passing in their original complaint, and the court construed it as alleging misrepresentation based on a litigation affidavit by the defendant and statements the defendant made to Akridge and a Homewood employee outside a courtroom in the circuit court. (See Doc. 356 at 9-10.) The present claim alleges misrepresentations based on the defendant's false assurances that his consultation with Bisasor was confidential when he in fact intended to disclose Bisasor's confidences to Homewood, as well as misrepresentations made during settlement negotiations. (Doc. 403 ¶¶ 84-87.)

First, the misrepresentation claims based on the consultation call are now premised on the allegation that the defendant intended to disclose Bisasor's confidential information to Homewood from the beginning of their interaction, when Donais told Bisasor that their conversation was confidential. (See id. ¶ 13.) The allegation that the defendant premeditatedly consulted with Bisasor, knowing that he was an adverse party to Homewood, in order to share his confidential information with Homewood calls for substantially different evidence from what was alleged in the original complaint. This premeditated decision by the defendant to share Bisasor's confidences was not alleged in the original complaint and goes directly to the defendant's intent in committing this misrepresentation, an integral part of a misrepresentation claim that would require

14

additional evidence to prove the defendant's premeditation. See, e.g., Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Illinois Nat. Bank & Tr. Co., 576 F.Supp.985, 989 (N.D. Ill. 1983) ("One integral element of fraud is the intent to damage the claimant through the misrepresentations made."). Therefore, this claim introduces an entirely new cause of action and requires substantially different evidence from the original complaint and is thus improperly brought in the amended complaint. See Lamprey, 163 N.H. at 261. Finally, the misrepresentation claim based on statements during settlement negotiations calls for substantially different evidence as the settlement negotiations were not mentioned in the original complaint. See id.

Therefore, the Court GRANTS the defendant's motion to dismiss the plaintiffs' intentional misrepresentation claim.

V. Remaining Claims

As the Court noted in its first order, the opportunity to amend the original complaint to correct its perceived deficiencies does not include the right to plead an entirely new cause of action. (See Doc. 356 at 14 (citing Lamprey, 163 N.H at 261).) "A substantive amendment that introduces an entirely new cause of action, or calls for substantially different evidence, may be properly denied." Lamprey, 163 N.H. at 261. A court need only allow substantive amendments to the original complaint when necessary to prevent injustice. Id. Therefore, the Court reviews the remaining claims pleaded in the amended complaint to determine whether they correct the deficiencies of the original complaint or instead call for substantially different evidence or plead entirely new causes of action. Id.

The plaintiffs bring two defamation claims against the defendant. The first claim is based on the defendant's statements to CrimeLine about Bisasor, as well as the

15

statements the defendant made to his own family. The second claim is based on the defendant's statements about Bisasor he made to the Advisory Committee on Rules. (See Doc. 403 ¶¶ 58-64.) The plaintiffs also brought two defamation claims against the defendant in their original complaint. However, those claims were based on a litigation affidavit by the defendant and statements the defendant made to Akridge and a Homewood employee outside a courtroom in the circuit court. (See Doc. 3 ¶¶ 349-50.) The present defamation claims based on statements the defendant allegedly made to CrimeLine, his family, and the Advisory Committee on Rules all call for substantially different evidence than the plaintiffs' original defamation claims. See Lamprey, 163 N.H. at 261. Therefore, these claims are improperly brought in the amended complaint. Accordingly, the Court GRANTS the defendant's motion to dismiss the plaintiffs' defamation claims. See id.

Next, the plaintiffs bring two claims for interference with contractual relations and interference with advantageous relations. Both claims relate to the defendant's alleged interference with Bisasor's contract with the MPD to organize and plan community events. (See Doc. 403 ¶¶ 65-68.) The plaintiffs brought a similar tortious interference with contract claim in their original complaint. However, that claim was made in passing, and the court construed it as being based on the defendant's false statements that were intended to influence either the district court or Homewood against the plaintiffs in their dispute with Homewood. (See Doc. 356 at 13.) These two new claims call for substantially different evidence from the original tortious interference with contract claim—i.e., Bisasor's contract with MPD—and are thus improperly brought in the amended complaint. See Lamprey, 163 N.H. at 261. The Court GRANTS the defendant's motion to dismiss the

plaintiffs' interference with contractual relations and interference with advantageous relations claims.

The plaintiffs next bring a claim for intentional infliction of emotional distress (IIED) based on the defendant's alleged defamation, racial discrimination, interference with contract, and retaliation. (Doc. 403 ¶ 74.) Although the plaintiffs brought an IIED claim against other defendants in their original complaint, they did not bring such a claim against the instant defendant. As a result, this claim constitutes an entirely new cause of action and is improperly brought in the amended complaint. See Lamprey, 163 N.H. at 261. The Court GRANTS the defendant's motion to dismiss the plaintiffs' IIED claim.

Finally, the plaintiffs bring a claim based on alleged violations of the state Consumer Protection Act, RSA 358-A. They argue that the defendant's alleged defamatory statements, racial discrimination, breach of confidentiality, intimidation, and breach of fiduciary duties all constitute violations of the RSA 358-A. (See Doc. 403 ¶ 82.) In their original complaint, the plaintiffs brought a consumer protection claim based on unlawful debt collection practice. However, this claim was in reference to erroneous charges on the plaintiffs' account at Homewood and was not related to any of their original claims against the defendant. (See Doc. 3 ¶¶ 241-46.) The present claim is therefore an entirely new cause of action that is improperly brought in the amended complaint. See Lamprey, 163 N.H. at 261. Hence, the Court GRANTS the defendant's motion to dismiss the plaintiffs' claim under the Consumer Protection Act.

**Conclusion**

For the foregoing reasons, the defendant's motion to dismiss is GRANTED. The case is DISMISSED WITH PREJUDICE.

**SO ORDERED.**

<u>November 9, 2025</u>  
Date

                              */s/ Amy B. Messer*  
                              Amy B. Messer  
                              Presiding Justice

**Clerk's Notice of Decision**  
**Document Sent to Parties**  
**on**  11/10/2025