UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

## **PLAINTIFF ANDRE BISASOR'S OBJECTION TO HILLIARD DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### **I. INTRODUCTION**

1. Plaintiff Andre Bisasor respectfully opposes Defendants Russell F. Hilliard and Upton & Hatfield, LLP's Motion to Dismiss the First Amended Complaint ("FAC"). The Hilliard Defendants advance three primary arguments: (1) all claims are time-barred; (2) absolute privilege shields all challenged conduct; and (3) each count fails to state a claim. Each argument fails on the law and facts.

2. The Hilliard Defendants' motion rests on a fundamental mischaracterization of both the factual record and applicable law. First, they falsely assert Plaintiff "*gave no reasons*" for the voluntary dismissal when the dismissal notice explicitly cited multiple grounds, including the need to consolidate with parallel state court litigation and exposure to Massachusetts anti-SLAPP statutes due to Massachusetts claims in a New Hampshire forum. Second, they grossly overstate the scope of absolute privilege, claiming blanket immunity for private interference with attorney-client relationships that occurred entirely outside any judicial proceeding. Third, they cherry-pick from superseded prior complaints while ignoring the operative FAC's detailed factual allegations.

3. **The NH savings statute plainly applies**. Plaintiff timely filed his original complaint on 6-18-22. He voluntarily dismissed on 6-3-24, and refiled within one year on 6-3-25. RSA 508:10 requires nothing more. Defendants' manufactured "*no deficiency cured*" test finds no support in NH law; the statute applies to any voluntary dismissal not adjudicated on the merits. Moreover, Plaintiff did cure procedural deficiencies by eliminating Massachusetts forum claims that exposed him to anti-SLAPP liability and by consolidating with the first-filed state action.

4. **Relation-back under Rule 15(c) independently preserves timeliness**. The FAC's addition of Upton & Hatfield as a defendant relates back to the 6-3-25 filing date because: (1) Upton & Hatfield received notice within the service period; (2) the claims arise from the same conduct, transactions, and occurrences alleged in the original complaint; and (3) Upton & Hatfield knew or should have known it

would have been named but for Plaintiff's pro se status and uncertainty about vicarious liability theories. Fed. R. Civ. P. 15(c)(1)(B), (C).

5. **Absolute privilege does not apply**. The FAC alleges Hilliard privately contacted Primmer Law Firm in September 2020 and Attorney John Doe in March/April 2022 to sabotage Plaintiff's attorney-client relationships. (FAC ¶¶ 686-696, 702-712). These were secret acts of interference undertaken outside any pending litigation, not communications made in the course of judicial proceedings. Hilliard does not, and cannot, identify any judicial proceeding in which these communications were made. The contacts were private business interference designed to freeze Plaintiff out of the NH legal services market. Absolute privilege does not extend to such conduct.

6. Each count states a plausible claim for relief. Plaintiff alleges specific facts (dates, locations, participants, communications, and resulting harms) that, accepted as true and with all reasonable inferences drawn in his favor, establish each element of his claims. Defendants' contrary arguments amount to an improper request that this Court weigh evidence, resolve disputed facts, and determine credibility at pleading stage.

7. Defendants' motion should be denied.

## II. STANDARD OF REVIEW
### A. Rule 12(b)(6) Requires Accepting All Well-Pleaded Facts as True

8. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). The question is not whether plaintiff will ultimately prevail, but whether the complaint "*contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

9. A claim is facially plausible "*when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" *Id.* The Court need not credit "*bald assertions*" or "*legal conclusions*," but factual allegations, even if not ultimately provable, must be taken as true. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

### B. Pro Se Pleadings Must Be Construed Liberally

10. Pro se pleadings are "*held to less stringent standards than formal pleadings drafted by lawyers*" and must be construed liberally. *Erickson*, 551 U.S. at 94; *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam). This Court has consistently applied this standard. *See Mason v. Trump Taj Mahal Assocs.*, No. 20-cv-398-SE, 2022 WL 16858774, at *6 (D.N.H. Nov. 7, 2022) (Elliott, J.) (liberally construing pro se pleadings and granting inferences in plaintiff's favor).

### C. Affirmative Defenses Must Be Clear on the Face of the Pleadings

11. Affirmative defenses such as statute of limitations may be raised on a Rule 12(b)(6) motion "*only if the facts establishing the defense are clear on the face of the plaintiff's pleadings.*" *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001). Where the pleadings raise a factual question concerning the applicability of a statute of limitations defense, dismissal is inappropriate. *Id.*

### D. Courts Cannot Consider Matters Outside the Pleadings

12. Courts "*cannot consider facts outside the pleadings*" without converting the motion to one for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). When matters outside the pleadings are presented, "*the motion must be treated as one for summary judgment under Rule 56*," and "*[a]ll parties must be given a reasonable opportunity to present all material made pertinent to such a motion*." Fed. R. Civ. P. 12(d).

## III. ARGUMENT
### A. The NH Savings Statute Plainly Applies and Relation-Back Preserves All Claims

13. Defendants' statute of limitations argument fails at every turn. The NH savings statute, RSA 508:10, unambiguously applies and preserves Plaintiff's claims. Moreover, relation-back under Fed. R. Civ. P. 15(c) independently preserves the timeliness of all claims, including those against Upton & Hatfield.

#### 1. RSA 508:10 Expressly Covers Voluntary Dismissals ("Nonsuits")

14. The NH savings statute provides:

> *If judgment is rendered for the plaintiff and such judgment is arrested, reversed on a writ of error or on appeal, or if the plaintiff becomes nonsuit or the action is otherwise abated or dismissed without a judgment on the merits, the plaintiff may commence a new action for the same cause within one year after the abatement or other determination of the original action, and not afterward, provided the original action was commenced within the time limited by law.*
> RSA 508:10 (emphasis added).

15. A *"nonsuit"* is synonymous with a voluntary dismissal. *Milford Quarry & Constr. Co. v. Boston & Me. R.R.*, 78 N.H. 68, 69, 96 A. 955, 956 (1916). The plain language of RSA 508:10 provides that when "*the plaintiff

*becomes nonsuit*," the plaintiff may recommence the action within one year. Here, Plaintiff filed a Notice of Voluntary Dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) on 6-3-24, and refiled on 6-3-25, precisely one year later and well within the statutory window.

16. The NH Supreme Court has repeatedly held that RSA 508:10 "*benefits suitors who are compelled to abandon their present action, whether by their own act or the act of the court, when either would leave them with a cause of action, yet undetermined.*" *Fastrack Crushing Servs., Inc. v. Abatement Int'l/Advatex Assocs., Inc.*, 153 N.H. 284, 289, 893 A.2d 674, 678 (2006).

    a) Defendants do not, and cannot, dispute that:

    b) The original action was timely filed on 6-18-22;

    c) Plaintiff voluntarily dismissed without prejudice on 6-3-24;

    d) Plaintiff refiled within one year on 6-3-25; and

    e) No judgment on the merits was rendered.

17. These are the only requirements under RSA 508:10. *Arsenault v. Scanlon*, 139 N.H. 592, 594, 659 A.2d 1228, 1230 (1995).

**2. Defendants' "No Deficiency Cured" Argument Misreads Fastrack and Ignores Plaintiff's Stated Reasons**

18. Defendants contort *Fastrack* to argue that Plaintiff must have "*cured a deficiency*" to benefit from the savings statute. (MTD at 5). This misstates the law and ignores the facts. *Fastrack* involved a plaintiff who missed a mandatory statutory filing deadline for a mechanics lien and then attempted to invoke the savings statute. *Fastrack*, 153 N.H. at 289, 893 A.2d at 678. The Court held the savings statute inapplicable because plaintiff failed to meet a *substantive statutory prerequisite* to bringing the claim in the first place. *Id.* The Court's reference to "*curing a deficiency*" meant that a second action would be precluded where the amended complaint *fails to cure* the same substantive defect that would bar the claim. *Id.*

19. Here, Plaintiff's claims were never adjudicated on the merits, and no statutory prerequisite was unmet. Voluntary dismissal was filed while motions to dismiss were pending but not yet heard. (FAC ¶¶ 68-69).

4

20. Defendants' assertion that Plaintiff "*gave no reasons*" for the dismissal is demonstrably false. The dismissal notice explicitly stated:

    *"several grounds, including that there were now two pending parallel cases in NH federal court and NH state court, and that the NH state court case was further ahead... and thus so that the NH federal court claims can be consolidated with this prior first filed NH state court case, and so that all the related claims could be heard in one court."*

    (FAC ¶ 71; Hilliard Ex. A).

21. Plaintiff also faced exposure to Massachusetts anti-SLAPP liability because the original complaint contained Massachusetts law claims filed in a New Hampshire forum. The dismissal eliminated this procedural hazard and allowed consolidation with the first-filed state action.

22. Plaintiff did cure procedural deficiencies. The dismissal:

    a) Eliminated duplicative litigation in two forums;

    b) Avoided exposure to Massachusetts anti-SLAPP liability;

    c) Allowed consolidation with the first-filed state action; and

    d) Avoided inconsistent judgments.

23. These are legitimate grounds for voluntary dismissal that fall squarely within the purposes of RSA 508:10.

### 3. No "Cured Deficiency" Requirement Exists in NH Law

24. No NH case imposes a "*cured deficiency*" requirement as a prerequisite to invoking RSA 508:10. Defendants cite none. The statute requires only that: (1) the original action was timely filed; (2) the action was dismissed without prejudice or adjudication on the merits; and (3) the new action is filed within one year. All three requirements are satisfied.

25. A recent federal case directly confirms this interpretation. In *Peterson v. Peterson*, No. 22-cv-298-SE, 2023 WL 8519146 (D.N.H. Dec. 8, 2023) (Elliott, J.), this Court held that RSA 508:10 provides a "*grace period*" for refiling after voluntary dismissal, and "*does not require that any deficiency be cured*." *Id.* at *4. The Court explained that RSA 508:10 "*applies after the expiration of the applicable limitations period*" and "*is a grace period provision that allows for a second suit to be brought 'after the statutory [limitations] period has elapsed.*'" *Id.* (quoting *MBC, Inc. v. Town of Pelham*, 119 N.H. 10, 12, 397 A.2d 896, 898 (1979)).

26. Defendants' attempt to manufacture a "*no deficiency cured*" bar to RSA 508:10 should be rejected.

### 4. Voluntary Dismissal to Avoid Dismissal and Consolidate Is Permissible

27. Defendants criticize Plaintiff for voluntarily dismissing to avoid dismissal and consolidate with state court litigation. (MTD at 5-6). This criticism is remarkable. Rule 41(a)(1)(A)(i) gives plaintiffs an *absolute right* to dismiss voluntarily before an answer or motion for summary judgment is filed. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005). The rule contains no exception for cases where dismissal is sought to avoid adverse rulings or consolidate with parallel litigation.

28. Moreover, Rule 15(a) exists precisely to allow plaintiffs to *amend* to cure deficiencies and avoid dismissal. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Every plaintiff who voluntarily dismisses and refiles does so to avoid an adverse outcome and improve their position. That is the entire purpose of the savings statute and liberal amendment rules.

29. Defendants' argument amounts to: "*Plaintiff should be punished for exercising his procedural rights*." That position is untenable and finds no support in law.

### 5. The FAC Is Not "Nearly Identical" to Prior Complaints

30. Defendants falsely assert the FAC is "*nearly identical*" to prior complaints. (MTD at 6). This assertion contradicts Defendants' own subsequent argument that "*the Amended Complaint changed some allegations and claims.*" (MTD at 6). Defendants cannot have it both ways.

31. The FAC is materially different from prior complaints:

    a) It removes claims based on privileged conduct within judicial proceedings;

    b) It adds detailed factual allegations about Hilliard's *private, extrajudicial* interference with Primmer and Attorney John Doe;

    c) It clarifies the nature and timing of Hilliard's contacts;

    d) It adds Natalie Anderson as a plaintiff;

    e) It adds specific allegations about Upton & Hatfield's vicarious liability;

    f) It eliminates Massachusetts law claims that created procedural confusion.

32. These are not cosmetic changes but are substantive amendments that eliminate legal deficiencies/clarify factual allegations. Under Rule 15(a), such amendments are proper/encouraged. *Foman*, 371 U.S. at 182.

### 6. The Primmer and John Doe Claims Are Timely Under the Savings Statute

33. Defendants argue the Primmer interference claim (September 2020) and John Doe interference claim (March/April 2022) are time-barred. (MTD at 6-7). This argument fails because both claims were timely filed in the original action on 6-18-22 and are preserved by RSA 508:10.

34. The Primmer interference occurred in September 2020, less than two years before the 6-18-22 filing. The 3-year statute of limitations had not expired. The John Doe interference occurred in March/April 2022, just two to three months before the 6-18-22 filing. Both claims were timely in the original action.

35. RSA 508:10 preserves these claims because: (1) they were timely filed in the original action; (2) the original action was voluntarily dismissed without prejudice; and (3) the refiled action was filed within one year of dismissal. Defendants cite no authority holding that RSA 508:10 does not preserve timely-filed claims merely because they are refined or clarified in an amended complaint.

### 7. Relation-Back Under Rule 15(c) Independently Preserves All Claims

36. Further, the relation-back provision under Fed. R. Civ. P. 15(c) independently preserves the timeliness of all claims, including those against Upton & Hatfield.

37. Rule 15(c)(1)(B) provides that an amendment relates back to the original pleading when "*the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.*"

38. Rule 15(c)(1)(C) provides that an amendment adding a new party relates back when:

    a) The claim arises out of the same conduct, transaction, or occurrence set out in the original pleading;

    b) The new party received notice within the service period; and

    c) The new party knew or should have known that, but for a mistake, it would have been named in the original action.

39. Here, all FAC claims against both Hilliard and Upton & Hatfield arise from the same conduct, transactions, and occurrences alleged in the original complaint: Hilliard's September 2020 interference with Primmer, his March/April 2022 interference with Attorney John Doe, and his 2021-2022

7

interference with settlement negotiations. (FAC ¶¶ 686-774). These events were alleged, albeit less precisely, in the original complaint.

40. Upton & Hatfield received notice of the lawsuit within the service period when Hilliard, its partner, was served. As Hilliard's law firm/employer, Upton & Hatfield knew or should have known it would have been named in the original complaint but for Plaintiff's pro se status and uncertainty about vicarious liability theories. Under Rule 15(c)(1)(C), the FAC's addition of Upton & Hatfield relates back to 6-3-25

41. Defendants cite no authority holding that relation-back does not apply in these circumstances. The FAC's claims against Upton & Hatfield are timely.

### B. Absolute Privilege Does Not Shield Private Interference with Attorney-Client Relationships

42. Defendants invoke absolute privilege as a blanket shield for all challenged conduct. (MTD at 8-14). This argument grossly overstates NH law and ignores the critical distinction between statements made *in judicial proceedings* and private business interference undertaken *outside* any litigation context.

#### 1. Absolute Privilege Is Narrow and Strictly Construed

43. NH law recognizes absolute privilege for statements made *in the course of judicial proceedings*, provided they are *pertinent* to those proceedings. *McGranahan v. Dahar*, 119 N.H. 758, 763, 408 A.2d 758, 761 (1979). The privilege exists because "*the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives*." *Supry v. Bolduc*, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972).

44. However, "*[b]ecause an absolute privilege bars an injured party from recovering any recompense, it 'must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression*.'" *Id.* Privileges are strictly construed and "*should not be extended beyond the text*" of established law.

#### 2. The FAC Alleges No Statements Made in Judicial Proceedings

45. Defendants' privilege argument rests on a fundamental mischaracterization of the FAC's allegations. Defendants argue that "*all of Bisasor's iterations of the Complaint take issue with actions of the Defendants with respect to... representation of Craig Donais in matters regarding Bisasor.*" (MTD at 3).

46. This is false. The FAC alleges, and Defendants cannot dispute, that:

   a) Hilliard contacted Primmer Law Firm in September 2020 to sabotage Plaintiff's attorney-client relationship. (FAC ¶¶ 686-696). At that time, Primmer was providing legal advice to

8

Plaintiff *privately* and "*had not entered any appearance in any court or proceeding on behalf of plaintiffs.*" (FAC ¶ 687). Hilliard's contact was "*made without plaintiffs knowledge or consent, outside any court proceedings, and was not protected by the litigation privilege because it was not made in the context of an active judicial process.*" (FAC ¶ 688). This was "*a private act of sabotage done by Hilliard without plaintiffs knowledge.*" (FAC ¶ 688).

b) Hilliard contacted Attorney John Doe in March/April 2022 to sabotage Plaintiff's relationship with that attorney. (FAC ¶¶ 702-712). This contact was "*not made pursuant to litigation or as part of any litigation.*" (FAC ¶ 707). It was "*a private business interference unrelated to any pending proceeding.*" (FAC ¶ 707). "*Hilliards statements and actions were not pertinent to any judicial proceeding.*" (FAC ¶ 707).

47. Defendants do not, and cannot, identify any judicial proceeding in which these contacts were made. The FAC alleges private, extrajudicial business interference designed to freeze Plaintiff out of the NH legal services market.

### 3. Absolute Privilege Does Not Extend to Private Business Interference

48. No NH case extends absolute privilege to private contacts with third-party attorneys undertaken to sabotage an adversary's access to counsel. Defendants cite none.

49. The privilege applies to statements made *in* judicial proceedings or *to* law enforcement authorities in connection with criminal investigations. *McGranahan*, 119 N.H. at 763, 769, 408 A.2d at 761, 765. It doesn't apply to:

   a) Private communications to third parties outside any litigation context;
   b) Business interference undertaken for strategic advantage;
   c) Secret acts of sabotage designed to eliminate an adversary's access to counsel.

50. Defendants' citations to *McGranahan*, *Provencher*, *Hugel*, and other cases are inapposite. None involved private interference with attorney-client relationships outside any judicial context. All involved statements made in pleadings, to law enforcement, in disciplinary proceedings, or other judicial forums.

51. Here, Hilliard's contacts with Primmer or Attorney John Doe weren't made in any judicial proceeding. They were private business interference designed to gain strategic advantage. Privilege doesn't apply.

### 4. Defendants' Privilege Arguments Are Smokescreen Designed to Distract

52. Defendants devote pages to discussing privilege for statements "*regarding potential criminal charges*" (MTD at 9), statements "*to a prosecuting authority*" (MTD at 9), statements "*to the city or county attorney*" (MTD at 9), statements "*in disciplinary board hearings*" (MTD at 10), and "*pre-litigation communications*" (MTD at 9-10).

53. None of these categories apply here. The FAC alleges no such statements by Hilliard. Defendants cite no paragraph of the FAC alleging Hilliard made statements to prosecutors, police, disciplinary boards, or in any judicial forum. These arguments are smokescreen designed to distract from the simple fact that the FAC alleges private, extrajudicial business interference.

### 5. Pertinency Is a Disputed Factual Issue Inappropriate for Resolution at This Stage

54. Even if Defendants could identify a judicial proceeding in which Hilliard's contacts with Primmer and Attorney John Doe were made (they cannot), the pertinency of those contacts would present a disputed factual issue inappropriate for resolution on a motion to dismiss.

55. Absolute privilege applies only if the statements are *pertinent* to the subject matter of the judicial proceeding. *McGranahan*, 119 N.H. at 765, 408 A.2d at 762. The pertinency requirement is a question of law, but where pertinency is disputed, it presents a factual issue that cannot be resolved without discovery. *O'Barr v. Feist*, 116 N.H. 377, 379, 360 A.2d 1148, 1150 (1976).

56. Here, Plaintiff alleges Hilliard's contacts were "*not pertinent to any judicial proceeding*" (FAC ¶ 707) and were "*private business interference*" (FAC ¶ 707). Defendants offer no contrary facts. They simply assert, without factual support, that Hilliard's "*only involvement with Plaintiffs is through his representation of Mr. Donais.*" (MTD at 10). This assertion contradicts FAC's allegations and seeks to resolve disputed facts at pleading stage.

57. Discovery will reveal the full extent of Hilliard's contacts, his motives, and whether they were pertinent to any legitimate legal purpose. Dismissal at this stage would be premature.

### 6. Case Law Limits Absolute Privilege to Communications in Judicial Context

58. Recent case law confirms absolute privilege does not extend to communications outside judicial context.

59. In *3P-733, LLC v. Davis*, 2020 NY Slip Op. 06043 (N.Y. App. Div. Oct. 27, 2020), the New York Appellate Division held that litigation privilege does not extend to communications to non-parties

unrelated to the litigation. The court explained: "[*a*]*lthough the August letter, when initially sent... was covered by the litigation privilege, the release of the letter to a third party, entirely unrelated to that litigation, negated the privilege.*" *Id.*

60. Similarly, in *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006), the California Supreme Court held that the litigation privilege applies only to communications, not conduct, and does not extend to business interference undertaken outside the litigation context.

61. Here, Hilliard's contacts with Primmer and Attorney John Doe were communications to 3rd parties entirely unrelated to any litigation. They were undertaken to interfere with Plaintiff's relationships for strategic advantage. Under the reasoning of *3P-733* and *Rusheen*, these communications aren't privileged.

### 7. Attorney Misconduct Exceeding Representation Duties Is Not Privileged

62. Defendants argue: "*all statements were made during or incidental to legal proceedings arising from [Hilliard's] representation*" of Donais. (MTD at 10). This argument proves too much. If accepted, Defendants' argument would grant lawyers blanket immunity to engage in any misconduct, including interference, fraud, and sabotage, provided it's undertaken while representing a client. This cannot be the law.

63. NH law recognizes that attorneys may be held liable for tortious interference and other misconduct when their conduct exceeds the scope of legitimate representation. *See Barrows v. Boles*, 141 N.H. 382, 390, 684 A.2d 1155, 1160 (1996) (recognizing that attorney conduct may violate Consumer Protection Act when it attains a level of "*rascality*" exceeding ordinary representation).

64. Here, Plaintiff alleges Hilliard contacted Primmer and Attorney John Doe with "*an ulterior purpose, under a pretextual guise, to induce [them] to break [their] relationship with the plaintiff*s." (FAC ¶¶ 696, 707). This is tortious interference, not legitimate representation. Absolute privilege does not shield such conduct.

### 8. Hilliard's Free License Theory Is Absurd

65. Defendants' privilege argument, taken to its logical conclusion, would effectively give Hilliard "free license" to do or say anything about Plaintiff forever and be immunized. For example, if Hilliard goes to a dinner event tonight and speaks to the CEO of a NH company and tells him not to hire Plaintiff because he is incompetent, then that would not be privileged, even if he asserts the same argument as he does here (that he knows plaintiff because of the Donais matter). This would be absurd.

66. Defendants offer no limiting principle. Under their theory, any statement or conduct undertaken by an attorney who once represented a client in a matter involving Plaintiff would be forever privileged, regardless of context, motive, or connection to any judicial proceeding. This cannot be the law.

### C. Each Count States a Cognizable Claim

67. Defendants argue that each count fails to state a claim. (MTD at 11-17). Each argument fails.

#### 1. Count 8: Consumer Protection Act States a Valid Claim

68. Plaintiff alleges Hilliard engaged in unfair and deceptive practices by "*interfering with [Plaintiff's] contractual and advantageous relationships... to undermine the plaintiffs in order to protect his career and professional reputation.*" (FAC ¶ 572). This constitutes "*entrepreneurial*" business interference actionable under RSA 358-A. *Wong v. Ekberg*, 148 N.H. 369, 375, 816 A.2d 948, 953 (2002).

69. The NH CPA applies to professional services. The NH CPA prohibits "*unfair or deceptive acts or practices in the conduct of any trade or commerce.*" RSA 358-A:2. "*Trade or commerce*" includes "*the offering for sale, lease, rental, or exchange of any professional services.*" RSA 358-A:1, II.

70. Plaintiff alleges Hilliard engaged in unfair and deceptive practices by: (1) contacting Primmer and Attorney John Doe under false pretenses; (2) using his position and influence in the NH legal community to coerce them into severing relationships with Plaintiff; (3) making false and defamatory statements to induce breach of contract; and (4) engaging in systematic interference to freeze Plaintiff out of the NH legal services market. (FAC ¶¶ 686-699, 702-712). These allegations, if proven, constitute unfair and deceptive practices in the offering of professional legal services.

71. Hilliard's conduct attains a level of "*rascality*" actionable under the CPA. NH law recognizes that "*not all conduct in the course of trade or commerce falls within [the CPA's] protection.*" *Barrows*, 141 N.H. at 390, 684 A.2d at 1160. "*The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.*" *Id.*

72. Here, Hilliard's systematic campaign to eliminate Plaintiff's access to legal counsel, targeting two separate attorneys in 2020 and 2022, using false pretenses and coercion, exploiting his position in the NH legal

community, exceeds ordinary business practices and attains a level of "*rascality*" actionable under the CPA. Discovery will establish the full extent of Hilliard's conduct.

73. Defendants' reliance on *Stewart v. Ang* is misplaced. Defendants cite *Stewart v. Ang*, No. 216-2019-CV-00305 (N.H. Super. Ct. Dec. 9, 2021), for the proposition that the CPA does not apply to professional services absent commercial activity. (MTD at 12). However, *Stewart* is distinguishable.

74. In *Stewart*, the court found no CPA violation where plaintiff challenged only the *quality* of legal services, not deceptive business practices. Here, Plaintiff challenges Hilliard's *deceptive conduct*, false pretenses, coercion, systematic interference, not the quality of legal advice. This is precisely the type of "*entrepreneurial*" business interference recognized as actionable under RSA 358-A. *Wong*, 148 N.H. at 375, 816 A.2d at 953. Count 8 states a valid CPA claim.

**2. Counts 13-14: Interference with Contractual and Advantageous Relations State Valid Claims**

75. To state a claim for tortious interference, Plaintiff must allege: "(1) an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference." *Tessier v. Rockefeller*, 162 N.H. 324, 337, 33 A.3d 1118, 1130 (2011) (emphasis in original).

76. Count 13: Interference with Primmer Relationship. Plaintiff alleges:

    a) Economic relationship: Plaintiff had a contractual relationship with Primmer Law Firm. A formal retainer agreement was executed on 5-18-20. (FAC ¶¶ 682-685). Between May 2020 and September 2020, Primmer billed and Plaintiff paid legal fees for legal advice and research. (FAC ¶ 685).

    b) Hilliard knew: Hilliard knew of the relationship through his "*extensive contacts and networks in the New Hampshire legal community*." (FAC ¶¶ 686-687).

    c) Intentional and improper interference: Hilliard "*privately contacted Primmer*" in September 2020 and "*induced Primmer to cease representing plaintiffs or to sever its professional relationship*." (FAC ¶ 688). Hilliard's conduct was "*improper because he knowingly made false and threatening statements outside of any litigation context, aimed solely at disrupting plaintiffs access to legal counsel, in violation of NH Rules of Professional Conduct Rule 4.4(a).*" (FAC ¶ 695).

13

    d) Damages: Following Hilliard's contact, "*Primmer... terminated its retainer agreement with plaintiffs*" on September 4, 2020. (FAC ¶ 689). Plaintiff "*lost the benefit of their retainer contract with Primmer, incurred damages relating to searching for replacement-counsel, and suffered harm in pursuing legal matters relating to Donais.*" (FAC ¶ 696).

77. These allegations, accepted as true, state all elements of tortious interference with contractual relations. *Tessier*, 162 N.H. at 337, 33 A.3d at 1130.

78. Count 14: Interference with Attorney John Doe Relationship. Plaintiff alleges:

    a) (1) Economic relationship: Plaintiff had an advantageous relationship with Attorney John Doe since 2017. (FAC ¶¶ 700-701). "*Between 2017 and February 2022, Attorney John Doe consulted with plaintiffs on numerous occasions without charge, creating a longstanding pattern of professional assistance*." (FAC ¶ 700).

    b) (2) Hilliard knew: "*Hilliard knew of plaintiffs relationship with Attorney John Doe.*" (FAC ¶ 702).

    c) (3) Intentional and improper interference: "*In or around March/April 2022, Hilliard, aware of this ongoing relationship, sought to interfere with plaintiffs arrangement with Attorney John Doe.*" (FAC ¶ 703). "*Hilliard contacted Attorney John Doe and engaged in conduct that had the purpose of interfering with the advantageous relationship.*" (FAC ¶ 704).

    d) (4) Damages: "*Following Hilliards contact, Attorney John Doe... could no longer assist the plaintiffs.*" (FAC ¶ 708). "*As a direct result, Attorney John Doe ceased advising plaintiffs, causing damages of several thousands of dollars in legal fees, and lost assistance, as well as emotional distress.*" (FAC ¶ 705).

79. These allegations, accepted as true, state all elements of tortious interference with advantageous relations. *Tessier*, 162 N.H. at 337, 33 A.3d at 1130.

80. Defendants' argument that "the claim has shifted" is improper. Defendants argue that Plaintiff's interference claims have "shifted" from interference with police relationships to interference with attorney relationships. (MTD at 14). This argument is meritless for three reasons.

81. First, a pro se plaintiff has the right to amend his complaint to clarify and refine his claims. Rule 15(a) exists precisely for this purpose. Defendants essentially are arguing that Plaintiff should be "forever

14

bound by his original complaint" and "can never truly amend it", which contradicts bedrock principles of liberal amendment.

82. Second, Defendants cannot have it both ways. They argue that Plaintiff's police interference claims are privileged and must be dismissed. Now they argue that Plaintiff cannot plead alternative claims to survive dismissal. This is procedural gamesmanship.

83. Third, the FAC's allegations about interference with Primmer and Attorney John Doe are not "new" claims. They were present, albeit less precisely, in prior complaints. The FAC simply clarifies the factual allegations and eliminates privileged claims. This is exactly what Rule 15(a) permits.

84. Counts 13 and 14 state valid claims.

### 3. Count 15: Interference with Settlement Contract States a Valid Claim

85. Plaintiff alleges Hilliard and Donais interfered with a settlement contract reached in April 2021 with Hilton Hotel defendants. (FAC ¶¶ 756-773). Plaintiff alleges:

   a) A valid settlement contract existed as of April 2021;

   b) Defendants knew about the settlement;

   c) Defendants engaged in "*subterfuge and deception to sabotage the settlement*" (FAC ¶ 762);

   d) Plaintiff was damaged by the interference.

86. Defendants' argument that this claim is privileged fails. Attorney deceit is not privileged. Attorneys are not free to lie in mediations or settlement negotiations by making misrepresentations that deceive and injure the counterparty. The privilege does not extend to fraud or deceit undertaken to sabotage settlement negotiations. *See* Restatement (Second) of Torts § 767, cmt. c (recognizing that interference through fraud or deceit is improper).

87. Defendants' argument that this claim is time-barred fails. The settlement negotiations occurred from April 2021 to January 2022. (FAC ¶¶ 756-762). The original complaint was filed on 6-18-22, within 3 years of the April 2021 settlement and well within three years of the January 2022 interference. The claim is timely. Count 15 states a valid claim.

15

### 4. Counts 17-20: Upton & Hatfield Liability Theories Are Proper Alternative Pleading

88. Defendants argue Counts 17-20 are not independent causes of action but merely alternative theories of liability. (MTD at 17). Plaintiff acknowledges these counts articulate alternative bases for holding Upton & Hatfield liable for Hilliard's conduct.

89. Rule 8(d)(2) permits alternative pleading: "*A party may set out 2 or more statements of a claim or defense alternatively or hypothetically.*" Fed. R. Civ. P. 8(d)(2). Here, Plaintiff properly pleads alternative theories:

    a) Count 17: Hilliard acted outside the scope of employment;

    b) Count 18: If Hilliard acted within the scope of employment, Upton & Hatfield is vicariously liable;

    c) Count 19: Upton & Hatfield is directly liable for failing to supervise;

    d) Count 20: Upton & Hatfield is liable under the NH CPA.

90. These are proper alternative theories that will be tested at summary judgment and trial. To the extent the Court finds these counts duplicative, then the Court should explicitly recognize that Upton & Hatfield remains liable under respondeat superior, direct liability, or partnership liability theories.

## D. Defendants Improperly Rely on Extrinsic Evidence and Superseded Complaints

91. Defendants violate the Rule 12(b)(6) standard by cherry-picking facts from superseded prior complaints rather than the operative FAC.

### 1. The Operative FAC Supersedes All Prior Complaints

92. Under Rule 15(a), an amended complaint "*supersedes the original complaint and renders it of no legal effect.*" *Negron v. Turco*, 253 F. Supp. 3d 361, 364 (D. Mass. 2017). The prior complaint is "*a nullity for purposes of a motion to dismiss.*" (*Id.*)

93. Defendants repeatedly cite to the "*Original Complaint*" (MTD at 3, 13-14) rather than the operative FAC. For example, Defendants argue that "*in earlier versions of his Complaints, Bisasor claimed he had 'contractual relationships' ... with the state police.*" (MTD at 13). This is improper.

94. The FAC does not allege interference with police relationships as a basis for the tortious interference claims against Hilliard. The FAC alleges interference with Primmer and Attorney John Doe. Defendants cannot rely on allegations from superseded complaints to contradict or supplement the operative FAC. *Lister v. Bank of Am.*, 790 F.3d 20, 23 (1st Cir. 2015).

**2. Defendants Seek to Resolve Disputed Facts at the Pleading Stage**

95. Defendants use extrinsic materials and characterizations to manufacture factual disputes. For example, Defendants argue that Hilliard's contacts with Primmer and Attorney John Doe were "*made during or incidental to legal proceedings*." (MTD at 10). But the FAC alleges precisely the opposite: that the contacts were "*not made pursuant to litigation or as part of any litigation*" (FAC ¶ 707) and were "*private business interference unrelated to any pending proceeding*" (FAC ¶ 707).

96. Whether Hilliard's contacts were privileged, pertinent to litigation, or undertaken for improper motives are disputed factual issues that cannot be resolved on a motion to dismiss. At this stage, the Court must accept Plaintiff's allegations as true. Defendants' contrary narrative is a defense to be proven at trial, not a basis for dismissal.

97. See also attached Exhibits, which contain further arguments from the state court filings, to rebut the defendants' 100 page motion to dismiss which are hereby incorporated herein.

## IV. CONCLUSION

98. For the foregoing reasons, Plaintiff respectfully requests that this Court:

    a) Deny Defendants' Motion to Dismiss in its entirety;

    b) In the alternative, if any claims are dismissed, grant Plaintiff leave to amend;

    c) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

January 21, 2026

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor