Case 1:25-cv-00251-SE-AJ    Document 78-2    Filed 01/21/26    Page 1 of 24

Filed
File Date: 10/6/2025 8:31 AM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY CLAIM

1. Plaintiffs submit this memorandum for motion for partial summary judgment on the breach of fiduciary duty claim.

2. This partial summary judgment motion addresses breaches of fiduciary duty arising from Craig Donais ("Donais") 1-9-17 consultation with Andre Bisasor ("Bisasor"), and Natalie Anderson's ("Anderson") 1-5-17 consultation with Donais through Robert Obrien, and other undisputed facts that establish a prospective attorney-client relationship, such as Judge Paul Moore's finding of a conflict, requiring Donais's withdrawal from representing Homewood Suites, and breach of confidentiality to unauthorized 3rd parties. The accompanying 3 affidavits and exhibits are fully incorporated herein.

---

## SECTION I: LEGAL STANDARDS

### I. SUMMARY JUDGMENT STANDARD

3. Under NH RSA 491:8-a, summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The court views evidence in light most favorable to the non-moving party, but where the material facts are undisputed, legal conclusions flowing from those facts present questions of law appropriate for summary judgment. The NH Supreme Court has held that summary judgment serves the purpose of determining whether genuine factual disputes exist and applying law to undisputed facts.

4. Once the moving party has established the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.

5. New Hampshire RSA 491:8-a explicitly authorizes partial summary judgment, stating that "A party seeking to recover upon a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment, may, at any time after the defendant has appeared, move for summary judgment in his favor upon all or **any part thereof**." The phrase "any part thereof" establishes clear statutory authority for partial summary judgment on individual claims or issues within a case.

6. The New Hampshire Supreme Court regularly approves partial summary judgment motions when appropriate legal standards are met. In Loeffler v. Bernier, No. 2019-0107 (N.H. 2020), the court affirmed superior court orders "granting partial summary judgment to plaintiff," finding no reversible error in the partial resolution approach, demonstrating standard acceptance of this procedural mechanism for narrowing multi-claim disputes.

7. The NH Supreme Court has thus confirmed that trial courts possess authority under RSA 491:8-a to grant partial summary judgment, indicating partial resolution serves judicial efficiency by determining clear legal issues without

requiring full trials on every aspect of multi-faceted cases. Hence, when undisputed facts establish liability on specific claims, partial summary judgment eliminates unnecessary litigation costs while preserving the remaining disputed issues. This approach particularly benefits certain cases involving clear legal standards applied to uncontested facts.

## II. INTRODUCTION

8. This motion seeks partial summary judgment on the breach of fiduciary duty count that asserts that Donais and his law firm owed a fiduciary duty to Plaintiffs as prospective client, including confidentiality, loyalty, and the obligation to act in good faith, which was breached through multiple egregious acts.

9. As a prospective client, Bisasor shared confidential information with Donais during a 1-9-17 consultation. The facts establish that this was a confidential, substantive discussion about legal issues involving the Hilton Hotels/Homewood Suites defendants. The facts clearly demonstrate that Bisasor reasonably believed he was engaging in a confidential discussion, on behalf of himself and his spouse. Bisasor was thus entitled to confidentiality and loyalty. Donais, knowing this, had a duty to maintain confidentiality and act in Plaintiff's best interests. Instead, Donais breached confidentiality obligations owed to Plaintiff as prospective client by disclosing privileged information to harm Plaintiff's interests. Donais used his position of client trust to maliciously fabricate false allegations, with the intent to defame, intimidate, and retaliate against Plaintiffs. Donais weaponized this confidential discussion and turned it into a defamatory campaign. Donais's conduct violated that trust, breaching his fiduciary obligation. Donais divulged confidential information to third parties, his wife, son, family members and community members, colleagues, and others, without Plaintiff's consent, breaching his fiduciary obligation. These acts constitute a clear breach of fiduciary duty, which under NH law, includes the obligation not to disclose confidential information or use it for personal or third-party advantage. Further, Donais' repeated disclosures of the confidential discussion, especially where he manufactured false statements and disclosed them to 3rd parties, under the pretext that it was disclosed to him in a client call, shows a pattern of breach that is sufficiently egregious to sustain a cause of action. By disclosing privileged information and exploiting it for self-protection, Donais breached that duty, proximately causing reputational and economic loss. Plaintiff's damages include reputational harm, emotional distress, and economic loss, directly caused by the breaches.

## III. LAW REGARDING FIDUCIARY DUTIES TO PROSPECTIVE CLIENTS
### A. NH Rules of Professional Conduct 1:18

10. NH Rule 1.18(a) states: "*a person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.*" Rule 1.18(b) requires that "*a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.*"

2

11. Rule 1.18 of the NH Rules of Professional Conduct for Lawyers further states:

Rule 1.18. Duties to Prospective Client

(a) A **person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.**

(b) **Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information** except as Rule 1.9 would permit with respect to information of a former client.

(c) **A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received and reviewed information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).**

Ethics Committee Comment:

1. The New Hampshire rule expands upon the ABA Model Rule in one area. **The ABA Model Rule 1.18(a) defines a prospective client as one who "consults" with a lawyer about possible representation; the New Hampshire Rule defines prospective client as one who "provides information to a lawyer" about possible representation**. ABA Model Rule 1.18(b) establishes a general rule for protection of information "learned" by a lawyer from a prospective client; the New Hampshire Rule clarifies **the scope of the protection so that it applies to information "received and reviewed" by a lawyer from a prospective client.**

In its version of Rule 1.18, New Hampshire's rule eliminates the terminology of "consultation" and learning and extends **the protections of the rule to persons who, in a good faith search for representation, provide information unilaterally to a lawyer who subsequently receives and reviews the information. This change recognizes that persons frequently initiate contact with an attorney in writing, by e-mail, or in other unilateral forms, and in the process disclose confidential information that warrants protection. This change further recognizes that receipt and review are likely to be more objective standards than learning.**

12. Rule 1.18 is clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them. The NH version of Rule 1.18 is broader than the ABA Model Rule, extending protection to persons who "provide information to a lawyer" rather than limiting it to formal consultations. This expansion recognizes that confidential information warrants protection regardless of the formality of initial contact.

13. Courts have held that fiduciary duties arise when attorneys receive confidential information from prospective clients. The fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result. Thus, fiduciary duty arises when an attorney receives confidential information, even if formal engagement doesn't occur, provided the client reasonably believes the attorney is acting in a professional capacity and the communication is confidential. Such fiduciary duties extend to prospective clients especially where confidential information was shared/relied on in good faith. Hence, under NH law, a prospective attorney-client relationship creates fiduciary obligations of confidentiality, loyalty & good faith.

14. The New Hampshire Rules of Evidence provides the definition of a client:

A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him. [New Hampshire Rules of Evidence, Rule 502(a)(1).]

3

15. NH Rules of Evidence, Rule 502(a)(1) establishes that communications from a prospective client are protected by attorney-client privilege, even though the attorney has not yet formalized (or never formalizes) a representative relationship with the individual. One will be deemed a "client" for purposes of applying attorney-client privilege upon consulting a lawyer "with a view to obtaining professional legal services from [a lawyer]." See also McCabe v. Arcidy, 138 N.H. 20, 25, 635 A.2d 446, 449 (1993) ("[A]n attorney-client relationship 'is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.'").

16. New Hampshire has held that an attorney may not disclose the contents or condition of pre-existing documents delivered to the attorney by the client. See Brown v. Payson, 6 N.H. 443, 448, 1833 WL 1321 (1833) ("The situation and contents of a paper, delivered to an attorney for inspection, in the course of employment as attorney, is as much a matter of professional confidence as an oral statement of its contents or condition can be...An attorney is not at liberty to disclose what is communicated confidentially by a client.").

17. New Hampshire generally provides that once the attorney-client privilege attaches to confidential communications, the privilege survives termination of the attorney-client relationship, or the death of the client. See McGranahan v. Dahar, 119 N.H. 758, 408 A.2d 121, 125 (1979) ("communications made during the course of legal representation…are confidential and permanently protected from disclosure."); Stevens v. Thurston, 112 N.H. 118, 289 A.2d 398, 399 (1972) ("the privilege continues after the death of the client"). The perpetual effectiveness of the privilege's protections is recognized by Rule 502(c), which provides the privilege may be claimed on behalf a client, even if that client has passed.

18. "Even after termination of the attorney-client relationship, a lawyer remains bound" to preserve the former client's confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994). "(W)hen an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney's continuing duty to preserve a former client's confidences." Adoption of Erica, 426 Mass. 55, 60 (1997). See also Bartle v. Berry, 80 Mass. App.Ct. 372, 385 (2011) (an attorney's fiduciary duty continues even after termination of the attorney-client relationship).

## B. Definition of Confidential Information

19. The New Hampshire Rules of Evidence defines a confidential [1]communication as follows:

---

[1] A "confidence" has also been defined by other courts, as "information protected by attorney-client privilege under applicable law", and a "secret" as "information gained in the professional relationship that the client requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." (McKinney Supp. 1991).

(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. [New Hampshire Rule of Evidence, Rule 502(a)(5).]

20. Where legal advice of any kind is sought from a lawyer in his capacity as such, the communications relating to that purpose, made in confidence by the client, are permanently protected from disclosure by the client or by the lawyer unless the protection is waived by the client or his legal representatives. See Riddle Spring Realty Co. v. State, 107 N.H. 271, 220 A.2d 751, 755 (1966) (citing 8 Wigmore, Evidence, §§ 2292, 2327–29 (McNaughton rev. 1961)).

21. The attorney-client privilege is applicable in New Hampshire only when the client has consulted the attorney for the purpose of obtaining legal advice or assistance. State v. Gordon, 141 N.H. 703, 706, 692 A.2d 505, 507 (1997).

22. See also State v. Elwell, 132 N.H. 599, 567 A.2d 1002, 1005 (1989) ("Under the attorney-client privilege, a communications made in confidence in the course of obtaining legal advice from a professional legal advisor are protected from disclosure."). See also Professional Fire Fighters of New Hampshire v. New Hampshire Local Government Center, 163 N.H. 613, 44 A.3d 542, 544 (2012).

23. Thus, for the privilege to apply, the client must intend the communications to be kept confidential at the time the communications were made. New Hampshire courts will determine the intent of the client by examination of the circumstances in which the communications were made. For example, if the communications are made in the presence of a third party, the court will infer that the client did not have the intent of confidentiality. State v. Melvin, 132 N.H. 308, 564 A.2d 458, 459 (1989) ("the presence of an 'extraneous' third party during a privileged conversation operates to destroy the privilege."). This concurs with federal law requiring privilege apply only to communications intended to be confidential when made. McGranahan v. Dahar, 119 N.H. 758, 408 A.2d 121, 125 (1979) ("communications made during the course of legal representation…are confidential and permanently protected from disclosure."); Riddle Spring Realty Co. v. State, 107 N.H. 271, 220 A.2d 751, 755 (1966) ("'[T]he essence of a privileged communication between attorney and client and likewise the basis of its exemption from discovery is its confidentiality.'").

24. New Hampshire also extends the privilege to communications between an attorney and a client, and not to the information that is in those communications. Thus, even though the information may be available from another source, an outside party cannot discover whether or not the same information communicated by the client to an attorney for purposes of seeking legal advice. McGranahan v. Dahar, 119 N.H. 758, 408 A.2d 121, 125 (1979) (The plaintiff could not penetrate the attorney-client privilege to discover whether the defendant made the same statements to his attorney

during the course of legal representation.). New Hampshire also recognizes that attorney-client privilege exists for the benefit of the client. Scott v. Grinnell, 102 N.H. 490, 161 A.2d 179, 183 (1960) ("The privilege is that of the client…").

### C. Formation of Attorney-Client Relationship

25. Courts have held that an "analogous fiduciary obligation may be implied in the absence of an attorney-client relationship." Liu v. Real Estate Inv. Group, Inc., 771 F. Supp. 83 (S.D.N.Y. 1991). As the court in Liu noted:

> It is clear that where an attorney receives confidential information from a person, who under the circumstances has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidences irrespective of the absence of a formal attorney client relationship.

26. See also United States v. Devery, No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship."). See also Rosman v. Shapiro, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987).

27. "[C]ourts have not employed a single, well-defined test for determining whether an attorney client relationship exists, and, moreover, have consistently rejected the argument that indicia of a formal relationship are necessary. Most courts have acknowledged, as a general matter, that an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." See First Hawaiian Bank v. Russell Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994); accord Bennet Silvershein Assocs. v. Furman, 776 F. Supp. 800, 803 (S.D.N.Y. 1981).

28. Further, whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to attorney client privilege. See Dennis, 843 F.2d at 657 ("To be sure, initial statements made while Pilgrim intended to employ Gerace were privileged even though the employment was not accepted."); see also Green, 784 F. Supp. at 845 ("[T]he fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result."); Liu, 771 F.Supp. at 86 ("[T]he duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result."); McCormick on Evidence 6th Ed. § 88 (West Publishing Co., 2006) ("[C]ommunications in the course of [a] preliminary discussion with a view to employing the lawyer are privileged though the employment is, in the upshot, not accepted."). As the Second Circuit has also stated, "[t]he key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." United States v. Dennis, 843 F.2d 652, 657 (2d Cir. 1998).

6

29. Under Restatement (Third) of the Law Governing Lawyers § 38, just because a prospective client conversation where confidential information was shared, does not result in further engagement, that does not absolve attorneys of fiduciary obligations created by that limited or initial client interaction.

30. Under NH law, breach of fiduciary duty requires (1) the existence of a fiduciary relationship, (2) breach of that duty, (3) causation, and (4) damages. Case law support such breaches are actionable. See Bays v. Theran, 418 Mass. 685 (1990), affirming breach of fiduciary duty can be established via disloyalty, breach of confidentiality, or self-dealing.

---

## SECTION II:  ARGUMENT FOR BREACH OF CONFIDENTIALITY OF A PROSPECTIVE CLIENT

### I. BREACH OF FIDUCIARY DUTIES TO PLAINTIFFS AS PROSPECTIVE CLIENTS
#### A. Undisputed Establishment of Prospective Client Relationship

31. The 1-9-17 consultation clearly established a prospective attorney-client relationship under any applicable standard. Bisasor contacted Donais seeking legal advice regarding a specific legal matter.  Donais engaged in a substantive consultation lasting 7 minutes. Confidential information was disclosed for the specific purpose of evaluating potential representation. An attorney-client relationship existed because Bisasor divulged confidences and secrets to Donais as an attorney and because Bisasor believed that he was approaching Donais as an attorney in a professional capacity with the intent to secure legal advice and did secure legal advice. Bisasor reasonably understood that the call with Donais was confidential. Thus, Bisasor's intent as a prospective client was that of an attorney/client relationship.

32. Further, whether or not employment occurs, preliminary discussions between Donais as an attorney and Bisasor as a prospective client was subject to attorney client privilege. Thus, the fiduciary relationship existing between Bisasor and Donais extended to preliminary consultation with Bisasor as a prospective client with a view to retention of Donais as lawyer, notwithstanding that actual employment did not result. Thus, Donais' duty to preserve confidentiality extended to this preliminary consultation with Bisasor as a prospective client even though actual employment does not result. In this instance, it is clear that Bisasor engaged in preliminary discussions with Donais related to legal analysis of potential claims that could be brought in connection with the landlord-tenant matter involving the Homewood defendants during the tenure of plaintiff's stay. Although there was no further engagement or retainer after that preliminary client conversation, any communication made during this preliminary consultation is protected by the duty of confidentiality and by the attorney-client privilege. Thus, this preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though Donais was not ultimately retained.

33. Bisasor's statement that he shared confidential information and sought legal advice from Donais is corroborated by telephone records indicating there were at least two telephone calls involved, one on 1-6-17 where Bisasor left a voicemail for Donais, and one on 1-9-17 where Donais called back Bisasor, which lasted 7 minutes. This constitute sufficient circumstantial evidence to show some confidential information was revealed to Donais in order for him to evaluate plaintiffs' case. Yet, the information shared does not have to be some deep dark secret for it to be confidential. Further, the law does not require the information shared to be confidential in the strictest sense of the word. The law simply requires that a person provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter, and he/she is a prospective client. The law simply requires that "even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information." It does not say confidential information. It simply says any information provided t the lawyer with the intent of forming an attorney-client relationship is protected and shall not be revealed. At a minimum, it is undisputed that Bisasor shared information with Donais with the intent of forming an attorney-client relationship and that Donais received and reviewed that information.

34. Thus, Bisasor was a client for purposes of the initial consultation, and at a minimum, was a prospective client, and he became a former client once the engagement went no further after the initial consultation. Rule 1.18 is very clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them. Thus, Donais' relationship with Bisasor, that of attorney/client, was that of a fiduciary. Donais owed an ethical and fiduciary duty to Bisasor. Bisasor placed trust and confidence in Donais. This gave rise to fiduciary duties of the attorney toward Bisasor. Donais owed Bisasor a fiduciary duty to act at all times in good faith and in Bisasor's best interests, and to not expose Bisasor to any unnecessary risk or peril. Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship. The 1-9-17 legal advice consultation with Bisasor triggered a fiduciary relationship with ongoing duties of confidentiality.

35. Most significantly, Judge Moore's finding that an attorney-client relationship existed provides judicial recognition of this relationship. This finding necessitated Donais's withdrawal from representing the adverse party, confirming that the consultation created enforceable ethical/fiduciary obligations.

**B. Establishment of Confidence and Trust**

36. Throughout the 1-9-17 consultation, Donais engaged in conduct that demonstrated his professional expertise and willingness to consider plaintiff's case. Donais received from Bisasor the factual circumstances underlying their legal

8

claims and engaged in a substantive analysis of their situation. This conduct created a reasonable expectation on the part of plaintiffs that Donais was evaluating their case for potential representation and that the information being shared would be treated with the confidentiality and professional care accorded to attorney-client communications.

37. Under NH law, a fiduciary relationship exists wherever influence has been acquired, and abused or confidence has been reposed and betrayed. During the 1-9-17 consultation, plaintiffs reposed confidence in Donais by sharing sensitive information about their legal predicament, including details about disparate treatment and their vulnerable position facing imminent ejection from their rented unit, among other things. This disclosure of confidential information in the context of seeking professional legal advice created the necessary foundation of trust and confidence that characterizes a fiduciary relationship. The consultation between Donais and Bisasor entailed a substantive exchange of information for the specific purpose of obtaining legal advice/representation. Donais's conduct during this consultation, including his willingness to listen to the details of their case and engage in discussion about the legal issues presented, created reasonable reliance on his professional expertise/judgment. This reliance was furthered by the referral relationship with Attorney O'Brien, who specifically identified Donais as possessing the expertise to handle their type of legal matter.

### C. Acquisition of Influence and Confidential Information

38. During the 1-9-17 consultation, Donais acquired influence over Anderson and Bisasor's legal situation by positioning himself as a knowledgeable attorney capable of evaluating their claims and providing professional guidance. The very act of consulting with Donais, particularly given the referral context and the urgent timeline of their legal predicament, placed Anderson and Bisasor in a position of dependency on his professional judgment and expertise.

39. Donais acquired material confidential information during this consultation, including specific details about Anderson and Bisasor's allegations of racial discrimination (through Obrien), the nature of their dispute with Homewood Suites, their concerns about improper charges, and their immediate need for legal intervention to prevent unlawful ejection. This information was provided with the reasonable expectation that it would be treated confidentially and used solely for the purpose of evaluating whether Donais would undertake their representation.

40. The confidential nature of this information is demonstrated by its sensitivity and potential harm that could result from disclosure to adverse parties. The information related directly to plaintiffs' legal strategy, their vulnerabilities in the dispute, and their assessment of the strengths/weaknesses of their potential claims. Under NH Rule of Prof. Conduct 1.18, even when no attorney-client relationship ultimately ensues, a lawyer who received and reviewed information from a prospective client owes duties of confidentiality and loyalty that create fiduciary obligations.

9

41. NB: As stated in the accompanying Affidavits of Andre Bisasor, Bisasor was assured by Donais the conversation would be confidential [NB: The same assurance was made by Obrien to Anderson, which extended also to Donais as Donais was consulted by Obrien as part of the prospective client evaluation process]. Beyond that, even without the averments in the accompanying affidavits, the circumstances demonstrate that Bisasor would have had no reason to believe that his conversation with Donais would not be kept confidential. Bisasor contacted Donais as an attorney seeking legal advice from an attorney, leaving a voicemail that made clear he was seeking legal advice/assistance, and Donais then listened to the voicemail and called Bisasor back to have a conversation with Bisasor about the issues that Bisasor identified on the voicemail. Upon calling Bisasor, Donais asked Bisasor to explain the situation identified on the voicemail. Bisasor then shared information about his legal situation with Donais as an attorney. These facts alone demonstrate that Bisasor would've had some expectation of confidentiality. Why would Bisasor discuss/share his legal situation with Donais, as an attorney, but not expect any confidentiality at all? And why would Donais expect that what Bisasor shared with him as an attorney, in seeking legal advice, wouldn't be protected by confidentiality? So Donais expects that he can solicit prospective clients to contact him and discuss their situations with him, and then he is free to divulge everything they tell him to the public or to others? This wholly is unreasonable/erroneous.

### D. Breach of Fiduciary Duties

42. Despite having acquired this position of trust and confidential information, Donais breached his fiduciary duties to Anderson and Bisasor in multiple ways. First, within days of their consultation, Donais agreed to represent Homewood Suites, the very party against whom plaintiffs had sought his assistance. This representation created a direct conflict of interest that violated his duty of loyalty to plaintiffs as prospective clients. Second, and more egregiously, prior to being retained by Akridge, Donais disclosed the confidential information obtained during his consultation with Bisasor to representatives of Homewood and their counsel. On 1-11-17, Donais sent an email to Attorney Terrell, counsel for Homewood, detailing the substance of his conversation with Bisasor, including specific information about the claims plaintiffs intended to pursue. This disclosure violated the fundamental duty of confidentiality that Donais owed to plaintiffs as prospective clients. Third, Donais compounded his breach by subsequently providing a false affidavit on 3-16-17, in which he misrepresented the nature and content of his consultation with Bisasor. By providing false information in this affidavit[2], Donais further betrayed the trust plaintiffs placed in him during/via their consultation.

---

[2] Although the court previously ruled that Donais' March 2017 affidavit cannot be used to recover on defamation claim under NH law, it didn't /doesn't prohibit recovery for a breach of fiduciary claim with respect to breaches of duty done via Donais' March 2017 affidavit.

**E. Abuse of Confidence and Betrayal of Trust**

43. Donais' conduct represents a clear abuse of the influence he had acquired, and a betrayal of the confidence that had been reposed in him. Rather than declining representation of the adverse party or maintaining the confidentiality of the information he had received, Donais chose to use the confidential information obtained from plaintiffs to benefit their opponents in litigation. This conduct violated the most fundamental principles of the attorney-client relationship and constituted a breach of the fiduciary duties he owed to plaintiffs. The harm caused by Donais' breach was both immediate and substantial. Plaintiffs were deprived of confidentiality protections they reasonably expected when consulting with an attorney, and the confidential information provided was used against them in subsequent litigation. This breach of trust undermined their legal position and caused them to suffer damages as a direct result of Donais' misconduct. Donais used his prospective client conversation with Bisasor, to directly inflict harm by defaming Bisasor and accusing Bisasor of falsely/frivolously accusing Donais of race discrimination because he did not take his case. This false accusation against Bisasor sullied Bisasor, with implication that Bisasor was a frivolous liar who plays the race card without rhyme or reason and is to be discredited as an irrational, angry person who wildly hurls accusations of race discrimination when there is no valid reason to do so. This diminished Bisasor's character and discredits him in the eyes of the public/the community. Notwithstanding the fact plaintiffs do not seek recovery for defamatory statements made in Donais' affidavit, plaintiffs here plead that Donais breached his fiduciary duty therewith, intending to defame Bisasor.

44. If Bisasor had never spoken to Donais on 1-9-17 about a prospective client relationship, Donais could not have had the opportunity to fabricate this lie against Bisasor or to use the consultation as a springboard to launch such lies.

45. Donais used his position as a prospective lawyer to Bisasor as a prospective client as a basis to injure Bisasor by falsely accusing him of falsely accusing Donais of race discrimination in the context of a conversation wherein Bisasor was seeking to legal advice/assistance from Donais, and wherein Bisasor shared with Donais certain confidential information, thus taking Donais into his confidences and placing his trust in Donais. Donais exploited and abused the trust that Bisasor extended to Donais in seeking to have a conversation with him about plaintiffs' case against the Homewood defendants. Donais turned around and used that private privileged conversation as a basis to fabricate lies on Bisasor. This is an utter abuse and travesty that has befallen Bisasor on account of unwittingly and unsuspectingly making the mistake of speaking with a dishonest lawyer like Donais. This is a breach of fiduciary duty. This also goes to the conflict of interest. Donais' conflict of interest further created the fuel by which he found it useful to falsely accuse

11

Bisasor, in order to harm and damage Bisasor (and his spouse), in the interest of protecting and advancing his own interests and the interests of the opposing party. See accompanying affidavits for further explication of attendant facts.

### F. Clear Breach of Confidential Duties

46. The breach of fiduciary duty is established through Donais's undisputed disclosures of consultation information to unauthorized 3rd parties. These disclosures also include those made years after the 1-9-17 consultation and were made to family members, colleagues, and community organizations (which were also outside of any judicial context).

47. NH Prof. Conduct Rule 1.6(b)(3) permits attorneys to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to defend the lawyer or the lawyer's employees or associates against a claim or charge of wrongdoing." However, this exception is narrowly construed and does not authorize wholesale disclosure to private parties for purposes of damaging a former client's reputation.

48. Under New Hampshire law, the existence of a fiduciary relationship does not require a formal attorney-client retainer or fee arrangement. Rather, fiduciary duties arise whenever confidence has been reposed and influence has been acquired in the context of a professional consultation. Thus, a fiduciary relationship existed between Donais and plaintiffs based on their consultation and the confidence reposed in him; Donais breached his fiduciary duties by disclosing confidential information to adverse parties and representing those adverse parties; Plaintiffs suffered damages as a result of this breach; and (4) Donais's breach was the proximate cause of their damages. Donais's conduct in engaging in a substantive consultation with plaintiffs, acquiring confidential information, and then using that information to benefit their adversaries constitutes a textbook example of breach of fiduciary duty. Thus, Plaintiffs' assert that a fiduciary relationship existed between the plaintiffs and Donais because Donais had acquired influence with respect to Bisasor which was abused by Donais, and Bisasor reposed confidence in Donais but was betrayed, and because plaintiffs relied on Donais for legal advice for their landlord-tenant matter. Donais later withdrew from representing Homewood, after a judge had determined that Donais had violated ethical duties/breached fiduciary duty. The 1-18-17 court hearing transcript shows that Donais was caught red-handed and that a circuit court judge found that Donais breached fiduciary duty and thus was required to be disqualified/ to withdraw from the case. This by itself is slam-dunk proof that Donais is liable for breach of fiduciary duty, as Donais' own withdrawal serves as his own admission that he was liable for this wrongdoing.

49. It should be noted that it was Donais who called Bisasor on 1-9-17 (in returning Bisasor' call/voicemail from 1-6-17). Donais could have chosen not to call Bisasor back. The fact that Donais initiated the call on 1-9-17 signaled to Bisasor that Donais was interested in pursuing an attorney-client relationship. Bisasor had every right to believe that such a call

12

could lead to full representation by Donais. The fact that Donais eventually declined to take case is irrelevant to the conflict of interest analysis under Rule 1.18 and to analysis of whether Donais violated his duties under Rule 1.18.

50. It should also be noted that according to Dave Akridge's affidavit, at a time prior to representing Homewood, Donais emphatically 'with conviction" assured Akridge that there is no problem with representing Homewood as the adverse party to plaintiffs, because "he did not take the case" and had "brief conversation" [3]. But Donais knew that the standard under Rule 1.18 is not whether he took the case or had a brief conversation. The standard for Rule 1:18 conflict/disqualification is whether he "received and reviewed" information from someone seeking to form an attorney client relationship. It should be further noted that Donais did not have to take the case to represent the Homewood defendants. Similarly, the Homewood defendants were not obligated to hire Donais. Terrell testified on 4-27-17 that he considered the situation with Donais to be a "flag", but yet still Terrell chose Donais as local counsel and Donais still agreed to be local counsel for Homewood, notwithstanding the conflict/potential conflict and the fact plaintiffs would likely object. See Cardona v. General Motors Corp., 942 F. Supp. 968, 978 (D.N.J. 1996) ("by proceeding in reckless disregard of the…Rules of Professional Conduct," firm must suffer "self-inflicted wound").

51. It is evident that Donais had a strong desire to take the Homewood case as defense counsel, so he breached his duty of confidentiality in so doing. Donais's desire to represent an adverse party, no matter how strong, does not allow him to simply jettison the rules of conduct or his fiduciary obligations. Moreover, according to Terrell, Donais did not disclose[4] to Terrell the conversation Donais had with Robert Obrien about this case. Donais did not do that because evidently, he so wanted to be retained by Homewood Suites as local counsel for the defense. Donais was not concerned about violating the law, the rules of ethics, his fiduciary obligations or the plaintiffs' rights.

52. Donais also admitted that, during the conversation he had with Bisasor on 1-9-17, Donais purportedly[5] told Bisasor that one of the reasons he did not want to take the case was because "there might be a potential conflict". This means that during that conversation Donais realized that there was a conflict, because he knew that Homewood suites of Nashua was part of the dispute and that he had a previous client relationship with Dave Akridge. The only basis for Donais to

---

[3] See **page 3 and paragraph 16** in **Exhibit 20 - Affidavit of Dave Akridge dated 5-4-17.** See also all other exhibits attached including affidavits.
[4] See **page 228 line 1-25** in **Exhibit 35 – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court.**
[5] Yet, Donais didn't tell Bisasor that there might be a potential conflict. But the fact that Donais admits to saying that, shows that Donais knew it at the time (or it at least shows that he was thinking it). Yet, Donais never stated it to Bisasor. If he had stated that, Bisasor would have definitely asked him the basis for the suspected potential conflict.

have known, realized or suspected that there was a conflict, was for Donais to have realized or suspected that Homewood Suites was involved. How else could he have known that there was a conflict or potential conflict?

**G. More on Undisputed Establishment of Breach of Fiduciary Duty By Donais**

53. Donais and Bisasor had a fiduciary relationship. Donais' relationship with Bisasor, that of attorney/client, was and is fiduciary. Donais owed an ethical and fiduciary duty to Bisasor, including to act at all times in good faith and in Bisasor's best interests, and to not expose Bisasor to any unnecessary risk or peril. See Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 442 (1980) ("[T]he relationship between attorney and client ... is fiduciary as a matter of law"); Vanacore v. Kennedy, 86 F.Supp.2d 42 (D.Conn. 1998) (the relationship between attorney and client is one of trust and confidence, and gives rise to fiduciary duties of the attorney toward the client).

54. The 1-9-17 communication/consultation with Bisasor triggered a fiduciary relationship with ongoing duties of confidentiality. Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship.

55. As a prospective client, Bisasor shared confidential information with Donais during the 1-19-17 consultation. Bisasor reasonably believed he was engaging in a confidential discussion. Donais received confidential information as an attorney from Bisasor who was seeking legal advice and thus he had a right to believe that Donais, as an attorney, would respect such confidences. Bisasor was thus a prospective client entitled to confidentiality and loyalty. Donais breached confidentiality obligations owed to Bisasor as a prospective client by disclosing privileged information to harm Plaintiff's interests, and further exploiting it for self-protection, which is conduct that violated trust.

56. However, in addition to the breaches in 2017, Donais later on in 2019 and 2020, further disclosed private client information to his wife, son, family members, and friends and to the others including members of the Manchester NH Crime-Line board, etc. These breaches of fiduciary duty, that occurred outside the context of any judicial proceeding, by Donais include disclosure of confidential client conversation information about plaintiffs to: a) Akridge in 2017 prior to being hired by Akridge to represent Homewood; b) his wife in 2017, 2019 & 2020; c) his sons, Garret & Aiden, in 2019 & 2020; d) the Manchester NH Crime-Line board in 2019 & 2020; e) the Manchester NH police in 2019 & 2020.

57. Donais breached his duty by disclosing confidential information, fabricating false allegations, and misusing the relationship to retaliate against plaintiffs, which further goes to the malicious and egregious nature of his conduct.

58. Donais engaged in a pervasive, widespread, systematic and deliberate pattern of abandoning, violating and exploiting his fiduciary obligations to Plaintiffs for his own self-interest, and constituted a willful dereliction of duty designed to exploit Plaintiffs' vulnerability as African-American, and to conceal evidence of Donais' own misconduct. Donais'

14

concealment of his divulging of plaintiff's confidential client conversation to others, further constitutes a breach of the duty to protect client interests post-termination (In re Jones, NH Sup. Ct., No. 2021-0123, 2021 WL 4472142). Attorneys must prioritize client interests over self-protection. By divulging and exploiting confidential information, Donais engaged in self-dealing barred by Kanamaru, 100 Mass. App. Ct. at 75.

59. Under New Hampshire law, attorneys owe clients and former clients an unwavering duty of confidentiality and transparency, even after termination of a client relationship. Donais' conduct breached this duty at every turn, inflicting severe financial, procedural, and emotional harm. Donais' acts also includes breach of fiduciary duty by divulging information (and fabricated version of it) obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, scandalizing, defaming and harming the prospective client.

60. It was malicious act and represented an attempt to harm plaintiffs as former prospective clients. Donais' intent was clear: to hurt, damage, harm, oppress, defame, scandalize the plaintiffs. When prospective clients meet with lawyers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined representation or because the lawyer joined the legal team of the opposing party. This is forbidden by the rules[6]. So, even if Donais maintains that his allegations of what Bisasor said in the 1-9-17 conversation were true (which it was not), he still breached his duty/obligations to plaintiffs as former clients or former prospective clients.  Hence, Donais' breaches are multiple, layered and intertwined with a web of layered misconduct making a very serious combination of violations of ethics that rises to the level of extreme seriousness which is further compounded by further breaches/wrongs that flowed from that to subsequent/continuing events thereafter.

61. Donais breached his fiduciary duty to plaintiffs by breaking his obligation of confidentiality, and acting against plaintiff's interest as a former client and seeking to harm and injure plaintiff's rights. Donais owed a duty to Plaintiffs[7,] via the fiduciary relationship that included confidentiality and an obligation to Bisasor to act with the utmost good faith and

---

[6] Donais' conduct outlined herein, in addition to Rule 1:18, has also violated Rule 8.4 section (a), (b), and (c), in that his false statements reflects adversely on the lawyer's honesty and trustworthiness, and it would also constitute conduct involving dishonesty, fraud, deceit and misrepresentation. Similarly, the fabrication of the race discrimination accusation would further be a violation of Rule 8.4 section (g), in that his false statements were motivated by racial animus and were intended to wrongly embarrass, harass and burden Plaintiff.

[7] Donais owed a duty to plaintiff. There was a fiduciary relationship. Plaintiff was a prospective client. Plaintiff was engaged as a prospective client. Plaintiff was given legal advice. Plaintiff shared confidential information. A prospective attorney client relationship was formed. This is what a judge found (Judge Paul Moore in Nashua district court in NH). This is why Donais withdrew as attorney in that case.

fidelity as a fiduciary agent; to not take advantage of Bisasor and place him at a disadvantage. See Goldman v. Kane, 3 Mass.App.Ct. 336, 341 ( (1975) (attorney must do nothing to take advantage of or disadvantage the client).

62. Donais had a duty of trust and loyalty to Bisasor, to not to betray Bisasor, to not subvert his (Donais) obligation to Bisasor, to not act deceitful. Donais's fiduciary obligation to Bisasor continued after the conclusion of the client conversation between Donais and Bisasor in 2017.

63. In this matter, Donais violated his duty to the plaintiffs in several ways: a) Donais discussed the client conversation with the plaintiffs with several people. These include his wife, Mary Donais, his sons Garrett & Aiden Donais, and the Manchester NH crime-line board, as well as friends and connections, and also the Manchester NH police. These communications with his family, friends, connections, colleagues, violated the rights of the plaintiffs as he had no right to disclose client confidential communications to any of them for any reason; b) Donais also voluntarily engaged in discussion with the Manchester NH police about the confidential 1-9-17 conversation and the 1-5-17 consultation; c) Donais also had a duty to inform plaintiffs, as former clients, that Donais was going to or had discussed such information with others. Instead, Donais actively hid those occurrences from plaintiffs. The act of hiding such from plaintiffs is also a breach of duty to plaintiffs as he is required to seek consent before any such disclosure.

64. As a result of Donais's breaching conduct, plaintiffs sustained injury including lost opportunities, emotional distress, and mental anguish, and the damages sustained were directly, proximately and solely caused by Donais's breach of his duty and his intentional, reckless and negligent acts, which were committed with intent, oppression, fraud and/or neglect, as set forth above, and by doing all of the acts and omissions as herein alleged.

65. NB: It should be noted that Donais did not need to defend himself, for example, with the Manchester crime-line board, his private personal family members, friends and colleagues, etc. The only time and place that the rules contemplate violating confidentiality is in an ADO proceeding against the said attorney or in a proceeding in court where the defendant is called upon to defend himself or herself. None of these things apply here based on the facts that occurred.

66. NB: Based on the above case law, Donais also violated (prospective) attorney-client privilege when he in his March 2017 affidavit stated the false accusation that Bisasor accused him of race discrimination for not taking his case. Even if Donais was telling the truth about that accusation (which he was not), Donais had no need to disclose that (false) statement since it bore no relevance to the motion to disqualify Terrell and since it clearly was an inflammatory and disparaging statement which would only serve to (wrongly) embarrass, annoy or scandalize Bisasor.

16

## II. RELEVANCE OF FALSE STATEMENTS TO BREACH OF FIDUCIARY DUTY CLAIM
### A. Fundamental Distinction Between Defamation and Fiduciary Duty Claims

67. Although this court determined Donais's March 2017 affidavit had absolute privilege protection from defamation claims under NH law, this ruling didn't preclude recovery for breach of fiduciary duty involving the same false statements.

68. Courts routinely recognize that breach of fiduciary duty claims are "separate and distinct" from other tort claims, including defamation, when premised on conduct involving a culpable state of mind beyond mere negligence. The same principle applies when distinguishing fiduciary duty breaches from defamation claims, as each addresses fundamentally different legal wrongs with distinct elements and protections. The breach of fiduciary duty claim in this case focuses on Donais's abuse of the trust relationship itself and his violation of confidentiality obligations, not merely the publication of false statements to third parties. Fiduciary duty claims arise when an attorney either betrays a confidence or acquires and abuses a position of influence. Donais's fabrication of false statements about confidential consultation content constitutes both a betrayal of confidence and an abuse of his position of influence as a trusted legal advisor.

### B. Absolute Privilege Does Not Extend to Fiduciary Duty Breaches

69. The absolute litigation privilege serves the narrow purpose of promoting candor in judicial proceedings. However, this privilege doesn't immunize claims arising from breaching underlying fiduciary obligations. A fiduciary cannot invoke litigation privilege to escape liability for breaching confidentiality duties owed to former clients. The privilege may protect publication aspects relevant to defamation, but doesn't excuse underlying independent breach of trust violations.

### C. Confidentiality Breach Constitutes Core Fiduciary Violation

70. Under New Hampshire Rule of Professional Conduct 1.18, prospective clients are entitled to the same confidentiality protections as actual clients. Rule 1.18(b) provides that "a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information" except under limited circumstances. Donais's fabrication of false allegations about Bisasor accusing him of racism violates this fundamental obligation. First, Donais revealed confidential information obtained during consultation by creating false statements about its content. Second, he used this information to harm Bisasor by portraying him as someone who makes frivolous racism accusations. Third, he weaponized the confidential relationship to undermine Bisasor's credibility as a discrimination plaintiff. Each of these acts constitutes a separate breach of fiduciary duty independent of any defamation analysis.

### D. Strategic Exploitation of Fiduciary Position

71. The timing & content of Donais's fabricated racism allegation reveal egregious misconduct that transcends ordinary defamation. During the 1-18-17 hearing, when memories were fresh, Donais never mentioned any racism accusation made in the 1-9-17 call. However, months later, in his affidavit, he suddenly "remembered" this inflammatory detail.

17

This demonstrates deliberate fabrication designed to exploit his position as a former attorney to damage client credibility. Fiduciary duties include obligations of candor & good faith that prohibit using confidential relationships to harm former clients. Donais's conduct represents the antithesis of these obligations; he manufactured lies about confidential communications specifically to undermine vulnerable former prospective clients raising legitimate discrimination claims.

### E. Policy Considerations Support Separate Recovery

72. Fiduciary duty claims focus on breach of trust rather than publication of statements. Defamation requires publication, falsity, and reputational harm, while fiduciary duty breach requires relationship, breach of duty, causation, and damages. Breach of fiduciary duty claims address exploitation of confidential information obtained through prospective attorney-client relationship, regardless of whether exploitation occurs via privileged or unprivileged statements. Thus, while absolute privilege may shield Donais from defamation liability for false statements in his affidavit, it cannot excuse his fundamental breach of fiduciary duty in fabricating false statements about confidential consultation content and using his position as a trusted legal advisor to harm his former prospective client's credibility and legal standing.

### III. FURTHER CASE LAW SUPORTING FINDING OF BREACH OF DUTY TO PLAINTIFFS

73. In Fierro v. Galluci (EDNY 2007), the defendants in that case argued that the motion to disqualify should be denied because: (1) there was never an attorney-client relationship established between Dollinger and Fierro; (2) there was no indication there were any "secrets" or "confidences" discussed between Dollinger and Fierro; and (3) even if such secrets or confidences were discussed, Dollinger had no recollection of any such conversations. Thus, the defendants in that case contended there was no conflict of interest in continuing to represent the defendants in that lawsuit. However, that Court concluded that plaintiff made a sufficient showing to warrant disqualification of the Dollinger Firm as follows:

> "Fierro's statement in his affidavit — that he consulted with Mr. Dollinger in late 2004 regarding the subject matter of this case, including potential claims, potential defenses, and relevant case law — is corroborated by a phone message and phone records maintained by the Firm. Thus, this preliminary discussion regarding the subject matter of this litigation fell within the umbrella of an attorney-client relationship and was privileged. This prior consultation with Mr. Fierro regarding the exact subject matter of this litigation is sufficient to warrant disqualification. Although Mr. Dollinger does not recall any client confidences revealed to him during the conversation, his failure to recall such conversations does not vitiate the otherwise clear basis for disqualification."

74. Further, the Fierro court also found disqualification was warranted because (1) plaintiffs established that an attorney-client relationship existed as to Fierro's preliminary discussions, (2) the matters were not just "substantially related" to the litigation, but were identical, and (3) it was likely confidential information was shared with Dollinger during these conversations. Although the defendants point to the several factors in arguing there was no attorney client relationship (including the fact that the preliminary conversations were brief, the Dollinger Firm never opened a file related to Fierro, and the Dollinger Firm never charged any fees for the initial consultation), none of those factors, individually or

18

collectively, is necessarily dispositive in analyzing whether there was an attorney-client relationship. See United States v. Devery, No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship.").

75. Furthermore, the Fierro court found that whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to the attorney client privilege. Moreover, the Fierro court stated that, in finding that there was a substantial relationship between Fierro's preliminary consultation and the current litigation, a rebuttable presumption is created that Fierro imparted to Dollinger confidential information relevant to the present litigation. See Arifi, 290 F. Supp. 2d at 350. A party moving to disqualify opposing counsel "is not required to prove that [opposing counsel] had access to confidential information while representing the [moving party] but only that he was likely to have had such access." Id.  It should further be noted that, in the Fierro case, there were telephone records indicating at least 2 telephone calls on 12-14-04 between Dollinger and Fierro, one of which lasted just about 10 minutes. This, among other things, provided sufficient circumstantial evidence for the Fierro court to conclude it is likely that some "confidences" or "secrets" were revealed to Dollinger in order for him to evaluate the case.

76. Although, in the Fierro case, Dollinger stated he had no recollection of any conversation with Fierro, the Fierro court found his failure to recall the conversation didn't change the analysis. NB: Another court held that a former attorney's assertion that he couldn't remember any confidential information conveyed to him during the short representation of one of the defendants, didn't cure the professional responsibility conflicts which were present. Arifi, 290 F. Supp. 2d at 350 ("While there is no reason to doubt Green's claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had access to such information during the short representation."); see also Schwed v. Gen. Elec. Co., 990 F. Supp. 113, 117 n. 2 (N.D.N.Y. 1998) (where attorney claimed he didn't possess confidential information and didn't recall any discussions regarding the case, the third prong of the 2nd Circuit test was still met because there was a likelihood that the attorney had access to confidential information).

77. Similarly, in this case, Terrell testified at a preliminary injunction hearing on 4-27-17 that he didn't recall what he and Donais discussed and that he may have had conversations with Donais (about the Donais-Bisasor conversation), but somehow he doesn't recall whether he had such conversations or if information to came to him (Terrell) from Akridge.

78. Also, the Fierro case is similar to this case, in that defense counsel here claims that there was never an attorney-client relationship established between Donais and Bisasor and that there was no "confidences" shared from Bisasor to

19

Donais. Although Bisasor vigorously refutes those assertions (which refutations are supported by incontrovertible evidence), the consideration of such refutation by Bisasor is not necessary for the correct legal analysis to be applied. Based on the above case law, in the Fierro case, the correct standard is that, regardless of whether it can be proven that confidences were or were not shared, it is the fact that confidences could have been or were likely to have been shared that establishes the conflict (or the appearance of one). Based on this standard, Donais definitely had a conflict, and he breached fiduciary duty when he shared client information, not only with Akridge, and with Terrell, but also in statements submitted to two NH courts months after he [Donais] was disqualified. Similarly, as it pertains to infection of Terrell, Terrell claims there was never an attorney-client relationship established between Donais and Bisasor; that there was no "confidences" shared between Donais and Terrell; and that even if such confidences were discussed, Terrell does not recall whether any such conversations occurred. Thus, similar to the finding in the Fierro case, Terrell's failure to recall such conversations does not vitiate the otherwise clear basis for establishment of a conflict or appearance of one. See again Fierro v. Gallucci, 2007 U.S. Dist. LEXIS 89296 (E.D.N.Y. Dec. 4, 2007) (disqualification warranted even though lawyer simply could not remember phone calls). Thus, it is clear from the definitions in the Fierro case, that information shared with and later disclosed by Donais (including Bisasor's purported accusation of racism against Donais) would certainly qualify as "confidences" (i.e. "information protected by the attorney-client privilege under applicable law") and as "secrets" (i.e. "other information gained in the professional relationship that the client requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.").

79. These cases from several state and federal courts around the country support the conclusion that there was a conflict of interest that existed with Donais (and also with Terrell), and that Donais violated the confidences/secrets shared by Bisasor when he communicated statements made (or purportedly made) by Bisasor, to Akridge and Terrell prior to being hired, and to other private persons, and also to two NH courts, in order to harm, injure, disparage Bisasor.

80. In In re Sharplin, Jr., 2006 Tex. App. LEXIS 6834 (Tex. App. Aug. 3, 2006), the court was dealing with a lawyer who changed firms, and citing Nat. Med. Enterprises, Inc. v. Godbey, 924 S.W.2d 123 (Tex. 1996), said there was an irrebuttable presumption he shared information from the earlier case with his new partners and disqualified the firm.

81. Similarly, there should be an irrebuttable presumption that Donais shared confidences from Bisasor with Akridge and Terrell either directly, or indirectly through Akridge. This irrebuttable presumption is warranted because invariably in these types of situations, rarely will an attorney fall on his own sword and admit he did wrong or violated the rules.

20

82. Moreover, the predictable response by lawyers, typically voiced in such situations, in saying "I don't recall" or otherwise outright denials that confidences weren't shared, often makes it difficult to get to the bottom of what was shared. Moreover, it is often difficult for affected parties to prove that secrets were shared because that would involve disclosing those secrets to the court, which presents a catch 22 scenario or a Hobson's choice to require that, in order to vindicate his rights and harm from a conflict, a party must disclose sensitive secrets (protected by attorney-client privilege) to the court, by disclosing to the court such secrets shared with conflicted counsel (which secrets could prejudice the court against the client). This is why the irrebuttable presumption of sharing of confidences is warranted in such situations.

83. Hence, in a situation where lead counsel is in a position to receive client confidences of the aggrieved party, a sharing of confidences should be presumed, even if only by inadvertent disclosure. And the fact that there could have been confidences shared, means that there is at least an appearance of impropriety and of impermissible conflict/breach.

84. This is underscored by the Fierro court's finding that "the dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." See Fierro, 2007 WL 4287707, at *8 (quoting Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973)). See Best Western Int'l v. CSI Int'l Co., 1995 WL 505565, at *2 (S.D.N.Y. Aug. 25, 1995) ("**misconduct need not be egregious: there need not be intent, bad faith, or actual disclosure of confidential information. Conduct that merely suggests that one side might enjoy the disclosure of confidential information may warrant disqualification.").**

85. Yet, here, both Donais and Terrell were fully aware of the conflict issue before Donais was hired, and they both made knowing/calculated decisions to accept the risk of conflict in violation of Rule 1.18, as well as knowing/calculated decisions not to inform plaintiffs about it. The law doesn't require plaintiffs to suffer risks that their confidential information could be used against them and the rules do not shield Donais (or Terrell) from their knowing calculated but risky decision to proceed in violation of the rules of conduct (Terrell agreed to settle the case, leaving only Donais).

86. Further, plaintiffs' burden is not to show Donais did in actuality taint or harm the case with confidences he received from them, but instead to show that Donais had a conflict, that he was aware of the conflict, which required him to abstain from taking the Homewood case, whose interests were materially adverse to plaintiffs' legal interests, that Donais' conflict posed a risk of prejudice or taint against plaintiffs and that Donais knew of this risk but proceeded to sign on as defense counsel anyway. See Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981) (test is whether

conflict "poses a significant risk of trial taint," not that the trial would be tainted"). See also Hempstead Video, 409 F.3d 127 at 133 ("One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client."); See also Cheng v. GAF Corp., 631 F.2d 1052 (2d Cir. 1980)(where there is "too high a risk of inadvertent disclosure of confidences," disqualification is appropriate.").

87. The above case law highlights the prospect that Donais (and by extension Terrell/Homewood) benefited from information about an adverse party obtained through preliminary consultation with local counsel, who was subsequently disqualified, and who breached his duty to plaintiffs by representing the adverse party and sharing attorney-client information with them. Donais indisputably received information from plaintiffs, going to the core issues adjudicated in the case. This led to unacceptable appearance of impropriety which cannot be eliminated by Donais saying he received no confidential information (or by the spouting of "I don't recall" retorts by Terrell in the 4-27-17 hearing).

88. The issues implicated by Donais' consultation directly with Bisasor and indirectly via Obrien, are "substantially related" to the issues implicated by Donais' representation in defending against those issues in the Homewood case. See Chinese Automobile Distributors of America LLC v. Bricklin, 2009 WL 47337, at *2 (S.D.N.Y. Jan. 8, 2009). Similarly, the Fierro court also found that "Client confidences are not so inert as to limit their usefulness to defined legal disciplines or practice areas. They are fungible, and once disclosed can be applied by an experienced lawyer in ways too numerous to anticipate[.]" See Fierro, 2007 WL 4287707, at *8. Moreover, the 2nd Circuit has held that "it is unclear to us how disclosures, admittedly inadvertent, can be prevented" where there is a "continuing danger that [the attorney] may unintentionally transmit information he gained through his prior association" with a disqualified counsel. Id. at 1058. Numerous other courts have held similarly. See Crudele v. New York City Police Department, 2001 WL 1033539, at *3-4 (S.D.N.Y. Sept. 7, 2001) (raising concerns about possibility of unintentional breaches of client confidences").

89. Similarly, in preparing his affidavit for use in the district court and superior court in March, April and May 2017, Donais further engaged in consultation with Snow and Terrell about the case and about what was discussed with Bisasor and what Bisasor shared, as well as what Obrien shared. All of this continued consultation and involvement of Donais in the case, even though he had been disqualified, further created a risk of harm to plaintiffs. Donais should have stayed away from the case after being disqualified in January 2017. The purpose of Donais' disqualification was to prevent further communication or tainting of the case from him due to his conflict of interest arising from the communications

22

he had with plaintiffs. By continuing to be involved/provide input (including his disparaging statements about Bisasor), Donais did an end run around the purpose of Donais' disqualification in the first place. This is a further breach of duty.

90. Donais wants to have it both ways. On the one hand, Donais has asserted, in one place or another, that he did not know that Bisasor's case was the same case as Anderson's case prior to the 1-18-17 hearing in district court (which has been established as not true). Similarly, in other statements, Donais has tried to give the impression that he only learned there was a conflict when Berry contacted him on 1-17-17 by phone and then further shown in the court hearing on 1-18-17. Yet on the other hand, Donais has claimed that, although he shared with Akridge and Terrell (on or before 1-11-17) that he [Donais] had a conversation with Bisasor, still he [Donais] did not share anything much which could have resulted in a taint on the case by infecting co-counsel Terrell.  Donais [and by extension Terrell] were thus trying to have their cake and eat it too. Everyone was trying to cover their own rear ends. Terrell claimed raised concerns on this "flag"[8] before he proceeded to hire a potentially conflicted local counsel. The same thing with Akridge i.e. Akridge purportedly asked Donais if there is going to be a problem, but according to Akridge, Donais emphatically 'with conviction" assured Akridge that there is no problem because "he did not take the case" and had "brief conversation"[9]. But Donais knew that the standard under Rule 1.18 is not whether he took the case or had a brief conversation, but whether he "received and reviewed" information from someone seeking to form an attorney-client relationship. The result was serious prejudice to plaintiffs, who shouldn't have been put in the position of having client conversations shared with Donais being shared with Terrell or others, or otherwise, used against them[10] .

---

## SECTION III:  CONCLUSION

91. It should be noted that Donais not only disclosed the client conversation with Bisasor to Akridge, Terrell (Homewood) before being hired by them, but then he divulged it publicly in two courts, and then to his family members, non-profit board members and the police, including years later. All of these are separate incidents of breach of fiduciary duty.

92. The undisputed facts establish Donais breached fiduciary duty as a matter of law. No genuine factual disputes exist regarding the consultation and the improper unauthorized disclosures made. Partial summary judgment will serve judicial efficiency by resolving this clear-cut professional misconduct claim, allowing remaining proceedings to focus on damages and other disputed issues. See accompanying affidavits of Bisasor and Anderson and accompanying exhibits.

---

[8] See **page 224** in **Exhibit 35 – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court.**
[9] See **page 3 and paragraph 16** in **Exhibit 20 - Affidavit of Dave Akridge dated 5-4-17.** See also all other exhibits attached including affidavits.
[10] See **Exhibit 33 – Case of Fierro v. Gallucci (2007) showing legal standard for conflict of interest**. See also all other exhibits attached.

Respectfully submitted,
/s/ Natalie Anderson
NATALIE ANDERSON

/s/ Andre Bisasor
ANDRE BISASOR

Date: October 6, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
ANDRE BISASOR

24