Filed
File Date: 11/6/2025 10:47 AM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH

Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## NATALIE ANDERSON'S MOTION FOR LEAVE TO FILE SURREPLY

1. Natalie Anderson submits this motion for leave to file surreply[1] to Donais's reply to objection to motion to dismiss.

2. Donais's perfunctory objection confirms precisely why surreply briefing is necessary and demonstrates the calculated procedural gamesmanship that necessitates judicial intervention.

## I. INTRODUCTION

3. Rule 13A states: "Surreplies may only be filed with permission of the Court." This provides grounds for the filing of a motion for leave to file a surr-reply. This Court thus permits surreplies in accordance with its rules.

4. A sur-reply is necessary in instance to address new items raised in the defendants' reply, and to clarify certain points for the Court's consideration.

5. The Court has allowed surreplies especially when new items or arguments are raised in a reply that were not addressed in the initial filing. This ensures that affected parties have an opportunity to address such new items.

6. Replies are not intended to raise new items. If it does so, the affected party is entitled to surreply. In this instance, the defendant presented new items including new exhibits. In Donais' reply, which totals 61 pages, new exhibits were introduced which presented new information that Plaintiffs did not have an opportunity to address, potentially prejudicing their case. These new issues include: a) introduction of new exhibits not previously in the record; b) new arguments regarding the merits; and c) mischaracterizations of Plaintiffs' objection. These new issues thus go beyond mere elaboration on previously raised ones and constitute new issues that Plaintiffs have not had an opportunity to address. This creates a situation of manifest injustice. Plaintiffs are now faced with a record containing new evidence and arguments to which they have not been allowed to respond.

7. The Court should grant the Motion for Leave to File Surreply based on the fundamental principle that parties should have a fair opportunity to respond to new arguments or evidence presented in a reply brief. This principle is widely recognized in both state and federal courts across the United States.

8. The New Hampshire Supreme Court has recognized the importance of allowing parties to respond to new issues raised in reply briefs. Fundamental fairness dictates that the plaintiff be afforded an opportunity to respond to new

---

[1] Plaintiff Anderson is only now able to file a motion to sur-reply due to confidential reasons that will be explained separately under seal. It should be noted that Plaintiff Anderson is not aware of any timeline or deadline to file a motion to surreply in the rules. Plaintiff Bisasor submitted a previous motion to surreply but that has not been ruled on. There is no impediment or prohibition for Plaintiff Anderson to file her own separate motion to surreply.

1

arguments made in a reply brief. See State v. Towle, 162 N.H. 799, 804 (2011). The New Hampshire Supreme Court has also emphasized the importance of preventing manifest injustice in its jurisprudence. See State v. Lavallee, 145 N.H. 424, 428 (2000). This manifest injustice/prejudice to plaintiff, implicated by the above, warrants surreply as denying leave would violate due process under Matthews v. Eldridge, 424 U.S. 319 (1976).

9.  Further, in New Hampshire state courts, surreplies have been allowed in various cases when deemed necessary for a full and fair consideration of the issues. See State v. Mottolo 155 N.H. 814, 817 (2007))(the court allowing surreply to address new issues raised in a reply brief).

10. For these and other reasons, the plaintiffs needs to file a sur-reply, without which they may be prejudiced. Plaintiffs are thus entitled to file a sur-reply to the reply filed by the defendant.

11. Similarly, in federal courts, which often provide guidance for state court practice, surreplies are frequently allowed when new arguments or evidence are presented in a reply brief. See Animal Legal Defense Fund v. U.S. Dep't of Agric., 223 F. Supp. 3d 1, 5 (D.D.C. 2016))(holding that a surreply is appropriate when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply).

12. Other courts have recognized the value of surreplies in similar circumstances. See Weems v. Federated Mutual Insurance Co., 220 F. Supp. 2d 979, 983 (N.D. Miss. 2002)(the court allowed a surreply, noting that it "promotes fairness and a full development of the issues").

13. While the Court has broad discretion in managing its cases, this discretion is not unlimited. See State v. Lambert, 147 N.H. 295, 296 (2001))(a trial court's discretion must be exercised in a manner that ensures fairness to all parties).

14. In this case, allowing a surreply would serve the interests of justice by allowing Plaintiffs to respond to new arguments and evidence and to misrepresentations, and ensuring a complete record.

15. The plaintiffs should be allowed a chance to address/rebut the defendant's new exhibits containing the introduction of new documents that was not presented in the initial filing by the defendant. The defendant cannot introduce new matter in a reply and not expect a sur-reply.

16. The plaintiff thus needs an opportunity to address these new item. Defendant also introduced other bad faith, inaccurate, or misleading arguments raised for the first time. For example, defendant asserts the objection to the motion to dismiss "[incorporates] issues raised and resolved in other motions and that it [addressed] many aspects of this proceeding that have no bearing on the validity of the amended complaint". This is a new attack by the

defendant and plaintiff has not had a chance to respond to it. Similarly, the defendant claimed that "the objection fails to recognize the limitations on new causes of action and substantially different evidence established in the order granting leave to amend." This is misleading, untrue and further mischaracterizes, ignores, or sidesteps the plaintiffs' objection, in an obvious attempt to dodge having to address it. This again is a new attack by the defendant and plaintiff has not had a chance to respond to it. A sur-reply is thus needed to show that the defendant has mischaracterized the objection. The plaintiffs did not have an opportunity to respond to these items before. This is fundamentally unfair and it requires a response.

17. Permitting a surreply in this instance ensures that plaintiffs have a fair opportunity to respond to the above prejudicial acts, and would serve the interests of justice, especially given the new items and the misleading and mischaracterizing statements by the defendant.

18. By granting permission to file a surreply, the Court would be acting consistently with its prior practices. This Court has allowed sur-replies in similar circumstances in particular when new issues are raised or when misleading statements are made or when clarification is needed.

19. This motion to file a surreply to the motion to dismiss clearly has merit especially given that Defendant introduced new material in it/attached to it.

## II. SURREPLY IS WARRANTED WHEN NEW EVIDENCE IS INTRODUCED

20. Courts routinely permit surreply briefing when defendants introduce new evidence in reply briefs, i.e., where party has introduced new evidence in its reply brief. It is appropriate to allow the opportunity to reply to that new evidence.

21. Similarly, courts grant surreply where the reply brief made "several misstatements and distortions of the factual record made for the first time" that "essentially amount to the assertion of new facts", recognizing that granting surreply is appropriate when a reply leaves a party "unable to contest matters presented to the court for the first time."

22. Here, Donais's reply introduces exactly this type of new factual material. He acknowledges that his original exhibits were incomplete and unsigned, violating NH Superior Court Rule 7, yet waited until reply to introduce new material and exhibits, and to try to cure the defect of unsigned pleadings. But a reply to an objection to a motion to dismiss cannot be used to cure the defect of a motion to dismiss. The proper course would be to file a corrected or new motion to dismiss with the cured defects. The motion to dismiss is thus defective and remains defective. Yet, this timing creates the precise procedural unfairness that surreply briefing is designed to address.

23. Most significantly, Donais' objection and reply ignore this Court's explicit guidance in its June 5, 2025 Order that "*consideration of materials outside the pleadings is improper on a motion to dismiss.*" Despite this clear directive, Donais repeated the identical procedural violation in his motion to dismiss the amended complaint including many of the very same documents the Court previously found improper, and then he added more extraneous material further in his reply. This willful disregard compounds the procedural violation. When a court provides clear guidance about improper motion practice, repeating those exact violations while introducing additional evidence demonstrates contempt for judicial authority. The fact that Donais now objects to every procedural remedy to address his violation, including leave to surreply, confirms his intent to exploit his creation of these procedural irregularities for tactical advantage.

24. Thus, in Donais submitting defective exhibits (unsigned pleadings), and then waiting for objection before then introducing expanded versions in reply including new exhibits, then objecting to allowing plaintiffs any response, this sequence violates every principle of fair adversarial proceedings and demonstrates why surrepy is necessary to prevent tactical abuse of procedural rules. NH Superior Court Rule 7 provides that unsigned filings may be stricken and proceedings may continue as though the filing had not been made. Donais acknowledged in his pleading that his Exhibit H was unsigned, confirming he was aware this was improper, yet he attached it anyway[2]. He then waited until his reply to include the signed version with additional exhibits. This calculated approach creates exactly the type of procedural trap courts shouldn't permit[3]. The Court should not reward this gamesmanship. When a party deliberately files defective materials, then purportedly "corrects" them in reply and then tacks on additional extraneous materials, while making new arguments on the merits and mischaracterizing pleadings, the proper remedy is to allow surreply to address the corrected and expanded materials, and the new and misleading arguments.

25. Moreover, Donais has systematically objected to plaintiffs' motion for hearing while simultaneously introducing new evidence and arguments in reply that were not presented in his original motion. If the Court resolves this potentially case-ending motion based solely on written submissions, fundamental fairness demands surreply in this instance.

26. Allowing defendants to introduce new evidence in reply while denying plaintiffs opportunity to respond violates fundamental principles of adversarial proceedings.

---

[2] Plaintiffs could not be expected to respond to a defective pleading with unsigned illicit attachments, thus causing prejudice to the plaintiffs with respect to the objection to the motion to dismiss amended complaint.

[3] See NH federal court case that chided defendant for similar conduct with respect to improper use of reply to objection to its motion to dismiss. Collision Communications, Inc. v. Nokia Solutions and Networks OY, No. 20-cv-949-JD, 2021 WL 1165048, at *5 (D.N.H. Mar. 24, 2021)("Nokia, however, failed to raise Rule 9(b) in its motion to dismiss, and instead, improperly, raised it in its reply").

### III. SURREPLY IS WARRANTED DUE TO PROCEDURAL ABUSE

27. Both state and federal courts have recognized that introducing new evidence in reply briefs creates procedural unfairness. Here, Donais engages in exactly this type of tactical abuse. He attached "a complete, executed, as filed copy of Exhibit H as received from the Circuit Court Clerk this day" containing "Exhibits K and L that were not part of the unsigned copy previously submitted." This new evidence introduction in reply, while simultaneously objecting to plaintiffs' ability to respond, violates fundamental fairness principles that require equal opportunity to address evidence presented to the court.

28. The attachment of unsigned pleadings, as evidence, to a motion to dismiss is improper. Yet, Donais did this very thing; he attached unsigned pleadings to his motion to dismiss the amended complaint. He did so intentionally as he acknowledged in his pleading that it was not signed (which confirms that he was aware that it was improper), yet he attached it any way[4].

29. Donais's original motion thus violated NH Superior Court Rule 7, which provides that unsigned filings may be stricken and proceedings may continue as though the filing had not been made. See Rule 7("If a pleading is not signed, or is signed with an intent to defeat this rule, the court may strike the pleading, and the action may proceed as though the pleading had not been filed"). This means that unsigned pleadings generally have no legal effect and cannot be used as evidence in support of or against dispositive motions such as a motion to dismiss[5].

30. In addition, Donais then waited until plaintiff filed an objection, then used his reply to not only attach a signed pleading but this time including in it, additional new exhibits that were not previously included in the attachments[6]. So, he used his reply to the objection to the motion to dismiss, to amend his motion to dismiss. Then he seeks to limit the time or ability of plaintiff to oppose this illicit maneuver. This should not be allowed to stand. Both of the improper filings have caused prejudice to the plaintiffs, especially in light of the fact that NH Superior Court Rule 7 prohibits unsigned filings, and this Court's June 5, 2025 order prohibits consideration of materials outside the pleadings on motions to dismiss. Fundamental due process requires equal opportunity to address evidence presented

---

[4] This is on top of Donais' violation of the court's 6-5-25 order, as shown elsewhere, that warned against including extraneous material with a motion to dismiss, which as seasoned attorneys, both Donais and Hilliard knew better not to do, in any event, but they did it any way.

[5] Thus, the rules indicate that a party or the court cannot rely on or act upon an unsigned pleading. If an unsigned pleading is presented as evidence in a motion, it may be stricken and treated as not filed. Therefore, unsigned pleadings are not valid evidence and should not be considered by the court in ruling on motions to dismiss or other dispositive motions.

[6] Donais acknowledges his original exhibits were incomplete and unsigned, yet he waited until his reply to address these defects while objecting to plaintiffs' procedural remedies. This sequence demonstrates calculated gamesmanship designed to prevent fair adjudication.

to courts. Donais's conduct violates all three principles, and no circumstances exist where such violations should be permitted to stand without remedy.

31. Simultaneously, Donais introduces new evidence in reply while claiming plaintiffs cannot surreply. This creates the precise type of one-sided proceeding that violates due process.

32. Courts recognize that such systematic suppression of procedural rights warrants intervention. When defendants engage in evasive tactics that prevent fair adjudication, appropriate procedural relief is warranted to ensure adversarial integrity. Here, Donais's pattern of introducing extensive unpermitted materials, while blocking every avenue for response further cements these concerns. Further, the sequence and timing of events reveals Donais's calculated approach. He files a motion containing incomplete exhibits that violate NH Superior Court Rule 7. After plaintiffs object to these procedural defects, he introduces complete versions in reply while objecting to plaintiffs' ability to respond/surreply. This creates exactly the type of procedural trap that courts should not permit.

33. The fundamental issue here transcends this particular motion. If courts permit defendants to introduce extensive materials outside the pleadings for a motion to dismiss, then wait for objections, then introduce expanded versions in their reply, and then object to allowing any response, motion practice becomes a one-sided presentation rather than a fair proceeding, undermining the entire adversarial system. Here, Donais introduces materials that were never admissible because they violate this Court's explicit guidance, then claims no procedural remedy is available.

## IV. DEFENDANT'S REPLY VIOLATES SETTLEMENT TERMS/CONFIDENTIALITY

34. The original defendants settled this case. In order to settle the claims, the plaintiffs required that statements made in the motion to dismiss in Nashua circuit court and in Hillsborough superior court South, must be withdrawn and sealed; otherwise, the plaintiffs would not settle and would instead litigate those statements to show them to be false and defamatory. The 20 defendants agreed to withdraw and seal those statements. Donais was initially part of the settlement agreement but later backed out of the settlement at the last minute just before it was completed/consummated. Donais also used his position as a former attorney for the original defendants to obtain access to the withdrawn/sealed pleadings including the motion to dismiss in Nashua circuit court, and then attached it to the motion to dismiss the amended complaint in this case. He attached an unsigned pleading which he evidently obtained from his prior position, and to which he was privy to as being involved in the internal settlement negotiations of the case, until he departed at the last minute, and to which he knew was being withdrawn and sealed

6

by the settlement of the parties. Donais has now misused his position to violate the settlement terms and to try to injure the plaintiffs by publicly including stricken, withdraw and sealed pleadings that were governed by confidential settlement agreement. See Exhibits A, B and C in **Exhibit 3** attached.

35. The settlement agreement is under a binding contract for confidentiality and thus plaintiff is not permitted to expose the contract publicly. However, the part of the contract that requires withdrawal and sealing of statements (in the pleading attached by Donais) can be seen as manifested in the two stipulations of settlement filed in this court and signed by the original defendants, which explicitly states that the statements are withdrawn and/or sealed. See Exhibits A, B and C in **Exhibit 3** attached.

36. Moreover, the confidentiality agreement demonstrates why the signed version was likely unavailable initially to Donais, but only the unsigned version. If Donais could not obtain signed documents due to confidentiality restrictions with other defendants, then his introducing them in a reply, further creates unfair advantage.

37. Here, plaintiff needs an opportunity to address these defamatory exhibits which have been placed illicitly in the record of this case. These exhibits are intended to prejudice the court with inflammatory material that are false and disparaging and which the original defendants agreed were unwarranted and should be withdrawn and/or sealed.

### V. THE TIMING AND CONTEXT DEMONSTRATE CALCULATED STRATEGY

38. The procedural sequence reveals Donais's calculated approach to suppress plaintiffs' ability to respond effectively. He files a motion containing defective exhibits that violate court rules. After plaintiffs object to these procedural defects, he introduces complete versions in reply while objecting to every procedural remedy plaintiffs seek. This creates exactly the type of procedural trap that courts should not permit.

39. Surreply should be granted when fundamental fairness requires response opportunities. Here, combination of new evidence introduction with systematic procedural obstruction create textbook allowable circumstances for surreply.

40. Moreover, the timing issue that Donais raised demonstrates his awareness that these materials were available but deliberately withheld. If confidentiality agreements with other defendants prevented disclosure initially, introducing them in reply after those restrictions were resolved creates unfair advantage that surreply is designed to prevent.

41. Donais's reply introduces new evidence while systematically objecting to every procedural remedy, violates this Court's explicit 6-5-25 guidance about materials outside pleadings, and creates fundamental procedural unfairness through coordinated suppression of rights. These exceptional circumstances clearly warrant surreply briefing.

## VI. THE CASE-ENDING NATURE OF THE MOTION REQUIRES COMPLETE BRIEFING

42. Donais's motion seeks dismissal with prejudice on multiple claims, which would effectively end substantial portions of this litigation. The stakes involved in this potential case-ending dispositive motion demand complete and fair briefing. The United States Department of Justice recognized this principle in United States v. Defendants, Case No. CV-01-0123 (D. Ariz. 2001), moving for surreply where defendants "raised several issues for the first time" in reply, noting that "the United States seeks a fair opportunity to respond to the new cases cited by Defendants."

43. The case-ending nature becomes particularly important when viewed against Donais's systematic suppression strategy. He objects to plaintiffs' motion for hearing while introducing new evidence in reply. If the Court resolves this dispositive motion without hearing based solely on written submissions, the written record becomes the sole basis for adjudication. Allowing defendants to supplement that record through reply while denying plaintiffs surreply creates fundamental unfairness that becomes insurmountable, especially without hearing to correct the imbalance.

44. Surreply may be necessary to address "misstatements and distortions of the factual record made for the first time" in reply. Donais's reply not only introduces new evidence but does so while claiming plaintiffs cannot respond to it.

## VII. DUE PROCESS REQUIRES EQUAL OPPORTUNITY TO ADDRESS EVIDENCE

45. The fundamental due process issue transcends the specific procedural violations. When defendants introduce new evidence in reply while systematically objecting to every procedural remedy, motion practice becomes a one-sided presentation rather than adversarial proceeding. This undermines the entire adversarial system that depends on equal opportunity to address evidence presented to courts.

46. The procedural unfairness becomes particularly acute when viewed against the broader context. Donais presents over 200 pages of exhibits spanning eight years while claiming plaintiffs should respond immediately because they "have seen these before." This position ignores the substantial analytical and organizational work required to respond effectively, particularly for pro se plaintiffs with ADA accommodations who face inherent disadvantages in processing voluminous materials under compressed timelines.

## VIII. THE COURT'S 6-5-25 ORDER ESTABLISHES CLEAR LEGAL FRAMEWORK

47. This Court's June 5, 2025 order provides the essential legal framework for understanding why surreply is necessary here. The Court explicitly stated that "consideration of materials outside the pleadings is improper on a motion to dismiss" and noted that plaintiffs were correct about the impropriety of considering extraneous materials. Despite this clear guidance, Donais repeated the identical procedural violation in his motion to dismiss amended complaint.

8

48. The willful nature of this violation compounds the allowable circumstances for surreply. When a court provides explicit guidance about improper motion practice, repeating those exact violations while introducing additional evidence in reply demonstrates contempt for judicial authority. Donais understood the Court's position but chose to proceed anyway. His reply's introduction of new evidence, which itself is further extraneous, while objecting to procedural remedies confirms his intent to exploit these irregularities for tactical advantage.

### IX. CONCLUSION AND RELIEF REQUESTED

49. The Court should recognize that Donais's pattern of conduct creates precisely the exceptional circumstances that justify surreply briefing. His introduction of new evidence through exhibits, his willful violation of this Court's explicit guidance, his systematic objection to every procedural remedy, and his fundamental denial of due process rights warrant comprehensive response through surreply briefing.

50. The case-ending nature of his motion makes complete briefing particularly critical. Any dismissal would terminate substantial portions of this litigation based on a record that Donais continues to supplement while denying plaintiffs opportunity to respond. This fundamental unfairness becomes insurmountable if the Court resolves these issues without complete briefing or hearing procedures to correct the imbalance.

51. Accordingly, the Court should grant leave to file surreply. Such relief is necessary to ensure fundamental fairness in this potentially case-ending motion and to prevent the type of systematic procedural abuse that Donais's conduct represents. The integrity of motion practice requires that both parties operate under equal procedural rules, and Donais's coordinated violations of those rules cannot be permitted to succeed through suppression of response.

52. Plaintiff incorporates herein, as if fully stated herein, Plaintiff Bisasor's motion to surreply and his reply to Defendant's objection to motion to surreply, attached as **Exhibit 1 and 2**. Plaintiff also incorporates herein, as if fully stated herein, the response pleadings of Plaintiff Bisasor to various objections by Defendant in **Exhibit 4 to 7**, in order to further demonstrate why surreply briefing is proper, and also to preserve against Defendant's attempt to suppress their review by the court. Plaintiff finally incorporates herein, as if fully stated herein, as **Exhibit 8**, the motion for partial summary judgment and attendant memorandum, exhibits and statement of material facts, to further show why Donais' attachment of 200 plus pages of extraneous material triggers legitimate grounds for surreply/rebuttal, and to demonstrate further reasons why the motion to dismiss amended complaint shouldn't be allowed, and to further establish the need for proper briefing in order to get to the truth and for justice to be done.

Respectfully submitted,
/s/Natalie Anderson
Natalie Anderson

Date: November 6, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Natalie Anderson
Natalie Anderson

# Exhibit 1

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## ANDRE BISASOR'S REPLY TO DEFENDANT DONAIS'S OBJECTION TO MOTION FOR LEAVE TO FILE SURREPLY

1. Andre Bisasor submits this reply to defendant Craig Donais's objection to his motion for leave to file surreply to Donais's reply to objection to motion to dismiss. Donais's perfunctory objection confirms precisely why surreply briefing is necessary and demonstrates the calculated procedural gamesmanship that necessitates judicial intervention.

### I. SURREPLY IS WARRANTED WHEN NEW EVIDENCE IS INTRODUCED

2. Courts routinely permit surreply briefing when defendants introduce new evidence in reply briefs, i.e., where party has introduced new evidence in its reply brief. It is appropriate to allow the opportunity to reply to that new evidence.

3. Similarly, courts grant surreply where the reply brief made "several misstatements and distortions of the factual record made for the first time" that "essentially amount to the assertion of new facts", recognizing that granting surreply is appropriate when a reply leaves a party "unable to contest matters presented to the court for the first time."

4. Here, Donais's reply introduces exactly this type of new factual material. He acknowledges that his original exhibits were incomplete and unsigned, violating NH Superior Court Rule 7, yet waited until reply to introduce new material and exhibits, and to try to cure the defect of unsigned pleadings. But a reply to an objection to a motion to dismiss cannot be used to cure the defect of a motion to dismiss. The proper course would be to file a corrected or new motion to dismiss with the cured defects. The motion to dismiss is thus defective and remains defective. Yet, this timing creates the precise procedural unfairness that surreply briefing is designed to address.

### II. DONAIS'S NON-RESPONSE EXPOSES THE VERY PROBLEM REQUIRING SURREPLY

5. Donais's objection spans barely over one page and presents only two conclusory assertions without addressing the substantive exceptional circumstances that justify surreply briefing. This evasive approach mirrors exactly the procedural manipulation identified in the motion for leave. Rather than addressing his introduction of new evidence in reply, his systematic violation of this Court's 6-5-25 guidance, or his coordinated suppression of plaintiffs' procedural rights, Donais simply claims that "no further submissions are necessary or appropriate."

6. This non-response is revealing. When a party introduces new exhibits for the first time in reply while systematically objecting to every procedural remedy the opposing party seeks, the failure to defend that conduct demonstrates its indefensibility. Donais cannot explain why he waited until reply to cure the unsigned, incomplete exhibits that violated NH Superior Court Rule 7, nor can he justify his willful disregard of this Court's explicit guidance about materials outside pleadings.

1

### III. THE PAGE COUNT COMPLAINT REVEALS DONAIS'S HYPOCRISY

7. Donais's complaint that plaintiffs submitted "eight pages of argument in response to the defendants two page reply" exposes remarkable hypocrisy. This objection comes from the same party who filed a 151-page motion to dismiss attacking plaintiffs' 25-page amended complaint. Moreover, Donais's "two page reply" introduced extensive new evidence through complete exhibits containing "Exhibits K and L that were not part of the unsigned copy previously submitted," comprising over 12 additional pages of materials.

8. The substance of briefing, not mere page count, determines necessity. When a reply introduces new evidence that plaintiffs had no opportunity to address in their original objection, detailed explanation of exceptional circumstances becomes essential. Federal courts also recognize surreply briefing is appropriate when a reply leaves "a party unable to contest matters presented to the court for the first time."

9. Furthermore, Donais's criticism rings hollow when viewed against his own conduct. His reply attached "a complete, executed, as filed copy of Exhibit H as received from the Circuit Court Clerk this day" while simultaneously objecting to plaintiffs' motion for hearing, motion for limited discovery, motion to convert to summary judgment, and motion to strike. This coordinated suppression of procedural rights while introducing new materials creates precisely the exceptional circumstances that justify comprehensive explanation in surreply briefing.

10. Donais's objection that this motion should be denied based on its 8-page length is frivolous and demonstrates a fundamental misstatement of the procedures and rules governing motion practice in New Hampshire Superior Court.

### IV. THERE IS NO RULE THAT LIMITS THE LENGTH OF MOTIONS FOR LEAVE TO FILE SURREPLY

11. Donais cites no New Hampshire Superior Court rule limiting the page length of motions seeking leave to file a surreply. This is because no such rule exists. The rules impose no restriction on motions for leave to file surreply in NH superior court, recognizing that such threshold motions require some careful explanation to meet legal standards.

### V. THE LAW REQUIRES EXPLANATION WHEN PERMISSION IS NOT AUTOMATICALLY GRANTED

12. Motions for such leave require proper explanation to meet the standard.

13. Courts grant leave to file surreplies upon a showing of good cause.

14. Donais' position would render movants unable to adequately demonstrate good cause required by law. This would effectively eliminate the moving party's ability or the court's authority to permit surreplies in appropriate cases, contrary to established motion practice principles.

## VI. THE 8-PAGE LENGTH IS NECESSITATED BY DONAIS'S EXTRAORDINARY MISCONDUCT

15. The length of this motion is modest. 8 pages is by no means overlong. Further, it is not a "guise" (as Donais so vexatiously puts it), but it is a direct result of the extraordinary nature of Donais's conduct that necessitates this surreply. As New Hampshire law recognizes, "[f]rivolous litigation is the use of legal processes with apparent disregard for the merit of one's own arguments".

16. The argument and documentation required to establish the extraordinary circumstances created by Donais's conduct cannot be artificially compressed by his arbitrariness, when the court rules impose no such limit.

## VII. DONAIS'S ARGUMENT IS ITSELF FRIVOLOUS

17. Under RSA 507:15, conduct is frivolous when it "clearly appears to the court that the action or any defense is frivolous or intended to harass". Donais's argument lacks any reasonable basis in law and appears designed solely to obstruct legitimate motion practice. New Hampshire courts are empowered to award costs and attorney's fees against parties who engage in frivolous conduct.

18. NH law defines frivolous conduct as that which "lacks any reasonable basis in fact or law". Donais's position would effectively require movants to seek extraordinary relief while being denied the space necessary to demonstrate the required circumstances, a legal impossibility that undermines the very purpose of the motion practice.

19. Plaintiff respectfully requests that this Court reject Donais's frivolous objection regarding page length and grant the motion for leave to file surreply based on the circumstances detailed herein.

## VIII. DONAIS'S OBJECTION PATTERN CONFIRMS THE NEED FOR JUDICIAL INTERVENTION

20. The procedural pattern Donais has established confirms why surreply briefing is necessary. He has systematically objected to plaintiffs' motion to convert to summary judgment, motion for limited discovery, motion to strike extraneous materials, motion for hearing, and now motion for leave to file surreply. This coordinated approach to suppress every procedural avenue for response while introducing extensive materials demonstrates precisely the type of one-sided proceeding that violates fundamental fairness.

## IX. THE ABSENCE OF SUBSTANTIVE RESPONSE CONFIRMS EXCEPTIONAL CIRCUMSTANCES

21. Perhaps most tellingly, Donais's objection contains no citation to any authority governing surreply standards, no analysis of whether exceptional or allowable circumstances exist, and no response to the specific new evidence his reply introduced. This mirrors exactly the evasive pattern identified throughout this litigation: when confronted with legitimate procedural objections, Donais responds with circular conclusions rather than analysis.

3

22. Surreply may be necessary to address "misstatements and distortions of the factual record made for the first time" in reply. Here, Donais's reply not only introduces new factual evidence but does so while claiming plaintiffs cannot respond to it. His objection's failure to address these substantive concerns confirms he cannot defend this conduct.

### X. PROCEDURAL INTEGRITY REQUIRES SURREPLY TO ADDRESS SYSTEMATIC VIOLATIONS

23. The broader issue here involves the integrity of motion practice itself. If courts permit parties to introduce extensive materials outside pleadings, wait for objections, introduce expanded versions in reply, then object to allowing any response, the adversarial system becomes meaningless. Donais's approach represents exactly this type of systematic manipulation that surreply briefing is designed to prevent.

24. The coordination of his objections reveals the calculated nature of this strategy. Rather than address the procedural defects plaintiffs identified, he seeks to silence response while maintaining overwhelming evidentiary advantage. This creates precisely the type of one-sided proceeding that warrants surreply when parties introduce new evidence "not limited to the evidence already in the record."

25. New evidence introduction, systematic procedural obstruction, willful violation of court orders, and fundamental due process concerns create a compelling case for surreply. Donais's objection addresses none of these substantive concerns, focusing instead on page count while ignoring the underlying fairness issues.

26. Further, the procedures require that a motion to surreply is filed first and then a surreply once the motion is granted. What Donais proposes is that plaintiff must put their entire surreply into the text of the motion to surreply, which is a specious proposition. To the extent that a proposed surreply, as part of an acceptable unwritten custom, can sometimes separately be provided with the motion to surreply (which there is no rule that mandates this), this does not change the fact that the motion itself is not supposed to be the vehicle to file the actual surreply itself. The plaintiff is supposed to seek permission first. In seeking permission, a plaintiff may describe why he needs to surreply. But the surreply itself is supposed to be filed separately from the motion itself. The plaintiff must be able to rely on the rules and procedures of the court and not have them capriciously shifted due to the whim of the defendant's self-serving (often contradictory) purposes.

27. The bottom line is that the plaintiff has not presented his complete surreply in his motion to surreply. Plaintiff needs the opportunity to do so based on the rules of the court and fundamental fairness.

## XI. CONCLUSION AND RELIEF REQUESTED

28. Donais's bare-bones objection confirms every concern raised in the motion for leave to file surreply. His inability to address the substantive exceptional or allowable circumstances, his failure to justify introducing new evidence in reply while objecting to response opportunities, and his systematic suppression of procedural rights demonstrate exactly why surreply briefing is necessary to preserve adversarial integrity.

29. Accordingly, the Court should deny Donais's objection and grant leave to file the proposed surreply.

Respectfully submitted,
/s/andre bisasor
Date: November 6, 2025                                                                        Andre Bisasor

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
Andre Bisasor

# Exhibit 2

Filed
File Date: 9/23/2025 12:44 PM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## PLAINTIFF ANDRE BISASOR'S EMERGENCY MOTION FOR LEAVE TO FILE SURREPLY TO DEFENDANT DONAIS'S REPLY TO OBJECTION TO MOTION TO DISMISS

1. Plaintiff Andre Bisasor ("Bisasor") respectfully move for [emergency] leave to file a surreply to defendant Donais's reply to plaintiffs' objection to his motion to dismiss the amended complaint. Exceptional circumstances mandate this relief because Donais's reply introduces new evidence while simultaneously seeking to silence plaintiffs' response through calculated procedural gamesmanship that violates fundamental fairness principles.

2. NB: Bisasor is quickly filing this motion one day after the filing of Donais' reply. This is because Bisasor does not know the timetable by which the court plans to rule on the pending motions including the motion to dismiss. Therefore, time is of the essence in getting this motion before the court and is the reason why this motion is styled as an emergency. Furthermore, Bisasor is not able to prepare/complete a proposed surreply to attach to this motion, if that is the expectance, as there is literally no adequate time to do so under the circumstances. Bisasor asks the court to allow a reasonable time to file the surreply if this motion is granted.

## I. PREFACE: RESERVATION OF RIGHTS INCLUDING FOR CO-PLAINTIFF

3. Plaintiff Anderson ("Anderson") is not able to file a motion today. Further, the plaintiffs have not been able to confer due to reasons outlined in the pending sealed ADA motion.

4. Bisasor therefore specifically reserves the right of co-plaintiff Natalie Anderson to file her own separate motion. Anderson has independent standing as a co-plaintiff and possesses separate rights to challenge the defendant's motion to dismiss and reply. Nothing herein should be construed as waiving or limiting Anderson's independent right to file her own pleadings regarding this issue, and she retains full discretion regarding her rights which remain intact. Also, Bisasor files this pleading, protectively, in the abundance of caution. Further, Bisasor filed this in haste.

5. Moreover, Donais used his reply to the objection to the motion to dismiss to complete his motion to dismiss which contained unsigned and missing documents, by attaching purportedly signed documents, along with new exhibits, that were missing from the motion to dismiss. This is totally unfair. Donais wants to get away with all kinds of improper conduct. He wants to use his reply as a vehicle to complete his motion to dismiss. This is simply outrageous.

6. Note: This continuing situation is unsustainable and untenable and highly prejudicial to the plaintiffs. The plaintiffs need to have a hearing/case management conference in order to address these issues, among others. The failure of the court to hold a hearing/case management conference is severely prejudicing the plaintiffs.

1

## II. GROUNDS FOR SURREPLY
### A. New Evidence Introduced for First Time in Reply

7. Donais's reply introduces material evidence not presented in his original motion by attaching "a complete, executed, as filed copy of Exhibit H as received from the Circuit Court Clerk this day. The executed copy includes Exhibits K and L that were not part of the unsigned copy previously submitted." This constitutes new factual material that plaintiffs had no opportunity to address in their original objection and creates precisely the exceptional circumstances that justify surreply briefing. This admission confirms plaintiffs' argument that his motion relies on improper materials outside the pleadings that violate established procedural requirements. The Court cannot fairly evaluate a motion to dismiss when the movant continues supplementing his evidentiary submissions through reply briefs.

8. Further, this procedural irregularity directly contradicts NH Superior Court Rule 7, which provides that unsigned filings may be stricken and proceedings may continue as though the filing had not been made. Donais further exploits the reply process to introduce new so-called materials or "evidence", while simultaneously arguing that plaintiffs cannot respond. He thus uses the reply as an opportunity to supplement his evidentiary record. This tactical manipulation of procedural rules violates fundamental fairness.

9. The timing of this "evidence" is particularly troubling, further revealing the calculated nature of Donais's approach. Donais acknowledges his original exhibits were incomplete and unsigned, violating NH Superior Court Rule 7 which provides that unsigned filings may be stricken. After filing the motion containing incomplete and unsigned exhibits, he waited for plaintiffs to object, then introduced the missing materials in reply while objecting to plaintiffs' procedural remedies. This sequence demonstrates willful gamesmanship designed to prevent fair adjudication.

### B. Systematic Suppression of Plaintiffs' Defense Rights

10. Donais's reply reveals a coordinated strategy to suppress plaintiffs' ability to mount an effective defense to his dispositive motion and defend against dismissal. He, at the same time, objects to plaintiffs' motion to convert to summary judgment, motion for limited discovery, motion to strike extraneous materials, and motion for hearing. This pattern demonstrates his intent to create an asymmetrical proceeding where he presents extensive materials while blocking/eliminating every procedural avenue for plaintiffs to respond and for fair resolution while maintaining his overwhelming evidentiary advantage.

11. The asymmetry Donais creates violates fundamental due process principles. He presents 151 pages of motion materials attacking a 25-page amended complaint, introduces new evidence in reply, yet objects when plaintiffs seek

2

appropriate procedural relief to address these irregularities. This approach essentially converts motion practice into a one-sided presentation where defendants present unlimited materials while opponents are silenced.

12. This Court previously ruled on 6-5-25, that "when faced with an excessively burdensome and muddled pleading, the trial court may require the submitting party to file a more orderly and concise pleading," yet Donais filed a 151-page motion with 142 pages of exhibits attacking plaintiffs' 25-page amended complaint. When plaintiffs sought appropriate procedural relief, Donais objects to each remedy while demanding immediate resolution in his favor.

13. Judge Messer's 6-5-25 order recognized this unfairness, noting that "when faced with an excessively burdensome and muddled pleading, the trial court may require the submitting party to file a more orderly and concise pleading." Donais's current motion exceeds even the problems the Court previously identified, yet he demands immediate resolution without allowing procedural corrections.

### C. Direct Violation of Court's Prior Guidance

14. The 6-5-25 order explicitly stated that consideration of materials outside the pleadings is improper on a motion to dismiss. The Court noted that plaintiffs were correct about the impropriety of considering extraneous materials and that such materials would not be considered. See screenshot of the 6-5-25 order on summary judgment conversion:

> In ruling on the defendant's motion to dismiss, the Court has accepted as true, and relied only upon, the factual allegations as set forth in the Complaint. While the plaintiffs are correct that consideration of, and reliance upon, defendant's evidence submitted in conjunction with their motion to dismiss would not be proper, the Court has not done so. Accordingly, the Court has treated the defendant's motion as it was filed-- as a motion to dismiss. Therefore, there is no basis at this juncture to treat it as a motion for summary judgment. Accordingly, the motion is DENIED.
>
> This is a Service Document For Case: 218-2029-CV-00027
> Hillsborough Superior Court Northern District
> 6/5/2025 4:21 PM    Honorable Amy B. Messer    June 5, 2025

15. Despite this clear guidance/directive, Donais repeated the identical procedural violation in his motion to dismiss the amended complaint, including the very same documents the Court previously found improper.

16. Thus, Donais's motion and reply directly violates Judge Messer's explicit June 5, 2025 guidance that consideration of materials outside the pleadings is improper on motions to dismiss. This willful disregard further demonstrates that Donais understood the Court's position but chose to proceed anyway, knowing the Court could convert to summary judgment, allow discovery, or strike his materials. His reply's objection to these procedural remedies while introducing additional evidence compounds the violation, and confirms his intent to exploit procedural irregularities for tactical advantage. This creates the kind of unfair procedural advantage that surreply briefing is designed to address,

17. The Court's order established clear boundaries for motion practice in this case. Donais's deliberate violation of these boundaries while objecting to appropriate remedies creates precisely the type of exceptional circumstances that justify surreply briefing to preserve procedural integrity.

### D. Procedural Asymmetry / Unfair Burden Violates Due Process

18. Donais's approach creates fundamental procedural unfairness, creating impossible procedural burdens for plaintiffs while claiming procedural advantages for himself. He attaches over 200 pages of exhibits (including attachments in his recent reply) spanning 8 years while plaintiffs have been afforded no adequate time to prepare, organize, or incorporate responsive exhibits. Preparation of exhibits requires substantial time to line up, incorporate, and attach documents with proper headers/numbering. This procedural burden, imposed without adequate extension of time, while Donais claims plaintiffs have seen these before (from 8 years ago), is wholly unfair and draconian.

19. So, in sum, he attaches over 200 pages of exhibits spanning 8 years, then demands immediate response claiming plaintiffs have seen these before from 8 years ago. This position further ignores the substantial work required to, minimally, organize, prepare, and incorporate responsive exhibits with proper headers and numbering, beyond the analytical work involved in reviewing the substance of the exhibits and preparing substantive response to that.

20. For example, Donais now asserts that his motion to dismiss amended complaint had missing several exhibits H, K and L (with multiple pages totaling around/over 12 pages), from a 60-page motion to dismiss in the circuit court, which he now includes for the first time in his reply to the objection to the motion to dismiss. In order for plaintiff to have caught this, he would have had to meticulously compare the original circuit court motion to his exhibit attached to the motion to dismiss amended complaint. This takes an extraordinary amount of time to review, compare and catch issues like this. It is totally unfair to expect plaintiff, who is pro se, and has ADA issues, to accomplish superhuman tasks like this, that no trained lawyer (without ADA issues) would be expected to accomplish. This inclusion of new exhibits in the reply further highlights the complete unfairness and lobsided nature of these proceedings and how things are stacked against the plaintiff but in favor of the defendant.

21. Plaintiffs have been afforded no adequate time extension despite the overwhelming nature of Donais's materials. The Court limited plaintiffs' amended complaint to 25 pages while allowing Donais to present 151 pages in response, creating fundamental unfairness that his reply compounds by introducing additional evidence.

22. Moreover, plaintiffs cannot determine how to respond properly because Donais objects to every procedural remedy while the Court has not yet ruled on whether his extraneous materials will be considered, converted, or stricken. Thus, plaintiffs cannot know whether the Court will strike or consider the extraneous materials, making it impossible to determine how to properly respond and with exactly what attachments. This uncertainty is precisely why rules

4

exist against including facts and materials outside the complaint, as it unfairly burdens opposing parties and prevents effective response. [Note: The last time around, the court informed the plaintiff that it would not consider the extraneous facts and materials[1], but did so **after** it ruled on the motion to dismiss original complaint, while never allowing the plaintiff to supplement his objection (which would include substantive arguments which were not really included in the initial placeholder objection that focused on procedural issues such as the need to strike the extraneous materials/facts, etc.) which the plaintiffs strenuously requested to do several times but was ignored and eventually denied after the court ruled on the motion to dismiss. This was unfair and highly prejudicial. Moreover, the court never allowed plaintiff adequate time to file reconsideration motion where he could raise substantive arguments. Furthermore, the court should resolve these extraneous issues before ruling on a motion to dismiss.

### E. Unprecedented Procedural Gamesmanship

23. Donais's approach represents unprecedented manipulation of motion practice rules. He files defective exhibits, waits for objections, introduces expanded versions in reply, then objects to allowing plaintiffs any response. This sequence violates every principle of fair adversarial proceedings and demonstrates why surreply briefing is necessary to prevent tactical abuse of procedural rules. Further, the coordinated nature of his objections reveals the calculated strategy. Rather than address the procedural defects plaintiffs identified, he seeks to silence response while maintaining his overwhelming evidentiary advantage. This involves one-sided presentations that deny fundamental fairness.[2]

### F. Previous Court Allowance of Surreplies

24. The docket reflects that Judge Messer previously allowed surreply briefing in this case by both parties. Index 52 shows plaintiffs filed a "Motion to File Surreply to Obj. to Mo to Dismiss" in February 2022, and Index 139 shows a "Response Surreply to Response to Obj to Mot Dismiss" was filed. This establishes that the Court recognizes the appropriateness of surreply briefing when circumstances warrant such relief. It certainly is proper in this situation.

### G. Case-Ending Nature of Motion Requires Full Briefing

25. Donais's motion seeks dismissal with prejudice on multiple claims, effectively ending substantial portions of this litigation. The stakes involved in this potential case-ending dispositive motion demand complete and fair briefing.

---

[1] Note: Although the court stated this in the summary judgment conversion order, a close review of the 6-5-25 order on the motion to dismiss shows that the court did use/rely on certain information/facts supplied only by the motion to dismiss original complaint, that were not present in the original complaint. This was not fair and the plaintiff is concerned that the court is going to do this again.

[2] Note: Hilliard is a seasoned 74 year old attorney who is well-versed in manipulative tactics. The pro se African American plaintiffs are not match for his unfair tactics. The court should not countenance such tactics and should seek to protect the pro se African American plaintiffs from such unsavory gamesmanship.

Allowing defendants to introduce new evidence in reply while denying plaintiffs the opportunity to respond violates fundamental principles of adversarial proceedings.

### H. Preview of Further Substantive Points/Rebuttals To Be Made in The Surreply

26. Plaintiff intends to make additional points/rebuttal arguments in the surreply. This includes addressing Donais' arguments, which he raises for the first time in his reply, that *"The "placeholder" objection to the motion to dismiss is 103 pages long, incorporating issues raised and resolved in other motions and addressing many aspects of this proceeding that have no bearing on the validity of the amended complaint. This diffuse and prolix style of pleading imposes undue burdens on the Court and defense counsel, and ought not to be tolerated. More substantively, the objection fails to recognize the limitations on new causes of action and substantially different evidence established in the order granting leave to amend."* First, there are no other motions that have resolved the issues in the objection and Donais has not cited what he is talking about. This kind of vague insinuations, leaving the plaintiff and the court to figure out/divine what he is referring to, should not be countenanced by the court. Second, the plaintiff has explained the length of the objection to the court, including having inadequate time to edit/proof the objection, and has requested to allow time to file a proper objection but this has not yet been allowed. Moreover, Donais filed a 151 page motion to dismiss so the plaintiff has filed less pages in the objection than Donais. What should not be tolerated is Donais' flagrant defiance/violation of the court's 6-5-25 order that warned against inclusion of extraneous materials in a motion to dismiss. Thus, his claims about "prolix" and "burdensome" pleadings ring hollow when he files 151 pages attacking 25 pages while objecting to every procedural remedy and attempting to characterize plaintiffs' necessary responses as excessive. Third, regarding new claims, it should be noted that the court ruled on plaintiffs' motion to amended complaint, on 6-5-25, stating that it was moot because plaintiff was allowed to amend complaint, in the ruling on motion to dismiss. But yet in the motion to amend complaint, plaintiffs detailed examples of things they intended to include in amended complaint. The court, in its 6-5-25 orders, did not limit those things stated in the motion to amend complaint. If the court intended to do so, it would have so stated it, because otherwise it would leave unfairly plaintiffs in a total state of confusion/ambiguity as to what could be included in the amended complaint, by remaining silent. Plaintiff has further points to make on these things in surreply.

### I. Surreply Is Necessary Especially If There Will Not Be A Hearing On The Motion to Dismiss

27. The necessity for surreply briefing becomes even more critical if the Court determines not to hold a hearing on the motion to dismiss. Donais has systematically objected to plaintiffs' motion for hearing while simultaneously introducing new evidence and procedural arguments in his reply that were not presented in his original motion. If

6

the Court resolves this potentially case-ending motion based solely on written submissions, fundamental fairness demands that plaintiffs have the opportunity to respond to all materials and arguments presented.

28. Without a hearing, the Court will have no opportunity to examine witnesses, test the credibility of competing factual assertions, or explore the procedural irregularities that plaintiffs have identified. The written record becomes the sole basis for resolution, making complete briefing essential to fair adjudication. Donais's introduction of new exhibits and procedural arguments in reply while blocking plaintiffs' response creates precisely the type of one-sided record that violates due process when hearings are not conducted.

29. The complexity of the procedural issues presented, including whether materials should be stricken, converted to summary judgment, or subjected to discovery, requires complete briefing for proper resolution without a hearing. Donais's coordinated objections to all procedural remedies demonstrate his intent to force resolution based on incomplete briefing that favors his position. If the Court determines these issues without hearing, plaintiffs must have opportunity to respond to all arguments/evidence presented, including those introduced the first time in reply.

30. Moreover, the case-ending nature of the motion makes complete briefing particularly critical when resolution occurs without hearing. Any dismissal would terminate substantial portions of this litigation based solely on the written record. Allowing defendants to supplement that record through reply while denying plaintiffs responsive opportunity creates fundamental unfairness that becomes insurmountable without hearing procedures to correct the imbalance.

### III. LEGAL STANDARD AND TIMING

31. New Hampshire courts possess inherent authority to permit additional briefing when circumstances warrant such relief. This authority has been exercised in cases like Dover v. Scanlan, where courts permitted surreply briefing to address new arguments raised in reply briefs. This motion is filed promptly after receiving defendant's reply. The surreply will be tailored to address new issues raised in the reply and the systematic suppression of plaintiffs' procedural rights. Permitting surreply serves judicial efficiency by ensuring complete briefing on all relevant issues.

### IV. CONCLUSION

32. Donais's reply confirms that his motion to dismiss violates fundamental procedural requirements through introduction of new evidence, systematic suppression of defense rights, willful disregard of the Court's guidance, and unprecedented procedural gamesmanship. His coordinated objections to every procedural remedy while introducing new materials in reply demonstrates precisely why surreply briefing is necessary to preserve adversarial integrity.

33. Defendant's reply confirms systematic procedural violations plaintiffs identified while introducing additional evidence that compounds these irregularities. His coordinated objections to every procedural remedy plaintiffs seek reveals a calculated strategy to create an unfair advantage in this potential case-ending motion.

34. The Court should recognize that allowing this coordinated suppression of rights would establish dangerous precedent permitting defendants to overwhelm opponents with defective materials while blocking all procedural remedies. Fair adjudication requires that plaintiffs have meaningful opportunity to respond to new evidence and address the systematic procedural violations Donais's reply further reveals.

35. In sum, the exceptional circumstances created by defendant's introduction of new evidence, systematic objection to all procedural remedies, direct violation of the Court's prior guidance, and fundamental procedural unfairness warrant granting leave to file the proposed surreply. A surreply should certainly be allowed on a potential case-ending dispositive motion where the defendant has engaged in coordinated efforts to suppress plaintiffs' defense against dismissal while introducing new materials in reply.

36. WHEREFORE, plaintiff Bisasor respectfully requests that this Court grant leave to file a surreply to ensure fundamental fairness and complete resolution of the procedural and substantive issues presented.

Respectfully submitted,
/s/andre bisasor
Andre Bisasor

Date: September 23, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
Andre Bisasor

8

# Exhibit 3

**Filed**
**File Date: 10/30/2025 1:51 PM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

**PLAINTIFF ANDRE BISASOR'S REPLY TO DEFENDANT DONAIS'S OBJECTION TO PLAINTIFF ANDRE BISASOR'S EMERGENCY MOTION TO STRIKE DEFENDANT DONAIS' REPLY TO OBJECTION TO MOTION TO DISMISS AND/OR REPLY ATTACHMENTS**

1. Andre Bisasor submits this reply to defendant Craig Donais's objection to his motion to strike Donais's reply to plaintiffs' objection to motion to dismiss and attached materials. Donais's bare-bones objection confirms the very procedural gamesmanship that necessitates striking his reply.

### A. Donais's Evasive Non-Response Demonstrates the Problem

2. Donais's objection spans barely one page and presents zero substantive arguments addressing the specific procedural violations identified in the motion to strike. This non-response is telling. Rather than addressing his introduction of new evidence in his reply, his systematic suppression of plaintiffs' defense rights, or his willful violation of this Court's June 5, 2025 guidance, Donais simply asserts there is "no legitimate basis" to strike his filing. This conclusory statement, devoid of legal analysis, exposes the weakness of his position.

3. The absence of any substantive response to the detailed procedural objections demonstrates that Donais cannot defend his conduct. When a party introduces new evidence for the first time in his reply, claims the opposing party cannot or should not respond, and objects to every procedural remedy the opposing party seeks to address the inclusion of illicit material, the appropriate remedy is striking to preserve adversarial fairness.

### B. Courts Recognize Similar Procedural Abuses Warrant Striking

4. Both state and federal courts have recognized that introducing new evidence in reply briefs creates precisely the type of procedural unfairness that justifies striking. Here, Donais engages in exactly this type of tactical abuse. He attached "a complete, executed, as filed copy of Exhibit H as received from the Circuit Court Clerk this day" containing "Exhibits K and L that were not part of the unsigned copy previously submitted." This new evidence introduction in reply, while simultaneously objecting to plaintiffs' ability to respond, violates fundamental fairness principles that require equal opportunity to address evidence presented to the court.

### C. NH Superior Court Rule 7 Supports Striking Defective Materials

5. The attachment of unsigned pleadings, as evidence, to a motion to dismiss is improper. Yet, Donais did this very thing; he attached unsigned pleadings to his motion to dismiss the amended complaint. He did so intentionally as he

1

acknowledged in his pleading that it was not signed (which confirms that he was aware that it was improper), yet he attached it any way[1].

6.  Donais's original motion thus violated NH Superior Court Rule 7, which provides that unsigned filings may be stricken and proceedings may continue as though the filing had not been made. See Rule 7("If a pleading is not signed, or is signed with an intent to defeat this rule, the court may strike the pleading, and the action may proceed as though the pleading had not been filed"). This means that unsigned pleadings generally have no legal effect and cannot be used as evidence in support of or against dispositive motions such as a motion to dismiss[2].

7.  In addition, Donais then waited until plaintiff filed an objection, then used his reply to not only attach a signed pleading but this time including in it, additional new exhibits that were not previously included in the attachments[3]. So, he used his reply to the objection to the motion to dismiss, to amend his motion to dismiss. Then he seeks to limit the time or ability of plaintiff to oppose this illicit maneuver. This should not be allowed to stand. Both of the improper filings should be stricken. Both of the improper filings have caused prejudice to the plaintiffs. These facts directly support striking.

8.  Thus, because NH Superior Court Rule 7 prohibits unsigned filings, and this Court's June 5, 2025 order prohibits consideration of materials outside the pleadings on motions to dismiss, then this further together support striking in this instance. Fundamental due process requires equal opportunity to address evidence presented to courts. Donais's conduct violates all three principles, and no circumstances exist where such violations should be permitted to stand.

9.  Further, Federal Rule 12(f) provides insight. Under that standard, courts may strike materials that create unfair procedural advantages or prevent proper adversarial testing. Here, Donais's reply does exactly that.

### D.  Donais's Strategy Creates Systematic Suppression of Plaintiff's Rights

10. Donais's objection fails to address the coordinated nature of his procedural obstruction. The record demonstrates he has objected to plaintiffs' motion to convert to summary judgment, motion for limited discovery, motion to strike

---

[1] This is on top of Donais' violation of the court's 6-5-25 order, as shown elsewhere, that warned against including extraneous material with a motion to dismiss, which as seasoned attorneys, both Donais and Hilliard knew better not to do, in any event, but they did it any way.

[2] Thus, the rules indicate that a party or the court cannot rely on or act upon an unsigned pleading. If an unsigned pleading is presented as evidence in a motion, it may be stricken and treated as not filed. Therefore, unsigned pleadings are not valid evidence and should not be considered by the court in ruling on motions to dismiss or other dispositive motions.

[3] Donais acknowledges his original exhibits were incomplete and unsigned, yet he waited until his reply to address these defects while objecting to plaintiffs' procedural remedies. This sequence demonstrates calculated gamesmanship designed to prevent fair adjudication.

extraneous materials, and motion for hearing. Simultaneously, he introduces new evidence in reply while claiming plaintiffs cannot respond. This creates the precise type of one-sided proceeding that violates due process.

11. Courts recognize that such systematic suppression of procedural rights warrants intervention. When defendants engage in evasive tactics that prevent fair adjudication, appropriate procedural relief is warranted to ensure adversarial integrity. Here, Donais's pattern of introducing extensive unpermitted materials, while blocking every avenue for response further cements these concerns.

### E.  This Court's June 5, 2025 Order Establishes Clear Boundaries

12. Most significantly, Donais's objection ignores this Court's explicit guidance in its June 5, 2025 order that "consideration of materials outside the pleadings is improper on a motion to dismiss." Despite this clear directive, Donais repeated the identical procedural violation in his motion to dismiss the amended complaint, including some of the very same documents the Court previously found improper, and also more of the same. This willful disregard compounds the procedural violation. Donais has thus violated the court's 6-5-25 order.

13. When a court provides clear guidance about improper motion practice, repeating those exact violations while introducing additional evidence in reply demonstrates contempt for judicial authority. The fact that Donais now objects to every procedural remedy to this violation by him, while claiming no legitimate basis exists to strike his materials, confirms his intent to exploit procedural irregularities for tactical advantage.

### F.  The Absence of Substantive Argument Confirms the Need for Relief

14. Most tellingly, Donais's objection contains no citation to any authority, no analysis of the procedural standards governing motions to strike, and no response to the specific violations identified. Instead, he simply claims the motion is "repetitive and frivolous" and requests attorney fees. This response pattern mirrors exactly what plaintiffs identified as systematic suppression: when confronted with legitimate procedural objections, Donais responds with conclusions rather than analysis and seeks to penalize opposition rather than address substantive issues.

### G.  Request for Attorney Fees is Improper and Unwarranted

15. The request for attorney fees is particularly inappropriate. Motions to strike serve an important function in preventing procedural abuse. When a party introduces new evidence in reply, violates court orders, and systematically objects to every procedural remedy, the opposing party has every right to seek appropriate relief. Characterizing such relief as frivolous demonstrates exactly the type of procedural bullying that striking is designed to prevent.

3

16. Further, the NH Supreme Court has emphasized that attorney fee awards require extraordinary circumstances and clear evidence of frivolous conduct lacking any reasonable basis. Plaintiff's motion addresses legitimate procedural concerns arising directly from Donais's decision to introduce extraneous material in/with his motion to dismiss and attendant reply. The motion is grounded in established legal principles, and seeks relief properly within the Court's authority. No basis exists for fee sanctions.

17. The request for an award of fees" lacks any legal or factual foundation. New Hampshire law permits fee awards for frivolous litigation only in limited circumstances. RSA 507:15 authorizes fees where "it clearly appears to the court that the action or any defense is frivolous or intended to harass or intimidate the prevailing party." Similarly, Rule 59 permits fee awards for frivolous or unreasonable motions brought in bad faith. This motion satisfies neither standard.

18. Donais cites no authority suggesting that this motion constitute sanctionable conduct. The objection's fee request appears designed to chill the exercise of legitimate procedural rights rather than to vindicate any genuine grievance. Courts have recognized that "the bar that the moving party must clear to recover an award under is a very high one" and requires showing both that claims were frivolous "and that they were not advanced in good faith; in other words that the party acted with an actual intention to harass or increase the costs of the litigation." The present motion meets none of these criteria.

19. Indeed, if any fee request were appropriate here, it would be against Donais for filing a bare-bones objection that offers no substantive opposition but instead seeks to burden the opposing party with baseless fee threats.

20. Furthermore, it is improper to combine a motion for attorney fees into an objection. See Rule 7(g)("Objections to pending motions and affirmative motions for relief shall not be combined in one filing".). This continual intentional violation of the rules (he has done this in every objection filed recently) supports some kind of sanctions or warning to the defendant, especially when done to be oppressive.

### H. Procedural Fairness Requires Clear Boundaries

21. The fundamental issue here transcends this particular motion. If courts permit defendants to introduce extensive materials outside the pleadings for a motion to dismiss, then wait for objections, then introduce expanded versions in their reply, and then object to allowing any response, motion practice becomes a one-sided presentation rather than a fair proceeding, undermining the entire adversarial system. Here, Donais introduces materials that were never admissible because they violate this Court's explicit guidance, then claims no procedural remedy is available.

4

## I.  The Timing Issue Reveals Calculated Strategy

22. The sequence of events reveals Donais's calculated approach. He files a motion containing incomplete exhibits that violate NH Superior Court Rule 7. After plaintiffs object to these procedural defects, he introduces complete versions in reply while objecting to plaintiffs' ability to respond. This creates exactly the type of procedural trap that courts should not permit.

## J.  Violation of Settlement Contract

23. The original defendants settled this case. In order to settle the claims, the plaintiffs required that statements made in the motion to dismiss in Nashua circuit court and in Hillsborough superior court South, must be withdrawn and sealed; otherwise, the plaintiffs would not settle and would instead litigate those statements to show them to be false and defamatory. The 20 defendants agreed to withdraw and seal those statements. Donais was initially part of the settlement agreement but later backed out of the settlement at the last minute just before it was completed/consummated. Donais also used his position as a former attorney for the original defendants to obtain access to the withdrawn/sealed pleadings including the motion to dismiss in Nashua circuit court, and then attached it to the motion to dismiss the amended complaint in this case. He attached an unsigned pleading which he evidently obtained from his prior position, and to which he was privy to as being involved in the internal settlement negotiations of the case, until he departed at the last minute, and to which he knew was being withdrawn and sealed by the settlement of the parties. Donais has now misused his position to violate the settlement terms and to try to injure the plaintiffs by publicly including stricken, withdraw and sealed pleadings that were governed by confidential settlement agreement. See **Exhibits A, B and C.**

24. The settlement agreement is under a binding contract for confidentiality and thus plaintiff is not permitted to expose the contract publicly. However, the part of the contract that requires withdrawal and sealing of statements (in the pleading attached by Donais) can be seen as manifested in the two stipulations of settlement filed in this court and signed by the original defendants, which explicitly states that the statements are withdrawn and/or sealed. See Exhibits A, B and C.

25. Moreover, the confidentiality agreement demonstrates why the signed version was likely unavailable initially to Donais, but only the unsigned version. If Donais could not obtain signed documents due to confidentiality restrictions with other defendants, then his introducing them in a reply, further creates unfair advantage that striking is designed to prevent.

5

## K.  Further Rebuttal to Donais' Objection

26. Donais states that "No legitimate basis exists to strike Donais' properly filed pleading, to which the plaintiffs have already responded with their lengthy motion for leave to surreply."

27. First, there is legitimate basis to strike Donais' reply, which has been outlined above and in the original motion.

    a.  Donais violated a court order. This is clear grounds to seek to strike.

    b.  Donais also included material outside of the complaint that threatens the fair adjudication of a motion to dismiss, by seeking to introduce material to challenge or establish facts at the motion to dismiss stage, which is not permitted.

    c.  Donais also violated rule 7 by including materials that were not signed and thus not proper.

    d.  Donais included materials that are the subject of prior striking by another court and that were withdrawn by the parties who drafted the materials, and are the subject of sealing via a confidential settlement agreement[4]. The court should strike for this reason alone.

    e.  Not content with the above violations and even after being warned of his continued violations by an initial motion to strike the motion to dismiss amended complaint, Donais doubles down intransigently by further including more extraneous illicit material in his reply to the objection to the motion to dismiss, for the first time (which new material was not present in his motion to dismiss). This is unfair, improper, and prejudicial. It is violative of the rules and of the court's order as well as of the well-established jurisprudence in this jurisdiction. It is thus not properly filed.

28. Second, the motion for leave to surreply is not a response to the objection to the motion to strike. Donais impermissibly seeks to conflate the two.

29. Third, Donais has set up a catch-22 by first filing an illicit pleading, and seeks to attack plaintiff for any attempt to hold him accountable for filing the illicit pleading. If plaintiff moves to strike the illicit pleading because it is illicit and should never have been filed, and then plaintiff subsequently seeks leave to surreply to it to protect himself from the illicit effect of the pleading (not knowing if the court will strike it), Donais then claims that plaintiff has already surreplied via the motion for leave to surreply (which is illogical as a motion for leave is not a surreply) and then

---

[4] The settlement agreement is under a binding contract for confidentiality and thus plaintiff is not permitted to expose the contract publicly. Plaintiff would have to file the settlement agreement under seal ex parte because Donais is not a party to the final version of the signed settlement agreement with the 20 original defendant. However, the part of the contract that requires withdrawal of statements can be seen as manifested in the two stipulations of settlement filed in this court and signed by the original defendants.

Donais further argues that plaintiff cannot strike it because plaintiff surreplied. These are the features of the unfair procedural traps that he setup that riggs the game in his favor. No matter what, plaintiff is disadvantaged and is setup to lose. If plaintiff tries to address the illicit pleading, plaintiff is setup to lose. By the way the defendant does not address the actual merits of the argument that his pleading is illicit, he just expects to het away with it by brute force). If plaintiff does not address the illicit pleading, then he gets away it and again plaintiff is setup to lose. Defendant has orchestrated situation where the only thing acceptable to him is for plaintiff to say nothing and not oppose his illicit pleadings or unfair actions. And if plaintiff seeks to address it, he requests attorney fees. This is an burdensome, oppressive setup, one which violates the rules of conduct. In seeking attorney fees for everything plaintiff writes, Donais is engaged in frivolous bad faith oppressive bullying conduct.

30. Further, the fact that plaintiff sought leave to surreply while also moving to strike demonstrates that plaintiff is pursuing every available remedy to ensure fair adjudication. Rather than supporting Donais's position, this acknowledgment exposes the problem. If plaintiffs must seek leave to surreply to address new evidence introduced in Donais' reply, this confirms that Donais's reply contains improper material. The appropriate remedy is striking the improper materials, not permitting the procedural gamesmanship to continue.

## L.  Frivolousness Allegation Lacks Merit

31. Donais's characterization of the motion as "repetitive and frivolous" deserves response. The motion addresses specific procedural violations with precise citations to record evidence and applicable authority. When a party introduces new evidence in reply while systematically objecting to every procedural remedy, seeking appropriate relief through motion practice is exactly what the rules contemplate.

32. The allegation of repetitiveness likely refers to the fact that these procedural issues (of including illicit material in a motion to dismiss) have arisen more than once in this litigation. However, this repetition confirms the pattern of procedural abuse rather than undermining the current motion. When a party repeatedly violates procedural requirements despite clear court guidance, continued enforcement through appropriate motions becomes more necessary, not less.

## M. Conclusion and Relief Requested

33. Donais's bare-bones objection confirms every concern raised in the motion to strike. His inability to address the substantive procedural violations, his failure to cite any supporting authority, and his attempt to characterize

legitimate procedural objections as frivolous demonstrate exactly the type of procedural bullying that striking is designed to prevent.

34. The Court should recognize that Donais's pattern of conduct, introducing extensive materials outside the pleadings, violating explicit court guidance, introducing new evidence in reply, and systematically objecting to every procedural remedy, creates precisely the type of one-sided proceeding that undermines adversarial integrity. His objection's failure to address these substantive concerns while requesting attorney fees for having to respond to legitimate procedural objections confirms the calculated nature of his approach.

35. Accordingly, the Court should deny Donais's objection and grant the motion to strike his reply and attached materials. Such relief is necessary to preserve procedural fairness and prevent the type of systematic abuse that Donais's conduct represents.

36. The Court should also deny his request for attorney fees as inappropriate under these circumstances where legitimate procedural violations warrant judicial intervention. Furthermore, it is improper to combine a motion for attorney fees into an objection. See Rule 7(g)("Objections to pending motions and affirmative motions for relief shall not be combined in one filing".). This continual intentional violation of the rules (he has done this in every objection filed recently) supports some kind of sanctions or warning to the defendant, especially when done to be oppressive.

37. The time has come to establish clear boundaries for motion practice in this case. Permitting Donais's procedural gamesmanship to continue would create dangerous precedent allowing defendants to overwhelm opponents with defective materials while blocking all procedural remedies. Fair adjudication requires that both parties operate under the same procedural rules, and Donais's systematic violations of those rules cannot be permitted to continue.

Respectfully submitted,
/s/andre bisasor
Date: October 30, 2025                                                Andre Bisasor

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.
/s/ Andre Bisasor
Andre Bisasor

8

# Exhibit A

**Filed**
**File Date: 4/6/2022 12:45 PM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE

HILLSBOROUGH NORTH, SS.                                    SUPERIOR COURT

| | |
|---|---|
| NATALIE ANDERSON ) | |
| ANDRE BISASOR ) | |
| ) | |
| Plaintiffs ) | |
| v. ) | 226-2020-cv-00027 |
| ) | |
| DAVE AKRIDGE; STEPHEN ) | |
| ARNOLD; MARIE AUFIERO ) | |
| RICHARD AUFIERO; BLACKSTONE ) | |
| GROUP, INC.; SERGIO BURGOS ) | |
| CINDY DASILVA; CRAIG DONAIS ) | |
| JOHN J. FLATLEY; NANETTE ) | |
| GONZALEZ; JONATHAN GRAY; ) | |
| GREAT AMERICAN HOTEL GROUP; ) | |
| HILTON HOTELS WORLDWIDE, INC.) | |
| HOMEWOOD SUITES OF NASHUA; ) | |
| JOHN FLATLEY COMPANY; ) | |
| SHELAGH MICHAUD; CHRIS ) | |
| NASSETTA; ADAM ROBITAILLE; ) | |
| BRIAN SNOW; KARL TERRELL; ) | |
| KAREN YEAGER ) | |
| ) | |
| Defendants ) | |

## NOTICE OF SETTLEMENT & FINAL DOCKET MARKINGS

In the above-captioned action, Defendants Dave Akridge, Stephen Arnold, Marie

Aufiero, Richard Aufiero, Blackstone Group, Inc.; Sergio Burgos, Cindy Dasilva, John

Flatley; Nanette Gonzalez; Jonathan Gray, Great American Hotel Group, Hilton Hotels

Worldwide, Inc., Homewood Suites of Nashua, John Flatley Company, Shelagh

Michaud, Chris Nassetta, Adam Robitaille, Brian Snow, Karl Terrell, Karen Yeager

Approved and So Ordered

*Amy B. Messer*

Honorable Amy B. Messer

April 7, 2022

4846-1482-9290.2

1

Clerk's Notice of Decision
Document Sent to Parties
on  04/07/2022

(collectively "Defendants") request that the Court make note of this settlement and mark the docket in this matter as follows:

On terms which will remain confidential, the Parties have now settled this litigation to the mutual satisfaction of the Parties, neither party admitting liability. The Parties hereby acknowledge that the circumstances giving rise to this litigation included misunderstandings and miscommunication. As part of the settlement, the Parties have agreed to withdraw and/or seal certain statements, pleadings and exhibits in this litigation. In accordance with the terms of the settlement, all claims and counterclaims are hereby agreed to be voluntarily dismissed by the Parties. "Judgment for neither party. No further action. No costs or fees."

**PLAINTIFFS**

Dated: March 4, 2022

*Andre Bisasor*
**ANDRE BISASOR**
119 Drum Hill Rd, #233
Chelmsford, MA 01824
781-492-5675

Dated: March 4, 2022

*Natalie And*
**NATALIE ANDERSON**
119 Drum Hill Rd, #233
Chelmsford, MA 01824
781-492-5675

2

**DEFENDANTS**

Dated: March   4__, 2022

_____
Shelagh C.N. Michaud (Bar # 647926)
One Citizens Plaza
Providence, RI 02903-1345
401-454-1133
844-782-4480 fax
smichaud@nixonpeabody.com

3

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was or will be served to the parties in this case via the court's electronic filing/service system.

/s/andre bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
781-492-5675

# Exhibit B

Filed
File Date: 4/6/2022 12:45 PM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE

HILLSBOROUGH NORTH, SS.                                    SUPERIOR COURT

| | | |
|---|---|---|
| NATALIE ANDERSON | ) | |
| ANDRE BISASOR, | ) | |
| Plaintiffs | ) | |
| v. | ) | 226-2020-cv-00027 |
| | ) | |
| HILTON HOTELS WORLDWIDE, INC., | ) | |
| ET. AL, | ) | |
| Defendants | ) | |

### STIPULATION OF DEFENDANTS' MARIE & RICHARD AUFIERO

Now come the defendants Marie and Richard Aufiero in the above-referenced action who, in addition to the joint **notice of settlement and final docket markings** filed by the parties in this case, hereby further stipulate the following:

The written statement by Marie Aufiero made on January 9, 2017, as well as any other written or oral statements made by or on behalf of Marie Aufiero and Richard Aufiero in relation to this matter which are in dispute in this litigation, are hereby withdrawn by Marie Aufiero and Richard Aufiero, as part of the full and final settlement and final disposition of the above-captioned matter. The withdrawal of the above-referenced statements is not an admission of fault or liability for any of the claims and/or counts raised in the Plaintiff's Complaint in the above-referenced action.

_Andre Bisasor_

**Andre Bisasor aka Andre Bissasor**
679 Washington Street, #8-206
Attleboro, MA 02703
and/or
119 Drum Hill Road, #233
Chelmsford, MA 01824
Tel. (781) 492-5675
Dated: 3-4-22

_Natalie Anderson_

**Natalie Anderson**
679 Washington Street, #8-206
Attleboro, MA 02703
and/or
119 Drum Hill Road, #233
Chelmsford, MA 01824
Tel. (781) 492-5675
Dated: 3/4/22

/s/ Meredith J. McGair

**Counsel for the Defendants,**
**Marie Aufiero and Richard Aufiero**
Meredith J. McGair, B.B.O. #681088
Law Offices of Steven B. Stein
P.O. Box 2903
Hartford, CT 06104-2903
Direct Dial: (617) 772-2807
Facsimile: (888) 275-7090
mmcgair@travelers.com
Dated: 3/31/22

Approved and So Ordered

_Amy B. Messer_

Honorable Amy B. Messer
April 7, 2022

Clerk's Notice of Decision
Document Sent to Parties
on    04/07/2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was or will be served to the parties in this case via the court's electronic filing/service system.

<u>/s/andre bisasor</u>
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
781-492-5675

# Exhibit C

**Filed**
**File Date: 4/6/2022 12:45 PM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE

HILLSBOROUGH NORTH, ss                          SUPERIOR COURT DEPARTMENT

NATALIE ANDERSON, ET. AL,        )
                                 )
        Plaintiffs               )
                                 )
v.                               )            CIVIL ACTION NO.
                                 )            216-2020-CV-00027
HILTON HOTELS WORLDWIDE, INC.,   )
ET AL;                           )
                                 )
        Defendants.              )
                                 )

### NOTICE AND CLARIFICATION PERTAINING TO TWO NOTICES OF SETTLEMENT/FINAL DOCKET MARKINGS (OR JOINT-STIPULATIONS OF DISMISSAL PURSUANT TO SETTLEMENT) THAT HAVE BEEN COMPLETED AND SIGNED BY ALL NAMED PARTIES (EXCEPT CRAIG DONAIS)

The plaintiffs hereby report to this court (and provide clarification or explanation) that all the named parties in the above-captioned case (except for Craig Donais) have signed two **notices of settlement and final docket markings (or joint stipulations of dismissal pursuant to settlement**) to now be filed in this court, which contains joint statements by the parties (except for Craig Donais) that they wish to include as part of the final docket markings/entry of dismissal for this case, with respect to these named parties, and which is a specific term/provision called for and directed to be effectuated by the fully executed/signed settlement agreement of the named parties (except Craig Donais).

These two **notices of settlement and final docket markings (or joint stipulation of dismissal pursuant to settlement)** that have been signed are as follows.

1) The first one pertains only to defendants Marie Aufiero and Richard Aufiero who are represented by Attorney Meredith McGair, counsel for Travelers Insurance Company.  See **Exhibit 1.**

2) Second one pertains to all named parties in this case (except Craig Donais) including all defendants who relate to the Hilton/Homewood Suites Nashua defendants either as corporate entities, employees or agents, who are represented (or jointly spoken for) by Attorney Shelagh Michaud. See **Exhibit 2**. NB: Attorney Mchaud has indicated that she is signing on behalf of all of the named parties, except Craig Donais. See **Exhibit 3** for a letter from Shelagh Michaud showing communication regarding the settlement documents, including the final docket markings for this case, on behalf of the defendants.

These two **notices of settlement and final docket markings (or joint stipulations of dismissal pursuant to settlement**) will be filed separately and subsequently to this filing.

The plaintiffs ask that the court acknowledge the settlement and enter the appropriate entry/order consistent with the **notices of settlement and final docket markings (or joint stipulations of dismissal pursuant to settlement**) upon filing of the **notices of settlement and final docket markings (or joint stipulations of dismissal pursuant to settlement**).

**Signed under the pains and penalties of perjury**

Respectfully Submitted,
/s/ Andre Bisasor
**ANDRE BISASOR**
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
781-492-5675


Respectfully Submitted,
/s/ Natalie Anderson
**NATALIE ANDERSON**
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
781-492-5675


April 6, 2022


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was or will be served to the parties in this case via the court's electronic filing/service system.

/s/andre bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
781-492-5675

# Exhibit 1

STATE OF NEW HAMPSHIRE

HILLSBOROUGH NORTH, SS.                              SUPERIOR COURT

| | | |
|---|---|---|
| NATALIE ANDERSON | ) | |
| ANDRE BISASOR, | ) | |
| Plaintiffs | ) | |
| v. | ) | 226-2020-cv-00027 |
| | ) | |
| HILTON HOTELS WORLDWIDE, INC., | ) | |
| ET. AL, | ) | |
| Defendants | ) | |

## STIPULATION OF DEFENDANTS' MARIE & RICHARD AUFIERO

Now come the defendants Marie and Richard Aufiero in the above-referenced action who, in addition to the joint **notice of settlement and final docket markings** filed by the parties in this case, hereby further stipulate the following:

The written statement by Marie Aufiero made on January 9, 2017, as well as any other written or oral statements made by or on behalf of Marie Aufiero and Richard Aufiero in relation to this matter which are in dispute in this litigation, are hereby withdrawn by Marie Aufiero and Richard Aufiero, as part of the full and final settlement and final disposition of the above-captioned matter. The withdrawal of the above-referenced statements is not an admission of fault or liability for any of the claims and/or counts raised in the Plaintiff's Complaint in the above-referenced action.

_Andre Bisasor_

**Andre Bisasor aka Andre Bissasor**
679 Washington Street, #8-206
Attleboro, MA 02703
and/or
119 Drum Hill Road, #233
Chelmsford, MA 01824
Tel. (781) 492-5675
Dated: 3-4-22

_Natalie Anderson_

**Natalie Anderson**
679 Washington Street, #8-206
Attleboro, MA 02703
and/or
119 Drum Hill Road, #233
Chelmsford, MA 01824
Tel. (781) 492-5675
Dated: 3/4/22

/s/ Meredith J. McGair

**Counsel for the Defendants,**
**Marie Aufiero and Richard Aufiero**
Meredith J. McGair, B.B.O. #681088
Law Offices of Steven B. Stein
P.O. Box 2903
Hartford, CT 06104-2903
Direct Dial: (617) 772-2807
Facsimile: (888) 275-7090
mmcgair@travelers.com
Dated: 3/31/22

# Exhibit 2

STATE OF NEW HAMPSHIRE

HILLSBOROUGH NORTH, SS.                    SUPERIOR COURT

| | | |
|---|---|---|
| NATALIE ANDERSON | ) | |
| ANDRE BISASOR | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | 226-2020-cv-00027 |
| | ) | |
| DAVE AKRIDGE; STEPHEN | ) | |
| ARNOLD; MARIE AUFIERO | ) | |
| RICHARD AUFIERO; BLACKSTONE | ) | |
| GROUP, INC.; SERGIO BURGOS | ) | |
| CINDY DASILVA; CRAIG DONAIS | ) | |
| JOHN J. FLATLEY; NANETTE | ) | |
| GONZALEZ; JONATHAN GRAY; | ) | |
| GREAT AMERICAN HOTEL GROUP; | ) | |
| HILTON HOTELS WORLDWIDE, INC.) | | |
| HOMEWOOD SUITES OF NASHUA; | ) | |
| JOHN FLATLEY COMPANY; | ) | |
| SHELAGH MICHAUD; CHRIS | ) | |
| NASSETTA; ADAM ROBITAILLE; | ) | |
| BRIAN SNOW; KARL TERRELL; | ) | |
| KAREN YEAGER | ) | |
| | ) | |
| Defendants | ) | |

## NOTICE OF SETTLEMENT & FINAL DOCKET MARKINGS

In the above-captioned action, Defendants Dave Akridge, Stephen Arnold, Marie

Aufiero, Richard Aufiero, Blackstone Group, Inc.; Sergio Burgos, Cindy Dasilva, John

Flatley; Nanette Gonzalez; Jonathan Gray, Great American Hotel Group, Hilton Hotels

Worldwide, Inc., Homewood Suites of Nashua, John Flatley Company, Shelagh

Michaud, Chris Nassetta, Adam Robitaille, Brian Snow, Karl Terrell, Karen Yeager

1

4846-1482-9290.2

(collectively "Defendants") request that the Court make note of this settlement and mark the docket in this matter as follows:

On terms which will remain confidential, the Parties have now settled this litigation to the mutual satisfaction of the Parties, neither party admitting liability. The Parties hereby acknowledge that the circumstances giving rise to this litigation included misunderstandings and miscommunication. As part of the settlement, the Parties have agreed to withdraw and/or seal certain statements, pleadings and exhibits in this litigation. In accordance with the terms of the settlement, all claims and counterclaims are hereby agreed to be voluntarily dismissed by the Parties. "Judgment for neither party. No further action. No costs or fees."

**PLAINTIFFS**

Dated: March 4, 2022

_andre Bisasor_
**ANDRE BISASOR**
119 Drum Hill Rd, #233
Chelmsford, MA 01824
781-492-5675

Dated: March 4, 2022

_Natalie Ande_
**NATALIE ANDERSON**
119 Drum Hill Rd, #233
Chelmsford, MA 01824
781-492-5675

2

4846-1482-9290.2

**DEFENDANTS**

Dated: March  4__, 2022

_____
Shelagh C.N. Michaud (Bar # 647926)
One Citizens Plaza
Providence, RI 02903-1345
401-454-1133
844-782-4480 fax
smichaud@nixonpeabody.com

3

4846-1482-9290.2

# Exhibit 3



Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903-1345

**Shelagh C.N. Michaud**

Attorneys at Law
nixonpeabody.com
@NixonPeabodyLLP

T / 401.454.1133
smichaud@nixonpeabody.com

April 1, 2022

*VIA FEDERAL EXPRESS*

Andre Bisasor
Natalie Anderson
679 Washington St., #8-206
Attleboro, MA 02703

**RE:   Anderson v. Homewoods, et al. – Requested Copies of Settlement Documents**

Dear Mr. Bisasor and Ms. Anderson:

Per your email request dated 3/29/2022, enclosed please find the following settlement documents in the above-referenced matter:

1.  Original signed copies of statements/letter from Homewoods Suites Nashua (copies of these were emailed to you on 3/23/3022 and 3/25/2022 respectively);

2.  Copy of fully executed Settlement Agreement (a copy of this was emailed to you on 3/23/2022); and

3.  Signature copies of Stipulations of Dismissal and Docket Markings (these were previously emailed to you on 3/23/2022 with valid electronic signatures).

The prior emailed version of these documents were complete and valid and satisfied the Defendants' obligations under the Settlement Agreement. Additionally, these documents are subject to the terms of the Settlement Agreement. Finally, I have otherwise responded to your 3/29/2022 email.  Please provide confirmation once the Stipulations of Dismissal and Docket Markings have been filed with the respective Courts.

Sincerely,

Shelagh C.N. Michaud

Encls.

4880-6731-8554.1

# Exhibit 4

**Filed**
**File Date: 10/30/2025 11:56 AM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH

Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## PLAINTIFF ANDRE BISASOR'S REPLY TO DEFENDANT'S OBJECTION TO MOTION TO SUBMIT AUDIO EVIDENCE AND FOR IN-CAMERA HEARING

1. Plaintiff Andre Bisasor submits this reply to Donais's objection to the motion to submit audio evidence and for in-camera hearing. Donais's objection fundamentally mischaracterizes the nature of plaintiff's motion and ignores well-established principles governing evidence submission during motion practice.

### I. SUMMARY OF ARGUMENT

2. Donais's objection fundamentally mischaracterizes the motion's purpose while ignoring established principles that permit parties to present contradictory evidence when defendants voluntarily introduce sworn statements into motion practice.

3. This motion requests judicial guidance on submission procedures for impeachment evidence that directly contradicts sworn statements Donais himself chose to attach to his motion to dismiss.

4. When a defendant attaches affidavits containing factual representations to support dismissal, those representations become subject to contradiction and impeachment. Donais attached his 2017 affidavit describing the January 9, 2017 consultation, attached third-party declarations about surrounding events, and relied upon these materials, among other extraneous materials attached, to argue dismissal. Having placed these sworn statements before the Court, Donais cannot now claim immunity from impeachment.

5. The audio evidence serves a singular purpose: to establish that material statements in Donais's 2017 affidavit are demonstrably false. This is quintessential impeachment evidence addressing credibility, not substantive evidence offered to prove claims. The distinction is critical because impeachment evidence is admissible to challenge veracity regardless of whether it would independently establish substantive claims.

6. Moreover, the motion presents a procedural crisis requiring immediate judicial guidance. The Court's e-filing system cannot process audio files. Court clerk Alma explicitly rejected plaintiff's prior attempt to submit materials by hand, stating that once enrolled in e-filing, all submissions must be electronic. This creates an impossible Catch-22 where plaintiff possesses dispositive evidence but cannot present it through any available means. The motion simply requests the Court establish workable submission procedures to resolve this technical barrier.

## II. DONAIS'S OBJECTION MISCHARACTERIZES THE MOTION

7. Donais argues that plaintiff "may not now submit additional 'evidence' in support of their objection" to his motion to dismiss. This argument fails because it misstates or misunderstands the motion's actual purpose and ignores basic procedural principles governing motion practice.

8. The motion does not simply seek to submit "additional evidence"; rather, it requests judicial guidance on procedural mechanisms for submitting impeachment evidence that directly contradicts sworn statements Donais himself attached to his motion to dismiss. When a defendant attaches affidavits/sworn statements to support a motion to dismiss, those materials become fair game for impeachment and contradiction.

9. Federal courts have long recognized that when defendants submit affidavits or declarations with motions to dismiss, opposing parties may present contradictory evidence.

10. Moreover, Donais cannot have it both ways; he cannot attach a 2017 affidavit containing sworn statements about the 1-9-17 consultation, as well as other statements from other third parties, among other things, and then claim those statements are immune from contradiction or impeachment. The audio evidence directly impeaches the veracity of statements Donais chose to put before this Court.

11. Note: In addition to audio evidence, there is also video evidence as well as that Bisasor would like to submit to the court, to impeach defendant (and to further establish plaintiff's claims as true).

12. Further, Donais's argument that the motion is "repetitive and frivolous" lacks merit when viewed against his own conduct. The audio evidence demonstrates a pattern of deception by Donais that extends well beyond the specific statements in his 2017 affidavit. A defendant who has consistently made false statements to courts and third parties is hardly positioned to complain about motions seeking to expose such deception.

## III. THE MOTION IS TIMELY AND PROCEDURALLY PROPER

13. Donais's argument that "the time has long passed for the plaintiffs to plead their case" fundamentally misunderstands both the procedural posture and the motion's limited scope. This motion only seeks judicial guidance on evidence submission procedures where the court's e-filing system creates technical barriers. It requests administrative guidance on evidence submission format when technical limitations prevent use of standard filing procedures.

2

14. New Hampshire Superior Court Rules expressly contemplate that parties shall furnish documents and papers offered in evidence as the court may require. The motion simply asks the Court to establish procedures for submitting audio evidence that cannot be uploaded through the electronic filing system; a purely administrative matter that falls squarely within the Court's case management authority.

15. Furthermore, the timing objection ignores the reality that the need for these procedures only arose more pressingly after Donais attached his sworn statements to his motion to dismiss. Plaintiff could not have anticipated the need to contradict those specific statements (with audio evidence), until Donais chose to rely upon them as part of his motion practice including in his most recent reply to the objection to the motion to dismiss, where he for the first time attached another but different copy of the Nashua circuit court motion to dismiss with several additional exhibits that were not contained in the prior version submitted by him (and much of which is either stricken by the court, or withdrawn by the original defendants, or subject to sealing via settlement agreement, but yet was illicitly attached nonetheless by Donais).

16. In addition, contrary to Donais' suggestion, the plaintiff still has an opportunity to provide a sur-reply to the defendant's reply to the objection to his motion to dismiss (as there is pending motion to allow surreply to the reply to the objection to the motion to dismiss the amended complaint, which has not been ruled on as yet). Thus, even using defendant's own restrictive self-serving logic, the door has not closed for plaintiff to rebut, contradict, or refute defendant's motion to dismiss and his attendant reply to the plaintiffs' objection.

17. Thus, in sum, the timing objection fails for multiple independent reasons. First, the need for submission procedures only arose after Donais attached his sworn statements to the motion to dismiss filed August 22, 2025. Plaintiff could not have anticipated the specific need to contradict these particular statements at this stage of the case, until Donais chose to rely upon them. The motion responds directly to evidence Donais introduced, making the timing necessarily reactive.

18. Second, Donais himself introduced additional materials in his reply to plaintiff's objection, including a different version of the Nashua Superior Court motion to dismiss containing exhibits not present in the version initially provided. This new evidence, introduced for the first time in reply, triggered additional need for contradictory

materials. Under Donais's own restrictive logic, plaintiff retains the right to file sur-reply addressing these new materials, meaning the procedural window remains open.

19. Third, the case has not progressed beyond preliminary motion to dismiss stage. No scheduling order establishes discovery cutoffs or evidence submission deadlines. No trial date has been set. The case remains in its earliest phases where procedural flexibility should be greatest rather than most restrictive.

20. Fourth, the procedural nature of the motion distinguishes it from substantive attempts to add evidence improperly. The motion addresses a purely ministerial question: what submission protocol should apply when the e-filing system cannot accommodate the evidence format? This administrative matter falls squarely within the Court's case management authority and requires no finding that plaintiff delayed improperly.

## IV. IMPEACHMENT EVIDENCE IS PROPERLY CONSIDERED

21. Donais's objection fails to acknowledge that the audio evidence is impeachment evidence/substantive evidence, being offered/submitted to impeach the statements Donais voluntarily submitted to this Court.

22. Federal and state courts recognize that when defendants attach affidavits or declarations to motions to dismiss, opposing parties may present contradictory evidence without converting the proceeding to summary judgment.

23. The First Circuit has recognized that when defendants submit declarations or affidavits in support of motions to dismiss, courts may consider contradictory evidence. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). This principle reflects the fundamental unfairness of allowing defendants to introduce sworn statements while preventing plaintiffs from presenting evidence establishing those statements are false. Thus, plaintiff's request for procedures to submit contradictory evidence falls within established precedent.

24. The New Hampshire Supreme Court has emphasized that impeachment evidence serves the distinct purpose of challenging credibility and is admissible for that limited function. In State v. Laurie, 139 N.H. 325 (1995), the Court recognized that impeachment evidence goes directly to witness credibility and must be considered when evaluating reliability, and thus is further admissible for that purpose. Here, the audio evidence directly contradicts material representations Donais made in his 2017 affidavit about the 1-9-17 consultation call and about preceding and subsequent events. Thus, the audio evidence impeaches material representations Donais made under oath about the consultation and surrounding events.

4

25. Although Laurie was a criminal case, the principle extends beyond criminal proceedings to civil litigation where credibility determinations affect substantive outcomes. When a party places sworn statements before the court, the opposing party must have meaningful opportunity to challenge those statements' veracity through contradictory evidence. Otherwise, motion practice becomes fundamentally unfair, allowing one party to present self-serving factual assertions immune from contradiction.

26. Furthermore, courts possess inherent authority to establish evidence submission procedures that serve justice while protecting legitimate interests. The proposed in-camera review addresses Donais's potential concern about privileged communications by allowing the Court to assess the evidence privately before determining what portions, if any, should be filed publicly or under seal. This balanced approach serves multiple interests: protecting privilege, ensuring evidence reaches the decision-maker, and maintaining orderly procedure.

27. Thus, it is proper for plaintiff to ask the court for this relief. What else should plaintiff do? He cannot submit audio evidence to the court by hand or conventionally (as is barred by court staff). Who else should the plaintiff seek relief from? He cannot ask the court staff. The court is appropriate place to seek this relief by motion.

### V. THE MOTION ADDRESSES LEGITIMATE PROCEDURAL CONCERNS

28. The core issue addressed by plaintiff's motion is procedural: how to submit audio evidence when the court's electronic filing system cannot accommodate such files. This represents a genuine procedural dilemma requiring judicial guidance/instruction, and thus is not frivolous motion practice.

29. New Hampshire courts are required to establish procedures for evidence submission that serve the interests of justice while protecting legitimate confidentiality concerns. Further, the motion's request for in-camera review procedures protects potentially privileged communications while ensuring that relevant impeachment evidence receives proper consideration.

30. The procedural framework requested in the motion serves judicial economy by establishing clear guidelines for handling audio evidence containing privileged material; an issue that will likely recur in future cases as electronic evidence becomes increasingly common. Audio recordings, video evidence, and other non-document materials will arise routinely in modern litigation. Establishing clear submission procedures now prevents repeated motions addressing the same technical barriers and creates precedent for handling similar situations efficiently.

**VI. THE NEED FOR AUDIO EVIDENCE SUBMISSION CREATES PROCEDURAL CRISIS**

31. The pending motion for partial summary judgment on breach of fiduciary duty relies substantially on plaintiffs' refutation of evidence via a 2017 affidavit provided by defendant, which detailed what was said on the 1-9-17 consultation between plaintiff and defendant, as well as concerning surrounding events both before and after.

32. Plaintiffs have refuted the affidavit evidence from Donais, by supplying their own affidavits (under seal), along with other documentary evidence via plaintiffs' motion for partial summary judgment and memorandum/ exhibits. This refutation directly contradicts defendant's characterizations of the content of the consultation.

33. However, rather than relying on the documentary evidence alone and running the risk that the court may reduce this to an issue of dueling affidavits, Bisasor also has audio evidence that he would like to supply to the court that impeaches the defendant and his 2017 affidavit, showing that Donais has lied and continues to lie to the court via the false 2017 affidavit, thereby establishing conclusively that Donais breached fiduciary duty. This evidence provides conclusive impeachment material regarding Donais' 2017 affidavit and third-party affidavits attached to the motion to dismiss. This evidence establishes conclusively the fiduciary relationship Donais seeks to deny through dismissal.

34. Litigation should be a search for the truth. The court had an opportunity to learn the truth definitively from this audio evidence. It is critical that the court allows this audio evidence to be submitted and heard by the court. What will the court do if it learns that Donais and his lawyer Hilliard have conspired to blatantly lie to this court or submitted false evidence (via false affidavit, etc.) to this court, in order to pervert the cause of justice? The court must be interested in this because lawyers cannot so glibly lie to the court and get away with it without consequence. The court cannot allow Donais and Hilliard to "make a fool" out of this court. This definitive evidence must be heard. This definitive evidence will prove to the court that not only have Donais and Hilliard been intentionally lying to the court but also that the entire motion to dismiss has been fraudulently presented with false evidence designed to frustrate and undermine the fair administration of justice.

35. However, there exists an impossible procedural situation where plaintiff possesses dispositive evidence but cannot submit it through any available means. The e-filing system cannot process audio files, and so the audio evidence cannot be submitted through the e-filing system due to technical limitations, creating a procedural dilemma requiring judicial guidance on submission protocols. The Court must clarify how such evidence

should be submitted, whether in person, etc., and whether in-camera review is appropriate given the sensitive nature of the communications.

36. It should be noted that when plaintiff previously attempted to submit physical materials by hand/in-person to the court, by coming to the courthouse, the courthouse clerk staff (Alma) turned plaintiff away, explaining that once signed up for e-filing, the Court does not accept conventional/in-person filings and all materials must be submitted electronically. This created a Catch-22 where plaintiff must file everything electronically but cannot file critical evidence because the electronic system cannot process it. Hence, because the Court has previously rejected in-person filing attempts by plaintiff, and no alternative submission protocol exists, this creates a situation where plaintiff possesses dispositive evidence but cannot present it under current procedural constraints. Interactive judicial guidance/instruction is necessary to establish workable submission procedures that allow this critical evidence to reach the Court. This is also in the interest of justice. [Note: The public is often horrified by nightmare scenarios pertaining to court cases (and especially so in the criminal context involving disadvantaged defendants, in particular minorities), where a truthful party has conclusive evidence that proves their case or their innocence, but cannot present the evidence because of unfair technicalities or barriers that prevent the truth from coming out, or where the truth becomes buried. This is a failure of the legal system wherever and whenever it happens. No innocent person should ever be convicted or serve prison time because the truth was prevented from being presented to the court. The same is true in the civil context, when especially black litigants have truthful meritorious claims of defendant wrongdoing but cannot present conclusive evidence to obtain relief or rectify harm, especially in civil rights cases. This should not be so. Well, here in this instance, in this case, Bisasor avers that he has dispositive evidence to impeach Donais and to establish conclusively that Donais has lied (and to establish the truth of plaintiffs' claims).

37. Further, a case management conference must address this crisis immediately. The audio evidence is central to the breach of fiduciary duty claim and provides impeachment evidence regarding defendant's submissions. Plaintiff cannot be forced to litigate "with both hands tied behind their backs" by being prevented from presenting evidence that establishes liability. The Court has an obligation to establish workable procedures for

submitting evidence in formats the e-filing system cannot accommodate, particularly when such evidence is material to dispositive motions.

38. Moreover, the timing and sequencing of evidentiary submissions requires coordination. If the Court rules on defendant's motion to dismiss, including his one-sided affidavits and other extraneous materials, without first addressing plaintiff's counter-evidence and impeachment materials, plaintiff will be denied the opportunity to present rebuttal evidence. This creates a procedural Catch-22 where plaintiff must simultaneously defend against dismissal arguments while being prevented from introducing the very evidence that conclusively defeats those arguments. The case management conference would thus provide an appropriate forum for establishing orderly procedures that ensure both parties can present relevant evidence under clear, consistent rules.

39. Additionally, plaintiffs may need to file a protective order regarding the audio evidence as it contains privileged communications, but requires clarification on whether such a motion is necessary and what procedures apply. These evidentiary issues require judicial guidance that written motion practice alone cannot resolve or provide.

## VII. THE PROCEDURAL CRISIS REQUIRES IMMEDIATE RESOLUTION

40. The situation plaintiff faces represents a genuine procedural crisis without clear resolution absent judicial guidance. The e-filing system's inability to process audio files creates a technical barrier to evidence submission. Court staff's explicit refusal to accept in-person filing creates an administrative barrier. The combination leaves plaintiff without any available mechanism for submitting material evidence.

41. This is not a situation where plaintiff failed to follow clear procedures or ignored available alternatives. Plaintiff previously attempted to file materials conventionally and was turned away. Plaintiff attempted to use the e-filing system and discovered it cannot accommodate the file format. Having exhausted available options, plaintiff properly seeks judicial guidance establishing workable submission procedures.

42. The Court has authority/responsibility to ensure procedural mechanisms do not prevent parties from presenting material evidence. When technical limitations create barriers to access, courts must establish alternative procedures ensuring substantive rights are not lost to administrative obstacles. This principle applies with particular force when evidence is central to dispositive motions, going directly to material factual disputes.

## VIII. THE EVIDENCE ADDRESSES MATERIAL FACTUAL DISPUTES

43. The audio evidence is not tangential or collateral to the issues before the Court. It directly addresses a key central factual dispute underlying both the motion to dismiss and the motion for partial summary judgment: whether an attorney-client or prospective client relationship existed on January 9, 2017, and whether Donais breached fiduciary duties arising from that relationship.

44. Donais's 2017 affidavit contains specific factual assertions about the 1-9-17 consultation and surrounding events, and the nature of the attorney-client relationship. The audio recording contradicts these assertions demonstrably and definitively. The evidence goes to the heart of defendant's core defense.

45. Moreover, the evidence's strength makes its consideration particularly appropriate. Rather than creating a "swearing match" where the Court must choose between competing affidavits, the audio provides objective documentation that resolves certain disputed issues. Courts should welcome evidence that removes factual disputes from the realm of credibility assessments and places them on firm objective foundations. The truth-seeking function of litigation is best served when courts have access to definitive evidence rather than conflicting sworn statements.

46. Further, the pending motion for partial summary judgment relies substantially on establishing the consultation's existence, content, and resulting fiduciary duties. The audio evidence establishes these facts conclusively, supporting summary judgment in plaintiff's favor. Conversely, if the Court were to grant dismissal while preventing plaintiff from presenting evidence conclusively establishing liability, the resulting injustice would be profound. Plaintiff cannot be forced to litigate "with both hands tied behind their backs" by technical filing barriers that prevent presentation of dispositive evidence.

## IX. THE COURT'S GUIDANCE SERVES JUDICIAL EFFICIENCY

47. Far from being frivolous, plaintiff's motion seeks to establish clear procedures that will facilitate orderly resolution of evidentiary issues while protecting legitimate confidentiality interests. The in-camera review procedure proposed in the motion allows the Court to assess the probative value of the evidence while ensuring that any privileged communications remain protected.

48. The alternative; requiring plaintiff to proceed without clear guidance on evidence submission procedures; would create greater inefficiency and potential confusion. By establishing clear protocols now, the Court can avoid repeated motions and disputes over evidence handling as the case progresses.

## X. FURTHER SPECIFIC REBUTTAL TO DONAIS' OBJECTION

49. Contrary to Donais' assertion that "*Donais has moved to dismiss the amended complaint, and the plaintiffs may not now submit additional "evidence" in support of their objection*", the court has not ruled on the motion to dismiss the amended complaint. The plaintiff still may provide sur-reply to the defendant's reply to the objection to the motion to dismiss. The audio evidence also supports the plaintiff's motion for partial summary judgment. The need to submit evidence arose because the defendant submitted evidence in a motion to dismiss, which is not permitted. Donais submitted evidence but then now wants to block plaintiff's ability to submit impeachment evidence. He evidently wants the game to be rigged in his favor.

50. This evidence proves that there was a fiduciary relationship between plaintiffs and Donais, and that Donais breached fiduciary duty. It would be unjust to deprive the plaintiff of the ability to submit this evidence.

51. Plaintiff could not submit this evidence previously without court instruction. There is no way plaintiff could submit this evidence previously because, as noted before, the court staff turned plaintiff away when attempting to submit filings in person, stating that all submissions must be by electronic filing, with no exceptions.

52. Plaintiff wants to submit this evidence in accordance with the court rules but could not do it as an exhibit to the objection to the motion to dismiss.

53. Further, submitting audio evidence that contains privileged information to the court requires special procedures to protect its confidentiality. In New Hampshire Superior Court, a motion requesting an in camera review of the evidence and seeking an order to seal the record is acceptable. This allows the judge to review the material privately to make determinations regarding privilege and/or admissibility. Also, the evidence is relevant to the motion to dismiss and the judge needs to consider it to make a fair ruling.

54.  [Note: This request also includes a request for the judge to review the privileged audio recording in camera (in chambers).  The evidence is privileged (i.e., attorney-client, work product, among others, etc.). Disclosure of the information would cause harm that outweighs the public's right to access the court record.].

10

## XI. THE ALTERNATIVE CREATES FUNDAMENTAL UNFAIRNESS

55. If the Court denies the motion and prevents plaintiff from presenting the audio evidence, the resulting procedural landscape would result in systematic unfairness. Donais will have successfully introduced false sworn statements to support dismissal while preventing plaintiff from presenting evidence establishing those statements are false. This one-sided evidentiary presentation violates basic principles of adversarial litigation and due process. Further, the Court would be forced to evaluate the motion to dismiss based on an incomplete and misleading factual record. Donais's affidavit would stand unchallenged despite objective evidence proving it false. The Court's fact-finding would be compromised by lack of access to material evidence establishing the truth. This outcome serves neither justice nor judicial efficiency.

56. Furthermore, preventing evidence submission based on technical filing barriers rather than substantive evidentiary principles sets dangerous precedent. If courts allow administrative obstacles to prevent presentation of material evidence, parties will be denied meaningful access to justice based on procedural technicalities unrelated to the evidence's relevance or probative value.

## XII. DONAIS REQUEST FOR ATTORNEY FEES IS UNWARRANTED AND FRIVOLOUS

57. Donais's request for attorney fees is particularly inappropriate given that his own conduct necessitated this motion. Had Donais not attached sworn statements containing false representations to his motion to dismiss, there would be no need for procedures to submit contradictory evidence. The motion directly responds to Donais's strategic choices in motion practice, making it the natural and necessary response.

58. The NH Supreme Court has emphasized that attorney fee awards require extraordinary circumstances and clear evidence of frivolous conduct lacking any reasonable basis. Plaintiff's motion addresses legitimate procedural concerns arising directly from Donais's decision to introduce sworn statements that can be contradicted by objective evidence. The motion is grounded in established legal principles, responds to genuine technical barriers, and seeks relief properly within the Court's authority. No basis exists for fee sanctions.

59. Additionally, Donais's pattern of conduct undermines his credibility in characterizing plaintiff's motions. Throughout this litigation, Donais has filed repetitive attacks going back to issues already resolved, has violated court orders by attaching sealed materials, and has repeatedly made factual assertions without supporting

11

affidavits. His complaint about plaintiff's motion practice lacks the standing that should come from one who engages in exemplary conduct.

### XIII. CONCLUSION

60. Donais's objection ignores the fundamental principle that parties who introduce sworn statements into motion practice cannot insulate those statements from contradiction. The audio evidence directly impeaches material representations Donais voluntarily placed before this Court. Established precedent permits consideration of contradictory evidence during motion practice, particularly when the evidence goes to core factual disputes underlying dispositive motions.

61. The motion seeks reasonable procedural guidance addressing genuine technical limitations in the filing system while protecting legitimate confidentiality interests through in-camera review. This represents responsible case management serving judicial efficiency rather than frivolous motion practice. The timing is proper because the need arose directly from Donais's strategic choice to attach sworn statements to his motion, and plaintiff retains procedural rights to respond to those materials.

62. The Court should welcome rather than reject evidence that definitively resolves factual disputes through objective documentation rather than competing affidavits. Truth-seeking is the fundamental purpose of litigation, and the Court should have access to evidence establishing truth conclusively rather than being forced to choose between self-serving sworn statements.

63. The procedural crisis created by technical filing barriers combined with the evidence's material importance to pending dispositive motions warrants immediate intervention establishing workable submission procedures.

64. Donais's complaint about "repetitive and frivolous" motions would carry more weight if it came from someone who had not consistently made false statements about material facts. A defendant whose pattern of deception necessitates impeachment procedures can hardly complain when such procedures are requested.

65. WHEREFORE, plaintiff respectfully requests that this Court deny defendant's objection and grant the relief requested in the motion to establish procedures for audio evidence submission and in-camera review.

Respectfully submitted,
/s/ Andre Bisasor
ANDRE BISASOR

Date: October 30, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
ANDRE BISASOR

# Exhibit 5

Filed
File Date: 11/4/2025 10:58 AM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

**PLAINTIFF ANDRE BISASOR'S REPLY TO DEFENDANT DONAIS' OBJECTION TO PLAINTIFF'S MOTION TO CONVERT TO SUMMARY JUDGMENT AND/OR ALLOW DISCOVERY**

1. Plaintiff Andre Bisasor hereby replies to Defendant Craig Donais' objection to Bisasor's motion for limited discovery and/or conversion to summary judgment. Donais' objection spans barely one page and offers zero substantive response to the procedural violations identified in Bisasor's motion. This non-response confirms the very gamesmanship that necessitates the relief sought.

## I. SUMMARY OF GROUNDS FOR DISCOVERY

2. The discovery necessitated by Donais' introduction of extrinsic materials in his motion to dismiss will likely reveal additional facts supporting amendment of the complaint. Specifically:

3. First, discovery will reveal the full extent of Donais' disclosures of confidential information. Donais' own admissions establish he disclosed information to Akridge, Terrell, his family members, Crime-Line board members, and police. Discovery of communications with these individuals will likely reveal additional unauthorized disclosures and the specific harm caused by each disclosure.

4. Second, discovery will reveal when Donais first fabricated the racism accusation and to whom he disclosed it before filing his March 2017 affidavit. Mark Cornell's Attorney Discipline Office interview notes suggest none of the attorneys interviewed (O'Brien, Terrell, Snow) were told about this alleged accusation, indicating it may have been deceptively fabricated specifically for litigation purposes.

5. Third, discovery will clarify the full scope of information Donais obtained from the O'Brien consultation on behalf of Anderson. O'Brien's 1-51-17 text message to Anderson shows Donais rendered detailed legal opinions about the contract claims, innkeeper rules, and eviction issues. This level of detail requires more information than Donais admits receiving, suggesting the O'Brien consultation was more substantive than Donais' affidavit acknowledges.

6. Fourth, discovery will reveal what information Donais shared with Terrell beyond the January 11, 2017 email. At the April 27, 2017 hearing, Terrell testified inconsistently about what information he received from Donais, alternating between claiming he received information through Akridge versus directly from Donais, and claiming not to recall what was discussed. Discovery of communications between Donais and Terrell will clarify the extent to which Homewood's defense team benefited from confidential information.

1

7. Fifth, discovery will determine whether Donais performed any actual conflict check before representing Homewood, as he claims in his affidavit, or whether this is another fabrication designed to obscure his knowing violation of Rule 1.18. The chronology of events suggests no legitimate conflict check could have occurred because Donais already knew from his conversations with Akridge that Bisasor was involved in the Homewood case.

8. Sixth, discovery may reveal additional parties who received confidential information from Donais, expanding the scope of the breach of confidentiality claim and potentially adding parties who benefited from the breach.

9. New Hampshire courts favor liberal amendment of pleadings, particularly where discovery reveals additional facts supporting claims. See Petition of Ridgely, 138 N.H. at 244; Beane v. Dana S. Beane & Co., 160 N.H. 708, 715 (2010) (amendments should be allowed unless opposing party would be prejudiced). The facts uncovered through discovery necessitated by Donais' motion to dismiss will provide grounds for more specific allegations regarding the full scope of his fiduciary duty breaches. See Collision Communications, Inc. v. Nokia Corporation, 1:20-cv-00949, (D.N.H.)(2020)( "Here, Collision alleges that agreement was reached based on the parties' communications, which appears to raise a factual issue, a situation that is discussed in the next paragraph in TLT Const. Corp….Because no discovery plan has been entered in this case, however, to the extent Collision's allegations may be wanting, there is no deadline for Collision to move to amend the complaint.").

## II. DONAIS' EVASIVE NON-RESPONSE DEMONSTRATES THE PROBLEM

10. Donais' objection contains no citation to authority, no analysis of procedural standards, and no response to the specific violations identified. Instead, he simply declares that Bisasor's motion "duplicates" Anderson's motion and requests attorney fees. This conclusory assertion, devoid of legal analysis, exposes the weakness of his position.

11. When a party introduces new evidence in reply briefs while claiming the opposing party cannot respond, objects to every procedural remedy, and then dismisses legitimate objections as "frivolous," the appropriate remedy is precisely what Bisasor seeks. Courts recognize that such systematic suppression of procedural rights warrants intervention. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018) (recognizing dangers when "defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint" and noting risks of "premature dismissals of plausible claims that may turn out to be valid after discovery").

## III. THIS COURT'S JUNE 5, 2025 ORDER ESTABLISHES CLEAR BOUNDARIES

12. Most significantly, Donais' objection ignores this Court's explicit guidance in its June 5, 2025 Order that "*consideration of materials outside the pleadings is improper on a motion to dismiss.*" Despite this clear directive, Donais repeated the identical

procedural violation in his motion to dismiss the amended complaint, including many of the very same documents the Court previously found improper. This willful disregard compounds the procedural violation.

13. When a court provides clear guidance about improper motion practice, repeating those exact violations while introducing additional evidence demonstrates contempt for judicial authority. The fact that Donais now objects to every procedural remedy to address his violation, while claiming no legitimate basis exists for the relief sought, confirms his intent to exploit procedural irregularities for tactical advantage.

### IV. DONAIS' MOTION RELIES ON EXTENSIVE MATERIALS OUTSIDE THE PLEADINGS CREATING MULTIPLE AREAS RIPE FOR DISCOVERY

14. Donais attached 142 pages of exhibits to his 9-page motion to dismiss, including: (1) his own March 13, 2017 affidavit; (2) affidavits from 8 years ago that have never been cross-examined; (3) an unsigned 60-page motion to dismiss from a different case (Exhibit H); (4) unauthenticated emails between third parties; (5) phone records; and (6) cherry-picked pleadings from prior proceedings. Donais then added approximately 60 pages of additional exhibits in his reply to plaintiffs' objection, including previously missing exhibits K and L.

15. These materials introduce disputed facts that directly contradict allegations in the amended complaint. A detailed analysis of specific areas requiring discovery follows.

### A. Discovery Regarding the January 5, 2017 O'Brien-Donais Communication

16. <u>Factual Dispute Created by Donais</u>: In paragraph 1 of his March 2017 affidavit (Exhibit A to Motion to Dismiss), Donais claims: "*On Thursday, January 5, 2017, I received a cell call after business hours from Attorney Robert O'Brien which lasted approximately five (5) minutes. Attorney O'Brien and I talked about an unrelated matter involving a mutual client, and Attorney O'Brien also mentioned a potential case if I was interested.*"

17. Why Discovery Is Required: This statement creates multiple factual disputes requiring discovery:

   a. <u>Contradiction with O'Brien's Own Statements</u>: O'Brien's 1-18-17 affidavit (attached to various defense pleadings) states: "*I reached out to Attorney Donais via email and received an automated reply that he would be unavailable. I called his cellphone and asked if he would be interested in a new matter, using the same words listed above. No names or specific circumstances were discussed with Attorney Donais. He declined my offer to share any other information I had on the matter.*"

   b. O'Brien's affidavit makes NO mention of discussing "an unrelated matter involving a mutual client." Discovery is needed to determine: (a) what unrelated matter Donais claims they discussed; (b) who the purported mutual

client was; (c) how much time was spent on this unrelated matter versus Anderson's case; (d) whether O'Brien can corroborate this claim.

c. Contradiction with O'Brien's Text Message to Anderson: O'Brien sent Anderson a text message on January 5, 2017, at 6:15 PM stating: "*I spoke with Attorney Donais. He said you have a great contract case for the overcharges. He said the innkeeper rules would likely apply to your situation. Which allows for 'no cause' evictions. He would not opine on the discrimination claims outside his experience.*"

d. This text message demonstrates that Donais rendered substantive legal opinions on Anderson's case. Discovery is needed to determine: (a) what specific facts O'Brien conveyed to Donais to enable such detailed legal analysis; (b) whether Donais' claim that he "declined to learn more" (paragraph 2 of his affidavit) is truthful given his provision of detailed legal opinions; (c) what notes, if any, Donais made during or after the O'Brien call; (d) whether Donais discussed this matter with anyone else between January 5-9, 2017.

e. Contradiction with Cornell ADO Interview: Mark Cornell of the NH Attorney Discipline Office interviewed O'Brien in August 2020. Cornell reported that O'Brien told him: "*He seems to recall that Mr. Donais did not think the innkeeper/landlord issue was 'cut and dry.*'" This statement proves O'Brien discussed enough case details for Donais to render nuanced legal analysis about the complexity of the innkeeper/landlord distinction.

f. Discovery is needed regarding: (a) Cornell's full interview notes and recordings; (b) whether Donais disclosed to Akridge, Terrell, or others that he had already analyzed the innkeeper/landlord issue before being hired; (c) notes, records or time entries related to Donais and Obrien's legal consultations with Bisasor and Anderson, and time entries for any conflict check Donais claims to have performed.

### B. Discovery Regarding the January 9, 2017 Bisasor-Donais Consultation
### i. Factual Disputes Created by Donais:

18. Donais' March 2017 affidavit makes numerous assertions about the January 9, 2017 call that are contradicted by the complaint and other evidence, creating extensive need for discovery.

19. The Voicemail Message Dispute: Donais claims in paragraph 3 of his affidavit: "*On Friday, January 6th, after I had left for the day and after business hours, an office telephone message was received requesting a return call from a Massachusetts phone number requesting assistance on a real estate matter.*"

4

20. <u>Why Discovery Is Required</u>: Bisasor's voicemail stated: "*Hello, my name is Andre and I am calling about a tenant legal matter. I understand that you practice landlord-tenant law. I wanted to see if I could discuss a legal matter with you. Please give me a call back at 781-492-5675. The matter is somewhat urgent so if you can, please call be back as soon as it is practical.*"

21. Discovery is needed regarding: (a) the actual voicemail recording from Donais' phone system; (b) any transcription or notes Donais made from the voicemail; (c) why Donais falsely claims the voicemail mentioned "real estate matter" when it actually said "tenant legal matter"; (d) whether this false statement was made knowingly.

### ii. The "Bedsore" Fabrication:

22. Donais claims in paragraph 4 of his affidavit: "*I returned the call and spoke with a person who identified himself as 'Andre', and what sounded like 'Bedsore' as a last name. I had some difficulty clearly understanding the caller and his pronunciation.*"

23. <u>Why Discovery Is Required</u>: Bisasor never stated his last name on the January 9, 2017 call. The phone call was initiated by Donais, who asked "May I speak to Andre?" Bisasor simply responded "This is he." Discovery is needed regarding: (a) any notes or records from Donais showing when and how he learned Bisasor's last name; (b) communications between Donais and Akridge/Terrell prior to January 9, 2017 that may have disclosed Bisasor's full name; (c) why Donais made this specific false statement; (d) whether the "Bedsore" reference was intended to demean or mock Bisasor's name.

24. <u>Critical Contradiction with Berry Call</u>: Elliott Berry's contemporaneous notes from his January 17, 2017 call with Donais state that Donais said "he spoke to some guy" and "he didnt get any specific facts from Andre--that he is not even sure that Mr. Anderson gave him his name." How did Donais go from telling Berry on January 17, 2017 that he wasn't sure he got Bisasor's name, to claiming in his March 13, 2017 affidavit that he heard "Andre Bedsore"? Discovery is needed to explain this evolution of Donais' story.

### iii. Content of the Consultation:

25. Donais claims in paragraph 8 of his affidavit: "*During the conversation with Andre, I did not provide him with any legal advice nor did I receive or make any private, confidential or privileged communications with Andre.*"

26. <u>Why Discovery Is Required:</u> Phone records establish the call lasted 7 minutes (from 10:43 AM to 10:50 AM on January 9, 2017). The complaint describes substantive legal discussion including: (a) whether a TRO would likely be granted; (b) analysis of contract claims versus innkeeper defenses; (c) discussion of 540-A petition strategy; (d) advice about relevant statutes and likelihood of success, etc.

5

27. Discovery is needed regarding: (a) whether Donais made any notes during or after the call; (b) whether Donais' claim of no legal advice contradicts his pattern of providing legal opinions (as evidenced by the O'Brien text); (d) why Donais called back if he had no interest in the case.

#### iv. The Racism Accusation Fabrication:

28. Donais claims in paragraph 7 of his affidavit: "*Andre became even more upset that I was declining to represent him such that he intimated I was discriminating against him which I immediately denied since it was not true.*"

29. Why Discovery Is Required: This is perhaps the most serious false statement requiring extensive discovery. Bisasor never mentioned race, racism, or discrimination during the call. Discovery is needed regarding: (a) when Donais first made this accusation (it does not appear in his January 11, 2017 email to Akridge/Terrell); (b) whether Donais told Berry, Akridge, Terrell, or O'Brien about this alleged accusation before filing his March 2017 affidavit; (c) what motivated Donais to fabricate this specific accusation; (d) whether Donais disclosed to anyone that Bisasor never identified himself as Black or a minority during the call.

30. Critical Evidence from Other Sources: Elliott Berry's 1-17-17 notes indicate Donais told Berry that he[Donais] "*questioned whether he[Bisasor] made the call to him [Donais] just to conflict him [Donais] out of the case.*" Here, Donais seeks to allege a damaging insinuation against Bisasor, that Bisasor called Donais to conflict him out of the case. This insinuation is completely different from alleging that Bisasor accused Donais of racism. It is evident that Donais was trying to find ways to discredit Bisasor in the eyes of Berry. But it never occurred to Donais to tell Berry about Bisasor's racism accusation against Donais. Discovery is needed to determine when and why Donais' story changed from insinuating the "conflict out" accusation against Bisasor, to alleging that Bisasor accused Donais of "racism".

31. Mark Cornell's ADO interview notes show that none of the attorneys interviewed (O'Brien, Terrell, Snow) reported being told by Donais that Bisasor accused him of racism. This suggests Donais never mentioned this alleged accusation to anyone until his March 2017 affidavit. Discovery is needed to confirm timelines of this fabrication.

#### C. Discovery Regarding Donais' Knowledge of the Parties and Property

32. Factual Dispute Created by Donais: Donais claims in paragraph 9 of his affidavit: "*Since I did not learn or from either Attorney O'Brien or Andre about the party involved was the Homewood Suites by Hilton, I thereafter agreed to serve as local counsel when I was contacted by Attorney Karl Terrell.*"

33. Why Discovery Is Required: This statement is contradicted by multiple pieces of evidence:

6

34. <u>January 11, 2017 Email to Akridge</u>: In his email to Akridge and Terrell on January 11, 2017, at 12:34 PM, Donais wrote: "*What I know is that I received a call from 'Andre' who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeepe*r."

35. This email establishes that Donais learned: (a) specific details about discrimination in food services; (b) overcharges for room use; (c) that it was a mixed-use property with rental and innkeeper functions. Donais claims that these details came from the January 9, 2017 call with Bisasor. Yet, the fact about plaintiffs being minorities was not mentioned on the 1-9-17 call with Bisasor.

36. Discovery is needed regarding: (a) how Bisasor described being "*treated differently for food services because they were minorities*" when Bisasor never disclosed his race to Donais; (b) whether this information came from the O'Brien call on January 5, 2017; (c) all communications between Donais and Akridge/Terrell before January 11, 2017; (d) whether Akridge disclosed the property name to Donais before Donais claims he performed a conflict check.

37. <u>Akridge's 5-4-17 Affidavit</u>: Akridge states in paragraph 13: "*During that call, I briefly explained the nature of the case, the fact that it involved the Homewood Suites in Nashua, and the need for local counsel. Donais then let me know that he had received a call from an individual named 'Andre,' who said he was looking for an attorney to represent him in a landlord-tenant matter. The situation, as Donais said he understood it, involved some type of mixed-use property. He said he did not remember the caller identifying this property as the Nashua Homewood Suites. In any event, in piecing this together, we concluded that 'Andre' was quite likely Mr. Bisasor.*"

38. Akridge admits they "pieced together" that Andre was Bisasor. Discovery is needed regarding: (a) what information Akridge provided about the plaintiffs before Donais disclosed the "Andre" call; (b) whether Donais connected "Andre" to the Homewood property based on information from O'Brien.

39. <u>The 540-A Petition Was Public Record</u>: Anderson filed her 540-A petition on 1-9-17 (the same day as the Donais-Bisasor call). This petition identified Homewood Suites as defendant. Discovery is needed regarding: (a) when Donais first saw the 540-A petition, and whether Akridge or Terrell sent Donais a copy before 1-11-17; (b) when Donais made the connection between "Andre" and the Homewood case and that this occurred before Donais agreeing to represent Homewood.

7

**D. Discovery Regarding Donais' Communications with Akridge and Terrell**

40. <u>Factual Disputes Created by Donais</u>: Donais claims in paragraph 10 of his affidavit: "*When the case was generally explained to me by Attorney Terrell, I then briefly advised Attorney Terrell of the prior limited contact that had taken place involving Andre and sent him an email about it on January 11, 2017. To the best of my knowledge and belief, I did not further discuss the prior telephone conversation with Andre with Attorney Terrell beyond the one email.*"

41. <u>Why Discovery Is Required</u>: This statement raises numerous questions requiring discovery:

42. All Communications Between Donais, Akridge, and Terrell: Discovery is needed of: (a) all phone call logs between Donais and Akridge from January 5-18, 2017; (b) all phone call logs between Donais and Terrell from January 5-18, 2017; (c) all emails beyond the January 11, 2017 email; (d) any text messages or other electronic communications; (e) communications with Terrell's assistant Felicia Brogden.

43. <u>Akridge's 1-11-17 Email:</u> On 1-11-17, Akridge sent an email to Donais stating: "*I laid out the broad issues with Craig to give him some background and he indicated that he may have received a call from Bissasor yesterday. He is did not take his case.*"

44. Discovery is needed regarding: (a) what "broad issues" Akridge laid out; (b) when this conversation occurred; (c) what Donais told Akridge about the Bisasor call before sending his 12:34 PM email.

45. <u>Terrell's Testimony at April 27, 2017 Hearing</u>: At the preliminary injunction hearing in Superior Court, Terrell testified that he received information from Donais through Akridge about the Bisasor consultation. Discovery is needed regarding: (a) what specific information Terrell received; (c) whether Terrell received information beyond what was in the January 11, 2017 email; (d) how this information was used in preparing the 1-17-17 motion to dismiss.

46. <u>The January 17, 2017 Motion to Dismiss</u>: This 60-page motion (filed by both Donais and Terrell) addressed specific issues that Bisasor discussed with Donais on January 9, 2017, including: (a) the mixed-use property argument; (b) innkeeper versus landlord-tenant distinctions; (c) treatment in food services; (d) contract versus tenancy claims.

47. Discovery is needed regarding: (a) who drafted each section of the motion to dismiss in Nashua circuit court and procured the exhibits that were later stricken or withdrawn and now reattached in the motion to dismiss in this court; (b) what role Donais played beyond "reviewing the pleadings before signing them"; (c) whether/why/how the motion incorporated confidential information from the January 5 and January 9, 2017 consultations; (d) how/why the motion to dismiss contained information about issues not disclosed in the 540-A petition.

**E. Discovery Regarding the January 18, 2017 Hearing and Withdrawal**

48. <u>Factual Disputes Created by Donais</u>: Multiple aspects of the January 18, 2017 hearing require discovery:

8

49. <u>Judge Moore's Findings</u>: The amended complaint alleges that Judge Paul Moore determined Donais had a conflict of interest and needed to withdraw.

50. <u>Donais' Statements at the Hearing</u>: Elliott Berry's notes indicate Donais made several statements to Judge Moore. Discovery is needed regarding: (a) whether Donais admitted discussing case details with Bisasor; (c) whether Donais disclosed the O'Brien consultation at that time; (d) what reasons Donais gave for agreeing to withdraw.

51. <u>Conversations at the Courthouse</u>: The complaint alleges Donais had conversations with Akridge and Terrell at the courthouse on January 18, 2017, advising them of the conflict issues. Discovery is needed regarding: (a) what Donais told Akridge and Terrell; (b) whether Donais disclosed the O'Brien consultation at that time; (c) what information Donais shared about the substance of his consultations with O'Brien and Bisasor.

### F. Discovery Regarding Subsequent Disclosure of Confidential Information

52. <u>Factual Disputes Created by Donais</u>: The amended complaint alleges Donais disclosed confidential information from the consultations to multiple third parties. Discovery is needed regarding:

53. <u>Disclosures to Family Members</u>: Discovery regarding: (a) what Donais told his wife Mary about the case; (b) what Donais told his sons Garrett and Aiden; (c) when these disclosures occurred; (d) whether Donais disclosed details of the January 9, 2017 conversation; (e) whether Donais told family members that Bisasor accused him of racism.

54. <u>Disclosures to Manchester Crime-Line Board</u>: Discovery regarding: (a) emails and communications with Crime-Line board members; (b) what information Donais disclosed about plaintiffs; (c) whether Donais disclosed details of the confidential consultations; (d) when these disclosures occurred; (e) what motivated these disclosures.

55. <u>Disclosures to Police</u>: Discovery regarding: (a) Donais' June 18, 2019 statement to police; (b) what Donais told police about the January 2017 consultations; (c) whether Donais disclosed protected client information; (d) any police reports or recordings of Donais' statements.

56. <u>Public Disclosures</u>: Discovery regarding: (a) Donais' statements made to the Advisory Committee on Rules or to members thereof; (b) what Donais said about plaintiffs in communications to the Advisory Committee; (b) whether those statements referenced the confidential consultations, or were false/defamatory.

### IV. CONVERSION TO SUMMARY JUDGMENT OR LIMITED DISCOVERY IS REQUIRED UNDER ESTABLISHED LAW
#### A. New Hampshire Law Mandates Conversion When Matters Outside Pleadings Are Presented

57. The New Hampshire Supreme Court has made clear that factual allegations in briefs or memoranda may not be considered when deciding a motion to dismiss, particularly when the facts contradict those alleged in the complaint.

Energynorth Nat. Gas, Inc. v. Continental Ins. Co., 146 N.H. 156, 163 (2001) (citing Iannelli v. Burger King Corp., 145 N.H. 190, 193 (2000)). Yet Donais seeks to do exactly that.

58. When matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment, and all parties must be given reasonable opportunity to present pertinent material. See White v. Bloom, 621 F.2d 276, 278 (8th Cir. 1980); see also Mass. R. Civ. P. 12(d) (when court considers matters outside pleadings, motion must be converted to summary judgment and parties given opportunity to present material).

59. See Collision Communications, Inc. v. Nokia Corporation, 1:20-cv-00949, (D.N.H.)(2020)("Further, when evidence of the parties' communications is central to the claims and the interpretations of the evidence is disputed, the claims are better addressed in a properly supported motion for summary judgment.").

60. New Hampshire courts further have allowed limited discovery prior to ruling on a motion to dismiss, particularly where the motion raises fact-based defenses that require evidentiary rebuttal. See State v. Laux, 168 N.H. 404, 409 (2015) (discovery may be granted upon showing of particularized need). It should also be noted that, in Collision Communications, Inc. v. Nokia Corporation, 1:20-cv-00949, (D.N.H.)(2020), the court stated (see **Exhibit B**):

> While Nokia may prefer to make its arguments based on its selection of documents and communications while avoiding all discovery from Collision, that procedure would be unfairly prejudicial to Collision. Instead, a decision…should be based on a well-developed and properly presented record.

61. Note also Collision Communications, Inc. v. Nokia Corporation, 1:20-cv-00949, (D.N.H.)(2020)("An exception exists when undisputed evidence, such as a videotape, shows that only one version of the facts is true so that no reasonable jury could believe the contrary story. Karmue, 2020 WL 1290605, at *11.").

 **B. Federal Precedent Supports Limited Discovery to Address Factual Assertions in Motion to Dismiss**

62. Federal courts applying analogous rules recognize that when a defendant's motion relies on factual assertions outside the complaint, limited discovery is appropriate to allow plaintiff to oppose the motion. See Doe v. Brown Univ., 943 F.3d 61, 71 (1st Cir. 2019) (Rule 56(d) allows discovery where facts essential to opposition are unavailable); Hannon v. Beard, 645 F.3d 45, 49-50 (1st Cir. 2011) (district court properly allowed discovery before ruling on motion to dismiss where factual issues required development).

63. The First Circuit has recognized that "district courts have discretion to allow discovery" before ruling on dispositive motions "where such discovery might reveal facts that would preclude judgment" for the moving party. Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992). This principle applies with particular force where, as here, the defendant introduces extensive extrinsic evidence creating factual disputes.

64. See also  Collision Communications, Inc. v. Nokia Solutions and Networks OY, No. 20-cv-949-JD, 2021 WL 1165048, at *5 (D.N.H. Mar. 24, 2021)("Having relied on extrinsic materials for at least some of its arguments, Nokia did not follow the constraints of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). It is not the court's duty to work around the situation that Nokia created. Further, given the nature of the claims and Nokia's arguments in defense, the issues are better addressed in the context of a fully developed record".).

65. Similarly, Donais did not follow the constraints of a motion to dismiss under the Rules of Civil Procedure and under the court's 6-5-25 order, and further the court should not be seeking to find a workaround to help facilitate Donais' abuse and violation of the rules and its own orders. Therefore, much like the Collision case, the issues in this case at this stage, and give the nature of defendant's arguments/tactics/maneuvers, are better addressed in the context of a fully developed record.

**C. Ninth Circuit Precedent Recognizes Dangers of Premature Dismissal Based on Extrinsic Evidence**

66. In Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018), the Ninth Circuit addressed the problem of defendants "pil[ing] on numerous documents to their motions to dismiss to undermine the complaint." The court warned against "premature dismissals of plausible claims that may turn out to be valid after discovery." Id. The court emphasized that when "defendants face an alluring temptation" to introduce extensive documentation at the motion to dismiss stage, courts must guard against procedural unfairness. Id.

67. Here, Donais has succumbed to exactly that temptation, attaching 142 pages of exhibits initially, then adding another 60 pages in reply. This pattern creates the precise risk the Khoja court identified: dismissal based on one party's carefully curated presentation of selected documents, without opportunity for the opposing party to test those materials through discovery or present countervailing evidence.

68. Further, in Collision Communications, Inc. v. Nokia Corporation, 1:20-cv-00949, (D.N.H.)(2020), the court made clear that this approach is not permissible (See also **Exhibit A**):

> A motion to dismiss under Rule 12(b)(6) challenges the plausibility of the claims as alleged in the complaint. RiosCampbell v. U.S. Dept. of Commerce, 927 F.3d 21, 24-25 (1st Cir. 2019). For that reason, the court does not consider documents or materials extrinsic to the complaint except in limited circumstances. Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018). When materials extrinsic to the pleadings are submitted in support of a motion to dismiss under Rule 12(b)(6) and are not excluded by the court, the motion must be converted toa motion for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). Narrow exceptions to the rule against extrinsic materials exist "for documents the authenticity of which is not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The exceptions are often used in cases involving breach of contract where the plaintiff relies on a contract or agreement as the basis of the claim. Doe v. Harvard Univ., 462 F. Supp. 3d 51, 59 (D. Mass. 2020) (citing cases). "That a complaint mentions a document, or even repeatedly refers to the document, is not enough, however, if that document is not integral to

11

the claim or explicitly relied upon as a basis for liability." Id. None of the materials submitted by Nokia was filed with the second amended complaint. Nokia asserts that the materials it submitted fall within the exception for documents relied on in the complaint. Collision contends that the materials do not fall within the exception because Nokia uses additional emails and draft agreements to challenge the allegations in the complaint.

## V. SPECIFIC AREAS REQUIRING DISCOVERY BASED ON DONAIS' EXHIBITS
### A. The March 2017 Donais Affidavit Requires Extensive Discovery

69. Donais' March 13, 2017 affidavit makes at least 15 specific factual assertions that contradict the amended complaint and require discovery to test their accuracy:

   a. "Unrelated matter involving a mutual client" claim (¶1) - requires discovery of what matter, which client, how much time was spent

   b. "Declined to learn more" claim (¶2) - contradicted by legal opinions Donais provided

   c. "Real estate matter" voicemail claim (¶3) - contradicted by actual voicemail content

   d. "Andre Bedsore" name claim (¶4) - contradicted by fact that no last name was mentioned

   e. "Difficulty understanding" claim (¶4) - requires testing through actual recordings

   f. One minute into call recognition claim (¶5) - requires discovery of when Donais learned about O'Brien call

   g. "Asked if got name from O'Brien" claim (¶6) - contradicted by call description in complaint

   h. "No legal advice provided" claim (¶8) - contradicted by call content, O'Brien text & Cornell's interview of Obrien

   i. "No confidential information received" claim (¶8) - contradicted by Donais' own January 11 email

   j. "Discrimination accusation" claim (¶7) - requires discovery of when this claim first appeared

   k. Timing of conflict check claim (¶9) - requires discovery of actual conflict check procedures used by Donais

   l. "Did not know party was Homewood" claim (¶9) - requires discovery of when Donais learned this

   m. "Only one email to Terrell" claim (¶10) - requires discovery of all communications

   n. "Never discussed substance with Terrell" claim (¶14) - contradicted by Terrell testimony

   o. "Never communicated with Anderson" claim (¶15) - requires discovery regarding O'Brien communications

70. Each of these assertions creates a factual dispute that cannot be resolved without discovery.

### B. The O'Brien Documents Create Factual Disputes

71. O'Brien's January 18, 2017 letter states: "*No names or specific circumstances were discussed with Attorney Donais. He declined my offer to share any other information I had on the matter.*"

72. This statement directly contradicts: (a) the detailed legal opinions in O'Brien's January 5, 2017 text to Anderson; (b) Cornell's interview notes showing O'Brien told him Donais analyzed the innkeeper/landlord issue; (c) Donais' knowledge of case details he later disclosed to Akridge and Terrell.

73. Discovery is needed to reconcile these contradictions, including: depositions of O'Brien and Donais about their January 5, 2017 conversation; phone records and any recordings; notes or file materials from both attorneys.

### C. The Akridge Affidavit Requires Discovery to Test Credibility

74. Akridge's May 4, 2017 affidavit makes several assertions requiring discovery:

75. Paragraph 13: Akridge claims Donais "did not remember the caller identifying this property as the Nashua Homewood Suites." Discovery is needed to determine: when Akridge told Donais it was Homewood; whether this was before or after Donais agreed to represent them; whether Donais had already connected "Andre" to the Homewood case.

76. Paragraph 14: Akridge claims Donais "told me very little about the substance of what the caller had said to him." This contradicts: Donais' January 11, 2017 email containing substantial detail; the fact that Donais knew enough to render legal opinions to O'Brien; Terrell's testimony about receiving information through Akridge.

77. Paragraph 16: Akridge claims he "specifically recall[s] asking Mr. Donais if he would have a conflict serving as local counsel, given this conversation with 'Andre.' He responded with conviction that he did not." Discovery is needed regarding: what Donais told Akridge about the conflict analysis; whether Donais disclosed the O'Brien consultation; whether Donais disclosed the substance of the Bisasor consultation.

### D. Phone Records Support Need for Discovery

78. The phone records Donais attached show: (a) O'Brien called Donais on January 5, 2017, for 5 minutes; (b) Donais called Bisasor on January 9, 2017, and the call lasted until 10:50 AM (approximately 7 minutes from 10:43 AM).

79. These records establish the duration of the consultations but not their content. Discovery is needed to determine: what was actually discussed during these calls; whether Donais made notes or recordings and whether that contradicts Donais' claims about the limited nature of the consultations.

### VI. DONAIS CANNOT DISPUTE FACTS THROUGH A MOTION TO DISMISS

80. The factual disputes Donais creates include: (1) whether an attorney-client relationship existed; (2) the content and nature of the January 9, 2017 conversation; (3) the content and nature of the January 5, 2017 O'Brien-Donais conversation; (4) the extent of confidential information disclosed; (5) whether any privilege was waived and by whom;

(6) whether a contract existed; (7) whether Donais' conduct was "reprehensible"; (8) when Donais learned the identity of Homewood as the property; (9) what information Donais shared with Akridge, Terrell, and others; (10) whether Bisasor accused Donais of racism.

81. These are precisely the types of genuine issues of material fact that cannot be resolved on a motion to dismiss and require either conversion to summary judgment with attendant procedural protections or limited discovery.

82. In paragraph 10 of his motion, Donais asserts "*there was no contract between the parties in this case, actual or implied*." But the existence of a contract is a factual issue. The defendant cannot dispute facts through a motion to dismiss, but he has done so anyway. Given that he has done so, discovery is appropriate.

83. Similarly, Donais asserts in paragraph 17 that "*Nothing about the defendant's alleged conduct could be characterized as 'reprehensible*.'" Here, he seeks to contradict the amended complaint. This warrants discovery regarding all statements made by Donais, to whom, what exactly he said, how many times, and what was the effect or intended effect. These are factual questions that can only be resolved after discovery.

## VII. ONE-SIDED AFFIDAVITS CANNOT ESTABLISH FACTS WITHOUT CROSS-EXAMINATION

84. By his own admission, Donais attaches affidavits and pleadings from 8 years ago, including his own affidavit and those of his colleagues. But this does not tell the whole story. Each attachment contains numerous evidentiary attachments designed to introduce new facts into this case that are outside the amended complaint and to contradict facts in the amended complaint.

85. These materials include: (1) multiple one-sided affidavits by affiants including those who have never been cross-examined or tested under oath; (2) phone records of other parties not part of the case; (3) multiple unauthenticated emails between third parties that have never been subject to verification; (4) several cherry-picked motions containing factual assertions and arguments designed to attack plaintiffs' credibility; (5) an unsigned 60-page motion that Donais only "corrected" by attaching the signed version in his reply.

86. The strategy here is clear: to use these attachments as a trojan horse to introduce factual disputes to attack the amended complaint while attempting an end-run around the prohibition against doing so. Discovery is more than warranted under these circumstances. Donais needs to be examined under oath via deposition and written discovery regarding all that was said by him to Terrell, Akridge, Terrell's assistant, O'Brien, Berry, and others. Donais cannot

offer tailored limited one-sided affidavits from 8 years ago and expect that to be the end of it in terms of establishing facts and contradicting facts in this lawsuit, with no opportunity to test these affiants and himself under oath.

87. The Court should be skeptical of self-serving declarations made years after the events in question, particularly where: (a) the declarant has a direct financial and professional interest in the outcome; (b) the declarations contradict contemporaneous documents and statements; (c) the declarant's story has evolved/changed over time; (d) the declarations are offered to defeat claims that the declarant has a fiduciary duty to the plaintiffs.

## VIII. DONAIS' APPROACH CREATES FUNDAMENTAL PROCEDURAL UNFAIRNESS

88. Donais attaches over 200 pages of exhibits spanning 8 years, then demands immediate response while claiming plaintiffs have seen these before. This position ignores the substantial work required to organize, prepare, and incorporate responsive exhibits with proper headers and numbering, beyond the analytical work of reviewing substance and preparing substantive response.

89. Moreover, Donais filed defective exhibits (unsigned pleadings in Exhibit H), waited for objections, then introduced expanded versions in reply including new exhibits K and L, then objects to allowing plaintiffs any response. This sequence violates every principle of fair adversarial proceedings and demonstrates why discovery and further briefing is necessary to prevent tactical abuse of procedural rules.

90. NH Superior Court Rule 7 provides that unsigned filings may be stricken and proceedings may continue as though the filing had not been made. Donais acknowledged in his pleading that his Exhibit H was unsigned, confirming he was aware this was improper, yet he attached it anyway[1]. He then waited until his reply to include the signed version with additional exhibits. This calculated approach creates exactly the type of procedural trap courts shouldn't permit[2].

91. The Court should not reward this gamesmanship. When a party deliberately files defective materials, then purportedly "corrects" them only in reply with additional materials, the proper remedy is to allow the opposing party discovery and surreply to address the corrected and expanded materials.

## IX. THE NECESSITY FOR DISCOVERY BECOMES CRITICAL WITHOUT A HEARING

92. Donais has systematically objected to plaintiffs' motion for hearing while simultaneously introducing new evidence and procedural arguments in reply that were not presented in his original motion. If the Court resolves this potentially

---

[1] Plaintiffs could not be expected to respond to a defective pleading with unsigned illicit attachments, thus causing prejudice to the plaintiffs with respect to the objection to the motion to dismiss amended complaint.

[2] See NH federal court case that chided defendant for similar conduct with respect to improper use of reply to objection tp its motion to dismiss. Collision Communications, Inc. v. Nokia Solutions and Networks OY, No. 20-cv-949-JD, 2021 WL 1165048, at *5 (D.N.H. Mar. 24, 2021)("Nokia, however, failed to raise Rule 9(b) in its motion to dismiss, and instead, improperly, raised it in its reply").

case-ending motion based solely on written submissions, fundamental fairness demands either that impermissible material be stricken or that plaintiffs be afforded discovery to test the credibility of competing factual assertions.

93. Allowing defendants to introduce new evidence in reply while denying plaintiffs opportunity to respond violates fundamental principles of adversarial proceedings. Without a hearing and without discovery, the Court will have no opportunity to examine witnesses, test credibility of competing factual assertions, or explore the procedural irregularities identified. The necessity for discovery becomes even more critical under these circumstances.

94. Other courts have recognized this problem. In Bond v. Blum, 317 F.3d 385, 397 (4th Cir. 2003), the Fourth Circuit held that when "the parties present competing versions of the facts," the district court must "accept the plaintiff's version of the facts as true" and may not "weigh the parties' competing evidence." When a defendant introduces extrinsic evidence to contradict the complaint, the proper remedy is conversion to summary judgment or allowance of discovery, not dismissal based on the defendant's preferred version of disputed facts.

## X. GROUNDS FOR AMENDMENT OF THE COMPLAINT ARE CLEAR

95. Discovery will also reveal grounds for further amendment of the complaint. The materials Donais has introduced, combined with discovery, will likely reveal: (1) additional instances of disclosure of confidential information; (2) additional parties who received such disclosures; (3) the full extent of information Donais shared with Akridge, Terrell, and defense team; (4) when Donais first fabricated the racism accusation and to whom he disclosed it; (5) additional evidence of the prospective attorney-client relationship; (6) evidence of Donais' consciousness of guilt through evolving/changing/contradictory stories.

96. Federal courts have recognized that discovery may reveal facts supporting amendment of pleadings. See Foman v. Davis, 371 U.S. 178, 182 (1962) (amendments should be freely given when justice requires); Palmer v. Champion Mortgage, 465 F.3d 24, 30 (1st Cir. 2006) (amendments appropriate where discovery reveals additional facts).

97. New Hampshire courts similarly favor liberal amendment. Petition of Ridgely, 138 N.H. 241, 244 (1994) ("amendments to pleadings are favored in this state and should be allowed freely"); Beane v. Dana S. Beane & Co., 160 N.H. 708, 715 (2010) (court should allow amendment "unless the opposing party would be prejudiced").

98. Discovery here will likely reveal facts supporting additional claims or more specific factual allegations regarding: the full extent of Donais' breach of duties under Rule 1.18; additional parties who received confidential information; the

chronology of Donais' evolving false statements; the specific harm caused by each disclosure; the role of other defense team members in receiving and using confidential information.

99. To the extent Donais may argue that plaintiffs failed to present evidence to support some of their claims, that evidence is appropriate subject for discovery.

## XI. THE REQUEST FOR ATTORNEY FEES IS IMPROPER AND UNWARRANTED

100. The request for attorney fees is particularly inappropriate. Motions for limited discovery and conversion serve important functions in preventing procedural abuse. When a party introduces new evidence in reply, violates court orders, and systematically objects to every procedural remedy, the opposing party has rights to seek appropriate relief.

101. The New Hampshire Supreme Court has emphasized that attorney fee awards require extraordinary circumstances and clear evidence of frivolous conduct lacking any reasonable basis. Harkeem v. Adams, 117 N.H. 687, 690-91 (1977). Plaintiffs' motion addresses legitimate procedural concerns arising directly from Donais' decision to introduce extraneous material in his motion to dismiss and attendant reply. The motion is grounded in established legal principles and seeks relief properly within the Court's authority.

102. Moreover, it is improper to combine a motion for attorney fees into an objection. See N.H. Super. Ct. R. 7(g) ("Objections to pending motions and affirmative motions for relief shall not be combined in one filing."). This continual violation of the rules supports sanctions or warning to defendant, especially when done to be oppressive.

103. Donais' pattern of requesting attorney fees for any plaintiff filing constitutes abuse of process designed to chill legitimate advocacy, and is particularly problematic when targeting pro se litigants exercising fundamental procedural rights. The Court should reject this pattern of fee requests designed to intimidate plaintiff from exercising their rights.

## XII. THE DUPLICATIVE NATURE CLAIM LACKS MERIT

104. Donais argues Bisasor's motion duplicates Anderson's motion. This is incorrect. While both plaintiffs seek similar relief, Bisasor filed his motion as a supplement and alternative pleading, explicitly noting in paragraph 1 that it serves "in the alternative" as a supplement to the reply to Anderson's objection. The procedural posture required separate filings, and the motions are not identical in content or argumentation.

105. Further, the fact that both plaintiffs identify the same procedural violations by Donais doesn't make their motions frivolous; it confirms the pattern of procedural abuse. When both plaintiffs independently recognize that Donais violated court orders and procedural rules, this validates rather than undermines the legitimacy of their concerns.

17

106.    The principle that multiple plaintiffs may file separate motions, if they so choose, is well-established in both federal and state jurisprudence. Each plaintiff has the right to make his or her own case. See Thibodeau v. Comcast Corp., 912 A.2d 874, 885 (Pa. Super. Ct. 2006) ("A fundamental principle of justice is everyone should have a day in court."). NH rules of procedure do not prohibit plaintiffs from filing separate motions addressing similar issues.

## XIII. CONCLUSION

107.    Donais' bare-bones objection confirms the concerns raised in the motion. His inability to address substantive procedural violations, his failure to cite supporting authority, and his attempt to characterize legitimate procedural objections as frivolous demonstrate exactly the type of procedural bullying the requested relief is designed to prevent.

108.    The Court should recognize that Donais' pattern of conduct (introducing extensive materials outside the pleadings, violating explicit court guidance, introducing new evidence in reply, and systematically objecting to every procedural remedy) creates precisely the type of one-sided proceeding that undermines adversarial integrity. His objection's failure to address these substantive concerns while requesting attorney fees for having to respond to legitimate procedural objections confirms the calculated bad faith nature of his approach.

109.    The careful analysis above demonstrates that virtually every exhibit Donais attached, and virtually every factual assertion in his March 2017 affidavit, creates factual disputes requiring discovery. The Court cannot properly evaluate a motion to dismiss when the movant has introduced 200+ pages of extrinsic materials creating dozens of factual disputes about matters central to the claims.

110.    Accordingly, the Court should grant plaintiff's motion and either: (1) convert Donais' motion to dismiss to one for summary judgment with appropriate notice and opportunity for discovery; or (2) grant limited pre-answer discovery as outlined in plaintiff's motion before ruling on the motion to dismiss. Such relief is necessary to preserve procedural fairness and prevent the type of systematic abuse that Donais' conduct represents. Further, the Court should also deny Donais' request for attorney fees as inappropriate under these circumstances where legitimate procedural violations warrant judicial intervention.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

Date: November 3, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
ANDRE BISASOR

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Collision Communications, Inc.

v.                                    Civil No. 20-cv-949-JD

Nokia Solutions and Networks OY


O R D E R

Collision Communications, Inc. brings breach of contract and related claims against Nokia Solutions and Networks OY, arising from their failed business relationship.  Nokia moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6).  In support of the motion, Nokia submitted copies of two draft agreements and copies of emails covering the period between June 1 and December 18, 2017.  Collision objects to the motion on the grounds that it was improper for Nokia to submit materials extrinsic to the complaint and that the motion fails on the merits.

A motion to dismiss under Rule 12(b)(6) challenges the plausibility of the claims as alleged in the complaint.  Rios-Campbell v. U.S. Dept. of Commerce, 927 F.3d 21, 24-25 (1st Cir. 2019).  For that reason, the court does not consider documents or materials extrinsic to the complaint except in limited circumstances.  Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018).  When materials extrinsic to the pleadings are submitted in support of a motion to dismiss under

Rule 12(b)(6) and are not excluded by the court, the motion must be converted toa motion for summary judgment under Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 12(d).

Narrow exceptions to the rule against extrinsic materials exist "for documents the authenticity of which is not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  The exceptions are often used in cases involving breach of contract where the plaintiff relies on a contract or agreement as the basis of the claim.  Doe v. Harvard Univ., 462 F. Supp. 3d 51, 59 (D. Mass. 2020) (citing cases). "That a complaint mentions a document, or even repeatedly refers to the document, is not enough, however, if that document is not integral to the claim or explicitly relied upon as a basis for liability."  Id.

None of the materials submitted by Nokia was filed with the second amended complaint.  Nokia asserts that the materials it submitted fall within the exception for documents relied on in the complaint.  Collision contends that the materials do not fall within the exception because Nokia uses additional emails and draft agreements to challenge the allegations in the complaint.

2

While it is true that Collision refers to and quotes from some emails in its complaint, Nokia is not relying exclusively on those parts of the parties' email communications.  Instead, Nokia is introducing additional communications from the parties' email chains and two draft agreements in order to challenge Collision's allegations in the complaint.  Reliance on these documents is more appropriate in the context of a motion for summary judgment when Collision will have the opportunity to respond with evidence of its own.

## Conclusion

For the foregoing reasons, Nokia's motion to dismiss (document no. 55) is denied without prejudice to filing a properly supported motion for summary judgment.


        SO ORDERED

                                    /s/ Joseph A. DiClerico, Jr.
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge
December 23, 2020
cc:  Counsel of record.

3

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Collision Communications, Inc.

    v.                                    Civil No. 20-cv-949-JD
                                        Opinion No. 2021 DNH 057
Nokia Solutions and Networks OY


O R D E R

Collision Communications, Inc. brings claims against Nokia Solutions and Networks OY, arising from the parties' failed business relationship.  The court previously denied, without prejudice, Nokia's motion to dismiss because Nokia supported its motion with reference to materials extrinsic to the complaint. The court noted that the issues would be more appropriately addressed through a motion for summary judgment.  Nokia has filed a motion for summary judgment but also moves to reconsider the order that denied its motion to dismiss.  Collision asks, pursuant to Federal Rule of Civil Procedure 56(d), that consideration of the motion for summary judgment be delayed pending necessary discovery.


I.   Motion for Reconsideration

Nokia asks the court to reconsider arguments raised in the motion to dismiss that it contends did not require consideration

of documents that are extrinsic to the complaint.[1]  In support, Nokia lists eight arguments it made in its motion and/or in its reply that it contends could be decided based only on the allegations in the complaint.  Collision objects to the motion.

"A motion to reconsider an interlocutory order of the court, meaning a motion other than one governed by Fed. R. Civ. P. 59 or 60, shall demonstrate that the order was based on a manifest error of fact or law . . . ."  LR 7.2(d). Reconsideration will not be granted based on new theories or old arguments that were presented and rejected.  D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., 2020 DNH 051, 2020 WL 1517060, at *1 (D.N.H. Mar. 30, 2020).  Reconsideration is an extraordinary remedy that is to be used sparingly.  Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).

Nokia argues that Collision agreed in its objection to the motion to dismiss to have the court consider the license and integration agreements and invites the court to review the motion to dismiss to determine whether certain arguments and

---

[1] One such argument asserted by Nokia is whether a breach of the implied covenant was alleged with sufficient specificity to satisfy Federal Rule of Civil Procedure 9(b).  Nokia, however, failed to raise Rule 9(b) in its motion to dismiss, and instead, improperly, raised it in its reply.  Further, the argument appears to have little or no merit.

issues might have been resolved without reference to other materials. Nokia agrees for purposes of reconsideration that New Hampshire law, rather than Delaware law, should govern.[2] The court declines to engage in the reconsideration efforts that Nokia proposes.

Having relied on extrinsic materials for at least some of its arguments, Nokia did not follow the constraints of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[3] It is not the court's duty to work around the situation that Nokia created. Further, given the nature of the claims and Nokia's arguments in defense, the issues are better addressed in the context of a fully developed record.

---

[2] In the motion to dismiss, Nokia asserted that Delaware law governed the contract claims, based on provisions in the license and integration agreements and presented its arguments based on Delaware law with footnotes citing New Hampshire law. The question about the governing law is another reason to postpone consideration of a challenge to the claims on the merits when a decision on choice of law may be made.

[3] For example, while Nokia now argues that the court can dismiss the breach of contract claim based only on the allegations in the complaint and the copies of the agreements, Nokia also relied on various emails for purposes of the motion to dismiss. In the motion to dismiss, Nokia represented that a June 1 email could be considered because it was referenced in ¶ 67 of the complaint. See doc. no. 55-1, at *5 n.4. At ¶ 67 of the second amended complaint (doc. no. 54), however, Collision quotes from a June 9 communication. Further, when evidence of the parties' communications is central to the claims and the interpretations of the evidence is disputed, the claims are better addressed in a properly supported motion for summary judgment.

3

## II.   Collision's Request under Rule 56(d) for Discovery

As part of its objection to Nokia's motion for summary judgment, Collision invokes the need for discovery under Rule 56(d).  Rule 56(d) provides:  "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  In support of a motion under Rule 56(d), a party must file "an authoritative statement that: (i) explains [its] current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion."  Doe v. Brown Univ., 943 F.3d 61, 71 (1st Cir. 2019).

### A.  Progress of Case

This case was filed in the District of Massachusetts in November of 2019.  Nokia moved to dismiss for lack of personal jurisdiction and for failure to state a claim.  In order to cure

4

the defect in personal jurisdiction, the court transferred the case to this district in September of 2020.

Collision filed a second amended complaint in October, and Nokia moved to dismiss in November.  Collision requested that a preliminary pretrial conference be scheduled, which the court denied while the motion to dismiss was pending.  On December 23, 2020, the court denied Nokia's motion to dismiss, without prejudice to filing a properly supported motion for summary judgment.

Nokia moved for reconsideration of the order denying the motion to dismiss and moved for summary judgment on the same day.  The parties filed a joint motion to extend the briefing deadlines on those motions.  The court granted the motion and also directed that no pretrial conference would be scheduled until after resolution of the pending motions.  Therefore, there has been no pretrial conference in this case, and no discovery order has issued.

B.  Need for Discovery

In support of its request under Rule 56(d), Collision filed the affidavit of its counsel to show why discovery is needed before it can fully respond to the motion for summary judgment. Doc. no. 75.  Counsel states in the affidavit that Collision

5

sought discovery from Nokia for internal documents pertaining to the parties' dealings with respect to Nokia's efforts to obtain licensed technology from Collision. Nokia refused to provide any discovery pending resolution of its pending motions.

Counsel states that discovery is necessary to obtain internal documents and communications about the parties' dealings in order to show the entire context of those dealings. Counsel also states that Collision needs to depose the individuals from Nokia, particularly its executives, who were involved in Nokia's efforts to obtain licensed technology from Collision. Further, counsel states that Nokia's internal documents and depositions are necessary to determine whether Nokia deliberately delayed finalization of the agreement in writing.

In response, Nokia contends that the discovery Collision seeks is irrelevant to its claims so that no discovery is necessary to respond to the pending motion for summary judgment. Nokia argues that the breach of contract claim depends on whether there is objective evidence that the parties reached an agreement, so that the information Collision hopes to discover about the Nokia officers' intentions and understandings will not

change the outcome.[4]  Nokia further argues that the complaint is insufficient to allege the other claims.[5]

Because an evidentiary record generally is necessary for a summary judgment decision, a motion for summary judgment is rarely considered before discovery.[6]  Karmue v. Remington, 2020 WL 1290605, at *11 (D.R.I. Mar. 18, 2020) (citing Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 884 (1990) (noting summary judgment appropriate "after adequate time for discovery")).  No discovery has been undertaken in this case, and therefore the record has

---

[4] Nokia further argues, based on Massachusetts law rather than New Hampshire law, that contract formation is a legal question not a factual question, citing TLT Const. Corp. v. RI, Inc., 484 F.3d 130, 135 (1st Cir. 2007).  The legal question arises only when the formation of the contract is undisputed or is based on writings.  Id.  Here, Collision alleges that agreement was reached based on the parties' communications, which appears to raise a factual issue, a situation that is discussed in the next paragraph in TLT Const. Corp.  Nokia also contends that Collision cannot proceed under a theory of an implied contract because the complaint lacks allegations to support that theory.  Because no discovery plan has been entered in this case, however, to the extent Collision's allegations may be wanting, there is no deadline for Collision to move to amend the complaint.

[5] Nokia again raises an issue about whether the claims are alleged with sufficient specificity as required by Federal Rule of Civil Procedure 9(b).  The court will not address that issue in this context.

[6] An exception exists when undisputed evidence, such as a videotape, shows that only one version of the facts is true so that no reasonable jury could believe the contrary story.  Karmue, 2020 WL 1290605, at *11.  That is not the situation presented here.

not been developed for purposes of summary judgment.[7]  See In re

PHC, Inc. Shareholder Litig., 762 F.3d 138, 144 (1st Cir. 2014)

(noting that denial of relief from a pending motion for summary

judgment when there has been no opportunity for discovery is

likely to be an abuse of discretion).  While Nokia may prefer to

make its arguments based on its selection of documents and

communications while avoiding all discovery from Collision, that

procedure would be unfairly prejudicial to Collision.[8]  Instead,

a decision on a motion for summary judgment should be based on a

well-developed and properly presented record.


## Conclusion

For the foregoing reasons, Nokia's motion for

reconsideration (document no. 62) is denied.

Nokia's motion for summary judgment (document no. 63) is

denied without prejudice to refile that motion or a new motion

---

[7] Importantly, this is not a case where the parties have
completed discovery, and yet the nonmoving party asserts a need
for additional discovery to oppose summary judgment.  See e.g.
Booker v. Pfizer, Inc., 847 F.3d 52, 61-62 (1st Cir. 2017);
Woods Hole Oceanographic Inst. V. ATS Specialized, Inc., --- F.
Supp. 3d ---, 2021 WL 220098, at *3 (D. Mass. Jan. 21 2021).

[8] To that point, Nokia faults Collision for failing to
present evidence to support some of its claims.  That evidence
may be an appropriate subject for discovery.

once discovery is complete or has progressed to the point of providing a sufficiently-developed record to support the motion.

As the pending motions have been resolved, a pretrial conference shall be scheduled.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

March 24, 2021

cc: Counsel of record.

9

# Exhibit 6

Filed
File Date: 10/17/2025 12:03 PM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## PLAINTIFF ANDRE BISASOR'S REPLY TO DEFENDANT'S OBJECTION TO MOTION FOR CASE MANAGEMENT HEARING

1. Plaintiff Andre Bisasor submits this reply to defendant's objection to motion for case management hearing.

2. Note: Plaintiff ask that the court reads this reply carefully and really listens to what plaintiff has to say, and apply a pro liberal construction to his words, in light most favorable to him, granting the benefit of the doubt where possible.

### I.  INTRODUCTION

3. This reply addresses critical case management issues not fully developed in the original motion but which demonstrate with even greater force why immediate judicial intervention through case management conference is essential. Defendant's assertion that nothing has changed and that a hearing is unnecessary "at this stage" fundamentally mischaracterizes the severity and scope of the systemic problems requiring resolution.

4. This reply further address critical case management issues that defendant's objection ignores entirely. These issues demonstrate why interactive judicial guidance through case management conference is not merely appropriate but essential to fair adjudication of this case.

5. This reply also serves to provide the Court with additional concrete examples and specific instances of case management problems that have intensified since the filing of the original motion. While the motion articulated broad categories of procedural dysfunction, this reply furnishes the detailed factual record demonstrating why these problems cannot be resolved through continued written submissions but require interactive judicial guidance through case management conference. The examples provided herein establish that defendant's characterization of the motion as unnecessary ignores the documented constitutional violations, systemic barriers, and procedural chaos that have prevented meaningful case progression for over four years.

### II. COURT STAFF CONDUCT AND ACCESS TO JUSTICE ISSUES

6. During the course of this litigation, plaintiffs have had to seek clarification/guidance from the clerk/court staff. This is in part due to the fact that the court has not held a case management conference where these issues can be addressed at one place and time before the judge. Instead plaintiffs must rely on communicating with the clerk staff in order to fill the gap. Furthermore, there are issues that often arise related to filings, rejection of filings, clerical errors, technical failures, and other procedural bottlenecks that require that the plaintiffs contact the clerk office/staff including both the e-filing court staff and the courthouse clerk staff.

7. Unfortunately, the interactions between plaintiffs and court staff have created significant barriers to meaningful court access that require immediate judicial attention. Multiple court clerks, including Jane, Nancy, Macie, Karen, and Alma, have demonstrated impatience, refused to answer procedural questions, and terminated telephone communications without resolution. For example, Jane hung up on plaintiff Bisasor during a critical filing deadline inquiry, while Nancy similarly terminated a call regarding plaintiff's attempt to clarify ADA filing procedures and other issues. It should be noted that Nancy[1] explicitly stated that she "does not know anything about the ADA in the court," revealing the profound training deficiencies that have resulted in repeated federal law violations.

8. These incidents are not isolated occurrences but reflect a pattern of treatment that raises serious concerns about equal access to justice. As an African American pro se litigant, plaintiffs deserve the same respect, courtesy, and patience that court staff would extend to a former governor, senator, corporate CEO, or senior partner at a prominent law firm. Procedural fairness requires equal treatment regardless of representation status or racial identity, yet the documented pattern suggests systematic disadvantaging of unrepresented litigants of color. Research demonstrates that implicit bias affects judicial administration, and the documented conduct patterns warrant comprehensive judicial examination. *See* Peter D. Blanck et al., *Discrimination and Bias Reported by Lawyers with Disabilities and Lawyers Who Identify as LGBTQ+*, 38 Touro L. Rev. 961 (2020).

9. Furthermore, e-filing staff have failed to respond to emails, have not returned calls, and have demonstrated similar impatience when plaintiff seeks clarification on filing requirements. This communication breakdown creates impossible situations where plaintiff must file documents without clear guidance, often resulting in rejections that prejudice plaintiff's ability to meet deadlines and present claims effectively.

### III. EX PARTE COMMUNICATIONS AND DEFENDANT'S IMPROPER INFLUENCE

10. Defendant has engaged in a troubling pattern of ex parte communications with court staff in an attempt to prejudice plaintiffs and obtain favorable treatment. The e-filing manager explicitly informed plaintiff that defendant has called repeatedly to complain about plaintiffs and to request adverse action against them, without plaintiff's knowledge or the Court's authorization. This pattern mirrors defendant's conduct documented in other court proceedings where similar complaints about improper communications emerged. It is one thing to contact the court staff about one's own filings or procedural impediments. It is another thing to contact the court staff about other parties.

---

[1] Nancy evidently is a deputy clerk so this failure and lack of knowledge is even more concerning/troubling.

2

11. These ex parte attempts to influence court staff violate basic principles of procedural fairness and create an uneven playing field where defendant enjoys behind-the-scenes advocacy while plaintiff must rely solely on proper court filings. The New Hampshire Rules of Professional Conduct prohibit such conduct, and the Court must address this pattern to ensure both parties have equal access to neutral court administration. The case management conference provides the necessary forum for establishing clear boundaries regarding permissible communications and implementing safeguards against future improper contacts.

### IV. CRITICAL ERRORS IN DEADLINE CALCULATIONS

12. Also, court staff (Alma) provided plaintiff with an incorrect deadline calculation for filing the amended complaint, stating the deadline as 8-1-25, when the actual deadline was 8-6-25. This error precisely matched the deliberately incorrect deadline that defendant propounded in an attempt to create prejudice against plaintiff. The coincidence of court staff providing the same erroneous deadline calculation as defendant's strategic misrepresentation raises serious questions about whether defendant's ex parte communications influenced staff conduct to plaintiff's detriment.

13. Such errors are not mere administrative inconveniences but create substantial prejudice by misleading plaintiff about critical filing deadlines. When court staff provide incorrect procedural information, pro se litigants who lack resources or knowledge to verify such information face potential loss of substantive rights through no fault of their own. The case management conference must address procedures for ensuring accurate information provision and establishing accountability when incorrect information or error causes prejudice.

### V. ONGOING CONFIDENTIALITY VIOLATIONS

14. Confidential medical documentation remains publicly available on the court docket despite plaintiffs' repeated written notifications to the Court. Specifically, a medical letter published last year continues to be accessible in violation of ADA confidentiality requirements and federal disability rights law. Additionally, defendant has filed public documents that incorporate sealed court orders, further breaching confidentiality protections mandated by law.

15. These ongoing violations create irreparable harm to plaintiff's privacy rights. The ADA requires strict confidentiality of medical information, and courts have a nondelegable duty to ensure compliance. *See* EEOC v. Prevo's Family Market, Inc., 135 F.3d 1089, 1094 (6th Cir. 1998) (holding employer violated ADA by maintaining insufficiently confidential medical records). The Court's failure to remediate these violations despite written notice creates ongoing harm requiring immediate intervention through case management conference.

## VI. E-FILING SYSTEM DYSFUNCTION AND PREJUDICE

16. The e-filing system/processes operate with systematic deficiencies that disadvantage plaintiffs and prevent effective case prosecution. Filings experience constant delays of two to three days between submission and docketing, creating a temporal gap where plaintiffs have complied with deadlines but the Court remains unaware of the filing. This delay caused specific prejudice when plaintiffs filed a redacted version of a sealed document, but the Court concluded plaintiffs had failed to file the required redacted version because the efiling staff had not yet processed the filing.

17. The e-filing staff have also suddenly changed technical filing requirements, midstream without prior notice, creating moving targets that make compliance impossible. For example, at one point, the e-filing staff suddenly required that sealed documents, and redacted versions of the same and the attendant motion to seal, must all be filed in a single e-filing envelope, rather than separately (as had been previously done/accepted), despite no prior notice of this requirement change. When plaintiff complied with the previous protocol, the e-filing staff rejected the accompanying motion to seal and then simultaneously exposed plaintiff's confidential medical letter to public view under the premise that no motion to seal was filed (which is outrageous), rather than simply reject the confidential medical letter, as well, so as to protect the confidentiality thereof. This procedural trap demonstrates how inconsistent requirements create severe prejudice/violations of plaintiff's rights. This requires case management intervention.

18. Moreover, e-filing staff frequently reject filings without providing any explanation or notation regarding the grounds for rejection. This leaves plaintiff unable to cure deficiencies or understand what correction is required, effectively denying meaningful access to the court/filing system. The Federal Courts of Appeals Manual requires that "the clerk's office should work with pro se filers to resolve technical issues that might result in rejection of filings." Similar standards should apply in state court to ensure equal access.

## VII. THE NEED FOR AUDIO EVIDENCE SUBMISSION CREATES PROCEDURAL CRISIS

19. The pending motion for partial summary judgment on breach of fiduciary duty relies substantially on plaintiffs' refutation of the evidence via a 2017 affidavit provided by the defendant, detailing what was said on a January 9, 2017 consultation between plaintiff and defendant, as well as concerning surrounding events both before and after.

20. Plaintiffs have refuted this affidavit evidence from Donais, by supplying their own affidavits (under seal), along with other documentary evidence via plaintiffs' motion for partial summary judgment and attendant memorandum and exhibits. This refutation directly contradicts defendant's characterizations of the content of the consultation.

21. However, rather than relying on the documentary evidence alone and running the risk that the court may reduce this to an issue of dueling affidavits, Bisasor also has audio evidence that he would like to supply to the court that impeaches the defendant and his 2017 affidavit, showing that Donais has lied and continues to lie to the court via the false 2017 affidavit, thereby establishing conclusively that Donais breached fiduciary duty. This evidence provides conclusive impeachment material regarding Donais' 2017 affidavit and third-party affidavits attached to the motion to dismiss. This evidence establishes conclusively the fiduciary relationship Donais seeks to deny through dismissal.

22. Litigation should be a search for the truth. The court had an opportunity to learn the truth definitively from this audio evidence. It is critical that the court allows this audio evidence to be submitted and heard by the court. What will the court do if it learns that Donais and his lawyer Hilliard have conspired to blatantly lie to this court or submitted false evidence to this court, in order to pervert the cause of justice? The court must be interested in this because lawyers cannot so glibly lie to the court and get away with it without consequence. The court cannot allow Donais and Hilliard to "make a fool" out of this court. This definitive evidence must be heard. This definitive evidence will prove to the court that not only have Donais and Hilliard been intentionally lying to the court but also that the entire motion to dismiss has been fraudulently presented with false evidence designed to frustrate and undermine the fair administration of justice.

23. However, there exists an impossible procedural situation where plaintiff possesses dispositive evidence but cannot submit it through any available means. The e-filing system cannot process audio files, and so the audio evidence cannot be submitted through the e-filing system due to technical limitations, creating a procedural dilemma requiring judicial guidance on submission protocols. The Court must clarify how such evidence should be submitted in person, and whether in-camera review is appropriate given the sensitive nature of the communications.

24. It should be noted that when plaintiff has attempted to submit physical materials by hand/in-person to the court, by coming to the courthouse, the courthouse clerk staff Alma turned plaintiff away, explaining that once signed up for e-filing, the Court does not accept conventional/in-person filings and all materials must be submitted electronically. This creates a Catch-22 where plaintiff must file everything electronically but cannot file critical evidence because the electronic system cannot process it. Hence, because the Court has previously rejected in-person filing attempts, and no alternative submission protocol exists, this creates a situation where plaintiff possesses dispositive evidence but

cannot present it under current procedural constraints. Interactive judicial guidance is necessary to establish workable submission procedures that allow this critical evidence to reach the Court.

25. The case management conference must address this crisis immediately. The audio evidence is central to the breach of fiduciary duty claim and provides impeachment evidence regarding defendant's submissions. Plaintiff cannot be forced to litigate "with both hands tied behind their backs" by being prevented from presenting evidence that establishes liability. The Court has an obligation to establish workable procedures for submitting evidence in formats the e-filing system cannot accommodate, particularly when such evidence is material to dispositive motions.

26. Moreover, the timing and sequencing of evidentiary submissions requires coordination. If the Court rules on defendant's motion to strike without first addressing plaintiff's counter-evidence and impeachment materials, plaintiff is forced to respond to undefined grounds while being denied the opportunity to present rebuttal evidence. This creates a procedural Catch-22 where plaintiff must simultaneously defend against dismissal arguments while being prevented from introducing the very evidence that defeats those arguments. The case management conference provides the appropriate forum for establishing orderly procedures that ensure both parties can present relevant evidence under clear, consistent rules.

27. Additionally, plaintiffs may need to file a protective order regarding the audio evidence as it contains privileged communications, but requires clarification on whether such a motion is necessary and what procedures apply. These evidentiary issues require judicial guidance that written motion practice alone cannot resolve or provide.

### VIII. COUNTER-EVIDENCE AND IMPEACHMENT MATERIAL COORDINATION

28. Defendant attached over 142 pages of exhibits to his motion to dismiss, including his 2017 affidavit and various third-party declarations. Plaintiff must file counter-affidavits and counter-evidence to rebut this material, but the procedural sequence creates fundamental unfairness. If the Court does not first address plaintiff's motion to strike the extraneous materials, plaintiffs face an impossible choice: file an objection addressing only pleading sufficiency while ignoring the extensive evidence defendant improperly introduced, or file counter-evidence and thereby capitulate to defendant's procedural violation.

29. This dilemma demonstrates why case management coordination is essential. The Court cannot reasonably expect plaintiffs to respond to the motion to dismiss without knowing what materials will be considered and what standard will apply. If the motion is converted to summary judgment, plaintiffs need discovery and time to develop counter-

evidence. If the materials are stricken, plaintiff's response focuses exclusively on pleading sufficiency. Attempting to prepare for both possibilities simultaneously within compressed deadlines while pro se, is fundamentally unfair and demonstrates the necessity for case management guidance.

### IX. SETTLED DEFENDANTS AND CASE CAPTION PROBLEMS

30. Twenty of the original twenty-one defendants have settled this case and executed confidential settlement agreements, yet they remain embedded in the e-filing system. This creates ongoing practical problems and confidentiality concerns that require judicial intervention. Every filing must navigate an e-filing system that lists all parties despite their settled status, unnecessarily creating confusion and risk that settled parties may receive service due to error.

31. Moreover, defendant has violated these settlement agreements by attaching materials from other proceedings that were subject to retraction, striking and/or sealing requirements. Specifically, the motion to dismiss filed by Donais and Terrell, in Nashua Circuit Court in 2017, contained material that was stricken in the circuit court in 2017, and was either sealed or had certain materials retracted pursuant to the settlement in 2022. Defendant nevertheless attached these materials to his current motion, including purported witness statements (including unsigned ones) about events that allegedly occurred but that never occurred (which statements are false), and which prejudicial statements were retracted or withdrawn by the settling defendants, and yet defendant continues to rely on them to muddy the record and to potentially inflame/prejudice the Court against plaintiffs.

32. The case management conference must address these settlement agreement violations (which settlement negotiations the defendant was involved in, and privy to, and agreed to, before he dropped out at the last minute) and establish procedures for ensuring defendant complies with or honors settlement privacy or retraction obligations/requirements. Plaintiffs cannot properly defend against these false allegations without violating the settlement terms that require confidentiality regarding stricken materials. This creates another impossible procedural situation requiring judicial resolution through interactive case management.

### X. AMENDMENT OF COMPLAINT COMPLICATIONS

33. Plaintiffs also seek to file a second amended complaint, or a supplemental complaint, to formally add defendant parties, add attendant claims, and clarify existing claims, and also correct scrivener errors in the amended complaint. However, multiple obstacles require case management coordination. The Court's arbitrary 25-page limitation for the amended complaint was overly restrictive and prevented plaintiff from adequately explaining claims against new parties with sufficient factual detail. Furthermore, plaintiff needs clarification on the timeline for amendment and

whether subsequent events occurring after the original complaint was filed is acceptable/allowed to be added. This issue was never resolved or clarified, even though plaintiffs raised them previously in the first motion to amend complaint, which was denied as moot.

34. Defendant also tied up this case for over three years with motions to dismiss on service issues and an appeal to the NH Supreme Court, during which time delay the statute of limitations ran on certain claims. This prevents plaintiff from filing a new complaint now incorporating subsequent events after the original complaint was filed, such as events later in 2020, and in 2021 or 2022, and forces plaintiff to seek amendment of the existing complaint to include these subsequent events, yet the procedural constraints make effective such amendment difficult or out-of-reach.

35. Furthermore, a case management conference will provide the necessary forum for establishing reasonable page limits, clarifying amendment timing, and coordinating amendment with pending dispositive motions.

### XI. PROCEDURAL CLARIFICATION REQUIREMENTS

36. Plaintiffs require comprehensive clarification on numerous procedural matters that arise repeatedly but remain unresolved through written filings. These include guidelines for pleading length, permitted attachments, and what constitutes necessary versus gratuitous supplementation. Defendant has continuously attached materials from other cases and other proceedings, forcing plaintiff to relitigate issues already resolved in other forums. When defendant cherry-picks materials from other cases to present without context, plaintiffs face the burden of explaining the full procedural history to prevent the Court from being misled.

37. Moreover, plaintiffs needs clarification on the Court's timing expectations regarding replies and sur-replies. The Court has previously ruled quickly after objections were filed, not allowing adequate time for replies, motions for leave to file sur-replies, motions for reconsideration, or cross-motions. This creates prejudice particularly for pro se litigants who cannot prepare responsive documents as quickly as represented counsel and need the full procedural opportunities to present their positions effectively.

38. The question of pro se accommodation requires judicial clarification. Will the Court apply liberal construction principles when interpreting plaintiff's filings, or will technical pleading requirements be enforced strictly? When are matters too late to raise or renew? What constitutes repetition versus legitimate renewed motions in changed circumstances? Can plaintiffs file ex parte motions unrelated to sealing, such as emergency extension requests? These

fundamental procedural questions cannot be resolved through continued motion practice but require direct judicial guidance establishing clear expectations.

## XII. INADEQUATE RESPONSE TIME FOR VOLUMINOUS SUBMISSIONS

39. Defendant exploits a significant procedural loophole by attaching hundreds of pages of materials to motions while plaintiffs receive compressed deadlines to respond. The recent motion to dismiss included 151 pages of motion with 142 pages of exhibits, yet plaintiffs initially received only a ten-day response period. While the Court granted an extension to twenty days total, this remains inadequate time for a pro se litigant to research, analyze, and respond to such voluminous submissions while simultaneously managing other pending motions and addressing the procedural complications defendant's violations create.

40. Represented counsel have resources, staff, and experience that enable rapid response to complex filings. Pro se litigants lack these advantages and require additional time to review materials, conduct legal research, draft responses, and ensure accuracy. The case management conference must address this disparity and establish response time guidelines that account for filing volume and pro se status to ensure meaningful opportunity to respond rather than perfunctory compliance with inadequate deadlines.

## XIII. ADA POLICY AND PROCEDURES REQUIRE COMPREHENSIVE RESOLUTION

41. The Court has not established clear ADA policies addressing fundamental questions that recur throughout this litigation. The Court has not established clear criteria for what qualifies for ADA accommodations, what documentation if any is required, how requests should be submitted to protect confidentiality, what timeline applies for rulings, whether denials can be reconsidered, and what appeal procedures exist for improper denials or confidentiality breaches, and whether administrative escalation to the Chief Justice is allowed to be pursued?

42. This lack of clarity creates ongoing violations as court staff make ad hoc decisions without consistent standards or adequate training. The case management conference provides the essential forum for establishing comprehensive ADA policies that comply with federal law while providing workable procedures for future requests.

43. These questions require comprehensive answers that provide a framework for future accommodation requests rather than continued ad hoc determinations.

44. Furthermore, plaintiffs seek clarification on whether the Court will hold an oral hearing to address ADA accommodations and disability needs. Even if not mandatory, can the Court exercise discretion to provide such a hearing given the ongoing issues that keep arising from lack of clarification? The pattern of ADA-related problems

9

demonstrates that written motion practice alone cannot resolve these systemic compliance issues. Federal disability rights law requires interactive process and meaningful dialogue, which case management conference provides.

45. Furthermore, the question of whether hearing accommodations will be provided requires immediate clarification. If the Court intends never to hold hearings in this case, that decision raises due process concerns particularly where disability accommodations include oral presentation opportunities. Alternatively, if hearings are available only when they would "assist the Court" rather than ensuring parties are heard, that standard conflicts with fundamental due process principles and ADA requirements. These policy questions require judicial clarification that written motion practice cannot provide.

46. Nancy's acknowledgment that she "does not know anything about the ADA in the court" epitomizes the training deficiencies requiring institutional reform. Court staff need comprehensive ADA training addressing confidentiality requirements, accommodation procedures, and federal law compliance obligations. The case management conference allows an opportunity for the Court to address these institutional deficiencies systematically rather than through reactive responses to individual violations, while demonstrating commitment to adhering to ADA requirements.

## XIV. HEARING CRITERIA AND DUE PROCESS CONCERNS

47. Plaintiffs requires clarification on the criteria for obtaining hearings on contested matters. Is it fair for the Court to proceed four years without holding hearings, including through four successive motions to dismiss after the initial hearing in April 2022? Will the Court never hold hearings on dispositive motions? Are hearings granted only when they will assist the Court, or does due process require hearings when parties request them to be heard?

48. These questions take on constitutional dimensions given plaintiff's pro se status and disability. The fundamental due process principle articulated in *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), that "the fundamental requisite of due process of law is the opportunity to be heard," requires more than written submissions when the complexity of issues and the parties' circumstances warrant oral presentation. Massachusetts Superior Court Rule 9A(c) establishes a presumptive right to hearing on motions to dismiss and summary judgment, recognizing that such dispositive matters warrant oral argument. While New Hampshire has not adopted identical rules, the underlying fairness principles apply with equal force.

49. Moreover, as a non-moving party defending against defendant's sixth motion to dismiss, plaintiff's due process interest in being heard is particularly strong. Plaintiffs did not bring these dispositive motions and should not be

forced to defend against them solely through written submissions when oral presentation would enable more effective advocacy. The pattern of denying hearing requests while systematically ruling in defendant's favor on contested issues creates an appearance of bias that undermines confidence in fair adjudication.

## XV. EXTENSION AND CONTINUANCE POLICIES REQUIRE CLARIFICATION

50. Will the Court allow extensions and continuances in the future? Will such allowances apply equally to both parties, or will defendant continue receiving accommodation while plaintiff faces strict enforcement? What grounds constitute acceptable bases for extensions?

51. The Court needs to establish a standing order on extensions providing clear criteria & ensuring consistent application.

52. Additionally, the timing of rulings on extension requests creates prejudice when the Court does not rule until after the deadline passes. Sometimes court staff do not publish orders on the same day they are issued but delay one or two days. What should plaintiff do in such instances? Will the Court allow at least a short grace period if a requested extension is denied (and/or order is docketed) after the deadline has passed, through no fault of plaintiff?

53. Emergency extension requests require particular attention. Will they be ruled on immediately, or will the Court await objections and replies before deciding? Plaintiffs needs clarity to avoid confusion, anxiety, and stress while ensuring an orderly process rather than arbitrary, haphazard procedures.

54. Also, how will scheduling conflicts and continuances be handled? Defendant previously raised scheduling conflicts and received accommodation; will plaintiffs receive the same consideration?

## XVI. PAGE LIMIT EXCEPTIONS AND ENLARGEMENT STANDARDS

55. What grounds justify exceeding page limits? Will the Court ever allow such requests? The arbitrary 25-page limitation for the amended complaint proved overly restrictive and impeded plaintiff's ability to add parties and explain attendant claims adequately. When plaintiffs have legitimate need for additional space to present complex claims or respond to voluminous submissions, the Court must have clear standards for evaluating enlargement requests rather than categorical denials that prevent effective advocacy.

## XVII. STRUCTURAL INEQUITIES AND SYSTEMIC BARRIERS

56. Multiple structural inequities built into the current case posture systematically disadvantage plaintiffs and require judicial intervention to remedy.  These include but are not limited to the following:

 a.  Plaintiffs cannot be heard in oral hearings despite repeated requests.

 b.  Plaintiffs cannot file an amended complaint exceeding 25 pages despite the need to add parties and claims.

11

c. Plaintiffs could not amend the complaint for over three years to add subsequent events or clarify existing claims while defendant tied up the case with service issues and appeals during which statutes of limitations ran.

d. The Court enforces rigid technical requirements against plaintiffs while applying lax standards to the defendant.

e. Defendant freely files extraneous materials yet plaintiffs are impeded in presenting counter-evidence.

f. Defendant submits his 2017 affidavit as evidence while simultaneously seeking to avoid any discovery regarding that affidavit's content and accuracy.

g. Defendant constantly attacks plaintiff in public filings responding to sealed ADA motions while plaintiff cannot defend publicly because the underlying motions and court orders are sealed.

57. These structural inequities demonstrate systematic disadvantaging that requires comprehensive case management intervention. The cumulative effect of these barriers creates a litigation environment where represented counsel enjoys procedural advantages while pro se litigant faces obstacle after obstacle preventing effective case prosecution.

58. This imbalance violates basic fairness principles requiring judicial correction through case management conference.

## XVIII. DEFENDANT'S RULE VIOLATIONS REQUIRE JUDICIAL ATTENTION

59. Defendant has violated multiple court rules and professional conduct standards without consequence, creating a perception that rules apply only to plaintiffs while defendant enjoys immunity.

60. Specific violations include but are not limited to the following:

a. Defendant files pleadings with the sole intent to embarrass, scandalize, annoy, and burden plaintiffs; asserting facts in pleadings without supporting affidavits; failing to file notice of intent to reply to objections; publicly disclosing sealed court orders; and refusing to provide replies under seal when required.

b. Defendant also files repetitive attacks and engages in gratuitous unnecessary filings including repeatedly going back to plaintiff's requests already ruled on/granted by the Court.

c. Defendant also engages in petty, unbecoming conduct inappropriate for a member of the bar.

d. Defendant lied to the Court about his involvement in settlement negotiations with plaintiffs/Hilton defendants.

e. Defendant amends his objections through reply briefs that effectively seek extensions while simultaneously arguing plaintiffs should not be allowed sur-replies to address these new arguments.

61. The case management conference must address these pattern violations and establish consequences for continued non-compliance. When one party repeatedly violates procedural requirements without sanction while the other party

12

faces strict enforcement, the appearance of preferential treatment undermines the integrity of the proceedings and creates legitimate concerns about impartial adjudication.

## XIX. DISQUALIFICATION OF OPPOSING COUNSEL

62. Plaintiff intends to file a motion for disqualification of Russell Hilliard as defense counsel because Hilliard is a named defendant in the related case, has been referenced in the amended complaint and will be formally added as a party to this case via second amendment, and is a critical witness regarding events at issue. These conflicts of interest create ethical problems that require resolution before proceeding further. The case management conference provides an appropriate forum for addressing these disqualification issues and establishing procedures for transitioning representation if disqualification is granted. The plaintiffs previously filed a motion to disqualify Hilliard in 2022, but it was denied without prejudice by the court, to re-filing at a later time as necessary. Now is that later time as necessary given the current posture of the case. A case management conference is needed to address this issue including timing.

## XX. BIAS AND APPEARANCE OF BIAS CONCERNS

63. Multiple factors create an appearance of bias that requires judicial attention to restore confidence in fair adjudication including but not limited to the following:

a. The Court imposes rigid pleading requirements on plaintiffs while overlooking defendant's procedural violations.

b. The Court enforces strict time requirements against plaintiffs while granting defendant waivers, extensions, etc.

c. The Court issues one-sided warnings to plaintiffs while remaining silent about defendant's questionable conduct.

d. The Court is a co-defendant in the related case, creating potential institutional bias concerns.

e. Disparate treatment compared to other cases suggests overcompensation to avoid appearance of favoritism that ironically creates opposite appearance of bias against plaintiffs.

f. How will the Court weigh conflicting facts and resolve credibility disputes? Will defendant and his counsel receive the benefit of the doubt based on their standing in the New Hampshire legal community while plaintiff's testimony is subjected to heightened skepticism?

64. Research demonstrates that pro se litigants, particularly litigants of color, face systematic bias in judicial proceedings. *See* Anna E. Carpenter et al., *Studying the "New" Civil Judges*, 2018 Wis. L. Rev. 249, 251 (documenting bias against unrepresented parties). The pattern of decisions in this case raises legitimate questions whether such bias is affecting outcomes. The documented pattern of decisions warrants inquiry into whether implicit bias affects case management and substantive rulings.

13

65. The case management conference provides an opportunity to address these concerns directly, establish clear procedural expectations that will be applied consistently, and demonstrate commitment to equal justice regardless of representation status or racial identity. Procedural fairness is essential to substantive justice, and the comprehensive problems documented herein demonstrate why case management intervention is not merely appropriate but essential to restoring confidence in fair adjudication.

## XXI. ADDITIONAL MOTIONS REQUIRING COORDINATION

66. Multiple additional motions require filing and coordination with pending matters, further demonstrating the necessity for case management conference. These include:

   a.  Motion to supplement the objection to the motion to dismiss,

   b.  Motion for subpoenas to obtain evidence from third parties including Dave Akridge, Karl Terrell, Robert Obrien, the Crimeline Board, and local police,

   c.  Motion to protect audio evidence,

   d.  Motion to seal or redact the Nashua circuit court motion to dismiss attachments (which defendant should have done himself) as well as to seal filings by the defendant that contain sealed orders, etc.

   e.  Motion for evidentiary hearing,

   f.  Motion to add parties and further amend the complaint,

   g.  Motion for interlocutory appeal particularly regarding ADA rulings, and

   h.  [Potential] motion for appointment of counsel (given plaintiff's ADA issues and complexity of the proceedings).

67. These motions represent legitimate procedural needs arising from the complexity of the case and/or defendant's conduct, each of which addresses specific procedural problems that impede effective case prosecution. A case management conference allows for potential elimination of the need to file some of these motions via real-time clarification/input, or otherwise to establish appropriate sequencing and ensure orderly progression rather than continued reactive piecemeal motion practice.

## XXII. DEFENDANT'S OBJECTION IGNORES THE DOCUMENTED PROBLEMS

68. Defendant's cursory objection asserts that "nothing has changed" since prior case management requests and that the motion lacks merit. This characterization ignores the extensive documentation of ongoing harm/violations, systemic barriers, and procedural dysfunction detailed in the motion and further elaborated in this reply. The claim that nothing has changed is demonstrably false given the intensification of ADA violations, the continued ex parte

communications, the procedural crisis regarding audio evidence submission, the settlement agreement violations, and the mounting evidence of systematic disadvantaging of plaintiffs.

69. Defendant's opposition to case management conference reveals a preference for continued procedural chaos that advantages his client, over orderly administration that would ensure equal access/fair procedures. The absence of any substantive engagement with specific problems identified demonstrates that defendant can't refute the necessity for judicial intervention but prefers to continue exploiting systemic advantages the current dysfunction provides.

### XXIII. CONCLUSION

70. The comprehensive nature of the case management issues detailed in this reply, combined with those articulated in the original motion, establishes overwhelming necessity for an urgent case management conference. These are not abstract procedural complaints but concrete, documented problems that prevent meaningful case prosecution and create ongoing harm/violations. Defendant's assertion that a hearing is unnecessary "at this stage" ignores that this case has been pending for almost four years since service of process, has generated hundreds of filings, but yet has not progressed beyond the motion to dismiss stage due to procedural dysfunction this motion seeks to address.

71. The Court cannot resolve these multifaceted, interrelated problems through continued written motion practice alone. Interactive judicial guidance through case management conference is essential to establish clear procedural expectations, address institutional compliance failures, ensure constitutional rights are protected, and create orderly case progression. Procedural fairness is not a luxury or convenience but a fundamental requirement of due process and equal justice. The documented pattern of problems warrants immediate judicial intervention through the case management conference plaintiff requests.

72. The severity and scope of the documented problems require comprehensive judicial intervention that only case management conference can provide. Further delay perpetuates ongoing constitutional violations and systematic procedural unfairness that undermine confidence in the administration of justice.

73. The situation described herein cries out for relief. It would be unmistakably unfair or unjust to ignore the plaintiff's pleas. If the court has really listened to the plaintiff, regardless of how in-artful he may have been as a non-lawyer, it should be evident that a case management hearing is more than needed at this juncture.

74. **WHEREFORE** Plaintiff respectfully requests that this Court:

   a. Overrule defendant's objection in its entirety;

b.  Grant plaintiff's motion for case management hearing;

c.  Schedule said hearing at the earliest possible date;

d.  Address all case management issues identified in plaintiff's motion and this reply;

e.  Establish clear written procedures addressing ADA compliance, e-filing protocols, audio evidence submission, amendment procedures, hearing and extension criteria, and other procedural matters requiring clarification;

f.  Grant such other relief as justice requires under these circumstances.

Respectfully submitted,
/s/ Andre Bisasor
Date: October 14, 2025                                                      Andre Bisasor

**CERTIFICATE OF SERVICE**

I hereby certify that a copy was served via the Court's e-filing system to the Defendant.

/s/ Andre Bisasor
Andre Bisasor

# Exhibit 7

Filed
File Date: 10/30/2025 9:45 AM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

**REPLY TO DEFENDANT CRAIG DONAIS'S OBJECTION TO PLAINTIFF'S RENEWED MOTION TO CONSOLIDATE CASES AND REQUEST FOR HEARING AND STAY**

1. Andre Bisasor respectfully submits this reply to Defendant Craig Donais's objection to the renewed motion to consolidate cases pursuant to Superior Court Rule 12, and in support states as follows:

## A. Introduction

2. Defendant Donais's objection rests entirely on a misapplication of the standard governing renewed motions. The objection asserts that "nothing material has changed since the initial denials" and therefore this motion should be denied. This argument fundamentally misunderstands both the nature of consolidation motions and the circumstances warranting their renewal. Moreover, the objection's request for attorney fees is wholly unwarranted and lacks any legal or factual basis.

## B. The Changed Circumstances Standard

3. Donais argues that because this is a "renewed request," it must be denied absent material changes since the initial denial. This position conflates the standard for successive applications before administrative boards with the proper analysis for consolidation motions in civil litigation. The New Hampshire Supreme Court has recognized that in the zoning context, a board having rejected one application need not review subsequent applications absent material changes in circumstances. See Fisher v. Dover, 120 N.H. 187 (1980). However, that doctrine applies to administrative variance applications where a board has rendered a final decision on the merits after a full hearing.

4. The situation here differs fundamentally. Consolidation under Superior Court Rule 12 serves judicial economy and efficiency; it is not a substantive determination of rights but rather a procedural tool for case management. Federal courts applying Federal Rule of Civil Procedure 42(a), which mirrors state consolidation practice, have broad discretion to consolidate cases involving common questions of law or fact to avoid unnecessary cost or delay. Seguro de Servicio de Salud de P.R. v. McAuto Sys. Grp., Inc., 878 F.2d 5, 8 (1st Cir. 1989). Courts weigh the convenience or inconvenience to the parties, the judicial economy, the savings in time, effort or expense and any confusion, delay or prejudice that might result from consolidation.

5. The pendency of multiple dispositive motions in related cases creates precisely the type of circumstance warranting consolidation. When cases involve common parties, common facts, and overlapping legal issues,

consolidation prevents the waste of judicial resources that would result from deciding identical or substantially similar issues multiple times. Consolidation is allowed "by the practice of the court for its convenience, and the saving of time and expense to the parties." See Hall v. Hall, 138 S. Ct. 1118 (2018) (recognizing that consolidation preserves judicial efficiency while maintaining the independent character of consolidated cases).

### C.  Material Changes Have Indeed Occurred

6. Contrary to Donais's assertion, material changes have occurred that warrant renewed consideration of consolidation. The procedural posture of the related cases has evolved significantly since any prior motion. Dispositive motions are now pending that present common questions of law and fact across multiple cases. Deciding these motions separately risks inconsistent rulings on identical issues, wasting judicial resources, and creating confusion for all parties.

7. Furthermore, the Court's inherent authority to manage its docket includes the power to revisit case management decisions when circumstances demonstrate that consolidation would serve judicial economy. A trial court's "power to reconsider its own decisions during the pendency of a case is firmly rooted in the common law." Commonwealth v. Pagan, 73 Mass. App. Ct. 369, 375 (2008) (interpreting similar procedural rules). New Hampshire courts similarly recognize this inherent authority.

8. The progression of litigation naturally creates new circumstances. Discovery developments, the filing of dispositive motions, and the Court's developing understanding of the cases all constitute changes in the litigation landscape. Hence, the mere fact that a consolidation motion was previously filed does not bar renewed consideration when the circumstances demonstrate that consolidation would advance the interests of justice and judicial economy.

### D. Consolidation Serves the Interests of Justice

9. The fundamental purpose of consolidation is to promote efficiency and avoid duplicative proceedings. Where multiple cases involve common questions of law or fact, consolidation can eliminate redundant proceedings, such as repeated depositions of the same witnesses or duplicative expert analyses, which not only accelerates the timeline toward resolution but also minimizes the financial burden on litigants. Tower Cranes v. Public Serv. of New Hampshire, 702 F. Supp. 371 (D.N.H. 1988).

2

10. Courts have broad discretion to consolidate cases with common questions of law and fact. United States v. Mottolo, 605 F. Supp. 898, 911 (D.N.H.1985).

11. Donais offers no substantive argument against consolidation on the merits. The objection does not contend that the cases lack common questions of law or fact, that consolidation would cause prejudice, or that separate proceedings would be more efficient. Instead, Donais relies solely on the procedural argument that this is a "renewed request." This formalistic approach ignores the substance of what consolidation would accomplish.

12. The request to stay dispositive motions pending consolidation similarly serves judicial economy. If the Court grants consolidation, separate briefing and argument on identical issues in multiple cases would be wasteful and potentially contradictory. See Fed. R. Civ. P. 42(a)(3) (authorizing courts to "issue any other orders to avoid unnecessary cost or delay"); cf. cases recognizing that staying proceedings pending consolidation decisions promotes efficiency and prevents duplicative work.

### E. The Request for Attorney Fees Is Wholly Unwarranted

13. Donais's suggestion that the Court should "consider an award of fees" because this motion is allegedly "repetitive and frivolous" lacks any legal or factual foundation. New Hampshire law permits fee awards for frivolous litigation only in limited circumstances. RSA 507:15 authorizes fees where "it clearly appears to the court that the action or any defense is frivolous or intended to harass or intimidate the prevailing party." Similarly, Rule 59 permits fee awards for frivolous or unreasonable motions brought in bad faith.

14. This motion satisfies neither standard. A motion seeking consolidation of related cases involving common questions of law and fact is neither frivolous nor brought in bad faith. Courts regularly entertain consolidation motions, and the decision whether to consolidate lies within the trial court's broad discretion. See Mottolo, 605 F. Supp. at 911. The fact that a party seeks consolidation, even if previously denied, does not render the request frivolous, particularly where circumstances have evolved and the motion serves legitimate purposes of judicial economy.

15. Donais cites no authority suggesting that renewed motions for consolidation constitute sanctionable conduct. The objection's fee request appears designed to chill the exercise of legitimate procedural rights rather than to vindicate any genuine grievance. Courts have recognized that "the bar that the moving party must clear to recover an award under § 6F is a very high one" and requires showing both that claims were frivolous "and

3

that they were not advanced in good faith; in other words that the party acted with an actual intention to harass or increase the costs of the litigation." The present motion meets none of these criteria.

16. Indeed, if any fee request were appropriate here, it would be against Donais for filing a three-paragraph objection that offers no substantive opposition to consolidation but instead seeks to burden the opposing party with baseless fee threats. However, litigation is better served by focusing on the merits rather than engaging in fee disputes over routine procedural motions.

17. Furthermore, it is improper to combine a motion for attorney fees into an objection. See Rule 7(g)("Objections to pending motions and affirmative motions for relief shall not be combined in one filing".). This continual intentional violation of the rules (he has done this in every objection filed recently) supports some kind of sanctions or warning to the defendant, especially when done to be oppressive.

### F. Conclusion

18. Consolidation of related cases serves fundamental interests in judicial economy, consistency, and fairness. The Court possesses broad discretion to consolidate cases involving common questions of law or fact, and that discretion extends to granting consolidation even where a prior motion was denied if circumstances warrant renewed consideration. The progression of these cases, the pendency of dispositive motions presenting common issues, and the manifest inefficiency of deciding identical questions multiple times all support consolidation.

19. Donais's objection offers no substantive reason why consolidation would be inappropriate, prejudicial, or inefficient. The objection rests entirely on the formalistic argument that this is a "renewed request" and the unfounded suggestion that fee sanctions might be appropriate. Neither argument withstands scrutiny.

20. Accordingly, the Court should deny Donais's objection, grant the motion to consolidate, and stay decision on dispositive motions pending consolidation.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

Date: October 28, 2025

### CERTIFICATE OF SERVICE

I hereby certify that a copy was served via the Court's e-filing system to the Defendant.

/s/ Andre Bisasor
Andre Bisasor

4

# Exhibit 8

**Filed**
**File Date: 10/6/2025 8:31 AM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## [CORRECTED] PLAINTIFFS' [EMERGENCY] MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY

1. Plaintiffs move for partial summary judgment on the breach of fiduciary count of the amended complaint, seeking judgment as a matter of law that Craig Donais ("Donais") breached his fiduciary duty to plaintiffs arising from the prospective attorney-client relationship established in the direct 1-9-17 consultation (and indirect 1-5-17 consultation).

### I. INTRODUCTION

2. This motion seeks partial summary judgment on a narrow issue: whether Donais breached fiduciary duties owed to plaintiffs as prospective clients by disclosing confidential information from their consultation to unauthorized 3rd parties. Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Undisputed facts establish all elements necessary for claim liability as a matter of law.

### II. STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

3. Below are uncontroverted facts established by Donais own admissions/court records, etc with no genuine issue for trial.

#### A. Establishment of Prospective Attorney-Client Relationship

4. On 1-6-17, plaintiff Andre Bisasor left a voicemail for defendant Donais seeking legal representation regarding a landlord-tenant dispute with Homewood Suites. On 1-9-17, Donais returned Bisasor's call and engaged in a 7-minute telephone consultation. Donais admits this consultation occurred and lasted approx. 7 minutes. During this consultation, Bisasor disclosed confidential information about plaintiffs' claims against Homewood Suites, the allegations of disparate treatment, and the urgent legal predicament. This consultation was conducted with mutual understanding that it was for the purpose of evaluating potential legal representation and was subject to attorney-client confidentiality.

#### B. Judicial Recognition of Attorney-Client Relationship

5. On 1-18-17, in the Nashua District Court case involving plaintiffs and Homewood Suites, during a hearing, Judge Paul Moore found that an attorney-client relationship [and thus fiduciary duty] existed between Donais and plaintiffs based on the 1-9-17 consultation. As a direct result of this finding, Donais was required to withdraw from representing Homewood Suites due to conflict of interest created by his prior consultation with plaintiffs. That Donais withdrew as a result Judge Moore's finding and guidance in the 1-18-17 hearing, is undisputed. NB: This also included indirect consultation with Plaintiff Natalie Anderson through Attorney Robert Obrien. See attached for further on this point.

#### C. Subsequent Breaches of Confidentiality

6. Despite the confidential nature of the 1-9-17 consultation, Donais subsequently disclosed information obtained during that consultation to multiple third parties without plaintiff's consent, including his wife Mary Donais, his sons Garrett and Aiden Donais, members of the Manchester Crime Line Board, and other family members and colleagues.

1

7. These disclosures occurred well outside of any possible litigation context. The disclosures were made for purposes of harming plaintiff's reputation and protecting Donais's own interests rather than for any legitimate legal purpose.

8. Further, prior to being hired by Homewood Suites, Donais disclosed confidential information from the 1-9-17 call to Homewood Suites' principals and agents. He did so without obtaining consent from the plaintiffs. This is undisputed. Donais was not required to disclose, and should not have disclosed, this information to them as unauthorized third parties. Donais' desire to represent Homewood Suites does not relieve him of his fiduciary duty to the plaintiffs to protect the confidentiality of the 1-9-17 consultation with him. There is no way around this hard cold fact. Donais has admitted to this unauthorized disclosure to them, prior to being hired by them. See also attached memorandum/exhibits.

### D. Fabricated Allegations

9. Furthermore, in connection with these disclosures, Donais fabricated false allegations that Bisasor had accused him of racial discrimination during the 1-9-17 consultation. These fabricated allegations were designed to portray Bisasor as an unreasonable person, who makes frivolous accusations of racism, on a whim and without any logical reason or evidence, thereby damaging Bisasor's reputation/credibility, but also breaching the fiduciary duty owed to him.

### III. SUMMARY OF ARGUMENT
### A. Fiduciary Relationship Established as Matter of Law

10. Under NH law and NH Rule of Professional Conduct 1.18, prospective clients are entitled to the same confidentiality protections as actual clients. Rule 1.18 explicitly states: "*a person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client*" and that "*a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information.*"

11. The 1-91-17 consultation unquestionably created a prospective attorney-client relationship. Bisasor contacted Donais seeking legal advice, Donais engaged in a substantive consultation lasting 7 minutes, and confidential information was disclosed for the purpose of evaluating potential representation. Judge Paul Moore's finding that an attorney-client relationship existed confirms this conclusion as a matter of law. The existence of this fiduciary relationship cannot be disputed by defendant. His own affidavit acknowledges the consultation occurred, and his withdrawal from Homewood representation demonstrates his recognition of the ethical obligations created by that consultation.

### B. Breach of Fiduciary Duty Established Without Dispute

12. The elements of breach of fiduciary duty are: (1) existence of a fiduciary relationship, (2) breach of duty arising from that relationship, (3) causation, and (4) damages. Each element is established without genuine dispute.

2

13. First, the fiduciary relationship exists as established above. Second, Donais breached this duty by disclosing confidential information to unauthorized third parties for improper purposes. The duty of confidentiality owed to prospective clients is absolute and continues indefinitely. Donais disclosed consultation information to family members and colleagues without any legitimate justification. Third, causation is established by the direct connection between Donais's disclosures and harm to plaintiffs' reputation and case. Donais further used confidential information as the foundation for fabricated allegations designed to damage plaintiffs' credibility. Fourth, damages are established through reputational harm, emotional distress, and other injuries flowing from these breaches. See attached memorandum, affidavits & exhibits.

## C. No Legitimate Defense Exists

14. NH Prof. Conduct Rule 1.6(b)(3) permits disclosure only "to defend claims regarding [the lawyer's] conduct," but this exception does not authorize wholesale disclosure to unauthorized 3rd parties including to adverse parties in order to be hired by said adverse parties, nor to family members, colleagues, and community organizations for purposes of damaging a former client's reputation. Donais cannot claim any legitimate defense for disclosures to private parties that occurred years after litigation concluded. Moreover, even if Donais were permitted to defend against specific claims in this instance, he cannot fabricate false allegations or disclose confidential information beyond what is necessary for such defense. His conduct far exceeded any legitimate defensive purpose and was designed to inflict harm.

## D. Undisputed Facts Compel Judgment

15. The critical facts establishing liability are undisputed: the consultation occurred, confidential information was disclosed, Donais subsequently revealed that information to unauthorized 3rd parties, and the disclosures were improperly made. Donais cannot genuinely dispute these facts because they're established by his own admissions, court records, and objective evidence. The only remaining question concerns scope of damages, which is properly reserved for trial or subsequent proceedings. The threshold liability issue should be resolved as a matter of law based on undisputed record.

## IV. CONCLUSION

16. This motion is accompanied by affidavits in support, a supporting memorandum of law and a record of exhibits, and statement of material facts. The undisputed facts establish defendant's breach of fiduciary duty as a matter of law. Judge Paul Moore's finding of an attorney-client relationship, combined with defendant's own admissions regarding the consultation and subsequent disclosures, eliminate any genuine factual dispute regarding liability. Partial summary judgment will narrow the issues for trial and serve judicial efficiency by resolving this clear-cut claim of misconduct.

17. WHEREFORE, plaintiffs respectfully request that this Court grant partial summary judgment on Count 6 of the amended complaint, finding defendant liable for breach of fiduciary duty as a matter of law. See also the attached.

Respectfully submitted[1],

/s/ Natalie Anderson

NATALIE ANDERSON

/s/ Andre Bisasor

ANDRE BISASOR

Date: October 6, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor

ANDRE BISASOR

---

[1] NB: This is submitted as a corrected version of the prior submission of this motion, which is now hereby being submitted by both plaintiffs ( and is also done prior to a response by the defendant). This also is now accompanied by a memorandum of law, affidavits in support and exhibits, which points, facts and arguments are fully incorporated herein as if fully stated herein. As it is a dispositive motion, Plaintiffs request hearing on the motion and also that it is heard/decided at the same time as any other dispositive motion including defendants' motion to dismiss amended complaint.

**Filed**
**File Date: 10/6/2025 8:31 AM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY CLAIM

1. Plaintiffs submit this memorandum for motion for partial summary judgment on the breach of fiduciary duty claim.

2. This partial summary judgment motion addresses breaches of fiduciary duty arising from Craig Donais ("Donais") 1-9-17 consultation with Andre Bisasor ("Bisasor"), and Natalie Anderson's ("Anderson") 1-5-17 consultation with Donais through Robert Obrien, and other undisputed facts that establish a prospective attorney-client relationship, such as Judge Paul Moore's finding of a conflict, requiring Donais's withdrawal from representing Homewood Suites, and breach of confidentiality to unauthorized 3rd parties. The accompanying 3 affidavits and exhibits are fully incorporated herein.

---

### SECTION I: LEGAL STANDARDS

---

### I. SUMMARY JUDGMENT STANDARD

3. Under NH RSA 491:8-a, summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The court views evidence in light most favorable to the non-moving party, but where the material facts are undisputed, legal conclusions flowing from those facts present questions of law appropriate for summary judgment. The NH Supreme Court has held that summary judgment serves the purpose of determining whether genuine factual disputes exist and applying law to undisputed facts.

4. Once the moving party has established the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.

5. New Hampshire RSA 491:8-a explicitly authorizes partial summary judgment, stating that "A party seeking to recover upon a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment, may, at any time after the defendant has appeared, move for summary judgment in his favor upon all or **any part thereof**." The phrase "any part thereof" establishes clear statutory authority for partial summary judgment on individual claims or issues within a case.

6. The New Hampshire Supreme Court regularly approves partial summary judgment motions when appropriate legal standards are met. In Loeffler v. Bernier, No. 2019-0107 (N.H. 2020), the court affirmed superior court orders "granting partial summary judgment to plaintiff," finding no reversible error in the partial resolution approach, demonstrating standard acceptance of this procedural mechanism for narrowing multi-claim disputes.

7. The NH Supreme Court has thus confirmed that trial courts possess authority under RSA 491:8-a to grant partial summary judgment, indicating partial resolution serves judicial efficiency by determining clear legal issues without

1

requiring full trials on every aspect of multi-faceted cases. Hence, when undisputed facts establish liability on specific claims, partial summary judgment eliminates unnecessary litigation costs while preserving the remaining disputed issues. This approach particularly benefits certain cases involving clear legal standards applied to uncontested facts.

## II. INTRODUCTION

8.  This motion seeks partial summary judgment on the breach of fiduciary duty count that asserts that Donais and his law firm owed a fiduciary duty to Plaintiffs as prospective client, including confidentiality, loyalty, and the obligation to act in good faith, which was breached through multiple egregious acts.

9.  As a prospective client, Bisasor shared confidential information with Donais during a 1-9-17 consultation. The facts establish that this was a confidential, substantive discussion about legal issues involving the Hilton Hotels/Homewood Suites defendants. The facts clearly demonstrate that Bisasor reasonably believed he was engaging in a confidential discussion, on behalf of himself and his spouse. Bisasor was thus entitled to confidentiality and loyalty. Donais, knowing this, had a duty to maintain confidentiality and act in Plaintiff's best interests. Instead, Donais breached confidentiality obligations owed to Plaintiff as prospective client by disclosing privileged information to harm Plaintiff's interests. Donais used his position of client trust to maliciously fabricate false allegations, with the intent to defame, intimidate, and retaliate against Plaintiffs. Donais weaponized this confidential discussion and turned it into a defamatory campaign. Donais's conduct violated that trust, breaching his fiduciary obligation. Donais divulged confidential information to third parties, his wife, son, family members and community members, colleagues, and others, without Plaintiff's consent, breaching his fiduciary obligation. These acts constitute a clear breach of fiduciary duty, which under NH law, includes the obligation not to disclose confidential information or use it for personal or third-party advantage. Further, Donais' repeated disclosures of the confidential discussion, especially where he manufactured false statements and disclosed them to 3rd parties, under the pretext that it was disclosed to him in a client call, shows a pattern of breach that is sufficiently egregious to sustain a cause of action. By disclosing privileged information and exploiting it for self-protection, Donais breached that duty, proximately causing reputational and economic loss. Plaintiff's damages include reputational harm, emotional distress, and economic loss, directly caused by the breaches.

## III. LAW REGARDING FIDUCIARY DUTIES TO PROSPECTIVE CLIENTS
### A. NH Rules of Professional Conduct 1:18

10. NH Rule 1.18(a) states: "*a person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.*" Rule 1.18(b) requires that "*a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.*"

11. Rule 1.18 of the NH Rules of Professional Conduct for Lawyers further states:

Rule 1.18. Duties to Prospective Client

(a) A **person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.**

(b) **Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information** except as Rule 1.9 would permit with respect to information of a former client.

(c) **A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received and reviewed information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).**

Ethics Committee Comment:

1. The New Hampshire rule expands upon the ABA Model Rule in one area. **The ABA Model Rule 1.18(a) defines a prospective client as one who "consults" with a lawyer about possible representation; the New Hampshire Rule defines prospective client as one who "provides information to a lawyer" about possible representation.** ABA Model Rule 1.18(b) establishes a general rule for protection of information "learned" by a lawyer from a prospective client; the New Hampshire Rule clarifies **the scope of the protection so that it applies to information "received and reviewed" by a lawyer from a prospective client.**

In its version of Rule 1.18, New Hampshire's rule eliminates the terminology of "consultation" and learning and extends **the protections of the rule to persons who, in a good faith search for representation, provide information unilaterally to a lawyer who subsequently receives and reviews the information. This change recognizes that persons frequently initiate contact with an attorney in writing, by e-mail, or in other unilateral forms, and in the process disclose confidential information that warrants protection. This change further recognizes that receipt and review are likely to be more objective standards than learning.**

12. Rule 1.18 is clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them. The NH version of Rule 1.18 is broader than the ABA Model Rule, extending protection to persons who "provide information to a lawyer" rather than limiting it to formal consultations. This expansion recognizes that confidential information warrants protection regardless of the formality of initial contact.

13. Courts have held that fiduciary duties arise when attorneys receive confidential information from prospective clients. The fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result. Thus, fiduciary duty arises when an attorney receives confidential information, even if formal engagement doesn't occur, provided the client reasonably believes the attorney is acting in a professional capacity and the communication is confidential. Such fiduciary duties extend to prospective clients especially where confidential information was shared/relied on in good faith. Hence, under NH law, a prospective attorney-client relationship creates fiduciary obligations of confidentiality, loyalty & good faith.

14. The New Hampshire Rules of Evidence provides the definition of a client:

A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him. [New Hampshire Rules of Evidence, Rule 502(a)(1).]

15. NH Rules of Evidence, Rule 502(a)(1) establishes that communications from a prospective client are protected by attorney-client privilege, even though the attorney has not yet formalized (or never formalizes) a representative relationship with the individual. One will be deemed a "client" for purposes of applying attorney-client privilege upon consulting a lawyer "with a view to obtaining professional legal services from [a lawyer]." See also McCabe v. Arcidy, 138 N.H. 20, 25, 635 A.2d 446, 449 (1993) ("[A]n attorney-client relationship 'is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.'").

16. New Hampshire has held that an attorney may not disclose the contents or condition of pre-existing documents delivered to the attorney by the client. See Brown v. Payson, 6 N.H. 443, 448, 1833 WL 1321 (1833) ("The situation and contents of a paper, delivered to an attorney for inspection, in the course of employment as attorney, is as much a matter of professional confidence as an oral statement of its contents or condition can be...An attorney is not at liberty to disclose what is communicated confidentially by a client.").

17. New Hampshire generally provides that once the attorney-client privilege attaches to confidential communications, the privilege survives termination of the attorney-client relationship, or the death of the client. See McGranahan v. Dahar, 119 N.H. 758, 408 A.2d 121, 125 (1979) ("communications made during the course of legal representation...are confidential and permanently protected from disclosure."); Stevens v. Thurston, 112 N.H. 118, 289 A.2d 398, 399 (1972) ("the privilege continues after the death of the client"). The perpetual effectiveness of the privilege's protections is recognized by Rule 502(c), which provides the privilege may be claimed on behalf a client, even if that client has passed.

18. "Even after termination of the attorney-client relationship, a lawyer remains bound" to preserve the former client's confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994). "(W]hen an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney's continuing duty to preserve a former client's confidences." Adoption of Erica, 426 Mass. 55, 60 (1997). See also Bartle v. Berry, 80 Mass. App.Ct. 372, 385 (2011) (an attorney's fiduciary duty continues even after termination of the attorney-client relationship).

**B. Definition of Confidential Information**

19. The New Hampshire Rules of Evidence defines a confidential [1]communication as follows:

---

[1] A "confidence" has also been defined by other courts, as "information protected by attorney-client privilege under applicable law", and a "secret" as "information gained in the professional relationship that the client requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." (McKinney Supp. 1991).

(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. [New Hampshire Rule of Evidence, Rule 502(a)(5).]

20. Where legal advice of any kind is sought from a lawyer in his capacity as such, the communications relating to that purpose, made in confidence by the client, are permanently protected from disclosure by the client or by the lawyer unless the protection is waived by the client or his legal representatives. See Riddle Spring Realty Co. v. State, 107 N.H. 271, 220 A.2d 751, 755 (1966) (citing 8 Wigmore, Evidence, §§ 2292, 2327–29 (McNaughton rev. 1961)).

21. The attorney-client privilege is applicable in New Hampshire only when the client has consulted the attorney for the purpose of obtaining legal advice or assistance. State v. Gordon, 141 N.H. 703, 706, 692 A.2d 505, 507 (1997).

22. See also State v. Elwell, 132 N.H. 599, 567 A.2d 1002, 1005 (1989) ("Under the attorney-client privilege, a communications made in confidence in the course of obtaining legal advice from a professional legal advisor are protected from disclosure."). See also Professional Fire Fighters of New Hampshire v. New Hampshire Local Government Center, 163 N.H. 613, 44 A.3d 542, 544 (2012).

23. Thus, for the privilege to apply, the client must intend the communications to be kept confidential at the time the communications were made. New Hampshire courts will determine the intent of the client by examination of the circumstances in which the communications were made. For example, if the communications are made in the presence of a third party, the court will infer that the client did not have the intent of confidentiality. State v. Melvin, 132 N.H. 308, 564 A.2d 458, 459 (1989) ("the presence of an 'extraneous' third party during a privileged conversation operates to destroy the privilege."). This concurs with federal law requiring privilege apply only to communications intended to be confidential when made. McGranahan v. Dahar, 119 N.H. 758, 408 A.2d 121, 125 (1979) ("communications made during the course of legal representation…are confidential and permanently protected from disclosure."); Riddle Spring Realty Co. v. State, 107 N.H. 271, 220 A.2d 751, 755 (1966) ("'[T]he essence of a privileged communication between attorney and client and likewise the basis of its exemption from discovery is its confidentiality.'").

24. New Hampshire also extends the privilege to communications between an attorney and a client, and not to the information that is in those communications. Thus, even though the information may be available from another source, an outside party cannot discover whether or not the same information communicated by the client to an attorney for purposes of seeking legal advice. McGranahan v. Dahar, 119 N.H. 758, 408 A.2d 121, 125 (1979) (The plaintiff could not penetrate the attorney-client privilege to discover whether the defendant made the same statements to his attorney

during the course of legal representation.). New Hampshire also recognizes that attorney-client privilege exists for the benefit of the client. Scott v. Grinnell, 102 N.H. 490, 161 A.2d 179, 183 (1960) ("The privilege is that of the client...").

### C. Formation of Attorney-Client Relationship

25. Courts have held that an "analagous fiduciary obligation may be implied in the absence of an attorney-client relationship." Liu v. Real Estate Inv. Group, Inc., 771 F. Supp. 83 (S.D.N.Y. 1991). As the court in Liu noted:

> It is clear that where an attorney receives confidential information from a person, who under the circumstances has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidences irrespective of the absence of a formal attorney client relationship.

26. See also United States v. Devery, No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship."). See also Rosman v. Shapiro, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987).

27. "[C]ourts have not employed a single, well-defined test for determining whether an attorney client relationship exists, and, moreover, have consistently rejected the argument that indicia of a formal relationship are necessary. Most courts have acknowledged, as a general matter, that an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." See First Hawaiian Bank v. Russell Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994); accord Bennet Silvershein Assocs. v. Furman, 776 F. Supp. 800, 803 (S.D.N.Y. 1981).

28. Further, whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to attorney client privilege. See Dennis, 843 F.2d at 657 ("To be sure, initial statements made while Pilgrim intended to employ Gerace were privileged even though the employment was not accepted."); see also Green, 784 F. Supp. at 845 ("[T]he fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result."); Liu, 771 F.Supp. at 86 ("[T]he duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result."); McCormick on Evidence 6th Ed. § 88 (West Publishing Co., 2006) ("[C]ommunications in the course of [a] preliminary discussion with a view to employing the lawyer are privileged though the employment is, in the upshot, not accepted."). As the Second Circuit has also stated, "[t]he key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." United States v. Dennis, 843 F.2d 652, 657 (2d Cir. 1998).

6

29. Under Restatement (Third) of the Law Governing Lawyers § 38, just because a prospective client conversation where confidential information was shared, does not result in further engagement, that does not absolve attorneys of fiduciary obligations created by that limited or initial client interaction.

30. Under NH law, breach of fiduciary duty requires (1) the existence of a fiduciary relationship, (2) breach of that duty, (3) causation, and (4) damages. Case law support such breaches are actionable. See Bays v. Theran, 418 Mass. 685 (1990), affirming breach of fiduciary duty can be established via disloyalty, breach of confidentiality, or self-dealing.

---

**SECTION II: ARGUMENT FOR BREACH OF CONFIDENTIALITY OF A PROSPECTIVE CLIENT**

---

### I. BREACH OF FIDUCIARY DUTIES TO PLAINTIFFS AS PROSPECTIVE CLIENTS
#### A. Undisputed Establishment of Prospective Client Relationship

31. The 1-9-17 consultation clearly established a prospective attorney-client relationship under any applicable standard. Bisasor contacted Donais seeking legal advice regarding a specific legal matter.  Donais engaged in a substantive consultation lasting 7 minutes. Confidential information was disclosed for the specific purpose of evaluating potential representation. An attorney-client relationship existed because Bisasor divulged confidences and secrets to Donais as an attorney and because Bisasor believed that he was approaching Donais as an attorney in a professional capacity with the intent to secure legal advice and did secure legal advice. Bisasor reasonably understood that the call with Donais was confidential. Thus, Bisasor's intent as a prospective client was that of an attorney/client relationship.

32. Further, whether or not employment occurs, preliminary discussions between Donais as an attorney and Bisasor as a prospective client was subject to attorney client privilege. Thus, the fiduciary relationship existing between Bisasor and Donais extended to preliminary consultation with Bisasor as a prospective client with a view to retention of Donais as lawyer, notwithstanding that actual employment did not result. Thus, Donais' duty to preserve confidentiality extended to this preliminary consultation with Bisasor as a prospective client even though actual employment does not result. In this instance, it is clear that Bisasor engaged in preliminary discussions with Donais related to legal analysis of potential claims that could be brought in connection with the landlord-tenant matter involving the Homewood defendants during the tenure of plaintiff's stay. Although there was no further engagement or retainer after that preliminary client conversation, any communication made during this preliminary consultation is protected by the duty of confidentiality and by the attorney-client privilege. Thus, this preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though Donais was not ultimately retained.

33. Bisasor's statement that he shared confidential information and sought legal advice from Donais is corroborated by telephone records indicating there were at least two telephone calls involved, one on 1-6-17 where Bisasor left a voicemail for Donais, and one on 1-9-17 where Donais called back Bisasor, which lasted 7 minutes. This constitute sufficient circumstantial evidence to show some confidential information was revealed to Donais in order for him to evaluate plaintiffs' case. Yet, the information shared does not have to be some deep dark secret for it to be confidential. Further, the law does not require the information shared to be confidential in the strictest sense of the word. The law simply requires that a person provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter, and he/she is a prospective client. The law simply requires that "even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information." It does not say confidential information. It simply says any information provided t the lawyer with the intent of forming an attorney-client relationship is protected and shall not be revealed. At a minimum, it is undisputed that Bisasor shared information with Donais with the intent of forming an attorney-client relationship and that Donais received and reviewed that information.

34. Thus, Bisasor was a client for purposes of the initial consultation, and at a minimum, was a prospective client, and he became a former client once the engagement went no further after the initial consultation. Rule 1.18 is very clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them. Thus, Donais' relationship with Bisasor, that of attorney/client, was that of a fiduciary. Donais owed an ethical and fiduciary duty to Bisasor. Bisasor placed trust and confidence in Donais. This gave rise to fiduciary duties of the attorney toward Bisasor. Donais owed Bisasor a fiduciary duty to act at all times in good faith and in Bisasor's best interests, and to not expose Bisasor to any unnecessary risk or peril. Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship. The 1-9-17 legal advice consultation with Bisasor triggered a fiduciary relationship with ongoing duties of confidentiality.

35. Most significantly, Judge Moore's finding that an attorney-client relationship existed provides judicial recognition of this relationship. This finding necessitated Donais's withdrawal from representing the adverse party, confirming that the consultation created enforceable ethical/fiduciary obligations.

### B. Establishment of Confidence and Trust

36. Throughout the 1-9-17 consultation, Donais engaged in conduct that demonstrated his professional expertise and willingness to consider plaintiff's case. Donais received from Bisasor the factual circumstances underlying their legal

8

claims and engaged in a substantive analysis of their situation. This conduct created a reasonable expectation on the part of plaintiffs that Donais was evaluating their case for potential representation and that the information being shared would be treated with the confidentiality and professional care accorded to attorney-client communications.

37. Under NH law, a fiduciary relationship exists wherever influence has been acquired, and abused or confidence has been reposed and betrayed. During the 1-9-17 consultation, plaintiffs reposed confidence in Donais by sharing sensitive information about their legal predicament, including details about disparate treatment and their vulnerable position facing imminent ejection from their rented unit, among other things. This disclosure of confidential information in the context of seeking professional legal advice created the necessary foundation of trust and confidence that characterizes a fiduciary relationship. The consultation between Donais and Bisasor entailed a substantive exchange of information for the specific purpose of obtaining legal advice/representation. Donais's conduct during this consultation, including his willingness to listen to the details of their case and engage in discussion about the legal issues presented, created reasonable reliance on his professional expertise/judgment. This reliance was furthered by the referral relationship with Attorney O'Brien, who specifically identified Donais as possessing the expertise to handle their type of legal matter.

### C. Acquisition of Influence and Confidential Information

38. During the 1-9-17 consultation, Donais acquired influence over Anderson and Bisasor's legal situation by positioning himself as a knowledgeable attorney capable of evaluating their claims and providing professional guidance. The very act of consulting with Donais, particularly given the referral context and the urgent timeline of their legal predicament, placed Anderson and Bisasor in a position of dependency on his professional judgment and expertise.

39. Donais acquired material confidential information during this consultation, including specific details about Anderson and Bisasor's allegations of racial discrimination (through Obrien), the nature of their dispute with Homewood Suites, their concerns about improper charges, and their immediate need for legal intervention to prevent unlawful ejection. This information was provided with the reasonable expectation that it would be treated confidentially and used solely for the purpose of evaluating whether Donais would undertake their representation.

40. The confidential nature of this information is demonstrated by its sensitivity and potential harm that could result from disclosure to adverse parties. The information related directly to plaintiffs' legal strategy, their vulnerabilities in the dispute, and their assessment of the strengths/weaknesses of their potential claims. Under NH Rule of Prof. Conduct 1.18, even when no attorney-client relationship ultimately ensues, a lawyer who received and reviewed information from a prospective client owes duties of confidentiality and loyalty that create fiduciary obligations.

41. NB: As stated in the accompanying Affidavits of Andre Bisasor, Bisasor was assured by Donais the conversation would be confidential [NB: The same assurance was made by Obrien to Anderson, which extended also to Donais as Donais was consulted by Obrien as part of the prospective client evaluation process]. Beyond that, even without the averments in the accompanying affidavits, the circumstances demonstrate that Bisasor would have had no reason to believe that his conversation with Donais would not be kept confidential. Bisasor contacted Donais as an attorney seeking legal advice from an attorney, leaving a voicemail that made clear he was seeking legal advice/assistance, and Donais then listened to the voicemail and called Bisasor back to have a conversation with Bisasor about the issues that Bisasor identified on the voicemail. Upon calling Bisasor, Donais asked Bisasor to explain the situation identified on the voicemail. Bisasor then shared information about his legal situation with Donais as an attorney. These facts alone demonstrate that Bisasor would've had some expectation of confidentiality. Why would Bisasor discuss/share his legal situation with Donais, as an attorney, but not expect any confidentiality at all? And why would Donais expect that what Bisasor shared with him as an attorney, in seeking legal advice, wouldn't be protected by confidentiality? So Donais expects that he can solicit prospective clients to contact him and discuss their situations with him, and then he is free to divulge everything they tell him to the public or to others? This wholly is unreasonable/erroneous.

**D. Breach of Fiduciary Duties**

42. Despite having acquired this position of trust and confidential information, Donais breached his fiduciary duties to Anderson and Bisasor in multiple ways. First, within days of their consultation, Donais agreed to represent Homewood Suites, the very party against whom plaintiffs had sought his assistance. This representation created a direct conflict of interest that violated his duty of loyalty to plaintiffs as prospective clients. Second, and more egregiously, prior to being retained by Akridge, Donais disclosed the confidential information obtained during his consultation with Bisasor to representatives of Homewood and their counsel. On 1-11-17, Donais sent an email to Attorney Terrell, counsel for Homewood, detailing the substance of his conversation with Bisasor, including specific information about the claims plaintiffs intended to pursue. This disclosure violated the fundamental duty of confidentiality that Donais owed to plaintiffs as prospective clients. Third, Donais compounded his breach by subsequently providing a false affidavit on 3-16-17, in which he misrepresented the nature and content of his consultation with Bisasor. By providing false information in this affidavit[2], Donais further betrayed the trust plaintiffs placed in him during/via their consultation.

---

[2] Although the court previously ruled that Donais' March 2017 affidavit cannot be used to recover on defamation claim under NH law, it didn't /doesn't prohibit recovery for a breach of fiduciary claim with respect to breaches of duty done via Donais' March 2017 affidavit.

### E. Abuse of Confidence and Betrayal of Trust

43. Donais' conduct represents a clear abuse of the influence he had acquired, and a betrayal of the confidence that had been reposed in him. Rather than declining representation of the adverse party or maintaining the confidentiality of the information he had received, Donais chose to use the confidential information obtained from plaintiffs to benefit their opponents in litigation. This conduct violated the most fundamental principles of the attorney-client relationship and constituted a breach of the fiduciary duties he owed to plaintiffs. The harm caused by Donais' breach was both immediate and substantial. Plaintiffs were deprived of confidentiality protections they reasonably expected when consulting with an attorney, and the confidential information provided was used against them in subsequent litigation. This breach of trust undermined their legal position and caused them to suffer damages as a direct result of Donais' misconduct. Donais used his prospective client conversation with Bisasor, to directly inflict harm by defaming Bisasor and accusing Bisasor of falsely/frivolously accusing Donais of race discrimination because he did not take his case. This false accusation against Bisasor sullied Bisasor, with implication that Bisasor was a frivolous liar who plays the race card without rhyme or reason and is to be discredited as an irrational, angry person who wildly hurls accusations of race discrimination when there is no valid reason to do so. This diminished Bisasor's character and discredits him in the eyes of the public/the community. Notwithstanding the fact plaintiffs do not seek recovery for defamatory statements made in Donais' affidavit, plaintiffs here plead that Donais breached his fiduciary duty therewith, intending to defame Bisasor.

44. If Bisasor had never spoken to Donais on 1-9-17 about a prospective client relationship, Donais could not have had the opportunity to fabricate this lie against Bisasor or to use the consultation as a springboard to launch such lies.

45. Donais used his position as a prospective lawyer to Bisasor as a prospective client as a basis to injure Bisasor by falsely accusing him of falsely accusing Donais of race discrimination in the context of a conversation wherein Bisasor was seeking to legal advice/assistance from Donais, and wherein Bisasor shared with Donais certain confidential information, thus taking Donais into his confidences and placing his trust in Donais. Donais exploited and abused the trust that Bisasor extended to Donais in seeking to have a conversation with him about plaintiffs' case against the Homewood defendants. Donais turned around and used that private privileged conversation as a basis to fabricate lies on Bisasor. This is an utter abuse and travesty that has befallen Bisasor on account of unwittingly and unsuspectingly making the mistake of speaking with a dishonest lawyer like Donais. This is a breach of fiduciary duty. This also goes to the conflict of interest. Donais' conflict of interest further created the fuel by which he found it useful to falsely accuse

11

Bisasor, in order to harm and damage Bisasor (and his spouse), in the interest of protecting and advancing his own interests and the interests of the opposing party. See accompanying affidavits for further explication of attendant facts.

### F. Clear Breach of Confidential Duties

46. The breach of fiduciary duty is established through Donais's undisputed disclosures of consultation information to unauthorized 3rd parties. These disclosures also include those made years after the 1-9-17 consultation and were made to family members, colleagues, and community organizations (which were also outside of any judicial context).

47. NH Prof. Conduct Rule 1.6(b)(3) permits attorneys to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to defend the lawyer or the lawyer's employees or associates against a claim or charge of wrongdoing." However, this exception is narrowly construed and does not authorize wholesale disclosure to private parties for purposes of damaging a former client's reputation.

48. Under New Hampshire law, the existence of a fiduciary relationship does not require a formal attorney-client retainer or fee arrangement. Rather, fiduciary duties arise whenever confidence has been reposed and influence has been acquired in the context of a professional consultation. Thus, a fiduciary relationship existed between Donais and plaintiffs based on their consultation and the confidence reposed in him; Donais breached his fiduciary duties by disclosing confidential information to adverse parties and representing those adverse parties; Plaintiffs suffered damages as a result of this breach; and (4) Donais's breach was the proximate cause of their damages. Donais's conduct in engaging in a substantive consultation with plaintiffs, acquiring confidential information, and then using that information to benefit their adversaries constitutes a textbook example of breach of fiduciary duty. Thus, Plaintiffs' assert that a fiduciary relationship existed between the plaintiffs and Donais because Donais had acquired influence with respect to Bisasor which was abused by Donais, and Bisasor reposed confidence in Donais but was betrayed, and because plaintiffs relied on Donais for legal advice for their landlord-tenant matter. Donais later withdrew from representing Homewood, after a judge had determined that Donais had violated ethical duties/breached fiduciary duty. The 1-18-17 court hearing transcript shows that Donais was caught red-handed and that a circuit court judge found that Donais breached fiduciary duty and thus was required to be disqualified/ to withdraw from the case. This by itself is slam-dunk proof that Donais is liable for breach of fiduciary duty, as Donais' own withdrawal serves as his own admission that he was liable for this wrongdoing.

49. It should be noted that it was Donais who called Bisasor on 1-9-17 (in returning Bisasor' call/voicemail from 1-6-17). Donais could have chosen not to call Bisasor back. The fact that Donais initiated the call on 1-9-17 signaled to Bisasor that Donais was interested in pursuing an attorney-client relationship. Bisasor had every right to believe that such a call

12

could lead to full representation by Donais. The fact that Donais eventually declined to take case is irrelevant to the conflict of interest analysis under Rule 1.18 and to analysis of whether Donais violated his duties under Rule 1.18.

50. It should also be noted that according to Dave Akridge's affidavit, at a time prior to representing Homewood, Donais emphatically 'with conviction" assured Akridge that there is no problem with representing Homewood as the adverse party to plaintiffs, because "he did not take the case" and had "brief conversation" [3]. But Donais knew that the standard under Rule 1.18 is not whether he took the case or had a brief conversation. The standard for Rule 1:18 conflict/disqualification is whether he "received and reviewed" information from someone seeking to form an attorney client relationship. It should be further noted that Donais did not have to take the case to represent the Homewood defendants. Similarly, the Homewood defendants were not obligated to hire Donais. Terrell testified on 4-27-17 that he considered the situation with Donais to be a "flag", but yet still Terrell chose Donais as local counsel and Donais still agreed to be local counsel for Homewood, notwithstanding the conflict/potential conflict and the fact plaintiffs would likely object. See Cardona v. General Motors Corp., 942 F. Supp. 968, 978 (D.N.J. 1996) ("by proceeding in reckless disregard of the…Rules of Professional Conduct," firm must suffer "self-inflicted wound").

51. It is evident that Donais had a strong desire to take the Homewood case as defense counsel, so he breached his duty of confidentiality in so doing. Donais's desire to represent an adverse party, no matter how strong, does not allow him to simply jettison the rules of conduct or his fiduciary obligations. Moreover, according to Terrell, Donais did not disclose[4] to Terrell the conversation Donais had with Robert Obrien about this case. Donais did not do that because evidently, he so wanted to be retained by Homewood Suites as local counsel for the defense. Donais was not concerned about violating the law, the rules of ethics, his fiduciary obligations or the plaintiffs' rights.

52. Donais also admitted that, during the conversation he had with Bisasor on 1-9-17, Donais purportedly[5] told Bisasor that one of the reasons he did not want to take the case was because "there might be a potential conflict". This means that during that conversation Donais realized that there was a conflict, because he knew that Homewood suites of Nashua was part of the dispute and that he had a previous client relationship with Dave Akridge. The only basis for Donais to

---

[3] See **page 3 and paragraph 16** in **Exhibit 20 - Affidavit of Dave Akridge dated 5-4-17.** See also all other exhibits attached including affidavits.
[4] See **page 228 line 1-25** in **Exhibit 35 – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court.**
[5] Yet, Donais didn't tell Bisasor that there might be a potential conflict. But the fact that Donais admits to saying that, shows that Donais knew it at the time (or it at least shows that he was thinking it). Yet, Donais never stated it to Bisasor. If he had stated that, Bisasor would have definitely asked him the basis for the suspected potential conflict.

have known, realized or suspected that there was a conflict, was for Donais to have realized or suspected that Homewood Suites was involved. How else could he have known that there was a conflict or potential conflict?

**G. More on Undisputed Establishment of Breach of Fiduciary Duty By Donais**

53. Donais and Bisasor had a fiduciary relationship. Donais' relationship with Bisasor, that of attorney/client, was and is fiduciary. Donais owed an ethical and fiduciary duty to Bisasor, including to act at all times in good faith and in Bisasor's best interests, and to not expose Bisasor to any unnecessary risk or peril. See Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 442 (1980) ("[T]he relationship between attorney and client ... is fiduciary as a matter of law"); Vanacore v. Kennedy, 86 F.Supp.2d 42 (D.Conn. 1998) (the relationship between attorney and client is one of trust and confidence, and gives rise to fiduciary duties of the attorney toward the client).

54. The 1-9-17 communication/consultation with Bisasor triggered a fiduciary relationship with ongoing duties of confidentiality. Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship.

55. As a prospective client, Bisasor shared confidential information with Donais during the 1-19-17 consultation. Bisasor reasonably believed he was engaging in a confidential discussion. Donais received confidential information as an attorney from Bisasor who was seeking legal advice and thus he had a right to believe that Donais, as an attorney, would respect such confidences. Bisasor was thus a prospective client entitled to confidentiality and loyalty. Donais breached confidentiality obligations owed to Bisasor as a prospective client by disclosing privileged information to harm Plaintiff's interests, and further exploiting it for self-protection, which is conduct that violated trust.

56. However, in addition to the breaches in 2017, Donais later on in 2019 and 2020, further disclosed private client information to his wife, son, family members, and friends and to the others including members of the Manchester NH Crime-Line board, etc. These breaches of fiduciary duty, that occurred outside the context of any judicial proceeding, by Donais include disclosure of confidential client conversation information about plaintiffs to: a) Akridge in 2017 prior to being hired by Akridge to represent Homewood; b) his wife in 2017, 2019 & 2020; c) his sons, Garret & Aiden, in 2019 & 2020; d) the Manchester NH Crime-Line board in 2019 & 2020; e) the Manchester NH police in 2019 & 2020.

57. Donais breached his duty by disclosing confidential information, fabricating false allegations, and misusing the relationship to retaliate against plaintiffs, which further goes to the malicious and egregious nature of his conduct.

58. Donais engaged in a pervasive, widespread, systematic and deliberate pattern of abandoning, violating and exploiting his fiduciary obligations to Plaintiffs for his own self-interest, and constituted a willful dereliction of duty designed to exploit Plaintiffs' vulnerability as African-American, and to conceal evidence of Donais' own misconduct. Donais'

14

concealment of his divulging of plaintiff's confidential client conversation to others, further constitutes a breach of the duty to protect client interests post-termination (In re Jones, NH Sup. Ct., No. 2021-0123, 2021 WL 4472142). Attorneys must prioritize client interests over self-protection. By divulging and exploiting confidential information, Donais engaged in self-dealing barred by Kanamaru, 100 Mass. App. Ct. at 75.

59. Under New Hampshire law, attorneys owe clients and former clients an unwavering duty of confidentiality and transparency, even after termination of a client relationship. Donais' conduct breached this duty at every turn, inflicting severe financial, procedural, and emotional harm. Donais' acts also includes breach of fiduciary duty by divulging information (and fabricated version of it) obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, scandalizing, defaming and harming the prospective client.

60. It was malicious act and represented an attempt to harm plaintiffs as former prospective clients. Donais' intent was clear: to hurt, damage, harm, oppress, defame, scandalize the plaintiffs. When prospective clients meet with lawyers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined representation or because the lawyer joined the legal team of the opposing party. This is forbidden by the rules[6]. So, even if Donais maintains that his allegations of what Bisasor said in the 1-9-17 conversation were true (which it was not), he still breached his duty/obligations to plaintiffs as former clients or former prospective clients.  Hence, Donais' breaches are multiple, layered and intertwined with a web of layered misconduct making a very serious combination of violations of ethics that rises to the level of extreme seriousness which is further compounded by further breaches/wrongs that flowed from that to subsequent/continuing events thereafter.

61. Donais breached his fiduciary duty to plaintiffs by breaking his obligation of confidentiality, and acting against plaintiff's interest as a former client and seeking to harm and injure plaintiff's rights. Donais owed a duty to Plaintiffs[7,] via the fiduciary relationship that included confidentiality and an obligation to Bisasor to act with the utmost good faith and

---

[6] Donais' conduct outlined herein, in addition to Rule 1:18, has also violated Rule 8.4 section (a), (b), and (c), in that his false statements reflects adversely on the lawyer's honesty and trustworthiness, and it would also constitute conduct involving dishonesty, fraud, deceit and misrepresentation. Similarly, the fabrication of the race discrimination accusation would further be a violation of Rule 8.4 section (g), in that his false statements were motivated by racial animus and were intended to wrongly embarrass, harass and burden Plaintiff.

[7] Donais owed a duty to plaintiff. There was a fiduciary relationship. Plaintiff was a prospective client. Plaintiff was engaged as a prospective client. Plaintiff was given legal advice. Plaintiff shared confidential information. A prospective attorney client relationship was formed. This is what a judge found (Judge Paul Moore in Nashua district court in NH). This is why Donais withdrew as attorney in that case.

15

fidelity as a fiduciary agent; to not take advantage of Bisasor and place him at a disadvantage. See Goldman v. Kane, 3 Mass.App.Ct. 336, 341 ( (1975) (attorney must do nothing to take advantage of or disadvantage the client).

62. Donais had a duty of trust and loyalty to Bisasor, to not to betray Bisasor, to not subvert his (Donais) obligation to Bisasor, to not act deceitful. Donais's fiduciary obligation to Bisasor continued after the conclusion of the client conversation between Donais and Bisasor in 2017.

63. In this matter, Donais violated his duty to the plaintiffs in several ways: a) Donais discussed the client conversation with the plaintiffs with several people. These include his wife, Mary Donais, his sons Garrett & Aiden Donais, and the Manchester NH crime-line board, as well as friends and connections, and also the Manchester NH police. These communications with his family, friends, connections, colleagues, violated the rights of the plaintiffs as he had no right to disclose client confidential communications to any of them for any reason; b) Donais also voluntarily engaged in discussion with the Manchester NH police about the confidential 1-9-17 conversation and the 1-5-17 consultation; c) Donais also had a duty to inform plaintiffs, as former clients, that Donais was going to or had discussed such information with others. Instead, Donais actively hid those occurrences from plaintiffs. The act of hiding such from plaintiffs is also a breach of duty to plaintiffs as he is required to seek consent before any such disclosure.

64. As a result of Donais's breaching conduct, plaintiffs sustained injury including lost opportunities, emotional distress, and mental anguish, and the damages sustained were directly, proximately and solely caused by Donais's breach of his duty and his intentional, reckless and negligent acts, which were committed with intent, oppression, fraud and/or neglect, as set forth above, and by doing all of the acts and omissions as herein alleged.

65. NB: It should be noted that Donais did not need to defend himself, for example, with the Manchester crime-line board, his private personal family members, friends and colleagues, etc. The only time and place that the rules contemplate violating confidentiality is in an ADO proceeding against the said attorney or in a proceeding in court where the defendant is called upon to defend himself or herself. None of these things apply here based on the facts that occurred.

66. NB: Based on the above case law, Donais also violated (prospective) attorney-client privilege when he in his March 2017 affidavit stated the false accusation that Bisasor accused him of race discrimination for not taking his case. Even if Donais was telling the truth about that accusation (which he was not), Donais had no need to disclose that (false) statement since it bore no relevance to the motion to disqualify Terrell and since it clearly was an inflammatory and disparaging statement which would only serve to (wrongly) embarrass, annoy or scandalize Bisasor.

## II. RELEVANCE OF FALSE STATEMENTS TO BREACH OF FIDUCIARY DUTY CLAIM
### A. Fundamental Distinction Between Defamation and Fiduciary Duty Claims

67. Although this court determined Donais's March 2017 affidavit had absolute privilege protection from defamation claims under NH law, this ruling didn't preclude recovery for breach of fiduciary duty involving the same false statements.

68. Courts routinely recognize that breach of fiduciary duty claims are "separate and distinct" from other tort claims, including defamation, when premised on conduct involving a culpable state of mind beyond mere negligence. The same principle applies when distinguishing fiduciary duty breaches from defamation claims, as each addresses fundamentally different legal wrongs with distinct elements and protections. The breach of fiduciary duty claim in this case focuses on Donais's abuse of the trust relationship itself and his violation of confidentiality obligations, not merely the publication of false statements to third parties. Fiduciary duty claims arise when an attorney either betrays a confidence or acquires and abuses a position of influence. Donais's fabrication of false statements about confidential consultation content constitutes both a betrayal of confidence and an abuse of his position of influence as a trusted legal advisor.

### B. Absolute Privilege Does Not Extend to Fiduciary Duty Breaches

69. The absolute litigation privilege serves the narrow purpose of promoting candor in judicial proceedings. However, this privilege doesn't immunize claims arising from breaching underlying fiduciary obligations. A fiduciary cannot invoke litigation privilege to escape liability for breaching confidentiality duties owed to former clients. The privilege may protect publication aspects relevant to defamation, but doesn't excuse underlying independent breach of trust violations.

### C. Confidentiality Breach Constitutes Core Fiduciary Violation

70. Under New Hampshire Rule of Professional Conduct 1.18, prospective clients are entitled to the same confidentiality protections as actual clients. Rule 1.18(b) provides that "a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information" except under limited circumstances. Donais's fabrication of false allegations about Bisasor accusing him of racism violates this fundamental obligation. First, Donais revealed confidential information obtained during consultation by creating false statements about its content. Second, he used this information to harm Bisasor by portraying him as someone who makes frivolous racism accusations. Third, he weaponized the confidential relationship to undermine Bisasor's credibility as a discrimination plaintiff. Each of these acts constitutes a separate breach of fiduciary duty independent of any defamation analysis.

### D. Strategic Exploitation of Fiduciary Position

71. The timing & content of Donais's fabricated racism allegation reveal egregious misconduct that transcends ordinary defamation. During the 1-18-17 hearing, when memories were fresh, Donais never mentioned any racism accusation made in the 1-9-17 call. However, months later, in his affidavit, he suddenly "remembered" this inflammatory detail.

This demonstrates deliberate fabrication designed to exploit his position as a former attorney to damage client credibility. Fiduciary duties include obligations of candor & good faith that prohibit using confidential relationships to harm former clients. Donais's conduct represents the antithesis of these obligations; he manufactured lies about confidential communications specifically to undermine vulnerable former prospective clients raising legitimate discrimination claims.

### E. Policy Considerations Support Separate Recovery

72. Fiduciary duty claims focus on breach of trust rather than publication of statements. Defamation requires publication, falsity, and reputational harm, while fiduciary duty breach requires relationship, breach of duty, causation, and damages. Breach of fiduciary duty claims address exploitation of confidential information obtained through prospective attorney-client relationship, regardless of whether exploitation occurs via privileged or unprivileged statements. Thus, while absolute privilege may shield Donais from defamation liability for false statements in his affidavit, it cannot excuse his fundamental breach of fiduciary duty in fabricating false statements about confidential consultation content and using his position as a trusted legal advisor to harm his former prospective client's credibility and legal standing.

### III. FURTHER CASE LAW SUPORTING FINDING OF BREACH OF DUTY TO PLAINTIFFS

73. In Fierro v. Galluci (EDNY 2007), the defendants in that case argued that the motion to disqualify should be denied because: (1) there was never an attorney-client relationship established between Dollinger and Fierro; (2) there was no indication there were any "secrets" or "confidences" discussed between Dollinger and Fierro; and (3) even if such secrets or confidences were discussed, Dollinger had no recollection of any such conversations. Thus, the defendants in that case contended there was no conflict of interest in continuing to represent the defendants in that lawsuit. However, that Court concluded that plaintiff made a sufficient showing to warrant disqualification of the Dollinger Firm as follows:

> "Fierro's statement in his affidavit — that he consulted with Mr. Dollinger in late 2004 regarding the subject matter of this case, including potential claims, potential defenses, and relevant case law — is corroborated by a phone message and phone records maintained by the Firm. Thus, this preliminary discussion regarding the subject matter of this litigation fell within the umbrella of an attorney-client relationship and was privileged. This prior consultation with Mr. Fierro regarding the exact subject matter of this litigation is sufficient to warrant disqualification. Although Mr. Dollinger does not recall any client confidences revealed to him during the conversation, his failure to recall such conversations does not vitiate the otherwise clear basis for disqualification."

74. Further, the Fierro court also found disqualification was warranted because (1) plaintiffs established that an attorney-client relationship existed as to Fierro's preliminary discussions, (2) the matters were not just "substantially related" to the litigation, but were identical, and (3) it was likely confidential information was shared with Dollinger during these conversations. Although the defendants point to the several factors in arguing there was no attorney client relationship (including the fact that the preliminary conversations were brief, the Dollinger Firm never opened a file related to Fierro, and the Dollinger Firm never charged any fees for the initial consultation), none of those factors, individually or

18

collectively, is necessarily dispositive in analyzing whether there was an attorney-client relationship. See United States v. Devery, No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship.").

75. Furthermore, the Fierro court found that whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to the attorney client privilege. Moreover, the Fierro court stated that, in finding that there was a substantial relationship between Fierro's preliminary consultation and the current litigation, a rebuttable presumption is created that Fierro imparted to Dollinger confidential information relevant to the present litigation. See Arifi, 290 F. Supp. 2d at 350. A party moving to disqualify opposing counsel "is not required to prove that [opposing counsel] had access to confidential information while representing the [moving party] but only that he was likely to have had such access." Id.  It should further be noted that, in the Fierro case, there were telephone records indicating at least 2 telephone calls on 12-14-04 between Dollinger and Fierro, one of which lasted just about 10 minutes. This, among other things, provided sufficient circumstantial evidence for the Fierro court to conclude it is likely that some "confidences" or "secrets" were revealed to Dollinger in order for him to evaluate the case.

76. Although, in the Fierro case, Dollinger stated he had no recollection of any conversation with Fierro, the Fierro court found his failure to recall the conversation didn't change the analysis. NB: Another court held that a former attorney's assertion that he couldn't remember any confidential information conveyed to him during the short representation of one of the defendants, didn't cure the professional responsibility conflicts which were present. Arifi, 290 F. Supp. 2d at 350 ("While there is no reason to doubt Green's claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had access to such information during the short representation."); see also Schwed v. Gen. Elec. Co., 990 F. Supp. 113, 117 n. 2 (N.D.N.Y. 1998) (where attorney claimed he didn't possess confidential information and didn't recall any discussions regarding the case, the third prong of the 2nd Circuit test was still met because there was a likelihood that the attorney had access to confidential information).

77. Similarly, in this case, Terrell testified at a preliminary injunction hearing on 4-27-17 that he didn't recall what he and Donais discussed and that he may have had conversations with Donais (about the Donais-Bisasor conversation), but somehow he doesn't recall whether he had such conversations or if information to came to him (Terrell) from Akridge.

78. Also, the Fierro case is similar to this case, in that defense counsel here claims that there was never an attorney-client relationship established between Donais and Bisasor and that there was no "confidences" shared from Bisasor to

19

Donais. Although Bisasor vigorously refutes those assertions (which refutations are supported by incontrovertible evidence), the consideration of such refutation by Bisasor is not necessary for the correct legal analysis to be applied. Based on the above case law, in the Fierro case, the correct standard is that, regardless of whether it can be proven that confidences were or were not shared, it is the fact that confidences could have been or were likely to have been shared that establishes the conflict (or the appearance of one). Based on this standard, Donais definitely had a conflict, and he breached fiduciary duty when he shared client information, not only with Akridge, and with Terrell, but also in statements submitted to two NH courts months after he [Donais] was disqualified. Similarly, as it pertains to infection of Terrell, Terrell claims there was never an attorney-client relationship established between Donais and Bisasor; that there was no "confidences" shared between Donais and Terrell; and that even if such confidences were discussed, Terrell does not recall whether any such conversations occurred. Thus, similar to the finding in the Fierro case, Terrell's failure to recall such conversations does not vitiate the otherwise clear basis for establishment of a conflict or appearance of one. See again Fierro v. Gallucci, 2007 U.S. Dist. LEXIS 89296 (E.D.N.Y. Dec. 4, 2007) (disqualification warranted even though lawyer simply could not remember phone calls). Thus, it is clear from the definitions in the Fierro case, that information shared with and later disclosed by Donais (including Bisasor's purported accusation of racism against Donais) would certainly qualify as "confidences" (i.e. "information protected by the attorney-client privilege under applicable law") and as "secrets" (i.e. "other information gained in the professional relationship that the client requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.").

79. These cases from several state and federal courts around the country support the conclusion that there was a conflict of interest that existed with Donais (and also with Terrell), and that Donais violated the confidences/secrets shared by Bisasor when he communicated statements made (or purportedly made) by Bisasor, to Akridge and Terrell prior to being hired, and to other private persons, and also to two NH courts, in order to harm, injure, disparage Bisasor.

80. In In re Sharplin, Jr., 2006 Tex. App. LEXIS 6834 (Tex. App. Aug. 3, 2006), the court was dealing with a lawyer who changed firms, and citing Nat. Med. Enterprises, Inc. v. Godbey, 924 S.W.2d 123 (Tex. 1996), said there was an irrebuttable presumption he shared information from the earlier case with his new partners and disqualified the firm.

81. Similarly, there should be an irrebuttable presumption that Donais shared confidences from Bisasor with Akridge and Terrell either directly, or indirectly through Akridge. This irrebuttable presumption is warranted because invariably in these types of situations, rarely will an attorney fall on his own sword and admit he did wrong or violated the rules.

20

82. Moreover, the predictable response by lawyers, typically voiced in such situations, in saying "I don't recall" or otherwise outright denials that confidences weren't shared, often makes it difficult to get to the bottom of what was shared. Moreover, it is often difficult for affected parties to prove that secrets were shared because that would involve disclosing those secrets to the court, which presents a catch 22 scenario or a Hobson's choice to require that, in order to vindicate his rights and harm from a conflict, a party must disclose sensitive secrets (protected by attorney-client privilege) to the court, by disclosing to the court such secrets shared with conflicted counsel (which secrets could prejudice the court against the client). This is why the irrebuttable presumption of sharing of confidences is warranted in such situations.

83. Hence, in a situation where lead counsel is in a position to receive client confidences of the aggrieved party, a sharing of confidences should be presumed, even if only by inadvertent disclosure. And the fact that there could have been confidences shared, means that there is at least an appearance of impropriety and of impermissible conflict/breach.

84. This is underscored by the Fierro court's finding that "the dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." See Fierro, 2007 WL 4287707, at *8 (quoting Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973)). See Best Western Int'l v. CSI Int'l Co., 1995 WL 505565, at *2 (S.D.N.Y. Aug. 25, 1995) ("**misconduct need not be egregious: there need not be intent, bad faith, or actual disclosure of confidential information. Conduct that merely suggests that one side might enjoy the disclosure of confidential information may warrant disqualification.**").

85. Yet, here, both Donais and Terrell were fully aware of the conflict issue before Donais was hired, and they both made knowing/calculated decisions to accept the risk of conflict in violation of Rule 1.18, as well as knowing/calculated decisions not to inform plaintiffs about it. The law doesn't require plaintiffs to suffer risks that their confidential information could be used against them and the rules do not shield Donais (or Terrell) from their knowing calculated but risky decision to proceed in violation of the rules of conduct (Terrell agreed to settle the case, leaving only Donais).

86. Further, plaintiffs' burden is not to show Donais did in actuality taint or harm the case with confidences he received from them, but instead to show that Donais had a conflict, that he was aware of the conflict, which required him to abstain from taking the Homewood case, whose interests were materially adverse to plaintiffs' legal interests, that Donais' conflict posed a risk of prejudice or taint against plaintiffs and that Donais knew of this risk but proceeded to sign on as defense counsel anyway. See Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981) (test is whether

21

conflict "poses a significant risk of trial taint," not that the trial would be tainted"). See also Hempstead Video, 409 F.3d 127 at 133 ("One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client."); See also Cheng v. GAF Corp., 631 F.2d 1052 (2d Cir. 1980)(where there is "too high a risk of inadvertent disclosure of confidences," disqualification is appropriate.").

87. The above case law highlights the prospect that Donais (and by extension Terrell/Homewood) benefited from information about an adverse party obtained through preliminary consultation with local counsel, who was subsequently disqualified, and who breached his duty to plaintiffs by representing the adverse party and sharing attorney-client information with them. Donais indisputably received information from plaintiffs, going to the core issues adjudicated in the case. This led to unacceptable appearance of impropriety which cannot be eliminated by Donais saying he received no confidential information (or by the spouting of "I don't recall" retorts by Terrell in the 4-27-17 hearing).

88. The issues implicated by Donais' consultation directly with Bisasor and indirectly via Obrien, are "substantially related" to the issues implicated by Donais' representation in defending against those issues in the Homewood case. See Chinese Automobile Distributors of America LLC v. Bricklin, 2009 WL 47337, at *2 (S.D.N.Y. Jan. 8, 2009). Similarly, the Fierro court also found that "Client confidences are not so inert as to limit their usefulness to defined legal disciplines or practice areas. They are fungible, and once disclosed can be applied by an experienced lawyer in ways too numerous to anticipate[.]" See Fierro, 2007 WL 4287707, at *8. Moreover, the 2nd Circuit has held that "it is unclear to us how disclosures, admittedly inadvertent, can be prevented" where there is a "continuing danger that [the attorney] may unintentionally transmit information he gained through his prior association" with a disqualified counsel. Id. at 1058. Numerous other courts have held similarly. See Crudele v. New York City Police Department, 2001 WL 1033539, at *3-4 (S.D.N.Y. Sept. 7, 2001) (raising concerns about possibility of unintentional breaches of client confidences").

89. Similarly, in preparing his affidavit for use in the district court and superior court in March, April and May 2017, Donais further engaged in consultation with Snow and Terrell about the case and about what was discussed with Bisasor and what Bisasor shared, as well as what Obrien shared. All of this continued consultation and involvement of Donais in the case, even though he had been disqualified, further created a risk of harm to plaintiffs. Donais should have stayed away from the case after being disqualified in January 2017. The purpose of Donais' disqualification was to prevent further communication or tainting of the case from him due to his conflict of interest arising from the communications

22

he had with plaintiffs. By continuing to be involved/provide input (including his disparaging statements about Bisasor), Donais did an end run around the purpose of Donais' disqualification in the first place. This is a further breach of duty.

90. Donais wants to have it both ways. On the one hand, Donais has asserted, in one place or another, that he did not know that Bisasor's case was the same case as Anderson's case prior to the 1-18-17 hearing in district court (which has been established as not true). Similarly, in other statements, Donais has tried to give the impression that he only learned there was a conflict when Berry contacted him on 1-17-17 by phone and then further shown in the court hearing on 1-18-17. Yet on the other hand, Donais has claimed that, although he shared with Akridge and Terrell (on or before 1-11-17) that he [Donais] had a conversation with Bisasor, still he [Donais] did not share anything much which could have resulted in a taint on the case by infecting co-counsel Terrell. Donais [and by extension Terrell] were thus trying to have their cake and eat it too. Everyone was trying to cover their own rear ends. Terrell claimed raised concerns on this "flag"[8] before he proceeded to hire a potentially conflicted local counsel. The same thing with Akridge i.e. Akridge purportedly asked Donais if there is going to be a problem, but according to Akridge, Donais emphatically 'with conviction" assured Akridge that there is no problem because "he did not take the case" and had "brief conversation"[9]. But Donais knew that the standard under Rule 1.18 is not whether he took the case or had a brief conversation, but whether he "received and reviewed" information from someone seeking to form an attorney-client relationship. The result was serious prejudice to plaintiffs, who shouldn't have been put in the position of having client conversations shared with Donais being shared with Terrell or others, or otherwise, used against them[10] .

## SECTION III: CONCLUSION

91. It should be noted that Donais not only disclosed the client conversation with Bisasor to Akridge, Terrell (Homewood) before being hired by them, but then he divulged it publicly in two courts, and then to his family members, non-profit board members and the police, including years later. All of these are separate incidents of breach of fiduciary duty.

92. The undisputed facts establish Donais breached fiduciary duty as a matter of law. No genuine factual disputes exist regarding the consultation and the improper unauthorized disclosures made. Partial summary judgment will serve judicial efficiency by resolving this clear-cut professional misconduct claim, allowing remaining proceedings to focus on damages and other disputed issues. See accompanying affidavits of Bisasor and Anderson and accompanying exhibits.

---

[8] See **page 224** in **Exhibit 35 – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court.**
[9] See **page 3 and paragraph 16** in **Exhibit 20 - Affidavit of Dave Akridge dated 5-4-17.** See also all other exhibits attached including affidavits.
[10] See **Exhibit 33 – Case of Fierro v. Gallucci (2007) showing legal standard for conflict of interest**. See also all other exhibits attached.

23

Respectfully submitted,
/s/ Natalie Anderson
NATALIE ANDERSON

/s/ Andre Bisasor
Date: October 6, 2025                                              ANDRE BISASOR

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
ANDRE BISASOR

24

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY CLAIM**

1. Plaintiffs submit this Statement of Material Facts as to which there is no genuine issue to be tried in support of their Motion for Partial Summary Judgment on the breach of fiduciary duty claim against Craig Donais.

**I. UNDISPUTED MATERIAL FACTS ESTABLISHING FIDUCIARY DUTY BREACH**
**A. Establishment of Prospective Attorney-Client Relationship**

2. On 1-5-17, at approximately 5:16 p.m., Plaintiff Natalie Anderson contacted Attorney Robert O'Brien seeking legal assistance regarding a dispute with Homewood Suites in Nashua, NH. See Anderson Affidavit; Exhibit 6.

3. During their 18-minute consultation, Anderson provided detailed confidential information about plaintiffs' legal situation, including allegations of discriminatory treatment, contract disputes, and urgent need for legal intervention to prevent wrongful ejection. Anderson Affidavit.

4. O'Brien, recognizing the complexity of the legal issues and acknowledging they fell outside his primary practice area, informed Anderson he would consult with Attorney Craig Donais, whom O'Brien specifically identified as possessing greater expertise in landlord-tenant matters. Anderson Affidavit.

5. O'Brien contacted Donais by telephone, conveying the substance of Anderson's legal concerns along with the urgent timeline for action. Anderson Affidavit.

6. Following his consultation with Donais, O'Brien sent Anderson a text message stating that he spoke with Donais, that Donais said plaintiffs "have a great contract case for the overcharges," that "the innkeeper rules would likely apply to your situation" allowing for no cause evictions, and that Donais "would not opine on the discrimination claims outside his experience." Anderson Affidavit; Exhibit 9 [text message from Obrien to Anderson].

7. On 1-6-17, Plaintiff Andre Bisasor left a voicemail for Donais stating: "*Hello, my name is Andre and I am calling about a tenant legal matter. I understand that you practice landlord-tenant law. I wanted to see if I could discuss a legal matter with you. Please give me a call back at 781-492-5675. The matter is somewhat urgent so if you can, please call be back as soon as it is practical.*" First Bisasor Affidavit.

8. On 1-9-17, Donais returned Bisasor's call and engaged in a telephone consultation lasting approximately seven minutes. First Bisasor Affidavit; Donais March 2017 Affidavit. During the 1-9-17 consultation, Bisasor disclosed

1

confidential information about plaintiffs' claims against Homewood, their legal situation, and urgent need for legal representation. First Bisasor Affidavit.

9. Donais asked Bisasor whether he obtained Donais's contact information from O'Brien, and Bisasor confirmed he had. 1-18-17 Court Transcript p. 11-12. During the consultation, Donais realized the conversation with Bisasor related to the same case O'Brien had discussed with him on 1-5-17. See Exhibit 34 - 1-18-17 Court Transcript p. 11-12; Donais March 2017 Affidavit. Bisasor asked Donais whether the consultation was confidential, and Donais confirmed it was protected by attorney-client privilege. First Bisasor Affidavit.

10. Bisasor shared confidential information including: (a) background circumstances of the dispute with Homewood; (b) strategy for filing a 540-A petition before 1-10-17; (c) concerns about potential weaknesses in their case; (d) information from discussions with a Nashua police officer; (e) details about disparate treatment in food service that was never included in any public filing; and (f) other strategic and factual matters. First Bisasor Affidavit.

11. Donais provided legal advice during the consultation, including his opinion that a TRO would likely be granted based on what Bisasor described, and analysis of their contract claims. First Bisasor Affidavit.

12. Donais told Bisasor during the consultation that there "may even be a potential conflict," indicating Donais recognized potential ethical issues. Exhibit 34 - 1-18-17 Court Transcript p. 12.

### B. Judicial Recognition of Attorney-Client Relationship

13. On 1-18-17, during a hearing in Nashua District Court, Judge Moore found that an attorney-client relationship existed between Donais and plaintiffs based on the consultations. First Bisasor Affidavit; Anderson Affidavit.

14. Judge Moore, who had served on the Professional Conduct Committee for 10 years and as vice chair of the hearing committee for 4 years, told Donais that if he had any discussion with O'Brien or Bisasor about the facts of the case, he would be in conflict. Exhibit 34 - 1-18-17 Court Transcript.

15. As a direct result of Judge Moore's finding, Donais was required to withdraw from representing Homewood Suites due to the conflict of interest created by his consultations with plaintiffs. First Bisasor Affidavit.

### C. Donais' Admissions Establishing Prospective Attorney-Client Relationship

16. In his March 2017 affidavit, Donais admitted that "Andre provided me some general details about what he described as a landlord tenant dispute involving inflated charges and also a concern about the existence of racial discrimination against him, and a need to immediately file." Donais March 2017 Affidavit.

17. In his email dated 1-11-17, to Dave Akridge and Karl Terrell, Donais admitted: "*What I know is that I received a call from Andre who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper.*" Exhibit 19 [1-11-17 Email].

18. At the 1-18-17 hearing, Donais admitted he "spoke in for six minutes 37 seconds to get a sense of what this case was about" and that he "figured out what the case was about." Exhibit 34 - 1-18-17 Court Transcript p. 11-12.

19. Donais admitted he received sufficient information during the consultation to realize it was the same case O'Brien had discussed with him, demonstrating he obtained substantive confidential information. Exhibit 34 - 1-18-17 Court Transcript p. 11-12.

### D. Unauthorized Disclosure To Adverse Parties

20. On 1-11-17, Akridge contacted Donais seeking his involvement as local counsel for Homewood Suites, the same parties plaintiffs were pursuing claims against. Exhibit 20 - Akridge Affidavit dated 5-4-17.

21. During their 1-11-17 conversation, Donais told Akridge he had received a call from someone named Andre about a landlord-tenant matter involving "some type of mixed-use property." Exhibit 20 - Akridge Affidavit of 5-4-17.

22. Akridge and Donais "concluded that Andre was quite likely Mr. Bisasor" during this conversation. Exhibit 20 - Akridge Affidavit dated 5-4-17. Then Akridge specifically asked Donais whether he would have a conflict serving as local counsel given the conversation with Andre, Donais responded "with conviction that he did not." Exhibit 20 - Akridge Affidavit 5-4-17.

23. On 1-11-17, prior to being retained by Homewood, Donais sent an email to Akridge, Terrell, and Terrell's assistant disclosing confidential information from his consultation with Bisasor, including details about the 540-A petition, claims of disparate treatment in food services, overcharging allegations, and the mixed-use property nature. Exhibit 19 - 1-11-17 Email Chain.

24. The information Donais disclosed about disparate treatment in food services was never included in plaintiffs' 540-A petition, demonstrating it was confidential information obtained only through the privileged consultation. First Bisasor Affidavit.

25. On 1-13-17, Donais filed an appearance on behalf of Homewood defendants and a motion for pro hac vice admission of Terrell. Court Records. Exhibit 21.

26. Donais never sought consent from plaintiffs before disclosing confidential consultation information to adverse parties or before representing those adverse parties. First Bisasor Affidavit.

### E. Continued Breaches of Confidentiality

27. In March 2017, months after his disqualification, Donais filed an affidavit in two New Hampshire courts containing false statements about the January 9, 2017 consultation, including the fabricated allegation that Bisasor accused him of racial discrimination. Donais March 2017 Affidavit.

28. Bisasor categorically denies making any accusation of racial discrimination against Donais and avers that no words relating to race, racism, or discrimination were spoken during their consultation. First Bisasor Affidavit.

29. During the time period of 2017, 2019, and 2020, Donais disclosed contents of the confidential consultation to multiple unauthorized third parties including: (a) his wife Mary Donais; (b) his sons Garrett and Aiden; (c) members of the Manchester NH Crime-Line board; (d) Manchester NH police; and (e) friends, colleagues, and community members. First Bisasor Affidavit; Anderson Affidavit.

30. On 6-18-19, Donais voluntarily provided detailed information about the confidential consultations to Manchester police, including fabricated statements about plaintiffs' conduct and character. Exhibit 27 - Police Interview Transcript.

31. These disclosures occurred well outside any litigation context and were made for purposes of harming plaintiffs' reputation rather than any legitimate legal purpose. First Bisasor Affidavit.

### F. Knowledge of Conflict and Deliberate Misconduct

32. Donais knew as early as 1-9-17, that representing Homewood would create a conflict, as evidenced by his admission that he told Bisasor there "may even be a potential conflict." Exhibit 34 - 1-18-17 Transcript p. 12.

33. Despite this knowledge, Donais agreed to represent Homewood on 1-13-17, and fought vigorously to remain on the case even after the conflict was raised by opposing counsel. Exhibit 34 - 1-18-17 Court Transcript; First Bisasor Affidavit.

34. When contacted by Attorney Elliott Berry on 1-17-17, about the conflict, Donais denied any wrongdoing and refused to withdraw voluntarily. First Bisasor Affidavit.

35. At the 1-18-17 hearing, Donais accused Berry of creating a "contrived conflict," which Judge Moore rejected. Exhibit 34 - 1-18-17 Court Transcript.

4

36. Donais only withdrew after Judge Moore made clear he would formally disqualify him if Donais did not withdraw voluntarily. Exhibit 34 - 1-18-17 Court Transcript; First Bisasor Affidavit.

### G. Indisputable Facts From Donais' Admissions Establishing Breach of Fiduciary Duty

37. The following facts are established from Donais' own words and admissions:

    a. Bisasor had the intent to seek legal advice from an attorney. This is indisputable.

    b. Donais called Bisasor with the intention of having a conversation with a prospective client about that prospective client's legal situation and needs. This is indisputable.

    c. When Donais called Bisasor, Bisasor then communicated information about his legal situation and needs to Donais, with the intention of securing legal advice and/or legal representation from Donais as an attorney. This is indisputable.

    d. [Note: Donais states in his affidavit that Bisasor asked him to take his case but he declined. This establishes the intent of Bisasor, in sharing information with Donais, was to secure legal advice and legal representation from Donais as an attorney on a landlord-tenant matter, in the area of practice of Donais].

38. Under the above facts and circumstances, it is virtually impossible that this information shared with Donais would not be confidential information or not be protected by attorney-client privilege.

39. The above indisputably establishes that a prospective attorney-client relationship was formed, as defined by NH law, and that Donais had fiduciary duty of confidentiality with respect to the plaintiffs and that Donais breached that duty of confidentiality when he divulged information shared with him from Bisasor to the opposing parties, as part of an attempt and desire to secure a position with them to be their local counsel.  This represents an intentional egregious breach of fiduciary duty.

### II. FURTHER INDISPUTABLE FACTS FROM ESTABLISHING FIDUCIARY DUTY BREACH
#### A. Overview

40. On or about 1-6-17, Bisasor left a voicemail message for Donais seeking legal representation regarding their dispute with Homewood.

41. On 1-9-17, Donais returned the call and engaged in a telephone consultation with Bisasor that lasted approximately 7 minutes. During this consultation, Bisasor disclosed confidential information about their claims and legal situation for the purpose of obtaining legal advice and potential representation.

5

42. Bisasor provided this information in good faith reliance on Donais's professional obligations as an attorney. Bisasor understood this consultation to be confidential and protected by attorney-client privilege.

43. Donais then thereafter went to represent the opposing party and disclosed information about Bisasor's conversation to them prior to representing them.

44. On 1-18-17, in Nashua District Court, Judge Paul Moore ("Judge Moore") found that an attorney-client relationship existed between Donais and Bisasor based on the 1-9-17 consultation and based on Obrien's consultation with Donais on behalf of Anderson on 1-5-17. As a result of this finding, Donais was required to withdraw from representing Homewood due to the conflict of interest.

45. Bisasor and Anderson subsequently learned that Donais subsequently disclosed information from those consultations to more third parties.

### B. Legal Action Initiated By Plaintiffs | Donais Goes To Represented Opposing Side

46. On 1-9-17, Plaintiffs filed an emergency 540A petition in Nashua District Court. A Temporary Restraining Order (TRO) is granted by the court to halt any threat of a removal action. On 1-10-17, the 540A petition and the TRO is served on general manager Adam Robitaille in the morning.

47. On 1-11-17, after Terrell advises Akridge of the need for local counsel, Akridge contacted Donais seeking his involvement in the case as local counsel and to support the pro hac vice admission of Terrell. During phone call, Akridge explained the Homewood matter involving the plaintiffs. Donais then informed Akridge that he had a conversation with Bisasor about the case the day before. Donais explained to Akridge what was discussed with Bisasor. Akridge asked Donais if this created a conflict and Donais emphatically assured Akridge that it did not. Akridge then informed Terrell of the issue and Terrell instructs Akridge to tell Donais that he needs Donais to describe the substance of the Bisasor conversation to Terrell. Donais then writes an email to Akridge, Terrell, and Terrell's assistant, with a brief description of the 1-9-17 conversation, saying that is all he knows, providing his bar # and ending with "let me know how you want to proceed".

48. Donais' description of the 1-9-17 call contained confidential information shared by Bisasor, the sharing of which constituted unauthorized disclosure of private client information to adverse parties, breaking client confidentiality.

49. Then, further, at some point thereafter, around 2 days later, on or about 1-13-17, Donais (after having consulted with Bisasor on 1-9-17) agrees to be hired and is hired by Akridge to represent the opposing party [Homewood].

6

50. Donais also failed to inform Bisasor of this nor obtained consent from Bisasor before doing so.

51. Donais' voluntary decision to call back Bisasor in response to his voicemail, represented at the very least an implied agreement by Donais to engage in an attorney-client conversation protected by privilege, and thus Donais should have known that it was protected by privilege.

### C. Donais' Contact With Akridge

52. After the 1-9-17 call with Bisasor, Donais and Akridge had a phone call on 1-11-17 where the plaintiffs and their case against Homewood was discussed. Donais discussed the information shared with him from Bisasor. Donais shared this information without receiving consent from Bisasor and without informing Bisasor that he was going to share such information with Akridge. This conversation was centered on whether Donais could be hired to represent Akridge/Homewood in the same case that Bisasor discussed with Donais on 1-9-17. Subsequent to this phone call, Donais sent an email on 1-11-17 to Akridge stating:

> "What I know is that I received a call from "Andre" who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper..".

53. Here, Donais admitted that he received specific client consultation information from Bisasor on the 1-9-17 call.

54. On 1-11-17, Akridge calls Terrell and tells him of the discussion he had with Donais about the contact with Bisasor. Donais writes an email to Terrell stating that he had contact with Bisasor and provided a summary of what was discussed with Bisasor. Donais and Terrell had a further conversation by phone about the matter. On 1-13-17, Donais filed an appearance on behalf of the Homewood defendants and filed pro hac vice admission motion for Terrell. On 1-17-17, Donais and Terrell filed a 60-page motion to dismiss in the Nashua District Court. The motion to dismiss included/utilized confidential information that was shared with Donais both directly via call with Bisasor and indirectly via communications with Obrien from Anderson.

### D. Elliot Berry's 1-17-17 Call with Donais

55. On 1-17-17, renown Attorney Elliott Berry (of the NH Legal Assistance) agreed to formally represent plaintiffs in this case. Plaintiffs advised Berry of the situation with Donais. Berry expressed shock at these events. Berry advised plaintiffs that this was a serious violation of Rule 1.18 of the NH rules of professional conduct.

56. On 1-17-17, Berry called Donais about the conflict of interest and to give him a chance to explain and/or to withdraw from the case because Berry now had a duty to bring the matter to the attention of the court. But Donais told Berry that there was no conflict of interest, and that he did not think he needed to withdraw from the case.

### E. Court Hearing on 1-18-17

57. On 1-18-17, a court hearing took place in the Nashua district court before Judge Paul Moore. At or near the beginning of the hearing, Berry raised ethical concerns about Donais with the court. A sidebar ensues with counsel for both parties invited to discuss the matter at the bench in front of Judge Moore. Berry explained the ethical concerns to the judge. Donais gave his explanation of the matter citing that he did nothing wrong. Donais fought vigorously to remain on the case, and even accused Berry of creating a contrived conflict. However, Judge Moore told Donais that he had been part of the PCC for the past 10 years and was vice chair of the hearing committee for the past 4 years. Judge Moore told Donais that if he had any discussion with Obrien or Bisasor about the facts of this particular case, he would be in conflict. Judge Moore indicated to Donais that this could become a very serious matter if plaintiffs decide to pursue this as a complaint and that Donais needs to carefully consider what he is going to do because once "the bell is rung", it will be a problem especially if done while the litigation is proceeding. Judge Moore asked Berry if his clients were willing to waive any conflict and that if they were not, then Donais needed to make a decision on withdrawing. If Donais could not decide for himself, then Judge Moore would make the decision for him. Judge Moore clearly was signaling to Donais that it would be much better for him to withdraw on his own without being formally disqualified by the judge. Donais got the message loud and clear. After a short recess, wherein plaintiffs told Berry that they did not waive any conflict, then Donais reluctantly told Judge Moore that he was going to withdraw.

### F. Dave Akridge Affidavit on 5-4-17

58. Akridge provided a statement on 5-4-17 in an affidavit that shows that, as of 1-11-17, prior to Donais being hired to represent Akridge and Homewood, that Donais and Akridge knew that Bisasor was the plaintiff suing Akridge and Homewood in the district court, i.e. that they concluded that "Andre" was quite likely "Mr. Bisasor" and that Akridge "heard enough to conclude… that the caller he described was likely Mr. Bisasor".

59. The above shows that Donais received legal advice information from Bisasor, that Donais was in contact with Akridge shortly after the consultation call with Bisasor, that before Akridge hired Donais, Donais shared with Akridge information that Bisasor shared with Donais. The above also shows Donais willfully and knowingly persisted in seeking to represent the opposing party when he knew there was a conflict and when his possible new client and their lawyer was specifically concerned that there was a conflict of interest. But Donais persuaded them

that there was nothing to the matter, all the while also hiding that Obrien had spoken to Donais about the same matter and shared more information about the matter, to which Donais even rendered a legal opinion. It is likely that if Akridge and perhaps Terrell had known about the Obrien call, they would not have hired Donais as local counsel. Akridge stated that: *"I specifically recall asking Mr. Donais if he would have a conflict serving as local counsel, given this conversation with "Andre." He responded with conviction that he did not, given the fact that he had turned down the request to take the case, and given also the brief nature of his discussion with the caller."*

## G. Other Statements Made in Donais

60. Donais admits that he received confidential information from Bisasor. As one example, he admits that he received information regarding the "need to immediately file" which further goes to timing and strategy. Donais also stated that during the call he knew it was the same case that he consulted on with Obrien. Donais disclosed the contents of plaintiffs' client-privileged protected information, as noted above, to Akridge, Terrell, and Terrel's assistant, prior to being hired by them to represent them as parties adverse to plaintiffs. Donais further used/disclosed the contents of plaintiffs' client-privileged protected information, as noted above, to Akridge, Terrell, and Terrell's assistant, after he was hired by them to represent them as parties adverse to plaintiffs. This was a breach of confidentiality.

## H. Additional Subsequent Events

61. In the time period spanning 2017, 2019, 2020, and after, Donais disclosed the contents of plaintiffs' client-privileged protected information, as noted above, to his family including wife/sons, his friends, members of the Manchester NH crime-line board, and the Manchester NH police, including details of the 1-9-17 conversation with Bisasor and the 1-5-17 conversation with Obrien.

## III. FURTHER INDISPUTABLE FACTS PERTAINING TO BREACH OF FIDUCIARY DUTY ESTABLISHED BY DONAIS' STATEMENTS AND ADMISSIONS
### A. Donais Has Admitted Facts That Establishes Conflict/Breach Of Fiduciary Duty

#### i. 2017 Affidavit

62. Donais' affidavit states: "*Andre provided me some general details about what he described as a landlord tenant dispute involving inflated charges and also a concern about the existence of racial discrimination against him, and a need to immediately file.*"

63. Rule 1.18 states:

    a)   A person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

    b)   Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.

9

64. So, according to Rule 1.18, Bisasor was a prospective client. Donais provided information to Bisasor, as a lawyer with the possibility of forming a client-lawyer relationship with Donais.

65. Donais states that Bisasor "***provided some general details about…a landlord-tenant dispute, involving inflated charges",*** along with information about a racial discrimination claim and urgent timing needs, etc.  Here, Donais thus admitted to receiving/reviewing information from a prospective client.

66. Therefore, because Bisasor provided information to Donais regarding the possibility of forming a client-lawyer relationship, making Bisasor a prospective client, and because Donais received and reviewed information from Bisasor as a prospective client, Donais was prohibited from representing a client with interests materially adverse to those of Bisasor as a prospective client.

67. Further, Donais knew that the case in which he was contacted about by Dave Akridge on or about 1-9-17, was the same case that Bisasor spoke to him about on 1-9-17.

### ii. 1-18-17 court hearing

68. In the 1-18-17 court hearing[1], Donais stated:

> "So here's what happened, Your Honor, is on Thursday, January 5th, at 5:37, Rob O'Brien called me and said hey, I've got a potential client, here's what the issues are, is it something that you'd be interested in? He didn't tell me who the plaintiff was, didn't tell me who the defendant was, just generically laid out what some of the issues were.  I said I'm not interested. Rob said can I give your name to the other party so that you can explain that to **him**[2]. I said I'd rather you not since I'm not interested in taking the case. I don't want to take it. I don't have the ability to do it on the timeline. Notwithstanding that, Rob gave contact information. I got a phone call -- I can give you all the records if Your Honor would like. So this is Rob O'Brien's  statement of what transpired. So Rob told me about the case. These come from my phone records and my system, Your Honor. And I redacted out the other entries for the names of -- because they are clients -- and the whole bit. But there were two records. One was on January 5th.  The other was on January 6th. So on the 5th at 6:17 p.m., I had a seven second phone call and that was probably spent navigating the phone tree and it disappeared. There was another phone call on Friday the 6th at 5:16 p.m. for a minute 37. Again, navigating the phone tree. There was a message. Got the message, generically about hey, got a landlord-tenant case, can I talk with you about it. And I said sure. This is my call back the following day on Monday, spoke in for six minutes 37 seconds to get a sense of what this case was about, Your Honor. **Once I figured out what the case was about, I said did you get my name and info from Rob O'Brien** and the answer is yes. And I said I already told him I don't want to do it.  So at that point, there was pressure to what can I do with the case. I really don't want to do it. I'm not interested in doing that. I don't have the time to do it. I can't do it on the timeline that you want. **May even be a potential conflict**. Don't want to take the case. That was the end of the phone call."

69. Here, Donais stated that, during the 1-9-17 phone call with Bisasor, Donais figured out that there "**may even be a potential conflict"**. This could only mean that he connected the case to the Homewood suites case. This means that Donais knew that Homewood and Akridge were involved in a case against Bisasor and his spouse. This is proof that Donais knew of the conflict from 1-9-17, by his own admission.

---

[1] See **Exhibit 34 – Transcript of the District Court Hearing on January 18, 2017.**

[2] NB: Mr. Obrien has stated in his 1-18-17 affidavit that the caller was a "**she**", hence a female, meaning me. This was not a "him".

70. Moreover, here Donais also admits that he realized that there was a connection between the conversation Donais had with Obrien on 1-5-17 and the conversation he was having with Bisasor on 1-9-17 i.e. "**Once I figured out what the case was about, I said did you get my name and info from Rob O'Brien and the answer is yes. And I said I already told him I don't want to do it.**"

71. Donais also admitted "*There was another phone call on Friday the 6th at 5:16p.m. for a minute 37. Again, navigating the phone tree.* **There was a message. Got the message, generically about hey, got a landlord- tenant case, can I talk with you about it. And I said sure. This is my call back the following day on Monday, spoke in for six minutes 37 seconds to get a sense of what this case was about, Your Honor. Once I figured out what the case was about, I said did you get my name and info from Rob O'Brien** *and the answer is yes.*"

72. Here, Donais states that he received enough information to figure out what the case was about. This establishes that he received confidential information about the legal matter from Bisasor. This also establishes that he received confidential information about the legal matter from Obrien about the same legal matter. It can be inferred from this admission alone that in order to receive enough information to figure out what the case was about, Donais must have received information about the facts of the case, the claims by the plaintiffs, and the alleged wrongdoing by the Homewood defendants. This is even more clear-cut given that Donais states that he figured this all out without having the names of the parties, including without the name of the hotel. Thus, his identification of what the case was about and that it was the same case that Obrien told him about, must have been based on details of the facts and claims of the case, which by definition constitutes confidential information provided via a prospective attorney-client communication. There is no logical way for Donais to avoid the fact that he received confidential information from Bisasor and from Obrien (via Anderson) about the facts and claims of the case, prior to the filing of any lawsuit.

### iii. 1-11-17 Email

73. On 1-11-17, Donais wrote an email to Dave Akridge, Karl Terrell (out of state counsel advising Akridge), and Felicia Brogden (Terrell's assistant), stating:

> Karl and Felicia: I am happy to provide local representation to support your pro hac vice admission. What I know is that I received a call from "Andre" who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper. Given his timeline and his issues, I was not in a position to assist, and did not engage in any conflict analysis to determine the property, property address, or whether there was a conflict. This is the extent of what I know.  I am around and available today

11

with availability until 2pm today, tied up for about 1 hour, and then spotty after that. Tomorrow is clear from 9-10, and 10:30-1, and 2-4:30.  My NH bar # is 12466. Let me know how you wish to proceed. Craig

74. First, Donais here admits that he received information from Bisasor regarding discussing filing a 540A petition, claiming being treated differently for "food services because they were minorities", and were being overcharged for their use of the room, and that it was a "mixed use property", in which part was rented, and part was under innkeeper, and an urgent timeline. Again, this goes to providing confidential information from Bisasor to Donais about the facts of the dispute, and the intent to file a 540A petition (as a legal strategy). Donais further here states he was told about disparate treatment (which was not included in the 540A petition). It should be noted that the motion to dismiss (on page 15 and 16, among others) filed by Donais and Terrell in the Nashua circuit court, fabricated untrue[3] attacks on Bisasor for "misconduct…on numerous occasions during the food service", which was a preemptive attack to undermine any future raising of disparate treatment in the food service, which was a direct function of the information Donais obtained from Bisasor. The motion to dismiss also preemptively raised race issues in order to again neutralize any possible future claim of race discrimination. This is a clear example how Donais' receipt of confidential information from Bisasor and Anderson (via Obrien) compromised the plaintiff's case and disadvantaged them in therein.

75. NB: It should be noted that here Donais stated that this is "all he knows". But yet in his March 2017 affidavit, 3 months later, he then claims to know much more about what was said in the 1-9-17 call way beyond what he said here in this 1-11-17 email. Donais was clearly lying in the email about the extent of what was discussed on the call. The fact that Donais lied about this is undisputed from the record.

76. For instance, in his affidavit, he claims Bisasor accused him of racism for declining the case. Donais also hid the fact that Obrien had contacted him with information from Anderson, that Donais realized it was the same case that Obrien spoke to him about, or that Donais purportedly asked Bisasor if he got the contact info from Obrien. Further, Donais didn't mention that he (purportedly) told Bisasor there may be a potential conflict. This is a lot of information that Donais left out of this email, some of which was later stated in his March 2017 affidavit or in the 1-18-17 hearing.

---

[3] Note: These untrue attacks were withdrawn by the Homewood case defendants in April 2022, pursuant to a settlement agreement that including nullifying the false defamatory statements made in this motion to dismiss.

77. It should be noted that Donais admits here that Akridge/Homewood had not yet hired him, as he gave his "NH bar number" to them and stated "let me know how you want to proceed" in that first email to them. This demonstrates that he had not been hired as yet because he could not have been hired without providing Akridge and Terrell his bar #. Further, his query about how they wanted to proceed, confirms he hadn't been hired as yet.

78. This directly contradicts his statement in the March 2017 affidavit where he stated:

> "Since I did not learn from either Attorney O'Brien or Andre about the parties involved in Andre's matter, I thereafter agreed to serve as local counsel when I was contacted by Attorney Karl Terrell, representing Homewood Suites, in the case brought by Ms. Natalie Anderson in this 9th Circuit Court-Nashua District Division landlord-tenant case. I had a chance to review Ms. Anderson's pleading, confirmed the identity of the plaintiff (and that Andre was not a plaintiff) and performed a conflict check before undertaking representation.

79. The above statement by Donais is clearly false as he clearly learned that Andre was involved in the Homewood case on 1-11-17, in the first conversation he had with Akridge about the case, prior to undertaking representation of Homewood, before reading any pleadings, before performing any so-called conflict check. This is corroborated by Akridge's affidavit. [NB: This alone should impeach Donais' affidavit as being untruthful. He needs to be put under oath and cross-examined about this.]

80. Further, this email indisputably shows that, on or about 1-11-17, Donais divulged confidential information shared with him from Bisasor on the 1-9-17 prospective client call, to Akridge, Terrell, and Terrell's assistant, prior to being representing Akridge/Homewood, which representation was agreed upon/occurred two days later on 1-13-17 (which is the date of a pro hac vice admission motion, on behalf of Terrell, filed by Donais, in circuit court.)

81. Here, Akridge contacted Donais by phone, on 1-11-17, about possibly representing him and his company as local counsel. Donais told Akridge he spoke to "Andre" about the case on 1-9-17 and figured out that Andre was involved in the case. Donais also told Akridge and Terrell about the facts of what Bisasor told Donais including specific facts, specific potential claims, strategic actions being contemplated, and urgent timing factors. This includes information about disparate treatment claims that was never included in the 540A petition and thus Donais clearly revealed to Akridge and Terrell, information that they did not know about plaintiffs' claims from the 540A petition. This is indisputable. Donais should not have divulged any of this information to unauthorized third parties, much less to the opposing parties in the same dispute.

### iv. Akridge Affidavit

82. Below is the relevant excerpt of Akridge's affidavit:

On January 10, we received a copy of the legal action the plaintiffs filed in the Circuit Court in Nashua. I asked Mr. Terrell to represent us. On January 11, at 11:29 am, Mr. Terrell sent me an email stating that he would "need to associate local counsel," and provided a copy of the local court rule on the admission of out of-state counsel. A copy of this email and several subsequent emails, in a single chain dated January 11, is attached. Mr. Terrell and I had discussed, earlier, the likely need to associate local counsel. He concluded his email by stating: "Please ask the lawyer you mentioned if he's willing to provide this service." The lawyer I had in mind was Craig Donais, who I have known for several years. He has provided legal services for me related to the board of a condominium association that I serve on, and he once handled a personal matter for me. Mr. Donais has never been retained to perform work for either Great American Hotel Group or the Homewood Suites by Hilton in Nashua. Shortly after Mr. Terrell's 11:29 am email, I called Mr. Donais. Our discussion was quite short; maybe four or five minutes. This was my first conversation with Donais that had anything to do with the dispute involving Anderson and Bisasor. During that call, I briefly explained the nature of the case, the fact that it involved the Homewood Suites in Nashua, and the need for local counsel. Donais then let me know that he had received a call from an individual named "Andre," who said he was looking for an attorney to represent him in a landlord/tenant matter. The situation, as Donais said he understood it, involved some type of mixed-use property. He said he did not remember the caller identifying this property as the Nashua Homewood Suites. In any event, in piecing this together, we concluded that "Andre" was quite likely Mr. Bisasor.

……

I specifically recall asking Mr. Donais if he would have a conflict serving as local counsel, given this conversation with "Andre." He responded with conviction that he did not, given the fact that he had turned down the request to take the case, and given also the brief nature of his discussion with the caller. Following this call, I sent Mr. Donais an email - at 11:41 am - copying Mr. Terrell and his assistant Felicia Brogden. See the attached email chain. In that email, I offered to "do a phone intro" with Mr. Donais and Mr. Terrell, as the two of them had not yet met or spoken concerning this case (and, to my knowledge, had never met or spoken previously on any other matters). I did not provide Mr. Terrell, in that email, a phone number for Mr. Donais. I stated also to Mr. Terrell, in that email, that Mr. Donais "may have received a call from Bisasor yesterday" (I have since read Mr. Donais' affidavit, in which he states he spoke with Donais on January 9, not January 10, as I apparently thought on Jan 11, when referring to that call as having taken place "yesterday'). I stated further, in this email, that Mr. Donais "did not take his case." I believe I asked Mr. Donais to explain and describe to Mr. Terrell the substance of his conversation with Bisasor.

83. Here, Akridge confirms that Donais learned that Bisasor was involved in the Homewood case on 1-11-17, in the first conversation he had with Akridge about the case, prior to undertaking representation of Homewood, before reading any pleadings, before performing any so-called conflict check. Donais, as of 1-11-17, thus knew that he had received prospective client information on the substance of the Homewood case, from Bisasor on 1-9-17 and from Obrien on 1-5-17. He thus had enough to know there was a conflict, and that to move forward with representing Homewood would constitute a breach of fiduciary duty to the plaintiffs.

**B. Statements & False Statements by Donais in his Affidavit that Support Breach of Fiduciary Duty Claim**

84. Donais made several statements, including false statements in his March 2017 affidavit that establishes the breach of fiduciary duty claim, as follows.

85. In his affidavit, Donais stated that he agreed to serve as local counsel for Homewood because he did know about the parties from Obrien or Bisasor and because he performed a conflict check before undertaking representation and reviewed the pleadings filed in district court, which confirmed that the plaintiff was not Bisasor. But this contradicts his statements made in the 1-11-17 email chain with Donais, Akridge and Terrell, which shows that before Donais undertook representation of Homewood, he had an initial conversation with Akridge who initiated

the contact apparently in the morning of 1-11-17 and who explained the case to Donais, and wherein it shows that Donais immediately recognized that "Andre" was involved in the case. This realization took place before representation was undertaken and it prompted Akridge to inform Terrell of the problem and it further prompted an investigation by Terrell into what exactly was discussed between Donais and Bisasor. Because of the sequence of these facts, it would have been totally unnecessary, unnatural, anachronistic for Donais to then perform a conflict check when he already knew who the plaintiffs were by his own admission, before undertaking representation. Donais' story simply does not make any logical sense and appears to be a rather clumsy attempt to harmonize or massage the facts in order to cover himself. But it cannot be done. The facts are too specific and pronounced to support his tortured story. The facts are not malleable enough to avoid the clear/evident contradictions in his story. The bottom line is that here again it is clear that Donais is not telling the truth. The truth is that he did not need to perform a conflict check because he already knew who the parties were. Plaintiffs have offered evidence that Donais knew who the parties were from 1-5-17 when Obrien contacted him and told him about Homewood. Plaintiffs also offered evidence that Donais knew who the parties were, because he stated/claimed that on the 1-9-17 call with Bisasor, he said that there **may be a potential conflict**. But even if these facts and evidence are not considered for the moment, it is indisputable that Donais knew who the parties at the very least during the purported first contact that Akridge had with Donais wherein Akridge purportedly was first seeking to recruit Donais as local counsel for the case on or about 1-11-17. This is proven by the email record that Donais attached to his motion to dismiss amended complaint filed 8-22-25 in this court.

86. Moreover, Donais' statement that he "***had a chance to review Ms. Anderson's pleading, confirmed the identity of the plaintiff (and that Andre was not a plaintiff)***", simply does not ring true but comes across as a strained attempt to orchestrate the appearance of ignorance and innocence. Moreover, Akridge has stated in his affidavit that when Akridge explained to Donais the broad issues of the case, Donais immediately recognized the facts and the parties (i.e. presumably based on the facts recited to him just a day or two earlier in the call with Bisasor on 1-9-17, as well as on the prior call with Obrien on 1-5-17). Yet if that is true, then how is it that Donais could (on or about 1-11-17) review the entire pleading filed by the plaintiffs in district court on 1-9-17, without making the same realization, since the district court pleadings went into detail about the facts of the case (the

15

same facts that Akridge must have covered more broadly with Donais on the phone on 1-11-17, assuming that call took place after Donais review of the pleading). This just simply makes no sense. Donais is trying to have it both ways and, in the process, has created an untenable contradiction. Otherwise, there is an irreconcilable contradiction between the affidavit of Donais and the affidavit of Akridge.

87. NB: This is just not believable and this purported paper trail smacks of orchestration and manipulation. Yet, even assuming the benefit of the doubt, it still makes no sense that Donais would later claim in his affidavit that he relied upon a conflict check performed at the same time and in the same call wherein he admitted that he realized who the parties were and that "Andre" was Anderson's husband at that time on 1-11-17. A conflict check was no longer necessary to be performed or otherwise to be relied upon because Donais had perfect knowledge of the parties at that time and because he therefore at that time had knowledge that there was a conflict or at least a potential conflict or the appearance of a conflict. Hence, Donais' story cannot be credited or believed and reflects a further attempt at deflection, obfuscation and subterfuge to mislead this tribunal.

88. It should be noted that the text messages from Obrien were not sent to Bisasor. Obrien sent them to Anderson. Obrien did not have any contact with Bisasor nor did he text Bisasor anything. Any and all contact with Obrien occurred with Anderson. Donais attempts a sleight of hand by trying to insinuate that he understood that the text messages from Obrien were sent from Obrien to Bisasor. But even this fails because Obrien made it clear to Donais that the person he spoke to on 1-5-17 was a female, not a male. This is made clear even in the affidavit that Donais solicited from Obrien on or about 1-17-17 so that Donais could carry it to court on 1-18-17 to show the judge. In that affidavit of Obrien[4], Obrien references the caller as a **"she"** on at least two occasions[5]. Moreover, during the 1-18-17 court hearing, it was clearly stated the conversation with Obrien occurred with Anderson and that the texts were sent to Anderson. Moreover, in the motion to disqualify counsel that was submitted to the district court on 3-6-17 and to the superior court on 3-1-17 by plaintiff, it was abundantly clear that the conversation with Obrien took place with Anderson and that the text messages from Obrien was sent to

---

[4] See **Exhibit 10 – Affidavit of Robert Obrien dated 1-18-17.**

[5] Donais tries a "sleight of hand" argument to make it look as though no one knew the gender of the person that had called Obrien on 1-5-17. Yet Obrien clearly identifies the person who called him as a "she", which he did twice in his affidavit. This shows the intent to deceive. Donais knew that Obrien had identified the caller as a female, and thus that it could not have been Bisasor who spoke to Obrien. Yet, he put that misleading statement in his filing in order to confuse the court.

Anderson's phone. Yet, with all those facts made clear from multiple sources and in multiple pleadings, Donais still tries, in his 3-13-17 affidavit, to feign ignorance and attempts to reframe the conversation with Obrien as occurring with Bisasor and the texts from Obrien as going to Bisasor. This just shows the lengths to which Donais was and is willing to go to be deceitful and misleading in order to confuse the triers of fact. But there is a purpose to this deceit and obfuscation: he wants to create the impression that Anderson could not be implicated as a prospective client and so if he misdirects the conversation as taking place between Obrien and Bisasor, so that he can try to make or maintain the argument that there was no contact with Anderson whether directly or indirectly and that Anderson can never be considered to have been a prospective client. This is the level of sophistry and subterfuge that Donais is capable of and it is a warning to this tribunal that he is playing a very nuanced and sophisticated game of deceit.

89. Similarly, Donais again tries to engage in "sleight of hand" and misdirection when Donais stated in his affidavit that "**the text message from Attorney Obrien attributed statements to me that I simply did not make. These statements also appear in a paragraph referencing Attorney Diaz, so it is not clear whether the statements were intended to be attributable to Attorney Diaz or to me**". First it should be noted that Obrien did not speak with "Attorney Diaz" on 1-5-17. Obrien has made clear that Donais was the one who provided the legal opinion on the facts of the case and that was what was presented in the text message from Obrien to Anderson. Second, the reference to "Attorney Diaz" was in reference to the contact information for Attorney Bussiere. Obrien was simply stating that Attorney Diaz (hereafter "Diaz") is another attorney in the law firm of Attorney Emile Bussiere. Then Obrien turned his attention to the conversation he had with Donais and the legal opinion that Donais had about the facts of the case, as was presented to him by Obrien on Anderson's behalf. It should be noted that the statements attributed to Donais could not have been intended to be attributed to Diaz because Diaz does practice discrimination law as noted on his bio[6] from the Bussiere & Bussiere website (in fact Diaz appears to be only attorney in that law firm that has experience in discrimination law). Hence, Diaz's bio does not comport with the statement that "he would not opine on discrimination cases outside his experience".

---

[6] See **Exhibit 14 – Website Bio Information of Attorney Keith Diaz showing that he practices discrimination law.**

Hence, Donais' clever attempt at misdirection again fails. The text message from Obrien to Anderson stated as

follows:

> +16034599965
> Thursday January 5, 2017

> "Here is contact info for attorney who handles discrimination cases Bussiere & Bussiere, P.A., please call 603.622.1002 emiljr@bussierelaw.com. Another attorney in that form (firm) is Keith Diaz. I spoke with Attorney Donais. He said you have a great contract case for the overcharges. He said the innkeeper rules would likely apply to your situation. Which allows for "no cause" evictions. He would not opine on the discrimination claims outside his experience." 6.15pm.

90. Further, in his affidavit, Donais states that he did not draft any pleadings nor was he involved in the drafting of any pleadings. This is simply not credible. Both he and Terrell signed and filed a 60-page motion to dismiss on 1-17-17 in the district court. It is not believable that he was not involved in any way with the drafting or editing of that pleading that he signed his name to. Moreover, Donais evidently drafted (at the very least) the filings related to his appearance and he must have been involved in the motion to admit pro hac vice, since outside co-counsel was not yet admitted to the case. Beyond that, he must have been involved in the preparation of the pleadings filed on 3-16-17 in district court which relied heavily upon and utilized his affidavit. It is virtually impossible for those pleadings to be drafted without Donais' involvement (especially given what was written in those pleadings).

91. Donais states further in his affidavit that "**After learning of Attorney Obrien's purported communication with Andre, as well the contents of the text message, and after advising Attorney Terrell of these same facts at the courthouse, it was my decision to file my withdrawal on the case, given the potential appearance of conflict, despite my efforts to avoid any conflict.**" But this again is untrue, inaccurate and misleading. First, as stated before, Obrien had no communications with Bisasor. Second, Donais self-purportedly "learned" of the communications between Obrien and Anderson at the very least since the call from Attorney Berry on 1-17-17. He thus had a chance to withdraw at that point but instead he argued with Berry and protested that he did nothing wrong. The reason why Donais had in his possession an affidavit from Obrien dated 1-18-17 was because Donais was advised on 1-17-17 by Berry of the text messages to Anderson from Obrien and thus Donais went to Obrien to solicit an affidavit quickly so that he could carry it to court on 1-18-17. If simply learning of the communications with the plaintiff were sufficient for Donais to withdraw, he would have done so on 1-17-17 upon being apprised of this fact by Berry.

92. NB: But all of this ignores the fact that Donais has also admitted elsewhere that as of 1-9-17, he realized that the communications with Bisasor on the 1-9-17 call and the conversation between Donais and Obrien on 1-5-17 were in fact related, and that as of the 1-9-17 he realized that there may even be a potential conflict. Third, Donais spent significant time arguing to the judge on 1-18-17 why there was no conflict and why he should not be excluded from the case. Donais went as far as to accuse Berry of creating a contrived conflict, for which the judge chided Donais for being inappropriate. Moreover, the judge had to pull rank on Donais in reminding or informing Donais of the fact that the judge had spent about 10 years on the PCC and the vice chair of the hearing committee, signaling that he judge knew exactly how the PCC and the hearing committee would view this situation (i.e. that they would find that there was a conflict). The judge also told Donais that there was a conflict and asked Berry to check with his clients to see if we would waive the conflict. Even then, Donais was still stubbornly trying to convince the judge that he did nothing wrong. The judge finally told Donais that he was trying to help him out by giving him a chance to make the decision on his own, and that otherwise the judge would make the decision for him formally. It was only then that Donais reading the tea leaves that the judge was going to formally remove him from the case due to ethical conflict as an official finding, that Donais "decided" to withdraw "on his own", after talking to his clients. The transcript of the 1-18-17 hearing fully bears this out[7].

93. In taking all of the above together, it is clear that the 3-13-17 affidavit of Donais filed in district court on 3-16-17 (and also used and/or filed in superior court on 4-27-17 and 5-5-17), is full of false, untrue, inaccurate, incredible and misleading statements. Under no conceivable circumstances could Donais' conduct, actions and statements reflected in that affidavit be said to represent the standards of honesty and candor to which the NH rules of ethical and professional conduct hold all lawyers to account. This ultimately supports the point that Donais intentionally breached his fiduciary duty to the plaintiffs.

### C. Statements Made by Donais in the 1-18-17 Court Hearing That Support Breach of Duty Claim

94. Donais denied giving his legal opinion on the facts of the case as presented to him by Obrien. The judge said to Donais "***You're giving that person a really brief (indiscernible) on how to handle it, that's one issue. If you're sitting there and discussing the facts particular to the case, then that's something else.***"

---

[7] See attached **Exhibit 34 – Transcript of the District Court Hearing on January 18, 2017.**

95. Donais responded to the judge saying "***I don't think we did, Your Honor. It was a generic discrimination over charge and I said I don't want to do it, Your Honor.***"

96. Berry then points to the text message from Obrien to Bisasor summarizing the legal opinion that Donais gave regarding the facts of the case.

97. Donais later then states that "***And that's actually not what I said to Rob but that's okay. And I think Rob gave his own statement of what transpired in that conversation.***"

98. Donais then accuses Berry of making up a contrived conflict to exclude Donais by saying "***I guess, Your Honor, this is kind of a contrived conflict to exclude me when this is my client and has been my client. I've worked with Dave Akridge who is the principal of the defendant for ten years on other matters and the like. So it's easy to call opposing counsel—***".

99. Berry responds saying that Donais cannot call it a contrived conflict, saying "**MR. BERRY: He can't make it a contrived conflict. In some ways it makes it worse.".**  And then the judge steps in and chides Donais for that inappropriate accusation by saying: "**THE COURT: Okay. Two things. Before this gets any further. I think the word contrived is inappropriate**." See Exhibit 34 - page 16 of the 1-18-17 court hearing transcript[8].

100.   NB: The fact that Donais snaps at Berry and lashes out accusing him of a contrived conflict shows the unbecoming character of Donais. Similarly, Donais knew there were legitimate concerns about a conflict because he himself stated that he told Bisasor on the 1-9-17 call that there may be one, and both Dave Akridge and Karl Terrell had previously raised concerns about this conflict as of 1-11-17. Thus, it takes a special kind of dishonesty for Mr. Donais to stand there in court and look both Berry and the judge in the eye and accuse Berry of making up a contrived conflict. Moreover, Donais did this knowing that he had an email chain dated 1-11-17 that showed that he and his client and co-counsel were concerned about a conflict and knowing that he was hiding[9] that email chain from the court on 1-18-17. It shows how Donais is capable of exploiting a situation and to try to turn the tables on the other party who is bringing legitimate concerns to the attention of the court or tribunal. This also shows that Donais cannot be trusted to tell the truth or to be forthcoming with the truth.

---

[8] See **Exhibit 34 – Transcript of the District Court Hearing on January 18, 2017.**

[9] See **page 232-240** in **Exhibit 35  – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court**.

### D. Other False Statements Made by Mr. Donais

101. Donais has stated that the 1-11-17 email from Donais to counsel for Homewood, occurred prior to Donais learning that Bisasor and Anderson were related. Donais has given the indication in his other pleadings in court that he did not know that Bisasor's wife was involved in the case that was discussed with Donais on 1-9-17, until the court hearing on 1-18-17. This is not true. Bisasor explicitly told Donais that the case involved both Bisasor and his wife. So, Donais knew that his wife was part of the case and that it was not Bisasor alone. This is also confirmed by Donais statement (in the 1-18-17 hearing) that, during the 1-9-17 call with Bisasor, he realized the two conversations (i.e. the one with Obrien on 1-5-17 and the one he was having with Bisasor on 1-9-17) were connected and this realization occurred within one minute into the conversation with Bisasor on 1-9-17, showing that Donais knew from early in the conversation there was a conflict. This also confirms that Donais consolidated in his mind the information shared from both conversations, which means there was a substantial amount of information that Donais had about the plaintiff's case as of 1-9-17.

102. Donais has also given contradictory statements, in telling the court on 1-18-17 that he told Bisasor on 1-9-17 that there **may be a potential conflict**. If he did not know or suspect that Homewood was involved in the case, then how could Donais purportedly say to Bisasor, on the 1-9-17 call, that there **may be a potential conflict**. Donais evidently did not represent other principals who owned extended stay hotels in Nashua, NH at the time. The only way for there to be a "potential conflict" is if Donais knew that Homewood Suites of Nashua (managed by his longtime client Akridge) was involved in the dispute with Bisasor and his wife.

103. Anderson explicitly told Obrien that she and her husband, Andre, resided at the Homewood Suites in Nashua NH. It can be inferred that Obrien told this information to Donais when they spoke by phone on 1-5-17. [NB: **It would be important to obtain Donais' phone records and Akridge's phone records to see if Donais had any calls with Akridge just after the 1-5-17 call with Obrien.**]

104. Even assuming arguendo that Obrien did not share this information with Donais on 1-5-17, it is evident that Donais knew that Homewood was involved in the case that Bisasor was speaking to him about on 1-9-17, because Bisasor told Donais that the case involved an extended stay hotel in Nashua NH and that Bisasor wanted to file a 540A petition in the Nashua District Court and had spoken to a Nashua police officer about the case. Donais also knew that Dave Akridge managed the Homewood Suites in Nashua NH. **Again, it would be important to**

21

**obtain Donais phone records and Akridge phone records to see if Donais had any calls with Akridge just after the 1-9-17 call with Bisasor.**

105.    The facts point to knowledge on the part of Donais that Homewood was involved. This can be inferred from his own admissions. There is simply no way to explain away his acknowledgement to the Nashua circuit court that he knew on 1-9-17 that there was a **potential conflict**. Donais needs to be placed under oath and questioned about this matter. Further, in his 2017 affidavit, Donais gives himself credit for recusing himself as soon as he discovered at the 1-18-17 hearing that Homewood was a party.  But this is not true or accurate, as he knew that from much earlier. This is undisputed from the record.

106.    The conversation that Attorney Berry had with Donais regarding his concerns about the conflict of interest showed that Donais insisted on his intent to stay-on as counsel in advance of the 1-18-17 hearing in the district court. Thus, Donais after being contacted by Berry on 1-17-17 about the conflict of interest and ethical issue and told about the text from Obrien, still doubled down on not coming off the case and went to the court on 1-18-17 with arguments prepared for why he should stay on the case, which were rejected by the Judge.

107.    Also, Donais fought to stay on the case while in the 1-18-17 hearing before Judge Moore, until he was forced by Judge Moore to disqualify himself from the case (or otherwise the Judge would do it formally). NB: If there was no conflict of interest or ethical issue whatsoever, then why was he removed/disqualified from the case?

108.    Donais simply thought he could take advantage of plaintiffs because they were initially pro se (in filing the 540A petition), and he proceeded with the conflict of interest situation, and was bold enough to think he could get away with it, even after Berry raised concerns about his actions. Donais thus contradicted himself/the facts.

109.    It is also noteworthy that Donais states that he performed a conflict check prior to taking on the case as defense counsel for Homewood. But this contradicts his statements made in the 1-11-17 email chain with Donais, Akridge and Terrell, which shows that before Donais undertook representation of Homewood, he had an initial conversation with Akridge (who initiated the contact apparently in the morning of 1-11-17 and who explained the case to Donais), and wherein it shows that Donais immediately recognized that "Andre" was involved in the case. This realization took place before representation of the Homewood defendants was undertaken. Moreover, this

story (about performing a conflict check) simply does not ring true, but comes across as a strained attempt to orchestrate the appearance of ignorance/innocence.

110.    Further, in the 1-11-17 email, Donais writes as though he already had a conversation with both  Terrell and his assistant, Felicia. The context and syntax suggest a prior conversation i.e. "**Happy to be provide local representation**", "**What I know is…**", etc. Also, Donais then stated that he was around and available to speak further on a few different dates and times.  This indicates further discussion took place. NB: Donais stated that, during the 1-9-17 call with Bisasor, he realized the two conversations (i.e. the one with Obrien on 1-5-17 and the one he was having with Bisasor on 1-9-17) were connected and this realization occurred within one minute into the conversation with Bisasor on 1-9-17. How is it then that the conversation continued for another 6 minutes? This shows that Donais intentionally let the conversation continue on, with Bisasor sharing more confidences/information with Donais, when Donais knew from early in the conversation there was a conflict. This also confirms that Donais consolidated in his mind the information shared from both conversations, which means there was a substantial amount of information that Donais now had about plaintiff's case as of 1-9-17.

### E.  More Proven False Statements in Donais' Affidavit

111.    First, Donais stated that his call with Obrien was for 5 minutes and that Obrien called him. Yet the phone log of Obrien shows that there was an incoming call to Obrien at 5:35pm. So the phone log provided cannot be evidence of the phone call referenced by Donais in his affidavit[10].

112.    On 1-5-17, Donais stated that Obrien told him that the so-called "unknown caller" had a "need to file something on Monday" (presumably Monday 1-9-17). Yet this is contradictory to the actual facts because the departure date was set initially by the Homewood defendants to be on 1-6-17. It was the morning of 1-6-17 that Akridge changed the ejection date to 1-10-17. Therefore, at the time that Anderson spoke with Obrien on 1-5-17, it would have been too late to "file something" on Monday, 1-9-17, given that as far as anyone knew as of 1-5-17, the then departure deadline was 1-6-17 (i.e., Akridge changed the departure deadline to 1-10-17 after a call with Bisasor on 1-6-17). This is another discrepancy with the facts that is created by Donais' affidavit.

---

[10] See **Exhibit 7 – Phone Log of Robert Obrien Provided by Defendants**.

113.    Donais states that he took on the local defense counsel role for Homewood because he did not realize that Anderson was the so-called "unknown caller" vis-à-vis Obrien, or that her husband, Bisasor, was the caller in his 1-9-17 call with Bisasor. But this is belied by the facts as stated before[11].

114.    Note: The text on 1-5-17 was from Obrien to Anderson, not to Bisasor, as erroneously stated by Donais.

115.    Donais states that he never made certain statements to Obrien. Yet Obrien stated clearly that Donais made these statements. If only Obrien had not sent that text message to Anderson, then they both could just deny everything. Unfortunately, the text message[12] stands as the contemporaneous statements and notes made and sent by Obrien at the time that the statements were made to him by Donais.

116.    Based on the above, it is clear that Donais' actions did violate Rule 1.18. His taking the case as Homewood's defense counsel, after the communications he had with Bisasor and Obrien show a willful disregard for Rule 1.18. Similarly, his refusal to withdraw from the case when Akridge pointedly asked him if there was a conflict[13], and when Terrell indicated to him that this was a concerning "flag"[14], shows a willful disregard for rule 1.18. Furthermore, Donais' failure to contact Bisasor to inform him that he would be taking the case as defense counsel is further evidence of a willful disregard for rule 1.18. In addition, Donais refusal to withdraw from the case when Berry contacted him on 1-17-17 about the conflict issue, shows a blatant and stubborn disregard for Rule 1.18. Finally, Donais' attempt to fight with Judge Moore in the 1-18-17 hearing, when the judge was signaling to him that there was in fact a conflict, shows an intransigent disregard for rule 1.18 and Donais only buckled when Judge Moore diplomatically threatened to formally remove him from the case if he did not decide to do so himself.  It should be noted that after Donais withdrew from the case in January 2017, he became further involved in the case again at a later point and consulted with the defense lawyers in preparing his affidavit and attendant pleadings filed in two courts for use in April and May 2017. This continued engagement/discussion about the case and discussions with Bisasor and Obrien further resulted in a taint on the case and advantage to the defense.

---

[11] See **page 1 and paragraph 5** in **Affidavit of Craig Donais dated 3-13-17.**
[12] See **Exhibit 9 – Text Message from Robert Obrien to Natalie Anderson on 1-5-17.**
[13] See **page 3 and paragraph 16** in **Exhibit 20  - Affidavit of Dave Akridge dated 5-4-17**.
[14] See **page 221 line 7**, **page 238 line 17-25 and page 239 line 1-15** in **Exhibit 35  – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court.**

117.    And, further, the fact that Donais used that occasion to fabricate a lie about what Bisasor said in the 1-9-17 prospective client call, in order to attack and disparage Bisasor in Donais' affidavit, violates all bounds of decency and ethics.

## IV. ELEMENTS OF BREACH OF FIDUCIARY DUTY ESTABLISHED

118.    Under NH Rule of Professional Conduct 1.18, Bisasor and Anderson were prospective clients entitled to confidentiality protections equivalent to actual clients. NH Rule 1.18(a)(b).

119.    Rule 1.18(b) explicitly states that "a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information" except under limited circumstances not applicable here. NH Rule 1.18(b).

120.    Donais received and reviewed information from plaintiffs as prospective clients, creating fiduciary obligations of confidentiality and loyalty. First Bisasor Affidavit; Anderson Affidavit.

121.    Donais breached these fiduciary duties by: (a) disclosing confidential consultation information to adverse parties; (b) representing adverse parties against plaintiffs' interests; (c) fabricating false statements about consultation content; and (d) continuing to disclose confidential information to unauthorized third parties for years after the consultation. These are undisputed facts above.

122.    Plaintiffs suffered damages as a direct result of these breaches, including reputational harm, emotional distress, compromise of their legal position, and other injuries. First Bisasor Affidavit; Anderson Affidavit.

123.    Donais's conduct was willful and deliberate, undertaken with full knowledge of his ethical obligations and the harm it would cause plaintiffs. Thes facts are undisputed facts above.

## V. CONCLUSION

124.    The foregoing undisputed material facts establish as a matter of law that Donais breached his fiduciary duties to plaintiffs as prospective clients. No genuine factual disputes exist regarding the establishment of the prospective attorney-client relationship, the confidential nature of the consultations, or Donais's subsequent unauthorized disclosures and misuse of confidential information.

Respectfully submitted,
s/ Natalie Anderson
NATALIE ANDERSON

s/ Andre Bisasor
ANDRE BISASOR

Date: October 24, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties and counsel of record via the court's electronic filing system.

s/ Andre Bisasor<br>
ANDRE BISASOR

26