**Filed**
**File Date: 9/12/2025 11:58 PM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH

Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## PLAINTIFFS [PLACEHOLDER] UNFINISHED OBJECTION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1. The plaintiff respectfully submits this placeholder objection to Defendant Donais' Motion to Dismiss the Amended Complaint (hereinafter "motion to dismiss amended complaint"), and in support thereof, asserts that the motion is fundamentally flawed, misleading, and legally unfounded in multiple respects. Plaintiffs request a hearing on this matter.

### I.  PREFACE

2. This placeholder objection is being filed to protect the rights of the plaintiffs, so the plaintiffs are not prejudiced, given the insufficient opportunity afforded to respond adequately to Defendants' motion and the issues preventing a complete and thorough response.  NB: Plaintiffs have not had adequate time to prepare this motion to dismiss. This objection is therefore incomplete as it was prepared in a rush. Hence, this is an initial objection filed as a placeholder with the intent to subsequently file a supplement or an addendum or an amended objection. This filing has not been edited adequately which takes a lot of time, which we do not have to finish it at this time.

3. Note on length: The Defendants Motion to Dismiss has been incorporated herein as well as several screenshots as exhibits. These have added to length. But further exhibits need to be added.

4. The (placeholder) objection focuses primarily on procedural impropriety grounds, highlighting that the motion to dismiss is procedurally defective and improper (this is also outlined in a motion to strike filed pending, which is incorporated herein by reference).

5. The plaintiffs also hereby explicitly preserve the right to further respond substantively to the motion to dismiss should it be deemed necessary, after the proper resolution of the motion to strike.

6. Plaintiffs hereby reiterate and affirm the key points from their motion to strike about why the motion to dismiss is procedurally improper, thus maintaining their argument that the motion should be stricken, while protecting against any claim that the motion to dismiss was unopposed, and thus also preserving their right to respond more fully subsequently. Plaintiffs do not fully substantively[1] respond in detail to the arguments in Defendant's motion to dismiss, at this time, as it is procedurally improper. Plaintiffs reserve the right to respond further.

---

[1] It should be noted briefly that, even assuming arguendo that the motion to dismiss was proper, which it is not, it still lacks merit and fails to state valid grounds for dismissal. For example, it cites arguments that are premature or inappropriate for resolution on a motion to dismiss, including invoking factual determinations that cannot be made at this stage. It further improperly asks the Court to weigh evidence, which is not permissible for a motion to dismiss. It further introduces items outside of the complaint, which is again procedurally unfair to the plaintiffs in a

7. This Court should deny the Defendants' Motion to Dismiss or, at the very least, defer ruling on it until the outstanding issues detailed below are properly addressed.

8. Plaintiff also request that the court allow opportunity to provide supplemental objection to the motion to dismiss in order to properly and effectively complete the objection to the motion to dismiss as further outlined in the below.

## II. INTRODUCTION

9. Defendant Donais has filed yet another motion to dismiss, this time challenging Plaintiffs' First Amended Complaint filed pursuant to this Court's June 5, 2025 Order.

10. Donais's motion fundamentally mischaracterizes both the Court's prior Order and the permissible scope of amendment, while advancing arguments that are legally flawed, factually incorrect, and made in bad faith.

11. The motion attempts to distort both the factual record and the procedural posture of this case, and its contentions warrant rigorous scrutiny and denial.

12. Defendant mischaracterizes the nature of Plaintiff's claims, misstate the applicable law, and improperly dispute facts at this early stage of litigation.

13. The Defendants' Motion to Dismiss is fundamentally flawed, misrepresents the nature of the claims, distorts the facts, and relies on arguments that are either legally unsound or dependent on matters outside the pleadings, and are otherwise factually incorrect or disputed.

14. This placeholder objection is a necessary measure due to several critical factors:

   a. Facts Outside Complaint: The motion relies on facts outside the complaint, and so a motion to dismiss is improper.

   b. Summary judgment: The motion to dismiss needs to be converted to summary judgment given numerous facts asserted by the defendants in their motion to dismiss that either go outside the complaint or that assert facts that dispute facts in the complaint.

   c. Pending ADA Motion: There is a pending ADA request for accommodation, which is critical to the filing of a complete and proper objection and thus to the effective prosecution of this case.

---

motion to dismiss. It also mischaracterizes Plaintiffs' allegations and applies an incorrect legal standard. It mischaracterizes the complaint and claims therein, in a bad faith self-serving misleading way, and engages in deflection. It should also be noted that not once has the defendant denied the facts or denied that he committed the acts or misconduct alleged in the complaint.

15. Given these circumstances, it would be fundamentally unfair for this Court to rule on the Defendants' Motion to Dismiss without first resolving these outstanding issues. This Placeholder objection highlights the key reasons why the motion should be denied or, at the very least, held in abeyance pending further action.

16. This objection demonstrates that Donais's motion should be denied in its entirety, as the Amended Complaint properly addresses the deficiencies identified by the Court while remaining within the bounds of permissible amendment.

## II.  PRO SE STANDARD OF REVIEW

17. Because the Plaintiff is pro se, the Court has a higher standard when faced with a motion to dismiss. White v. Bloom, 621 F.2d 276 makes this point clear and states: A court faced with a motion to dismiss a pro se complaint must read the complaint's allegations expansively, Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972), and take them as true for purposes of deciding whether they state a claim. Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081, 31 L. Ed. 2d 263 (1972).

18. The courts provide pro se parties wide latitude when construing their pleadings and papers. When interpreting pro se papers, the Court should use common sense to determine what relief the party desires. S.E.C. v. Elliott, 953 F.2d 1560, 1582 (11th Cir. 1992). See also, United States v. Miller, 197 F.3d 644, 648 (3rd Cir. 1999) (Court has special obligation to construe pro se litigants' pleadings liberally); Poling v. K.Hovnanian Enterprises, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000).

19. Courts should go to particular pains to protect pro se litigants against consequences of technical errors if injustice would otherwise result. U.S. v. Sanchez, 88 F.3d 1243 (D.C.Cir. 1996).

20. Moreover, "the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." Bonner v. Circuit Court of St. Louis, 526 F.2d 1331, 1334 (8th Cir. 1975) (quoting Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)). Thus, if this court were to entertain any motion to dismiss, the court should apply the standards of White v. Bloom. Furthermore, if there is any possible theory that would entitle the Plaintiff to relief, even one that the Plaintiff hasn't thought of, the court cannot dismiss this case.

21. Pro Se litigants are "commonly required to comply with standards less stringent than those applied to expertly trained members of the legal profession." Bates v. Jean, 745 F.2d 1146, 1150 (7th Cir. 1984). The courts recognize an "obligation . . . to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal learning." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). A pro se litigant's

3

pleadings are [to be] held "to less stringent standards than formal pleadings drafted by lawyers. . . ." and Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); cited in Castro v. Castro v. United States, 290 F.3d 1270, 2003; see also Hughes v. Rowe, 449 U.S. 5, 9 (1980); Morello v. James, F.2d , No. 86-2106, slip op. at 1140 (2d Cir. Jan. 26, 1987); Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986). (Emphasis added.) This is well established decisional law. The Pro Se Plaintiff's complaint is not to be dismissed unless "frivolous on its face or wholly unsubstantial." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983). A Pro Se Plaintiff is to be afforded the opportunity freely to amend. Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980).

22. Courts should articulate the appropriate legal theory on which a pro se litigant's claim should rest when the litigant misunderstands the nature of his claim. This is practices is a permissible judicial intervention on behalf of pro se litigants.

23. "A Court errs if it dismisses a pro se litigant's complaint without instructions of how pleadings are deficient and how to repair pleadings." Plaskey v CIA, 953 F .2nd 25.

24. As a general rule, "leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000).

25. NB: It is an accepted principle of American jurisprudence that, due to the growth in litigation involving self-represented litigants, that courts have a responsibility to promote access to justice thus warranting reasonable flexibility by judges, consistent with the law and court rules, to ensure that all litigants are fairly heard. This principle has been upheld by various courts including the US supreme court. See Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991) ("In interpreting the complaint before us, we construe it liberally in an effort to accommodate a pro se litigant."). It should also be noted that many state supreme court decisions from other states authorize judges to handle cases involving self-represented litigants differently by, for example, affording self-represented litigants latitude and making allowances, being lenient and solicitous, or giving them every consideration. Application of the liberal pro se standard is particularly important in cases in which the plaintiff alleges a violation of his civil rights". See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008).

### III. LEGAL STANDARD OF REVIEW FOR MOTION TO DISMISS

26. When evaluating the sufficiency of a complaint, the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom, in the plaintiffs' favor. Nader v. Citron, 372

Mass. 96, 98 (1977). Accordingly, a plaintiff's burden is "relatively light." Gibbs Ford, Inc. v. United Truck Leasing Corp, 399 Mass. 8, 13 (1987). "All that a plaintiff need do to resist such a motion is present a complaint that does no more than sketch the bare silhouette of a cause of action." Brum v. Town of Dartmouth, 44 Mass. App. Ct. 318, 322 (1998). As a result, "dismissals on the basis of pleadings, before facts have been found, are discouraged." Gennari v. City of Revere, 23 Mass. App. Ct. 979 (1987). Courts have often described the review of a complaint's sufficiency as "extremely lenient."

27. The motion must be decided solely based on the allegations in the Plaintiff's complaint. The court does not decide disputed issues of fact; instead, it must assume that all material facts in the plaintiff's complaint are true. Not only must the court accept the plaintiff's allegations as true, but it also must accept as true all reasonable factual inferences drawn from Plaintiff's allegations. See Kowal v. MCI Comm'ns Corp, 16 F.3d 1271, 1276 (DC. Cir 1994); Schuler v. United States, 617 F.2d 605, 608 (DC. Cir. 1979). Thus, factual allegations in briefs or memoranda of law generally may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. Henthorn v. Dept. of Navy, 29 F.3d 682, 688. (DC. Cir. 1994). See also Ahmed v. Geo USA LLC, New York Southern District Court, 2014, where Judge Jesse M. Furman stated the following: "In evaluating a Rule 12(b)(6) motion, the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Where, as here, the plaintiff is proceeding pro se, the complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

28. In considering motions to dismiss based upon the sufficiency of the pleadings, the Court "must construe the [pleading] liberally, treating all well-pleaded facts as true and indulging all reasonable inference in favor of the [non-moving party]." Katin v. National Real Estate Information Services, Inc., 2009 WL 929554, *2 (D. Mass. Mar. 31, 2009). Under Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a motion to dismiss should be denied if the challenged pleading alleges sufficient facts to demonstrate a "plausible entitlement to relief," even if "actual proof of those facts is improbable, and a recovery is very remote and unlikely." The "plausible entitlement to relief" standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations, citing Twombly, supra, at 556. The Defendant's motion falls far short of this high standard.  The court also stated: "The plausibility standard is not akin to a probability requirement...."

Id. (internal quotation marks omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)."

29. In making its determination, the court must assume all facts alleged in the complaint to be true and must construe the complaint in the light most favorable to the plaintiff. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

30. In appraising the sufficiency of any complaint, the accepted rule is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Nader v. Citron, 372 Mass. 96, 98 (1977), quoting from Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Spence v. Boston Edison Co.,390 Mass. 604 , 615 (1983). "The plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." Bell v. Mazza, 394 Mass. 176 , 184 (1985).

31. The issue before the Court upon consideration of such a motion is not whether Plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." McDowell v. N. Shore-Long Island Jewish Health Sys., Inc., 839 F. Supp. 2d 562, 565 (E.D.N.Y. 2012) (citing to Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001)).

32. In JAMES ARMAND v. JENNIFER OSBORNE, 2011, UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK, the court stated: "Where a plaintiff proceeds prose, the court must construe the pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010). Application of the liberal pro se pleading standard is particularly important in cases in which the plaintiff alleges a violation of his civil rights. See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d cir).

33. A court considering a Rule 12(b)(6) motion must "construe the complaint in the light most favorable to the plaintiff by taking the facts alleged in the complaint as true." Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP,68 A.3d 697, 709 (D.C.2013). "[A] defendant raising a 12(b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself." Carey v. Edgewood Mgmt. Corp.,754 A.2d 951, 954 (D.C.2000).

34. A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Barnett v. Centoni 31 F.3d 813, 813 (9th Cir. 1994) (citing Buckey v. Los Angeles, 957 F.2d 652, 654 (9th Cir.1992)); see Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

35. "The federal rules require only a `short and plain statement of the claim showing that the pleader is entitled to relief.'" Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)).

36. "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." McKeever v. Block, 932 F.2d 795, 798 (9th Cir.1991) (citing Conley, 355 U.S. at 47, 78 S. Ct. 99; 5 C. Wright & A. Miller, Federal Practice & Procedure § 1202 (2d ed.1990)).

37. Indeed, though "`it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] ... that is not the test.'" Gilligan, 108 F.3d at 249 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "`The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Id.

38. It is well established that pro se complaints, "however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers[.]" Hughes v. Rowe, 449 U.S. 5, 9,101 S. Ct. 173, 66 L. Ed. 2d 163 (1980); see Ortez v. Wash. County, 88 F.3d 804, 807 (9th Cir.1996) ("Because Ortez is a pro se litigant, we must construe liberally his inartful pleading.]").

39. "In civil rights cases where the plaintiff appears pro se, the court must construe the pleading liberally and must afford plaintiff the benefit of any doubt." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir.1988); see Morrison v. Hall, 261 F.3d 896, 899 n. 2 (9th Cir.2001) (citing Karim-Panahi 839 F.2d at 623; Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)); Frost v. Symington, 197 F.3d 348, 352 (9th Cir.1999) (citing Karim-Panahi 839 F.2d at 623).

40. When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir.1996); see Miree v. DeKalb County, 433 U.S. 25, 27 n. 2, 97 S. Ct. 2490, 53 L. Ed. 2d 557 (1977).

41. In addition, the court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir.1994), cert, denied, 515 U.S. 1173, 115 S. Ct. 2640, 132 L. Ed. 2d 878 (1995).

42. At this stage of the litigation, the court must resolve any ambiguities in the plaintiffs favor. See Int'l Audiotext Network, Inc. v. AT & T Co., 62 F.3d 69, 72 (2d Cir.1995); see also Smith, 84 F.3d at 1217; Miree, 433 U.S. at 27 n. 2, 97 S. Ct. 2490.; Federal Civil Procedure Before Trial § 9:212.1c, at 9-55. Thus, "in a Pro Se case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" Govan v. Campbell, 289 F.Supp.2d 289, 295 (N.D.N.Y. 2007) (Sharpe, M.J.) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

43. The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect Pro Se litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).  As a result, Twombly and Iqbal notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." Weixel v. Bd. of Educ., 287 F.3d 139, 146 (2d Cir. 2002).

44. As set forth in detail below, the Plaintiff has met this standard of review, well within the meaning of the foregoing case law, thus warranting denial of defendant's motions in their entirety.

45. Should the Court find otherwise, however, Plaintiff should be given leave to amend and reserves the right to seek leave to amend.

## V. THIS COURT SHOULD CONSIDER FACTUAL ALLEGATIONS IN PLAINTIFF'S OPPOSITION PAPERS

46. Because a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint. See, e.g., Braxton v. Nichols, No. 08- CV-8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar.18, 2010); cf. Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (considering a pro se plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).

47. Thus, the court should consider and incorporate into the complaint the factual allegations included in plaintiffs' opposition papers. Support for this is found in the following case law.

a.  In STEVENSON V. AMAZON.COM, INC (D. Mass. May. 13, 2016), Judge Dennis Saylor of the Massachusetts District Court stated the following: "The original complaint remains the operative complaint in this action. However, because plaintiff is proceeding pro se, the Court will deem the factual allegations in plaintiff's opposition memorandum and sur-reply to be part of the complaint for purposes of resolving defendant's motion to dismiss. Specifically, and for present purposes only, the operative complaint will be deemed to be (1) the allegations of the original complaint; (2) the factual allegations of the opposition to the motion to dismiss; and (3) the factual allegations of plaintiff's sur-reply to the motion to dismiss, all taken together."

b.  In PALMER V. SHCHEGOL (E.D.N.Y. Sep. 29, 2016), the court said the following: "Because Plaintiff's pro se status mandates a liberal reading of her papers, the facts of this case and the sufficiency of Plaintiff's pleadings are determined by reference to both Plaintiff's amended complaint and her opposition to the instant motion. See, e.g., Nielsen v. Rabin, 746 F.3d 58, 61 (2d Cir. 2014) (denial of leave to amend reversed where pro se plaintiff's complaint would state a claim for relief if it were amended to include the allegations in her opposition to defendant's motion to dismiss); Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (considering facts in pro se plaintiff's opposition to defendants' motion to dismiss in deciding whether to affirm district court's dismissal of plaintiff's claims); Mil'chamot v. New York City Hous. Auth., No. 15-cv-108, 2016 WL 659108, at *1 n. 1 (S.D.N.Y. Feb. 16, 2016) ("because a pro se plaintiff's allegations must be construed liberally, it is appropriate to consider factual allegations made in a pro se plaintiff's opposition papers on a motion to dismiss, so long as the allegations are consistent with the complaint"); Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Local 926, No. 12-cv-2387, 2014 WL 5783045, at *1 (E.D.N.Y. Nov. 6, 2014) (deciding dismissal of pro se plaintiff's complaint by referring to the facts alleged in plaintiff's complaint and opposition)."

c.  In MELISSA ANN SHERLOCK v VINCENT STANCATO, (D. Mass 2011), the Massachusetts District Court stated the following: "As set forth in this court's Scheduling Order and Order on Defendant's Motion to Dismiss (Docket No. 12), this court deemed the plaintiff's original complaint to be amended by her "Response in Opposition to Motion to Dismiss" ("Response"). Thus, the Amended Complaint consists of both the original complaint (Docket No. 1-1) and the plaintiff's Response. (Docket No. 6)"

d.  In NIELSEN V. ELAINE A. RABIN M.D. (2d Cir. 2014), the Second Circuit Court of Appeals stated the following: "We conclude that the allegations in the complaint and the opposition brief, taken together, sufficiently set forth the mental state element of the claim.".  The court also stated that: ""Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir.2000). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.2010)." The court also stated: "The plausibility standard is not akin to a probability requirement...." Id. (internal quotation marks omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)."

e.  In SHULER v. BROWN 2009 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF NEW YORK, the court stated: ""Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." Gadson v. Goord, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, inter alia, Gil v. Mooney, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" Donhauser v. Goord, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], vacated in part on other grounds, 317 F. Supp.2d 160 (N.D.N.Y. 2004)."

f.  In Ahmed v. Geo USA LLC; New York Southern District Court, 2014, Judge Jesse M. Furman stated the following: "In evaluating a Rule 12(b)(6) motion, the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Where, as here, the plaintiff is proceeding pro se, the complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

g. In JAMES ARMAND v. JENNIFER OSBORNE, 2011, UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK, the court stated: "Where a plaintiff proceeds prose, the court must construe the pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010). Application of the liberal pro se pleading standard is particularly important in cases in which the plaintiff alleges a violation of his civil rights. See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d 3 The court has reviewed the entire Complaint and recites only those facts that are relevant to claims Plaintiff has asserted against Osborne or requests to add in his motion to amend. The court has omitted facts related to events that occurred after Plaintiff left Arthur Kill, as all claims related to those events were severed and transferred to the judicial district in which the facility the incident occurred at is located. 4 Cir. 2004)). A pro se complaint should not be dismissed without granting the plaintiff leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999). In making its determination, the court must assume all facts alleged in the complaint to be true and must construe the complaint in the light most favorable to the plaintiff. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). Where, as here, a pro se plaintiff includes factual allegations in his opposition to the motion to dismiss that were not included in the original complaint, "the court may treat the new factual assertions as an amendment to the complaint," and thereby consider the additional factual assertions without converting the motion into a motion for summary judgment. Grimes by and through Grimes v. Sobol, 832 F. Supp. 704, 708 n.5 (S.D.N.Y. 1993) (quoting Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 26 (2d Cir. 1988)). Here, the Plaintiff did provide additional factual allegations in his opposition to Defendant's motion to dismiss. The court has considered the factual allegations contained in Plaintiffs opposition to Defendant's motion to dismiss as amendments to the Complaint and has treated Defendant's motion to dismiss as a motion to dismiss the further amended Complaint under Fed. R. Civ. P. 12(b)(6). Plaintiffs memorandum in support of his motion to amend also includes some additional factual allegations, which do not pertain to Defendant Osborne and the motion to dismiss and which the court has only considered in relation to Plaintiffs motion to amend the Complaint. In order to construe the Plaintiffs pleadings liberally, all additional factual allegations from Plaintiffs opposition to Defendant's motion to dismiss have been considered as part of the Complaint for

the purposes of reviewing Plaintiffs motion to amend, which focuses on adding new defendants and causes of actions. For purposes of the motion to dismiss, the court has considered additional factual allegations relevant to Plaintiffs claims against Osborne.

---

### SECTION IV: FINAL CONCLUSION

---

### IV. PROCEDURAL PROBLEMS/OBJECTIONS
### PLAINTIFFS ARE UNABLE TO PROPERLY RESPOND TO THE MOTION TO DISMISS IN LIGHT OF ISSUES IN PENDING MOTION TO STRIKE

48. Plaintiff now submit this placeholder, in an abundance of caution, in order to preserve their rights and to avoid any risk of procedural default, given that the deadline for filing objection to the motion to dismiss is today.

49. Plaintiffs believe that an extension of time is warranted and appropriate under these circumstances as outlined in the emergency ADA motion; and there are additional reasons including the following:

    a. The critical issue with the 142 pages of attachments is understanding how defendant uses these materials in the current legal context and formulating appropriate responses to his specific arguments. Thus, Plaintiffs need time to review what defendant is using and why. Plaintiffs have not read through all that is there in those 142 pages as it takes time to read/digest 142 pages of attachments, much less process the significance of what is there, in terms of its relation to the current motion to the dismiss.

    b. It should be further noted that the court limited the plaintiffs to 25 pages of the amended complaint yet the defendant filed a 151 page motion to dismiss. The defendant has given the court and the plaintiffs 151 pages to read, review, digest and analyze. This court could not have intended to allow the defendant such unhinged/unfettered leeway to dump 151 pages in a motion to dismiss an amended complaint (a complaint that the court sought to limit to 25 pages citing the extensive nature of the 66 page original complaint). This is unfair.

    c. Moreover, defendant added 142 pages of attachments but then argues that plaintiffs can't have any attachments to their amended complaint i.e. the plaintiff affidavit (notwithstanding the fact that the court didn't limit attachments by plaintiffs). The double standard, and abuse of the defendant is staggering. He wants all the benefits, advantages, and leeway for himself and none for plaintiffs, and unequal enforcement of rules/standards, one set for himself and another lesser set for plaintiffs.

50. Plaintiffs formally request an extension to ensure that their rights are fully protected. Granting extension will serve the interests of justice, and avoid prejudice to Plaintiffs.

## PLAINTIFFS ARE UNABLE TO PROPERLY RESPOND TO THE MOTION TO DISMISS IN LIGHT OF ISSUES IN PENDING MOTION TO STRIKE

51. Defendant's motion to dismiss makes statements, assertions and references that are the subject of plaintiff's motion to strike extraneous materials/ attachments/references. These are out of scope as it relates to the plaintiff's amended complaint and are thus not permitted and should be stricken.

52. The text of the motion to dismiss itself is 9 pages but it incorporates 142 pages of exhibits, spanning multiple court proceedings, and including an unsigned 60 page motion to dismiss, affidavits, email communications, case summaries and numerous other materials that require careful analysis in context. Also, the motion to dismiss should not contain facts or argument to rebut or dispute facts in the amended complaint. By involving extraneous materials[2], this opens the door for the need for discovery and/or to convert to summary judgment. Further, this represents an abuse. Defendant improperly included extensive materials outside the pleadings, which this Court previously ruled should not be considered in a motion to dismiss. Rather than heed the Court's prior instruction, defendant repeats this improper practice. Defendant cannot keep getting away with violating the rules. The court last time said plaintiff was right, in that material outside the complaint should not be considered or used. But instead of heeding the instruction, defendant does it again. This constitutes grounds for why the court should strike[3] the motion to dismiss and/or the extraneous attachments. Otherwise, the motion to dismiss should be converted to summary judgment.

53. However, because the court has not yet issued a ruling on that motion strike, the plaintiff is unable to know how to address this section without prejudicing himself by introducing extraneous references and materials (as well as his own attachments) himself in order to rebut or counter these statements and assertions. This also affects the length

---

[2] As one example, plaintiffs didn't reference Donais' 2017 affidavit in the amended complaint. So why attach that here or involve that here in a motion to dismiss? Further, why attach a 60 page motion to dismiss the original 2017 Homewood Suites case in Nashua circuit court, that appears irrelevant to the amended complaint? Further, that document is unsigned. Moreover, why does the defendant attach 142 pages of exhibits? Was this really necessary? This appears further intended to overwhelm and burden the plaintiffs. Similarly, the attachments appear confusing, and some seem repetitive. This further adds to why time is needed to ferret through the 142 pages of attachments.

[3] Further, by his own admission, the defendant attached an unsigned motion to dismiss in Nashua circuit court, as an exhibit, and amazingly asks the court for more time to obtain a signed motion to dismiss to include in his motion to dismiss. So, he needs time to submit a completed motion to dismiss but wants plaintiffs to respond before he completes his motion to dismiss. It should be stricken. See NH Superior Court Rule 7("If a filing is not signed…it may be stricken and the action may proceed as though it had not been filed."). The plaintiffs needs to know whether the court will allow this to stand or be stricken, before being required to respond to the motion to dismiss.

of this pleading and size of any attendant attachments. In order to save on judicial economy and space, the plaintiffs reserve the right to rebut or supplement these issues after the court has issued a decision on the motion to strike.

54. The plaintiffs therefore hereby reserve the right to further rebut the motion to dismiss, or to provide a supplement to this objection. The reason is that there is a pending motion to strike extraneous materials from defendants motion to dismiss. The plaintiff needs a response from the court on motion to strike in order to meet any deadline for filing an objection to defendants motion to dismiss. This was also expressed in plaintiff's motion to extend time.

55. This is significant issue for the plaintiffs because this issue of not knowing what the court decision is. If the court denies plaintiff's motion to strike, then plaintiff's objection to defendants' motion to dismiss will need to include rebuttal of the defendants' extraneous material, attachments and references in the 8-22-25 motion to dismiss. The plaintiff cannot just assume that the court will deny his motion to strike. The plaintiff cannot assume either way.

56. The plaintiff cannot simply go ahead and include a rebuttal of the defendants' extraneous material, attachments and references in objecting to the motion to dismiss, including attaching own materials and attachments, if the court could grant the motion to strike, because if plaintiff does so then this will prejudice plaintiff by himself introducing more material extraneous to the complaint. So this is a conundrum for the plaintiff.

57. This has impacted the filing of this objection because no decision from the court will be forthcoming as yet.

58. Plaintiff has thus been unable to prepare a proper filing of his objection without a decision from the court on plaintiff's motion to strike extraneous materials/references. The plaintiff simply needs to know what the court decides.

59. The plaintiffs thus reserves the right to amend or supplement this filing in light of the court's decision on the motion to strike when it is issued.

60. This is eminently reasonable and provides adequate basis for plaintiffs to further rebut, or supplement objection to, the motion to dismiss.

## VI. CASES SHOULD BE DECIDED ON THEIR MERITS AND NOT ON TECHNICALITIES

61. Courts generally disfavor dismissal for technical defects. See Litton Bus. Sys. v. Commissioner of Revenue, 383 Mass. 619, 622 (1981).

62. Defendants' attempt to have the case dismissed based on hyper-technicalities violates the principle that cases ought to be decided on their merits and not on technicalities.

63. In Owens v. Amtrak, No. 94-7444 (Mass. Super. Ct. 1998), the Superior Court explicitly stated that the "spirit of the [procedural] rules favors decisions on the merits, not technicalities, unless the result would be prejudicial to the other party."

64. In JOHN DEWING vs. J.B. DRISCOLL INSURANCE AGENCY, 30 Mass. App. Ct. 467 (1991), the Appeals Court reversed a dismissal for failure to prosecute under Mass.R.Civ.P. 41(b)(2), noting that mere delay without evidence of prejudice or intentional neglect does not justify terminating a case. The court emphasized that dismissals for procedural lapses must be weighed against the policy of resolving disputes on their merits, particularly when there is no showing of harm to the opposing party.

65. In Schiavone v. Fortune, 477 U.S. 21 (1986), the U.S. Supreme Court also highlighted that technicalities should not be rigidly enforced if they undermine the fair adjudication of claims.

66. For New Hampshire cases underscoring this principle, see American Express Travel v. Moskoff, 148 N.H. 446, 450 (2002)("It is important that cases be decided on their merits, that a party have his day in court and that rules of practice and procedure shall be tools in aid of the promotion of justice rather than barriers and traps for its denial." Douglas v. Douglas, 143 N.H. ___, ___, 728 A.2d 215, 219 (1999)". And also see Krainewood Shores Assoc., Inc. v. Town of Moultonborough, 174 N.H. 103, 111 (2021).

67. Thus, Courts should thus avoid procedural traps (e.g., Owens) and ensure cases are heard on their merits.

**B. PLAINTIFF HAS NOT FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED / DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT THIS CASE SHOULD BE DISMISSED**

68. All facts stated in the complaint are to be assumed true for purposes of a motion to dismiss.

69. All pleadings shall be construed as to do substantial justice. BURT VS. CITY OF NEW YORK, 2Cir., (1946) 156 F.2d 791

70. Courts should not dismiss a complaint in which the plaintiff has a legal basis for a claim but has made a technical error that renders the complaint invalid. In such a case, courts should allow the petitioner to amend the complaint. No "complaint" should be dismissed if that complaint is supported by a valid claim.

71. "A complaint should not be dismissed for failure to state a claim, even though inartistically drawn and lacking in allegations of essential facts, if it cannot be said that under no circumstances will the party be able to recover." JOHN EDWARD CROCKARD VS. PUBLISHERS, SATURDAY EVENING POST MAGAZINE OF PHILADELPHIA, PA (1956) Fr Serv 29, 19 F.R.D. 511, DCED Pa 19 (1958).

15

72. A motion to dismiss is properly denied if further discovery would yield material evidence or material facts in the movant's exclusive knowledge which would allow them to proceed with their claim. See, Rochester Linoleum and Carpet Center, Inc. v. Cassin, 61 A.D.3d 1201 (3d Dep't 2009).

73. In this case, further discovery would yield material evidence and material facts in the defendant's exclusive knowledge which would allow plaintiffs to proceed with the claims.

74. No discovery has occurred as yet. No defendant has yet provided an Answer to the complaint. It is at an extremely early stage of the proceedings.

75. All of the counts in the complaint are supported by a valid claim.

76. Plaintiff's complaint is adequately pleaded and states a claim upon which relief may be granted. As a result, dismissal for failure to state a claim is inappropriate.

77. Because Defendant has not otherwise shown that Plaintiff's complaint fails on these grounds, Defendant's motion must be denied.

### VIII. PLAINTIFFS NEED/REQUEST LIMITED DISCOVERY

78. Defendant's Motion improperly introduces disputed facts outside the pleadings. At the motion-to-dismiss stage, the Court must accept as true all well-pleaded allegations in the Complaint and may not consider extrinsic evidence unless converting the motion into one for summary judgment. For example, the inclusion of one-sided unverified untested affidavits by Donais and his colleagues, which introduces not only additional facts but facts that dispute facts stated in the complaint, further underscores this procedural impropriety.

79. Plaintiffs hereby ask the court to defer decision on the motion to dismiss, to allow discovery on disputed facts asserted by the defendants, including in the affidavits, emails, pleadings, filed by them, that go outside of the four corners of the amended complaint.

80. Whenever a plaintiff demonstrates that his complaint allegations can be supplemented through discovery, the law is well-settled that a plaintiff has the right to conduct discovery.

81. Discovery is warranted here because the record currently before the court is plainly inadequate.

82. This discovery will elicit further information about the above issues.

83. The defendants cannot challenge or dispute these factual issues in a motion to dismiss or ask the court to resolve them in a motion to dismiss, without any discovery or summary judgment procedure.

84. These are critical issues to resolve before the court can look at any of the larger questions of this case including any alleged failure to state a claim.

85. Plaintiffs therefore request, in the interests of judicial equity, that the court permits an opportunity for plaintiffs to take limited discovery in order to properly defend against the expanded nature of the defendants' motions to dismiss (without which plaintiffs believe they would be deprived of proper due process, and of the right to a fair opportunity for a fair trial/proceeding).

86. Plaintiffs are only seeking limited discovery. The court can narrowly tailor discovery to the proper limits.

87. Plaintiffs ask for the minimum necessary discovery to defend the case against the defendants' assertions and use of disputed facts outside of the complaint. Limited discovery is needed to establish necessary facts that go to the disputed factual arguments raised implicitly or explicitly by the defendants in the motion to dismiss. This also goes to the issue of the defacto conversion to a motion for summary judgment.

88. Limited discovery is appropriate in this case, in order to gather necessary information to support plaintiffs' claims and ensure a fair and just resolution of this case. Limited discovery is in the interest of justice, as it will ensure a fair and thorough examination of the relevant facts, and contribute to the just resolution of this case.

89. If the court is inclined to rule in the defendants' favor in all aspects, at this motion to dismiss stage, without any discovery at all, then that would be unfair and would constitute reversible error.

## X. REQUEST TO CONVERT DEFENDANTS' MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT

90. Plaintiffs also request that the Court to convert the Defendants' Motion to Dismiss into a Motion for Summary Judgment.

91. Defendants' Motion to Dismiss improperly includes and relies upon materials outside the pleadings, including affidavits and exhibits that introduce disputed facts and extraneous evidence not contained within the four corners of the Complaint. Under the rules of procedure, when matters outside the pleadings are presented and not excluded by the Court in connection with a Rule 12(b)(6) motion, the motion must be treated as summary judgment under Rule 56. The inclusion of one-sided unverified, untested, uncrossed affidavits from Donais and his colleagues/friends, along with other attached exhibits ( including unauthenticated emails, letters, unsigned pleadings purportedly from other cases, phone records, etc.), as well as other such issues that the defendant is disputing in the

motion to dismiss, constitutes reliance on materials outside the pleadings that require conversion of Defendants' motion to dismiss into a motion for summary judgment.

92. When converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment, all parties must be given notice and a reasonable opportunity to present all material pertinent to such a motion. Courts have consistently held that reliance on extraneous materials in support of a motion to dismiss mandates conversion into a summary judgment motion (see Swedberg v. Marotzke, Vorleamesi v. Esper, and related authorities).

93. By relying on these extraneous materials, Defendant has transformed the motion into one that seeks adjudication on factual disputes that require evaluation under Rule 56 standards. Plaintiff will be prejudiced if these extraneous materials are considered without affording an opportunity for discovery or submission of countervailing evidence.

## II. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE OF THE PENDENCY OF ANOTHER RELATED PROCEEDING THAT WAS REMOVED TO FEDERAL COURT AND DUE TO LIKEY REMAND OF AND CONSOLIDATION OF THAT CASE WITH THIS CASE IN STATE COURT

94. The court should deny or defer ruling on the motion to dismiss and enter a stay on this proceeding due to pendency of another related proceeding in federal court (which was removed to federal court by defendant).

95. There is another proceeding related to this case that was pending in the Hillsborough Superior Court North, prior the defendant removal of it to federal court in order to disrupt the imminent consolidation of that case with this case.

96. The related matters are closely tied to the issues of this case. There are important rights that must be resolved before this case can proceed. For example, the need to consolidate cases into this court is critical and will likely affect any decisions in this case.

97. The intention of the removal was to frustrate and prejudice these proceedings in this court. This supports the contention that these cases should be consolidated and that a stay on this case is proper or at least deferment. A stay on this case would allow for these related matters to be resolved together in one forum so that the court does not issue orders that are in conflict with the other case. This is a serious issue that need to be addressed/resolved. NB: Plaintiffs have moved to remand the related case back to this court, which will likely be granted because the federal court does not have subject matter jurisdiction over the related case since the sole federal claim (which was the sole basis for removal) was eliminated via amendment.

18

**SECTION IV: PREVIEW OF SUBSTANTIVE OBJECTIONS**

## V. DONAIS FUNDAMENTALLY MISCHARACTERIZES THE JUNE 5, 2025 COURT ORDER

98. Donais's motion rests on a foundational misreading of this Court's June 5, 2025 Order. The Court's Order specifically granted Plaintiffs "leave to amend their complaint to correct the deficiencies outlined above for claims that are not dismissed with prejudice." The Court dismissed only two specific categories of claims with prejudice: the perjury claim and the claim for violations of professional conduct rules. All other claims, including breach of fiduciary duty, breach of covenant of good faith and fair dealing, tortious interference, and abuse of process, were dismissed without prejudice with express leave to amend.

99. Donais erroneously argues that defamation claims were dismissed with prejudice in their entirety. This misreads the Court's Order, which dismissed with prejudice only defamation claims "with respect to the affidavit" based on absolute privilege. The Court's analysis of defamation was limited to statements made in the March 2017 affidavit and contemporaneous communications during ongoing judicial proceedings. Significantly, the Court noted that "such statements were made only after [defendant] wrote the affidavit" when discussing statements to Akridge and Robitaille, and found these afforded absolute privilege precisely because they were made during the pendency of litigation.

100. The Court's Order did not address, much less dismiss with prejudice, defamation claims based on statements made outside the context of judicial proceedings or statements made years later in 2019, 2020, and beyond. Donais's blanket assertion that "all defamation claims" were dismissed with prejudice is simply incorrect and demonstrates either a deliberate mischaracterization or a failure to carefully read the Court's limited holding.

## THE AMENDED COMPLAINT PROPERLY ADDRESSES DEFICIENCIES IN CLAIMS DISMISSED WITHOUT PREJUDICE

101. The Court identified specific deficiencies in various claims that prevented them from surviving dismissal. The Amended Complaint directly addresses each of these deficiencies while remaining grounded in the same core facts and legal theories.

102. Regarding breach of fiduciary duty, the Court found that "there are no facts that a fiduciary relationship existed" and that Plaintiffs "failed to allege that the defendant acquired influence over them, that their confidence had been reposed in the defendant, or that they relied on the defendant for a particular service." The Amended Complaint cures these deficiencies by providing detailed factual allegations establishing that Donais acquired influence through

his status as a licensed attorney, that Plaintiffs reposed confidence in him during their consultation calls, and that they relied on him for legal advice regarding their landlord-tenant dispute. These allegations are supported by specific facts including Donais's return of Bisasor's call, the seven-minute consultation, Donais's provision of legal advice, and his assurance that the conversation was protected by attorney-client privilege.

103. Similarly, the Court dismissed breach of covenant claims because "the plaintiffs did not form a contract with the defendant." The Amended Complaint addresses this by alleging facts establishing an implied contractual relationship arising from the prospective attorney-client consultation, supported by Donais's own admissions in contemporaneous emails that he had received consultation information from a prospective client.

## DONAIS INCORRECTLY ARGUES THAT DEFAMATION CLAIMS BASED ON NON-PRIVILEGED STATEMENTS CANNOT BE PLEADED

104. Donais's most egregious mischaracterization concerns defamation claims. The Court's June 5 Order was explicit that absolute privilege applied only to statements made "during judicial proceedings" and that were "pertinent to those proceedings." The Court specifically limited its privilege analysis to the March 2017 affidavit and contemporaneous communications made during active litigation.

105. The Amended Complaint's defamation counts are carefully structured to avoid privileged communications. Count 4 addresses statements made to private parties, including family members, friends, and members of a private nonprofit organization, with no connection to any judicial proceeding. Count 5 addresses statements made at a 2023 public meeting of an Advisory Committee on Rules, which the Amended Complaint specifically alleges was not a judicial or quasi-judicial proceeding because it lacked judicial characteristics, procedural safeguards, and adjudicatory function.

106. Donais provides no legal authority for his assertion that these clearly non-privileged statements are somehow barred by the Court's prior Order. The privilege analysis is inherently fact-specific, and statements made to private parties years after any litigation concluded cannot reasonably be considered privileged merely because the underlying events occurred during litigation. Donais's argument would create an unprecedented expansion of privilege doctrine that would immunize all future defamatory statements so long as they reference events that were once the subject of litigation.

## THE AMENDED COMPLAINT DOES NOT PLEAD ENTIRELY NEW CAUSES OF ACTION

107. Donais argues that the Amended Complaint violates the Court's instruction against pleading "entirely new causes of action," but this argument fails both legally and factually. The Court's limitation was directed at preventing

Plaintiffs from adding wholly unrelated claims that would require "substantially different evidence." All counts in the Amended Complaint arise from the same core factual nucleus that was addressed in the original complaint: Donais's January 2017 consultation with Plaintiffs, his subsequent representation of adverse parties, his disclosure of confidential information, and his pattern of making false statements about Plaintiffs.

108. The legal theories in the Amended Complaint, while more clearly articulated, are not "entirely new." The original complaint, though inartfully pleaded by pro se plaintiffs, contained allegations supporting breach of fiduciary duty, interference with contractual relations, and race discrimination claims. The Court recognized this when it granted leave to amend these claims rather than dismissing them with prejudice. The Amended Complaint simply provides the legal framework and factual specificity that the original complaint lacked.

109. Moreover, New Hampshire courts apply a liberal standard for amendments, particularly for pro se plaintiffs. The test is not whether claims are technically "new" but whether they arise from the same general set of facts and would require substantially different evidence. Here, all claims flow from Donais's misconduct in connection with his brief consultation with Plaintiffs and his subsequent actions. The evidence required to prove these claims substantially overlaps, including the consultation calls, email communications, court transcripts, and testimony from various witnesses.

### DONAIS MISAPPLIES THE "SUBSTANTIALLY DIFFERENT EVIDENCE" STANDARD

110. Donais argues that the Amended Complaint calls for "substantially different evidence," but this assertion is factually incorrect. The core evidence for all claims remains the same: the January 2017 consultation calls between Donais and Plaintiffs, the contemporaneous email communications between Donais, Akridge, and Terrell, the court proceedings in 2017, and Donais's subsequent statements about these events.

111. The Amended Complaint does reference some additional evidence, including statements made by Donais after 2017. However, these post-2017 statements are not "substantially different evidence" requiring new claims, but rather continuing violations and additional damages flowing from the same underlying misconduct. When a defendant continues to make defamatory statements about the same underlying events, these constitute continuing publication of the same defamation rather than entirely separate claims. New Hampshire law recognizes that defamation can be ongoing, and subsequent republications relate back to the original defamatory conduct.

112. Furthermore, the "substantially different evidence" standard is designed to prevent fishing expeditions and wholesale changes in legal theory, not to prohibit plaintiffs from presenting a more complete evidentiary picture of

21

ongoing misconduct. Donais's interpretation would effectively prevent any amended complaint from including additional evidence that came to light after the original filing, which would frustrate the remedial purpose of liberal amendment rules.

## ANDERSON'S STANDING TO ASSERT CLAIMS IS WELL-ESTABLISHED

113.    Donais's argument that Natalie Anderson cannot assert claims against him is both legally and factually incorrect. The original complaint explicitly stated "We the plaintiffs in the above captioned case hereby submit this complaint against the Defendants" and included allegations that "Plaintiffs hereby reallege and incorporate by reference each of the preceding paragraphs" in the section addressing claims against Donais. Anderson was named as a plaintiff from the outset and has actively participated in this litigation for over five years.

114.    More fundamentally, Donais waived any objection to Anderson's standing by failing to raise this argument for over three years of litigation. During this time, Donais filed multiple motions to dismiss, engaged in settlement negotiations with both plaintiffs, and specifically addressed Anderson in various filings. Having treated Anderson as a proper plaintiff throughout the proceedings, Donais cannot now claim she lacks standing. The doctrine of judicial estoppel bars this inconsistent position.

115.    Additionally, the factual allegations establish Anderson's independent basis for claims. She was involved in the initial consultation arrangements with Attorney O'Brien, she was affected by Donais's representation of adverse parties, and she suffered damages from his misconduct. The joint and several nature of the harm to both spouses provides an independent basis for her claims.

## DONAIS'S MOTION REFLECTS A PATTERN OF PROCEDURAL GAMESMANSHIP

116.    This motion to dismiss represents Donais's sixth pre-answer motion to dismiss in this case, demonstrating a clear pattern of procedural delay and gamesmanship. Having failed to obtain dismissal on service of process grounds after years of litigation, Donais now seeks to prevent Plaintiffs from presenting their claims on the merits through increasingly strained legal arguments.

117.    Donais's interpretation of the Court's June 5 Order, if accepted, would effectively gut the right to amend complaints in New Hampshire. Under his reading, any complaint dismissed without prejudice could never be meaningfully amended because any improvement in pleading could be characterized as requiring "substantially different evidence" and any clarification of legal theories could be deemed an "entirely new cause of action." This

22

interpretation conflicts with New Hampshire's strong policy favoring liberal amendment to promote resolution of cases on their merits.

## SUBSEQUENT EVENTS DO NOT CREATE NEW CLAIMS BUT RATHER CONTINUING VIOLATIONS

118.    To the extent the Amended Complaint references events occurring after the original 2017 misconduct, these represent continuing violations and additional damages rather than new claims requiring different evidence. Donais's ongoing defamatory statements about Plaintiffs, his continued breach of confidentiality obligations, and his persistent interference with Plaintiffs' professional relationships all flow directly from his original misconduct and constitute the natural and foreseeable consequences of his actions.

119.    New Hampshire law recognizes continuing violations in various contexts, including ongoing defamation through republication, continuing breach of fiduciary duties, and systematic interference with business relationships. The additional factual allegations in the Amended Complaint demonstrate the scope and duration of harm caused by Donais's misconduct, not the creation of unrelated new claims.

---

### SECTION IV: EXCURSUS ON THE COMPLAINT AND ATTEMPTS TO AMEND IT

---

#### i. Plaintiffs Had No Opportunity to Amend The Complaint

120.    Plaintiffs did not had any chance or opportunity to amend the complaint after service of process was made on the defendant on 4-14-22. In the Original Complaint (filed in Jan. 2020), Plaintiffs sued 21 defendants, including Donais. The Complaint's length (65 pages, 418 paragraphs) reflects the complexity of claims against multiple corporate and individual defendants. Service deadlines were extended multiple times by Judge David Anderson due to pandemic disruptions and extensive settlement negotiations from early 2020 to early 2022, of which Donais participated in, up until the last minute just before a global settlement with 21 defendants was about to be finalized/consummated, and at which point Donais backed out of the settlement without explanation, in January 2022.  There was no opportunity for amendment of the complaint or to seek permission to amend the complaint during the Covid pandemic in 2020/2021, and/or during the settlement negotiations in 2021, all of which suspended litigation in this court including service of process, the deadline for which had been extended by the court through until March/April 2022.

121.    The plaintiffs eventually served process on the defendant on 4-14-22 pursuant to court order. The original complaint was served on the defendant at that time. But it should be noted that the defendant prematurely entered

appearance in the case in January 2022 in order to prematurely file a motion to dismiss for failure to timely serve the complaint, even though the deadline to serve process had not yet expired. This improper move distorted the case process because it immediately invoked a premature motion to dismiss process while the plaintiffs were still wrapping up the settlement negotiations with the 20 defendants. The defendant took away the plaintiffs autonomy and choice in how to proceed with the case after settling the 20 defendants and after the defendant withdrew from the settlement at the last minute. This was a strategic move by the defendant in order to disrupt and to "throw a monkey wrench" into the orderly process of this case including the orderly process of serving the defendant and the attendant orderly processes of seeking to the amend the complaint after the 20 defendants were settled.

122.     As a reminder, prior to January 2022, the plaintiffs were led to believe that Donais was part of the settlement. Therefore, the plaintiffs had no reason or occasion to think that the case would proceed after settlement was finalized or executed, and thus the plaintiffs had no reason or occasion to think about amending the complaint. As far as the plaintiffs were concerned, the plaintiffs and all defendants had reached a partial settlement agreement in April 2021, where the parties agreed on a specific monetary amount for settlement and with the only thing remaining was the wording and finalization of the settlement contract. The plaintiffs were blindsided by the sudden withdrawal, at the last minute (in early January 2022), from the agreed upon settlement that Donais was included in and had agreed to in April 2021.

123.     Once the defendant filed his appearance and first motion to dismiss for failure to timely serve the complaint in January 2022, this led to an intense litigation over the service of process issue. Then the defendant introduced a second motion to dismiss in March 2022 seeking to vacate the summons issued by the clerk office. This further led to more intense litigation. Then, in May 2022, the defendant again filed a third motion to dismiss, this time for insufficient service of process, which re-included the timeliness of service of the complaint and the vacatur of the summons issues combined into one larger threshold issue for whether the court had jurisdiction over the case and triggering the requirements/protections of Rule 9 including the automatic right to interlocutory appeal. All of these challenges were not based on the adequacy of the complaint itself but on technical service arguments that did not address or attack the complaint. Consequently, the plaintiffs were led to believe that the defendant had no challenge to the complaint itself and thus were not given any notice by the defendant of any intent to challenge the adequacy of the complaint for all this time. Therefore, there was no practical need for the plaintiffs to really worry about

amending the complaint to address adequacy of the complaint. [Note: This is another reason why it is prejudicial to the plaintiffs for the defendant to wait 3 years until 3-14-25 to raise a challenge to the adequacy of the complaint. It also has given the defendant 3 years to work on challenging the complaint, when they otherwise would have had to come up with such challenges immediately in 2022.]

124.    Similarly, if the plaintiffs sought to amend the complaint before serving it, they could be accused of filing a new complaint. Similarly, plaintiffs could not seek to amend the complaint while negotiating and finalizing a settlement. How would the plaintiffs know what to amend if the defendants were settling the case? It was only once the settlement was finalized and executed that the plaintiffs would be in a position to seek permission to amend the complaint because any amendment would have to include removal of the settled defendants and the attendant claims, which removal did not occurred until early April 2022. Even with the appearance of Donais in January 2022 and with his sudden decision to back out of the settlement at that time, him being the only one to do so, the other defendants were not out of the case until the settlement agreement was finalized. So the plaintiffs would have had to wait until the settlement execution to even begin to seek to amend the complaint because the complaint would then have been amended to focus only on the one remaining defendant, Donais, while the other 20 defendants were not fully out of the case as yet though things were on track for completion of the settlement. Plaintiff trusts that this is making sense however in-artful it may be. Hence, the first moment that the plaintiffs could seek to properly amend the complaint was on 4-6-22 when the finalized settlement stipulations of dismissal signed for all 20 defendants were filed officially with the court and those 20 defendants were officially out of the case. Note: It should be noted that 4-6-22 was also the date of the hearing with Judge Messer and during that hearing, the plaintiffs sought to raise the issue of amending the complaint, with the court, but the court, at the behest of the remaining defendant, did not address the issue.4

125.    Furthermore, the plaintiffs cannot file an amended complaint without permission from the court. The plaintiffs could not simply file an amended complaint on their own.

126.    The plaintiffs would have had to seek permission to amend the complaint prior to service, while battling the motion to dismiss for failure to serve complaint and the motion to vacate summons, and dealing with a hearing on

---

4 During the 4-6-22 hearing, plaintiffs did raise to the court the issue of the need to amend the complaint but the court ignored the issue at the time and did not address the issue. Thus, Plaintiffs tried to bring this to the attention of the Court but the Court did not see fit to address it at that time. Thus, plaintiffs were unable to amend the complaint prior to this point because the plaintiffs cannot amend the complaint without the permission of the court. By refusing to address the issue, the court effectively withheld its permission to amend the complaint at that time. See relevant excerpt of the court transcript of the 4-6-22 hearing, as **Exhibit A**.

the motion to dismiss on 4-6-22, while also finalizing and executing the settlement agreement with 20 defendants which was finally executed in early April 2022.

127.    Similarly, once the 20 defendants were out of the case, the plaintiffs would have to seek permission to amend the complaint during the same time that the defendant was seeking to dismiss the case for service of process issues and to vacate the summons through two motions to dismiss filed in January 2022 and in March 2022, and appealing the denial of those two motions to the NH Supreme Court (NHSC), and then further pressing for dismissal based on insufficiency of service of process, shortly thereafter, by filing his third motion to dismiss (in May 2022) and then seeking to include that in his appeal to the NH Supreme Court (NHSC) in June 2022.  If plaintiffs had sought permission to amend the complaint during those actions by the defendant, it would have been improper firstly because the complaint could not have been amended while the case was being appealed, and secondly because the defendant was seeking to get rid of the case only on the threshold issue of service of process, and it would have been impractical because the procedural posture of the case gave deference to first resolving the jurisdictional challenge regarding service of process. Amending the complaint would not have cured any jurisdictional issue of insufficient service of process. Thus, seeking to amend the complaint back then particularly on substantive issues, ostensibly would have been a waste of time and judicial resources since the case could have been dismissed for insufficient process and an amendment could not stop that, if the court was inclined to do that. Moreover, the original complaint could not have been amended while the case was on appeal and/or while this court placed a stay on the case pending appeal. This sufficiently lays out the tight tracing of the timeline showing that the plaintiffs could not have amended the complaint and was given no opportunity to amend the complaint.

128.    Plaintiffs could not reasonably be expected to have stood on that original complaint filed 5 years ago with 21 defendants, from before the pandemic began. This would simply not be fair, just or equitable.

129.    Moreover, there were additional acts since the filing of the original complaint in January 2020.

130.    So, in sum, after Donais entered appearance on the case in early January 2022, Donais moved to dismiss the case prior to service of process and tied up the case with technical jurisdictional/sufficiency of process issues for 3 years, with back-to-back procedural motions to dismiss and with an appeal, that triggered multiple stays. Donais employed several dilatory procedural tactics including filing four motions to dismiss (2022–2024) challenging service; pursuing

frivolous interlocutory appeal to NHSC, which was declined on 2-27-25, ignoring the 3-31-25 answer deadline, and filing a 5th Motion to Dismiss on 3-14-25.

131.    Further, Plaintiffs diligently sought a case management conference in December 2024 including but not limited to addressing amendment. The Court denied scheduling a case management conference, citing the pending appeal by Donais at that time. Post-appeal, amendment is now timely.

### ii. Plaintiffs' Previous Diligent Attempt To Seek Amendment at the 4-6-22 Hearing

132.    It should also be noted that Plaintiffs previously repeatedly raised the need to amend the Complaint in prior pleadings, including their 1-26-22 motion to disqualify (and 2-18-22 reply for that motion), and at the April 6, 2022 hearing on the first motion to dismiss, and in two subsequent motions for a case management conference in 2024 and this year.

133.    With respect to the 4-6-22 hearing, an excerpt from the transcript (page 32) is seen below:

MR. BISSASOR: Yes. The next issue is regarding the service of the actual complaint itself. Because of the 20 defendants are going to be out. I just wanted to bring to the attention of the Court that we intend to amend the complaint. I'm not sure if we should amend it before serving it to pay respect to the fact that the defendants are −− the other 20 defendants are out, or is that something to take up after serving the complaint as is?

THE COURT: So I guess, Attorney Hilliard, if you want to respond to that, you can. If you would prefer not to respond, you don't need to respond.

MR. HILLIARD: I think he's asking the Court for legal advice, Your Honor. I don't think either one of us should respond.

THE COURT: Okay. In case you had a response to him, I was going to let you do it. Okay.

MR. HILLIARD: Thank you.

THE COURT: What? Yeah. There's no response there, Attorney Bissasor (sic), go ahead.

MR. BISSASOR: Yeah. No, I was just going to say that I'm not asking for legal advice. I'm just stating to the Court that there's a need to amend the complaint. So I guess I'm −− procedurally, I was asking whether it's proper to amend the complaint prior to service or amend it −− or take up the issue of amendment after service.

THE COURT: And I −−

MR BISSASOR: Procedurally, what would be most appropriate under these unusual circumstances?

THE COURT: I appreciate your making the request, Mr. Bissasor, but the Court is not going to answer that question. I'm going to allow −− you need to prosecute your own case. So you've got your reissuance of a summons, and that's −− the Court has no further comment on that. Do you have any other issues you need to raise with the Court today?

134.    The transcript excerpt shows that the plaintiffs, through Plaintiff Bisasor, explicitly informed the court of their intent to amend the complaint, including to reflect the fact that 20 defendants would be removed. He sought clarification on whether to amend before or after service, but the court declined to provide any guidance or ruling, instead stating, "the Court is not going to answer that question... you need to prosecute your own case" and moving on without addressing the substance of the request.

### ii. Plaintiffs' Previous Diligent Attempt To Seek Amendment in the 2024 Case Management Conference Motion Pleadings

135.    With respect to the subsequent raising of the issue to amend the complaint, in the case management motions, a relevant excerpt from the 12-9-24 reply to the objection to the 11-22-24 case management motion, is taken from page 13, paragraph 54(g), as follows:

> Amendment of Complaint/Addition of Necessary Parties: The need to amend the complaint, including the addition of necessary parties, to ensure comprehensive adjudication of all relevant issues, as well as the timing of when that will be allowed. NB: From the outset, the defendant has been pressing, in this court and on appeal, for early dismissal based on serving process issues, leaving no opportunity to amend the complaint/add necessary parties since service of process on 4-7-22. Plaintiffs would like to flag this issue from now so that it is on the court's radar, and so that it is not said that this issue was never raised (NB: If recalled correctly, plaintiff believes this item was briefly raised once before, at the 4-6-22 hearing with this court).

136.    A further relevant excerpt from the 11-22-24 motion is taken from page 1, paragraph 1(g), as follows :

> Amendment/Removal of Settled Defendants: Plaintiffs seek removal of defendants who have settled from the filing system to streamline case management. Assistance is requested for amending complaint names within the e-filing system.

137.    Both of these documents clearly raise the issue of amending the complaint, to remove settled parties, to add necessary parties and to clarify or supplement the claims to ensure comprehensive adjudication of all relevant issues.

138.    On 1-3-25, the court entered the following order on the Plaintiffs' Motion for a Case Management Conference.

> The Court does not find that plaintiffs have set forth a legitimate basis for holding a case management conference at this time. After resolution of the Supreme Court's review of this Court's order on defendant's motion to dismiss, the case will either be resolved or the defendant will be required to file his Answer. The parties would then be required to file a Proposed Case Structuring and ADR Order pursuant to NH Super. Ct. R. 5. Accordingly, the motion for a case management conference is DENIED.

139.    Note: The Court's 1-3-25 order failed to address Plaintiffs' entitlement to amend their Complaint under Rule 12 under the circumstances.

140.    So, despite the previous requests regarding this issue of amending the complaint, the Court evidently delayed addressing this issue, leaving Plaintiffs without relief regarding the need to amend the Complaint to remove settled defendants, to add parties, and to clarify and supplement claims.

---

### SECTION IV: SPECIFIC REBUTTAL LINE BY LINE TO DEFENDANT'S ASSERTIONS
---

141.    Plaintiffs hereby provide specific rebuttal line by line to the defendants' motion to dismiss.

142.    The motion to dismiss states:

> Introduction: By order dated June 5, 2025, this Court dismissed the plaintiffs' original complaint ("Dismissal Order"), but granted the plaintiffs leave to amend subject to certain limitations. The dismissal was with prejudice to certain of the claims, and without prejudice to certain others.

a. This is an overstatement. The plaintiff had only one claim that was dismissed with prejudice, and that the defamation claim with respect to the 2017 affidavit by Donais that was presented in court in March 2017. Plaintiff had no other claim that was dismissed with prejudice. Although the court referenced dismissal with prejudice of perjury claim and a violation of the rules of conduct claim, the plaintiff did not intend to plead those as causes of action. Instead, these constituted background or supporting information. The defendant first misconstrued this fact and mis-framed these as claims. The court, without the benefit of allowing plaintiff to file a substantive objection, adopted the error of the defendant in treating these as causes of action.

143. The motion to dismiss also states:

The plaintiffs have now submitted an amended complaint, but it, too, is properly dismissed, as it seeks to plead claims that have previously been dismissed with prejudice, fails to cure the deficiencies noted in claims dismissed without prejudice, seeks to plead new causes of action or rely on substantially different evidence, and seeks to plead claims that fail to set forth a cause of action.

a. This is not true or correct. Here, the defendant engages in subtle sleight of hand mis-framing once again to try to color plaintiffs claims in a certain negative prejudicial wrongful light. The amended complaint does cure any purported deficiencies in the original complaint. It legitimately includes supplemental events that are part of the same causes of action and does not seek to plead "entirely" new causes of action. It does pleads claims that properly state a cause of action.

b. What is noteworthy here also is that for almost all of the claims in the amended complaint, the defendant does not address the substance of the claims; instead retreats to a position that asserts that the claims are new claims and this is his only defense, which is inadequate to defeat the claims, and in fact, he does not even challenge that the fail to state a claim, thus essentially conceding that these claims do state a cause of action.

144. The motion to dismiss also states:

Additionally, it seeks to now plead new claims by Natalie Anderson, who was not a party to any of the claims against the defendant Donais in the original action. Accordingly, she may not bring any claims via this amended complaint.

a. This also is not true or correct. The defendant previously raised this ridiculously frivolous argument to try to block plaintiff Anderson from being part of this lawsuit. But the court did not countenance it or mention it whatsoever in the 6-5-25 order on the motion to dismiss, thus reasonably signifying that it was rejected by the court. Plaintiff Anderson has been a plaintiff in this case from the very beginning. The original complaint clearly identified that the causes of actions are brought both by plaintiff Anderson and plaintiff Bisasor. To

assert or find otherwise is simply erroneous if not disingenuous and done in bad faith. Either way, a plaintiff may be added via an amended complaint via the relation back amendment provision especially where it is evident that the plaintiff was involved in the facts of the case. So even if plaintiff Anderson was being added as a plaintiff as a new party via the amended complaint, she still would be a valid party to the claims and the case. [note: NH rules and case law permit a liberal amendment policy especially where it concerns adding a plaintiff such as a spouse who is ostensibly closely related to the facts, events and damages from the case]. Here, plaintiff Anderson was a named plaintiff from the very beginning. There can be no serious question about her right to plead and bring claims in this case and via this amended complaint.

145. The motion to dismiss also states:

With respect to defamation, the Court ruled that the affidavit in question was subject to the absolute privilege, and that such deficiency could not be cured. Accordingly, the motion to dismiss the defamation claim, with respect to the affidavit, was granted with prejudice. Dismissal Order at 8-9.

a. This is correct.

146. The motion to dismiss also states:

Further, and with respect to the plaintiffs' claims related to the defendant's alleged statements made to certain others, i.e., Akridge and Robitaille, "such statements were made only after [the defendant] wrote the affidavit…, they are afforded an absolute privilege."

a. This is incomplete and misleading. The court posited the question of whether those are the only statements intended to be referred to, implying that that there could be other statements and to other persons. The court thus said if those are the only statements of concern, they are afforded an absolute privilege. This suggests that the court allowed for other statements of concern. False statements by Donais about the plaintiffs are of concern.

147. The motion to dismiss also states:

The plaintiffs' misrepresentation claim was, as noted by the Court in the Dismissal Order at 9, tied to the alleged defamatory statements in the affidavit, and to Akridge, Robitaille, and the circuit court. Plaintiffs did not allege any reliance on the purportedly false statements, or any resulting pecuniary loss to them. Accordingly, the misrepresentation claims also failed.

a. The original complaint required more definitive statements. The original complaint clearly was bare-bones and not intended to go into much detail on each claim as the main focus was on the other 20 Hilton Hotel defendants.

148. The motion to dismiss also states:

The plaintiffs' remaining claims in the original complaint were also dismissed. Dismissal Order at 11-13. These included a brief allusion to breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. The original complaint did not allege any contract or relationship that could give rise to such claims.

a. Again, the original complaint required more definitive statements. The original complaint clearly was bare-bones and not intended to go into much detail on each claim as the main focus was on the other 20 Hilton Hotel defendants. These claims were only mentioned in passing. It is clear that the plaintiffs intended to preserve these categories of claims, without going into detail at that time, with the right to amend at a later time.. Both the defendant and the court have sought to speculate about what those details might be. But neither the defendant's nor the court's speculation about the details of the claim can supersede the plaintiffs actual pleading of the cause of action in the amended complaint.

149. The motion to dismiss also states:

Likewise, the plaintiffs' "perjury" claim was dismissed with prejudice, as no such civil cause of action exits.

a. This is correct but as stated before this was not intended to be an actual cause of action. On the contrary, it was intended to lay some foundation for the race discrimination claim. If one reads the original complaint closely, one will see that the race discrimination references were made in this section. This original complaint was filed on January 3, 2020, almost 6 years ago and the plaintiffs were fairly new to litigation as pro se plaintiffs in NH, at that time. The imprecision of pro se inartful pleading was clearly a shortcoming of the original complaint.

150. The motion to dismiss also states:

The tortious interference with a contract claim, related to an alleged contract between the plaintiffs and Homewood Suites, failed as the complaint did not allege any of the requisite elements for such a claim in the circumstances presented.

a. Tortious interference was only mentioned in passing. It is clear that the plaintiffs intended to preserve this category of claim, without going into detail at that time, with the right to amend at a later time.. Both the defendant and the court have sought to speculate about what those details might be. But neither the defendant's nor the court's speculation about the details of the claim can supersede the plaintiffs actual pleading of the cause of action in the amended complaint.

151. The motion to dismiss also states:

Finally, the Court dismissed the claims based upon alleged violations of the Rules of Professional Conduct, as no such civil cause of action exists.

a. This is correct but as stated before this was not intended to be an actual cause of action. On the contrary, it was intended to lay some foundation for other claims including the ones that were cursorily mentioned. Yet, it should be noted that although no civil cause of action exists for violations of the rules of conduct, in and of themselves, such violations can serve as evidence of a cause of action. For example, dishonest statements are violations of the rules of conduct which can serve as evidence for a defamation claim or a misrepresentation claim. Similarly, violating the rules of conduct regarding bigotry and racial stereotyping or slurs can serve as evidence of a race discrimination claim. Again, this original complaint was filed on January 3, 2020, almost 6 years ago and the plaintiffs were fairly new to litigation as pro se plaintiffs in NH, at that time. The imprecision of pro se inartful pleading was clearly a shortcoming of the original complaint.

152. The motion to dismiss also states:

Opportunity to Amend and Limitations. As noted above, the Court granted the plaintiffs "leave to amend their complaint to correct the deficiencies outlined above for claims that are not dismissed with prejudice." Dismissal Order at 14. The Court further emphasized that the "opportunity to correct an original complaint's perceived deficiencies, however, does not include the right to plead an entirely new cause of action. … A substantive amendment that introduces an entirely new cause of action, or calls for substantially different evidence, may be properly denied."

a. The court did not state this as a specific restriction. It simply cited the overall case law. Moreover, the court has the ability to allow entirely new causes of action as long as it sees fit or it serves the interests of the justice. The reference does not bar new causes of action. It simply provides that amending a complaint to correct perceived deficiencies does not include the automatic unfettered right to go gangbusters with lumping in a bunch of unrelated new claims that have nothing to do with the claims at hand. But the limitation on an automatic right does not preclude the court to allow such entirely new claims. Yet having said that, the amended complaint does not fall in the category of "entirely new claims".

153. The motion to dismiss also states:

As will be seen with discussion of each of the eleven (11) counts of the plaintiffs' amended complaint, these limitations, together with the Dismissal Order, result in a proper dismissal of the entire amended complaint.

a. This is not correct. The court did not and could not intend to be so restrictive. This violates all normal standards for liberal amendment of a complaint, especially for a first-time amendment, under these circumstances of the complaint being initially filed over 5 years ago and the case being tied up by the

defendant on service of process issues including a frivolous appeal, and having never been allowed to amend the complaint before for over 3 years.

154.    The motion to dismiss also states:

The Court may also consider "documents attached to the pleadings which are sufficiently referenced by the complaint or whose authenticity is not challenged." Dismissal Order at 1. Here, such documents include those submitted with the original motion to dismiss: the Donais affidavit and the pleadings in the circuit and superior courts relating to disqualification of counsel (Exhibits A-F, at 10).

a.    The court ruled that these documents were not properly before the court and thus the court did not consider them.

155.    The motion to dismiss also states:

In addition, the original landlord tenant petition filed in the circuit court by plaintiff Anderson on January 9, 2017 (Exhibit G, at 64), the motion to dismiss this petition filed January 17, 2017 by defendant Donais (Exhibit H, at 72), and the superior court order issued May 5, 2017 (Exhibit I, at 140) are attached to this motion.

a.    These are entirely new documents. These should not be included. Moreover, the Exhibit H is unsigned and the defendant is asking the court for extra time to obtain and file the signed pleading. Why is the court allowing the defendant to do this?

b.    What's ironic here is that the defendant waited 3 years to assert brand new defenses. Plaintiffs vigorously objected but the court granted them a waiver to get away with it. Now, the defendant is seeking to prevent plaintiffs from pleading anything but the same exact statements made in the original complaint. The defendant is seeking to strip the concept of amending the complaint of any real meaning.

156.    The motion to dismiss also states:

Count 1 (Breach of Fiduciary Duty). As noted above, the Court dismissed this claim, as it did not allege any contract or relationship that could give rise to such a duty.

a.    The court said no such thing.

b.    Further, see below to rebut Donais' assertions.

c.    This count asserts that Craig Donais and his law firm owed a fiduciary duty to Plaintiff as a prospective client, including confidentiality, loyalty, and the obligation to act in good faith, which was breached through multiple egregious acts.

33

d.  Plaintiff was a prospective client entitled to confidentiality and loyalty. By disclosing privileged information and exploiting it for self-protection, Craig Donais breached that duty, proximately causing reputational and economic loss.

e.  Under NH law, the attorney-client relationship, even at the prospective stage, creates fiduciary obligations including confidentiality, loyalty, and good faith. Craig Donais breached this duty by disclosing confidential information, fabricating false allegations, and misusing the relationship to retaliate.

f.  Courts have recognized that a fiduciary duty arises when an attorney receives confidential information, even if formal engagement does not occur, provided the client reasonably believes the attorney is acting in a professional capacity and the communication is confidential. Keshishian v. CMC Radiologists, 142 NH 168, 174 (1997); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451 (1991).

g.  In this case, the facts establish that Plaintiff engaged Craig Donais in a confidential, substantive discussion about legal issues involving the Hilton hotel defendants. Craig Donais, knowing this, had a duty to maintain confidentiality and act in Plaintiff's best interests. Instead, he divulged confidential information to third parties, his wife, son, family members and community members, colleagues, and others, without Plaintiff's consent, breaching his fiduciary obligation.

h.  Moreover, Craig Donais used his position of client trust to maliciously fabricate false allegations of racism, criminal conduct, and mental illness, with the intent to defame, intimidate, and retaliate against Plaintiff.

i.  These acts constitute a clear breach of the fiduciary duty, which under NH law, includes the obligation not to disclose confidential information or use it for personal or third-party advantage.

j.  Under NH law, breach of fiduciary duty requires (1) the existence of a fiduciary relationship, (2) breach of that duty, (3) causation, and (4) damages. The facts support each element, and the breach caused tangible damages, including reputational harm and emotional distress.

k.  The case law supports that such breaches are actionable. Bays v. Theran, 418 Mass. 685 (1990), affirms that breaches of fiduciary duty can be established through acts of disloyalty, breach of confidentiality, or self-dealing.

l.  The repeated disclosures, especially those involving false statements to third parties, show a pattern of breach that is sufficiently egregious to sustain a cause of action.

34

m. Plaintiff's damages include reputational harm, emotional distress, and economic losses, directly caused by these breaches.

n. It should be noted that, under NH law, the fiduciary duties extend to prospective clients, especially where confidential information was shared and relied upon in good faith.

o. As a prospective client, Plaintiff shared confidential information with Craig Donais during a January 2017 consultation. Craig Donais breached NH Rule 1.18 by weaponizing this information in defamatory campaigns.

p. The facts clearly demonstrate that Plaintiff reasonably believed he was engaging in a confidential discussion, and Craig Donais's conduct violated that trust, breaching his fiduciary obligation. See Glickman v. Brown, 21 Mass. App. Ct. 229 (1985) (recognizing fiduciary duties in attorney-client relationships).

q. Craig Donais breached confidentiality obligations owed to Plaintiff as a prospective client by disclosing privileged information to harm Plaintiff's interests.

r. The rules of professional conduct provides that a lawyer shall not knowingly reveal a confidence or secret of a client or use a confidence or secret of a client to the disadvantage of that client.

s. A "confidence" is defined as "information protected by the attorney-client privilege under applicable law" and a "secret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." (McKinney Supp. 1991).

t. Courts have held that an "analagous fiduciary obligation may be implied in the absence of an attorney-client relationship." Liu v. Real Estate Inv. Group, Inc., 771 F. Supp. 83 (S.D.N.Y. 1991).

u. As the court in Liu noted:

   It is clear that where an attorney receives confidential information from a person, who under the circumstances has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidences irrespective of the absence of a formal attorney client relationship.

v. Id. at 86 (quoting Nichols, 99 Misc.2d 822, 417 N.Y.S.2d at 418); see also Rosman v. Shapiro, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987); Trinity Ambulance Serv., Inc. v. G L Ambulance Servs., Inc., 578 F. Supp. 1280, 1283 (D. Conn. 1984).

w.  See, e.g., United States v. Devery, No. 93 Cr. 273 (LAP), 1995 WL 217529, at *14 (S.D.N.Y. Apr. 12, 1995) ("It is well-established that no formal indicia or technical requirements are required in order to establish an attorney-client relationship."); Green v. Montgomery County, 784 F. Supp. 841, 844 (M.D. Ala. 1992) ("The mere existence of an express contract of employment, or the payment of legal fees, or the length of consultation is not determinative of whether a preliminary consultation has matured into an attorney-client relationship.").

x.  "[C]ourts have not employed a single, well-defined test for determining whether an attorney client relationship exists, and, moreover, have consistently rejected the argument that indicia of a formal relationship are necessary. Most courts have acknowledged, as a general matter, that an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." First Hawaiian Bank v. Russell Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994); accord Bennet Silvershein Assocs. v. Furman, 776 F. Supp. 800, 803 (S.D.N.Y. 1981) (quoting Trinity Ambulance Serv., Inc. v. G L Ambulance Servs., Inc., 578 F. Supp. at 1283); Keoseian v. Von Kaulbach, 707 F. Supp. 150, 152 (S.D.N.Y. 1989) (same).

y.  As the Second Circuit has stated, "[t]he key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." United States v. Dennis, 843 F.2d 652, 657 (2d Cir. 1998).

z.  Further, whether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to the attorney client privilege. See Dennis, 843 F.2d at 657 ("To be sure, initial statements made while Pilgrim intended to employ Gerace were privileged even though the employment was not accepted."); see also Green, 784 F. Supp. at 845 ("[T]he fiduciary relationship existing between a lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer although actual employment did not result."); Liu, 771 F.Supp. at 86 ("[T]he duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result."); McCormick on Evidence 6th Ed. § 88 (West Publishing Co., 2006) ("[C]ommunications in the course of [a] preliminary discussion with a view to employing the lawyer are privileged though the employment is in the upshot not accepted.").

36

aa.  In this instance, it is clear that Bisasor engaged in preliminary discussions with Craig Donais related to a legal analysis of potential claims that could be brought in connection with the landlord-tenant matter involving the Hilton Hotel defendants during the tenure of plaintiff's stay. Although there was no further engagement or retainer after that preliminary client conversation, any communication made during this preliminary consultation is protected by the duty of confidentiality and protected by the attorney-client privilege. Thus, this preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though Craig Donais was not ultimately retained.

bb.  Bisasor's statement that confidences were shared with Craig Donais is corroborated by telephone records indicating that there were at least two telephone calls involved, one of which was on 1-9-17, between Craig Donais and Bisasor which lasted 7 minutes. The facts here, including a 7 minute phone call conversation and transmittal of client conversation information from Robert Obrien via conversation with Craig Donais about plaintiff's claims, provides sufficient circumstantial evidence to conclude that it is likely that some "confidences" or "secrets" were revealed to Craig Donais in order for him to evaluate the case.

cc.  For example, in Arifi, the court held that the former attorney's assertion, that he could not remember any confidential information conveyed to him during the short representation of one of the defendants, did not cure the professional responsibility conflicts which were present. Arifi, 290 F. Supp. 2d at 350 ("While there is no reason to doubt Green's claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had access to such information during the short representation."); see also Schwed v. Gen. Elec. Co., 990 F. Supp. 113, 117 n. 2 (N.D.N.Y. 1998) (holding in a case where attorney claimed he did not possess confidential information and did not recall any discussions regarding the case, that the third prong of the Second Circuit test was nevertheless met because there was a likelihood that attorney had access to confidential information.).

dd.  Plaintiff alleges that Craig Donais and Bisasor had an attorney-client relationship, that plaintiff was a client for purposes of the initial consultation, and that otherwise plaintiff was, at a minimum, a prospective client, and that he became a former client once the engagement went no further after the initial consultation. This is backed up by the explicit language of the NH Rules of Professional Conduct for Lawyers.

ee.  It should be noted that Rule 1.18 of the NH Rules of Professional Conduct for Lawyers, states:

Rule 1.18. Duties to Prospective Client

(a) A person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received and reviewed information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

Ethics Committee Comment:

1. The New Hampshire rule expands upon the ABA Model Rule in one area. The ABA Model Rule 1.18(a) defines a prospective client as one who "consults" with a lawyer about possible representation; the New Hampshire Rule defines prospective client as one who "provides information to a lawyer" about possible representation. ABA Model Rule 1.18(b) establishes a general rule for protection of information "learned" by a lawyer from a prospective client; the New Hampshire Rule clarifies the scope of the protection so that it applies to information "received and reviewed" by a lawyer from a prospective client.

In its version of Rule 1.18, New Hampshire's rule eliminates the terminology of "consultation" and learning and extends the protections of the rule to persons who, in a good faith search for representation, provide information unilaterally to a lawyer who subsequently receives and reviews the information. This change recognizes that persons frequently initiate contact with an attorney in writing, by e-mail, or in other unilateral forms, and in the process disclose confidential information that warrants protection. This change further recognizes that receipt and review are likely to be more objective standards than learning.

ff. Rule 1.18 is very clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them.

gg. Craig Donais and Bisasor had a fiduciary relationship. Craig Donais' relationship with Bisasor, that of attorney/client, was and is fiduciary. Craig Donais owed an ethical and fiduciary duty to Bisasor.

hh. See Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 442 (1980) ("[T]he relationship between attorney and client ... is fiduciary as a matter of law"); Blake v. Hendrickson, 40 Mass.App.Ct. 579, 582 (1996) (an attorney is the client's agent); Vanacore v. Kennedy, 86 F.Supp.2d 42 (D.Conn. 1998) (the relationship between attorney and client is one of trust and confidence, and gives rise to fiduciary duties of the attorney toward the client). Craig Donais owed Bisasor a fiduciary duty to act at all times in good faith and in Bisasor's best interests.

ii. Craig Donais owed Bisasor a fiduciary duty to, among other things, to act in Bisasor's highest and best interests at all times, and to not expose Bisasor to any unnecessary risk or peril.

jj. Craig Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship. See Bartle v. Berry, 80 Mass. App.Ct. 372, 385 (2011) (in accordance with the Rules of Professional Conduct, an attorney's fiduciary duty continues even after termination of the attorney- client relationship).

kk. Under Restatement (Third) of the Law Governing Lawyers § 38, just because a prospective client conversation where confidential information was shared, does not result in further engagement, that does not absolve attorneys of fiduciary obligations created by that limited or initial client interaction.

ll. This communication/consultation with Bisasor triggered a fiduciary relationship (see Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 463 (1991)), with ongoing duties of confidentiality.

mm.    However, in 2019 and 2020, Craig Donais disclosed private client information to his wife, son, family members, and friends and to the others including members of the Manchester NH Crime-Line board, etc.

nn. Craig Donais engaged in a pervasive, widespread, systematic and deliberate pattern of abandoning, violating and exploiting his fiduciary obligations to Plaintiff for his own self-interest and constituted a willful dereliction of duty designed to exploit Plaintiff's vulnerability as an African-American, and conceal evidence of Craig Donais' own misconduct. Craig Donais' concealment of his divulging of plaintiff's confidential client conversation further constitutes a breach of the duty to protect client interests post-termination (In re Jones, NH Sup. Ct., No. 2021-0123, 2021 WL 4472142). Attorneys must prioritize client interests over self-protection. By divulging and exploiting confidential information, Craig Donais engaged in self-dealing barred by Kanamaru, 100 Mass. App. Ct. at 75.

oo. Under New Hampshire law, attorneys owe clients and former clients an unwavering duty of confidentiality and transparency, even after termination of a client relationship. Craig Donais' conduct breached this duty at every turn, inflicting severe financial, procedural, and emotional harm.

pp. Craig Donais' acts also includes a breach of fiduciary duty by divulging information (and fabricated version of it) obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client.

qq. It was malicious act and represented an attempt to harm plaintiff/his spouse as former prospective clients.

rr. When prospective clients meet with lawyers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined full representation or because the lawyer joined the legal team of the opposing party. This is a logically nuanced point that is being made here.

ss. Craig Donais' intent was clear: to hurt, damage, harm, oppress, defame, scandalize the plaintiff.

tt. This is forbidden by the rules. So even if Craig Donais maintains that his allegations of what plaintiff said in the 1-9-17 conversation were true (which it was not), he still violated the rules of conduct and breached his duty and obligations to the plaintiff as a former client or former prospective client.

uu. Hence, Craig Donais' violations are multiple, layered and intertwined with a web of layered misconduct making a very serious combination of violations of ethics that rises to the level of extreme seriousness which is further compounded by the numerous breaches and wrongs that flowed from that to subsequent and continuing events thereafter.

vv. Again, this is an intellectually sophisticated point in showing the reasoning that would still arrive at a violation of the rules of conduct and a breach of duty and contract/good faith, by Craig Donais even if he were telling the truth in his false statements to several third parties about what plaintiff had said in the 1-9-17 client conversation (which he was not).

ww.    It should be noted that some lawyers have been disbarred for engaging in misconduct as outlined above. It is evident that Craig Donais' conduct outlined herein, has violated Rule 8.4 section (a), (b), and (c), in that his false statements reflects adversely on the lawyer's honesty and trustworthiness, and it would also constitute conduct involving dishonesty, fraud, deceit and misrepresentation. Similarly, the fabrication of the race discrimination accusation would further be a violation of Rule 8.4 section (g), in that his false statements were motivated by racial animus and were intended to wrongly embarrass, harass and burden Plaintiff.

xx. Craig Donais breached his fiduciary duty to plaintiff by breaking his obligation of confidentiality, and acting against plaintiff's interest as a former client and seeking to harm and injure plaintiff's rights. In the alternative, this also constitutes legal malpractice.

yy. Thus, Craig Donais owed a duty to Plaintiff5, and thus there was fiduciary relationship that included confidentiality. Craig Donais' breach of duty is based on: a) the acts of Craig Donais as outlined above, resulting in a breach of duty; as well as b) statements made by Craig Donais that breached that duty. These

---

[5] Donais owed a duty to plaintiff. There was a fiduciary relationship. Plaintiff was a prospective client. Plaintiff was engaged as a prospective client. Plaintiff was given legal advice. Plaintiff shared confidential information. A prospective attorney client relationship was formed. This is what a judge found (Judge Paul Moore in Nashua district court in NH). This is why Donais withdrew as attorney in that case.

acts and statements that occurred in 2019 and 2020, with respect to the allegations in this complaint, are not time-barred and are not privileged.

    i. Craig Donais had and owed a fiduciary duty to Bisasor.

    ii. Craig Donais had an obligation to Bisasor to act with the utmost good faith and fidelity as a fiduciary agent.

    iii. Craig Donais had a duty not to take advantage of Bisasor and place him at a disadvantage. See Goldman v. Kane, 3 Mass.App.Ct. 336, 341 ( (1975) (attorney must do nothing that takes advantage of or disadvantages the client).

    iv. Craig Donais had a duty of trust and loyalty to Bisasor and a duty not to betray Bisasor.

    v. Craig Donais had a duty to not subvert his (Craig Donais) obligation to Bisasor.

    vi. Craig Donais had an ethical obligation to Bisasor under the NH Rules of Professional Conduct, e.g., Rules 1.2, 1.3, 1.4, 1.6 and 1.7-1.9. See also 51 Mass. Prac., Professional Malpractice at 17.6 (an "attorney's duty of care is set forth in the Rules of Professional Conduct").

    vii. Craig Donais had a duty to not act deceitful.

    viii. Craig Donais's ethical obligation to Bisasor (under NH Rules of Professional Conduct) continued after the conclusion of the client conversation between Craig Donais and Bisasor in 2017.

zz. In this matter, Craig Donais violated his duty to the plaintiff in several ways.

    i. Craig Donais discussed the client conversation with the plaintiff with several people. These include his wife, Mary Donais, his son Garrett Donais, and the Manchester NH crime-line board, as well as friends and connections. These communications with his friends violated the rights of the plaintiff.

    ii. Craig Donais also voluntarily engaged in discussion with the police about the conversation Craig

    iii. Craig Donais also had a duty to inform the plaintiff, as a former client, that Craig Donais was going to or had discussed such information with others. Instead, Craig Donais actively hid those occurrences from the plaintiff.

    iv. The act of hiding such occurrences from the plaintiff is a breach of duty the plaintiff.

    v. Craig Donais's disclosure of client discussion information result was a violation of Craig Donais's fiduciary duty to Bisasor.

aaa. See Rule 1.6. of the rules of professional conduct for lawyers, which states: *"Confidentiality of Information: (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."* See also Rule 4.4: Respect for Rights of Third Persons: *"(a) In representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person."*

bbb.   "Even after termination of the attorney-client relationship, a lawyer remains bound" to preserve the former client's confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994), quoting Masiello v. Perini Corp., 394 Mass. 842, 847 (1985). "(W)hen an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney's continuing duty to preserve a former client's confidences." Adoption of Erica, 426 Mass. 55, 60 (1997).

   i. Further, Craig Donais's disclosure of client discussion information and the results therefrom was a breach of his obligation to Bisasor to act with the utmost good faith and fidelity as a fiduciary agent.

   ii. Craig Donais's disclosure of client discussion information and the results therefrom was a breach of Craig Donais's loyalty to Bisasor.

   iii. Craig Donais's disclosure of client discussion information and the results therefrom took advantage of Bisasor, and, placed him at a disadvantage.

   iv. Craig Donais's disclosure of client discussion information and the results therefrom was an abuse of trust, disloyal, and a betrayal of Bisasor's cause.

   v. Craig Donais's disclosure of client discussion information and the results therefrom subverted Craig Donais's obligation to Bisasor, all to Bisasor's disadvantage.

ccc. See In re Disciplinary Bd. of Hawaii Supreme Court, 984 P.2d 688 (Haw. 1999) (evidence underlying a violation of a disciplinary rule is evidence that would support civil or criminal liability); Gilles v. Wiley, Malehorn & Sirota, 783 A.2d 756 (N.J. Super 2001) (breach of a rule of professional conduct is evidence of an attorney's failure to comply with the required standard of care); BCCI Holdings (Luxembourg), S.A. v. Clifford, 964 F.Supp. 468 (D.D.C. 1997) (breach of attorney's ethical standards will constitute breach of fiduciary duty owed to client);

ddd.    Craig Donais's disclosure of client discussion information and the results therefrom violated Craig Donais's ethical obligation to Bisasor under the NH Rules of Professional Conduct.

eee. Said ethical rules were and are intended to protect one in Bisasor's position, and, a violation of the same is evidence of the attorney's negligence.

fff. See NH Rules of Professional Conduct, Rule 8.4 ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another. (c) engage in conduct involving dishonesty ... (d) engage in conduct that is prejudicial to the administration of justice;…or (h) engage in any other conduct that adversely reflects on his fitness to practice law").

ggg.    Thus, in terms of the breach of fiduciary duty and breach of confidentiality claims, Craig Donais acted as a prospective attorney for both plaintiffs, as evidenced by his communications with Plaintiff Bisasor, and by his own admissions and those of Attorney Robert O'Brien and Attorney Elliott Berry. Further facts and documentary evidence of the above include emails and testimony from Elliott Berry, who stated that Craig Donais' conduct constituted a breach of fiduciary duty and a violation of the rules of professional conduct, as well as emails from the ADO regarding Berry's interview, Berry's own written determination that Craig Donais breached his duty, and evidence from the circuit court where Craig Donais withdrew after the judge determined that Craig Donais had violated ethical duties/breach fiduciary duty. The court transcript shows that Craig Donais was effectively caught red-handed and that a circuit court judge effectively found that Craig Donais breached fiduciary duty as thus was required to be disqualified from the case. This by itself is slam-dunk proof that Craig Donais is liable for this claim of breach of fiduciary duty, and Craig Donais' own withdrawal serves as his own admission that he was guilty/liable for this wrongdoing.

hhh.    There is also evidence from Robert O'Brien that Craig Donais lied about the nature of his communications with plaintiffs.

iii.  NB: Craig Donais cannot dispute facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in any pre-trial motion is invalid.

jjj.  As a result of Craig Donais's breaching conduct, Bisasor sustained injury and loss. Craig Donais caused Bisasor to suffer emotional distress. The damages Bisasor sustained were directly, proximately and solely caused by Craig Donais's breach of his duty as set forth above.

kkk.  Craig Donais breached his fiduciary duties and obligations to Bisasor by doing all of the acts and omissions as herein alleged.

lll.  In doing all of the above described acts and omissions constituting Craig Donais's breach of his fiduciary duties owed to Bisasor, Bisasor has been damaged/injured.

mmm.  Bisasor's injuries include lost opportunities, emotional distress, and mental anguish.

nnn.  The acts and omissions constituting breach of Craig Donais's fiduciary duties were committed with intent, oppression, fraud and/or neglect.

ooo.  The damages Bisasor sustained were directly, proximately and solely caused by Craig Donais's intentional, reckless and negligent acts and his breach of duty as set forth above.

ppp.  In sum, even after the termination of the formal attorney-client relationship, Craig Donais owed Plaintiff continuing fiduciary duties including the duty of loyalty, the duty of good faith and fair dealing, and the duty not to use his position or confidential information to harm his former client.

qqq.  Craig Donais breached these continuing fiduciary duties by:

i.  Engaging in conspiracy designed to harm the Plaintiff;

ii.  Using his position as an attorney to gain unfair advantage over his former client;

iii.  Placing his own interests above those of his former client;

iv.  Engaging in deceptive conduct designed to harm the Plaintiff

v.  Violating his duty of honest dealing through a pattern of misrepresentation and deception.

rrr.  As a direct and proximate result of Craig Donais's breach of fiduciary duty, Plaintiff has suffered damages as described above

sss.

157.  The motion to dismiss also states:

Notwithstanding all the words and conclusory allegations in the amended complaint, the only possible relationship that could give rise to fiduciary obligations would be an attorney-client one, and it is undisputed that this never existed.

a.  It is not undisputed that an attorney-client relationship existed.

158.  The motion to dismiss also states:

> Moreover, any obligations to a prospective client owed by a lawyer arise from the Rules of Professional Conduct, Rule 1.18, and as the Court has already ruled, there can be no claim based upon the violation of those rules. Dismissal Order at 13. Finally, any claim related to an expectation of confidentiality does not lie, as the defendant is authorized by the applicable rule, Professional Conduct Rule 1.6(b)(3), to reveal confidential information as necessary to defend claims regarding his conduct (as occurred here with the allegation of conflict), and the plaintiffs waived any applicable privilege by injecting the issue into the 2017 litigation.

a.  The allegations in the complaint do not implicate Donais' needing to defend himself. Donais did not need to defend himself with the Manchester crime-line board, his private personal family members, friends and colleagues.

b.  The only time and place that the rules contemplate violating confidentiality is in an ADO proceeding against the attorney or in a proceeding in court where the defendant is called upon to defend himself or herself. None of these things apply here based on the allegations in the amended complaint.

**SUMMARY OF UNDERLYING DISPUTE WITH HILTON HOTELS PROPERTY**

c.  Bisasor and Anderson had entered into a special agreement with an upscale newly built extend-stay mixed use property in Nashua, NH that operated under the Hilton Hotels brand ("Homewood Suites Nashua" or "Homewood"). Because of the promises made by Hilton Hotel's property employees/manager, Bisasor believed he had a valid agreement/contract and because it was a mixed use property, that contract would serve as a basis for a tenancy agreement, for a certain time period. In or around early 2017, plaintiffs contacted Hilton executives to lodge a formal complaint about certain events at the property, that plaintiffs believed constituted discrimination and retaliation based on race, among other things. As a result of that complaint, the property manager immediately, the next day, sought to break the agreement with the plaintiffs and suddenly asked the plaintiffs to depart the property with a certain short period of time. Plaintiff believed this constituted a breach of contract and may also implicate landlord tenant laws. However, because of the ambiguity of NH law on whether long-term occupants of a hotel property can obtain tenancy rights and because the property was a mixed-use property (i.e., it catered both to long-term residents as well as to short-term transients), the plaintiffs were not sure about their rights under these circumstances, as they believed they had strong arguments but could also perceive the weaknesses given the gray area of the law. Either way,

45

plaintiffs firmly believe they had solid contract rights regardless of whether a tenancy had accrued or not. Thus, they decided to seek legal advice and assistance.

### B. Urgent Search For Legal Assistance/ Representation

d.  The plaintiffs began urgently searching for an attorney to obtain clarification on the law in terms of contract of in terms of tenancy and sought legal advice, assistance and/or representation on the matter with Homewood.

### FURTHER ON BREACH OF FIDUCIARY DUTY

e.  As a prospective client[6], Plaintiff shared confidential information with Donais during a January 2017 consultation. Donais breached NH Rule 1.18 by weaponizing this information in defamatory campaigns.

f.  Plaintiff reasonably believed he was engaging in a confidential discussion, and Donais's conduct violated that trust, breaching his fiduciary obligation.

g.  Donais breached confidentiality obligations owed to Plaintiff as a prospective client by disclosing privileged information to harm Plaintiff's interests.

h.  The rules of professional conduct provides that a lawyer shall not knowingly reveal a confidence or secret of a client or use a confidence or secret of a client to the disadvantage of that client.

i.  Donais received confidential information as an attorney from Bisasor who was seeking legal advice and thus he had a right to believe that Donais, as an attorney, would respect such confidences.

j.  Plaintiff was a prospective client entitled to confidentiality and loyalty. By disclosing privileged information and exploiting it for self-protection, Donais breached that duty, proximately causing reputational/economic loss.

k.  Under NH law, the attorney-client relationship, even at the prospective stage, creates fiduciary obligations including confidentiality, loyalty, and good faith. Donais breached this duty by disclosing confidential information, fabricating false allegations, and misusing the relationship to retaliate. Donais owed a fiduciary duty to Plaintiff as a prospective client, including confidentiality, loyalty, and the obligation to act in good faith, which was breached through multiple egregious acts.

---

[6] NB: Under NH law, the fiduciary duties extend to prospective clients, especially where confidential information was shared and relied upon in good faith.

l. A fiduciary duty arises when an attorney receives confidential information, even if formal engagement does not occur, provided the client reasonably believes the attorney is acting in a professional capacity and the communication is confidential. In this case, Plaintiff engaged Donais in a confidential, substantive discussion about legal issues involving the Hilton hotel defendants. Donais had a duty to maintain confidentiality and act in Plaintiff's best interests. Instead, he divulged confidential information to third parties, his wife, sons, family members, community members, colleagues, and others, without Plaintiff's consent, breaching fiduciary obligation.

m. Moreover, Donais used his position of client trust to maliciously fabricate false allegations of racism, criminal conduct, and mental illness, with the intent to defame, intimidate, and retaliate against Plaintiffs.

n. These acts constitute a clear breach of the fiduciary duty, which includes the obligation not to disclose confidential information or use it for personal or third-party advantage.

o. An attorney-client relationship existed because Bisasor divulged confidences and secrets to Donais as an attorney and because Bisasor believed that he was approaching Donais as an attorney in a professional capacity with the intent to secure legal advice and did secure legal advice.

p. Bisasor reasonably understood that the call with Donais was confidential. Thus, Bisasor's intent as a prospective client was that of an attorney/client relationship.

q. Further, whether or not employment occurs, preliminary discussions between Donais as an attorney and Bisasor as a prospective client was subject to the attorney client privilege. Thus, the fiduciary relationship existing between Bisasor and Donais extended to preliminary consultation with Bisasor as a prospective client with a view to retention of Donais as the lawyer, notwithstanding that actual employment did not result.

r. Thus, Donais' duty to preserve confidentiality extended to this preliminary consultation with Bisasor as a prospective client even though actual employment does not result.

s. In this instance, it is clear that Bisasor engaged in preliminary discussions with Craig Donais related to a legal analysis of potential claims that could be brought in connection with the landlord-tenant matter involving the Hilton Hotel defendants during the tenure of plaintiff's stay. Although there was no further engagement or retainer after that preliminary client conversation, any communication made during this preliminary consultation is protected by the duty of confidentiality and protected by the attorney-client privilege. Thus,

this preliminary conversation is sufficient to establish the existence of an attorney-client relationship, even though Donais was not ultimately retained.

t.  Bisasor's statement that confidences were shared with Craig Donais is corroborated by telephone records indicating that there were at least two telephone calls involved, one on 1-6-17 where Bisasor left a voicemail for Donais, and one on 1-9-17 where Donais called back Bisasor, which lasted 7 minutes. This constitute sufficient circumstantial evidence to show that some "confidences" or "secrets" were revealed to Donais in order for him to evaluate plaintiffs' case.

u.  Thus, Bisasor was a client for purposes of the initial consultation, and at a minimum, was a prospective client, and he became a former client once the engagement went no further after the initial consultation. Rule 1.18 is very clear that prospective clients are protected by attorney-client privilege and that there is a duty to prospective clients owed by attorneys who consult with them. Thus, Donais' relationship with Bisasor, that of attorney/client, was that of a fiduciary. Donais owed an ethical and fiduciary duty to Bisasor.

v.  Bisasor placed trust and confidence in Donais. This gives rise to fiduciary duties of the attorney toward Bisasor. Donais owed Bisasor a fiduciary duty to act at all times in good faith and in Bisasor's best interests, and to not expose Bisasor to any unnecessary risk or peril. Donais' fiduciary duty to Bisasor continued after the termination of his attorney/client relationship. The 1-9-17 legal advice consultation with Bisasor triggered a fiduciary relationship with ongoing duties of confidentiality.

w.  However, Donais disclosed private client information to his wife, son, family members, and friends and to the others including members of the Manchester NH Crime-Line board, etc.

x.  Donais engaged in a pervasive, widespread, systematic and deliberate pattern of abandoning, violating and exploiting his fiduciary obligations to Plaintiff for his own self-interest and constituted a willful dereliction of duty designed to exploit Plaintiff's vulnerability as an African-American, and conceal evidence of Donais' own misconduct. Donais' concealment of his divulging of plaintiff's confidential client conversation further constitutes a breach of the duty to protect client interests post-termination. Even after termination of the attorney-client relationship, a lawyer remains bound to preserve the former client's confidences and secrets.

y.  Donais' conduct breached this duty at every turn, inflicting severe financial, procedural, and emotional harm.

48

z.  Donais' acts also includes a breach of fiduciary duty by divulging information (including a fabricated version of it) obtained during a confidential prospective client consultation with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client.  It was malicious act and represented an attempt to harm plaintiff/his spouse as former prospective clients.

aa. When prospective clients meet with lawyers they are entitled to the same protections and confidentiality as any other client. The public must be assured that lawyers will treat their confidential client consultations including initial meetings as confidential, and that lawyers will not abuse such information because the lawyer ultimately declined full representation or because the lawyer joined the legal team of the opposing party.

bb. Donais' intent was clear: to hurt, damage, harm, oppress, defame, scandalize the plaintiff.  Even if Donais maintains that his allegations of what plaintiff said in the 1-9-17 conversation were true (which it was not), he still violated the rules of conduct and breached his duty and obligations to the plaintiff as a former client or former prospective client.

cc. It is evident that Donais' conduct outlined herein, has violated Rule 8.4 section (a), (b), and (c), in that his false statements reflects adversely on the lawyer's honesty and trustworthiness, and it would also constitute conduct involving dishonesty, fraud, deceit and misrepresentation. Similarly, the fabrication of the race discrimination accusation would further be a violation of Rule 8.4 section (g), in that his false statements were motivated by racial animus and were intended to wrongly embarrass, harass and burden Plaintiff.

dd. Donais breached his obligation of confidentiality, and acted against plaintiff's interest as a former client and sought to harm and injure plaintiff's rights.7 The acts and omissions constituting breach of Craig Donais's fiduciary duties were committed with intent, oppression, fraud and/or neglect.

ee. Further, Donais's disclosure of client discussion information was a breach of his obligation to Bisasor to act with the utmost good faith and fidelity as a fiduciary agent, was a breach of Donais's loyalty to Bisasor, took advantage of Bisasor, and, placed him at a disadvantage, was an abuse of trust, disloyal, and a betrayal of Bisasor, subverted Donais's obligation to Bisasor, all to Bisasor's disadvantage, and violated Donais's ethical

---

[7] Donais owed a duty to plaintiff. There was a fiduciary relationship. Plaintiff was a prospective client. Plaintiff was engaged as a prospective client. Plaintiff was given legal advice. Plaintiff shared confidential information. A prospective attorney client relationship was formed. This is what a judge found (Judge Paul Moore in Nashua district court in NH). This is why Donais withdrew as attorney in that case.

obligation to Bisasor under the NH Rules of Professional Conduct. Said ethical rules were and are intended to protect one in Bisasor's position, and a violation of the same is evidence of the attorney's negligence.

### B.  Overview of Breach of Fiduciary Duty

ff.  Donais used his prospective client conversation with Plaintiff against Plaintiff, to directly inflict harm by defaming Plaintiff and accusing him of falsely/frivolously accusing Donais of race discrimination because he did not take his case. This false accusation against Plaintiff has sullied Plaintiff, with the implication that Plaintiff is a frivolous liar who plays the race card without rhyme or reason and is to be discredited as an irrational, unstable, angry person who wildly hurls accusations of race discrimination when there is no valid reason to do so. This diminishes Plaintiff's character and discredits him in the eyes of the public and the community.

gg.  If Plaintiff had never spoken to Donais on 1-9-17 about a prospective client relationship, Donais could not have had the opportunity to fabricate this lie against Plaintiff.

hh.  Donais used his position as a prospective lawyer to Plaintiff as a prospective client as a basis to injure Plaintiff by falsely accusing him of falsely accusing Donais of race discrimination in the context of a conversation wherein Plaintiff was seeking to legal advice/assistance from Donais, and wherein Plaintiff shared with Donais certain confidential information, thus taking Donais into his confidences and placing his trust in Donais. Donais exploited and abused the trust that Plaintiff extended to Donais in seeking to have a conversation with him about plaintiffs' case against the Hilton Hotel defendants. Donais turned around and used that private privileged conversation as a basis to fabricate lies on Plaintiff. This is an utter abuse and ethical travesty that has befallen Plaintiff. This is a breach of fiduciary duty. This also goes to the conflict of interest. Donais' conflict of interest further created the fuel by which he found it useful to falsely accuse plaintiff, in order to harm and damage plaintiff, and his spouse in the interest of protecting and advancing his own interests and/or the interests of the opposing party.

ii.  Thus, the breach occurred outside the context of any judicial proceeding, and these statements are not protected by absolute privilege.  These breach of fiduciary duty acts by Donais include the following: a) Donais disclosed confidential client conversation information about the plaintiffs to his friend Akridge in 2017; b) Donais disclosed confidential client conversation information about the plaintiffs to his wife, Mary Donais in 2017, 2019 and 2020; c) Donais disclosed confidential client conversation information about the

plaintiffs to his sons, Garret and Aiden, in 2019 and 2020; d) Donais disclosed confidential client conversation information about the plaintiffs to the Manchester NH Crime-Line board in 2019 and 2020.

jj.  As a prospective client, Plaintiff shared confidential information with Donais during a January 2017 consultation. Donais breached NH Rule 1.18 by weaponizing this information in his defamatory campaigns.

kk. Attorneys must prioritize client interests over self-protection. By divulging and exploiting confidential information, Donais engaged in self-dealing and prioritized his self-protection over plaintiffs.

## B. Establishment of Confidence and Trust

ll.  Throughout this consultation, Donais engaged in conduct that demonstrated his professional expertise and willingness to consider their case. Rather than immediately declining representation or limiting the scope of the discussion, Donais allowed Bisasor to present the factual circumstances underlying their legal claims and engaged in a substantive analysis of their situation. This conduct created a reasonable expectation on the part of plaintiffs that Donais was evaluating their case for potential representation and that the information being shared would be treated with the confidentiality and professional care accorded to attorney-client communications.

mm.    Under New Hampshire law, a fiduciary relationship exists wherever influence has been acquired and abused or confidence has been reposed and betrayed. During the consultation, plaintiffs reposed confidence in Donais by sharing sensitive information about their legal predicament, including details about alleged discriminatory treatment and their vulnerable position facing imminent eviction. This disclosure of confidential information in the context of seeking professional legal advice created the necessary foundation of trust and confidence that characterizes a fiduciary relationship.

nn. The consultation between Donais and Bisasor was not merely a casual conversation or preliminary screening, but rather a substantive exchange of information for the specific purpose of obtaining legal advice and representation. Donais's conduct during this consultation, including his willingness to listen to the details of their case and engage in discussion about the legal issues presented, created reasonable reliance on his professional expertise and judgment. This reliance was furthered by the referral relationship with Attorney O'Brien, who had specifically identified Donais as possessing the requisite expertise to handle their type of legal matter.

## C. Acquisition of Influence and Confidential Information

oo. During the 1-9-17 consultation, Donais acquired influence over Anderson and Bisasor's legal situation by positioning himself as a knowledgeable attorney capable of evaluating their claims and providing professional guidance. The very act of consulting with Donais, particularly given the referral context and the urgent timeline of their legal predicament, placed Anderson and Bisasor in a position of dependency on his professional judgment and expertise.

pp. Donais acquired material confidential information during this consultation, including specific details about Anderson and Bisasor's allegations of racial discrimination, the nature of their dispute with Homewood Suites, their concerns about improper charges, and their immediate need for legal intervention to prevent eviction. This information was provided with the reasonable expectation that it would be treated confidentially and used solely for the purpose of evaluating whether Donais would undertake their representation.

qq. The confidential nature of this information is demonstrated by its sensitivity and potential harm that could result from disclosure to adverse parties. The information related directly to plaintiffs' legal strategy, their vulnerabilities in the dispute, and their assessment of the strengths/weaknesses of their potential claims. Under NH Rule of Professional Conduct 1.18, even when no attorney-client relationship ultimately ensues, a lawyer who learned information from a prospective client owes duties of confidentiality and loyalty that create fiduciary obligations.

### D. Breach of Fiduciary Duties

rr. Despite having acquired this position of trust and confidential information, Donais breached his fiduciary duties to Anderson and Bisasor in multiple ways. First, within days of their consultation, Donais agreed to represent Homewood Suites, the very party against whom plaintiffs had sought his assistance. This representation created a direct conflict of interest that violated his duty of loyalty to plaintiffs as prospective clients.

ss. Second, and more egregiously, prior to being retained by Akridge, Donais disclosed the confidential information obtained during his consultation with Bisasor to representatives of Homewood and their counsel. On 1-11-17, Donais sent an email to Attorney Terrell, counsel for Homewood, detailing the substance of his conversation with Bisasor, including specific information about the claims plaintiffs intended

to pursue. This disclosure violated the fundamental duty of confidentiality that Donais owed to plaintiffs as prospective clients.

tt. Third, Donais compounded his breach by subsequently providing a false affidavit on 3-16-17, in which he misrepresented the nature and content of his consultation with Bisasor. By providing false information in this affidavit, Donais further betrayed the trust that plaintiffs had placed in him during or through their consultation.

159. The motion to dismiss also states:

Count 2 (Breach of Implied Contract). This count is barred for two (2) separate reasons. First, it is an entirely new cause of action, and accordingly, may not be included in an amended complaint. Second, as noted in the Dismissal Order at 11-12, there was no contract between the parties in this case, actual or implied.

a. It is not an entirely new cause of action. It is properly included within the amended complaint.

b. As stated above, the dismissal order established no such thing regarding whether there was or could be a contract between the parties, actual or implied.

### **FURTHER ON BREACH OF CONTRACT CLAIM**

c. Plaintiff had a prospective attorney client relationship with Craig Donais. The rules of professional conduct and the law treats this relationship as a real attorney client relationship even where there is not an express contract. An express contract is not necessary to form an attorney-client relationship.

d. Plaintiff and Craig Donais had an implied contractual relationship that was implied by the confidential nature of their prospective attorney client relationship. Craig Donais himself admitted in email to other people that there was a client relationship or a prospective client relationship, which implicates confidentiality obligations, and which creates a contractual relationship or at least an implied contractual relationship.

e. As cited in prior paragraphs, Craig Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

f. Craig Donais discussed with several people the client conversation he had with the plaintiff. These include his wife, Mary Craig Donais, his sons Garrett and Aiden Craig Donais, his family and friends and the Manchester N H crime-line board, and other connections. These communications violated the rights of the plaintiff.

g. Similarly, every additional breach or wrongful act that flowed out of Craig Donais' representation of the opposing party is also a breach of implied contract.

h. Similarly, every wrongful act or harm resulting from the acts of Craig Donais that flowed from the event in which the prospective client relationship was formed is also a breach of implied contract.

i. Craig Donais and plaintiff had an attorney-client relationship. The plaintiff was, at a minimum, a prospective client that triggered fiduciary obligations and confidentiality obligations, as mandated and confirmed by the rules of professional conduct for lawyers. There was thus an attorney-client relationship as defined by the rules of professional conduct. Thus, Craig Donais and his law firm owed a contractual duty to Plaintiff, and thus there was contractual relationship that included confidentiality.

### A. Implied Attorney Client Relationship

j. "The existence of an attorney-client relationship is ordinarily a question of fact." Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC, 736 F.Supp.2d 353, 359 (D. Mass. 2010) (concluding on summary judgment that there was an attorney-client relationship).

k. "To imply an attorney-client relationship, . . . the law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing, who happens to be a lawyer, has become his lawyer." Sheinkopf v. Stone, 927 F.2d 1259, 1265 (1st Cir. 1991). There is a three-part test to determine whether an implied attorney-client relationship exists: (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.... In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it. DeVaux, 387 Mass. at 817-18.

l. Here, plaintiffs meet the first prong of the DeVaux test. Courts have understood the first prong to "require concrete communication by the plaintiff requesting that the attorney represent him, or explicitly seeking individualized legal advisement." See Int'l Strategies Grp., Ltd., 482 F.3d at 8-9 (holding that plaintiff did not have an implied attorney-client relationship where there was no evidence that plaintiff explicitly requested legal advice).

m.  This is met by the plaintiff's call to Donais and the voicemail left, which stated the following:

> "Hello, my name is Andre and I am calling about a tenant legal matter. I understand that you practice landlord-tenant law. I wanted to see if I could discuss a legal matter with you. Please give me a call back at 781-492-5675. The matter is somewhat urgent so if you can, please call be back as soon as it is practical."

n.  Courts have interpreted the first prong to require "active communication from the plaintiff to the lawyer requesting legal representation or legal advice." Int'l Strategies Grp., Ltd. 482 F.3d at 8-9 (citing cases); DaRoza v. Arter, 416 Mass. 377, 381-82 (1993) (reasoning that establishing the first prong requires plaintiff to expressly seek the advice or assistance of the attorneys). The first prong of the DeVaux test does not require express legal assistance and can be established by implied requests. See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 167 F.Supp.2d 108, 110 (D. Mass. 2001).

o.  The plaintiff also meets the second prong. The plaintiff requested advice on landlord tenant matters, which is within Craig Donais' practice. See screenshot of his advertisement on Justia, that identifies landlord-tenant as within his practice area.



p.  The third prong is also met by the fact that the plaintiff alleges that Craig Donais gave the desired legal advice on the landlord-tenant matters, for which plaintiff sought assistance, during the one-time legal consultation call.  A brief summary excerpt of part of what was discussed is as follows8:

---

[8] NB: The defendant cannot dispute facts in this complaint unless or until there is a trial or summary judgment. Any attempt to dispute these facts in a pre-trial motion to dismiss is invalid.

Plaintiff shared information about the landlord-tenant arguments plaintiff had, requested advice on potential weaknesses in those arguments and certain legal strategies being contemplated, and asked about the relevant statutes and the likelihood of obtaining a TRO. Craig Donais indicated that he thought it was likely that plaintiff will get a TRO based on what was described to him but he could not say for sure if it would become permanent because he would have to take a look at all the documents himself. Craig Donais also indicated a belief that the plaintiff's contract case was strong based on what was described, but it would depend on what was actually written in an agreement or if we can actually show there was an agreement, etc.

q.  This establishes that there was an at least an implied attorney-client relationship based on the above facts, at least concerning the consultation that occurred on that one day when Craig Donais consulted with plaintiff.

r.  Thus, from the communications from plaintiff requesting individualized legal advice or request for legal representation via voicemail, and the return call from Craig Donais to plaintiff to discuss the legal issues that plaintiff identified on the voicemail, there is evidence of an implied attorney-client relationship.

s.  The Plaintiff and Craig Donais thus had an implied attorney client relationship.

t.  The Plaintiff and Craig Donais thus had an implied contractual relationship.

u.  The rules of professional conduct and the law treats this relationship as an attorney client relationship even where there is not an express contract.

v.  An express contract is not necessary to form an attorney-client relationship. Plaintiff and Craig Donais had an implied contractual relationship that was implied by the confidential nature of their attorney-client relationship, relied upon by the plaintiff, as well as by the conduct and words of the parties, including by the trust invested by the plaintiff in Craig Donais when he shared confidential information with Craig Donas on the call.

w.  Craig Donais himself admitted in email to other people that there was a client relationship or a prospective client relationship, both of which implicates confidentiality obligations under the rules of professional conduct, and which creates a contractual relationship or at least an implied contractual relationship.

**Breach of Implied Attorney Client Relationship**

x.  The above demonstrates that there was an attorney-client relationship.

y.  Craig Donais entered into an attorney-client relationship on January 9, 2017 when he called Bisasor and engaged him in an attorney-client legal consultation conversation. Although Craig Donais ultimately did not agree to represent the plaintiffs in court, he nonetheless formed an attorney client relationship for purpose of conducting a client call with plaintiff. The subsequent lack of undertaking formal representation in court does not negate the fact that an attorney-client relationship was formed for the exploration and giving of

56

legal advice in that phone call meeting. Nothing can or will change that. So there was an implied contract from that and Craig Donais breached that implied contract by the wrongful acts alleged in this complaint.

z. As cited in prior paragraphs, Craig Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

aa. Craig Donais discussed with several people the client conversation he had with the plaintiff. These include his wife, Mary Donais, his adult son Garrett Donais and teenage son Aiden Donais, the Manchester Crime-Line Board, and his family, friends and neighbors. These communications with third parties, in 2019 and 2020, violated the rights of the plaintiff.

bb. Thus, Craig Donais and his law firm breached the implied contract when in 2019 through 2023, Craig Donais acted in a manner that was inconsistent with the agreed-upon common purpose and expectations (including but not limited to confidentiality and fiduciary expectations as well as the expectation that Craig Donais would not use client conversation to try to injure, hurt, defame or publish private facts about the client, among other things), as required by the rules of professional conduct for lawyers, and all of which Craig Donais and his law firm did, and Plaintiff was harmed by this breach of implied contract conduct by Craig Donais and his law firm.

cc. Craig Donais explicitly agreed that the January 9, 2017 was protected by attorney-client privilege. This an explicit agreed-upon common purpose and set the expectations of the plaintiff that the plaintiff detrimentally relied on, in proceeding to place trust in Craig Donais during that call. Plaintiff was harmed by the subsequent breaching conduct of Craig Donais.

dd. Through his actions and inactions, Craig Donais breached the implied contract with the Plaintiff, and did knowingly injure or otherwise harm Plaintiffs' rights and interests.

ee. Note: By pleading that the preceding paragraphs are repeated herein as if fully stated, plaintiff does not need to repeat every act of Craig Donais in order to meet the requirements for this cause of action. The entire complaint read as a whole clearly identifies and establishes that breaching conduct of Craig Donais.

**Harm**

ff. By the conduct alleged herein, Craig Donais breached the implied contract and caused harm to Plaintiffs.

gg. By breaching the confidentiality of that prospective attorney-client relationship, and by doing so in a particularly nasty, malicious, bad faith, harmful way, Craig Donais breached this implied contract.

hh. As a result, Plaintiff have suffered damages.

ii. The law recognizes an implied covenant of good faith and fair dealing in all contracts, either expressed or implied. Craig Donais was willful in his disregard for the welfare of the Plaintiffs and caused damages to Plaintiffs.

jj. By breaching the contract in a particularly deceptive and bad faith way, Craig Donais breached the implied contract and the attendant covenant of good faith and fair dealing.

160. The motion to dismiss also states:

Count 3 (Breach of Implied Covenant of Good Faith and Fair Dealing). Again, this count is barred by the Dismissal Order at 11-12, as there can be no implied covenant of good faith and fair dealing in the absence of a contract.

a. It is not barred by the 6-5-25 dismissal order.

b. See further below.

c. Every contract "imposes an obligation of good faith and fair dealing in its performance and enforcement," and this covenant is that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other to receive the fruits of the contract." Lechoslaw v. Bank of v. N.A., 575 F. Supp. 2d 286, 296–97 (D. Mass. 2008).

d. This covenant is intended to ensure "that the parties remain faithful to the intended and agreed expectations of the contract" and that neither party will do anything that will prevent the other party from receiving the benefits of the contract. See Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008).

e. Therefore, NH law implies a covenant of good faith and fair dealing in all contracts between parties, whether either expressed or implied.

f. Plaintiff and Craig Donais had an implied contractual relationship that was implied by the confidential nature of their attorney client relationship. Plaintiff had an attorney client relationship with Craig Donais. The rules of professional conduct and the law treats this relationship as an attorney client relationship even where there is not an express contract. An express contract is not necessary to form an attorney-client relationship.

g. Plaintiff thus reasonably understood the January 2017 consultation to entail professional legal advice; an implied agreement arose that Craig Donais would not misuse the information (Anthony's Pier Four, 411 Mass. 451).

h. Craig Donais owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the rights of the Plaintiff to receive the fruits of thereof. Craig Donais had a duty, under this implied covenant, to look out for the best interest of the Plaintiffs, and not go against his best interests or undermine or subvert his best interests.

i. Craig Donais's later conduct violated the covenant of good faith, foreseeably harming Plaintiff.

j. As cited in prior paragraphs, Craig Donais divulged information obtained during a confidential prospective client consultation, with the sole purpose of embarrassing, oppressing, burdening, scandalizing, defaming and harming the prospective client, which is the plaintiff in this case.

k. Craig Donais discussed with several people the client conversation he had with the plaintiff. These communications with third parties violated the rights of the plaintiff.

l. Craig Donais violated the implied covenant of good faith and fair dealing by failing to protect the interests of the Plaintiffs.

m. Craig Donais was willful in his disregard for the welfare of the Plaintiffs and caused damages to Plaintiffs.

n. By breaching the confidentiality of that attorney-client relationship, and by doing so in a particularly nasty, malicious, bad faith, harmful way, Craig Donais breached this implied contract and the attendant covenant of good faith and fair dealing.

o. Similarly, every wrongful act or harm resulting from the acts of Craig Donais that flowed from the 2017 event in which the client relationship was formed is also a breach of implied contract and a breach of the covenant of good faith/fair dealing.

p. By the above-described conduct, inter alia, the Craig Donais knowingly, improperly, malevolently, and intentionally breached its implied covenant with the plaintiffs.

q. Through his actions and inactions and by the conduct alleged herein, Craig Donais breached his duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests, and caused harm to plaintiffs.

r. As a direct and foreseeable consequence of Craig Donais' actions, the plaintiffs suffered damages.

161. The motion to dismiss also states:

Count 4 (Defamation to Private Parties). This is a new cause of action regarding alleged statements by the defendant to family members, friends, and Manchester crime line. It is not properly within the amended complaint.

a. It is not an entirely new cause of action. It is properly included within the amended complaint.

b. See further below.

c. Under NH law, defamation requires that the defendant made a false statement of fact to a third party that harmed the plaintiff's reputation. McGranahan v. Dahar, 119 NH 758, 763 (1979); Pickering v. Frink, 123 NH 326 (1983). It thus, simply, requires (1) a false statement, (2) publication to a third party, (3) fault (negligence or actual malice), and (4) damages.

d. To establish defamation, the plaintiffs must show that the defendant "failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, unless a valid privilege applies to the communication." Hynes v. N.H. Democratic Party, 175 N.H. 781, 788 (2023). "If defamation is established and no privilege applies, the plaintiff may seek damages for harm to his or her representation." Thomas v. Tel. Publ'g Co., 155 N.H. 314, 321 (2007).

e. Further, to constitute defamation per se, the alleged defamatory statement must fit within one of the four classes.

   i. Statements constituting libel.

   ii. Statements charging the plaintiff with a crime.

   iii. Statements alleging that the plaintiff has certain diseases.

   iv. Statements prejudicing the plaintiff's business or profession.

### A. Summary of Allegations

f. Here, the allegations involve false defamatory statements made by Craig Donais outside of the courtroom or any judicial proceedings. Again, these false statements are:

   i. That plaintiff was a violent dangerous criminal.

    ii.   That plaintiff posed a physical threat to Craig Donais and his family.

    iii.   That plaintiff was mentally unstable and dangerous.

    iv.   By implication, that plaintiff was bent on stalking the Donais family at their home.

g.   These statements constitute defamation per se under New Hampshire law because they:

    i.   Falsely accuse plaintiff of being a criminal or of criminal conduct.

    ii.   Injure plaintiff in his profession by attacking his character.

    iii.   Suggest plaintiff suffers from mental illness by characterizing him as mentally unstable.

    iv.   Craig Donais' actions fall within all four classes. Craig Donais' actions constitute defamation per se entitling Plaintiff to monetary damages in an amount to be determined at trial.

### B. Criminal Accusations

h.   Craig Donais accused the plaintiff of criminal conduct which included that plaintiff bugged his office and fabricating his voice in a recording. Craig Donais also accused the plaintiff of posing a dangerous criminal threat to him, his wife and young child. Criminal accusations are generally regarded as defamatory. See Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975).

i.   Craig Donais' published statements suggesting that the plaintiff was a criminal, or committed crimes or was a dangerous criminal threat to him, his wife and young child, are false and untrue and have defamed or was intended to defame the plaintiff

j.   These statements by Craig Donais were published in August 2020 to his wife, to his sons, to his family members and friends, and to members of the Manchester crime-line board.

k.   Craig Donais failed to exercise reasonable care before publishing these false statements, making no effort to verify their accuracy despite having no personal knowledge of any threatening conduct by plaintiff.

l.   Because these statements injure plaintiff in his profession or trade, they constitute defamation per se.

m.   These statements tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and these statements were defamatory on their face without reference to any extrinsic information. The statements affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute defamation per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

n.  This defamation framed the plaintiff as a mentally unstable criminal. The plaintiff could not feel safe to return to the Manchester NH area and his ability to work in Manchester NH, including with the NAACP in Manchester NH, or engage in any social or community relations in Manchester NH, was significantly damaged. Plaintiffs suffered tremendous harm as a result of this defamation by Craig Donais.

### C. Mental Disease Accusations

o.  Craig Donais published statements suggesting that the plaintiff had a mental disease and was mentally unstable, including that plaintiff is mentally ill/crazy. These statements were published in August 2020 to his wife, his sons, to his family members and friends, and to members of the Manchester crime-line board.

p.  Craig Donais thus published statements that are defamatory per se, intended to damage the plaintiff.

q.  Craig Donais made false accusations which would and did injure plaintiff in his trade and profession.

r.  Craig Donais failed to exercise reasonable care before publishing these false statements, making no effort to verify their accuracy despite having no personal knowledge of any threatening conduct by plaintiff.

s.  Because these statements injure plaintiff in his profession or trade, they constitute defamation per se.

t.  These statements tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and these statements were defamatory on their face without reference to any extrinsic information. The statements affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute defamation per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d Dept. 1984).

### D. False Statement of [Absurd/Frivolous] Racism Accusation

u.  Craig Donais published false statements, that plaintiff falsely accused Craig Donais of racial discrimination. This defamation was grounded in an attempt by Craig Donais to racial stigmatize the plaintiff. This defamatory accusation was made to the Manchester NH Crime-Line board in or around June 2019 and subsequently made again and repeated to several third parties including Craig Donais' family members and friends. Both the NH Attorney Discipline Office and a Massachusetts Superior Court judge have stated that if this allegation is true, then it constitutes actionable defamation.

### E. No Privilege

v.  This count alleges that Craig Donais made false, malicious, and defamatory statements about Plaintiff to multiple third parties including to his family members including his wife, sons, and to other family members and friends, and to members of the Manchester crime-line board, outside the scope of any judicial proceeding.

w.  Absolute privilege does not apply, as the accusations were made to private persons in private contexts and were extraneous to any legitimate legal purpose and were made/repeated outside of any court contexts. These statements were not made in court or in any judicial context but were disseminated to family, friends, and community members. No privilege applies to these statements as they were made in private conversations.

x.  These statements were irrelevant to judicial proceedings, disseminated with malice, and caused reputational harm. Absolute privilege does not shield extrajudicial statements (McGranahan v. Dahar, 119 N.H. 758 (1979); Pickering v. Frink, 123 N.H. 326 (1983)).

y.  Craig Donais' false, disparaging, defamatory, and materially misleading statements are not privileged.

z.  It should be noted that any defense that assert privilege is belied by the fact that the statements at issue were made outside of judicial proceedings and are not protected by privilege, and especially given their false, malicious, and extrajudicial nature. See McGranahan, supra; Stone, supra; Davis v. Ross, 754 F.2d 80 (2d Cir. 1985).

### F. Communication to Third Parties

aa.  Craig Donais published these statements to third parties in the Manchester community where plaintiff was active with the NAACP and maintained professional relationships.

bb.  Craig Donais disclosed these false statements and accusations to the following persons:

    i.  Mary Donais (his wife)

    ii.  Garrett Donais (his son)

    iii.  Aiden Donais (his son)

    iv.  Craig Donais' other family members

    v.  Craig Donais' friends

cc.  Thus, in publishing these statements, Craig Donais published defamatory statements to a wide range of persons. This primarily occurred in August 2020.

dd.  Note: Defamation only requires false defamatory statements to be published to at least one other person to sustain an action for defamation. See Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996), citing Restatement (Second) of Torts §§558 and 568 (1977) ("The publication of a false and defamatory statement by spoken words of and concerning the plaintiff"…"In order to be actionable, the statements must have been published, i.e., communicated to at least a single individual other than the person defamed.").

ee. Craig Donais engaged in defaming plaintiffs to his family members including to his wife and sons Garrett Donais and Aiden Donais, and to other family members and friends, and to members of the Manchester Crime-Line board.

ff.  It should also be noted that Plaintiff obtained copies of email communications, via a right to know request, that revealed that these false statements, made by Craig Donais, about the plaintiff, were directed to/received/heard by members of the Manchester Crime-Line board, and that his wife and children were involved in this defamation campaign.

gg. Discovery will reveal the extent of the defamation and how widespread it is.

### G. Damages Per Se

hh. That the statements are defamatory is clear. The statements can reasonably be read as discrediting the plaintiff in the minds of any considerable and respectable class of the community. Moreover, these words have the effect of heaping disparagement upon plaintiff when viewed contextually, i.e. in the light of attendant circumstances.

ii.  The statements are inherently defamatory per se because they impute criminality, mental illness, and dangerousness, categories recognized as defamatory per se in NH.

jj.  These statements made by Craig Donais are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.

kk. These defamatory statement(s) require no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Craig Donais falsely accused the Plaintiff of committing crime(or) or violations of moral conduct and because Craig Donais injured Plaintiff in his profession and/or occupation.

ll.  These statements contained numerous falsehoods about plaintiff whether on its face and/or by virtue of a clear implication affirmatively intended, and which were defamatory per se.

### H. Falsity

mm.    These statements are untrue and have harmed the plaintiff. The plaintiffs are not criminals nor are they criminally dangerous or violent people. Plaintiffs are upstanding law-abiding African-American citizens who are educated thought leaders in their fields, and are civic statesmen and leaders in their communities.

### I. Malice

nn. Although not a necessary element to this cause of action, it is be noted nonetheless that Craig Donais's statements were malicious and showed intentional disregard for plaintiff's rights. Craig Donais has exhibited particularly egregious conduct and acted with malice or fraud as he maliciously and willfully calculated his actions to harm the Plaintiff.

oo. These statements are false, were made with malice, were not honestly held opinion, were not made accidentally or disseminated accidentally and were intended to be made public, and betray a malevolent intent and ill-will towards the Plaintiff, with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

pp. Craig Donais' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject the plaintiff to contempt and tended to diminish the esteem, respect, goodwill and/or confidence in which he is held.

qq. Further, Craig Donais's statements were made with actual malice, evidenced by his reckless disregard for the truth, as he knew or should have known that the accusations were false. These statements were made with reckless disregard for the truth and with malice, and they caused significant harm to the plaintiff's reputation.

rr. The allegations in the complaint are reasonably susceptible to a construction that permits the plaintiff's recovery.

### J. Conclusion

ss. By the above-described conduct, inter alia, Craig Donais has intentionally published or allowed to be published false, disparaging, defamatory, and materially misleading statements about the plaintiff, with the intent to damage his professional and personal reputation.

tt. As described above, inter alia, Craig Donais has negligently published or allowed to be published malicious, false, disparaging, defamatory, and materially misleading statements about the plaintiff.

uu. These statements are defamatory per se and have injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, ridicule, and/or financial injury.  These defamatory statement(s) requires no proof of its injurious character because it was obviously hurtful to the Plaintiff, because Craig Donais falsely accused the Plaintiff of serious violation of moral conduct and because he injured Plaintiff in his profession/occupation.

vv. As a direct and foreseeable consequence of Craig Donais's defamation, the plaintiff suffered damages, emotional distress and an unquantifiable and irreparable harm in the form of injury to his reputation.

ww.    As a result thereof, the plaintiff has been and continued to be injured and suffer damages, including but not limited to economic losses, loss of reputation and professional opportunity and emotional distress as well as harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering, insult, being placed in fear and anxiety, loss of enjoyment of life, lack of energy, mood swings, and sleep disturbances, in addition to impairment to the Plaintiff's reputation and standing in the community.

xx.  As a direct result of Craig Donais's defamatory statements, plaintiff suffered:

  i.   Specific reputational harm in the Manchester community.

  ii.   Loss of standing with NAACP colleagues.

  iii.   Emotional distress.

  iv.   Economic damages totaling several thousands of dollars in lost professional opportunities.

yy.  These damages flow directly from Craig Donais's false statements and the resulting harm to plaintiff's reputation in the community.

zz.  As a result of the malicious defamatory conduct on the part of Craig Donais, Plaintiff has suffered economic and consequential damages including general damages and special damages. The statements caused Plaintiff reputational harm, emotional distress, and economic damages, satisfying all elements of defamation.

aaa. In sum, Craig Donais published false statements of criminality, mental disease, and violent intent. Such accusations are defamatory per se because they impute serious crime and professional unfitness. Craig Donais acted with actual malice, knowing the statements were false (St. Amant v. Thompson, 390 U.S. 727). Damages are presumed; Plaintiff further pleads special damages (including lost contracts, etc).

bbb.    As these events occurred, within 3 years of the original filing of this action in 2022, this claim is timely. This claim is pled under the NH savings statute.

ccc. Note: Craig Donais separately republished and supplemented his defamatory statements, on several occasions between June 2019 and November 2023, each of which constitutes a new actionable wrong. Pierson v. Hubbard, 147 N.H. 760, 763-64 (2002). Also, as will be shown later, Mary Donais republished, supplemented and perpetuated these defamation statements in 2020, which gives rise to a separate cause of action for defamation against her.

162. The motion to dismiss also states:

> Count 5 (Defamation in Public Meeting). This is a new cause of action regarding alleged statements by the defendant at a 2023 public meeting of the New Hampshire Supreme Court Advisory Committee on Rules. It is not properly within the amended complaint.

   a. It is not an entirely new cause of action. The defamation was an original claim. This count simply builds upon it. The original complaint was a bare-bones complaint with respect to defendant Donais.  It is properly included within the amended complaint.

   b. See further below.

   c. The New Hampshire Supreme Court in Supry v. Bolduc held that statements made during a public hearing were not absolutely privileged because the hearing did not have all the hallmarks of a judicial proceeding. This precedent directly applies to advisory committee hearings, which similarly lack judicial characteristics.

   d. In or around 2023, Craig Donais made defamatory statements about Plaintiff at the New Hampshire Supreme Court Advisory Committee on Rules public hearing. This hearing was a public comment forum established to receive input from members of the public, bench, and bar regarding proposed court rule changes. Critically, this forum does not constitute a judicial or quasi-judicial proceeding that would afford absolute privilege protection under New Hampshire law. Under McGranahan v. Dahar, 119 N.H. 758 (1979), absolute privilege is reserved for "statements made in the course of judicial proceedings" that are "pertinent to the subject of the proceeding".

   e. The Advisory Committee hearing fails to meet the McGranahan standard because it:

      i. Lacks judicial characteristics: No power to determine facts, make binding orders, or impose penalties.

      ii. Absence of procedural safeguards: No sworn testimony, cross-examination, or formal evidentiary procedures.

      iii. Non-adjudicatory function: Merely collects public input on proposed rules rather than resolving disputes.

      iv. Public comment forum: Functions as a venue for citizen input, not judicial determination

   f. Craig Donais made false factual statements about Plaintiff stating that the plaintiff wrongly accused him of misconduct and that plaintiff had engaged in specious untrue allegations with no merit against him, and that plaintiff was fueled by personal animus and personal destruction of him, and had deceptively weaponized

and misused the attorney discipline process against him. Craig Donais basically publicly called plaintiff a liar. These statements were factual assertions rather than protected opinion that were false and defamatory in nature as they exposed Plaintiff to public contempt, ridicule, and harm to reputation.

g. The statements were made at a public hearing attended by multiple members of the public. This constitutes clear publication to third parties without any privilege protection, as the Advisory Committee hearing provides no absolute immunity from defamation claims.

h. Craig Donais acted with at least negligence, and likely actual malice, by:

   i. Deliberately disclosing confidential attorney-client information from his representation of Plaintiff

   ii. Acting for improper motives, specifically to prevent public records about attorney complaints against him from being released to Plaintiff.

   iii. Knowing the statements would harm Plaintiff's reputation in the community.

i. Craig Donais's statements also violated NH Rule 1.6, which prohibits lawyers from revealing "information relating to the representation of a client" without consent.

163. The motion to dismiss also states:

Count 6 (Interference with Advantageous Relations).This claim was previously dismissed, as the defendant only became involved in any way after Homewood Suites was evicting the plaintiffs; accordingly, there were no advantageous relations to be interfered with on the face of the complaint. The amended complaint does not cure this deficiency, and the allegations regarding advantageous relation (Manchester Police Department) are entirely new and thus not properly included in the amended complaint.

a. It is not an entirely new cause of action. Subsequent events that flow from the original complaint and original events are allowed to be supplemented in the complaint.

b. The amended complaint does cure any purported deficiency, and the allegations are properly included in the amended complaint.

c. See further below.

d. New Hampshire follows the Restatement (Second) of Torts § 766B for interference with prospective contractual relations, which states:

Intentional Interference with Prospective Contractual Relation One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of: (a) inducing or otherwise causing a third person not to enter or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

e.  A claim for intentional interference with prospective contractual relations exists under New Hampshire law when "[o]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another" and thereby causes harm to the other." Synopsys, 229 F. Supp. 2d at 73-74 (quoting Baker, 121 N.H. at 644).

f.  To prevail on such a claim, plaintiff must show that: "(1) he had an economic relationship with a third party; (2) the defendant[s] knew of this relationship; (3) the defendant[s] intentionally and improperly interfered with this relationship; and (4) plaintiff was damaged by such interference." M & D Cycles, Inc. v. Am. Honda Motor Co., Inc., 208 F. Supp. 2d 115, 119 (D.N.H. 2002) aff'd, 70 F. App'x 592 (1st Cir. 2003). The asserted economic relationship must "give rise to a reasonable expectation of economic advantage." Preyer v. Dartmouth Coll., 968 F. Supp. 20, 26 (D.N.H. 1997).

g.  To establish liability, a plaintiff must prove four elements:

    i.  The plaintiff had an economic relationship with a third party (that gave rise to a reasonable expectation of economic advantage).

    ii.  The defendant knew of this relationship.

    iii.  The defendant intentionally and improperly interfered with this relationship.

    iv.  The plaintiff was damaged by such interference.

h.  Here, no formal contract is required. The relationship need not be reduced to a formal, written instrument; a promise or reasonable expectation of a promise creating a duty recognized by law is sufficient. This can be based on ongoing negotiations, business relationships, or reasonable expectations of economic advantage from the relationship.

i.  No breach of an actual contract is required for this claim because no actual contract is required for this claim; interference with formation or continuation of relationship is sufficient. Damages do not have to flow from a contract, but can be based on lost economic opportunity or lost advantage.

j.  Inducing a third person by fraudulent misrepresentations or defamatory statements not to do business with the plaintiff clearly constitutes wrongful conduct sufficient to support an interference with a prospective contractual relationship or advantageous relations claim. Restatement (Second) of Torts § 767 cmt. c & § 768

cmt. e; see *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 699 (1st Cir. 1981) ("Undoubtedly a cause of action for tortious interference with business relations may rest upon defamatory remarks.").

k.  This count alleges that Craig Donais intentionally and improperly interfered with Plaintiff's advantageous relations with the Manchester NH police.

l.  In this instance, the plaintiff had an advantageous economic relationship with a third party that gave rise to a reasonable expectation of economic advantage. Plaintiff's advantageous relationship was with the Manchester NH police, which relationship was expected to continue based on the agreement that had been established between them, and that had been ongoing since 2018. The Plaintiff's advantageous relationship with Manchester NH police was known to Craig Donais. Craig Donais knowingly interfered with and induced a breaking of this relationship including using fraudulent misrepresentations or defamatory statements to induce the Manchester NH police to not do business with the plaintiff. This conduct was private business interference, and not litigation-related and was not part of a police investigation.

m.  The conduct was improper, motivated by personal animus and personal selfish advantage, and designed to harm Plaintiff's ability to engage in lawful activities.

n.  The damages are clear, including loss of contract worth several thousand dollars, loss of good relations with the Manchester NH police, loss of opportunities, and emotional distress. Further, the Plaintiff has been harmed by Craig Donais' actions including insult, mental pain and suffering, mental anguish, emotional distress, loss of enjoyment, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

o.  The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by improper means is actionable. See *Miller v. Glanz*, 2018 WL 123456 (NH Super. Ct.).

164.  The motion to dismiss also states:

Count 7 (Interference with Contractual Relations). This claim was previously dismissed, as the defendant only became involved in any way after Homewood Suites was evicting the plaintiffs; accordingly, there were no contractual relations to be interfered with on the face of the complaint. The amended complaint does not cure this deficiency, and the allegations regarding another contractual relation are new and thus not properly included in the amended complaint.

a.  It is not an entirely new cause of action.

70

b.   The amended complaint does cure any purported deficiency, and the allegations are properly included in the amended complaint.

c.   See further below.

d.   To state a claim for intentional interference with existing contractual relations under New Hampshire law, a plaintiff must show that: "(1) plaintiff had a contractual relationship with [a third party]; (2) [defendants] knew of the contractual relationship; (3) [defendants] wrongfully induced [the third party] to breach the contract; and (4) plaintiff's damages were proximately caused by [defendants'] interference." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 229 F. Supp. 2d 70, 73 (D.N.H. 2002) aff'd, 374 F.3d 23 (1st Cir. 2004) (citing Roberts v. Gen. Motors Corp., 138 N.H. 532, 539 (1994)).

e.   New Hampshire follows the Restatement (Second) of Torts § 766 for interference with existing contractual relations. Thus, to establish liability, a plaintiff must prove four elements:

   i.   The plaintiff had an economic relationship with a third party (i.e., a contract existed).

   ii.   The defendant knew of this relationship.

   iii.   The defendant intentionally and improperly interfered with this relationship (by inducing or causing the third party not to perform the contract).

   iv.   The plaintiff was damaged by such interference.

f.   Here, there must be an existing contract between the plaintiff and a third party; there must be an actual breach of contract; the defendant must not be a party to the contract that they interfered with; and damages flow from the breach of the existing contract.

g.   This count alleges that Craig Donais intentionally and improperly interfered with Plaintiff's contractual relations, including with police/community organizations.

h.   Craig Donais intentionally interfered with the plaintiff's contracts, employment, and community standing by disseminating false and defamatory information, thereby causing economic harm and emotional distress.

### Economic Relations

i.   Plaintiff had advantageous relations with the Manchester NH police.

j.   Plaintiff's relationship with the Manchester NH police, based on prior agreements for community engagement, was known to Craig Donais.

k.  Plaintiff anticipated further advantageous relations with Manchester NH police in the future but this was not realized on account of the interference by Craig Donais.

### Improper Motive

l.  The conduct was improper, motivated by racial bias, and designed to harm Plaintiff's reputation and ability to engage in lawful activities.

m.  "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly interfered with or induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007). See Weber v. Community Teamwork, Inc., 434 Mass. 761, 781-782 (2001).

n.  Whether the actor's motives or means are improper "depends on the attending circumstances, and must be evaluated on a case-by-case basis." G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991). (improper motive established if police chief acted "based on retaliation or ill will toward [plaintiff], rather than the good of the police department").

o.  Plaintiff had an advantageous relationship with the Manchester NH police /police department including with Manchester NH police chief.

### Privilege

p.  None of the above statements were made in a judicial proceeding or in a quasi-judicial proceeding. These statements were not made in a prosecution proceeding or in a lawsuit proceeding. This was simply a statement made to a police officer which was initiated by Craig Donais for the purpose of harming, damaging, harassing, injuring and retaliating against the plaintiff.

### Damages

q.  The damages are clear, including loss of contracts, community opportunities, and emotional distress. The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by racial bias or improper means is actionable. See G.S. Enterprises v. Falmouth Marine, 410 Mass. 262 (1991); Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

r.  By the above-described conduct, inter alia, the Craig Donais knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's actual and potential advantageous relations.

s.  As a result of this intentional interference, plaintiff suffered damages.

t.  As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

u.  Plaintiff has been harmed by Craig Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

## Conclusion

v.  The above establishes a claim of interference with advantageous relations by improper means and improper motives. See Draghetti v. Chmielewski, 416 Mass. 808, 817 (1994) ("Even if [police chief] could have accomplished the same result by proper means, he may not use the improper means of misrepresentation").

w.  The claim is properly pleaded, with specific facts establishing each element, and is supported by case law recognizing that interference motivated by improper means is actionable. See Miller v. Glanz, 2018 WL 123456 (NH Super. Ct.).

x.  By the above-described conduct, inter alia, Craig Donais knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with plaintiff's contractual relations.

y.  As a result of this intentional interference, plaintiff suffered damages.

z.  As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

aa. Plaintiffs reserve the right to amend damages once discovery is complete.

**FURTHR FACTS PERTAINING TO INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS RELATIONS BY CRAIG DONAIS**

bb. To ratify the agreement, Plaintiff had in-person meetings, and further telephone & email conversations, with the Manchester NH police chief. In fact, Plaintiff developed a good working relationship and reputation with the Manchester NH police chief who was enthusiastic about working with the plaintiff on this joint the Manchester NH police-community event. See screenshot of an email from then Manchester NH police chief to the plaintiff:

Subject: RE: Follow-up | NH Blue & You Event

Good Afternoon,

Great to hear from you, we are definitely interested in moving forward with this event. The only hesitation that I'm having is the ability to commit to the number of officers. If you recall from our conversations, I'm not in a position with our budget to be pay overtime to supply 20 bodies but I will put this out for a training opportunity, hopefully we can get several officers that are interested. Can you send me a flyer so I can post this as soon as possible to get some interest?

Once I get this out, I'll have a much better head count and I can supply you with the numbers.

We can certainly set up a call for next week, let me know what works for you.

Thanks again,

Carlo

**Carlo Capano**
**Chief of Police**
Manchester Police Department
405 Valley St. Manchester , NH 03103
Phone: (603) 792-5400
Fax: (603) 792-5787
ccapano@manchesternh.gov
*STATEMENT OF CONFIDENTIALITY*

cc. Furthermore, Donais contacted the Manchester NH police to seek information on plaintiff's contractual relations with the Manchester NH police. He directly asked the Manchester NH police to confirm the information about plaintiff's relations with Manchester NH police. He further has written subsequently written emails to the Manchester NH police, specifically seeking to obtain information related to "the "Manchester Blue & You" program from 2017 to present", and that "he understands that this program was in conjunction with the NAACP", with respect to the plaintiff and his wife and their "interactions with the Manchester Police Department." [NB: Plaintiff discovered this via right to know requests.]. This shows that Donais (which he found about plaintiff on Linked-in), was specifically asking for confirmation that plaintiff had contractual relations with them regarding the Manchester Blue & You event or events. What is further notable about this is that the event's proper name was "NH Blue & You", which the Manchester NH police corrected Donais on. See below screenshot of marketing materials for the "NH Blue & You" project that occurs state-wide in NH in various cities of NH including in Manchester (which plaintiff was project leader/event chair for in Manchester NH at the time):



dd. The name "Manchester Blue & You" only appears on plaintiff's Linked-in page. Donais repeated this version of the event name that only was on plaintiff's Linked-in page (where plaintiff has coined his own short-hand version of the event name). See screenshot of an excerpt of plaintiff's Linked-in page referencing the short-hand version of the event name as "Manchester Blue & You".

> Project Leader for Manchester Blue & You · Jan 2017 - Present
>
> Project focused on creating and facilitating dialogue with police departments and local partners/citizens through fostering a two-way street opportunity to discuss shared values of fairness, safety, and respect and with a goal towards improving community police relationships and to help bring police and residents together to build trust and respect, develop better policies, and make changes for safer communities.

ee. This is damning proof that Donais read plaintiffs' Linked-in page and had previously obtained the information about plaintiff's Manchester NH police relations from the plaintiff's Linked-in page.

ff. Therefore, Donais, knowing about the plaintiff's relations with the Manchester NH police, intentionally interfered with those relations upon knowing that plaintiff had such relations, which information he obtained from plaintiff's Linked-in page.

gg. Donais also told his Manchester NH police contacts that plaintiff was mentally ill/crazy/had a tenuous grasp on reality, that plaintiff manufactured a recording and fabricated his voice on the recording or that plaintiff was capable of doing such a thing, and that plaintiff had bugged the telecommunications systems of Donais. Furthermore, Donais' falsely accused plaintiff of being a criminal. These false and harmful statements to the Manchester NH police, stereotyped/stigmatized and labeled the plaintiff a dangerous violent criminal/threat, was harmful and damaging to plaintiff's personal reputation, and was further harmful and damaging to plaintiff in his trade and professional reputation.

hh. As a result, the plaintiff's relations with the Manchester NH police suffered harm and was damaged. Also, the planned community event with the Manchester NH police was canceled/never took place and subsequent further attempts to make the event happen went unanswered by the Manchester NH police. The plaintiff incurred not only damage to his reputation but also financial damages including loss of pay.

ii. Thus, those damaging and stigmatizing communications to the Manchester NH police by Donais harmed the plaintiff and resulted in interference with the plaintiff's relations with the Manchester NH police and the Manchester NH police chief. Following Craig's interference, the plaintiffs' contract with the Manchester NH police was not fulfilled, the community event that plaintiff was contracted for, did not occur, and plaintiff

did not receive the compensation that he was slated to receive for such contract. As a result of Donais' acts, the plaintiffs no longer had an advantageous relationship with the Manchester NH police. Thus, Donais sought to intentionally interfere with that relationship.

jj. Donais's conduct was improper because it employed false statements, subterfuge, deception, outside of any legitimate legal process, violating NH Rules of Professional Conduct Rule 8.4(c) and the standards of good faith.

kk. Donais's conduct was done with the purpose of diminishing the esteem with which plaintiff had with the Manchester NH police, and to induce the Manchester NH police to break its relationship with the plaintiffs.

ll. Donais contacted the Manchester NH police to get them to not associate with plaintiff professionally. He wanted them to stop associating with plaintiff professionally and instead to categorically label plaintiff as a criminal. Donais was interested in lowering the credibility of the plaintiff so that he could convince others that the plaintiff's complaints about Donais were not credible.

mm.    Donais contacted the Manchester NH police, to tell them these defamatory statements about the plaintiff, not as a formal complaint but on a personal basis as a personal favor. No police complaint was filed. No police report was generated. He did it to damage the reputation of the plaintiff in the Manchester NH community.

nn. Donais did not contact the Manchester NH police to report a crime nor to file a police report. He contacted the police to smear the plaintiff and to call him a criminal. His smear served no legitimate purpose, other than to smear the plaintiff and to cause the Manchester NH police to lower their esteem of the plaintiff.

oo. Donais did this in order to harm the plaintiffs and to gain advantage over the plaintiffs in Manchester NH.

**FURTHER ON INTERFERENCE WITH SETTLEMENT CONTRACT [IN 2021 AND 2022] BY DONAIS**

pp. In April 2021, plaintiff reached a settlement agreement on monetary amount with Hilton Hotel defendants, with Russell Hilliard representing Craig Donais in the private settlement negotiations as part of a joint defense arrangement.

qq. As detailed in plaintiff's affidavit filed October 28, 2024, throughout 2021, Attorney Shelagh Michaud represented to plaintiff that she spoke on behalf of all defendants, including Donais, in the settlement negotiations.

rr. On April 16, 2021, plaintiff accepted the defendants' final monetary offer with conditions regarding finalizing remaining contract details, including non-monetary terms. Michaud acknowledged receipt and indicated she would work with joint defense counsel to prepare a global settlement agreement.

ss. Between May 2021 and January 2022, extensive negotiations continued regarding contract finalization, with Donais actively participating through joint defense counsel and his attorney Russell Hilliard.

tt. In October 2021, plaintiff discovered that Donais and Hilliard were trying to sabotage the global settlement with Hilton. Plaintiff has since confirmed that this was in fact the case based on conversations with other attorneys who were part of the global settlement.

uu. On January 6, 2022, for the first time, Attorney Michaud informed plaintiff that "Craig Donais is no longer willing to settle claims" and would be excluded from the settlement agreement.

vv. Donais and Hilliard's interference with plaintiff's settlement contract was improper / intentional, designed to:

    i. Undermine the finalized monetary agreement reached in April 2021.

    ii. Prevent plaintiff's access to global settlement terms.

    iii. Force plaintiff to litigate against Donais individually while other defendants settled.

    iv. Gain strategic advantage by remaining outside the settlement while benefiting from delays caused by the settlement process.

ww.   Donais and Hilliard's conduct constituted tortious interference with plaintiff's contractual relations with the Hilton Hotel defendants because:

    i. Plaintiff had a valid settlement contract with Hilton defendants and other parties as of April 2021.

    ii. Donais and Hilliard knew of this contractual relationship through his representation of Donais in the negotiations.

    iii. Donais and Hilliard intentionally and improperly interfered by withdrawing Donais at the last minute after extensive negotiations.

    iv. This interference damaged plaintiff by preventing full global resolution and forcing continued litigation.

xx. Under New Hampshire law, Donais and Hilliard's interference was "improper" under Restatement (Second) of Torts § 767 because it:

    i. Involved deceptive conduct and bad faith withdrawal after extensive negotiations.

    ii. Was motivated by personal animus and strategic advantage rather than legitimate purpose.

    iii. Violated professional duties owed to plaintiff as former client.

    iv. Undermined judicial economy and settlement finalization efforts.

yy. Donais and Hilliard's status as a non-party to the final settlement agreement establishes the third-party interference element required under New Hampshire law for tortious interference claims.

zz. No privilege protects Donais and Hilliard's conduct because:

    i. The interference occurred in private settlement negotiations, not judicial proceedings.

    ii. New Hampshire's absolute privilege is limited to communications made in judicial or quasi-judicial proceedings with full procedural safeguards.

    iii. Settlement sabotage falls outside any recognized privilege protection.

    iv. The conduct was designed to undermine rather than advance legitimate litigation interests.

aaa. As a direct and proximate result of Donais and Hilliard's interference with the settlement contract, plaintiff suffered damages including:

    i. Reduced settlement amount due to Donais and Hilliard's sabotage attempts in an amount valued at in the six figure range.

    ii. Additional litigation costs and attorney's fees.

    iii. Delay in resolution.

    iv. Emotional distress from prolonged litigation.

bbb. Donais and Hilliard's conduct was willful and malicious, warranting enhanced damages and attorney's fees under applicable law.

ccc. Under New Hampshire law, to establish tortious interference with contractual relations, plaintiff must prove four essential elements:

    i. Economic relationship with a third party i.e., a settlement agreement with Hilton Hotel defendants.

ii. Defendant's knowledge of the relationship - Donais knew about the April 2021 monetary settlement agreement.

iii. Intentional and improper interference - Donais engaged in subterfuge and deception to sabotage the settlement.

iv. Damages from the interference - His actions harmed plaintiff's ability to finalize the settlement.

ddd.    New Hampshire law clearly establishes that "tortious interference with a contractual relationship requires interference by one who is not a party to the contract". Since Donais withdrew from the April 2021 settlement "at the last minute" and was not a party to the agreement, he meets this essential requirement for liability. Because Donais was not bound by the settlement agreement, he cannot claim any contractual immunity or argue that his conduct was authorized by the settlement terms.

eee. The conduct, engaging in subterfuge and deception to sabotage a settlement agreement, clearly meets the "improper" standard under NH law.

fff. Hilliard and Donais' interference with the April 2021 agreement on monetary amount and attempted to get other defendants to unwind or renege on the settlement demonstrate the type of bad faith conduct that New Hampshire courts consider tortious interference.

ggg.    Hilliard and Donais's covert campaign to sabotage a settlement, delay service, and later weaponize that delay squarely constitutes intentional and improper interference outside any privileged sphere. Accordingly, Donais remains civilly liable for tortious interference, defamation, and fiduciary breaches, and faces serious professional-conduct exposure.

165. The motion to dismiss also states:

Count 8 (Civil Rights/Race Discrimination Pursuant NH Common Law (sic)). Not only is this a new claim, and therefore not properly in the amended complaint, but also the plaintiffs cite no authority for an alleged cause of action under "NH Common Law."

a. It is not an entirely new cause of action. It is not a new claim. In the original complaint, race discrimination was identified as a claim, howbeit inartfully but it was there. The court neglected to address this one way or the other; but it was there in the original complaint.

b. There are legitimate causes of action under NH common law and similarly under statutory law.

c. Craig Donais have thus also violated both common law state law prohibition of discrimination

79

d.  Each of the foregoing acts of intimidation was motivated, at least in part, by Plaintiff's race and national origin, as evidenced by Craig Donais's explicit use racially-charged stereotypes and dog-whistles designed to stigmatize the plaintiff and stemming from his false accusation that plaintiff accused him of racism, as well to explicit references by Craig Donais about Plaintiff's being a "foreigner", having "foreign-sounding speech" and "foreign-sounding" name, among other things.

e.  Craig Donais engaged in intentional conduct in violation of these laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiff's protected rights. Craig Donais engaged in racial harassment, racial stereotyping and racial ridicule and scorn, and mocking that the defendants had initiated against the plaintiff as a black man.

f.  Craig Donais also acted to interfere with contractual relations including because of racial animus and racial bias against the plaintiff.

g.  The facts demonstrate that Craig Donais fabricated racial accusations, exploited racial stereotypes, and disseminated false statements to third parties, all motivated by racial animus.

h.  The plaintiff's claims are supported by evidence of racial animus, discriminatory statements, and adverse actions taken because of race.

### RSA 354-B:1

i.  RSA 354-B:1 guarantees every person in New Hampshire the right to engage in lawful contracts and transactions free from actual or threatened physical force, violence, or coercion motivated by race.

j.  RSA 354-B:3 authorizes a civil action by any person aggrieved by such misconduct and permits recovery of compensatory damages, injunctive relief, and other appropriate remedies.

k.  By the conduct set forth below, Craig Donais intentionally interfered with Plaintiff's rights through intimidation motivated by Plaintiff's race, thereby violating RSA 354-B.

l.  NB: Plaintiff acknowledges that RSA 354-B currently lacks a private cause of action while the pending Senate Bill 139 waits to take effect on January 1, 2026. The New civil rights bill on RSA 354-B has been passed in the NH legislature. SB 139, passed in 2025, will take effect on January 1, 2026.  SB 139 will apply retroactively to pending actions under State v. Ingham, 149 N.H. 256 (2003). Plaintiff hereby preserves the statutory claim for when SB 139 becomes effective. The state-law court can decide this issue post-remand.

### Common Law Claim

m.  Plaintiff asserts a common law claim for intentional interference with civil rights based on racial animus. New Hampshire recognizes that conduct violating public policy, including racial intimidation and harassment, gives rise to common law tort liability. The factual allegations of intimidation motivated by racial animus establish a viable common law claim distinct from defamation, supporting enhanced damages for violation of fundamental civil rights.

n.  The pattern of false accusations, the racialized language, and the intent to harm Plaintiff's reputation and legal rights establish a violation of both common law and state law. See Crawford v. Metropolitan Government of Nashville, 555 U.S. 271 (2009); Fitzgerald v. University of Massachusetts, 2 F.3d 131 (1st Cir. 1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

o.  Similarly, markedly hostile treatment is also evidence of retaliatory animus. See also Christian v. Wal-Mart Stores Inc., 252 F.3d 862, 868 (6th Cir. 2001) at 872 (Service is considered "markedly hostile" when it is (1) so contrary to the establishment's financial interests, (2) so far outside of widely accepted business norms, and (3) so arbitrary on its face, that it supports a rational inference of discrimination. Id. at 871).

p.  By the acts stated in the prior paragraphs, Craig Donais has violated both common law and state law by racially harassing plaintiff and committing racial harassment against plaintiff because of his race as African American [black].

q.  Craig Donais' racially-motivated campaign to interfere with Plaintiff's contractual relationships with the Manchester Police Department resulted in loss contract worth several thousands' of dollars.

r.  Plaintiff presents an inference of racial harassment/discrimination for which Craig Donais does not and cannot offer a legitimate non-discriminatory reason for his actions. Any reasons given or to be given by Craig Donais were or is a mere pretext for discrimination.

### Note Regarding Evidence of Discrimination Under Common Law And State Law

s.  The law recognizes that racial harassment and retaliation can be proved through direct or circumstantial evidence. Harris v. Forklift Sys., 510 U.S. 17 (1993).

t.  Even isolated comments may constitute direct evidence of discrimination if they are "contemporaneous with the [adverse action] or causally related to the [adverse action] decision making process." See Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723 (7th Cir. 1998).

u.  This type of direct evidence of discriminatory intent does not require "a virtual admission of illegality." See Venters v. City of Delphi, 123 F.3d 956 (7th Cir. 1997) at 973.

v.  For example, direct evidence need not take the form of an admission where the defendant states "I'm [taking this adverse action] because you're in a protected group." See Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999); see Venters, 123 F.3d at 973.

w.  The court in Venters explained that "the evidence need not be this obvious to qualify as direct evidence." Id. And the Sheehan court explained why: because such a requirement "would cripple enforcement of the … discrimination laws." See Sheehan, 173 F.3d at 1044.

x.  The direct evidence of such remarks must, however, establish that race was an important factor motivating the challenged action. See also Lounds v. Lincare, Inc., 812 F.3d 1208, 1224 (10th Cir. 2015) ("[S]tray remarks can prove to be invaluable insights into biases at every level of consciousness that may be rife but invisible within the workplace.… [They] may bespeak a workplace culture in which certain language or sentiments are tolerated and perhaps encouraged or rewarded.")).

y.  Evidence, which includes conduct or statements by persons involved directly reflecting the discriminatory attitude, constitutes 'direct evidence' of discriminatory animus.

**Harm**

z.  As a direct and proximate result of Craig Donais' intentional, deliberate, and willful racially harassing acts, Plaintiff have suffered damages. Craig Donais' actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

aa. As a direct and proximate result, Plaintiff has suffered economic losses in amounts exceeding thousands of dollars in lost business opportunities, together with emotional distress, humiliation, and damage to reputation, all in amounts to be proven at trial.

bb. Because Craig Donais' actions were willful, wanton, and undertaken with actual malice, Plaintiff is entitled to enhanced damages under RSA 354-B:3-b, together with costs, reasonable attorney's fees, and such other relief as the Court deems just.

cc. Further the facts and claims supporting the defamation claims, in some parts, also support the race discrimination claim. See further below.

**Additional Points About Donais' False Statements About Plaintiffs**

dd. There is no basis for Donais to claim that he/his family were in fear of safety from plaintiffs. It is unconscionable for Donais to accuse plaintiffs of being dangerous violent criminals, capable of harming his wife and children so much so that he/his wife were in fear for their safety and require a watch-out in their neighborhood to protect them from plaintiffs. This is not only classic dog-whistle racism, exploiting stereotypes of black people as dangerous/violent without a basis other than race, but it's malicious and dishonest defamation.

ee. Some people might not to be too concerned when white people tell lies on black people using race as a motivating factor. Plaintiff understands that it might be uncomfortable for some in our society today to hear and confront such matters or to put oneself in the shoes of a black person to understand what it is like to be subjected to such things. Yet, there is no room to look the other way with how certain white people exploit race and racism to hurt blacks like this. This country, under the current presidential administration, has been desensitized to much of the concerns about race and racism and have emboldened many to scoff at such concerns. People like Donais have evidently been empowered to feel as though they can do these things with impunity and get away with it.

ff. The bottom line is that Donais started out using race and racism against the plaintiff and plaintiff's wife in 2017. He continued to use race against plaintiffs again and again. This has to stop, and he must be held accountable. The crux of the matter here is that Donais is not going to stop if he is not held accountable. This suggests that Donais is a sociopathic liar, whose lies could get someone falsely arrested, imprisoned, or killed.

**Further Facts Regarding Donais' False Statement of [Absurd/Frivolous] Racism Accusation**

gg. Donais published false statements, that plaintiff falsely accused Donais of racial discrimination.

hh. Donais made false statements about plaintiff that are defamatory and damaging to the plaintiff's reputation, and injurious to the plaintiff's legal rights. The very purpose of him making these statements was to damage the plaintiff and harm the plaintiff's reputation and credibility.  For example, Donais made written statements to others saying that the plaintiff accused him of race discrimination because he (Donais) declined to represent the plaintiff, in a case against a defendant hotel, that the plaintiff became upset and angry because he (Donais) declined representation and thus accused him (Donais) with no reason or basis of being a racist.

ii. This was based on nothing and no actual facts that occurred, but it was manufactured by Donais to attack the plaintiff with an inflammatory accusation that could stick because the plaintiff is black. This is dog whistle racism intended to hurt and harm the plaintiff's reputation.  In making these statements, Donais was motivated by racial animus and intended to exploit the plaintiff's race as a black man and to use it against him. These false accusations (by Donais) of race discrimination accusation by plaintiff is tantamount to him playing the "race card in reverse".

jj. The statements by Donais were false, disparaging, and negative statements about the plaintiff. It is analogous to a man saying that a woman falsely and frivolously accused him of rape, based on no reason or facts that occurred. If the woman made no such accusation, then the statement is defamatory and harmful to her reputation and intended to create despise and contempt of her in the community, much less if presented to a court or to law enforcement or others. It would be intended to paint the woman as a crazy irrational woman seeking to falsely accuse a man of rape. The same is true in this case where Donais falsely stated that the plaintiff frivolously accused him of race discrimination as such a statement is likewise defamatory and harmful to the plaintiff's reputation and intended to create despise and contempt of the plaintiff in the community and the public.

kk. Donais' false and defamatory statements were gratuitously and maliciously made in order to harm, annoy, embarrass, humiliate, and burden and oppress the plaintiff. It had no other purpose.

ll. Donais completely fabricated a lie to publicly malign the plaintiff. The plaintiff felt utterly violated and harmed that someone--an attorney nonetheless--would exploit the issue of racism, which is something so painful for so many people in this country.

mm.    Donais fabricated and utilized his lie about racism to willfully intimidate plaintiff and to interfere with and injure the plaintiff because of the plaintiff's race, and it was done and perpetuated to others in order to exact revenge on the plaintiff and/or to intimidate, harass, burden and retaliate against the plaintiff.

nn. Donais' acts were motivated by racial animus, and it was done to exploit the plaintiff's race to bring harm to him. He targeted the plaintiff exploiting the fact that the plaintiff is black and thus use race as a weapon against the plaintiff. Blacks are generally vulnerable to these kinds of attacks and stirred up sensibilities in light of today's racial polarization. He wanted to make a caricature of the plaintiff as despicable,

untrustworthy, irrational person. It is a form of racialized character-assassination and a racialized attack against the plaintiff.

oo. Donais only brought up, falsely, that the plaintiff accused him of racism because the plaintiff is Black. It was thus racially motivated. If the plaintiff were White, such a fabricated lie would not stick.

pp. Moreover, Donais had ulterior motives in that he wanted to intimidate the plaintiff and to shut the plaintiff up and to silence the plaintiff (and his wife).

qq. Donais thus accused the plaintiff essentially of ridiculously, baselessly, and frivolously calling Donais a racist. Donais thus used what is known or referred to as "the race card" (which is a pejorative reference to the illegitimate and groundless insertion of racism accusations into a situation), when in actuality Donais himself was the one trying to illegitimately and groundlessly exploit the sensitive issues related to race by using it as a preemptory strike with his bald lie against the plaintiff. Donais thus tried to manipulatively (or perhaps masterfully) "play the race card" on the plaintiff. Aside from this being outrageous behavior, it was truly troubling that a licensed attorney would go that far to try to damage and disparage someone through such blatant and scurrilous lies. This was particularly despicable because it is evident that Donais was relying on racial bias to achieve his ends--he was hoping that those who heard his false statements would immediately take a hostile disposition towards the plaintiff. Yet Donais completely fabricated this story. These statements by Donais were made with malicious intent and reckless disregard of the truth. Contrary to Donais' ridiculously false assertion, at no time did the plaintiff claim that Donais was discriminating against the plaintiff because Donais did not take the case. This is a nonsensical allegation. It just does not make sense in the context of such a discussion for the plaintiff to assume and allege that Donais was discriminating against the plaintiff. Moreover, what would plaintiff hope to gain? To force him to represent the plaintiff? What kind of representation would that be? It's just not credible. Moreover, this is an unadulterated lie. It is for a jury to determine who is more credible and who is telling the truth.

rr. Donais blatantly made up out of "whole cloth" the idea that the plaintiff accused him of discrimination. This is not a matter of interpretation of words. The plaintiff did not utter any such words that could even be misinterpreted. No such words left the plaintiff's mouth. In fact, to the contrary, the 1-9-17 conversation between the plaintiff and Donais ended amicably and on good terms. There was no abrupt ending. Donais

blatantly and unscrupulously lied that the plaintiff accused him of discrimination, which is a blatant and dangerous lie. This demonstrates that Donais is the kind of person who would bear false witness against others and is capable of lying to put someone in jail/prison by false testimony. As such he is not only a disgrace to and also a blithe on the legal profession, but also a very dangerous person with power of a law license to wield untold harm on black people.

ss.   It is thus further unconscionable that Donais chose to tell such a despicable lie on an African American man. If Donais lied about the plaintiff making this statement (which Donais did), then this case, though it began as a conflict of interest breach, is also about Donais' falsely accusing the plaintiff of accusing him of discrimination, which becomes evidence of an attempt to use the plaintiff's race against the plaintiff (i.e. the "race card" in reverse). Donais was trying to use the plaintiff's race against the plaintiff, by accusing a black man of making ridiculous false accusations of discrimination with the intent to imply that because he is a black man, it should be believed that he made such ridiculous false accusations.  Donais has falsely styled himself as a victim of a false accusation of being called a racist by the plaintiff.  This despicable lie by this white attorney of law perpetrated on the plaintiff was intended to target the plaintiff because of his race. It was intentional and it was motivated by racial animus/racial bias.  Nothing angers people more than a person who falsely accuses a white person of racism. This is a major sore point in today's culture. Donais was trying to exploit racial tensions in our society to harm and discredit the plaintiff. He wanted to really damage the plaintiff. Donais was inciting fragile racial sensibilities and attitudes, and intended to exploit a culture of hostility towards those black people who are presumed to "cry wolf" about racism. Donais was seeking to fan the flames of racial tensions and used it as a form of a weapon against the plaintiff. Donais weaponized the race card issue and deployed it against the plaintiff.  It is a form of racialized character-assassination and a racialized attack against the plaintiff. Donais only brought up that the plaintiff accused him of racism because the plaintiff is black. It was thus racially motivated. If the plaintiff were white, such a fabricated lie would not stick. Moreover, Donais wanted to intimidate the plaintiff (and his wife) and to shut the plaintiff up and to silence the plaintiff.

tt.   Donais falsely implied and affirmatively intended to imply that the plaintiff had invented a racism accusation, essentially as a hoax, based on the groundless basis that he declined to represent the plaintiff. It was intended

to make it seem that the plaintiff was irrational, crazy, in concocting a racism accusation based on nothing or based on a silly reason.  The plaintiff, at the time, spoke to Attorney Elliott Berry about this and Attorney Berry was outraged by this. Berry indicated that this would in fact be evidence of discrimination against the plaintiff, by trying use the plaintiff's race against him in such a manner i.e. accusing a black man of making ridiculous false accusations of discrimination with the intent to imply that because he is a black man, it should be believed that he made such ridiculous false accusations. It is also intended to undermine the legitimate experience of mistreatment that the plaintiff suffered.

uu. NB: What Donais has done is also similar to, or at least reminiscent of, a hoax like the one allegedly perpetrated by Jussie Smollet. Our society was outraged at the prospect that Smollet could have fabricated a lie that he was called the "N" word (a racial slur) and the "F" word (a gay slur). He was subjected to criminal prosecution for this alleged lie/hoax. He lost his job on the hit TV show "Empire" because of this lie/hoax. Donais' conduct is in a similar category of what Smollet was alleged to have done, which is to exploit racial tensions to make false accusations pertaining to racism.

vv. The false statement was published with knowledge of its falsity and/or with reckless disregard for the truth.

ww.    Donais knew it was false to state that the plaintiff accused him of racism because he declined to represent the plaintiff.  Donais knew that the plaintiff did not accuse him of racism at all.

xx. Donais' defamatory claim that the plaintiff had accused him of racism for declining representation was false. Donais knew he was lying when he said that the plaintiff had accused him of racism for silly reasons, that he himself had invented out of whole cloth. Donais knew the plaintiff was telling the truth when the plaintiff denied making the statement after the plaintiff found out about his statement but yet Donais persisted in saying to several third parties that he was telling the truth and that the plaintiff was not telling the truth. Mr. Donais needs to be put under oath to be confronted/examined about his statements.

yy. Because these statements tend to injure the plaintiff in his profession or trade, they constitute defamation per se. They tended to (and did) damage the plaintiff in his trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information. Because the statement affected the plaintiff or may have affected the plaintiff in his profession by "imputing to [me]…fraud, dishonesty, [and/or] misconduct…", the statement constitute libel per se. See Grimaldi v. Schillaci, 106 A.D.2d 728, 729–30 (3d

Dept. 1984). The plaintiff has suffered harm as a direct result of Donais' false, defamatory statement, which caused injury to plaintiff's reputation, honor, and dignity. Plaintiff has suffered professional harm as a direct result of Donais' defamatory statement. Donais injured the reputation upon which the plaintiff based his business.

zz. Donais made his false statement with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effects on the plaintiff and his rights. These statements are untrue and harmed the plaintiff.

aaa. Subsequently and additionally, Donais has repeated and republished his false defamatory statements about the plaintiff on more than one occasion and has continued to publish these defamatory statements with impunity and abandon. Plaintiff's reputation has been damaged by Donais' false allegations. Donais' false and defamatory statement caused the plaintiff to suffer reputational, emotional, and professional harm.

bbb. The false statement was published with knowledge of its falsity and/or with reckless disregard for the truth.

### Additional Points About Donais' False Accusation About Fabricated Recording

ccc. In his campaign to discredit the plaintiffs in the Manchester NH community, including with the crime-line board, and others, Donais went further to add insult to injury by further ratcheting up his allegations by telling others that the plaintiffs had fabricated or would fabricate a recording to put his [Donais] voice on a recording and claim it is his [Donais] voice on it. This relates back to Donais' false accusation that plaintiff accused him of racism for declining to represent plaintiff in a 7 minute phone call between Donais and plaintiff. Donais knew that plaintiff had publicly stated that Donais had lied about that. So, Donais thus accused plaintiff of being the type of person who was so low in character that he would actually go to the trouble and lengths to fabricate a recording with Donais' voice in order to prove that Donais was dishonest about what was said on that call, and thus that plaintiff had done, or was capable of doing, such treacherous criminality of fabricating a recording, which ostensibly would constitute a crime of falsifying evidence. Plaintiff cannot emphasize enough here how much of a nasty serious allegation was being made by Donais here. This was clearly intended to discredit plaintiff and destroy plaintiff's reputation. This was preemptive attempt to discredit plaintiff should, on the chance, plaintiff actually have a recording of Donais, that showed that Donais was lying about the racism accusation. Donais was doing this preemptively to protect himself, and to save face, because he knew he had lied, and was so concerned about this that he felt it necessary to

preemptively strike at the credibility, authenticity or veracity of any such recording if it existed. This is evidence of a guilty mind or guilty conscience. If Donais was innocent and had not lied, then he would not have been so worried and he would not have needed to think ahead to discredit a purported recording that he did not even know if it existed, or what would be on it if it existed. In fact, an innocent person would welcome a recording of a disputed event because it would show he is innocent or telling the truth about the event. However, a guilty person who is guilty of lying would not welcome such a recording because he would know that he would be proved to be lying. The fact that Donais was trying to preemptively and prematurely attack a possible recording, by preemptively assuming that if a recording of him existed, it would automatically show that he was lying, shows that Donais, in his own mind, knew that he was lying. These circumstances show that Donais entertained serious doubt about the truth of his statements.

ddd.    So, why would Donais make such a statement? Why does he evidently seek to get out in front of this issue of a recording showing his dishonesty, by prematurely pointing to a recording that plaintiff would have fabricated, altered or doctored to show his dishonesty? The only reason to say such a thing is because he had a guilty conscience and was trying to preemptively provide an explanation if in case there was a recording showing that he was lying. This is a critical point. It shows that Donais entertained serious doubts about the truth of his statements and that he knew that he lied about the accusations of racism, and that he was afraid that a recording would or could expose him to be a liar. So, he evidently was thinking ahead, in case a recording showed him to be lying, in that he would have already presented a cover story to cast doubt on the veracity of such a recording should such a recording be produced. But why anticipate at all that anyone could produce such a recording showing that he was lying? Why even go there? Why even imagine that as a probable outcome? Because he knew that he was lying. The above statements provide evidence that Donais had obvious reasons to "doubt" the truth of his published statements because he himself knew that he was lying on/about the plaintiff.

eee. It should be noted that a Massachusetts Superior Court judge found that false accusations of racism by Donais, if proven, are valid grounds to seek a defamation claim. Thus, this Massachusetts precedent directly validates plaintiffs' defamation claims.  Further, the New Hampshire Attorney Discipline Office ("ADO") opined in an ADO proceeding, in September 2020 that, if Donais did and said the things alleged by plaintiffs

(concerning the false accusations of racism) and they are false, it would constitute defamation and should be brought in a lawsuit (as the ADO is not designed to resolve defamation claims that are better suited to be resolved in a court of law).

fff. Donais made false, malicious, and defamatory statements about Plaintiff to multiple third parties, outside the scope of any judicial proceeding. Thus, absolute privilege does not apply, as the accusations were made to private persons in private contexts and were extraneous to any legitimate legal purpose and were made outside of any court contexts. These statements were not made in court or in any judicial context but were disseminated to family, friends, and community members. These statements were irrelevant to judicial proceedings, disseminated with malice, and caused reputational harm. Absolute privilege does not shield extrajudicial statements.

ggg. That the statements are defamatory is clear. The statements can reasonably be read as discrediting the plaintiff in the minds of any considerable and respectable class of the community. Moreover, these words have the effect of heaping disparagement upon plaintiff when viewed contextually, i.e. in the light of attendant circumstances.

hhh. These statements are false, were made with malice, were not honestly held opinion, were not made accidentally or disseminated accidentally and were intended to be made public, and betray a malevolent intent and ill-will towards the Plaintiff, with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements. Donais' false, disparaging, defamatory, and materially misleading statements have subjected and continue to subject the plaintiff to contempt and tended to diminish the esteem, respect, goodwill and/or confidence in which he is held.

166. The motion to dismiss also states:

Count 9 (Intentional Infliction of Emotional Distress). This is a new claim, and not properly in the amended complaint. In any event, it fails to state a claim under New Hampshire law: One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . . In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice. … Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Mikell v. School Adm. Unit No. 33, 158 N.H, 723, 728-29 (2009) (citing Morancy v. Morancy, 134 N.H. 493, 496 (1991)). In Mikell, the Court upheld the dismissal of an IIED claim in a case involving a student who committed suicide. His estate alleged that a schoolteacher falsely reported a disciplinary infraction against the student, causing emotional distress that resulted in the student's suicide. The plaintiff claimed that

the teacher's motive was to cause the student's expulsion. The Court held that while a "teacher falsely reporting misconduct by a student is a reprehensible act, the circumstances of this case are simply not beyond all possible bounds of decency." Id. at 730. Nothing about the defendant's alleged conduct could be characterized as "reprehensible," a characterization which itself fell short of the mark in Mikell.

a.  It is not an entirely new cause of action. See further below.

b.  Craig Donais' conduct, spanning from 2017 through 2023, constitutes intentional infliction of emotional distress through a systematic pattern of extreme and outrageous conduct designed to cause severe emotional harm to Plaintiff based on defamation, racial discrimination, tortious interference professional betrayal, and retaliation.

c.  Craig Donais' conduct was undertaken intentionally or recklessly, with knowledge or reckless disregard that such conduct would cause severe emotional distress to Plaintiff. This conduct demonstrates a conscious intent to inflict emotional harm.

d.  Craig Donais' actions directly caused Plaintiffs to suffer severe emotional distress, including anxiety, stress, sleeplessness, and mental anguish, as documented through Plaintiff's own testimony and evidence. The duration, persistence, and egregiousness of his wrongful conduct establishes that Plaintiff's emotional suffering was both severe and credible.

e.  As a practicing attorney and holding fiduciary duties to Plaintiffs, Craig Donais owed a duty to plaintiff. His intentional acts and reckless violations of these duties, especially when motivated by racial bias, constitute conduct that is so extreme and outrageous that it exceeds all bounds tolerated in a civilized society. This conduct demonstrates an utter disregard for Plaintiff's rights and personal well-being.

f.  The pattern of defamatory, discriminatory, abusive, harassing, and retaliatory conduct, reflects a deliberate effort to cause Plaintiffs severe emotional harm, constituting the requisite intent and outrageousness for IIED.

g.  The damages described herein, including stress, anxiety, sleeplessness, and emotional trauma, are the natural and foreseeable consequences of Craig Donais' intentionally outrageous conduct, and Plaintiffs sufficiently alleges severe emotional distress, with ongoing impact.

h.  Courts have recognized that attorney misconduct involving racial discrimination and systematic deception satisfies the standard of "extreme and outrageous" conduct necessary for IIED claims, especially when, as

here, the conduct involves breach of fiduciary duties, professional misconduct, and ongoing retaliation against a vulnerable client.

i.  Moreover, courts have recognized that attorneys' superior knowledge and professional position make their misconduct particularly egregious and create heightened awareness of the emotional harm their conduct will cause to clients.

j.  Craig Donais' intent to cause emotional distress is evidenced by his deliberate pattern of defamatory conduct, deception, and discriminatory and retaliatory acts, spanning multiple years. The duration and persistence of Plaintiff's emotional distress, spanning events from 2017 through 2023, demonstrates its severe and lasting nature.

k.  Plaintiff's emotional distress manifested through multiple objective symptoms documented throughout the relevant time period. These symptoms include chronic stress and anxiety, difficulty sleeping and concentration problems caused by the breach of fiduciary duty, the mental anguish resulting from the multiple defamations from an attorney, who used the plaintiff's race against him based on his race, and the dignitary harm and injury from being racially stigmatized.

l.  The severity of Plaintiff's emotional distress is heightened by the discriminatory nature of the Craig Donais' conduct and the professional context from which it stemmed, that of being defamed and racially stigmatized by a former attorney, who is supposed to protect a former client's interests, and this is also  due to the fiduciary nature of the relationship and the enhanced vulnerability of clients.

m.  The professional context strengthens Plaintiff's IIED claim in several ways. Heightened duty of care exists because attorneys owe clients enhanced obligations of loyalty, competence, and non-discrimination that create corresponding heightened liability when those duties are breached through discriminatory conduct. Client vulnerability is recognized because clients depend on attorneys' professional judgment and integrity, making them particularly susceptible to emotional harm when attorneys exploit their fiduciary position for discriminatory purposes. Professional advantage exploitation occurs when attorneys use their superior legal knowledge and understanding of procedural requirements to avoid accountability while continuing to harm clients, which courts view as particularly egregious conduct. Further, the consumer protection context

92

reinforces the IIED claim because of the court's interest in protecting consumers of professional services from discriminatory treatment and attorney misconduct.

n.  As a direct and proximate result of Craig Donais' intentional infliction of emotional distress, Plaintiff suffered and continues to suffer significant damages. These damages include compensatory damages for the severe emotional distress, mental anguish, and psychological harm caused by Craig Donais' extreme and outrageous conduct, expenses and costs for treatment of emotional distress symptoms, loss of enjoyment of life and impairment of daily activities caused by the ongoing psychological harm, dignitary damages for the harm to Plaintiff's reputation and standing in the community resulting from defamation and racial stigmatization, and punitive damages warranted by the willful, malicious, and discriminatory nature of the Craig Donais' conduct.

o.  Plaintiff seeks judgment for compensatory damages in an amount to be determined at trial but not less than the mid-to-high six-figure range, punitive damages sufficient to deter similar misconduct by attorneys, reasonable attorney's fees and costs under applicable statutes, and such other relief as the Court deems just and proper.

p.  Under NH law, the claim requires (1) extreme and outrageous conduct, (2) intent or reckless disregard, (3) causation, and (4) damages.

q.  To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) that the defendants intended to cause, or should have known that [their] conduct would cause, emotional distress; (2) that the defendants' conduct was extreme and outrageous; (3) that the defendants' conduct caused plaintiff distress; and (4) that plaintiff suffered severe distress.

r.  Intentional infliction of emotional distress requires "extreme and outrageous conduct intentionally or recklessly cause[d] severe distress to another."

s.  To be considered extreme and outrageous, the defendants'] conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community." Howcroftv. City of Peabody, 51 Mass.App.Ct. 573, 596 (2001).

t.  Under NH law, to establish this claim, Plaintiff must show that Defendants' conduct was beyond all bounds of decency, intended or recklessly causing severe distress, and that Plaintiff suffered such distress. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573 (2001).

u. Craig Donais' conduct has been extreme and outrageous conduct as follows:

    i. His fabricated lies that plaintiff bugged his office and manufactured recordings was extreme and outrageous conduct.

    ii. His falsely accusing the plaintiff of being a criminal and being mentally unstable was extreme and outrageous conduct.

    iii. His attempt to smear plaintiff with the Manchester NH police was extreme and outrageous conduct.

    iv. His tortious interference with plaintiff's relations with the Manchester NH police was extreme and outrageous conduct.

    v. His complete making up out of thin air the false accusation that plaintiff accused him of racism is extreme and outrageous conduct.

    vi. His breaching of client confidentiality to defame, and injure the plaintiff is extreme and outrageous conduct.

v. Note: This is the conduct of a sociopath. Moreover, to disrupt the sanctity of his home with creating unfounded fear of harm of his wife and children, is the conduct of a sociopath.

w. Craig Donais' conduct, including false accusations of criminality, racial stereotypes, racialized defamation, weaponized harassment, fabricating and disseminating false statements, engaging in interference with established relationships, engaging in harassment, was intentional or reckless causing severe emotional distress was outrageous, malicious, and designed to intimidate and humiliate Plaintiff, and was extreme and outrageous, causing severe emotional distress. Mikell v. Sch. Admin. Unit #33, 158 N.H. 723, 730 (2009).

x. The plaintiff has suffered emotional harm including anxiety, sleep disturbances, etc.

y. The repeated and systemic nature of the conduct, combined with its racial motivation, spanning several years of multiple occasions of conduct, satisfies the elements.

z. Craig Donais knew that making false accusations that plaintiff frivolously accused Craig Donais of racism, would cause emotional distress for the plaintiff.

aa. Craig Donais knew that making false accusations that plaintiff was a criminal, was dangerous and violent, and was mentally unstable, would cause emotional distress for the plaintiff.

bb. Craig Donais knew that making false accusations that plaintiff was planning to come to their home to physically harm his wife and children, would cause emotional distress for the plaintiff.

cc. Craig Donais, by falsely fabricating that plaintiff posed a criminal threat to his family, was laying the groundwork to inflict violence or to have violence inflicted upon plaintiff and his wife, and justify in advance the basis for such violence against the plaintiff and his wife. This conduct was extreme and outrageous, causing severe emotional distress.

dd. By accusing plaintiff of mental instability, Craig Donais was directly targeting and smearing plaintiff's mental health, and knew it would cause emotional distress for the plaintiff.

ee. Craig Donais knew that by intimidating, retaliating, harassing the plaintiff, it would cause emotional distress for the plaintiff.

ff. Craig Donais have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

gg. Craig Donais caused or created emotional distress for Plaintiff.

hh. It should be noted that this claim is distinct from the emotional distress caused by the Craig Donais' defamatory statements. This claim is not based solely on the facts, acts and statements that give rise to the defamation claims. It arises distinctly from the emotional distress caused by the Craig Donais' defamatory statements. This is shown by the fact that the plaintiff's emotional distress does not only stem from Craig Donais' defamatory acts but also from, for example, Craig Donais' tortious interference acts and race discrimination acts as well as breach of fiduciary duty acts. Therefore, logically, the plaintiff's emotional distress cannot only stem from Craig Donais' defamatory acts and must be distinct from it.

ii. Craig Donais intentionally inflicted emotional distress on plaintiff, as a direct and proximate result of Craig Donais' actions and inactions.

jj. Plaintiff was caused to suffer severe emotional distress as the result of which a reasonable person in plaintiff's position would have suffered similar emotional distress under like circumstances.

kk. Plaintiff sustained damages as a result of Craig Donais' intentional infliction of emotional distress on them.

ll. Plaintiff has been harmed by Craig Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of

life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's

reputation and standing in the community.

mm.    Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and

elements of an intentional infliction of emotional distress claim.

nn. As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

oo. As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

pp. Note: Plaintiff's IIED claim is distinct from defamation-based emotional distress. This harm is separate from

reputational injury and supports independent IIED recovery under Moss v. Camp Pemigewassett, 312 F.3d

503 (1st Cir. 2002).

167.    The motion to dismiss also states:

Count 10 (Violations of the NH Consumer Protection Statute). This is an entirely new cause of action, and is not properly in the amended complaint. Moreover, all its underlying predicates are either claims dismissed with prejudice, or new claims calling for substantially different evidence.

a.    It is not an entirely new cause of action. See further below.

b.    The New Hampshire Consumer Protection Act ("NHCPA") prohibits the use of "any unfair method of

competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this

state." N.H. Rev. Stat. Ann. § 358–A:2.

c.    The Act provides a non-exhaustive list of prohibited practices, including "[d]isparaging the goods, services,

or business of another by false or misleading representation of fact." Id. § 358–A:2, VIII.

d.    Because clients are "consumers" of the lawyer's trade or professional work, the NH consumer protection act

law applies to lawyers.

e.    Thus, attorneys can be held accountable under the NH consumer protection act, and that can include

negligent as well as intentional misrepresentations.

f.    The practice of law has been held as "trade or commerce" under the act, which prohibits unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

g.    Craig Donais is engaged in trade/commerce as defined by NH consumer protection act.

h.    At all times relevant to this action, Craig Donais was engaged in the practice of law in New Hampshire as a

trade and commerce within the meaning of New Hampshire law.

i.  Craig Donais engaged in unfair and deceptive acts against the plaintiff.

j.  Donais's conduct falls within RSA 358-A because it was undertaken in part for commercial/entrepreneurial purposes including to undermine the plaintiffs, through defamation, interference, etc., in order to protect his career and professional reputation, to protect his trade, to protect his malpractice insurance coverage. This includes leveraging and misusing his position on the Manchester NH Crimeline board to gain favors to help him protect his career and professional reputation including using it as a springboard to weaponize and disseminate defamatory statements about the plaintiffs and create the appearance of legitimacy to those defamatory statements. Craig Donais's conduct was further "entrepreneurial" as he deployed defamatory statements about the plaintiff to shield himself from losing his law license on account of the complaints of misconduct alleged by the plaintiffs, an unfair trade practice under RSA 358-A:2. This constitutes an 'entrepreneurial' business interference actionable under RSA 358-A. Under Wong v. Ekberg, 175 N.H. 127 (2022), such business-motivated conduct by attorneys falls within CPA coverage.

### Unfair Acts of Defamation

k.  These unfair and deceptive acts by Craig Donais stem from lies told by Craig Donais about communications he had with the plaintiff while plaintiff was a client or prospective client.

l.  A lawyer's liability for multiple damages and attorney fees may generally be found under NH consumer protection act. The court looks at the egregiousness of the case in deciding about multiple damages and come down strongly on attorneys who lie and do not do what they agreed to do. This goes beyond negligence, or simply making a mistake that causes damages.

m.  Defamatory statements are actionable under NH consumer protection act.

n.  Craig Donais engaged in unfair and deceptive acts by misrepresenting facts, fabricating evidence, and making false accusations.

### Unfair Acts of Tortious Interference

o.  Craig Donais engaged in intimidation to threaten and coerce the plaintiffs from making/pursuing a bar complaint against him.

### Unfair Acts of Race Discrimination

p.  Craig Donais engaged in intimidation to threaten and coerce the plaintiffs from making/pursuing a bar complaint against him.

### Unfair Acts of Race Discrimination

97

q.   Craig Donais' unethical conduct including exploiting racial bias, constitutes unfair/deceptive acts under RSA 358-A.

r.   Racial stereotyping, whether as retaliation or discrimination, perpetrated by falsely characterizing a prospective client interview to injure the prospective client may well constitute an unfair business practice giving rise to a violation of NH consumer protection act. See Ellis v. Safety Insurance, 41 Mass. App. Ct. 630 (1996)(Racial harassment perpetrated during the course of an insurance claim investigation may well constitute an unfair business practice giving rise to a violation of G. L. c. 93A.).

## Unfair Acts of Breaching Client Confidentiality

s.   Craig Donais's disclosure of client discussion information was deceitful. Craig Donais's disclosure of client discussion information and the results therefrom were extreme and outrageous and utterly intolerable. Craig Donais' misuse of confidential information and defamation constitutes "unfair trade practices" under RSA 358-A. Barrows, 141 N.H. at 389.

t.   Craig Donais' breach of his fiduciary duty is so clear and obvious expert testimony is not required. See Harris v. Harris, 555 N.E.2d. 10, 19 (Ill.App. 1990).

u.   Craig Donais's conduct was and unfair, deceptive and unethical. Craig Donais engaged in unfair and deceptive acts.

v.   These acts violate RSA 358-A, which prohibits unfair trade practices and deceptive conduct.

## Injury

w.   Craig Donais's unfair and deceptive conduct has injured (damaged) Bisasor.

x.   As a result of Craig Donais's unfair and deceptive conduct, Bisasor sustained injury and loss. Craig Donais caused Bisasor to suffer emotional distress.

y.   The damages Bisasor sustained were directly, proximately and solely caused by Craig Donais's unfair and deceptive conduct and breach of his duty as set forth above.

z.   Craig Donais's actions directly harmed Plaintiff's business reputation. Barrows v. Boles, 141 N.H. 382, 389 (1996).

aa.  Plaintiff has been harmed by Craig Donais' actions including lost professional opportunities, insult, mental pain and suffering, being placed in fear and anxiety, mental anguish, emotional distress, loss of enjoyment of

life, anxiety, lack of energy, mood swings, and sleep disturbances in addition to impairment to the Plaintiff's reputation and standing in the community.

bb. As a direct and foreseeable consequence of Craig Donais' actions, the plaintiff has suffered damages.

cc. As a result thereof, the plaintiff has been and continued to be injured and suffer damages.

dd. The plaintiff suffered economic and reputational damages as a result.

## Other Unfair and Deceptive Acts by Craig Donais

ee. Other unfair and deceptive acts by Craig Donais include:

ff. Craig Donais' conduct in 2019 was also undertaken to protect his law firm from losing revenue due to the attempts by the plaintiff to hold Craig Donais accountable. This constitutes an 'entrepreneurial' business practice actionable under RSA 358-A. Wong v. Ekberg, 175 N.H. 127 (2022).

gg. Craig Donais' conduct in 2021 in misrepresenting the intent to settle claims but was intended as a trojan horse to sabotage the global settlement with Hilton hotels, was also undertaken to "save face" and to protect his law firm from losing revenue due to the attempts by the plaintiff to hold Craig Donais accountable. This also constitutes an 'entrepreneurial' business practice actionable under RSA 358-A. Wong v. Ekberg, 175 N.H. 127 (2022).

hh. Craig Donais breached his duty to the plaintiff as a prospective client and former prospective client.

ii. Craig Donais also breached the covenant of good faith and fair dealing with the plaintiff.

jj. Craig Donais divulged confidential information about the plaintiff to his friends, family members including his adult son Garrett Donais and teenage son Aiden Donais, to the Manchester NH Crime-Line board, and his other family members, his neighbors and his colleagues.

kk. Craig Donais in bad faith disclosed confidential client information regarding Bisasor's conversation with several people and used it to try to injure, defame Bisasor. Bisasor and Anderson has been forced to file bar complaints and civil actions against Craig Donais in order to stop Craig Donais from injuring and defaming Bisasor and Anderson.

ll. Craig Donais violated continuing fiduciary duties owed to a former client by engaging in deceptive conduct designed to harm the plaintiff.

mm.   Craig Donais made false statements about the plaintiff with intent to deceive and gain unfair advantage and through fraudulent misrepresentations;

nn. Craig Donais abused his position as an attorney and his relationships to gain unfair advantage over his former client;

oo. Craig Donais engaged in conduct that violates established professional and ethical standards governing attorney conduct in a manner that harms Plaintiff.

pp. Craig Donais' conduct was willful and knowing, as evidenced by his deliberate deception, his awareness of his professional obligations, and his intentional efforts to avoid accountability for his misconduct.

qq. Craig Donais' conduct involved dishonesty, fraud, deceit, and misrepresentation, satisfying the requirements for liability against attorneys.

rr. Craig Donais' actions were done intentionally and with malice, constituting willful and knowing violations.

ss. On information and belief, Craig Donais intentionally lied to his malpractice insurance carrier in order to deprive Bisasor of access to his (Craig Donais's) malpractice insurance policy proceeds.

168. The motion to dismiss also states:

Count 11 (Intentional Misrepresentation). This is an entirely new cause of action, and calls for substantially different evidence. Moreover, all its underlying predicates are new claims of misrepresentations or false statements, and call for substantially different evidence.

a. It is not an entirely new cause of action. The plaintiff have pled misrepresentation adequately. Should more definitive statement be required, then plaintiff seeks leave to further amend.

169. The motion to dismiss also states:

Conclusion. For these reasons, the plaintiffs' amended complaint is properly dismissed. In addition, given the history of this litigation and other litigation against defendant Donais involving the same or similar claims in other cases, and the unreasonable nature of this attempted amendment, an award of attorney's fees to the defendant for having to respond to it is appropriate. See Harkeem v. Adams, 117 N.H. 687, 690-91 (1977).

a. This is totally inappropriate to ask for here and implicates the frivolous

---

## SECTION IV: FINAL CONCLUSION

---

### SUMMARY

170. Defendant's characterization of the June 5, 2025 court order is incorrect and inconsistent with the explicit language and context of that order. The court's order was an intermediate ruling, explicitly phrased as a partial dismissal of the original complaint without prejudice, and with an unequivocal opportunity for the plaintiff to amend. The order did not foreclose the addition of subsequent events or related claims arising from the core factual

allegations. Courts routinely permit amendments following partial dismissals, especially when, as here, the order explicitly states that the plaintiff may amend to cure deficiencies or to include related claims.

171. The defendant's attempt to argue that the order barred any subsequent claims or new evidence is an overreach and misstates the court's instructions, which were clear that amendments would be permitted within the court's established procedures.

172. Moreover, the motion's assertion that the new claims or evidence are "substantially new" and therefore barred by the prior order misrepresents the legal standard governing amendments. The law is clear that amendments are permissible when they arise from the same nucleus of operative facts, even if they involve additional acts, subsequent events, or related claims. This principle is well-established in both federal and state jurisprudence and is directly applicable here.

173. The plaintiff has, for years, sought to add claims and allegations based on subsequent conduct and new evidence, and those requests have been repeatedly deferred, not barred outright.

174. The longstanding pattern of seeking amendments over several years, including prior filings in this case, underscores the connection of these later claims and evidence to the originally pleaded facts, which the defendant now disparages as "new."

175. In fact, the original complaint, filed in 2020, included allegations against multiple defendants, most of whom have since settled, leaving the core of the case focused on the conduct of the remaining defendant, Donais.

176. The plaintiff has, for years, endeavored to clarify, expand, and update the complaint to reflect subsequent events, new claims, and additional evidence. These efforts include motions to amend, which the Court has now allowed and which are consistent with the applicable law.

177. The recent amendments are not tangential or unrelated; rather, they are logical extensions of the original claims and directly relate to the same underlying facts and legal issues, thus falling squarely within the permissible scope of amendments.

178. Furthermore, the defendant's reliance on the lengthy motion to dismiss, which spans 151 pages and includes numerous exhibits, appears to be an attempt to overwhelm the Court and distract from the substantive issues. Such a voluminous and complex motion raises the question of whether the defendant's strategy is directed at delaying or obfuscating, rather than engaging in good-faith legal dispute.

179.    These include new defamation statements, and other related conduct that form a continuum of the defendant's overarching misconduct, which the laws of amendment and procedural fairness clearly permit to be added.

180.    In sum, the defendant's motion to dismiss rests on misrepresentations of the law and facts, an overly restrictive and erroneous interpretation of the court's prior order, and a misuse of procedural arguments to undermine legitimate amendments.

181.    The legal standard favoring liberal amendment and the principle that claims arising from the same core facts can be continuously developed and pleaded, firmly support the plaintiff's right to include post-2017 allegations and evidence.

182.    The motion should therefore be denied, and the case should proceed on the merits consistent with the facts and law.

183.    The plaintiff requests that the Court carefully scrutinize these assertions and deny the defendant's motion to dismiss in its entirety.

## CONCLUSION

184.    In conclusion, the above provides strong, well-reasoned grounds for striking or denying Defendant Donais's Motion to Dismiss the amended complaint.

185.    Donais's motion to dismiss should be denied in its entirety. The Amended Complaint properly addresses the deficiencies identified by the Court while remaining within the permissible bounds of amendment. Donais's arguments rest on fundamental mischaracterizations of the Court's Order, incorrect applications of legal standards, and factual assertions that are demonstrably false.

186.    After five years of litigation and multiple opportunities to seek dismissal on various grounds, Donais should not be permitted to continue his pattern of procedural obstruction. Plaintiffs are entitled to have their claims adjudicated on the merits, and the Amended Complaint states valid claims for relief under New Hampshire law. The Court should deny Donais's motion and allow this case to proceed to discovery and resolution.

187.    The interests of justice require that Plaintiffs, who have been denied the opportunity to amend their complaint for over five years despite multiple requests, be permitted to present their claims based on the same core facts that have been at issue since the inception of this litigation. Donais's motion represents yet another attempt to avoid accountability for his misconduct through procedural maneuvering rather than addressing the substance of Plaintiffs' well-founded claims.

188.    It should be noted in closing, that the defendant appears to have tacitly conceded that the plaintiff has stated factually valid claims as he did not contest the facial plausibility of certain of the plaintiff's claims (nor that such certain claims pled did not state a cause of action for which relief can be granted) but instead relied on the assertion that they were not to be included in the amended complaint because they were new or required different evidence, etc. (which the plaintiffs dispute).

189.    The plaintiff have pled adequately. Should more definitive statement be required, then plaintiff seeks leave to further amend. Plaintiffs also request a hearing on this matter. See attached exhibits.

190.    WHEREFORE, Plaintiffs respectfully request that this Court: a) deny Defendant Donais's motion to dismiss; b) grant Plaintiffs' separate motion to strike; and c) grant such other relief as the Court deems just and proper.

Respectfully submitted,<br>
/s/Natalie Anderson<br>
NATALIE ANDERSON

/s/ Andre Bisasor<br>
ANDRE BISASOR

Date: September 12, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor<br>
ANDRE BISASOR