**Filed**
**File Date: 10/27/2025 12:43 PM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH

Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY CLAIM

1. Plaintiffs submit this Statement of Material Facts as to which there is no genuine issue to be tried in support of their Motion for Partial Summary Judgment on the breach of fiduciary duty claim against Craig Donais.

### I. UNDISPUTED MATERIAL FACTS ESTABLISHING FIDUCIARY DUTY BREACH
### A. Establishment of Prospective Attorney-Client Relationship

2. On 1-5-17, at approximately 5:16 p.m., Plaintiff Natalie Anderson contacted Attorney Robert O'Brien seeking legal assistance regarding a dispute with Homewood Suites in Nashua, NH. See Anderson Affidavit; Exhibit 6.

3. During their 18-minute consultation, Anderson provided detailed confidential information about plaintiffs' legal situation, including allegations of discriminatory treatment, contract disputes, and urgent need for legal intervention to prevent wrongful ejection. Anderson Affidavit.

4. O'Brien, recognizing the complexity of the legal issues and acknowledging they fell outside his primary practice area, informed Anderson he would consult with Attorney Craig Donais, whom O'Brien specifically identified as possessing greater expertise in landlord-tenant matters. Anderson Affidavit.

5. O'Brien contacted Donais by telephone, conveying the substance of Anderson's legal concerns along with the urgent timeline for action. Anderson Affidavit.

6. Following his consultation with Donais, O'Brien sent Anderson a text message stating that he spoke with Donais, that Donais said plaintiffs "have a great contract case for the overcharges," that "the innkeeper rules would likely apply to your situation" allowing for no cause evictions, and that Donais "would not opine on the discrimination claims outside his experience." Anderson Affidavit; Exhibit 9 [text message from Obrien to Anderson].

7. On 1-6-17, Plaintiff Andre Bisasor left a voicemail for Donais stating: "*Hello, my name is Andre and I am calling about a tenant legal matter. I understand that you practice landlord-tenant law. I wanted to see if I could discuss a legal matter with you. Please give me a call back at 781-492-5675. The matter is somewhat urgent so if you can, please call be back as soon as it is practical.*" First Bisasor Affidavit.

8. On 1-9-17, Donais returned Bisasor's call and engaged in a telephone consultation lasting approximately seven minutes. First Bisasor Affidavit; Donais March 2017 Affidavit. During the 1-9-17 consultation, Bisasor disclosed

confidential information about plaintiffs' claims against Homewood, their legal situation, and urgent need for legal representation. First Bisasor Affidavit.

9.  Donais asked Bisasor whether he obtained Donais's contact information from O'Brien, and Bisasor confirmed he had. 1-18-17 Court Transcript p. 11-12. During the consultation, Donais realized the conversation with Bisasor related to the same case O'Brien had discussed with him on 1-5-17. See Exhibit 34 - 1-18-17 Court Transcript p. 11-12; Donais March 2017 Affidavit. Bisasor asked Donais whether the consultation was confidential, and Donais confirmed it was protected by attorney-client privilege. First Bisasor Affidavit.

10. Bisasor shared confidential information including: (a) background circumstances of the dispute with Homewood; (b) strategy for filing a 540-A petition before 1-10-17; (c) concerns about potential weaknesses in their case; (d) information from discussions with a Nashua police officer; (e) details about disparate treatment in food service that was never included in any public filing; and (f) other strategic and factual matters. First Bisasor Affidavit.

11. Donais provided legal advice during the consultation, including his opinion that a TRO would likely be granted based on what Bisasor described, and analysis of their contract claims. First Bisasor Affidavit.

12. Donais told Bisasor during the consultation that there "may even be a potential conflict," indicating Donais recognized potential ethical issues. Exhibit 34 - 1-18-17 Court Transcript p. 12.

### B. Judicial Recognition of Attorney-Client Relationship

13. On 1-18-17, during a hearing in Nashua District Court, Judge Moore found that an attorney-client relationship existed between Donais and plaintiffs based on the consultations. First Bisasor Affidavit; Anderson Affidavit.

14. Judge Moore, who had served on the Professional Conduct Committee for 10 years and as vice chair of the hearing committee for 4 years, told Donais that if he had any discussion with O'Brien or Bisasor about the facts of the case, he would be in conflict. Exhibit 34 - 1-18-17 Court Transcript.

15. As a direct result of Judge Moore's finding, Donais was required to withdraw from representing Homewood Suites due to the conflict of interest created by his consultations with plaintiffs. First Bisasor Affidavit.

### C. Donais' Admissions Establishing Prospective Attorney-Client Relationship

16. In his March 2017 affidavit, Donais admitted that "Andre provided me some general details about what he described as a landlord tenant dispute involving inflated charges and also a concern about the existence of racial discrimination against him, and a need to immediately file." Donais March 2017 Affidavit.

17. In his email dated 1-11-17, to Dave Akridge and Karl Terrell, Donais admitted: "*What I know is that I received a call from Andre who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper.*" Exhibit 19 [1-11-17 Email].

18. At the 1-18-17 hearing, Donais admitted he "spoke in for six minutes 37 seconds to get a sense of what this case was about" and that he "figured out what the case was about." Exhibit 34 - 1-18-17 Court Transcript p. 11-12.

19. Donais admitted he received sufficient information during the consultation to realize it was the same case O'Brien had discussed with him, demonstrating he obtained substantive confidential information. Exhibit 34 - 1-18-17 Court Transcript p. 11-12.

### D. Unauthorized Disclosure To Adverse Parties

20. On 1-11-17, Akridge contacted Donais seeking his involvement as local counsel for Homewood Suites, the same parties plaintiffs were pursuing claims against. Exhibit 20 - Akridge Affidavit dated 5-4-17.

21. During their 1-11-17 conversation, Donais told Akridge he had received a call from someone named Andre about a landlord-tenant matter involving "some type of mixed-use property." Exhibit 20 - Akridge Affidavit of 5-4-17.

22. Akridge and Donais "concluded that Andre was quite likely Mr. Bisasor" during this conversation. Exhibit 20 - Akridge Affidavit dated 5-4-17. Then Akridge specifically asked Donais whether he would have a conflict serving as local counsel given the conversation with Andre, Donais responded "with conviction that he did not." Exhibit 20 - Akridge Affidavit 5-4-17.

23. On 1-11-17, prior to being retained by Homewood, Donais sent an email to Akridge, Terrell, and Terrell's assistant disclosing confidential information from his consultation with Bisasor, including details about the 540-A petition, claims of disparate treatment in food services, overcharging allegations, and the mixed-use property nature. Exhibit 19 - 1-11-17 Email Chain.

24. The information Donais disclosed about disparate treatment in food services was never included in plaintiffs' 540-A petition, demonstrating it was confidential information obtained only through the privileged consultation. First Bisasor Affidavit.

25. On 1-13-17, Donais filed an appearance on behalf of Homewood defendants and a motion for pro hac vice admission of Terrell. Court Records. Exhibit 21.

26. Donais never sought consent from plaintiffs before disclosing confidential consultation information to adverse parties or before representing those adverse parties. First Bisasor Affidavit.

### E. Continued Breaches of Confidentiality

27. In March 2017, months after his disqualification, Donais filed an affidavit in two New Hampshire courts containing false statements about the January 9, 2017 consultation, including the fabricated allegation that Bisasor accused him of racial discrimination. Donais March 2017 Affidavit.

28. Bisasor categorically denies making any accusation of racial discrimination against Donais and avers that no words relating to race, racism, or discrimination were spoken during their consultation. First Bisasor Affidavit.

29. During the time period of 2017, 2019, and 2020, Donais disclosed contents of the confidential consultation to multiple unauthorized third parties including: (a) his wife Mary Donais; (b) his sons Garrett and Aiden; (c) members of the Manchester NH Crime-Line board; (d) Manchester NH police; and (e) friends, colleagues, and community members. First Bisasor Affidavit; Anderson Affidavit.

30. On 6-18-19, Donais voluntarily provided detailed information about the confidential consultations to Manchester police, including fabricated statements about plaintiffs' conduct and character. Exhibit 27 - Police Interview Transcript.

31. These disclosures occurred well outside any litigation context and were made for purposes of harming plaintiffs' reputation rather than any legitimate legal purpose. First Bisasor Affidavit.

### F. Knowledge of Conflict and Deliberate Misconduct

32. Donais knew as early as 1-9-17, that representing Homewood would create a conflict, as evidenced by his admission that he told Bisasor there "may even be a potential conflict." Exhibit 34 - 1-18-17 Transcript p. 12.

33. Despite this knowledge, Donais agreed to represent Homewood on 1-13-17, and fought vigorously to remain on the case even after the conflict was raised by opposing counsel. Exhibit 34 - 1-18-17 Court Transcript; First Bisasor Affidavit.

34. When contacted by Attorney Elliott Berry on 1-17-17, about the conflict, Donais denied any wrongdoing and refused to withdraw voluntarily. First Bisasor Affidavit.

35. At the 1-18-17 hearing, Donais accused Berry of creating a "contrived conflict," which Judge Moore rejected. Exhibit 34 - 1-18-17 Court Transcript.

4

36. Donais only withdrew after Judge Moore made clear he would formally disqualify him if Donais did not withdraw voluntarily. Exhibit 34 - 1-18-17 Court Transcript; First Bisasor Affidavit.

### G. Indisputable Facts From Donais' Admissions Establishing Breach of Fiduciary Duty

37. The following facts are established from Donais' own words and admissions:

   a. Bisasor had the intent to seek legal advice from an attorney. This is indisputable.

   b. Donais called Bisasor with the intention of having a conversation with a prospective client about that prospective client's legal situation and needs. This is indisputable.

   c. When Donais called Bisasor, Bisasor then communicated information about his legal situation and needs to Donais, with the intention of securing legal advice and/or legal representation from Donais as an attorney. This is indisputable.

   d. [Note: Donais states in his affidavit that Bisasor asked him to take his case but he declined. This establishes the intent of Bisasor, in sharing information with Donais, was to secure legal advice and legal representation from Donais as an attorney on a landlord-tenant matter, in the area of practice of Donais].

38. Under the above facts and circumstances, it is virtually impossible that this information shared with Donais would not be confidential information or not be protected by attorney-client privilege.

39. The above indisputably establishes that a prospective attorney-client relationship was formed, as defined by NH law, and that Donais had fiduciary duty of confidentiality with respect to the plaintiffs and that Donais breached that duty of confidentiality when he divulged information shared with him from Bisasor to the opposing parties, as part of an attempt and desire to secure a position with them to be their local counsel. This represents an intentional egregious breach of fiduciary duty.

### II. FURTHER INDISPUTABLE FACTS FROM ESTABLISHING FIDUCIARY DUTY BREACH
#### A. Overview

40. On or about 1-6-17, Bisasor left a voicemail message for Donais seeking legal representation regarding their dispute with Homewood.

41. On 1-9-17, Donais returned the call and engaged in a telephone consultation with Bisasor that lasted approximately 7 minutes. During this consultation, Bisasor disclosed confidential information about their claims and legal situation for the purpose of obtaining legal advice and potential representation.

42. Bisasor provided this information in good faith reliance on Donais's professional obligations as an attorney. Bisasor understood this consultation to be confidential and protected by attorney-client privilege.

43. Donais then thereafter went to represent the opposing party and disclosed information about Bisasor's conversation to them prior to representing them.

44. On 1-18-17, in Nashua District Court, Judge Paul Moore ("Judge Moore") found that an attorney-client relationship existed between Donais and Bisasor based on the 1-9-17 consultation and based on Obrien's consultation with Donais on behalf of Anderson on 1-5-17. As a result of this finding, Donais was required to withdraw from representing Homewood due to the conflict of interest.

45. Bisasor and Anderson subsequently learned that Donais subsequently disclosed information from those consultations to more third parties.

**B. Legal Action Initiated By Plaintiffs | Donais Goes To Represented Opposing Side**

46. On 1-9-17, Plaintiffs filed an emergency 540A petition in Nashua District Court. A Temporary Restraining Order (TRO) is granted by the court to halt any threat of a removal action. On 1-10-17, the 540A petition and the TRO is served on general manager Adam Robitaille in the morning.

47. On 1-11-17, after Terrell advises Akridge of the need for local counsel, Akridge contacted Donais seeking his involvement in the case as local counsel and to support the pro hac vice admission of Terrell. During phone call, Akridge explained the Homewood matter involving the plaintiffs. Donais then informed Akridge that he had a conversation with Bisasor about the case the day before. Donais explained to Akridge what was discussed with Bisasor. Akridge asked Donais if this created a conflict and Donais emphatically assured Akridge that it did not. Akridge then informed Terrell of the issue and Terrell instructs Akridge to tell Donais that he needs Donais to describe the substance of the Bisasor conversation to Terrell. Donais then writes an email to Akridge, Terrell, and Terrell's assistant, with a brief description of the 1-9-17 conversation, saying that is all he knows, providing his bar # and ending with "let me know how you want to proceed".

48. Donais' description of the 1-9-17 call contained confidential information shared by Bisasor, the sharing of which constituted unauthorized disclosure of private client information to adverse parties, breaking client confidentiality.

49. Then, further, at some point thereafter, around 2 days later, on or about 1-13-17, Donais (after having consulted with Bisasor on 1-9-17) agrees to be hired and is hired by Akridge to represent the opposing party [Homewood].

6

50. Donais also failed to inform Bisasor of this nor obtained consent from Bisasor before doing so.

51. Donais' voluntary decision to call back Bisasor in response to his voicemail, represented at the very least an implied agreement by Donais to engage in an attorney-client conversation protected by privilege, and thus Donais should have known that it was protected by privilege.

### C. Donais' Contact With Akridge

52. After the 1-9-17 call with Bisasor, Donais and Akridge had a phone call on 1-11-17 where the plaintiffs and their case against Homewood was discussed. Donais discussed the information shared with him from Bisasor. Donais shared this information without receiving consent from Bisasor and without informing Bisasor that he was going to share such information with Akridge. This conversation was centered on whether Donais could be hired to represent Akridge/Homewood in the same case that Bisasor discussed with Donais on 1-9-17. Subsequent to this phone call, Donais sent an email on 1-11-17 to Akridge stating:

> "What I know is that I received a call from "Andre" who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper..".

53. Here, Donais admitted that he received specific client consultation information from Bisasor on the 1-9-17 call.

54. On 1-11-17, Akridge calls Terrell and tells him of the discussion he had with Donais about the contact with Bisasor. Donais writes an email to Terrell stating that he had contact with Bisasor and provided a summary of what was discussed with Bisasor. Donais and Terrell had a further conversation by phone about the matter. On 1-13-17, Donais filed an appearance on behalf of the Homewood defendants and filed pro hac vice admission motion for Terrell. On 1-17-17, Donais and Terrell filed a 60-page motion to dismiss in the Nashua District Court. The motion to dismiss included/utilized confidential information that was shared with Donais both directly via call with Bisasor and indirectly via communications with Obrien from Anderson.

### D. Elliot Berry's 1-17-17 Call with Donais

55. On 1-17-17, renown Attorney Elliott Berry (of the NH Legal Assistance) agreed to formally represent plaintiffs in this case. Plaintiffs advised Berry of the situation with Donais. Berry expressed shock at these events. Berry advised plaintiffs that this was a serious violation of Rule 1.18 of the NH rules of professional conduct.

56. On 1-17-17, Berry called Donais about the conflict of interest and to give him a chance to explain and/or to withdraw from the case because Berry now had a duty to bring the matter to the attention of the court. But Donais told Berry that there was no conflict of interest, and that he did not think he needed to withdraw from the case.

### E. Court Hearing on 1-18-17

57. On 1-18-17, a court hearing took place in the Nashua district court before Judge Paul Moore. At or near the beginning of the hearing, Berry raised ethical concerns about Donais with the court. A sidebar ensues with counsel for both parties invited to discuss the matter at the bench in front of Judge Moore. Berry explained the ethical concerns to the judge. Donais gave his explanation of the matter citing that he did nothing wrong. Donais fought vigorously to remain on the case, and even accused Berry of creating a contrived conflict. However, Judge Moore told Donais that he had been part of the PCC for the past 10 years and was vice chair of the hearing committee for the past 4 years. Judge Moore told Donais that if he had any discussion with Obrien or Bisasor about the facts of this particular case, he would be in conflict. Judge Moore indicated to Donais that this could become a very serious matter if plaintiffs decide to pursue this as a complaint and that Donais needs to carefully consider what he is going to do because once "the bell is rung", it will be a problem especially if done while the litigation is proceeding. Judge Moore asked Berry if his clients were willing to waive any conflict and that if they were not, then Donais needed to make a decision on withdrawing. If Donais could not decide for himself, then Judge Moore would make the decision for him. Judge Moore clearly was signaling to Donais that it would be much better for him to withdraw on his own without being formally disqualified by the judge. Donais got the message loud and clear. After a short recess, wherein plaintiffs told Berry that they did not waive any conflict, then Donais reluctantly told Judge Moore that he was going to withdraw.

### F. Dave Akridge Affidavit on 5-4-17

58. Akridge provided a statement on 5-4-17 in an affidavit that shows that, as of 1-11-17, prior to Donais being hired to represent Akridge and Homewood, that Donais and Akridge knew that Bisasor was the plaintiff suing Akridge and Homewood in the district court, i.e. that they concluded that "Andre" was quite likely "Mr. Bisasor" and that Akridge "heard enough to conclude… that the caller he described was likely Mr. Bisasor".

59. The above shows that Donais received legal advice information from Bisasor, that Donais was in contact with Akridge shortly after the consultation call with Bisasor, that before Akridge hired Donais, Donais shared with Akridge information that Bisasor shared with Donais. The above also shows Donais willfully and knowingly persisted in seeking to represent the opposing party when he knew there was a conflict and when his possible new client and their lawyer was specifically concerned that there was a conflict of interest. But Donais persuaded them

8

that there was nothing to the matter, all the while also hiding that Obrien had spoken to Donais about the same matter and shared more information about the matter, to which Donais even rendered a legal opinion. It is likely that if Akridge and perhaps Terrell had known about the Obrien call, they would not have hired Donais as local counsel. Akridge stated that: *"I specifically recall asking Mr. Donais if he would have a conflict serving as local counsel, given this conversation with "Andre." He responded with conviction that he did not, given the fact that he had turned down the request to take the case, and given also the brief nature of his discussion with the caller."*

## G. Other Statements Made in Donais

60. Donais admits that he received confidential information from Bisasor. As one example, he admits that he received information regarding the "need to immediately file" which further goes to timing and strategy. Donais also stated that during the call he knew it was the same case that he consulted on with Obrien. Donais disclosed the contents of plaintiffs' client-privileged protected information, as noted above, to Akridge, Terrell, and Terrel's assistant, prior to being hired by them to represent them as parties adverse to plaintiffs. Donais further used/disclosed the contents of plaintiffs' client-privileged protected information, as noted above, to Akridge, Terrell, and Terrell's assistant, after he was hired by them to represent them as parties adverse to plaintiffs. This was a breach of confidentiality.

## H. Additional Subsequent Events

61. In the time period spanning 2017, 2019, 2020, and after, Donais disclosed the contents of plaintiffs' client-privileged protected information, as noted above, to his family including wife/sons, his friends, members of the Manchester NH crime-line board, and the Manchester NH police, including details of the 1-9-17 conversation with Bisasor and the 1-5-17 conversation with Obrien.

## III. FURTHER INDISPUTABLE FACTS PERTAINING TO BREACH OF FIDUCIARY DUTY ESTABLISHED BY DONAIS' STATEMENTS AND ADMISSIONS
### A. Donais Has Admitted Facts That Establishes Conflict/Breach Of Fiduciary Duty

#### i. 2017 Affidavit

62. Donais' affidavit states: "*Andre provided me some general details about what he described as a landlord tenant dispute involving inflated charges and also a concern about the existence of racial discrimination against him, and a need to immediately file.*"

63. Rule 1.18 states:

   a) A person who provides information to a lawyer regarding the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
   b) Even when no client-lawyer relationship ensues, a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.

9

64. So, according to Rule 1.18, Bisasor was a prospective client. Donais provided information to Bisasor, as a lawyer with the possibility of forming a client-lawyer relationship with Donais.

65. Donais states that Bisasor "**_provided some general details about…a landlord-tenant dispute, involving inflated charges",_** along with information about a racial discrimination claim and urgent timing needs, etc.  Here, Donais thus admitted to receiving/reviewing information from a prospective client.

66. Therefore, because Bisasor provided information to Donais regarding the possibility of forming a client-lawyer relationship, making Bisasor a prospective client, and because Donais received and reviewed information from Bisasor as a prospective client, Donais was prohibited from representing a client with interests materially adverse to those of Bisasor as a prospective client.

67. Further, Donais knew that the case in which he was contacted about by Dave Akridge on or about 1-9-17, was the same case that Bisasor spoke to him about on 1-9-17.

### ii. 1-18-17 court hearing

68. In the 1-18-17 court hearing[1], Donais stated:

> "So here's what happened, Your Honor, is on Thursday, January 5th, at 5:37, Rob O'Brien called me and said hey, I've got a potential client, here's what the issues are, is it something that you'd be interested in? He didn't tell me who the plaintiff was, didn't tell me who the defendant was, just generically laid out what some of the issues were.  I said I'm not interested. Rob said can I give your name to the other party so that you can explain that to **him**[2]. I said I'd rather you not since I'm not interested in taking the case. I don't want to take it. I don't have the ability to do it on the timeline. Notwithstanding that, Rob gave contact information. I got a phone call -- I can give you all the records if Your Honor would like. So this is Rob O'Brien's  statement of what transpired. So Rob told me about the case. These come from my phone records and my system, Your Honor. And I redacted out the other entries for the names of -- because they are clients -- and the whole bit. But there were two records. One was on January 5th.  The other was on January 6th. So on the 5th at 6:17 p.m., I had a seven second phone call and that was probably spent navigating the phone tree and it disappeared. There was another phone call on Friday the 6th at 5:16 p.m. for a minute 37. Again, navigating the phone tree. There was a message. Got the message, generically about hey, got a landlord-tenant case, can I talk with you about it. And I said sure. This is my call back the following day on Monday, spoke in for six minutes 37 seconds to get a sense of what this case was about, Your Honor. **Once I figured out what the case was about, I said did you get my name and info from Rob O'Brien** and the answer is yes. And I said I already told him I don't want to do it.  So at that point, there was pressure to what can I do with the case. I really don't want to do it. I'm not interested in doing that. I don't have the time to do it. I can't do it on the timeline that you want. **May even be a potential conflict**. Don't want to take the case. That was the end of the phone call."

69. Here, Donais stated that, during the 1-9-17 phone call with Bisasor, Donais figured out that there "**may even be a potential conflict**". This could only mean that he connected the case to the Homewood suites case. This means that Donais knew that Homewood and Akridge were involved in a case against Bisasor and his spouse. This is proof that Donais knew of the conflict from 1-9-17, by his own admission.

---

[1] See **Exhibit 34 – Transcript of the District Court Hearing on January 18, 2017.**

[2] NB: Mr. Obrien has stated in his 1-18-17 affidavit that the caller was a "**she**", hence a female, meaning me. This was not a "him".

70. Moreover, here Donais also admits that he realized that there was a connection between the conversation Donais had with Obrien on 1-5-17 and the conversation he was having with Bisasor on 1-9-17 i.e. "***Once I figured out what the case was about, I said did you get my name and info from Rob O'Brien and the answer is yes. And I said I already told him I don't want to do it***."

71. Donais also admitted "*There was another phone call on Friday the 6th at 5:16p.m. for a minute 37. Again, navigating the phone tree.* ***There was a message. Got the message, generically about hey, got a landlord- tenant case, can I talk with you about it. And I said sure. This is my call back the following day on Monday, spoke in for six minutes 37 seconds to get a sense of what this case was about, Your Honor. Once I figured out what the case was about, I said did you get my name and info from Rob O'Brien*** *and the answer is yes.*"

72. Here, Donais states that he received enough information to figure out what the case was about. This establishes that he received confidential information about the legal matter from Bisasor. This also establishes that he received confidential information about the legal matter from Obrien about the same legal matter. It can be inferred from this admission alone that in order to receive enough information to figure out what the case was about, Donais must have received information about the facts of the case, the claims by the plaintiffs, and the alleged wrongdoing by the Homewood defendants. This is even more clear-cut given that Donais states that he figured this all out without having the names of the parties, including without the name of the hotel. Thus, his identification of what the case was about and that it was the same case that Obrien told him about, must have been based on details of the facts and claims of the case, which by definition constitutes confidential information provided via a prospective attorney-client communication. There is no logical way for Donais to avoid the fact that he received confidential information from Bisasor and from Obrien (via Anderson) about the facts and claims of the case, prior to the filing of any lawsuit.

### iii. 1-11-17 Email

73. On 1-11-17, Donais wrote an email to Dave Akridge, Karl Terrell (out of state counsel advising Akridge), and Felicia Brogden (Terrell's assistant), stating:

> Karl and Felicia: I am happy to provide local representation to support your pro hac vice admission. What I know is that I received a call from "Andre" who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper. Given his timeline and his issues, I was not in a position to assist, and did not engage in any conflict analysis to determine the property, property address, or whether there was a conflict. This is the extent of what I know. I am around and available today

with availability until 2pm today, tied up for about 1 hour, and then spotty after that. Tomorrow is clear from 9-10, and 10:30-1, and 2-4:30.  My NH bar # is 12466. Let me know how you wish to proceed. Craig

74. First, Donais here admits that he received information from Bisasor regarding discussing filing a 540A petition, claiming being treated differently for "food services because they were minorities", and were being overcharged for their use of the room, and that it was a "mixed use property", in which part was rented, and part was under innkeeper, and an urgent timeline. Again, this goes to providing confidential information from Bisasor to Donais about the facts of the dispute, and the intent to file a 540A petition (as a legal strategy). Donais further here states he was told about disparate treatment (which was not included in the 540A petition). It should be noted that the motion to dismiss (on page 15 and 16, among others) filed by Donais and Terrell in the Nashua circuit court, fabricated untrue[3] attacks on Bisasor for "misconduct…on numerous occasions during the food service", which was a preemptive attack to undermine any future raising of disparate treatment in the food service, which was a direct function of the information Donais obtained from Bisasor. The motion to dismiss also preemptively raised race issues in order to again neutralize any possible future claim of race discrimination. This is a clear example how Donais' receipt of confidential information from Bisasor and Anderson (via Obrien) compromised the plaintiff's case and disadvantaged them in therein.

75. NB: It should be noted that here Donais stated that this is "all he knows". But yet in his March 2017 affidavit, 3 months later, he then claims to know much more about what was said in the 1-9-17 call way beyond what he said here in this 1-11-17 email. Donais was clearly lying in the email about the extent of what was discussed on the call. The fact that Donais lied about this is undisputed from the record.

76. For instance, in his affidavit, he claims Bisasor accused him of racism for declining the case. Donais also hid the fact that Obrien had contacted him with information from Anderson, that Donais realized it was the same case that Obrien spoke to him about, or that Donais purportedly asked Bisasor if he got the contact info from Obrien. Further, Donais didn't mention that he (purportedly) told Bisasor there may be a potential conflict. This is a lot of information that Donais left out of this email, some of which was later stated in his March 2017 affidavit or in the 1-18-17 hearing.

---

[3] Note: These untrue attacks were withdrawn by the Homewood case defendants in April 2022, pursuant to a settlement agreement that including nullifying the false defamatory statements made in this motion to dismiss.

77. It should be noted that Donais admits here that Akridge/Homewood had not yet hired him, as he gave his "NH bar number" to them and stated "let me know how you want to proceed" in that first email to them. This demonstrates that he had not been hired as yet because he could not have been hired without providing Akridge and Terrell his bar #. Further, his query about how they wanted to proceed, confirms he hadn't been hired as yet.

78. This directly contradicts his statement in the March 2017 affidavit where he stated:

> "Since I did not learn from either Attorney O'Brien or Andre about the parties involved in Andre's matter, I thereafter agreed to serve as local counsel when I was contacted by Attorney Karl Terrell, representing Homewood Suites, in the case brought by Ms. Natalie Anderson in this 9th Circuit Court-Nashua District Division landlord-tenant case. I had a chance to review Ms. Anderson's pleading, confirmed the identity of the plaintiff (and that Andre was not a plaintiff) and performed a conflict check before undertaking representation.

79. The above statement by Donais is clearly false as he clearly learned that Andre was involved in the Homewood case on 1-11-17, in the first conversation he had with Akridge about the case, prior to undertaking representation of Homewood, before reading any pleadings, before performing any so-called conflict check. This is corroborated by Akridge's affidavit. [NB: This alone should impeach Donais' affidavit as being untruthful. He needs to be put under oath and cross-examined about this.]

80. Further, this email indisputably shows that, on or about 1-11-17, Donais divulged confidential information shared with him from Bisasor on the 1-9-17 prospective client call, to Akridge, Terrell, and Terrell's assistant, prior to being representing Akridge/Homewood, which representation was agreed upon/occurred two days later on 1-13-17 (which is the date of a pro hac vice admission motion, on behalf of Terrell, filed by Donais, in circuit court.)

81. Here, Akridge contacted Donais by phone, on 1-11-17, about possibly representing him and his company as local counsel. Donais told Akridge he spoke to "Andre" about the case on 1-9-17 and figured out that Andre was involved in the case. Donais also told Akridge and Terrell about the facts of what Bisasor told Donais including specific facts, specific potential claims, strategic actions being contemplated, and urgent timing factors. This includes information about disparate treatment claims that was never included in the 540A petition and thus Donais clearly revealed to Akridge and Terrell, information that they did not know about plaintiffs' claims from the 540A petition. This is indisputable. Donais should not have divulged any of this information to unauthorized third parties, much less to the opposing parties in the same dispute.

### iv. Akridge Affidavit

82. Below is the relevant excerpt of Akridge's affidavit:

On January 10, we received a copy of the legal action the plaintiffs filed in the Circuit Court in Nashua. I asked Mr. Terrell to represent us. On January 11, at 11:29 am, Mr. Terrell sent me an email stating that he would "need to associate local counsel," and provided a copy of the local court rule on the admission of out of-state counsel. A copy of this email and several subsequent emails, in a single chain dated January 11, is attached. Mr. Terrell and I had discussed, earlier, the likely need to associate local counsel. He concluded his email by stating: "Please ask the lawyer you mentioned if he's willing to provide this service." The lawyer I had in mind was Craig Donais, who I have known for several years. He has provided legal services for me related to the board of a condominium association that I serve on, and he once handled a personal matter for me. Mr. Donais has never been retained to perform work for either Great American Hotel Group or the Homewood Suites by Hilton in Nashua. Shortly after Mr. Terrell's 11:29 am email, I called Mr. Donais. Our discussion was quite short; maybe four or five minutes. This was my first conversation with Donais that had anything to do with the dispute involving Anderson and Bisasor. During that call, I briefly explained the nature of the case, the fact that it involved the Homewood Suites in Nashua, and the need for local counsel. Donais then let me know that he had received a call from an individual named "Andre," who said he was looking for an attorney to represent him in a landlord/tenant matter. The situation, as Donais said he understood it, involved some type of mixed-use property. He said he did not remember the caller identifying this property as the Nashua Homewood Suites. In any event, in piecing this together, we concluded that "Andre" was quite likely Mr. Bisasor.
……
 I specifically recall asking Mr. Donais if he would have a conflict serving as local counsel, given this conversation with "Andre." He responded with conviction that he did not, given the fact that he had turned down the request to take the case, and given also the brief nature of his discussion with the caller. Following this call, I sent Mr. Donais an email - at 11:41 am - copying Mr. Terrell and his assistant Felicia Brogden. See the attached email chain. In that email, I offered to "do a phone intro" with Mr. Donais and Mr. Terrell, as the two of them had not yet met or spoken concerning this case (and, to my knowledge, had never met or spoken previously on any other matters). I did not provide Mr. Terrell, in that email, a phone number for Mr. Donais.  I stated also to Mr. Terrell, in that email, that Mr. Donais "may have received a call from Bisasor yesterday" (I have since read Mr. Donais' affidavit, in which he states he spoke with Donais on January 9, not January 10, as I apparently thought on Jan 11, when referring to that call as having taken place "yesterday'). I stated further, in this email, that Mr. Donais "did not take his case." I believe I asked Mr. Donais to explain and describe to Mr. Terrell the substance of his conversation with Bisasor.

83. Here, Akridge confirms that Donais learned that Bisasor was involved in the Homewood case on 1-11-17, in the first conversation he had with Akridge about the case, prior to undertaking representation of Homewood, before reading any pleadings, before performing any so-called conflict check. Donais, as of 1-11-17, thus knew that he had received prospective client information on the substance of the Homewood case, from Bisasor on 1-9-17 and from Obrien on 1-5-17. He thus had enough to know there was a conflict, and that to move forward with representing Homewood would constitute a breach of fiduciary duty to the plaintiffs.

**B. Statements & False Statements by Donais in his Affidavit that Support Breach of Fiduciary Duty Claim**

84. Donais made several statements, including false statements in his March 2017 affidavit that establishes the breach of fiduciary duty claim, as follows.

85. In his affidavit, Donais stated that he agreed to serve as local counsel for Homewood because he did know about the parties from Obrien or Bisasor and because he performed a conflict check before undertaking representation and reviewed the pleadings filed in district court, which confirmed that the plaintiff was not Bisasor. But this contradicts his statements made in the 1-11-17 email chain with Donais, Akridge and Terrell, which shows that before Donais undertook representation of Homewood, he had an initial conversation with Akridge who initiated

the contact apparently in the morning of 1-11-17 and who explained the case to Donais, and wherein it shows that Donais immediately recognized that "Andre" was involved in the case. This realization took place before representation was undertaken and it prompted Akridge to inform Terrell of the problem and it further prompted an investigation by Terrell into what exactly was discussed between Donais and Bisasor. Because of the sequence of these facts, it would have been totally unnecessary, unnatural, anachronistic for Donais to then perform a conflict check when he already knew who the plaintiffs were by his own admission, before undertaking representation. Donais' story simply does not make any logical sense and appears to be a rather clumsy attempt to harmonize or massage the facts in order to cover himself. But it cannot be done. The facts are too specific and pronounced to support his tortured story. The facts are not malleable enough to avoid the clear/evident contradictions in his story. The bottom line is that here again it is clear that Donais is not telling the truth. The truth is that he did not need to perform a conflict check because he already knew who the parties were. Plaintiffs have offered evidence that Donais knew who the parties were from 1-5-17 when Obrien contacted him and told him about Homewood. Plaintiffs also offered evidence that Donais knew who the parties were, because he stated/claimed that on the 1-9-17 call with Bisasor, he said that there **may be a potential conflict**. But even if these facts and evidence are not considered for the moment, it is indisputable that Donais knew who the parties at the very least during the purported first contact that Akridge had with Donais wherein Akridge purportedly was first seeking to recruit Donais as local counsel for the case on or about 1-11-17. This is proven by the email record that Donais attached to his motion to dismiss amended complaint filed 8-22-25 in this court.

86. Moreover, Donais' statement that he "***had a chance to review Ms. Anderson's pleading, confirmed the identity of the plaintiff (and that Andre was not a plaintiff***)", simply does not ring true but comes across as a strained attempt to orchestrate the appearance of ignorance and innocence. Moreover, Akridge has stated in his affidavit that when Akridge explained to Donais the broad issues of the case, Donais immediately recognized the facts and the parties (i.e. presumably based on the facts recited to him just a day or two earlier in the call with Bisasor on 1-9-17, as well as on the prior call with Obrien on 1-5-17). Yet if that is true, then how is it that Donais could (on or about 1-11-17) review the entire pleading filed by the plaintiffs in district court on 1-9-17, without making the same realization, since the district court pleadings went into detail about the facts of the case (the

same facts that Akridge must have covered more broadly with Donais on the phone on 1-11-17, assuming that call took place after Donais review of the pleading). This just simply makes no sense. Donais is trying to have it both ways and, in the process, has created an untenable contradiction. Otherwise, there is an irreconcilable contradiction between the affidavit of Donais and the affidavit of Akridge.

87. NB: This is just not believable and this purported paper trail smacks of orchestration and manipulation. Yet, even assuming the benefit of the doubt, it still makes no sense that Donais would later claim in his affidavit that he relied upon a conflict check performed at the same time and in the same call wherein he admitted that he realized who the parties were and that "Andre" was Anderson's husband at that time on 1-11-17. A conflict check was no longer necessary to be performed or otherwise to be relied upon because Donais had perfect knowledge of the parties at that time and because he therefore at that time had knowledge that there was a conflict or at least a potential conflict or the appearance of a conflict. Hence, Donais' story cannot be credited or believed and reflects a further attempt at deflection, obfuscation and subterfuge to mislead this tribunal.

88. It should be noted that the text messages from Obrien were not sent to Bisasor. Obrien sent them to Anderson. Obrien did not have any contact with Bisasor nor did he text Bisasor anything. Any and all contact with Obrien occurred with Anderson. Donais attempts a sleight of hand by trying to insinuate that he understood that the text messages from Obrien were sent from Obrien to Bisasor. But even this fails because Obrien made it clear to Donais that the person he spoke to on 1-5-17 was a female, not a male. This is made clear even in the affidavit that Donais solicited from Obrien on or about 1-17-17 so that Donais could carry it to court on 1-18-17 to show the judge. In that affidavit of Obrien[4], Obrien references the caller as a **"she"** on at least two occasions[5]. Moreover, during the 1-18-17 court hearing, it was clearly stated the conversation with Obrien occurred with Anderson and that the texts were sent to Anderson. Moreover, in the motion to disqualify counsel that was submitted to the district court on 3-6-17 and to the superior court on 3-1-17 by plaintiff, it was abundantly clear that the conversation with Obrien took place with Anderson and that the text messages from Obrien was sent to

---

[4] See **Exhibit 10 – Affidavit of Robert Obrien dated 1-18-17.**

[5] Donais tries a "sleight of hand" argument to make it look as though no one knew the gender of the person that had called Obrien on 1-5-17. Yet Obrien clearly identifies the person who called him as a "she", which he did twice in his affidavit. This shows the intent to deceive. Donais knew that Obrien had identified the caller as a female, and thus that it could not have been Bisasor who spoke to Obrien. Yet, he put that misleading statement in his filing in order to confuse the court.

Anderson's phone. Yet, with all those facts made clear from multiple sources and in multiple pleadings, Donais still tries, in his 3-13-17 affidavit, to feign ignorance and attempts to reframe the conversation with Obrien as occurring with Bisasor and the texts from Obrien as going to Bisasor. This just shows the lengths to which Donais was and is willing to go to be deceitful and misleading in order to confuse the triers of fact. But there is a purpose to this deceit and obfuscation: he wants to create the impression that Anderson could not be implicated as a prospective client and so if he misdirects the conversation as taking place between Obrien and Bisasor, so that he can try to make or maintain the argument that there was no contact with Anderson whether directly or indirectly and that Anderson can never be considered to have been a prospective client. This is the level of sophistry and subterfuge that Donais is capable of and it is a warning to this tribunal that he is playing a very nuanced and sophisticated game of deceit.

89. Similarly, Donais again tries to engage in "sleight of hand" and misdirection when Donais stated in his affidavit that "**the text message from Attorney Obrien attributed statements to me that I simply did not make. These statements also appear in a paragraph referencing Attorney Diaz, so it is not clear whether the statements were intended to be attributable to Attorney Diaz or to me**.". First it should be noted that Obrien did not speak with "Attorney Diaz" on 1-5-17. Obrien has made clear that Donais was the one who provided the legal opinion on the facts of the case and that was what was presented in the text message from Obrien to Anderson. Second, the reference to "Attorney Diaz" was in reference to the contact information for Attorney Bussiere. Obrien was simply stating that Attorney Diaz (hereafter "Diaz") is another attorney in the law firm of Attorney Emile Bussiere. Then Obrien turned his attention to the conversation he had with Donais and the legal opinion that Donais had about the facts of the case, as was presented to him by Obrien on Anderson's behalf. It should be noted that the statements attributed to Donais could not have been intended to be attributed to Diaz because Diaz does practice discrimination law as noted on his bio[6] from the Bussiere & Bussiere website (in fact Diaz appears to be only attorney in that law firm that has experience in discrimination law). Hence, Diaz's bio does not comport with the statement that "he would not opine on discrimination cases outside his experience".

---

[6] See **Exhibit 14 – Website Bio Information of Attorney Keith Diaz showing that he practices discrimination law.**

Hence, Donais' clever attempt at misdirection again fails. The text message from Obrien to Anderson stated as follows:

> +16034599965
> Thursday January 5, 2017
>
> "Here is contact info for attorney who handles discrimination cases Bussiere & Bussiere, P.A., please call 603.622.1002 emiljr@bussierelaw.com. Another attorney in that form (firm) is Keith Diaz. I spoke with Attorney Donais. He said you have a great contract case for the overcharges. He said the innkeeper rules would likely apply to your situation. Which allows for "no cause" evictions. He would not opine on the discrimination claims outside his experience." 6.15pm.

90. Further, in his affidavit, Donais states that he did not draft any pleadings nor was he involved in the drafting of any pleadings. This is simply not credible. Both he and Terrell signed and filed a 60-page motion to dismiss on 1-17-17 in the district court. It is not believable that he was not involved in any way with the drafting or editing of that pleading that he signed his name to. Moreover, Donais evidently drafted (at the very least) the filings related to his appearance and he must have been involved in the motion to admit pro hac vice, since outside co-counsel was not yet admitted to the case. Beyond that, he must have been involved in the preparation of the pleadings filed on 3-16-17 in district court which relied heavily upon and utilized his affidavit. It is virtually impossible for those pleadings to be drafted without Donais' involvement (especially given what was written in those pleadings).

91. Donais states further in his affidavit that "***After learning of Attorney Obrien's purported communication with Andre, as well the contents of the text message, and after advising Attorney Terrell of these same facts at the courthouse, it was my decision to file my withdrawal on the case, given the potential appearance of conflict, despite my efforts to avoid any conflict***." But this again is untrue, inaccurate and misleading. First, as stated before, Obrien had no communications with Bisasor. Second, Donais self-purportedly "learned" of the communications between Obrien and Anderson at the very least since the call from Attorney Berry on 1-17-17. He thus had a chance to withdraw at that point but instead he argued with Berry and protested that he did nothing wrong. The reason why Donais had in his possession an affidavit from Obrien dated 1-18-17 was because Donais was advised on 1-17-17 by Berry of the text messages to Anderson from Obrien and thus Donais went to Obrien to solicit an affidavit quickly so that he could carry it to court on 1-18-17. If simply learning of the communications with the plaintiff were sufficient for Donais to withdraw, he would have done so on 1-17-17 upon being apprised of this fact by Berry.

92. NB: But all of this ignores the fact that Donais has also admitted elsewhere that as of 1-9-17, he realized that the communications with Bisasor on the 1-9-17 call and the conversation between Donais and Obrien on 1-5-17 were in fact related, and that as of the 1-9-17 he realized that there may even be a potential conflict. Third, Donais spent significant time arguing to the judge on 1-18-17 why there was no conflict and why he should not be excluded from the case. Donais went as far as to accuse Berry of creating a contrived conflict, for which the judge chided Donais for being inappropriate. Moreover, the judge had to pull rank on Donais in reminding or informing Donais of the fact that the judge had spent about 10 years on the PCC and the vice chair of the hearing committee, signaling that he judge knew exactly how the PCC and the hearing committee would view this situation (i.e. that they would find that there was a conflict). The judge also told Donais that there was a conflict and asked Berry to check with his clients to see if we would waive the conflict. Even then, Donais was still stubbornly trying to convince the judge that he did nothing wrong. The judge finally told Donais that he was trying to help him out by giving him a chance to make the decision on his own, and that otherwise the judge would make the decision for him formally. It was only then that Donais reading the tea leaves that the judge was going to formally remove him from the case due to ethical conflict as an official finding, that Donais "decided" to withdraw "on his own", after talking to his clients. The transcript of the 1-18-17 hearing fully bears this out[7].

93. In taking all of the above together, it is clear that the 3-13-17 affidavit of Donais filed in district court on 3-16-17 (and also used and/or filed in superior court on 4-27-17 and 5-5-17), is full of false, untrue, inaccurate, incredible and misleading statements. Under no conceivable circumstances could Donais' conduct, actions and statements reflected in that affidavit be said to represent the standards of honesty and candor to which the NH rules of ethical and professional conduct hold all lawyers to account. This ultimately supports the point that Donais intentionally breached his fiduciary duty to the plaintiffs.

### C. Statements Made by Donais in the 1-18-17 Court Hearing That Support Breach of Duty Claim

94. Donais denied giving his legal opinion on the facts of the case as presented to him by Obrien. The judge said to Donais "***You're giving that person a really brief (indiscernible) on how to handle it, that's one issue. If you're sitting there and discussing the facts particular to the case, then that's something else.***"

---

[7] See attached **Exhibit 34 – Transcript of the District Court Hearing on January 18, 2017.**

95. Donais responded to the judge saying "***I don't think we did, Your Honor. It was a generic discrimination over charge and I said I don't want to do it, Your Honor.***"

96. Berry then points to the text message from Obrien to Bisasor summarizing the legal opinion that Donais gave regarding the facts of the case.

97. Donais later then states that "***And that's actually not what I said to Rob but that's okay. And I think Rob gave his own statement of what transpired in that conversation.***"

98. Donais then accuses Berry of making up a contrived conflict to exclude Donais by saying "***I guess, Your Honor, this is kind of a contrived conflict to exclude me when this is my client and has been my client. I've worked with Dave Akridge who is the principal of the defendant for ten years on other matters and the like. So it's easy to call opposing counsel—***".

99. Berry responds saying that Donais cannot call it a contrived conflict, saying "**MR. BERRY: He can't make it a contrived conflict. In some ways it makes it worse.".** And then the judge steps in and chides Donais for that inappropriate accusation by saying: "**THE COURT: Okay. Two things. Before this gets any further. I think the word contrived is inappropriate**." See Exhibit 34 - page 16 of the 1-18-17 court hearing transcript[8].

100.   NB: The fact that Donais snaps at Berry and lashes out accusing him of a contrived conflict shows the unbecoming character of Donais. Similarly, Donais knew there were legitimate concerns about a conflict because he himself stated that he told Bisasor on the 1-9-17 call that there may be one, and both Dave Akridge and Karl Terrell had previously raised concerns about this conflict as of 1-11-17. Thus, it takes a special kind of dishonesty for Mr. Donais to stand there in court and look both Berry and the judge in the eye and accuse Berry of making up a contrived conflict. Moreover, Donais did this knowing that he had an email chain dated 1-11-17 that showed that he and his client and co-counsel were concerned about a conflict and knowing that he was hiding[9] that email chain from the court on 1-18-17. It shows how Donais is capable of exploiting a situation and to try to turn the tables on the other party who is bringing legitimate concerns to the attention of the court or tribunal. This also shows that Donais cannot be trusted to tell the truth or to be forthcoming with the truth.

8 See **Exhibit 34 – Transcript of the District Court Hearing on January 18, 2017.**
9 See **page 232-240** in **Exhibit 35 – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court**.

### D. Other False Statements Made by Mr. Donais

101.    Donais has stated that the 1-11-17 email from Donais to counsel for Homewood, occurred prior to Donais learning that Bisasor and Anderson were related. Donais has given the indication in his other pleadings in court that he did not know that Bisasor's wife was involved in the case that was discussed with Donais on 1-9-17, until the court hearing on 1-18-17. This is not true. Bisasor explicitly told Donais that the case involved both Bisasor and his wife. So, Donais knew that his wife was part of the case and that it was not Bisasor alone. This is also confirmed by Donais statement (in the 1-18-17 hearing) that, during the 1-9-17 call with Bisasor, he realized the two conversations (i.e. the one with Obrien on 1-5-17 and the one he was having with Bisasor on 1-9-17) were connected and this realization occurred within one minute into the conversation with Bisasor on 1-9-17, showing that Donais knew from early in the conversation there was a conflict. This also confirms that Donais consolidated in his mind the information shared from both conversations, which means there was a substantial amount of information that Donais had about the plaintiff's case as of 1-9-17.

102.    Donais has also given contradictory statements, in telling the court on 1-18-17 that he told Bisasor on 1-9-17 that there **may be a potential conflict**. If he did not know or suspect that Homewood was involved in the case, then how could Donais purportedly say to Bisasor, on the 1-9-17 call, that there **may be a potential conflict**. Donais evidently did not represent other principals who owned extended stay hotels in Nashua, NH at the time. The only way for there to be a "potential conflict" is if Donais knew that Homewood Suites of Nashua (managed by his longtime client Akridge) was involved in the dispute with Bisasor and his wife.

103.    Anderson explicitly told Obrien that she and her husband, Andre, resided at the Homewood Suites in Nashua NH. It can be inferred that Obrien told this information to Donais when they spoke by phone on 1-5-17. [NB: **It would be important to obtain Donais' phone records and Akridge's phone records to see if Donais had any calls with Akridge just after the 1-5-17 call with Obrien.**]

104.    Even assuming arguendo that Obrien did not share this information with Donais on 1-5-17, it is evident that Donais knew that Homewood was involved in the case that Bisasor was speaking to him about on 1-9-17, because Bisasor told Donais that the case involved an extended stay hotel in Nashua NH and that Bisasor wanted to file a 540A petition in the Nashua District Court and had spoken to a Nashua police officer about the case. Donais also knew that Dave Akridge managed the Homewood Suites in Nashua NH. **Again, it would be important to**

**obtain Donais phone records and Akridge phone records to see if Donais had any calls with Akridge just after the 1-9-17 call with Bisasor.**

105.    The facts point to knowledge on the part of Donais that Homewood was involved. This can be inferred from his own admissions. There is simply no way to explain away his acknowledgement to the Nashua circuit court that he knew on 1-9-17 that there was a **potential conflict**. Donais needs to be placed under oath and questioned about this matter. Further, in his 2017 affidavit, Donais gives himself credit for recusing himself as soon as he discovered at the 1-18-17 hearing that Homewood was a party.  But this is not true or accurate, as he knew that from much earlier. This is undisputed from the record.

106.    The conversation that Attorney Berry had with Donais regarding his concerns about the conflict of interest showed that Donais insisted on his intent to stay-on as counsel in advance of the 1-18-17 hearing in the district court. Thus, Donais after being contacted by Berry on 1-17-17 about the conflict of interest and ethical issue and told about the text from Obrien, still doubled down on not coming off the case and went to the court on 1-18-17 with arguments prepared for why he should stay on the case, which were rejected by the Judge.

107.    Also, Donais fought to stay on the case while in the 1-18-17 hearing before Judge Moore, until he was forced by Judge Moore to disqualify himself from the case (or otherwise the Judge would do it formally). NB: If there was no conflict of interest or ethical issue whatsoever, then why was he removed/disqualified from the case?

108.    Donais simply thought he could take advantage of plaintiffs because they were initially pro se (in filing the 540A petition), and he proceeded with the conflict of interest situation, and was bold enough to think he could get away with it, even after Berry raised concerns about his actions. Donais thus contradicted himself/the facts.

109.    It is also noteworthy that Donais states that he performed a conflict check prior to taking on the case as defense counsel for Homewood. But this contradicts his statements made in the 1-11-17 email chain with Donais, Akridge and Terrell, which shows that before Donais undertook representation of Homewood, he had an initial conversation with Akridge (who initiated the contact apparently in the morning of 1-11-17 and who explained the case to Donais), and wherein it shows that Donais immediately recognized that "Andre" was involved in the case. This realization took place before representation of the Homewood defendants was undertaken. Moreover, this

story (about performing a conflict check) simply does not ring true, but comes across as a strained attempt to orchestrate the appearance of ignorance/innocence.

110.    Further, in the 1-11-17 email, Donais writes as though he already had a conversation with both Terrell and his assistant, Felicia. The context and syntax suggest a prior conversation i.e. "**Happy to be provide local representation**", "**What I know is…**", etc. Also, Donais then stated that he was around and available to speak further on a few different dates and times.  This indicates further discussion took place. NB: Donais stated that, during the 1-9-17 call with Bisasor, he realized the two conversations (i.e. the one with Obrien on 1-5-17 and the one he was having with Bisasor on 1-9-17) were connected and this realization occurred within one minute into the conversation with Bisasor on 1-9-17. How is it then that the conversation continued for another 6 minutes? This shows that Donais intentionally let the conversation continue on, with Bisasor sharing more confidences/information with Donais, when Donais knew from early in the conversation there was a conflict. This also confirms that Donais consolidated in his mind the information shared from both conversations, which means there was a substantial amount of information that Donais now had about plaintiff's case as of 1-9-17.

### E.  More Proven False Statements in Donais' Affidavit

111.    First, Donais stated that his call with Obrien was for 5 minutes and that Obrien called him. Yet the phone log of Obrien shows that there was an incoming call to Obrien at 5:35pm. So the phone log provided cannot be evidence of the phone call referenced by Donais in his affidavit[10].

112.    On 1-5-17, Donais stated that Obrien told him that the so-called "unknown caller" had a "need to file something on Monday" (presumably Monday 1-9-17). Yet this is contradictory to the actual facts because the departure date was set initially by the Homewood defendants to be on 1-6-17. It was the morning of 1-6-17 that Akridge changed the ejection date to 1-10-17. Therefore, at the time that Anderson spoke with Obrien on 1-5-17, it would have been too late to "file something" on Monday, 1-9-17, given that as far as anyone knew as of 1-5-17, the then departure deadline was 1-6-17 (i.e., Akridge changed the departure deadline to 1-10-17 after a call with Bisasor on 1-6-17). This is another discrepancy with the facts that is created by Donais' affidavit.

---

[10] See **Exhibit 7 – Phone Log of Robert Obrien Provided by Defendants**.

113.    Donais states that he took on the local defense counsel role for Homewood because he did not realize that Anderson was the so-called "unknown caller" vis-à-vis Obrien, or that her husband, Bisasor, was the caller in his 1-9-17 call with Bisasor. But this is belied by the facts as stated before[11].

114.    Note: The text on 1-5-17 was from Obrien to Anderson, not to Bisasor, as erroneously stated by Donais.

115.    Donais states that he never made certain statements to Obrien. Yet Obrien stated clearly that Donais made these statements. If only Obrien had not sent that text message to Anderson, then they both could just deny everything. Unfortunately, the text message[12] stands as the contemporaneous statements and notes made and sent by Obrien at the time that the statements were made to him by Donais.

116.    Based on the above, it is clear that Donais' actions did violate Rule 1.18. His taking the case as Homewood's defense counsel, after the communications he had with Bisasor and Obrien show a willful disregard for Rule 1.18. Similarly, his refusal to withdraw from the case when Akridge pointedly asked him if there was a conflict[13], and when Terrell indicated to him that this was a concerning "flag"[14], shows a willful disregard for rule 1.18. Furthermore, Donais' failure to contact Bisasor to inform him that he would be taking the case as defense counsel is further evidence of a willful disregard for rule 1.18. In addition, Donais refusal to withdraw from the case when Berry contacted him on 1-17-17 about the conflict issue, shows a blatant and stubborn disregard for Rule 1.18. Finally, Donais' attempt to fight with Judge Moore in the 1-18-17 hearing, when the judge was signaling to him that there was in fact a conflict, shows an intransigent disregard for rule 1.18 and Donais only buckled when Judge Moore diplomatically threatened to formally remove him from the case if he did not decide to do so himself.  It should be noted that after Donais withdrew from the case in January 2017, he became further involved in the case again at a later point and consulted with the defense lawyers in preparing his affidavit and attendant pleadings filed in two courts for use in April and May 2017. This continued engagement/discussion about the case and discussions with Bisasor and Obrien further resulted in a taint on the case and advantage to the defense.

---

[11] See **page 1 and paragraph 5** in **Affidavit of Craig Donais dated 3-13-17.**
[12] See **Exhibit 9 – Text Message from Robert Obrien to Natalie Anderson on 1-5-17.**
[13] See **page 3 and paragraph 16** in **Exhibit 20  - Affidavit of Dave Akridge dated 5-4-17**.
[14] See **page 221 line 7**, **page 238 line 17-25 and page 239 line 1-15** in **Exhibit 35  – Relevant excerpt of transcript of Karl Terrell Testimony in 4-27-17 hearing in superior court.**

117. And, further, the fact that Donais used that occasion to fabricate a lie about what Bisasor said in the 1-9-17 prospective client call, in order to attack and disparage Bisasor in Donais' affidavit, violates all bounds of decency and ethics.

## IV. ELEMENTS OF BREACH OF FIDUCIARY DUTY ESTABLISHED

118. Under NH Rule of Professional Conduct 1.18, Bisasor and Anderson were prospective clients entitled to confidentiality protections equivalent to actual clients. NH Rule 1.18(a)(b).

119. Rule 1.18(b) explicitly states that "a lawyer who has received and reviewed information from a prospective client shall not use or reveal that information" except under limited circumstances not applicable here. NH Rule 1.18(b).

120. Donais received and reviewed information from plaintiffs as prospective clients, creating fiduciary obligations of confidentiality and loyalty. First Bisasor Affidavit; Anderson Affidavit.

121. Donais breached these fiduciary duties by: (a) disclosing confidential consultation information to adverse parties; (b) representing adverse parties against plaintiffs' interests; (c) fabricating false statements about consultation content; and (d) continuing to disclose confidential information to unauthorized third parties for years after the consultation. These are undisputed facts above.

122. Plaintiffs suffered damages as a direct result of these breaches, including reputational harm, emotional distress, compromise of their legal position, and other injuries. First Bisasor Affidavit; Anderson Affidavit.

123. Donais's conduct was willful and deliberate, undertaken with full knowledge of his ethical obligations and the harm it would cause plaintiffs. Thes facts are undisputed facts above.

## V. CONCLUSION

124. The foregoing undisputed material facts establish as a matter of law that Donais breached his fiduciary duties to plaintiffs as prospective clients. No genuine factual disputes exist regarding the establishment of the prospective attorney-client relationship, the confidential nature of the consultations, or Donais's subsequent unauthorized disclosures and misuse of confidential information.

Respectfully submitted,
s/ Natalie Anderson
NATALIE ANDERSON

s/ Andre Bisasor
ANDRE BISASOR

Date: October 24, 2025

25

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties and counsel of record via the court's electronic filing system.

s/ Andre Bisasor
ANDRE BISASOR