UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

## PLAINTIFF ANDRE BISASOR'S OPPOSITION TO THE DONAIS DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

### 1.   I. INTRODUCTION

2. Plaintiff Andre Bisasor respectfully opposes Defendants Craig S. Donais, Mary K. Donais, and Donais Law Offices PLLC's Motion to Dismiss the First Amended Complaint ("FAC"). The Donais Defendants' motion fundamentally misapplies New Hampshire law, misrepresents the procedural record, contradicts factual allegations that must be accepted as true at this stage, and improperly seeks to resolve disputed factual issues that belong before a jury.

3. The Donais Defendants assert three primary grounds for dismissal: (1) that Plaintiff's claims are time-barred; (2) that absolute privilege shields all challenged conduct; and (3) that the FAC fails to state claims upon which relief can be granted. Each argument fails on the law and facts.

4. First, the NH savings statute, RSA 508:10, unambiguously applies. Plaintiff timely filed his original complaint on 6-18-22, within the applicable statutes of limitations. He voluntarily dismissed that action on 6-3-24, and refiled within one year on 6-3-25. Defendants' assertion that Plaintiff "*gave no reason*" for the dismissal is demonstrably false; the dismissal notice explicitly stated multiple grounds, including consolidation with a parallel state court action that had resumed after a two-year appellate stay. (FAC ¶¶ 71-73; Ex. A to MTD). Moreover, NH law does not require that a plaintiff "*cure a deficiency*" to invoke the savings statute, the statute applies to any voluntary dismissal not adjudicated on the merits. *Fastrack Crushing Servs., Inc. v. Abatement Int'l/Advatex Assocs., Inc.*, 153 N.H. 284, 289, 893 A.2d 674, 678 (2006).

5. Second, discovery rule tolling independently saves Plaintiff's claims based on 2019 conduct. Defendants concealed their defamatory statements and wrongful acts; Plaintiff did not, and could not, discover them until 7-21-20, when Defendant Hilliard first disclosed information during an Attorney Discipline Office investigation. (FAC ¶¶ 92-93). Defendants cannot dispute this timeline because they controlled the information. Under New Hampshire law, "*[w]hen facts essential to the cause of action are fraudulently concealed*

*from a plaintiff by a defendant, the statute of limitations is tolled until the plaintiff discovers or reasonably should have discovered those facts.*" *Sinclair v. Brill*, 857 F. Supp. 132, 136 (D.N.H. 1994).

6.  Third, the absolute privilege defense is grossly overbroad. Defendants conflate judicial proceedings with private communications to family members, a nonprofit board, and neighborhood contacts. New Hampshire law extends absolute privilege only to statements made *in* judicial proceedings that are pertinent to those proceedings. *McGranahan v. Dahar*, 119 N.H. 758, 763, 408 A.2d 758, 761 (1979). The privilege does not extend to: (1) defamatory statements to Donais's wife, sons, and friends about Plaintiff's supposed dangerousness (FAC ¶¶ 124-146); (2) statements to a private nonprofit Crime-Line board (FAC ¶¶ 98-123); or (3) statements made at a 2023 public comment forum before the NH Supreme Court Advisory Committee, which lacks adjudicatory authority and the procedural safeguards of a judicial proceeding. (FAC ¶¶ 290-295).

7.  Fourth, Defendants violate Rule 12(b)(6) standard by cherry-picking facts from prior complaints not currently operative, contradicting FAC allegations, and relying on extrinsic evidence outside the pleadings. Federal Rule 12(d) requires conversion to summary judgment, with notice to Plaintiff and opportunity to present evidence, when a court considers *"matters outside the pleadings."* Fed. R. Civ. P. 12(d). Defendants cite extensively to the prior complaint rather than the operative FAC (D.13), use exhibits to manufacture factual disputes, and ask this Court to weigh evidence and resolve credibility, all impermissible at the motion to dismiss stage.

8.  Fifth, each count states a plausible claim for relief. Plaintiff alleges detailed factual allegations, not mere conclusions, that, accepted as true and with all reasonable inferences drawn in his favor, establish each element of his claims. Donais' contrary arguments amount to an improper request that this Court weigh competing inferences, resolve disputed facts, and determine Defendants' credibility at the pleading stage.

9.  Finally, Defendants' attack on Plaintiff's amendment as an improper attempt to "avoid dismissal" is remarkable. Rule 15(a) exists precisely to allow plaintiffs to cure deficiencies and avoid dismissal. Amendment is the rule; denial is the exception. Defendants effectively argue that a pro se plaintiff should

be punished for exercising his procedural rights, a position squarely at odds with bedrock principles of liberal construction and access to justice.

10. This Court should deny the motion to dismiss in its entirety.

## II. STANDARD OF REVIEW
### A. Rule 12(b)(6) Standard Requires Accepting All Well-Pleaded Facts as True

11. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). The question is not whether plaintiff will ultimately prevail, but whether the complaint "*contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

12. A claim is facially plausible "*when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" *Iqbal*, 556 U.S. at 678. The Court need not credit "bald assertions" or "legal conclusions," but factual allegations, even if not ultimately provable, must be taken as true. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

13. Critically, courts "*cannot consider facts outside the pleadings*" without converting the motion to one for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). When matters outside the pleadings are presented, "*the motion must be treated as one for summary judgment under Rule 56,*" and "*[a]ll parties must be given a reasonable opportunity to present all material made pertinent to such a motion.*" Fed. R. Civ. P. 12(d).

### B. Pro Se Pleadings Must Be Construed Liberally

14. Pro se pleadings are "*held to less stringent standards than formal pleadings drafted by lawyers*" and must be construed liberally. *Erickson*, 551 U.S. at 94; *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam). A pro se complaint, "*however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.*" *Id*. This Court has consistently applied this standard. *See Mason v. Trump Taj Mahal Assocs.*, No. 20-cv-398-SE, 2022 WL 16858774, at *6 (D.N.H. Nov. 7, 2022) (Elliott, J.) (liberally construing pro se pleadings and granting inferences in plaintiff's favor).

15. The liberal construction standard reflects the Supreme Court's recognition that pro se litigants lack legal training and should not be prejudiced by technical pleading deficiencies. "*Whatever may be the limits*" on pleading requirements, "*allegations such as those asserted*" by pro se plaintiffs, "*however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence.*" *Haines*, 404 U.S. at 520-21.

### C. Affirmative Defenses Must Be Clear on the Face of the Pleadings

16. Affirmative defenses such as statute of limitations may be raised on a Rule 12(b)(6) motion "*only if the facts establishing the defense are clear on the face of the plaintiff's pleadings.*" *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001). Where the pleadings raise a factual question concerning the applicability of a statute of limitations defense, dismissal is inappropriate. *Id.*

### III. ARGUMENT
### A. The NH Savings Statute Plainly Applies and Saves Plaintiff's Otherwise Time-Barred Claims

17. Defendants' statute of limitations argument fails at every turn. The NH savings statute, RSA 508:10, unambiguously applies, tolls the statute of limitations, and preserves Plaintiff's claims.

### 1. RSA 508:10 Expressly Covers Voluntary Dismissals ("Nonsuits")

18. The NH savings statute provides:

> *If judgment is rendered for the plaintiff and such judgment is arrested, reversed on a writ of error or on appeal, or if the plaintiff becomes nonsuit or the action is otherwise abated or dismissed without a judgment on the merits, the plaintiff may commence a new action for the same cause within one year after the abatement or other determination of the original action, and not afterward, provided the original action was commenced within the time limited by law.*
> RSA 508:10 (emphasis added).

19. A "nonsuit" is synonymous with a voluntary dismissal. *Milford Quarry & Constr. Co. v. Boston & Me. R.R.*, 78 N.H. 68, 69, 96 A. 955, 956 (1916). The plain language of RSA 508:10 provides that when "*the plaintiff becomes nonsuit*," the plaintiff may recommence the action within one year. Here, Plaintiff filed a Notice of Voluntary Dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) on June 3, 2024, and refiled on 6-3-25, precisely one year later and well within the statutory window.

20. The NH Supreme Court has repeatedly held that RSA 508:10 "*benefits suitors who are compelled to abandon their present action, whether by their own act or the act of the court, when either would leave them with a cause of action, yet undetermined.*" *Fastrack Crushing*, 153 N.H. at 289, 893 A.2d at 678. The statute's purpose is "*not to be*"

*frittered away by any narrow construction.*" *Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 154 N.H. 674, 683, 918 A.2d 404, 411 (2006).

21. Defendants do not, and cannot, dispute that:

    a) The original action was timely filed on June 18, 2022;

    b) Plaintiff voluntarily dismissed without prejudice on June 3, 2024;

    c) Plaintiff refiled within one year on June 3, 2025; and

    d) No judgment on the merits was rendered.

22. These are the only requirements under RSA 508:10. *Arsenault v. Scanlon*, 139 N.H. 592, 594, 659 A.2d 1228, 1230 (1995) ("RSA 508:10 allows a plaintiff, under certain circumstances, to bring a second suit within one year following disposition of a prior action").

### 2. Defendants' "No Deficiency Cured" Argument Misreads Fastrack

23. Defendants contort *Fastrack* to argue that Plaintiff must have "cured a deficiency" to benefit from the savings statute. (MTD at 9-10). This misstates the law.

24. *Fastrack* involved a plaintiff who missed a mandatory statutory filing deadline for a mechanics lien and then attempted to invoke the savings statute. *Fastrack*, 153 N.H. at 289, 893 A.2d at 678. The Court held the savings statute inapplicable because the plaintiff failed to meet a *substantive statutory prerequisite* to bringing the claim in the first place. *Id.* The Court's reference to "*curing a deficiency*" meant that a second action would be precluded where the amended complaint *fails to cure* the same substantive defect that would bar the claim. *Id.*

25. Here, Plaintiff's claims were never adjudicated on the merits, and no substantive statutory prerequisite was unmet. Voluntary dismissal was filed while motions to dismiss were pending and stayed. (FAC ¶¶ 68-69). Plaintiff explicitly stated reasons for dismissal: parallel litigation in state court had resumed after a 2-year appellate stay, and consolidation would promote judicial economy. (FAC ¶¶ 71-73; Ex. A MTD).

26. Contrary to Defendants' bald assertion (MTD at 9), Plaintiff did give reasons for the dismissal:

> "*several grounds, including that there were now two pending parallel cases in NH federal court and NH state court, and that the NH state court case was further ahead... and thus so that the NH federal court claims can be consolidated with this prior first filed NH state court case, and so that all the related claims could be heard in one court.*"

(FAC ¶ 71; Ex. A to MTD, p. 1).

27. Defendants' claim that Plaintiff "gave no reason" is demonstrably false.

28. Moreover, Plaintiff did cure procedural deficiencies. The dismissal eliminated duplicative litigation in two forums, avoided inconsistent judgments, and allowed consolidation with the first-filed state action, legitimate grounds for voluntary dismissal. *See Foster v. Pettijohn*, 213 S.W.2d 487, 490 (Mo. 1948) (savings statute permits refiling "from time to time" to avoid duplicative litigation).

### 3. No "Cured Deficiency" Requirement Exists in NH Law

29. No NH case imposes a "*cured deficiency*" requirement as a prerequisite to invoking RSA 508:10. Defendants cite none. The statute requires only that: (1) the original action was timely filed; (2) the action was dismissed without prejudice or adjudication on the merits; and (3) the new action is filed within one year. All three requirements are satisfied.

30. The First Circuit's decision in *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 18 (1st Cir. 2004), cited by Defendants, is inapposite. *Rodi* involved the *Massachusetts* savings statute and a jurisdictional defect (lack of personal jurisdiction) that the plaintiff affirmatively chose to cure by refiling in a different forum. *Id.* The Court held that the Massachusetts savings statute applied because the plaintiff *did* cure the jurisdictional defect. *Id.* Here, Plaintiff likewise cured procedural inefficiencies by consolidating his claims in one forum.

31. Defendants' attempt to manufacture a "*no deficiency cured*" bar to RSA 508:10 should be rejected.

### 4. Voluntary Dismissal to Avoid Dismissal Is Permissible and Expected

32. Defendants criticize Plaintiff for voluntarily dismissing "*to avoid the likely dismissal on the merits.*" (MTD at 10). This argument is self-defeating. Even if true, it is irrelevant.

33. Rule 41(a)(1)(A)(i) gives plaintiffs an *absolute right* to dismiss voluntarily before an answer or motion for summary judgment is filed. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) ("*Rule 41(a)(1)(A) provides a plaintiff with an absolute right to voluntary dismissal*"). The rule contains no exception for cases where dismissal is sought to avoid adverse rulings. Moreover, Rule 15(a) exists

precisely to allow plaintiffs to *amend* to cure deficiencies and avoid dismissal. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

34. Defendants' argument amounts to: "*Plaintiff should be punished for exercising his procedural rights.*" That position is untenable. Every plaintiff who voluntarily dismisses and refiles does so to avoid an adverse outcome and improve their pleading. That is the entire purpose of the savings statute and liberal amendment rules.

### 5. The Savings Statute Applies to All Timely-Filed Claims

35. Defendants argue the savings statute does not apply to certain counts that were not in the original 2022 Action. (MTD at 10). This argument conflates the savings statute with claim preclusion.

36. RSA 508:10 tolls the statute of limitations for *all claims* arising from the same operative facts, provided the original action was timely filed. The statute does not require that every claim or theory be pled in the first action. *See Foster*, 213 S.W.2d at 490 (savings statute permits refiling with amended claims).

37. Here, Plaintiff's original complaint, filed 6-18-22, was timely for all claims with a three-year statute of limitations based on events occurring June 18, 2019, or later. The savings statute preserves those claims.

38. Plaintiff properly added claims in the FAC (e.g., defamation against Mary Donais, NH CPA claim, common-law discrimination) because they arise from the same core facts and transactions. Amendment relates back under Fed. R. Civ. P. 15(c)(1)(B) because the claims arise "*out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.*"

### B. Discovery Rule Tolling Independently Saves All 2019 Claims

39. Even if the savings statute did not apply (and it does), discovery rule tolling independently saves all claims based on 2019 conduct.

### 1. NH Discovery Rule Delays Accrual Until Plaintiff Discovers the Injury

40. Under NH law, "*all personal actions*" are subject to the discovery rule, which provides that a cause of action does not accrue "*until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.*" RSA 508:4, I; *Sinclair*, 857 F. Supp. at 135. The discovery rule serves "*to prevent the unfairness that would result if an injured person were foreclosed from bringing an action before becoming aware of its existence.*" *Id.*

41. Additionally, "*[w]hen facts essential to the cause of action are fraudulently concealed from a plaintiff by a defendant, the statute of limitations is tolled until the plaintiff discovers or reasonably should have discovered those facts.*" *Sinclair*, 857 F. Supp. at 136 (citing *Vt. Elec. Supply Co. v. Andover*, 127 N.H. 759, 761, 508 A.2d 626, 628 (1986)).

### 2. Plaintiff Could Not Have Discovered 2019 Conduct Until July 2020

42. Plaintiff's FAC alleges, and Defendants cannot dispute, that all acts and statements by Defendants in 2019 were *concealed* from Plaintiff. (FAC ¶ 92). Specifically:

> "*All acts and statements of Craig Donais or the other defendants that occurred in 2019, were hidden from the plaintiff, and was not discovered by the plaintiff until around July 21, 2020, when Craig Donais and Russell Hilliard were forced to disclose certain information as part of an ADO investigation, and further until November 2020, via right-to-know requests later submitted by the plaintiff.*"

43. (FAC ¶ 92). Plaintiff emphasizes: "*Plaintiff could not have known of the acts, statements and events complained of in this complaint that occurred in 2019 at the time they occurred in 2019.*" (FAC ¶ 92).

44. Defendants' 2019 defamatory statements were made to:

   a) Members of the Manchester Crime-Line board in June 2019 (FAC ¶¶ 98-123);

   b) Manchester Police in June 2019 (FAC ¶ 310); and

   c) Third parties, including Donais's wife, sons, and friends in 2019 (FAC ¶¶ 124-146).

45. Plaintiff had no way of knowing Defendants were making these statements behind his back. Defendants controlled the information and actively concealed it. Plaintiff did not discover the defamation until Defendant Hilliard disclosed information on 7-21-20, during an Attorney Discipline Office investigation. (FAC ¶ 93, including email screenshot).

46. Defendants cannot challenge this timeline because it is their own disclosure that triggered Plaintiff's discovery. Under NH law, this tolls the statute of limitations for all 2019 events until July 2020. *Sinclair*, 857 F. Supp. at 136.

### 3. The Original Complaint Was Timely Under the Discovery Rule

47. Plaintiff filed his original complaint on 6-18-22. (FAC ¶ 78). Applying the discovery rule, the statute of limitations for 2019 events did not begin running until July 21, 2020 (date of first discovery). Even the shortest statute of limitations applicable here, three years for defamation, RSA 508:4, I, did not expire until 7-21-23. Plaintiff's 6-18-22 filing was therefore timely.

48. Defendants offer no contrary argument because they cannot. The discovery rule independently supports the timeliness of Plaintiff's 2019 claims.

### C. Absolute Privilege Does Not Shield Private Communications or Non-Judicial Forums

49. Defendants invoke absolute privilege as a sweeping shield for all challenged conduct. (MTD at 11-12). This argument grossly overstates NH law and ignores critical distinctions between judicial proceedings and private communications.

#### 1. Absolute Privilege Is Narrow and Strictly Construed

50. NH law recognizes absolute privilege for statements made *in the course of judicial proceedings*, provided they are *pertinent* to those proceedings. *McGranahan*, 119 N.H. at 763, 408 A.2d at 761. The privilege exists because "*the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives.*" *Supry v. Bolduc*, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972).

51. However, "*[b]ecause an absolute privilege bars an injured party from recovering any recompense, it must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression.*" *Id.* (emphasis added). Privileges are strictly construed and "*should not be extended beyond the text*" of established law.

#### 2. Statements to Private Parties Are Not Privileged

52. The absolute privilege does not extend to statements made to private third parties outside any judicial context. Defendants conflate "*statements to police*" (which may be privileged as part of a criminal investigation, *McGranahan*, 119 N.H. at 769, 408 A.2d at 765) with statements to:

   a) Donais's wife, Mary Donais: Defendants concede Plaintiff "*never had any direct communications with Mary Donais.*" (FAC ¶ 127; MTD ¶ 3). Yet Defendants told Mary Donais that Plaintiff was a dangerous, mentally unstable criminal bent on harming her and their sons. (FAC ¶¶ 124-130). These statements were made in private, within the family home, to instill fear and hysteria. They are not protected by absolute privilege.

   b) Donais's sons, Garrett and Aiden Donais: Donais and Mary Donais told their sons that Plaintiff was criminally dangerous and planning to physically harm the family. (FAC ¶¶ 125, 812). These statements were made to enlist the sons in a defamatory scheme and to spread fear in the

Manchester community. (FAC ¶¶ 128-133). Publishing defamatory statements to family members does not create absolute privilege. *Johnson v. Queenan*, 12 Mass. L. Rptr. 461 (2000) (statements by daughter to mother about rape were only *conditionally* privileged, subject to being overcome by proof of malice).

   c)  Friends and neighbors: Defendants spread false statements throughout the Manchester community, creating a *"watch-out"* for Plaintiff as a dangerous criminal. (FAC ¶¶ 133, 141). These communications are entirely outside any judicial proceeding and enjoy no privilege whatsoever.

53. Defendants cite no authority extending absolute privilege to private family conversations or neighborhood gossip. There is none.

### 3. Crime-Line Board Statements Are Not Privileged

54. Plaintiff alleges Donais made defamatory statements to members of the Manchester Crime-Line board in June 2019, falsely stating that Plaintiff was a criminal, mentally ill, burglarized Donais's office, and fabricated a recording. (FAC ¶¶ 98-123).

55. Manchester Crime-Line is a private 501(c)(3) nonprofit that pays rewards for anonymous tips. (FAC ¶ 99). It is not a governmental entity, does not conduct investigations, and has no law enforcement authority. (FAC ¶¶ 99-101). The board reviews solved cases and approves reward payments, a purely administrative function. *Id.*

56. No NH case extends absolute privilege to statements made to a private nonprofit board. The privilege applies to statements made *to police and prosecutors* in connection with criminal investigations. *McGranahan*, 119 N.H. at 769, 408 A.2d at 765. It does not apply to statements made to civilian volunteers serving on a private nonprofit board with no investigative or adjudicatory authority.

57. Defendants cite no authority to the contrary because none exists. The Crime-Line board statements are not privileged.

### 4. 2023 Advisory Committee Public Comment Is Not Privileged

58. Plaintiff alleges Donais made defamatory statements at a 6-2-23 public comment forum before the NH Supreme Court Advisory Committee on Rules. (FAC ¶¶ 290-295). Donais falsely stated that Plaintiff

had engaged in "*specious untrue allegations*," was "*fueled by personal animus*," and had "*deceptively weaponized and misused the attorney discipline process*." (FAC ¶ 292).

59. The Advisory Committee is a public comment forum established to receive input on proposed rule changes. (FAC ¶ 290). It has no adjudicatory authority, does not determine facts, imposes no sanctions, and involves no parties or contested proceedings. The Advisory Committee simply receives public comments, like a legislative hearing or town hall meeting.

60. Absolute privilege does not extend to public comment forums lacking the hallmarks of judicial proceedings. In *Supry v. Bolduc*, 112 N.H. 274, 293 A.2d 767 (1972), the NH Supreme Court held that statements made during a zoning board hearing were not entitled to absolute privilege because the hearing "*did not have all the hallmarks of a judicial proceeding*." *McGranahan*, 119 N.H. at 762, 408 A.2d at 761 (citing *Supry*).

61. A fortiori, a public comment session before an advisory committee, with no contested parties, no evidentiary procedures, no cross-examination, and no adjudicative function, is not a judicial proceeding entitled to absolute privilege.

62. Defendants cite no authority holding that public comments at rule-making hearings are absolutely privileged. The privilege does not apply.

### 5. Many Statements Are Not "Pertinent" to Any Proceeding

63. Even for statements arguably made in connection with judicial proceedings, absolute privilege applies only if the statements are *pertinent* to the subject matter of the proceeding. *McGranahan*, 119 N.H. at 765, 408 A.2d at 762.

64. Here, Defendants' statements about Plaintiff being "*dangerous*," "*mentally ill*," "*bent on harming*" Donais's wife and children, and creating a neighborhood "*watch-out*" (FAC ¶¶ 126, 129, 133, 141) are not pertinent to any legal matter. These are gratuitous character attacks designed to ostracize Plaintiff from the Manchester community and inflict maximum reputational harm. They bear no relationship to the merits of any pending litigation or disciplinary proceeding.

65. The pertinency requirement is a question of law, but where pertinency is disputed, it presents a factual issue inappropriate for resolution on a motion to dismiss. *O'Barr v. Feist*, 116 N.H. 377, 379, 360 A.2d 1148, 1150 (1976).

### 6. Republication Outside Judicial Proceedings Is Not Privileged

66. Defendants argue that statements in Donais's March 2017 affidavit are privileged. (MTD at 11). Plaintiff does not dispute that statements made in a court filing may be privileged *at the time of filing*. However, Plaintiff alleges that Donais *republished* those statements to the Attorney Discipline Office and others in 2019 and 2020. (FAC ¶ 217). Republication to third parties outside the judicial context is not privileged. *See Provencher v. Buzzell-Plourde Assocs.*, 142 N.H. 848, 854, 713 A.2d 129, 133 (1998) (privilege extends to statements "*in connection with a judicial proceeding*," not subsequent republication).

### D. The First Amended Complaint States Sufficient Facts Against All Defendants

67. Defendants argue Plaintiff has failed to allege sufficient facts, particularly against Mary Donais. (MTD at 12-13). This argument ignores the FAC's detailed allegations and improperly seeks to resolve factual disputes at the pleading stage.

### 1. The FAC Contains Extensive Factual Allegations

68. The FAC spans 82 pages and contains 1,012 paragraphs of factual allegations. (MTD at 22). Defendants complain about the length, yet simultaneously argue Plaintiff has alleged insufficient facts. These positions are contradictory.

69. Plaintiff alleges:

   a)  Specific dates, times, and locations of defamatory statements (FAC ¶¶ 102-103, 124-130, 290-295);

   b)  The content of the defamatory statements, including direct quotes obtained through Right-to-Know requests (FAC ¶¶ 103, 125-130, 292);

   c)  The identities of third-party recipients (FAC ¶¶ 103, 125, 144, 290);

   d)  The harm suffered, including loss of professional opportunities, reputational damage, and emotional distress (FAC ¶¶ 121-123, 133, 142);

   e)  The coordinated nature of Defendants' conduct, including Craig and Mary Donais acting in concert (FAC ¶¶ 130, 668);

f) Specific economic relationships interfered with, including the Manchester Police Department (FAC ¶¶ 300, 304);

g) Detailed factual basis for each claim, supported by exhibits incorporated by reference (FAC passim).

70. These are not "*bald assertions*" or "*legal conclusions*." They are specific factual allegations that, accepted as true, state plausible claims for relief.

### 2. Sufficient Facts Are Alleged Against Mary Donais

71. Defendants argue Plaintiff has alleged no facts against Mary Donais. (MTD at 12-13). This is false.

72. Plaintiff alleges:

a) Mary Donais received defamatory statements from her husband Craig Donais about Plaintiff being dangerous, mentally unstable, and criminally bent on harming her and their sons. (FAC ¶¶ 125-127, 134-135).

b) Mary Donais "*joined her husband in spreading and disseminating these lies about the plaintiff*" to others. (FAC ¶ 140).

c) Mary Donais and Craig Donais "*conspired*" to defame Plaintiff and "enlist their sons in this defamatory scheme." (FAC ¶ 130).

d) Mary Donais "*assists [her husband] with the law practice and business operations of Donais PLLC.*" (FAC ¶ 889).

e) Mary Donais "*told her sons [ ] of these false statements*," which "*is inferred from communications obtained via a right to know request.*" (FAC ¶ 812).

73. At the pleading stage, Plaintiff need not prove these allegations. Drawing all reasonable inferences in Plaintiff's favor (as required), a rational factfinder could conclude that Mary Donais: (1) received false information from her husband; (2) repeated it to others, including her sons; (3) acted in concert with her husband to spread defamatory statements; and (4) caused harm to Plaintiff.

74. Defendants argue Plaintiff relies on "*speculation and inference*." (MTD at 13). But inference is precisely what *Twombly* and *Iqbal* permit. "*A claim has facial plausibility when the plaintiff pleads factual content that allows*

*the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" *Iqbal*, 556 U.S. at 678 (emphasis added).

75. Moreover, Plaintiff alleges he obtained evidence through Right-to-Know requests that corroborate Mary Donais's involvement. (FAC ¶¶ 104, 128, 812). Discovery will reveal the full extent of her conduct. Dismissal at this stage would be premature.

### 3. Defendants Improperly Seek to Resolve Disputed Facts

76. Defendants argue that because Plaintiff "*never had any direct communications with Mary Donais*" (MTD ¶ 3), no claims can lie against her. This argument conflates lack of direct communication with lack of actionable conduct.

77. Defamation does not require direct communication between plaintiff and defendant. It requires publication to a third party. *See* Restatement (Second) of Torts § 558. Here, Mary Donais allegedly published defamatory statements about Plaintiff to her sons and others. (FAC ¶¶ 140, 812). That is sufficient.

78. Similarly, civil conspiracy does not require direct communication. It requires an agreement and overt acts in furtherance of the conspiracy. *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47, 534 A.2d 706, 709 (1987). Plaintiff alleges Craig and Mary Donais acted "*in concert*" to defame Plaintiff. (FAC ¶ 668). That is sufficient at the pleading stage.

### E. Individual Counts State Cognizable Claims

79. Defendants argue that each individual count fails to state a claim. (MTD at 13-22). Each argument fails.

### 1. Counts 1-2: Defamation and Defamation Per Se State Valid Claims

80. Plaintiff has alleged all elements of defamation: (1) false statements of fact, (2) published to third parties, (3) causing reputational harm. *See* Restatement (Second) of Torts § 558.

 a) <u>False statements:</u> Plaintiff alleges Defendants falsely stated he was a criminal, mentally ill, burglarized Donais's office, fabricated a recording, and posed a violent threat to Donais's family. (FAC ¶¶ 103, 126, 129, 292). These are statements of fact, not opinion.

 b) <u>Publication:</u> Plaintiff alleges publication to Crime-Line board members, police, Donais's family, friends, neighbors, and the Advisory Committee. (FAC ¶¶ 103-104, 144, 290-295).

c) <u>Harm:</u> Plaintiff alleges reputational damage, loss of professional opportunities with the Manchester NAACP and Police Department, emotional distress, and inability to work in Manchester. (FAC ¶¶ 121-123, 133).

d) <u>Defamation per se</u>: Accusations of criminal conduct and mental illness are defamatory per se under NH law, requiring no proof of special damages. RSA 644:11 (criminal defamation statute recognizing statements that expose person to "public hatred, contempt or ridicule").

81. Defendants' privilege arguments are addressed above and fail. Counts 1 and 2 state valid claims.

a) <u>Claim Splitting</u>: Defendants argue Count 2 (2023 Advisory Committee statements) is barred by claim splitting because Plaintiff also pled it in the pending 2020 state action. (MTD at 14). This argument is meritless. First, claim splitting applies only where a final judgment has been entered in a prior action. Katz v. Gerardi, 655 F.3d 1212, 1218 (10th Cir. 2011). The 2020 Action is still pending. (MTD, Ex. B). No final judgment exists.  Second, Plaintiff has the right to amend his complaints in multiple forums until final judgment. Claim splitting does not bar amendments or preclude pleading the same facts in multiple pending actions. The remedy, if any, is consolidation, not dismissal.

## 2. Counts 3-4: Interference with Contractual and Advantageous Relations

82. Plaintiff alleges: (1) an economic relationship with the Manchester Police Department; (2) Defendants knew of the relationship; (3) Defendants intentionally interfered through defamatory statements; and (4) Plaintiff suffered damages. (FAC ¶¶ 300-327).

83. Economic relationship: Plaintiff alleges he "*had a contractual relationship with the Manchester NH Police/the Manchester NH police department including with the Manchester NH police chief*" in 2019 and 2020. (FAC ¶ 300). Plaintiff received an email from Chief Carlo Capano indicating they were interested in "*moving forward*" with an event. (FAC ¶ 304). This is sufficient at the pleading stage to allege an economic relationship or reasonable expectation thereof. *M & D Cycles, Inc. v. Am. Honda Motor Co.*, 208 F. Supp. 2d 115, 119 (D.N.H. 2002) (economic relationship need not be reduced to written contract; "promise, or the reasonable expectation of a promise" suffices).

84. Knowledge and interference: Plaintiff alleges Defendants found Plaintiff's LinkedIn page showing his affiliation with the Manchester Police and NAACP. (FAC ¶ 309). Defendants then made defamatory statements to police, falsely portraying Plaintiff as dangerous and criminal. (FAC ¶¶ 310, 315). This interference caused the relationship to terminate.

85. Defendants argue Plaintiff "provides no facts" (MTD at 15-16), ignoring the detailed allegations in paragraphs 300-327 of the FAC. Discovery will establish the full extent of Plaintiff's economic relationships. Dismissal at this stage is inappropriate.

### 3. Count 5: Breach of Fiduciary Duty States a Valid Claim

86. Plaintiff alleges a prospective attorney-client relationship arose during the January 9, 2017 phone call. (FAC ¶¶ 372, 494-496). Under NH and Massachusetts law, a lawyer owes fiduciary duties to prospective clients. *See* Restatement (Third) of the Law Governing Lawyers § 15 (prospective client protected from misuse of confidential information); ABA Model Rule 1.18.

87. A prospective client relationship forms when "a person discusses with a lawyer the possibility of their forming a client-lawyer relationship." Restatement § 15, cmt. (b). Plaintiff alleges he left a voicemail for Donais requesting legal assistance, Donais returned the call, and they discussed Plaintiff's legal matter for seven minutes, during which Plaintiff disclosed confidential information. (FAC ¶¶ 372, 424, 495-496). This is sufficient to allege a prospective client relationship.

88. Defendants' argument that "*there was no attorney-client relationship*" (MTD at 16-17) conflates prospective clients with retained clients. The law recognizes duties owed to prospective clients even where no formal representation occurs. *See* Model Rule 1.18(b) ("*Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not... reveal that information*").

89. Plaintiff alleges Donais breached fiduciary duties by disclosing confidential communications to third parties, including police, the ADO, and others. (FAC ¶¶ 434, 456, 466). Count 5 states a valid claim.

### 4. Counts 6-7: Breach of Implied Contract and Covenant of Good Faith

90. Plaintiff alleges an implied-in-fact contract arose from the January 9, 2017 phone call. (FAC ¶¶ 494-501). Even in the absence of express agreement, "[a]n attorney-client relationship is created when a person

seeks advice or assistance from an attorney, the advice or assistance sought pertains to matters within the attorney's professional competence, and the attorney expressly or impliedly agrees to give or actually gives the requested advice or assistance." *Identifying the Client in Estate Planning Matters*, NH Bar Ass'n Ethics Advisory Opinion (Aug. 24, 2023).

91. Plaintiff alleges: (1) he sought legal assistance; (2) Donais returned his call and discussed the matter; (3) Donais gave advice regarding the case; and (4) confidential information was exchanged. (FAC ¶¶ 372, 495-496). These allegations, accepted as true, support an implied contract.

92. Defendants argue Donais "*declined to represent*" Plaintiff and "*never undertook representation*." (MTD at 17). But Plaintiff alleges Donais agreed "*to engage in an attorney-client conversation*" (FAC ¶ 372) and gave legal advice. Whether contract formed is a factual question inappropriate for resolution on motion to dismiss.

### 5. Count 8: NH Consumer Protection Act States a Valid Claim

93. Defendants argue the NH CPA does not apply because no "commercial activity" was implicated. (MTD at 18-19). This argument misapprehends the CPA's scope.

94. The NH CPA prohibits "*unfair or deceptive acts or practices in the conduct of any trade or commerce*." RSA 358-A:2. "*Trade or commerce*" includes "*the offering for sale, lease, rental, or exchange of any professional services*." RSA 358-A:1, II.

95. Plaintiff alleges Donais engaged in unfair and deceptive practices by: (1) lying about their phone conversation; (2) falsely claiming Plaintiff accused him of racism; (3) using confidential information to defame Plaintiff; and (4) weaponizing the attorney-client relationship to retaliate against Plaintiff. (FAC ¶¶ 551-559). These allegations, if proven, constitute unfair and deceptive practices in the offering of professional legal services.

96. Defendants cite *Stewart v. Ang*, No. 216-2019-CV-00305 (N.H. Super. Ct. Dec. 9, 2021) (MTD, Ex. E), for the proposition that the CPA does not apply to professional services absent commercial activity. However, *Stewart* is distinguishable. There, the court found no CPA violation where the plaintiff challenged only the *quality* of legal services, not deceptive business practices. *Id.* Here, Plaintiff challenges

Donais's *deceptive conduct*, lying, misrepresenting facts, and weaponizing confidential information—not the quality of legal advice. Count 8 states a valid CPA claim.

### 6. Count 10: NH Discrimination (Common Law or RSA 354-B)

97. Defendants argue there is no common-law discrimination claim under NH law. (MTD at 19). Plaintiff acknowledges RSA 354-B currently lacks a private right of action but alleges a common-law claim in the alternative. (FAC ¶¶ 593-612).

98. While NH courts have not expressly recognized a common-law discrimination tort, neither have they foreclosed it. Plaintiff's claim is novel but plausible. At minimum, Plaintiff alleges race-based animus as evidence of malice supporting his defamation and IIED claims. (FAC ¶¶ 129, 142).

99. Discovery will establish the extent of racial animus. Dismissal at this stage is premature.

### 7. Count 11: IIED Is Distinct from Defamation

100.   Defendants argue IIED is barred because it "*sounds in defamation.*" (MTD at 19-20). This is incorrect. While NH law does not permit a separate IIED claim where emotional distress results solely from reputational harm caused by defamatory statements, *Provencher v. CVS Pharmacy*, 145 F.3d 5, 12 (1st Cir. 1998), Plaintiff alleges conduct *distinct* from defamation. Specifically, Plaintiff alleges Defendants:

 a)  Created fear and hysteria by falsely claiming Plaintiff was "*bent on physically harming*" Donais's wife and children (FAC ¶¶ 125-126, 129);

 b)  Manufactured a false narrative that Plaintiff was "*dangerous*" and "*mentally unstable*," causing community-wide fear and a neighborhood "watch-out" (FAC ¶¶ 133, 141);

 c)  Used racially stigmatizing stereotypes to portray Plaintiff as a violent criminal threat to a white family (FAC ¶ 129);

 d)  Created atmosphere where Plaintiff feared for his safety if he returned to Manchester (FAC ¶ 133).

101.   This conduct is "*extreme and outrageous*" and distinct from mere reputational harm. Creating a false narrative that a person is violently dangerous, and spreading it throughout a community to incite fear and potential violence, goes beyond defamation. It is the intentional infliction of severe emotional distress through conduct designed to terrorize and ostracize.

102.    Plaintiff alleges he suffered "*tremendous harm*," including inability to work in Manchester, fear for his

safety, and ongoing emotional distress. (FAC ¶¶ 133, 142). Count 11 states a valid IIED claim.

## 8. Count 12: Civil Conspiracy States a Valid Claim

103.    Plaintiff alleges Craig and Mary Donais conspired to defame Plaintiff. (FAC ¶¶ 664-677). Civil

conspiracy requires: "*(1) two or more persons; (2) an object to be accomplished; (3) an agreement on the object or course*

*of action; (4) one or more unlawful overt acts; and (5) damages*." *Jay Edwards*, 130 N.H. at 47, 534 A.2d at 709.

104.    Plaintiff alleges:

    a)    <u>Two persons</u>: Craig and Mary Donais (FAC ¶ 668);

    b)    <u>Object</u>: to defame and injure Plaintiff (FAC ¶¶ 130, 668);

    c)    <u>Agreement</u>: Craig and Mary Donais coordinated to spread false statements, enlist their sons,
          and create community-wide fear (FAC ¶¶ 128-130, 668);

    d)    <u>Overt acts:</u> defamatory statements to family, friends, neighbors, and others (FAC ¶¶ 125-146);

    e)    <u>Damages:</u> reputational harm, emotional distress, loss of opportunities (FAC ¶¶ 133, 142).

105.    These allegations, accepted as true, state a plausible conspiracy claim. Defendants' argument that

these are "*mere legal assertions*" (MTD at 21) ignores detailed factual allegations supporting each element.

## 9. Count 15: Interference with Settlement

106.    Defendants argue this claim is privileged and time barred. (MTD at 21-22). Plaintiff responds that

settlement negotiations and interference therewith are distinct from statements made in judicial

proceedings and may give rise to liability. While some courts extend quasi-judicial immunity to settlement

discussions, that immunity is not absolute and does not extend to bad-faith interference.

107.    Moreover, Plaintiff has stated he "*will seek recovery for these events in the first-filed state court case*." (FAC ¶

1003). If this Court finds the claim inappropriate for this action, Plaintiff respectfully requests leave to

pursue it in the state forum.

## 10. Counts 23-27: Corporate Liability Theories and Malpractice

108.    Defendants argue these are "*theories of liability*" not independent causes of action. (MTD at 22).

Plaintiff acknowledges these counts articulate alternative bases for holding Donais Law Offices PLLC

liable for Craig Donais's conduct. To the extent the Court finds these duplicative, then the Court should

explicitly recognize that Donais PLLC remains liable under respondeat superior, alter ego, or direct liability theories.

### F. Defendants Improperly Rely on Extrinsic Evidence Requiring Conversion or Striking

109.   Defendants violate the Rule 12(b)(6) standard by relying on "*Additional Facts*" (MTD at 4-6) drawn from prior complaints, exhibits, and extrinsic materials not alleged in the operative FAC.

### 1. Rule 12(d) Requires Conversion When Extrinsic Evidence Is Considered

110.   Rule 12(d) provides:

> *If, on a motion under Rule 12(b)(6)... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material made pertinent to such a motion.*
> Fed. R. Civ. P. 12(d) (emphasis added).

111.   "*Matters outside the pleadings*" include prior complaints, defendants' exhibits, and factual assertions not alleged in the current complaint. *Watterson*, 987 F.2d at 3-4. Here, Defendants cite extensively to:

   a)   The original complaint filed in state court (D.1-1) rather than the operative FAC (D.13);

   b)   "*Additional Facts*" sections quoting emails, statements, and documents not alleged in the FAC (MTD at 4-6, ¶¶ 18-24);

   c)   Exhibit C (Amended Complaint in the 2020 State Action), which Defendants use to argue claim splitting;

   d)   Factual assertions contradicting the FAC (e.g., MTD ¶ 18: "Donais said that he could not undertake representation of Plaintiff as he 'was too busy'").

112.   These are classic "*matters outside the pleadings*" requiring conversion under Rule 12(d).

### 2. Defendants Cherry-Pick from Non-Operative Prior Complaints

113.   Defendants repeatedly cite to "D. 1-1" (the original complaint) rather than "D. 13" (the operative FAC). (MTD at 5-6, ¶¶ 18-24). For example, Defendants quote paragraph 863 of D.1-1 for Donais's statement that he was "*too busy to take on this case on short notice.*" (MTD ¶ 18, citing D.1-1 ¶ 863).

114.   This is improper. Under Rule 15(a), an amended complaint "*supersedes the original complaint and renders it of no legal effect.*" *Negron v. Turco*, 253 F. Supp. 3d 361, 364 (D. Mass. 2017). The prior complaint is "*a nullity for purposes of a motion to dismiss.*" (FAC ¶ 23).

115.    Defendants cannot rely on allegations from a superseded complaint to contradict or supplement the operative FAC. *See Lister v. Bank of Am.*, 790 F.3d 20, 23 (1st Cir. 2015) (court may disregard facts "*conclusively contradicted*" by other sources but cannot consider extrinsic evidence to create factual disputes).

### 3. Defendants Seek to Resolve Disputed Facts at the Pleading Stage

116.    Defendants use extrinsic materials to manufacture factual disputes. For example, Defendants quote Donais's June 2019 emails to police (MTD ¶¶ 20-22) to argue Donais's statements were reasonable and pertinent. But whether Donais's statements were true, reasonable, or pertinent is a disputed factual issue that cannot be resolved on a motion to dismiss.

117.    At this stage, the Court must accept Plaintiff's allegations as true: that Defendants' statements were false, malicious, and not pertinent to any legitimate purpose. Defendants' contrary narrative is a defense to be proven at trial, not a basis for dismissal.

### 4. Notice and Opportunity to Respond Are Required

118.    If this Court considers extrinsic materials, Rule 12(d) requires: (1) conversion to summary judgment, and (2) notice to Plaintiff with an opportunity to present evidence. Fed. R. Civ. P. 12(d). Plaintiff has not had that opportunity. Accordingly, if the Court considers Defendants' extrinsic materials, Plaintiff respectfully requests conversion to summary judgment and an opportunity to conduct discovery and submit evidence. Alternatively, the Court should strike Defendants' "*Additional Facts*" sections and consider only the allegations in the FAC.

### G. The Complaint Complies with Rule 8 and Amendment Was Proper
### 1. The FAC Provides Fair Notice and Complies with Rule 8

119.    Defendants argue the FAC violates Rule 8 because it is 82 pages and contains 1,012 paragraphs. (MTD at 22-23). This argument is meritless.

120.    Rule 8(a)(2) requires "*a short and plain statement of the claim showing that the pleader is entitled to relief.*" Fed. R. Civ. P. 8(a)(2). The purpose is to "*afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest.*" *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995).

121.   The FAC provides detailed notice of each claim, the factual basis for each claim, the identities of defendants, the dates and locations of challenged conduct, and the harm suffered. (FAC passim). Defendants do not, and cannot, argue they lack notice of the claims against them.

122.   Length is not dispositive. Complex cases involving multiple defendants, multiple claims, and years of conduct necessarily require longer pleadings. *See Carney v. Town of Weare*, No. 15-cv-263-JD, 2016 WL 320128, at *4 (D.N.H. Jan. 26, 2016) (denying Rule 8 motion despite 140-page complaint). Here, Plaintiff sues six defendants on 28 counts arising from conduct spanning 2017 to 2023. An 82-page complaint is reasonable under these circumstances.

123.   Moreover, pro se plaintiffs are afforded more flexibility. *Erickson*, 551 U.S. at 94. Plaintiff is not a lawyer; he drafted this complaint to the best of his ability. The Court should construe it liberally.

### 2. Amendment Was Proper and Defendants' Criticisms Are Unfounded

124.   Defendants criticize Plaintiff for amending his complaint to "*avoid dismissal.*" (MTD at 10). This criticism is remarkable. Rule 15(a) exists precisely to allow amendment. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

125.   Plaintiff amended as of right under Rule 15(a)(1)(B), which permits one amendment within 21 days of a motion to dismiss. Plaintiff filed the FAC on July 29, 2025, within 21 days of Defendants' July 8, 2025 motion to dismiss the original complaint. (FAC ¶¶ 30-32). No leave of court was required.

126.   Defendants' argument that Plaintiff should be faulted for amending to cure deficiencies is contrary to law and fairness. Every plaintiff amends to cure deficiencies. That is the entire purpose of liberal amendment rules. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ("*In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant... undue prejudice to the opposing party... or futility of amendment—the leave sought should, as the rules require, be 'freely given.*'").

### IV. CONCLUSION

127.   For the foregoing reasons, Plaintiff respectfully requests that this Court:

a)  Deny Defendants' Motion to Dismiss in its entirety;
b)  In the alternative, if any claims are dismissed, grant Plaintiff leave to amend;

c) Strike or disregard Defendants' reliance on extrinsic materials, or in the alternative, convert the motion to one for summary judgment and afford Plaintiff notice and opportunity to conduct discovery and present evidence;

d) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Andre Bisasor

Andre Bisasor

January 21, 2026

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor

Andre Bisasor