Filed
File Date: 10/30/2025 9:38 AM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

1. Plaintiff Andre Bisasor respectfully moves this Court for leave to file a Second Amended Complaint. The Court granted leave to amend following its June 5, 2025 dismissal order, and Plaintiff filed a First Amended Complaint on August 1, 2025. Defendant Donais now challenges that First Amended Complaint through a motion to dismiss filed August 22, 2025. Plaintiff seeks leave to file a Second Amended Complaint to address any perceived deficiencies, clarify allegations, and ensure this matter proceeds on its merits rather than on procedural technicalities. Further grounds are as follows.

**I. INTRODUCTION**

2. Plaintiffs seek to file a second amended complaint, or a supplemental complaint, to formally add defendant parties, add attendant claims, and clarify existing claims, and also correct scrivener errors in the amended complaint. However, multiple obstacles require case management coordination. The Court's arbitrary 25-page limitation for the amended complaint was overly restrictive and prevented plaintiff from adequately explaining claims against new parties with sufficient factual detail. Furthermore, plaintiff needs clarification on the timeline for events to include amendment and whether subsequent events occurring after the original complaint was filed is acceptable/allowed to be added. This issue was never resolved or clarified, even though plaintiffs raised them previously in the first motion to amend complaint, which was denied as moot[1].

3. Defendant also tied up this case for over three years with motions to dismiss on service issues and an appeal to the NH Supreme Court, during which time delay the statute of limitations ran on certain claims. This prevents plaintiff from filing a new complaint now incorporating subsequent events after the original complaint was filed, such as events later in 2020, and in 2021 or 2022, and forces plaintiff to seek amendment of the existing complaint to include these subsequent events, yet the procedural constraints make effective such amendment difficult or out-of-reach.

4. For example, plaintiffs intend to clarify the breach of fiduciary claim along with the breach of contract and the breach of covenant of good faith and fair dealing. The plaintiffs have now filed a motion for partial summary judgment[2] that includes further careful delineation of facts that would best be included in an amended complaint. Similarly, the

---

[1] See **Exhibit A** for the previous motion to amend the complaint, which is incorporated herein by reference.
[2] The plaintiffs hereby incorporate by reference the motion for partial summary judgment (including all accompanying pleadings such as the memorandum of law, the exhibits, the sealed affidavits and the statements of undisputed material facts) into this motion as if stated herein.

1

plaintiffs intend to clarify/amend the race discrimination claim. This includes clarifying the legal theory supporting state law claims as well as including a federal claim under section 1981 for race discrimination (which was referenced in the original complaint).  These claims are solid meritorious claims that would benefit from more precise pleading.

5.  Similarly, the plaintiffs intend to clarify the defamation claims including claims that pertain to events that occurred in 2017 as well as in 2019, 2020 and thereafter. Plaintiffs would like to make a more definitive statement regarding these claims and to supplement these claims with additional pleading of facts and with further clarification. Plaintiffs are pro se and are not trained lawyers. The plaintiffs need a proper chance to present their claims. It should be clear to the court that there is something valid and legitimate here. The defendant has clearly lied and made false statements. It should be clear that the defendant has committed wrongdoing. But to the extent that pleading technicalities can obscure this fact, then the plaintiffs need an additional chance to amend the complaint.

6.  This is especially so now that the defendant has been bent on expanding the four corners of the complaint with his own additional facts beyond the complaint. The plaintiffs need an opportunity to provide proper amended complaint that does not allow for unfair advantage for the defendant by him including facts that the plaintiffs cannot properly respond to in the context of an objection to a motion to dismiss amended complaint. In order to have a fair hearing/proceeding, then a second amended complaint should be allowed to properly establish the facts in a way that does not allow the defendant to gain tactical advantage by including facts not included in the amended complaint. The plaintiffs should be the master of the complaint and the facts at the preliminary motion to dismiss stage. Because the defendant has tried to in effect be the master of the complaint and of the facts, usurping the role of the plaintiffs in establishing the pleading of facts, and because the defendant has sought to confuse the issues and muddy the waters by illicitly pleading facts that are not in the complaint or that seek to dispute the facts of the complaint, then the defendant has opened the door to the absolute need for a second amended complaint.

## II. GROUNDS FOR FURTHER AMENDMENT

7.  RSA 514:9 (2007) allows the trial court to permit a substantive amendment to pleadings "in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice...."

8.  Therefore, according to this statute, amendment of the complaint in substance should be allowed when it is fair and reasonable to do so, and when it would be unfair to the plaintiffs to not allow amendment. It certainly should be

allowed when the case is in its early stage (pre-answer motion to dismiss stage is still procedurally very early). This finds direct support in New Hampshire case law, court rules, and statutory provisions.

9. Under RSA 514:9, liberal amendment of pleadings is permitted and encouraged by statute. Courts are required to allow substantive amendments when it prevents injustice.

10. This underscores the broader context that reflects a judicial preference for resolving cases on their merits rather than procedural technicalities.

11. Only when "the changes would surprise the opposing party, introduce an entirely new cause of action, or call for substantially different evidence" should a court consider possibly not allowing amendment of substance but still retains discretion to allow amendment even in such circumstances. Dent v. Exeter Hosp., 155 N.H. 787, 796, 931 A.2d 1203 (2007). See Tessier v. Rockefeller, 162 N.H. 324, 340, 33 A.3d 1118 (2011). See also Clinical Lab Prod's Inc. v. Martina, 121 N.H. 989, 991 (1981).

12. Thus, denying leave to amend should be rare unless prejudice or undue delay exists, aligning with the principle that amendments should be liberally and freely allowed when fair and reasonable.

13. In this case, the Court's June 5, 2025 order dismissed Plaintiff's original complaint without prejudice except as to two specific claims; perjury and violations of professional conduct rules. The Court expressly granted leave to amend to correct deficiencies in the remaining claims. Plaintiff exercised that right by filing the First Amended Complaint. However, Defendant's recent motion to dismiss raises arguments suggesting the First Amended Complaint allegedly fails to cure certain deficiencies or introduces claims Defendant characterizes as impermissible. Hence, further amendment is warranted to address these contentions and prevent dismissal on grounds that could be cured through amendment.

14. New Hampshire follows the well-established principle that leave to amend should be freely given when justice so requires. As the New Hampshire Supreme Court recognized in Cole v. Town of Conway, 2023-0648 (N.H. 2024), liberal amendment of pleadings is permitted to ensure cases are decided on their merits. The Court emphasized that "amendment of the complaint should be reviewed under the motion to dismiss standard" and that amendments should be allowed when they can cure deficiencies. Similarly, federal courts applying analogous standards have consistently held that "justice so requires" amendment when it would advance resolution on the merits. See Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

15. The present circumstances strongly favor granting leave to amend. This case has been pending since January 2020; and only began effectively in 2022 (because of a hiatus due to the pandemic and due to settlement negotiations that resulted in 20 defendants being settled out of the case in 2022). It has been almost 4 years since the litigation began with the remaining sole defendant (who was to be included in the settlement but backed out at the last minute). During those 4 years, Plaintiffs were prevented from amending the original complaint filed in January 2020 due to Defendant's successive motions to dismiss on service-related grounds and jurisdictional challenges that resulted in appellate delays. The Court only recently provided Plaintiff the first opportunity to amend the complaint after ruling on dismissal motion pertaining to the original complaint. Therefore, denying a second amendment at this early stage would be manifestly unjust, particularly where the proposed amendments would cure any alleged deficiencies and allow the case to proceed to discovery and resolution on the merits.

16. Moreover, the standard for granting leave to amend is particularly liberal where, as here, the plaintiff is pro se. Courts recognize an obligation to make reasonable allowances to protect pro se litigants from inadvertently forfeiting legal rights merely because they lack legal education. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). The NH Superior Court has similarly emphasized that cases should be decided on their merits and that procedural rules should be tools promoting justice rather than barriers denying it. American Express Travel v. Moskoff, 148 N.H. 446, 450 (2002).

17. The court has allowed only one opportunity to amend the original complaint. It would be unfair to not allow at least one additional second amended complaint, especially where the plaintiffs were hampered by certain impediments including but not limited to an arbitrary 25-page limit and by certain ADA issues that impacted the ability to complete a proper amended complaint. The issue has further been compounded by the fact that the defendant filed a motion to dismiss the amended complaint totally 151-pages including 142 pages of attachments of extraneous material that go outside of the amended complaint. These circumstances alone support allowance of a second amended complaint.

### III. THE COURT'S RULING ON MOTION TO DISMISS ORIGINAL COMPLAINT SUPPORTS GRANTING A SECOND AMENDMENT

18. The Court's ruling on the motion to dismiss the original complaint supports granting a second amendment of the complaint. Here, the court stated that it would not include material from the defendant's attachments to the motion to dismiss original complaint in its 6-5-25 order, which explicitly stated that consideration of materials outside the pleadings is improper on a motion to dismiss (i.e. the Court noted that plaintiffs were correct about the impropriety

of considering extraneous materials and that such materials would not be considered[3]). See screenshot of the 6-5-25

order on summary judgment conversion:

> In ruling on the defendant's motion to dismiss, the Court has accepted as true, and relied only upon, the factual allegations as set forth in the Complaint. While the plaintiffs are correct that consideration of, and reliance upon, defendant's evidence submitted in conjunction with their motion to dismiss would not be proper, the Court has not done so. Accordingly, the Court has treated the defendant's motion as it was filed-- as a motion to dismiss. Therefore, there is no basis at this juncture to treat it as a motion for summary judgment. Accordingly, the motion is DENIED.
>
> This is a Service Document For Case: 218-2020-CV-00027
> Hillsborough Superior Court Northern District        June 5, 2025
> 6/5/2025 4:21 PM   Honorable Amy B. Messer

19. Yet, despite this clear statement, the court did rely on and include such material as follows:

"On March 13, the defendant provided an affidavit on behalf of Homewood and Robitaille for use in the case involving the plaintiffs. (Id.; see Doc. 300, Ex. A.) The affidavit included the following information:…"

20. The court then proceeded to list several references made in the affidavit. This contradicts the statement by the court that "it had not done so", i.e. not used, considered or relied upon evidence submitted in conjunction with the defendant's motion to dismiss.

21. The court also referenced statements made by Elliott Berry about what Donais told him in a phone call on 1-17-17. But the court treats the statements by Donais to Berry as statements that are true for purposes of the complaint and reasserts them in her 6-5-25 order. The plaintiffs have disputed the statements of Donais made to Berry. This had a prejudicial effect on the plaintiffs.

22. The facts above indicate that there is no guarantee that the court will not use or rely upon materials attached to the motion to dismiss the amended complaint. Given the court's ruling on the motion to convert to summary judgment as noted above, the plaintiffs did not anticipate that the defendant would do the same thing again, that is attached to the same extraneous documents, including Exhibits B-F that were attached to the motion to dismiss the original complaint, plus attach several additional documents that were not attached to the motion to dismiss amended complaint but that are even more violative of the principle expressed in the court's 6-5-25 order. Given this penchant of the defendant, the plaintiffs should be allowed a chance to amend the complaint one more time, with full knowledge that the defendant intends to include extraneous material in order to expand the facts and challenge the facts in the amended complaint.

---

[3] 1Despite this clear guidance/directive, Donais repeated the identical procedural violation in his motion to dismiss the amended complaint, including the very same documents the Court previously found improper.

## IV. NO PREJUDICE TO DEFENDANT

23. Defendant will suffer no prejudice from allowing further amendment. Discovery has not commenced; no scheduling order is in place; no trial date has been set. The case remains at the pleading stage where amendment causes minimal disruption.

24. Moreover, Donais has had notice of the claims to be amended, including additional or subsequent acts and additional parties, since the very beginning of this litigation from the hearing in April 2022 and in other various pleadings including a motion to disqualify counsel. He is also intimately aware of the substantive amendments to be made including additional parties, based on claims that the plaintiffs have alleged against him in other cases such as in Massachusetts and in the current related case that was removed from this court to the NH federal court (which has been sought to be consolidated with this case if it is remanded).

25. Also, the defendant opened the door to the need to amend the complaint again because of his persistence in attaching numerous extraneous materials to his motion to dismiss. The second amended complaint would seek to plead facts from the plaintiffs' prerogative that would protect against the abuse by the defendant, leaving plaintiff not knowing where things stand, if the court will strike the extraneous materials, and whether the plaintiff must now address these [skewed] additional facts and one-sided materials, in an objection pleading.

26. Further, responding to a Second Amended Complaint would involve the same or similar approach the Defendant has already undertaken in challenging the First Amended Complaint.

27. Furthermore, allowing amendment now promotes judicial economy. If the Court were to dismiss the First Amended Complaint with leave to amend, Plaintiff would simply file another amended complaint addressing the same deficiencies that a Second Amended Complaint would cure now. Granting leave at this juncture avoids additional rounds of motion practice and expedites resolution of the actual dispute between the parties.

28. The factors courts typically consider in evaluating motions to amend weigh decidedly in Plaintiff's favor. There has been no undue delay; Plaintiff seeks amendment promptly after Defendant filed his motion to dismiss the First Amended Complaint. There is no bad faith; Plaintiff acts in good faith to ensure his claims are properly pleaded and withstand scrutiny. There is no futility; the proposed amendments address the specific deficiencies Defendant identifies in his motion to dismiss. There is no undue prejudice; as noted, the case remains at an early stage where amendment imposes minimal burden on Defendant.

29. Further, there will be no prejudice to the defendant because he also amended his motion to dismiss several times over the past 3 years and amended it a fifth and sixth time most recently again to include a brand new defense of failure to state a claim and absolute privilege, etc. The defendant was thus allowed by the court to make substantive amendments to his multiple motions to dismiss. For example, the defendant was allowed to revise his first motion to dismiss based on the unsealing of sealed records, which purportedly would provide new information that the defendant did not have because he purported that it had been sealed. This turned out to not be true and there was no new information from the unsealing of sealed records that the defendant did not have before. Yet he was still allowed to revise his 2022 motion to dismiss for insufficient service of process, in 2024, based on the possibility that there could be new information in the unsealed records.

30. It would be unfair to allow the defendants to amend their motions to dismiss in this court but then deny plaintiffs the same opportunity to amend the complaint in this court, at least one more time. This would be an unfair approach.

31. Either way, the plaintiffs should be similarly allowed to amend the complaint in substance based on the new information and new events that occurred after the filing of the original complaint. A second amendment is thus also necessary to add supplemental events since the filing of the original complaint, which was the 25 page limit impeded the plaintiffs from properly pleading in the amended complaint, as the plaintiffs had to address the 15 page ruling on the motion to dismiss and the 52 page motion to dismiss the original complaint, in only 25 pages, while also trying to include additional events that occurred after 2017 that go to supplementing the claims in this case (which was virtually impossible to do properly[4]). For example, in 2019 and 2020, there are events arising from the same claims in 2017 that were repeated, republished and continued defamatory statements about the plaintiffs and that added to and expanded the defamatory statements about the plaintiffs. Thus, there are additional acts by the defendants that have occurred since the filing of the complaint, that plaintiffs need to bring to the attention of the court.

32. Plaintiffs need an opportunity to amend the complaint to include these facts in an amended complaint.

33. Moreover, Donais has had notice of these claims from the very beginning. These claims were also included in the settlement discussions in 2021 that Donais was involved in until January 2022. Because these additional facts occurred after the filing of the original complaint on 1-3-20, these facts were not and could not have been included in the

---

[4] This is further compounded by the ADA issues that the plaintiff has presented to the court confidentially under seal.

original complaint. The plaintiffs have stated their intent to include these facts and claims in this case from the beginning of the litigation. There is no reason to prevent amendment to include these facts/claims now.

34. The plaintiffs need an opportunity to show the court by way of a second amended complaint that there are facts that the plaintiffs can prove to support their claims.  The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect Pro Se litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). Furthermore, "in civil rights cases where the plaintiff appears pro se, the court must construe the pleading liberally and must afford plaintiff the benefit of any doubt." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir.1988). As this is a pro se civil rights case, it is critical that the court allows the plaintiffs every opportunity to show they are entitled to relief including by amending their complaint.

35. Also, here, Plaintiffs' second motion to amend the complaint is timely because the court has not yet entered a scheduling order setting a deadline for filing motions to amend, nor has there been answer filed, nor has there been any discovery, etc. It is still very early, procedurally-speaking in this case.

36. Further, the second amended complaint is necessary to clarify and supplement the claims regarding race discrimination, breach of fiduciary duty, abuse of process, consumer protection violations, and defamation. The plaintiffs one more opportunity to do so properly in order to protect against any technicality that they may have not addressed as they are pro se and not expert pleaders trained in all the technicalities of the law.

37. The bottom line is that the plaintiffs have meritorious claims. This should be evident from the pleadings filed so far, including the amended complaint, the objection to the motion to dismiss and the motion for partial summary judgment. These pleadings may not be drafted with the precision of a trained lawyer, and in fact may be inartfully pleaded in many respects. But it should be evident that there is something there that demonstrates that the plaintiffs have claims that can be proven by the facts, and are entitled to relief. This lawsuit is or should be about justice. If the court steps back and looks at all that has gone on, it should be clear that the plaintiffs deserved a fair chance to be fully and properly heard and to have their full and proper day in court.

### V. DEFENDANT'S ANTICIPATED OBJECTIONS LACK MERIT

38. Defendant's anticipated objections to further amendment lack merit. First, Defendant may argue that Plaintiff already exercised his right to amend once and should not receive another opportunity. This argument fails because New

Hampshire law does not limit parties to a single amendment. To the contrary, courts routinely permit second and even third amendments where justice requires. The question is not how many times a plaintiff has amended but whether the proposed amendment would cure deficiencies, avoid prejudice, and advance resolution on the merits.

39. Second, Defendant may assert that Plaintiff's proposed amendments attempt to resurrect claims dismissed with prejudice. This assertion would be incorrect. The Court dismissed only two claims with prejudice; perjury and violations of professional conduct rules. Plaintiff does not seek to reassert those specific claims. Rather, Plaintiff seeks to properly plead viable causes of action, such as breach of fiduciary duty and defamation, and others, that the Court dismissed without prejudice, and that would benefit from further clarification of the claims.

## VI. LEGAL PRINCIPLES GOVERNING AMENDMENT

40. The legal principles governing amendment are well-established and strongly favor granting Plaintiff's motion. Federal Rule of Civil Procedure 15(a)(2), which New Hampshire courts look to for guidance, provides that courts "should freely give leave when justice so requires." This liberal standard reflects the fundamental principle that cases should be decided on their merits rather than on pleading technicalities. The United States Supreme Court has repeatedly emphasized this principle, holding that the decision to grant or deny leave to amend is committed to the trial court's discretion but that discretion is limited by Rule 15(a)'s liberal policy of permitting amendments. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).

41. Courts deny leave to amend only when the amendment would be futile, unduly prejudicial to the opposing party, the result of bad faith, or unduly delayed. None of these factors is present here. The proposed amendment is not futile; it addresses the specific deficiencies Defendant identifies in his motion to dismiss. The amendment is not unduly prejudicial; as discussed, the case remains at an early stage. The amendment is not made in bad faith; Plaintiff acts in good faith to cure possible deficiencies, make more definitive statements, clarify claims, and proceed to the merits. The amendment is not unduly delayed; Plaintiff has sought to amend the complaint since 2022 but was not allowed for over 3 years. Then when the defendant filed his motion to dismiss the original complaint (under illicit and dubious circumstances), the plaintiffs filed a motion to amend the complaint. The court denied that motion as moot because of its ruling on the motion to dismiss, but it never in actuality addressed the issues raised in the motion to amend the complaint[5]. Further, after defendant filed his motion to dismiss the complaint, plaintiffs indicated the intent to file a

---

[5] See again **Exhibit A** for the previous motion to amend the complaint.

second amended complaint in various pleadings including the motion for case management conference, but now in the abundance of caution files a separate standalone motion in order to avoid the charge that plaintiffs did not file a specific motion seeking leave to amend the complaint a second time.

42. Moreover, courts typically afford plaintiffs the opportunity to amend a second time as long as it is still early in the proceedings. Ketterer v. Grayson, Index No. 653510/2021 (N.Y. Sup. Ct. July 25, 2022) (granting leave to file second amended complaint where discovery had not commenced and no prejudice existed). The court in Ketterer emphasized that early in litigation, before substantial discovery has occurred, courts should liberally allow amendment because no prejudice results and the interests of justice favor resolving disputes on their merits rather than on technicalities.

43. Further, courts recognize that pro se litigants require additional consideration when seeking leave to amend. As the 2nd Circuit explained in Traguth v. Zuck, courts have an obligation to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training. Pro se pleadings must be held to less stringent standards than formal pleadings drafted by lawyers, and pro se litigants should be afforded every reasonable opportunity to demonstrate they have a valid claim. Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000).

44. Here, under the above circumstances and additional restrictions/burdens/obstacles the plaintiffs have faced[6], the plaintiffs have not been given a full opportunity to amend the complaint, while on the other hand, the defendant has been given multiple opportunities to file revise and amend his motions to dismiss at least 5 times with the most recent one involving completely new defenses and legal theories never before mentioned for over 3 years (including, failure to state a claim, etc.), and thus representing a substantive amendment to his motion to dismiss defense.

## VII. CASES SHOULD BE DECIDED ON THEIR MERITS AND NOT ON TECHNICALITIES

45. Courts generally disfavor dismissal for technical defects. See Litton Bus. Sys. v. Commissioner of Revenue, 383 Mass. 619, 622 (1981).

46. Defendants' attempt to have the case dismissed based on hyper-technicalities violates the principle that cases ought to be decided on their merits and not on technicalities.

---

[6] For example, the arbitrary 25-page limitation for the amended complaint proved overly restrictive and impeded plaintiff's ability to add parties and explain attendant claims adequately. It should be noted that the plaintiffs provided an attachment to the amended complaint but the plaintiffs are not confident that it will be treated as part of the amended complaint.

47. In Owens v. Amtrak, No. 94-7444 (Mass. Super. Ct. 1998), the Superior Court explicitly stated that the "spirit of the [procedural] rules favors decisions on the merits, not technicalities, unless the result would be prejudicial to the other party."

48. In JOHN DEWING vs. J.B. DRISCOLL INSURANCE AGENCY, 30 Mass. App. Ct. 467 (1991), the Appeals Court reversed a dismissal for failure to prosecute under Mass.R.Civ.P. 41(b)(2), noting that mere delay without evidence of prejudice or intentional neglect does not justify terminating a case. The court emphasized that dismissals for procedural lapses must be weighed against the policy of resolving disputes on their merits, particularly when there is no showing of harm to the opposing party.

49. In Schiavone v. Fortune, 477 U.S. 21 (1986), the U.S. Supreme Court also highlighted that technicalities should not be rigidly enforced if they undermine the fair adjudication of claims.

50. For New Hampshire cases underscoring this principle, see American Express Travel v. Moskoff, 148 N.H. 446, 450 (2002)("It is important that cases be decided on their merits, that a party have his day in court and that rules of practice and procedure shall be tools in aid of the promotion of justice rather than barriers and traps for its denial." Douglas v. Douglas, 143 N.H. ___, ___, 728 A.2d 215, 219 (1999)". And also see Krainewood Shores Assoc., Inc. v. Town of Moultonborough, 174 N.H. 103, 111 (2021).

51. Thus, Courts should avoid procedural traps (e.g., Owens) and ensure cases are heard on their merits. This includes allowing a second amended complaint in this instance, so that plaintiffs can fully present the merits of their claims.

## VIII. CONCLUSION

52. For the foregoing reasons, Plaintiff respectfully requests that this Court grant leave to file a Second Amended Complaint. Granting leave would advance the interests of justice by allowing this case to proceed on its merits rather than being dismissed on pleading technicalities. No prejudice would result to Defendant because the case remains at an early stage before discovery has commenced. The proposed amendments would cure any deficiencies in the First Amended Complaint and ensure that Plaintiff has a fair opportunity to pursue his claims.

53. This case has been pending for nearly six years, during which time Plaintiff has been prevented from amending due to procedural challenges and appellate delays. Plaintiff has now filed his first amended complaint and seeks leave to file a second to address perceived deficiencies. Denying leave at this juncture would elevate form over substance and deny Plaintiff the opportunity to have his claims adjudicated on their merits. Conversely, granting leave would serve

the fundamental principle that cases should be resolved based on the facts and law applicable to the parties' dispute rather than on procedural technicalities.

54. Accordingly, Plaintiff respectfully requests that the Court grant this motion and allow Plaintiff to file a Second Amended Complaint within a reasonable time after the Court's order granting leave.

Respectfully submitted,
/s/andre bisasor
Andre Bisasor

Date: October 30, 2025

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
Andre Bisasor

12

# Exhibit A

STATE OF NEW HAMPSHIRE-HILLSBOROUGH SUPERIOR COURT-NORTHERN DISTRICT
Natalie Anderson, et al. v. Craig Donais | Docket No. 216-2020-CV-00027

**PLAINTIFF'S [EMERGENCY] MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

1. Pursuant to Rule 12 of the New Hampshire Superior Court Rules of Civil Procedure, Plaintiff Natalie Anderson[1] respectfully moves this Court to grant leave to file the first amended Complaint in this case. The original Complaint was filed on 1-3-20, which is over five years ago.

2. Note: Due to the pending motions for reconsideration of the 4-29-25 order, and motion for interlocutory appeal, this motion is only filed in the chance the court denies those pending motions. If the court grants the pending motions for reconsideration of the 4-29-25 order, and/or motion for interlocutory appeal, then this motion to amend the complaint may become moot to the extent the court, or the NHSC, grants default against the defendant for failure to timely file an answer, or otherwise if the court, or the NHSC, strikes the new motion to dismiss as waived/untimely, and then requires that an answer be filed forthwith.

## I. INTRODUCTION

3. The Plaintiff hereby submits this Motion to Amend Complaint in the above-captioned matter. It is being filed because the Court's 4-29-25 order, allowing the defendant's new fifth pre-answer motion to dismiss with an entirely new defense of failure to state a claim to stand, necessitates its filing.

## II. LEGAL STANDARD

4. An amended complaint is a written revision of an original complaint filed by a plaintiff or petitioner.

5. Plaintiffs may choose to amend a complaint for several reasons, like adding additional claims, correcting errors, adding additional parties, adding requests for relief, or clearing up inadequate claims.

---

[1] It should be noted that in his recent filings, Donais argues that no claims are asserted by Anderson against Donais and that she cannot seek any relief or file motions in this case. This assertion is both factually and legally incorrect, as the complaint and the record demonstrate that Anderson has participated actively in this litigation, has filed numerous motions, and has been the subject of Donais' conduct. Donais never objected to Anderson's claims previously and has thus waived any such argument. To permit Donais to now assert that Anderson has no claims would lead to the absurd result of nullifying years of litigation and filings, including Anderson's many motions and pleadings, and would allow Donais to dictate which plaintiffs may assert which claims, contrary to both the facts and the law. Further, it should be noted that the original complaint begins with: *"COMPLAINT AND DEMAND FOR JURY TRIAL 1.* **We the plaintiffs in the above captioned case hereby submit this complaint against the Defendants…"** It also should be noted that with respect to the section of the complaint that address the claims against Donais, that section begins with: *"IX. CLAIMS AGAINST CRAIG DONAIS. 346.* **Plaintiffs hereby reallege and incorporate by reference each of the preceding paragraphs of this as if fully stated herein."** In both of these instances, the complaint indicates that the claims are being asserted on behalf of both plaintiffs. Thus, Donais should be estopped from this argument because he did not raise for 3 years and he specifically addressed plaintiff Anderson in many of his prior filings. Further, the entire ADO proceedings against Donais, which Donais himself has referenced in support of various arguments and positions taken in this court, was initiated and prosecuted by plaintiff Anderson or under her name. NB: Plaintiff Bisasor will separately file his own motion for permission to amend the complaint.

1

6. The legal standard for amending a complaint, in NH Superior Court, is outlined as follows.

### A. NH Superior Court Rules of Civil Procedure

7. NH Superior Court Rules of Civil Procedure states the following regarding amendments to a complaint:

> Rule 12. Motions – Specific | (a) Motions to Amend.
> (1) No plaintiff shall have leave to amend a pleading, unless in matters of form, after a default until the defendant has been provided with notice and an opportunity to be heard, to show cause why the amendment should not be allowed.
> (2) Amendments in matters of form will be allowed or ordered, as of course, on motion; but, if the defect or want of form be shown by the adverse party, the order to amend will be made on such terms as justice may require.
> (3) Amendments in matters of substance may be made on such terms as justice may require.
> (4) Amendments may be made to the Complaint or Answer upon the order of the court, at any time and on such terms as may be imposed.

8. This effectively states that amendments in form will be allowed, "as of course", on motion. This indicates that amendments involving form should not be denied. Further, amendments on substance are to be allowed as justice requires. Amendments also may be made at "any time".

9. NH Superior Court Rules of Civil Procedure further states the following about amendments to a complaint:

> Rule 8. Complaint
> (b) An amendment to a pleading relates back to the date of the original pleading when:
> (1) a statute that provides the applicable statute of limitations allows relation back;
> (2) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading; or
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 8(b)(2) is satisfied and if, within the period provided for serving the summons and complaint, the party to be brought in by amendment:
> (A) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (B) knew or should have known that the action would have been brought against it, but for a mistake or lack of information concerning the proper party's identity.

10. Here, the rules indicate that amendments arising from the conduct or occurrence in the original pleading should not only be allowed but these will also relate back to the original date of filing.

11. NH Superior Court Rules of Civil Procedure also states the following regarding amendments to a complaint:

> Rule 7. Pleadings, Motions and Objections, General
> (h) The court may in all cases order either party to plead and also to file a statement in sufficient detail to give to the adverse party and to the Court reasonable knowledge of the nature and grounds of the action or defense.

12. Here, the rules indicate or at least suggests that, if there are deficiencies in the complaint, the remedy is not dismissal but an order requiring filing of a statement in sufficient detail. [Note: In Massachusetts, this is referred to as "a more definitive statement". See MRCP Rule 12 (e)("*Motion for more definite statement. If a*

*pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading").].*

13. So, the rules clearly envision that courts will freely allow plaintiffs to amend their complaint.

## B. Amendments in Form

14. Rule 12(a) distinguishes between amendments that are "matters of form" versus more substantive changes.

15. This distinction is critical because Rule 12(a)(1) of the NH Superior Court states: "No plaintiff shall have leave to amend a pleading, **unless in matters of form**, after a default until the defendant has been provided with notice and an opportunity to be heard, to show cause why the amendment should not be allowed."

16. Therefore, the rules indicate that plaintiffs automatically have leave to amend the complaint in matters of form. This indicates that amendments in matters of form must be allowed. The term "unless in matters of form" indicates the converse is true, that plaintiff have leave to amend in matters of form, as a matter of right. Further, as noted previously, rule 12 also indicates that amendments in form will be allowed, "as of course", on motion. This indicates that amendments involving form should not be denied. The term "as of course" indicates as a matter of right.

17. Thus, the rules do not envision the court preventing a plaintiff from amending the complaint in matters of form. Further, amendments that merely refine procedural aspects—such as correcting party names or updating pleadings to reflect resolved claims—are typically classified as matters of form.

### i. Removing Settled Defendants

18. Similarly, removing defendants whose claims have been resolved through settlement does not introduce new claims but merely reflects the litigation's current status. This aligns with amendments of form, as the remaining defendant's obligations remain unchanged.

19. Thus, removing settled defendants typically has no bearing on the surviving claims or defenses. Also, removing settled defendants does not implicate jurisdiction over the remaining party but instead eliminates extraneous parties, streamlining the case—a procedural adjustment courts routinely permit as a matter of administrative efficiency.

20. In addition, the absolute right to remove or strike out defendants from being named in a case is established by statute as long as it is done before evidence is closed or case submitted. See RSA 514:13 ("In all civil

proceedings, when two or more are joined as plaintiffs or defendants, the writ or other process may be amended before the evidence is closed or the case is submitted, by striking out the name of any plaintiff or of any defendant on paying his costs to that time."). Therefore, plaintiffs have the automatic/absolute right to remove settled defendants from a case before evidence is closed or case submitted (i.e., where evidence is closed or case is submitted after answer/discovery is closed).

### ii. Clarifying Roles of Multiple Plaintiffs

21. Amendments that merely explicate the relationship between plaintiffs and claims fall within the scope of procedural refinement and thus a matter of form.

22. NH Rev Stat § 514:13 explicitly allows amendments to strike out or clarify the roles of plaintiffs or defendants "before the evidence is closed," provided the amendment does not introduce new claims or defenses. This statute supports the interpretation that clarifying how claims apply to existing plaintiffs is a matter of form, as it involves no substantive alteration to the pleadings.

23. If the amendment explicitly states that both plaintiffs assert the same claims already implied in the original complaint, then the amendment is a matter of form. For example, adding language such as "both plaintiffs jointly allege" to existing counts does not introduce new claims.

24. Further, clarifying claims between plaintiffs—especially where the defendant was already aware or should have been aware of both plaintiffs' involvement—typically does not impair the defense as this clarifies the existing claims without altering its substance and refines the pleading without introducing new claims.

25. Therefore, technical corrections to party roles are amendments in matters of form.

26. Generally, a court should allow amendments to pleadings to correct technical defects but need only allow substantive amendments when necessary to prevent injustice. See Nat'l Marine Underwriters v. McCormack, 138 N.H. 6, 8, 634 A.2d 1008, 1010 (1993).

27. New Hampshire courts distinguish amendments of form from those of substance by assessing whether the change alters the claims (substantively) or merely clarifies, corrects technical defects, or refines procedural aspects (formalities). Thus, amendments to correct "technical defects" in pleadings are permissible as matters of form, while substantive amendments (e.g., adding new claims) require judicial scrutiny.

28. Similarly, federal courts in New Hampshire have allowed plaintiffs to remove settled defendants from complaints as procedural refinements, provided the remaining claims remain unchanged.

29. Under Rule 12(a)(1), post-default amendments are restricted to matters of form unless the defendant receives notice. If the clarification of plaintiffs' roles occurs before default or during early pleading stages, courts are required to permit it as a procedural adjustment.

30. In sum, clarifying how claims apply to both plaintiffs in a multi-plaintiff complaint is generally a matter of form under NH Superior Court Rule 12(a)(1), provided the amendment does not alter the claims, does not prejudice the defendant's ability to respond, and occurs before default or during permissible pleading stages.

31. In Nat'l Marine Underwriters v. McCormack, 138 NH (1993), the court said:

> We allow substitution of an entirely new party as plaintiff, including substitution of a plaintiff with standing for an original plaintiff with no standing, when required to prevent injustice and in the absence of resultant prejudice to the defendant. See Edgewood Civic Club v. Blaisdell, 95 N.H. 244, 247, 61 A.2d 517, 519 (1948); State v. Collins, 68 N.H. 46, 46-47, 36 A. 550, 550-51 (1894); Willoughby v. Holderness, 62 N.H. 661, 662 (1883). We have allowed substitution of a plaintiff for an original plaintiff with no right to recover due to a procedural incapacity. See Coburn v. Dyke, 103 N.H. 159, 160-61, 167 A.2d 223, 224 (1961). Further, we have allowed an insurance company, upon its own motion, to substitute itself for the original plaintiffs, the insureds. See King v. Nedovich, 118 N.H. 161, 161-62, 384 A.2d 134, 135 (1978).

> The general rule in this State is to allow liberal amendment of pleadings to cure defects of a technical nature. Tice v. Thomson, 120 N.H. 313, 318, 414 A.2d 1284, 1287 (1980); see RSA 514:8 (1974); SUPER. CT. R. 25. Substantive amendments to pleadings are permitted when they are necessary for the prevention of injustice. Clinical Lab Products, Inc. v. Martina, 121 N.H. 989, 991, 437 A.2d 285, 286 (1981); see RSA 514:9 (1974); SUPER. CT. R. 26. We allow "liberal amendment of pleadings unless the changes surprise the opposite party, introduce an entirely new cause of action, or call for substantially different evidence." Clinical Lab Products, Inc., 121 N.H. at 991, 437 A.2d at 286 (citations omitted); see Gosselin v. Gosselin, 136 N.H. 350, 352, 616 A.2d 1287, 1288 (1992).

32. These references demonstrate that clarifying claims of multiple plaintiffs are of a technical nature and should be liberally allowed.

## C. Amendments in Substance

33. RSA 514:9 (2007) allows the trial court to permit a substantive amendment to pleadings "in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice...."

34. Therefore, according to this statute, amendment of the complaint in substance should be allowed when it is fair and reasonable to do so, and when it would be unfair to the plaintiffs to not allow amendment. It certainly should be allowed when the case is in its early stage (pre-answer motion to dismiss stage is still

5

procedurally very early) and especially when no amendment has been made to the original complaint, and when no chance or opportunity to amend the complaint has been provided. This finds direct support in New Hampshire case law, court rules, and statutory provisions.

35. Under RSA 514:9, liberal amendment of pleadings is permitted and encouraged by statute. Courts are required to allow substantive amendments when it prevents injustice.

36. Generally, a court should allow amendments to pleadings to correct technical defects but need only allow substantive amendments when necessary to prevent injustice. See Nat'l Marine Underwriters v. McCormack, 138 N.H. 6, 8, 634 A.2d 1008, 1010 (1993).

37. This underscores the broader context that reflects a judicial preference for resolving cases on their merits rather than procedural technicalities.

38. Only when "the changes would surprise the opposing party, introduce an entirely new cause of action, or call for substantially different evidence" should a court consider possibly not allowing amendment of substance but still retains discretion to allow amendment even in such circumstances. Dent v. Exeter Hosp., 155 N.H. 787, 796, 931 A.2d 1203 (2007). See Tessier v. Rockefeller, 162 N.H. 324, 340, 33 A.3d 1118 (2011). See also Clinical Lab Prod's Inc. v. Martina, 121 N.H. 989, 991 (1981).

39. Thus, denying leave to amend should be rare unless prejudice or undue delay exists, aligning with the principle that amendments should be liberally and freely allowed when fair and reasonable.

40. Rule 12(a)(1) states that amendments in "matters of form" may proceed without judicial intervention after default, but substantive amendments require notice and opportunity to respond. This distinction implies that substantive amendments are permissible if procedural fairness is ensured, particularly in early stages.

41. Although not binding, Federal Rule of Civil Procedure 15(a) strongly influences New Hampshire courts. Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires," prioritizing flexibility to ensure litigants can fully present their claims, and New Hampshire courts frequently adopt this reasoning. Note: Under analogous Fed. R. Civ. P. 15(a)(1), amendment is permitted as of right before responsive pleading. The federal court thus freely allows complaints to be amended at least once in the

federal court. Similarly, in neighboring Massachusetts, amendment is permitted once as a matter of right prior to service of a responsive pleading (i.e., answer) to the complaint. See MRCP Rule 15.

42. A plaintiff must be given leave to amend his complaint to correct perceived deficiencies before a dismissal for failure to state a claim has preclusive effect. See ERG, Inc. v. Barnes, 137 N.H. 186, 189 (1993).  In Barnes, the NHSC reiterated the liberal pleading amendment practice in this State. Barnes, 137 N.H. at 189, 624 A.2d at 557. See also Follender v. Scheidegg, 142 N.H. 192, 193 (1997) (denial of motion to amend affirmed only where party was "given ample notice of the deficiency in his pleadings" yet failed to seek amendment until after dismissal).

43. Such a rule is consistent with modern rules of pleading and particularly with NH's liberal doctrine of amendment. See R. Wiebusch, 4 New Hampshire Practice, Civil Practice and Procedure§§ 243-47, at 176-82(1984& Supp.1992-93); Restatement (Second) of Judgments§ 19 comment a at 161-62(1980)(such a result is warranted by ease of amending pleadings).

44. To assure that the opportunity for amendment has practical meaning, however, the plaintiff must be given leave to amend the writ to correct perceived deficiencies before an adverse judgment has preclusive effect.

45. See Branum v. Clark, 927 F.2d 698, 705(2d Cir.1991)(court should not dismiss without granting leave to amend); Isaac v. Schwartz, 706 F.2d 15, 17(1st Cir.1983)(plaintiff given full opportunity to amend complaint). See also Osserman, 369 Mass. at 204, 339 N.E.2d at 195("In each instance the plaintiff has been given two chances to state his case and is not entitled to burden the courts and opposing parties with further attempts.").

46. Here, plaintiffs have been given no opportunity to amend the complaint much less a full opportunity to amend the complaint, while on the other hand, the defendant has been given multiple opportunities to file revise and amend his motions to dismiss at least 5 times with the most recent one involving completely new defenses and legal theories never before mentioned, failure to state a claim/absolute privilege, and thus representing a substantive amendment to his motion to dismiss defense.

47. Therefore, under New Hampshire Superior Court Rules of Civil Procedure, amendments to pleadings should be freely granted when justice so requires. Thus, a party may amend the complaint under New

Hampshire law, that permits liberal amendment of pleadings and that mandates that leave to amend the complaint should be freely given and where amendments to correct technical defects are favored.

### III. GROUNDS FOR AMENDMENT
### A. Plaintiffs Have Had No Opportunity to Amend The Complaint And Thus Justice Requires Allowance of Amendment

48. Plaintiffs have not had any chance or opportunity to amend the complaint after service of process was made on the defendant on 4-14-22.

49. In the Original Complaint (filed in Jan. 2020), Plaintiffs sued 21 defendants, including Donais. The Complaint's length (65 pages, 418 paragraphs) reflects the complexity of claims against multiple corporate and individual defendants.

50. Service deadlines were extended multiple times by Judge David Anderson due to pandemic disruptions and extensive settlement negotiations from early 2020 to early 2022, of which Donais participated in, up until the last minute just before a global settlement with 21 defendants was about to be finalized/consummated, and at which point Donais backed out of the settlement without explanation, in January 2022.

51. There was no opportunity for amendment of the complaint or to seek permission to amend the complaint during the Covid pandemic in 2020/2021, and/or during the settlement negotiations in 2021, all of which suspended litigation in this court including service of process, the deadline for which had been extended by the court through until March/April 2022.

52. The plaintiffs eventually served process on the defendant on 4-14-22 pursuant to court order. The original complaint was served on the defendant at that time.

53. But it should be noted that the defendant prematurely entered appearance in the case in January 2022 in order to prematurely file a motion to dismiss for failure to timely serve the complaint, even though the deadline to serve process had not yet expired. This improper move distorted the case process because it immediately invoked a premature motion to dismiss process while the plaintiffs were still wrapping up the settlement negotiations with the 20 defendants. The defendant took away the plaintiffs autonomy and choice in how to proceed with the case after settling the 20 defendants and after the defendant withdrew from the settlement at the last minute. This was a strategic move by the defendant in order to disrupt and

to "throw a monkey wrench" into the orderly process of this case including the orderly process of serving the defendant and the attendant orderly processes of seeking to the amend the complaint after the 20 defendants were settled.

54. As a reminder, prior to January 2022, the plaintiffs were led to believe that Donais was part of the settlement. Therefore, the plaintiffs had no reason or occasion to think that the case would proceed after settlement was finalized or executed, and thus the plaintiffs had no reason or occasion to think about amending the complaint. As far as the plaintiffs were concerned, the plaintiffs and all defendants had reached a partial settlement agreement in April 2021, where the parties agreed on a specific monetary amount for settlement and with the only thing remaining was the wording and finalization of the settlement contract. The plaintiffs were blindsided by the sudden withdrawal, at the last minute (in early January 2022), from the agreed upon settlement that Donais was included in and had agreed to in April 2021.

55. Once the defendant filed his appearance and first motion to dismiss for failure to timely serve the complaint in January 2022, this led to an intense litigation over the service of process issue. Then the defendant introduced a second motion to dismiss in March 2022 seeking to vacate the summons issued by the clerk office. This further led to more intense litigation. Then, in May 2022, the defendant again filed a third motion to dismiss, this time for insufficient service of process, which re-included the timeliness of service of the complaint and the vacatur of the summons issues combined into one larger threshold issue for whether the court had jurisdiction over the case and triggering the requirements/protections of Rule 9 including the automatic right to interlocutory appeal. All of these challenges were not based on the adequacy of the complaint itself but on technical service arguments that did not address or attack the complaint. Consequently, the plaintiffs were led to believe that the defendant had no challenge to the complaint itself and thus were not given any notice by the defendant of any intent to challenge the adequacy of the complaint for all this time. Therefore, there was no practical need for the plaintiffs to really worry about amending the complaint to address adequacy of the complaint. [Note: This is another reason why it is **prejudicial** to the plaintiffs for the defendant to wait 3 years until 3-14-25 to raise a challenge to the adequacy of the complaint.

It also has given the defendant 3 years to work on challenging the complaint, when they otherwise would have had to come up with such challenges immediately in 2022.]

56. Similarly, if the plaintiffs sought to amend the complaint before serving it, they could be accused of filing a new complaint. Similarly, plaintiffs could not seek to amend the complaint while negotiating and finalizing a settlement. How would the plaintiffs know what to amend if the defendants were settling the case? It was only once the settlement was finalized and executed that the plaintiffs would be in a position to seek permission to amend the complaint because any amendment would have to include removal of the settled defendants and the attendant claims, which removal did not occurred until early April 2022. Even with the appearance of Donais in January 2022 and with his sudden decision to back out of the settlement at that time, him being the only one to do so, the other defendants were not out of the case until the settlement agreement was finalized. So the plaintiffs would have had to wait until the settlement execution to even begin to seek to amend the complaint because the complaint would then have been amended to focus only on the one remaining defendant, Donais, while the other 20 defendants were not fully out of the case as yet though things were on track for completion of the settlement. Plaintiff trusts that this is making sense however in-artful it may be. Hence, the first moment that the plaintiffs could seek to properly amend the complaint was on 4-6-22 when the finalized settlement stipulations of dismissal signed for all 20 defendants were filed officially with the court and those 20 defendants were officially out of the case. Note: It should be noted that 4-6-22 was also the date of the hearing with Judge Messer and during that hearing, the plaintiffs sought to raise the issue of amending the complaint, with the court, but the court, at the behest of the remaining defendant, did not address the issue.[2]

57. Furthermore, the plaintiffs cannot file an amended complaint without permission from the court. The plaintiffs could not simply file an amended complaint on their own.

---

[2] During the 4-6-22 hearing, plaintiffs did raise to the court the issue of the need to amend the complaint but the court ignored the issue at the time and did not address the issue. Thus, Plaintiffs tried to bring this to the attention of the Court but the Court did not see fit to address it at that time. Thus, plaintiffs were unable to amend the complaint prior to this point because the plaintiffs cannot amend the complaint without the permission of the court. By refusing to address the issue, the court effectively withheld its permission to amend the complaint at that time. See relevant excerpt of the transcript of the 4-6-22 hearing, as **Exhibit 1**.

58. The plaintiffs would have had to seek permission to amend the complaint prior to service, while battling the motion to dismiss for failure to serve complaint and the motion to vacate summons, and dealing with a hearing on the motion to dismiss on 4-6-22, while also finalizing and executing the settlement agreement with 20 defendants which was finally executed in early April 2022.

59. Similarly, once the 20 defendants were out of the case, the plaintiffs would have to seek permission to amend the complaint during the same time that the defendant was seeking to dismiss the case for service of process issues and to vacate the summons through two motions to dismiss filed in January 2022 and in March 2022, and appealing the denial of those two motions to the NH Supreme Court (NHSC), and then further pressing for dismissal based on insufficiency of service of process, shortly thereafter, by filing his third motion to dismiss (in May 2022) and then seeking to include that in his appeal to the NH Supreme Court (NHSC) in June 2022.  If plaintiffs had sought permission to amend the complaint during those actions by the defendant, it would have been improper firstly because the complaint could not have been amended while the case was being appealed, and secondly because the defendant was seeking to get rid of the case only on the threshold issue of service of process, and it would have been impractical because the procedural posture of the case gave deference to first resolving the jurisdictional challenge regarding service of process. Amending the complaint would not have cured any jurisdictional issue of insufficient service of process. Thus, seeking to amend the complaint back then particularly on substantive issues, ostensibly would have been a waste of time and judicial resources since the case could have been dismissed for insufficient process and an amendment could not stop that, if the court was inclined to do that. Moreover, the complaint could not have been amended while the case was on appeal and/or while this court placed a stay on the case pending appeal. This sufficiently lays out the tight tracing of the timeline showing that the plaintiffs could not have amended the complaint and was given no opportunity to amend the complaint.

60. Plaintiffs cannot reasonably be expected to stand on that original complaint filed 5 years ago with 21 defendants, from before the pandemic began. This would simply not be fair, just or equitable.

61. Moreover, there are additional acts since the filing of the original complaint in January 2020. Plaintiffs need to supplement the complaint with additional events, facts and claims, in addition to clarifying existing

claims. [Note: Some of these additional facts were raised to the Court in the 4-6-22 hearing and in prior pleadings such as the 1-26-22 motion to disqualify counsel and the 2-18-22 reply to the objection to that motion to disqualify counsel.]

62. Therefore, since the original filing of the complaint in this case, there are new acts by Donais that have occurred that are relevant to the matters before this court. Plaintiff could seek to file a new separate lawsuit regarding some of the new acts by Donais, however, for judicial economy reasons, it seems best to bring these expanded facts to the attention of this court, via an amended complaint, given that the same defendant is before this court, for the same or similar claims and/or for claims arising from or related to the same or similar facts, transactions or occurrences.  It is simply more efficient to allow incorporation of these new acts into this case via amendment of the complaint rather than forcing the plaintiff to file a separate new lawsuit in this court, which will likely have to be consolidated with this case in any event. Either way, the plaintiffs have a right to pursue claims based on subsequent acts whether in this court or in another court[3].

63. So, in sum, after Donais entered appearance on the case in early January 2022, Donais moved to dismiss the case prior to service of process and tied up the case with technical jurisdictional/sufficiency of process issues for 3 years, with back-to-back procedural motions to dismiss and with an appeal, that triggered multiple stays. Donais employed several dilatory procedural tactics including filing four motions to dismiss (2022–2024) challenging service; pursuing frivolous interlocutory appeal to NHSC, which was declined on 2-27-25, ignoring the 3-31-25 answer deadline, and filing a 5th Motion to Dismiss on 3-14-25.

---

[3] It should be noted that, while this case was suspended or stayed for 2 years in the NHSC on appeal, the plaintiffs filed a new case in Massachusetts superior court (Bristol County) in 2022, in order to preserve statute of limitations for the subsequent acts of Donais, among other things. The case was served and the defendant removed the case to Massachusetts Federal Court. The defendants then sought to dismiss the case but Judge William Young, after reading the papers and after hearing, decided that he would not dismiss the case but that he would transfer the case to the NH federal court, so as to eliminate any issue of personal jurisdiction (which he did not decide that issue). Judge Young stated that the claims should be heard on the merits and that was why he transferred the case rather than allowing technicalities to get in the way of the merits. The defendant had also requested in the alternative to transfer the case if the court did not dismiss on other grounds. Once transferred to NH federal court, the defendants again moved to dismiss but the federal court did not dismiss the case, and allowed the plaintiff to file an amended complaint. While the amended complaint was being reviewed, the NHSC sent the case back to this court and this case resumed. Because of that, there now would be two cases on similar facts and claims that would be adjudicated in both state court and federal court. Plaintiff filed for voluntarily dismissal on the grounds that this case was further ahead because it had already decided/denied the motion to dismiss and was poised to enter the Answer stage, and thus so that the federal court claims can be consolidated with this prior filed case and so that all the related claims could be heard in one court. (The plaintiff has the right to re-file the case in one year from dismissal, under the NH savings statute, as long as the dismissal was without prejudice and not based on adjudication of the merits). See later section in this filing on the voluntarily dismissed case in NH federal court.

64. The above more than meets the "justice so requires" standard for allowance of amendment of the complaint.

### B. Judicial Economy Requires Allowance of Opportunity to Amend The Complaint

65. Regarding judicial efficiency, the Court's 4-29-25 order appears to have indicated the preference for judicial efficiency of the proceedings . Removing settled parties and refining claims aligns with this directive. Judicial economy favors amendment by streamlining litigation with a focused complaint that aids resolution of this case, and avoids piecemeal adjudication. Forcing Plaintiffs to defend a 65-page multi-defendant complaint against one remaining defendant wastes resources and is fundamentally unfair.

66. Further, Plaintiffs diligently sought a case management conference in December 2024 including but not limited to addressing amendment. The Court denied scheduling a case management conference, citing the pending appeal by Donais at that time. Post-appeal, amendment is now timely.

### C. Plaintiffs' Previous Diligent Attempts To Seek Amendment
### i. At the 4-6-22 Hearing

67. It should also be noted that Plaintiffs previously repeatedly raised the need to amend the Complaint in prior pleadings, including their 1-26-22 motion to disqualify (and 2-18-22 reply for that motion), and at the April 6, 2022 hearing on the first motion to dismiss, and in two subsequent motions for a case management conference in 2024 and this year.

68. With respect to the 4-6-22 hearing, an excerpt from the transcript (page 32) is seen below (See **Exhibit 1**):

> MR. BISSASOR: Yes. The next issue is regarding the service of the actual complaint itself. Because of the 20 defendants are going to be out. I just wanted to bring to the attention of the Court that we intend to amend the complaint. I'm not sure if we should amend it before serving it to pay respect to the fact that the defendants are –– the other 20 defendants are out, or is that something to take up after serving the complaint as is?
>
> THE COURT: So I guess, Attorney Hilliard, if you want to respond to that, you can. If you would prefer not to respond, you don't need to respond.
>
> MR. HILLIARD: I think he's asking the Court for legal advice, Your Honor. I don't think either one of us should respond.
>
> THE COURT: Okay. In case you had a response to him, I was going to let you do it. Okay.
>
> MR. HILLIARD: Thank you.
>
> THE COURT: What? Yeah. There's no response there, Attorney Bissasor (sic), go ahead.
>
> MR. BISSASOR: Yeah. No, I was just going to say that I'm not asking for legal advice. I'm just stating to the Court that there's a need to amend the complaint. So I guess I'm –– procedurally, I was asking whether it's proper to amend the complaint prior to service or amend it –– or take up the issue of amendment after service.
>
> THE COURT: And I ––
>
> MR BISSASOR: Procedurally, what would be most appropriate under these unusual circumstances?

THE COURT: I appreciate your making the request, Mr. Bissasor, but the Court is not going to answer that question. I'm going to allow −− you need to prosecute your own case. So you've got your reissuance of a summons, and that's −− the Court has no further comment on that. Do you have any other issues you need to raise with the Court today?

69. The transcript excerpt shows that the plaintiffs, through Plaintiff Bisasor, explicitly informed the court of their intent to amend the complaint, including to reflect the fact that 20 defendants would be removed. He sought clarification on whether to amend before or after service, but the court declined to provide any guidance or ruling, instead stating, "the Court is not going to answer that question... you need to prosecute your own case" and moving on without addressing the substance of the request.

70. Further, the record shows that defense counsel sought to characterize the plaintiff's request as seeking legal advice, which the court then adopted as its rationale for refusing to address the issue. This was improper: defense counsel's characterization should not have prevented the court from fulfilling its duty to manage the case and rule on procedural motions including oral ones. The court's role is to ensure fair process for all parties, not to defer to defense counsel's framing of the plaintiff's request.

71. Yet, this was not a request for legal advice, but a legitimate procedural motion for the court to exercise its case management authority. Under pro se liberal construction principles, the court should have treated the plaintiffs' request as a request for permission to amend the complaint, and under its case management authority should have provided some basic information about how the court intended to handle the issue of allowing the plaintiffs to amend the complaint, where without the permission of the court, they could not amend the complaint.

72. Under New Hampshire Superior Court practice, requests to amend a complaint—especially before service or answer—are routine and should be liberally construed in favor of allowing amendment, particularly when it is the plaintiff's first such request. New Hampshire law and practice are clear that amendments to pleadings should be freely permitted, especially in the early stages of litigation and when no prejudice to the opposing party is shown. The federal standard, which New Hampshire courts often follow, is that leave to amend should be "freely given when justice so requires". Further, New Hampshire is a notice-pleading jurisdiction that takes a liberal approach to technical requirements and amendments to pleadings. This policy

is especially strong where, as here, the amendment is sought before an answer or substantive motion has been filed and no prior amendment has been made.

73. The court's refusal to address the plaintiff's request—either to grant, deny, or even clarify the process for amending—constituted an abdication of its case management responsibility. The plaintiff was not seeking legal advice, but rather, as the transcript makes clear, was making a procedural request for permission to amend the complaint in light of changed circumstances. The court should have, at minimum, acknowledged the request and ruled on it, or provided basic procedural direction. Instead, the court's response left the plaintiff without guidance or a ruling on a legitimate procedural issue.

74. Given the above, the plaintiff's request to amend should be granted now for the following reasons:

    a. It was the first request to amend and was made at the earliest possible stage, before service of process.

    b. New Hampshire law and rules require that amendments be freely allowed when justice so requires, especially in early stages and when amendments are made in good faith to reflect changed circumstances.

75. The court's failure to address the original request on 4-6-22 was not right, and should not bar the plaintiff from seeking amendment now. Moreover, the court's refusal to address the plaintiff's request to amend the complaint was contrary to New Hampshire's liberal amendment policy and its own duty to manage procedural matters. The request was not for legal advice but a legitimate procedural request. The court should now grant leave to amend, as it is fair, reasonable, and consistent with both the letter and spirit of New Hampshire law and civil procedure.

### ii. In the 2024 Case Management Conference Motion Pleadings

76. With respect to the subsequent raising of the issue to amend the complaint, in the case management motions, a relevant excerpt from the 12-9-24 reply to the objection to the 11-22-24 case management motion, is taken from page 13, paragraph 54(g), as follows (See **Exhibit 2**):

> Amendment of Complaint/Addition of Necessary Parties: The need to amend the complaint, including the addition of necessary parties, to ensure comprehensive adjudication of all relevant issues, as well as the timing of when that will be allowed. NB: From the outset, the defendant has been pressing, in this court and on appeal, for early dismissal based on serving process issues, leaving no opportunity to amend the complaint/add necessary parties since service of process on 4-7-22. Plaintiffs would like to flag this issue from now so that it is on the court's radar, and so that it is not said that this issue was never raised (NB: If

15

recalled correctly, plaintiff believes this item was briefly raised once before, at the 4-6-22 hearing with this court).

77. A further relevant excerpt from the 11-22-24 motion is taken from page 1, paragraph 1(g), as follows (See

**Exhibit 3**):

Amendment/Removal of Settled Defendants: Plaintiffs seek removal of defendants who have settled from the filing system to streamline case management. Assistance is requested for amending complaint names within the e-filing system.

78. Both of these documents clearly raise the issue of amending the complaint, to remove settled parties, to add necessary parties and to clarify or supplement the claims to ensure comprehensive adjudication of all relevant issues.

79. On 1-3-25, the court entered the following order on the Plaintiffs' Motion for a Case Management Conference

The Court does not find that plaintiffs have set forth a legitimate basis for holding a case management conference at this time. After resolution of the Supreme Court's review of this Court's order on defendant's motion to dismiss, the case will either be resolved or the defendant will be required to file his Answer. The parties would then be required to file a Proposed Case Structuring and ADR Order pursuant to NH Super. Ct. R. 5. Accordingly, the motion for a case management conference is DENIED.

80. Note: The Court's 1-3-25 order failed to address Plaintiffs' entitlement to amend their Complaint under Rule 12 under the circumstances.

81. However, the 1-3-25 order seems to have suggested that the attendant issues of the case management motion, including the amendment of the complaint, will be taken up at the right time, ostensibly after the case comes back from the NHSC. If this is so, then this is evidently the right time to allow the complaint to be amended for the first time in this case.

### iii. Conclusion

82. So, despite the previous requests regarding this issue of amending the complaint, the Court evidently delayed addressing this issue, leaving Plaintiffs without relief regarding the need to amend the Complaint to remove settled defendants, to add parties, and to clarify and supplement claims.

83. Note: The Court's most recent 4-29-25 order also failed to address Plaintiffs' entitlement to amend their Complaint under Rule 12 under these circumstances.

84. Forcing Plaintiffs to litigate a 2020 multi-defendant pleading against one defendant in 2025 violates fundamental fairness. Plaintiffs should be allowed to amend the complaint at least once before ruling on a motion to dismiss for failure to state a claim. Plaintiffs also should be freely allowed to amend the complaint in accordance with Rule 12.

## D. Defendant Will Suffer No Prejudice

85. Defendant will suffer no prejudice from an amendment because Donais negotiated settlement of this case for 1 year in 2021 and then litigated this case for 3 years from 2022 to the present, and is intimately familiar with the claims.

86. Amending the complaint to remove the other 20 defendants will streamline his defense to focus only claims pertaining to him. Also, amending the complaint to clarify the claims and to provide a more definitive statement will further ensure that the defendant can focus his defense.

87. Donais has had notice of the claims to be amended, including additional or subsequent acts, since the very beginning of this litigation. He is also intimately aware of the substantive amendments based on claims that the plaintiffs have alleged against him in the related NH federal court case, which will be sought to be consolidated into or with this case.

## E. Further on Amendment of Complaint

88. In this case, the defendant has not filed an answer. He only filed motions to dismiss.

89. Plaintiffs raised the issue of amending the complaint prior to the defendant's filing of a motion to dismiss for failure to state a claim.

90. Plaintiffs also promptly raised the issue of amending the complaint on 4-6-22 during the court hearing. The court did not address this request. There was no undue delay in seeking to amend the complaint.

91. There will be no prejudice to the defendant because he also amended his motion to dismiss several times over the past 3 years and have now amended it again to include a brand new defense of failure to state a claim and absolute privilege. The defendant was thus allowed by the court to make substantive amendments to his multiple motions to dismiss. For example, the defendant was allowed to revise his first motion to dismiss based on the unsealing of sealed records, which purportedly would provide new information that the defendant did not have because he purported that it had been sealed. This turned out to not be true and

17

there was no new information from the unsealing of sealed records that the defendant did not have before. Yet he was still allowed to revise his 2022 motion to dismiss for insufficient service of process, in 2024, based on the possibility that there could be new information in the unsealed records.

92. Either way, the plaintiffs should be similarly allowed to amend the complaint in substance based on the new information and new events that occurred after the filing of the original complaint.

93. Here, Plaintiffs first motion to amend the complaint is timely because the court has not yet entered a scheduling order setting a deadline for filing motions to amend, nor has there been answer filed, nor has there been any discovery, etc. It is still very early, procedurally-speaking in this case. Further, Plaintiffs acted within a reasonable time after defendant filed his new motion to dismiss for failure to state a complaint on 3-14-25 and after the court issued its 4-29-25 order allowing it to stand. Plaintiffs then promptly raised the issue in the notice of intent filed shortly after the court's 4-29-25 order that allowed the new motion to dismiss to stand based on the court's surprising and unexpected waiver of two bedrock rules regarding waiver and forfeiture of untimely new defenses.

94. Similarly, the court did not grant leave to amend the complaint when Plaintiffs previously raised the issue of amending the complaint, prior to service of process on the defendant. Plaintiffs thus should be allowed the right or the opportunity to amend the complaint, at least once in this court before the filing of a responsive pleading/answer, which has not yet occurred in this court (which is the analogous federal court principle/law, which this court follows the reasoning thereof).

95. Plaintiffs thus intend to amend the complaint. This must be resolved before any motion to dismiss can be resolved.

96. It would be unfair to allow the defendants to amend their motions to dismiss in this court but then deny plaintiffs the same opportunity to amend the complaint in this court. This would be an unfair approach.

97. Note: Plaintiffs predict that the defendant will concoct strained argument to oppose amendment of the complaint which will further reflect a self-serving biased approach that counsel for the Donais has shown a penchant for.

98. NB: This case was filed 5 years ago on 1-3-20. Plaintiffs were blindsided by the new motion to dismiss for failure to state a claim on 3-14-25.  Given that the court did not strike the new motion to dismiss, Plaintiffs need an opportunity to amend the complaint at least once. Similarly, there are additional acts by the defendants that have occurred since the filing of the complaint, that Plaintiffs need to bring to the attention of the court. This information was not available prior to filing of complaint.

99. The plaintiffs need an opportunity to show the court by way of an amended complaint that there are facts that the plaintiffs can prove to support their claims.  The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect Pro Se litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). Furthermore, "in civil rights cases where the plaintiff appears pro se, the court must construe the pleading liberally and must afford plaintiff the benefit of any doubt." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir.1988). As this is a pro se civil rights case, it is critical that the court allows the plaintiffs every opportunity to show they are entitled to relief including by amending their complaint.

100.    In addition, Plaintiffs intend to amend the complaint to include: evidence of false statements and defamation by Donais including but not limited to: audio recording and video recording (that shows/proves that Donais has made false statements about plaintiffs to others including outside of any court proceeding), certified statement by Attorney Elliott Berry to the ADO about Donais and his false statements, certified statement by Attorney Robert Obrien to the ADO, certified statement by Attorney Bussiere about Donais' false statements, court transcripts of hearing in the Nashua circuit court and in the Hillsborough superior court South, in 2017 showing false statements of Donais and proving breach of fiduciary duty and conflict of interest by Donais, all proving Donais is guilty of the wrongdoing alleged by plaintiffs. This includes but is not limited to facts or evidence related to:

    a.   1-18-17 District Court hearing transcript and recording.

    b.   2020 Interview of Attorney Elliot Berry by the ADO

c.   Notes/Email from Attorney Elliot Berry Contemporaneously Written/Documented in 2017 and Later Produced By Elliott Berry to the ADO

d.   2020 Interview of Attorney Karl Terrell by the ADO

e.   Statements by colleague and friend Dave Akridge

f.   Further on email chains with Donais, Dave Akridge & Attorney Karl Terrell

g.   Police Recording of Donais's Statements to The Police

h.   Statements by Donais' Personal Friends Who Are Also Police Officers

i.   Statements by Donais' To Other Officers At The Manchester NH Police Department

j.   Statements by Donais to the members of a non-profit organization that Donais sits on

k.   Statements by Donais to the ADO in NH.

l.   False Statements by Donais to Donais' wife and to his family members including his eldest adult son Garrett Donais.

m.   False Statements by Donais to Donais' friends, colleagues, and associates.

n.   Evidence of Donais' breach of fiduciary duty to plaintiffs, or legal malpractice, misrepresentation, fraudulent concealment, including in January 2017 prior to March 2017 as well as thereafter in 2019 and 2020, as well as breach of confidentiality.

o.   Evidence of Donais' race discrimination in violation of federal and state laws.

p.   NB: All of the claims were referenced in one form or another in the original complaint. However, there are other items that will be presented in the amended complaint.

101.   Amendment is also necessary to add supplemental events since the filing of the original complaint. There are additional events that occurred after 2017 that go to supplementing the claims in this case. For example, in 2019 and 2020, there are events arising from the same claims in 2017 that were repeated, republished and continued defamatory statements about the plaintiffs and that added to and expanded the defamatory statements about the plaintiffs. Thus, there are additional acts by the defendants that have occurred since the filing of the complaint, that plaintiffs need to bring to the attention of the court. These include but are not limited to the following:

20

a. Defendant published the following false and defamatory statements of purported fact concerning plaintiffs as follows:

b. Donais falsely stated that plaintiff falsely and frivolously accused him of racism for declining to represent plaintiffs in a 7 minute prospective attorney-client phone call. Donais spread this false defamatory statement to several people including his family members, friends, colleagues, and to several government officials.

c. Donais falsely stated that plaintiff burglarized and bugged his office phone and office thus committing a felony crime.

d. Donais falsely stated that plaintiff fabricated a recording to put Donais' voice on it to make Donais say things Donais did not say.

e. Donais falsely stated that plaintiff is a criminal offender.

f. Donais falsely stated that plaintiff is mentally crazy/has a mental disease-sickness.

102. These statements were made not in court proceedings and when there was no court proceeding that was ongoing. They are not and cannot be privileged and the plaintiffs intend to show why they cannot be privileged.

103. These statements are related to and flow from the events in 2017 and again in 2019 and 2020.

104. These statements are defamatory. Plaintiff will show evidence of these facts.

105. Plaintiffs need an opportunity to amend the complaint to include these facts in an amended complaint.

106. Donais has had notice of these claims from the very beginning. These claims were also included in the settlement discussions in 2021 that Donais was involved in until January 2022. Because these additional facts occurred after the filing of the original complaint on 1-3-20, these facts were not and could not have been included in the original complaint. The plaintiffs have stated their intent to include these facts and claims in this case from the beginning of the litigation. There is no reason to prevent amendment to include these facts/claims.

107. These statements are lies and defamatory. Any reasonable person would reasonably want to vindicate their right to stop the reputational harm from such false and injurious statements including filing a lawsuit

after all else had failed, including a bar complaint. Plaintiffs also tried to settle with Donais but he strung plaintiffs along thinking that the negotiation was in good faith only to find out at the end that he really did not want to settle.

108.    Donais published the false and defamatory statements as alleged above to third parties.

109.    To state or imply that someone is or did any of the above is per defamatory. By defaming plaintiffs, Donais sought to publicly humiliate plaintiffs and force plaintiffs to live with a continual question mark over plaintiffs.

110.    The original complaint was filed pro se and, as is often the case with pleadings drafted by non-lawyers, the claims were not set out in the formal "count" structure that attorneys typically use. Nonetheless, the complaint does articulate, albeit inartfully, a series of actionable claims against Donais, including defamation, abuse of process, breach of fiduciary duty, interference with contractual relations, breach of confidentiality, and race discrimination. The complaint also sets forth a detailed timeline of events that implicates both plaintiffs, Natalie Anderson and Andre Bisasor, as victims of Donais' conduct. The complaint repeatedly references both plaintiffs as participant and victim in the events. The complaint makes clear that Donais' actions were directed at, and injured, both plaintiffs.

111.    The amended complaint is necessary to clarify and supplement the claims regarding discrimination, breach of duty, abuse of process, and defamation. The original complaint did not at every instance clearly distinguish which statements were made in judicial versus non-judicial contexts, nor did it always articulate why certain statements were not privileged or were irrelevant to the proceedings in which they were made. The amended complaint will specifically plead that Donais made defamatory statements to third parties— including but not limited to family members including his spouse and adult children, his friends and colleagues including Nate Linstad, Dave Akridge, and others as well as to other persons such as police officers, and others—outside the context of any judicial proceeding, and that these statements are not protected by absolute privilege. The complaint will further clarify that even those statements made in affidavits to a court, were not relevant or pertinent to the issues before that court, as they did not bear on the disqualification of counsel but were gratuitously and maliciously inserted for the purpose of harming

22

plaintiffs. There are specific facts that need to be shown to demonstrate this, in order to articulate the full context and thus why it was not pertinent. Under New Hampshire law, privilege does not attach to statements that are palpably irrelevant or made with malice, and the amended complaint will plead specific facts to rebut the assertion of privilege.

112.    The amended complaint will also clarify the breach of fiduciary duty and breach of confidentiality claims. Although the timeline section articulates facts that go to establishing breach of fiduciary duty, and there is reference to this claim explicitly, there was no clearly delineated count section that outlines this claim in proper detail. Plaintiffs need a chance to further clarify, outline and plead this claim. Further, the plaintiffs intend to plead in the alternative a legal malpractice claim based on the same facts, which is allowed under NH law. The amendment will further show that Donais acted as a prospective attorney for both plaintiffs, as evidenced by his communications with Plaintiff Bisasor, and by his own admissions and those of Attorney Robert O'Brien and Attorney Elliott Berry. The complaint will incorporate further facts and documentary evidence, including emails and testimony from Elliott Berry, who stated that Donais' conduct constituted a breach of fiduciary duty and a violation of the rules of professional conduct. The complaint will incorporate or attach emails from the ADO regarding Berry's interview, Berry's own written determination that Donais breached his duty, and evidence from the circuit court where Donais withdrew after the judge determined that Donais had violated ethical duties/breach fiduciary duty. The court transcript will show  that Donais was effectively caught red-handed and that a circuit court judge effectively found that Donais breached fiduciary duty as thus was required to be disqualified from the case. This by itself is a slam-dunk proof that Donais is liable for this claim of breach of fiduciary duty, and Donais' own withdrawal serves as his own admission that he was guilty/liable for this wrongdoing. The amended complaint will lay this out in no uncertain terms.  The complaint will also reference evidence from Robert O'Brien that Donais lied about the nature of his communications with plaintiffs.

113.    It should be noted that Donais' motion to dismiss mischaracterizes the complaint as asserting only defamation, perjury, and false affidavit claims, and argues that all are barred by privilege or fail as a matter

of law. This is not correct. The claims asserted are found in paragraphs 401 and 402 of the complaint that states:

> Based on the foregoing, inter alia, Mr. Donais has committed defamation, abuse of process and interference with contractual relations and a breach of fiduciary duty and breach of good faith and fair dealing. Mr. Donais also engaged in a violation of the rules of professional conduct for NH and MA, including those which are actionable under the law such as engaging in misrepresentation, defamation, breach of fiduciary duty, interference with contractual relations and breach of the covenant of good faith and fair dealing as well as the engaging in acts of perjury based on racial animus thereby engaging in discrimination based on race.

114.  It should be noted that, contrary to the misinterpretations of Donais, the prior paragraphs that references felony perjury and false affidavit, are not claims or counts but are background or factual descriptions that leads to the claims.  However, aside from this confusion by the defendant, the complaint, as clarified and supplemented in an amended complaint, will set forth clear actionable claims and counts for defamation (including statements made outside of privileged contexts and with malice), abuse of process (using legal process for ulterior purposes unrelated to the legitimate ends of litigation), breach of fiduciary duty (arising from the prospective attorney-client relationship), breach of covenant of fair dealing, interference with contractual relations, and race discrimination (by fabricating and weaponizing false allegations of racism), as well as misrepresentation, among other things. The plaintiffs intend to plead in the alternative legal malpractice claim, as well as a breach of contract (implied), breach of confidentiality, and consumer protection violations based on the same or similar facts or fact patterns that establish the breach of fiduciary duty claims. These claims have nothing to do with any kind of privilege so Donais absolute privilege cannot even come to be applied to these claims. The complaint will also clarify that claims are asserted by both Anderson and Bisasor, and that Donais' conduct injured both plaintiffs, including through statements made to the ADO, to police, to family and friends, and to others.

115.  Amendment is further necessary to cite events in Massachusetts Superior Court where a Massachusetts Superior Court judge found that false accusations of racism by Donais, if proven, are valid grounds to seek a defamation claim. This directly supports the Plaintiffs' allegations in this court. Thus, this Massachusetts precedent directly validates plaintiffs' defamation claims.  Plaintiffs seek to cite these authorities in an amended complaint.

116.    Amendment is also necessary to cite events with the New Hampshire Attorney Discipline Office ("ADO") where the ADO opined in an ADO proceeding, in September 2020 that, if Donais did and said the things alleged by plaintiffs (concerning the false accusations of racism) and they are false, it would constitute defamation and should be brought in a lawsuit (as the ADO is not designed to resolve defamation claims that are better suited to be resolved in a court of law).

117.    Amendment is also necessary to consolidate claims from a parallel proceeding in NH Federal Court where a related federal case (Bisasor v. Donais (1:23-cv-00374) (D.N.H.)) was voluntarily dismissed by plaintiff Bisasor in order to refile in state court. Thus, this related case that was previously filed in federal court was voluntarily dismissed because this Court resumed proceedings after a 2 year hiatus in the NHSC and plaintiffs sought to have this court resolve all claims, which were first filed in this court in Jan. 2020, which federal court action began after the stay was placed on this case in this court due to Donais' appeal.

118.    Thus, the voluntary dismissal in federal court was intended to allow for refiling in this Court (under NH savings statute that allows for refiling of a case not dismissed on the merits or not dismissed with prejudice) and/or for consolidation with the claims in this action. Consolidation is imperative under N.H. Super. Ct. R. 113 to avoid duplicative litigation, address overlapping claims, and streamline discovery.

119.    It should be further noted that this is another example of prejudice to the plaintiffs from Donais' multiple successive and now fifth pre-answer motion to dismiss. Plaintiffs relied on Rule 9d's waiver of defenses as grounds to proceed with voluntary dismissal of the federal court action, because the plaintiffs believed that no new pre-answer defenses could be asserted in this case since the deadline had long passed based on the clear mandates of rule 9d. If the plaintiffs knew that this Court would waive Rule 9d in order to give Donais another bite at the motion to dismiss apple, after the NHSC declined Donais' appeal, the plaintiffs would have elected to pursue their federal court action which would have cleared the motion to dismiss stage prior to this court's restart of a new motion to dismiss stage by allowing a fifth motion to dismiss by Donais. This is manifestly unfair and the prejudice is irreparable because the plaintiffs utilized their one option to voluntarily dismiss similar claims in federal court believing that this court would proceed to the Answer stage at this juncture

120.    The amended complaint will further remove settled parties and claims, correct the case caption, and focus the claims on Donais. It will provide a more definitive statement, organize the claims into clear counts, and include a damages section. It will also address the privilege issue directly, pleading facts to show why privilege does not bar the claims, and will supplement the complaint with new acts by Donais in 2019 and 2020, which were disclosed to Donais from the outset and in settlement negotiations. Plaintiffs voluntarily dismissed a federal case to consolidate all claims in this forum, and the court previously deferred the issue of amendment. Now, after three years of litigation and multiple motions to dismiss on service of process, plaintiffs should be allowed to amend the complaint at least once, as justice and New Hampshire's liberal amendment policy require.

121.    Amendment is necessary to also add necessary parties. For example, the plaintiffs intend to add Donais Law Offices PLLC as a necessary party defendant. Defendant Donais Law Offices PLLC ("Donais Law Offices" or "law office") is a law firm that is owned and managed by Donais. Defendant Donais Law Offices PLLC is the corporate "alter ego" of Craig Donais. Donais is the sole member and manager of this corporate entity as well as the registered agent for this corporate entity.  Donais Law Offices is responsible for the conduct of its attorney Craig Donais.  Donais operates through and using his law office. The acts perpetrated by Donais occur through the operation of his law office. Donais and his law office are, for all intents and purposes, the same. Donais is employed by his law office (at least at the time of the events in the complaint).  Donais Law Offices PLLC is vicariously liable for the acts of Craig Donais under a theory of respondeat superior where an employer will be responsible for the actions of its employee taken within the scope of employment. Donais' actions should be imputed to Donais Law Offices because it is merely the alter-ego or instrumentality of Donais.

122.    Amendment is thus necessary to cure technical deficiencies in the original complaint. Amendment further addresses Donais' procedural gamesmanship. Defendant's three-year focus on technical defenses (service of process) prevented Plaintiffs from addressing substantive issues including amending the complaint.

123.    Plaintiffs could be significantly prejudiced without allowance of an amendment to the complaint.

26

**IV. SUMMART OF PROPOSED AMENDMENTS**

124.    This amendment to the Complaint will remove 20 settled defendants and claims, narrowing litigation to focus solely on Donais, clarify factual allegations and legal theories against Donais in response to his latest Motion to Dismiss, address new factual developments since the original 2020 filing, and preserve Plaintiffs' constitutional right to adjudication on the merits after 3 years of procedural delays.

125.    Amendment will:

   a.    Remove or streamline certain factual allegations in order to attempt to cure deficiencies in the complaint or correct mistakes.

   b.    Clarify certain of the existing claims and facts in the complaint in order to attempt to cure deficiencies in the complaint or correct mistakes.

   c.    Streamline the complaint to allow more focused litigation and adjudication of the case, and clarify the issues in dispute and streamline the adjudication process.

   d.    Allow subsequently discovered facts or new information to be presented, that necessitate changes to the original complaint.

126.    The proposed amendments will not prejudice the defendant, and justice requires that the Complaint be amended to accurately reflect the facts and issues.

127.    Thus, amendment will eliminate redundancy, narrow issues, and address Donais' arguments while causing no prejudice. Granting leave is imperative to prevent manifest injustice and uphold due process.

128.    Plaintiffs will be significantly prejudiced without allowance of an amendment to the complaint.

**V. CONCLUSION/RELIEF**

129.    The plaintiff hereby incorporates by reference the arguments, points and facts from the plaintiffs' related motions, including motion to supplement objection to the new motion to dismiss, motion to stay resolution of the motion to dismiss pending several issues, motion for hearing on the motion to dismiss, renewed motion for case management conference, motion to convert motion to dismiss to summary judgment, etc.

130.    The plaintiff in particular hereby requests that the Court stays any resolution of the new motion to dismiss, until this motion to amend the complaint is fully resolved.

131.    Plaintiff requests that the Court holds a hearing on this motion.

132.    NB: This is styled as an emergency given the uncertainty surrounding the court's timetable for resolving the new motion to dismiss.

133.    Plaintiff asks the Court to step back to really hear what plaintiff is saying and grant a pro se liberal construction to this pleading.

134.    For the reasons stated above, the Plaintiff respectfully requests that this Court grant the Motion to Amend the Complaint and allow the plaintiffs a reasonable time period from the date of the order to file the first amended complaint.

Respectfully submitted,
/s/Natalie Anderson
May 23, 2025                                      Plaintiff Natalie Anderson

## CERTIFICATE OF SERVICE

This filing is served to all parties of record via the e-filing system.

/s/Natalie Anderson
Plaintiff Natalie Anderson

# Exhibit 1

STATE OF NEW HAMPSHIRE

HILLSBOROUGH COUNTY SUPERIOR COURT NORTH

NATALIE ANDERSON, ET. AL.,        ) Superior Court Case No.
                                  ) 216-2020-CV-00027
              Plaintiffs,         )
         vs.                      ) Manchester, New Hampshire
                                  ) April 6, 2022
HILTON HOTELS ET. AL.,            ) 2:58 p.m.
                                  )
              Defendants.         )
_____     )


HEARING ON PENDING MOTIONS
BEFORE THE HONORABLE AMY B. MESSER
JUDGE OF THE SUPERIOR COURT
**CORRECTED (Cover)**

APPEARANCES:

Pro Se Plaintiffs:            Natalie Anderson

Pro Se Plaintiffs:            Andre Bissasor

For the Defendant:           Russell F Hilliard, Esq.
                             UPTON & HATFIELD, LLP
                             159 Middle Street
                             1st Floor
                             Portsmouth, NH 03801

Audio Operator:              Electronically Recorded
                             by Joni Bertolami

TRANSCRIPTION COMPANY:       eScribers, LLC
                             7227 N. 16th Street, Suite 207
                             Phoenix, AZ 85020
                             (800) 257-0885
                             www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by court-approved transcription service.



31

not I can serve the attorney directly now that he's entered. It's an unusual situation.

And am I really required to have to go to -- we live in Massachusetts -- to go to the sheriff in New Hampshire at this point, to have them serve Donais when they already have the complaint -- that the issues raised --and they entered their appearance.  Can we either be allowed to simply send Mr. Hilliard as the attorney entered on the case if the summons and the complaint --

THE COURT:  Mr. Bissasor --

MR. BISSASOR:  -- (indiscernible).

THE COURT:  Mr. Bissasor, I'm just going to require you to effectuate service as is required by the statute.  So I'm not giving you any advice about how to do that.  But you've had two years to get service done.  You've had more extensions than are anywhere near typical.  You have a date to do it.  You need to complete service as is required, so I'll leave it at that.  Your next issue -- do you have another issue?

MR. BISSASOR:  Yes.  The next issue is regarding the service of the actual complaint itself.  Because of the 20 defendants are going to be out.  I just wanted to bring to the attention of the Court that we intend to amend the complaint. I'm not sure if we should amend it before serving it to pay respect to the fact that the defendants are -- the other 20



32

defendants are out, or is that something to take up after serving the complaint as is?

THE COURT: So I guess, Attorney Hilliard, if you want to respond to that, you can. If you would prefer not to respond, you don't need to respond.

MR. HILLIARD: I think he's asking the Court for legal advice, Your Honor. I don't think either one of us should respond.

THE COURT: Okay. In case you had a response to him, I was going to let you do it. Okay.

MR. HILLIARD: Thank you.

THE COURT: What? Yeah.

There's no response there, Attorney Bissasor (sic), go ahead.

MR. BISSASOR: Yeah. No, I was just going to say that I'm not asking for legal advice. I'm just stating to the Court that there's a need to amend the complaint. So I guess I'm -- procedurally, I was asking whether it's proper to amend the complaint prior to service or amend it -- or take up the issue of amendment after service.

THE COURT: And I --

MR BISSASOR: Procedurally, what would be most appropriate under these unusual circumstances?

THE COURT: I appreciate your making the request, Mr. Bissasor, but the Court is not going to answer that



question.  I'm going to allow -- you need to prosecute your own case.  So you've got your reissuance of a summons, and that's -- the Court has no further comment on that.  Do you have any other issues you need to raise with the Court today?

MR. BISSASOR:  The only one other thing, Your Honor, that I would like to raise, Your Honor, is I heard your points, and as I said, I appreciate them.  I will do my best to comply.

I do want to point out, Your Honor, that we are concerned that because of Mr. Hilliard's status in the legal community, that he will attempt to sort of put us in a negative light or make us seem like we're causing trouble.  So for example, he made reference all the pleadings that we did when our pleadings were in response to his actions.  And I feel like -- I just want to make sure the level -- the playing field is level, Your Honor.

We're an African American couple.  We're not lawyers.  We're doing our best to try to vindicate this case which fundamentally flawed about sophisticated --

THE COURT:  Mister --

MR. BISSASOR:  -- racism of today.

THE COURT:  All right.

MR. BISSASOR:  We would like to be able to have our day in court.  And we just don't want to be prejudiced because Mr. Hilliard is very skilled --



# Exhibit 2

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

**PLAINTIFF ANDRE BISASOR'S REPLY TO DEFENDANT'S OBJECTION TO MOTION FOR CASE MANAGEMENT HEARING**

1. Plaintiff Andre Bisasor ("Plaintiff") submits this reply to Donais' objection to plaintiffs' motion for case management hearing. Defendant's objection is without merit and should be overruled for the following reasons:

**I. The Purpose of the NH Supreme Court's Remand Has Not Been Fulfilled**

2. Contrary to defendant's assertion, the purpose of the NH Supreme Court (NHSC)'s remand has not been fulfilled. The defendant's claim is based on a misunderstanding of the scope and intent of the remand order. The NHSC's remand was not merely a procedural formality but an opportunity to address substantive issues that have arisen during the course of this litigation and are related to the outstanding matters pending before the court.

3. The defendant's argument relies on the fallacy of hasty generalization, assuming that because some procedural matters have been addressed, the entire purpose of the remand has been achieved. This oversimplification ignores the complexity and the multifaceted nature of the issues at hand.

4. Consider the following syllogism:

   a) Premise 1: A remand's purpose is fulfilled when all issues specified in the remand order are fully addressed.

   b) Premise 2: There are outstanding issues specified in the remand order that have not been fully addressed.

   c) Conclusion: Therefore, the purpose of the remand has not been fulfilled.

5. The plaintiff contends that Premise 2 is true, as evidenced by the numerous unresolved matters outlined in the motion for a case management conference. These issues include, but are not limited to, clarification on procedural guidelines, ADA compliance concerns, and e-filing system limitations, among other things. Each of these points requires careful consideration and resolution before the case can be properly returned to the NHSC.

6. Defendant's assertion that the case is "in order for return to the Supreme Court" is premature and prejudicial to plaintiffs' rights. It is a logical fallacy known as "begging the question" to assume that the case is ready for return without addressing the issues that plaintiffs seek to resolve through a case management conference, as follows.

7. The case is not "in order for return to the Supreme Court" because the 11-15-24 order is not a final order because a) reconsideration/clarification/modification of the court's 11-15-24 order on the motion to dismiss (i.e., motions to modify and clarify the court's 11-15-24 order, filed on 11-25-24) is still underway, b) reconsideration of

1

plaintiffs' motion to strike the supplement to the motion to dismiss is still underway, and c) there are several related motions still pending including but not limited to those filed and are still pending since 2022 including the **motion for nun pro tunc affirmance of the issuance of the summons** and the **motion to issue findings of fact** pertaining to false statements by the defendant (which obviously are included in the remand).

8.  The 11-15-24 order is not final until all reconsideration is fully and finally decided.

9.  Furthermore, the remand order explicitly includes resolution of the previously but still pending motions for nunc pro tunc and for findings of fact regarding false statements by the defendant, that were filed in the fall of 2022. The remand order allowed for these pending motions to be included in the remand scope just like how the resolution of the motion to unseal records were included in the remand scope, along with any filing the trial court sees fit to permit as part of the resolution of the pending matters including but not limited to the motion to dismiss. These pending motions are intertwined with the resolution of the motion to dismiss issues.

10. The NHSC remand order gave broad latitude on remand. The NHSC initially gave an order on 9-2-22 stating:

    "The case is partially remanded to the superior court to allow it to rule on the pending motion to dismiss that Craig Donais filed after he was served with process. The clerk of the superior court shall provide this court with a copy of the superior court's order on that motion. This court retains jurisdiction of the appeal, further processing of which is stayed pending receipt of the superior court's order on Craig Donais's motion to dismiss. This order is without prejudice to the parties' positions in the superior court on remand and without prejudice to the parties' positions in this court once the stay is lifted".

11. The plaintiffs also filed a motion for clarification seeking to broaden the remand scope to include several related issues including  motions filed by plaintiffs that had not been ruled on as yet (including the motion for nunc pro tunc and motion to issue findings of fact about false statements, and other motions, etc.). Plaintiffs also filed a motion for reconsideration further towards broadening the remand scope to include several related issues.

12. After review, the NHSC granted the broadened scope to include all outstanding motions (including the motion for nunc pro tunc and motion to issue findings of fact about false statements and other motions) and any filing that would assist in resolving the motion to dismiss issues. See the 9-30-22 order which states:

    On September 2, 2022, the court partially remanded this matter to the superior court to allow it to rule on the pending motion to dismiss that Craig Donais filed after he was served with process. Shortly after this court's partial remand order, the parties filed multiple pleadings pertaining to the scope of the remand, which are addressed below. After review, Craig Donais's motion for reconsideration is granted. The scope of the remand is hereby clarified to include full resolution by the superior court of Craig Donais's motion to unseal records…The plaintiffs' emergency motion for clarification is granted to the extent that the court clarifies that, on remand, the superior court may, in its discretion, hold any hearing, rule on any outstanding motion, and permit any filing that would assist it in ruling on Craig Donais's motion to dismiss…

2

13. The fact that the NHSC allowed this broad remand in light of the plaintiff's motion for clarification, means that the NHSC's intent was to provide broad discretion to the trial court as the trial court saw fit in terms of permitting any filing on remand. The clear intent of the remand order was to afford broad discretion to the trial court to address and dispose of any and all motions and issues before it. That was the intent of the broad wording of the remand. Moreover, because the court's 11-15-24 order on the motion to dismiss is not yet final because the plaintiffs filed timely motions for reconsideration, modification and/or clarification of the 11-15-24 order (including the portion of the order that addressed the pleading instructions and also the portion of the order that did not address the false statements of the defendant), then this means that remand is not yet fulfilled.

14. Moreover, even when a case is on appeal and not on remand, the trial court is not completely divested of jurisdiction. Rautenberg v. Munnis, 107 N.H. 446, 447 (1966)( This Court may still pass "on collateral, subsidiary or independent matters affecting the case. . .".  Id. at 448). Pursuant to this residual jurisdiction, trial courts can and do rule on a variety of matters during pendency of appeal. Examples include: issuance of supplemental findings of fact and conclusions of law to be added to the appellate record in lieu of remand, Cornwell v. Cornwell, 116 N.H. 205 (1976); determination of bail terms pending appeal, State v. Gubitosi, 153 N.H. 79 (2005); temporary determinations regarding payment of property taxes during the appeal of a final decree of divorce, In the Matter of Sanborn & Bart, 174 N.H. 343, 350-351 (2021); and, in an interlocutory appeal, continued discovery, Plymouth Vill. Water & Sewer Dist. v. Scott, 217-2019-CV-00650 (N.H. Super. July 2, 2020)(Order, McNamara, J.).

15. NB: The court also has a duty to provide clear judicial guidance on issues of procedural compliance and attorney conduct. This argument is grounded in the fundamental principle that courts have a responsibility not only to decide individual cases but also to provide guidance that promotes the fair and efficient administration of justice. The issues raised in this motion – including the proper application of court rules  – are undoubtedly important and warrant clear guidance.

## II. The Plaintiffs' Pleadings Are Neither Baseless Nor Repetitive

16. The defendant's characterization of plaintiffs' pleadings as "a multitude of baseless and repetitive pleadings" is not only inaccurate but also constitutes an ad hominem attack that fails to address the substance of plaintiffs' arguments. This assertion is a clear example of the fallacy of poisoning the well, attempting to discredit the plaintiffs' motions without engaging with their merits.

17. Let us consider another syllogism:

   a) Premise 1: Baseless pleadings are those that lack any legal or factual foundation.

   b) Premise 2: The plaintiffs' pleadings are grounded in specific legal issues and factual circumstances requiring court attention.

   c) Conclusion: Therefore, the plaintiffs' pleadings are not baseless.

18. The motion for a case management conference clearly outlines numerous legitimate concerns that require judicial intervention. These include issues related to procedural clarity, ADA compliance, and the efficient management of the case. Each of these points is rooted in established legal principles and specific circumstances of this case.

19. Moreover, the accusation of repetitiveness fails to acknowledge the evolving nature of complex litigation. As new issues arise and circumstances change, it is not only appropriate but necessary for parties to bring these matters to the court's attention. The defendant's argument here commits the fallacy of false equivalence, equating necessary updates and clarifications with needless repetition. Moreover, the request for a case management conference is separate and different from requesting a hearing on a motion to dismiss. Hence, to the extent the defendant is isolating the word "hearing", as the basis for the repetitive charge in this instance, then the argument is inapposite because a case management hearing is broader, much different and more comprehensive than a narrowly focused motion to dismiss hearing. Given the procedural posture of the case, it is highly proper to request a case management hearing and it is highly appropriate for the court to hold one at this juncture.

### III. There Is a Legitimate Need for a Conference at This Stage of Litigation

20. The defendant's claim that "there is no legitimate need for a conference at this stage of the litigation" is an erroneous assertion that ignores the complexities and the importance of efficient case management. This argument commits the fallacy of false dichotomy by suggesting that either the case is ready for return to the NHSC or there is no need for further proceedings, without considering the valuable middle ground that a case management conference provides.

21. Consider the following syllogism:

   a) Premise 1: A legitimate need for a conference exists when there are unresolved issues that could benefit from judicial guidance and coordination.

b) Premise 2: There are multiple unresolved issues in this case that could benefit from judicial guidance and coordination.

c) Conclusion: Therefore, there is a legitimate need for a conference at this stage of the litigation.

22. The plaintiffs' motion clearly outlines numerous issues that require attention, including but not limited to:

a) Clarification on procedural guidelines governing pleadings

b) Guidance on ADA compliance and accommodations.

c) Resolution of e-filing system limitations.

d) Clarification on the application of Rules 7 and 11.

e) Addressing concerns about judicial conduct and impartiality.

23. Each of these issues impacts the fair & efficient adjudication of the case. Ignoring these matters or deferring them to a later stage could lead to prejudice to the plaintiffs' rights. These issues are ripe to be dealt with at this stage. [NB: If they are not dealt with now, when will they be dealt with? Upon remand back to the NHSC, the appeal will likely take another year or more, or at least several months of the year, to be resolved on appeal, that is if it survives preliminary dismissal. After a year or several months or so, if/when the case comes back to this court, this court will likely forget about these issues and the freshness of these issues will likely be lost, in this court. It is thus most appropriate to address them now, while they are live issues pending and when said issues directly relate to or could impact the immediate rulings the court will need to make on pending issues in the near future.]

24. Furthermore, the defendant's objection fails to consider the well-established principle that case management conferences are an essential tool for promoting judicial economy and ensuring the orderly progression of complex cases. As noted in Rule 16 of the Federal Rules of Civil Procedure, the court may order the attorneys and any unrepresented parties to appear for pretrial conferences for such purposes as expediting disposition of the action, discouraging wasteful pretrial activities, and facilitating settlement.

25. Defendant's objection also overlooks the fact that case management conferences are particularly crucial in cases involving pro se litigants, as they provide opportunity for the court to ensure that all parties understand the proceedings and their obligations. This is consistent with the court's duty to construe pro se pleadings liberally and to ensure access to justice for all litigants, regardless of their legal representation status.

26. NB: According to Rule 16 of the Federal Rules of Civil Procedure, matters that are typically considered in a Rule 16 hearing include: *"At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues; (B) amending the pleadings if necessary or desirable;…(D) avoiding unnecessary proof and cumulative evidence…(F) controlling and scheduling discovery…(K) disposing of pending motions; (L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;…and (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action."*

27. These are just some of the benefits of a case management hearing. In any event, it simply will not hurt for the court to conduct an initial case management hearing, in order to get some basic things in order from now, so that all parties can be on the same page and so that any confusion/lack of clarity regarding how to proceed, can be addressed. For example, the court's requirements for future pleadings has to be addressed now. Also, the plaintiffs' ADA requests and attendant compliance issues must be addressed now. These cannot be put off to a later time. And issuing more rulings from the bench without a hearing could result in continued lack of clarity, especially for the pro se plaintiffs.

## IV. The Defendant's Objection Mischaracterizes the Plaintiffs' Intentions

28. The defendant's suggestion that the plaintiffs are seeking to "avoid and delay the Supreme Court's review" is a mischaracterization that commits the fallacy of appeal to motive. This argument attempts to discredit the plaintiffs' motion by attributing improper motives without addressing the substance of their requests.

29. Let us consider another syllogism:

    a) Premise 1: Parties seeking to avoid and delay court review do not actively pursue case management and resolution of procedural issues.

    b) Premise 2: The plaintiffs are actively pursuing case management and resolution of procedural issues.

    c) Conclusion: Therefore, the plaintiffs are not seeking to avoid and delay court review.

30. The Plaintiffs' motion demonstrates a commitment to advancing the case efficiently and resolving outstanding issues. Far from seeking delay, plaintiffs are proactively addressing matters that, if left unresolved, could lead to significant delays/complications at later stages of the proceedings.

31. It should be noted that once Donais' appeal is resumed at the NHSC, the process will slow down, where transcripts must be ordered, preliminary procedural issues will be addressed and eventually a briefing order will

be issued. This will take place over several months. Then actual briefing, opposing briefing and reply briefing will take place over several more months. Then thereafter the case will be set for oral argument, some several months later. Then, once the case is submitted after oral argument, then the NHSC will likely take another several months to a year to issue its rulings. The whole process may take a year and a half, or almost two years, depending on the caseload at the NHSC. This is the long drawn-out detour of a process that the defendant wants to subject this case to, rather than abandon the appeal and proceed on the merits in this court at this juncture (i.e., preferring anything to avoid the merits and resolution of the claims in this case), which is particularly suspect especially after the 11-15-24 order's complete debunking and refutation of the defendant's arguments that attacked the clerk's authority to issue summons.

32. NB: The defendant's reference to the plaintiffs' past extensions for service of the complaint is irrelevant to the current motion and constitutes the fallacy of red herring. The issue at hand is not the history of extensions in the case but the present need for judicial guidance on specific, clearly articulated matters.

### V. The Case Management Conference Is Essential for Ensuring Due Process and Equal Access to Justice

33. The defendant's objection fails to consider the fundamental principles of due process and equal access to justice that underpin the plaintiffs' motion for a case management conference. These principles are particularly relevant given the plaintiffs' pro se status and the complexities of the case.

34. Consider the following syllogism:

    a) Premise 1: Due process and equal access to justice require that all parties have a clear understanding of court procedures and their rights within the legal process.

    b) Premise 2: A case management conference provides an opportunity for the court to ensure all parties have a clear understanding of procedures and rights.

    c) Conclusion: Therefore, a case management conference is essential for ensuring due process and equal access to justice in this case.

35. The U.S. Supreme Court has long recognized that "the fundamental requisite of due process of law is the opportunity to be heard" (Grannis v. Ordean, 234 U.S. 385, 394 (1914)). A case management conference provides precisely this opportunity, allowing the plaintiffs to address their concerns directly with the court and ensuring that their voice is heard in shaping the course of the litigation and in the resolution of outstanding matters.

7

36. Further, defendant's objection fails to acknowledge the court's responsibility to "construe pro se complaints liberally and to apply a more flexible standard in determining the sufficiency of a pro se complaint than they would in reviewing a pleading submitted by counsel" (Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991)) ("Pro se plaintiffs are often unfamiliar with the formalities of pleading requirements. Recognizing this, the Supreme Court has instructed the district courts to construe pro se complaints liberally and to apply a more flexible standard in determining the sufficiency of a pro se complaint than they would in reviewing a pleading submitted by counsel…In order to justify the dismissal of a pro se complaint, it must be "`beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").

37. A case management conference is an ideal setting for the court to fulfill this responsibility, providing guidance and clarification to pro se litigants in a manner that promotes fairness and efficiency in the proceedings, especially as it relates to pleading requirements and to ADA compliance processes among other things. In particular, the pending ADA request in instance especially requires an iterative/interactive process and a hearing is best suited to facilitate that at this juncture.

## VI. The Defendant's Objection Ignores the Potential Benefits of Early Case Management

38. Defendant's opposition to a case management conference overlooks the well-documented benefits of early and active case management in complex litigation. Numerous studies and judicial opinions have recognized that proactive case management can lead to more efficient resolution of cases, reduced costs, and increased satisfaction among litigants.

39. Consider this syllogism:

   a) Premise 1: Early case management leads to more efficient and cost-effective resolution of complex cases.

   b) Premise 2: This case is complex and would benefit from efficient and cost-effective resolution.

   c) Conclusion: Therefore, this case would benefit from early case management.

40. The Manual for Complex Litigation, Fourth Edition, published by the Federal Judicial Center, emphasizes the importance of early case management, stating that fair and efficient resolution of complex litigation requires at least that the judge and counsel collaborate to develop and implement a comprehensive plan for the conduct of pretrial and trial proceedings. (§ 10.1).

41. By opposing the case management conference, the defendant is effectively arguing against a practice that has been widely recognized as beneficial to all parties and the court system as a whole. This position is not only short-sighted but potentially detrimental to the efficient resolution of the case.

## VII. The Defendant's Objection Fails to Address the Specific Issues Raised in the Plaintiffs' Motion

42. A critical flaw in the defendant's objection is its failure to substantively address any of the specific issues raised in the plaintiffs' motion for a case management conference. This omission constitutes the fallacy of ignoratio elenchi, or irrelevant conclusion, as defendant's arguments do not actually engage with the substance of plaintiffs' requests.

43. Let us consider another syllogism:

   a) Premise 1: A valid objection to a motion must address the specific issues raised in that motion.

   b) Premise 2: The defendant's objection does not address the specific issues raised in the plaintiffs' motion.

   c) Conclusion: Therefore, the defendant's objection is not a valid objection to the plaintiffs' motion.

44. The plaintiffs' motion clearly outlined several key areas requiring court guidance, including:

   a) Clarification on procedural guidelines for pleadings.

   b) Guidance on ADA compliance and accommodations.

   c) Resolution of e-filing system limitations.

   d) Clarification on the application of Rules 7 and 11.

   e) Addressing concerns about judicial conduct and impartiality.

45. The defendant's objection does not engage with any of these points, instead relying on broad generalizations about the state of the case and unsupported assertions about the plaintiffs' motives. This failure to address the specific issues at hand undermines the credibility and relevance of the defendant's objection.

## VIII. The Defendant's Objection Misinterprets the Purpose and Scope of Case Management Conferences

46. The defendant's objection demonstrates a fundamental misunderstanding of the purpose and scope of case management conferences in modern litigation. This misinterpretation leads to faulty conclusions about the necessity and appropriateness of such a conference in this case.

47. Consider the following syllogism:

   a) Premise 1: Case management conferences are designed to address a wide range of procedural and substantive issues to promote efficient case resolution.

9

b) Premise 2: This case involves multiple procedural and substantive issues that require resolution for efficient case progression.

c) Conclusion: Therefore, a case management conference is appropriate and necessary for this case.

48. By way of analogy to federal court practice, it should be noted that the Federal Rules of Civil Procedure, specifically Rule 16, provide broad authority for courts to hold pretrial conferences. The plaintiffs' motion for a case management conference aligns perfectly with these objectives. By seeking clarification on procedural issues, addressing potential barriers to access (such as ADA compliance concerns), and proactively identifying areas of potential conflict, the plaintiffs are demonstrating a commitment to efficient and effective case management.

49. The defendant's narrow interpretation of when a case management conference is appropriate fails to recognize the evolving nature of civil litigation and the increasing emphasis on active case management by judges.

### IX. The Defendant's Objection Fails to Consider the Unique Circumstances of This Case

50. The defendant's blanket objection to a case management conference fails to account for the unique circumstances of this case, including its complexity, the pro se status of the plaintiffs, and the specific issues that have arisen during the course of the litigation and the nature of the matters pending before the court. This failure to consider this context constitutes the fallacy of hasty generalization, applying a one-size-fits-all approach to case management that is inappropriate and potentially prejudicial.

51. Let us consider another syllogism:

a) Premise 1: Cases with unique circumstances require tailored case management approaches.

b) Premise 2: This case has unique circumstances, including complex issues and pro se litigants.

c) Conclusion: Therefore, this case requires a tailored case management approach, which a case management conference can provide.

52. The plaintiffs' motion for a case management conference is not a routine or frivolous request, but a carefully considered response to the specific challenges presented by this case and the current procedural posture. These challenges include:

a) The complexity of the legal issues involved.

b) The need for clarity on procedural matters, particularly given the plaintiffs' pro se status.

c) Concerns about ADA compliance and accessibility.

10

d) Technical issues related to e-filing and document management.

e) Questions about the application of specific court rules.

53. Each of these factors contributes to the unique nature of this case and underscores the need for active judicial management. The defendant's objection, in its failure to acknowledge these specific circumstances, demonstrates a lack of engagement with the realities of the case and the legitimate needs of the parties.

## X. Additional Issues to be Addressed in the Case Management Conference

54. In addition to the matters previously outlined, the plaintiff respectfully request that the following issues be addressed during the case management conference:

a) Procedural Clarity: Further clarification on procedural matters, including:

   i. Guidance on permissible filings.

   ii. Content requirements for replies and surreplies; and when surreplies will be allowed.

   iii. Circumstances necessitating affidavits of facts to support pleadings.

   iv. The court's approach to resolving disputed facts at this stage of the proceedings. i.e.. such as how will the court know who is telling the truth. Will the plaintiffs automatically be at a disadvantage as African-American pro se plaintiffs? What safeguards will be in place to protect against unconscious or implicit bias and to ensure a fair or even playing field?

   v. Are renewed motions allowed even if they cover ground previously covered in an original motion? If so, when and how? Or are renewed motions prohibited because they ostensibly will likely be somewhat repetitive?

b) Findings of Fact: Addressing how the court will approach findings of fact in this case at this stage, including the standard of review for such findings and their potential impact on future proceedings; when can findings of fact and/or rulings of law be requested after a court order and what will be the court's approach to such requests? Will the court properly oblige such requests?

c) Limited Discovery: Exploration of possibility of implementing limited/simplified discovery at this stage including limited document requests. When will it be acceptable to seek to issue limited subpoenas or request limited evidentiary hearings at this preliminary stage, in order to address factual disputes? Will the court ever address any false or misleading statements in the future? And if so, when, or how will that be determined?

11

d) Clerk's Office Information/Limited Discovery: Obtaining/clarifying information or limited discovery from the Clerk's office regarding: i) Instructions given to plaintiffs about the procedure for serving process; ii) The necessity of obtaining a reissued summons before effectuating service; iii) Any other relevant communications that may have affected the plaintiffs' actions in pursuing this case. NB: This may include the need to file additional motions such as: **Motion for Limited Discovery** (requesting specific information from the clerk's office related to plaintiffs' interactions with the clerk's office and the reissuance of summons); or **Motion to Compel Clerk's Testimony** (asking the court to order the clerk to testify about plaintiff's interactions and the instructions provided); or **Motion for Judicial Notice** (requesting that the court take judicial notice of the clerk's authority under Rule 1-6 of the NH Superior Court Administrative Rules). These may be needed because the plaintiffs relied on the clerk's official representation of their authority, and may need to assert this as a defense to the defendant's bad faith specious arguments that he evidently intends to press on appeal. However, plaintiffs are not certain how to go about requesting this information, including whether by affidavit or testimony from the clerk's office, and thus the plaintiffs need the court's guidance, including as to whether there are other ways to obtain this information, etc., for the record. Defendant evidently intends to argue to the NHSC that the plaintiffs should have ignored the clerk's office and thus should have served process on him, long before the actual deadline ordered by the clerk's office. But the defendant ignores the fact that the plaintiff cannot serve process without a reissued summons from the clerk in NH, as all summonses from the court automatically expire after a certain date. It is not like in other states, like Massachusetts, where the summons form is left blank to be filled out by plaintiffs. In NH, only the clerk can fill out the summons, and every summons is issued as an order from the court with a deadline for service. Thus, the plaintiffs had to rely on the clerk to reissue the summons, to replace the expired summons that had long expired in 2020 pursuant to the granting of extensions by Judge Anderson in 2020 and 2021. Consequently, when, in early 2022, plaintiffs contacted the clerk's office about service of process and the expired summons, the clerk's office gave instructions to the plaintiffs regarding filing a request for reissued summons (and not to file a motion to the judge). To be sure, the plaintiffs went as far as to insist on speaking not only to the head of the e-filing department of the NH superior court, but also to the deputy clerk of the NH Superior Court Hillsborough

12

North, Nancy McGuire, who assured plaintiff that he simply needed to follow the instructions of the clerk's office and not to worry about anything else because the clerk's office will follow through with the representations made to the plaintiffs. Some of these representation were captured when plaintiff sent a basic follow-up email to the head of the e-filing department at that time (see email referenced in motion for default/sanctions, or other filings by plaintiffs, etc.). But the plaintiff is now seeking to obtain further information, confirming all of the assurances and representations made to the plaintiff by the clerk's office, upon which the plaintiff detrimentally relied. The plaintiff needs to get this into the record from now and to fully establish the record on this issue, in order to do everything possible to defend/protect against the sneaky bad faith meretricious arguments that the defendant intends to press on appeal.].

e)  Nunc Pro Tunc Issue: Addressing the need and proprietary for nunc pro tunc orders in this case, particularly regarding any potential retroactive corrections or modifications to previous rulings or filings, as outlined in the motion for nunc pro tunc that has been pending since 2022.

f)  COVID-19 Impact: Addressing the impact of the COVID-19 pandemic on the case in 2020, including the reasons why Judge Anderson granted extensions during this period, as part of the findings of fact by the court; as well as establishing that the plaintiffs' motions to extend time to serve process (filed in 2020), citing Covid-19's impact on the plaintiffs, including medical impact, was in fact a de facto ADA request (or the equivalent), seeking reasonable accommodations due to medical disability related to Covid-19.

g)  Amendment of Complaint/Addition of Necessary Parties: The need to amend the complaint, including the addition of necessary parties, to ensure comprehensive adjudication of all relevant issues, as well as the timing of when that will be allowed. NB: From the outset, the defendant has been pressing, in this court and on appeal, for early dismissal based on serving process issues, leaving no opportunity to amend the complaint/add necessary parties since service of process on 4-7-22. Plaintiffs would like to flag this issue from now so that it is on the court's radar, and so that it is not said that this issue was never raised (NB: If recalled correctly, plaintiff believes this item was briefly raised once before, at the 4-6-22 hearing with this court).

13

h) Stay of Proceedings: Consideration of a stay of proceedings due to a pending motion for preliminary injunction against the New Hampshire Superior Court and New Hampshire Judicial Branch, which is currently pending in federal court.

55. These additional points further underscore the necessity and value of holding a case management conference. They highlight the complex and evolving nature of this case, as well as the need for clear judicial guidance on both substantive and procedural matters. The inclusion of these items demonstrates the plaintiffs' commitment to addressing all relevant issues comprehensively and efficiently. It also reinforces the argument that a case management conference is not only appropriate but essential for the fair and effective progression of this case.

56. By addressing these additional matters, along with those previously mentioned, the case management conference will serve as a crucial tool for streamlining the litigation process, clarifying expectations for all parties, and ensuring that the case proceeds in a manner that serves the interests of justice.

## XI. Further Rebuttal

57. In his objection, the defendant states: "*The plaintiffs have filed a multitude of baseless and repetitive pleadings to avoid and delay the Supreme Court's review of the issues they created by extending service of the complaint for more than two years, and then failing to serve within the deadline established by their eleventh and last motion to extend the time to do so.*" Here, the defendant falsely asserts that plaintiffs extended the time to serve the complaint by more than 2 years, when it was the court that did that. The plaintiffs have no power to extend deadlines including the time to serve the complaint. But more curiously, the defendant reasserted the very argument that the court shot down in its 11-15-24 order, in which the court stated that the plaintiffs timely served the complaint and complied with all court orders for service of the complaint. This again reflects the stubborn, contumacious, defiant attitude of the defendant towards the court's 11-15-24 order, where the defendant has here indicated that he still intends to press on appeal, which has been debunked by the court's 11-15-24 order. Thus, it is ironic that he attacks the plaintiffs with the charge of "baseless"[1], when his entire continued effort to seek dismissal is based on debunked/meritless theories that are frivolous/spurious.

---

[1] NB: It is further ironic that the defendant attacks further with charges of being "repetitive", when he in fact has filed numerous repetitive pleadings in this case including literally copy and paste several filings with the exact same wording for several motions, etc. For example, repetitive filings by Donais that are exact duplicates can be found at Index #89, 90, 91, and Index# 103, 104, 105. These also include 3 motion to dismiss with repetitive supplement, 3 motions for reconsiderations, 3 replies, and 3 objections to plaintiffs' ADA requests, etc.

## XII. Conclusion and Request for Relief

58. The plaintiffs maintain that a case management conference is not only appropriate but necessary at this stage of the litigation. It will serve to clarify important procedural and substantive issues, ensure equal access to justice for all parties, and promote the efficient and fair resolution of this case. The defendant's objection, rooted in misunderstandings of case management principles and logical fallacies, should not stand in the way of this important step in the litigation process.

59. For the reasons stated above, the defendant's objection to plaintiffs' motion for a case management conference is without merit and should be overruled. The plaintiffs respectfully request that this Court:

    a)  Overrule the defendant's objection in its entirety;
    b)  Grant the plaintiffs' motion for a case management conference;
    c)  Schedule said conference at the earliest convenient date; and
    d)  Provide such other relief as the Court deems just and proper.

Respectfully submitted,
/s/ Andre Bisasor
ANDRE BISASOR

Date: December 9, 2024

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.
/s/ Andre Bisasor
ANDRE BISASOR

15

# Exhibit 3

**Filed**
**File Date: 11/22/2024 11:59 PM**
**Hillsborough Superior Court Northern District**
**E-Filed Document**

STATE OF NEW HAMPSHIRE-HILLSBOROUGH SUPERIOR COURT-NORTHERN DISTRICT
Natalie Anderson, et al. v. Craig Donais | Docket No. 216-2020-CV-00027

## PLAINTIFFS' MOTION FOR A CASE MANAGEMENT CONFERENCE

1. The Plaintiffs respectfully move this Honorable Court to schedule a Case Management Conference to address various procedural and administrative matters critical to the fair and efficient adjudication of this case. In support thereof, Plaintiffs state as follows:

    a. <u>Procedural and Administrative Issues</u>: Plaintiffs seek clarification on the procedural guidelines governing the length and format of pleadings, including concerns about repetition, footnote spacing, font sizes, and the number of exhibits allowed. Plaintiffs further request guidance on whether separate pleadings by each plaintiff are permissible without being deemed repetitive or overly lengthy.

    b. <u>Content Management Concerns:</u> Clarification is sought on whether pleadings may be filed not only to assist the court in ruling on motions but also to preserve rights, ensure a fair record, and counteract any obstruction to justice by the defendant.

    c. <u>Clarification of Rules 7 and 11:</u> Plaintiffs request clarification on when affidavits are required under these rules and how the court intends to assess credibility without them. Guidance is needed on handling false statements by the defendant within pleadings.

    d. <u>ADA Compliance/Issues:</u> Plaintiffs require detailed information on the process for requesting accommodations under the Americans with Disabilities Act (ADA), including how such requests will be treated and attendant confidentiality concerns.

    e. <u>Pro Se Liberal Construction:</u> Plaintiffs seek clarity on the court's approach to handling pro se pleadings in terms of whether they will be liberally construed in accordance with legal standards.

    f. <u>E-Filing System Issues:</u> Plaintiffs have encountered bottlenecks and file size limitations within the e-filing system that impede efficient case management.

    g. <u>Amendment/Removal of Settled Defendants:</u> Plaintiffs seek removal of defendants who have settled from the filing system to streamline case management. Assistance is requested for amending complaint names within the e-filing system.

h.  Judicial Conduct and Tone: Plaintiffs express concerns over perceived judicial attitudes towards them and seek assurance of impartial treatment.

i.  Sanctions and Misconduct: Plaintiffs request clarification on how issues related to sanctions and misconduct will be addressed by the court to ensure fairness and justice.

j.  Inclusion of Unrelated Cases: Regulation is sought regarding defendant's references to unrelated cases.

k.  Sealing and Unsealing of Records: Clarification is needed on the protocol for sealing or unsealing medical records and other confidential information including but not limited settlement documents, going forward.

l.  Information from Clerk's Office for Appeal: Plaintiffs need guidance on obtaining necessary information from the Clerk's office to facilitate information needed for appeal.

m.  Interlocutory Appeals Process: Plaintiffs seek to address guidelines on the need to obtain permission for pursuing interlocutory appeals.

2.  WHEREFORE, Plaintiffs respectfully request that this Honorable Court:
    a.  Schedule a Case Management Conference at the earliest convenience;
    b.  Provide clarification and guidance on the issues outlined above; and
    c.  Grant such other relief as may be just and proper.

Respectfully submitted,
/s/Natalie Anderson
Plaintiff Natalie Anderson

/s/Andre Bisasor
Plaintiff Andre Bisasor

November 22, 2024

**CERTIFICATE OF SERVICE**

This filing is served to all parties of record via the e-filing system.

/s/Natalie Anderson
Plaintiff Natalie Anderson

/s/Andre Bisasor
Andre Bisasor

The Court does not find that plaintiffs have set forth a legitimate basis for holding a case management conference at this time. After resolution of the Supreme Court's review of this Court's order on defendant's motion to dismiss, the case will either be resolved or the defendant will be required to file his Answer. The parties would then be required to file a Proposed Case Structuring and ADR Order pursuant to NH Super. Ct. R. 5.  Accordingly, the motion for a case management conference is DENIED.

Honorable Amy B. Messer

January 3, 2025

Clerk's Notice of Decision
Document Sent to Parties
on 01/07/2025

2