UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

**NATALIE ANDERSON'S MOTION FOR RECONSIDERATION OF REMAND**

1. Plaintiff Anderson respectfully submits this Motion for Reconsideration of the Court's Order Denying Plaintiffs' Motion to Remand, entered 10-9-25. This Court's analysis fundamentally misapplies the Supreme Court's controlling precedent in Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22 (2025), and creates a dangerous precedent by finding diversity jurisdiction can be retroactively asserted after 30-day removal deadline has expired without any pleading whatsoever in the original notice of removal. The manifest legal error requiring correction warrants immediate reconsideration and remand to state court.

**I. THE COURT'S ORDER CONFLICTS WITH CONTROLLING SUPREME COURT PRECEDENT IN ROYAL CANIN**

2. The threshold analytical flaw in this Court's 10-9-25 Order lies in its treatment of Royal Canin. The Court acknowledges that Royal Canin established the principle that when federal question jurisdiction is eliminated through amendment, the federal court loses supplemental jurisdiction. However, the Court then fails to follow the logic of Royal Canin to its necessary conclusion: that once the federal anchor drops away and no properly invoked alternative basis for jurisdiction exists, the case must be remanded.

3. The Court's approach suggests that diversity jurisdiction somehow emerged from the shadows and attached itself to this case simply because citizenship allegations appear in the amended complaint. This reasoning inverts the causal relationship that Royal Canin established. Diversity jurisdiction does not come into being through the mere existence of diverse citizenship; rather, it must be properly invoked through the procedural mechanisms Congress established, specifically, through a timely notice of removal that distinctly and affirmatively alleges diversity as a basis for federal jurisdiction within the thirty-day window mandated by 28 U.S.C. § 1446(b).

4. The Supreme Court in Royal Canin was addressing a case where federal question jurisdiction was the original basis for federal court involvement and supplemental jurisdiction covered the state law claims. When the federal question was eliminated, supplemental jurisdiction necessarily dissolved. The parallel logic here is that when federal question jurisdiction was the original and only basis for removal, and that

basis is eliminated through amendment, the jurisdictional foundation for the entire case collapses. A federal court cannot exercise jurisdiction over an amended complaint containing only state law claims when no basis for such jurisdiction was ever properly established.

5.  This Court's statement that "*diversity jurisdiction exists based on diversity of citizenship under 28 U.S.C. § 1332*" because the citizenship allegations appear in the amended complaint overlooks how federal jurisdiction actually operates. The mere existence of citizenship diversity does not trigger federal jurisdiction; rather, a defendant must take affirmative procedural steps to invoke diversity jurisdiction through proper pleading within statutory deadlines. Royal Canin supports this procedural understanding because it makes clear that jurisdictional requirements are not discretionary add-ons that courts can invoke retroactively when the original jurisdictional basis fails.

## II. THE COURT'S APPLICATION OF THE FORUM DEFENDANT RULE IS LEGALLY ERRONEOUS AND INCONSISTENT WITH CIRCUIT PRECEDENT

6.  This Court's treatment of the forum defendant rule compounds the Royal Canin error. The Court relies on Clary v. Pennsylvania State University, 2025 WL 757071 (E.D. Pa. Mar. 7, 2025), for the proposition that the forum defendant rule applies only when diversity of citizenship is sole basis for removal. However, this fundamentally misstates what it means for diversity to be the "sole basis" for removal.

7.  The Clary approach creates a logical bootstrap problem. If a defendant removes on federal question grounds but fails entirely to plead diversity, can diversity suddenly become a non-exclusive basis for removal retroactively through post-hoc arguments in an opposition brief? The answer must be no. The forum defendant rule operates at the time of removal to determine whether removal itself is proper. At the time of removal here, the only basis asserted was federal question jurisdiction. Diversity jurisdiction was never invoked, not even mentioned in the removal notice. The forum defendant rule thus applied with full force at time of removal to permit assessment of whether removal was appropriate on any basis.

8.  This Court's interpretation suggests the forum defendant rule only becomes operative when diversity is the stated basis for removal. But such a reading would allow defendants to evade the forum defendant rule through the simple expedient of removing on federal question grounds while reserving an unpleaded

diversity jurisdictional theory for later invocation if the federal question proves inadequate. Congress surely did not intend such a result. The forum defendant rule's essential purpose, preventing forum defendants from selecting federal forum against the will of a plaintiff who chose state court, would be completely eviscerated if defendants could layer an unpleaded diversity jurisdictional theory on top of an expired federal question basis.

9.  Moreover, the 1st Circuit's decision in Samaan v. St. Joseph Hospital, 670 F.3d 21 (1st Cir. 2012), and the District of Massachusetts in Gentile v. Biogen Idec, Inc., 934 F. Supp. 2d 313 (D. Mass. 2013), establish that the forum defendant rule does apply to cases where removal occurs before proper service of forum defendants. The forum defendant rule therefore provides an independent, dispositive basis for remand this Court's Order does not adequately address or distinguish from controlling circuit authority.

## III. DEFENDANTS CANNOT RETROACTIVELY INVOKE DIVERSITY JURISDICTION THROUGH POST-HOC OPPOSITION ARGUMENTS

10. At the heart of this case lies a fundamental principle that has governed removal practice for well over a century: diversity jurisdiction must be asserted through proper pleading in a timely filed notice of removal. The Supreme Court's decisions in Jackson v. Allen, 132 U.S. 27 (1889), and Stevens v. Nichols, 130 U.S. 230 (1889), establish with crystalline clarity that jurisdictional defects cannot be cured through amendment after the 30-day removal deadline has expired.

11. In Jackson v. Allen, the Supreme Court held that when "*the citizenship of the parties at the commencement of the actions, as well as at the time the petitions for removal were filed, was not sufficiently shown*," the jurisdictional defect "*cannot be cured by amendment.*" The Court's reasoning reflects the fundamental constitutional importance of proper jurisdictional pleading. Federal courts derive their authority entirely from Article III of the Constitution and the statutes enacted thereunder. When a defendant fails to establish federal jurisdiction through proper pleading within the time Congress has prescribed, that failure is not a technical defect to be forgiven; it is a fundamental absence of power that courts cannot remedy retroactively.

12. This Court's Order accepts defendants' argument that because the amended complaint contains citizenship allegations, diversity jurisdiction has been established for purposes of post-removal

jurisdictional analysis. This reasoning turns removal procedure on its head. The notice of removal is the jurisdictional gateway. If a defendant does not plead diversity in the notice of removal, then diversity jurisdiction has not been asserted as a basis for removal, regardless of what allegations appear in the complaint itself. The complaint establishes the nature of the substantive claims; the notice of removal establishes the jurisdictional basis for federal court involvement.

13. Defendants never alleged diversity jurisdiction in their Notice of Removal. They made no mention whatsoever of complete diversity of citizenship. They provided no specific allegations regarding the citizenship of individual defendants. They made no showing that diversity existed both at the time suit was filed in state court and at the time of removal. These are not technical requirements; they are constitutional prerequisites for federal jurisdiction that cannot be supplied in oppositions after deadlines.

14. The distinction between "*defective*" and "*missing*" allegations, which courts have applied consistently for generations, is decisive here. If a defendant attempts to plead diversity but does so imperfectly, 28 U.S.C. § 1653 may permit amendment to correct the defect. But where, as here, a defendant makes no allegation of diversity whatsoever in the removal petition, there is nothing to amend; there is only a complete absence of any diversity-based jurisdictional pleading. As the court explained in Garza v. Midland National Insurance Co., 256 F. Supp. 12 (S.D. Fla. 1966), 28 U.S.C. § 1653 permits only amendment of "defective allegations of jurisdiction, not 'missing' allegations."

15. This Court's Order has not grappled with this fundamental distinction. By accepting post-hoc diversity jurisdiction arguments advanced in opposition briefs, this Court is effectively permitting defendants to supply entirely missing jurisdictional allegations through procedural back-doors that Congress did not authorize. Such an approach violates the principle established in Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941), that "*removal statutes must be strictly construed*" and that "*policy of the successive Acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such jurisdiction.*"

## IV. THE COURT'S ORDER PERMITS DEFENDANTS TO CIRCUMVENT ESTABLISHED PROCEDURAL SAFEGUARDS DESIGNED TO PROTECT PLAINTIFFS' FORUM CHOICE

16. Federal removal law rests on a carefully calibrated procedural framework designed to prevent defendants

from hijacking cases filed in state court absent clear jurisdictional justification. Congress established the 30-day removal deadline not arbitrarily but to prevent exactly the kind of delay and gamesmanship that this case exemplifies. When defendants remove on federal question grounds, then watch to see whether plaintiffs eliminate federal claim, and finally, if federal claim disappears, attempt to resurrect a diversity jurisdictional theory that was never pleaded, they are gaming the system Congress designed to protect.

17. This Court's Order, by permitting such gamesmanship to succeed, undermines the protective purposes that Congress built into removal law. Plaintiffs have a statutory right to choose state court. The statute 28 U.S.C. § 1447(c) establishes that unless federal jurisdiction clearly exists, remand to state court is mandatory. The burden rests on removing defendants to establish federal jurisdiction with clarity and certainty. Here, that burden has not been met because no diversity jurisdiction basis was ever asserted timely, and both the operative pleading and the forum defendant rule create independent obstacles to diversity-based removal.

18. The procedural record demonstrates the evolution of defendants' jurisdictional theories. Defendants' original Notice of Removal asserted only federal question and supplemental jurisdiction. Defendants did not preemptively assert diversity jurisdiction as a backup basis. When plaintiffs moved to remand, defendants did not cite diversity jurisdiction in their initial responses but instead focused entirely on federal question and supplemental jurisdiction. Only in opposition briefs filed well after the statutory deadline did defendants suddenly invoke diversity jurisdiction for the first time. This procedural history strongly suggests either that diversity jurisdiction was not seriously contemplated as a removal basis or that defendants deliberately concealed it to avoid disclosure during conferral obligations. Either way, the fact that diversity jurisdiction appears nowhere in the initial removal documents but surfaces only when the federal question basis collapses suggests that this Court should view the retrospective diversity jurisdictional claim with appropriate skepticism.

## V. HOLBEIN AND CLARY ARE DISTINGUISHABLE AND DO NOT SUPPORT THIS COURT'S RESULT

19. This Court relied significantly on Holbein v. TAW Enterprises, Inc., 983 F.3d 1049 (8th Cir. 2020), for

the proposition that the forum defendant rule does not strip district courts of subject matter jurisdiction after a case has been removed. However, Holbein is an Eighth Circuit decision that is not binding in this Circuit and, more importantly, is distinguishable because in Holbein the defendant had actually pleaded diversity jurisdiction in its removal notice. The Eighth Circuit was addressing whether post-removal changes in citizenship could divest a court of jurisdiction it already possessed via pleading; it was not addressing whether a court can exercise jurisdiction that was never properly invoked in the first place.

20. Similarly, Clary v. Penn. State provides limited support for this Court's result. In Clary, the defendant removed on federal question grounds while diversity was also present. When the federal question was eliminated through amendment, the question was whether forum defendant rule would bar the exercise of diversity jurisdiction. The Clary court held that it would not, reasoning the forum defendant rule operates only when diversity is sole basis for removal. But Clary involved a case where diversity existed and was knowingly present at the time of removal, even though federal question was the stated basis.

21. Here, the situation differs materially. Defendants did not simply decline to emphasize diversity jurisdiction; they made no mention of it whatsoever. Defendants provide no explanation for why they omitted all reference to diversity jurisdiction from a Notice of Removal that surely contemplated the possibility that plaintiffs might amend to eliminate federal claims. A defendant's complete silence on diversity jurisdiction suggests that defendants did not intend to rely on it. Courts should not substitute their own judgment about what defendants should have pleaded for what defendants actually pleaded.

22. Moreover, Clary involved a defendant attempting to exercise jurisdiction that the forum defendant rule prevented it from invoking. Here, no defendant would have the right to invoke diversity jurisdiction even if it were properly pleaded, if all defendants are citizens of the forum state. This Court's Order does not adequately address why Samaan v. St. Joseph Hospital's holding that "*removal of a diversity case by an in-forum defendant transgresses 28 U.S.C. section 1441(b)*" should not apply with equal force here, where in-forum defendants are attempting to retain removal via retroactive invocation of diversity.

23. The critical flaw in applying Clary and Holbein to this case is that both decisions assume a properly

pleaded diversity jurisdictional basis exists. Neither case addresses the situation presented here: where diversity jurisdiction was never mentioned in the removal notice, never properly invoked within the statutory deadline, and surfaces only as a post-hoc justification when the original removal basis evaporates. The Court's reliance on these out-of-circuit cases to overcome binding Supreme Court precedent requiring timely and proper jurisdictional pleading represents manifest error.

## VI. ANDERSON'S DISTINCT POSTURE AS A CO-PLAINTIFF WHO WAS ADDED LATER STRENGTHENS THE REMAND ARGUMENT

24. Anderson was added to this case through the First Amended Complaint filed after removal. At the time of the original removal, only Bisasor was a plaintiff. When Anderson joined the case, no new notice of removal was filed to address her addition or to establish diversity jurisdiction with respect to her presence in the case. The absence of any amended notice of removal after Anderson's joinder further demonstrates that defendants did not contemplate diversity as a removal basis even after an opportunity to reconsider removal jurisdictional theories.

25. Moreover, Anderson participated in filing the Amended Complaint that eliminated all federal claims. At that point, any question regarding federal jurisdiction became especially acute because Anderson herself was now a necessary party to any future litigation. Yet no motion was filed seeking to amend the notice of removal or to establish diversity jurisdiction. Defendants simply allowed the case to progress with the original removal notice even after critical changes to both the parties and the substantive claims.

26. This procedural inaction by defendants further supports the conclusion that they did not consider diversity as an alternative basis. Such inaction cannot now be excused through retroactive diversity invocation arguments. Anderson's addition to the case created a natural moment for defendants to reassess their jurisdictional theories and file an amended notice of removal if they believed diversity jurisdiction existed. Their failure to do so strongly suggests diversity jurisdiction was never seriously contemplated as a removal basis until the federal question basis collapsed.

27. Anderson's perspective as a plaintiff who joined this litigation after removal also highlights the unfairness of permitting retroactive jurisdictional theories. She joined a case removed solely on federal question

grounds. She participated in the addition to the amended complaint, which eliminated federal claims with reasonable expectation that Royal Canin would require remand. To now permit defendants to assert jurisdictional basis that was never disclosed to her at the time she joined the case, and which defendants never bothered to plead even after she became a party, violates basic notions of fairness notice.

## VII. THIS COURT'S APPROACH CREATES TENSION WITH FIRST CIRCUIT PRECEDENT ON REMOVAL PROCEDURE

28. This Court's decision to permit retroactive invocation of diversity jurisdiction without proper pleading creates tension with established First Circuit authority. The First Circuit has not squarely addressed this specific scenario, but the Circuit's strong emphasis on strict compliance with removal statutes and its hostility to gamesmanship suggest that the First Circuit would not follow this Court's approach.

29. District courts within the First Circuit, particularly in the District of Massachusetts, have consistently rejected defendants' attempts to circumvent removal procedure deadlines. The Gentile v. Biogen Idec analysis, which this Court and the District of Massachusetts have repeatedly applied, emphasizes that removal statutes exist to protect a plaintiff's right to select a forum and that courts should enforce removal procedures strictly to protect that right. This Court's Order undermines that protective purpose by allowing defendants to effectively choose a forum after the fact if their initial jurisdictional basis fails.

30. The District of New Hampshire itself has applied strict compliance requirements in R&N Check Corp. v. Bottomline Technologies, Inc., 2013 WL 6150284 (D.N.H. Nov. 15, 2013), where the court adopted the Gentile reasoning and held that "*the plain language of section 1441(b) requires at least one defendant to have been served before removal can be effected*." That decision emphasized protecting against "*docket trolls with a quick finger on the trigger of removal*" and preventing defendants from exploiting procedural loopholes. The same protective principles should apply here to prevent defendants from exploiting the loophole of asserting untimely jurisdictional theories through opposition briefs rather than proper removal notices.

## VIII. THE PROCEDURAL POSTURE DEMONSTRATES MANIFEST ERROR WARRANTING RECONSIDERATION

31. Manifest error exists when the Court's decision is clearly wrong. The manifest error here consists of accepting an entirely new jurisdictional theory, diversity jurisdiction, that was never pleaded in the

removal notice, never mentioned during the removal process, and only advanced after the statutory deadline for asserting new jurisdictional grounds had long expired.

32. The timeline makes this clear. Defendants removed on 6-2-25, citing only federal question jurisdiction. Plaintiffs filed the Amended Complaint eliminating federal claims on 7-29-25. Yet, defendants filed nothing. No motion to amend the notice of removal was filed. No motion for extension of time was filed. Defendants simply remained silent on diversity jurisdiction, and then months later, defendants suddenly invoked diversity in opposition briefs filed months after the deadline.

33. This Court's acceptance of such belated jurisdictional assertions creates a dangerous precedent. If defendants can wait months after removal deadline expires, observe whether plaintiffs eliminate federal claims, and then retroactively invoke diversity jurisdiction through opposition briefs, the 30-day removal deadline becomes meaningless. Defendants would have incentive to remove on federal question, knowing they can always fall back on diversity if plaintiffs eliminate federal claims. Such behavior is exactly what strict construction of removal statutes is designed to prevent.

34. The Local Civil Rules of this District require strict compliance with filing deadlines and procedural requirements. This Court has admonished plaintiffs about compliance with Local Rule 5.1. The same strict approach to procedural requirements should apply to defendants' jurisdictional pleading obligations. If plaintiffs must comply strictly with formatting rules, defendants must comply strictly with jurisdictional pleading requirements that are far more fundamental to the court's authority to hear a case.

## IX. CONCLUSION

35. Anderson requests discovery on remand. There are serious questions about the citizenship of the defendant corporations including Donais Law Offices and Upton & Hatfield, especially where there is reason to believe that individual partner citizenship of these entities include citizenship in Massachusetts.

36. The Court has no information on the individual owners of these firms. This may in fact be part of the reason why the defendants were hesitant to say anything about citizenship themselves, instead relying solely on the limited allegation in the amended complaint, which cannot be the definitive source for such information. Anderson hereby challenges the citizenship of defendants as including Massachusetts and

so the court cannot rely on plaintiff's allegations alone at this stage. Discovery is thus needed[1].

37. Additionally, Plaintiff Anderson respectfully requests that this Court hold an oral hearing on this Motion for Reconsideration. The complexity of jurisdictional issues, departure from long-established removal law principles, and tension between this Court's Order and controlling Supreme Court and 1st Circuit precedent warrant hearing to ensure thorough jurisdictional analysis receive judicial consideration.

38. For the foregoing reasons, Anderson respectfully requests that this Court grant her Motion for Reconsideration, vacate its 10-9-25 Order Denying Motion to Remand, and enter an Order remanding this action to NH Superior Court. This Court's Order is based on manifest legal error: it misapplies Royal Canin by treating basic limited citizenship allegations in an amended complaint as sufficient to invoke diversity jurisdiction when no diversity basis was ever pleaded in the removal notice; it fails to properly apply the forum defendant rule, which categorically prohibits removal by forum defendants regardless of when diversity theories surface; it permits retroactive invocation of diversity jurisdiction contrary to 1Supreme Court precedent requiring timely and proper jurisdictional pleading; and it creates tension with binding 1st Circuit authority on removal procedure and protective purposes of removal statutes.

39. The case must be remanded to the forum where Anderson and Bisasor originally chose to litigate their claims against New Hampshire defendants. Anderson joined this litigation after removal with the reasonable expectation that the case would be remanded once federal claims were eliminated.

40. Defendants' failure to assert diversity jurisdiction at any point during the removal process, their failure to file an amended notice of removal after Anderson joined the case, and their failure to seek any amendment to their jurisdictional pleading within the statutory deadline all demonstrate that diversity jurisdiction was never properly invoked and cannot now serve as basis to retain this case in federal court.

41. In the alternative, should this Court deny reconsideration, Plaintiff requests certification of the jurisdictional questions to 1st Circuit for interlocutory review and requests this Court grant an oral hearing on this Motion for Reconsideration before making a final decision on whether to remand this case.

---

[1] See attached motion for discovery which points are incorporated herein.

Respectfully submitted,

/s/ Natalie Anderson

Natalie Anderson

January 21, 2026

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor

Andre Bisasor