UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

**PLAINTIFF'S MOTION FOR HEARING ON DEFENDANTS' MOTIONS TO DISMISS**

1. Plaintiff Natalie Anderson respectfully moves this Court for an order scheduling an oral hearing on Defendants' pending Motions to Dismiss. This motion is supported by the following.

## I. INTRODUCTION

2. Plaintiffs respectfully request that this Court schedule an oral hearing on the pending Motions to Dismiss filed by Defendants. While Plaintiffs recognize that oral argument is discretionary under Local Rule 7.1(e), this case presents precisely the circumstances under which a hearing is not only appropriate but necessary to ensure fundamental fairness and judicial accuracy.

3. This is not a routine case suitable for resolution on papers alone. Rather, this case involves: (1) complex, fact-intensive claims spanning multiple years; (2) a convoluted procedural history across at least 4 different courts and NH Attorney Discipline Office; (3) defendants who have engaged in extensive fact disputes, procedural mischaracterizations, and scatter-shot legal arguments designed to obscure weaknesses in their position; (4) pro se plaintiffs asserting civil rights claims who require accommodations to be heard properly; and (5) newly added plaintiff Anderson who has not yet had any opportunity to be heard by this Court.

4. Moreover, every other judge in this District routinely holds hearings on dispositive motions. Denying a hearing here would create an appearance of unequal treatment and would deprive pro se, disabled, minority plaintiffs of a fundamental opportunity to address misrepresentations and clarify complex issues that cannot be adequately resolved on the papers alone.

5. Plaintiffs also need a proper record so that the defendant cannot play fast and loose with an incomplete record. A hearing is needed to protect the record of this case. A hearing is also needed to ensure that the correct facts are ferreted out in aid of developing a proper record.

6. Similarly, a hearing is necessary because a motion to dismiss is a dispositive motion that seeks to end the lawsuit without an adjudication of the actual merits. Plaintiffs need an opportunity to address the issues before the court presented in the motions to dismiss. In addition, Plaintiffs believe that a hearing will assist

in the judicious determination of this case. Plaintiffs believe they are entitled to a hearing on the defendants'

motion to dismiss based further on the points and arguments that are elucidated below.

## II. LEGAL STANDARD FOR ORAL HEARING
### A. Standard for Granting Hearing

7.  Local Rule 7.1(e) provides that the Court "may" schedule oral argument on any motion. While this language

grants discretion, federal courts routinely exercise that discretion in favor of hearings when: (1) the motion

is dispositive; (2) the issues are complex or fact-intensive; (3) the parties are pro se; (4) there are civil rights

claims at stake; (5) the movant has misrepresented facts or law; or (6) fairness requires an opportunity to be

heard.  See Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining

motions on briefs, without oral hearings."). See also D.N.H. Local Rule 7.1(e) ("The court may hear oral

argument on any motion."). See further Brewer v. Superintendent, 2021 WL 4341076, at *2 (D.N.H. Sept.

23, 2021) (scheduling hearing on dispositive motion in pro se case).

8.  The First Circuit has recognized that while "*there is no absolute right to oral argument on every motion*," courts

should grant hearings "*when the issues are complex, when the record is voluminous, or when the court's preliminary view*

*differs from the arguments presented*". See Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)

9.  District courts within the First Circuit have held that hearings are particularly appropriate on motions to

dismiss when "*factual disputes exist*," "*procedural history is contested*," or "*pro se litigants require assistance understanding*

*complex legal arguments*". Rodi v. Southern New England Sch. of Law, 389 F.3d 5, 14 (1st Cir. 2004). Fantini

v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009).

### B. Pro Se Litigants Are Entitled to Greater Consideration

10. Courts have consistently recognized that pro se litigants, particularly those asserting civil rights claims, are

entitled to "*special solicitude*" and "*liberal construction*" of their pleadings. Erickson v. Pardus, 551 U.S. 89, 94

(2007). Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

11. This heightened consideration extends to procedural opportunities, including the right to be heard on

dispositive motions. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Hughes v. Rowe, 449 U.S. 5, 9-10 (1980).

12. The Supreme Court has emphasized that pro se complaints "*must be held to less stringent standards than formal*

*pleadings drafted by lawyers*" and that courts have an obligation to construe pro se pleadings liberally. Erickson,

551 U.S. at 94. This obligation includes providing pro se litigants with meaningful opportunities to respond to complex legal arguments raised by represented parties. *Castro v. United States*, 540 U.S. 375, 381-82 (2003). *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

13. When defendants raise scatter-shot arguments spanning 20+ pages with voluminous attachments containing new factual material not in the complaint, pro se plaintiffs are at a severe disadvantage without an opportunity for oral argument to clarify misrepresentations and respond to unfair characterizations. *See Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984).

### C. Reasonable Accommodations Require Opportunity to Be Heard

14. Plaintiffs have made reasonable accommodation requests which contain issues that remain unresolved. Federal courts have an affirmative obligation to provide reasonable accommodations to litigants who need them, including ensuring litigants are properly informed of the correct procedures and processes necessary to obtain relief. These accommodations include presentation of argument which extends to oral argument in this case. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.160. *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004).

15. Oral hearing serves as a critical accommodation in such instances for pro se litigants with ADA issues who may have difficulty with effective clear concise written briefing but can effectively communicate their positions orally with appropriate accommodations. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Denying a hearing, while simultaneously ignoring such reasonable accommodation needs, creates an appearance of bias against litigants with ADA issues. NB: The court previously denied a motion for accommodation for oral hearing for the motion to remand.

### D. Practice in This District Supports Granting Hearing

16. Plaintiffs respectfully note that other judges in this District routinely schedule oral hearings on dispositive motions as a matter of course. The practice of holding hearings on motions to dismiss is well-established in the District of New Hampshire, particularly in complex civil cases. *See generally* D.N.H. dockets showing routine scheduling of hearings on motions to dismiss.

17. Denying a hearing in this case, while other judges grant them routinely, creates an appearance of unequal treatment and suggests this Court may have prejudged the issues or is disinclined to hear from pro se, disabled, minority plaintiffs. This appearance undermines confidence in the fairness of the proceedings.

### III. SPECIFIC GROUNDS REQUIRING HEARING IN THIS CASE
#### A. Complex and Fact-Intensive Claims

18. This case involves 8 separate causes of action against multiple defendants arising from conduct spanning 2017 through 2023 including defamation, breach of fiduciary duty, racial discrimination under state law (and also under federal law, section 1981, if the requested first amendment by permission is allowed), tortious interference, consumer protection violations, intentional infliction of emotional distress, civil conspiracy, and interference with contract and advantageous relations and interference with settlement contracts. Each claim has distinct elements, overlapping facts, and contested factual predicates.

19. Defendants' motions to dismiss challenge nearly every aspect of these claims through fact disputes, privilege assertions, statute of limitations arguments, and attacks on the sufficiency of pleadings. Resolving these challenges requires careful consideration of: a) **Factual disputes** about what was said, when, to whom, and in what context; b) **Privilege determinations** that depend on factual questions about whether statements were made in judicial proceedings or to public bodies; c) **Statute of limitations** calculations that turn on application of the NH savings statute and continuing tort doctrines including equitable tolling, discovery tolling, fraudulent concealment, and the interplay between the start date for counting under Massachusetts law where the case was first filed (in 2022) and preserved for purposes of meeting the initial start date for counting the time back to the events of the claims, versus some other start time for counting, etc.; d) **Procedural history** spanning multiple courts with contested characterizations.

20. These issues can't be adequately resolved on papers alone without opportunity to clarify factual disputes and respond to Defendants' mischaracterizations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (courts must accept factual allegations as true). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

#### B. Convoluted Procedural History Requiring Clarification

21. This case has an extraordinarily complex procedural history:

   a. Certain Attorney Discipline Office of NH proceedings against Craig Donais occurred in 2017, 2019 and 2020, including by a Connecticut Superior Court judge, and by Plaintiff Natalie Anderson.

   b. A parallel related state court case (216-2020-CV-00027) was filed in 2020 in NH, which is still pending and has no effective final outcome yet determined or final. The case obviously was filed just before the

Covid pandemic, and the case was thus on hold, for all of 2020, with no service of process. In 2021, the parties, including Craig Donais, entered into settlement negotiations for about a year, with settlement finalized and consummated in April 2022, except for Donais who backed out of the settlement agreement, in January 2022, just before it was about to be finalized and consummated. He then sought to dismiss the case immediately on grounds that the plaintiffs had not served him process during the pandemic (when the court itself was closed or was hampered and when millions of people were dying or getting seriously ill from Covid) and for not serving him process in 2021 (while he was himself engaging in settlement negotiations with the plaintiffs along with the 20 other defendants in the case). After plaintiffs received a new summons from the court and served him process by the court-instructed deadline, Donais moved to vacate the summons and the service of process, on grounds that the clerk had no authority to issue new summons, which was a patently ridiculous and frivolous argument. After the court denied these ridiculous bad faith arguments, he moved to appeal to the NH supreme court, misusing the rule that allows for immediate interlocutory appeals for motions to dismiss denied under insufficiency of service of process. This appeal triggered a stay in the trial court for 2 years, from 2022 to 2024, when the NH supreme court unanimously declined to accept the appeal to even be heard at all, as being without any merit. During these two years of hiatus of the NH superior court case because of Donais' meritless appeal, plaintiffs filed a Bristol Superior Court in Massachusetts "protectively"[1] to ensure to preserve against statute of limitations issues, should the NH supreme court side with Donais

---

[1] In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), which dealt with the Rooker-Feldman doctrine, the U.S. Supreme Court noted with approval the practice of "protective" filing in a parallel court. The specific quote appears in Footnote 9 of Justice Ginsburg's unanimous opinion: "*The Court of Appeals criticized ExxonMobil for pursuing its federal suit as an 'insurance policy' against an adverse result in state court. 364 F. 3d 102, 105–106 (CA3 2004). There is nothing necessarily inappropriate, however, about filing a protective action.*" The Court then provided several examples of protective filings, citing cases where parties filed actions in different forums to preserve their rights while other proceedings were pending. The Court specifically referenced: 1) Rhines v. Weber (permitting federal district courts to stay habeas actions while petitioners exhaust claims in state court); 2) Union Pacific R. Co. v. Dept. of Revenue of Ore., 920 F.2d 581 (CA9 1990) (railroad filed protective actions in state court to prevent statute of limitations from expiring); 3) Government of Virgin Islands v. Neadle, 861 F. Supp. 1054 (MD Fla. 1994) (staying action brought by plaintiffs "to protect themselves"); 4) England v. Louisiana Bd. of Medical Examiners, 375 U.S. 411 (1964) (permitting parties to reserve federal constitutional claims for federal court while state court resolves state law questions). The Court's reasoning further made clear that filing a protective action in federal court while state court litigation is pending doesn't violate Rooker-Feldman doctrine, particularly when filed before any state court judgment. The key takeaway is that the Supreme Court has explicitly approved protective filings in parallel forums to preserve parties' rights, rejecting characterization of such filings as improper "insurance policies." This totally repudiates any baseless attempt by defendants to try to characterize similar protective filings by plaintiffs as somehow improper or vexatious.

and reverse the trial court, thus dismissing the case without prejudice on service of process grounds. Aldo, plaintiffs discovered that there were new events that occurred after the filing of the complaint in January 2020, or events that occurred prior to the filing of the complaint but that the plaintiffs did not know occurred not could not know occurred because these were hidden by the defendant. This goes to the meretricious and scurrilous argument that somehow plaintiff was being vexatious in filing multiple suits. Yet no court has found any bad faith or vexation from any of these suits, and all have found some merit in the plaintiffs' arguments even if the ultimate outcome may not always go the way plaintiffs would like. For example, the esteemed Judge William Young, who is perhaps the most seasoned and experienced federal judge in this circuit, looked closely at the claims and determined that they deserve to be heard and resolved on the merits. He could have dismissed some or all of them because the defendants had strenuously pleaded, in their motions to dismiss (throwing everything they could at the wall, so to speak), that he do so. But Judge Young refused. During the hearing with Judge Young, he made it clear that these claims deserve to be heard and in fact went as far as to say that he did not want the defendants and their lawyers to "sandbag" the plaintiff and got their arguments and commitment to waive jurisdictional arguments upon transfer to the NH federal court (which ultimately the defendants had also requested in the alternative to the numerous arguments for dismissal including antislapp). If one reads Judge Young's ruling and the transcript of the hearing on the motion to dismiss, it is crystal clear that he definitely did not think that plaintiff's claims were unmeritorious, bad faith, frivolous, or vexatious. In fact, Judge Young, who is known for not suffering fools gladly, especially as an 80-year-old teaching judge, was notably respectful and positive in his disposition towards Bisasor during the hearing. If he had thought Bisasor was simply a rabblerouser or vexatious litigant, he would not have so done. Either way, Judge Young was the first federal judge to look closely at the details of the claims of this case, and his perspective negates any specious attempt by the defendants to now try to paint Bisasor as frivolous or vexatious. Furthermore, the complexity of the procedural history of the case is directly attributable to the clever maneuvers and/or bad faith tactics of the defendant. For example, Donais and Hilliard entering into settlement negotiations then backing out at the last minute, while trying to sabotage

the negotiations to inveigle the other 20 defendants not to settle, was pure bad faith. This case would have been settled fully with Donais if he had not backed out in order to pursue the frivolous bad faith defenses that were thrown out of court both at the trial court and the NH supreme court levels. It was bad faith when Donais blatantly lied to the Middlesex superior court about service of process not being done, when it was (see next section below). Further, the defendants were the ones who removed to federal court, twice, including when they knew that a parallel state court case was ongoing in NH state court. Every event that defendants point to try to insinuate vexation was due directly to their own conduct and maneuvers, that plaintiff had to try their best to counteract as pro se plaintiff. Bisasor totally repudiates any insinuation of vexation or frivolity and challenges the defendants to address forthrightly the facts presented herein. This also goes to honor and integrity. That the defendants so try to engage in these scurrilous insinuations rather than focus on the merits of the claims speaks volumes.  Plaintiffs need an opportunity to stand up for themselves in court, to clarify the record, and to challenge the defendants to correct these misleading and disingenuous misstatements or misrepresentations. NB: This case was the first case filed in NH, along with Massachusetts Middlesex superior court filed end of 2019.

c.  Another parallel state court case in Massachusetts superior court (Middlesex) was filed in 2019. It should be noted that the defendants misrepresented or gave misleading statements about this case. The facts are that Donais lied to the court staff/court that there were no settlement negotiations that should postpone the service of process date thus refuting a pending motion to extend time to serve process due to pending settlement negotiations, which resulted in denial of motion and 1-88 dismissal without prejudice. Bisasor still timely served process under the long arm statute via certified mail when he saw the motion to extend time was denied. But Donais tried to evade service by surreptitiously changing his address (that had been documented with the court), without informing Bisasor or filing a change of address with the court, at the time when he knew service of process would be due, and by then trying to confuse the local post office about where to forward mail that comes to his prior address, and by lying to the court about not receiving the certified mail from the postal worker who delivered to him by hand, after the post office tracked down where he was now located, and then ensuring that the certified mail

was delivered to him, which the post office has averred to in writing. Donais also did not sign the certified mail but because it was during Covid, the postman signed on his behalf, which Donais knew the postman did. (All of this is provable with documentary evidence). This resulted in delays in getting the green card back in order to file a return of service with the court, and though the court staff had assured me that they would await the green card from Bisasor, an 1-88 dismissal for lack of service was entered, routinely, after about a week, ignoring the prior assurances. Then Donais lied to the court telling them he had not been served when he was, and when Bisasor moved to vacate dismissal, he lied again telling the court he was not served. The case remained dismissed without prejudice and Bisasor filed an appeal. The appeal was dismissed on a technicality of not conforming to the page limits of briefs by submitting a brief with the correct page limit but in the wrong (non-monochromatic) font, which when converted to a monochromatic font, it goes over the page limit. But the court informed Bisasor that he may move to reinstate the appeal citing the technical mistake and being unaware of that technicality. Bisasor has not moved to reinstate the appeal as yet, because the parallel cases in NH were moving forward and because Judge Young seemed to imply that the safest path was to have the claims heard in NH to avoid any wrangling over personal jurisdiction.

d.  Bisasor effects an original Massachusetts state court filing (June 18, 2022) in Bristol Superior Court.

e.  Defendants effect removal to Massachusetts federal court. Then Transfer occurred to NH federal court by Judge William Young, stating the claims deserve to be heard/resolved on the merits of the claims (i.e., not on technical issues or on personal jurisdiction).

f.  The case then proceeds in NH federal court under Judge Talesha Saint-Marc. The original complaint was filed in Massachusetts and had references to Massachusetts law as basis for the claims. Defendants seized upon the transfer occurrence as grounds for dismissal citing incompatibility with NH law. Choice of law issues then permeated the case. Bisasor sought to amend the complaint. Judge Saint-Marc granted the plaintiff permission to file a motion to amend the complaint but had postponed the ruling on the amended complaint until after hearing. She also postponed ruling on the motions to dismiss the complaint because amendment of the complaint would moot the motions to dismiss the complaint.

However, the defendants argued futility of the amendment of the complaint and tried to force Judge Saint-Marc to rule on the motion to dismiss by incorporating the same motion to dismiss arguments as the arguments for futility of amendment of the complaint. This was a clever tactic that prejudiced the plaintiff because it would result in an end-run around Judge Saint-Marc own order that the motion to dismiss would not be ruled on until after the motion to amend the complaint would be allowed. It presented a technical conundrum. When plaintiff raised this issue in a hearing, Judge Saint-Marc did not have answer for avoiding this conundrum and the attendant prejudice to the plaintiff because the plaintiff had not yet properly responded to the stayed motions to dismiss. Consequently, the plaintiff voluntarily dismissed the case, in part to avoid the unavoidable prejudice from the posture of the case, and from having Massachusetts claims in the complaint for which he was seeking to amend among other things. Note: This further goes to the fact that defendants are misstating the truth when they say Bisasor had no reason to voluntarily dismiss the case in order to cure issues. The basic amendment to eliminate Massachusetts claims was a major issue that needed to be cured because the case was transferred to NH and would be held to NH law.

g.  Bisasor effects voluntary dismissal (6-3-24) to consolidate with first-filed NH state court case.

h.  Bisasor effects timely refiling in New Hampshire state court (6-3-25) under savings statute.

i.  Defendants then effect removal again to this Court (7-2-25) on sole basis of presence of one federal claim, **before service of process was complete.** Plaintiffs effectuate, as a matter of right without permission, a filing of First Amended Complaint (7-29-25) eliminating federal claim.

j.  Bisasor sought remand on basis of elimination of federal claim and motion to remand was denied.

k.  Remand discovery motion was filed and is pending.

l.  Disclosure statements were ordered by the court and incomplete disclosures were filed on 1-26-26 and 1-29-26. Plaintiffs filed motion to compel supplemental disclosures due to incomplete disclosures and missing partners not mentioned. See **<u>Exhibit 3</u>**. No response has been made to this motion or the allegations of incomplete disclosure or missing information.

m. Two new motions to dismiss were filed in October and December 2025, after the first ones became

moot, and are also pending.

22. Defendants have extensively mischaracterized this procedural history in their motions to dismiss, falsely

claiming that Plaintiffs "gave no reason" for the voluntary dismissal (Document 36-1, p. 5), ignoring the

explicit reasons stated in the notice of dismissal, and misrepresenting the relationship between the various

proceedings. This goes to their attacks on the use of the savings statute and is critical to resolving that issue.

23. Bisasor has a filed a concurrent addendum with the notice of voluntary dismissal giving several reasons for

the necessity of voluntary dismissal including but not limited to the need to consolidate the claims with the

parallel state court case, in one forum in NH.

24. Oral hearing is necessary for Plaintiffs to correct these misrepresentations and explain the actual procedural

posture, which is critical to resolving the statute of limitations and savings statute arguments.

### C. Defendants' Misrepresentation of Facts and Law

25. Defendants' motions to dismiss are replete with factual misstatements, legal mischaracterizations, and

procedural distortions that require correction.

### i. Some Examples of Factual Misrepresentations:

26. Defendants state Plaintiffs "gave no reason" for voluntary dismissal, when the notice explicitly stated

reasons including consolidation with the first-filed state court case, among several other legitimate reasons.

27. Defendants minimize the June 2017 consultation as a "7-minute call" when the complaint alleges a

prospective attorney-client relationship with fiduciary duties and confidential disclosures.

28. Portions of statements are quoted while omitting context showing falsity and malice.

29. Defendants repeatedly cite to the original complaint before amendment was made, or to complaints filed

in other proceedings (MA state court or prior federal action in this court) rather than addressing the First

Amended Complaint that supersedes all prior pleadings.

### ii. Some Examples of Legal Mischaracterizations:

30. Defendants claim "absolute privilege" bars all defamation claims without addressing how privilege applies

to statements made to private persons such as family members, neighbors, or members of a local non-

profit. This also was done without otherwise acknowledging exceptions for any purported potentially

privileged statements that are knowingly false, recklessly false, or made with actual malice, and/or that bear no relevance to the proceedings.

31. Defendants argue the savings statute doesn't apply when Plaintiff voluntarily dismissed to consolidate cases and refile in state court, ignoring binding New Hampshire Supreme Court precedent interpreting RSA 508:10 broadly. See also Bel Air Assocs. v. N.H. Dep't of Health & Human Servs., 154 N.H. 674, 678 (2006). This issue requires careful treatment because the defendants play fast and loose with the facts, with what was stated in prior cases, including the procedural history, and they conflate standards that are not applicable to the current circumstances, seeking to dazzle, obscure and confuse the court. They cleverly employ a "scatter shot" approach designed to obscure weaknesses, while making blanket conclusory statements or characterizations, that they hope the court will take as true on merely their "say so." They engage in misrepresentation or misstatement of facts including procedural history, and also misstatement of the law. These are complex tactics thrown around by defendants. Plaintiffs need an opportunity to orally explain these points to avoid any prejudice. Doing so in an objection with page limits, is not conducive to being able to effectively ferret these out, especially when ADA issues impede doing so in writing alone[2].

32. Defendants attack the length and detail of the amended complaint while ignoring that pro se complaints are entitled to liberal construction and that this is a complex multi-party, multi-claim case requiring detailed factual allegations. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

33. Defendants cite Stewart v. Ang (Exhibit E) for propositions that case do not support and cite cases from other jurisdictions with different standards. NB: Plaintiffs could not properly address approx. 25 pages of motion with 90 plus pages of exhibits, in a limited objection only.

### F. Scatter-Shot Arguments Designed to Obscure Weaknesses:

34. Defendants' motion spans 24 pages with 90+ pages of new exhibits, raising arguments under statute of limitations, absolute privilege, failure to state claim for 13+ separate counts, Rule 8 violations, improper

---

[2] NB: The motions to dismiss span approx. 50 pages of text, with over 100 pages of additional exhibits, not including the original complaint. They also attach a complaint from NH superior court and use that try to introduce materials outside of the amended complaint in this case. The plaintiffs cannot be expected to address all of these materials in only a limited written objection.

claim splitting, and affirmative defenses. This scatter-shot approach is designed to overwhelm plaintiffs and

obscure weaknesses in Defendants' core arguments. Conley v. Gibson, 355 U.S. 41, 47-48 (1957).

35. An oral hearing would allow Plaintiffs to focus the Court's attention on the critical issues and respond to

misrepresentations that are difficult to be properly or adequately addressed in written briefing by pro se

litigants facing represented counsel. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); and see

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

### G. Disputed Facts Inappropriate for Resolution on Motion to Dismiss

36. Defendants' motions extensively dispute factual allegations in the amended complaint, arguing that

Plaintiffs' version of events is implausible, that statements were not defamatory, that no attorney-client

relationship existed, and that various motivations and intents should be inferred differently. This is

improper on a motion to dismiss. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011);

and Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

37. Under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all

reasonable inferences in Plaintiffs' favor. For example, Defendants improperly ask the Court to:

    a.  Disbelieve Plaintiffs' allegations about what was said and when.

    b.  Reject Plaintiffs' characterization of the attorney-client relationship and attendant supporting facts.

    c.  Find that certain statements weren't defamatory as a matter of law (a question typically for the jury).

    d.  Conclude that Defendants lacked malice or discriminatory intent (inherently factual questions).

38. These factual disputes cannot be resolved on motion to dismiss and further demonstrate why hearing is

necessary, to clarify facts actually alleged versus what Defendants claim is alleged. See Sepúlveda-Villarini

v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010). Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

### H. Pro Se Plaintiffs Require Opportunity to Be Heard

39. Plaintiffs are proceeding pro se against well-established law firms with extensive motion practice experience.

The disparity in legal sophistication and resources places Plaintiffs at a severe disadvantage when responding

to complex legal arguments in writing. Haines v. Kerner, 404 U.S. 519, 520 (1972).

40. Courts have recognized that oral argument provides pro se litigants with a critical opportunity to: a) Clarify

their positions in plain language; B) Respond to mischaracterizations by opposing counsel; c) Ask questions

about legal standards and procedural requirements; d) Present their case in a format (oral communication) that may be more accessible than technical legal writing. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013).

41. Denying hearing effectively silences pro se plaintiffs and allows represented defendants to control the narrative through voluminous written submissions that pro se plaintiffs are not trained to adequately rebut in writing. Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

### I. Civil Rights Claims Warrant Heightened Protection from Dismissal

42. This case includes claims of racial discrimination under New Hampshire state law and under federal law (i.e., should remand be finally denied and should first permission amendment to add back section 1981 claim be allowed), which are civil rights claims entitled to heightened protection from premature dismissal. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-01 (1973). Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

43. Courts have repeatedly held that civil rights claims should not be dismissed at the pleading stage without careful consideration, and that oral hearings help ensure that meritorious civil rights claims are not improperly dismissed on technical grounds. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 588 (D. Mass. 2016).

44. The Supreme Court has emphasized that civil rights statutes must be construed broadly to effectuate their remedial purposes, and that procedural barriers should not prevent plaintiffs from having their day in court on discrimination claims. Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968).  Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-18 (1975).

45. Oral hearing provides critical protection against premature dismissal of civil rights claims, particularly when asserted by pro se minority plaintiffs against established defendants in the legal community. Gomez v. Toledo, 446 U.S. 635, 640 (1980).

### J. Newly Added Plaintiff Has Not Been Heard

46. Anderson was added as a party through the First Amended Complaint filed 7-29-25. She has not had an opportunity to present her case and faces possible immediate dismissal without ever being heard.

47. Fundamental fairness requires that Anderson have an opportunity to be heard before her claims are dismissed. Oral hearing would provide that opportunity and ensure that she is not denied access to justice without at least being able to explain her claims to the Court.

48. Moreover, Anderson has presented certain reasonable accommodation requests, which contain or implicate issues that remain unresolved. Dismissing her claims without hearing creates appearance of unfairness.

## K. Plaintiffs Seek Leave to Amend if Deficiencies Exist

49. If the Court is inclined to find any deficiencies in the First Amended Complaint, Plaintiffs respectfully request leave to amend rather than outright dismissal. Federal Rule 15(a)(2) provides that courts "*should freely give leave when justice so requires*," and the First Circuit has held that pro se plaintiffs must be given an opportunity to amend before dismissal, particularly on first motions to dismiss. Fed. R. Civ. P. 15(a)(2). Palmer v. Champion Mort., 465 F.3d 24, 30-31 (1st Cir. 2006). Oral hearing would allow the Court to identify any specific deficiencies and give Plaintiffs opportunity to address whether amendment would cure those deficiencies, instead of dismissing/foreclosing all relief.

50. NB: On 1-23-26, Anderson filed a motion to amend the complaint (See **Exhibit 2**.). It was denied (ostensibly without prejudice) the same day: *Ms. Anderson's motion to amend the complaint (doc. no. 84) is denied for failure to comply with Local Rule 15.1.* Plaintiffs are preparing to re-file this motion to amend with proposed amendments and have sought conference with defendants, both to comply with local rule 5.1.

## L. Risk of Judicial Error Without Hearing

51. Given the complexity of this case, the voluminous record (including 90+ pages of new exhibits submitted by Defendants), the contested procedural history, and the extensive factual disputes embedded in Defendants' motions, there is a substantial risk that the Court may misunderstand critical issues if ruling solely on the papers. Oral argument serves the critical function of allowing the Court to ask questions, clarify ambiguities, and ensure full understanding of the issues before making dispositive rulings that will end the case. This is particularly important in cases like this where a) Defendants have submitted voluminous materials not in the complaint; b) The procedural history spans multiple courts and proceedings; c) Pro se plaintiffs may not have clearly articulated all relevant legal standards in their written oppositions; d) The relationship between multiple overlapping claims and cases requires clarification.

52. A hearing protects against erroneous dismissal and ensures the Court has a complete and accurate understanding of the issues.

## IV. ADDITIONAL ARGUMENT FOR HEARING

53. Plaintiffs are requesting hearing because this is a dispositive motion, it would be unfair to dispose of it without hearing. Furthermore, a hearing on the pending motion to dismiss in this court is critical to the fair disposition of those new motions to dismiss. This hearing will help to effectively fully determine the issues. This is critical to protect the rights of the plaintiffs.

54. Plaintiffs need an opportunity to protect their rights when a movant is trying to end the case early in the process via a pre-answer motion to dismiss. No motion to dismiss can be fully, fairly, or properly resolved without hearing on a motion to dismiss when requested.

55. The motion to dismiss is not simply a motion but also it is a process that usually involves hearing and attendant procedures required for due process and fairness.

56. Similarly, most courts customarily hold hearings on dispositive motions, as part of the normal course of action. It is also customary for the NH federal court to hold a hearing on dispositive motions. It would be a departure from that normal course of action for the court to now abandon the practice of scheduling a hearing on pending motions to dismiss.

57. Given the stakes involved, and plaintiffs' pro se status (as well as ADA issues), it is also proper to hold a hearing so that plaintiffs can have any adequate opportunity for due process, to be meaningfully heard, to defend themselves against dismissal and to be able to assert and preserve all their arguments needed to properly defend themselves.

58. There are critically important points of facts and/or law that need to be brought to the court's attention. The complexity of the issues and the importance of the facts, including disputed ones, presented in the motions to dismiss, necessitates a hearing before the court. This is warranted given the complexity of the legal issues involved in this action and the significance of the issues that need to be addressed. This case involves multiple claims and requires analysis of many issues. Furthermore, there are a number of items

that might be better explained orally. As pro se plaintiffs, they are limited in ability to cover all necessary points for these motions in writing in a limited objection.

59. A hearing would aid in fair resolution of this case. The court denied the motion to remand and a motion for default the defendants. It also denied a hearing on the motion to remand and then denied the motion to remand. Yet there are disclosure issues that are now surfacing, including hidden or missing partners that may undermine claims of diversity. If the court had held a hearing when requested by the plaintiffs, these issues could have been efficiently and effectively addressed in that one hearing, rather than have the issues drag out over the spread of time through piecemeal motion practice. This does not save on judicial resources. A hearing in that instance would have been more efficient.

60. The same goes for the motions to dismiss. A hearing is the fairest and most efficient way to address the various multiple issues in one hearing. NB: It should be noted that the court also denied a prior motion for case management conference. The court also prior to that had stayed the routine scheduling conference. There has been no opportunity to speak to the court or appear before the court.

61. Now that remand is almost resolved and if the case remains in this court, then the least the court could do is allow a hearing on the new motions to dismiss. It would be manifestly unfair to allow dismissal without even hearing from the plaintiffs once. No other federal court has entertained ruling on a motion to dismiss on these set of complex claims without first holding a hearing. Both Judge William Young and Judge Talesha Saint-Marc scheduled hearings on these claims. Further, it is plaintiffs' understanding that Judge Joseph Laplante, when he was chief judge, stated that, as a matter of policy or practice, hearings are usually scheduled on motions to dismiss in this court.

62. A hearing is now warranted on the potential case-ending motions to dismiss. Here, the court has never held a hearing in this case. It cannot be argued that the Court does not need to hold a hearing at this juncture with the new motions to dismiss the amended complaint.

63. A hearing will benefit this court in its decision making and aid the court to be fully apprised of the complete and thorough arguments in this matter so that justice may be served.

64. Therefore, in sum, a hearing will help to ensure procedural fairness, address complex legal and factual issues, and preserve Plaintiffs' rights under the Due Process Clause. The Motions to Dismiss raises new dispositive theories that were not advanced in his prior motions. Disposing of this motion without hearing would contravene judicial norms, prejudice Plaintiffs' ability to defend against dismissal, and undermine the Court's duty to adjudicate disputes fully and fairly. NB: Plaintiffs should be treated equally with all other litigants including those represented by counsel. They should not have to plead and beg for a hearing on motions to dismiss when this would be normally granted in almost every other instance.

65. Plaintiffs, proceeding pro se and with documented ADA issues, face disproportionate prejudice if denied a hearing. Courts must liberally construe pleadings and ensure access to justice for pro se parties. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). A hearing would allow Plaintiffs to clarify allegations, rebut defendants' defenses, among other things.

66. The Defendants, represented by counsel, face no prejudice from a hearing. A hearing simply provides an alternate forum for presenting argument. In contrast, Plaintiffs risk dismissal of viable claims without an opportunity to respond orally-a disparity violating equal protection principles.

67. Similarly, a hearing is necessary because a motion to dismiss is a dispositive motion that seeks to end the lawsuit based on threshold issues, without adjudication of the actual merits. Plaintiff needs an opportunity to properly address the issues before the court presented in Defendants' motions to dismiss.

68. It is further instructive that in Yancey v. Yancey, 119 N.H. 197, 399 A.2d 975 (1979)("Yancey"), the NH Supreme Court (NHSC) stated:

> Although a motion upon which the opposing party does not request a hearing may be acted on under Superior Court Rule 58, RSA 491: App. R. 58 (Cum. Supp. 1978), the motion cannot be denied without giving the movant a chance to be heard.

69. Here, the Yancey court stated that with respect to a motion to dismiss (then governed by Rule 58), the motion cannot be denied without giving the movant a chance to be heard.

70. The provision of a chance to be heard strongly implies a hearing. See State v. Roy, 138 N.H. 97, 98, 635 A.2d 486, 486-87 (1993) ("Yancey provided that the movant should be given "a chance to be heard," 119 N.H. at 198, 399 A.2d at 976."). This suggests a core principle that a movant must be given at least a basic

hearing when it concerns motions to dismiss, and underscores a basic theme of fairness; if a party is moving

to end a case on a dispositive motion, a chance to be heard in a hearing should be provided.

71. Although this case is from the NHSC, not the First Circuit, it is still a NH case and further underscores the

core principle with respect to the strong presumption of a right to hearing on motions to dismiss.

72. Such hearings become functionally mandatory especially where factual disputes exist or are asserted in the

motions to dismiss, and/or where pro se litigants or ADA issues are involved.

73. The defendants' motion seeks dismissal of all claims, which is an outcome warranting oral argument to

address factual nuances, and other defenses.

74. Courts must ensure due process for self-represented parties (Erickson v. Pardus, 551 U.S. 89 (2007)) or

where there are complex legal issues or novel questions of law or public policy.

**75.** A hearing is presumptively favored in this case because of factual complexity with issues like privilege

defenses implicate the temptation to make improper credibility assessments at the dismissal stage. Also, due

process requires a hearing for pro se litigants because of the need for oral argument to clarify allegations. A

hearing is also required due to the necessity of resolving factual disputes or ensuring procedural fairness.

Thus, a hearing on the new motions to dismiss is necessary here because of the factual and legal complexities

concerning the nature and extent of plaintiffs' objection to the motions to dismiss (including attachments),

and because of the request to further amended complaint, and for allowance of discovery concerning

defenses in the motions to dismiss and resolution of ADA issues, among other things that are cited in

plaintiffs' notice of intent to file critically important motions, which points, including all footnotes, are

incorporated herein by reference (See **Exhibit 1**.) Similarly, plaintiff will file a confidential ADA request

further supporting grounds for oral hearing in this instance.

### V. FURTHER ARGUMENT: COURT'S PRIOR RULING AND DEFENDANT'S PRIOR POSITION
#### A. Defendants' Prior Position of Taking No Position

76. It should be noted that the prior motion for hearing (on remand) was not opposed by the defendants and

their position was "*The Donais Defendants take no position on whether the Court elects to schedule a hearing on the*

*Motion to Remand*" as cited in the opening paragraph and paragraph 8 of their response to the motion for hearing on remand motion filed on 9-24-25.

### B. The Courts' Prior Ruling Favoring Future Hearing on Case by Case Basis

77. The court stated in the 11-17-25 order that it would deny Bisasor's request for oral argument on the motion to remand but, although the remand hearing was denied at that time, the court indicated it was not predisposed to future requests for hearings by stating: "*the court will consider requests for oral argument in the future on a motion-by-motion basis.*" This now is one such clear situation that warrants oral argument. Moreover, it must have been anticipated by the court that if and when the time came for addressing the motions to dismiss, that this would be an appropriate situation giving rise to request for a hearing.

78. NB: The grounds for denying Bisasor's request for oral hearing on remand do not apply to Anderson.

### C. The Courts' Requirement of Persuasion by Plaintiffs Warrants Hearing

79. It should be noted the court has operated in a manner that seems to expect the pro se plaintiffs to write persuasively and precisely at the level of a top-trained lawyer. In more than one ruling, the court has indicated that plaintiffs need to persuade the court with precise arguments or precedents. For example:

80. In the 1-23-26 order on motion for certification for interlocutory appeal, the court stated: "*Ms. Anderson has not persuaded the court that this is the rare case warranting certification. Among other shortcomings, she has not cited a single instance in which a court has restrained post-removal subject-matter jurisdiction in the manner she advances, whereas the court's interpretation of the issue is well-supported by prior opinions.*"  In the 10-9-25 order on remand, the court stated: "*The plaintiffs offer other arguments in favor of remand, none of which is persuasive.*"

81. These rulings suggest the court is going to expect plaintiffs to operate at a level of persuasiveness that can persuade as a federal court judge. To do this, arguably, plaintiffs need a hearing to properly do so.

### VI. CONCLUSION

82. This request is not made lightly, but rather arises from a confluence of procedural, factual, and legal complexities that demand both careful review and opportunity for full, fair, and orderly presentation in a hearing. The record in this case, as well as the procedural posture and recent filings, make clear that a hearing is not only warranted, but necessary to preserve fairness/integrity of these proceedings, to avoid manifest injustice, and to ensure the Court's ultimate ruling is based on a complete/accurate record.

83. A hearing is essential to balance procedural fairness, address case complexity, and honor Plaintiffs' rights, in light of the clever tactical and procedural maneuvers of the defendants over the years that are designed to frustrate the right of plaintiffs to obtain a fair hearing and to have their full day in court. The Court's adherence to judicial norms will ensure a just outcome and public confidence in the process. Therefore, Plaintiff respectfully requests the Court schedule a hearing to address Defendant's motions to dismiss.

84. Plaintiffs thus request this Court schedule an oral hearing on Defendants' pending Motions to Dismiss. This is not an extraordinary request; it is standard practice in this District for dispositive motions in complex cases. Hearing is particularly warranted here given: a) The complexity and fact-intensive nature of the claims; b) The convoluted procedural history requiring clarification; c) Defendants' extensive misrepresentations of facts and law; d) The need to protect pro se minority plaintiffs, with ADA issues, from premature dismissal; e) Newly added plaintiff Anderson's right to be heard; f) that there are pending unresolved reasonable accommodation issues that remain; g) the complex civil rights claims warranting heightened protection; and h) The risk of judicial error without opportunity for clarification.

85. Plaintiffs are simply asking for the same opportunity that other litigants in this District routinely receive, and that simply is a chance to be heard on dispositive motions before their case is reviewed for dismissal at this early pre-answer stage.

## VII. RELIEF REQUESTED

86. WHEREFORE, Plaintiff respectfully requests that this Court:

   a. Grant this Motion and schedule an oral hearing on Defendants' Motions to Dismiss;

   b. Set a hearing date with sufficient time for Plaintiffs to prepare;

   c. Address Plaintiff's unresolved reasonable accommodation issues and provide appropriate accommodations for the hearing;

   d. Consider granting leave to amend if any deficiencies are identified at the hearing, consistent with Rule 15(a)(2) and First Circuit precedent regarding pro se plaintiffs;

   e. Grant a pro se liberal construction to this pleading; and request a hearing on this motion;

   f. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
/s/Natalie Anderson
Natalie Anderson

Dated: February 3, 2026

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served to the defendants in this case.

/s/Natalie Anderson

Natalie Anderson

## CERTIFICATE OF CONCURRENCE SOUGHT

This is to certify that plaintiffs sought concurrence from the defendants on this motion but concurrence was not obtained.

/s/Natalie Anderson

Natalie Anderson

# Exhibit 1

UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 | BISASOR v. DONAIS, et. al.

## PLAINTIFFS' NOTICE OF INTENT TO FILE CRITICALLY IMPORTANT MOTIONS

1. Plaintiffs hereby provide notice to this Court of his intent to file the following motions:

    a. Motion to Amend the Complaint with Proposed Amended Complaint[1]

    b. Motion for Case Management Conference on Recurring Procedural Issues Affecting the Plaintiff[2]

    c. Motion to Submit Audio Evidence to the Court[3] and For In Camera Hearing before the Court to Establish Undisputable Evidence of Wrongdoing By Craig Donais

    d. Motion for Limited Discovery on the Motion to Dismiss[4]

    e. Motion to Strike Extraneous Material from Motion to Dismiss[5]

---

[1] Note: The plaintiffs recently filed a motion to amend the complaint, but it was denied for failure to comply with the local rules, which the plaintiff now seeks to cure. The plaintiff is now seeking to confer with defendants and will provide a proposed amended complaint. It is critical that the court await re-filing of this motion before addressing the motion to dismiss because the amended complaint will moot the motion to dismiss.

[2] Plaintiffs have raised several concerns of certain continuing problems for the past several months and there appears to be no way to properly address/resolve these concerns. A case management hearing is necessary to address critical procedural issues/problems that will hamper, impede or obstruct the ability of the plaintiffs to properly and effectively prosecute this case. Plaintiff is concerned that this is not being addressed or taken seriously or seriously enough. Several issues have not been addressed by the clerk office or the court. Since the clerk office seems not willing or able to address these concern/issues, then the plaintiff has no choice but to seek a case management conference with the court. Note: It does not have to be called a case management conference. It could be called a "procedural issues" hearing or an administrative issues hearing. It does not matter what it is called, what matters is the function of it to address critical problems that the plaintiff have been facing.

[3] This motion is necessary because Plaintiff Bisasor contends that it will prove the dishonesty of Craig Donais and directly goes to both establishing the undisputed grounds for partial summary judgment as well as defense against early dismissal. Plaintiff Bisasor has evidence that is so explosive in nature that it will completely unravel defenses of defendant Donais. It will establish his conclusive guilt/liability of wrongdoing that will be undeniable to this court once the court reviews this evidence. It goes to his integrity and honesty as a lawyer, and it will shock the court as to the highly egregious blatant bareface and unrepentant lies the defendant Donais has been propounding publicly. Surely, the court as an institution of truth has interest in the truthfulness of lawyers before it. Further, also, because the evidence involves protected privilege, it cannot be submitted publicly and must be done in camera before the court. However, there is no way for plaintiffs to submit audio evidence to the court without permission or instruction from the court.

[4] This motion is necessary because the defendants' motion to dismiss assert several issues of disputed fact and make several assertions of fact that go beyond the complaint. Further, the defendants have invoked certain arguments that require discovery. Plaintiffs have also asserted objection argument that implicate the need for discovery. It would be unfair to rush to dismissal decision without allowing plaintiffs a fair opportunity to defend against dismissal. This motion will lay out the facts supporting this request, but plaintiffs need an opportunity to do so.

[5] This motion is necessary because the defendants' motion to dismiss make several assertions of fact that go beyond the complaint. This extraneous material should be stricken so that plaintiffs are not forced to respond to such illicit material or to prejudice themselves by addressing material that they should not be required to address, thereby themselves introducing the very issues that they contend needs to be stricken, thus creating a catch 22 conundrum, It would be unfair to rush to dismissal decision without informing the plaintiffs as to whether such extraneous information will be stricken or not considered by the court. This motion will lay out the facts supporting this request, but plaintiffs need an opportunity to do so.

f.   Motion to Convert to Summary Judgment Based on Extraneous Material from Motion to Dismiss and Based on Disputed Facts in the Motion to Dismiss[6]

g.   Motion to Stay Decision on the Motion to Dismiss Pending Resolution of Discovery on Motion to Dismiss, Pending Hearing on the Motion to Dismiss, and Pending Resolution of Other Related Motions[7]

h.   Motion for Hearing on the Motion to Dismiss[8]

i.   Motion to Stay Proceedings Pending Parallel Related State Court Case[9]

j.   Motion to Reconsider Certification of Appealability[10]

k.   Motion for Partial Summary Judgment on Plaintiff's Claims Including Breach of Fiduciary Duty, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing.[11]

l.   Motion to Disqualify Counsel for the Donais Defendants[12]

---

[6] This motion is necessary because the defendants' motion to dismiss assert several issues of disputed fact and make several assertions of fact that go beyond the complaint and if the court is not going to strike the extraneous information or the assertions of disputed fact, then the matter must be converted to one for summary judgment in accordance with the rules and to protect the rights of the plaintiffs. It would be unfair to rush to dismissal decision without allowing plaintiffs a fair opportunity to defend against dismissal. This motion will lay out facts supporting this request, but plaintiffs need an opportunity to do so.

[7] The defendants' motion to dismiss assert several issues of disputed fact and make several assertions of fact that go beyond the complaint. Further, the defendants have invoked certain arguments that require discovery. Plaintiffs have also asserted objection argument that implicate the need for discovery. It would be unfair to rush to dismissal decision without allowing plaintiffs a fair opportunity to defend against dismissal.

[8] Note. It is critical that the court await this motion before addressing the motion to dismiss because a hearing is important part of due process and being heard especially with pro se plaintiffs. Further, hearing on dispositive motions is standard practice in this court and there would be no reason to deviate from this with respect to this that contains a complex history and multiple complex legal claims the amended complaint will moot the motion to dismiss.

[9] There are complicated procedural issues with respect to the parallel state court case that likely will affect this case and these issues must be resolved before this case can proceed. Plaintiff needs an opportunity to lay this out to the court.

[10] Note: The plaintiff recently filed a motion to certify appeal to the First Circuit, but it was denied for a couple of reasons including failure to show persuasive authority for the underlying basis for remand, or something to that effect. Plaintiff will file a motion to reconsider seeking to provide the court with the persuasive grounds it states was absent from this motion. However, because of the pending motion for discovery remand, plaintiff will likely await resolution of that motion first.

[11] Plaintiffs have a right to seek partial summary judgment on facts that are undisputed at the same time the defendants seek dismissal. Plaintiffs ask the court to allow equal opportunity and weight to plaintiffs' motion which other lawyers often do in this court. It would be unfair to rush to resolve the motion to dismiss, in particular on failure to state grounds, without allowing plaintiffs a fair chance to present proof of this motion.

[12] As previously indicated, counsel for the Donais Defendants, has been using privately obtained information from sealed hearing in order to exploit the plaintiff. This needs to be addressed under seal or in a sealed hearing due to the sensitive nature of the issues. This warrants disqualification as it will prejudice the rights of the plaintiff to have a fair trial in this case.

    m.  Motion to Recuse and Transfer Case[13]

2.  This notice is provided to inform the Court and opposing counsel of the anticipated motions practice in this case. Plaintiff has sought assent from opposing counsel as to these motions by email dated January 29, 2026, but have not yet received a response.

3.  While awaiting response, plaintiffs are filing this notice of intent so that the court is aware that these motions will be filed soon.

4.  In light of the fact that it appears that the initial remand motion has been denied, and the pending remand discovery motion will soon be resolved, the Plaintiffs will prepare and file the above-referenced motions in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Hampshire. This is the first opportunity that plaintiffs will have to properly file these motions, given the current procedural posture of the case.

5.  However, it is anticipated that the defendants will not agree with these motions and that they will try to persuade the court to rush this case at the expense of due process and fairness to the plaintiffs, in order to effectuate a quick and dirty windfall. It is expected that, in an attempt to seek to capitalize on their advantages as lawyers who regularly practice before this court and because we are non-lawyer outsiders who are apparently may not be popular or welcomed in this court, the defendants will try to pressure the court to be party to this imbroglio, while trying to stigmatize the plaintiffs as somehow being undeserving of equal fair treatment (the treatment that a Mitt Romney or Governor or CEO or Big Law president might receive or hat they themselves would expect to receive if the shoe were on the other foot and they were the plaintiffs in a case) and that somehow our case is somehow especially deserving of irregular practice to quickly and swiftly dismiss this case because of their say so or because of emotional reasons like they are tired of waiting and they simply don't want to have

---

[13] Plaintiff is reluctant to file such a motion but because of the continuing problems for the past several months and because there appears to be no way to address these concerns, because the court has not held a case management hearing to address critical procedural issues/problems that will hamper, impede or obstruct the ability of the plaintiffs to properly and effectively prosecute this case, then plaintiff unfortunately believes there is no choice but to seek recusal and transfer from this court.

to defend this case anymore because of prior extensions in this case or because a number of other irrelevant straw man reasons that have nothing to do with whether the plaintiffs deserve their full day in court under the law as equal citizen before this court. They will likely use dog whistles to stigmatize the plaintiffs as "the other", as "persona non grata", and use psychological manipulation and suggestive tactics to try to paint negative picture of the plaintiffs, thereby putting the plaintiffs on trial simply because they do not have a lawyer to stand as a buffer between them and the court, as the defendant do, and they will likely try to stir or inflame the sensibilities of this court using their seasoned litigation tactics to try to outmaneuver the plaintiffs.  Plaintiffs pray the court will not countenance such attempts or tactics, designed ultimately to frustrate the fair administration of justice and to deprive the little guy of the right to a fair trial. The plaintiffs have strong valid claims, and they deserve their full day in court.

6.  Plaintiff respectfully requests that the Court take notice of these anticipated filings, and await these filings which are procedurally relevant to any consideration of the pending Motion to Dismiss filed by Defendants.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

/s/Natalie Anderson
Natalie Anderson

This is to certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor

/s/Natalie Anderson
Natalie Anderson

# Exhibit 2

UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 | BISASOR v. DONAIS, et. al.

## ANDERSON'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

1. Plaintiff Natalie Anderson submits this Motion for Leave to File a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## I. INTRODUCTION

2. The prior amendment was of right, not of permission. Amendment should be granted freely. Plaintiffs would like to amend and clarify claims to better meet federal standards. Plaintiffs will also streamline the complaint to remove argument and make a more definitive statement. As pro se plaintiffs, we are not expert pleaders and need an opportunity to revise claims to meet or be more in line with federal standards which are different from state court standards, especially since it now appears that the case will remain in federal court and given that the removal of federal claim has been rendered of none effect by the court's order on the remand motion.

## II. LEGAL STANDARD

3. Under Fed. R. Civ. P. 15(a)(2), amendment by motion is permitted when justice so requires. The Supreme Court held in Foman v. Davis, 371 U.S. 178, 182 (1962), that amendment should be "freely given" unless there is (1) undue delay, (2) bad faith, (3) dilatory motive, (4) repeated failure to cure deficiencies, (5) undue prejudice to the opposing party, or (6) futility of amendment. First Circuit courts apply this standard liberally, particularly in pro se cases. Erickson v. Pardus, 551 U.S. 89 (2007).

## III. GROUNDS FOR AMENDMENT

4. This is Plaintiffs' first motion to amend after filing the First Amended Complaint (FAC) on June 3, 2025. Anderson seeks to:

   a. Clarify and strengthen the claims;

   b. For example, Anderson intends to clarify and strengthen the race discrimination claim under New Hampshire law; and Add a Section 1981 federal civil rights claim for race discrimination; Section 1981 is a valid federal cause of action for race discrimination in contracting, directly applicable to Defendants' conduct denying Plaintiffs access to legal services among other things.

   c. Furthermore, amendment will cure alleged deficiencies raised in motion to dismiss where

defendants argued that the discrimination claim was insufficiently pleaded. The Second Amended Complaint will provide explicit allegations of fact; removes argumentative language; will seek to better meet federal standards; will add the Section 1981 claim (now appropriate with federal jurisdiction established), and will add more definitive statement on damages resulting from race discrimination. Section 1981 is now appropriate to add back because the original removal raised questions about federal jurisdiction and plaintiffs conservatively omitted the Section 1981 claim to preserve state court options, but the Court's rulings have now confirmed federal court retention despite removal of federal claim. Thus, removal of federal claim was rendered of no effect by the court's retention of this case. Plaintiffs were blindsided by this as they fully expected the removal of the federal claim would result in remand. Since the presence or absence of the federal claim is no longer the basis for jurisdiction and it has been replaced by diversity, then Anderson would like to reinstate the federal claim.

d. Add necessary parties;  Anderson would like to add additional parties. Joinder is proper under Fed. R. Civ. P. 15, 19, and 20, as these parties' conduct arises from the same or similar operative facts and is integral to complete relief.

e. Streamline the complaint to remove argumentative language and present claims more definitively in compliance with federal pleading standards. For example, the defendants argued that the complaint contained argumentative passages. The Second Amended Complaint will remove argumentative language. These amendments are requested so as ensure better compliance with Federal Standards, which are different that state court standards.

f. Anderson would also like to reserve the right to add additional claims so as to preserve her rights as a second added plaintiff. Anderson was added as a second plaintiff upon the first amendment which Bisasor did as of right as the prior sole plaintiff. This is the first opportunity for Anderson to amend the claims in this case.

5. The amendment is timely. Now that it appears that the Court is not inclined to remand the case, it is the

first time that plaintiffs can seek to properly amend the complaint and not waste time laboring under the uncertainty that the case will remain in federal court.

6. Anderson moves promptly upon identifying the need to clarify allegations, and add the Section 1981 claim, which is appropriate now that the Court has confirmed federal court retention of this case.

7. This motion reflects commitment to comply with federal pleading standards and present claims clearly.

### III. CONCLUSION

8. Anderson respectfully requests that the Court grant the Motion for Leave to File a Second Amended Complaint. The amendments promote justice by clarifying claims, adding an applicable federal cause of action, and ensuring complaint and claims meet federal standards.

9. Anderson requests a hearing on this motion. Anderson was just allowed e-filing access to this court. Anderson is effectively just getting her start in this case. She could not seek relief or petition the court previously. In order to catch up, she has to provide limited arguments in her motions so as to not be prejudiced by the pace at which this case has advanced without being effectively present to access and petition the court. Thus, she has presented all her arguments or justification for amendment. In light of this, Anderson requests hearing on this motion in order to better explain her request for amendment and to address any questions by the court, if any. If the court is inclined to grant this motion without hearing, then she does not need a hearing in that instance.

10. She also asks for pro se liberal treatment of this pleading.

11. WHEREFORE, Anderson requests this Court: GRANT this Motion for Leave to File a Second Amended Complaint; ALLOW the Second Amended Complaint to be filed within a reasonable time after the order allowing amendment; GRANT such other relief as the Court deems just and proper.

Respectfully submitted,
/s/ Natalie Anderson
Natalie Anderson

January 23, 2026

### CERTIFICATE OF SERVICE
I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Natalie Anderson
Natalie Anderson

# Exhibit 3

UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO SUPPLEMENT DIVERSITY DISCLOSURES, PLAINTIFFS' MOTION TO GRANT LIMITED REMAND DISCOVERY ON DIVERSITY, AND PLAINTIFFS' RENEWED MOTION TO REMAND BASED ON INCOMPLETE JURISDICTIONAL SHOWING**

1. Plaintiffs respectfully move this Court pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 7.1.1 to require Defendants to file supplemental diversity disclosure statements addressing material gaps in the disclosures already filed. Defendants' current disclosure statements fail to establish complete diversity jurisdiction as required for federal court retention of this action. The incomplete disclosures support renewal of Plaintiffs' motion to remand to state court for lack of subject matter jurisdiction. Otherwise, it at a minimum, supports the need for limited remand discovery on obesity issues.

**I. INTRODUCTION**

2. Defendants filed diversity disclosure statements on 1-26-26 and 1-29-26. However, the disclosures contain material omissions and fail to provide information necessary to determine citizenship of all parties. Specifically:

3. First, Defendant Upton & Hatfield's disclosure identifies only 10 partners, does not confirm when they became partners relative to the date this case was filed in state court or removed to federal court, and fails to address the firm's recent merger with another firm whose partners' citizenship is unidentified.

4. Second, the Donais Defendants fail to address Donais Law Offices' operations in Massachusetts or the citizenship status of Donais Law Offices when it operated across state lines.

5. Third, all disclosures fail to confirm that the identified citizens maintained their disclosed citizenship continuously from the date of filing in state court through date of removal and through the present date.

6. These omissions are material because diversity jurisdiction requires complete diversity between all plaintiffs and all defendants as of the date the action was filed in state court. Incomplete or ambiguous disclosure of party citizenship defeats jurisdiction.

## II. LEGAL STANDARD
### A. Overview

7.  Federal Rules of Civil Procedure 7.1(a)(2) require parties to disclose the citizenship of all parties and their agents or representatives. Local Rule 7.1.1 implements this requirement with specific mandates that parties file diversity disclosure statements identifying each party's citizenship and the citizenship of all owners, members, partners, or other parties to the disclosed entity.

8.  The burden of establishing diversity jurisdiction rests on the party asserting it. Here, Defendants are now asserting, for the first time, diversity jurisdiction and thus bear the burden of proving complete diversity.

9.  The party asserting federal jurisdiction must establish it with clarity and cannot rely on ambiguous or incomplete disclosures.

10. The rule further provides: "A party must file a supplemental statement promptly when any later event occurs that could affect the court's jurisdiction under § 1332(a)." Fed. R. Civ. P. 7.1(a)(2)(B).

11. The Advisory Committee Notes to the 2022 amendment goes further to explain:

    The prompt filing of a supplemental statement is important because the existence of diversity of citizenship is determined at the time of filing and may be challenged at any time. It is desirable to facilitate early determination of diversity questions to avoid the waste that results from belated discovery of a diversity-destroying citizenship.

    Fed. R. Civ. P. 7.1 advisory committee's note to 2022 amendment

### B. Citizenship of a Limited Liability Partnership

12. For diversity jurisdiction purposes, a limited liability partnership (LLP) is treated as a general partnership: the LLP is deemed a citizen of every state in which any of its partners is a citizen.

13. An LLC or LLP is a citizen of every state of which its members/partners are citizens. Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006); see also Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010) ("For purposes of diversity jurisdiction, we have held that the citizenship of an unincorporated association is determined by the citizenship of all of its members.").

14. Accordingly, to establish complete diversity, the party asserting diversity jurisdiction must identify the citizenship of every partner of an LLP defendant.

## C. Complete Diversity and Burden of Proof

15. Diversity jurisdiction under 28 U.S.C. § 1332(a) requires "complete diversity" between all plaintiffs and all defendants, that is, no plaintiff may be a citizen of the same state as any defendant.

16. The party asserting federal jurisdiction, here, the removing defendants, bears the burden of establishing that jurisdiction exists. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The party invoking federal jurisdiction bears the burden of establishing its existence. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010).

17. Because diversity must exist at time the action was filed (or, in removal cases, at the time the action was commenced in state court), defendants must disclose citizenship of all partners as of the time of filing.

## III. KEY ARGUMENT: SPECIFIC GAPS IN DEFENDANTS' DISCLOSURES
## A. UPTON & HATFIELD'S INCOMPLETE PARTNERSHIP DISCLOSURE
### i. Overview

18. The Upton & Hatfield disclosure identifies 10 named partners, all listed as New Hampshire citizens. However, the disclosure fails to address several material issues:

a. **Merger and new partners**. Upton & Hatfield recently underwent a merger with another firm. The disclosure does not identify the merged firm, does not list its partners, and does not state the citizenship of any new partners added through the merger. The lack of complete partner information is fatal to the diversity disclosure. When Plaintiffs asked the defendant's counsel about this, they remained silent. This is not acceptable, and the apparent evasion and/or omission raises serious questions that have not been answered.

b. **Partner status at time of filing and removal.** The disclosure does not state whether all 10 listed partners were partners of Upton & Hatfield at the time this case was filed in state court or at the time it was removed to federal court. Some listed partners may have joined the firm after those critical dates, while others may have departed. Citizenship at the time of filing and removal is what matters for diversity jurisdiction, not citizenship at the time of disclosure. The failure to establish continuity of partnership and citizenship is a material gap.

3

c. **Addition or departure of partners.** The disclosure does not state whether any listed partner joined or departed the firm since the time of filing or removal, or at any other time. If partners have left the firm, complete diversity may be lost as the successor partnership includes different members.

d. **Complete list requirement.** For a partnership or LLC, citizenship is determined by the citizenship of all partners or members. The partial list of partners is insufficient. The disclosure must list all partners, not just 10. If more than 10 partners exist, the disclosure is incomplete. If the new partners pose no problem to diversity, then why not simply and forthrightly address this issue?

19. See screenshot of one announcement of the merger below.

## Upton & Hatfield, LLP and Martin, Lord & Osman, P.A. to Expand Statewide Presence



NEWS PROVIDED BY
**Upton & Hatfield** ➡
Jan 22, 2026, 10:00 ET

SHARE THIS ARTICLE

CONCORD, N.H., Jan. 22, 2026 /PRNewswire/ -- Upton & Hatfield, LLP and Martin, Lord & Osman, P.A., two of New Hampshire's premier law firms, are proud to announce that the firms have joined to bring together two of New Hampshire's oldest firms, strengthen their statewide footprint, and expand their service capabilities in key practice areas, including real estate, business law, estate planning, probate administration, tax law, and alternative dispute resolution.

20. The disclosure as currently drafted thus does not satisfy Local Rule 7.1.1's requirements.

### ii. The Merger Is a "Later Event" That Triggers the Duty to File a Supplemental Disclosure Under Rule 7.1(a)(2)(B)

21. Federal Rule 7.1(a)(2)(B) explicitly requires a party to file a supplemental statement promptly when any later event occurs that could affect the court's jurisdiction under § 1332(a)." Fed. R. Civ. P. 7.1(a)(2)(B).

22. The addition of new partners changes the citizenship profile of the LLP and, accordingly, "could affect" whether complete diversity exists. If any of the three new partners is a citizen of Massachusetts, diversity jurisdiction is destroyed, because Plaintiffs are Massachusetts citizens.

23. Even if all new partners are New Hampshire citizens, the merger still qualifies as a "later event" because it could have affected jurisdiction, and the rule imposes a duty to disclose so that the Court can make an informed jurisdictional determination without delay.

24. As the Advisory Committee Notes emphasizes, "it is desirable to facilitate early determination of diversity questions to avoid the waste that results from belated discovery of a diversity-destroying citizenship." Fed. R. Civ. P. 7.1 advisory committee's note to 2022 amendment.

25. Defendants filed their disclosure statement but failed to disclose the citizenship of the new partners. This omission defeats the purpose of Rule 7.1(a)(2)(B).

26. Accordingly, Defendants must file a supplemental disclosure identifying citizenship of any new partners.

### iii. Disclosure Statement Fails to Establish Complete Diversity as of Date of State Court Filing

27. Diversity jurisdiction must exist at the time the action was filed in state court. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570-71 (2004) ("jurisdiction is determined at the time of filing").

28. To satisfy their burden of proof, Defendants must demonstrate that every partner of U&H was a New Hampshire citizen at the time of filing and removal. Yet the 1-29-26 disclosure does not confirm this.

29. The disclosure lists 10 partners but does not state:

    a. Whether all 10 partners were partners of U&H at the time of filing and removal.

    b. Whether any partner joined or departed U&H between time of filing and/or removal and present.

    c. Whether any listed partner's citizenship changed between time of filing and/or removal and present.

    d. Whether any partner not listed on the disclosure was a partner at the time of filing and/or removal.

30. Because the burden is on Defendants to establish jurisdiction, and because an LLP's citizenship is determined by all of its partners, the disclosure is insufficient. Defendants must file a supplemental disclosure confirming identity and citizenship of all U&H partners as of the time of complaint filing and/or removal, and through to the present.

### iv. Defendants Have Not Met Their Burden to Establish Complete Diversity

31. The party asserting federal jurisdiction bears the burden of proving that jurisdiction exists. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

32. For an LLP, this requires identifying the citizenship of every partner. Failure to do so is fatal to diversity jurisdiction. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).

33. Here, Defendants have disclosed the citizenship of only 10 partners, despite the fact that the firm has more partners as of the recent merger. This incomplete disclosure does not satisfy Defendants' burden.

34. Moreover, Defendants have not confirmed that the citizenship of the disclosed partners remained constant from the date of state court filing through the present. Without this confirmation, the Court cannot determine whether diversity jurisdiction existed at the time of filing.

35. If Defendants cannot or will not provide complete information demonstrating that complete diversity existed at the time of filing and/or removal, this case must be remanded to state court for lack of subject matter jurisdiction.

### v. Plaintiffs Sought Informal Clarification Before Filing This Motion

36. In accordance with Local Rule 7.1(c), Plaintiffs attempted to resolve this matter informally before filing this Motion. On 1-30-26, Plaintiffs sent the following email to counsel for the Hilliard Defendants:

> Subject: Disclosure Upton & Hatfield | Dan, Can you please let me know if the citizenship of the partners are the same when the case was first filed in state court? Also, are there new partners on the list of partners that are missing from your list? Andre

37. As of the filing of this Motion, Defendants have not responded to address this issue of the new partners. Plaintiffs should not be required to speculate about citizenship of defendants' partners or completeness of defendants' disclosures. The burden is on Defendants to provide complete/accurate information.

### B. DONAIS ENTITIES' INCOMPLETE DISCLOSURE

38. The Donais disclosure identifies Craig Donais, Mary Donais, and Donais Law Offices PLLC, all listed as New Hampshire citizens. However, material gaps exist:

   a. **Massachusetts operations and citizenship.** Donais Law Offices' operations in Massachusetts are referenced in prior filings and public documents but are not addressed in the disclosure. If Donais Law Offices operated or currently operates a Massachusetts office with Massachusetts personnel or members, this affects citizenship determination. An LLC that operates in multiple states may have

members from those states. The disclosure must clarify whether Donais Law Offices has or had members in Massachusetts at the time of filing.

b.  It should be noted that Donais Law Offices is registered in Massachusetts and Donais himself is licensed in Massachusetts, and is noted for carrying malpractice insurance in Massachusetts on the Mass BBO website. See screenshot showing Donais' Massachusetts coverage, bar number and admission date.

| | |
|---|---|
| **Admitted to the Mass. Bar**<br>Dec 18, 1996 | Covered |
| **Board of Bar Overseers Number**<br>634112 | |

c.  He first was licensed as an attorney in Massachusetts and began law practice in Massachusetts.

d.  He also has told the ADO of NH, during an attorney discipline investigation of him, based on an ethics complaint initiated by a Connecticut Superior Court judge, that he maintains a Massachusetts practice in Massachusetts.

e.  Further, he was born and raised in Massachusetts, has family in Massachusetts, lived in Massachusetts for most of his life growing up.  He went to high school in Massachusetts and went to undergrad college in Massachusetts and law school in Massachusetts.

f.  He also owns or has owned multiple businesses in Massachusetts to the present.  See screenshot below for example.

g.  Donais has gone through a lot of effort to hide his name from businesses and entities operating in Massachusetts, evidently including ownership of real property.

h.  In the screenshot below of a Radaris public records website, it shows that Donais went to high school in Attleboro, and it shows an address for Donais in Chelmsford, MA. It also shows businesses that he owns in Massachusetts.



7/23/23, 1:02 PM

Craig Donais Phone Number, Address, Age, Contact Info, Public Records ▷ Radaris

i. There are real questions about where Donais truly operates and is a citizen of.

j. Further, other documents show that he and his wife spend much of their time in Massachusetts including with family, recreational activities, and that he works in Massachusetts representing numerous clients in Massachusetts and appearing in Massachusetts courts.

k. Donais cannot defeat diversity by pointing to one property he owns in New Hampshire. Full disclosure is required, including at the time of filing and of removal. Otherwise, discovery must be granted. Plaintiffs have limited resources to conduct their own discovery, to ferret out further these

facts and where they lead but something seems opaque and incomplete regarding the full picture of what is going on with Donais and his operations.

l. **Principal place of business.** An LLC's citizenship is determined by the citizenship of its members and its principal place of business. The disclosure identifies the New Hampshire principal place of business but does not clarify whether there are other significant operations or members elsewhere.

m. **Manager and member identification**. The disclosure states that "Donais Law Offices PLLC is a professional limited liability company whose manager and member reside in New Hampshire." This statement is ambiguous. Does it mean there is only one manager and one member, both in New Hampshire? Or does it mean that among multiple managers and members, the ones identified reside in New Hampshire? Has there been only one member and manager for this entity? The disclosure fails to identify all managers and members, their residences, and their citizenship. Does he operate through any other entities such that they might need to be added to this case as a necessary party?

## IV. LEGAL CONSEQUENCES OF INCOMPLETE DISCLOSURE

39. Incomplete diversity disclosures raise serious jurisdictional questions. The party asserting federal jurisdiction must establish complete diversity with specificity. Vague or incomplete disclosures do not satisfy this burden. If disclosures are ambiguous or incomplete, the presumption favors lack of diversity and remand to state court. Otherwise, at a minimum, discovery must be granted.

40. Courts have held that when a party fails to provide complete diversity information in response to disclosure requirements, the failure constitutes inadequate proof of diversity jurisdiction. The moving party bears the burden and cannot meet that burden through partial or ambiguous disclosures.

## V. CONCLUSION

41. The burden of establishing diversity jurisdiction rests on the removing party. That burden requires complete clarity about party citizenship. Defendants' disclosures do not meet this burden. Supplemental disclosures are necessary before the Court can determine with certainty that complete diversity exists. Requiring supplemental disclosure serves judicial efficiency and ensures the foundational question of jurisdiction is resolved with clarity.

## VI. PLAINTIFFS' REQUESTED RELIEF

42. Plaintiffs request that the Court require Defendants to file supplemental disclosures providing complete, specific information about party citizenship. Once supplemental disclosures are filed, Plaintiffs will have opportunity to assess whether complete diversity actually exists or whether gaps in citizenship reveal lack of diversity.

43. Specifically, Plaintiffs request that Defendants clarify:

   a. For Upton & Hatfield:

       i. Identify all partners, including any added through merger

       ii. State the citizenship of each partner including those added through merger

       iii. Confirm the citizenship status of each partner at the time of state court filing, removal, and present

       iv. Identify the merged firm and its prior partners' citizenship

       v. Explain any changes in partnership composition since the critical dates

   b. For Donais entities:

       i. Identify all members and managers of Donais Law Offices at the time of original complaint filing and of removal

       ii. State citizenship of each member and manager at time of original complaint filing and removal

       iii. Clarify operations in Massachusetts and identify any Massachusetts-based members or managers at the time of original complaint filing and of removal

       iv. Confirm the principal place of business and explain any other significant business locations

       v. Identify when the Massachusetts operations began and whether they continue

44. Otherwise, remand should be granted or at least discovery should be granted. Further, plaintiffs' request a hearing on this matter as there are several fact intensive issues that are involved, and a complicated nexus of moving facts and legal issues that are interwoven with this issue. This is critical because the court's very subject matter jurisdiction is at stake and as the advisory committee of the federal court (2022) warned, "it is desirable to facilitate early determination of diversity questions to avoid the waste

that results from belated discovery of a diversity-destroying citizenship." Fed. R. Civ. P. 7.1 advisory committee's note to 2022 amendment.

45. The plaintiffs sought to confer with the defendants on the above but have not received answers to the questions/issues identified in this motion or in the Plaintiffs' 1-30-26 notice of intent. See **Exhibit 1.** The plaintiff's 1-30-26 notice of intent is also hereby attached and incorporated into this motion.

46. WHEREFORE, Plaintiffs respectfully request that this Court:

a. Require Defendants to file supplemental diversity disclosure statements forthwith providing the complete information specified in this motion;

b. In the alternative, deem Defendants' existing diversity disclosures insufficient to establish complete diversity jurisdiction;

c. Renew Plaintiffs' motion to remand to state court based on failure to establish complete diversity as required by 28 U.S.C. § 1332 and § 1441(b);

d. Grant Plaintiffs opportunity to file supplemental briefing on the remand motion once or if supplemental disclosures are received;

e. Remand this case to the New Hampshire Superior Court, Hillsborough County, for lack of subject matter jurisdiction;

f. Otherwise, Grant limited discovery on remand/diversity issues;

g. Also, Grant a hearing on this motion; and Grant such othe relief as the Court deems just and proper.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

/s/Natalie Anderson
Natalie Anderson

This is to certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor

/s/Natalie Anderson
Natalie Anderson

# EXHIBIT 1

UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

**PLAINTIFFS' NOTICE OF INTENT TO FILE RESPONSE TO DISCLOSURE STATEMENTS**

1. Plaintiffs hereby provide notice to this Court that they are seeking further information[1] from the defendants that appear to be missing from their disclosure statements and that they intend to file a response to said disclosure statements thereafter.

2. For example, it appears that Upton & Hatfield underwent a merger with another law firm and that no partner or owner of that merged law firm appears on their disclosure list.

3. Similarly, for the Donais defendants, they have not addressed the presence or operations of Donais Law Offices in Massachusetts, which would ostensibly go to the issue of dual citizenship.

4. There are other issues as well including the date of citizenship with respect to when the case was first filed in state court. This includes:

    a. The citizenship of all partners of Upton & Hatfield, LLP as of the date this action was first initially filed in state court including going back to 2022 and 2023;

    b. The citizenship of all current partners of Upton & Hatfield, LLP, including any new partners added through the firm's merger;

    c. Confirmation whether any partner's citizenship changed from 2022 or 2023 to the present date;

    d. Any other information required by Federal Rule of Civil Procedure 7.1(a)(2) and Local Rule 7.1.1 necessary to determine the citizenship of Upton & Hatfield, LLP for diversity jurisdiction purposes.

5. This omission of the merger information is material because diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. For an LLP such as U&H, citizenship is determined by the citizenship of *all* of its partners. The merger constitutes a "later event" under Federal Rule of

---

[1] See attached.

Civil Procedure 7.1(a)(2)(B) that "could affect the court's jurisdiction under § 1332(a)," thereby triggering an obligation to file supplemental disclosures.

6. Additionally, the disclosure fails to identify the citizenship of U&H's partners *at the time the action was originally filed in state court*, and at the time of removal, which is the critical date for determining whether diversity jurisdiction existed when Defendants removed this case to federal court.

7. Similarly, the disclosure fails to address whether any partners have left the firm since the time of filing in state court or at the time of removal.

8. U&H disclosure lists ten partners but does not state:

    a. Whether all ten partners were partners of U&H at the time of filing or removal;

    b. Whether any partner joined or departed U&H since time of filing or removal;

    c. Whether any listed partner's citizenship since time of filing or removal;

    d. Whether any partner not listed on the disclosure was a partner at the time of filing or removal;

9. Because the burden is on Defendants to establish jurisdiction, and because an LLP's citizenship is determined by all of its partners, the disclosure is insufficient. Defendants must file a supplemental disclosure confirming the identity and citizenship of all U&H partners as of time of filing or removal.

10. The party asserting federal jurisdiction bears the burden of proving that jurisdiction exists. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). For an LLP, this requires identifying the citizenship of every partner. Failure to do so is fatal to diversity jurisdiction. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).

11. Here, Defendants have disclosed the citizenship of only ten partners, despite the fact that the firm evidently has more partners than that. This incomplete disclosure does not satisfy Defendants' burden.

12. Moreover, Defendants have not confirmed that the citizenship of the disclosed partners remained constant from the date of state court filing through the present. Without this confirmation, the Court cannot determine whether diversity jurisdiction existed at the time of filing.

13. If Defendants cannot or will not provide complete information demonstrating that complete diversity existed at the time of filing or removal, this case must be remanded to state court for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c).

14. Similarly for Donais and Donais Law offices, they have not provided any information regarding the citizenship of each defendant and the partners or owners thereof at the time of filing or removal, or regarding possible dual citizenship in Massachusetts;

15. These issues have not been addressed which is relevant to remand.

16. Plaintiffs have reached out to the defendants seeking their response to the above and are awaiting their responses. See attached.

17. Once they respond, the Plaintiffs will or reserve the right to then file a response to the court with any further objections regarding the disclosure statements that go to the issue of remand discovery, along with any evidence pertaining to the diversity of citizenship issues.

18. Plaintiffs respectfully request that the Court take notice of these issues and the anticipated response filing.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor


/s/Natalie Anderson
Natalie Anderson

This is to certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor


/s/Natalie Anderson
Natalie Anderson

## Disclosure Upton & Hatfield

From: Andre Bisasor (quickquantum@aol.com)

To: dsonneborn@preti.com

Date: Friday, January 30, 2026 at 09:33 AM EST

Dan,

Can you please let me know if the citizenship of the partners are the same when the case was first filed in state court?

Also, are there new partners on the list of partners that are missing from your list?

Andre

# Disclosure | Donais Law Office

From:   Andre Bisasor (quickquantum@aol.com)

To:   lsmith@morrisonmahoney.com

Date:   Friday, January 30, 2026 at 09:36 AM EST

Linda:

Does Donais Law Office maintain presence or operations in MA?

Does Donais Law Office have an office or address in MA, and did Donais Law Office have an address or office in MA at the time of first filing of the case in state court?

Andre