UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

## [CORRECTED] [1]BISASOR'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

1. Plaintiff Andre Bisasor, proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 15(a)(2) and Paragraph 1(A) of the Case Management Order (Doc. 91) for leave to file the proposed Second Amended Complaint ("SAC"), attached hereto as Exhibit A.

## I. INTRODUCTION

2. This motion is timely filed within the deadline established by the CMO, which authorizes each plaintiff to file "a single motion to amend" no later than March 25, 2026. CMO ¶ 1(A). The proposed SAC is a complete, self-contained pleading that reproduces the entire complaint as amended, in compliance with D.N.H. LR 15.1(b).

3. Second, it adds new defendants including Mark Howard, State of New Hampshire, Beatriz Van Meek and Karen Gorham, in her individual capacity, for claims arising from race-based administrative retaliation under 42 U.S.C. §1983; and the State of New Hampshire, for claims arising from the systematic denial of disability accommodations in court proceedings under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

4. Third, it adds new federal claims under 42 U.S.C. § 1981 (race discrimination in contracting for legal services) and 42 U.S.C. § 1983 (race discrimination and retaliation by state actors acting in administrative

---

[1] On the evening of March 25, 2026, Bisasor initiated the electronic filing of his Motion for Leave to Amend the Complaint, with the proposed Second Amended Complaint attached as Exhibit, through the Court's CM/ECF system. The Case Management Order established March 25, 2026, as the deadline for filing. The filing process was initiated before midnight. However, due to delays in the PACER/CM/ECF authentication process (including complications with PACER's multi-factor authentication ("MFA") system) the filing did not fully register in the ECF system until 0:00 AM EDT on March 26, 2026. The ECF Notice of Electronic Filing for Doc. 103 confirms that the filing was "filed on 3/25/2026." Thus, the system itself recorded the filing date as March 25, the deadline. Bisasor contacted the Clerk office today and was told that the docket shows that it was filed on 3-25-26, so it is timely and he does not need to file any notice regarding this. Second, the authentication delays that affected Bisasor's filing are not isolated or idiosyncratic. Since PACER began its mandatory rollout of multi-factor authentication in mid-2025, the system has been plagued by well-documented failures that have affected filers across the federal judiciary. In the course of completing the filing after attempting to rectify the authentication delays which brought him to the brink of the deadline, Bisasor inadvertently attached the wrong version of the motion to amend the complaint, with missing signatures, etc. and the proposed Second Amended Complaint in Doc. 103. This was an earlier draft that was not intended for filing. Bisasor contacted the Clerk's office regarding an error regarding the filings, pursuant to D.N.H. Administrative Procedure 2.3(h). The clerk instructed him to re-file today and that the prior filing will be terminated, allowing for re-filing replacing the prior erroneous version. The corrected version of the proposed Second Amended Complaint and motion are here filed.

capacities), which provide independent federal question jurisdiction alongside the existing diversity jurisdiction under 28 U.S.C. § 1332.

5.  Fourth, it sharpens the factual allegations supporting each cause of action to satisfy the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), by alleging each claim element by element with specific supporting facts.

6.  This motion complies with D.N.H. LR 15.1(a). As required by LR 15.1(a)(i), the proposed SAC is attached as Exhibit A. **Plaintiffs request a hearing on this motion prior to ruling on any motion to dismiss.**

## II. LEGAL STANDARD

7.  The Supreme Court has construed this standard broadly and consistently in favor of amendment. In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court held that leave to amend should be granted in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."

8.  The *Foman* framework places the burden squarely on the party opposing amendment to demonstrate that one or more of these factors warrants denial. In the absence of such a showing, amendment is the rule, not the exception. The Supreme Court has admonished that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

9.  The First Circuit has faithfully applied *Foman*'s liberal standard and has identified a "strong presumption in favor of permitting amendment." Amendment is appropriate at any stage of the proceedings, including after the filing of a motion to dismiss. Indeed, amending in response to a motion to dismiss is among the most common and appropriate uses of Rule 15(a)(2)—the motion to dismiss identifies potential deficiencies, and the amended complaint addresses them. Delay alone, without a showing of prejudice, does not warrant denial of leave to amend. Nor does the mere fact that an amendment will require the opposing party to respond to new allegations, as "any amendment of a pleading necessarily changes the landscape of the case," and this is an expected consequence of the amendment process, not a basis for denial.

10. The standard for leave to amend must be applied in conjunction with the well-established principle of liberal construction of pro se pleadings. The Supreme Court has held that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This principle, first articulated in *Haines v. Kerner*, 404 U.S. 519, 520 (1972), means that a pro se litigant should "ordinarily be afforded an opportunity to amend" before dismissal. Where, as here, a pro se plaintiff has identified deficiencies in his complaint—through the adversary process of responding to motions to dismiss—and seeks leave to file an amended complaint that cures those deficiencies, the combined force of Rule 15(a)(2)'s liberal standard and the pro se liberal construction doctrine compels granting leave.

### III. GROUNDS FOR AMENDMENT
#### A. Note on The Length of The Second Amended Complaint (Proposed)

11. This is not a typical simple lawsuit with one defendant and one plaintiff.  This is a complex lawsuit with multiple defendants. There are multiple parties, and time and space are needed to lay out the claims against these multiple parties. Also, there are multiple claims alleged and some are alternate theories of claims. This case involves multiple parties and multiple claims with many issues having been consolidated into one complaint. Plaintiffs could have done separate complaints for the defendants. However, this second amended complaint (proposed) will allow for a consolidated and more streamlined complaint, and a more efficient process for resolving the issues articulated herein. Also, Plaintiffs have incorporated exhibits into the complaint which has added to the length. Further, this second amended complaint is sufficiently organized and clear so as to give the defendants adequate notice of the claims against them.

12. **Further, the original complaint and first amended complaint were written in single-spaced. Thereafter, the court required filings by plaintiffs to be double-spaced. Consequently, when plaintiffs recalled the double-space requirement, after working through revised the first amended complaint to become the revised second amended complaint, and converted it from single-space to double-space, it automatically doubled the pages. This creates an illusion of more pages than is actually the case. The court should keep this mind.**

13. Courts have favored resolution of all disputes between the parties in a single litigation.  This is "*to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters*." Carteret, supra, at 38, citing Southern Construction Co. v. Pickard, 371 U.S. 57, 60, 83 S.Ct. 108, 110,9 L.Ed.2d 31 (1962). The principles of judicial economy/efficiency embodied in the Rules of Procedure (whether state or federal), also support resolution of all issues in one proceeding rather than via multiple, protracted litigation.

14. It should also be noted that the page length of this second amended complaint has actually been reduced down from the page length of the complaint filed in state court on June 3, 2025 prior to removal, and down from the length of the firs amended complaint filed on July 29, 2025. This statement is provided to ward off any unwarranted superficial knee-jerk attacks on the length of this second amended complaint. Moreover, as pro se complaints are afforded more leniency and flexibility than those drafted by lawyers under US Supreme Court Precedent and First Circuit precedent.

### B. Curing Deficiencies Identified in the Pending Motions to Dismiss

15. The SAC also sharpens each cause of action to satisfy the *Iqbal/Twombly* plausibility standard. Rather than relying on cumulative narrative, each count now alleges, element by element, the specific facts that support the claim. For the defamation counts against the Donais Defendants, the SAC identifies each defamatory statement with specificity: the speaker (Craig Donais, or Craig and Mary Donais acting in concert), the audience (Crime-Line board members, family members, community members, the Attorneys Discipline Office), the date or approximate date of each statement, the content of each statement, the falsity of each statement, and the defamatory character of each statement. For the defamation per se counts, the SAC identifies the specific categories of per se defamation implicated—false accusations of criminal conduct and false statements imputing mental illness—which eliminate the need to plead special damages under New Hampshire law. *See McGranahan v. Dahar*, 119 N.H. 758, 763 (1979).

16. For the tortious interference claims, the SAC identifies the specific business or contractual relationships at issue, defendants' knowledge of those relationships, the specific acts constituting intentional and improper interference, and the causal connection between the interference and the damages suffered. For the

intentional infliction of emotional distress claims, the SAC sets forth the specific conduct alleged to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," rather than relying on the collective weight of a lengthy narrative. For the loss of consortium and negligent infliction of emotional distress claims, the SAC ties each derivative claim to the specific underlying torts from which it derives, ensuring that the derivative claims rise or fall with the well-pleaded underlying claims.

17. The restructuring also directly addresses the statute of limitations defense raised in both pending motions to dismiss. Both the Donais and Hilliard motions contend that certain claims are time-barred under RSA 508:4's three-year statute of limitations. The SAC includes a detailed procedural history section that sets forth, with specificity, the savings statute timeline under RSA 508:10. The SAC alleges that the original federal complaint was filed on June 18, 2022, within three years of the July 21, 2020 discovery date; that the action was voluntarily dismissed without prejudice on June 3, 2024; and that the action was refiled on June 3, 2025—exactly one year after dismissal, within the one-year savings period of RSA 508:10. The SAC also alleges the discovery rule tolling applicable to the 2019 defamatory conduct, which Bisasor did not discover until July 21, 2020, when it was disclosed through an Attorneys Discipline Office investigation. These allegations, accepted as true at the motion to dismiss stage, foreclose the statute of limitations defense on the face of the pleading. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) (statute of limitations defense may be resolved on a Rule 12(b)(6) motion only when the facts establishing the defense are clear on the face of the complaint).

18. The SAC further addresses the absolute privilege defense raised in the Donais motion. The FAC was criticized for failing to distinguish between statements made in judicial proceedings (potentially privileged) and statements made outside judicial proceedings (not privileged). The SAC carefully categorizes each alleged defamatory statement according to the context in which it was made. Statements made to family members, to Crime-Line board members, and to community members are clearly identified as non-judicial communications that fall outside the scope of any litigation privilege. The SAC also distinguishes the 2023 Advisory Committee hearing—which was not a judicial proceeding with adjudicatory authority, parties, or cross-examination—from true judicial proceedings. *See Supry v. Bolduc*, 112 N.H. 274, 276 (1972) (privilege

extends only to statements made in the course of judicial proceedings). This reorganization enables the Court to evaluate the privilege defense on a statement-by-statement basis, rather than treating it as a blanket defense to all defamation claims.

**C. Adding New Parties: Karen Gorham, Mark Howard, State of New Hampshire, Beatriz Van Meek**

19. The SAC adds Karen Gorham as a defendant in her individual capacity. Gorham served as Superior Court Administrator for the New Hampshire Judicial Branch from approximately 2015 through April 2024—a tenure of approximately nine years. In that role, she exercised direct administrative authority over all New Hampshire Superior Courts, including Hillsborough Superior Court North, the very court in which Judge Amy Messer presided over Bisasor's underlying state court proceeding (Case No. 216-2020-CV-00027) from January 2022 through at least March 2024. During that entire period, Gorham was the administrative superior responsible for the court's operations.

20. The claims against Gorham arise from her administrative conduct, not from any judicial function. In her capacity as Superior Court Administrator, Gorham personally banned Bisasor from contacting the clerk's office at Hillsborough Superior Court North. This ban was imposed after Bisasor raised legitimate concerns about the conduct of a clerk's office employee named Alma. Rather than addressing Bisasor's concerns through appropriate administrative channels, Gorham retaliated against him for raising them. The retaliation was race-based: Bisasor is African American, and Gorham's response to his complaints was disproportionate, punitive, and inconsistent with the treatment afforded to other litigants. Gorham further indicated, in communications with Bisasor, that she had discussed this matter with Judge Messer behind the scenes—a statement that reveals the interconnection between Gorham's administrative retaliation and the judicial conduct that forms the basis of the Messer claims in this action.

21. The SAC asserts claims against Gorham under 42 U.S.C. § 1983 for race discrimination and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment. Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of rights secured by the Constitution. Gorham acted under color of state law at all relevant times in her capacity as Superior Court Administrator. Her conduct was administrative, not judicial. She was not acting as a judge, nor was she

performing a function intimately associated with the judicial process. She was exercising ministerial and administrative authority over the court clerk's office. Accordingly, judicial immunity does not shield her from § 1983 liability. *See Forrester v. White*, 484 U.S. 219, 229–30 (1988) (judicial immunity does not extend to administrative acts, even when performed by judges).

22. Gorham was not named in the FAC because, at the time of filing, the full scope of her personal involvement in the administrative retaliation against Bisasor, and the racial motivation underlying her conduct, was not fully appreciated. Bisasor initially understood the events at the clerk's office as isolated incidents rather than as a pattern of race-based retaliation directed by Gorham personally in connection and in concert with the activities of Amy Messer. His understanding deepened through the course of this litigation and through information obtained in connection with *Bisasor v. NH Judicial Branch* (D.N.H.), a related action in which Gorham is also a named defendant. The connection between Gorham's administrative retaliation and the broader pattern of discriminatory treatment at issue in this case became clear only as the factual picture developed. Gorham's addition is not a tactical afterthought but a necessary step to bring before the Court the full scope of the discriminatory scheme.

23. The SAC also adds the State of New Hampshire as a defendant for claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." The ADA Title II claims arise from the State's systematic denial of disability accommodations in court proceedings involving Bisasor. Both in state court and in this Court, Bisasor has repeatedly requested reasonable accommodations related to his disability, and those requests have been repeatedly denied without the individualized assessment required by the ADA. The SAC pleads a comprehensive pattern of accommodation denials that, taken together, constitute a denial of meaningful access to judicial proceedings.

24. The State of New Hampshire's Eleventh Amendment sovereign immunity does not bar these claims. The Supreme Court has squarely held that Congress validly abrogated state sovereign immunity for ADA Title II claims involving access to the courts. In *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004), the Court held

that Title II's abrogation of sovereign immunity was a valid exercise of Congress's power under Section 5 of the Fourteenth Amendment, at least as applied to the fundamental right of access to courts. In *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Court reaffirmed this holding and set forth a framework for evaluating Title II sovereign immunity claims. Because the claims here concern the denial of accommodations necessary for meaningful access to judicial proceedings, they fall squarely within the category of claims for which sovereign immunity has been abrogated under *Lane* and *Georgia*.

25. The ADA Title II claims were not included in the FAC because, at the time of filing, the pattern of systematic accommodation denials had not fully crystallized. While individual instances of accommodation denials had occurred in the state court proceedings, the pattern became apparent only as additional denials accumulated in both the state and federal proceedings. The November 17, 2025 orders in this case—which denied multiple accommodation-related motions without individualized assessment—confirmed the existence of a systematic pattern. The SAC now pleads this pattern comprehensively, identifying specific requests, specific denials, and the absence of any legitimate justification for the State's conduct.

26. Mark Howard is the Chief Justice of the New Hampshire Superior Court and is sued in his official capacity for claims arising under Title II of the Americans with Disabilities Act and in his individual capacity for claims arising under 42 U.S.C. § 1983. Howard serves as the administrative head of all New Hampshire Superior Courts. Under 28 C.F.R. § 35.164, the head of a public entity bears ultimate responsibility for ensuring compliance with the ADA's accommodation requirements, including the obligation to make final decisions on accommodation requests and to ensure that subordinate officials do not engage in disability-based discrimination. Bisasor wrote directly to Howard on three occasions between September 23, 2025 and January 28, 2026, detailing Judge Messer's systematic denial of ADA accommodations, her violations of confidentiality protections for disability-related filings, her imposition of arbitrary and shifting criteria designed to frustrate legitimate accommodation requests, and her racially disparate treatment of Bisasor and Anderson as African American pro se litigants. In his September 24, 2025 letter, Bisasor formally invoked Howard's authority under 28 C.F.R. § 35.164 as the head of the public entity and requested that Howard intervene to halt the ongoing ADA violations, require an interactive accommodation process, review the

medical documentation that Messer had rejected, and take over the ADA review himself. In his January 28, 2026 communication, Bisasor alerted Howard to newly discovered evidence of undisclosed conflicts of interest involving Judge Messer's household and opposing counsel Russell Hilliard, as well as e-filing anomalies that raised questions about the integrity of the court record. Howard never responded to any of these communications. He took no action to investigate the detailed allegations of ADA violations by a judge under his direct administrative supervision. He did not refer the matter to an ADA coordinator, did not initiate any review, did not acknowledge receipt of the complaints, and did not take any steps to ensure that the court was meeting its obligations under Title II. Howard's complete failure to act occurred while Messer continued to deny ADA accommodations, dismissed approximately twenty pending motions on the pretextual ground of mootness, granted dismissal of Bisasor's case with prejudice, and ordered the case closed. Howard's inaction was not a judicial act; it was a failure to perform the administrative duties that federal regulation specifically assigns to the head of the public entity. His failure to act is actionable under Forrester v. White, 484 U.S. 219 (1988), which holds that administrative acts by judicial officials are not shielded by absolute judicial immunity, and under Tennessee v. Lane, 541 U.S. 509 (2004), which confirms that Title II of the ADA applies to state court systems and that Congress validly abrogated sovereign immunity for claims implicating the fundamental right of access to the courts.

27. The State of New Hampshire is named as a defendant solely for claims arising under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, which abrogates the State's Eleventh Amendment sovereign immunity with respect to disability discrimination in access to the courts. See United States v. Georgia, 546 U.S. 151 (2006); Tennessee v. Lane, 541 U.S. 509 (2004). The New Hampshire Hillsborough Superior Court North, is a program, service, or activity of the State of New Hampshire within the meaning of Title II.

28. Beatriz Van Meek is a Massachusetts resident who, on information and belief, engaged in a civil conspiracy with Craig Donais to injure and harm the plaintiff, as will be further outlined in this complaint. On information and belief, Beatriz Van Meek's address is 1208 Sheffield Way, Saugus, MA 01906-4430. She is as a necessary party, who is alleged to have been significantly involved in planning and perpetrating or aiding

the acts of Craig Donais to injure the plaintiff in Massachusetts. Beatriz Van Meek was first named as a defendant in the prior action, Bisasor v. Donais, Case No. 1:23-cv-00374-JL (D.N.H.). That action was originally commenced in Middlesex Superior Court in Massachusetts, removed by the defendants to the United States District Court for the District of Massachusetts on or about June 12, 2023, and subsequently transferred to the United States District Court for the District of New Hampshire on or about July 27, 2023. On March 13, 2024, the plaintiff filed a motion for leave to amend the complaint in that action, seeking, among other things, to add Beatriz Van Meek as an individual defendant based on allegations that she had engaged in a civil conspiracy with Craig Donais to injure and harm the plaintiff. The proposed Second Amended Complaint in that action set forth detailed allegations against Van Meek, including that she used her position at her place of employment to act in concert with Donais to the plaintiff's detriment, and that she was either terminated or reassigned when her involvement was discovered. That case was subsequently voluntarily dismissed on June 3, 2024, prior to the court ruling on the motion to amend. The claims against Beatriz Van Meek, including civil conspiracy and related allegations, are now reasserted in the present action.

**D. Adding Federal Claims Under 42 U.S.C. §§ 1981 and 1983**

29. The SAC adds claims under 42 U.S.C. § 1981 against defendants Craig Donais, Mary Donais, Donais Law Offices PLLC, Russell Hilliard, and Upton & Hatfield LLP. Section 1981 guarantees to all persons "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute provides a federal cause of action for intentional race discrimination in contracting, encompassing "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 applies to private actors and does not require state action.

30. The § 1981 claims are based on defendants' racially motivated refusal to provide, and interference with, legal services to Bisasor and Anderson, who are African American. As alleged in the SAC, defendant Craig Donais refused to represent Bisasor in a legal matter and thereafter engaged in a sustained campaign of defamation and retaliation against him. Defendant Russell Hilliard interfered with Bisasor's legal

relationships and undermined settlement negotiations. These acts of discrimination concerned the making and enforcement of contracts for legal services—a category of contracting activity squarely within § 1981's protection. The SAC alleges that race was a determinative factor in each defendant's conduct, supported by specific factual allegations of differential treatment, racially charged behavior, and a pattern of conduct consistent with racial animus.

31. The § 1981 claims provide independent federal question jurisdiction under 28 U.S.C. § 1331, supplementing the existing diversity jurisdiction under 28 U.S.C. § 1332. This dual jurisdictional basis strengthens the Court's authority over the entire action and forecloses any argument that the Court lacks subject matter jurisdiction should the diversity analysis prove contested.

32. For example, the SAC also adds § 1983 claims against Karen Gorham, as described above, for race discrimination and retaliation committed under color of state law in violation of the Equal Protection Clause. The § 1983 claims are analytically distinct from the state law claims asserted against the other defendants. They arise from Gorham's administrative conduct as Superior Court Administrator, involve a different legal standard (constitutional, not tort-based), and serve a different remedial purpose (vindication of constitutional rights, not compensation for state law torts). Their addition does not duplicate existing claims but rather fills a gap in the complaint's coverage.

### E. The Proposed Amendment Is Not Futile

33. An amendment is "futile" within the meaning of *Foman* only if "the proposed amended complaint fails to state a claim upon which relief can be granted." The standard for evaluating futility is "the same standard that would be used in a Rule 12(b)(6) motion to dismiss"—namely, whether the proposed pleading, accepted as true and viewed in the light most favorable to the plaintiff, states a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. The proposed SAC easily clears this threshold for every claim asserted.

34. The § 1981 claims are well-pleaded. The SAC alleges four elements with supporting facts: (1) Bisasor and Anderson are members of a racial minority (African American); (2) defendants Craig Donais and Russell Hilliard, and their respective entities, intentionally discriminated against them; (3) the discrimination concerned the making and enforcement of contracts for legal services; and (4) race was a determinative

factor in defendants' conduct. The SAC supports these elements with specific factual allegations, including differential treatment of Black clients, the racial dimension of the defamatory campaign, and the pattern of discriminatory behavior that pervades defendants' interactions with Plaintiffs. A § 1981 claim requires intentional discrimination, and the SAC pleads intent through specific facts from which discriminatory intent may be plausibly inferred.

35. The ADA Title II claims against the State of New Hampshire are well-pleaded. The SAC alleges that: (1) the State of New Hampshire is a public entity subject to ADA Title II; (2) Bisasor is a qualified individual with a disability within the meaning of the ADA; (3) the State denied him reasonable accommodations necessary for meaningful access to court proceedings; and (4) no legitimate justification existed for the denials. Each element is supported by specific factual allegations identifying particular accommodation requests, the dates on which they were made, the manner in which they were denied, and the resulting deprivation of access. The sovereign immunity defense, as discussed above, is foreclosed by *Tennessee v. Lane* and *United States v. Georgia.*

36. The § 1983 claims against Gorham are well-pleaded. The SAC alleges that Gorham acted under color of state law in her capacity as Superior Court Administrator; that she personally participated in race-based retaliation against Bisasor; that her conduct was administrative, not judicial, and therefore not shielded by judicial immunity; and that her actions deprived Bisasor of his right to equal protection of the laws under the Fourteenth Amendment. The SAC identifies specific acts attributable to Gorham personally—banning Bisasor from the clerk's office after he raised concerns about a clerk employee, retaliating against him based on his race, and coordinating with Judge Messer regarding the retaliation—that establish her direct personal involvement in the constitutional violations alleged.

37. The retained state law claims—defamation, defamation per se, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy, loss of consortium, tortious interference with business relations, Consumer Protection Act violations, and common-law race discrimination—are likewise well-pleaded in the SAC. As discussed above, the SAC identifies each element of each claim with specificity, ties each allegation to concrete facts, and eliminates

the structural deficiencies identified in the pending motions to dismiss. The defamation claims, in particular, now clearly distinguish between privileged and non-privileged statements and identify specific non-judicial communications—to family members, Crime-Line board members, and community members—that are beyond the reach of any absolute privilege. No reasonable basis exists for concluding that the proposed SAC, taken as a whole, fails to state a claim upon which relief can be granted.

38. The SAC also ensures that the claims against Mary Donais and against Donais Law Offices PLLC are independently well-pleaded. The pending Donais motion argues that Mary Donais is entitled to dismissal because the FAC does not adequately allege her personal tortious conduct. The SAC addresses this deficiency directly. It alleges specific statements made by Mary Donais to third parties—including family members, neighbors, and community members—that were independently defamatory and that were not made in any judicial proceeding. The SAC further alleges that Mary Donais participated in a civil conspiracy with Craig Donais to defame Bisasor and to inflict emotional distress upon him. As to Donais Law Offices PLLC, the SAC alleges that the entity is liable for the tortious conduct of its agents under respondeat superior and that the entity independently violated the New Hampshire Consumer Protection Act, RSA 358-A, through deceptive and unfair practices in the provision of legal services. Each of these claims is supported by specific factual allegations sufficient to state a plausible claim for relief.

39. It bears emphasis that the Hilliard Defendants' motion to dismiss (Doc. 61) did not address—and therefore effectively conceded the viability of—certain claims in the FAC, including the professional negligence and legal malpractice claim. The SAC retains this claim and sharpens it with specific factual allegations establishing the duty of care owed by Hilliard to Bisasor, the breach of that duty through specific acts of professional misconduct, and the causal connection between the breach and Bisasor's damages. The SAC also strengthens the civil conspiracy claims by alleging with greater specificity the agreement between Craig Donais and Mary Donais (and separately between Donais and Hilliard) to engage in the tortious conduct alleged, the specific overt acts taken in furtherance of the conspiracy, and the damages resulting therefrom. These enhancements further demonstrate that the proposed amendment is not futile but rather represents a meritorious, well-pleaded complaint.

### F. There Is No Undue Prejudice, No Undue Delay, and No Bad Faith

40. This motion is timely under the schedule established by this Court. The Case Management Order authorized each plaintiff to file "a single motion to amend" no later than March 25, 2026. CMO ¶ 1(A). This motion is filed within that deadline. There has been no undue delay. The interval between the FAC (filed July 29, 2025) and this motion is attributable to the ordinary course of litigation: the defendants filed motions to dismiss, Bisasor filed oppositions, and the parties have been litigating those motions. The SAC was developed in response to the arguments raised in the pending motions and within the timeframe established by the Court's own order. Amending a complaint in response to a motion to dismiss is not delay—it is the paradigmatic appropriate use of Rule 15(a)(2). Moreover, this is Bisasor's first motion to amend under the CMO, and the first time a proposed amendment has been presented to this Court since CMO was issued.

41. Defendants will suffer no undue prejudice from the proposed amendment. The case remains in its earliest stages. No discovery has been conducted. No depositions have been taken. No expert reports have been exchanged. No trial date has been set. No pretrial order has been entered. The only substantive proceedings to date have been the filing of motions to dismiss directed at the FAC. The proposed SAC will supersede the FAC, and defendants will have the full protections of the Federal Rules in responding to it: the existing defendants may answer or file new motions to dismiss within the time provided by Rule 12, and the new defendants—Gorham, Mark Howard and the State of New Hampshire—will be served and afforded the same rights. No defendant will be forced to respond to the SAC without adequate time and notice.

42. There is no bad faith or dilatory motive. The amendments are motivated entirely by the desire to present a complete, well-organized complaint that complies with the Federal Rules, addresses the deficiencies identified in the pending motions to dismiss, and brings all related claims and parties into a single action. The addition of new parties and federal claims reflects Bisasor's good-faith effort to ensure the complete and efficient presentation of his case. A pro se litigant's decision to add claims and parties as his understanding of the law develops is not evidence of bad faith; it is a natural consequence of self-representation and one of the reasons the liberal amendment standard exists.

43. The addition of Karen Gorham, Mark Howard and the State of New Hampshire does not inject entirely novel theories that would require substantial new discovery unrelated to the existing claims. The factual basis for the Gorham claims—her administrative retaliation at Hillsborough Superior Court North—arises from events that are already part of the factual universe of this case and that overlap significantly with the Messer claims. The evidence relevant to the Gorham claims will substantially overlap with the evidence relevant to the existing claims against Messer and the Donais Defendants. Similarly, the ADA Title II claims against the State arise from a pattern of conduct occurring in the very court proceedings that are at the center of this litigation. The amendment therefore does not threaten to delay or substantially complicate the litigation. To the contrary, resolving all claims arising from the same course of conduct in a single action promotes judicial economy and avoids the waste and inconsistency of piecemeal litigation.

44. The Court should also consider that the CMO itself anticipated and authorized amendment at this stage. Paragraph 1(A) of the CMO expressly provides for a "single motion to amend" by each plaintiff, to be filed by the March 25 deadline. The very existence of this provision reflects the Court's recognition that amendment was both expected and appropriate. It would be anomalous for the Court to authorize a motion to amend in its scheduling order and then deny that motion on grounds of delay or prejudice arising from the timing of the filing. The CMO's authorization of amendment is itself evidence that the Court determined, at the time the CMO was issued, that amendment at this stage would not prejudice the defendants or disrupt the orderly progress of the case.

45. For the foregoing reasons, Plaintiff Andre Bisasor respectfully requests that this Court grant leave to file the proposed Second Amended Complaint, attached hereto as Exhibit A. The proposed amendment is timely filed within the deadline established by the Case Management Order. It is made in good faith. It cures identified deficiencies in the FAC meeting the plausibility standard of *Iqbal* and *Twombly*. It adds well-pleaded claims under 42 U.S.C. §§ 1981 and 1983 and ADA Title II. It adds necessary parties—Karen Gorham, Mark Howard and the State of New Hampshire—whose involvement in the underlying facts makes their joinder essential to a complete resolution of this dispute. It causes no undue prejudice to any party, as well as Beatrice Van Meek. The liberal amendment standard of Rule 15(a)(2), the *Foman* framework,

the principle of liberal construction of pro se pleadings under *Erickson* and *Haines*, and the express

authorization of the CMO all support granting leave.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

Dated: March 25, 2026
Re-Filed/Corrected Date: March 26, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon all parties via the Court's ECF system.

/s/ Andre Bisasor
Andre Bisasor
