Filed
File Date: 10/8/2025 9:17 AM
Hillsborough Superior Court Northern District
E-Filed Document

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

# EXHIBITS

## FOR

# PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY CLAIM

## Filed for Plaintffs

## Dated: October 6, 2025

# PART 1

# EXHIBIT LIST/TABLE OF CONTENTS
# FOR MOTION FOR PARTIAL SUMMARY JUDGMENT ON
# BREACH OF FIDUCIARY DUTY

1. Exhibit 1 – Affidavit of Andre Bisasor [filed separately under seal].
2. Exhibit 2 – Affidavit of Natalie Anderson [filed separately under seal].
3. Exhibit 3 – Second Affidavit of Andre Bisasor. [filed separately under seal].
4. Exhibit 4 – Table of Comparison of Donais' Statements [filed separately under seal].
5. Exhibit 5 – Email from Hilton Executive to Anderson on 1-6-17 (citing Homewood already had legal counsel).
6. Exhibit 6 – Natalie Anderson Phone Records showing call from her to Robert Obrien on 1-5-17 (lasting 18mins).
7. Exhibit 7 – Phone Log of Robert Obrien Provided by Donais (purporting to show call from Obrien to Donais).
8. Exhibit 8 – Website Printout Confirming Robert Obrien's Phone Number (which is not the number in Ex. 7).
9. Exhibit 9 – Text Message from Robert Obrien to Natalie Anderson on 1-5-17 (with Legal Opinion from Donais).
10. Exhibit 10 – Letter/Affidavit of Robert Obrien dated 1-18-17 (obtained by Donais just before 1-18-17 hearing).
11. Exhibit 11 – Bisasor Email to Robert Obrien For ADO-Related Interview in 2020.
12. Exhibit 12 – Updated Statement of Robert Obrien on 9-20-20 (via ADO interview process).
13. Exhibit 13 – Statement of Keith Diaz on 9-18-20 (via ADO interview process) showing no call with Obrien).
14. Exhibit 14 – Bio of Keith Diaz showing discrimination law practice (proving the text in Ex. 9 didn't apply to him).
15. Exhibit 15 – Donais Internet Ad (Printed in 2017), .
16. Exhibit 16 – Ad of Landlord-Tenant Attorneys in NH showing Donais' Landlord-Tenant practice  in 2017.
17. Exhibit 17 – Screenshot of Bisasor Call to Donais on 1-6-17 with voicemail left lasting 1.36 minutes.
18. Exhibit 18 – Phone Records from Donais Showing Call Placed By Donais to Bisasor on 1-9-17.
19. Exhibit 19 – Single Email sent on 1-11-17 by Donais to Terrell & Akridge, initially produced without longer email chain, and Longer Email Chain with Akridge, Donais and Terrell dated 1-11-17.
20. Exhibit 20 – Affidavit of Dave Akridge dated 5-4-17.
21. Exhibit 21 – Appearance of Craig Donais in Nashua District Court on 1-13-17.
22. Exhibit 22 – Pro Hac Vice Motion filed in Nashua district court on 1-13-17.
23. Exhibit 23 – Email Exchange with Elliott Berry on 1-17-17 showing Berry's Legal Opionon on Donais' Conflict.
24. Exhibit 24 – Elliott Berry's Contemporaneous Notes From Call To Donais About Conflict of Interest on 1-17-17.
25. Exhibit 25 – Donais' 6-11-19 Email to Donais' Police Friend citimg "Potential Client" and client info. disclosure.
26. Exhibit 26 –  Email from Hilliard on 7-21-20 with police report showing Donais contacted the police about plaintiffs in June 2019|Excerpt of Police Report by Donais divulging Plaintiff's client information.
27. Exhibit 27 – Excerpt of Transcript of Statements of Donais to Police on 6-18-19.
28. Exhibit 28 –  Audio Evidence To Impeach Donais (To Be Submitted via In-Camera and To Be Filed Separately) [as referenced in Pending Motion to Submit Audio Evidence In-Camera].
29. Exhibit 29 – Email from ADO Deputy Counsel Mark Cornell about "Race Card" By Donais.
30. Exhibit 30 – Excerpt of Transcript of Hearing with Judge Christopher Barry-Smith citing credibility of "Jussie Smollett" analogy supporting harm from alleging racial hoax defamation.
31. Exhibit 31 –  Letter from Connecticut Bar Counsel via Connecticut Superior Court Judge Regarding Donais' Misconduct | Excerpt of Finding by Connecticut Judge Regarding Donais' Misconduct.
32. Exhibit 32 – Donais' Withdrawal of Connecticut Law License.
33. Exhibit 33 – Case of Fierro v. Gallucci (2007) showing legal standard for conflict of interest.
34. Exhibit 34 – Transcript of Nashua District Court Hearing with Judge Paul Moore on 1-18-17.
35. Exhibit 35 –  Relevant  Excerpt of Transcript of 4-27-17 preliminary injunction hearing in superior court with Karl Terrell's testimony regarding the conflict issue.

# Exhibit 1

## [Filed Separately Under Seal]

# Exhibit 2

## [Filed Separately Under Seal]

# Exhibit 3

## [Filed Separately Under Seal]

# Exhibit 4

## [Filed Separately Under Seal]

# Exhibit 5

# EXHIBIT 10

## JANUARY 6, 2017 EMAIL FROM HILTON HOTELS' EXECUTIVE COMMENTING ON INVOLVEMENT OF HOMEWOOD SUITES NASHUA LEGAL COUNSEL

# RE: URGENT REQUEST FOR INDIVIDUAL INTERVENTION BY SENIOR MANAGEMENT EXECUTIVE | RACE DISCRIMINATION, RETALIATION, UNLAWFUL REMOVAL, UNFAIR/DECEPTIVE ACTS, ETC.

Stephen Arnold <Stephen.Arnold@Hilton.com>

Fri 1/6/2017 8:29 AM

To Liberty_6 <Liberty_6@msn.com>;

Cc Adam Robitaille <Adam.Robitaille@Hilton.com>; Jayme Putnam <Jayme.Putnam@Hilton.com>;

Dear Ms. Anderson,

I am responding on behalf of the Hilton Reservations and Customer Care and Executive Escalations teams as I have had the chance to review numerous communications you have sent to various corporate executives and representatives, including myself, describing your account of recent incidences that have led to the request of the hotel management team to request your vacate of the Homewood Suites of Nashua New Hampshire property.

Hilton would like to stress that the Homewood Suites of Nashua New Hampshire is independently owned and operated by Great American Hotel Group under a Franchise License Agreement with a subsidiary of Hilton. Given that American Hotel Group is responsible for the day-to-day operations of the property, and that this matter involves allegations that could lead to a potential legal claim between the independently owned and operated hotel and yourself, and that Hilton has been assured that hotel  management and their legal counsel are actively involved in the handling of this matter, it remains appropriate for you to address your concerns directly with the hotel management company.

For this reason we also kindly request that you refrain from issuing further communications directed at our corporate executives and Board of Directors as we trust you will be able to work with management team at the property to resolve this dispute amicably and with the upmost urgency.

Sincerely,

Stephen Arnold
Vice President, Service & Quality Assurance
Hilton

From: Liberty_6 [mailto:Liberty_6@msn.com]
Sent: Friday, January 06, 2017 6:38 AM
To: Stephen Arnold <Stephen.Arnold@hilton.com>
Cc: Adam Robitaille <Adam.Robitaille@hilton.com>; Jayme Putnam <Jayme.Putnam@hilton.com>
Subject: URGENT REQUEST FOR INDIVIDUAL INTERVENTION BY SENIOR MANAGEMENT EXECUTIVE | RACE DISCRIMINATION, RETALIATION, UNLAWFUL REMOVAL, UNFAIR/DECEPTIVE ACTS, ETC.

Dear Stephen Arnold:

I am writing to you individually and personally.

I am asking you to intervene to prevent a Hilton property general manager at Homewood Suites Nashua (Adam Robitaille) from retaliating against me and my spouse for raising concerns or complaint about the racial

# Exhibit 6

| Statement for | Account number | Bill close date |
|---|---|---|
| NATALIE ANDERSON | | Jan 20, 2017 |

**Continued... (617) 710-7093, NATALIE**

T··Mobile··

## Talk

The date and time corresponds to the local time where the mobile was located.

| Date and time | Number | Description | Type | Min | Amount |
|---|---|---|---|---|---|
| 01/05/17, 5:16 PM | (603) 459-9965 | to NASHUA/NH | · | 18 | |

Type: (A) Call Waiting (B) Call Forward (C) Conference Call (D) Duplicate (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls (I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (M) AnyMobile (R) Roaming (T) T-Mobile Number (V) myFaves Call (W) Wi-Fi Call (X) T-Mobile @Home Call (Y) Subscription (Z) One-time Purchase

# Exhibit 7

## EXHIBIT 6

## PHONE LOG OF ROBERT OBRIEN SHOWING CALL PLACED TO ATTORNEY ROBERT OBRIEN ON JANUARY 5, 2017 LASTING 5MINUTES (SUBMITTED BY THE DEFENDANTS TO THIS COURT ON MARCH 10, 2017).

Mar 16 17 12:06p

p.9



# Robert L. O'Brien

O'Brien Law

message        call                          mail

January 5, 2017                      * not ATTY Donais

5:37 PM    (Incoming Call) ⟵——————→  5 minutes

phone

(603) 250-0822

work fax

(877) 349-0064

work

(603) 459-9965

email

# Exhibit 8



## BBB

Start With Trust ®

**This Business Is Not BBB Accredited**

# Robert O'Brien Attorney

### Business Information

(603) 459-9965

P.O Box 357
New Boston, NH 03070-0357

BBB File Opened: 08/03/2011

### Contact Information

- Principal: Robert O'Brien, Attorney at Law

### Business Category

- Attorneys & Lawyers - Bankruptcy

## BBB Reason for Ratings

BBB rating is based on 13 factors: **Get the details about the factors considered. (https://www.bbb.org/council/overview-of-bbb-grade/)**

Based on BBB files, this business has a BBB Rating of No Rating. The reason is as follows:
This business is not currently rated. BBB does not have sufficient information to issue a rating for this business.

### BBB Reports On:

#### Licensing

Licensing information is provided in the BBB Business Profiles to inform the public about industries that may require professional licensing, bonding, or registration. Better Business Bureau encourages you to check with the appropriate agency to be certain any requirements are currently being met.

#### Advertising Review

BBB promotes truth in advertising by contacting advertisers whose claims conflict with the BBB Code of Advertising. These claims come to our attention from our internal review of advertising, consumer complaints and competitor challenges. BBB asks advertisers to substantiate their claims, change ads to make offers more clear to consumers, and remove misleading or deceptive statements.

#### Government Actions

BBB reports on known significant government actions involving the business's marketplace conduct.

#### Out of Business

BBB reports on a company that is out of business for three years from the date the company closes its doors or ceases to do business.

#### Misuse of Better Business Bureau Name/Logo

BBB reports on unauthorized use of the Better Business Bureau's name and/or logo for as long as the business continues to use it in any advertising, or for one year after the business ceases any repeated unauthorized uses.

#### Bankruptcy

BBB reports on a business's bankruptcy as long as the business remains in bankruptcy.

#### Mail Returned

BBB reports when mail sent to the business was returned by the Postal Service.

## BBB Rating Scorecard

# Exhibit 9

+16034599965 ▼

Here is contact info for attorney who handles discrimination cases Bussiere & Bussiere, P.A., please call 603 622 1002 emilejr@bussierelaw.com

Another attorney in that form is Keith Diaz. I spoke with Attorney Donais. He said you have a great contract case for the overcharges. He said the innkeeper rules would likely apply to your situation. Which allows for "no cause" evictions. He would not opine on the discrimination claims, outside his experience.



+16034599965

outside his experience.

Please see section 353:3c of TITLE XXXI TRADE AND COMMERCE CHAPTER 353 HOTELS, TOURIST CABINS, ETC.

For the purpose of this section, the term "rental unit" shall include residential property rented for one month or less

I still belief you have a right to stay under your contract Hotel would be required to follow the termination clause in the agreement, so review it. Bussierre should able to help further.

OK. Thanks much for the info I'm not sure

# Exhibit 10

**EXHIBIT 5**

**AFFIDAVIT OF ROBERT OBRIEN SUBMITTED TO THE DISTRICT COURT ON JANUARY 18, 2017 BY ATTORNY CRAIG DONAIS**

Mar 16 17 12:06p

# Robert L. O'Brien

Attorney at Law
P.O. Box 357, New Boston NH 03070-0357
603-459-9965, 603-250-0822, RobOBJD@gmail.com

January 18, 2017

To Whom It May Concern:

On January 5, 2017 I received a call from a person claiming to be the victim of discrimination, billing fraud and wrongful threatened eviction (my words). I explained that I do not handle the type of landlord/tenant issue that she was describing. I told her that I would try to contact Attorney Craig Donais, who I believed handled a broader range of state law issues than I. I reached out to Attorney Donais via email and received an automated reply that he would be unavailable. I called his cellphone and asked if he would be interested in a new matter, using the same words listed above. No names or specific circumstances were discussed with Attorney Donais. He declined my offer to share any other information I had on the matter. He indicated that he could not help because he was on the road to something else the next day.

Between the email and the phone call, I had provided the caller with Attorney Donais' contact information, and suggested that she try reaching him. After my phone call with Attorney Donais, I texted the caller indicating that Donais was out, but that Attorney Emile Boussier might be interested, and provided his website and contact information.

This is all I know about the matter from memory. I did not start a file and do not have any notes. All statements contained herein are true and correct to the best of my knowledge and belief, under the penalty of perjury.

Robert L. O'Brien NH #15358
1/18/2017

# Exhibit 11

## Follow-up on ADO Matter

From:   Andre Bisasor (quickquantum@aol.com)

To:      wearelaw@me.com

Cc:      bmoushegian@nhattyreg.org

Date:   Thursday, September 17, 2020 at 11:59 AM EDT

Mr. Obrien,

I am the representative for Natalie Anderson, a grievant in a matter currently before the ADO. I understand that Mark Cornell of the ADO recently interviewed you on this matter. Mr. Cornell indicated that I am permitted, as the grievant's representative, to follow-up with you to ask few more questions for clarification.

I would like to setup a call with you today or tomorrow. I expect the call to be no more than one hour at most but more likely to be about 30 minutes or so.

Could you please let me know your availability?

Thanks much,

Andre Bisasor

# Exhibit 12

Re: Follow-up/Summary of Call Relating to Pending ADO Matter

# Re: Follow-up/Summary of Call Relating to Pending ADO Matter

From: Rob O'Brien (robobjd@gmail.com)

To: quickquantum@aol.com

Date: Sunday, September 20, 2020 at 09:32 PM EDT

Just skimming the text, it appears complete to me.

Robert L. O'Brien
Attorney at Law
P.O. Box 357
New Boston NH 03070-0357
Direct ph/txt: 603-741-0411
RobOBJD@gmail.com

> On Sun, Sep 20, 2020 at 9:15 PM Andre Bisasor <quickquantum@aol.com> wrote:
>
> Mr. Obrien,
>
> Thanks for speaking with me on Friday. As discussed, I am sending this email as a quick summary of what we talked about on our call on Friday September 18, 2020.
>
> 1. You recall having about a 20 minute call with Ms. Anderson on 1-5-17 wherein she gave details about her situation involving the hotel including landlord/tenant, breach of contract, overcharges and discrimination, etc. You also recall that, at least, she also gave you her name, by which you identified her phone number that you sent text messages to, after speaking to Mr. Donais (as you also told Mark Cornell of the ADO).
>
> 2. You also recall that you only had one phone call with Ms. Anderson on 1-5-17, though you later sent text messages to Ms. Anderson about an hour or so later on the same date. You did not speak to or contact or communicate, whether by phone or text or in-person, with Ms. Anderson on any other date subsequent to 1-5-17.
>
> 3. You also recall that you urgently tried to reach out to Mr. Donais given the urgency of the issues Ms. Anderson relayed to you on the approx. 20 minute call that you had with her, on 1-5-17.
>
> 4. You recall that Mr. Donais called you back on 1-5-17 (after you tried calling him) because your phone log shows an incoming call to your phone line on 1-5-17.
>
> 5. You reviewed the text messages from your phone number sent on 1-5-17 wherein you described what Attorney Donais said to you on that date about the matters that you presented to him, and you confirmed that you did send that text message to Ms. Anderson on 1-5-17.
>
> 6. You indicated that you gave Mr. Donais enough facts about the matter that allowed him to give you the opinion he rendered to you, as you stated, in your text messages of 1-5-17.
>
> 7. You indicated that, in addition to what said Donais said about the facts of the case in part 1 of the text messages, that Mr. Donais also told you about the RSA 353 statute (i.e. the innkeeper

statute) that appeared in part 2 of your text messages to Ms. Anderson, and this comports with the fact that you did not even know about that statute prior to speaking to Mr. Donais on 1-5-17.

8. You stand by your text message sent to Ms. Anderson on 1-5-17 and you confirm that it is an accurate contemporaneous representation/depiction of what you discussed with Attorney Donais and what he said to you about the facts of the matter that you presented to him on 1-5-17.

9. You did not contact, call, or email Attorney Keith Diaz on 1-5-17 or at any other time about a potential client (whether relating to a Ms. Natalie Anderson or anyone else) involving a landlord tenant matter, and/or a hotel matter with billing overcharges or a breach of contract issue and/or a discrimination matter related thereto. Hence, the text messages you sent to Ms. Anderson on 1-5-17 could not have confused what Mr. Donais said to you, with anything having to do with Mr. Diaz.

Please confirm that this about sums up the major points discussed and that it is accurate. NB: Could you please respond as soon as you receive this and, if possible, this evening or early Monday morning (September 21) by 8am if possible?

Thanks,

Andre Bisasor

# Exhibit 13

Case 1:25-cv-00251-SE-AJ    Document 104-3    Filed 03/26/26    Page 29 of 93

## RE: Brief Call Regarding ADO Matter

From:   Keith Diaz (keith@bussierelaw.com)

To:      quickquantum@aol.com

Date:   Friday, September 18, 2020 at 03:10 PM EDT

Hi Andre –

Yes, I believe your email below is accurate: I do not recall a discussion in 2017 between me and Attorney O'Brien concerning a landlord tenant matter, breach of contract, and/or discrimination claim. Moreover, Attorney O'Brien has never called me for the purpose of obtaining my legal advice on any matter. I have never provided Attorney O'Brien legal advice.

I can confirm that Attorney O'Brien sent me two emails in February and April this year. The emails were unexpected case referrals. I did nothing with the referrals.

The bankruptcy agreement was reached in the beginning of 2014, not 2015. Attorney O'Brien's involvement was very limited since the Trustee took the lead in the case. Also, I hired Attorney Ed Ford to represent my clients in the bankruptcy court. I had no direct involvement as counsel in the bankruptcy court. Attorney O'Brien would have addressed any legal issues in that case with Attorney Ford, not me.

I did not receive from or send to Attorney O'Brien email or written correspondence in 2017.

Also, with regard to discrimination claims, my practice is limited to <u>employment</u> litigation. I do not and have never handled a housing-related discrimination claim.

Regards,

Keith

Keith F. Diaz, Esq.
Bussiere & Bussiere, P.A.
15 North Street
Manchester NH 03104

ph: 603.622.1002
fx: 603.668.6892
www.bussierelaw.com
keith@bussierelaw.com

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail for the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying

of this e-mail is strictly prohibited. If you believe you have received this e-mail in error, please immediately notify Bussiere & Bussiere, P.A. by telephone at 603-622-1002.

---

**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Friday, September 18, 2020 2:19 PM
**To:** keith@bussierelaw.com
**Subject:** Re: Brief Call Regarding ADO Matter

Hi Keith,

Thanks for speaking with me today. As discussed, I am sending this email as a quick summary of what we talked about on our call today.

1. You do not recall or remember (and you do not believe you have ever had) any phone call from or with Attorney Robert L. Obrien where he called you to discuss a case for a potential client (whether relating to a Ms. Natalie Anderson or anyone else) involving a landlord tenant matter, and/or a hotel matter with billing overcharges or a breach of contract issue and/or a discrimination matter related thereto, whether on the date of 1-5-17 or at any other time. And you definitely did not provide any opinion and advice on such matters to Mr. Obrien at any time.

2. The only time you ever received an email (not a phone call) from him regarding a potential client was (out of the blue) starting this year in 2020 (February 2020 and April 2020), and for which you did not respond to or speak to Mr. Obrien about. These two emails were only referral emails. You do not or did not otherwise get any referrals from him at any time prior to that, that you can recall.

3. Prior to that your only other interaction with him was in or around 2014 where he was opposing counsel on a matter that went to bankruptcy court and for which a settlement was obtained in or around 2015). Outside of that litigation, you had no other interaction, discussion or phone call with him that you can recall or remember.

4. Moreover, you confirmed you received no contact or communication from Mr. Obrien about any potential client case in 2017.

Please confirm that this about sums it up and is accurate.

Thanks

Andre

-----Original Message-----
From: Andre Bisasor <quickquantum@aol.com>
To: keith@bussierelaw.com <keith@bussierelaw.com>
Sent: Thu, Sep 17, 2020 1:35 pm
Subject: Re: Brief Call Regarding ADO Matter

P.S. I can copy Brian Moushegian, general counsel, at the ADO to confirm that I am the representative for the grievant in the matter I mentioned, if you like.

-----Original Message-----
From: Andre Bisasor <quickquantum@aol.com>
To: keith@bussierelaw.com <keith@bussierelaw.com>

Sent: Thu, Sep 17, 2020 1:27 pm
Subject: Re: Brief Call Regarding ADO Matter

Hi Keith,

1. I am looking for Keith Diaz, not Keith Dias.
2. I am the attorney-in-fact representative for Ms. Anderson in the ADO matter.

Andre

-----Original Message-----
From: Keith Diaz <keith@bussierelaw.com>
To: Andre Bisasor <quickquantum@aol.com>
Sent: Thu, Sep 17, 2020 1:24 pm
Subject: RE: Brief Call Regarding ADO Matter

Hi Andre -

As a preliminary matter, are you looking for Keith Diaz or Keith Dias?   More often than not,
people confuse me for the latter.  Secondly, are you an attorney representative?

-Keith


KEITH F. DIAZ, ESQ.
BUSSIERE & BUSSIERE, P.A.
15 NORTH STREET
MANCHESTER NH 03104

PH: 603.622.1002
FX: 603.668.6892
www.bussierelaw.com
keith@bussierelaw.com

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail for the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you believe you have received this e-mail in error, please immediately notify Bussiere & Bussiere, P.A. by telephone at 603-622-1002.


**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Thursday, September 17, 2020 12:12 PM
**To:** keith@bussierelaw.com
**Subject:** Brief Call Regarding ADO Matter

Mr. Diaz,

I am the representative for a grievant in a matter currently before the Attorney Discipline Office (ADO). I understand that I am permitted, as the grievant's representative, to ask you a few questions as I believe you may be a tangential witness i.e. you are not the target or subject of this ADO matter. It involves another attorney. My brief questions relate to whether you recall having a phone call with a certain attorney during a specific time period, etc. It is a very simple matter and would likely yield simple yes or no answers, for the most part. Thus, I would like to setup a call with you today or tomorrow. I expect the call to be no more than about 15 minutes.

Could you please let me know your availability?

Thanks much,

Andre Bisasor

# Exhibit 14

Keith F. Diaz | Bussiere and Bussiere - New Hampshire Personal Injury Attorneys

**603-622-1002**

# BUSSIERE & BUSSIERE
### P.A.

PRACTICE AREAS    ATTORNEYS    ABOUT    CONTACT

## KEITH F. DIAZ

Keith F. Diaz – obtained his Juris Doctor from the Franklin Pierce Law Center in Concord, New Hampshire in 2003 and is licensed to practice law in all state and federal courts in New Hampshire. He started his practice as an Assistant County Attorney in Rockingham County prosecuting felony and misdemeanor crimes in the county superior and district courts. In 2005, he joined Bussiere & Bussiere, P.A. and has since grown his litigation and trial practice to include criminal defense, personal injury, employment law and general practice litigation. Outside of the office, Attorney Diaz is an active member of the New Hampshire Bar's Public Protection Fund Committee, a representative of the federally sponsored United Network of Organ Sharing (UNOS) Patient Affairs Committee and involved with the New Boston Climate and Energy Committee.

**Click to email Keith Diaz**

## GET A FREE INITIAL CONSULTATION TODAY!

**YOUR NAME** *

**EMAIL** *

**PHONE** *

**How can we help you?**

**College**:

**Admitted**: Suffolk Law School, J.D.

**Practice Area**: Personal Injury; Animal Attacks; Automobile Accidents and Injuries; Automobile Negligence; Bicycle Accidents; Boating Accidents; Bodily Injury; Brain Injury; Catastrophic Injury; Commercial Vehicle Liability; Cumulative Trauma; Dog Bites; Head Injury; Motor Vehicle Accidents and Injuries; Motorcycle Accidents; Pedestrian Injuries; Plaintiffs Personal Injury; Psychological Injury; Severe Burns; Slip and Fall; Spinal Injury; Third Party Wrongful Death; Tourist Injuries; Wrongful Death; Whiplash; Traumatic Brain Injury; Probate Administration; Probate Litigation; Probate Taxation; Commercial Collections; Secured Collections; Unsecured Collections; Retail Collections; Commercial Real Estate; Commercial Conveyancing; Commercial Real Estate Acquisitions; Commercial Real Estate Contracts; Commercial Real Estate Development; Commercial Real Estate Litigation; Commercial Real Estate Sales; Residential Real Estate; Adverse Possession; Boundary Disputes; Condominium Development; Easements; Historic Conservation Easements; Land Acquisitions; Land Sales; Land Trusts; Mobile Home Law; Quiet Title; Real Estate Brokers and Agents Liability; Real Estate Brokers Malpractice; Real Estate Contracts; Real Estate Development; Real Estate Investment; Real Estate Litigation; Real Estate Sales; Real Estate Tax Liens; Real Property Development; Right of Way Easements; Employment Litigation; Age Discrimination in Employment; Confidentiality Agreements; Covenants Not To Compete; Disability Dis

**Membership**: Manchester and New Hampshire Bar Associations.

4. **Keith F. Diaz**

**Title**: Attorney

**Law School**: University of New Hampshire School of Law, formerly Franklin Pierce Law Center, J.D., 2003

**College**: St. Anslem College, B.A., 1997

**Admitted**: University of New Hampshire School of Law, formerly Franklin Pierce Law Center, J.D., 2003

**Practice Area**: Personal Injury; Accidents; Automobile Accidents and Injuries; Automobile Negligence; Bodily Injury; Dog Bites; Head Injury; Motor Vehicle Accidents and Injuries; Motorcycle Accidents; Pedestrian Injuries; Plaintiffs Personal Injury; Personal Injury Arbitration; Psychological Injury; Slip and Fall; Spinal Injury; Whiplash; Wrongful Death; Traumatic Brain Injury; Criminal Law; Assault and Battery; Burglary; Criminal Conspiracy; Criminal Defense; Drivers License Suspension; Driving While Intoxicated; DUI/DWI; Expungements; Extradition; Felonies; Forgery; Hit and Run; Malicious Prosecution; Misdemeanors; Murder; Parole and Probation; Post-Conviction Remedies; Search and Seizure; Sexual Assault; Shoplifting; Stalking; Theft; Traffic Violations; Vehicular Homicide; Weapons Charges; Landlord and Tenant Law; Evictions; Commercial Landlord and Tenant Law; Employment Law; Age Discrimination in Employment; Disability Discrimination; Employee Rights; Employer Liability; Employment at Will; Employment Breach of Contract; Employment Civil Rights; Employment Defense; Employment Disability  Discrimination; Employment Discrimination; Employment Litigation; Employment Termination; Harassment; Title VII Discrimination; Sexual Harassment; Wrongful Termination; Uniform Commercial Code; Commercial Litigation; Sale of Goods; Libel, Slander and Defamation; Defamation; Libel and Slander; Libel Defense; Mechanics Liens; Construction Claims; Construction Defects; Construction Liability; Const

**Membership**: New Hampshire Bar Association.

# Exhibit 15

**JUSTIA** Lawyers

Find a Lawyer    Ask a Lawyer    Research the Law    Law Schools    Laws & Regs    Newsletters    Legal Marketing

Justia › Lawyer Directory › New Hampshire › Hillsborough County › Manchester › Craig Donais



# Craig Donais

- 20 years experience
- Business Law, Collections, Estate Planning...
- Connecticut, Maine, Massachusetts, New Hampshire

## ⚙ Badges

✓ ⟩

## ⚖ Practice Areas

Business Law

SPONSORED LISTINGS

PREMIUM

### Robert V. McKenney

Amherst, NH
**(603) 672-5200**

🌐 view website    ✉ email lawyer    👤 view profile

### Maureen A. Howard

Portsmouth, NH
**(603) 431-2324**

✉ email lawyer    👤 view profile

### Robert S. Stephen

Manchester, NH
**(877) 663-1007**

# Exhibit 16



# Exhibit 17

# Exhibit 18

# EXHIBIT 4

## PHONE RECORDS OF ATTORNEY CRAIG DONAIS SHOWING THAT ATTORNEY DONAIS PLACED A PHONECALL TO MR. BISASOR ON JANUARY 9, 2017.

Mar 16 17 12:07p                                                                                           p.13

1/17/2017                                    Welcome to Gate

Home

Your charges   Voice Message(s): 8 new message(s)   Recorded Calls    Cell Logs

Sent Calls   Received Calls

| | | |
|---|---|---|
| 2017-01-11 09:00 | | |
| 2017-01-10 15:22 | | 0'00" |
| 2017-01-10 14:58 | | 0'00" |
| 2017-01-10 13:59 | | 0'00" |
| 2017-01-10 13:02 | | 0'00" |
| 2017-01-10 12:56 | | 0'00" |
| 2017-01-10 12:56 | | 0'00" |
| 2017-01-10 12:51 | | 0'00" |
| 2017-01-10 12:03 | | 0'00" |
| 2017-01-10 11:24 | | 0'00" |
| 2017-01-10 11:16 | | 0'00" |
| 2017-01-10 11:09 | | 0'00" |
| 2017-01-09 16:05 | | 0'00" |
| 2017-01-09 15:48 | | 0'00" |
| 2017-01-09 14:57 | | 0'00" |
| 2017-01-09 13:55 | | 0'00" |
| 2017-01-09 13:42 | | 0'00" |
| 2017-01-09 13:25 | | 0'00" |
| 2017-01-09 13:18 | | 0'00" |
| 2017-01-09 11:52 | | 0'00" |
| 2017-01-09 10:54 | | 0'00" |
| 2017-01-09 10:43 | | 0'00" |
| 2017-01-09 10:31 | 1 781 4925675 | 6'56" |
| 2017-01-09 10:24 | | 0'00" |
| 2017-01-09 10:23 | | 0'00" |
| 2017-01-09 10:22 | | 0'00" |
| 2017-01-09 10:11 | | 0'00" |
| 2017-01-09 10:10 | | 0'00" |
| 2017-01-09 10:09 | | 0'00" |
| 2017-01-09 10:02 | | 0'00" |
| 2017-01-09 09:39 | | 0'00" |
| 2017-01-09 09:36 | | 0'00" |
| 2017-01-09 09:30 | | 0'00" |
| 2017-01-06 15:21 | | 0'00" |
| 2017-01-06 15:15 | | 0'00" |
| 2017-01-06 09:36 | | 0'00" |
| 2017-01-05 16:44 | | 0'00" |
| 2017-01-05 13:46 | | 0'00" |
| 2017-01-05 09:51 | | 0'00" |
| 2017-01-05 09:02 | | 0'00" |
| 2017-01-04 14:25 | | 0'00" |
| 2017-01-04 11:24 | | 0'00" |
| 2017-01-04 09:50 | | 0'00" |
| | | 0'00" |

→ MR. BISSON Phone #

# Exhibit 19

**From:** Craig Donais <craig.donais@donaislaw.com>
**Date:** Wednesday, January 11, 2017 at 12:34 PM
**To:** Dave Akridge <dave.akridge@greatamericanhg.com>
**Cc:** "Karl M. Terrell" <kterrell@stokeswagner.com>, Felicia Brogden <fbrogden@stokeswagner.com>
**Subject:** RE: Anderson v. Homewood Suites

Karl and Felicia:

I am happy to provide local representation to support your pro hac vice admission.

What I know is that I received a call from "Andre" who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper. Given his timeline and his issues, I was not in a position to assist, and did not engage in any conflict analysis to determine the property, property address, or whether there was a conflict. This is the extent of what I know.

I am around and available today with availability until 2pm today, tied up for about 1 hour, and then spotty after that. Tomorrow is clear from 9-10, and 10:30 – 1, and 2-4:30.

My NH bar # is 12466

Let me know how you wish to proceed.

Craig


Craig.Donais@DonaisLaw.com

DONAIS LAW OFFICES, PLLC
444 Willow Street, Manchester, NH 03103-6217
t: (603) 624-7100 | www.DonaisLaw.com | LinkedIn | Plaxo | Avvo | Justia

Admitted to practice in New Hampshire | Massachusetts | Connecticut

Business & Corporate | Real Estate | Trusts, Estate Planning & Probate Administration

**Subject:**      FW: Anderson v. Homewood Suites
**Date:**         Thursday, May 4, 2017 at 12:12:14 PM Eastern Daylight Time
**From:**         Karl M. Terrell
**Attachments:** image001.jpg

---

**From:** "Karl M. Terrell" <kterrell@stokeswagner.com>
**Date:** Wednesday, January 11, 2017 at 3:25 PM
**To:** Craig Donais <craig.donais@donaislaw.com>, Dave Akridge <dave.akridge@greatamericanhg.com>
**Cc:** Felicia Brogden <fbrogden@stokeswagner.com>
**Subject:** Re: Anderson v. Homewood Suites

Thank you, Craig. I'll be in touch with you tomorrow (traveling today).

Karl

---

**From:** Craig Donais <craig.donais@donaislaw.com>
**Date:** Wednesday, January 11, 2017 at 12:34 PM
**To:** Dave Akridge <dave.akridge@greatamericanhg.com>
**Cc:** "Karl M. Terrell" <kterrell@stokeswagner.com>, Felicia Brogden <fbrogden@stokeswagner.com>
**Subject:** RE: Anderson v. Homewood Suites

Karl and Felicia:

I am happy to provide local representation to support your pro hac vice admission.

What I know is that I received a call from "Andre" who wanted to discuss filing a 540-A petition, claiming they were being treated differently for food services because they were minorities, and were being overcharged for their use of the room. Andre claimed that it was a mixed use property, in which part was rented, and part was under innkeeper. Given his timeline and his issues, I was not in a position to assist, and did not engage in any conflict analysis to determine the property, property address, or whether there was a conflict. This is the extent of what I know.

I am around and available today with availability until 2pm today, tied up for about 1 hour, and then spotty after that. Tomorrow is clear from 9-10, and 10:30 – 1, and 2-4:30.

My NH bar # is 12466

Let me know how you wish to proceed.

Craig



Craig.Donais@DonaisLaw.com

DONAIS LAW OFFICES, PLLC
444 Willow Street, Manchester, NH 03103-6217
t: (603) 624-7100 | www.DonaisLaw.com | LinkedIn | Plaxo | Avvo | Justia

Admitted to practice in New Hampshire | Massachusetts | Connecticut

Business & Corporate | Real Estate | Trusts, Estate Planning & Probate Administration

NOTICE: THIS IS A PRIVILEGED, CONFIDENTIAL COMMUNICATION. The information contained in this electronic message is intended only for the above-named addressee. The contents of this electronic message are or may be protected by the attorney-client privilege, work-product doctrine, trade secret protections and all other applicable protections. If the reader of this message is not the intended recipient, this message serves as notice that any use, dissemination, distribution or reproduction of this communication is expressly prohibited. If you believe you have received this communication in error, please immediately notify DONAIS LAW OFFICES, PLLC at 603.624.7100.

SUFFICIENCY OF ELECTRONIC TRANSMISSION FOR PURPOSES OF DISCOVERY AND CERTIFICATION OF SERVICE: As authorized by State of New Hampshire Superior Court Administrative Order 2011 – 46, and Circuit Court Administrative Order 2012-06, all discovery requests and responses, as well as documents and pleadings, shall be served electronically upon opposing counsel and/or parties, by way of email, PDF file and/or document file. NO PAPER COPY WILL BE MAILED UNLESS SPECIFICALLY REQUESTED. If this presents a problem or concern, kindly notify Donais Law Offices, PLLC immediately. Otherwise, it will be assumed that electronic submission is sufficient for all purposes and requirements under applicable and controlling court rules.

þ Think green. Please consider the environment before printing this e-mail.

**From:** Dave Akridge [mailto:dave.akridge@greatamericanhg.com]
**Sent:** Wednesday, January 11, 2017 11:41 AM
**To:** Craig S. Donais
**Cc:** Karl M. Terrell; Felicia Brogden
**Subject:** Fwd: Anderson v. Homewood Suites

Craig:

See below and attached.

Again, if you want me to do a phone intro or anything like that, I am happy to do so.

Karl & Felicia: I laid out the broad issues with Craig to give him some background and he indicated

that he may have received a call from Bissasor yesterday.  He is did not take his case.

Dave

---------- Forwarded message ----------
From: **Karl M. Terrell** <kterrell@stokeswagner.com>
Date: Wed, Jan 11, 2017 at 11:29 AM
Subject: Fwd: Anderson v. Homewood Suites
To: Dave Akridge <dave.akridge@greatamericanhg.com>
Cc: Felicia Brogden <fbrogden@stokeswagner.com>

Dave,

We will need to associate local counsel for my pro hac vice admission. The local rule and our draft motion is attached.

Please ask the lawyer you mentioned if he's willing to provide this service, and if so provide me and my assistant Felicia, copied here, with his name, contact info and NH bar number.

Thanks,

Karl

Sent from my iPhone

Begin forwarded message:

> From: Felicia Brogden <fbrogden@stokeswagner.com>
> Date: January 11, 2017 at 11:09:50 AM EST
> To: "Karl M. Terrell" <kterrell@stokeswagner.com>
> **Subject: Anderson v. Homewood Suites**
>
> Attached is the rule for filing a *pro hac vice* and a draft of same.  The cost is $250.
>
> The research folder and binder are in your chair.

---

Felicia M. Brogden | Paralegal

(O) 404.766.0076  (D) 404.766.2269  (C) 404.281.6844
**Stokes Wagner**
One Atlantic Center, Suite 2400
1201 West Peachtree Street NW
Atlanta, GA 30309

# Exhibit 20

THE STATE OF NEW HAMPSHIRE

Hillsborough, SS

April Term, 2017
Docket #226-2017-CV-69

Superior Court

*Natalie Anderson*

v.

*Adam Robitaille & Homewood Suites by Hilton, Nashua, N.H.*

## AFFIDAVIT OF DAVE AKRIDGE

I, David Akridge, with a business address of 180 Locust Street, Suite Two, Dover, New Hampshire, do hereby swear and affirm that the following statements are true and correct to the best of my knowledge and belief:

1. I hold the position of president of Great American Hotel Group, Inc., a hotel management company. One of the hotels my company manages, through a single-purpose entity, is the Homewood Suites by Hilton in Nashua ("Hotel"). Hilton Worldwide, Inc. licenses our use of the 'Homewood Suites by Hilton' brand, but has no responsibility for the management of the Hotel (apart from monitoring and enforcement of brand standards).

2. Adam Robitaille, the General Manager of this Hotel, reports to me.

3. Mr. Robitaille contacted me concerning an incident in the hotel involving Mr. Bisasor that happened on January 3, 2017. I was informed that Mr. Bisasor had been loud and disruptive in the lobby of the Hotel, and that the disturbance was so serious the staff on hand felt it necessary to call in the police.

4. Mr. Robitaille expressed his desire to terminate Mr. Bisasor and Ms. Anderson's guest stay.

5. Mr. Robitaille also forwarded to me, on January 5, a lengthy email that Mrs. Anderson sent that day to various high-level executives within Hilton Worldwide, in which she referred to the incident on January 3, and made accusations that she and her husband were being discriminated against because of their race.

6. I consulted several times by telephone with attorney Karl M. Terrell, between January 5 and 10, concerning the issues Mr. Robitaille had presented to me. Mr. Terrell and his firm have advised and represented my company for many years.

1

7. On January 5, Mr. Robitaille requested that Anderson and Bisasor check out of the Hotel. Subsequently, I had one phone conversation with Mr. Anderson, in which I agreed to extend his check-out date to January 9.

8. On January 10, we received a copy of the legal action the Plaintiffs filed in the Circuit Court in Nashua. I asked Mr. Terrell to represent us.

9. On January 11, at 11:29 am, Mr. Terrell sent me an email stating that he would "need to associate local counsel," and provided a copy of the local court rule on the admission of out-of-state counsel. A copy of this email and several subsequent emails, in a single chain dated January 11, is attached.

10. Mr. Terrell and I had discussed, earlier, the likely need to associate local counsel. He concluded his email by stating: "Please ask the lawyer you mentioned if he's willing to provide this service."

11. The lawyer I had in mind was Craig Donais, who I have known for several years. He has provided legal services for me related to the board of a condominium association that I serve on, and he once handled a personal matter for me. Mr. Donais has never been retained to perform work for either Great American Hotel Group or the Homewood Suites by Hilton in Nashua.

12. Shortly after Mr. Terrell's 11:29 am email, I called Mr. Donais. Our discussion was quite short; maybe four or five minutes. This was my first conversation with Donais that had anything to do with the dispute involving Anderson and Bisasor.

13. During that call, I briefly explained the nature of the case, the fact that it involved the Homewood Suites in Nashua, and the need for local counsel. Donais then let me know that he had received a call from an individual named "Andre," who said he was looking for an attorney to represent him in a landlord/tenant matter. The situation, as Donais said he understood it, involved some type of mixed-use property. He said he did not remember the caller identifying this property as the Nashua Homewood Suites. In any event, in piecing this together, we concluded that "Andre" was quite likely Mr. Bisasor.

14. Donais told me very little about the substance of what the caller had said to him. I heard enough to conclude only that the caller he described was likely Mr. Bisasor.

15. I did not hear or learn – from Mr. Donais's description of what the caller had said – anything about the case, or their claims, that I did not know already from having read the Circuit Court complaint and from having read Mrs. Anderson's January 5 email to Hilton Worldwide.

2

16. I specifically recall asking Mr. Donais if he would have a conflict serving as local counsel, given this conversation with "Andre." He responded with conviction that he did not, given the fact that he had turned down the request to take the case, and given also the brief nature of his discussion with the caller.

17. Following this call, I sent Mr. Donais an email – at 11:41 am – copying Mr. Terrell and his assistant Felicia Brogden. See the attached email chain.

18. In that email, I offered to "do a phone intro" with Mr. Donais and Mr. Terrell, as the two of them had not yet met or spoken concerning this case (and, to my knowledge, had never met or spoken previously on any other matters). I did not provide Mr. Terrell, in that email, a phone number for Mr. Donais.

19. I stated also to Mr. Terrell, in that email, that Mr. Donais "may have received a call from Bisasor yesterday" (I have since read Mr. Donais' affidavit, in which he states he spoke with Donais on January 9, not January 10, as I apparently thought on Jan 11, when referring to that call as having taken place "yesterday"). I stated further, in this email, that Mr. Donais "did not take his case."

20. I believe I asked Mr. Donais to explain and describe to Mr. Terrell the substance of his conversation with Bisasor. In any event, less than an hour later, Mr. Donais did exactly that. In his email to Terrell, at 12:34 pm, copied to me and Ms. Brogden, he provided a written description of his conversation with Bisasor. See the attached email chain.

21. There was nothing in that written description by Mr. Donais that Mr. Terrell and I did not know already, from having seen – again – his Circuit Court complaint, and from having read Mrs. Anderson's January 5 email to Hilton Worldwide.

22. I had no other discussions with Mr. Donais concerning the substance of what Mr. Bisasor said to him in the January 9 phone call. Mr. Donais also, I should add, never described to me anything he may have learned in the earlier telephone discussion he indicated he had with attorney O'Brien.

23. After the attorney then representing the Plaintiffs, Elliott Berry, raised the issue – on January 17 and 18 – of a possible conflict based on Mr. Bisasor's phone discussion with Mr. Donais, I participated in one or two discussions with Mr. Donais and Mr. Terrell, in which we discussed the circumstances of Bisasor's contact with Donais, and discussed how best to respond to the issue raised by attorney Berry. These discussions were not lengthy. Essentially, Mr. Donais concluded rather quickly – while still in the courthouse that day – that it would be best for him to withdraw, and that he would offer up names of other local attorneys who might be available to serve as local counsel.

24. At no time during these discussions on January 17 and 18, or at any later point in time, did I hear or learn anything concerning what Bisasor said to Donais that added to or went beyond the facts relayed by Donais in the above-referenced January 11 (12:34 pm) email.

3

25. Neither I nor (to my knowledge) Mr. Terrell ever received any facts or information from Mr. Donais that would seem to fall into the category of private, confidential or privileged communications by Bisasor to Donais. There was nothing, in my mind, that we could have used as some form of advantage in defending the case.

Executed on 05/04/2 day of May 2017.

_____
David Akridge

State of New Hampshire
County of Strafford

Sworn and subscribed before me this __4th__ day of May 2017 by David Akridge.

_____
Justice of the Peace/Notary Public

My commission expires: _____

CANDICE A. GRIMBILAS, Notary Public
State of New Hampshire
My Commission Expires March 23, 2021

4

# Exhibit 21

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name:    9th Circuit - District Division - Nashua

Case Name:    Natalie Anderson v. Adam Robitaille, et al

Case Number:    459-2017-lt-00010
(if known)

## APPEARANCE/WITHDRAWAL

### APPEARANCE
Please enter my appearance as
☑ Counsel for **defendants, local counsel PHV**

☐ I will represent myself (*pro se*).

### WITHDRAWAL
Please withdraw my appearance as
☐ Counsel for _____

Notice of Withdrawal sent to my clients on:

_____

at the following address:

_____

_____

_____

I certify that on this date I provided a copy of this document to party(s) listed below by:
☐ Hand-delivery    ☑ US Mail    ☐ Email (E-mail only by prior agreement of the parties based on Circuit Court Administrative Order)

**Natalie Anderson**
Name

**15 Tara Boulevard
Nashua NH 03062**

13 Jan 2017
Date

Signature

**Craig S. Donais**
Printed Name

**Donais Law Offices, PLLC
444 Willow Street, Manchester NH 03103-6217**

(603) 624-7100  ext          **12466**
Telephone                    NH Bar ID #

craig.donais@donaislaw.com
Email Address (optional)

NHJB-2391-DF (03/25/2013)                    Page 1 of 1

# Exhibit 22

**THE STATE OF NEW HAMPSHIRE**

9th Circuit – District Division - Nashua

| | | |
|---|---|---|
| NATALIE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 459-2017-LT-00010 |
| | ) | |
| v. | ) | |
| | ) | |
| ADAM ROBITAILLE and | ) | |
| HOMEWOOD SUITES OF NASHUA | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION FOR COUNSEL TO APPEAR *PRO HAC VICE*

Defendants Adam Robitaille and Homewood Suites of Nashua ("Defendants"), by and through their counsel Craig Donais, hereby move this Court to allow Karl M. Terrell to appear on their behalf with undersigned counsel in the above-captioned matter. In support of this Motion, Defendants submit as follows:

1. Mr. Terrell is a member of the law firm of Stokes Wagner, ALC, located at One Atlantic Center, Suite 2400, 1201 W. Peachtree Street, Atlanta, Georgia 30309, tel: (404) 766-0076; fax: (404) 766-8823. Craig Donais is a member of the law firm of Donais Law Offices, PLLC, located at 444 Willow Street, Manchester, NH 03103-6217, tel: (603) 624-7100. Defendants have chosen Mr. Terrell to serve as their lead counsel in this case.

2. Mr. Terrell was admitted to the State Bar of Georgia in 1982, and at all times has been in good standing since his admission.

3. Mr. Terrell also is admitted to practice before the following courts:

- U.S. District Court for the Northern District of Georgia; admitted October 4, 1982

  - Russell Federal Building, 75 Spring Street, Atlanta GA 30303;

1

- U.S. District Court for the Middle District of Georgia; admitted February 11, 2001 -- Bootle Federal Building, P.O. Box 128, 475 Mulberry Street Macon, GA 31202;

- U.S. District Court for the District of Arizona; admitted May 14, 1996 – O'Connor U.S. Courthouse, 401 W. Washington Street, Suite 130, SPC 1, Phoenix, AZ 85003-2118;

- U.S. District Court for the Eastern District of Michigan; admitted October 1, 1997 – Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan 48226;

- U.S. District Court for the Western District of Michigan; admitted June 8, 1999 – 399 Federal Building, 110 Michigan Street, Grand Rapids, MI 49503;

- U.S. District Court for the District of Colorado; admitted January 21, 2011 – Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado 80294;

- U.S. Court of Appeals for the Fourth Circuit; admitted March 25, 1993 – 1100 East Main Street, Richmond, VA 23219;

- U.S. Court of Appeals for the Fifth Circuit; admitted March 28, 1994 – 600 S. Maestri Place, New Orleans, LA 70130;

- U.S. Court of Appeals for the Sixth Circuit; admitted November 5, 1991 – Stewart U.S. Courthouse, 100 East Fifth Street, Cincinnati, Ohio 45202;

- U.S. Court of Appeals for the Eleventh Circuit; admitted 1982 – Tuttle U.S. Court of Appeals Building, 56 Forsyth Street, Atlanta GA 30303;

- U.S. Court of Appeals for the District of Columbia; admitted April 18, 1996 – E. Barrett Prettyman U.S. Courthouse and William B. Bryant Annex, 333 Constitution Ave., NW Washington, DC 20001;

- U.S. Court of Appeals for the Second Circuit; admitted August 22, 2013 - Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007; and

- U.S. Court of Appeals for the Ninth Circuit; admitted April 10, 2014 – The James R. Browning Courthouse, 95 7th Street, San Francisco, CA 94103.

A verified application for admission by Mr. Terrell is attached as Attachment A.

4. Mr. Terrell is familiar with the claims and allegations against Defendants. For this reason, Defendants request this Court to enter an order authorizing Mr. Terrell to appear and practice *pro hac vice* in the above-referenced matter, in association with undersigned counsel.

5. Undersigned counsel will remain actively associated with Mr. Terrell in this matter, as required by Superior Court Rule 19.

WHEREFORE, Defendants respectfully request that the Court issue an Order:

A.      Granting this Motion and allow Karl M. Terrell to appear and practice *pro hac vice*; and

B.      Granting such other relief as is just and proper.

Dated: January 13, 2017

Respectfully submitted,
DONAIS LAW OFFICES, PLLC

Craig Donais
State Bar No. 12466
444 Willow Street
Manchester, NH 03103
Tel: (603) 624-7100
Email: craig.donais@donaislaw.com

Attorneys for Defendants

3

**THE STATE OF NEW HAMPSHIRE**
9th Circuit – District Division - Nashua

NATALIE ANDERSON,      )
                       )
        Plaintiff,      )   Case No. 459-2017-LT-00010
                       )
    v.               )
                       )
ADAM ROBITAILLE and     )
HOMEWOOD SUITES OF NASHUA  )
                       )
      Defendants.    )
                       )

**VERIFIED APPLICATION OF KARL M. TERRELL IN SUPPORT
OF DEFENDANTS' MOTION FOR ADMISSION *PRO HAC VICE***

I, Karl M. Terrell, state as follows:

1.     I filed this Verified Application for admission *pro hac vice* in compliance with New Hampshire Superior Court Rule 19.

2.     I respectfully request to be admitted *pro hac vice* in this matter to represent the defendants, Adam Robitaille and Homewood Suites of Nashua, whose mailing address is 15 Tara Boulevard, Nashua, NH 03062, tel: (603) 546-7470.

3.     I am a member of the law firm of Stokes Wagner, ALC, located at One Atlantic Center, Suite 2400, 1201 W. Peachtree Street, Atlanta, Georgia 30309, tel: (404) 766-0076; fax: (404) 766-8823. My residential address is 1054 Robin Lane, Atlanta, Georgia 30306.

4.     I am a member in good standing in each of the jurisdictions where I am admitted to practice, and I have never been the subject of any disciplinary proceedings, been held in contempt or otherwise sanctioned by any court for disobeying its rules or orders.

5.     I was admitted to the Georgia State Bar in 1982.

6.     I am also admitted to practice before the following courts:

- U.S. District Court for the Northern District of Georgia; admitted October 4, 1982 - Russell Federal Building, 75 Spring Street, Atlanta GA 30303;

- U.S. District Court for the Middle District of Georgia; admitted February 11, 2001 -- Bootle Federal Building, P.O. Box 128, 475 Mulberry Street Macon, GA 31202;

- U.S. District Court for the District of Arizona; admitted May 14, 1996 – O'Connor U.S. Courthouse, 401 W. Washington Street, Suite 130, SPC 1, Phoenix, AZ 85003-2118;

- U.S. District Court for the Eastern District of Michigan; admitted October 1, 1997 – Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan 48226;

- U.S. District Court for the Western District of Michigan; admitted June 8, 1999 – 399 Federal Building, 110 Michigan Street, Grand Rapids, MI 49503;

- U.S. District Court for the District of Colorado; admitted January 21, 2011 – Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado 80294;

- U.S. Court of Appeals for the Fourth Circuit; admitted March 25, 1993 – 1100 East Main Street, Richmond, VA 23219;

- U.S. Court of Appeals for the Fifth Circuit; admitted March 28, 1994 – 600 S. Maestri Place, New Orleans, LA 70130;

- U.S. Court of Appeals for the Sixth Circuit; admitted November 5, 1991 – Stewart U.S. Courthouse, 100 East Fifth Street, Cincinnati, Ohio 45202;

- U.S. Court of Appeals for the Eleventh Circuit; admitted 1982 – Tuttle U.S. Court of Appeals Building, 56 Forsyth Street, Atlanta GA 30303;

- U.S. Court of Appeals for the District of Columbia; admitted April 18, 1996 – E. Barrett Prettyman U.S. Courthouse and William B. Bryant Annex, 333 Constitution Ave., NW Washington, DC 20001;

2

- U.S. Court of Appeals for the Second Circuit; admitted August 22, 2013 - Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007; and

- U.S. Court of Appeals for the Ninth Circuit; admitted April 10, 2014 – The James R. Browning Courthouse, 95 7th Street, San Francisco, CA 94103.

7.    I have never been denied admission *pro hac vice* in New Hampshire courts, had admission *pro hac vice* revoked or been disciplined in any New Hampshire court.

8.    At all times in this matter, I will be associated with Craig Donais of the law firm of Donais Law Offices, PLLC, located at 444 Willow Street, Manchester, NH 03103, whose state bar number is 12466.

Signed under penalty of perjury, this 12 day of January, 2017.

Karl M. Terrell
Stokes Wagner, ALC
One Atlantic Center, Suite 2400
1201 W. Peachtree Street
Atlanta, Georgia 30309
Tel: (404) 766-0076
Fax: (404) 766-8823
kterrell@stokeswagner.com

3

# ATTACHMENT "A"


# State Bar
# of Georgia

*Lawyers Serving the Public and the Justice System*

Mr. Karl Montague Terrell
Stokes Wagner ALC
One Atlantic Center
1201 W. Peachtree Street, Suite 2400
Atlanta, GA 30309

| | |
|---|---|
| **CURRENT STATUS:** | Active Member-Good Standing |
| **DATE OF ADMISSION:** | 06/18/1982 |
| **BAR NUMBER:** | 702265 |
| **TODAY'S DATE:** | 01/11/2017 |

Listed below are the public disciplinary actions, if any, which have been taken against this member:

| State Disciplinary Board Docket # | Supreme Court Docket # | Disposition | Date |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

The prerequisites for practicing law in the State of Georgia are as follows:

- Certified by the Office of Bar Admissions, either by Exam, or on Motion (Reciprocity).
- Sworn in to the Superior Court in Georgia, highest court required to practice law in Georgia.
- Enrolled with the State Bar of Georgia, arm of the Supreme Court of Georgia.

Attorneys licensed in Georgia and whose current status is Active are eligible to practice law in Superior Court. Attorneys may, upon application, apply for admission to the Supreme, District and State Court of Appeals.

Under the privacy/confidentiality provision of the Bar Rule 4-221(d), any complaint against a member resolved prior to the filing and docketing of a disciplinary case in the Supreme Court is not a matter of public record, and may not be revealed without a waiver from the member. It is the policy of the State Bar of Georgia to answer any inquiry about a member by disclosing only those complaints that have been docketed in the Supreme Court. With respect to matters that are currently pending as active, undocketed cases, when an inquiry is received, the State Bar of Georgia shall not disclose the existence of those complaints. Such non-disclosure should not be construed to confirm the existence of confidential complaints since the vast majority of members in good standing are not the subjects of such confidential complaints.

This member is currently in "**good standing**" as termed and defined by **State Bar Rule 1-204**. The member is license fees and is not suspended or disbarred as of the date of this letter.

## STATE BAR OF GEORGIA

*Brenda Lovvorn*

Official Representative of the State Bar of Georgia

| **HEADQUARTERS** | **COASTAL GEORGIA OFFICE** | **SOUTH GEORGIA OFFICE** |
|---|---|---|
| 104 Marietta St. NW, Suite 100 | 18 E. Bay St. | 244 E. 2nd St. (31794) |
| Atlanta, GA 30303-2743 | Savannah, GA 31401-1225 | P.O. Box 1390 |
| 404-527-8700 • 800-334-6865 | 912-239-9910 • 877-239-9910 | Tifton, GA 31793-1390 |
| Fax 404-527-8717 | Fax 912-239-9970 | 229-387-0446 • 800-330-0446 |
| www.gabar.org | | Fax 229-382-7435 |

## THE STATE OF NEW HAMPSHIRE
9th Circuit – District Division - Nashua

NATALIE ANDERSON, )
)
      Plaintiff, )   Case No. 459-2017-LT-00010
)
   v. )
)
ADAM ROBITAILLE and )
HOMEWOOD SUITES OF NASHUA )
)
      Defendants. )
)

### CERTIFICATE OF SERVICE

    I, Craig Donais hereby certify that on this date I caused a copy of the foregoing to be sent, via first class mail, postage pre-paid, to the plaintiff below:

Natalie Anderson
15 Tara Boulevard
Nashua, NH 03062

Dated: January 13, 2017

                                               Craig Donais

4

# Exhibit 23

## Re: Legal Documents Given To Us By The Property Regarding Wednesday Hearing

### Liberty _6

Tue 1/17/2017 11:32 AM

**To:** Elliott Berry <EBerry@nhla.org>

📎 3 attachments (444 KB)

Andre Call & Voicemail to Donais on 1-6-17 - Andre Phone Call Log.jpg; Donais Call To Andre on 1-9-17- Andre Phone Call Log.jpg; Text Message on 1-5-17 re-Donais-Natalie Phone.jpg;

Elliot,

Please see attached pictures taken of my wife's phone which shows the text message from attorney Robert Obrien (phone number 603-459-9965) with description of communications re Attorney Craig Donais. Also attached are two pictures taken of my phone with call logs screen showing call to Atty Donais phone number (603-624-7100) on 1-6-17 and another picture showing his phone number call back to me on 1-9-17.

Thx

Andre

---

**From:** Liberty _6
**Sent:** Tuesday, January 17, 2017 10:37 AM
**To:** Elliott Berry
**Subject:** Re: Legal Documents Given To Us By The Property Regarding Wednesday Hearing

Elliot,

The name of the other lawyer that my wife communicated through is Robert Obrien. Yes, I will take a picture of the text message and send it to you shortly

For my part, I can take a picture of my cell phone log screen to shows Donais phone number on certain prior dates. Not sure if that helps any with the proof problem.

Thx
Andre

Case 1:25-cv-00251-SE-AJ    Document 104-3    Filed 03/26/26    Page 68 of 93

**From:** Elliott Berry <EBerry@nhla.org>
**Sent:** Tuesday, January 17, 2017 10:02 AM
**To:** 'Liberty _6'
**Subject:** RE: Legal Documents Given To Us By The Property Regarding Wednesday Hearing

Andre,
    What you describe would be a serious breach of professional ethics.  But if I understand you correctly your wife's communications were entirely through another lawyer. This presents a serious proof problem. Can you tell me the name of the other lawyer ?  Can you make a copy of the text message and send it to me ?
    Thanks for letting me know about all of this. I will call you by 11:30 this morning. Hopefully I can speak with your wife as well.


Elliott Berry
Managing Attorney
Manchester Office
NH Legal Assistance
1850 Elm St., Suite 7
Manchester, NH 03104
(603) 668-2900 ext 2908
eberry@nhla.org

## Connect with NHLA!

**Follow us on Twitter**

**Like us on Facebook**

Please consider the environment before printing this e-mail.

Confidentiality Notice:  This email transmission and any accompanying material may contain confidential or privileged information.  The information is intended only for disclosure to and use by the addressee(s) named above.  Distribution, publication, reproduction, or use of this transmission and materials, in whole or in part, by any person other than an intended recipient is prohibited.  If you have received this e-mail in error, please notify me

Case 1:25-cv-00251-SE-AJ    Document 104-3    Filed 03/26/26    Page 69 of 93

# Exhibit 24

 Outlook

## FW: notes from 1/17/2017

**From** Elliott Berry <EBerry@nhla.org>

**Date** Fri 7/24/2020 5:19 PM

**To** Mark Cornell <mcornell@nhattyreg.org>

Mark,

My former client, Natalie Anderson, asked that I send you a copy of my file notes from January 17, 20017 regarding my conversation with Craig Donais. Below is an exact, unedited copy (except for my adding the quotation marks"). Please pardon all the typos, but I was, and remain, a terrible typist.

"He was in a meeting when I called but I told his "associate" that it was very important that I speak to Craig, so he went to get him.
I told Craig who  am representing and said that I has concerns about the whether he should be conflicted out of the case. I told him that I                    had a text message from Atty O'Brian tht clearly showed that O'brian spoke to him about our client's case, and phone records that indicated that our client called him on 1/6/17 and that he called client back on 1/9 and spoke to him for almost 11 minutes.
Craig said that O'brian's call came on a Friday evening and they spoke only in broad generalities without any identification of who the parties were. he says that he told Atty O'brian that he didn't want to get involved.
In regard to the phone call with Andre on Jan 9, he says that he spoke to "some guy" he didn't get any specific facts from Andre--that he is not even sure that Mr. Anderson gave him his name or that of the defendant. he said that Andre just kept asking questions. he kept telling him that he couldn't answer his questions  and he just wanted to get him off the phone. he said that he never even got enough information to do a conflicts check.  He did say however that he didn't want the information from the caller (Mr. Anderson) because   I have represent the defedant before and the principal for a long time.
I told him that my clients are very concerned about this, and will want to raise it before the court. I told him that I am not accusing him of unethical behavior but in all likelyhood will have to raise the issue at tomorrow's hearing. I promised that I would ask the court to deal with it off the record. He said that he understands but complained that client was trying to avoid the real issue, and questioned whether he made the call to him just to conflict him out of the case. I didn't day this but I wondered how client would have known tat Craig represented the defendanr. I did say that on the surface the chain of events raises legitimate questions."

Please let me know if I can be of any further assistance.

Elliott Berry
NH Legal Assistance
1850 Elm St., suite 7
Manchester, NH 03104
Phone: (603)668-2900 ext 2908
Fax: (603)935-7109
eberry@nhla.org

# Exhibit 25

 Gmail

**Craig Donais <craig.donais@donaislaw.com>**

## RE: Sad news

**Linstad, Nathan** <NLinstad@manchesternh.gov>                    Tue, Jun 11, 2019 at 3:29 PM
To: Craig Donais <craig.donais@donaislaw.com>

I will forward it to Houghton

Ofc Linstad
Manchester Police
Crime Prevention Officer
SWAT

On Jun 11, 2019, at 15:24, Craig Donais <craig.donais@donaislaw.com> wrote:

> Thanks.  Can you put me in touch with someone specifically to look into this?

> **From:** Linstad, Nathan [mailto:NLinstad@manchesternh.gov]
> **Sent:** Tuesday, June 11, 2019 3:24 PM
> **To:** Craig Donais
> **Subject:** Re: Sad news
>
> I can't open the attachment bc I'm in the woods in northern nh.  Sgt brennan will be at the Crimeline meeting for me tomorrow and will be showing the new paperwork.
>
> But just reading the email I would have you talk to detectives and have them look into it for sure.
>
> Ofc Linstad
>
> Manchester Police
>
> Crime Prevention Officer
>
> SWAT
>
> On Jun 11, 2019, at 15:18, Craig Donais <craig.donais@donaislaw.com> wrote:
>
>> Nate:
>>
>> I wanted to check with you about a potential criminal issue. I have a potential client who I declined who has filed an action against me, but now claims that they have a recording of my conversation with them.
>>
>> If they have a recording of a conversation with me, it was done without my consent or knowledge, which would be in violation of the Wiretap statute, as NH is a 2-party state.  I would also not put it past them that they actually fabricated a recording, and claims that it is part of a conversation that they had with me.  You will note that they admit to this recording in the last sentence of the paragraph at the top of page 3 in this pdf.

Can I file a police report on this, and start a process to determine whether this is worthy of prosecution?

See you tomorrow at Crimeline!

Craig

<image001.jpg>

Craig.Donais@DonaisLaw.com

Donais Law Offices, PLLC

444 Willow Street, Manchester, NH 03103-6217

t: (603) 624-7100 |www.DonaisLaw.com | LinkedIn | Plaxo | Avvo | Justia

Admitted to practice in New Hampshire | Massachusetts

Business & Corporate | Real Estate | Trusts, Estate Planning & Probate Administration

NOTICE: THIS IS A PRIVILEGED, CONFIDENTIAL COMMUNICATION. The information contained in this electronic message is intended only for the above-named addressee. The contents of this electronic message are or may be protected by the attorney-client privilege, work-product doctrine, trade secret protections and all other applicable protections. If the reader of this message is not the intended recipient, this message serves as notice that any use, dissemination, distribution or reproduction of this communication is expressly prohibited. If you believe you have received this communication in error, please immediately notify Donais Law Offices, PLLC at 603.624.7100.

  **Think green. Please consider the environment before printing this e-mail.**

<2019-05-08 Anderson MTR.pdf>

---

*The Right-To-Know Law (RSA 91-A) provides that most e-mail communications, to or from City employees and City volunteers regarding the business of the City of Manchester, are government records available to the public upon request. Therefore, this email communication may be subject to public disclosure.*

# Exhibit 26

## Donais

From: Russell F. Hilliard (rhilliard@uptonhatfield.com)

To: mcornell@nhattyreg.org

Cc: quickquantum@aol.com; rhilliard@uptonhatfield.com

Date: Tuesday, July 21, 2020 at 07:57 AM EDT

Please see attached.

Russell F. Hilliard, Esq.
Upton & Hatfield, LLP
159 Middle Street
Portsmouth, NH 03801
Tel: 603-436-7046
Fax: 603-369-4645
rhilliard@uptonhatfield.com
www.uptonhatfield.com

 2019 Police Report.pdf
2.4 MB

# Incident/Investigation Report

**Agency:** MPD                 **Case Number:** 19-008367                 **Date:** 06/25/2020 11:03:04

## Supplement Information

| Supplement Date | Supplement Type | Supplement Officer |
|---|---|---|
| 06/18/2019 19:10:30 | FOLLOW UP | (100371) WHELAN, DANIEL B |
| **Contact Name** | | **Supervising Officer** |
| DONAIS, CRAIG | | (100028) BIRON, CHRISTOPHER R |

## Supplement Notes

(100371) WHELAN, DANIEL B

Event: Follow-Up (Victim Interview)
Date: 06/18/19
Investigator: Daniel B. Whelan

On 06/13/19, I sent an email to the victim in this case:

(Victim)
Craig Donais



I advised Craig that I had been assigned this case and that I was looking to have him come-in for an interview. Craig and I agreed to meet at the Manchester Police Department on 06/18/19 at 1500 hours. On 06/18/19, at approximately 1505 hours, Craig arrived at the Manchester Police Department. I made contact with Craig in the lobby of the Manchester Police Department, where I escorted him to the 3rd floor (Detective Division), directly into interview room number 1. At that location, I advised Craig that the interview would be audio and video recorded.

The following is only a synopsis of the interview that I completed with Craig, which is not necessarily in chronological order. For a word-for-word account of the interview, I have burned a copy of it onto a disk and secured it into evidence as DBW2.

I started the interview with Craig by asking him to provide some background information regarding how his interaction with the male and female party started, prior to them filing a formal complaint against him. Prior to providing that information, Craig stated that he had a copy of an affidavit, which he had completed back in March of 2017, which he wished to provide to me. Craig also had a copy of his phone records, for the time frame of January of 2017, when his services were requested.

Craig explained that he had initially been contacted by a colleague attorney of his, who provided a referral for a case that was not a bankruptcy case, which was his colleague's specialty. Craig told this attorney, after having been told some of the details of the case, that he was not interested. The attorney was identified as Robert O'Brien, out of New

# Incident/Investigation Report

Agency: MPD          Case Number: 19-008367          Date: 06/25/2020 11:03:04

Boston, NH.

██████████ After refusing the referral, Craig received a voice message at his office, from a male party who was inquring about a possible case. Craig stated that he could not hear the male party very well on the voice message and did not realize that this individual was possibly tied to the referral that Craig had refused from his colleague.

Craig had a copy of phone records with him at the time of the interview and was able to show me the log for when he received the voice message, as well as when he ultimately returned the call. The first call on the log was a missed call when there was not a voice message left. Craig identified the male party that he received the call from as: Andre Bisasor, ██████████ The following contains a log of the 2 calls from Andre and the 1 call that Craig made in return to Andre:

1) 01/05/17 at 1817 hours - 7 seconds (Incoming)

2) 01/06/17 at 1716 hours - 1 min, 37 seconds (Incoming)

3) 01/09/17 at 1043 hours - 6 min, 56 seconds (Outgoing)

The final call, #3, was the call that Craig placed to Andre, where they actually discussed the case that Andre was interested in having Craig pursue. Craig listened to the basics pertaining to what the case was involving, which he then realized that this was the same case that he had been informed of and was not interested in pursuing. Craig then told Andre that he was not interested in pursuing the case. Craig advised that he only spoke with Andre one time and that it was on 01/09/17 when he told Andre that he was not interested in the case.

Craig was actually representing the Hilton Residences Inn in Nashua, NH, which is the hotel that Andre was seeking a lawsuit against and requesting that Craig represent him in. Craig is uncertain if Andre was aware of the fact, at the time, that he was representing the Hilton. Craig appeared at a court hearing, after speaking on the phone with Andre. Craig was representing the Hilton Residences, where the issue relative to Craig speaking with one of the plaintiffs of the lawsuit, Andre Bisasor, was brought to the attention of the court. However, the name "Andre Bisasor" was not listed on the lawsuit; it was under the name of his wife, Natalie Anderson. Craig stated that he did not know that Natalie was Andre's wife, which is the reason that he did not recognize any potential conflict with the case. As a consequence, Craig did not continue to represent the hotel and filled-out the affidavit detailing what, if any, information that he had learned of when speaking with Andre on 01/09/17. Craig then provided that affidavit to his successor counsel.

# Exhibit 27

**Excerpt of the First Part of Craig Donais' Interview with Manchester NH Police (Unofficial Transcript)**
**Showing Disclosure of Attorney-Client Information To The Police**
**Date: June 18, 2019**

Detective:  So, it's now it is Tuesday, June 18th. It is a, 20 after 3pm.

Craig: K.

Detective: Uh, so we'll just make sure…

Detective: 10-13-1970. Is that your date of birth?

Craig:  That's my birthday. Yes.

Detective:  Okay, great. So you still live at 39 Buzzell Street?

Craig: I do

Detective: Okay. Awesome. All right. So, it looks like you probably, well, you might have additional documents, in addition to that letter that you uploaded to, I think, in that email that you sent to Nate…Nathan Linstad.

Craig: I brought a few packages. Yes. Yep.

Detective:  So, he's our liaison for the crime line board.

Craig:  Yeah. So, yeah, been on there, I don't know, five or six years.

Detective:  And so, you're…just…so again, you do civil litigation.

Craig: I'm a civil attorney. Yeah.

Detective: Okay. Donais Law Group. Right?

Craig: Donais Law Offices.

Detective: Yeah.

Craig: I'm right over, across from the Valley Street Jail.

Detective: Okay. Sorry. Did you do any criminal work?

Craig: I try to avoid it. Yeah.
Detective:  So, so occasional defense or… you have in the past?

Craig: I had in the past, it's usually been a business client. That's had a misdemeanor and play it out kind of a thing.

Detective: Ahh.  Yeah.

Craig: Or I've had some things where I actually had a client who showed up at my doorstep on a Monday morning at 8:30 and was supposed to check himself in because he hadn't paid a debt. So that's kind of the extent of where I go with the criminal stuff, but...

Detective: Okay. All right. So yeah, I guess if you just want to give you a little background on where this whole.

Craig: Sure. So I guess for some background on this is that I put together an affidavit that I did back in March of 2017, that kind of goes through the timeline and the chronology of what transpired in this case. I brought along today some, uh, phone records that I have from my system…or had, from the system that I had…at that point, the provider that I have has changed their platform. So what I've got is the PDFs that I created back in 2017, because in 2017, based on how things went down with this potential client, I anticipated that at some point something was going to blow up.

Detective: Mm hmm

Craig: Um, essentially what happened is I was contacted by a colleague attorney who, uh, had a potential referral to me cause he does bankruptcy law and doesn't do a broader range of civil things. I do. He asked if I was interested in the case, he told me a couple of small details of the case. I said, I'm not interested.

Detective: Okay.

Craig: And he said, well, can I pass on your name to the person and explain why you're not interested? I said, I really have no interest in doing that because if I'm not taking the case, I don't really want to talk with the person who does potentially create a conflict and a situation for me. So I'm better off if I don't. He said fine, no problem. In hindsight, he had already given my contact info apparently to that person.

Detective: Okay.

Craig: And that person reached out to me. Um, they left a voicemail for me on my answering system at work on a Friday afternoon. It was unclear based on the quick voicemail that left, it was a male who had contacted me, left a voicemail and said, hi, I'm calling about a real estate matter. Can you call me back? He left his number. I didn't think anything of it. I called him back the following Monday morning. And he said, I've got an issue, real estate issue that involves a hotel and a discrimination and, uh, overcharge. And I said, did you get my name and number from so and so, and he said, yes. And I said, I have no interest in your case.

Detective: Okay.

Craig: So we spent about seven minutes, just under seven minutes total on the phone between me calling him back, him telling me the quick story and the like, to try to get off.

Detective: Okay.

Craig: I've tried to document all of that and I'll leave a copy of it, but that's the context in the background. So, yeah.

Detective: And was there a particular, like, is it not your specialty or what was the nature of you…not?

Craig:  Why was I not interested?

Detective: Yeah, of you don't mind me asking.

Craig: There were a couple of reasons. Sure. There were a couple of reasons. The first was, um, as described to me by the referring attorney, um, it involved, I guess, a lease with a hotel, which logically makes no sense to me as an attorney. So yeah, I'm really not all that warm and fuzzy on the legal concept that they're trying to pursue. The second thing is that this was a, an alleged discrimination kind of a claim. Um, apparently the, the individual was a minority based on what the attorney had told me.

Detective: Yeah.

Craig: And the third is that there was like a consumer protection. (04:18): I had been overcharged, they were trying to change the rate. It was something vague like that. And I, between the topic of the case…

Detective: Yeah.

Craig: ….between the timeline of the things that I was doing, and I also have some clients that operate in the hotel space.

Detective: Okay.

Craig: So I, the combination of all of those things, really wasn't interested in the case.

Detective: Ahh. {Okay}

Craig: Um, so I just…um…

Detective: Yeah…that makes sense. It doesn't sound like it's a, you know, sounds, I don't know, frivolous, but…

Craig: Right. And that was my sense in terms of the nature of the case. Um, so that's why I kind of declined the representation. This blew up because my client contacted me and said, can I represent, can you represent us as local counsel on a case we have? I had spoken with the gentlemen, a lawsuit was filed. The lawsuit that was filed was brought by a woman who had a different name than the gentleman who called me, low and behold, after the fact, find out that that's husband and wife.

Detective: Okay.

Craig: So, I show up to my hearing and behalf of my client, they balk and say, wait a minute, you spoke with him and he's the husband of the plaintiff. And you're now representing the defendant. And for prudence reasons, I decided to get out of the case…because if they're already giving me that much of a hard time after a very brief phone call, it was not worth me staying in the case.

Detective: Um, so you had, I'm sorry. So after that call, when you said you weren't interested.

Craig: Yes.

Detective: Um, how did the, how did you end up going to a hearing about…?

Craig: So, my client who actually, um, was the, the company that was operating the hotel in Nashua, contacted me. So in terms of the, kind of…

Detective: Is that just a coincidence? They happened to be the same hotel that was involved, or?

Craig: Yeaaaah…. It's either a coincidence or it was a deliberate effort on their part to contact me, to try to create this conflict scenario.

Detective: Okay. Oh, I see.

Craig: I, I don't know whether it was deliberate intent kind of a thing on their behalf or whether it was just pure coincidence that they did.

Detective: Yeah.

Craig:  Um, that being said, I don't get a lot of conflicts being a small law office that I have.

Detective: Right.

Craig: That being said, I have had probably in 20 years, five or six discrete client prospects who have contacted me to represent them when I've already represented the other party or I've been involved in a collateral issue that prevents me from continuing to work for them, because then I'd have to be kind of undoing what I did for someone else.

Detective:  Yeah.

Craig: So battery line fight with this neighbor and then have something with the other neighbor. And so I've had to back out of this, it's a rare thing. It does happen. Um…So, I brought with me some phone records, uh, that I have for my system. And there were…the way the system is set up, and I can show you this. So this one right here is the received calls page. So these are calls that come into my office. And so this phone number right here to the 781, that was the phone number that they called me from…

Detective: 781-492?

Craig: Yeah.

Detective: Okay.

Craig: So that was the phone number that had been called. I didn't realize it. I put in my affidavit is that after I realized that there was this whole entire issue, I was trying to figure out when exactly it was that they called me. Uh, this 6th was the Friday night. I think it is. Yes.

Detective:  Okay.

Craig: So this, the 5th right here, when they made that phone call, that was, um, just a quick phone call to the office, I guess it was 7 seconds. And then they hung up and then he called back the next night, Friday afternoon at, it looks like 5:16pm. So I got a voicemail that he left a message for a minute 37.

Craig: And that minute 37 included calling all of the time from when he got to my phone system and the phone tree picked up and said, hi, you've reached Donais law. If you want Craig, press this. If you had listened to my particular message and then leave me a message. So that's why his time on that represent. So a minute 37 seconds.

Detective: Alright.

Craig: So the next morning on the Monday, when I get back to the office and it was listening through the voicemail, um, I gave him a call back at 10:43am, and you can see that on this right here. And this is the sent calls at the outgoing. So the 10:43, I called him back at that number. I spoke with him for a total of six minutes and 56 seconds.

Detective: Okay.

Craig: And then I don't think this matters, but this is when my client actually contacted me to represent them about this existing case.

Detective:  And what was the date on that?

Craig:  My client contacted me on June 11th after the lawsuit was filed.

Detective:  June 11th of 2017?

Craig: I'm sorry, January 11th of 2017.

Detective: January?

Craig: January 11th, 1-11-17.

Detective: All right. So a couple of days later?

Craig: A couple of days later.

Detective: Can you say what hotel it was or?

Craig: Uh, it was…uh…down in Nashua…the, uh…

Detective: Can you identify it?...

Craig: Yeah…the Residence Inn…the Residence Inn, in Nashua. Um, one of the, part of the Hilton group, just kind of behind the Sheraton Tara…up in that area.

Detective: Okay.

Craig: So there's a whole entire issue that is collateral to this, that they filed a complaint against me at the attorney disciplinary office with that letter.

Detective: Right, which is where you got that letter…

Craig: …which is where the letter came from.
Um, I don't really want to get specifically into all the details of what they're claiming…

Detective: Yeah.

Craig: …but the basis of it is they gave me critical information that caused them to lose the case,

Detective: Okay.

Craig: …which, I suggest that's not the case, based on the amount of time that I spent on the phone. Um, based on the affidavit that I put together in March of '17, cause it was an issue after I got out of the case and then they tried to disqualify the successor counsel. And so I put the affidavit together at their request in terms of what information was relayed with me and what I'd shared with whoever had...

Detective: At whose request? The request of…ahh?

Craig: The replacement attorney. After I got out…

Detective: So, you got out of that hotel.

Craig: I got out of that case.

Detective: Altogether?

Craig: Altogether. So what happened is we, we have the appearance. I filed my appearance in the case. I showed up for the hearing.

Detective: Yeah.

Craig: Their attorney balked at the hearing and said, Hey, here's a problem. He spoke with the husband. I said, I have no idea what you're talking about because when I looked at the suit, he's not listed by name, period. And when we do a conflict check, we look at the lawsuit, we look at who's the plaintiff we look at who's the defendant. Uh, she did say in her suit, husband.

Detective: Right.

Craig: But didn't name him. When I spoke with him, he told me that he had this potential issue. Didn't tell his wife's name, and the names are different. So there's no way I would have known at that point.

Detective: Yeah.

Craig: But they balked at it and said, you need to get out. And the judge at this point kind of went, do you really need to be here? I concluded. It didn't make sense because if they're giving me that much of a hard time, then, I had a feeling this kind of thing was going to come, and it did. Um…

Detective: Okay. So then you prepared an affidavit to provide to the attorney taking over on the attorney, taking over in the case?

Craig: The attorney taking over. Yeah. Correct. Um, and then where it gets filed. And at this point there were multiple lawsuits cause they had filed a landlord tenant case down in Nashua, and then they had filed an injunction with the superior court or something to try to get the Superior court, to order the circuit court to not…it got really convoluted, really fast. Um…

………

Detective:  Can I make copies of…?

Craig:  Any of this stuff you would like.

Detective:  Okay, great.

Craig:  If you want, I'll leave these with you.

Detective:  Okay. Yeah. If that works

Craig:  That's fine. Yeah.

Detective: This will help for any, uh, any questions probably that I had in regards to your recollection of the conversation with him. Um, and we already have the date and time exactly. Because you gave me the phone records. And did he, when you spoke with him, he identified himself? Is that how you got his name? Do you know? Or do you have it from like just paperwork from the complaint?

Craig: From the name?

Detective: Yeah. Like when you, when you guys spoke that a couple of years ago or whatever did, um, did he identify himself over the phone?

Craig:  I…um…

Detective:  He said like, I'm Andre BIS…

Craig: He had like a….I put in the affidavit when I wrote it that he left kind of this mumbly rambling message. He was a little hard to understand. He had a little bit of a, an accent with it. And I couldn't tell whether it was a, a Southern accent, a foreign accent. It was just not a, it was not a new England accent. We'll just say that…he was a bit mumbling. And I think I'm putting the affidavit that his last name sounded like bedsore.

Detective: Okay.

Craig: I later found out it's Bisasor. Uh, but I think just the, the way he pronounced it quick and listening to the recording.

Detective: Yeah.

Craig: Um, so it was just, uh, call me back. I've got a real estate matter. I want to discuss, I called him back. He briefly told me that hotel discrimination charges. Then inquired, who you got, did you get my name from Rob O'Brien? He said, yes. I said, I'm not interested. And he said, well, Rob told me you were interested. I said, that's not true. I'm not interested. And then went through this whole thing. Well, I understand you do real estate. And I said, I do, well, why don't you take my case? I'm not interested in your case. This was kind of the way that the whole thing played out

Detective: …And then, I'm just thinking of thing. And so, then you guys had that hearing when you went to represent the hotel. Yeah. And after that, you, you thought, I mean, you provided this affidavit to the new attorney, but you thought it was over.

Craig:  I, I figured at this point for purposes of the litigation, the lawsuit, I filed an appearance. I went to a hearing, they balked about my participation in the hearing I withdrew from the case. And so I literally went to court one day. Um, and we had no substantive issues that were presented. There was no factual information was presented. Um, we spent candidly most of the time in, uh, the ante room chambers, outside the courtroom doing some shuttle diplomacy back and forth.

Detective: And there was no. Um, but like, you didn't even know about the complaint that they were complaining to?

Craig: When they fought, when they contacted me?  They were looking to have it..

Detective:  No, no. I mean, um, after you, like you said, in April, 2019, you got this paperwork.

Craig:  Correct.

Detective: But before, so in the interim between like after giving us, you know, turning it over the case to the other lawyer and everything, did you, did you know that they were filing something with the, um, the attorney discipline?

Craig: I guess I anticipated that they would likely do so because they told the court in March of 2017.

Detective: Okay.

Craig: That they were still aggrieved. The entirety of this case was they were aggrieved by my egregious misconduct. And they gave me critical information that went to their detriment and caused them to lose their case. And as a result, they were going to be filing a disciplinary complaint against me.

Detective:  Okay.  It was just said, verbally that they were going to be…

Craig: Well, they put it in a pleading that they filed with the court.
Okay. So the successor attorney had put me on notice that they had made that representation. Based on how difficult they were, I, I was hoping it was done, but kind of said, okay, this stuff is fresh in my head. I'm going to put together

the, the phone records that I have, I did a screen capture of my phone call that I had with the attorney who had referred or potentially referred the case to me.  So I would have that and not be scrambling in 2019 disabled. Where's my phone record of the phone call I had. So I was able to pull up the contact that showed that phone call right on the screen, that phone screen. So I just kind of assembled that bundle, put it in an envelope. And…

Detective:  Do you know, do you know who that attorney is?  Did you give me his name?

Craig:  Rob O'Brien.

Detective:  It's Robert, what?

Craig: Robert O'Brien?

Detective: Right. Okay.

Craig:  And if you want, I'll give you his phone number.

Detective:  Sure. Is it, O apostrophe?

Craig:  O B R I E N.

Detective:  Okay. There's no apostrophe?

Craig:  Yeah, there is.
…........

# <u>Exhibit 28</u>

STATE OF NEW HAMPSHIRE – HILLSBOROUGH SUPERIOR COURT NORTH
Case: #216-2020-CV-00027 | Natalie Anderson, et al v Hilton Hotels Worldwide Inc., et. al.

**PLAINTIFF'S MOTION TO SUBMIT AUDIO EVIDENCE AND FOR IN-CAMERA HEARING**

1. Plaintiff Andre Bisasor moves this Court to allow submission of critical audio evidence and to conduct an in-camera hearing to review said evidence, that establishes material facts central to multiple claims in this action.

## I. INTRODUCTION

2. This motion addresses the submission of audio recordings that help to establish plaintiff's claims.

3. The audio evidence demonstrates that Donais has lied about material facts and contradicts Donais's sworn statements, and establishes a pattern of deception regarding statements made pertaining to the attorney-client relationship.

4. This evidence is also necessary to refute the extraneous material attached to Donais' 151 page motion to dismiss the amended complaint including his 2017 affidavit (which establishes impeachment on a baseline level), among other things, as well as to show pattern of dishonesty that extends well into 2019 and 2020 and to unauthorized third parties far removed from any judicial proceeding context.

5. Donais cannot attach his sworn statements to his motion to dismiss and not expect them to be subject to impeachment in the plaintiff's responses and defense against dismissal.

6. It is further needed to support plaintiff's motion for partial summary judgment.

## II. PROCEDURAL DILEMMA AND NEED FOR COURT GUIDANCE

7. Plaintiff faces a significant procedural challenge in that he needs to submit audio evidence but the court's e-filing system cannot accommodate audio file uploads. Plaintiff does not know how to submit this audio evidence as it cannot be uploaded via e-filing system, nor does plaintiff know how to file it otherwise or in what form. Note: This also needs to be protected as will be outlined further below.

8. Because the rules of the court do not address these issues, the plaintiff needs a clear procedure to submit this audio evidence and now asks that the court provide instruction and allowance of submission of this audio evidence as exhibit to counter, rebut, impeach the defendant's motion to dismiss and the attachments thereto.

## III. LEGAL FOUNDATION FOR AUDIO EVIDENCE SUBMISSION

9. Under New Hampshire Rules of Evidence 901, authentication of voice recordings requires showing that the recording accurately reproduces what it purports to record. Here, plaintiff can authenticate the recordings through personal knowledge, voice identification, and/or circumstantial evidence confirming accuracy.

1

10. The recordings are admissible as non-hearsay evidence because they are offered to prove the falsity of Donais' statements rather than for their truth.

### IV. NECESSITY FOR IN-CAMERA HEARING

11. An in-camera hearing is necessary because the recordings contain both admissible evidence and potentially privileged communications.

12. New Hampshire courts have authority to conduct in-camera review of materials containing privileged information. In Petition of State of New Hampshire, 2016 WL 1273982 (N.H. 2016), the New Hampshire Supreme Court recognized trial courts' authority to review evidence in camera when privilege issues are present, though noting procedural requirements must be followed.

13. The in-camera procedure serves multiple purposes: it protects privilege (if/where/when applicable); allows the Court to assess the admissibility and/or probative value of the evidence; and ensures fair adjudication while maintaining confidentiality protections (if/when/where applicable).

### V. SUBSTANTIAL NEED AND UNAVAILABILITY OF ALTERNATIVE EVIDENCE

14. This audio evidence is uniquely probative because it directly contradicts Donais's sworn statements, and other statements, thus impeaching him. No alternative evidence can demonstrate with equal force that Donais has consistently lied about material facts.

15.  This evidence is also crucial to proving intent and knowledge elements of plaintiff's claims.

### VII. CONCLUSION

16. The audio evidence at issue proves material facts central to this litigation and exposes Donais's pattern of deception. An in-camera hearing is necessary to protect legitimate privilege while ensuring this crucial evidence receives proper consideration.

17. The Court's guidance on submission procedures will facilitate fair adjudication while maintaining appropriate confidentiality protections. Plaintiff respectfully submits that justice requires examination of this evidence, and the proposed procedures provide a framework for doing so consistent with New Hampshire law and procedural requirements.

18. WHEREFORE, plaintiff respectfully requests that this Court:

    a) Allow submission of audio evidence through procedures necessary thereto.

    b) Schedule an in-camera hearing to review the recordings, determine admissibility and privilege protection;

c) Grant such other relief as the Court deems just and proper.

Respectfully submitted,
/s/ Andre Bisasor
ANDRE BISASOR

Date: September 26, 2025

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all parties/counsel of record via the court's electronic filing system.

/s/ Andre Bisasor
ANDRE BISASOR

3

# <u>Exhibit 29</u>

## RE: A Few Questions for Clarification

From: Mark Cornell (mcornell@nhattyreg.org)

To: quickquantum@aol.com; kcleveland@nhattyreg.org

Cc: rhilliard@uptonhatfield.com; liberty_6@msn.com

Date: Tuesday, September 29, 2020 at 04:35 PM EDT

Mr. Bisasor,

This e-mail is to address your questions 4-6, from your e-mail of September 28, 2020, at 5:08 (below).

First, in question 4, you wanted to speak to Brian regarding something unrelated to the matters I am currently assigned to handle. Brian has instructed me to deal with all matters involving you, Ms. Anderson, or Mr. Donais. There is a reason he has made this decision and I ask that you accept it.

My general takeaway from these questions is you are concerned that Mr. Hilliard and you are being treated differently. I want to address why that is. I understand you may disagree with what I am going to tell you, but please keep an open mind until the end of this e-mail.

1. Ms. Anderson, as a grievant and complainant is not a party to any Attorney Discipline Office matter. Our rules explicitly state this. See Rule 37A(I)(j) ("Status of Complainants. Complainants are not parties to informal or formal disciplinary proceedings. Complainants lack standing to file pleadings or object to motions or recommendations of disposition of disciplinary matters.)

2. The purpose of the Attorney Discipline System is to protect the public, not vindicate private rights. *See* Rule 37A(I)(e) - https://www.courts.state.nh.us/rules/scr/scr-37a.htm, *see also* Rule 37(19) limiting monetary sanctions to the ADO. - https://www.courts.state.nh.us/rules/scr/scr-37.htm. *See also Petition of Sanjeev Lath*, https://caselaw.findlaw.com/nh-supreme-court/1776457.html.

3. In order to have a due process right, a person must have a life, liberty or property interest which is subject to being impaired by the State. U.S. Const. 14th Amendment.

4. There is obviously no "life" interest involved in the ADO process.

5. As Ms. Anderson is not a "Party" and the ADO cannot vindicate any private rights of Ms. Anderson, there is no "property" interest at stake for her.

6. Ms. Anderson also does not have a "liberty" interest at stake in this matter either as the end result of the ADO process (no matter what it is) will not directly impact her in a manner that is recognized by the Courts as a "liberty" interest. Whether Mr. Donais is disbarred or absolved of wrong doing will have no direct impact on her ability to enjoy those privileges recognized as essential to the orderly pursuit of happiness by free people.

7. To the extent Mr. Donais made statements that falsely accused you of "playing the race card" (please forgive my inartful phrasing), that is a reputational harm. Reputational harms generally are not "liberty" interests, even when the reputational harm is caused by the government. *See e.g. Paul v. Davis* https://www.law.cornell.edu/supremecourt/text/424/693 and *Siegert v. Gilley* https://www.law.cornell.edu/supremecourt/text/500/226. In this case, the reputational harm was caused by a private citizen and the governmental action (via the ADO) is not intended to protect the reputational interests of the complainants.

8. Further undermining a claim of having a protected property or liberty interest in the outcome of the ADO matter is Ms. Anderson's ability to pursue a civil remedy against Ms. Donais.