UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 | BISASOR v. DONAIS, et. al.

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

1. Plaintiff Natalie Anderson, proceeding pro se, respectfully move this Court for leave to file a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## I. SUMMARY OF KEY POINTS

2. This is Plaintiffs' first motion to amend after filing the First Amended Complaint (FAC) on June 3, 2025.

3. The prior amendment was of right, not of permission. Amendment should be granted freely. Plaintiffs would like to amend and clarify claims and make a more definitive statement. As pro se plaintiffs, we are not expert pleaders and need an opportunity to revise claims to meet or be more in line with federal standards which are different from state court standards, especially since it now appears that the case will remain in federal court and given that the removal of federal claim has been rendered of none effect by the court's order on the remand motion.

4. Anderson seek to clarify and strengthen the claims. For example, plaintiffs seek to clarify and strengthen the race discrimination claim under New Hampshire law and Add a Section 1981 federal civil rights claim for race discrimination. Section 1981 is a valid federal cause of action for race discrimination in contracting, directly applicable to Defendants' conduct denying Plaintiffs access to legal services among other things.

5. Furthermore, amendment will cure alleged deficiencies raised in motion to dismiss where defendants argued that the discrimination claim was insufficiently pleaded.

6. The Second Amended Complaint provides explicit allegations of fact, and adds more definitive statement on claims such as the race discrimination claim including damages resulting from race discrimination.

7. Section 1981 is now appropriate to add back because the original removal raised questions about federal jurisdiction and plaintiffs conservatively omitted the Section 1981 claim to preserve state court options, but the Court's rulings have now confirmed federal court retention despite removal of federal claim. Thus, removal of federal claim was rendered of no effect by the court's retention of this case. Plaintiffs were blindsided by this as they fully expected the removal of the federal claim would result in remand. Since the presence or absence of the federal claim is no longer the basis for jurisdiction and it has been replaced by

diversity, then plaintiffs would like to reinstate the federal claim.

8. Plaintiffs would also like to add additional parties including necessary parties. Joinder is proper under Fed. R. Civ. P. 15, 19, and 20, as these parties' conduct arises from the same or similar operative facts and is integral to complete relief.

9. Plaintiffs would also like to reserve the right to add additional claims. In particular, Anderson seeks to add claims unique to her so as to preserve her rights as a second added plaintiff. Anderson was added as a second plaintiff upon the first amendment which Bisasor did as of right as the prior sole plaintiff. This is the first opportunity for Anderson to amend the claims in this case.

10. The amendment is timely. Now that it appears that the Court is not inclined to remand the case, it is the first time that plaintiffs can seek to properly amend the complaint and not waste time laboring under the uncertainty that the case will remain in federal court. Plaintiffs move promptly upon identifying the need to clarify allegations, and add the Section 1981 claim, which is appropriate now that the Court has confirmed federal court retention of this case.

## II. LEGAL STANDARD

11. Under Fed. R. Civ. P. 15(a)(2), amendment by motion is permitted when justice so requires. The Supreme Court held in Foman v. Davis, 371 U.S. 178, 182 (1962), that amendment should be "freely given" unless there is (1) undue delay, (2) bad faith, (3) dilatory motive, (4) repeated failure to cure deficiencies, (5) undue prejudice to the opposing party, or (6) futility of amendment. First Circuit courts apply this standard liberally, particularly in pro se cases. Erickson v. Pardus, 551 U.S. 89 (2007).

12. Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave when justice so requires." The Supreme Court has instructed that "this mandate is to be heeded," and that leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The standard is deliberately permissive: the rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept[s] the principle that the

purpose of pleading is to facilitate a proper decision on the merits." *Id.* "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

13. This liberal standard applies with particular force to *pro se* litigants. A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that *pro se* documents must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers"). Where, as here, a *pro se* plaintiff seeks to amend to cure identified deficiencies, the reasons for granting leave are at their strongest.

14. The case for liberal construction is especially strong in Anderson's circumstances. Anderson was added as a plaintiff only in the First Amended Complaint (Doc. 13), filed on July 29, 2025. She had limited input into the drafting of that pleading. She has had no prior opportunity to amend by leave of court — her earlier attempt (Doc. 84) was denied on procedural grounds without any consideration of the merits. She only recently obtained electronic filing access to the CM/ECF system, which is the sole mechanism for filing documents in this Court. Until she obtained that access, her ability to participate meaningfully in this litigation was constrained in ways that no represented party would face. The proposed Second Amended Complaint represents Anderson's first genuine opportunity to present her claims with full procedural compliance and informed by the Court's prior orders. The Court should evaluate this motion with those circumstances firmly in mind.

15. It should be noted that Anderson claims involve circumstances and history that differ from Bisasor's in certain material respects that warrant specific consideration and careful treatment by the Court.

### III. GROUNDS FOR AMENDMENT
### A. Curing the Local Rule 15.1 Deficiency

16. Anderson previously filed a Motion for Leave to File Second Amended Complaint on January 23, 2026 (Doc. 84). That motion was denied for failure to comply with District of New Hampshire Local Rule 15.1. The denial was procedural — the Court did not reach the merits of the proposed claims. This motion cures the identified deficiency in full. The proposed Second Amended Complaint is attached to the companion

motion; all new factual allegations, legal claims, and parties are identified in this memorandum; and the reasons for the amendment are explained below. Anderson was unrepresented when she filed the earlier motion and was unfamiliar with the Local Rule's specific requirements. She should not be penalized for a procedural misstep that a represented party would not have made, particularly where, as here, she has promptly corrected it upon understanding what the rule requires. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* pleadings held to "less stringent standards than formal pleadings drafted by lawyers").

17. As set forth below, the proposed amendment satisfies every factor governing leave to amend under *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs's claims are well-pled, timely, and not futile. No party will suffer undue prejudice. The amendment is filed in good faith. The Court should grant leave.

18. In other words, Anderson's prior motion (Doc. 84, filed January 23, 2026) was denied because it did not comply with Local Rule 15.1. That rule requires the movant to (i) attach the proposed amended pleading, (ii) identify new factual allegations, legal claims, or parties, and (iii) explain why those matters were not included in the original pleading. D.N.H. LR 15.1(a). This motion fully satisfies each of those requirements. The proposed Second Amended Complaint is attached as an exhibit to the companion motion filed by Plaintiff Bisasor; Anderson adopts and incorporates that same proposed pleading. All new claims, allegations, and parties are identified and explained in this memorandum. The deficiency that led to the denial of Doc. 84 no longer exists.

19. Anderson was unrepresented and without e-filing access when she filed Doc. 84. She was unfamiliar with Local Rule 15.1's specific requirements — requirements that are technical and procedural, not substantive. The denial was based entirely on noncompliance with those procedural requirements; the Court did not reach the merits of the proposed claims. The prior denial did not bar leave. Courts routinely permit *pro se* litigants to refile after procedural deficiencies are corrected, recognizing that "the purpose of pleading is to facilitate a proper decision on the merits," not to penalize litigants for technical missteps. *Foman*, 371 U.S. at 182; *Haines*, 404 U.S. at 520. The *Foman* framework specifically distinguishes between a "repeated failure to cure deficiencies by amendments previously allowed" — which is not present here — and a single procedural misstep corrected promptly by an unrepresented litigant.

**B. Anderson's Unique Claims**

20. While Anderson joins in the claims that Bisasor asserts against defendants, the Second Amended Complaint also asserts claims that are uniquely Anderson's and that cannot be prosecuted by Bisasor alone. These claims independently justify granting Anderson leave to amend, and they demonstrate that Anderson is a party with her own distinct injuries, her own legal theories, and her own stake in the outcome of this litigation.

21. First, Anderson asserts a claim for loss of consortium. As Bisasor's spouse, Anderson suffered the loss of her husband's companionship, affection, assistance, and support as a direct and proximate result of defendants' tortious conduct toward him. The defamation campaign orchestrated by the Donais defendants caused Bisasor severe emotional distress, damaged his professional reputation, and consumed his time and energy in the defense of his name. The interference by the Hilliard defendants with Bisasor's attorney-client relationships and settlement opportunities prolonged litigation that has spanned years and drained the family's resources. These harms to Bisasor caused derivative but real harm to Anderson and to the marital relationship. Loss of consortium is a recognized cause of action under New Hampshire law, and it belongs to Anderson alone — Bisasor cannot assert it on her behalf. If Anderson is not permitted to amend, this claim will never be heard.

22. Second, Anderson asserts a claim for tortious interference with settlement. Defendant Russell Hilliard played a direct role in sabotaging the Hilton Hotel settlement that would have resolved the underlying state court dispute between Bisasor and the Donais defendants. Anderson was a direct beneficiary of that settlement. She had a concrete economic expectancy in the settlement proceeds, which would have ended years of litigation and allowed the family to move forward. Hilliard's interference — interfering with counsel at the Primmer law firm, and at the NHLA, undermining the settlement process, and acting outside the scope of any legitimate professional role — caused the settlement to collapse. The consequences fell directly on Anderson: prolonged litigation, continued financial drain, and emotional harm from the uncertainty and stress that a resolution would have ended. This claim is personal to Anderson and arises from her own economic expectancy, not derivatively from Bisasor's claims.

23. Third, Anderson asserts a claim under 42 U.S.C. § 1981 for race discrimination in contracting. Anderson is African American. She was denied access to legal services and subjected to discriminatory treatment in the contracting process on account of her race. Section 1981 guarantees to all persons within the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a claim, Anderson must allege that (1) she is a member of a racial minority, (2) the defendant intentionally discriminated against her, (3) the discrimination concerned the making or enforcement of a contract, and (4) race was a determinative factor in the defendant's conduct. Anderson satisfies each element. She is African American; she sought legal services — a contractual relationship — and was denied or provided inferior services on account of race; and the pattern of discriminatory treatment was not isolated but part of a broader course of conduct that affected both plaintiffs. Anderson's Section 1981 claim is independent of Bisasor's and rests on her own experiences of racial discrimination in seeking and obtaining legal services. This claim was not included in the First Amended Complaint because plaintiffs conservatively omitted federal statutory claims while their motion to remand to state court was pending; once the Court denied remand and confirmed federal jurisdiction on diversity grounds, the tactical reason for omitting the Section 1981 claim no longer existed. The claim also provides an independent basis for federal question jurisdiction.

24. Fourth, Anderson was directly harmed by the defamation campaign that forms the core of this litigation. The defamatory statements that defendants disseminated did not target Bisasor alone. Defendants' statements about "plaintiffs" — characterizing them as violent, dangerous, mentally unstable, and criminal — encompassed Anderson by reference. Anderson is not a bystander to the defamation; she was personally targeted by statements that accused both plaintiffs of conduct that they did not commit, statements that were disseminated to community members, to the CrimeLine board, to family members, and to professional contacts. Anderson's own reputation was damaged by these false statements. Her defamation claims rest on her own reputational injury and her own emotional distress, not solely on injuries suffered by Bisasor.

### C. Anderson Was Not Meaningfully Heard on the Original Pleadings

25. Anderson was added as a plaintiff in the First Amended Complaint (Doc. 13), filed July 29, 2025. That

document was primarily drafted to present Bisasor's claims and to tell his story. Although Anderson's name appeared on the pleading and certain claims were asserted on her behalf, the First Amended Complaint did not fully or accurately present Anderson's individual claims, her distinct factual basis for relief, or the specific harm she suffered. Anderson's voice was, in practical terms, subsumed within Bisasor's narrative. The result was a pleading that did not do justice to Anderson's independent claims and that left her vulnerable to the argument — which defendants have in fact advanced — that Anderson is merely a nominal plaintiff without claims of her own.

26. Anderson's limited participation in shaping the original pleadings was not a choice. She only recently received electronic filing access to the CM/ECF system. Without that access, Anderson could not independently file documents, review filings in real time, or participate in the case on equal footing with other parties or even with her co-plaintiff. The practical consequence was that Anderson's ability to shape the litigation was filtered entirely through Bisasor's filings. This is precisely the situation that the Case Management Order's Paragraph 2 — permitting each plaintiff to file independently — appears designed to remedy. Anderson now exercises that right.

27. The proposed Second Amended Complaint gives Anderson the first real opportunity to present claims with full compliance, informed by the Court's prior orders, the pending motions to dismiss, and the Local Rules. Anderson's loss of consortium claim, her tortious interference with settlement claim, her Section 1981 claim, and her individual defamation claims are now properly alleged with the specificity that the Federal Rules require. Denying leave under these circumstances would effectively prevent Anderson from ever meaningfully shaping the operative pleading in a case where she is a named plaintiff with independent claims and distinct injuries.

### D. Adding New Parties and Claims Benefits Anderson's Case

28. The proposed Second Amended Complaint adds Karen Gorham as a defendant in her individual capacity and adds the State of New Hampshire / NH Superior Court Hillsborough North for ADA Title II claims. Both additions directly benefit Anderson and are necessary to present a complete picture of the discrimination and retaliation that both plaintiffs experienced.

29. Karen Gorham, formerly the Superior Court Administrator for the New Hampshire Judicial Branch, personally retaliated against Bisasor by banning him from contacting the clerk's office at Hillsborough Superior Court North. That retaliation was administrative, not judicial, and it was based on race. Bisasor raised concerns about a clerk staff member named Alma; Gorham retaliated by restricting his access to the court's administrative processes. Gorham referenced communicating with Judge Amy Messer behind the scenes regarding this administrative action. The effects of Gorham's retaliation fell on both plaintiffs. Anderson, as Bisasor's spouse and co-plaintiff in the underlying state court matter, was directly affected by administrative actions that impeded access to the court. When the clerk's office was placed off-limits to Bisasor, the family's ability to manage the state court litigation was compromised. Anderson personally experienced the consequences of that restriction. Gorham's conduct forms part of the factual basis for plaintiff's claims of race discrimination and interference with access to judicial processes. Gorham also served as a prosecutor at the New Hampshire Attorney General's office during a period overlapping with defendant Craig Donais's tenure there, a connection that was not previously known to plaintiffs and that further supports the pattern of coordinated conduct alleged in the complaint.

30. The ADA Title II claims address the systematic denial of disability accommodations in state court proceedings. Both Anderson and Bisasor have disability accommodation needs that were not met by the state court system. Title II of the Americans with Disabilities Act prohibits public entities from discriminating against qualified individuals with disabilities in the provision of public services, including access to the courts. *See Tennessee v. Lane*, 541 U.S. 509 (2004) (holding that Title II validly abrogates state sovereign immunity for claims involving access to the judicial system); *see also United States v. Georgia*, 546 U.S. 151 (2006). Bisasor and Anderson were denied reasonable accommodations that would have permitted them to participate fully in the state court proceedings — accommodations that would have been provided as a matter of course to similarly situated individuals. These claims could not have been included in the First Amended Complaint because plaintiffs were then seeking remand to state court and had conservatively omitted federal statutory claims to avoid any suggestion that federal jurisdiction was proper. Once the Court denied remand, the reason for that omission disappeared.

31. Plaintiffs' Section 1981 claim also benefits from the addition of these parties and claims. The pattern of race discrimination that Anderson experienced was not limited to the Donais and Hilliard defendants. It extended to the administrative apparatus of the state court system, where Bisasor, an African American man, and Anderson, an African American woman seeking access to legal services and judicial processes, were subjected to differential treatment on account of race. The proposed Second Amended Complaint tells a complete and coherent story of that discrimination, from the initial denial of legal services through the administrative retaliation in the state courts to the ongoing consequences in this federal litigation.

### E. No Futility, No Prejudice, No Bad Faith

32. No factor identified in Foman weighs against granting Plaintiffs leave to amend. The Court should consider each factor in turn.

33. The amendment is not futile. An amendment is futile only if the proposed complaint would be subject to dismissal for failure to state a claim. Foman, 371 U.S. at 182. The amended complaint contain claims, including those uniquely by Anderson, that are well-pled and satisfy the plausibility standard of Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Each cause of action alleges every required element with specific factual support. The loss of consortium claim is derivative of Bisasor's well-pled tort claims and is properly alleged by the injured spouse. The tortious interference with settlement claim identifies the settlement, Hilliard's specific acts of interference, Anderson's economic expectancy, and resulting harm. The Section 1981 claim identifies Anderson's race, the discriminatory denial of contractual rights, and the causal connection between race and the adverse treatment. The defamation claims identify the specific statements, the speakers, the recipients, the dates, and the basis for falsity. None of these claims is so deficient that it could not survive a Rule 12(b)(6) motion.

34. There is no undue delay. This motion is filed within the deadline established by the Case Management Order. The Case Management Order was issued on February 9, 2026, and established March 25, 2026 as the deadline for motions to amend. Anderson files this motion within that window. No discovery has been taken. No scheduling order beyond the Case Management Order has issued. The case remains in its earliest stages. The First Circuit has recognized that amendment at the pleading stage, before discovery, does not

constitute undue delay. Anderson's prior motion (Doc. 84) was denied on procedural grounds on January 23, 2026 — before the Case Management Order was even issued. Plaintiffs corrected the deficiency and files within the authorized deadline.

35. There is no prejudice to defendants. Defendants will have a full opportunity to respond to the Second Amended Complaint. They may file new motions to dismiss, answer, or take any other action permitted by the Federal Rules. Their substantive defenses — statute of limitations, privilege, failure to state a claim — are preserved in full. The only consequence of granting leave is that defendants must evaluate their defenses against a new pleading.

36. There is no bad faith or dilatory motive. Anderson seeks to amend for entirely legitimate purposes: curing the Local Rule 15.1 deficiency that led to the denial of her prior motion, presenting her unique claims in a manner that satisfies the Federal Rules, adding meritorious federal claims under Section 1981 and ADA Title II, and ensuring that the operative pleading reflects her individual circumstances as a plaintiff with independent injuries. There is no suggestion — nor could there be — that this motion is filed for delay, harassment, or any improper purpose.

37. There is no repeated failure to cure. Anderson's prior motion was denied once, on procedural grounds, for noncompliance with Local Rule 15.1. This is the first properly compliant motion to amend that Anderson has filed. The Foman factor concerning "repeated failure to cure deficiencies by amendments previously allowed" is inapplicable. A single procedural denial — corrected promptly — does not constitute the kind of "repeated failure" that would justify refusing leave to amend.

### F. Effect Under Local Rule 15.1(c)

38. Local Rule 15.1(c) provides: "When a plaintiff files an amended complaint as of right or with leave of court after the filing of a motion to dismiss for failure to state a claim, the motion to dismiss shall be automatically denied without prejudice." D.N.H. LR 15.1(c). Upon the filing of the Second Amended Complaint, both pending motions to dismiss — the Donais Defendants' Motion (Doc. 36) and the Hilliard Defendants' Motion (Doc. 61) — will be automatically denied without prejudice.

### G. Compliance with Local Rule 15.1(a)

39. Local Rule 15.1(a) requires this motion to (i) attach the proposed amended pleading, (ii) identify new factual

allegations, legal claims, or parties, and (iii) explain why they were not included in the original pleading. The proposed Second Amended Complaint is attached as an exhibit to the companion motion filed by Plaintiff Bisasor; Anderson adopts and incorporates that same proposed pleading. LR 15.1(b) requires that the amended pleading "reproduce the entire filing as amended" and not "incorporate a prior filing by reference" — the proposed Second Amended Complaint is a complete, self-contained document that satisfies this requirement. Plaintiffs identify the following new or revised matters:

40. **New claims:** (a) 42 U.S.C. § 1981, race discrimination in contracting — this claim was not included in the First Amended Complaint because plaintiffs conservatively omitted federal statutory claims while their motion to remand to state court was pending; once the Court denied remand and confirmed federal jurisdiction on diversity grounds, the tactical reason for omitting the claim no longer existed; this claim also provides an independent basis for federal question jurisdiction; (b) ADA Title II, disability discrimination in access to courts — this claim requires the addition of a public entity defendant (the State of New Hampshire / NH Superior Court Hillsborough North) and was not previously asserted for the same tactical reason; (c) loss of consortium (Anderson) — this claim was inadequately developed in the First Amended Complaint and is now properly alleged with specific factual support; (d) tortious interference with settlement (Anderson) — this claim, arising from Hilliard's role in sabotaging the Hilton Hotel settlement, is now separately and specifically alleged.

41. **New parties:** (a) Karen Gorham, individually — Gorham's retaliatory conduct as Superior Court Administrator was not included in the First Amended Complaint because plaintiffs were not yet aware of the full scope of her involvement or her connection to the Donais defendants through the New Hampshire Attorney General's office; that information came to light only through subsequent investigation and the filing of a related action, *Bisasor v. NH Judicial Branch* (D.N.H.); (b) State of New Hampshire / NH Superior Court Hillsborough North — added as a necessary defendant for the ADA Title II claims, as Title II requires suit against the public entity responsible for the denial of accommodations.

42. **Revised factual allegations:** Specific additions include: (a) a detailed savings statute and discovery rule timeline in the Procedural History section, allowing the Court to evaluate the timeliness question on the

face of the pleading; (b) identification of which defamatory statements were made outside judicial proceedings and to which private recipients, preemptively narrowing the privilege defense; (c) clarification of the dates on which plaintiffs first discovered each instance of tortious conduct; (d) specific allegations supporting each element of each cause of action, satisfying the plausibility standard of *Iqbal* and *Twombly*; and (e) allegations relating to Anderson's individual claims, including loss of consortium, tortious interference with settlement, Section 1981 race discrimination, and Anderson's personal injuries from the defamation campaign.

43. The interests of justice require that this case proceed on the merits, based on a well-pleaded complaint, rather than being resolved on technical deficiencies in the superseded FAC. The SAC reflects plaintiff's diligent effort to present his case in compliance with the Federal Rules, the Local Rules, and the Case Management Order. Granting leave to file the SAC will serve the interests of all parties and the Court by providing a complete notice pleading against which the merits of the dispute can be fairly evaluated. Plaintiff respectfully submits that no basis exists for denying leave under any of the *Foman* factors, and that this motion should be granted.

## IV. REQUEST FOR HEARING

44. Plaintiffs request a hearing on this motion.

45. Anderson was just allowed e-filing access to this court. Anderson is effectively just getting her start in this case. She could not seek relief or petition the court previously. In order to catch up, she has to provide limited arguments in her motions so as to not be prejudiced by the pace at which this case has advanced without being effectively present to access and petition the court. Thus, she has not presented all her arguments or justification for amendment.

46. In light of this, plaintiffs, in particular Anderson, requests hearing on this motion in order to better explain the request for amendment and to address any questions by the court, if any. If the court is inclined to grant this motion without hearing, then she does not need a hearing in that instance.

## V. CONCLUSION

47. Plaintiffs respectfully request that the Court grant the Motion for Leave to File a Second Amended Complaint. The amendments promote justice by clarifying claims, adding an applicable federal cause of

action, and ensuring complaint and claims meet federal standards.

48. Plaintiffs request pro se liberal treatment of this pleading.

49. For the foregoing reasons, Plaintiffs respectfully requests that this Court grant leave to file the proposed

Second Amended Complaint.

Respectfully submitted,
/s/ Natalie Anderson
Natalie Anderson

March 25, 2026
Re-filed Date: March 26, 2026

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Natalie Anderson
Natalie Anderson
