UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Andre Bisasor and Natalie Anderson

v.

Civil No. 25-cv-251-SE
Opinion No. 2026 DNH 129

Craig S. Donais, et al.

ORDER

Pro se plaintiffs Andre Bisasor and Natalie Anderson bring suit against certain attorneys and law firms, a New Hampshire Superior Court Judge, and an individual, alleging various state-law claims.[1] Broadly speaking, the plaintiffs' claims arise out of certain defendants': 1) decision not to represent them in other legal matters; 2) behavior in other litigation matters; and 3) alleged private and public statements about the plaintiffs. The defendants move to dismiss the amended complaint.[2] Doc. nos. 36 & 61.

The plaintiffs move for leave to file a second amended complaint. Doc. nos. 104 & 105. The proposed second amended complaint adds claims against the existing defendants and names several new defendants, including New Hampshire Superior Court Judges and a former Superior Court Administrator. Doc. no. 104-1. Shortly after the plaintiffs filed their motions to amend,

[1] The defendants named in the amended complaint (doc. no. 13), which is the current operative complaint, are Attorneys Craig Donais and Russell Hilliard, their law firms, Donais Law Offices, PLLC and Upton & Hatfield, LLP (Upton), New Hampshire Superior Court Judge Amy Messer, and Donais's wife, Mary Donais.

[2] As discussed further below, Judge Messer has not been served with the amended complaint and has not appeared or moved to dismiss.

Bisasor moved for the undersigned's recusal, requesting that the court transfer his case to another district and vacate all prior orders.[3] Doc. no. 107.

For the reasons that follow, Bisasor's motion for recusal and the plaintiffs' motions for leave to file a second amended complaint are denied, and the defendants' motions to dismiss are granted.[4]

## Background

The procedural postures of both this case and a prior case involving Bisasor and certain of the same defendants is relevant to the court's analysis of the pending motions. Therefore, the court provides a brief procedural background before discussing the plaintiffs' specific allegations in this case. See, e.g., Isijola v. Grasso, 768 F. Supp. 3d 166, 171 (D. Mass. 2025) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.") (cleaned up).

### I. Procedural Background

On June 20, 2022, Bisasor brought suit against Donais and Hilliard in Bristol Superior Court in Massachusetts. See Bisasor v. Donais et al., No. 23-cv-374-JL-TSM (D.N.H. 2023), dkt. no. 18 at 11-16. On May 4, 2023, Bisasor amended his complaint and added Donais Law Offices, Mary Donais, and Upton as defendants. See id., dkt. no. 1-3. The amended complaint was 92 pages, totaled 901 paragraphs, and included claims and allegations similar to those

[3] Anderson did not join in Bisasor's motion for recusal.

[4] Anderson moved for a hearing on the defendants' motions to dismiss. Doc. no. 90. The court does not find that oral argument would "provide assistance to the court." LR 7.1(d). The motion is denied.

alleged in the amended complaint in this case. Id. Upton removed the case to the United States District Court for the District of Massachusetts. Id., dkt. no. 1. The case was then transferred to the United States District Court for the District of New Hampshire after the defendants moved to dismiss or transfer the case on the grounds, in part, that they were not subject to personal jurisdiction in the District of Massachusetts. Id., dkt. no. 62. The court refers to that case as Bisasor I for ease of reference.

Bisasor I involved significant motion practice during its nearly two years, including Bisasor's 1) motion to remand the case to state court; 2) motion for jurisdictional discovery; 3) motion for leave to file a second amended complaint; 4) motion for Magistrate Judge Saint-Marc's recusal; and 5) numerous "emergency" motions requesting extensions of time and other forms of relief. On May 25, 2024, and May 31, 2024, Magistrate Judge Saint-Marc held hearings on certain motions, including Bisasor's motion to file a second amended complaint, in anticipation of deciding that motion so that the court could address the defendants' motions to dismiss, which had then been pending for seven and eight months. Shortly thereafter, Bisasor filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a). Id., dkt. no. 234. The court then dismissed the case and denied the defendants' motions to dismiss and Bisasor's 21 pending motions requesting various forms of relief without prejudice. Id., June 3, 2024 End. Or.

On June 3, 2025, exactly one year after the court dismissed the case in Bisasor I, Bisasor filed a "[RE-FILED] COMPLAINT AND DEMAND FOR JURY TRIAL" in New Hampshire Superior Court, Hillsborough County, Northern District. Doc. no. 1-1. He named as defendants Craig and Mary Donais, Donais Law Offices (collectively with Donais and Mary, the Donais Defendants), and Hilliard. The complaint was 100 single-spaced pages, included 1043 paragraphs and 14 claims, and alleged facts similar to those alleged in his amended complaint in

Bisasor I. The Donais Defendants removed the case to this court. Doc. no. 1. Hilliard and the Donais Defendants separately moved to dismiss (doc. nos. 2 & 8), and Bisasor filed an amended complaint as of right pursuant to Federal Rule of Civil Procedure 15(a) (doc. no. 13) mooting those motions.

The amended complaint made certain changes to the original complaint. First, Bisasor's wife, Natalie Anderson, joined as a plaintiff. The amended complaint also added Upton and Judge Messer as defendants. Although the amended complaint was slightly shorter than the original complaint (82 single-spaced pages and 1012 paragraphs), it increased the number of claims from 14 to 27.[5]

This case has since followed a pattern nearly identical to Bisasor I. Specifically, the plaintiffs have filed a motion to remand the case to state court, a motion for jurisdictional discovery, and dozens of other motions related to ancillary matters, many of which the plaintiffs improperly deemed "emergency" requests for relief.[6] The defendants have moved to dismiss the amended complaint. On February 9, 2026, the court issued a case management order. Doc. no. 91. The court noted in that order that the plaintiffs had recently indicated a "notice of intent to file critically important motions," which listed 13 specific motions that the plaintiffs planned to file. Id at 1. The court further stated: "Not including their requests to participate in electronic filing, the plaintiffs have filed more than 35 motions in this case, many of which were mislabeled as 'emergency' motions. The plaintiffs' excessive and often redundant filings have served to delay addressing the plaintiffs' claims on their merits." Id. at 1-2. The court provided that it was

[5] The amended complaint ends with "Count 31" but omits Counts 9, 16, 28, and 29.

[6] As discussed further below, as in Bisasor I, the plaintiffs in this case have moved for the recusal of the judge handling the case and a motion requesting leave to file a second amended complaint.

issuing the "case-specific" case management order "in an effort to assist the court in managing its docket and bringing this matter to an expeditious resolution" in "light of the plaintiffs' repeated filings and their recent indication of their intent to file several new motions which will only further delay resolution of this case." Id. at 2.

Because the plaintiffs indicated that they intended to file a motion seeking leave to file a second amended complaint, which would, if granted, moot the defendants' second motions to dismiss, the order allowed the plaintiffs to file "[a] **single** motion to amend their complaint, to be filed no later than February 23, 2026, which complies with the court's local rules, including LR 15.1." Id. After the court granted the plaintiffs' motion requesting an extension of time, the plaintiffs each filed a motion to requesting leave to file a second amended complaint. Doc. nos. 104 & 105.[7]

II. Allegations In The Amended Complaint (Doc. No. 13)

In January 2017, Bisasor and Donais had a brief phone conversation in connection with a landlord-tenant dispute between Bisasor and Hilton Hotels. Donais declined to represent Bisasor in that matter.

The plaintiffs allege that for many years after this phone call, Donais made several false statements about Bisasor. For example, Donais made "written statements to others" wrongly indicating that Bisasor had accused Donais of race discrimination for not agreeing to represent Bisasor. Doc. no. 13, ¶ 150. Donais also allegedly made false statements about Bisasor in June 2019 "to members of the crime-line board/a non-profit organization," id., ¶ 102, and on

[7] Although the plaintiffs did not comply with the court's Case Management Order that permitted them to file a "single" motion to amend their complaint, the court considers the arguments raised in both motions.

November 9, 2023, during the New Hampshire Supreme Court Advisory Committee on Rules public hearing, id., ¶ 290. Bisasor also alleges that both Donais and Mary told their sons that Mary was afraid to be home during the day because Bisasor was "crazy criminal[ly] dangerous," id., ¶ 813, and that Donais made similar statements to the Manchester Police Department in 2020, including statements that Bisasor "had a tenuous grasp on reality" and had "bugged" Donais's office, id., ¶ 315. The plaintiffs allege that these statements to the Manchester Police Department were efforts to disrupt Bisasor's relationship with the department, which included an event that Bisasor was arranging for the department centered on improving relationships between the police and local community members.

With regard to Hilliard, the plaintiffs allege that they had hired an attorney, whom they refer to as "Attorney Jane Doe," from Primmer, Piper, Eggleston & Cramer PC (Primmer). The representation was related to "matters concerning Craig Donais." Id., ¶ 684. The plaintiffs allege that Hilliard interfered with that relationship by contacting Primmer and inducing Jane Doe and Primmer to cease their representation of the plaintiffs. Hilliard allegedly also interfered with Donais's relationship with another attorney, "Attorney John Doe," by contacting him and inducing him to cease representing Bisasor. The plaintiffs also allege that "[i]n April 2021, plaintiff reached a settlement agreement on monetary amount with Hilton Hotel defendants, with Russell Hilliard representing Craig Donais in the private settlement negotiations as part of a joint defense agreement." Id., ¶ 756. Donais allegedly withdrew from the settlement agreement, which the plaintiffs allege was Donais and Hilliard's attempt to interfere with his settlement agreement with Hilton Hotels.

Finally, the plaintiffs allege that Judge Messer violated Bisasor's constitutional rights by denying his requests for reasonable accommodations in certain court actions in the New

Hampshire Superior Court. As noted above, however, the plaintiffs have not shown that they served Judge Messer with any pleadings in this case and she is not a party.

The Donais Defendants move to dismiss the amended complaint. Doc. no. 36. Hilliard and Upton (collectively, the Hilliard Defendants) separately move to dismiss the amended complaint. Doc. no. 61.

III. Allegations In The Proposed Second Amended Complaint (Doc. No. 104-1)[8]

The proposed second amended complaint is 257 pages and includes 1154 paragraphs and 44 counts. Bisasor asserts that the proposed second amended complaint "sharpens each cause of action" alleged in the amended complaint and seeks to address the arguments raised in the defendants' motions to dismiss. Doc. no. 104 at 4-6. It also adds claims against the existing defendants arising out of their "racially motivated refusal to provide, and interference with, legal services to Bisasor and Anderson, who are African American." Id. at 10. These include, for example, Anderson's claim for loss of consortium for the harms that the defendants' conduct caused Bisasor.

In addition, the proposed second amended complaint adds claims against new defendants. These new defendants and associated claims include:

- Former Superior Court Administrator for the New Hampshire Judicial Branch Karen Gorham. The proposed second amended complaint asserts claims on Bisasor's behalf against Gorham under 42 U.S.C. § 1983 for race discrimination and retaliation in violation of the Fourteenth Amendment's Equal Protection Clause and retaliation in

[8] Though Bisasor and Anderson filed separate motions requesting leave to file a second amended complaint (doc. nos. 104 & 105), Anderson's motion seeks leave to file the proposed second amended complaint attached to Bisasor's motion.

violation of the First Amendment. He also alleges a claim against Gorham for "violation of the New Hampshire Constitution." The claims arise out of Gorham allegedly banning Bisasor from contacting the clerk's office at the Superior Court, Hillsborough County, Northern District.

- The State of New Hampshire. The proposed second amended complaint asserts a claim against the State for violating Bisasor's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. The claim arises out of state superior court judges' repeated denials of Bisasor's requests for accommodations in judicial proceedings.
- Chief Judge of the New Hampshire Superior Court Mark Howard. The proposed second amended complaint asserts claims against Judge Howard for failing to act on Bisasor's complaints regarding his lack of reasonable accommodations in his superior court actions, particularly after Bisasor wrote to him directly on several occasions.
- Beatriz Van Meek. The proposed second amended complaint asserts a claim against Van Meek for civil conspiracy, alleging that she entered into an agreement with Donais to harm Bisasor.

## Discussion

Bisasor moves for the undersigned's recusal from the case. Doc. no. 107. The plaintiffs move for leave to file a second amended complaint. Doc. nos. 104 & 105. The defendants move to dismiss the amended complaint. Doc. nos. 36 & 61. The court addresses these motions in turn.

I. Motion For Recusal

Bisasor seeks my recusal and requests that the court reassign the case, transfer it outside of the District of New Hampshire, and vacate all prior orders to be reconsidered by the reassigned judge. He raises several grounds in support of his motion for recusal.

Bisasor notes that I previously served on the Board of Directors for New Hampshire Legal Assistance (NHLA), including serving as its president and co-chair. Bisasor alleges that an attorney from the NHLA both represented him in a matter related to this case and would be a "key witness" in the case, which he asserts creates a conflict of interest. He further argues that the plaintiffs' claims against Gorham in the proposed second amended complaint require my recusal because Gorham is currently the Chief Deputy Clerk for the District of New Hampshire and I recused myself from a prior case alleging claims against her and 13 other individual and institutional defendants. In addition, Bisasor complains about what he refers to as "prejudicial irregularities/events indicating pervasive bias." Doc. no. 107 at 18. These acts include the court's issuance of the Case Management Order, which required the plaintiffs to seek the court's permission before submitting any filing other than a motion seeking leave to file a second amended complaint, objections to any motions, motions to reconsider, or motions to extend deadlines.[9]

---

[9] Bisasor also filed an "Affidavit" in support of his motion for recusal. Doc. no. 108. It contains 58 pages of allegations broken into 191 paragraphs and attaches 42 pages of exhibits. In it, Bisasor expands his legal and factual arguments in favor of the bases for recusal contained in his motion. He also argues additional bases, including but not limited to: (1) Defendant Hilliard's role as Chair of the New Hampshire Bar Foundation, which distributes Interest on Lawyers' Trust Accounts funds to a number of organizations in New Hampshire, including NHLA; and (2) unserved defendant, Judge Messer's former employment at the Disability Rights Center of New Hampshire, which "routinely collaborates" with NHLA. I have considered each basis, individually and cumulatively, and concluded that they do not give rise to objectively reasonable doubts about my partiality.

As Bisasor notes, 28 U.S.C. § 455 governs the recusal of federal judges. Under that statute, judges must recuse themselves if their "impartiality might reasonably be questioned." § 455(a). "The inquiry is objective, from the perspective of a reasonable person, not one who is hypersensitive or unduly suspicious, but one who is a well-informed, thoughtful observer, who is aware of all of the surrounding facts and circumstances." Bourne v. New Hampshire, No. 12-CV-251-PB, 2012 WL 3962759, at *1 (D.N.H. Sept. 11, 2012) (quotations omitted); In re United States, 441 F.3d 44, 56–57 (1st Cir. 2006) (the standard for recusal is "whether an objective, reasonable member of the public, fully informed of all the relevant facts, would fairly question the trial judge's impartiality" (quotations omitted)). "To avoid delays and a waste of judicial resources, unnecessary recusals are to be avoided." Bourne, 2012 WL 3962759, at *1 (citing United States v. Snyder, 235 F.3d 42, 46 (1st Cir. 2000) ("Thus, under § 455(a) a judge has a duty to recuse himself if his impartiality can reasonably be questioned; but otherwise, he has a duty to sit.")). "[C]ourts must not grant recusal simply to avoid any allegation of prejudice since doing so 'would provide litigants with a veto against unwanted judges.'" Farr v. Webster Police Dep't, No. CV 24-40021-MRG, 2025 WL 836601, at *2 (D. Mass. Mar. 17, 2025) (quoting In re Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2001)).

Here, recusal is not warranted. As a member of the NHLA governing board, I did not perform work on behalf of NHLA clients or monitor client relationships with NHLA attorneys, Bisasor does not and cannot allege that the NHLA attorney in question or anyone else associated with NHLA ever discussed the plaintiffs or their NHLA matter with the undersigned, neither NHLA nor the attorney is a party to this case, the attorney no longer works for NHLA, I no longer serve on its board, and neither NHLA nor the attorney stands to gain or lose anything from the outcome of these proceedings.

Bisasor cannot create a ground for recusal by moving to amend his complaint to add claims against Gorham. A few additional concepts govern my review. First, I must consider the allegations in support of recusal not in isolation, but rather on the record as a whole. See In re Cargill, Inc., 66 F.3d 1256, 1260 (1st Cir. 1995). Second, "[c]laims of judicial partiality must be raised at the earliest moment that a litigant becomes cognizant of the purported bias." Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 857 (1st Cir. 1998). And third, § 455 "is not intended to be used as a forum shopping statute." U.S. v. Greenspan, 26 F.3d 1001, 1006 (10th Cir. 1994). As the First Circuit has explained, "[i]n the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns . . . [C]ourts cannot afford to spawn a public perception that lawyers and litigants will benefit by undertaking such machinations." In re Cargill, 66 F.3d at 1262–63.

As the plaintiffs acknowledge in their proposed second amended complaint, they included claims against Gorham in a prior federal lawsuit. Doc. no. 104-1, ¶ 1003; see also Bisasor, et al. v. New Hampshire Judicial Branch, No. 24-cv-360-NT-JCN (D.N.H. 2024) ("Bisasor II"). The claims against Gorham in Bisasor II were based on nearly the same allegations and raised the same legal theories as the claims in the proposed second amended complaint. Bisasor II, dkt. no. 1, ¶¶ 2, 45, 201-203. The plaintiffs originally filed that case in the District of Massachusetts because, they reasoned in that complaint, the claims against Gorham disqualified the entire District of New Hampshire. Id., ¶ 39. The case was subsequently transferred to the District of New Hampshire. After each judge in the District of New Hampshire individually recused for undisclosed reasons, it was referred to the District of Maine. The plaintiffs voluntarily dismissed that case before the assigned Maine district judge could rule on the magistrate judge's recommendation that she dismiss the complaint prior to service on jurisdictional grounds under District of Columbia Court of Appeals v. Feldman, 460 U.S. 462

(1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) unless the plaintiffs filed an amended complaint curing the defect.

The plaintiffs offer no legitimate justification for omitting Gorham from the initial complaint in this case or from the first amended complaint, in which they added the claims against Judge Messer and which are related to their claims against Gorham. Though Bisasor's motion to amend argues that "Gorham's addition is not a tactical afterthought" and that the plaintiffs only discovered the "full scope of [Gorham's] personal involvement" during the course of litigation in this case and in Bisasor II, the record does not support that contention. See doc. no. 104, ¶ 22. The plaintiffs voluntarily dismissed Bisasor II prior to service and, thus, prior to discovery. Discovery has not commenced in this case. Without discovery, it is difficult to imagine, and the plaintiffs have not attempted to explain, what facts they could have learned during the course of either litigation that could change their understanding of Gorham's alleged actions.

To the extent that the claims against Gorham are related to any previously included in this case, they are related only to the claims against Judge Messer. The plaintiffs have not served Judge Messer in the more than one year since they filed their amended complaint, suggesting that they are not motivated to pursue those claims. The proposed second amended complaint itself contains argument that the claims against Gorham require my recusal, reinforcing the court's understanding that the request to add claims against Gorham is an attempt to create a ground for recusal. See doc. no. 104-1, ¶¶ 1002-03.

Here, the plaintiffs were aware of their alleged claims against Gorham and their position that those claims would require recusal, chose not to include the claims in the original or amended complaint, and now (after the defendants' second motions to dismiss are ripe) seek to add them to this case in conjunction with a motion for my recusal, all without sufficient

justification for their delay. The plaintiffs should not be rewarded for lying in wait with claims that they believe will require recusal while the court and the defendants expend considerable resources, and then deploying those claims as the case is ready for a decision on the merits.

Further, the plaintiffs' history of seeking judicial recusals in their many cases supports the court's interpretation of the proposed amendment as an effort to judge shop. See e.g. Bisasor I, dkt. no. 226 (motion to recuse District of New Hampshire Magistrate Judge Talesha Saint-Marc); Bisasor II, doc. no. 1, ¶¶ 143-44 and ¶ 181 (describing efforts to seek recusal of New Hampshire Supreme Court Justices), and at ¶ 493 (describing a motion to recuse Judge John Kissinger); Bisasor v. Donais, Middlesex Superior Court, No. 2081-cv-00087, doc. no. 51 (Judge Camille Sarrouf denying request that she recuse). I find that the proposed claims against Gorham coupled with the motion to recuse are "interposed for suspect tactical and strategic reasons" because the plaintiffs are dissatisfied with my rulings. In re Kansas Public Employees Retirement System, 85 F.3d 1353, 1360 (8th Cir. 1996). Granting such a belated and blatantly strategic motion would have serious adverse effects on the efficient use of judicial resources and the administration of justice. See Tri–State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir.), cert. denied, 555 U.S. 1046, 129 S. Ct. 630, 172 L.Ed.2d 610 (2008). The record and reasoning here is analogous to those cases leading courts to recognize that recusal is not required when a litigant "has named a judicial officer as a defendant to force him out of the case and hence obtain assignment of a judge the litigant considers more desirable." Reddy v. O'Connor, 520 F. Supp. 2d 124, 131 (D.D.C. 2007).

This is especially true because the court is tasked only with deciding the motions to amend and not the merits of the plaintiffs' claims against Gorham. As explained below, the motions for leave to file a second amended complaint are denied on numerous bases. To require another court to duplicate this court's extensive effort to manage and decide the merits of the

plaintiffs' other claims only because I must also decide whether to allow an amendment that so clearly runs afoul of the standard announced by the United States Supreme Court in Foman v. Davis, 371 U.S. 178, 182 (1962), would be a waste of judicial resources.

Bisasor's dissatisfaction with the court's orders in this case likewise fails to constitute a valid basis for recusal. Generally, an extrajudicial source of information is required to establish that recusal is required because of actual prejudice. See Liteky v. United States, 510 U.S. 540, 555 (1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Id. "Almost invariably, they are proper grounds for appeal, not for recusal." Id. Here, Bisasor's complaints "do not display a deep-seated favoritism or antagonism that would make fair judgment impossible" such that they could nonetheless require recusal. See id.

I find that a reasonable person, fully informed of all of the relevant circumstances in this case, would not question my ability to be impartial, and I also find that I have been and remain impartial in this case. The motion for recusal is denied.

## II. Motions For Leave To File A Second Amended Complaint

The plaintiffs each move for leave to file a second amended complaint. Federal Rule of Civil Procedure 15(a) allows a party to amend a pleading without leave of court in circumstances not present here. "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, leave to amend is properly denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman, 371 U.S. at 182. "A court may also consider judicial economy." UMG Recordings, Inc. v. Suno Inc., No. CV 24-11611-

FDS, 2026 WL 2411155, at *1 (D. Mass. Aug. 18, 2026). "In short, a request to amend—especially a belated request—requires the court to examine the totality of the circumstances and to exercise its informed discretion in constructing a balance of pertinent considerations." Palmer v. Champion Mortg., 465 F.3d 24, 30-31 (1st Cir. 2006).

After considering the relevant circumstances, the court denies the plaintiffs' motions to amend. Each of the circumstances that counsel in favor of denying a motion to amend a complaint is present here.

At the outset, the court acknowledges that Anderson was not a named plaintiff in the original complaint that initiated this action. Anderson points to this fact in her motion seeking leave to amend, noting that this "is the first opportunity for Anderson to amend the claims in this case," implying that the court should apply a more lenient standard to her request for leave to amend. Doc. no. 105, ¶ 9. But the circumstances under which Anderson could amend a complaint as a matter of course under Rule 15(a) are not present here. See Fed. R. Civ. P. 15(a)(1) (allowing a party to amend its pleading once as a matter of course no later than 21 days after serving it or 21 days after service of a motion under Rule 12(b), (e), or (f)). Anderson herself argues only that the court should allow amendment under Rule 15(a)(2). At this stage, Anderson needs the court's leave to amend, as does Bisasor, and nothing about her status requires special consideration. See id.

Turning to the factors that suggest that denial of a motion to amend is appropriate, the plaintiffs' attempts to amend the complaint again have been unduly delayed. For all intents and purposes, Bisasor has been pursuing claims against Donais and Hilliard since at least June 2022 when Bisasor filed his initial complaint in Bisasor I.[10] Although the specific allegations, claims,

[10] The Donais Defendants represent in their motion to dismiss that the plaintiffs have filed other state-court cases, as well as grievances, against Donais arising out of the same set of

and defendants expanded in May 2023, Bisasor has essentially sought relief for claims arising out of the same limited set of facts since his original complaint in that case. See Bisasor I, dkt. no. 18 at 11-16 (alleging that Donais "prospectively represented the plaintiff" and "made false statements about [Bisasor] that are defamatory and damaging to [his] reputation" arising out of "bias or prejudice" because Bisasor is black, and that Hilliard assisted Donais in his unlawful conduct). He has filed three additional complaints since initiating Bisasor I—each no fewer than 80 single-spaced pages with more than 900 paragraphs of allegations—and the plaintiffs offer no legitimate justification for failing to include in an earlier version any of the allegations in the proposed second amended complaint against the existing defendants or the proposed additional defendants. For example, the plaintiffs themselves point out that the allegations against Van Meek were included in the proposed second amended complaint in Bisasor I and "are now reasserted in the present action." Doc. no. 104-1, ¶ 31. But the original and first amended complaints in this case inexplicably omitted Van Meek and the plaintiffs seek to add her now, when the defendants' motions to dismiss are ripe.

In addition to the gamesmanship already discussed connecting the motion to file a second amended complaint to the motion seeking recusal, for an additional reason the plaintiffs' attempts to file a second amended complaint appear to be gamesmanship and not a good faith attempt to state causes of action. After the Donais Defendants removed this case from state court, the plaintiffs amended the complaint to remove any federal-law claims in an effort to destroy the

---

facts as those alleged in their amended complaint and proposed second amended complaint since as early as 2020. Doc. no. 36-1 at 2 n.1. For instance, they include as an exhibit to their motion to dismiss an amended complaint against Donais filed on August 6, 2025, alleging nearly identical facts and claims, in a New Hampshire Superior Court action that Bisasor and Anderson initiated in January 2020. See doc. no. 36-4.

court's subject-matter jurisdiction and remand the case back to state court.[11] The plaintiffs did not attempt to hide their motivation for removing the federal-law claims, and Anderson reaffirms that fact in her motion for leave to file a second amended complaint. See doc. no. 105, ¶ 7. The court denied the motion to remand. Doc. no. 35. Anderson admits that the plaintiffs seek to add federal claims to their second amended complaint in response to the court's denial of their motion to remand. See doc. no. 105, ¶ 7. Such gamesmanship demonstrates bad faith on the plaintiffs' part. See generally Manney v. Reichert, No. 13 CV 4413 SJF GRB, 2014 WL 4805046, at *11 (E.D.N.Y. Sept. 26, 2014) (noting that omitting claims to preserve a federal or state forum and then amending a complaint "to add the omitted claims or assert additional claims that could have been asserted in the original complaint" is "an act of bad faith gamesmanship").[12]

The remaining factors further weigh against allowing amendment. As mentioned, Bisasor has filed several complaints against the defendants, each one seemingly attempting to plead around the arguments raised by the defendants in their motions to dismiss the then-operative complaint or to deprive the court of jurisdiction. Further, the defendants would suffer prejudice by allowance of the amendment. The defendants have moved to dismiss the operative complaints in numerous cases several times, and the presiding judge in each has been unable to address the merits of those motions because of the plaintiffs' attempts to amend their complaint or, in the case of Bisasor I, to voluntarily dismiss their claims on the eve of a ruling. Allowing the

[11] The defendants attempted a similar tactic with respect to their proposed second amended complaint in Bisasor I, but voluntarily dismissed the case before the court issued an order on the motion to amend. Bisasor I, dkt. no. 161, ¶ 36.

[12] The court also notes that Van Meek is allegedly a citizen of Massachusetts and could destroy complete diversity. While the plaintiffs seek to add federal claims at this time, the defendants argued in Bisasor I that the plaintiffs sought to add Van Meek for jurisdictional purposes. See Bisasor I, dkt. no. 168 at 22.

plaintiffs to yet again amend their complaint, while adding new defendants and asserting claims against them that have little relation to the plaintiffs' existing served claims would only cause further delay and prejudice the existing defendants.

Moreover, allowing the plaintiffs to amend their complaint would be futile. For reasons similar to those discussed below with regards to the defendants' motions to dismiss the amended complaint, the proposed amended complaint fails to comply with Federal Rule of Civil Procedure 8(a). The proposed claims also violate the joinder principles of Rules 18 and 20. They are claims against judges and court administrators alleging denial of requests for accommodations or other access to the courts and improper communications or relationships with other defendants. My review clearly establishes that the claims against these defendants do not factually arise from a common "transaction, occurrence, or series of transactions or occurrences" and will not involve universally common questions of law or fact. See Fed. R. Civ. P. 20 20(a)(2). Finally, the proposed claims suffer from other issues, including but not limited to their likely dismissal pursuant to sovereign immunity, judicial immunity, quasi-judicial immunity, qualified immunity, and, potentially, the Rooker-Feldman doctrine.

In short, after examining the totality of the circumstances and the pertinent considerations, the court denies the plaintiffs' motions for leave to file a second amended complaint. The court now turns to the defendants' motions to dismiss the amended complaint.

## III. Motions To Dismiss

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). To test a complaint's sufficiency, the court must employ a two-step approach. First, it must identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations. See id. Only then can the court determine whether the "combined allegations, taken as true, . . . state a plausible, not a merely conceivable, case for relief." Id. (quotation omitted). In light of the plaintiffs' pro se status, the court liberally construes their pleadings. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). "Even under this somewhat relaxed standard, [their] pro se status does not absolve [them] of having to comply with this Court's procedural and substantive law." White McLaughlin v. Cambridge Sch. Comm., 753 F. Supp. 3d 75, 79 (D. Mass. 2024) (quotation omitted) (cleaned up).

The amended complaint lists 27 counts against the various defendants. Seventeen are asserted against one or more of the Donais Defendants; seven are asserted against one or more of the Hilliard Defendants; two are asserted against at least one of the Donais Defendants and one of the Hilliard Defendants; and one is asserted against Judge Messer. The counts are as follows: 1) "Defamation and defamation per se by Craig Donais made to private parties" (Count 1, alleged against Donais); 2) "Defamation by Craig Donais made in a public meeting" (Count 2, alleged against Donais and Donais Law Offices); 3) "Interference with Contractual Relations by Craig Donais" (Count 3, alleged against Donais and Donais Law Offices); 4) "Interference with Advantageous Relations by Craig Donais" (Count 4, alleged against Donais); 5) "Breach of

fiduciary duty" (Count 5, alleged against Donais and Donais Law Offices); 6) "Breach of implied contract" (Count 6, alleged against Donais and Donais Law Offices); 7) "Breach of implied covenant of good faith and fair dealing" (Count 7, alleged against Donais and Donais Law Offices); 8) "Violations of the NH Consumer Protection Statute" (Count 8, alleged against Donais, Donais Law Offices, and Hilliard); 9) "Common-law civil rights / intentional racial interference and race discrimination pursuant nh law against discrimination (RSA 354-b)" (Count 10, alleged against Donais); 10) "Intentional infliction of emotional distress" (Count 11, alleged against Donais and Donais Law Offices); 11) "Civil conspiracy" (Count 12, alleged against Donais and Mary); 12) "Interference with [Primmer] contractual relations [in 2020]" (Count 13, against Hilliard and Upton); 13) "Interference with Advantageous Relations with Attorney John Doe [in 2022]" (Count 14, alleged against Hilliard and Upton); 14) "Interference with settlement contract [in 2021 and 2022]" (Count 15, alleged against Donais and Hilliard); 15) "Individual Misconduct" (Count 17, alleged against Upton); 16) "Firm vicarious liability under respondeat superior deemed within employment (alternative theory)" (Count 18, alleged against Upton); 17) "Direct firm negligence and partnership liability (backup alternative theory)" (Count 19, alleged against Upton); 18) "Partnership Liability under RSA 358-A (other alternative theory)" (Count 20, alleged against Upton); 19) "Professional negligence" (Count 21, alleged against Upton); 20) "Defamation by Mary Donais" (Count 22, alleged against Mary); 21) "Vicarious liability under respondeat superior" (Count 23, alleged against Donais Law Offices); 22) "Direct corporate liability" (Count 24, alleged against Donais Law Offices); 23) "Alter ego liability" (Count 25, alleged against Donais Law Offices); 24) "Professional entity liability under RSA 358-A" (Count 26, alleged against Donais Law Offices); 25) "Professional negligence/malpractice" (Count 27, alleged against Donais Law Offices); 26) "Civil conspiracy

to injure plaintiffs" (Count 30, alleged against Donais and Donais Law Offices); and 27) "Violation of the New Hampshire Constitution" (Count 31, alleged against Judge Messer).

The Donais Defendants and the Hilliard Defendants separately move to dismiss. Bisasor objects to both motions.[13] Because the defendants' arguments largely overlap, the court addresses the motions together, though it notes when arguments pertain to only certain defendants.

A. Violation of Federal Rule of Civil Procedure 8(a)

Initially, the Donais Defendants move to dismiss the amended complaint because it does not comply with Rule 8(a). "A district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s 'short and plain statement' requirement." Kuehl v. F.D.I.C., 8 F.3d 905, 908 (1st Cir. 1993). Compliance with Rule 8(a) is required because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Von Smith v. Al Thani, No. 20-2151, 2022 WL 2092505, at *1 (1st Cir. Feb. 14, 2022) (quotations omitted).

Here, the amended complaint does not comply with Rule 8(a). As discussed, although the amended complaint is difficult to follow, the plaintiffs' claims are based on a limited set of discrete events and statements. Yet the amended complaint is 82 single-spaced pages and contains 1012 paragraphs. The amended complaint "falls into the category of complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim" and which "fails to satisfy the minimum standard of

[13] Anderson did not file an objection to either motion to dismiss.

pleading under Fed. R. Civ. P. 8(a).” Lee v. Volumetric Holdings GP LLC, No. 23-CV-11197-DJC, 2024 WL 4134321, at *4 (D. Mass. Sept. 9, 2024) (cleaned up); see also Chalifoux v. Chalifoux, No. 14-CV-136-SM, 2014 WL 1681626, at *1 (D.N.H. Apr. 25, 2014) (“Although verbosity and length are not generally sufficient grounds for dismissal, complaints that are unnecessarily lengthy, repetitive, convoluted, or otherwise difficult to comprehend may be dismissed.”).

The court recognizes that the “federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits.” Kuehl, 8 F.3d at 908 (citation omitted). Thus, although the plaintiffs’ failure to comply with Rule 8(a) is grounds for dismissal of the amended complaint, such a dismissal is without prejudice, which would allow the plaintiffs to file yet another amended complaint and require the defendants to file yet another response to that pleading. For that reason, and in light of the federal rules’ preference for dispositions of claims on their merits, the court proceeds to address the plaintiffs’ claims on the merits.

## B. Statute of Limitations

The defendants argue that other than the defamation claim based on Donais’s alleged statement at a 2023 New Hampshire Advisory Committee meeting, each of the plaintiffs’ claims against them is barred by the applicable statute of limitations. They further argue that none of the claims is subject to New Hampshire’s savings statute.

“[I]t is well settled in [the First Circuit] that a motion to dismiss may be granted on the basis of an affirmative defense, such as the statute of limitations, as long as the facts establishing the defense [are] clear on the face of the plaintiff’s pleadings.” Foss v. E. States Exposition, 149

F.4th 102, 108 (1st Cir. 2025) (quotations omitted). The plaintiffs allege in their amended complaint and Bisasor agrees in his objections to the defendants' motions to dismiss that New Hampshire law governs the timeliness of the plaintiffs' claims. Under RSA 508:4, all actions must be brought "within 3 years of the act or omission complained of." "Although a cause of action arises as soon as all of the necessary elements are present, it does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both the fact of an injury and the cause thereof." Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010) (quotations and citation omitted).

The plaintiffs concede in their amended complaint that nearly all of their claims are untimely under RSA 508:4. Nevertheless, they allege that "[t]his complaint is timely filed under the New Hampshire savings statute, RSA 508:10, which preserves the rights of a plaintiff who voluntarily dismisses a federal action and refiles within one year." Doc. no. 13, ¶ 6.

RSA 508:10 provides: "If judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment." "In practice, RSA 508:10 operates to 'save' an action that would otherwise be time-barred." Vanz, LLC v. PMD Fin. Grp., LLC, No. 17-CV-145-LM, 2019 WL 1406150, at *5 (D.N.H. Mar. 28, 2019).

> In order to file a second suit under RSA 508:10, a plaintiff must meet five requirements: two that pertain to the first suit and three that concern the second suit. First, plaintiff's first action must have been timely filed. Second, the first action must have been dismissed for reasons not barring the right of action or determining it upon its merits. Third, the second suit must be brought within one year of the judgment dismissing the first suit. Fourth, the second suit must be brought against the same defendant or defendants named in the first action. Finally, the second suit must be comprised of the same claim or claims plaintiff asserted in the first action.

Id. (citations omitted).

Bisasor notes in his objections that he filed his original complaint in Bisasor I on June 20, 2022, voluntarily dismissed the case on June 3, 2024, and refiled the instant case exactly one year later on June 3, 2025. Doc. nos. 78 & 79. He argues that, therefore, any claim based on conduct on or after June 20, 2019, remains timely.[14]

Before determining whether the savings statute applies to any of Bisasor's claims, the court notes that it does not apply to any of Anderson's claims. Anderson was not a party to Bisasor I, and Bisasor does not argue in his objection that the statute applies to any claims on her behalf. Nor does she object to the motions to dismiss. All of Anderson's claims are barred by the applicable statute of limitations and are dismissed.[15] For ease of reference, and because the claims themselves almost entirely refer only to Bisasor, the court will refer to the claims and

[14] Given the ever-evolving nature of Bisasor's claims and the addition, subtraction, and then re-addition of certain defendants in the many complaints filed in the various actions, there are questions as to whether the savings statute could apply to claims against certain defendants, such as Upton. Nevertheless, for the purposes of this order only, the court assumes without deciding that the savings statute is not categorically inapplicable to the claims against any defendant.

[15] The court notes that the bases of Anderson's claims in this case are unclear in any event. As discussed, the original and amended complaints are lengthy and difficult to follow. Reading those pleadings generously, they appear to focus on conduct solely directed against Bisasor. Indeed, the amended complaint attempts to avoid addressing how any of the defendants' alleged conduct actually relates to Anderson, stating simply at the outset that "[t]he term 'plaintiff' will generally refer to Bisasor in particular with respect to assertions of facts, but in most cases, will also by implication apply to Anderson in terms of factual assertions, who is added as a second plaintiff." Doc. no. 13, ¶ 2. The amended complaint makes only one factual allegation of wrongdoing specific to Anderson, stating merely that Anderson has been forced to file bar complaints and civil actions against Donais to "stop Donais from injuring and defaming Bisasor and Anderson." See id., ¶ 571(g). That sole allegation is insufficient to state a claim. The amended complaint also specifies only that Counts 14 and 15 are "brought by both plaintiffs." Id. at pp. 61 & 63. The complaint acknowledges that those counts are based on conduct that occurred in 2021 and early 2022. Thus, Anderson is barred by the statute of limitations from bringing those claims. Moreover, as mentioned, Anderson did not file objections to the defendants' motions to dismiss the amended complaint.

allegations in the amended complaint as belonging to Bisasor, rather than to both plaintiffs, for the remainder of this order.

Based on the pleadings, Bisasor can meet at least the second, third, and fourth factors relevant to the application of the savings statute. Bisasor voluntarily dismissed his claims in Bisasor I under Rule 41(a), which does not bar his claims and is not a determination on the merits.[16] Bisasor filed this suit exactly one year after the judgment dismissing Bisasor I. And the same defendants are named in this suit and in Bisasor I.

The remaining factors, however, are somewhat less straightforward. The defendants argue that several of Bisasor's claims were not timely when he initiated the action in Bisasor I in 2022. It is true that Bisasor alleges that his brief phone call with Donais that gave rise to certain of his claims took place in January 2017, and that Donais made false statements about him in 2017. But Bisasor does not appear to allege any claims arising from the January 2017 phone call itself. Rather, he appears to allege that the phone call gave rise to a contractual or other relationship with Donais, and that Donais's later conduct breached duties arising from that relationship. Further, although Bisasor references allegedly false statements in 2017, it appears that any claims arising out of Donais's statements are based on representations beginning at some point in June 2019. In short, giving Bisasor every reasonable inference, it is not clear from the pleadings that any of Bisasor's claims were untimely when he filed Bisasor I.

The fifth factor, that "the second suit must be comprised of the same claim or claims plaintiff asserted in the first action," is more problematic for Bisasor. Here, the amended

[16] The defendants argue that Bisasor's voluntary dismissal of his claims in Bisasor I should not meet the second prong of the savings statute analysis because it was done without any justification other than to avoid an impending dismissal on the merits. They offer no support for their contention that a voluntary dismissal under Rule 41(a) can be construed as barring a right of action or as a determination on the merits for the purpose of New Hampshire's saving statute.

complaint includes several claims against the defendants that Bisasor did not assert in Bisasor I. Compare doc. no. 13 with Bisasor I, dkt. no. 1-3. Those claims include, at a minimum, Count 3 (interference with contractual relations);[17] Count 8 (violation of the New Hampshire Consumer Protection Statute, RSA 358-A);[18] Count 10 (violation of the New Hampshire Civil Rights Act, RSA 358-B); Count 15 (interference with settlement contract);[19] and Count 22 (defamation against Mary).[20] These claims, which are all based on conduct that allegedly occurred prior to June 2022, are time-barred and not subject to the savings statute. Therefore, they are dismissed.[21]

---

[17] Count 3 is based on allegations that Donais tortiously interfered with Bisasor's contract with the Manchester Police Department. Although Bisasor alleged in his amended complaint in Bisasor I that Donais tortiously interfered with his advantageous relationship with a police department, he did not allege that he had any contract with any police department. Bisasor's claim based on tortious interference with advantageous relations with a police department is asserted in this case in Count 4 and is not time-barred. The court further notes for the sake of clarity that the Bisasor's amended complaint in this case does not allege a contract with the Manchester Police Department in any event, and so would be dismissed on the merits were it not time-barred.

[18] Although Bisasor alleged a violation of the Massachusetts Consumer Protection Act in Bisasor I, the savings statute does not apply to his claim for violation of the New Hampshire Consumer Protection Act in this case. The savings statute "does not apply to 'a new legal claim based on the same facts alleged in the first lawsuit' but not raised until the second lawsuit." Prince v. Metro. Life Ins. Co., No. CIV. 08-CV-471-JL, 2010 WL 988730, at *9 (D.N.H. Mar. 16, 2010) (quoting Moulton–Garland v. Cabletron Sys ., Inc., 143 N.H. 540, 543 (1999)).

[19] Although Bisasor's amended complaint in Bisasor I made various references to the settlement contract related to Bisasor's action against Hilton Hotels, it did not assert any claim for interference with that contract. See Bisasor I, dkt. no. 1-3.

[20] Bisasor's amended complaint in Bisasor I named Mary as a defendant and included a claim for defamation against "all defendants." See Bisasor I, dkt. no 1-3 at 69. But neither the allegations underlying that claim nor any allegation in that complaint pertained to any false statements by Mary. Rather, the only allegations regarding Mary's conduct concerned her "aiding and abetting" Donais or otherwise "encourag[ing]" Donais's false statements as part of a conspiracy. Id. at 75, 84. Thus, Bisasor did not allege a claim for defamation against Mary in Bisasor I.

[21] As discussed further, the specific defamation claim alleged in Count 1 is also time-barred because the portions of the claim not protected by privilege were not alleged in Bisasor I.

In addition, the amended complaint includes several counts against the corporate defendants, Donais Law Offices and Upton, without including an individual defendant. These counts include Count 17 (individual misconduct); Count 18 (firm vicarious liability); Count 19 (direct firm negligence and partnership liability; Count 20 (partnership liability under RSA 358-A; Count 21 (professional negligence); Count 23 (vicarious liability); Count 24 (direct corporate liability); Count 25 (alter ego liability); Count 26 (professional entity liability under RSA 358-A); and Count 27 (professional negligence/malpractice). Bisasor did not allege any of these counts in Bisasor I, and they are based on conduct that occurred prior to June 2022. Therefore, to the extent that Bisasor intended these counts to assert causes of action, they are barred by RSA 508:4 and are dismissed.[22]

The remaining claims asserted against the Donais Defendants and the Hilliard Defendants are those in Counts 1, 2, 4-7, 11-14, and 30.

C. Privilege

The defendants argue that all of their allegedly wrongful statements in the amended complaint are "absolutely privileged" and therefore cannot form the basis of any claim.

> It is well-settled in New Hampshire that "certain communications are absolutely privileged and therefore immune from civil suit." Pickering v. Frink, 123 N.H. 326, 328, 461 A.2d 117, 119 (1983); see McGranahan v. Dahar, 119 N.H. 758, 762–63, 408 A.2d 121, 124 (1979). Statements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings. See Pickering, 123 N.H. at 329, 461 A.2d at 119; McGranahan, 119

---

Because Bisasor alleged a defamation claim in his amended complaint in Bisasor I, the court addresses the application of the statute of limitations to Count 1 in more depth below.

[22] Regardless, because the court dismisses all claims against the individual Donais Defendants and Hilliard, these claims would be dismissed on the merits even if they were not time-barred.

> N.H. at 763, 408 A.2d at 124; cf. Supry v. Bolduc, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972) (determining statements made during a public hearing were not absolutely privileged because the hearing did not have all the hallmarks of a judicial proceeding). "A statement is presumed relevant unless the person allegedly [injured] demonstrates that it was so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." McGranahan, 119 N.H. at 766, 408 A.2d at 126 (quotation omitted).

Provencher v. Buzzell–Plourde Assocs., 142 N.H. 848, 853 (1998). To be afforded the protection, statements must be "pertinent to the subject matter of the proceeding." McGranahan v. Dahar, 119 N.H. 758, 763 (1979). "While the pertinence requirement 'eliminates protection for statements made needlessly and wholly in bad faith,' the privilege does not require good faith or even an absence of malice in making the statements." Hungerford v. Jones, 988 F. Supp. 22, 27 (D.N.H. 1997) (quoting McGranahan, 119 N.H. at 762). The absolute privilege extends "to statements made during attorney disciplinary proceedings" and statements made to police. McGranahan, 119 N.H. at 763, 767-69.

Because of the prolix and jumbled nature of the amended complaint, the exact conduct on which each count is based is often difficult to discern. Nevertheless, Bisasor notes in his objections to the motions to dismiss that certain alleged defamatory statements were plainly not pertinent to any "judicial proceeding" and thus cannot be absolutely privileged. These include statements that Donais allegedly made to his own family. But certain complained-of statements are absolutely privileged. They include alleged statements that Donais made during attorney disciplinary proceedings and to the Manchester Police Department. The court addresses the application of any privilege on a claim-by-claim basis below.

D. Merits

In addition to their statute-of-limitations defense and their assertion that absolute privilege bars all claims, the defendants argue that each claim in the amended complaint fails to

state a plausible claim for relief. The court addresses the defendants' arguments for all claims other than those it has already determined are barred by the applicable statute of limitations as discussed above.[23]

Before addressing the defendants' specific arguments as to the merits, the court acknowledges the defendants' expressed frustrations that Bisasor has had numerous metaphorical bites at the apple between this case and Bisasor I in light of his behavior throughout the litigations. It is clear, as the defendants note, that Bisasor adapts his allegations in his various amended pleadings to attempt to avoid application of the privileges and the defendants' arguments on the merits, including by directly contradicting allegations he has made in earlier versions of his complaints. The court agrees that such conduct may invoke judicial estoppel, "which is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." Grace Navarro, v. Walgreens Boots Alliance, Inc., No. 1:24-CV-00290-JLT-SAB, 2026 WL 2355975, at *24 (E.D. Cal. Aug. 13, 2026) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (quotations omitted)). The court notes the relevance of that doctrine where appropriate but does not invoke it to dismiss any of the remaining claims, which fail on the merits for the other reasons stated below.

[23] Again, Bisasor's allegations in the amended complaint are often difficult to follow. To the extent that the court summarizes Bisasor's allegations as to each count, it does so in an effort to construe the complaint as liberally as possible in light of his pro se status.

1. Count 1: Defamation and defamation per se by Craig Donais made to private parties (against Donais)

"Under New Hampshire law, in order to survive a motion to dismiss, the plaintiff 'must have alleged facts that would show that the defendants failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff[ ] to a third party.'" Martin v. Mooney, 448 F. Supp. 3d 72, 84 (D.N.H. 2020) (quoting Automated Transactions, LLC v. Am. Bankers Ass'n, 172 N.H. 528, 216 A.3d 71, 77 (2019)). First, to the extent that Bisasor seeks to rely in Count 1 on broad allegations that Donais made alleged defamatory statements to a general category of unidentified people, such as "to several people including his family members, friends, colleagues, and to several government officials," doc. no. 13, ¶ 999(a), his claims fail. See Cluff-Landry v. Roman Cath. Bishop of Manchester, 169 N.H. 670, 680 (2017) ("Without any facts in her complaint identifying who the "others" were, when the statements were made, or the substance of the statements, the plaintiff has failed to "allege[ ] facts that would show that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about [her] to a third party."). Second, Bisasor cannot rest his claim on statements Donais made to the Manchester Police Department for the purpose of making a report about alleged criminal behavior or that were part of a criminal investigation, even if Donais's statements were untrue. See, Doyle v. YMCA of New Hampshire, No. 21-CV-112-SE, 2023 WL 5437159 (D.N.H. Aug. 23, 2023).

That leaves Bisasor's specific allegations that Donais made false statements about him to Donais's wife and sons, as well as to the Manchester Crime-Line Board. These statements include that Bisasor was violent, unstable, and posed a threat to Donais's family, as well as a statement that Bisasor had accused Donais of racial discrimination. The Donais Defendants argue that the defamation claim in Count 1 is time-barred. The court agrees.

The amended complaint alleges that Donais made defamatory statements to the Manchester Crime-Line Board in June 2019. Doc. no. 13, ¶ 102. Even accepting Bisasor's allegation in the amended complaint that he could not have learned about these statements until July 2020, id., ¶ 92, he concedes that any claim based on those statements is time-barred absent application of the savings statute because he filed this action in 2025, id., ¶ 96. Bisasor argues in his objection that his defamation claim based on Donais's statements to the board is timely under the savings statute in light of his amended complaint in Bisasor I. But Bisasor did not allege a defamation claim based on those statements in that pleading. The only mention of the Crime-Line Board in that complaint is an allegation that Donais told a police officer that he would see him the following day at a meeting for that organization, and the officer responded that he would be unable to attend. See Bisasor I, dkt. no. 1-3, ¶¶ 229, 236. Therefore, Bisasor cannot avail himself of the savings statute as to a defamation claim based on Donais's alleged statements to the Crime-Line Board. Count 1 is dismissed to the extent that it relies on those statements.

Bisasor's claim in Count 1 is also time-barred to the extent that it is based on Donais's alleged defamatory statements to his sons. The amended complaint alleges that "[i]n August 2020, Craig Donais told his wife and his sons Garrett Donais and Aiden Donais" false statements about Bisasor, such as that Bisasor was going to come to their house to harm them and was physically dangerous, in order "to induce fear and hysteria." Doc. no. 13, ¶ 125. Bisasor alleges that he learned of these statements "via a right to know request" in the fall of 2020. Id., ¶¶ 125, 128. Bisasor did not include any defamation claim based on these statements in his amended complaint in Bisasor I. That pleading made no mention of Donais's sons and did not allege that Donais made any such statements directly to them. See Bisasor I, dkt. no. 1-3. Therefore, any defamation claim based on those statements is time-barred.

The amended complaint in Bisasor I did allege that Donais made false statements about Bisasor to his wife, Mary. But those allegedly false statements pertained only to the details of Donais's brief phone call with Bisasor and did not relate to any of the alleged false statements about Bisasor's character that form the basis of his defamation claim in Count 1 here. See Bisasor I, dkt. no. 1-3, ¶ 831 ("Donais discussed the client conversation with the plaintiff with several people. These include his wife, Mary Donais . . . ."); id., ¶ 857. Thus, the defamation claim in Count 1 based on Bisasor's statements to Mary is not subject to the savings statute and is time-barred.

For the sake of completeness, the court notes that the amended complaint in Bisasor I contained a broad allegation that "Donais made defamatory statements to his own wife, Mary Donais." Bisasor I, dkt. no 1-3, ¶ 139. Even if that vague allegation were enough to invoke application of the savings statute—which it is not—any defamation claim based on Donais's alleged statements to his wife would still fail because such statements are privileged. Section 592 of the Restatement (Second) of Torts provides: "A husband or a wife is absolutely privileged to publish to the other spouse defamatory matter concerning a third person."[24] "Communications between spouses are so completely protected that under no circumstances can they be made the basis of an action for defamation. This is true although the matter communicated is known to be false and the purpose of the communication is altogether improper." Id., cmt. a. Thus, the communications between Donais and his wife "do not constitute publication" and cannot form

[24] Although New Hampshire has not explicitly adopted the marital privilege, because the "New Hampshire Supreme Court often looks to the Restatement" (Second) of Torts in developing New Hampshire law, the court predicts that the New Hampshire Supreme Court would adopt the privilege and applies it here. Wentworth-Douglass Hosp. v. Young & Novis Pro. Ass'n, No. 10-CV-120-SM, 2011 WL 446739, at *6 (D.N.H. Feb. 4, 2011); cf. Cross v. Anderson, No. CV-00-051-M, 2000 WL 1867747, at *2 (D.N.H. Dec. 18, 2000).

the basis of a claim for defamation. Medcalf v. Walsh, 938 F. Supp. 2d 478, 486 (S.D.N.Y. 2013).

2. Count 2: Defamation by Craig Donais made in a public meeting (against Donais and Donais Law Offices)

Bisasor alleges in Count 2 that Donais made defamatory statements about Bisasor in a November 9, 2023 New Hampshire Supreme Court Advisory Committee on Rules public hearing. He alleges that Donais stated in that meeting that Bisasor "wrongly accused him of misconduct," levied "specious untrue allegations," and "basically publicly called [Bisasor] a liar." Doc. no. 13, ¶ 292.

The allegations in the amended complaint regarding the Advisory Committee meeting are too vague to make out a claim for relief. They do not allege sufficient detail about the alleged false statements. Even if they had, dismissal would still be warranted. The Donais Defendants attach the Advisory Committee's meeting minutes from that date. Doc. no. 36-5. Those minutes, the authenticity of which Bisasor does not dispute, contradict the allegations in the amended complaint. See Garcia-Gesualdo v. Honeywell Aerospace of Puerto Rico, Inc., 135 F.4th 10, 13 (1st Cir. 2025) (In considering a motion to dismiss for failure to state a claim, a district court may rely on "documents the authenticity of which are not disputed by the parties." (quotations omitted)). Instead, they show that Donais simply spoke against a proposed rule change and his concern that it could expose confidential attorney-client communications and could harm those seeking legal advice. Doc. no. 36-5 at 1. It further reflects that Bisasor also spoke, and that he "asked that the record reflect his view that his comments are not welcome by the Chair or the Committee, an allegation that he has raised in an ongoing federal lawsuit that he has initiated against the Chair and the Committee." Id. at 2.

As such, Count 2 fails to state a plausible claim for relief. The Donais Defendants' motion to dismiss as to that count is granted.[25]

3. Count 4: Interference with advantageous relations (against Donais)

To make out a claim for tortious interference with economic relations, a plaintiff must allege: "(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference." Tessier v. Rockefeller, 162 N.H. 324, 337 (2011) (quotation omitted).

Bisasor alleges that Donais tortiously interfered with his economic relationship with the Manchester Police Department by making false statements to the department about Bisasor. He further alleges that these statements were efforts to disrupt Bisasor's economic relationship with the department, which involved putting on community events.

The Donais Defendants are entitled to dismissal of Count 4. First, as mentioned above, statements made to the police are absolutely privileged when they are sufficiently connected to judicial proceedings. Those statements may include "accusations" of wrongdoing, even when no judicial proceeding ultimately occurs. McGranahan, 119 N.H. at 768. Here, the statements that Donais allegedly made to the Manchester Police Department relate to his concerns that Bisasor may have acted unlawfully in "bugging" Donais's office because Bisasor claimed to have recordings of conversations, and other statements indicating Donais's fear of Bisasor. Such statements are absolutely privileged and, although Bisasor disputes that several of Donais's other

[25] The Donais Defendants also argue that the claim should be dismissed because of the claim splitting doctrine, as Bisasor is pursuing an identical claim against Donais in a different court. The court need not reach that argument.

statements fall under the privilege, he did not address or dispute the Donais Defendants' arguments regarding his statements to the police in his objection.[26]

Even if the alleged statements were not absolutely privileged, the amended complaint fails to allege plausibly that Donais knew of Bisasor's purported relationship with the Manchester Police Department. The amended complaint alleges that "[s]ince 2017, Craig Donais has been searching every publicly available document about plaintiff and has been investigating every document, every move, every step that plaintiff makes in his life, and he has been fastidiously tracking plaintiff's every move in order to try to use information against plaintiff since 2017." Doc. no. 13, ¶ 309. It further alleges that in light of these efforts, Donais must have read Bisasor's Linked-in page to see a post showing that Bisasor was a project leader for a community events program involving police and deduced that the Manchester Police Department participated in those events. Id., ¶¶ 312-13. Those allegations are too conclusory and implausible to be credited. See, e.g., Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 252 (1st Cir. 2010) ("[J]udges have some room to dispatch at [the motion to dismiss] stage claims that are highly implausible or pled only in conclusory terms."). Count 4 is dismissed.

4. Count 5: Breach of fiduciary duty (against Donais and Donais Law Offices)

"Under New Hampshire law, a fiduciary relationship is defined broadly and 'exists wherever influence has been acquired and abused or confidence has been reposed and

[26] The court notes that the Donais Defendants argue that Bisasor's allegations regarding Donais's comments to the Manchester Police Department are belied by allegations Bisasor made in his prior complaints. Although the court agrees, because Count 4 is dismissed in any event for the reasons stated, the court need to not address whether the doctrine of judicial estoppel bars the claim asserted in that count.

betrayed.'" Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 307 (D.N.H. 2012) (quoting Lash v. Cheshire Cnty. Sav. Bank, Inc., 124 N.H. 435, 438 (1984)).

The amended complaint appears to allege in conclusory fashion that Donais owed Bisasor a fiduciary duty based on their 2017 phone call during which Donais declined to represent Bisasor. It further alleges that Donais breached that duty by revealing unidentified confidential information that Bisasor disclosed during that phone call.

Even assuming without deciding for the purposes of this order that Donais and Bisasor's brief phone call created a fiduciary relationship, Claim 5 must be dismissed because the amended complaint does not allege that Donais breached any fiduciary duty. Although the amended complaint is replete with allegations that Donais disclosed to others "confidential" information that Bisasor offered during that call, it does not allege the specifics of that information or to whom Donais disclosed it. Rather, the amended complaint and Bisasor's objection repeatedly refer only to the allegedly false statements that Donais purportedly made regarding Bisasor's character. Therefore, the amended complaint does not allege adequately that Donais breached a fiduciary duty and Count 5 is dismissed.

5. Counts 6 (Breach of implied contract) and Count 7 (Breach of the implied covenant of good faith and fair dealing) (against Donais and Donais Law Offices)

The amended complaint alleges that an implied contract between Donais and Bisasor arose during the 2017 phone call when Donais declined to represent Bisasor. It further alleges that Donais breached that implied contract and the covenant of good faith and fair dealing in that implied contract when he disclosed confidential information and otherwise made false statements about Bisasor.

Counts 6 and 7 fail for multiple reasons. First, the amended complaint does not allege facts to show that there was a contract, express or implied, between Donais and Bisasor. Again, the amended complaint alleges that Donais declined to represent Bisasor on their phone call, which demonstrates that no contract was formed. See, e.g., doc. no. 13, ¶ 371. But even if an implied contract did exist, Counts 6 and 7 would fail for the same reason that Bisasor's breach of fiduciary duty claim fails: the amended complaint does not allege that Donais revealed any confidential information he obtained during Donais and Bisasor's brief phone call. Again, the amended complaint does not allege the specifics of any purportedly confidential information or to whom Donais revealed it. Therefore, Counts 6 and 7 are dismissed.

6. Count 11: Intentional infliction of emotional distress (against Donais and Donais Law Offices)

The amended complaint asserts a claim for intentional infliction of emotional distress arising out of Donais's alleged defamatory statements about Bisasor.

Under New Hampshire law, the "standard for making a claim of intentional infliction of emotional distress is very high." Moss v Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002). To state a claim, "a plaintiff must allege that a defendant by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." Tessier, 162 N.H. at 341 (quotation omitted) (cleaned up). The standard for extreme and outrageous conduct is satisfied only in those cases "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. (quoting Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009)) (cleaned up). In addition, "New Hampshire law does not recognize a cause of action for wrongful infliction of emotional distress where the factual

predicate sounds in defamation." DeMeo v. Goodall, 640 F. Supp. 1115, 1116 (D.N.H. 1986); Moss, 312 F.3d at 510 ("Emotional distress resulting from harm to reputation and good name caused by the publication of defamatory statements cannot give rise to a separate action for intentional infliction of emotional distress" under New Hampshire law.).

The Donais Defendants argue that Bisasor's intentional infliction of emotional distress claim is based entirely on allegations of Donais's alleged defamatory statements and therefore cannot give rise to a separate emotional distress claim. Anticipating that argument from prior motions to dismiss, the amended complaint states: "Note: Plaintiff's IIED claim is distinct from defamation-based emotional distress. This harm is separate from reputational injury and supports independent IIED recovery under Moss v. Camp Pemigewassett, 312 F.3d 503 (1st Cir. 2002)." Doc. no. 13, ¶ 659. As confirmed in Bisasor's objection, his theory is that Moss permits a claim for intentional infliction of emotional distress based on alleged defamatory statements so long as the plaintiff's harm is other than reputational injury. And Bisasor states in his objection that the alleged harm here was not to his reputation, but rather the creation of "fear and hysteria" that "[c]reated atmosphere where Plaintiff feared for his safety if he returned to Manchester." Doc. no. 79, ¶ 100.

Putting aside Bisasor's attempt to distinguish his alleged harm from "reputational harm," Bisasor misreads Moss. The First Circuit reaffirmed in Moss that a plaintiff could not base an intentional infliction of emotional distress claim on a defendant's alleged defamatory statements to others. Moss, 312 F.3d at 510. Instead, the court addressed the only avenue available to the plaintiff for his intentional infliction of emotional distress claim based on supposedly false statements – a claim based on allegedly false statements that the defendant made directly to the plaintiff. Id. at 511. Here, Bisasor's intentional infliction of emotional distress claim is based

entirely on Donais's alleged defamatory statements to others. Those statements cannot form the basis of an intentional infliction of emotional distress claim.

Even if they could, Bisasor's claim would still be dismissed. "Recovery on [a claim for intentional infliction of emotional distress] requires more than that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Id. (quotations omitted). Here, even if the alleged statements could "be considered offensive, [they are] not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. (quotations omitted).

7. Counts 12 and 30: Civil conspiracy (against Donais and Mary in Count 12 and against Donais and Donais Law Offices in Count 30)

Counts 12 and 30 allege that Donais conspired with others to injure Bisasor. Count 12 alleges that Donais conspired with his wife, Mary, and Count 30 alleges that Donais conspired with his law firm, Donais Law Offices.

"New Hampshire courts define civil conspiracy as 'a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means.'" Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 138 (D.N.H. 2014) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (further quotations omitted)). "The elements of a cause of action for civil conspiracy are '(1) two or more persons (including corporations); (2) an object to be accomplished (i.e. an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an

agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" Id. (quoting Jay Edwards, 130 N.H. at 47).

A "plaintiff must allege facts that show defendants knew the essential nature and general scope of a particular plan, or at the least that the parties decided to act interdependently, each actor deciding to act only because he was aware that the others would act similarly." Brady v. Mosca, 707 F. Supp. 3d 154, 163–64 (D.N.H. 2023) (quotations omitted), aff'd, No. 24-1378, 2026 WL 1077790 (1st Cir. Mar. 23, 2026). "Although conspiracy is a matter of inference, conclusory or speculative allegations about an agreement are insufficient to state a conspiracy claim." Id. at 164 (quotations and citations omitted).

The Donais Defendants argue that the civil conspiracy claims fail because any allegation of a purported agreement between any of the defendants is conclusory and the amended complaint does not allege any unlawful conduct or means in any event. Although Bisasor objects to the motion to dismiss as to Count 12, he does not address Count 30 or dispute the Donais Defendants' argument that the amended complaint fails to allege adequately the elements of a conspiracy between Donais and Donais Law Offices. The court agrees that the amended complaint fails to do so and Count 30 is dismissed.

So, too, is Count 12. The amended complaint is replete with conclusory allegations that Donais and his wife "conspired to commit" wrongful acts and "held a power of coercion they would not have had had they acted independently," and that Mary "assisted Craig Donais in his defamation of the plaintiff" and "provided Craig Donais with substantial assistance and encouragement." Those allegations are insufficient to allege plausibly a conspiracy. See, e.g., Alston v. Spiegel, 988 F.3d 564, 578 (1st Cir. 2021) ("Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the

formation of their agreement, will not suffice to defeat a motion to dismiss."). Therefore, Bisasor's civil conspiracy claims are dismissed.

8. Counts 13 (Interference with contractual relations) and Count 14 (Interference with advantageous relations) (against Hilliard and Upton)

Bisasor alleges in Count 13 that he retained Primmer to represent him in a matter and that Hilliard interfered with that relationship in September 2020 by contacting Primmer and causing the firm to cease representing Bisasor. Relatedly, Bisasor alleges in Count 14 that he "informally" engaged "Attorney John Doe" at a "legal organization in New Hampshire," doc. no. 13, ¶ 700, and that in April 2022, Hilliard similarly contacted Attorney Doe and improperly caused him to cease representing Bisasor.

The Hilliard Defendants argue that both claims should be dismissed for several reasons, including that they fail to state plausible claims for relief. The court agrees. First, with regard to Bisasor's claim concerning his "retainer agreement" with Primmer in Count 13, he does not allege that Primmer's decision to terminate its relationship with him amounted to an unjustifiable breach of that agreement. See Tessier, 162 N.H. at 337 (tortious interference with contractual relations "requires allegations that defendant wrongfully induced a breach of contract between plaintiff and a third party" (citing Roberts v. Gen. Motors Corp., 138 N.H. 532, 539 (1994)). Thus, Bisasor has not alleged an essential element of his claim for tortious interference with contractual relations in Count 13.

As for Count 14, Bisasor alleges that he had "consulted informally" with Attorney John Doe for many years without charge, and that he "had an informal agreement or arrangement that allowed the plaintiffs to ask legal questions or seek informal legal advice from time to time as needed for future matters thereafter." Doc. no. 13, ¶ 700. It is far from clear that New Hampshire

would recognize a claim for tortious interference with an attorney-client relationship brought by a client in such circumstances. See, e.g., Onyx Enters. Canada Inc. v. Royzenshteyn, No. CV 23-02913 (GC) (JBD), 2025 WL 2617509, at *8 (D.N.J. Sept. 10, 2025) (noting that it would be a "'rare' or 'unusual' circumstance in which a tortious interference claim may be brought based on an attorney-client relationship").

Regardless, Bisasor's allegations concerning Hilliard's alleged interference with Bisasor's relationship with Primmer and Attorney John Doe are conclusory and insufficient to support either tortious interference claim. The amended complaint alleges that Hilliard "engaged in conduct that interfered with Primmer's relationship with the plaintiffs," which consisted of making "defamatory comments about plaintiffs to Primmer and insist[ing] that Primmer sever their contractual relationship with the plaintiffs, and insist[ing] that Primmer should not do business with the plaintiffs." Doc. no. 13, ¶¶ 688, 693. It alleges similar conduct with regard to Bisasor's relationship with John Doe, stating that "Hilliard knowingly interfered with and induced a breaking of this relationship including using fraudulent misrepresentations or defamatory statements not to do business with the plaintiffs." Id., ¶ 745. Such allegations offer no details regarding those statements and consist of nothing more than legal conclusions. "Absent any details regarding the content or context of these statements, [Bisasor's] claims are too meager, vague, [and] conclusory to remove the possibility of relief from the realm of mere conjecture, even under the liberal pleading standard afforded to *pro se* litigants." Vaiano v. Experian Info. Sols. Inc., No. 1:24-CV-12245-JEK, 2025 WL 2323521, at *2 (D. Mass. Aug. 12, 2025) (dismissing claims relying on allegations that defendant "made 'statements in writing about [him]' that were 'untrue and attacked [his] character, and defamed [him]'") (quotations omitted); see Dobelle v. Flynn, 12 F. Supp. 3d 274, 297 (D. Mass. 2014) (dismissing tortious interference claim based on conclusory allegations that defendants made defamatory statements).

For those reasons, the Hilliard Defendants' motion to dismiss Bisasor's tortious interference claims in Counts 13 and 14 is granted.

## IV. Claim Against Amy Messer

Bisasor asserts a single claim against Judge Messer in Count 31, titled "Violation of the New Hampshire Constitution."[27] Though Bisasor repeatedly asserts that he challenges Judge Messer's administrative decisions rather than her judicial acts, he makes no factual allegations to support this legal conclusion. Instead, his allegations indicate that he is challenging Judge Messer's management of the docket and her rulings in an ongoing case. See doc. no. 13, ¶¶ 952-58 and ¶ 965 (complaining that Judge Messer "subjected him to procedural requirements that were particularly burdensome" and about her decisions regarding docketing and ruling on motions as well as her decisions regarding whether to hold hearings). He asks for "prospective equitable relief." Id., ¶ 973.

Because federal courts are courts of limited jurisdiction, a federal court "is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte." Spooner v. EEN, Inc., 644 F.3d 62, 67 (1st Cir. 2011). That is, issues of subject matter jurisdiction "can be raised sua sponte at any time" because they relate to the fundamental Article III limitations on federal courts. See McBee v. Delica Co., 417 F.3d 107, 127 (1st Cir. 2005). Though Judge Messer has not been served, the court dismisses Count 31 because it is barred by the Rooker-Feldman doctrine.[28] "The Rooker-Feldman doctrine prevents the lower federal courts from exercising

[27] The court assumes without deciding for the purposes of this order that Bisasor could bring his claims against Judge Messer under the New Hampshire Constitution.

[28] See generally Feldman, 460 U.S. at 476; Rooker, 263 U.S. at 415-16.

jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). In general, "the proper forum for challenging an unlawful state court ruling" is the state appellate system followed by a petition for review by the United States Supreme Court. Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps., 471 F.3d 220, 223 (1st Cir. 2006); 28 U.S.C. § 1257.

Bisasor's claim against Judge Messer challenges her rulings on his requests for accommodations in his state-court case. In other words, he seeks to overturn state court orders on his accommodation requests that were allegedly wrongful because they were the product of unlawful discrimination and denials of due process. The claim invites "this Court to assume the role of an appellate court vis-à-vis the state court rulings" in violation of the Rooker-Feldman doctrine. Fishman v. Massachusetts Prob. & Fam. Ct., No. CV 23-12459-WGY, 2023 WL 7284868, at *2 (D. Mass. Nov. 3, 2023), aff'd, No. 23-2042, 2024 WL 2813931 (1st Cir. Mar. 21, 2024). Consequently, the court does not have subject matter over Count 31 and it is dismissed.

## Conclusion

For the foregoing reasons, Anderson's motion for a hearing (doc. no. 90), Bisasor's motion for recusal (doc. no. 107), and the plaintiffs' motions for leave to file a second amended complaint (doc. nos. 104 & 105) are denied. The Donais Defendants' motion to dismiss (doc. no. 36) and the Hilliard Defendants' motion to dismiss (doc. no. 61) are granted. The court sua

sponte dismisses Count 31 for lack of jurisdiction. All other pending motions are denied as moot. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Samantha D. Elliott
United States District Judge

Dated: September 14, 2026

cc: Counsel of record.
Andre Bisasor, pro se.
Natalie Anderson, pro se.