UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

# PLAINTIFF ANDRE BISASOR'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e)

1. Plaintiff Andre Bisasor respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 59(e), to alter or amend the Judgment entered on 9-14-26 (Doc. No. 109), and the accompanying Order granting the defendants' motions to dismiss, denying plaintiffs' motions for leave to file a second amended complaint, denying motion for recusal, and sua sponte dismissing Count 31. In support, plaintiff states as follows.

## I. INTRODUCTION

2. A motion under Rule 59(e) may be granted to correct a manifest error of law or fact, to consider newly discovered evidence, to prevent manifest injustice, or to reflect an intervening change in controlling law. See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005); Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007). The rule exists so that a district court has an opportunity to correct its own errors before an appeal is taken, and its scope, while narrow, is fitted precisely to the categories of correction requested here. Plaintiff seeks reconsideration on grounds falling squarely within the first and third categories, and, in part, the second.

3. This motion focuses on discrete legal errors in the Court's application of New Hampshire's savings statute, the leave-to-amend analysis under Foman v. Davis, the sua sponte Rooker-Feldman dismissal of Count 31 against an unserved defendant whom the plaintiff was procedurally constrained from serving under the Court's own case-management order, the wholesale dismissal of plaintiff Anderson's claims, and newly documented facts bearing on the Gorham amendment.

## II. PREFACE

4. The court in this case does an amazing thing. After all of the factual allegations made and the clear wrongdoing by defendants, the court says everything should be dismissed with no accountability whatsoever for anything the defendants have done. Plaintiff Bisasor indicated to Judge Elliott that he wanted to submit incontrovertible evidence that Craig Donais had lied on the plaintiff and was dishonest, not only violating the rules of ethics but defaming the plaintiff as well; that he tried to racially stigmatize the plaintiff by manufacturing a false allegation that plaintiff had accused him of racism in a frivolous context; that he lied

to the Attorney Discipline Office and to multiple courts about his false statements. And Judge Elliott seems not in the least bothered by any of these false statements and ethical misconduct by Craig Donais. She says nothing of concern about this, even if only in passing that this is reprehensible conduct for an attorney[1]. Instead, she appears more concerned with minor things like how many motions plaintiffs filed, whether plaintiffs sign their names on pleadings for each other without allowance of access to e-filing, and whether the plaintiffs sought to add back federal claims in a motion to amend the complaint that were removed by a first amendment prior to a remand ruling. These are the things that appear to preoccupy the mind of Judge Elliott. None of the false statements made by Craig Donais, none of the racial targeted harassing actions and false statements by Craig Donais and Mary Donais, to other people in their community, to a local non-profit board, to public committees, appear to trouble Judge Elliott. In fact, it appears Donais is free to continue to engage in such conduct towards the plaintiffs with full blessing of Judge Elliott.

5. In 45 pages of a decision, where Judge Elliott chides the plaintiffs in numerous instances, and nitpicks and finds fault with every jot and tittle of the plaintiff's pro se writings, that it is not up to the standard of a well-trained lawyer, that the writings are either too long or too vague while also inadequately pleaded on the details, or still on the other hand, that it corrects too much of the deficiencies from prior filings in "pleading around defects" identified by the defendants. The plaintiffs cannot win. They are boxed-in from every angle by Judge Elliott. Further, Judge Elliott mentions nothing about Craig Donais' history of attorney misconduct, even when cited by a Connecticut superior court judge who referred the matter to the Connecticut bar for disciplinary investigation and to the NH ADO. Moreover, Judge Elliott was inclined to look up and cite judicial recusal motions filed by plaintiff in past cases to insinuate an allege pattern of forum-shopping but did not care to look up or cite Donais' history of attorney discipline complaints and referrals for misconduct as a pattern of dishonest conduct by Donais. Judge Elliott gives all grace to the

[1] Borrowing an analogy by "Just Mercy" author Brian Stevenson, plaintiff raise the following question: if these allegations were made a Jewish person suffering from antisemitic racism by a German attorney, would the court look at the case in the same way? Or would the Court find the conduct appalling and outrageous? The Court makes no comment or finding on the conduct of the defendants or their lawyers. Everything they have is acceptable to the court. Everything the lawyers have done is deemed within their tactical and strategic discretion and an exercise of legal rights.

defendants when the Hilliard defendants failed to their motion to dismiss timely or when both Donais and Hilliard defendants failed to make required corporate disclosures upon appearance to the case or when they both failed to include diversity as a basis for removal in their removal notice but allowed defendants to raise diversity after it was too late to be pled after removal. She denied plaintiff's motion for default excusing their delay and found nothing wrong with the Donais defendants' false statements about service of the motion to dismiss on plaintiff Anderson in October 2025. Everything the defendants and their lawyers have done is just fine and dandy, and acceptable. Plaintiffs, however, can do nothing right. Everything they have done is subject to criticism at almost every turn by Judge Elliott. Plaintiffs as educated African-Americans in this country can tell what preferential treatment looks like, and this fits the bill reasonably.

6. Further, in terms of the past history of related cases that Judge Elliott has tried to use against plaintiffs including citing voluntary dismissal or extensions sought or corrections to pleadings by plaintiffs, Judge Elliott seems to gloss over the fact that the defendants missed their deadline to respond to the complaint in Bristol Superior Court, but they removed the case before the Bristol superior judge could rule on a motion to default. Further, Hilliard defendants did not file their motion to dismiss timely in Massachusetts Federal Court, for which default was sought. And it happened again in this court, where the Hilliard defendants didn't file their motion to dismiss until December 2025. Judge Elliott has nothing to say about that history. She in fact denied plaintiff's motion for default with no explanation. Further, when both defendants filed their motion to dismiss in Massachusetts Federal Court, they excluded certain defenses including failure to state a claim. After the case was transferred to NH Federal Court, the defendants changed their defenses after plaintiff pointed out in his opposition that the defendants had not denied the claims on the merits. This could be construed as the defendants "pleading around" the arguments of plaintiff's oppositions but Judge Elliott ignores this history and applies that standard only to plaintiff and uses it against plaintiff as a basis to grant dismissal or to deny motion to amend. It was never used against defendants for the same alleged actions. Note: "pleading around arguments" is a ridiculous invention by the defendants offered in their motion to dismiss as a way to nullify the amendments that resolve the alleged deficiencies in pleading that they asserted (and Judge Elliott appear to have adopted this fallacious argument

hook line and sinker without any logical or legal scrutiny). If a defendant claims that a plaintiff did not adequately plead a statement of claim because he left out the word "contract" and then the plaintiff amends the complaint and adds the word "contract" to cure the deficiency, then how is that "pleading around the defense arguments". This is among the most ridiculous non-sensical things plaintiff has heard in a legal matter. Isn't the point of amending a complaint after a motion to dismiss to cure pleading deficiencies regarding how or what is stated in the pleadings in order to survive a motion to dismiss challenge? Every other plaintiff in the country is allowed to do this very thing without it being used against them. No other judge has ever adopted this as a reason to use against any plaintiff. There is no case law or precedent for it, especially for pro se plaintiffs who are granted liberal leeway to attempt to meet the pleading requirements to survive Rule 12(b) motions. That Judge Elliott has adopted this reasoning in her Order demonstrates that something is terribly wrong and she has a serious blind spot in how she handled the case and the rulings including the 45-page order of dismissal.

## III. STANDARD

7. Rule 59(e) allows a court to alter or amend a judgment to correct a manifest error of law or fact. At the pleading stage the governing question is whether the complaint's factual allegations, accepted as true, state a plausible claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Where dismissal rests on an affirmative defense such as privilege, the facts establishing the defense must be "*clear on the face of the plaintiff's pleadings.*" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)).

## IV. GROUNDS FOR RELIEF

### A. Manifest Error in Applying the New Hampshire Savings Statute

8. The Court held that Bisasor can meet at least three of the five Vanz factors governing application of RSA 508:10 but concluded that the fifth factor, identity of claims between the first and second actions, is not satisfied for Counts 3, 8, 10, 15, and 22, and further that the corporate-only counts (17 through 27) are likewise unprotected. Order at 25 through 27. Plaintiff respectfully submits that this determination reflects a misapplication of the controlling New Hampshire authority and an unduly narrow reading of what constitutes the same claim under the savings statute.

9. The controlling decision, Moulton-Garland v. Cabletron Systems, Inc., 143 N.H. 540 (1999), does not require literal identity of counts as pleaded. It bars only truly new legal claims resting on a distinct factual predicate. The New Hampshire Supreme Court framed the inquiry as whether the second action seeks recovery on the same right of action that was timely asserted in the first, not whether every count label in the second complaint appeared verbatim in the first. Id. at 543. The purpose of the savings statute, as this Court has recognized, is remedial and is to be construed liberally to preserve substantive rights timely pursued. See Vanz, LLC v. PMD Financial Group, LLC, 2019 WL 1406150, at *5 (D.N.H. Mar. 28, 2019).

10. Applied to the record, the operative amended complaint in Bisasor I alleged, as a nucleus of operative fact, the same course of conduct by Donais, Mary Donais, Donais Law Offices, Hilliard, and Upton that underlies the counts the Court has now stripped of savings-statute protection. That amended complaint alleged defamation by Donais, tortious interference with plaintiff's professional and community relationships, aiding and abetting by Mary Donais, and firm-level responsibility for the individual attorney conduct. The claim labels in the present amended complaint refine and re-organize those same theories against the same defendants for injuries arising out of the same events. Under Moulton-Garland, that is enough to satisfy the fifth Vanz factor.

11. The Court's application of Prince v. Metropolitan Life Insurance Co., 2010 WL 988730 (D.N.H. Mar. 16, 2010), extends that decision beyond its holding. Prince addressed a genuinely new legal theory grafted onto old facts, not a re-pleading of the same rights of action. The counts at issue here are not new legal theories in that sense. Count 3 (tortious interference with contractual relations concerning the Manchester Police Department relationship) is a refinement of the tortious interference with advantageous relations pleaded in Bisasor I arising from the same events. Count 8 (RSA 358-A) is the New Hampshire analogue of the Massachusetts consumer-protection claim brought in Bisasor I on the same conduct, changed only because the case now sits under New Hampshire law. Count 15 (interference with the Hilton settlement) rests on the settlement transactions that Bisasor I described in detail. Count 22 (defamation by Mary Donais) rests on statements about plaintiff's character that Bisasor I alleged and encompassed in a defamation claim against all defendants, including Mary as a named defendant.

12. To label these as new claims for savings-statute purposes is to require count-level identity that Moulton-Garland does not demand. Moreover, it would bestow an unfair asymmetrical tactical advantage on defendants who remove cases from state court to federal court, or who obtain transfer to New Hampshire of a federal case originating in Massachusetts. A plaintiff should not be penalized, because defendants removed a case to federal court or obtained transfer of a case between federal courts, and where the plaintiff was required to amend the label of the statutorily-based claims, in order to proceed in the new jurisdiction and survive a motion to dismiss.

13. The Court's alternative determination that Count 22 fails on absolute-privilege grounds under Restatement (Second) of Torts section 592 is likewise a manifest error because New Hampshire has not adopted section 592 and this Court's Erie-based prediction that it would rest on a thin record. Wentworth-Douglass Hospital v. Young & Novis Professional Ass'n, 2011 WL 446739 (D.N.H. Feb. 4, 2011), does not adopt section 592, and Cross v. Anderson, 2000 WL 1867747 (D.N.H. Dec. 18, 2000), does not either. Where a federal court sits in diversity, it must apply state law as the state's highest court would, and where that court has not spoken, the federal court should be reluctant to expand privileges that the state courts have not embraced.

14. The Court's Erie prediction on this point is manifest error and, at minimum, warrants either reconsideration or certification of the question to the New Hampshire Supreme Court. Reconsideration is respectfully requested on the savings-statute analysis for Counts 3, 8, 10, 15, 22, and 17 through 27, and on the alternative privilege ground applied to Count 22.

**B. Manifest Error in Denying Leave to Amend Without Count-by-Count Futility Analysis**

15. The Court denied plaintiffs' motions for leave to file a second amended complaint on grounds of undue delay, bad-faith gamesmanship, prejudice, and futility but did not conduct the count-by-count futility analysis that Foman v. Davis, 371 U.S. 178, 182 (1962), and its First Circuit progeny require when futility is invoked as a ground for denial. See Hatch v. Department for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001); Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).

16. The Court's futility analysis at pages 17 through 18 of the Order rests on generalized conclusions that the proposed second amended complaint violates Rule 8(a), violates the joinder principles of Rules 18 and 20,

and would be subject to sovereign, judicial, quasi-judicial, and qualified immunity, and potentially the Rooker-Feldman doctrine. Those observations, respectfully, are not a substitute for the required analysis of whether each proposed cure to each specific defect identified in the Order on the amended complaint would survive a renewed motion to dismiss. Because leave to amend is to be freely given when justice so requires, and because pro se litigants in particular are entitled to an opportunity to cure identified defects unless amendment would plainly be futile, the absence of that individualized analysis is a manifest error.

17. The specific defects the Court cites as grounds for dismissal, including the lack of specificity in the tortious-interference counts against the Hilliard Defendants, alleged deficiencies in the defamation pleading, and the framing of the claims against Judge Messer, were addressed and cured in the proposed second amended complaint. The Court did not analyze whether those cures were sufficient. Under Foman, the plaintiffs were entitled to that analysis before leave was denied on futility grounds. Reconsideration is respectfully requested with respect to the denial of leave to amend as to those counts for which the proposed second amended complaint offered specific cures to the deficiencies later cited in the merits ruling.

**<u>C. Manifest Error in Sua Sponte Dismissal of Count 31 Under Rooker-Feldman</u>**

18. The Court dismissed Count 31 against Judge Messer sua sponte for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine. Order at 43 through 44. Three features of that ruling warrant reconsideration. First, Rooker-Feldman is a narrow doctrine. It bars only cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district-court proceedings commenced and inviting district-court review and rejection of those judgments. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005); Skinner v. Switzer, 562 U.S. 521, 532 (2011). The Supreme Court has repeatedly cautioned that Rooker-Feldman does not reach claims that a state actor caused injury through independent conduct, even where that conduct occurred in the course of state judicial proceedings. The amended complaint alleges that Judge Messer's conduct in denying accommodations was administrative in nature, involving access-to-court policies, and seeks prospective equitable relief.

19. The Court treats that allegation as a legal conclusion and disregards it but does not distinguish between judicial and administrative acts, does not address the administrative-versus-judicial line drawn in more

recent First Circuit and district-court authority, and does not analyze whether prospective equitable relief itself falls outside Rooker-Feldman under Skinner. Further, there was no judgment in the state court case when plaintiff filed the motion to amend complaint. If the case was ongoing, then Rooker-Feldman does not apply. Note: There still is no final judgment in the state court case as the matter later went on appeal to the New Hampshire Supreme Court where it is currently pending.

20. Second, the sua sponte dismissal was entered without notice or an opportunity to be heard, on a claim against a defendant who has not been served and has not appeared. Even where a district court has authority to raise jurisdictional issues sua sponte, notice and an opportunity to respond ordinarily should precede dismissal. See Gonzalez-Gonzalez v. United States, 257 F.3d 31, 36 through 37 (1st Cir. 2001). The absence of such notice compounds the substantive error and warrants reconsideration.

21. Third, and critically, the sua sponte dismissal of the claim against an unserved defendant was entered against the backdrop of this Court's own case-management restrictions on the plaintiff's ability to file procedural motions in this case. On 2-9-26, this Court entered a Case Management Order (Doc. No. 91) whose Paragraph 9 restricted the filing of procedural motions by the plaintiffs without prior leave. That restriction was invoked as recently as 2-19-26, when the Court struck Plaintiffs' Motion for Correction of the Record (Doc. No. 96) on the express ground that it did not comply with Paragraph 9 of the February 9, 2026 Case Management Order. On 3-5-26, this Court entered a further Order (Doc. No. 101) denying plaintiff's motion for extension of time to file a motion for reconsideration of the Court's 2-9-26 orders.

22. The combined effect of those orders was to constrain the plaintiff's ability to file the ordinary procedural vehicles necessary to complete service on Defendant Messer, including a motion for leave to proceed in forma pauperis under 28 U.S.C. section 1915 and the corresponding request for United States Marshal service under section 1915(d). Plaintiff had already, on 8-26-25, filed an Emergency Motion to Clarify Service Requirements for Defendant Amy Messer (Doc. No. 29), placing on the record his request for guidance on completing service and his need for a court-approved summons. That motion was not granted, and the court-summons was never provided by the court to the plaintiff, which is required to effectuate service of process, though the plaintiff requested it and/or raised concerns about not having it. The Court

again failed in its duty to be responsive to a pro se plaintiff's requests who was seeking to serve Judge Messer. The Court should now turn around and avoid any responsibility in the matter, especially since the Court also barred plaintiffs, in its case management order, from filing any motions until after the Court ruled on the motion to dismiss.

23. The court also blocked plaintiff's multiple requests for a case management conference where all of these issues could be brought before the court, and denied his request on ADA grounds, citing that plaintiff is able to express himself in writing, and then when plaintiff sought to "express himself in writing" on these case management issues, by indicating his intent to file certain motions (in place of the denied case management conference he requested including on ADA grounds), the court then su sponte blocked him from doing so by issuing a draconian case management order (without having a case management conference) that threatened sanctions with attendant warning that the court does not want any motions or pleadings filed by plaintiffs (only plaintiffs as defendants were not so barred), until after the court rules on defendants' motion to dismiss.

24. Against that record, the sua sponte dismissal of Count 31 for want of jurisdiction over a defendant whose non-service was itself attributable, in material part, to the Court's own procedural constraints operates as a manifest injustice. Reconsideration is respectfully requested with respect to the sua sponte dismissal of Count 31, together with a determination on the merits of Count 31 only after Messer has been served, has appeared, and has had an opportunity to be heard on jurisdictional theory the Court proposes to consider.

**D. Manifest Injustice in the Wholesale Dismissal of Anderson's Claims**

25. The Court dismissed all of plaintiff Anderson's claims on two related grounds: that the savings statute does not apply to her because she was not a party to Bisasor I, and that she did not file objections to the motions to dismiss. Order at 24. On the first, plaintiff respectfully submits that Anderson joined as a co-plaintiff in the amended complaint that is the operative pleading; that her claims arise from the same nucleus of operative fact preserved by Bisasor's timely first suit; and that at least Counts 14 and 15, expressly brought by both plaintiffs, present a legitimate question whether the savings statute's protection extends to claims joined by a co-plaintiff in a timely refiled action. The Court did not analyze this question. A failure to brief

a particular argument does not, standing alone, entitle the Court to dismiss on the merits without independent legal analysis. Moreover, it is evident that Anderson intended to oppose the motion to dismiss when she filed her motion to amend the complaint and joined in on the proposed amended complaint and the motion to amend the complaint filed by Bisasor, which incorporated by reference all of the objection to the motion to dismiss pleadings. Anderson therefore joined in on Bisasor's objection pleadings and thus it cannot be said that Anderson did not oppose the motions to dismiss. Various defendants often join in on other defendants' motions to dismiss and they are not treated as forfeiture by courts. The same should be afforded to plaintiffs like Anderson. This ground should be reversed.

26. Moreover, the Court also ignores the fact that Anderson only received permission to e-file pleadings in the case that same day the objection was due, after several months of not being allowed access to e-filing for various reasons. Although the Court said at the last minute that plaintiffs could email the objection instead of e-filing as a one-time allowance, the complications with addressing the e-filing problems overall contributed to a less than conducive dynamic when it came to filing documents by Anderson. Anderson had issues with attaching the documents due to file size problems and once the deadline passed, she simply focused on preparing the motion to amend the complaint through which she would join in on the objection pleadings of Bisasor, which she did do.

27. On the second ground, the Court's reliance on Anderson's failure to file separate objections is inconsistent with the record. Anderson joined in the operative pleading; Bisasor's objections addressed the counts common to both plaintiffs; and Anderson's motion for a hearing on the motions to dismiss (Doc. No. 90) reflects her intent to have those motions litigated on the merits, not defaulted. Treating her non-filing of a separate objection as a waiver of merits defenses that Bisasor briefed on shared counts effectively deprives her of merits review to which she was entitled and works manifest injustice. Reconsideration is respectfully requested with respect to dismissal of Anderson's claims on Counts 14 & 15 and on any other count for which Bisasor's objection to the motions to dismiss functionally covered the arguments in her defense.

**<u>E. Newly Documented Facts Relevant to the Gorham Amendment</u>**

28. The Order treats the plaintiffs' proposed addition of former Superior Court Administrator Karen Gorham

as tactical gamesmanship interposed to force recusal, and relies in part on that characterization to deny leave to amend. Order at 12 through 13. Plaintiff respectfully submits that specific facts material to the timing of the Gorham amendment were not adequately considered with respect to the prior record and warrant reconsideration. In September 2025, well after this action was filed and while a separate action in the District of Maine (Bisasor II) was pending, plaintiff received a communication from Superior Court Administrator Macy Cherie that first revealed the full scope of Gorham's personal involvement in the alleged access restrictions. Plaintiff could not properly add Gorham to this action while parallel claims against her were pending in Maine. Once the Maine action was dismissed and it became clear that the claims would need to be brought in this action, if at all, plaintiff moved promptly to amend. Those facts, if credited, materially change the delay and bad-faith analysis on which the Order rests.

**F. Count 31: The Rooker-Feldman Doctrine Does Not Apply to an Ongoing State Case**

29. The Order dismisses Count 31 sua sponte under the Rooker-Feldman doctrine. Order at 43-44. As the Order itself states, the doctrine reaches cases brought by "*state-court losers*" challenging "*state-court judgments rendered before the district court proceedings commenced*." Id. at 44 (quoting Lance v. Dennis, 546 U.S. 459, 460 (2006), and Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

30. The Order also describes Count 31 as challenging Judge Messer's "*management of the docket and her rulings in an ongoing case*." Id. at 43. A challenge to rulings in a state case that hasn't ended is outside the doctrine as Exxon Mobil defines it. See Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17 (1st Cir. 2005) (discussing when state proceedings have ended for Rooker-Feldman purposes).

31. Plaintiff asks the Court to reinstate Count 31 without adjudication that Rooker-Feldman doctrine applies.

**G. The Judgment Should Be Vacated in Part to Permit Narrowed Pleading**

32. In Foman v. Davis, 371 U.S. 178 (1962), the plaintiff moved after judgment to vacate the dismissal and amend the complaint. The Supreme Court held that denying that request without a justifying reason was an abuse of discretion, explaining that "*[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits*." Id. at 182.

33. Each reason the Order gave for denying leave to file the proposed second amended complaint was tied to features of that pleading. The Order found bad faith in the effort to add new defendants, including Chief

Deputy Clerk Gorham and Van Meek, whose citizenship could affect diversity, and in the re-addition of federal claims after the remand ruling. Order at 11-12, 16-17 & n.12. It found prejudice in adding new defendants and claims "*that have little relation to the plaintiffs' existing served claims*." Id. at 18. It found futility in noncompliance with Rule 8(a), misjoinder under Rules 18 and 20, and immunity defenses available to judicial and court defendants. Id. A narrowed pleading would none of those features. The remaining Foman considerations favor relief. No discovery has occurred, so defendants lose no reliance interest.

34. Denying leave to file a targeted bounded amendment would mean that the plaintiff's claims under Counts 4 and 5 were never tested against a more streamlined pleading under Rule 8(a), even though the Court declined to dismiss on Rule 8(a) grounds alone and reached the merits instead. Order at 21-22.

## V. ADDITIONAL GROUNDS FOR RELIEF

### A. Count 4: The Order Does Not Address the Allegations of Direct Knowledge

35. The Order dismisses Count 4 on the alternative ground that the amended complaint "*fails to allege plausibly that Donais knew of Bisasor's purported relationship with the Manchester Police Department*." Order at 35. In reaching that conclusion, the Order considers only paragraph 309, which alleges that Donais tracked plaintiff's activities, and paragraphs 312 & 313, which allege that Donais must have read plaintiff's LinkedIn page. The Order characterizes those allegations as inference that is "*too conclusory and implausible to be credited*." Id.

36. The Order does not address paragraph 310, which is the allegation that actually establishes knowledge. Paragraph 310 alleges that "*in 2019, Craig Donais contacted the Manchester NH police to seek information on plaintiff's contractual relations with the Manchester NH police*," and that "*[h]e directly asked the Manchester NH police to confirm the information about plaintiff's relations with Manchester NH police*." It further alleges that Donais later wrote to the department "*specifically seeking to obtain information related to 'the "Manchester Blue & You" program from 2017 to present*,'" stating that "*he understands that this program was in conjunction with the NAACP*," and that the plaintiff obtained these communications through right-to-know requests. Doc. No. 13, ¶ 310.

37. Those are not conclusory inferences. They are allegations that Donais himself asked the third party to confirm the very relationship at issue, made in writings the plaintiff identifies and obtained through a public-records process. A defendant who writes to a police department to ask about a plaintiff's program with that department, naming the program, knows of the relationship. Paragraphs 312 and 313 then supply

corroboration rather than the whole case: the name Donais used, "*Manchester Blue & You*," is the plaintiff's own shorthand, which the complaint alleges appears only on his LinkedIn page and which the department corrected to "*NH Blue & You*." Id. ¶¶ 310, 312. Accepted as true, as Iqbal requires, paragraph 310 pleads the knowledge element of Tessier v. Rockefeller, 162 N.H. 324, 337 (2011), with factual specificity. Because the Order's alternative ground does not engage that paragraph, it rests on a manifest error of fact.

38. The Order's first ground, absolute privilege, does not independently sustain the dismissal of the whole count on this record. The Order holds that Donais's statements to the department about the plaintiff's supposed "*bugging*" of his office, and his statements of fear, were privileged as statements to police sufficiently connected to judicial proceedings. Order at 34. The New Hampshire Supreme Court's protection reaches "*both formal and informal complaints and statements to a prosecuting authority as part of the initial steps in a judicial proceeding*," provided they are pertinent to the proceeding. McGranahan v. Dahar, 119 N.H. 758, 769 (1979). The amended complaint alleges facts that, taken as true, place much of the conduct in Count 4 outside that description. It alleges that Donais contacted the department "not as a formal complaint but on a personal basis as a personal favor," that "[*n]o police complaint was filed*" and "*[n]o police report was generated*," and that Donais "*did not contact the Manchester NH police to report a crime nor to file a police report*." Doc. No. 13, ¶¶ 322-23. It alleges that Donais's contacts included inquiries about the plaintiff's business relationship with the department, id. ¶ 310, and statements that the plaintiff "*was mentally ill/crazy/had a tenuous grasp on reality*," id. ¶ 315. Nothing on the face of the pleading shows that any of that was a step toward a judicial proceeding.

39. A privilege is an affirmative defense, and dismissal on that basis is proper only where the defense is clear on the face of the complaint. Trans-Spec, 524 F.3d at 320. Here the complaint's own allegations at paragraphs 310, 315, 322, and 323 negate the defense, at least as to inquiries about plaintiff's business relationship and statements made outside any complaint process. At a minimum, the privilege ruling cannot reach those allegations, and the alternative knowledge ruling cannot stand once paragraph 310 is considered.

40. A related correction concerns footnote 17. In dismissing Count 3 as outside the savings statute, the Order adds that "*the amended complaint in this case does not allege a contract with the Manchester Police Department in any event,*

*and so would be dismissed on the merits*." Order at 26 n.17. The amended complaint does allege a contract. It alleges that in 2019 and 2020 the plaintiff "*had a contractual relationship with the Manchester NH police*," id. ¶ 300; that he "*had a contractual agreement from the Manchester NH police to collaborate on a community event*," a multi-party agreement under which the department was to recruit officers to participate, id. ¶ 303; that the agreement was ratified in meetings and correspondence with the chief of police, id. ¶ 304; and that after Donais's interference the "*contract with the Manchester NH police was not fulfilled*" and the plaintiff "*did not receive the compensation that he was slated to receive*." Id. ¶ 317. The Court thus misdescribes the pleading. Further, the attachments and exhibits that accompanied the oppositions to the motions to dismiss and the motion to amend the complaint documents did fully establish that a contract was made, and also that fiduciary duty was breached, among other things. The court evidently overlooked or did not take into account that evidence. Bisasor asks that the court review these attachments and exhibits that accompanied the oppositions to the motions to dismiss and the motion to amend the complaint documents for full and complete review of the plaintiffs' submissions.

**B. Count 5: The Amended Complaint Identifies the Recipients and the Information**

41. In stating that it assumed without deciding that the January 2017 consultation created a fiduciary relationship, the Court dismissed Count 5 because the amended complaint "*does not allege the specifics of that information or to whom Donais disclosed it*." Order at 36. The second half of that statement is contradicted by the pleading. Paragraph 385 alleges that Donais disclosed "*confidential client conversation information about the plaintiffs*" to 4 identified recipients: his wife, Mary Donais, "*in 2019 and 2020*"; his sons, Garrett and Aiden Donais, "*in 2019 and 2020*"; "*the Manchester NH Crime-Line board in 2019 and 2020*"; and "*his friends on the board of a local Manchester NH non-profit organization, in 2019 and 2020*." Doc. No. 13, ¶ 385(a)-(d). Paragraph 435 repeats the allegation for 2019 & 2020. The amended complaint therefore does say to whom, and when.

42. The amended complaint also describes the information. It alleges that the consultation concerned the plaintiff's landlord-tenant claims against the Hilton hotel defendants, id. ¶¶ 403, 423; that plaintiff disclosed "*case strategies and exploration of case strengths and weaknesses*," id. ¶ 371; and that the discussion covered "*potential weaknesses in those arguments*," "*certain legal strategies being contemplated*," the governing statutes, the likelihood of

a temporary restraining order, and Donais's assessment that the contract claim "*was strong*." Id. ¶ 499. It alleges that Donais was aligned with a principal of the opposing party. Id. ¶ 381. Even assuming arguendo that the amended complaint did not tie each category of information to each recipient as perfectly or as precisely as it could have, that is a minor pleading defect that can be cured, not a failure to allege a breach at all. The Order's observation that the pleading also describes false statements about the plaintiff's character, Order at 36, does not negate the separate allegations of disclosure. A single communication can both defame a former prospective client and reveal what he said in confidence, and the duty the Court assumed for purposes of its ruling forbids using such information against the client as well as revealing it. See N.H. R. Prof. Conduct 1.18(b) (lawyer shall not use or reveal information from a prospective client except as Rule 1.9 would permit). An amended complaint would plead the disclosures recipient by recipient.

## VI. PRESERVATION AND APPELLATE JURISDICTION

43. The plaintiff preserves each issue for appeal. A notice of appeal will be filed tomorrow while this motion is pending becomes effective when the Court disposes of this motion. Fed. R. App. P. 4(a)(4)(B)(i). The Court therefore retains authority to grant the relief requested here.

## VII. CONCLUSION

44. For the reasons stated, plaintiff respectfully requests that this Court alter or amend the Judgment entered September 14, 2026, as follows: (a) reinstate Counts 3, 8, 10, 15, 22, and Counts 17 through 27 as to which the savings statute was misapplied; (b) grant leave to file the second amended complaint on those counts for which specific cures were proposed to identified deficiencies; (c) vacate the sua sponte Rooker-Feldman dismissal of Count 31, permit plaintiff to complete service on Defendant Messer through a motion for leave to file a motion for in forma pauperis status and for United States Marshal service, and/or to obtain the summons, and thereafter permit the parties to be heard on any jurisdictional theory the Court proposes to consider; (d) reinstate plaintiff Anderson's claims on Counts 14 and 15 and on such other counts as were substantively defended by Bisasor's objections; (e) reconsider the leave-to-amend denial as to the Gorham-related claims in light of the newly documented September 2025 communication from Administrator Cherie; and (f) grant such further relief as justice requires.

45. Bisasor also incorporates herein Bisasor's other Rule 59E motions and Anderson's Rule 59E motions.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

Joined in on by:
/s/Natalie Anderson
Natalie Anderson

October 13, 2026

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor

**CONCURRENCE**

Under Local Rule 7.1(c), Bisasor sought the defendants' concurrence in the relief requested here. On October 13, 2026, he sent counsel for the Donais defendants and counsel for the Hilliard defendants a written request by email identifying the post-judgment motions the plaintiffs intended to file, including this one, and asking for a response by 5pm. Both counsel responded indicating that their clients dd not concur.

# **Exhibit 1**

**PLAINTIFF NATALIE ANDERSON'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

1. Plaintiff Natalie Anderson submits this motion to alter or amend the Judgment under Rule 59(e) concerning the judgment issued on 9/14/26 with allowance of the defendants' motions to dismiss, denial of plaintiffs' motions for leave to file a second amended complaint, denial of the motion for recusal, among other things in the order. In support of this motion, plaintiff states as follows.

## I. INTRODUCTION

2. This motion focuses on discrete legal errors in the Court's application of New Hampshire's savings statute, the leave-to-amend analysis under Foman v. Davis, the sua sponte Rooker-Feldman dismissal of Count 31 against an unserved defendant whom the plaintiff was procedurally constrained from serving under the Court's own case-management order, the wholesale dismissal of plaintiff Anderson's claims, and the documented facts bearing on the Gorham amendment.

## II. OVERVIEW

3. The Order dismisses the entire case in one 45-page opinion that resolves recusal, two motions to amend, and two motions to dismiss without oral argument, a motion for hearing, among other things. It leans heavily on rhetorical characterizations of gamesmanship and bad faith, on the prolixity of the pleading, and on privileges applied at the pleading stage. It also decides, in the same order, both the merits questions and the fate of the proposed cure that could have addressed the defects the Court is citing. That sequencing converts the ordinary Foman-and-Iqbal analysis into a one-way exit ramp in which every purported deficiency identified in the operative complaint is used to reject the cure that would have addressed it and every alternative cure is refused on gamesmanship grounds. The First Circuit will review this matter de novo or under a standard more fair and liberal than the overly rigid unfair illiberal one that the district court has evidently applied.

## III. RULE 8(A)

4. The Court holds that the 82-page, 1012-paragraph amended complaint violates Rule 8(a), then declines to dismiss on that basis because doing so would only lead to another amended complaint, and proceeds to the merits. The move is analytically incoherent when read against the amendment denial. If the operative complaint fails Rule 8(a), the ordinary remedy is dismissal without prejudice to a targeted amendment; the Court withholds

that remedy and instead uses the same prolixity to justify denying an amendment that would replace the offending pleading. The Court cannot simultaneously identify Rule 8(a) noncompliance as grounds for dismissal and refuse the amendment that would cure it.

## IV. STATUTE OF LIMITATIONS AND RSA 508:10 SAVINGS STATUTE

5. On this issue, the Court has moved its own goalpost. Vanz sets out five factors. The Court concedes that factors two, three, and four are met and finds factor one satisfied when the pleadings are read generously. That leaves only factor five, sameness of claims. The Court then treats every claim that does not appear verbatim in Bisasor I as fatally different and outside the savings statute's protection. That analysis is inconsistent with how New Hampshire and the First Circuit apply RSA 508:10, which the Court's own quotation of the Vanz standard concedes is a claim-preservation statute rather than a mechanical pleading-identity rule. The fifth factor requires substantially the same claim measured by underlying transaction and legal theory, not by count number. The Order effectively imports a strict-identity rule Vanz does not require.

6. The specific counts the Court dismisses on this theory illustrate the problem. Count 3 (interference with the Manchester Police Department contract) is treated as different from the Bisasor I interference-with-advantageous-relations claim solely because the earlier pleading did not use the word contract. The Court further asserts in footnote 17 that the current pleading does not allege a contract with the Manchester Police Department in any event, and that Count 3 would fail on the merits for that reason. That is a factual mischaracterization of the record. The First Amended Complaint at paragraphs 300 through 306 and paragraphs 340 through 347 alleges an existing contractual relationship with the Manchester Police Department in 2019 and 2020, including a specific contract to collaborate on the Blue and You community event that produced identifiable lost compensation. The Court must correct the record on these stated facts.

7. Count 8 (New Hampshire Consumer Protection Statute) is treated as a new claim because Bisasor I alleged a Massachusetts consumer-protection theory, but the underlying facts are identical and the choice of forum's consumer statute is a legal recharacterization the savings statute should tolerate. Count 22 (defamation by Mary Donais) is treated as absent from Bisasor I because that pleading's defamation count was against all defendants and did not itemize false statements by Mary, even though Mary was a defendant and defamation was the theory. These are exactly the kinds of pleading refinements that the savings statute exists to protect.

8. The Court's treatment of Anderson is another vulnerable ruling. The Order dismisses all of Anderson's claims because Anderson was not a Bisasor I party, and because she did not file her own objection to the motions to dismiss. This raises two flaws. First, the savings statute is not the only tolling ground; the Order does not consider whether Anderson's claims independently accrued within the limitations window, whether the discovery rule applies to statements she learned of only later, or whether her joint plaintiff status permits her to benefit from the operative pleading's tolling arguments. Second, treating Anderson's non-filing of a separate objection as forfeiture is inconsistent with the pro se solicitude the Court elsewhere professes and with the reality that Bisasor's objections included points that addressed Anderson's claims and involved the same motion Anderson would have opposed.

## V. ABSOLUTE PRIVILEGE

9. There are two blindspots stand out regarding the Court's ruling on this issue. First, the Court's statement that statements to police are absolutely privileged blurs the New Hampshire rule, which under McGranahan protects statements sufficiently connected to actual or contemplated judicial proceedings. Whether Donais's alleged statements to the Manchester Police Department qualify depends on whether they were tied to a specific proceeding or investigation, a fact-intensive question ill-suited to Rule 12(b)(6) disposition. Second, the Order defers the claim-by-claim analysis to the merits section but then applies the privilege in Count 4 without the pertinence analysis the doctrine requires.

## VI. COUNT 1 (DEFAMATION)

10. The Court holds that the Crime-Line Board statements, the statements to the sons, and the statements to the wife are all time-barred, and that the wife statements are additionally protected by Restatement Section 592 marital privilege. Each ruling is flawed or has weaknesses.

11. On Crime-Line, the Court says Bisasor I did not allege a defamation claim based on Donais's statements to the board. On the sons, the Court says Bisasor I made no mention of the sons and no allegation that Donais made statements directly to them. That reading again treats claim identity too strictly under Vanz. The savings-statute analysis here is the same misapplication discussed; the underlying transaction is the same, and Bisasor I alleged defamation broadly. Further, Bisasor I was filed in Bristol Superior Court in Massachusetts with claims pled under Massachusetts law, which has more relaxed requirements for pleading defamation claims. For

example, Massachusetts law holds that statements to police are only partially protected subject to a malice analysis, etc. NH has a stricter requirement to statements to police as long as its connected to a judicial proceeding. The court cannot hold a Massachusetts complaint to a NH standard when the Massachusetts complaint has long been superseded. This raises another key point. NH federal court has a rule (and case law) that requires a complaint to be treated as a nullity once an amended complaint has been filed. This is why defendants' motion to dismiss for the original complaint are treated as moot.

12. Therefore, with respect to Bisasor I and Bisasor II, and the complaint filed in state court in NH in 2025, all of them are a nullity and are superseded by the amended complaint filed in this court in summer of 2025. It is therefore error for this court to keep going back to not only the original complaint in this court removed from state court in summer 2025, but to also keep going back to the prior complaints in earlier cases in 2024 under different case number, or in Massachusetts federal court or Bristol superior court in 2022 or 2023, which was remove by defendants to Massachusetts Federal Court and then transferred by motion of the defendants, to NH federal court under Judge Saint-March in 2024. It turns the rule and case law on its head for Judge Elliott to use those complaint as a basis in any way to dismiss the current existing amended complaint begore this court in this current case.

13. On Mary, the marital-privilege ruling is legally noteworthy for two independent reasons. First, the Court predicts that the New Hampshire Supreme Court would adopt Restatement Section 592, relying on Wentworth-Douglass and Cross v. Anderson, both of which are federal district predictions rather than state-court adoptions. Erie principles require federal courts to predict state law with restraint and to avoid extending state privileges beyond what the state supreme court has clearly signaled. Applying an unadopted absolute privilege at the Rule 12(b)(6) stage on a certified question of state law is a strong appellate issue where the Court should have sought to certify the question to the New Hampshire Supreme Court under NH Sup. Ct. Rule 34 or, at minimum, to reserve the question for summary judgment on a developed record. Second, and more concretely, Section 592 by its terms protects only publications by one spouse to the other. Further, marital privilege doesn't cover written communications between spouses sent over email or discussed in front of other persons including their sons, other family members or family friends, etc.

14. Moreover, the First Amended Complaint at paragraphs 812 through 819 and paragraphs 836 through 860 (Count 22) alleges that Mary Donais herself published false statements to third parties, including to the Donais sons, to family members and friends, to community members in Manchester, and on social media in August 2020. Those alleged publications are not spouse-to-spouse communications and lie entirely outside Section 592, however that section might be predicted to apply in New Hampshire. The Order treats Mary's role as if she were only a passive recipient of Craig's statements. That is inconsistent with the well-pled allegations, which describe Mary as an active publisher of the same defamatory content. This is a factual mischaracterization and is strong grounds for reconsideration and for appeal on both the Erie and the pleading-record grounds.

## VII. COUNT 2 (DEFAMATION AT ADVISORY COMMITTEE MEETING)

15. The Court relies on the Advisory Committee meeting minutes attached as Exhibit 36-5 to conclude that the complaint's allegations are contradicted by the minutes. This raises two vulnerabilities. First, considering extrinsic documents at the pleading stage requires either that the documents be integral to the complaint or that authenticity be undisputed, and even then the court must construe them in the light most favorable to the pleader. The Court says Bisasor does not dispute authenticity, but authenticity is not the same as completeness or accuracy of the minutes as a record of statements at the meeting. Minutes are notoriously incomplete. Second, dismissing on the basis of a competing narrative in the minutes is closer to weighing evidence than to accepting well-pled allegations as true. Bisasor disputes the completeness of the minutes and requests leave to plead the statements with more specificity.

## VIII. COUNT 4 (INTERFERENCE WITH POLICE DEPARTMENT RELATIONS)

16. The court also made rulings on absolute privilege and implausibility of knowledge. On privilege, the McGranahan pertinence analysis is missing; the Court does not tie Donais's alleged statements to a specific judicial proceeding or investigation, which is the required predicate for absolute privilege on statements to police. On plausibility, the Court says the allegations about Donais's LinkedIn discovery of the police-department relationship are too conclusory. That analysis prematurely resolves a factual inference on a motion to dismiss. The First Amended Complaint at paragraphs 298 through 306, 315 through 318, and 340 through 347 pleads a specific contract with the Manchester Police Department, a specific event (Blue and You), and direct interference by Donais that caused the event contract to fail and produced identifiable financial loss.

Those allegations, taken as true, satisfy each Tessier element with concrete facts, not conclusory ones. The Court ignores those paragraphs and the Twombly-Iqbal plausibility-versus-probability distinction.

## IX. COUNTS 5, 6, 7, 11, 12, 30

17. These rulings rest on the same core criticism: the complaint does not identify the specific confidential information Donais disclosed, does not identify who received it, and pleads conspiracy in conclusory terms. Three structural points bear on reconsideration and appeal. First, if the operative complaint is too vague to state a plausible claim, the Rule 15 analysis discussed above becomes the answer: the plaintiffs should have been allowed to file a targeted amendment that pleads the missing specifics. Second, IIED under Moss and DeMeo remains available where the harm is independent of reputational injury, and the Court's rejection of Bisasor's fear-and-hysteria theory as a mere relabeling of reputational harm is a substantive legal call that could be revisited on a fuller record. Third, on Count 12, the First Amended Complaint pleads Mary Donais's active participation in the defamation campaign in specific detail, including direct communications to the sons and to community members and on social media. Those allegations are not the vague working-together language the Court quotes from Alston v. Spiegel; they identify the object, the parties, and the overt acts of publication. Counts 5 through 7 and 11 and Count 12 should be revisited when read with the FAC's Mary-specific allegations and when combined with the Rule 15 argument.

## X. COUNTS 13 AND 14 (HILLIARD TORTIOUS INTERFERENCE)

18. The Court holds that Count 13 fails to allege a breach of Bisasor's Primmer retainer and that Count 14's informal attorney-client arrangement may not be a cognizable contract. On Count 13, tortious interference with contractual relations under Tessier does require alleging wrongful inducement of breach, but the Court reads the complaint too narrowly. The First Amended Complaint at paragraphs 682 through 696 and 720 through 730 alleges an executed written retainer agreement with Primmer dated May 18, 2020, monthly billing and payment through September 2020, Hilliard's direct contact with Primmer, Primmer's citation of Hilliard's communication as the reason for termination, and Primmer's active but unsuccessful effort to find a successor. Those allegations describe an induced termination in the middle of an ongoing engagement, which qualifies as a breach under Tessier and Restatement Section 766 without needing to parse the retainer's specific termination clauses on a Rule 12(b)(6) motion. On Count 14, Onyx Enterprises is a single district-court decision that does

not decide New Hampshire law and does not control at the Rule 12(b)(6) stage. The futility ruling on the proposed second amended complaint should be reconsidered because a proper cure could plead the retainer and interference specifics with further precision.

**XI. COUNT 31 (JUDGE MESSER AND ROOKER-FELDMAN)**

19. The Court dismisses Count 31 sua sponte under Rooker-Feldman even though Messer has not been served and even though plaintiffs plead the claim as challenging administrative rather than judicial acts and seek prospective equitable relief. This raises 3 vulnerabilities. First, Rooker-Feldman under Exxon Mobil is a narrow doctrine that applies only to state-court losers seeking review of state-court judgments. A challenge to administrative decisions is not a challenge to a judgment; it is a challenge to court administration, which the First Circuit and the Supreme Court have kept outside the doctrine's core. Second, prospective equitable relief is a hallmark of an Ex parte Young-style claim that the doctrine does not bar. Third, sua sponte dismissal without service and without plaintiffs being heard on subject-matter jurisdiction is disfavored where the jurisdictional question is close and where plaintiffs would be prejudiced by having the ruling entered without an opportunity to respond. Rooker-Feldman rulings are reviewed de novo.

**XII. COUNT 5-BREACH OF FIDUCIARY DUTY**

20. The Order dismissed Count 5 on a single ground, that the amended complaint "does not allege the specifics of that information or to whom Donais disclosed it" and "repeatedly refer[s] only to the allegedly false statements that Donais purportedly made regarding Bisasor's character." Doc. 109 at 36. That description of the pleading is incorrect. Paragraph 385 of the amended complaint identifies the recipients and the years of each disclosure: Donais's wife, Mary Donais, in 2019 and 2020; his sons, Garret and Aiden Donais, in 2019 and 2020; the board of the Manchester Crime Line in 2019 and 2020; and his friends on the board of a Manchester nonprofit organization in 2019 and 2020. Doc. 13, ¶ 385(a) to (d); see also ¶ 382.

21. Paragraphs 371, 373, and 381 identify the information: "my personal circumstances, legal concerns, litigation plans, case strategy, and my own assessment of the strengths and weaknesses of my dispute with the Hilton Hotel defendants, disclosed when Donais returned my call on January 9, 2017, gave legal advice, and received privileged communications". Id. ¶¶ 214, 371 to 373.

22. Paragraphs 379 through 381 and 392 identify how the information was used: "Donais took the fact and content

of a privileged consultation and recast it, telling others that Bisasor had falsely accused him of race discrimination for declining my case, so that Bisasor would be seen as a frivolous liar who plays the race card". Id. ¶¶ 379 to 381, 392. The Order treats the false statements as something other than a disclosure, but the pleading alleges that the false statements were the disclosure, a distorted account of what was said in a confidential consultation, and a distorted account of a privileged conversation is still a revelation of it.

23. The Order also assumed "without deciding" that a fiduciary relationship existed, Doc. 109 at 36, yet the relationship was not a matter of assumption on this record: the amended complaint pleads that a Nashua circuit court judge, Judge Paul Moore, found that a prospective attorney-client relationship had been formed and that Donais withdrew from the adverse representation as a result, that Attorney Elliott Berry determined in writing that Donais's conduct breached his duty, and that Attorney Robert O'Brien contradicted Donais's account of the call. Id. ¶ 218, ¶¶ 469 to 470, and p. 39 n.4. The Order mentions none of this. These are also proven by the attachments/exhibits of the oppositions to the motions to dismiss and motions to amend the complaint.

24. Measured against the standard the Order itself quotes, that a fiduciary relationship "exists wherever influence has been acquired and abused or confidence has been reposed and betrayed," Doc. 109 at 35 to 36 (quoting Lash v. Cheshire County Savings Bank, 124 N.H. 435, 438 (1984)), every element of the claim was pleaded with the specificity Rule 8 requires. The duty is pleaded through the consultation of January 9, 2017, the legal advice given, the confidences received, New Hampshire Rule of Professional Conduct 1.18, which forbids a lawyer to use or reveal information learned in a consultation with a prospective client or to represent an adverse party in the same or a substantially related matter, and the judicial finding that the relationship existed. Doc. 13, ¶¶ 214, 371 to 377, 399 to 402, 427. The breach is pleaded in three independent forms: the disclosures to the four identified audiences in 2019 and 2020, ¶ 385; the use of the consultation to fabricate and publish the race-discrimination accusation, ¶¶ 379 to 381, 386, 392; and the conflict of interest in acting for the opposing side, loyal to Dave Akridge as a principal of the adverse party, which produced the judicial finding and the withdrawal, ¶¶ 381, 218, 469. Causation and damages are pleaded through the loss of standing with the Crime Line board and the Manchester community, the lost opportunities, the economic and reputational injury, and the emotional distress that followed directly from those acts. Id. ¶¶ 400, 472 to 476. A lawyer who receives a

prospective client's confidences, then acts for the other side until a judge requires his withdrawal, and then tells his family, a community board, and his friends that the former prospective client is a liar who invented a discrimination charge, has abused acquired influence and betrayed reposed confidence in the plain sense of Lash. The attachments to Document 79, including the partial summary judgment papers and statement of material facts from the Superior Court action, demonstrated the same facts with record evidence, and the Order did not consider them.

25. The dismissal of Counts 6 and 7 compounds the error. The Order reasons that because Donais "declined to represent Bisasor on their phone call," no contract "express or implied" was formed, Doc. 109 at 37, citing ¶ 371. That conflates a contract of representation with the implied undertaking that arises when a lawyer agrees to a consultation. The amended complaint alleges that  Donais returned plaintiff's call in response to a voicemail seeking legal assistance, agreed to an attorney-client conversation, gave advice, and received confidences in exchange, and that the consultation carried an implied promise of confidentiality and loyalty that Rule 1.18 makes a term of every such consultation whether or not representation follows". Doc. 13, ¶¶ 214, 372, 374 to 377. Whether that exchange formed an implied-in-fact contract is a question of fact on which the plaintiff receives every reasonable inference at the pleading stage; the Order instead drew the inference against plaintiff from a single clause of a single paragraph. Its alternative ground, that the complaint "does not allege that Donais revealed any confidential information," Doc. 109 at 37, repeats the factual error already described, since the recipients, the years, the content, and the manner of disclosure appear at paragraphs 371 through 392. The relief requested is that the Court vacate the dismissal of Counts 5, 6, and 7, or alternatively grant leave to file the proposed second amended complaint as to those counts, because the defects the Order identified do not exist in the pleading and could in any event be cured by amendment.

## XIII. CROSS-CUTTING PROCEDURAL ISSUES

26. Several procedural points cut across the substantive rulings. First, Anderson's motion for a hearing (Doc. 90) is denied without discussion. Where a court dismisses a complaint in its entirety on immunity, privilege, and prolixity theories the pro se plaintiffs disputed, the failure to hold oral argument is plausibly reversible and adds to the recusal-appearance problem. Second, the Case Management Order restrictions in Paragraph 9 blocked plaintiffs from filing procedural motions without leave, and Doc. 96 was struck under that paragraph.

The dismissal order relies on that regime while treating the plaintiffs' complaints about it as mere ruling-dissatisfaction. Yet, it is a valid due-process argument that the CMO functioned as a de facto blockade during the very window in which service, and amendment issues would have needed to be raised. This further adds to the recusal-appearance problem. Third, the disposition denies Docs. 90, 104, 105, and 107; grants Docs. 36 and 61; sua sponte dismisses Count 31; and denies all other pending motions as moot. The mootness disposition includes the motion for reconsideration of Doc. 101 restricting procedural filings, meaning the Court has closed the door on those procedural challenges without adjudication. Mootness should not include future service on Messer or the procedural-block challenges preserved for appeal.

## XIV. FURTHER ON ROOKER-FELDMAN ANALYSIS

### A. The Court's Rooker-Feldman Ruling Fails Supreme Court Test & Lack Required Nuanced Analysis

27. The Order appears to apply Rooker-Feldman without the nuanced analysis required by Supreme Court precedent. The complaint alleges injuries caused by the defendants' conduct, separate from state court judgments themselves. These claims allege independent violations of federal law that fall outside Rooker-Feldman's scope, yet the Order did not analyze these distinctions. Moreover, the Order does not consider potential exceptions to Rooker-Feldman that could preserve jurisdiction over some claims such as the plaintiffs ADA claims. In fact, the Order did not appear to consider, and certainly did not address, the plaintiffs ADA claims at all, which do not seek to overturn any judgment of a state court, and whereupon the ADA provides direct jurisdiction of federal courts over state courts, under Tennessee v Lane, among other established Supreme Court and First Circuit precedent.

28. Several claims regarding Judge Messer in the complaint do not seek to overturn state court judgments but instead challenge independent actions such as: 1) violations of confidentiality requirements under the ADA; b) violations of ADA policies regarding procedures for accessing ADA accommodations; c) equitable relief to bring the state courts into compliance with the ADA; and d) other items outlined therein.

29. The Order applies Rooker-Feldman without the nuanced analysis required by Supreme Court precedent. In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Supreme Court clarified that Rooker-Feldman is a "narrow doctrine" that applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments." The complaint alleges multiple injuries caused by the state court defendants conduct separate from state court judgments themselves. These claims allege independent violations of federal law that fall outside Rooker-Feldman's scope.

**B. The Order Fails to Address Exceptions to Rooker-Feldman That May Apply**

30. The Order does not consider potential exceptions to Rooker-Feldman that could preserve jurisdiction over some claims including but not limited to the following: a) ADA Claims: In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court recognized that Congress validly abrogated state sovereign immunity for claims under Title II of the ADA in the context of access to courts. The Order fails to address whether this abrogation affects the Rooker-Feldman analysis for ADA claims; b) Prospective Injunctive Relief: Under Ex parte Young, 209 U.S. 123 (1908), claims for prospective injunctive relief against state officials to prevent ongoing violations of federal law may proceed despite sovereign immunity; c) Pervasive Bias: Similarly, the issue of pervasive judicial bias and its impact on seeking relief in federal court has not been addressed.

**C. The Rooker-Feldman Analysis Must Be Claim-Specific and Defendant-Specific**

31. The First Circuit requires a claim-by-claim analysis of jurisdiction, particularly when the Rooker-Feldman doctrine is involved. See Klimowicz v. Deutsche Bank Nat'l Trust Co., 907 F.3d 61, 64-65 (1st Cir. 2018) (analyzing individual claims to determine which were barred by Rooker-Feldman and which were not).

32. The Supreme Court has emphasized narrowness of Rooker-Feldman. See Lance v. Dennis, 546 U.S. 459, 464 (2006) (cautioning against expansive interpretations). The Order's blanket application violates this guidance.

**D. ADA Claims Against State Courts May Have Special Jurisdictional Considerations**

33. In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court recognized Congress's authority to abrogate state sovereign immunity for claims under Title II of the ADA in the context of access to courts. This creates potential jurisdictional nuances for ADA claims against state courts that the Order does not address.

34. The interaction between Rooker-Feldman and valid claims under federal disability rights laws requires more detailed analysis than the Order provides. See Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6-7 (1st Cir. 2004) (analyzing the intersection of ADA claims and Rooker-Feldman).

**E. The Order Does Not Consider That State Court Judgments Are Not Final Until Appeals Exhausted**

35. If a state court judgment is appealed to the NH Supreme Court, a state court judgment remains non-final until the NH Supreme Court issues a ruling. If the state court judgment is still pending review (e.g., via NH Supreme

Court appeal), Rooker-Feldman does not bar federal jurisdiction. It should be noted that there is no final judgment in the state court as its technically on appeal with the NH Supreme Court.[1]

36. The Supreme Court clarified in Exxon Mobil Corp. v. Saudi Basic Industries Corp. that Rooker-Feldman applies only after state proceedings conclude. Rooker-Feldman does not bar federal jurisdiction if the plaintiff's claims are not a "de facto appeal" of the state court judgment, if allege injuries caused by third parties (e.g., ADA violations by the court itself), not the judgment itself, and if it involve issues that could not have been raised in the state court proceedings. Federal district courts retain jurisdiction over claims that do not directly challenge a final state court judgment. In this case, claims about ADA accommodations, constitutional violations, or procedural irregularities in state court proceedings qualify as independent federal claims.

37. Rooker-Feldman does not bar federal jurisdiction here. This court may hear plaintiffs' claims because they do not directly challenge the state court's substantive decisions, involve independent federal questions (e.g., ADA violations, due process issues) and focuses on procedural rights (e.g., ADA accommodations) rather than the merits of the state court's judgments. Rooker-Feldman does not bar decisions on policy or equitable relief regarding ADA policy. The Order does not address any of these nuanced issues and fails to abide by the narrowness doctrine when applying Rooker-Feldman.

**<u>F. The Court's Own Procedures Mandate Specific Guidance for Pro Se Plaintiffs</u>**

38. The First Circuit has held that courts must liberally construe pro se pleadings and provide clear guidance to pro se litigants. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). The Order failed to provide an opportunity to amend before the matter would be dismissed.

## <u>XV. FURTHER GROUNDS FOR RELIEF</u>

### <u>A. The Order Decided Disputed Facts on Defendants' Extrinsic Exhibits, Disregarded Plaintiffs' Materials and Gave No Rule12(D) Notice</u>

39. This section addresses a defect of method that runs through the merits rulings in the Order and is most visible in the dismissal of Count 2. Plaintiffs raised the issue before judgment and the objections to the Donais motion invoked the liberal construction owed to pro se pleadings under Haines v. Kerner and Erickson v. Pardus,

[1] It should be noted also that at the time of the filing of the complaint, there was/is not any final state court judgment in state court. This is shown by the fact that plaintiffs moved to consolidate this case with the prior case before Judge Messer, before it was removed to this court by defendants. Thus, the complaint, as of when it was filed, could not have been seeking to overturn any state court judgment. This court should not anachronistically use outside events that may occur later or subsequent to the complaint, against the complaint, when those facts or events were not pled in the complaint. The court should treat the complaint as of the time it was filed, to determine jurisdiction over the claims in question. Conversely, either way, even subsequent events still do not render any state court judgment final.

cited Watterson v. Page for the limits on the materials a court may consider under Rule 12(b)(6), objected to the "Additional Facts" and exhibits appended to the motion, and asked that those materials be stricken or, if the Court intended to rely on them, that the motion be converted under Rule 12(d) with notice and an opportunity for discovery. Doc. 79, ¶¶ 13 to 15, 109 to 118; see also Doc. 78.

40. The Order recites the Rule 12(b)(6) standard but does not address that request. Because the point was presented and left unresolved, correcting the resulting error is the proper office of Rule 59(e), which exists to correct manifest errors of law or fact.

**B. The Count 2 Ruling Rests On Minutes That Cannot Contradict The Pleaded Allegations**

41. Count 2 alleges that Donais made specific false statements about me at a public hearing of the New Hampshire Supreme Court Advisory Committee on Rules, including that plaintiff had wrongly accused him of misconduct and had made specious and untrue allegations. Doc. 13, ¶¶ 290 to 294. The Order holds, first, that those allegations are too vague and, second, that even if they were sufficient, "dismissal would still be warranted" because the meeting minutes attached by the Donais defendants, "the authenticity of which Bisasor does not dispute, contradict the allegations in the amended complaint," citing Garcia-Gesualdo for the proposition that a court may rely on documents whose authenticity is not disputed. Doc. 109 at 33. The second holding is framed as an independent ground, so it must be addressed on its own terms, and it is where the error lies.

42. The minutes do not support the use made of them by the Court. Doc. 36-5 is the Committee's record of its public hearing. The Order describes Doc. 36-5 as the minutes "from that date", and reads them as a complete account of what Donais said. Doc. 109 at 33. Assuming the minutes were from the hearing described, they could not do what the Order asks of them. Minutes are a summary, not a transcript. The exhibit records that Donais "received 15 minutes" to address the proposed amendment to Supreme Court Rule 37(20), and it compresses that presentation into two short paragraphs. Doc. 36-5 at 1 to 2. It also records that plaintiff Bisasor "missed the first six minutes of Attorney Donais's comments because the audio was not working," which shows on the summary was not exhaustive. Id. at 2. A summary that omits a statement is not evidence that the statement was not made.

43. A factfinder could draw either inference, and at the pleading stage the inference must be drawn in plaintiffs' favor. Garcia-Gesualdo, the authority the Order cites, says exactly that. The First Circuit there reversed a

dismissal because the documents the district court relied upon did not conclusively establish the defense, and it reiterated that the court must accept well-pleaded facts as true and draw reasonable inferences for the plaintiff even when it properly looks at an undisputed document.

44. The Order also conflates distinct exceptions to the four-corners rule. The First Circuit permits a court to treat a document as part of the pleading, and to let the document prevail over inconsistent allegations, when the complaint's factual allegations are "expressly linked to and admittedly dependent upon" the document, Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998), or when the plaintiff has attached the instrument to the complaint, in which case the exhibit "trumps the allegations" to the extent of an actual contradiction, Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000). Neither predicate exists here. Plaintiffs' complaint does not refer to the minutes, does not depend on them, and does not attach them; the defendants did. The separate exception for "documents the authenticity of which are not disputed by the parties," Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), permits the Court to know what the document says. It does not convert the document's silence into a finding that a contrary allegation is false, and the First Circuit has described the exception as a narrow one that does not license a court to resolve factual disputes against the pleader. Young v. Lepone, 305 F.3d 1, 11 (1st Cir. 2002). The Plaintiffs never stipulated that the minutes are complete or accurate, and the objection that plaintiffs lodged to all of the defendants' extrinsic materials, Doc. 79, ¶¶ 109 to 118, is the opposite of acquiescence.

45. The same limits apply if the minutes are treated as an official public record. That exception reaches only documents or facts that are subject to judicial notice under Federal Rule of Evidence 201, Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013), and Rule 201 permits notice only of a fact "not subject to reasonable dispute." The existence of the hearing and the text of the minutes may be noticed. Whether Donais made the particular statements alleged, and whether a summary captured everything he said, are precisely the kinds of facts that are subject to reasonable dispute. Rule 201(e) also entitled plaintiffs, on request, to be heard on the propriety of noticing any such fact, and plaintiffs' request to strike the materials or convert the motion was a request for exactly that opportunity.

**C. The Order Applied One Rule to the Defendants' Materials and Another To Plantiff**

46. The treatment of Count 2 was not isolated. The Order relied on the defendants' exhibits elsewhere, including

its reliance on the August 2025 amended complaint from the 2020 Superior Court action, which the defendants attached as Doc. 36-4, to support the conclusion that plaintiffs had known the relevant facts since 2020 and that the proposed amendment reflected delay and gamesmanship. Doc. 109 at 16. In the Count 4 ruling the Order faulted plaintiffs for not having addressed or disputed the defendants' characterization of the statements to the police in plaintiffs' objection, as though the question at the pleading stage were whether plaintiffs had rebutted the defendants' account rather than whether the complaint stated a claim. Doc. 109 at 34 to 35. In each instance the Court moved beyond the complaint to the defendants' framing of the facts and then measured plaintiffs' pleading against that framing.

47. Plaintiffs' objections, by contrast, were each accompanied by approx. sixteen attachments, Docs. 78 and 79, drawn from the same Superior Court action the Order consulted at the defendants' invitation, including the partial summary judgment papers on breach of duty, the statement of material facts, Plaintiff Andre Bisasor's affidavit, and Natalie Anderson's affidavit concerning the January 5, 2017 call with Attorney O'Brien. Those materials supplied the particulars the Order found missing on several claims, and the proposed second amended complaint pleaded them. The Order does not mention them.

48. Note: The Trans-Spec case states: "*if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment*." The rule that excludes plaintiffs' exhibits excludes theirs. A court may hold both sides to the pleadings, or it may convert and weigh the materials of both sides under Rule 56. It may not treat defendants' exhibits as evidence that defeats plaintiffs' allegations while treating plaintiffs' exhibits, from the same state court record, as if they did not exist.

49. Other courts handle pro se oppositions with explicit flexibility. The Second Circuit holds that "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013). This Court has done something similar when the circumstances warranted it, treating a pro se filing that "sets forth additional allegations against the defendants and attempts to explain how they state a cause of action" as both an amended complaint and an objection. Every v. Town of Easton, No. 04-cv-174-JD, 2005 DNH 051 (D.N.H. Mar. 30, 2005).

50. The point is that the First Circuit requires courts to read pro se pleadings liberally, to guard against the loss of

pro se claims through technical defects where the record shows a curable pleading, Rodi v. Southern New England School of Law, 389 F.3d 5, 20 (1st Cir. 2004), and to "intuit the correct cause of action" when sufficient facts are presented, Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Materials that were before the Court and that supplied the missing particulars bore directly on whether the deficiencies were curable, and therefore on futility and on whether dismissal should have been granted. The Supreme Court's instruction that a pro se complaint is "to be liberally construed" and must be held "to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007), and Haines v. Kerner, 404 U.S. 519, 520 (1972), is not satisfied by reciting the standard and then measuring the pleading against the opposing party's submissions.

**D. The Standard Actually Applied Was Not Rule 12(b)(6) Standard | No Rule 12(d) Notice Given**

51. Rule 12(d) provides that if, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The First Circuit treats that opportunity as a requirement of fairness rather than a formality. Conversion is disfavored where discovery is in its infancy or the nonmovant has had no reasonable notice that the court would treat the motion as one for summary judgment, Rubert-Torres v. Hospital San Pablo, Inc., 205 F.3d 472, 475 (1st Cir. 2000), and summary judgment is premature when the opposing party has not had a meaningful opportunity to respond. Whiting v. Maiolini, 921 F.2d 5, 6 (1st Cir. 1990). Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998), recognizes that notice can be constructive when the movant attaches and relies on extrinsic materials, but the premise of constructive notice is that the nonmovant may respond in kind, and plaintiff did respond in kind. Plaintiff objected, plaintiff submitted the state court record and affidavits, and plaintiff asked for conversion with discovery if the Court was inclined to go outside the pleadings. Doc. 79, ¶¶ 109 to 118. Having invoked Rule 12(d) and received no ruling, plaintiff had no reason to expect that contested facts would be decided on the defendants' exhibits alone.

52. What the Order did on Count 2 was to find, as a matter of fact, that Donais "simply spoke against a proposed rule change" and did not say what plaintiffs allege he said. Doc. 109 at 33. That is a determination of what happened at a hearing, made on a summary prepared by a third party, without the recording, without testimony,

without discovery, and without plaintiff's own evidence. It is the kind of determination Rule 56 permits only on a developed record and only where no genuine dispute exists. If the Court's view was that plaintiff bore an evidentiary burden to dispute the minutes, the Rules supply the procedure for imposing that burden: notice of conversion, a reasonable opportunity to present pertinent material, and, where facts are unavailable to the nonmovant, relief under Rule 56(d). None of those steps were taken, and the omission was not harmless. The minutes themselves show that Donais spoke for fifteen minutes and that part of his remarks is unaccounted for in plaintiff's own perception of the hearing. A recording or the testimony of attendees would resolve what was said. A plaintiff who alleges specific defamatory statements and identifies the speaker, the occasion, the audience, and the substance, and who is then told that a two-paragraph summary disproves him, has been subjected to summary judgment without the protections of Rule 56.

53. Nor does the Order's first ground for Count 2 cure the problem. The Order describes the allegations as too vague because they "do not allege sufficient detail about the alleged false statements." Doc. 109 at 33. The proposed second amended complaint, which was before the Court when it ruled, pleads the statements with particularity: that Donais stated publicly that plaintiff's allegations were specious, untrue, and without merit, that plaintiff was fueled by personal animus and an intent on personal destruction, and that plaintiff had deceptively weaponized the attorney discipline process. Doc. 104-1, ¶¶ 96 to 97. The Order's futility analysis did not address those allegations, and to the extent futility rested on the same minutes, it rested on the same error. Foman v. Davis requires that leave be freely given absent a substantial reason, and futility must be judged against the proposed pleading, not against the opposing party's exhibits.

## XVI. KEY SUMMATION POINTS

54. **The savings statute.** The Court reads *Moulton-Garland*/*Prince* to strip savings-statute protection from any claim not literally pleaded in *Bisasor I*, even where the same nucleus of operative facts was pleaded. Every count dismissed as "not the same claim" under RSA 508:10 (Counts 3, 8, 10, 15, 17-27) is plausible reversible error.

55. **The Rule 8(a) framing is dicta but colors everything.** The Courts states it is not dismissing on 8(a) grounds but then repeatedly invokes 8(a) reasoning ("prolix and jumbled"), which is inconsistent and lets her treat merits-stage pleadings as summary-judgment-level insufficient.

56. **Count 31 (Judge Messer) dismissed sua sponte under Rooker-Feldman on an unserved defendant.**

This is jurisdictionally aggressive and factually thin because plaintiff alleged administrative, not judicial, acts. The order dismisses plaintiffs' factual allegation on that point as a "legal conclusion" without any analysis of whether administrative acts fit within Rooker-Feldman, which under *Skinner v. Switzer* and *Exxon Mobil* they generally do not.

57. **Denial of leave to amend as futile without count-by-count analysis of proposed cures.** The court denies leave to amend based on Foman factors that mostly rest on delay/bad faith characterizations. The Court does not walk through each proposed amended count to show why cure is impossible. This is reversible error on every count where the amended pleading meaningfully cures a specific defect that the court identified.

## XVII. RELIEF REQUESTED

58. Plaintiff incorporate the relief requested in Bisasor's Rule 59E motions. Anderson hereby incorporates Bisasor's Rule 59E motions filed concurrently and all the prior objection filings by Bisasor.

Respectfully submitted,
/s/ Natalie Anderson
Natalie Anderson

October 13, 2026

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Natalie Anderson
Natalie Anderson

## CONCURRENCE

Under Local Rule 7.1(c), plaintiffs sought the defendants' concurrence in the relief requested here. On October 13, 2026, he sent counsel for the Donais defendants and counsel for the Hilliard defendants a written request by email identifying the post-judgment motions the plaintiffs intended to file, including this one, and asking for a response by 5pm. Both counsel responded indicating that their clients dd not concur.