UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CIVIL ACTION NO: 1:25-cv-00251 |BISASOR v. DONAIS, et. al.

**PLAINTIFF ANDRE BISASOR'S RULE 59(e) MOTION CONCERNING THE DENIAL OF THE MOTION TO AMEND THE COMPLAINT**

1. Plaintiff Andre Bisasor respectfully moves under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment entered on September 14, 2026, insofar as it rests on the Order's denial of his motion for leave to file a second amended complaint, Docs. 104 and 109.

2. The denial was a manifest error of law and fact because the Order treated the plaintiffs' effort to supply the very particulars the Court found missing as gamesmanship, without identifying any proposed allegation that failed to cure an identified defect or any prejudice to the defendants beyond having to answer a complaint. Its futility finding did not engage with the proposed pleading itself, which quotes the specific statements, names the recipients, and pleads the dates and terms the Order faulted the amended complaint for omitting, and instead rested on the defendants' extrinsic exhibits and on a limitations comparison that the proposed pleading answers claim by claim.

3. Rule 15(a)(2) directs that leave be freely given when justice so requires, and Foman v. Davis permits denial only for a substantial reason such as undue delay, bad faith, repeated failure to cure, prejudice, or futility, none of which the Order established on this record. Because the judgment foreclosed an amendment that should have been allowed, the error is one that Rule 59(e) exists to correct, and this motion is timely, filed within 28 days of judgment with the final day falling on October 13, 2026 because October 12 was a legal holiday. Bisasor asks the Court to vacate judgment and grant leave to file the proposed second amended complaint, Doc. 104-1, or in the alternative to identify the defects it considers uncured and permit an amendment directed to them.

**I. THE COURT'S DENIAL OF THE MOTIONS FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT ARE REVERSIBLE ERROR AND ABUSE OF DISCRETION**

4.

5. The Court denied leave to amend on every Foman factor. Each ruling has vulnerabilities and, more importantly, the aggregated ruling contains the biggest structural defect in the Order: the Court refuses to allow amendment to cure Rule 8(a) and joinder defects while simultaneously dismissing the operative pleading in part because it exhibits those very defects. Under Foman and the First Circuit's Palmer v. Champion Mortg. framework, that

combination is difficult to defend on de novo review of the underlying legal standard and on abuse-of-discretion review of the application.

6. On undue delay, the Court measures delay from the June 2022 filing of Bisasor I, treating 4 years of proceedings across 3 or 4 related cases as one continuum. That framing collapses the analytical difference between delay within a case and delay across cases. The First Circuit has cautioned that delay alone rarely justifies denial and that the question is prejudice from delay in the pending action. Plaintiffs filed this action in June 2025 and moved to amend during the ordinary motion-to-dismiss cycle. Nothing in the Order identifies delay measured against a scheduling order or against discovery that has already occurred, because discovery has not commenced. Plaintiffs moved to amend in January 2026, shortly after the Hilliard defendants filed their motion to dismiss in December 2025. The Court set a March 2026 deadline for plaintiffs to file a motion to amend the complaint with proposed amended complaint, which was in part granted due to Bisasor's ADA accommodation requests and due to technical and administrative problems that impeded Anderson's access to e-filing. Based on these facts and the procedural history, it would be counterfactual if not inaccurate to assert that plaintiffs engaged in delay regarding their amended complaint. The plaintiffs did everything with respect to the timing of the filing under the strict provisions and allowances by the Court.

7. On bad faith, the Court says the plaintiffs dropped federal claims to defeat removal and then tried to add them back after the remand motion failed. This raises two problems. First, dropping claims to preserve state-court jurisdiction and later reasserting them after removal is not per se bad faith; parties routinely restructure pleadings after jurisdictional rulings. Second, the Manney v. Reichert citation is a single unpublished E.D.N.Y. district decision and does not bind a New Hampshire district court; the Order treats it as if it announced a rule of law. No First Circuit authority establishes that reasserting claims after a failed remand is by itself bad faith, particularly where the claims themselves have independent viability.

8. Further, the defendants have engaged in numerous tactical maneuvers designed to shift the forums away from plaintiffs originally-chosen forum, including multiple removals from state court in both Massachusetts and New Hampshire, and federal forum transfer motions for transfer from one federal court to another, and they have plead federal jurisdiction for removal, only to later switch to diversity bases for federal jurisdiction after

the fact (after first amendment to remove federal claim under Royal Canin); but yet the Court found none of that to be strategic gamesmanship or forum-shopping on the part of the defendants. The plaintiffs' attempt to address the effect of removal based on the Court's novel interpretation of Royal Canin is unfairly construed as "gamesmanship", which is consistent with what the plaintiff has observed to be a "knee-jerk, trigger-happy" tendency of this judge to want to negatively prejudge the plaintiffs or to be suspicious of their motives, which has been shown to be wrong more than once including the episode where it was the court's own clerk that lost papers that Bisasor submitted timely but the Judge was quick to jump to conclusions that it was the failures or ill-motive of Bisasor. The bottom line is that it is well-established from case law that plaintiffs are the master of the case and they are given first rights to determine where they file the case and have their claims heard (subject to certain limited rights of the defendants to change the forum). It simply is incorrect to assert that plaintiffs were forum-shopping because they wanted to remand the case back to state court where they first filed the case, by using the procedure permitted by Royal Canin, or that they later wanted to add back the federal claim in a second amended complaint, which would prevent this case from being remanded to state court. Either way, the judge here seeks to criticize plaintiffs for something other represented parties are never criticized for.

9. Further, Judge Elliott fails to consider that her ruling on remand is vigorously contested given the Royan Canin ruling by the US Supreme Court that reversed a lot of the prior jurisprudence on this issue and given that she rested much of her ruling an out-of-circuit district court decision. The plaintiffs also sought to certify interlocutory appeal to the First Circuit, in order to resolve the question early but Judge Elliott denied the motion for certification asserting there is no grounds for certification because she thinks her ruling is correct. This reveals a certain lack of self-awareness by Judge Elliott. It's one thing for her to feel confident in her ruling. It's another thing to totally deny that there is any other alternative plausible ruling that could have come from this issue of first impression in this court and in this circuit; or that another judge could have seen it a different way. Given that plaintiffs believe strongly that the case should have been remanded, and that they felt blindsided by the unexpected ruling to keep the case in federal court, then it was a mark of acceptance of the court's remand order when they sought to add back the federal claim, which had been removed upon

amendment based on their understanding of Royal Canin, that allowed amendment to remove federal claims as a basis to trigger remand back to state court. By seeking to add back the federal claim that had been removed by first automatic right to amend, but which removal of claim was futile and served no purpose after Judge Elliott's ruling on remand, the plaintiffs were essentially guaranteeing that the case would stay in federal court if the motion to amend the complaint was granted, because then there would be no basis to argue for remand any further after the federal claim was added back. Therefore, seeking to add back the federal claim could not be bad faith because it would secure the jurisdiction of this court, which was the sole basis upon which the defendants effectuated removal, only later adding the diversity jurisdiction argument after the federal claim was removed by amendment. So, what was the bad faith here? Adding a claim that kept this case in federal court? That's logically contradictory. This contradiction is further revealed by Judge Elliott's argument that adding Beatrice Van Meek, a Massachusetts defendant, was also bad faith because that would destroy diversity. But adding Van Meek would not destroy federal jurisdiction if the federal claim was added back as well. This logically proves that Judge Elliott's finding of bad faith for adding federal claims and Van Meek, is logically indefensible, commonsensically refutable and had no basis in law, fact or reason. There is zero chance her reasoning is correct because a self-contradictory statement has zero truth value. Judge Elliott simply must have adopted this blind logic in service of a bias she had against the plaintiffs, where her logic applied here is objectively implausible. Note: Bisasor added Van Meek because she was added in the proposed 2024 amended complaint submitted[1] to Judge Saint-Marc in the related case in this court, and because the statute of limitations would run if that conspiracy claim involving Donais and Van Meek was not added now in a second amended complaint. There was no bad faith or no ill-motive or attempt to destroy diversity when the plaintiffs simultaneously added the federal claims to the amended complaint. In addition, plaintiffs added the federal ADA claims in the amended complaint which would definitely secure federal jurisdiction and prevent removal to state court. Again, Judge Elliott's logic makes zero sense. If the plaintiffs were trying use the amendment to

[1] Judge Elliott would have to also find that the addition of Van Meek in the proposed 2024 amended complaint submitted to Judge Saint-Marc was also designed to destroy diversity. But Judge Elliott cannot find that because that case was filed in Massachusetts state court and could not be remanded to Massachusetts superior court after transfer from the Massachusetts Federal Court. The addition of Van Meek was in good faith then. And it was in good faith now. Judge Elliott's failure to consider or address this point reveals a complete blind-spot in her ruling.

destroy the court's jurisdiction, then why add back the federal section 1981 claim and why add a federal ADA claim?

10. On prejudice, the Court says the defendants have moved to dismiss operative complaints many times across cases. That is a case-management complaint about the plaintiffs' litigation history, not a prejudice showing tied to this action. Prejudice under Foman must be measured against reasonable reliance interests such as completed discovery, expiring statutes of limitations, or lost evidence. None of those are present here.

11. On futility, the Court says the proposed complaint would still violate Rule 8(a) and would improperly join judges and court administrators under Rules 18 and 20. This raises two issues. First, futility review requires the Court to treat the proposed pleading like a Rule 12(b)(6) motion and construe it in the light most favorable to the pleader; the Order does the opposite by pointing to Rule 8(a) prolixity that a targeted amendment specifically directed to a shorter pleading would cure. Second, Rule 20 misjoinder is not a basis for dismissal of the entire complaint; the remedy is severance under Rule 21. The Court cites Rule 20(a)(2) but does not analyze whether the claims arise from a common transaction or series of transactions when the plaintiffs allege coordinated conduct involving the same core group of defendants and their institutional relationships.

12. Similarly, Judge Elliot's immunity comment is stated in the alternative and without individualized analysis. So who exactly is immune? And is it full immunity or qualified immunity? Judge Elliott avoided any such analysis. Is Gorham immune from all federal claims as a state court administrator? Is Judge Amy Messer immune from all administrative acts? Is Beatrice Van Meek immune as an administrative employee of a Massachusetts court? Judge Elliott erroneously made no distinction at all and did not call for any cure by a more definite statement or targeted amendment. She just assumed that there are no set of facts that could be plead to result in qualified immunity depending on the actual facts and nature of the acts, or when or how they were done. A blanket finding of immunity for court employees and administrators without assessing the possibility of qualified immunity is clear error. Judge Elliott made no analysis of these facts.

13. Further, the plaintiffs filed only one amended complaint by right within 30 days of removal from state court by the defendants, for which they had firmly believed would have resulted in remand back to state court under the new Royal Canin ruling from the US Supreme Court in early 2025. The motion to amend the complaint is

the first motion to amend the complaint that was ruled on by this judge, and she denied it in violation of the requirement that amendments be freely given. Any personal observation or concern that a second amended complaint could be overlong, could have been dealt with by instructing a targeted amendment and even setting a page limit. The Court did no such undertaking, and this was unfair to the plaintiffs especially when the amendments would have most definitely cured most of the deficiencies the judge raised in her Order. This is thus the largest blind-spot of the Court in that the Court never squarely addresses why the plaintiffs cannot be given one bounded opportunity to file a presumably Rule 8(a)-compliant amended pleading directed at the identified defects, particularly when the Court expressly declines to dismiss on Rule 8(a) grounds precisely because that would be the preferred remedy for a curable defect. The Order gives with one hand and takes with the other. This inconsistency is the single strongest argument for both reconsideration and appellate reversal, because it collapses the ordinary Rule 15(a)(2) principle that leave should be freely given into a discretionary trap.

## II. THE JUDGMENT RESTS ON AN INCOMPLETE ACCOUNT OF THE AMENDMENT AND PROCEDURAL RECORD

14. Bisasor asks the Court to distinguish an effort to correct a pleading from an effort to evade adjudication. The Order treats the repeated presentation of claims, the effort to answer dismissal arguments, and changes in the requested forum as a combined reason to deny amendment. The question is whether the particular proposed changes were rejected on an accurate account of their purpose, timing, and effect.

### A. Correcting a Defect is the Function of Amendment, Not Proof of Bad Faith

15. At page 17, the Order describes the successive complaints as "seemingly attempting to plead around the arguments raised by the defendants in their motions to dismiss." That description requires a distinction. Adding facts to address an identified deficiency is one purpose of amendment. Foman v. Davis, 371 U.S. 178 (1962), allows consideration of bad faith, delay, prejudice, and futility, but the existence of a proposed cure does not itself establish one of those grounds.

16. The practical effect of the Order is important. An allegation is found insufficiently specific; an effort to supply detail is treated as an attempt to plead around dismissal; and that characterization then supports refusal to consider the detail. This reasoning leaves no meaningful distinction between an abusive amendment and a

genuine correction. Bisasor requests a determination of which changes would cure an identified defect, which would introduce a different claim, and which would contradict an earlier factual allegation.

17. Bisasor's requests concern the actual proposal submitted before judgment. The personal retainer allegations, identified recipients, and corrected public-hearing date discussed elsewhere in this motion illustrate why the distinction matters. Some challenged facts were already pleaded. Others were offered as clarification. They should not all be treated as evidence that no sufficient claim could ever be stated.

18. The Order's use of earlier litigation also requires a consistent level of analysis. Pages 15-17 treat the present allegations as arising from the same limited set of facts for purposes of delay. Pages 25-32 distinguish particular claims and publications for purposes of the savings statute. The Court should identify the actual difference rather than use general similarity to establish delay and changed organization or added specificity to establish an entirely new claim.

19. The relevant comparison is therefore between the same speaker, publication, recipient group, transaction, defendant, and asserted obligation in the earlier and current pleadings. Bisasor relies on concrete comparisons already identified, including the earlier allegations about nonprofit-board recipients and the firms' responsibility for the individual lawyers' conduct. The requested correction is a claim-specific comparison rather than a conclusion that all claims are either old enough to have been pleaded earlier or too new to be saved.

**B. The Forum-Choice Inference Requires More Than a Change in Legal Position**

20. The Court accepted that defendants removed on federal-question grounds and later relied on diversity after the operative amendment removed the federal claim. Doc. 35 at 1–4. That sequence does not, standing alone, establish misconduct by defendants. By the same reasoning, Plaintiffs' decision to seek remand and then seek to restore federal claims after remand was denied does not establish bad faith. The factual basis for an inference of abuse must be identified separately from the procedural choice itself.

21. Royal Canin U. S. A. v. Wullschleger, 604 U.S. 22 (2025), makes the operative amendment decisive to supplemental jurisdiction when it removes the federal claims and no independent jurisdictional basis remains. It rejects forum-manipulation concerns as a reason to disregard the governing jurisdictional statute. That means

that seeking the jurisdictional consequence of an effective amendment should not be confused with making unpermitted gamesmanship.

22. The authority cited at page 17 should be examined in its actual context. In Manney v. Reichert, No. 2:13-cv-04413 (E.D.N.Y. Sept. 26, 2014), the passage quoted in the Order placed "an act of bad faith gamesmanship" beside a different possibility: a legitimate choice to pursue only remaining claims in a preferred state forum. The passage declined to speculate between those explanations. It did not announce a rule that omitting and later restoring a claim invariably establishes bad faith.

23. Here, the relevant proposed change was restoration of federal claims in a case that was already remaining in federal court. That difference does require an explanation connecting the proposed change to an actual abuse, rather than arbitrarily citing a general preference about forum as the abuse itself.

24. Bisasor requests application of Foman to the actual proposed amendments. Removal and duplication are different questions. Any duplication objection must identify the overlapping parties, claim, relief, and pending proceeding. It can't be established simply by observing that related litigation occurred in more than one court.

**C. Clarity and Disability-Related Barriers Require a Proportionate Response**

25. The Order states the correct rule of liberal construction at page 19. Bisasor's objection is to its application. Erickson v. Pardus, 551 U.S. 89 (2007), requires liberal construction of an unrepresented litigant's complaint while leaving other grounds for dismissal open. The relevant question is whether allegations that appear in the pleading were read together and fairly understood.

26. Rule 8 requires a short and plain statement. The Court's and the defendants' ability to identify and analyze the claims is evidence of Rule 8 compliance and that the notice pleading requirements have been met. Further, this is a different point than deciding that no concise version could state a claim.

27. Rule 12(e) recognizes a procedure for obtaining a more definite statement when a pleading is too vague or ambiguous for a reasonable response. The distinction remains useful: an inability to identify a claim, an omitted factual element, and a legal rule foreclosing the claim are different defects. The remedy should turn on the defect actually found. Bisasor's disclosed ADA issues is further relevant to that remedial assessment.

28. Further the Court's November 17, 2025 endorsed order relied in part on Bisasor's ability to express himself clearly in legal filings when declining oral argument. It is utterly unfair to decline oral argument that would assist Bisasor in presenting his claims and then turn around and chide him for not writing as clearly or as concisely as other might.

29. Similarly, the ability to explain particular events does not necessarily establish equal ability to present legal argument like a trained lawyer would or to properly/effectively organize a large record, control repetition, and respond to multiple procedural demands like a trained lawyer would.

30. Bisasor's request consideration of the particular functional difficulty and a finite method of addressing it both in terms of the pro se liberal construction standard as well as the standard under the ADA. Bisasor asks the Court to consider the confidentially disclosed limitations in exercising its procedural or amendment discretion.

31. Bisasor requests a defined opportunity to submit a more streamlined definite pleading under clear organizational and length requirements. Bisasor refers back to his sealed ADA requests that are in the possession of the Court as further grounds for granting one defined targeted amendment opportunity.

32. The request for an opportunity to be heard is similarly specific. Though Rule 78(b) and Local Rule 7.1(d) permit decision on written submissions without oral argument, the practice in the NH Federal Court has been to hold hearings on motions to dismiss especially civil rights cases or cases that have multiple complex claims. Bisasor's concern is whether the written process permitted an answer to the particular material used against him, especially the sworn jurisdictional statements and the factual chronology underlying the bad-faith finding.

33. Finally, Bisasor requests correction of specific record errors and application of the correct standard to each decision. For those reasons, Bisasor requests relief from judgment sufficient to reconsider the actual proposed cures, reassess the bad-faith and prejudice findings on corrected chronology, and permit a bounded response to any unresolved issues. This would separate a correctable pleading problem from an incurable legal bar before concluding that further consideration would serve no purpose. Bisasor requests hearing on this motion.

34. Bisasor also incorporates herein Bisasor's other Rule 59E motions and Anderson's Rule 59E motions.

Respectfully submitted,
/s/ Andre Bisasor

October 13, 2026

Andre Bisasor

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served to the defendants in this case.

/s/ Andre Bisasor
Andre Bisasor

**CONCURRENCE**

Under Local Rule 7.1(c), Bisasor sought the defendants' concurrence in the relief requested here. On October 13, 2026, he sent counsel for the Donais defendants and counsel for the Hilliard defendants a written request by email identifying the post-judgment motions the plaintiffs intended to file, including this one, and asking for a response by 5pm. Both counsel responded indicating that their clients dd not concur.